# Exhibit 1

*State Court Documents*

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | **COURT OF COMMON PLEAS** |
| | **NINTH JUDICIAL CIRCUIT** |
| **COUNTY OF CHARLESTON** | **CASE NO. 23-CP-10-** |
| **ROBERT C. WORKMAN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES K. WORKMAN, KELLY WORKMAN TICK AND MATTHEW T. WORKMAN,** | **SUMMONS** |
| | Jury Trial Requested |
| **PLAINTIFFS,** | |
| **v.** | |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND GALLIVAN, WHITE & BOYD, P.A.,** | |
| **DEFENDANTS.** | |

**TO:    DEFENDANTS**

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this action, a copy of which is attached and served upon you, and to serve your Answer to said Complaint on attorneys for Plaintiffs at P.O. Box 31397, Charleston, SC 29417-1397, within 30 days after the service thereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time allowed by the South Carolina Rules of Civil Procedure, Plaintiffs will apply to the Court for the relief demanded in the Complaint.

**KAHN LAW FIRM, LLP**
**s/ JUSTIN S. KAHN**
SC BAR NO. 65100
JSKAHN@KAHNLAWFIRM.COM
**WES B. ALLISON**
SC BAR NO. 100533
WALLISON@KAHNLAWFIRM.COM
PO BOX 31397
CHARLESTON, SC 29417-1397
P. 843.577.2128 F. 843.577.3538
**ATTORNEYS FOR PLAINTIFFS**

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | |
|---|---|
| STATE OF SOUTH CAROLINA | COURT OF COMMON PLEAS |
| | NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | CASE NO. 23-CP-10- |

ROBERT C. WORKMAN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES K. WORKMAN, KELLY WORKMAN TICK AND MATTHEW T. WORKMAN,

**COMPLAINT**

PLAINTIFFS,

Jury Trial Requested

V.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND GALLIVAN, WHITE & BOYD, P.A.,

DEFENDANTS.

## TABLE OF CONTENTS

I.    Introduction ......................................................................................... 2

II.   Parties .................................................................................................. 6

III.  Jurisdiction - Subject Matter and Personal ....................................... 7

IV.   Venue and Affidavit ............................................................................ 7

V.    Factual Allegations ............................................................................. 8

    A.  June 12, 2021 Collision - Tahoe Insured By State Farm ............ 8

    B.  June 13, 2021 State Farm Policy Cancelled ............................... 8

    C.  June 29, 2021 State Farm Letters to Insureds Confirms Coverage and Exposure Potential ................................................................... 8

    D.  July 14, 2021 State Farm Creates False Declarations Page for Plaintiffs and Others to Rely Upon ............................................. 9

    E.  August 5, 2021 State Farm Creates False Certified Policy Record ...... 12

    F.  State Farm Uses Form Never Submitted Nor Approved By SCDOI .. 14

    G.  State Farm Contacts and Hires GWB Law Firm ..................... 15

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

    **H.   State Farm Violates its Code of Conduct**................................................. **20**

    **I.    Defendants Cause Plaintiffs' Losses, Injuries and Damages** ............... **24**

**VI.  First Cause of Action: Abuse of Process**....................................................... **26**

**VII. Second Cause of Action: Aiding and Abetting Abuse of Process** ............. **27**

**VIII.  Third Cause of Action: Fraud** ................................................................. **28**

**IX.  Fourth Cause of Action: Negligent Misrepresentation** ............................ **30**

**X.    Fifth Cause of Action: Negligence**.............................................................. **31**

**XI.  Sixth Cause of Action: Conspiracy** ........................................................... **33**

**XII. Seventh Cause of Action: Unfair Trade Practices**.................................... **33**

**XIII. Relief**......................................................................................................... **36**

Plaintiffs, complaining of Defendants, allege:

<h1 style="text-align:center">I.      INTRODUCTION</h1>

1)   The Estate of James K. Workman and the children who are the heirs of the Estate, Robert C. Workman, individually and as personal representative, Kelly Workman Tick, and Matthew T. Workman allege **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** ("**STATE FARM**") and the law firm **GALLIVAN, WHITE & BOYD, P.A.** ("**GWB**") worked together in various ways, including creating and filing false documents in U.S. District Court, in a coordinated effort to deny Plaintiffs and others the benefit of insurance coverage.

2)   The underlying incident was a car collision that took place June 12, 2021.

<div style="text-align:center">2</div>

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

3)    On that day, James K. Workman was killed as a result of an automobile collision caused by Melvin O. Lamb, III, who was driving a Tahoe insured by **STATE FARM** and owned by his father Melvin O. Lamb, Jr.

4)    On June 29, 2021, **STATE FARM** stated in separate letters to its insureds Mr. Lamb, III and Mr. Lamb, Jr., "Your insurance policy with State Farm® provides you with specific amounts of coverage for this claim" and "We will make every reasonable attempt to resolve the liability claims within your available policy limits."

5)    That same day, as to Plaintiffs' claim, **STATE FARM** sent and enclosed a "Confirmation of Coverage for the policy that was in force on behalf of Melvin O Lamb Jr."

6)    That document stated in part: "This certifies that policy number 632318940A, covering a(n) 2004 Chevrolet TAHOE, 1GNEK13Z54R235227, was issued to Melvin O Lamb Jr and was in effect on the accident date of June 12, 2021."

---

**State Farm®**                                **Confirmation of Coverage**

40-21B2-49D
Claim Number

This policy is issued by:

☒ State Farm Mutual Automobile Insurance Company
☐ State Farm County Mutual Insurance Company of Texas
☐ State Farm Fire and Casualty Company
☐ State Farm Lloyds
☐ State Farm Indemnity Company
☐ State Farm Guaranty Insurance Company
☐ State Farm Florida Insurance Company
☐ _____
(Write in the name of the appropriate State Farm® affiliate)

This certifies that policy number 632318940A, covering a(n) 2004 Chevrolet TAHOE, 1GNEK13Z54R235227, was issued to Melvin O Lamb Jr and was in effect on the accident date of June 12, 2021. The coverages and limits of liability for this policy on that date were:

A 25/50/25, U 25/50/25

---

3

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

7) On or about July 14, 2021, STATE FARM in an effort to avoid duties it owed to Plaintiffs and others, made a conscious choice to create a forged and false declarations page to replace the existing declarations page and use it in litigation against Plaintiffs and others to deny coverage.

8) By July 26, 2021, STATE FARM had contacted GWB concerning the collision and its legal representation in the matter.

9) On July 26, 2021, GWB sent a letter regarding Plaintiffs stating it had been retained to represent Melvin O. Lamb in the matter and referenced GWB File No. 6384-2825.

10) On August 3, 2021, GWB sent a letter stating "an attorney with our law firm, wrote you a letter indicating our firm was retained to represent Melvin O. Lamb in the above referenced matter. This was an oversight, and we apologize for the confusion. Our firm has been retained on behalf of STATE FARM as it relates to the above referenced matter" and referenced GWB File No. 6384-2825.

11) On or about August 5, 2021, in its ongoing effort to mislead and misrepresent the lack of insurance coverage available to Plaintiffs and others, STATE FARM created a false "Certified Policy Record" to provide to Plaintiffs.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

12) On or about August 16, 2021, Defendants used and attached the forged and false declarations page in the lawsuit it filed against Plaintiffs and others in an improper attempt to deny coverage for the benefit of Plaintiffs, Melvin O. Lamb, III and his father, who owned the car.

13) Defendants provided that forged and false "Certified Policy Record" in the discovery process of the lawsuit to further misrepresent and mislead the Plaintiffs and others as to the actual terms of the applicable insurance policy.

14) Defendants affirmatively represented to Plaintiffs and others that the declarations page and the Certified Policy Record, both created after the crash, represented truthful information about the policy at issue when those documents were forged and/or false.

15) After Plaintiffs expended effort, time and expense in defending the lawsuit, including taking the deposition of a **STATE FARM** corporate representative, Defendants' scheme was exposed.

16) It was only then that **STATE FARM** sought to dismiss its own lawsuit, agreed to pay for the underlying claims for which it previously denied coverage, and admitted documents and other representations filed in Court and provided to the Plaintiffs and others in the discovery process were not truthful.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

17)  A purpose of this lawsuit is to hold the Defendants responsible for their improper actions and conduct in the creation and use of false documents as part of a scheme to harm Plaintiffs and others.

## II.      PARTIES

18)  Plaintiff Estate of James K. Workman (Estate) at all pertinent times was and is an estate existing in Charleston County, South Carolina.

19)  Estate was created because James K. Workman was killed in an automobile collision June 12, 2021, which is the subject of this matter.

20)  At all pertinent times, Plaintiff Robert C. Workman was the Estate's Personal Representative, son of James K. Workman and an heir of Estate.

21)  At all pertinent times, Plaintiff Kelly Workman Tick was the daughter of James K. Workman and an heir of Estate.

22)  At all pertinent times, Plaintiff Matthew T. Workman was the son of James K. Workman and an heir of Estate.

23)  On information and belief, **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** (**STATE FARM**) is an insurance company and engaged in the business of insuring people and property in South Carolina.

24) On information and belief, the net worth for **STATE FARM** ended the year 2021 at $143.2 billion.[1]

25) On information and belief, at all times relevant, the law firm Defendant **GALLIVAN, WHITE & BOYD, P.A.** (**GWB**) was a South Carolina corporation organized and existing under South Carolina law with its principal place of business in Greenville County.

### III.     JURISDICTION - SUBJECT MATTER AND PERSONAL

26) This Court has subject matter jurisdiction of this matter.

27) This Court has personal jurisdiction over Defendants for reasons, including the actions and conduct occurred or had effects in Charleston County.

### IV.     VENUE AND AFFIDAVIT

28) Venue is proper in this Court for various reasons, including the Defendants' wrongful conduct occurred and had material effects in Charleston County.

29) In further support of this lawsuit against **GWB**, to the extent needed, pursuant to S.C. Code Ann. § 15-36-100 and other law, Plaintiffs incorporate herein the attached affidavit of Thomas A. Pendarvis, Esq., specifying one or more negligent acts or omissions of **GWB**. (**Exhibit A, Affidavit and CV**)

---

[1] *See* **STATE FARM** announces 2021 financial results. https://newsroom.statefarm.com/ 2021-by-the-numbers/ last visited Feb. 14, 2023.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## V.     FACTUAL ALLEGATIONS

### A.     JUNE 12, 2021 COLLISION - TAHOE INSURED BY STATE FARM

30)     On June 12, 2021, Melvin O. Lamb, III was driving a 2004 Chevrolet Tahoe (Tahoe) owned by his father, Melvin O. Lamb, Jr., when he caused a multi-car collision on U.S. 17 North in Mt. Pleasant.

31)     Melvin O. Lamb, III recklessly drove the Tahoe into Mr. James K. Workman's car (Mr. Workman).

32)     Mr. Workman suffered and died because of the injuries from this crash.

33)     At the time of the collision, the Tahoe was insured by STATE FARM.

34)     At the time of the collision, the STATE FARM policy related to the Tahoe, did not exclude Melvin O. Lamb, III from coverage.

35)     As to the Tahoe, no STATE FARM policy declarations page in existence up to and including the time of the collision showed Melvin O. Lamb, III was an excluded driver or referred to a Driver Exclusion Form 6023DC.

### B.     JUNE 13, 2021 STATE FARM POLICY CANCELLED

36)     On information and belief, the STATE FARM insurance policy related to the Tahoe was cancelled effective June 13, 2021, one day after the crash.

### C.     JUNE 29, 2021 STATE FARM LETTERS TO INSUREDS CONFIRMS COVERAGE AND EXPOSURE POTENTIAL

37)     By June 29, 2021, STATE FARM knew of the June 12, 2021 collision.

38) On June 29, 2021, **STATE FARM** wrote a letter addressed to Melvin O. Lamb, Jr. and a separate letter addressed to Melvin O. Lamb, III.

39) In both letters, **STATE FARM** stated in part:

> Our preliminary investigation of the claim(s) against you as a result of the loss indicates there is a potential for exposure beyond the limits of liability coverage afforded you under your policy as a result of the injuries sustained by Estate of James Workman.
>
> Your insurance policy with State Farm® provides you with specific amounts of coverage for the claim.
>
> * * *
>
> We will make every reasonable attempt to resolve the liability claims within your available policy limits.

### D. JULY 14, 2021 STATE FARM CREATES FALSE DECLARATIONS PAGE FOR PLAINTIFFS AND OTHERS TO RELY UPON

40) Around July 9, 2021, a request was made by one part or unit of **STATE FARM** to another part of **STATE FARM** to create one or more documents showing Melvin O. Lamb, III was an excluded driver.

41) On or about July 14, 2021, as a result of the improper request, **STATE FARM** created a false and/or forged declarations page for the Tahoe and Melvin O. Lamb, III.

42) **STATE FARM** intentionally created the false and/or forged declarations page after it knew claims were made or to be made for damages sustained by Plaintiffs, and others arising out of the June 12, 2021 collision.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

43) Defendants later chose to use a redacted version of the declarations page STATE FARM created as Exhibit A to a Complaint filed by Defendants as discussed herein.

44) STATE FARM created that declarations page because it wanted Plaintiffs, the Court, and others to rely upon it as being true when it was not.

45) STATE FARM created the false declarations page after Plaintiffs and others involved in the June 12, 2021 collision made claims.

46) STATE FARM knew or should have known that Plaintiffs, others harmed by the collision and their automobile insurance carriers would use the false documents to make decisions about available automobile coverage.

47) STATE FARM knew or should have known Plaintiffs and others involved in the June 12, 2021 collision, including their automobile insurance carriers, would rely on STATE FARM's false declarations page in making decisions and determinations about what coverage may be available via their own automobile insurance policies.

48) STATE FARM knew or should have known that Plaintiffs and others involved in the June 12, 2021 collision, including their automobile insurance carriers, would rely on the STATE FARM's false declarations page in making decisions and determinations about litigation.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

49) Another reason and purpose **STATE FARM** created a false declarations page was to provide it to its lawyers at **GWB** and to use in litigation.

50) **STATE FARM** created a false declarations page for many improper reasons and purposes, including to avoid paying Plaintiffs and others.

51) **STATE FARM**'s declarations page unfairly, improperly, and falsely:

   i)   added Melvin O. Lamb, III as an excluded driver when no **STATE FARM** declarations page concerning the Tahoe had ever listed him as an excluded driver before the collision;

   ii)  added reference to a **STATE FARM** Form 6023DC Driver Exclusion endorsement and Melvin O. Lamb, III, when that reference never existed on any declarations page concerning the Tahoe before the collision;

   iii) changed the policy period concerning the Tahoe to June 10, 2021 to Feb. 7, 2022 12:01 A.M. Standard Time; and

   iv)  stated under IMPORTANT MESSAGES that as to the Tahoe, it "Replaced policy number 6323189-40A".

52) **STATE FARM** created the false declarations page to make material misrepresentations, including those shown and listed below:

   i)   Policy number 632 3189-B07-40B, when that policy number never existed at the time of the collision;

11

POLICY NUMBER    632 3189-B07-40B

ii) Policy period of June 10, 2021 (two days before the collision) to February 7, 2022 when no such policy period ever existed for the Tahoe;

POLICY PERIOD JUN 10 2021 to FEB 07 2022
12:01 A.M. Standard Time

iii) Under **IMPORTANT MESSAGES**, it stated "Replaced policy number 6323189-40A" when that was false because that policy was cancelled June 13, 2021;

Replaced policy number 6323189-40A

iv) Listed a driver exclusion for Melvin O. Lamb, III when there was never any such exclusion on the declarations page that applied to the collision; and

6023DC DRIVER EXCLUSION-MELVIN O LAMB III.

v) Other false or misleading statements.

E.   **AUGUST 5, 2021 STATE FARM CREATES FALSE CERTIFIED POLICY RECORD**

53)   Around August 4, 2021, State Farm underwriting received a request from a **STATE FARM** employee to create a certified copy of the policy to provide to **STATE FARM**'s counsel, **GWB**.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

54)  On August 5, 2021, to further its improper scheme and purposes, **STATE FARM** created a "Certified Policy Record" using its logo and signed by a **STATE FARM** underwriter.

55)  This "Certified Policy Record" is in part, shown below.



56)  The **STATE FARM** created Certified Policy Record attached the bogus declarations page and made false or misleading statements for Plaintiffs and others to rely on, including:

i)  "the attached documents represent a true and accurate record of the terms and conditions of Policy…";

13

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

    ii) "the included Declarations Page which was in effect at the time of the loss will indicate the policy period of the last policy issuance transaction.";

    iii) "The policy [referenced] was in effect on the loss date of 06/12/2021"; and

    iv) The "attached documents represent a true and accurate record of the terms and conditions of Policy Number 632 3189-B07-40B including any endorsements …"

57) **STATE FARM** provided the Certified Policy Record to State Farm's counsel **GWB** to use in litigation and otherwise.

### F. STATE FARM USES FORM NEVER SUBMITTED NOR APPROVED BY SCDOI

58) At all times relevant, **STATE FARM** knew it was unlawful for an insurer doing business in South Carolina to issue or sell a policy, contract, or certificate until it had been filed with and approved by the Director of the Department of Insurance. S.C. Code Ann. § 38-61-20.

59) **STATE FARM** knew the 6023DC Driver exclusion form it used with Melvin O. Lamb, Jr. had never been submitted and approved by the South Carolina Department of Insurance (SCDOI) as required by law.

60) **STATE FARM** knew the 6023DC Driver exclusion form used with Melvin O. Lamb, Jr. had never been approved by the SCDOI as required by law.

61) Despite **STATE FARM**'s knowledge the 6023DC Driver exclusion form used with Melvin O. Lamb, Jr. had never been submitted or approved by the SCDOI as required by law, **STATE FARM** chose to use and assert that unapproved document to try to deny coverage to Plaintiffs and others.

### G.    STATE FARM CONTACTS AND HIRES GWB LAW FIRM

62) On information and belief, after the collision, **STATE FARM** contacted **GWB**, in part to file a lawsuit to avoid having to indemnify, defend or pay for damages that occurred because of the collision.

63) On information and belief, **STATE FARM** wanted a determination by a court that **STATE FARM** had no duty to indemnify, defend or pay for damages that occurred because of the collision.

64) **STATE FARM** knowingly provided the bogus documents and/or unapproved forms it created to **GWB** to use in litigation to further its unlawful purposes.

65) On information and belief, without a reasonably adequate investigation into the law or facts, **GWB** advised or otherwise participated with **STATE FARM** in the improper use of the documents, litigation, and proceedings when such acts were improper and/or unlawful.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

66)  On information and belief, without a reasonably adequate investigation into the law or facts, **GWB** drafted and filed a complaint using false documents on behalf of **STATE FARM** seeking a determination that there was no insurance coverage or duty to defend for this collision.

67)  On information and belief, without a reasonably adequate investigation into the law or facts, **GWB** used the bogus documents and filed a complaint in U.S. District Court, civil action number 2:21-cv-2623-MBS. (Complaint).

68)  **GWB** owed various duties to Plaintiffs and others to reasonably investigate the facts and law before filing a lawsuit for **STATE FARM**, to not use bogus and false documents and to not assist **STATE FARM** in the use of these bogus and false documents against Plaintiffs and others.

69)  In breach of these and other duties owed to Plaintiffs and others, **GWB** substantially assisted **STATE FARM** in the litigation, in part, by negligently, recklessly and/or knowingly using and continuing to use bogus documents against Plaintiffs and others without adequately or reasonably investigating the validity and/or propriety of those documents.

70)  In part the inadequate or unreasonable investigation by **GWB** consisted of pleading that a form attached to the Complaint complied with the law and that the endorsement attached existed before the collision.

71)   An adequate and reasonable investigation by **GWB** would have shown:

a)   the form attached to the Complaint had not been submitted and approved by the SCDOI as required by the law as asserted. *See e.g.* "Pursuant to S.C. Code Ann. §38-77-340, the exclusion was signed by Father…" Complaint ¶ 19; and

b)   the endorsement attached to the Complaint which states "Prepared Jul 14 2021" was created after the June 12, 2021 collision and did not exist before. *See. e.g.* "A copy of the endorsement, which remained in effect on subsequent policies issued by State Farm including the Policy at issue, is included in Exhibit A…" Complaint ¶ 19.

72)   Defendants created, filed and pursued the litigation using bogus documents for improper purposes, including to try to make the Plaintiffs and others abandon claims made for coverage available under the actual STATE FARM policy, to improperly deny coverage, and to avoid paying legitimate claims.

73)   Defendants filed the lawsuit using the bogus documents seeking a Declaratory Judgment that STATE FARM's policy did not provide coverage, including a duty to defend or indemnify Melvin O. Lamb, III or Melvin O. Lamb, Jr. for the personal injury or property damages arising from the collision and that it did not have to pay claims of Plaintiffs and others.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

74) The lawsuit named as defendants Melvin O. Lamb, Jr. and Melvin O. Lamb, III as well as the Estate of James K. Workman and other drivers and passengers who had personal injury and property damage claims arising from the June 12, 2021 multi car collision.

75) In the Complaint filed by Defendants, they assert "State Farm *has investigated this matter and believes*, *based upon the Policy exclusion referenced herein* and applicable South Carolina law, it has no duty to defend or indemnify Father or Son [Melvin O. Lamb, Jr. and Melvin O. Lamb, III] from any claim arising out of the accident described herein, and seeks a declaration from this Court concerning the same." (Emphasis added).

76) The above statement was false, in reckless disregard for the truth, or otherwise negligently made for various reasons, including:

   i) STATE FARM had no evidence that the document 6023DC form it attached to the Complaint had ever been submitted to the SCDOI as required by law;

   ii) STATE FARM had no evidence that the document 6023DC form it attached to the Complaint had ever been approved by the SCDOI; and

   iii) STATE FARM knew it created a forgery in the form of a bogus declarations page to use in the litigation to attempt to avoid its obligations; and

18

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

iv) For other improper reasons.

77) Defendants attached the false declarations page and the unapproved 6023DC form to the complaint and claimed they were a part of the **STATE FARM** policy concerning the Tahoe when Defendants knew or should have known that was misleading or false.

78) Defendants attached a copy of the false declarations page containing an endorsement purportedly excluding Melvin O. Lamb, III from coverage and negligently and/or falsely stated that the endorsement "remained in effect" on policies issued by **STATE FARM**, "including the Policy at issue."

79) Defendants, in breach of various duties owed to Plaintiffs and others, intentionally tried to hide the actual facts and their misconduct by redacting parts of the declarations page attached to the Complaint as Exhibit A, as in part shown below.



ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

80)     In footnote 1 of the Complaint, Defendants stated "Premium information and Father's address have been redacted."

81)     On information and belief, this statement was not to redact premium information for a proper purpose but rather to improperly obscure and hide facts and amounts on the forged document that were different than those existing on the actual policy from Plaintiffs, the Court, and others.

82)     Had the information not been intentionally redacted by Defendants for improper purposes, it would have shown amounts different than the actual charges for the policy existing on the day of collision and risk Defendants' deception being exposed.

## H.     STATE FARM VIOLATES ITS CODE OF CONDUCT

83)     STATE FARM undertook to create a Code of Conduct[2] setting forth various duties STATE FARM and its employees have when dealing with customers and others like Plaintiffs. **Exhibit B** Portions of STATE FARM's Code of Conduct.

84)     In part, STATE FARM's Code of Conduct stated:

> The Code of Conduct applies to all State Farm Mutual
> Automobile Insurance Company directors, officers and
> employees, as well as to directors, officers and employees

---

[2] Available at STATE FARM https://www.statefarm.com/content/dam/sf-library/en-us/secure/legacy/pdf/V-code-of-conduct.pdf. Last checked October 17, 2022.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

of each affiliate of State Farm Mutual Automobile Insurance Company.

**Exhibit B**, p. 5.

85)  In part, this Code of Conduct stated:

We must follow our policies, rules and guidelines, and comply with all laws and regulations applicable to Company business.

**Exhibit B**, p. 5

86)  **STATE FARM**, including its Chairman, President and CEO Michael L.

Tipsord, stated:

The Code of Conduct is a resource that helps us live our shared values and sets the expectation for appropriate behavior.

We hold ourselves to the highest standards of ethics and integrity. When representing our Company, apply good judgment, be honest and treat others with respect.

We also have a responsibility – and an obligation – to question any practice or business behavior that doesn't measure up. If you see something that falls outside the boundaries of appropriate behavior, I want you to speak up. No matter what the issue is, no matter who is involved. We must have the courage and confidence to act.

**Exhibit B**, p. 4.

87)  **STATE FARM** defined fraud in its Code of Conduct as follows:

Fraud is intentional or reckless conduct that deceives or is intended to deceive someone. This includes fraudulent, illegal, unauthorized or dishonest acts.

21

**Exhibit B**, p. 17 (shown below).



88)    **STATE FARM** stated duties it, its employees and agents owed to Plaintiffs

and others to include:

> We all have a duty to follow established procedures and
> report suspected fraud, misconduct or dishonesty to your
> supervisor, another member of leadership, Human
> Resources & Development, the Open Door policy or
> contact the Compliance & Ethics Hotline.

**Exhibit B**, p. 17 (shown below).

> We all have a duty to follow established procedures and report suspected fraud,
> misconduct or dishonesty to your supervisor, another member of leadership, Human
> Resources & Development, the Open Door policy or contact the Compliance &
> Ethics Hotline.

89)    **STATE FARM** required its employees to complete and submit the Code of

Conduct Form annually with the annual Code of Conduct training course.

**Exhibit B**, p. 28.

90)    The Form is to be filled out any time an actual or potential violation of this

Code occurs and consists of an acknowledgment to adhere to the Code of

Conduct. **Exhibit B**, p. 28.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

91) In creating the Declarations Page after the June 12, 2021 collision, **STATE FARM** engaged in the crime of forgery in violation of South Carolina law by falsely making and causing to be made a declarations page to be used against Plaintiffs and others for the purpose of denying coverage or paying claims to them. *See e.g.* S.C. Code Ann. § 16-13-10.

92) **STATE FARM** intentionally made misrepresentations that Melvin O. Lamb, III was an excluded driver using a bogus declarations page it created after the collision.

93) The creation and use of this manufactured declarations page was false or otherwise improper.

94) The use of this bogus document was material to **STATE FARM**'s scheme to avoid coverage and paying for the harms and losses arising from the June 12, 2021 collision.

95) As to this and other documents, **STATE FARM** had actual knowledge they were false.

96) **STATE FARM** intended the representations contained in the bogus declarations page and other documents it improperly created to be relied on by Plaintiffs and others.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

97) **STATE FARM** intended that Plaintiffs, the Court and others would rely on the documents as true or the truth in making determinations about coverage as to the **STATE FARM** policy.

98) On information and belief, **STATE FARM** used the unapproved form with others and failed to disclose the form was improper or did not comply with the law.

99) **STATE FARM** intended that Plaintiffs, the Court and others would rely on the documents as true or the truth in making determinations about Plaintiffs' and others own automobile insurance policies.

100) In violation of the law, its own Code of Conduct, duties, responsibilities and policies, **STATE FARM** engaged in fraud and other misconduct as stated herein, and its various employees violated these duties by failing to act, stop or report the misconduct and as a direct and proximate result, Plaintiffs and others were damaged and harmed.

## I.    DEFENDANTS CAUSE PLAINTIFFS' LOSSES, INJURIES AND DAMAGES

101) As a result of Defendants' wrongful conduct, Plaintiffs and others obtained counsel to defend them in the lawsuit brought by Defendants.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

102) As a result of Defendants' wrongful conduct, Plaintiffs and others obtained counsel to address issues, including those related to their own automobile policies.

103) When Plaintiffs discovered that the policy the Defendants filed in the declaratory judgment was fraudulent and created after the car accident, Plaintiffs filed a motion.

104) In response, **STATE FARM** immediately:

   a) Sought to dismiss its own declaratory judgment;

   b) Admitted coverage when it previously claimed it did not owe it;

   c) Removed all limits on coverage, ultimately paying on a claim it previously asserted was "excluded" using false documents; and

   d) Claimed that the documents it filed were merely "mistakes" resulting from a series of improbable errors that no one with **STATE FARM** thought were improper.

105) As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered losses, including incurring attorney's fees, costs, and expenses including to defend the lawsuit brought by Defendants and against Melvin O. Lamb, Jr. and Melvin O. Lamb, III.

106) Eventually, the Complaint filed by Defendants was dismissed with prejudice.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

107) The dismissal was in favor of Plaintiffs because STATE FARM's requested relief, that its policy precluded coverage because of the declarations page and form 6023DC, was not granted.

108) As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and others suffered losses and were otherwise injured and damaged.

## VI.     FIRST CAUSE OF ACTION: ABUSE OF PROCESS

109) Plaintiffs incorporate the above by reference.

110) STATE FARM had an ulterior purpose in filing the lawsuit.

111) In part, the ulterior purpose involved perverting justice and the process by:

   i)  Creating a false declarations page;

   ii) Creating a false declarations page to use in litigation;

   iii) Attempting to have a determination that the bogus declarations page attached to the Complaint as Exhibit A was real and valid when it was a forgery;

   iv) Using a false declarations page in litigation;

   v)  Stating the false declarations page was part of the actual Policy when it was not;

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

vi) Claiming a form [6023DC attached to the Complaint filed] complied with the law when the form had never been submitted for approval to the SCDOI and had not been approved; and

vii)    Other improper motives and purposes.

112) **STATE FARM**'s intentional actions in using the process, filing, and pursuing of the lawsuit was neither proper in the regular conduct of litigation nor aimed at an objective that was a legitimate use of the process.

113) As a direct and proximate result of Defendants' conduct, Plaintiffs and others were injured and damaged in various ways.

## VII.    SECOND CAUSE OF ACTION: AIDING AND ABETTING ABUSE OF PROCESS

114) Plaintiffs incorporate the above by reference.

115) **GWB** aided and abetted in and participated in the conduct described, including abuse of process in one or more ways, including:

i)  Participating in drafting the Complaint;

ii) Filing the Complaint;

iii) Failing to make a reasonable investigation and determine that the documents used by **STATE FARM** were forged or not proper, when it knew or should have known the documents **STATE FARM** used to support its claim were improperly manufactured;

27

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

iv) Perpetuating the litigation, including requesting and obtaining defaults against parties who did not file Answers to the declaratory judgment suit; and

v) Continued to represent **STATE FARM** while failing to take affirmative steps to disassociate from the lawsuit, amend the Complaint or alert the Court, the Plaintiffs and others about the false documents, illegal actions and conduct of **STATE FARM**.

116) As a direct and proximate result of **GWB**'s conduct, Plaintiffs and others suffered damages and losses, including but not limited to attorneys' fees, litigation expenses, and emotional distress.

## VIII. THIRD CAUSE OF ACTION: FRAUD

117) Plaintiffs incorporate the above by reference.

118) **STATE FARM** had a duty to disclose to Plaintiffs and others that:

i) There was a declarations page existing at the time of the collision which did not show Melvin O. Lamb, III was an excluded driver;

ii) **STATE FARM** failed to submit and have approved by the SCDOI the form 6023DC it affirmatively used and represented it complied with law to deny coverage; and

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

iii) Disclose other material facts and information accessible to **STATE FARM** and not to Plaintiffs and others.

119) **STATE FARM** intentionally concealed, chose to suppress or otherwise not disclose material information and facts which it was required to disclose.

120) **STATE FARM**'s conduct described constitutes actual fraud.

121) In addition, after the collision, **STATE FARM** made material false statements, including creating and using a fabricated declarations page.

122) After the collision, **STATE FARM** made false representations that Mr. Lamb, III was an excluded driver using a fabricated and bogus declarations page.

123) **STATE FARM** engaged in the criminal act of forgery in violation of South Carolina law, including S.C. Code Ann. § 16-13-10, by falsely making and causing to be made a declarations page to be used against Plaintiffs and others to deny coverage or pay claims to them.

124) The creation and use of this fabricated declarations page was false or otherwise improper.

125) The use of this bogus document was material to **STATE FARM**'s scheme to avoid indemnifying or paying for the harms and losses to Plaintiffs and others arising from the June 12, 2021 collision.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

126) **STATE FARM** had actual knowledge of the falsity of the document it fabricated after the collision and with reckless disregard of its truth or falsity represented it as being true.

127) **STATE FARM** intended the representations in the bogus declarations page and other documents it created be acted on by Plaintiffs and others.

128) Plaintiffs were ignorant of the falsity of the documents.

129) **STATE FARM** intended that Plaintiffs, the Court and others would rely on the documents as true or the truth.

130) Plaintiffs and others had a right to rely on documents State Farm represented as being true.

131) As a result of **STATE FARM**'s improper conduct, whether affirmatively failing to disclose material information or manufacturing false documents to affirmatively use, Plaintiffs and others had consequent and proximate injuries and damages.

## IX. FOURTH CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION

132) Plaintiffs incorporate the above by reference.

133) Defendants negligently and/or intentionally made misrepresentations to the Plaintiffs, including that the bogus declarations page was real and that the form complied with South Carolina law.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

134) Defendants affirmatively failed to disclose material statements and/or truthful facts even though possessing expertise or special knowledge that would ordinarily make it reasonable for another to rely on such statements.

135) Defendants had a pecuniary interest in making these representations.

136) Defendants were in a superior position to Plaintiffs, the Court and others as **STATE FARM** knew of the falsity of the documents and statements therein.

137) Defendants owed a duty of care to investigate the facts and law and communicate truthful information to the Plaintiffs and others.

138) Defendants breached that duty by failing to exercise due or reasonable care.

139) Plaintiffs and others justifiably relied on the representations.

140) Plaintiffs and others suffered losses, including pecuniary, as a proximate result of their reliance on the representations and associated conduct of the Defendants.

## X.    FIFTH CAUSE OF ACTION: NEGLIGENCE

141) Plaintiffs incorporate the above and the attached affidavit of Mr. Pendarvis by reference. (**Exhibit A**)

142) **GWB** attorneys, being members of the legal profession are officers of the legal system having special responsibility for the quality of justice.

143) **GWB** attorneys had a duty to use the law's procedures only for legitimate purposes and not to mislead, harass or intimidate others.

144) **GWB** attorneys have and had a duty to uphold legal process.

145) **GWB** and its attorneys owed duties to the Plaintiffs to not act negligently in the commencement of and continuation of litigation against them.

146) **GWB** and its attorneys were negligent and breached various duties owed to Plaintiffs and others in the litigation in one or more of the following ways:

a) in failing to adequately and properly investigate the matter;

b) in drafting, filing and serving Plaintiffs with documents that included multiple misrepresentations;

c) breaching independent duties to the opposing parties and the Court to not submit, use or rely on false or fraudulent documents in litigation;

d) failing to take reasonable remedial measures, including, affirmative disclosure to the tribunal and Plaintiffs;

e) using false or fraudulently created documents for means that have no legitimate or substantial purpose and which created delay, expense or burden on Plaintiffs and others;

f) attaching documents that were fraudulently created to use in litigation; and

g) such other negligent acts as may be shown in discovery.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

147) As a proximate result of **GWB**'s negligent acts and omissions, Plaintiffs were injured and damaged.

## XI.    SIXTH CAUSE OF ACTION: CONSPIRACY

148) Plaintiffs incorporate the above by reference.

149) Defendants acted together in combination or by agreement.

150) Defendants committed at least one unlawful act or a lawful act by unlawful means.

151) Defendants acted together and committed one or more overt acts in furtherance of that agreement.

152) As a proximate result of Defendants' civil conspiracy, Plaintiffs were injured and damaged.

## XII.    SEVENTH CAUSE OF ACTION: UNFAIR TRADE PRACTICES

153) Plaintiffs Robert C. Workman, Kelly Workman Tick and Matthew T. Workman individually incorporate the above by reference.

154) **STATE FARM** violated S.C. Code Ann. § 38-59-20 (Improper Claim Practices) in one or more of the following ways:

   i)  Knowingly misrepresenting to third-party claimants, including Plaintiffs, pertinent facts or policy provisions relating to coverage at issue;

   ii) Providing deceptive or misleading information with respect to coverages;

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

iii) Not attempting in good faith to effect prompt, fair and equitable settlement of claims by failing to timely pay claims of Plaintiffs and others in part by filing a lawsuit containing false or misleading documents and/or facts.

155) **STATE FARM**'s conduct was an unfairly competitive practice having as its purpose or effect evasion of the insurance coverages in violation of the law. *See e.g.* S.C. Code Ann. § 38-77-10 (3).

156) **STATE FARM** engaged in an unfair trade practice in violation of S.C. Code Ann. § 39-5-10, *et seq.*, and as contained in S.C. Code Ann. § 38-77-341, in one or more ways, including by express malice or gross negligence:

i) knowingly making or causing to be made any false statement of material fact for use in determining the right to payment of insurance;

ii) knowingly making or causing to be made any representation of material fact for use in determining the right to payment of insurance;

iii) willfully making or causing to be made any false statement of material fact for use in determining the right to payment of insurance;

iv) willfully making or causing to be made any false representation of material fact for use in determining the right to payment of insurance; and

v) in such other ways as may be determined in discovery.

157) In South Carolina, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. S.C. Code Ann. § 39-5-20(a).

158) **STATE FARM**'s conduct violates S.C. Code Ann. § 39-5-20.

159) **STATE FARM**'s conduct is capable of repetition, and/or was repeated here and has an impact on or affects the public interest.

160) As a direct and proximate result of **STATE FARM**'s conduct and unfair trade practices, Plaintiffs Robert C. Workman, Kelly Workman Tick and Matthew T. Workman individually suffered ascertainable losses of money or other damages.

161) The use or employment of the unfair or deceptive method, act or practice was a willful or knowing violation and in violation of S.C. Code Ann. § 39-5-20, justifying the Court in awarding three times the actual damages sustained, attorney's fees and such other proper relief as it deems just, necessary, or proper.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## XIII.    RELIEF

WHEREFORE, Plaintiffs pray for a judgment against the Defendants in such amount of damages, including actual, punitive, whether statutory or otherwise, as may be determined by the trier of fact and/or the Court, for an award of attorneys' fees and costs, pre-judgment interest and for such other and further relief as is deemed just and proper.

**KAHN LAW FIRM, LLP**

s/JUSTIN S. KAHN
SC BAR NO. 65100
JSKAHN@KAHNLAWFIRM.COM

WES B. ALLISON
SC BAR NO. 100533
WALLISON@KAHNLAWFIRM.COM

PO BOX 31397
CHARLESTON, SC 29417-1397
P. 843.577.2128
F. 843.577.3538
**ATTORNEYS FOR PLAINTIFFS**

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832



| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) | CIVIL ACTION NO.: 2023-CP-10-_____ |

Robert C. Workman, Individually and as
Personal Representative of the Estate of
James K. Workman, Kelly Workman
Tick, and Matthew T. Workman,

        Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and GALLIVAN,
WHITE & BOYD, P.A.,

        Defendants.

**AFFDAVIT OF
THOMAS A. PENDARVIS**

Personally appeared before me, Thomas A. Pendarvis, who, first being duly sworn, says:

It is my expert opinion, to a reasonable degree of professional certainty, based upon my review of the available evidence, the lawyers practicing law with GALLIVAN, WHITE & BOYD, P.A. ("the Law Firm") committed at least one act or omission of professional negligence in breach of their independent duties to Plaintiffs, Robert C. Workman, Individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew T. Workman ("the Plaintiffs"), was a proximate cause of damages to Plaintiffs as more particularly set forth below:

### Background Facts

The Law Firm is a Professional Association formed under South Carolina law through which its partners and lawyer employees, who are licensed to practice law in South Carolina, provide legal services. Lawyers practicing with the Law Firm accepted the representation of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("State Farm") on the matter giving rise to the claims asserted in this lawsuit.

On June 12, 2021, James K. Workman ("Mr. Workman") was killed in a multi-car collision ("the Collision") by a vehicle driven by Melvin O. Lamb, III ("Insured Son") and owned by Mr. Lamb's father Melvin O. Lamb, Jr. ("Insured Father").

**EX. A**

Insured Father's vehicle was insured by a State Farm policy ("the Policy") providing bodily injury liability limits of $25,000 per person/$50,000 per accident and property damage limits of $25,000 per accident.

Mr. Workman was survived by Plaintiffs, who are his children, Robert C. Workman, Kelly Workman Tick, and Matthew T. Workman, all of whom were statutory beneficiaries of the South Carolina provisions creating a civil action for the wrongful death of their parent (S.C. CODE ANN. § 15-51-10 et seq.) and beneficiaries of Mr. Workman's estate for the "survival claims" (S.C. CODE ANN. § 15-5-90).

On August 16, 2021, a little more than two months after the Collision, lawyers with the Law Firm filed a Complaint on behalf of State Farm in the United States District Court for the District of South Carolina seeking a declaratory judgment against the Insured Father, Insured Son, Mr. Workman's Estate, and nine other individuals injured or whose vehicles were damaged in the Collision ("the Federal Lawsuit").

The Law Firm alleged in the Federal Lawsuit that on "February 26, 2020, State Farm issued form 6023DC, a driver exclusion endorsement ("the Exclusion") excluding [Insured] Son from coverage under the Policy." The Law Firm alleged the "Exclusion was signed by [Insured] Father and confirmed that either the driver's license of the [Insured] Son had been turned in to the Department of Motor Vehicles or that [Insured] Son obtained appropriate insurance through another policy." The Law Firm alleged that State Farm had complied with S.C. CODE ANN. §38-77-340 in obtaining the Exclusion from the Insured Father. The Law Firm filed as an exhibit to the Complaint, documents purporting to be a copy of the Policy and the Exclusion.

The Law Firm sought to have the federal court declare:

1.    the Exclusion for the Policy "is an effective and valid endorsement excluding coverage for any loss occurring as a result of [Insured] Son's operation of the Motor Vehicle";

2.    the Exclusion "issued by State Farm excludes coverage for any bodily injury, loss, or damage occurring while [Insured] Son is operating a motor vehicle"; and

3.    "State Farm has no duty to defend or indemnify [Insured] Father or [Insured] Son for bodily injury, loss, or damage occurring as a result of [Insured] Son operating a motor vehicle[.]"

Discovery by Plaintiffs in the Federal Lawsuit revealed the following:

1.    The Policy declaration page identified as policy number "632 3189-B07-40 **B**" ("Policy 40B") that the Law Firm filed with the Complaint did not exist when the Collision occurred but was instead *created 31 days after the Collision*. Policy 40B purports to show it was effective two days before the Collision, purports to exclude the Insured Son from the coverage, creates a new policy number, and changes the policy period to have a retroactive date two days before the Collision and extends coverage to the following year.

2.    The actual Policy declaration page identified as policy number "632 3189-B07-40 **A**" ("Policy 40A") in effect at the time of the Collision did not exclude the [Insured] Son or refer to the Exclusion. Policy 40A provided coverage between February 7, 2021 – August 7, 2021, and was effective when the Collision occurred on June 12, 2021.

3.    After the Collision State Farm represented to its insureds and others that Policy 40A provided coverage.

4.    The Exclusion was never submitted or approved for use by the South Carolina Department of Insurance as required for it to be effective under S.C. CODE ANN. § 38-77-340. The South Carolina Department of Insurance confirmed the Exclusion purportedly dated October 16, 2013, was not submitted or approved.

5.    The Law Firm produced to Plaintiffs a "Certified Policy Record" from the "custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company" falsely certifying Policy 40B "was in effect on the loss date of 06/12/2021."

### Rules Governing Lawyer Conduct and the Professional Standard of Care

This portion of the Affidavit sets forth the Rules governing lawyer conduct in South Carolina and includes a summary of the professional standard of care for litigators concerning advocating meritorious claims and the evidence available to support claims.

### Lawyers' Oath

The Lawyer's Oath found at Rule 402(h), SCACR, contains the following statements that are accepted and sworn by all lawyers admitted to practice law in South Carolina, including the lawyers practicing with the Law Firm:

> To opposing parties and their counsel, I pledge fairness, integrity, and civility, not only in court, but also in all written and oral communications;

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

I will not pursue or maintain any suit or proceeding which appears to me to be unjust nor maintain any defenses except those I believe to be honestly debatable under the law of the land, …; [and]

I will employ for the purpose of maintaining the causes confided to me only such means as are consistent with trust and honor and the principles of professionalism, and will never seek to mislead an opposing party, the judge, or jury by a false statement of fact or law[.]

### Rule 3.1, RPC, Rule 407, SCACR -- Meritorious Claims and Contentions

Rule 3.1, RPC, provides, in relevant part,

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.

Comments [1] and [2] to Rule 3.1, RPC, provide, with emphasis added,

[1]    The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, *but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed.* However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.

[2]    The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. *What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions.* Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by good faith argument for an extension, modification or reversal of existing laws.

Lawyers in South Carolina have been reprimanded for filing a lawsuit with no supporting facts and failing to conduct legal research before filing. See In re Young, 371 S.C. 394, 639 S.E.2d 674 (2007) (public reprimand).

### Rule 3.3, RPC, Rule 407, SCACR -- Candor Toward the Tribunal

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

lawyer;

----

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. ....

## FED. R. CIV. P. 11(b)

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

----

(3) the *factual contentions have evidentiary support* or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.] (Emphasis added.)

The purpose of Rule 11 is "to deter conduct that frustrates the just, speedy, and inexpensive determination of civil actions," which can be satisfied by a showing unfairness, undue delay, or expense. ContraVest Inc. v. Mt. Hawley Ins. Co., No. 9:15-CV-00304-DCN, 2018 WL 5793601, at *5 (D.S.C. Mar. 30, 2018); Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, at 154–55 (4th Cir. 2002) ("Even if the law could colorably support a claim, a party violates Rule 11(b)(3) where there is no factual support for the asserted claims."); Morris v. Wachovia Sec., Inc., 448 F.3d 268, 277 (4th Cir. 2006) ("Factual allegations violate Rule 11(b)(3) when they are unsupported by any information obtained prior to filing.") (internal quotation mark omitted).

Although the lawyers with the Law Firm litigated the Federal Lawsuit in federal court, the South Carolina Supreme Court's rulings applying South Carolina's analogous Rule 11 are instructive. "Under Rule 11(a), SCRCP, a party and/or the party's attorney may be sanctioned for filing a frivolous pleading, motion, or other paper, or for making frivolous arguments." Ex parte Gregory, 378 S.C. 430, 437, 663 S.E.2d 46, 50 (2008). The Ex parte Gregory opinion is instructive here because it provides some important guidance into lawyers' duties to investigate claims before filing lawsuits and about exercising professional judgment. Mr. Gregory's client had settled a personal injury lawsuit, the proceeds from which were subject to Medicaid lien. While the lawyer who handled the personal injury lawsuit, Mr. Malloy, was trying to resolve the Medicaid lien, Mr. Gregory and his co-counsel filed a lawsuit against Mr. Malloy asserting claims for an accounting

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

and conversion. Mr. Malloy transferred the settlement proceeds from his trust account to Mr. Gregory's co-counsel's trust account, and the Medicaid lien was resolved not long afterwards. Mr. Malloy filed a motion for sanctions against Mr. Gregory contending the claims, particularly the conversion claim, were frivolous. The trial court found the conversion claim was frivolous and that Mr. Gregory had not conducted a reasonable investigation before filing the claim. The South Carolina Supreme Court affirmed the trial court's rulings finding Mr. Gregory was subject to sanctions because of his failure to conduct a reasonable investigation into the claim before filing the lawsuit. The Opinion emphasized multiple failures in Mr. Gregory's pre-lawsuit investigation:

- Mr. Gregory had time to investigate whether Mr. Malloy had contacted Medicaid but failed to do so. Had he done so he would have learned much sooner that there was no basis for the conversion action.
- Mr. Gregory did not request a copy of Malloy's file.
- Mr. Gregory did not attempt to contact Mr. Malloy about the matter, even though his co-counsel suggested that he do so.
- Mr. Gregory relied on his client's unsubstantiated statements that Mr. Malloy had taken the settlement funds and made these accusations to a reporter even though he lacked any basis other than his client's statements for making these allegations.

In summary, under FED. R. CIV. P. 11(b) or South Carolina's Rule 11(a), SCRCP, lawyers have an affirmative duty to make a reasonable inquiry to determine whether there is evidence supporting their factual allegations before filing a lawsuit.

### RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 110(1)

(1) A lawyer may not bring or defend a proceeding or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good-faith argument for an extension, modification, or reversal of existing law.

----

*Cmt. b. Rationale.* Frivolous advocacy inflicts distress, wastes time, and causes increased expense to the tribunal and adversaries and may achieve results for a client that are unjust. Nonetheless, disciplinary enforcement against frivolous litigation is rare. Most bar disciplinary agencies rely on the courts in which litigation occurs to deal with abuse. Tribunals usually sanction only extreme abuse. Administration and interpretation of prohibitions against frivolous litigation should be tempered by concern to avoid overenforcement.

----

*Cmt. c. Procedural sanction against unfounded assertions in litigation.* Procedural rules modeled on Rule 11 of the Federal Rules of Civil Procedure impose affirmative obligations going beyond a requirement of minimally plausible position. In addition, courts have inherent power to impose sanctions against frivolous or otherwise abusive litigation tactics (see generally § 1, Comment *b*).

Such procedural rules generally have four elements, although jurisdictions differ on particulars. First, a lawyer may file a pleading, motion, or other paper only after making an inquiry about facts and law that is reasonable in the circumstances. Second, the lawyer's conclusions as to the facts and law must meet an objective, minimal standard of supportability. Third, litigation measures may not be taken for an improper purpose, even in instances in which they are otherwise minimally supportable. Finally, remedies provided for violations may include sanctions such as fee shifting, which in appropriate cases may be imposed directly on an offending lawyer (see Comment g).

### Expert Opinions

It is my opinion to a reasonable degree of legal professional certainty based upon the available evidence that the Law Firm through its lawyers had—*and breached*—their independent duties to Plaintiffs to investigate and confirm the evidence they submitted in support of State Farm's claims in the Federal Lawsuit provided a non-frivolous basis to support the claims before filing the Federal Lawsuit. The lawyers at the Law Firm apparently either did not conduct a reasonable investigation to evaluate the evidence that State Farm provided to support the claim, or they may have proceeded with the Federal Lawsuit to maintain their relationship with State Farm, notwithstanding whether the evidence appeared to support a meritorious claim.

Lawyers at the Law Firm had, among other duties, professional duties as lawyers representing State Farm to, among other things, provide competent representation, including, but not limited to, avoiding pursuing claims that lacked merit and conducting a reasonable investigation into the evidence their client contended supported the claims. One of the first professional responsibility issues lawyers must confront is whether a potential lawsuit or other proceeding is sufficiently well-founded to satisfy the evidentiary standards for the court and ethical standards for the lawyer. Once a lawsuit is filed, similar evidentiary standards and ethical standards apply to whether the lawsuit should be continued. The standard of care and standard of conduct for lawyers in South Carolina required the lawyers at the Law Firm conduct a reasonable investigation into the merits of the claim State Farm wanted to pursue, including evaluating the evidence allegedly supporting the claim.

There is an important distinction between claims that are meritorious and claims that are frivolous. A frivolous issue is one lacking any basis in law or fact but is distinguishable from an issue that simply lacks merit. See In re Houston, 382 S.C. 164, 675 S.E.2d 721, 723 n. 1 (2009) (rejecting ODC's argument the lawyer violated Rule 3.1, RPC, by arguing ODC engaged in racial

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

profiling, the Supreme Court found the lawyer's claim was meritless but not frivolous). See also, THE RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 110 cmt. d (2000) (a claim or contention is frivolous when it is one "that a lawyer of ordinary competence would recognize as so lacking in merit that there is no substantial possibility that the tribunal will accept it.").

To meet the professional standard of care and ethical standard of conduct, a lawyer in South Carolina must make a reasonable inquiry into the factual and legal basis for the client's intended claims and contentions before filing suit. As stated earlier, it is my professional opinion to a reasonable degree of legal certainty based on the available evidence that the lawyers at the Law Firm failed to make a reasonable inquiry into the factual basis for State Farm's purported claims they asserted in the Federal Lawsuit.

The nature and extent of the investigation the lawyers were required to exercise before filing suit depended on several factors, including the complexity or nature of the claims or contentions, the time in which the investigation must be conducted, the resources available to conduct the investigation, the availability and cooperation of fact and expert witnesses, the availability of evidence that can be obtained without discovery, and the existence of parallel proceedings which may complicate or expedite the matters. All these factors reasonably support my opinion because whether the Exclusion was valid and enforceable and what version of the Insurance Policy was applicable were all straightforward factual determinations and not complex matters requiring extraordinary investigation measures; and State Farm's witnesses and witnesses at the South Carolina Department of Insurance were readily available as were the documents related to the Exclusion and the applicable Insurance Policy.

Under the circumstances, the lawyers at the Law Firm had, in my opinion, sufficient time and resources to reasonably investigate the factual basis and legal basis supporting State Farm's purported claims or contentions before filing the Federal Lawsuit. There were no statutes of limitations about to expire or any other justification for proceeding with the Federal Lawsuit before conducting a reasonable and prudent investigation into the evidence purporting to support State Farm's claims.

Based on the available evidence, it is my professional opinion to a reasonable degree of legal certainty based on the available evidence that the lawyers at the Law Firm were negligent, failed to meet the standard of care, and thereby breached their independent professional duties to the Federal Court and by natural extension, to Plaintiffs, by, among other things, failing to

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

reasonably investigate and evaluate the purported evidence State Farm filed with its Complaint to support the declaratory judgment claim sought in the Federal Lawsuit.

It is my opinion that as a direct result of the Law Firm's acts and omissions, Plaintiffs suffered losses, including legal fees incurred in defending the Federal Lawsuit, emotional distress in having to focus on their father's death during the pendency of the Federal Lawsuit, and loss of the value of their time as well.

Lawyers play a critical role in upholding the integrity of the legal system by ensuring that only meritorious claims are brought before the courts. By diligently evaluating evidence, lawyers can avoid filing frivolous lawsuits, reduce unnecessary litigation involving third parties, and better serve their clients' interests. The failures of the lawyers, at the Law Firm, in this regard, in my professional opinion to a reasonable degree of legal certainty, were a breach of their independent duties to the Court and their client's adversaries – the Plaintiffs, which proximately resulted in damages to Plaintiffs.

### Qualifications

1. My resume, summarizing my professional qualifications, is attached as Exhibit 1.

2. I am a lawyer licensed to practice law in the State of South Carolina and in the State of Georgia since 1992.

3. I am the sole shareholder of PENDARVIS LAW OFFICES, P.C., located at 710 Boundary Street, Unit A1, Beaufort, South Carolina.

4. My areas of practice and expertise generally relate to litigation matters, including litigation of legal malpractice claims, breach of fiduciary duty claims, business tort claims, personal injury claims, and on occasion appeals from those litigated matters. I also provide lawyers with advice on ethics and professional responsibility matters, including representing lawyers on disciplinary matters before the South Carolina Supreme Court's Office of Disciplinary Counsel and the Commission on Lawyer Conduct. I have been regularly engaged in these areas of practice since 1992. In addition, I obtained board certification in legal malpractice litigation by the American Board of Professional Liability Attorneys, and that Board Certification is recognized by the South Carolina Supreme Court.

5. I have been retained by Justin S. Kahn, Esq. with KAHN LAW FIRM, LLP as an expert witness in this matter.

6. In rendering my opinions, I have reviewed the available evidence of the kinds of

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

factual sources and legal authorities customarily relied upon by experts in the field of legal ethics, lawyer malpractice, and the liability of lawyers and law firms. I have had access to the factual materials available, including the following:

    a.    August 16, 2021, Complaint filed on behalf of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

    b.    August 16, 2021, Exhibit 1 of the Complaint filed on behalf of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, including the purported Policy and the Exclusion;

    c.    February 10, 2022, The Estate of James K. Workman's Notice, Motion and Memorandum in Support of Motion for Sanction against State Farm;

    d.    December 14, 2021, Rule 30(b)(6) Deposition transcript of Shay Anderson, on behalf of State Farm;

    e.    June 18, 2021, State Farm claim letter addressed to Melvin O. Lamb, III;

    f.    June 29, 2021, State Farm confirmation of coverage letter addressed to Kahn Law Firm;

    g.    June 29, 2021, State Farm investigation of claims letter addressed to Melvin O. Lamb, III;

    h.    June 29, 2021, State Farm investigation of claims letter addressed to Melvin O. Lamb, Jr.;

    i.    July 16, 2021, State Farm Confirmation of Coverage, digitally signed by Darren P. Murdoch;

    j.    August 5, 2021, State Farm Certified Policy Record with Declarations Page;

    k.    November 23, 2021, Plaintiff's Responses to The Estate of James K. Workman's First Discovery Requests;

    l.    State Farm Declarations Page for Policy Period of February 07, 2020 to August 7, 2020;

    m.    State Farm Declarations Page for Policy Period August 23, 2020 to February 07, 2021;

    n.    Melvin O. Lamb, Jr.'s photo of South Carolina Insurance Card with State Farm;

    o.    State Farm Declarations Page for Policy Period June 10, 2021 to February

07, 2022;

p.      January 28, 2022, Plaintiff's Objections and Responses to The Estate of James K. Workman's Request for Admission and Third Discovery Requests;

q.      December 13, 2021, Justin S. Kahn, Esq.'s letter addressed to Gwen Fuller-McGriff., Esq., Deputy Director and General Counsel for State Farm as to a FOIA Request with the enclosed blank Form 6023DC Driver Exclusion Form;

r.      January 4, 2022, SOUTH CAROLINA DEPARTMENT OF INSURANCE letter to Justin S. Kahn, Esq., as to FOIA Request;

s.      January 28, 2022, Plaintiff's Objections and Responses to The Estate of James K. Workman's Second Discovery Requests;

t.      October 17, 2022, draft Complaint of Robert C. Workman, Individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew Workman vs. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and GALLIVAN, WHITE & BOYD, P.A.; and

u.      March 28, 2023, draft Complaint of Robert C. Workman, Individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew T. Workman vs. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and GALLIVAN, WHITE & BOYD, P.A.

The Affiant further sayeth not.

_____
Thomas A. Pendarvis, Affiant

SWORN to before me this 4th day of April, 2023

_____ (L.S.)
NOTARY PUBLIC FOR SOUTH CAROLINA
My commission expires: 6/15/2027

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# <u>CURRICULUM VITAE</u>

**THOMAS A. PENDARVIS, ESQ.**

**BORN:**

> Augusta, Georgia, 1961

**FAMILY:**

> Elizabeth Ann Pendarvis (wife)
> A. Miciah Pendarvis (daughter, age 21)
> Camille S. Pendarvis (daughter, age 19)
> Tallie C. Pendarvis (daughter, age 17)

**EDUCATION:**

> University of South Carolina, School of Law
>> Graduated May 1992
>> Juris Doctor
>
> University of Georgia, School of Business
>> Graduated August 1984
>> Bachelor of Business Administration
>
> Westside High School, Augusta, Georgia
>> Graduated 1979

**EMPLOYMENT:**

> PENDARVIS LAW OFFICES, P.C.
>> Owner / President (May 2004 - present)
>
> LEWIS, BABCOCK & HAWKINS, L.L.P.
>> Law Clerk (May 1990 - May 1992)
>> Associate (June 1992 - March 1997)
>> Partner (April 1997 - April 2004)
>
> PENDARVIS CHEVROLET-OLDS CO., INC.
>> Shareholder / General Manager (1984 -1989)

**BOARD CERTIFICATIONS:**

> American Board of Professional Liability Attorneys
>> Board Certified in Legal Malpractice (2011 - present)

**EXHIBIT 1**

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**ORGANIZATIONS:**

American Bar Association (1992 - present)
  Torts and Insurance Practice Section (1993 - present)
  Litigation Section (1993 - present)
  Lawyers' Professional Liability Consortium (2006 - present)

Association of Professional Responsibility Lawyers (2020 – present)

Association of Trial Lawyers of America (1992 - 2007)
  Professional Negligence

American Association of Justice (2007 - present)
  Professional Negligence

Beaufort County Bar Association (2004 - present)

Ducks Unlimited (intermittent 1985 - present)

State Bar of Georgia (1992 - present)

National Wild Turkey Federation (intermittent 1984 - present)

Richland County Bar Association (1992 - 2004)

Rotary Club, Sea Island - Beaufort (March 2005 - 2009; inactive status)

South Carolina Bar (1992 - present)
  Torts and Insurance Practice Section Council (2006-2008)
  Professional Responsibility Committee (2009 - 2014; 2016 - present)
  Professional Liability Committee (2014 - 2016)

South Carolina Trial Lawyers Association (1992 - 2008)

South Carolina Association of Ethics Counsel (2008 - present)

South Carolina Association of Justice (2008 - present)

South Carolina Trial Lawyers Association Student Chapter (1990 -1992)

United States Court of Appeals for the Eleventh Judicial Circuit (1997 - present)

United States Court of Appeals for the Fourth Judicial Circuit (1992 - present)

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

United States Court of Appeals for the Ninth Judicial Circuit (2002 - present)

United States Court of Federal Claims (1997 - present)

United States District Court for the District of South Carolina (1993 - present)

United States District Court for the Middle District of Georgia (1995 - present)

United States District Court for the Northern District of Georgia (1995 - present)

United States District Court for the Southern District of Florida (1992 - present)

University of Georgia Martial Arts Club
    President & Resident Black Belt (1981 - 1984)

University of South Carolina Environmental Law Journal
    Member (1991 - 1992)

**HONORS:**

University of South Carolina School of Law Dean's List (Fall 1990, Spring 1991, Fall 1992)

University of South Carolina School of Law President's List (Spring1992)

**LECTURES / OTHER:**

Moot Court Judge University of South Carolina School of Law (Fall 1995 - Fall 1997)

St. Mary's Hospital, Athens, Georgia (March 9, 2002) (Survivor 2002: The Litigation Labyrinth: Tips to Avoid Needless Professional Negligence Claims)

South Carolina Bar (March 2004) (Electronic Discovery)

South Carolina Trial Lawyers Association (August 2005) (Digital Discovery For the Trial Lawyer)

South Carolina Trial Lawyers Association (August 2006) (Paperless Office)

South Carolina Trial Lawyers Association (August 2007) (Legal Malpractice Claims)

South Carolina Bar (February 2007) (Ethical Issues to Consider in Avoiding Legal Malpractice Claims)

3

South Carolina Bar (December 2008) (Ethical Rules and Principles to Consider to Minimize Legal Malpractice Exposure)

South Carolina Association of Justice (August 2009) (Better Than The Bailout, Faster Than A Speeding Bullet: CaseMap and Other Case Management Programs)

South Carolina Bar (February 2011) (20/20: An Optimal View of 2010 – Current Issues in Professional Responsibility: Lawyers Leaving Law Firms and What Constitutes the Client 's File)

South Carolina Association of Justice (August 2012) (Avoiding Legal Malpractice Traps in Litigation)

South Carolina Bar (October 2012) (Deposition Essentials: Ethics in Witness Preparation and Deposition Conduct)

South Carolina Association of Ethics Counsel (January 2013) (Overview of Lawyer's Duty to Report Professional Misconduct by Other Lawyers: The Lawyer 's Whistle-Blower Rule)

South Carolina Association of Justice (August 2013) (Digital Law Practice: So You Want to Go Paperless......)

South Carolina Association of Ethics Counsel (January 2014) (Lawyer's Professional Responsibility / Joint or Vicarious Liability for Co-Counsel's Errors – "Fee Splitting")

South Carolina Bar (February 2014) (Lawyer's Professional Responsibility / Joint or Vicarious Liability for Co-Counsel 's Errors – "Fee Splitting")

South Carolina Bar (May 2014) (Deposition Essentials: Ethics in Witness Preparation and Deposition Conduct)

South Carolina Association of Justice (August 2014) (Ethics Update & Co-Counsel Tips)

South Carolina Association of Ethics Counsel (January 2015) (Just What Are You Doing?: Defining and Limiting the Scope of the Representation)

Richardson, Patrick, law firm CLE (April 2015) (Just What Are You Doing?: Defining and Limiting the Scope of the Representation)

Inaugural CLE Program - (May 2015) (Law Firm Technology)

South Carolina Association of Justice (August 2015) (Just What Are You Doing?: Defining and Limiting the Scope of the Representation)

4

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

South Carolina Bar (September 2015) (Lawyer's Duty to Report Professional Misconduct by Other Lawyers: The Lawyer's Whistle-Blower Rule.)

South Carolina Bar (February 2016) (Torts Update – Ethics Panel)

South Carolina School of Law (March 2016) (Technology For a Paperless Small Law Firm)

South Carolina Association of Justice (August 2016) (Grieving from Grievance: "Don't Threaten Me with a Good Time at ODC")

South Carolina Bar (January 2017) ((Its Better in Beaufort CLE: "Deposition Essentials: Ethics in Witness Preparation and Deposition Conduct")

South Carolina School of Law (January 2018) (Technology For a Paperless Small Law Firm)

South Carolina Bar (March 2018) (Its Better in Beaufort CLE: Technology For a Paperless Small Law Firm)

South Carolina School of Law (March 2018) (CaseMap - A Litigation Solution)

South Carolina Association of Justice (August 2018) (Just What Are You Doing?: Defining and Limiting the Scope of the Representation)

South Carolina Association of Justice (August 2018) (Preserving Sanity and Coverage: Whatcha Need to Say to Your Client and Carrier if Something Might Have Gone South)

South Carolina Bar (October 2018) (Managing your time: A Paradigm Adjusted for Ethical Compliance and Lawyer Sanity)

South Carolina Bar (November 2018) (The Ethics of Lawyer Accounting: Trust Accounts, Safe Keeping of Client Property; and Encryption of Sensitive Financial Data)

South Carolina Association of Justice (August 2019) (Ethics Rules – Confidentiality and Advertising in light of Recent Supreme Court Order)

RICHARDSON PATRICK WESTBROOK & BRICKMAN Litigation Seminar (November 2019) ((Deposition Essentials: Ethics in Witness Preparation and Deposition Conduct)

South Carolina Bar (February 2020) (Ethics in Motion Practice)

South Carolina Bar (September 2020) (Hot Tips Family Court - Video Conferencing Risk Management Considerations)

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

South Carolina Bar (October 2020) (Managing Time: Client Communications, Calendaring & Docket Management, File Storage & Document Retention)

South Carolina Association of Justice (August 2021) (The Ethics of Virtual Law Practice - We've got to draw the line on ethics somewhere, at least in pencil)

South Carolina Bar (October 2021) (Managing Time: Client Communications, Calendaring & Docket Management, File Storage & Document Retention)

South Carolina Bar (January 2022) (Ethics Overview for the Government Lawyer)

South Carolina Association of Justice (August 2022) (Professional Responsibility – Ethics: Lawyer's obligations in responding to a Subpoena for a client's file)

South Carolina School of Law (September 2022) (I'd Love to Tell You, But …, - Confidentiality for Prospective Clients + Responding to Subpoena for Client File)

**BAR ADMISSIONS:**

South Carolina Supreme Court
South Carolina Court of Appeals
Delaware Supreme Court
United States District Court for the District of South Carolina
United States District Court for the Southern District of Florida
United States Court of Appeals for the Fourth Circuit
United States Court of Appeals for the Eleventh Circuit
United States Court of Appeals for the Ninth Circuit

November 4, 2022



ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**DOING THE RIGHT THING**

# Code of Conduct

EX. B

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832



# 1

## Our Commitment

4  A Message from Michael Tipsord
5  What You Should Do
6  Leading by Example
6  Making Good Decisions
7  Sharing Concerns
7  How to Use the Compliance & Ethics Hotline
8  Zero Tolerance for Retaliation

# 2

## Mutual Trust

10  A Respectful Workplace
11  Discrimination and Harassment
12  Workplace Safety and Security
13  Drugs and Alcohol

# 3

## Integrity

15  Gifts, Gratuities and Improper Incentives
16  Conflicts of Interest
17  Preventing Fraud
17  Improper Payments
18  Anti-Money Laundering and Terrorist Financing
18  Restrictions on Employment

# 4

## Financial Strength

20  Intellectual Property and Confidential Information
22  Company Resources and Information Systems
23  Information Retention
23  Accurate Record Keeping and Reporting
23  Protecting Inside Information

# 5

## Quality Service and Relationships

25  Fair Dealing
26  Fair Competition
27  Speaking on Behalf of Our Company
27  Environmental Protection

# 6

## Code of Conduct Form Completion

Code of Conduct / DOING THE RIGHT THING / **OUR COMMITMENT**

# A Message from Michael Tipsord



As a team, we help people live life confidently. This is our mission, simply stated.

We have thousands of opportunities to build confidence with customers – and each other – every day. This starts with each of us consistently demonstrating our shared values of quality service and relationships, mutual trust, integrity and financial strength.

The Code of Conduct is a resource that helps us live our shared values and sets the expectation for appropriate behavior.

We hold ourselves to the highest standards of ethics and integrity. When representing our Company, apply good judgment, be honest and treat others with respect.

We also have a responsibility – and an obligation – to question any practice or business behavior that doesn't measure up. If you see something that falls outside the boundaries of appropriate behavior, I want you to speak up. No matter what the issue is, no matter who is involved. We must have the courage and confidence to act.

Leaders have an additional role – you help create an environment where we can talk openly about how we do business. Our Company will not tolerate retaliation against any employee who raises issues of potential concern, and we expect all leaders to model this commitment.

Our customers expect us to do the right thing.

We depend on each other to do the right thing.

Please look to our Code for guidance if you need to raise concerns or need help on a matter of ethics or compliance.

We define our Company through our actions and how we interact with each other, our customers and our communities. We have built a trusted brand by living our values and keeping our promises. By protecting our brand, we will continue to be there for our customers, helping more people in more ways.



**Michael L. Tipsord**
Chairman, President and CEO
State Farm Mutual Automobile Insurance Company

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# Scope

The Code of Conduct applies to all State Farm Mutual Automobile Insurance Company directors, officers and employees, as well as to directors, officers and employees of each affiliate of State Farm Mutual Automobile Insurance Company. State Farm Mutual Automobile Insurance Company and its affiliates are referred to herein collectively as "Company."

# What You Should Do

This Code of Conduct, or "Code," is based around our mission, our vision and our shared values of mutual trust, integrity, financial strength and quality service and relationships.

As employees, we are accountable for our own actions. We must follow our policies, rules and guidelines, and comply with all laws and regulations applicable to Company business. This Code does not cover every situation. Additional information that complements the Code can be found in the resources at the end of this document. In some instances, you may need additional information and guidance from your supervisor, another member of leadership or Human Resources & Development. You may also use the Open Door policy, or contact the Compliance & Ethics Hotline.

We have an obligation to raise our concerns if we know of or suspect improper conduct or a breakdown of business or security controls. This includes situations where we believe we have observed or have been instructed to do something that is illegal or unethical or violates Company policy. Remember that resources are available to help, including those listed in this Code. You are expected to cooperate fully with any investigative efforts.

Generally, people try to do the right thing, but for those unfortunate situations where employees do not follow Company expectations, disciplinary action may result.

## Doing the Right Thing: 👍

- **Exemplify our mission, vision and shared values.**
- **Act in an honest, legal and ethical manner. Be aware that your behavior reflects on the Company.**
- **Adhere to the Sales Practices Philosophy and Principles.**
- **Be familiar with the information contained in this Code and Company policies.**
- **Remember, pressures or demands due to business or personal conditions are not an excuse for violating the law, our Code or any Company policy.**

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# Preventing Fraud

Fraud is intentional or reckless conduct that deceives or is intended to deceive someone. This includes fraudulent, illegal, unauthorized or dishonest acts. We manage the risk of fraud through our shared value of integrity, utilizing our business processes, controls and the standards in this Code.

We all have a duty to follow established procedures and report suspected fraud, misconduct or dishonesty to your supervisor, another member of leadership, Human Resources & Development, the Open Door policy or contact the Compliance & Ethics Hotline.

# Improper Payments

Acts of bribery or corruption are designed to influence, obtain or retain an unethical business advantage. We select supplies, materials and services objectively and ethically, without gaining any advantage for the Company or for us personally. Corruption, bribery and kickbacks are contrary to our business standards. We comply with all applicable laws that forbid bribery both of public officials and within the private sector. We also comply fully with the Foreign Corrupt Practices Act, which is intended to prevent corrupt practices in international business transactions, prohibiting bribery of officials and employees who work for foreign governments.

There can be severe consequences if an employee violates anti-bribery or anti-corruption laws. Even the perception by others that we may have acted illegally can be damaging. For this reason, be aware of how our actions might be viewed by others.



Code of Conduct / DOING THE RIGHT THING / CODE OF CONDUCT FORM COMPLETION

# Code of Conduct Form Completion

We believe in following all applicable laws and regulations, and in behaving ethically and honestly. In accordance with these principles, we all must complete and submit the Code of Conduct Form annually, alongside the annual Code of Conduct training course.  The form should also be filled out any time an actual or potential violation of this Code or conflict of interest arises.

The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest. Submitting the form indicates that you have read and understood the Code of Conduct and:

● Have considered possible conflicts of interest.

● Have disclosed information about convictions for certain offenses.

● Have complied with the Code of Conduct to the best of your knowledge, with the exception of any situations described on the Code of Conduct Form.

● Will inform your immediate supervisor, or Human Resources & Development of any changes to any of these listed items.

● Will contact leadership, Human Resources & Development, use the Open Door policy or contact the Compliance & Ethics Hotline if you have concerns related to employee or business conduct.

Our company supports our employees' rights to speak out about matters of public concern or engage in certain activities related to the terms and conditions of their employment. Nothing in this Code or in any of our policies is intended to limit or interfere with the right to engage in activities protected under Section 7 of the U.S. National Labor Relations Act, such as discussions related to wages, hours, working conditions, health hazards and safety issues.

The existence and content of this Code of Conduct will be disclosed to policyholders and will be available on the company website.

The provisions of this Code are in addition to, and do not modify, replace or supersede the company's other policies or procedures.

ELECTRONICALLY FILED - 2023 Apr 14 3:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832



# South Carolina
# Department of Insurance

Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Acting Director

ELECTRONICALLY FILED - 2023 Apr 25 11:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

April 19, 2023

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
STATE FARM MUTUAL AUTOMOBILE INS CO
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On April 19, 2023, I accepted service of the attached Summons, Complaint, and Plaintiff's First Discovery Requests on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to spurvis@doi.sc.gov.** When replying, please refer to File Number 193254, Robert C. Workman , et al. v. State Farm Mutual Automobile Insurance Company, et al., 2023-CP-10-01832.

By:

Gwendolyn McGriff
General Counsel
(803)737-6732

Sincerely Yours,

Michael Wise
Acting Director
State of South Carolina
Department of Insurance

Attachment

CC:    Justin S. Kahn
       P.O. Box 31397
       Charleston, SC    29417

# AFFIDAVIT OF SERVICE

**State of South Carolina**          **County of Charleston**          **Common Pleas Court**

Case Number: 2023-CP-10-01832

Plaintiff:
**Robert C. Workman, Individually and as Personal Representatiave of theh Estate of James K. Workman, et al.**
vs.
Defendant:
**State Farm Mutual Automobile Insurance Company, et al.**

Received by FALCON EXPRESS SERVICES, LLC to be served on **Gallivan White & Boyd, P.A., 55 Beattie Place, Suite 1200, Greenville, SC 29601.** I, _Marla Lockaby_ , being duly sworn, depose and say that on the _8_ day of _May_ , 20_23_ at _12:03_ .m., executed service by delivering a true copy of the **SUMMONS, COMPLAINT, EXHIBITS, and PLAINTIFF ROBERT C. WORKMAN'S FIRST DISCOVERY REQUESTS TO DEFENDANTS** in accordance with state statutes in the manner marked below:

( ) CORPORATE SERVICE: By serving _C. William McGee_ as _Registered Agent_ .

( ) GOVERNMENT AGENCY: By serving _____ as _____
of the within named agency.

( ) NON SERVICE: For the reason detailed in the Comments below.

COMMENTS: _____
_____
_____
_____

Age _48_ Sex (M) F  Race _Wht_  Height _6'2_  Weight _225_  Hair _Blk_     Glasses Y (N)

Is the place of service the dwelling house or usual place of abode for the party being served? ( ) Yes  (✓) No

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

_Marla Lockaby_

Subscribed and Sworn to before me on the _8_ day
of _May_ _2023_ by the affiant who is
personally known to me.

_Kristie Finley_

NOTARY PUBLIC
My Commission Expires: _____

PROCESS SERVER # _____
Appointed in accordance with State Statutes

**FALCON EXPRESS SERVICES, LLC**
**P.O. Box 874**
**Charleston, SC 29402-0874**
**(843) 577-9696**

Our Job Serial Number: 2023003738

Copyright © 1992-2023 DreamBuilt Software, Inc. - Process Server's Toolbox V8.2k

ELECTRONICALLY FILED - 2023 May 11 11:24 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF CHARLESTON | |
| | CIVIL ACTION NO. 2023-CP-10-01832 |
| Robert C. Workman, Individually and as | |
| Personal Representative of the Estate | |
| of James K. Workman, Kelly Workman, | |
| Tick and Matthew T. Workman, | |
| | |
| Plaintiffs, | |
| | **NOTICE OF REMOVAL TO** |
| v. | **DISTRICT COURT** |
| | |
| State Farm Mutual Automobile Insurance | |
| Company and Gallivan, White & Boyd, | |
| P.A., | |
| | |
| Defendants. | |

As reflected in the attached Notice of Removal, Defendant State Farm Automobile Insurance Company has removed this action to the United States District Court for the District of South Carolina, Charleston Division.

WHELAN MELLEN & NORRIS, LLC

By: /s/ M. KATHLEEN McTIGHE MELLEN
    Robert W. Whelan
    Bar No. 71174
    E-Mail: robbie@whelanmellen.com
    M. Kathleen McTighe Mellen
    Bar No. 100826
    E-Mail: katie@whelanmellen.com
    89 Broad Street
    Charleston, SC 29401
    (843) 998-7099

*Attorneys for Defendant State Farm Mutual Automobile Insurance Company*

May 19, 2023
Charleston, South Carolina

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | | |
|---|---|---|
| Robert C. Workman, individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew T. Workman, | ) ) ) ) ) | Civil Action No.   2:23-cv-02133-RMG |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **NOTICE OF REMOVAL** |
| State Farm Mutual Automobile Insurance Company and Gallivan, White & Boyd, P.A., | ) ) ) ) | |
| Defendants. | ) ) | |

**TO:   THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA, CHARLESTON DIVISION:**

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant State Farm Mutual Automobile Insurance Company ("State Farm") files this Notice of Removal of this action from the Court of Common Pleas, Charleston County, State of South Carolina, to the United States District Court for the District of South Carolina, Charleston Division. Copies of all process, pleadings and orders filed in the state court action captioned *Workman, et al. v. State Farm Mutual Automobile Insurance Company, et al.*, 2023-CP-10-01832, are attached as Exhibit 1.

### STATEMENT OF GROUNDS FOR REMOVAL

1.     The Complaint alleges State Farm created "forged and false" documents, specifically a declarations page to and a certified policy record of a State Farm Automobile Insurance Policy issued to non-party Melvin O. Lamb, Jr. ("Mr. Lamb") insuring a vehicle owned by Mr. Lamb with an excluded driver endorsement as to Mr. Lamb's son, Melvin O. Lamb, III ("Lamb III"), to avoid having to indemnify Lamb III who, while driving the insured vehicle, caused

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

a serious, multi-car accident on June 12, 2021 involving, among others, James K. Workman ("Mr. Workman"), who died as a result of the accident. (*See, e.g.*, Compl. ¶¶ 1, 7, 11, 12, 30-33, 42, 50.)

2.      The Complaint further alleges State Farm, through its counsel, attorneys of the law firm Gallivan, White & Boyd, P.A. ("GWB"), improperly filed and used the "forged and false" documents in State Farm's declaratory judgment action, Civil Action No. 2:21-cv-02623-MBS (the "DJA"), through which State Farm sought a judicial order there was no coverage for the losses resulting from the June 12, 2021 accident. (*See, e.g.*, Compl. ¶¶ 1, 12, 13, 43, 49, 63, 64.)

3.      According to the Complaint, "A purpose of this lawsuit is to hold the Defendants [State Farm and GWB] responsible for their improper actions and conduct in the creation and use of false documents as part of a scheme to harm Plaintiffs and others." (Compl. ¶ 17.) The Complaint alleges State Farm alone created the "false documents," and the Complaint alleges GWB used the false documents only in the course and scope of its legal representation of State Farm.

4.      On April 14, 2023, Plaintiffs filed a Summons and Complaint in the Court of Common Pleas, Charleston County, State of South Carolina, against State Farm and GWB.

5.      This Court has diversity jurisdiction over Plaintiffs' action against State Farm pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1441 because, as explained herein, there is complete diversity of citizenship between Plaintiffs and State Farm, the South Carolina residency of GWB is disregarded and cannot defeat diversity, and the amount in controversy is reasonably believed to exceed $75,000, exclusive of interest and costs.

<u>Citizenship of the Parties</u>

6.      Upon information and belief, Plaintiffs were at the time of filing the Complaint and still are citizens of the State of South Carolina.

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

7.     State Farm is and has been a company organized and existing under the laws of the State of Illinois, with its principal place of business in Illinois and, accordingly, is not a citizen of the State of South Carolina pursuant to 28 U.S.C. §1332(c)(1).

8.     GWB is a sham defendant in the controversy between Plaintiffs and State Farm and, therefore, its South Carolina residency is disregarded for purposes of evaluating diversity of citizenship because, under the doctrine of fraudulent joinder, Plaintiffs cannot possibly state a claim against GWB in state court. Thus, the presence of GWB in this action does not defeat diversity jurisdiction for purposes of removal.

<u>Fraudulent Joinder</u>

9.     "A civil case, at law or in equity, presenting a controversy between citizens of different states and involving the requisite jurisdictional amount, is one which may be removed from a state court into the District Court of the United States by the defendant, if not a resident of the state in which the case is brought; and this right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (S.C. 1921) (emphasis added).

10.     "The 'fraudulent joinder' doctrine permits removal when a nondiverse party is (or has been) a defendant in the case . . . .  Under this doctrine, a district court can assume jurisdiction over a case even if, *inter alia*, there are nondiverse named defendants at the time the case is removed." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). "Fraudulent joinder requires neither fraud nor joinder.  It is a 'term of art [which] does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against [a] nondiverse defendant, or in fact no cause of action exists.'" *Benson v. Continental Ins.*

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*Co.*, 120 F. Supp. 2d 593, 594 (S.D. W. Va. 2000) (quoting *AIDS Counseling and Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990)).

     11.    The removing party may establish fraudulent joinder by showing there is no possibility the plaintiff would be able to establish a cause of action against resident defendant in state court. *See Stewart v. State Farm Fire & Cas. Co.*, No. 2:11-CV-03020-DCN, 2012 WL 253136, at *1 (D.S.C. Jan. 26, 2012) (citing *Mayes*, 198 F.3d at 464). As shown herein, this standard is met.

     12.    The Complaint purports to bring four causes of action against GWB: aiding and abetting abuse of process, negligent misrepresentation, negligence, and civil conspiracy. There is no possibility that Plaintiffs would be able to establish these or any other cause of action against GWB in state court because, as alleged in the Complaint, at all relevant times, GWB's complained of conduct was performed by it solely as attorneys on behalf of and with the knowledge of State Farm, its client.

     13.    Under South Carolina law, "an attorney is immune from liability to third persons arising from the performance of his professional activities as an attorney on behalf of and with the knowledge of his client." *Gaar v. N. Myrtle Beach Realty Co.*, 339 S.E.2d 887, 889 (S.C. Ct. App. 1986). "Immunity is a function of the fact that an attorney acting within the scope of representation is not acting on his or her own behalf, but on the client's behalf." *Hager v. McCabe, Trotter & Beverly, P.C.*, 869 S.E.2d 886, 889 (S.C. Ct. App. 2022).

     14.    With respect to all the claims, Plaintiffs allege GWB was acting as counsel for State Farm. Plaintiffs do not allege any acts taken by GWB outside the scope of its professional capacity as counsel for State Farm. Thus, neither the aiding and abetting abuse of process, negligent misrepresentation, negligence, or civil conspiracy claims, nor any other cause of action based on

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

the complained of conduct, are actionable against GWB under South Carolina law. *See, e.g.*, *Stiles v. Onorato*, 457 S.E.2d 601, 602 (S.C. 1995) (affirming dismissal of a "fatally deficient" claim of civil conspiracy against another party's attorney where the only reasonable inference from the allegations was that the attorney was acting at all times in his capacity as the other party's attorney); *Hager*, 869 S.E.2d at 889 (affirming dismissal of fraud and conversion claims against law firm representing another party based on attorney immunity where there was no allegation or reasonable inference the law firm acted outside the scope of its representation of the other party, and affirming dismissal of malpractice claim against the other party's law firm because it did not fit within the only two situations, which are limited and "unusual," in which a third party may sue another party's lawyer for malpractice); *Gaar*, 339 S.E.2d at 890 (affirming summary judgment on malicious prosecution claim against attorney, explaining that "to hold that an attorney who files pleadings in support of his client's position has acted overzealously, and is therefore liable to the other party in damages for malicious prosecution, would create a conflict of interest with the attorney's obligation to properly represent and support his client" and further that the attorney's immunity to the third party does not leave him without a remedy as he can proceed directly against the attorney's client for alleged malicious prosecution); *Kozel v. Kozel*, 299 F. Supp. 3d 737, 754-55 (D.S.C. 2018) (granting judgment on the pleadings to lawyers sued for abuse of process by a third party, noting South Carolina provides attorney immunity against the claim).

15.     While Plaintiffs claim GWB acted as attorney for State Farm without adequate investigation, those allegations, even if they were true, cannot diminish, much less eliminate, GWB's immunity to Plaintiffs. "Even if the attorney who initiates civil proceedings for his client has no probable cause to do so, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of the client's claim." *Gaar*, 339 S.E.2d at 889.

16.     In this regard, the District of South Carolina has held an attorney was fraudulently joined when the plaintiff's claims against the attorney all arose out of the attorney's legal representation of an insurance company in an earlier action it brought against the plaintiff. *Bertwell v. Allstate Ins. Co.*, No. C. A. 007-3875-CMC, 2008 WL 304735, at *3 (D.S.C. Jan. 31, 2008). As is the case here, the plaintiff in *Bertwell* "failed to allege facts which would give rise to any independent duty running from [the insurer's attorney] to [the plaintiff], the opposing party in the earlier litigation," or "any facts which would support a finding that [the attorney] acted in that litigation for his own personal benefit outside the scope of his representation of [the insurance company]." *Id*. Thus, this Court held it was "readily apparent" the plaintiff lacked even a "glimmer of hope" of success in her claims against the insurance company's attorney. *Id*.

17.     Accordingly, based on the doctrine of fraudulent joinder, the residency of GWB must be disregarded for purposes of evaluating diversity jurisdiction and the Court should dismiss GWB from this suit.

<u>Amount in Controversy</u>

18.     A removing party must show within a reasonable probability that the amount in controversy has been satisfied. *Meadows v. Nationwide Mut. Ins. Co.*, No. 1:14-CV-04531-JMC, 2015 WL 3490062, at *2 (D.S.C. June 3, 2015) (citing *Phillips v. Whirlpool Corp.*, 351 F. Supp. 2d 458, 462 (D.S.C. 2005)).

19.     Where the complaint does not specify an amount of damages, the court may consider the plaintiff's claims in the complaint, the notice of removal filed with the federal court, and other relevant materials in the record. *Meadows*, 2015 WL 3490062, at *2; *see also*, *Mattison v. Wal-Mart Stores, Inc.*, No. 6:10-CV-01739-JMC, 2011 WL 494395, at *2 (D.S.C. Feb. 4, 2011).

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

20.     Where claims for both actual and punitive damages are alleged in the complaint, each must be considered in determining the amount in controversy. *Brailsford v. Fresenius Med. Ctr. CNA Kidney Centers LLC*, No. 2:15-CV-04012-DCN, 2017 WL 1214337, at *4 (D.S.C. Apr. 3, 2017) (citing *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943); *American Health and Life Ins. Co. v. Heyward*, 272 F. Supp. 2d 578, 581 (D.S.C. 2003)).

21.     A plaintiff's "claim for punitive damages alone makes it virtually impossible to say that the claim is for less than the jurisdictional amount." *Woodward v. Newcourt Commercial Fin. Corp.*, 60 F. Supp. 2d 530, 532 (D.S.C. 1999).

22.     Plaintiffs' Complaint asserts five causes of action against State Farm: abuse of process, fraud, negligent misrepresentation, civil conspiracy, and violation of the South Carolina Unfair Trade Practices Act ("SCUTPA").

23.     Plaintiffs' Complaint does not specify the amount of recovery sought from State Farm. The Complaint, however, has a section addressing "Plaintiffs' Losses, Injuries and Damages," from which it appears Plaintiffs seek to recover as damages from State Farm the attorney's fees, costs, and expenses incurred obtaining counsel to defend them "and others" in the DJA (which involved motions practice and a Rule 30(b)(6) deposition) and the attorney's fees, costs, and expenses incurred obtaining counsel "to address issues" including issues related to the automobile insurance policies of "Plaintiffs and others." (Compl. ¶¶ 101-102, 105.) In addition, Plaintiffs vaguely allege they "and others" "were injured and damaged in various ways," "had consequent and proximate injuries and damages," "suffered losses, including pecuniary," and that the individual Plaintiffs "suffered ascertainable losses of money or other damages," indicating the alleged damages go beyond the attorney's fees, costs, and expenses. (Compl. ¶¶ 113, 131, 140.)

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Further, Plaintiffs seek to recover treble their actual damages, recover attorney's fees and costs incurred in this action, and recover punitive damages. (Compl. ¶ 161, Prayer for Relief.)

24.     As an initial matter, setting aside the request for trebled damages, Plaintiffs' potential recovery of any amount of actual damages and punitive damages up to the amount permitted by law would exceed $75,000.00. *See* S.C. Code Ann. § 15-32-530 (setting $500,000 as the *lowest* potential cap on punitive damages).

25.     Moreover, considering the claims made, which include allegations of fraud, abuse of process, and unfair and deceptive trade practices impacting the public of South Carolina, and considering the trebled damages and punitive damages sought, the amount in controversy appears to exceed $75,000.00, exclusive of interest and costs. *See Woodward*, 60 F. Supp. 2d at 532 (finding the jurisdictional amount satisfied based on the complaint alone where "it does not appear to a legal certainty that the amount in controversy is for $75,000 or less" and plaintiff made a claim for punitive damages); *Barker v. Washington Nat'l Ins. Co.*, No. 9:12-cv-1901-PMD, 2013 WL 1767620, at *2 (D.S.C. Apr. 24, 2013) (amount in controversy satisfied where actual amount in controversy at the time of removal was approximately $40,000 but Plaintiff also sought punitive damages, attorney's fees, and costs); *Mattison*, 2011 WL 494395, at *3 (finding removal proper because of reasonable probability that amount in controversy exceeded $75,000 when complaint did not include a determined amount of damages but included, among other claims, a claim for punitive damages, noting plaintiff's "request for punitive damages alone, which are properly considered for purposes of determining the amount in controversy, makes it difficult for [her] to prove she could not possibly recover the jurisdictional limit were she to prevail at trial"); *Kress v. Alabama Motor Exp.*, No. 8:04-22042-RBH, 2005 WL 3298886, at *1 (D.S.C. Dec. 5, 2005) ("It must appear to a legal certainty that the plaintiff cannot recover the jurisdictional amount before

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

the case will be dismissed for want of jurisdiction. Punitive damages must be considered in determining the amount in controversy unless it can be said to a legal certainty that plaintiff cannot recover punitive damages. Viewing the allegations of the complaint, the court cannot say to a legal certainty that Plaintiff is precluded from recovering the jurisdictional amount. . . . [T]he plaintiff claims damages, both actual and punitive, in an amount to be determined by the court. As such, this court concludes that Plaintiff's claims for relief in an unspecified amount may easily be read to meet the amount in controversy.").

## TIMELINESS OF REMOVAL

26.     This Notice of Removal is timely within thirty days of service of the Summons and Complaint on State Farm.

## NOTICE

27.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Clerk of the Charleston County Court of Common Pleas for Case No. 2023-CP-10-01832 and thereby served on Plaintiffs' counsel.

## CONSENT

28.     GWB's consent to this removal is not required because, as explained above, it is a sham defendant that is disregarded for purposes of removal. *Hartford Fire Ins. Co.*, 736 F.3d at 259; 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants **who have been properly joined** and served must join in or consent to the removal of the action.") (emphasis added). In any event, GWB consents to State Farm's removal and concurs with the arguments made herein.

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## **CONCLUSION**

WHEREFORE, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, this action should proceed in the United States District Court for the District of South Carolina, Charleston Division, as an action properly removed thereto. Further, the Court should dismiss Plaintiffs' claims against GWB.


WHELAN MELLEN & NORRIS, LLC

By:  s/ M. KATHLEEN McTIGHE MELLEN
Robert W. Whelan
Federal Bar No. 9242
E-Mail: robbie@whelanmellen.com
M. Kathleen McTighe Mellen
Federal Bar No. 11652
E-Mail: katie@whelanmellen.com
89 Broad Street
Charleston, SC 29401
(843) 998-7099

*Attorneys for State Farm Mutual Automobile Insurance Company*

Charleston, South Carolina

May 19, 2023

# Exhibit 1

*State Court Papers*

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | |
|---|---|
| STATE OF SOUTH CAROLINA | COURT OF COMMON PLEAS |
| COUNTY OF CHARLESTON | NINTH JUDICIAL CIRCUIT |
| | CASE NO. 23-CP-10- |
| ROBERT C. WORKMAN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES K. WORKMAN, KELLY WORKMAN TICK AND MATTHEW T. WORKMAN, | SUMMONS |
| PLAINTIFFS, | Jury Trial Requested |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND GALLIVAN, WHITE & BOYD, P.A., | |
| DEFENDANTS. | |

TO:    **DEFENDANTS**

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this action, a copy of which is attached and served upon you, and to serve your Answer to said Complaint on attorneys for Plaintiffs at P.O. Box 31397, Charleston, SC 29417-1397, within 30 days after the service thereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time allowed by the South Carolina Rules of Civil Procedure, Plaintiffs will apply to the Court for the relief demanded in the Complaint.

**KAHN LAW FIRM, LLP**
**s/ JUSTIN S. KAHN**
SC BAR NO. 65100
JSKAHN@KAHNLAWFIRM.COM
**WES B. ALLISON**
SC BAR NO. 100533
WALLISON@KAHNLAWFIRM.COM
PO BOX 31397
CHARLESTON, SC 29417-1397
P. 843.577.2128 F. 843.577.3538
**ATTORNEYS FOR PLAINTIFFS**

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CASE NO. 23-CP-10-

ROBERT C. WORKMAN, INDIVIDUALLY
AND AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF JAMES K. WORKMAN,
KELLY WORKMAN TICK AND MATTHEW
T. WORKMAN,

PLAINTIFFS,

V.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY AND
GALLIVAN, WHITE & BOYD, P.A.,

DEFENDANTS.

COMPLAINT

Jury Trial Requested

## TABLE OF CONTENTS

I.   Introduction .................................................................................................... 2

II.  Parties ............................................................................................................... 6

III. Jurisdiction - Subject Matter and Personal ................................................. 7

IV.  Venue and Affidavit ........................................................................................ 7

V.   Factual Allegations ......................................................................................... 8
     A.  June 12, 2021 Collision - Tahoe Insured By State Farm ........................ 8
     B.  June 13, 2021 State Farm Policy Cancelled ............................................ 8
     C.  June 29, 2021 State Farm Letters to Insureds Confirms Coverage and
         Exposure Potential ................................................................................... 8
     D.  July 14, 2021 State Farm Creates False Declarations Page for
         Plaintiffs and Others to Rely Upon ......................................................... 9
     E.  August 5, 2021 State Farm Creates False Certified Policy Record ...... 12
     F.  State Farm Uses Form Never Submitted Nor Approved By SCDOI .. 14
     G.  State Farm Contacts and Hires GWB Law Firm ................................... 15

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

    H.    **State Farm Violates its Code of Conduct**.................................................. 20

    I.    **Defendants Cause Plaintiffs' Losses, Injuries and Damages** ............... 24

**VI.  First Cause of Action: Abuse of Process**....................................................... 26

**VII. Second Cause of Action: Aiding and Abetting Abuse of Process** ............ 27

**VIII.  Third Cause of Action: Fraud** .................................................................. 28

**IX.  Fourth Cause of Action: Negligent Misrepresentation** ............................. 30

**X.     Fifth Cause of Action: Negligence**................................................................ 31

**XI.  Sixth Cause of Action: Conspiracy** ............................................................. 33

**XII. Seventh Cause of Action: Unfair Trade Practices**..................................... 33

**XIII. Relief**............................................................................................................. 36

Plaintiffs, complaining of Defendants, allege:

## I.     INTRODUCTION

1) The Estate of James K. Workman and the children who are the heirs of the Estate, Robert C. Workman, individually and as personal representative, Kelly Workman Tick, and Matthew T. Workman allege **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** ("**STATE FARM**") and the law firm **GALLIVAN, WHITE & BOYD, P.A.** ("**GWB**") worked together in various ways, including creating and filing false documents in U.S. District Court, in a coordinated effort to deny Plaintiffs and others the benefit of insurance coverage.

2) The underlying incident was a car collision that took place June 12, 2021.

ELECTRONICALLY FILED – 2023 May 19 3:47 PM – CHARLESTON – COMMON PLEAS – CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

3)     On that day, James K. Workman was killed as a result of an automobile collision caused by Melvin O. Lamb, III, who was driving a Tahoe insured by **STATE FARM** and owned by his father Melvin O. Lamb, Jr.

4)     On June 29, 2021, **STATE FARM** stated in separate letters to its insureds Mr. Lamb, III and Mr. Lamb, Jr., "Your insurance policy with State Farm® provides you with specific amounts of coverage for this claim" and "We will make every reasonable attempt to resolve the liability claims within your available policy limits."

5)     That same day, as to Plaintiffs' claim, **STATE FARM** sent and enclosed a "Confirmation of Coverage for the policy that was in force on behalf of Melvin O Lamb Jr."

6)     That document stated in part: "This certifies that policy number 632318940A, covering a(n) 2004 Chevrolet TAHOE, 1GNEK13Z54R235227, was issued to Melvin O Lamb Jr and was in effect on the accident date of June 12, 2021."



State Farm®     **Confirmation of Coverage**     40-21B2-49D
Claim Number

This policy is issued by:

☒ State Farm Mutual Automobile Insurance Company
☐ State Farm County Mutual Insurance Company of Texas
☐ State Farm Fire and Casualty Company
☐ State Farm Lloyds
☐ State Farm Indemnity Company
☐ State Farm Guaranty Insurance Company
☐ State Farm Florida Insurance Company
☐ _____
(Write in the name of the appropriate State Farm® affiliate)

This certifies that policy number 632318940A, covering a(n) 2004 Chevrolet TAHOE, 1GNEK13Z54R235227, was issued to Melvin O Lamb Jr and was in effect on the accident date of June 12, 2021. The coverages and limits of liability for this policy on that date were:

A 25/50/25, U 25/50/25

3

7)    On or about July 14, 2021, **STATE FARM** in an effort to avoid duties it owed to Plaintiffs and others, made a conscious choice to create a forged and false declarations page to replace the existing declarations page and use it in litigation against Plaintiffs and others to deny coverage.

8)    By July 26, 2021, **STATE FARM** had contacted **GWB** concerning the collision and its legal representation in the matter.

9)    On July 26, 2021, **GWB** sent a letter regarding Plaintiffs stating it had been retained to represent Melvin O. Lamb in the matter and referenced **GWB** File No. 6384-2825.

10)    On August 3, 2021, **GWB** sent a letter stating "an attorney with our law firm, wrote you a letter indicating our firm was retained to represent Melvin O. Lamb in the above referenced matter. This was an oversight, and we apologize for the confusion. Our firm has been retained on behalf of **STATE FARM** as it relates to the above referenced matter" and referenced **GWB** File No. 6384-2825.

11)    On or about August 5, 2021, in its ongoing effort to mislead and misrepresent the lack of insurance coverage available to Plaintiffs and others, **STATE FARM** created a false "Certified Policy Record" to provide to Plaintiffs.

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

12)     On or about August 16, 2021, Defendants used and attached the forged and false declarations page in the lawsuit it filed against Plaintiffs and others in an improper attempt to deny coverage for the benefit of Plaintiffs, Melvin O. Lamb, III and his father, who owned the car.

13)     Defendants provided that forged and false "Certified Policy Record" in the discovery process of the lawsuit to further misrepresent and mislead the Plaintiffs and others as to the actual terms of the applicable insurance policy.

14)     Defendants affirmatively represented to Plaintiffs and others that the declarations page and the Certified Policy Record, both created after the crash, represented truthful information about the policy at issue when those documents were forged and/or false.

15)     After Plaintiffs expended effort, time and expense in defending the lawsuit, including taking the deposition of a STATE FARM corporate representative, Defendants' scheme was exposed.

16)     It was only then that STATE FARM sought to dismiss its own lawsuit, agreed to pay for the underlying claims for which it previously denied coverage, and admitted documents and other representations filed in Court and provided to the Plaintiffs and others in the discovery process were not truthful.

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

17) A purpose of this lawsuit is to hold the Defendants responsible for their improper actions and conduct in the creation and use of false documents as part of a scheme to harm Plaintiffs and others.

## II.    PARTIES

18) Plaintiff Estate of James K. Workman (Estate) at all pertinent times was and is an estate existing in Charleston County, South Carolina.

19) Estate was created because James K. Workman was killed in an automobile collision June 12, 2021, which is the subject of this matter.

20) At all pertinent times, Plaintiff Robert C. Workman was the Estate's Personal Representative, son of James K. Workman and an heir of Estate.

21) At all pertinent times, Plaintiff Kelly Workman Tick was the daughter of James K. Workman and an heir of Estate.

22) At all pertinent times, Plaintiff Matthew T. Workman was the son of James K. Workman and an heir of Estate.

23) On information and belief, **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** (**STATE FARM**) is an insurance company and engaged in the business of insuring people and property in South Carolina.

24) On information and belief, the net worth for **STATE FARM** ended the year 2021 at $143.2 billion.[1]

25) On information and belief, at all times relevant, the law firm Defendant **GALLIVAN, WHITE & BOYD, P.A.** (**GWB**) was a South Carolina corporation organized and existing under South Carolina law with its principal place of business in Greenville County.

### III.     JURISDICTION - SUBJECT MATTER AND PERSONAL

26) This Court has subject matter jurisdiction of this matter.

27) This Court has personal jurisdiction over Defendants for reasons, including the actions and conduct occurred or had effects in Charleston County.

### IV.     VENUE AND AFFIDAVIT

28) Venue is proper in this Court for various reasons, including the Defendants' wrongful conduct occurred and had material effects in Charleston County.

29) In further support of this lawsuit against **GWB**, to the extent needed, pursuant to S.C. Code Ann. § 15-36-100 and other law, Plaintiffs incorporate herein the attached affidavit of Thomas A. Pendarvis, Esq., specifying one or more negligent acts or omissions of **GWB**. (**Exhibit A, Affidavit and CV**)

---

[1] *See* **STATE FARM** announces 2021 financial results. https://newsroom.statefarm.com/ 2021-by-the-numbers/ last visited Feb. 14, 2023.

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### V.   FACTUAL ALLEGATIONS

#### A.   JUNE 12, 2021 COLLISION - TAHOE INSURED BY STATE FARM

30)   On June 12, 2021, Melvin O. Lamb, III was driving a 2004 Chevrolet Tahoe (Tahoe) owned by his father, Melvin O. Lamb, Jr., when he caused a multi-car collision on U.S. 17 North in Mt. Pleasant.

31)   Melvin O. Lamb, III recklessly drove the Tahoe into Mr. James K. Workman's car (Mr. Workman).

32)   Mr. Workman suffered and died because of the injuries from this crash.

33)   At the time of the collision, the Tahoe was insured by **STATE FARM**.

34)   At the time of the collision, the **STATE FARM** policy related to the Tahoe, did not exclude Melvin O. Lamb, III from coverage.

35)   As to the Tahoe, no **STATE FARM** policy declarations page in existence up to and including the time of the collision showed Melvin O. Lamb, III was an excluded driver or referred to a Driver Exclusion Form 6023DC.

#### B.   JUNE 13, 2021 STATE FARM POLICY CANCELLED

36)   On information and belief, the **STATE FARM** insurance policy related to the Tahoe was cancelled effective June 13, 2021, one day after the crash.

#### C.   JUNE 29, 2021 STATE FARM LETTERS TO INSUREDS
####       CONFIRMS COVERAGE AND EXPOSURE POTENTIAL

37)   By June 29, 2021, **STATE FARM** knew of the June 12, 2021 collision.

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

38) On June 29, 2021, **STATE FARM** wrote a letter addressed to Melvin O. Lamb, Jr. and a separate letter addressed to Melvin O. Lamb, III.

39) In both letters, **STATE FARM** stated in part:

> Our preliminary investigation of the claim(s) against you as a result of the loss indicates there is a potential for exposure beyond the limits of liability coverage afforded you under your policy as a result of the injuries sustained by Estate of James Workman.
>
> Your insurance policy with State Farm® provides you with specific amounts of coverage for the claim.
>
> * * *
>
> We will make every reasonable attempt to resolve the liability claims within your available policy limits.

**D.  JULY 14, 2021 STATE FARM CREATES FALSE DECLARATIONS PAGE FOR PLAINTIFFS AND OTHERS TO RELY UPON**

40) Around July 9, 2021, a request was made by one part or unit of **STATE FARM** to another part of **STATE FARM** to create one or more documents showing Melvin O. Lamb, III was an excluded driver.

41) On or about July 14, 2021, as a result of the improper request, **STATE FARM** created a false and/or forged declarations page for the Tahoe and Melvin O. Lamb, III.

42) **STATE FARM** intentionally created the false and/or forged declarations page after it knew claims were made or to be made for damages sustained by Plaintiffs, and others arising out of the June 12, 2021 collision.

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

43)  Defendants later chose to use a redacted version of the declarations page STATE FARM created as Exhibit A to a Complaint filed by Defendants as discussed herein.

44)  STATE FARM created that declarations page because it wanted Plaintiffs, the Court, and others to rely upon it as being true when it was not.

45)  STATE FARM created the false declarations page after Plaintiffs and others involved in the June 12, 2021 collision made claims.

46)  STATE FARM knew or should have known that Plaintiffs, others harmed by the collision and their automobile insurance carriers would use the false documents to make decisions about available automobile coverage.

47)  STATE FARM knew or should have known Plaintiffs and others involved in the June 12, 2021 collision, including their automobile insurance carriers, would rely on STATE FARM's false declarations page in making decisions and determinations about what coverage may be available via their own automobile insurance policies.

48)  STATE FARM knew or should have known that Plaintiffs and others involved in the June 12, 2021 collision, including their automobile insurance carriers, would rely on the STATE FARM's false declarations page in making decisions and determinations about litigation.

49) Another reason and purpose **STATE FARM** created a false declarations page was to provide it to its lawyers at **GWB** and to use in litigation.

50) **STATE FARM** created a false declarations page for many improper reasons and purposes, including to avoid paying Plaintiffs and others.

51) **STATE FARM**'s declarations page unfairly, improperly, and falsely:

   i)  added Melvin O. Lamb, III as an excluded driver when no **STATE FARM** declarations page concerning the Tahoe had ever listed him as an excluded driver before the collision;

   ii) added reference to a **STATE FARM** Form 6023DC Driver Exclusion endorsement and Melvin O. Lamb, III, when that reference never existed on any declarations page concerning the Tahoe before the collision;

   iii) changed the policy period concerning the Tahoe to June 10, 2021 to Feb. 7, 2022 12:01 A.M. Standard Time; and

   iv) stated under IMPORTANT MESSAGES that as to the Tahoe, it "Replaced policy number 6323189-40A".

52) **STATE FARM** created the false declarations page to make material misrepresentations, including those shown and listed below:

   i)  Policy number 632 3189-B07-40B, when that policy number never existed at the time of the collision;

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

> **POLICY NUMBER    632 3189-B07-40B**

ii) Policy period of June 10, 2021 (two days before the collision) to February 7, 2022 when no such policy period ever existed for the Tahoe;

> **POLICY PERIOD JUN 10 2021 to FEB 07 2022**
> **12:01 A.M. Standard Time**

iii) Under **IMPORTANT MESSAGES**, it stated "Replaced policy number 6323189-40A" when that was false because that policy was cancelled June 13, 2021;

> **Replaced policy number 6323189-40A**

iv) Listed a driver exclusion for Melvin O. Lamb, III when there was never any such exclusion on the declarations page that applied to the collision; and

> **6023DC DRIVER EXCLUSION-MELVIN O LAMB III**

v) Other false or misleading statements.

### E.    AUGUST 5, 2021 STATE FARM CREATES FALSE CERTIFIED POLICY RECORD

53)    Around August 4, 2021, State Farm underwriting received a request from a **STATE FARM** employee to create a certified copy of the policy to provide to **STATE FARM**'s counsel, **GWB**.

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

54) On August 5, 2021, to further its improper scheme and purposes, **STATE FARM** created a "Certified Policy Record" using its logo and signed by a **STATE FARM** underwriter.

55) This "Certified Policy Record" is in part, shown below.



56) The **STATE FARM** created Certified Policy Record attached the bogus declarations page and made false or misleading statements for Plaintiffs and others to rely on, including:

i) "the attached documents represent a true and accurate record of the terms and conditions of Policy…";

13

ii) "the included Declarations Page which was in effect at the time of the loss will indicate the policy period of the last policy issuance transaction.";

iii) "The policy [referenced] was in effect on the loss date of 06/12/2021"; and

iv) The "attached documents represent a true and accurate record of the terms and conditions of Policy Number 632 3189-B07-40B including any endorsements …"

57) **STATE FARM** provided the Certified Policy Record to State Farm's counsel **GWB** to use in litigation and otherwise.

### F. STATE FARM USES FORM NEVER SUBMITTED NOR APPROVED BY SCDOI

58) At all times relevant, **STATE FARM** knew it was unlawful for an insurer doing business in South Carolina to issue or sell a policy, contract, or certificate until it had been filed with and approved by the Director of the Department of Insurance. S.C. Code Ann. § 38-61-20.

59) **STATE FARM** knew the 6023DC Driver exclusion form it used with Melvin O. Lamb, Jr. had never been submitted and approved by the South Carolina Department of Insurance (SCDOI) as required by law.

14

60) **STATE FARM** knew the 6023DC Driver exclusion form used with Melvin O. Lamb, Jr. had never been approved by the SCDOI as required by law.

61) Despite **STATE FARM**'s knowledge the 6023DC Driver exclusion form used with Melvin O. Lamb, Jr. had never been submitted or approved by the SCDOI as required by law, **STATE FARM** chose to use and assert that unapproved document to try to deny coverage to Plaintiffs and others.

### G. STATE FARM CONTACTS AND HIRES GWB LAW FIRM

62) On information and belief, after the collision, **STATE FARM** contacted **GWB**, in part to file a lawsuit to avoid having to indemnify, defend or pay for damages that occurred because of the collision.

63) On information and belief, **STATE FARM** wanted a determination by a court that **STATE FARM** had no duty to indemnify, defend or pay for damages that occurred because of the collision.

64) **STATE FARM** knowingly provided the bogus documents and/or unapproved forms it created to **GWB** to use in litigation to further its unlawful purposes.

65) On information and belief, without a reasonably adequate investigation into the law or facts, **GWB** advised or otherwise participated with **STATE FARM** in the improper use of the documents, litigation, and proceedings when such acts were improper and/or unlawful.

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

66)     On information and belief, without a reasonably adequate investigation into the law or facts, **GWB** drafted and filed a complaint using false documents on behalf of **STATE FARM** seeking a determination that there was no insurance coverage or duty to defend for this collision.

67)     On information and belief, without a reasonably adequate investigation into the law or facts, **GWB** used the bogus documents and filed a complaint in U.S. District Court, civil action number 2:21-cv-2623-MBS. (Complaint).

68)     **GWB** owed various duties to Plaintiffs and others to reasonably investigate the facts and law before filing a lawsuit for **STATE FARM**, to not use bogus and false documents and to not assist **STATE FARM** in the use of these bogus and false documents against Plaintiffs and others.

69)     In breach of these and other duties owed to Plaintiffs and others, **GWB** substantially assisted **STATE FARM** in the litigation, in part, by negligently, recklessly and/or knowingly using and continuing to use bogus documents against Plaintiffs and others without adequately or reasonably investigating the validity and/or propriety of those documents.

70)     In part the inadequate or unreasonable investigation by **GWB** consisted of pleading that a form attached to the Complaint complied with the law and that the endorsement attached existed before the collision.

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

71)    An adequate and reasonable investigation by **GWB** would have shown:

    a)  the form attached to the Complaint had not been submitted and approved by the SCDOI as required by the law as asserted. *See e.g.* "Pursuant to S.C. Code Ann. §38-77-340, the exclusion was signed by Father…" Complaint ¶ 19; and

    b)  the endorsement attached to the Complaint which states "Prepared Jul 14 2021" was created after the June 12, 2021 collision and did not exist before. *See. e.g.* "A copy of the endorsement, which remained in effect on subsequent policies issued by State Farm including the Policy at issue, is included in Exhibit A…" Complaint ¶ 19.

72)    Defendants created, filed and pursued the litigation using bogus documents for improper purposes, including to try to make the Plaintiffs and others abandon claims made for coverage available under the actual **STATE FARM** policy, to improperly deny coverage, and to avoid paying legitimate claims.

73)    Defendants filed the lawsuit using the bogus documents seeking a Declaratory Judgment that **STATE FARM**'s policy did not provide coverage, including a duty to defend or indemnify Melvin O. Lamb, III or Melvin O. Lamb, Jr. for the personal injury or property damages arising from the collision and that it did not have to pay claims of Plaintiffs and others.

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

74)    The lawsuit named as defendants Melvin O. Lamb, Jr. and Melvin O. Lamb, III as well as the Estate of James K. Workman and other drivers and passengers who had personal injury and property damage claims arising from the June 12, 2021 multi car collision.

75)    In the Complaint filed by Defendants, they assert "State Farm ***has investigated this matter and believes***, ***based upon the Policy exclusion referenced herein*** and applicable South Carolina law, it has no duty to defend or indemnify Father or Son [Melvin O. Lamb, Jr. and Melvin O. Lamb, III] from any claim arising out of the accident described herein, and seeks a declaration from this Court concerning the same." (Emphasis added).

76)    The above statement was false, in reckless disregard for the truth, or otherwise negligently made for various reasons, including:

i)    STATE FARM had no evidence that the document 6023DC form it attached to the Complaint had ever been submitted to the SCDOI as required by law;

ii)    STATE FARM had no evidence that the document 6023DC form it attached to the Complaint had ever been approved by the SCDOI; and

iii)    STATE FARM knew it created a forgery in the form of a bogus declarations page to use in the litigation to attempt to avoid its obligations; and

18

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

iv) For other improper reasons.

77)    Defendants attached the false declarations page and the unapproved 6023DC form to the complaint and claimed they were a part of the **STATE FARM** policy concerning the Tahoe when Defendants knew or should have known that was misleading or false.

78)    Defendants attached a copy of the false declarations page containing an endorsement purportedly excluding Melvin O. Lamb, III from coverage and negligently and/or falsely stated that the endorsement "remained in effect" on policies issued by **STATE FARM**, "including the Policy at issue."

79)    Defendants, in breach of various duties owed to Plaintiffs and others, intentionally tried to hide the actual facts and their misconduct by redacting parts of the declarations page attached to the Complaint as Exhibit A, as in part shown below.



80) In footnote 1 of the Complaint, Defendants stated "Premium information and Father's address have been redacted."

81) On information and belief, this statement was not to redact premium information for a proper purpose but rather to improperly obscure and hide facts and amounts on the forged document that were different than those existing on the actual policy from Plaintiffs, the Court, and others.

82) Had the information not been intentionally redacted by Defendants for improper purposes, it would have shown amounts different than the actual charges for the policy existing on the day of collision and risk Defendants' deception being exposed.

## H.    STATE FARM VIOLATES ITS CODE OF CONDUCT

83) STATE FARM undertook to create a Code of Conduct[2] setting forth various duties STATE FARM and its employees have when dealing with customers and others like Plaintiffs. **Exhibit B** Portions of STATE FARM's Code of Conduct.

84) In part, STATE FARM's Code of Conduct stated:

> The Code of Conduct applies to all State Farm Mutual
> Automobile Insurance Company directors, officers and
> employees, as well as to directors, officers and employees

---

[2] Available at STATE FARM https://www.statefarm.com/content/dam/sf-library/en-us/secure/legacy/pdf/V-code-of-conduct.pdf. Last checked October 17, 2022.

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

of each affiliate of State Farm Mutual Automobile Insurance Company.

**Exhibit B**, p. 5.

85) In part, this Code of Conduct stated:

> We must follow our policies, rules and guidelines, and comply with all laws and regulations applicable to Company business.

**Exhibit B**, p. 5

86) **STATE FARM**, including its Chairman, President and CEO Michael L.

Tipsord, stated:

> The Code of Conduct is a resource that helps us live our shared values and sets the expectation for appropriate behavior.
>
> We hold ourselves to the highest standards of ethics and integrity. When representing our Company, apply good judgment, be honest and treat others with respect.
>
> We also have a responsibility – and an obligation – to question any practice or business behavior that doesn't measure up. If you see something that falls outside the boundaries of appropriate behavior, I want you to speak up. No matter what the issue is, no matter who is involved. We must have the courage and confidence to act.

**Exhibit B**, p. 4.

87) **STATE FARM** defined fraud in its Code of Conduct as follows:

> Fraud is intentional or reckless conduct that deceives or is intended to deceive someone. This includes fraudulent, illegal, unauthorized or dishonest acts.

21

**Exhibit B**, p. 17 (shown below).



88)    **STATE FARM** stated duties it, its employees and agents owed to Plaintiffs

and others to include:

> We all have a duty to follow established procedures and
> report suspected fraud, misconduct or dishonesty to your
> supervisor, another member of leadership, Human
> Resources & Development, the Open Door policy or
> contact the Compliance & Ethics Hotline.

**Exhibit B**, p. 17 (shown below).

We all have a duty to follow established procedures and report suspected fraud, misconduct or dishonesty to your supervisor, another member of leadership, Human Resources & Development, the Open Door policy or contact the Compliance & Ethics Hotline.

89)    **STATE FARM** required its employees to complete and submit the Code of

Conduct Form annually with the annual Code of Conduct training course.

**Exhibit B**, p. 28.

90)    The Form is to be filled out any time an actual or potential violation of this

Code occurs and consists of an acknowledgment to adhere to the Code of

Conduct. **Exhibit B**, p. 28.

91) In creating the Declarations Page after the June 12, 2021 collision, **STATE FARM** engaged in the crime of forgery in violation of South Carolina law by falsely making and causing to be made a declarations page to be used against Plaintiffs and others for the purpose of denying coverage or paying claims to them. *See e.g.* S.C. Code Ann. § 16-13-10.

92) **STATE FARM** intentionally made misrepresentations that Melvin O. Lamb, III was an excluded driver using a bogus declarations page it created after the collision.

93) The creation and use of this manufactured declarations page was false or otherwise improper.

94) The use of this bogus document was material to **STATE FARM**'s scheme to avoid coverage and paying for the harms and losses arising from the June 12, 2021 collision.

95) As to this and other documents, **STATE FARM** had actual knowledge they were false.

96) **STATE FARM** intended the representations contained in the bogus declarations page and other documents it improperly created to be relied on by Plaintiffs and others.

97) **STATE FARM** intended that Plaintiffs, the Court and others would rely on the documents as true or the truth in making determinations about coverage as to the **STATE FARM** policy.

98) On information and belief, **STATE FARM** used the unapproved form with others and failed to disclose the form was improper or did not comply with the law.

99) **STATE FARM** intended that Plaintiffs, the Court and others would rely on the documents as true or the truth in making determinations about Plaintiffs' and others own automobile insurance policies.

100) In violation of the law, its own Code of Conduct, duties, responsibilities and policies, **STATE FARM** engaged in fraud and other misconduct as stated herein, and its various employees violated these duties by failing to act, stop or report the misconduct and as a direct and proximate result, Plaintiffs and others were damaged and harmed.

## I.   DEFENDANTS CAUSE PLAINTIFFS' LOSSES, INJURIES AND DAMAGES

101) As a result of Defendants' wrongful conduct, Plaintiffs and others obtained counsel to defend them in the lawsuit brought by Defendants.

102)  As a result of Defendants' wrongful conduct, Plaintiffs and others obtained counsel to address issues, including those related to their own automobile policies.

103)  When Plaintiffs discovered that the policy the Defendants filed in the declaratory judgment was fraudulent and created after the car accident, Plaintiffs filed a motion.

104)  In response, STATE FARM immediately:

   a)  Sought to dismiss its own declaratory judgment;

   b)  Admitted coverage when it previously claimed it did not owe it;

   c)  Removed all limits on coverage, ultimately paying on a claim it previously asserted was "excluded" using false documents; and

   d)  Claimed that the documents it filed were merely "mistakes" resulting from a series of improbable errors that no one with STATE FARM thought were improper.

105)  As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered losses, including incurring attorney's fees, costs, and expenses including to defend the lawsuit brought by Defendants and against Melvin O. Lamb, Jr. and Melvin O. Lamb, III.

106)  Eventually, the Complaint filed by Defendants was dismissed with prejudice.

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

107) The dismissal was in favor of Plaintiffs because **STATE FARM**'s requested relief, that its policy precluded coverage because of the declarations page and form 6023DC, was not granted.

108) As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and others suffered losses and were otherwise injured and damaged.

## VI.    FIRST CAUSE OF ACTION: ABUSE OF PROCESS

109) Plaintiffs incorporate the above by reference.

110) **STATE FARM** had an ulterior purpose in filing the lawsuit.

111) In part, the ulterior purpose involved perverting justice and the process by:

    i)  Creating a false declarations page;

    ii)  Creating a false declarations page to use in litigation;

    iii) Attempting to have a determination that the bogus declarations page attached to the Complaint as Exhibit A was real and valid when it was a forgery;

    iv) Using a false declarations page in litigation;

    v)  Stating the false declarations page was part of the actual Policy when it was not;

vi) Claiming a form [6023DC attached to the Complaint filed] complied with the law when the form had never been submitted for approval to the SCDOI and had not been approved; and

vii)    Other improper motives and purposes.

112) **STATE FARM**'s intentional actions in using the process, filing, and pursuing of the lawsuit was neither proper in the regular conduct of litigation nor aimed at an objective that was a legitimate use of the process.

113) As a direct and proximate result of Defendants' conduct, Plaintiffs and others were injured and damaged in various ways.

## VII.    SECOND CAUSE OF ACTION: AIDING AND ABETTING ABUSE OF PROCESS

114) Plaintiffs incorporate the above by reference.

115) **GWB** aided and abetted in and participated in the conduct described, including abuse of process in one or more ways, including:

i) Participating in drafting the Complaint;

ii) Filing the Complaint;

iii) Failing to make a reasonable investigation and determine that the documents used by **STATE FARM** were forged or not proper, when it knew or should have known the documents **STATE FARM** used to support its claim were improperly manufactured;

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED – 2023 May 19 3:47 PM – CHARLESTON – COMMON PLEAS – CASE#2023CP1001832

iv) Perpetuating the litigation, including requesting and obtaining defaults against parties who did not file Answers to the declaratory judgment suit; and

v) Continued to represent **STATE FARM** while failing to take affirmative steps to disassociate from the lawsuit, amend the Complaint or alert the Court, the Plaintiffs and others about the false documents, illegal actions and conduct of **STATE FARM**.

116)  As a direct and proximate result of **GWB**'s conduct, Plaintiffs and others suffered damages and losses, including but not limited to attorneys' fees, litigation expenses, and emotional distress.

## VIII.  THIRD CAUSE OF ACTION: FRAUD

117)  Plaintiffs incorporate the above by reference.

118)  **STATE FARM** had a duty to disclose to Plaintiffs and others that:

i)  There was a declarations page existing at the time of the collision which did not show Melvin O. Lamb, III was an excluded driver;

ii)  **STATE FARM** failed to submit and have approved by the SCDOI the form 6023DC it affirmatively used and represented it complied with law to deny coverage; and

iii) Disclose other material facts and information accessible to **STATE FARM** and not to Plaintiffs and others.

119) **STATE FARM** intentionally concealed, chose to suppress or otherwise not disclose material information and facts which it was required to disclose.

120) **STATE FARM**'s conduct described constitutes actual fraud.

121) In addition, after the collision, **STATE FARM** made material false statements, including creating and using a fabricated declarations page.

122) After the collision, **STATE FARM** made false representations that Mr. Lamb, III was an excluded driver using a fabricated and bogus declarations page.

123) **STATE FARM** engaged in the criminal act of forgery in violation of South Carolina law, including S.C. Code Ann. § 16-13-10, by falsely making and causing to be made a declarations page to be used against Plaintiffs and others to deny coverage or pay claims to them.

124) The creation and use of this fabricated declarations page was false or otherwise improper.

125) The use of this bogus document was material to **STATE FARM**'s scheme to avoid indemnifying or paying for the harms and losses to Plaintiffs and others arising from the June 12, 2021 collision.

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

126) **STATE FARM** had actual knowledge of the falsity of the document it fabricated after the collision and with reckless disregard of its truth or falsity represented it as being true.

127) **STATE FARM** intended the representations in the bogus declarations page and other documents it created be acted on by Plaintiffs and others.

128) Plaintiffs were ignorant of the falsity of the documents.

129) **STATE FARM** intended that Plaintiffs, the Court and others would rely on the documents as true or the truth.

130) Plaintiffs and others had a right to rely on documents State Farm represented as being true.

131) As a result of **STATE FARM**'s improper conduct, whether affirmatively failing to disclose material information or manufacturing false documents to affirmatively use, Plaintiffs and others had consequent and proximate injuries and damages.

## IX.  FOURTH CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION

132) Plaintiffs incorporate the above by reference.

133) Defendants negligently and/or intentionally made misrepresentations to the Plaintiffs, including that the bogus declarations page was real and that the form complied with South Carolina law.

134)  Defendants affirmatively failed to disclose material statements and/or truthful facts even though possessing expertise or special knowledge that would ordinarily make it reasonable for another to rely on such statements.

135)  Defendants had a pecuniary interest in making these representations.

136)  Defendants were in a superior position to Plaintiffs, the Court and others as **STATE FARM** knew of the falsity of the documents and statements therein.

137)  Defendants owed a duty of care to investigate the facts and law and communicate truthful information to the Plaintiffs and others.

138)  Defendants breached that duty by failing to exercise due or reasonable care.

139)  Plaintiffs and others justifiably relied on the representations.

140)  Plaintiffs and others suffered losses, including pecuniary, as a proximate result of their reliance on the representations and associated conduct of the Defendants.

## X.    FIFTH CAUSE OF ACTION: NEGLIGENCE

141)  Plaintiffs incorporate the above and the attached affidavit of Mr. Pendarvis by reference. (**Exhibit A**)

142)  **GWB** attorneys, being members of the legal profession are officers of the legal system having special responsibility for the quality of justice.

143) **GWB** attorneys had a duty to use the law's procedures only for legitimate purposes and not to mislead, harass or intimidate others.

144) **GWB** attorneys have and had a duty to uphold legal process.

145) **GWB** and its attorneys owed duties to the Plaintiffs to not act negligently in the commencement of and continuation of litigation against them.

146) **GWB** and its attorneys were negligent and breached various duties owed to Plaintiffs and others in the litigation in one or more of the following ways:

a) in failing to adequately and properly investigate the matter;

b) in drafting, filing and serving Plaintiffs with documents that included multiple misrepresentations;

c) breaching independent duties to the opposing parties and the Court to not submit, use or rely on false or fraudulent documents in litigation;

d) failing to take reasonable remedial measures, including, affirmative disclosure to the tribunal and Plaintiffs;

e) using false or fraudulently created documents for means that have no legitimate or substantial purpose and which created delay, expense or burden on Plaintiffs and others;

f) attaching documents that were fraudulently created to use in litigation; and

g) such other negligent acts as may be shown in discovery.

147) As a proximate result of **GWB**'s negligent acts and omissions, Plaintiffs were injured and damaged.

## XI.    SIXTH CAUSE OF ACTION: CONSPIRACY

148) Plaintiffs incorporate the above by reference.

149) Defendants acted together in combination or by agreement.

150) Defendants committed at least one unlawful act or a lawful act by unlawful means.

151) Defendants acted together and committed one or more overt acts in furtherance of that agreement.

152) As a proximate result of Defendants' civil conspiracy, Plaintiffs were injured and damaged.

## XII.    SEVENTH CAUSE OF ACTION: UNFAIR TRADE PRACTICES

153) Plaintiffs Robert C. Workman, Kelly Workman Tick and Matthew T. Workman individually incorporate the above by reference.

154) **STATE FARM** violated S.C. Code Ann. § 38-59-20 (Improper Claim Practices) in one or more of the following ways:

i) Knowingly misrepresenting to third-party claimants, including Plaintiffs, pertinent facts or policy provisions relating to coverage at issue;

ii) Providing deceptive or misleading information with respect to coverages;

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

iii) Not attempting in good faith to effect prompt, fair and equitable settlement of claims by failing to timely pay claims of Plaintiffs and others in part by filing a lawsuit containing false or misleading documents and/or facts.

155)     **STATE FARM**'s conduct was an unfairly competitive practice having as its purpose or effect evasion of the insurance coverages in violation of the law. *See e.g.* S.C. Code Ann. § 38-77-10 (3).

156)     **STATE FARM** engaged in an unfair trade practice in violation of S.C. Code Ann. § 39-5-10, *et seq.*, and as contained in S.C. Code Ann. § 38-77-341, in one or more ways, including by express malice or gross negligence:

i)   knowingly making or causing to be made any false statement of material fact for use in determining the right to payment of insurance;

ii)  knowingly making or causing to be made any representation of material fact for use in determining the right to payment of insurance;

iii) willfully making or causing to be made any false statement of material fact for use in determining the right to payment of insurance;

iv) willfully making or causing to be made any false representation of material fact for use in determining the right to payment of insurance; and

v)  in such other ways as may be determined in discovery.

157) In South Carolina, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. S.C. Code Ann. § 39-5-20(a).

158) **STATE FARM**'s conduct violates S.C. Code Ann. § 39-5-20.

159) **STATE FARM**'s conduct is capable of repetition, and/or was repeated here and has an impact on or affects the public interest.

160) As a direct and proximate result of **STATE FARM**'s conduct and unfair trade practices, Plaintiffs Robert C. Workman, Kelly Workman Tick and Matthew T. Workman individually suffered ascertainable losses of money or other damages.

161) The use or employment of the unfair or deceptive method, act or practice was a willful or knowing violation and in violation of S.C. Code Ann. § 39-5-20, justifying the Court in awarding three times the actual damages sustained, attorney's fees and such other proper relief as it deems just, necessary, or proper.

## XIII.    RELIEF

WHEREFORE, Plaintiffs pray for a judgment against the Defendants in such amount of damages, including actual, punitive, whether statutory or otherwise, as may be determined by the trier of fact and/or the Court, for an award of attorneys' fees and costs, pre-judgment interest and for such other and further relief as is deemed just and proper.

**KAHN LAW FIRM, LLP**

s/JUSTIN S. KAHN
SC BAR NO. 65100
JSKAHN@KAHNLAWFIRM.COM

WES B. ALLISON
SC BAR NO. 100533
WALLISON@KAHNLAWFIRM.COM

PO BOX 31397
CHARLESTON, SC 29417-1397
P. 843.577.2128
F. 843.577.3538
**ATTORNEYS FOR PLAINTIFFS**

ELECTRONICALLY FILED - 2023 May 19 3:37 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) | CIVIL ACTION NO.: 2023-CP-10-_____ |

STATE OF SOUTH CAROLINA                )    IN THE COURT OF COMMON PLEAS
                                       )    NINTH JUDICIAL CIRCUIT
COUNTY OF CHARLESTON                    )    CIVIL ACTION NO.: 2023-CP-10-_____

Robert C. Workman, Individually and as    )
Personal Representative of the Estate of   )
James K. Workman, Kelly Workman           )
Tick, and Matthew T. Workman,             )
                                          )
            Plaintiffs,                    )
                                          )          **AFFDAVIT OF**
v.                                         )     **THOMAS A. PENDARVIS**
                                          )
STATE FARM MUTUAL AUTOMOBILE )
INSURANCE COMPANY and GALLIVAN, )
WHITE & BOYD, P.A.,                       )
                                          )
            Defendants.                    )
_____)

Personally appeared before me, Thomas A. Pendarvis, who, first being duly sworn, says:

It is my expert opinion, to a reasonable degree of professional certainty, based upon my review of the available evidence, the lawyers practicing law with GALLIVAN, WHITE & BOYD, P.A. ("the Law Firm") committed at least one act or omission of professional negligence in breach of their independent duties to Plaintiffs, Robert C. Workman, Individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew T. Workman ("the Plaintiffs"), was a proximate cause of damages to Plaintiffs as more particularly set forth below:

### Background Facts

The Law Firm is a Professional Association formed under South Carolina law through which its partners and lawyer employees, who are licensed to practice law in South Carolina, provide legal services. Lawyers practicing with the Law Firm accepted the representation of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("State Farm") on the matter giving rise to the claims asserted in this lawsuit.

On June 12, 2021, James K. Workman ("Mr. Workman") was killed in a multi-car collision ("the Collision") by a vehicle driven by Melvin O. Lamb, III ("Insured Son") and owned by Mr. Lamb's father Melvin O. Lamb, Jr. ("Insured Father").

**EX. A**

Insured Father's vehicle was insured by a State Farm policy ("the Policy") providing bodily injury liability limits of $25,000 per person/$50,000 per accident and property damage limits of $25,000 per accident.

Mr. Workman was survived by Plaintiffs, who are his children, Robert C. Workman, Kelly Workman Tick, and Matthew T. Workman, all of whom were statutory beneficiaries of the South Carolina provisions creating a civil action for the wrongful death of their parent (S.C. CODE ANN. § 15-51-10 et seq.) and beneficiaries of Mr. Workman's estate for the "survival claims" (S.C. CODE ANN. § 15-5-90).

On August 16, 2021, a little more than two months after the Collision, lawyers with the Law Firm filed a Complaint on behalf of State Farm in the United States District Court for the District of South Carolina seeking a declaratory judgment against the Insured Father, Insured Son, Mr. Workman's Estate, and nine other individuals injured or whose vehicles were damaged in the Collision ("the Federal Lawsuit").

The Law Firm alleged in the Federal Lawsuit that on "February 26, 2020, State Farm issued form 6023DC, a driver exclusion endorsement ("the Exclusion") excluding [Insured] Son from coverage under the Policy." The Law Firm alleged the "Exclusion was signed by [Insured] Father and confirmed that either the driver's license of the [Insured] Son had been turned in to the Department of Motor Vehicles or that [Insured] Son obtained appropriate insurance through another policy." The Law Firm alleged that State Farm had complied with S.C. CODE ANN. §38-77-340 in obtaining the Exclusion from the Insured Father. The Law Firm filed as an exhibit to the Complaint, documents purporting to be a copy of the Policy and the Exclusion.

The Law Firm sought to have the federal court declare:

1.     the Exclusion for the Policy "is an effective and valid endorsement excluding coverage for any loss occurring as a result of [Insured] Son's operation of the Motor Vehicle";

2.     the Exclusion "issued by State Farm excludes coverage for any bodily injury, loss, or damage occurring while [Insured] Son is operating a motor vehicle"; and

3.     "State Farm has no duty to defend or indemnify [Insured] Father or [Insured] Son for bodily injury, loss, or damage occurring as a result of [Insured] Son operating a motor vehicle[.]"

Discovery by Plaintiffs in the Federal Lawsuit revealed the following:

1.       The Policy declaration page identified as policy number "632 3189-B07-40 **B**" ("Policy 40B") that the Law Firm filed with the Complaint did not exist when the Collision occurred but was instead *created 31 days after the Collision*. Policy 40B purports to show it was effective two days before the Collision, purports to exclude the Insured Son from the coverage, creates a new policy number, and changes the policy period to have a retroactive date two days before the Collision and extends coverage to the following year.

2.       The actual Policy declaration page identified as policy number "632 3189-B07-40 **A**" ("Policy 40A") in effect at the time of the Collision did not exclude the [Insured] Son or refer to the Exclusion. Policy 40A provided coverage between February 7, 2021 – August 7, 2021, and was effective when the Collision occurred on June 12, 2021.

3.       After the Collision State Farm represented to its insureds and others that Policy 40A provided coverage.

4.       The Exclusion was never submitted or approved for use by the South Carolina Department of Insurance as required for it to be effective under S.C. CODE ANN. § 38-77-340. The South Carolina Department of Insurance confirmed the Exclusion purportedly dated October 16, 2013, was not submitted or approved.

5.       The Law Firm produced to Plaintiffs a "Certified Policy Record" from the "custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company" falsely certifying Policy 40B "was in effect on the loss date of 06/12/2021."

### Rules Governing Lawyer Conduct and the Professional Standard of Care

This portion of the Affidavit sets forth the Rules governing lawyer conduct in South Carolina and includes a summary of the professional standard of care for litigators concerning advocating meritorious claims and the evidence available to support claims.

### Lawyers' Oath

The Lawyer's Oath found at Rule 402(h), SCACR, contains the following statements that are accepted and sworn by all lawyers admitted to practice law in South Carolina, including the lawyers practicing with the Law Firm:

> To opposing parties and their counsel, I pledge fairness, integrity, and civility, not only in court, but also in all written and oral communications;

I will not pursue or maintain any suit or proceeding which appears to me to be unjust nor maintain any defenses except those I believe to be honestly debatable under the law of the land, …; [and]

I will employ for the purpose of maintaining the causes confided to me only such means as are consistent with trust and honor and the principles of professionalism, and will never seek to mislead an opposing party, the judge, or jury by a false statement of fact or law[.]

Rule 3.1, RPC, Rule 407, SCACR -- Meritorious Claims and Contentions

Rule 3.1, RPC, provides, in relevant part,

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.

Comments [1] and [2] to Rule 3.1, RPC, provide, with emphasis added,

[1]     The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, *but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed.* However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.

[2]     The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. *What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions.* Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by good faith argument for an extension, modification or reversal of existing laws.

Lawyers in South Carolina have been reprimanded for filing a lawsuit with no supporting facts and failing to conduct legal research before filing. See In re Young, 371 S.C. 394, 639 S.E.2d 674 (2007) (public reprimand).

Rule 3.3, RPC, Rule 407, SCACR -- Candor Toward the Tribunal

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the

lawyer;

----

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. ....

### FED. R. CIV. P. 11(b)

(b) <u>Representations to the Court</u>. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

----

(3) the *factual contentions have evidentiary support* or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.] (Emphasis added.)

The purpose of Rule 11 is "to deter conduct that frustrates the just, speedy, and inexpensive determination of civil actions," which can be satisfied by a showing unfairness, undue delay, or expense. <u>ContraVest Inc. v. Mt. Hawley Ins. Co.</u>, No. 9:15-CV-00304-DCN, 2018 WL 5793601, at *5 (D.S.C. Mar. 30, 2018); <u>Hunter v. Earthgrains Co. Bakery</u>, 281 F.3d 144, at 154–55 (4th Cir. 2002) ("Even if the law could colorably support a claim, a party violates Rule 11(b)(3) where there is no factual support for the asserted claims."); <u>Morris v. Wachovia Sec., Inc.</u>, 448 F.3d 268, 277 (4th Cir. 2006) ("Factual allegations violate Rule 11(b)(3) when they are unsupported by any information obtained prior to filing.") (internal quotation mark omitted).

Although the lawyers with the Law Firm litigated the Federal Lawsuit in federal court, the South Carolina Supreme Court's rulings applying South Carolina's analogous Rule 11 are instructive. "Under Rule 11(a), SCRCP, a party and/or the party's attorney may be sanctioned for filing a frivolous pleading, motion, or other paper, or for making frivolous arguments." <u>Ex parte Gregory</u>, 378 S.C. 430, 437, 663 S.E.2d 46, 50 (2008). The <u>Ex parte Gregory</u> opinion is instructive here because it provides some important guidance into lawyers' duties to investigate claims before filing lawsuits and about exercising professional judgment. Mr. Gregory's client had settled a personal injury lawsuit, the proceeds from which were subject to Medicaid lien. While the lawyer who handled the personal injury lawsuit, Mr. Malloy, was trying to resolve the Medicaid lien, Mr. Gregory and his co-counsel filed a lawsuit against Mr. Malloy asserting claims for an accounting

and conversion. Mr. Malloy transferred the settlement proceeds from his trust account to Mr. Gregory's co-counsel's trust account, and the Medicaid lien was resolved not long afterwards. Mr. Malloy filed a motion for sanctions against Mr. Gregory contending the claims, particularly the conversion claim, were frivolous. The trial court found the conversion claim was frivolous and that Mr. Gregory had not conducted a reasonable investigation before filing the claim. The South Carolina Supreme Court affirmed the trial court's rulings finding Mr. Gregory was subject to sanctions because of his failure to conduct a reasonable investigation into the claim before filing the lawsuit. The Opinion emphasized multiple failures in Mr. Gregory's pre-lawsuit investigation:

- Mr. Gregory had time to investigate whether Mr. Malloy had contacted Medicaid but failed to do so. Had he done so he would have learned much sooner that there was no basis for the conversion action.
- Mr. Gregory did not request a copy of Malloy's file.
- Mr. Gregory did not attempt to contact Mr. Malloy about the matter, even though his co-counsel suggested that he do so.
- Mr. Gregory relied on his client's unsubstantiated statements that Mr. Malloy had taken the settlement funds and made these accusations to a reporter even though he lacked any basis other than his client's statements for making these allegations.

In summary, under FED. R. CIV. P. 11(b) or South Carolina's Rule 11(a), SCRCP, lawyers have an affirmative duty to make a reasonable inquiry to determine whether there is evidence supporting their factual allegations before filing a lawsuit.

### RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 110(1)

(1) A lawyer may not bring or defend a proceeding or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good-faith argument for an extension, modification, or reversal of existing law.

----

*Cmt. b. Rationale.* Frivolous advocacy inflicts distress, wastes time, and causes increased expense to the tribunal and adversaries and may achieve results for a client that are unjust. Nonetheless, disciplinary enforcement against frivolous litigation is rare. Most bar disciplinary agencies rely on the courts in which litigation occurs to deal with abuse. Tribunals usually sanction only extreme abuse. Administration and interpretation of prohibitions against frivolous litigation should be tempered by concern to avoid overenforcement.

----

*Cmt. c. Procedural sanction against unfounded assertions in litigation.* Procedural rules modeled on Rule 11 of the Federal Rules of Civil Procedure impose affirmative obligations going beyond a requirement of minimally plausible position. In addition, courts have inherent power to impose sanctions against frivolous or otherwise abusive litigation tactics (see generally § 1, Comment *b*).

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Such procedural rules generally have four elements, although jurisdictions differ on particulars. First, a lawyer may file a pleading, motion, or other paper only after making an inquiry about facts and law that is reasonable in the circumstances. Second, the lawyer's conclusions as to the facts and law must meet an objective, minimal standard of supportability. Third, litigation measures may not be taken for an improper purpose, even in instances in which they are otherwise minimally supportable. Finally, remedies provided for violations may include sanctions such as fee shifting, which in appropriate cases may be imposed directly on an offending lawyer (see Comment g).

### Expert Opinions

It is my opinion to a reasonable degree of legal professional certainty based upon the available evidence that the Law Firm through its lawyers had—*and breached*—their independent duties to Plaintiffs to investigate and confirm the evidence they submitted in support of State Farm's claims in the Federal Lawsuit provided a non-frivolous basis to support the claims before filing the Federal Lawsuit. The lawyers at the Law Firm apparently either did not conduct a reasonable investigation to evaluate the evidence that State Farm provided to support the claim, or they may have proceeded with the Federal Lawsuit to maintain their relationship with State Farm, notwithstanding whether the evidence appeared to support a meritorious claim.

Lawyers at the Law Firm had, among other duties, professional duties as lawyers representing State Farm to, among other things, provide competent representation, including, but not limited to, avoiding pursuing claims that lacked merit and conducting a reasonable investigation into the evidence their client contended supported the claims. One of the first professional responsibility issues lawyers must confront is whether a potential lawsuit or other proceeding is sufficiently well-founded to satisfy the evidentiary standards for the court and ethical standards for the lawyer. Once a lawsuit is filed, similar evidentiary standards and ethical standards apply to whether the lawsuit should be continued. The standard of care and standard of conduct for lawyers in South Carolina required the lawyers at the Law Firm conduct a reasonable investigation into the merits of the claim State Farm wanted to pursue, including evaluating the evidence allegedly supporting the claim.

There is an important distinction between claims that are meritorious and claims that are frivolous. A frivolous issue is one lacking any basis in law or fact but is distinguishable from an issue that simply lacks merit. See In re Houston, 382 S.C. 164, 675 S.E.2d 721, 723 n. 1 (2009) (rejecting ODC's argument the lawyer violated Rule 3.1, RPC, by arguing ODC engaged in racial

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

profiling, the Supreme Court found the lawyer's claim was meritless but not frivolous). See also, THE RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 110 cmt. d (2000) (a claim or contention is frivolous when it is one "that a lawyer of ordinary competence would recognize as so lacking in merit that there is no substantial possibility that the tribunal will accept it.").

To meet the professional standard of care and ethical standard of conduct, a lawyer in South Carolina must make a reasonable inquiry into the factual and legal basis for the client's intended claims and contentions before filing suit. As stated earlier, it is my professional opinion to a reasonable degree of legal certainty based on the available evidence that the lawyers at the Law Firm failed to make a reasonable inquiry into the factual basis for State Farm's purported claims they asserted in the Federal Lawsuit.

The nature and extent of the investigation the lawyers were required to exercise before filing suit depended on several factors, including the complexity or nature of the claims or contentions, the time in which the investigation must be conducted, the resources available to conduct the investigation, the availability and cooperation of fact and expert witnesses, the availability of evidence that can be obtained without discovery, and the existence of parallel proceedings which may complicate or expedite the matters. All these factors reasonably support my opinion because whether the Exclusion was valid and enforceable and what version of the Insurance Policy was applicable were all straightforward factual determinations and not complex matters requiring extraordinary investigation measures; and State Farm's witnesses and witnesses at the South Carolina Department of Insurance were readily available as were the documents related to the Exclusion and the applicable Insurance Policy.

Under the circumstances, the lawyers at the Law Firm had, in my opinion, sufficient time and resources to reasonably investigate the factual basis and legal basis supporting State Farm's purported claims or contentions before filing the Federal Lawsuit. There were no statutes of limitations about to expire or any other justification for proceeding with the Federal Lawsuit before conducting a reasonable and prudent investigation into the evidence purporting to support State Farm's claims.

Based on the available evidence, it is my professional opinion to a reasonable degree of legal certainty based on the available evidence that the lawyers at the Law Firm were negligent, failed to meet the standard of care, and thereby breached their independent professional duties to the Federal Court and by natural extension, to Plaintiffs, by, among other things, failing to

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

reasonably investigate and evaluate the purported evidence State Farm filed with its Complaint to support the declaratory judgment claim sought in the Federal Lawsuit.

It is my opinion that as a direct result of the Law Firm's acts and omissions, Plaintiffs suffered losses, including legal fees incurred in defending the Federal Lawsuit, emotional distress in having to focus on their father's death during the pendency of the Federal Lawsuit, and loss of the value of their time as well.

Lawyers play a critical role in upholding the integrity of the legal system by ensuring that only meritorious claims are brought before the courts. By diligently evaluating evidence, lawyers can avoid filing frivolous lawsuits, reduce unnecessary litigation involving third parties, and better serve their clients' interests. The failures of the lawyers, at the Law Firm, in this regard, in my professional opinion to a reasonable degree of legal certainty, were a breach of their independent duties to the Court and their client's adversaries – the Plaintiffs, which proximately resulted in damages to Plaintiffs.

### Qualifications

1.      My resume, summarizing my professional qualifications, is attached as Exhibit 1.

2.      I am a lawyer licensed to practice law in the State of South Carolina and in the State of Georgia since 1992.

3.      I am the sole shareholder of PENDARVIS LAW OFFICES, P.C., located at 710 Boundary Street, Unit A1, Beaufort, South Carolina.

4.      My areas of practice and expertise generally relate to litigation matters, including litigation of legal malpractice claims, breach of fiduciary duty claims, business tort claims, personal injury claims, and on occasion appeals from those litigated matters. I also provide lawyers with advice on ethics and professional responsibility matters, including representing lawyers on disciplinary matters before the South Carolina Supreme Court's Office of Disciplinary Counsel and the Commission on Lawyer Conduct. I have been regularly engaged in these areas of practice since 1992. In addition, I obtained board certification in legal malpractice litigation by the American Board of Professional Liability Attorneys, and that Board Certification is recognized by the South Carolina Supreme Court.

5.      I have been retained by Justin S. Kahn, Esq. with KAHN LAW FIRM, LLP as an expert witness in this matter.

6.      In rendering my opinions, I have reviewed the available evidence of the kinds of

factual sources and legal authorities customarily relied upon by experts in the field of legal ethics, lawyer malpractice, and the liability of lawyers and law firms. I have had access to the factual materials available, including the following:

        a.      August 16, 2021, Complaint filed on behalf of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

        b.      August 16, 2021, Exhibit 1 of the Complaint filed on behalf of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, including the purported Policy and the Exclusion;

        c.      February 10, 2022, The Estate of James K. Workman's Notice, Motion and Memorandum in Support of Motion for Sanction against State Farm;

        d.      December 14, 2021, Rule 30(b)(6) Deposition transcript of Shay Anderson, on behalf of State Farm;

        e.      June 18, 2021, State Farm claim letter addressed to Melvin O. Lamb, III;

        f.      June 29, 2021, State Farm confirmation of coverage letter addressed to Kahn Law Firm;

        g.      June 29, 2021, State Farm investigation of claims letter addressed to Melvin O. Lamb, III;

        h.      June 29, 2021, State Farm investigation of claims letter addressed to Melvin O. Lamb, Jr.;

        i.      July 16, 2021, State Farm Confirmation of Coverage, digitally signed by Darren P. Murdoch;

        j.      August 5, 2021, State Farm Certified Policy Record with Declarations Page;

        k.      November 23, 2021, Plaintiff's Responses to The Estate of James K. Workman's First Discovery Requests;

        l.      State Farm Declarations Page for Policy Period of February 07, 2020 to August 7, 2020;

        m.      State Farm Declarations Page for Policy Period August 23, 2020 to February 07, 2021;

        n.      Melvin O. Lamb, Jr.'s photo of South Carolina Insurance Card with State Farm;

        o.      State Farm Declarations Page for Policy Period June 10, 2021 to February

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

07, 2022;

      p.      January 28, 2022, Plaintiff's Objections and Responses to The Estate of James K. Workman's Request for Admission and Third Discovery Requests;

      q.      December 13, 2021, Justin S. Kahn, Esq.'s letter addressed to Gwen Fuller-McGriff., Esq., Deputy Director and General Counsel for State Farm as to a FOIA Request with the enclosed blank Form 6023DC Driver Exclusion Form;

      r.      January 4, 2022, SOUTH CAROLINA DEPARTMENT OF INSURANCE letter to Justin S. Kahn, Esq., as to FOIA Request;

      s.      January 28, 2022, Plaintiff's Objections and Responses to The Estate of James K. Workman's Second Discovery Requests;

      t.      October 17, 2022, draft Complaint of Robert C. Workman, Individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew Workman vs. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and GALLIVAN, WHITE & BOYD, P.A.; and

      u.      March 28, 2023, draft Complaint of Robert C. Workman, Individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew T. Workman vs. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and GALLIVAN, WHITE & BOYD, P.A.

The Affiant further sayeth not.

                                             Thomas A. Pendarvis, Affiant

SWORN to before me this 4th day of April, 2023

                          (L.S.)
NOTARY PUBLIC FOR SOUTH CAROLINA
My commission expires: 6\15\2007

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# CURRICULUM VITAE

## THOMAS A. PENDARVIS, ESQ.

**BORN:**

Augusta, Georgia, 1961

**FAMILY:**

Elizabeth Ann Pendarvis (wife)
A. Miciah Pendarvis (daughter, age 21)
Camille S. Pendarvis (daughter, age 19)
Tallie C. Pendarvis (daughter, age 17)

**EDUCATION:**

University of South Carolina, School of Law
    Graduated May 1992
    Juris Doctor

University of Georgia, School of Business
    Graduated August 1984
    Bachelor of Business Administration

Westside High School, Augusta, Georgia
    Graduated 1979

**EMPLOYMENT:**

PENDARVIS LAW OFFICES, P.C.
    Owner / President (May 2004 - present)

LEWIS, BABCOCK & HAWKINS, L.L.P.
    Law Clerk (May 1990 - May 1992)
    Associate (June 1992 - March 1997)
    Partner (April 1997 - April 2004)

PENDARVIS CHEVROLET-OLDS CO., INC.
    Shareholder / General Manager (1984 -1989)

**BOARD CERTIFICATIONS:**

American Board of Professional Liability Attorneys
    Board Certified in Legal Malpractice (2011 - present)

**EXHIBIT 1**

**ORGANIZATIONS:**

American Bar Association (1992 - present)
    Torts and Insurance Practice Section (1993 - present)
    Litigation Section (1993 - present)
    Lawyers' Professional Liability Consortium (2006 - present)

Association of Professional Responsibility Lawyers (2020 – present)

Association of Trial Lawyers of America (1992 - 2007)
    Professional Negligence

American Association of Justice (2007 - present)
    Professional Negligence

Beaufort County Bar Association (2004 - present)

Ducks Unlimited (intermittent 1985 - present)

State Bar of Georgia (1992 - present)

National Wild Turkey Federation (intermittent 1984 - present)

Richland County Bar Association (1992 - 2004)

Rotary Club, Sea Island - Beaufort (March 2005 - 2009; inactive status)

South Carolina Bar (1992 - present)
    Torts and Insurance Practice Section Council (2006-2008)
    Professional Responsibility Committee (2009 - 2014; 2016 - present)
    Professional Liability Committee (2014 - 2016)

South Carolina Trial Lawyers Association (1992 - 2008)

South Carolina Association of Ethics Counsel (2008 - present)

South Carolina Association of Justice (2008 - present)

South Carolina Trial Lawyers Association Student Chapter (1990 -1992)

United States Court of Appeals for the Eleventh Judicial Circuit (1997 - present)

United States Court of Appeals for the Fourth Judicial Circuit (1992 - present)

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

United States Court of Appeals for the Ninth Judicial Circuit (2002 - present)

United States Court of Federal Claims (1997 - present)

United States District Court for the District of South Carolina (1993 - present)

United States District Court for the Middle District of Georgia (1995 - present)

United States District Court for the Northern District of Georgia (1995 - present)

United States District Court for the Southern District of Florida (1992 - present)

University of Georgia Martial Arts Club
    President & Resident Black Belt (1981 - 1984)

University of South Carolina Environmental Law Journal
    Member (1991 - 1992)

**HONORS:**

University of South Carolina School of Law Dean's List (Fall 1990, Spring 1991, Fall 1992)

University of South Carolina School of Law President's List (Spring1992)

**LECTURES / OTHER:**

Moot Court Judge University of South Carolina School of Law (Fall 1995 - Fall 1997)

St. Mary's Hospital, Athens, Georgia (March 9, 2002) (Survivor 2002: The Litigation Labyrinth: Tips to Avoid Needless Professional Negligence Claims)

South Carolina Bar (March 2004) (Electronic Discovery)

South Carolina Trial Lawyers Association (August 2005) (Digital Discovery For the Trial Lawyer)

South Carolina Trial Lawyers Association (August 2006) (Paperless Office)

South Carolina Trial Lawyers Association (August 2007) (Legal Malpractice Claims)

South Carolina Bar (February 2007) (Ethical Issues to Consider in Avoiding Legal Malpractice Claims)

3

South Carolina Bar (December 2008) (Ethical Rules and Principles to Consider to Minimize Legal Malpractice Exposure)

South Carolina Association of Justice (August 2009) (Better Than The Bailout, Faster Than A Speeding Bullet: CaseMap and Other Case Management Programs)

South Carolina Bar (February 2011) (20/20: An Optimal View of 2010 – Current Issues in Professional Responsibility: Lawyers Leaving Law Firms and What Constitutes the Client 's File)

South Carolina Association of Justice (August 2012) (Avoiding Legal Malpractice Traps in Litigation)

South Carolina Bar (October 2012) (Deposition Essentials: Ethics in Witness Preparation and Deposition Conduct)

South Carolina Association of Ethics Counsel (January 2013) (Overview of Lawyer's Duty to Report Professional Misconduct by Other Lawyers: The Lawyer 's Whistle-Blower Rule)

South Carolina Association of Justice (August 2013) (Digital Law Practice: So You Want to Go Paperless......)

South Carolina Association of Ethics Counsel (January 2014) (Lawyer's Professional Responsibility / Joint or Vicarious Liability for Co-Counsel's Errors – "Fee Splitting")

South Carolina Bar (February 2014) (Lawyer's Professional Responsibility / Joint or Vicarious Liability for Co-Counsel 's Errors – "Fee Splitting")

South Carolina Bar (May 2014) (Deposition Essentials: Ethics in Witness Preparation and Deposition Conduct)

South Carolina Association of Justice (August 2014) (Ethics Update & Co-Counsel Tips)

South Carolina Association of Ethics Counsel (January 2015) (Just What Are You Doing?: Defining and Limiting the Scope of the Representation)

Richardson, Patrick, law firm CLE (April 2015) (Just What Are You Doing?: Defining and Limiting the Scope of the Representation)

Inaugural CLE Program - (May 2015) (Law Firm Technology)

South Carolina Association of Justice (August 2015) (Just What Are You Doing?: Defining and Limiting the Scope of the Representation)

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

South Carolina Bar (September 2015) (Lawyer's Duty to Report Professional Misconduct by Other Lawyers: The Lawyer's Whistle-Blower Rule.)

South Carolina Bar (February 2016) (Torts Update – Ethics Panel)

South Carolina School of Law (March 2016) (Technology For a Paperless Small Law Firm)

South Carolina Association of Justice (August 2016) (Grieving from Grievance: "Don't Threaten Me with a Good Time at ODC")

South Carolina Bar (January 2017) ((Its Better in Beaufort CLE: "Deposition Essentials: Ethics in Witness Preparation and Deposition Conduct")

South Carolina School of Law (January 2018) (Technology For a Paperless Small Law Firm)

South Carolina Bar (March 2018) (Its Better in Beaufort CLE: Technology For a Paperless Small Law Firm)

South Carolina School of Law (March 2018) (CaseMap - A Litigation Solution)

South Carolina Association of Justice (August 2018) (Just What Are You Doing?: Defining and Limiting the Scope of the Representation)

South Carolina Association of Justice (August 2018) (Preserving Sanity and Coverage: Whatcha Need to Say to Your Client and Carrier if Something Might Have Gone South)

South Carolina Bar (October 2018) (Managing your time: A Paradigm Adjusted for Ethical Compliance and Lawyer Sanity)

South Carolina Bar (November 2018) (The Ethics of Lawyer Accounting: Trust Accounts, Safe Keeping of Client Property; and Encryption of Sensitive Financial Data)

South Carolina Association of Justice (August 2019) (Ethics Rules – Confidentiality and Advertising in light of Recent Supreme Court Order)

RICHARDSON PATRICK WESTBROOK & BRICKMAN Litigation Seminar (November 2019) ((Deposition Essentials: Ethics in Witness Preparation and Deposition Conduct)

South Carolina Bar (February 2020) (Ethics in Motion Practice)

South Carolina Bar (September 2020) (Hot Tips Family Court - Video Conferencing Risk Management Considerations)

5

South Carolina Bar (October 2020) (Managing Time: Client Communications, Calendaring & Docket Management, File Storage & Document Retention)

South Carolina Association of Justice (August 2021) (The Ethics of Virtual Law Practice - We've got to draw the line on ethics somewhere, at least in pencil)

South Carolina Bar (October 2021) (Managing Time: Client Communications, Calendaring & Docket Management, File Storage & Document Retention)

South Carolina Bar (January 2022) (Ethics Overview for the Government Lawyer)

South Carolina Association of Justice (August 2022) (Professional Responsibility – Ethics: Lawyer's obligations in responding to a Subpoena for a client's file)

South Carolina School of Law (September 2022) (I'd Love to Tell You, But ..., - Confidentiality for Prospective Clients + Responding to Subpoena for Client File)

**BAR ADMISSIONS:**

South Carolina Supreme Court
South Carolina Court of Appeals
Delaware Supreme Court
United States District Court for the District of South Carolina
United States District Court for the Southern District of Florida
United States Court of Appeals for the Fourth Circuit
United States Court of Appeals for the Eleventh Circuit
United States Court of Appeals for the Ninth Circuit

November 4, 2022



**DOING THE RIGHT THING**

# Code of Conduct

EX. B

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Code of Conduct / DOING THE RIGHT THING / TABLE OF CONTENTS



## 1
### Our Commitment

4   A Message from Michael Tipsord
5   What You Should Do
6   Leading by Example
6   Making Good Decisions
7   Sharing Concerns
7   How to Use the Compliance & Ethics Hotline
8   Zero Tolerance for Retaliation

## 2
### Mutual Trust

10  A Respectful Workplace
11  Discrimination and Harassment
12  Workplace Safety and Security
13  Drugs and Alcohol

## 3
### Integrity

15  Gifts, Gratuities and Improper Incentives
16  Conflicts of Interest
17  Preventing Fraud
17  Improper Payments
18  Anti-Money Laundering and Terrorist Financing
18  Restrictions on Employment

## 4
### Financial Strength

20  Intellectual Property and Confidential Information
22  Company Resources and Information Systems
23  Information Retention
23  Accurate Record Keeping and Reporting
23  Protecting Inside Information

## 5
### Quality Service and Relationships

25  Fair Dealing
26  Fair Competition
27  Speaking on Behalf of Our Company
27  Environmental Protection

## 6
### Code of Conduct Form Completion

ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

2

Code of Conduct / DOING THE RIGHT THING / OUR COMMITMENT

# A Message from Michael Tipsord



As a team, we help people live life confidently. This is our mission, simply stated.

We have thousands of opportunities to build confidence with customers – and each other – every day. This starts with each of us consistently demonstrating our shared values of quality service and relationships, mutual trust, integrity and financial strength.

The Code of Conduct is a resource that helps us live our shared values and sets the expectation for appropriate behavior.

We hold ourselves to the highest standards of ethics and integrity. When representing our Company, apply good judgment, be honest and treat others with respect.

We also have a responsibility – and an obligation – to question any practice or business behavior that doesn't measure up. If you see something that falls outside the boundaries of appropriate behavior, I want you to speak up. No matter what the issue is, no matter who is involved. We must have the courage and confidence to act.

Leaders have an additional role – you help create an environment where we can talk openly about how we do business. Our Company will not tolerate retaliation against any employee who raises issues of potential concern, and we expect all leaders to model this commitment.

Our customers expect us to do the right thing.

We depend on each other to do the right thing.

Please look to our Code for guidance if you need to raise concerns or need help on a matter of ethics or compliance.

We define our Company through our actions and how we interact with each other, our customers and our communities. We have built a trusted brand by living our values and keeping our promises. By protecting our brand, we will continue to be there for our customers, helping more people in more ways.

**Michael L. Tipsord**
Chairman, President and CEO
State Farm Mutual Automobile Insurance Company

4

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Code of Conduct / DOING THE RIGHT THING / **OUR COMMITMENT**

# Scope

The Code of Conduct applies to all State Farm Mutual Automobile Insurance Company directors, officers and employees, as well as to directors, officers and employees of each affiliate of State Farm Mutual Automobile Insurance Company. State Farm Mutual Automobile Insurance Company and its affiliates are referred to herein collectively as "Company."

# What You Should Do

This Code of Conduct, or "Code," is based around our mission, our vision and our shared values of mutual trust, integrity, financial strength and quality service and relationships.

As employees, we are accountable for our own actions. We must follow our policies, rules and guidelines, and comply with all laws and regulations applicable to Company business. This Code does not cover every situation. Additional information that complements the Code can be found in the resources at the end of this document. In some instances, you may need additional information and guidance from your supervisor, another member of leadership or Human Resources & Development. You may also use the Open Door policy, or contact the Compliance & Ethics Hotline.

We have an obligation to raise our concerns if we know of or suspect improper conduct or a breakdown of business or security controls. This includes situations where we believe we have observed or have been instructed to do something that is illegal or unethical or violates Company policy. Remember that resources are available to help, including those listed in this Code. You are expected to cooperate fully with any investigative efforts.

Generally, people try to do the right thing, but for those unfortunate situations where employees do not follow Company expectations, disciplinary action may result.

## Doing the Right Thing: 👍

- **Exemplify our mission, vision and shared values.**

- **Act in an honest, legal and ethical manner. Be aware that your behavior reflects on the Company.**

- **Adhere to the Sales Practices Philosophy and Principles.**

- **Be familiar with the information contained in this Code and Company policies.**

- **Remember, pressures or demands due to business or personal conditions are not an excuse for violating the law, our Code or any Company policy.**

ELECTRONICALLY FILED – 2023 May 19 3:47 PM – CHARLESTON – COMMON PLEAS – CASE#2023CP1001832

# Preventing Fraud

Fraud is intentional or reckless conduct that deceives or is intended to deceive someone. This includes fraudulent, illegal, unauthorized or dishonest acts. We manage the risk of fraud through our shared value of integrity, utilizing our business processes, controls and the standards in this Code.

We all have a duty to follow established procedures and report suspected fraud, misconduct or dishonesty to your supervisor, another member of leadership, Human Resources & Development, the Open Door policy or contact the Compliance & Ethics Hotline.

# Improper Payments

Acts of bribery or corruption are designed to influence, obtain or retain an unethical business advantage. We select supplies, materials and services objectively and ethically, without gaining any advantage for the Company or for us personally. Corruption, bribery and kickbacks are contrary to our business standards. We comply with all applicable laws that forbid bribery both of public officials and within the private sector. We also comply fully with the Foreign Corrupt Practices Act, which is intended to prevent corrupt practices in international business transactions, prohibiting bribery of officials and employees who work for foreign governments.

There can be severe consequences if an employee violates anti-bribery or anti-corruption laws. Even the perception by others that we may have acted illegally can be damaging. For this reason, be aware of how our actions might be viewed by others.



ELECTRONICALLY FILED - 2023 May 19 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Code of Conduct** / DOING THE RIGHT THING / CODE OF CONDUCT FORM COMPLETION

# Code of Conduct Form Completion

We believe in following all applicable laws and regulations, and in behaving ethically and honestly. In accordance with these principles, we all must complete and submit the Code of Conduct Form annually, alongside the annual Code of Conduct training course.  The form should also be filled out any time an actual or potential violation of this Code or conflict of interest arises.

The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest. Submitting the form indicates that you have read and understood the Code of Conduct and:

- Have considered possible conflicts of interest.

- Have disclosed information about convictions for certain offenses.

- Have complied with the Code of Conduct to the best of your knowledge, with the exception of any situations described on the Code of Conduct Form.

- Will inform your immediate supervisor, or Human Resources & Development of any changes to any of these listed items.

- Will contact leadership, Human Resources & Development, use the Open Door policy or contact the Compliance & Ethics Hotline if you have concerns related to employee or business conduct.

Our company supports our employees' rights to speak out about matters of public concern or engage in certain activities related to the terms and conditions of their employment. Nothing in this Code or in any of our policies is intended to limit or interfere with the right to engage in activities protected under Section 7 of the U.S. National Labor Relations Act, such as discussions related to wages, hours, working conditions, health hazards and safety issues.

The existence and content of this Code of Conduct will be disclosed to policyholders and will be available on the company website.

The provisions of this Code are in addition to, and do not modify, replace or supersede the company's other policies or procedures.



# South Carolina
# Department of Insurance

Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

————————

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Acting Director

April 19, 2023

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
STATE FARM MUTUAL AUTOMOBILE INS CO
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On April 19, 2023, I accepted service of the attached Summons, Complaint, and Plaintiff's First Discovery Requests on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to spurvis@doi.sc.gov**. When replying, please refer to File Number 193254, Robert C. Workman , et al. v. State Farm Mutual Automobile Insurance Company, et al., 2023-CP-10-01832.

By:

Gwendolyn  McGriff
General Counsel
(803)737-6732

Sincerely Yours,

Michael Wise
Acting Director
State of South Carolina
Department of Insurance

Attachment

CC:     Justin S. Kahn
        P.O. Box 31397
        Charleston, SC    29417

ELECTRONICALLY FILED - 2023 Apr 20 3:28 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832



# South Carolina
# Department of Insurance
Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Acting Director

ELECTRONICALLY FILED - 2023 Apr 19 3:28 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

April 19, 2023

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
STATE FARM MUTUAL AUTOMOBILE INS CO
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On April 19, 2023, I accepted service of the attached Summons, Complaint, and Plaintiff's First Discovery Requests on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to spurvis@doi.sc.gov.** When replying, please refer to File Number 193254, Robert C. Workman , et al. v. State Farm Mutual Automobile Insurance Company, et al., 2023-CP-10-01832.

By:

Gwendolyn McGriff
General Counsel
(803)737-6732

Sincerely Yours,

Michael Wise
Acting Director
State of South Carolina
Department of Insurance

Attachment

CC:   Justin S. Kahn
      P.O. Box 31397
      Charleston, SC   29417

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF CHARLESTON | ) | |
| | ) | CIVIL ACTION NO. 2023-CP-10-01832 |
| Robert C. Workman, Individually and as | ) | |
| Personal Representative of the Estate | ) | |
| of James K. Workman, Kelly Workman, | ) | |
| Tick and Matthew T. Workman, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **ACKNOWLEDGMENT OF** |
| v. | ) | **RECEIPT OF NOTICE OF** |
| | ) | **REMOVAL** |
| State Farm Mutual Automobile Insurance | ) | |
| Company and Gallivan, White & Boyd, | ) | |
| P.A., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Receipt of a copy of the Notice of Removal filed by Defendant State Farm Mutual

Automobile Insurance Company in the above-captioned action is hereby acknowledged.


_____
Clerk of Court, Charleston County



Common Pleas

**Case Caption:**     Robert C Workman , plaintiff, et al VS   State Farm Mutual
                      Automobile Insurance Company , defendant, et al

**Case Number:**      2023CP1001832

**Type:**             Acknowledgement of Filing of Removal

So Ordered

s/Julie J. Armstrong, Charleston County Clerk of
Court, by BLC

Electronically signed on 2023-05-23 15:41:37     page 2 of 2

ELECTRONICALLY FILED - 2023 May 19 3:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

2023-CP-10-1832

A True Copy
By: Robin L. Blume, Clerk
Deputy Clerk: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Robert C. Workman, individually and as Personal Representative of the Estate of James K. Workman, *et al.*, | ) ) ) ) | Civil Action No. 2:23-2133-RMG |
| Plaintiffs, | ) ) | **ORDER AND OPINION** |
| v. | ) ) ) | |
| State Farm Mutual Automobile Insurance Company, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

Before the Court is Plaintiffs' motion to remand. (Dkt. No. 11). For the reasons set forth below, Plaintiffs' motion is granted.

**Background**

Plaintiffs initiated this action against Defendants State Farm Mutual Automobile Insurance Company ("State Farm") and Gallivan, White & Boyd, P.A. (the "Law Firm") in state court alleging Defendants conspired to deny coverage to Melvin O. Lamb III, an individual who killed Plaintiff James K. Workman as the result of an automobile accident. Plaintiffs allege that State Farm forged documents to deny coverage to Lamb and that the Law Firm used the forged documents while defending State Farm in a declaratory judgment action. Plaintiffs allege that eventually "State Farm sought to dismiss its own lawsuit" and "agreed to pay for the underlying claims for which it previously denied coverage, and admitted documents and other representations filed in Court and provided to the Plaintiffs and others in the discovery process were not truthful." (Dkt. No. 1-1 at 7). Plaintiffs bring the instant action to "hold the Defendants responsible for their improper actions and conduct." (*Id.* at 8). Plaintiffs bring claims for (1) abuse of process, (2)

-1-

aiding and abetting abuse of process, (3) fraud, (4) negligent misrepresentation, (5) negligence, (6) conspiracy, and (7) Unfair Trade Practices.

On May 19, 2023, State Farm removed this action to federal court. (Dkt. No. 1).  State Farm asserts complete diversity exists because the Law Firm was fraudulently joined and should not be considered for purposes of diversity jurisdiction under 28 U.S.C. § 1332. (*Id.* at 3).

Plaintiff now moves for the Court to remand this action. (Dkt. Nos. 11 and 20).  State Farm opposes. (Dkt. No. 18).  The Law Firm also opposes. (Dkt. No. 19).

Plaintiffs' motion is fully briefed and ripe for disposition.

## Legal Standard

"To show fraudulent joinder, the removing party must demonstrate either (1) outright fraud in the plaintiff's pleading of jurisdictional facts or (2) that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 424 (4th Cir.1999) (internal quotation marks omitted). "The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Id.* "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Id.* The plaintiff need not establish that he will ultimately succeed on his claims; "[t]here need be only a slight possibility of a right to relief." *Id.* at 425. In order to determine whether a pleading is fraudulent, the Court is not bound by the allegations of the pleadings, but instead it may consider the entire record and may resolve the issue by any means available. *AIDS Counseling & Testing Centers v. Group W Television, Inc.,* 903 F.2d 1000, 1004 (4th Cir.1990).

## Analysis

The complaint alleges that the Law Firm is a South Carolina corporation. (Dkt. No. 1-1 at 9). The complaint does not allege of what state State Farm is a citizen but the parties' briefing makes clear they agree State Farm is an Illinois corporation with its principal place of business in Illinois. (Dkt. No. 1 at 3).

In *Stiles v. Onorato*, 318 S.C. 297, 300 (1995) the South Carolina Supreme Court held "an attorney may be held liable for conspiracy where, in addition to representing his client, he breaches some independent duty to a third person or acts in his own personal interest, outside the scope of his representation of the client." *See Gaar v. North Myrtle Beach Realty Co., Inc.*, 287 S.C. 525 (Ct. App. 1986) (holding "an attorney is immune from liability to third persons arising from the performance of his professional activities as an attorney on behalf of and with the knowledge of his client. Accordingly, an attorney who acts in good faith with the authority of his client is not liable to a third party in an action for malicious prosecution").

After a careful review of the parties' briefing, the Court grants Plaintiffs' motion. Citing persuasive authority form the Third Circuit, the Fourth Circuit has stated that the inquiry into the validity of "a complaint is more searching under Rule 12(b)(6) than when [a] party claims fraudulent joinder." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir.1992)). In *Batoff*, the court noted that a defendant is fraudulently joined if the claims asserted are "not even colorable, *i.e.*, [are] wholly insubstantial and frivolous." 977 F.2d at 852 ("[I]t is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted."). Here, the complaint contains allegations the Law Firm may have knowingly used

"bogus documents" and "intentionally tried to hide facts by redacting" certain information on allegedly forged documents—information which would "have shown amounts different than the actual charges for the policy existing on the day of the collision and risk Defendants' deception being exposed." (Dkt. No. 1-1 at 18, 21-22). These allegations suffice to show a "possibility" the Law Firm acted in its own personal interest. Put differently, read under the standard required by binding Fourth Circuit case law, *Hartley*, 187 F.3d at 424, the claims asserted against the Law Firm are not "wholly insubstantial" or "frivolous." *See Batoff*, 977 F.32d at 853 (noting that "a claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction").

Accordingly, the Court finds the Law Firm was not fraudulently joined and the motion to remand is granted.

### Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiffs' motion to remand (Dkt. No 11). All other pending motions are denied as moot.

**AND IT IS SO ORDERED.**

<div style="text-align:right">

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

</div>

August 2, 2023
Charleston, South Carolina

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF CHARLESTON | ) | NINTH JUDICIAL CIRCUIT |

| | |
|---|---|
| | )   Case No. 2023-CP-10-01832 |
| Robert C. Workman, Individually and as | ) |
| Personal Representative of the Estate of | ) |
| James K. Workman, Kelly Workman | ) |
| Tick and Matthew T. Workman, | ) |
| | ) |
| Plaintiffs, | )   **DEFENDANT** |
| | )   **STATE FARM MUTUAL** |
| vs. | )   **AUTOMOBILE INSURANCE** |
| | )   **COMPANY'S ANSWER** |
| State Farm Mutual Automobile Insurance | ) |
| Company and Gallivan, White & Boyd, | )   **(Jury Trial Requested)** |
| P.A., | ) |
| | ) |
| Defendants. | ) |

Defendant State Farm Mutual Automobile Insurance Company ("State Farm") answers Plaintiffs' Complaint as follows, with each and every allegation denied unless expressly admitted or otherwise qualified herein.

## FOR A FIRST DEFENSE

1.    The allegations of paragraph 1 are denied.

2.    Answering paragraph 2, State Farm admits a June 12, 2021, automobile accident led the Estate of James K. Workman (the "Estate") to assert a liability claim, Claim No. 40-21B2-49D, with State Farm.

3.    The allegations of paragraph 3 are admitted.

4.    Answering paragraph 4, State Farm admits it sent a letter to its insured Melvin O. Lamb, Jr. dated June 29, 2021, it sent a letter to Melvin O. Lamb III dated June 29, 2021, and that both letters included the quoted statements in paragraph 4. The remaining allegations in paragraph 4 are denied.

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

5.      Answering paragraph 5, State Farm admits it sent the Kahn Law Firm as counsel for the Estate a letter dated June 29, 2021 enclosing a Confirmation of Coverage in relation to Claim No. 40-21B2-49D and that the letter included the quoted statement in paragraph 5. The remaining allegations in paragraph 5 are denied.

6.      Answering paragraph 6, State Farm admits the Confirmation of Coverage included the quoted statement in paragraph 6.

7.      The allegations of paragraph 7 are denied.

8.      Answering paragraph 8, State Farm admits it contacted the law firm of Gallivan White & Boyd, P.A., ("GWB") before July 26, 2021 to obtain legal representation in relation to the liability claims made under Claim No. 40-21B2-49D. Any remaining allegations in paragraph 8 are denied.

9.      State Farm lacks information or knowledge sufficient to determine the truth of the allegations in paragraph 9 and, therefore, those allegations are denied.

10.     State Farm lacks information or knowledge sufficient to determine the truth of the allegations in paragraph 10 and, therefore, those allegations are denied.

11.     The allegations of paragraph 11 are denied.

12.     The allegations of paragraph 12 are denied.

13.     The allegations of paragraph 13 are denied.

14.     The allegations of paragraph 14 are denied.

15.     The allegations of paragraph 15 are denied.

16.     Answering paragraph 16, State Farm admits it sought to dismiss the Declaratory Judgment Action it filed, Civil Action No. 2:21-cv-2623-MBS (the "DJA"), and it extended coverage on Claim No. 40-21B2-49D. The remaining allegations in paragraph 16 are denied.

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

17.    The allegations of paragraph 17 are denied.

18.    The allegations of paragraph 18 are admitted, upon information and belief.

19.    The allegations of paragraph 19 are admitted, upon information and belief.

20.    The allegations of paragraph 20 are admitted, upon information and belief.

21.    The allegations of paragraph 21 are admitted, upon information and belief.

22.    The allegations of paragraph 22 are admitted, upon information and belief.

23.    The allegations of paragraph 23 are admitted.

24.    The allegations of paragraph 24 require no response because they are immaterial, impertinent, and beyond the information allowed under Rule 8(a) (1) through (3). State Farm moves to strike these allegations.

25.    The allegations of paragraph 25 are admitted, upon information and belief.

26.    Answering paragraph 26, State Farm admits the Court of Common Pleas has subject matter jurisdiction over the claims of Robert C. Workman as Personal Representative of the Estate at the time of this Answer. Otherwise, State Farm denies the allegations in paragraph 26 and incorporates by reference its affirmative defense of lack of standing.

27.    Answering paragraph 27, State Farm denies the alleged actions and conduct referenced as set forth throughout this Answer. Otherwise, State Farm admits the Court has personal jurisdiction over it in this action.

28.    Answering paragraph 28, State Farm denies the allegations of wrongful conduct and material effects. Otherwise, State Farm, at this time, agrees venue is appropriate in Charleston County, South Carolina.

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

29.     Paragraph 29 does not contain any allegations and therefore requires no response. To the extent a response is required, State Farm denies the paragraph, its incorporation of the affidavit of Thomas A. Pendarvis, Esq., and any allegations therein.

30.     The allegations of paragraph 30 are admitted, upon information and belief.

31.     The allegations of paragraph 31 require no response because they are immaterial, impertinent, and beyond the information allowed under Rule 8(a) (1) through (3). State Farm moves to strike these allegations.

32.     Answering paragraph 32, State Farm admits James K. Workman died as a result of the June 12, 2021 collision. The remaining allegations of paragraph 32 require no response because they are immaterial, impertinent, and beyond the information allowed under Rule 8(a) (1) through (3). State Farm moves to strike those remaining allegations.

33.     The allegations of paragraph 33 are admitted.

34.     The allegations of paragraph 34 are denied because before the June 12, 2021 collision, Melvin O. Lamb, Jr., the named insured of the State Farm policy insuring the 2004 Tahoe involved in the collision (the "Tahoe Policy"), signed and accepted an endorsement to the policy excluding Melvin O. Lamb, III from coverage (the "Lamb Excluded Driver Endorsement").

35.     Answering paragraph 35, State Farm admits that the Tahoe Policy's declarations pages created prior to the June 12, 2021 collision did not specifically identify Melvin O. Lamb, III as an excluded driver or specifically identify Driver Exclusion Form 6023DC, but avers that each and every one of the Tahoe Policy's declaration pages stated the Tahoe Policy consisted of the declarations page, the policy booklet, and "any endorsements that apply," and further avers that before the June 12, 2021 collision, Melvin O. Lamb, Jr., the named insured of the Tahoe Policy, signed and accepted the Lamb Excluded Driver Endorsement.

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

36.     Answering paragraph 36, State Farm admits Melvin O. Lamb, Jr. requested cancellation of the Tahoe Policy on July 26, 2021, and on August 2, 2021, his cancellation request was processed, with the effective date of cancellation being June 13, 2021.

37.     The allegations of paragraph 37 are admitted.

38.     The allegations of paragraph 38 are admitted.

39.     Answering paragraph 39, State Farm craves reference to the June 29, 2021 letters, misquoted in paragraph 39, for the content thereof and, therefore, denies the allegations of paragraph 39 as stated.

40.     Answering paragraph 40, State Farm admits only that after its underwriting department discovered a processing omission with respect to the Lamb Excluded Driver Endorsement, which occurred on or around July 9, 2021, a service request was initiated for the complex unit of State Farm's underwriting department to complete the entry of the Lamb Excluded Driver Endorsement on the Tahoe Policy. Any remaining allegations in paragraph 40 are denied.

41.     The allegations of paragraph 41 are denied.

42.     The allegations of paragraph 42 are denied.

43.     Answering paragraph 43, State Farm admits only that the declarations page attached to the Complaint filed in the DJA was redacted.

44.     The allegations of paragraph 44 are denied.

45.     The allegations of paragraph 45 are denied; State Farm did not create nor use a "false declarations page."

46.     The allegations of paragraph 46 are denied; State Farm did not create nor use "false documents."

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

47.     The allegations of paragraph 47 are denied; State Farm did not create nor use a "false declarations page."

48.     The allegations of paragraph 48 are denied; State Farm did not create nor use a "false declarations page."

49.     The allegations of paragraph 49 are denied; State Farm did not create nor use a "false declarations page."

50.     The allegations of paragraph 50 are denied; State Farm did not create nor use a "false declarations page."

51.     The allegations of paragraph 51, including its subparagraphs, are denied.

52.     The allegations of paragraph 52, including its subparagraphs, are denied.

53.     The allegations of paragraph 53 are admitted.

54.     Answering paragraph 54, State Farm admits a Certified Policy Record dated August 5, 2021 for the Tahoe Policy bears a State Farm logo and was signed by a State Farm underwriter, but otherwise the remaining allegations of paragraph 54 are denied.

55.     Answering paragraph 55, State Farm admits the paragraph shows a part of a Certified Policy Record dated August 5, 2021 for the Tahoe Policy.

56.     The allegations of paragraph 56, including its subparagraphs, are denied.

57.     Answering paragraph 57, State Farm admits the Certified Policy Record dated August 5, 2021 for the Tahoe Policy was provided to GWB for purposes of its legal representation of State Farm. The remaining allegations in paragraph 57 are denied.

58.     Answering paragraph 58, State Farm admits S.C. Code Ann. § 38-61-20 provides, in part, "It is unlawful for an insurer doing business in this State to issue or sell in this State a

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

policy, contract, or certificate until it has been filed with and approved by the director or his designee."

59.     The allegations of paragraph 59 are denied as stated. The South Carolina Department of Insurance approved form 6023DC in April 2010. The approved form satisfied the statutory requirements for driver exclusions in South Carolina set forth under S.C. Code Ann. § 38-77-340. After the form was placed in use, State Farm added identifying information, including three lines so the policyholder's name, policy number and effective date could be added to the approved form:



60.     The allegations of paragraph 60 are denied.

61.     The allegations of paragraph 61 are denied.

62.     The allegations of paragraph 62 are denied.

63.     The allegations of paragraph 63 are admitted to the extent they refer to the purpose of the DJA; otherwise, the allegations are denied.

64.     The allegations of paragraph 64 are denied.

65.     The allegations of paragraph 65 are denied.

66.     The allegations of paragraph 66 are denied.

67.     The allegations of paragraph 67 are denied.

68.     The allegations of paragraph 68 are denied.

69.     The allegations of paragraph 69 are denied.

70.     The allegations of paragraph 70 are denied.

71.     The allegations of paragraph 71, including its subparagraphs, are denied.

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

72.     The allegations of paragraph 72 are denied.

73.     Answering paragraph 73, State Farm denies using "bogus documents" but admits the purpose of the DJA was to determine coverage, State Farm's position in the DJA was the Tahoe Policy did not provide coverage for losses arising from the June 12, 2021 collision, and GWB filed the DJA only as State Farm's counsel. The remaining allegations in paragraph 73 are denied.

74.     The allegations of paragraph 74 are admitted.

75.     Answering paragraph 75, State Farm admits the quoted language (without the emphasis or bracketed language added by Plaintiffs) appeared in paragraph 27 of the Complaint filed in the DJA.

76.     The allegations of paragraph 76, including its subparagraphs, are denied.

77.     The allegations of paragraph 77 are denied.

78.     The allegations of paragraph 78 are denied.

79.     The allegations of paragraph 79 are denied.

80.     Answering paragraph 80, State Farm admits the quoted language appeared in footnote 1 of the Complaint filed in the DJA.

81.     The allegations of paragraph 81 are denied.

82.     The allegations of paragraph 82 are denied.

83.     The allegations of paragraph 83 require no response because they are immaterial, impertinent, and beyond the information allowed under Rule 8(a) (1) through (3). State Farm moves to strike the allegations of paragraph 83. To the extent a response is required, State Farm admits it has a Code of Conduct and that Exhibit B to Plaintiffs' Complaint contains parts of the Code of Conduct, but State Farm denies the remaining allegations in paragraph 83.

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

84.     The allegations of paragraph 84 require no response because they are immaterial, impertinent, and beyond the information allowed under Rule 8(a) (1) through (3). State Farm moves to strike the allegations of paragraph 84.

85.     The allegations of paragraph 85 require no response because they are immaterial, impertinent, and beyond the information allowed under Rule 8(a) (1) through (3). State Farm moves to strike the allegations of paragraph 85.

86.     The allegations of paragraph 86 require no response because they are immaterial, impertinent, and beyond the information allowed under Rule 8(a) (1) through (3). State Farm moves to strike the allegations of paragraph 86. To the extent a response is required, State Farm admits that Exhibit B to Plaintiffs' Complaint contains the message of State Farm through Michael L. Tipsord which is, in part, quoted in paragraph 86.

87.     The allegations of paragraph 87 require no response because they are immaterial, impertinent, and beyond the information allowed under Rule 8(a) (1) through (3). State Farm moves to strike the allegations of paragraph 87.

88.     The allegations of paragraph 88 require no response because they are immaterial, impertinent, and beyond the information allowed under Rule 8(a) (1) through (3). State Farm moves to strike the allegations of paragraph 88. To the extent a response is required, State Farm admits that Exhibit B to Plaintiffs' Complaint contains a portion of the Code of Conduct which is, in part, quoted in paragraph 88, but State Farm denies the remaining allegations.

89.     The allegations of paragraph 89 require no response because they are immaterial, impertinent, and beyond the information allowed under Rule 8(a) (1) through (3). State Farm moves to strike the allegations of paragraph 89.

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

90.    The allegations of paragraph 90 require no response because they are immaterial, impertinent, and beyond the information allowed under Rule 8(a) (1) through (3). State Farm moves to strike the allegations of paragraph 90.

91.    The allegations of paragraph 91 are denied.

92.    The allegations of paragraph 92 are denied.

93.    The allegations of paragraph 93 are denied.

94.    The allegations of paragraph 94 are denied.

95.    The allegations of paragraph 95 are denied.

96.    The allegations of paragraph 96 are denied; State Farm did not create nor use a "bogus declarations page."

97.    "[T]he documents" referred to in paragraph 97 are not identified by Plaintiffs. To the extent "the documents" refers to a "bogus" or "false" declarations page, State Farm denies the allegations in paragraph 97 because State Farm did not create nor file a bogus or false declarations page. Otherwise, State Farm lacks knowledge or information sufficient to admit or deny the truth of the allegations in paragraph 97 and, therefore, those allegations are denied.

98.    The allegations of paragraph 98 are denied.

99.    "[T]he documents" referred to in paragraph 99 are not identified by Plaintiffs. To the extent "the documents" refers to a "bogus" or "false" declarations page, State Farm denies the allegations in paragraph 99 because State Farm did not create nor file a bogus or false declarations page. Otherwise, State Farm lacks knowledge or information sufficient to admit or deny the truth of the allegations in paragraph 99 and, therefore, those allegations are denied.

100.    The allegations of paragraph 100 are denied.

101.    The allegations of paragraph 101 are denied.

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

102.   The allegations of paragraph 102 are denied.

103.   The allegations of paragraph 103 are denied.

104.   The allegations of paragraph 104, including its subparagraphs, are denied.

105.   The allegations of paragraph 105 are denied.

106.   The allegations of paragraph 106 are admitted—the DJA was dismissed with prejudice pursuant to State Farm's motion for voluntary dismissal—with the caveat that GWB "filed" the Complaint in the DJA only as State Farm's counsel.

107.   The allegations of paragraph 107 are denied.

108.   The allegations of paragraph 108 are denied.

### As to Plaintiffs' First Cause of Action: Abuse of Process

109.   Answering paragraph 109, State Farm incorporates by reference each of its above answers.

110.   The allegations of paragraph 110 are denied.

111.   The allegations of paragraph 111, including its subparagraphs, are denied.

112.   The allegations of paragraph 112 are denied.

113.   The allegations of paragraph 113 are denied.

### As to Plaintiffs' Second Cause of Action: Aiding and Abetting Abuse of Process

114.   Answering paragraph 114, State Farm incorporates by reference each of its above answers.

115.   The allegations of paragraph 115 do not purport to state a cause of action against State Farm and therefore require no response. To the extent a response is required, the allegations of paragraph 115, including its subparagraphs, are denied.

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

116.     The allegations of paragraph 116 do not purport to state a cause of action against State Farm and therefore require no response. To the extent a response is required, the allegations of paragraph 116 are denied.

### *As to Plaintiffs' Third Cause of Action: Fraud*

117.     Answering paragraph 117, State Farm incorporates by reference each of its above answers.

118.     The allegations of paragraph 118, including its subparagraphs, are denied.

119.     The allegations of paragraph 119 are denied.

120.     The allegations of paragraph 120 are denied.

121.     The allegations of paragraph 121 are denied.

122.     The allegations of paragraph 122 are denied.

123.     The allegations of paragraph 123 are denied.

124.     The allegations of paragraph 124 are denied.

125.     The allegations of paragraph 125 are denied.

126.     The allegations of paragraph 126 are denied.

127.     The "others" referenced in paragraph 127 and elsewhere in the Complaint are not identified by Plaintiffs and are otherwise unknown to State Farm. Accordingly, State Farm lacks knowledge or information sufficient to form a belief as to the truth of allegations concerning "others" and, therefore, those allegations are denied in paragraph 127 and elsewhere in the Complaint. State Farm denies the remaining allegations in paragraph 127 because State Farm did not create nor use a "bogus declarations page."

128.     Assuming "the documents" referenced in paragraph 128 is the alleged "fabricated," "bogus," and "falsely" made declarations page to the Tahoe Policy otherwise referenced under the

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

same cause of action, the allegations of paragraph 128 are denied because State Farm did not make nor use a false, fabricated, or bogus declarations page to the Tahoe Policy. Further, with respect to the Estate's state of mind, State Farm craves reference to the Estate's Answer in the DJA, through which the Estate denied the truth of State Farm's allegations concerning the Lamb Excluded Driver Endorsement. Otherwise, State Farm lacks knowledge or information sufficient to admit or deny the truth of the allegations in paragraph 128 and, therefore, those allegations are denied.

129.    Assuming "the documents" referenced in paragraph 129 is the alleged "fabricated," "bogus," and "falsely" made declarations page to the Tahoe Policy otherwise referenced under the same cause of action, the allegations of paragraph 129 are denied because State Farm did not make nor use a false, fabricated, or bogus declarations page to the Tahoe Policy. Otherwise, State Farm lacks knowledge or information sufficient to admit or deny the truth of the allegations in paragraph 129 and, therefore, those allegations are denied.

130.    Assuming "documents State Farm represented as being true" referenced in paragraph 130 is the alleged "fabricated," "bogus," and "falsely" made declarations page to the Tahoe Policy otherwise referenced under the same cause of action, the allegations of paragraph 130 are denied because State Farm did not make nor use a false, fabricated, or bogus declarations page to the Tahoe Policy. Further answering paragraph 130, State Farm denies Plaintiffs relied on any allegation or attachment to the Complaint filed in the DJA given the Estate's Answer denying the truth thereof. Otherwise, State Farm lacks knowledge or information sufficient to admit or deny the allegations in paragraph 130 and, therefore, those allegations are denied.

131.    The allegations of paragraph 131 are denied.

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### *As to Plaintiffs' Fourth Cause of Action: Negligent Misrepresentation*

132.     Answering paragraph 132, State Farm incorporates by reference each of its above answers.

133.     The allegations of paragraph 133 are denied.

134.     The allegations of paragraph 134 are denied.

135.     The allegations of paragraph 135 are denied.

136.     Assuming "the documents and statements therein" referenced in paragraph 136 is the alleged "bogus declarations page" to the Tahoe Policy otherwise referenced under the same cause of action, the allegations of paragraph 136 are denied because State Farm did not make nor use a "bogus declarations page" to the Tahoe Policy. Furthermore, State Farm avers the Estate answered the Complaint filed in the DJA by denying State Farm's allegations therein. Otherwise, State Farm lacks knowledge or information sufficient to admit or deny the allegations in paragraph 136 and, therefore, those allegations are denied.

137.     The "others" referenced in paragraph 137 and elsewhere in the Complaint are not identified by Plaintiffs and are otherwise unknown to State Farm. Accordingly, State Farm lacks knowledge or information sufficient to form a belief as to the truth of allegations concerning "others" and, therefore, those allegations are denied in paragraph 137 and elsewhere in the Complaint. The remaining allegations of paragraph 137 are denied.

138.     The allegations of paragraph 138 are denied.

139.     The "others" referenced in paragraph 139 and elsewhere in the Complaint are not identified by Plaintiffs and are otherwise unknown to State Farm. Accordingly, State Farm lacks knowledge or information sufficient to form a belief as to the truth of allegations concerning

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

"others" and, therefore, those allegations are denied in paragraph 139 and elsewhere in the Complaint. The remaining allegations in paragraph 139 are denied.

140.    The allegations of paragraph 140 are denied.

### As to Plaintiffs' Fifth Cause of Action: Negligence

141.    Answering paragraph 141, State Farm incorporates by reference each of its above answers.

142.    The allegations of paragraph 142 do not purport to state a cause of action against State Farm and therefore require no response. To the extent a response is required, the allegations of paragraph 142 are denied.

143.    The allegations of paragraph 143 do not purport to state a cause of action against State Farm and therefore require no response. To the extent a response is required, the allegations of paragraph 143 are denied.

144.    The allegations of paragraph 144 do not purport to state a cause of action against State Farm and also state conclusions of law and therefore require no response. To the extent a response is required, the allegations of paragraph 144 are denied.

145.    The allegations of paragraph 145 do not purport to state a cause of action against State Farm and therefore require no response. To the extent a response is required, the allegations of paragraph 145 are denied.

146.    The allegations of paragraph 146 do not purport to state a cause of action against State Farm and therefore require no response. To the extent a response is required the allegations of paragraph 146, including its subparagraphs, are denied.

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

147.    The allegations of paragraph 147 do not purport to state a cause of action against State Farm and therefore require no response. To the extent a response is required, the allegations of paragraph 147 are denied.

### As to Plaintiffs' Sixth Cause of Action: Conspiracy

148.    Answering paragraph 148, State Farm incorporates by reference each of its above answers.

149.    The allegations of paragraph 149 are denied.

150.    The allegations of paragraph 150 are denied.

151.    The allegations of paragraph 151 are denied.

152.    The allegations of paragraph 152 are denied.

### As to Plaintiffs' Seventh Cause of Action: Unfair Trade Practices

153.    Answering paragraph 153, State Farm incorporates by reference each of its above answers.

154.    The allegations of paragraph 154, including its subparagraphs, are denied.

155.    The allegations of paragraph 155 are denied.

156.    The allegations of paragraph 156, including its subparagraphs, are denied.

157.    The allegations of paragraph 157 are denied.

158.    The allegations of paragraph 158 are denied.

159.    The allegations of paragraph 159 are denied.

160.    The allegations of paragraph 160 are denied.

161.    The allegations of paragraph 161 are denied.

162.    Answering the Plaintiffs' prayer for relief, State Farm denies Plaintiffs are entitled to any of the relief requested.

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## **FOR A FURTHER AND AFFIRMATIVE DEFENSE**

163.     Plaintiffs' Complaint fails to state, in whole or in part, a legally cognizable claim of relief against State Farm and, therefore, some or all the causes of action should be dismissed under Rule 12(b)(6), SCRCP.

## **FOR A FURTHER AND AFFIRMATIVE DEFENSE**

164.     Plaintiffs' fraud claims are not pleaded with the specificity required under Rule 9(b), SCRCP, and, therefore, should be dismissed.

## **FOR A FURTHER AND AFFIRMATIVE DEFENSE**

165.     Plaintiffs' claims are barred by the doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, or waiver.

## **FOR A FURTHER AND AFFIRMATIVE DEFENSE**

166.     Plaintiffs cannot assert against State Farm a cause of action for alleged violations of the South Carolina Unfair Trade Practices Act because it is inapplicable to the business of insurance and the complained of conduct.

## **FOR A FURTHER AND AFFIRMATIVE DEFENSE**

167.     The cause of action for alleged violations of the South Carolina Unfair Trade Practices Act should be dismissed to the extent it is brought by any of the Plaintiffs in a representative capacity.

## **FOR A FURTHER AND AFFIRMATIVE DEFENSE**

168.     Plaintiffs' claims should be barred or reduced in proportion to their own comparative fault and/or that of their agents.

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## FOR A FURTHER AND AFFIRMATIVE DEFENSE

169.    As brought in their individual capacity, Plaintiffs' claims are barred for lack of standing and, therefore, should be dismissed based on lack of subject matter jurisdiction.

## FOR A FURTHER AND AFFIRMATIVE DEFENSE

170.    Plaintiffs' claims are barred, in whole or in part, because statements made in litigation are subject to an absolute privilege.

## FOR A FURTHER AND AFFIRMATIVE DEFENSE

171.    Plaintiffs' Complaint fails to state a valid claim for punitive damages. Plaintiffs' claim for punitive damages is, moreover, barred or limited by South Carolina law or by the procedural and substantive due process guarantees, the guarantees against the taking of property in an arbitrary or irrational manner or without adequate compensation, the guarantees of equal protection of the laws, and guarantees against undue burden upon commerce set forth in the United States Constitution. State Farm will rely on the protections and limitations of S.C. Code section 15-32-510 through -540.

## FOR A FURTHER AND AFFIRMATIVE DEFENSE

172.    Some or all of Plaintiffs' claims are barred in whole or in part by their failure to mitigate damages, if any.

173.    State Farm reserves the right to amend and supplement its affirmative defenses to include any applicable defense, whether legal or factual in nature.

WHEREFORE, having fully answered Plaintiffs' Complaint, State Farm prays the Complaint be dismissed, and for such other and further relief as this Court may deem just and proper.

*[Signature Block on Following Page]*

18

WHELAN MELLEN & NORRIS, LLC

By: _s/M. Kathleen McTighe Mellen_
    Robert W. Whelan
    Bar No. 7114
    E-Mail: robbie@whelanmellen.com
    M. Kathleen McTighe Mellen
    Bar No. 100826
    E-Mail: katie@whelanmellen.com
    89 Broad Street
    Charleston, SC 29401
    (843) 998-7099

*Attorneys for State Farm Mutual Automobile Insurance Company*

Charleston, South Carolina

September 1, 2023

ELECTRONICALLY FILED - 2023 Sep 01 11:22 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Sep 01 11:24 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA    )

COUNTY OF CHARLESTON    )

       ) IN THE COURT OF COMMON PLEAS

       NINTH JUDICIAL CIRCUIT

       )    Case No. 2023-CP-10-01832

Robert C. Workman, Individually and as )
Personal Representative of the Estate of )
James K. Workman, Kelly Workman )
Tick and Matthew T. Workman, )

       )

       Plaintiffs, )

       )

vs.      )

       )

State Farm Mutual Automobile Insurance )
Company and Gallivan, White & Boyd, )
P.A., )

       )

       Defendants. )

       )

**DEFENDANT
STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

Plaintiffs are suing State Farm Mutual Automobile Insurance Company ("State Farm") and its attorneys, Gallivan, White & Boyd, P.A. ("GWB"), for filing a declaratory judgment action over insurance coverage. Pursuant to Rule 12(c) and Rule 12(h)(2) of the South Carolina Rules of Civil Procedure, State Farm moves for judgment on the pleadings.

Plaintiffs fail to state a legally cognizable claim against State Farm and this motion should, therefore, be granted because:

     1.     ***Abuse of Process.*** There are two "essential elements of an abuse of process claim"—first, "an ulterior purpose," second "a willful act in the use of process not proper in the regular conduct of the proceeding." *First Union Mortg. Corp. v. Thomas*, 451 S.E.2d 907, 914 (S.C. Ct. App. 1994). There are no well pleaded factual allegations in the Complaint supporting the first, ulterior purpose element.

     2.     ***Fraud and Negligent Misrepresentation***. Reasonable and detrimental reliance on a misrepresentation are essential elements of fraud and negligent misrepresentation claims. *Warr*

ELECTRONICALLY FILED - 2023 Sep 01 11:24 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*v. Carolina Power & Light Co.*, 115 S.E.2d 799, 802 (S.C. 1960); *AMA Mgmt. Corp. v. Strasburger*, 420 S.E.2d 868, 874 (S.C. Ct. App. 1992). Further, with respect to fraud, these elements must be alleged with particularity. S.C. R. Civ. P. 9(b). There are no well pleaded factual allegations in the Complaint supporting the elements of reasonable, detrimental reliance on a misrepresentation. Moreover, the judicially noticeable facts are that the Estate denied the allegations of the declaratory judgment action and opposed the relief sought. *See* Estate's Answer, *State Farm Mutual Automobile Insurance Company v. Estate of Workman*, C.A. No. 2:21-cv-02623-MBS (Oct. 26, 2021, ECF No. 35); Estate's Rule 26.01 Responses ¶ 2, *State Farm Mutual Automobile Insurance Company v. Estate of Workman*, C.A. No. 2:21-cv-02623-MBS (Oct. 26, 2021, ECF No. 39).

3.    ***Fraudulent Nondisclosure.*** Nondisclosure becomes fraudulent only when a party having knowledge of the facts has a duty to disclose them to the other party, which occurs in three instances: (1) where it arises from a pre-existing definite fiduciary relation between the parties; (2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in which the nondisclosure occurred; and (3) where the parties are involved in a contract or transaction that is itself intrinsically fiduciary in nature and necessarily calls for perfect good faith and full disclosure. *See, e.g.*, *Jacobson v. Yaschik*, 155 S.E.2d 601, 605 (S.C. 1967). None of these instances is alleged in Plaintiffs' Complaint, nor are they implicated by the nature of the claims.

4.    ***Civil Conspiracy***. First, Plaintiffs allege State Farm and GWB were co-conspirators, but an actionable civil conspiracy could not exist between client and attorney given Plaintiffs' allegations GWB was at all times acting as State Farm's attorney, an attorney-client relationship is, by definition, an agent-principal relationship, *State v. Goettie*, 41 S.C.L. 126, 128

ELECTRONICALLY FILED - 2023 Sep 01 11:24 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(S.C. App. L. 1854), and "civil conspiracy cannot exist when the alleged act arises in an agent-principal relationship," *McMillan v. Oconee Mem'l Hosp., Inc.*, 626 S.E.2d 884, 886–87 (S.C. 2006), *overruled on other grounds by Paradis v. Charleston Cnty. Sch. Dist.*, 861 S.E.2d 774 (S.C. 2021).

Second, Plaintiffs are required but have failed to "plead additional facts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint," and "the failure to properly plead such acts [] merit[s] the dismissal of the claim." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 875 (S.C. Ct. App. 2009), *overruled on other grounds by Paradis*, 861 S.E.2d 774.

5.    ***SCUTPA***. Plaintiffs' SCUTPA cause of action alleges unfair or deceptive acts or practices in the business of insurance, but for nearly thirty years, courts interpreting South Carolina law have consistently held "all unfair trade practices regarding the insurance business…are exempt from the coverage of SCUPTA." *Trustees of Grace Reformed Episcopal Church v. Charleston Ins. Co.*, 868 F. Supp. 128, 130–31 (D.S.C. 1994); *see also, Cleveland Ridge Homeowner's Ass'n, Inc. v. State Farm Fire & Cas. Co.*, No. 2006-UP-295, 2006 WL 7286092, at *3 (S.C. Ct. App. June 26, 2006) ("Clearly, the legislature intended SCUTPA to exempt cases of unfair trade practices regarding the insurance business because the Insurance Trade Practice Act specifically covers such cases.").

6.    ***Standing***. Plaintiffs in their individual capacity allege they are heirs of Workman and, therefore, have an interest in the Estate, but that itself does not give rise to standing in this action against State Farm, a party with which they have no direct relationship regarding the matters in the Complaint. *See Estate of Corley*, 386 S.E.2d 264, 265 (S.C. Ct. App. 1989) (holding "the heirs [of the estate] were not real parties in interest [in an action to recover property of the

ELECTRONICALLY FILED - 2023 Sep 01 11:24 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

decedent] because they were not the legal representatives of the estate and therefore did not have standing to pursue the action"). Accordingly, Plaintiffs' Complaint does not confer standing and, therefore, with respect to the Plaintiffs' claims in their individual capacity, the Court lacks subject matter jurisdiction.

For the foregoing reasons and as further supported by the case and statutory law of South Carolina and any memorandum of law that may be submitted in connection with this motion, this Court should grant judgment on the pleadings in favor of State Farm, thereby dismissing Plaintiffs' Complaint against it.

WHELAN MELLEN & NORRIS, LLC

By: _s/M. Kathleen McTighe Mellen_
Robert W. Whelan
Bar No. 7114
E-Mail: robbie@whelanmellen.com
M. Kathleen McTighe Mellen
Bar No. 100826
E-Mail: katie@whelanmellen.com
89 Broad Street
Charleston, SC 29401
(843) 998-7099

*Attorneys for State Farm Mutual Automobile Insurance Company*

Charleston, South Carolina
September 1, 2023

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

IN THE COURT OF COMMON PLEAS

Civil Action No. 2023-CP-10-01832

Robert C. Workman, Individually and as
Personal Representative of the Estate of
James K. Workman, Kelly Workman Tick
and Matthew T. Workman,

        Plaintiffs,

        vs.

State Farm Mutual Automobile Insurance
Company and Gallivan White & Boyd, P.A.,

        Defendants.

**ANSWER**
**(JURY TRIAL DEMANDED)**

COMES NOW Defendant Gallivan White & Boyd, P.A. ("GWB"), by and through its undersigned counsel, answering the Complaint of Plaintiffs, Robert C. Workman, Individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick and Matthew T. Workman ("Plaintiffs"). GWB reserves all applicable defenses under Rule 12(b) of the South Carolina Rules of Civil Procedure and answers Plaintiffs' Complaint as follows:

## FOR A FIRST DEFENSE

1.      As to the allegations of Paragraph 1, GWB admits only that the Complaint speaks for itself as to the identity of the Plaintiffs. GWB denies any remaining or inconsistent allegations of Paragraph 1. GWB specifically denies that Plaintiffs are entitled to any relief.

2.      Upon information and belief, Paragraph 2 is admitted.

3.      Upon information and belief, Paragraph 3 is admitted.

4.      Paragraph 4 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 4 and therefore denies the same.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

5.      Paragraph 5 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 5 and therefore denies the same.

6.      Paragraph 6 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 6 and therefore denies the same.

7.      Paragraph 7 does not pertain to GWB and therefore does not require a response. To the extent a response is required, upon information and belief, the allegations of Paragraph 7 are denied.

8.      As to the allegations of Paragraph 8, GWB admits only that State Farm contacted GWB about legal representation. GWB denies any remaining or inconsistent allegations of Paragraph 8.

9.      Paragraph 9 references a written document which is the best evidence of its contents. GWB denies all allegations of Paragraph 9 inconsistent with such written document.

10.     Paragraph 10 references a written document which is the best evidence of its contents. GWB denies all allegations of Paragraph 10 inconsistent with such written document.

11.     Paragraph 11 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 11 and therefore denies the same.

12.     To the extent the allegations of Paragraph 12 pertain to GWB, GWB admits only that on August 16, 2021 it, as counsel (and only as counsel) to State Farm, filed a lawsuit in the United States District Court for the District of South Carolina, Charleston Division, on behalf of its client, State Farm Mutual Automobile Insurance Company ("State Farm") captioned *State Farm Mutual Automobile Insurance Company v. Melvin O. Lamb, III, Melvin O. Lamb, Jr., The Estate*

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*of James K. Workman, Michael H. Moore, Deborah D. Plott, Angela R. Edwards, Constance J. Molinaro, Mario F. Molinaro, Jonathan D. Keller, Katherine M. Vonesh, Mathis S. Billman, and Luke E. Billman*, C.A. No.: 2:21-cv-2623 (the "Underlying Action"). A true and correct copy of the Complaint filed on August 16, 2021 is attached hereto as **Exhibit 1** (the "Underlying Action Complaint")**.** GWB denies it engaged in any improper conduct, and denies any allegations of Paragraph 12 inconsistent with the Underlying Action Complaint.

13.     To the extent the allegations of Paragraph 13 pertain to GWB, GWB admits that it, on behalf of its client, State Farm, responded to discovery and provided policy documentation in the Underlying Action. GWB denies the remaining allegations of Paragraph 13.

14.     To the extent the allegations of Paragraph 14 pertain to GWB, GWB denies the same.

15.     To the extent that the allegations of Paragraph 15 pertain to GWB, GWB admits that the Rule 30(b)(6) deposition of State Farm was conducted in the Underlying Action, the transcript of which is a written document that is the best evidence of its contents. GWB denies all allegations of Paragraph 15 inconsistent with such written document, and specifically denies it engaged in any "scheme."

16.     Paragraph 16 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB admits only that the contents of any applicable court documents would speak for themselves, and denies any remaining or inconsistent allegations of Paragraph 16.

17.     GWB denies the allegations of Paragraph 17.

18.     Upon information and belief, GWB admits the allegations of Paragraph 18.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

19.     GWB admits only that in South Carolina, probate estates are created because someone passes away, and that James K. Workman passed away. GWB denies any remaining allegations of Paragraph 19.

20.     Responding to Paragraph 20, GWB admits upon information and belief that Robert C. Workman is the personal representative of the Estate of James K. Workman. GWB lack sufficient knowledge or information to form a belief as to the remaining allegations of Paragraph 20 and therefore denies the same.

21.     GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 21 and therefore denies the same. GWB denies that Kelly Workman Tick has standing to bring this action.

22.     GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 22 and therefore denies the same. GWB denies that Matthew T. Workman has standing to bring this action.

23.     Paragraph 23 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB admits that State Farm is an insurance company which issues various insurance policies in South Carolina. GWB denies any remaining allegations of Paragraph 23.

24.     Paragraph 24 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 24 and therefore denies the same.

25.     Paragraph 25 is admitted.

26.     Paragraph 26 states a legal conclusion to which no response is required. To the extent a response is required, GWB does not dispute this Court's jurisdiction over the claims of Robert C. Workman as Personal Representative of the Estate at this time. GWB denies the

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

remaining allegations of Paragraph 26 and incorporates by reference its affirmative defense of lack of standing as to Robert C. Workman, Individually, Kelly Workman Tick, and Matthew T. Workman.

27.　　Paragraph 27 states a legal conclusion to which no response is required. To the extent a response is required, GWB does not dispute this Court's jurisdiction at this time.

28.　　Paragraph 28 states a legal conclusion to which no response is required. To the extent a response is required, GWB denies any allegation that it engaged in wrongful conduct. GWB does not dispute the venue at this time.

29.　　As to Paragraph 29, GWB denies all allegations contained in the Affidavit of Thomas A. Pendarvis, Esq. and any remaining allegations of Paragraph 29.

30.　　GWB admits the allegations of Paragraph 30.

31.　　GWB admits only that the Tahoe was driven into Mr. Workman's car. GWB denies any remaining allegations of Paragraph 31.

32.　　Upon information and belief, GWB admits Mr. Workman died as a result of the crash. GWB denies any remaining allegations of Paragraph 32.

33.　　Upon information and belief, GWB admits the allegations of Paragraph 33.

34.　　 Paragraph 34 states a legal conclusion to which no response is required. To the extent a response is required, GWB states that the policy referenced in Paragraph 34 is a written document which is the best evidence of its contents. GWB denies all allegations of Paragraph 34 inconsistent with such written document.

35.　　Paragraph 35 references a written document which is the best evidence of its contents. GWB denies all allegations of Paragraph 35 inconsistent with such written document.

36.　　Paragraph 36 references a written document which is the best evidence of its contents. GWB denies all allegations of Paragraph 36 inconsistent with such written document.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

37.     GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 37 and therefore denies the same.

38.     Paragraph 38 references written documents which are the best evidence of their contents. GWB denies all allegations of Paragraph 38 inconsistent with such written documents.

39.     Paragraph 39 references written documents which are the best evidence of their contents. GWB denies all allegations of Paragraph 39 inconsistent with such written documents.

40.     GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 40 and therefore denies the same.

41.     GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 41 and therefore denies the same.

42.     GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 42 and therefore denies the same.

43.     Paragraph 43 references written documents which are the best evidence of their contents. GWB denies all allegations of Paragraph 43 inconsistent with such written documents.

44.     GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 44 and therefore denies the same.

45.     GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 45 and therefore denies the same.

46.     GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 46 and therefore denies the same.

47.     GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 47 and therefore denies the same.

48.     GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 48 and therefore denies the same.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

49.    GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 49 and therefore denies the same.

50.    GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 50 and therefore denies the same.

51.    Paragraph 51 references written documents which are the best evidence of their contents. GWB denies all allegations of Paragraph 51, including all subparts, inconsistent with such written documents.

52.    Paragraph 52 references written documents which are the best evidence of their contents. GWB denies all allegations of Paragraph 52, including all subparts, inconsistent with such written documents.

53.    GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 53 and therefore denies the same.

54.    Paragraph 54 references written documents which are the best evidence of their contents. GWB denies all allegations of Paragraph 54 inconsistent with such written documents.

55.    Paragraph 55 references written documents which are the best evidence of their contents. GWB denies all allegations of Paragraph 55 inconsistent with such written documents.

56.    Paragraph 56 references written documents which are the best evidence of their contents. GWB denies all allegations of Paragraph 56, including all subparts, inconsistent with such written documents.

57.    As to the allegations of Paragraph 57, GWB admits only that State Farm provided it with a Certified Policy Record to be used in litigation. All remaining or inconsistent allegations of Paragraph 57 are denied.

58.    GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 58 and therefore denies the same.

TPGL 13920455v1

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

59.     GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 59 and therefore denies the same.

60.     GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 60 and therefore denies the same.

61.     GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 61 and therefore denies the same.

62.     GWB admits that State Farm contacted GWB for legal representation related to the collision and that the Underlying Action Complaint was filed as part of that representation. GWB denies the remaining allegations of Paragraph 62 to the extent inconsistent with the foregoing.

63.     Responding to Paragraph 63, the Underlying Action Complaint is a written document which is the best evidence of its contents and which addresses what State Farm sought in the Underlying Action. GWB denies the allegations of Paragraph 63 to the extent inconsistent with the Underlying Action Complaint.

64.     Responding to Paragraph 64, GWB admits it received certain policy documents. GWB denies any remaining allegations of Paragraph 64.

65.     GWB denies the allegations of Paragraph 65.

66.     As to the allegations of Paragraph 66, GWB admits only that it drafted and filed the Underlying Action Complaint on behalf of its client, State Farm. GWB denies the remaining allegations of Paragraph 66.

67.     As to the allegations of Paragraph 67, GWB admits only that it filed the Underlying Action Complaint on behalf of its client, State Farm. GWB denies the remaining allegations of Paragraph 67.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

68.    Paragraph 68 contains legal conclusions to which no response is required. To the extent a response is required, GWB admits only those duties imposed on it by law. GWB denies that it owed a legal duty to Plaintiffs that would give rise to a cause of action.

69.    GWB denies the allegations of Paragraph 69.

70.    GWB denies the allegations of Paragraph 70.

71.    GWB denies the allegations of Paragraph 71, including all subparts.

72.    To the extent the allegations of Paragraph 72 pertain to GWB, GWB denies those allegations. GWB lacks sufficient knowledge or information to form a belief as to the remaining allegations of Paragraph 72 and therefore denies the same.

73.    To the extent the allegations of Paragraph 73  pertain to GWB, GWB admits only that it filed the Underlying Action Complaint on behalf of its client, State Farm. All other allegations pertaining to GWB are denied. GWB lacks sufficient knowledge or information to form a belief as to the remaining allegations of Paragraph 73 and therefore denies the same.

74.    Paragraph 74 references written documents which are the best evidence of their contents. GWB denies all allegations of Paragraph 74 inconsistent with such written documents.

75.    Paragraph 75 references written documents which are the best evidence of their contents. GWB denies all allegations of Paragraph 75 inconsistent with such written documents.

76.    To the extent the allegations of Paragraph 76 pertain to GWB, GWB denies those allegations, including all subparts. GWB lacks sufficient knowledge or information to form a belief as to the remainder of the allegations of Paragraph 76 and therefore denies the same, including all subparts.

77.    Paragraph 77 references written documents (the Underlying Action Complaint) which are the best evidence of their contents. GWB denies all allegations of Paragraph 77 inconsistent with such written documents.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

78.     Paragraph 78 references written documents (the Underlying Action Complaint) which are the best evidence of their contents. GWB denies all allegations of Paragraph 78 inconsistent with such written documents.

79.     To the extent the allegations of Paragraph 79 pertain to GWB, GWB denies the allegations. GWB lacks sufficient knowledge or information to form a belief as to the remainder of the allegations of Paragraph 79 and therefore denies the same.

80.     Paragraph 80 references written documents which are the best evidence of their contents. GWB denies all allegations of Paragraph 80 inconsistent with such written documents.

81.     GWB denies the allegations of Paragraph 81.

82.     GWB denies all the allegations of Paragraph 82.

83.     Paragraph 83 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 83 and therefore denies the same.

84.     Paragraph 84 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 84, including footnote 2 and therefore denies the same.

85.     Paragraph 85 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 85 and therefore denies the same.

86.     Paragraph 86 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 86 and therefore denies the same.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

87.    Paragraph 87 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 87 and therefore denies the same.

88.    Paragraph 88 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 88 and therefore denies the same.

89.    Paragraph 89 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 89 and therefore denies the same.

90.    Paragraph 90 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 90 and therefore denies the same.

91.    Paragraph 91 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 91 and therefore denies the same.

92.    Paragraph 92 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 92 and therefore denies the same.

93.    Paragraph 93 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 93 and therefore denies the same.

94.    Paragraph 94 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 94 and therefore denies the same.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

95.     Paragraph 95 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 95 and therefore denies the same.

96.     Paragraph 96 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 96 and therefore denies the same.

97.     Paragraph 97 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 97 and therefore denies the same.

98.     Paragraph 98 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 98 and therefore denies the same.

99.     Paragraph 99 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 99 and therefore denies the same.

100.     Paragraph 100 does not pertain to GWB and therefore does not require a response. To the extent a response is required, GWB lacks sufficient knowledge to form a belief as to the allegations of Paragraph 100 and therefore denies the same.

101.     GWB admits that Plaintiff Robert C. Workman, as Personal Representative of the Estate of James K. Workman obtained counsel in the Underlying Action. GWB denies all remaining allegations of Paragraph 101.

102.     GWB admits that Plaintiff Robert C. Workman, as Personal Representative of the Estate of James K. Workman obtained counsel in the Underlying Action. GWB denies all remaining allegations of Paragraph 102.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

103.     Responding to Paragraph 103, GWB admits that Plaintiff Robert C. Workman, as Personal Representative of the Estate of James K. Workman filed a Motion in the Underlying Action. GWB lacks sufficient knowledge or information to form a belief as to the remaining allegations of Paragraph 103.

104.     As to the allegations of Paragraph 104, GWB admits that the coverage issues that formed the basis of the Underlying Action were resolved and that accordingly, State Farm moved for dismissal. Any remaining or inconsistent allegations of Paragraph 104, including subparts are denied.

105.     GWB denies the allegations of Paragraph 105.

106.     GWB admits the allegations of Paragraph 106.

107.     GWB denies the allegations of Paragraph 107 and references the Order dismissing the Underlying Action attached hereto as **Exhibit 2**. As the Order shows, the Underlying Action was dismissed because State Farm, through its counsel, GWB, filed a voluntary Motion to Dismiss on the basis that the coverage issues had been resolved.

108.     GWB denies the allegations of Paragraph 108.

109.     In response to Paragraph 109, GWB incorporates the above Paragraphs by reference.

110.     Paragraph 110 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 110 and therefore denies the same.

111.     Paragraph 111 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 111 and therefore denies the same, including all subparts.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

112.    Paragraph 112 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 112 and therefore denies the same.

113.    Paragraph 113 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 113 and therefore denies the same.

114.    In response to Paragraph 114, GWB incorporates the above Paragraphs by reference.

115.    Responding to Paragraph 115, GWB admits that it drafted the Underlying Action Complaint and filed the same on behalf of its client, State Farm. The remaining allegations of Paragraph 115, including all subparts, are denied.

116.    GWB denies the allegations of Paragraph 116,

117.    In response to Paragraph 117, GWB incorporates the above Paragraphs by reference.

118.    Paragraph 118 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 118 and therefore denies the same, including all subparts.

119.    Paragraph 119 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 119 and therefore denies the same.

120.    Paragraph 120 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 120 and therefore denies the same.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

121.    Paragraph 121 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 121 and therefore denies the same.

122.    Paragraph 122 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 122 and therefore denies the same.

123.    Paragraph 123 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 123 and therefore denies the same.

124.    Paragraph 124 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 124 and therefore denies the same.

125.    Paragraph 125 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 125 and therefore denies the same.

126.    Paragraph 126 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 126 and therefore denies the same.

127.    Paragraph 127 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 127 and therefore denies the same.

128.    Paragraph 128 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 128 and therefore denies the same.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

129.     Paragraph 129 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 129 and therefore denies the same.

130.     Paragraph 130 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 130 and therefore denies the same.

131.     Paragraph 131 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 131 and therefore denies the same.

132.     In response to Paragraph 132, GWB incorporates the above Paragraphs by reference.

133.     GWB denies the allegations of Paragraph 133.

134.     GWB denies the allegations of Paragraph 134.

135.     GWB denies the allegations of Paragraph 135.

136.     GWB denies the allegations of Paragraph 136.

137.     GWB denies the allegations of Paragraph 137.

138.     GWB denies the allegations of Paragraph 138.

139.     GWB denies the allegations of Paragraph 139.

140.     GWB denies the allegations of Paragraph 140.

141.     In response to Paragraph 141, GWB incorporates the above responses by reference and further denies the allegations contained in the affidavit of Thomas A. Pendarvis, Esq.

142.     As to the allegations of Paragraph 142, GWB admits that its attorneys are members of the legal profession with the rights and responsibilities that accompany that position. To the extent it is alleged in Paragraph 142, GWB denies that it had any special responsibility that would

TPGL 13920455v1

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

give rise to a legal duty to Plaintiffs. GWB denies any remaining or inconsistent allegations of Paragraph 142.

143.    GWB admits the allegations of Paragraph 143 only to the extent a duty is provided by law, but denies that GWB owed any actionable duty to Plaintiffs.

144.    GWB admits the allegations of Paragraph 144 only to the extent a duty is provide by law, but denies that GWB owed any actionable duty to Plaintiffs.

145.    GWB denies the allegations of Paragraph 145.

146.    GWB denies the allegations of Paragraph 146, including all subparts.

147.    GWB denies the allegations of Paragraph 147.

148.    In response to Paragraph 148, GWB incorporates the above Paragraphs by reference.

149.    GWB denies the allegations of Paragraph 149.

150.    GWB denies the allegations of Paragraph 150.

151.    GWB denies the allegations of Paragraph 151.

152.    GWB denies the allegations of Paragraph 152.

153.    In response to Paragraph 153, GWB incorporates the above Paragraphs by reference.

154.    Paragraph 154 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 154 and therefore denies the same.

155.    Paragraph 155 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 155 and therefore denies the same.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

156.     Paragraph 156 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 156 and therefore denies the same.

157.     Paragraph 157 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 157 and therefore denies the same.

158.     Paragraph 158 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 158 and therefore denies the same.

159.     Paragraph 159 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 159 and therefore denies the same.

160.     Paragraph 160 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 160 and therefore denies the same.

161.     Paragraph 161 does not pertain to GWB and therefore no response is required. To the extent a response is required, GWB lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 161 and therefore denies the same.

162.     To the extent a response is required to the unnumbered paragraph beginning "WHEREFORE" (prayer for relief), GWB denies Plaintiff is entitled to any relief.

163.     To the extent Plaintiffs' "Table of Contents" can be construed as asserting allegations against GWB, the same is denied.

164.     Except as specifically admitted, qualified, or explained, GWB denies the allegations and demands strict proof of each allegation.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**FOR A SECOND DEFENSE**

165.    Plaintiffs' Complaint fails to state facts sufficient to constitute a cause of action against GWB and should therefore be dismissed pursuant to Rule 12(b)(6) of the South Carolina Rules of Civil Procedure.

**FOR A THIRD DEFENSE**

166.    Upon information and belief, some or all of Plaintiffs' claims are barred by the applicable statute of limitations which serves as a complete bar to Plaintiffs' claims.

**FOR A FOURTH DEFENSE**

167.    Plaintiffs' claims against GWB are barred by the equitable doctrines of laches and equitable estoppel.

**FOR A FIFTH DEFENSE**

168.    Plaintiffs' claims are barred by the doctrines of judicial estoppel, collateral estoppel and res judicata.

**FOR A SIXTH DEFENSE**

169.    Plaintiffs waived any claims that may be brought against GWB.

**FOR A SEVENTH DEFENSE**

170.    Plaintiffs' damages, if any, which are denied, were the direct and proximate result of the negligent, reckless, willful, and wanton conduct of Plaintiffs, and the alleged damages of Plaintiffs would not have occurred if Plaintiffs had not been guilty of such negligence, recklessness, willfulness and wantonness.

**FOR AN EIGHTH DEFENSE**

171.    Upon information and belief, Plaintiffs have failed to mitigate, limit, or prevent the alleged damages (such being denied), thereby barring or limiting recovery.

**FOR A NINTH DEFENSE**

172.     To the extent Plaintiffs seek punitive or exemplary damages, such claims violate GWB's rights to due process under the Fourteenth Amendment of the United States Constitution and the Constitution of the State of South Carolina so as to preclude or limit recovery from GWB.

**FOR A TENTH DEFENSE**

173.     To the extent Plaintiffs seek punitive or exemplary damages, such claims violate GWB's rights to substantive due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution and the Constitution of the State of South Carolina so as to preclude recovery from Defendants.

**FOR AN ELEVENTH DEFENSE**

174.     GWB pleads the applicable provisions of the South Carolina Noneconomic Damages Awards Act of 2005 (§ 15-32-200, et. seq.) and § 15-38-15. GWB affirmatively includes within this defense the recovery limits of S.C. Code Ann § 15-32-530 and any other limitation on punitive damages allowed by Federal or State law. GWB further pleads the protections and requirements of S.C. Code Ann. § 15-32-510 and -520 as a complete or partial bar to Plaintiff's claims for punitive damages against GWB.

**FOR A TWELFTH DEFENSE**

175.     Under South Carolina law, attorneys generally owe no duties to and are immune from liability to third persons for professional activities taken within the scope of representation of a client.

**FOR A THIRTEENTH DEFENSE**

176.     Some or all of the Plaintiffs lack standing to bring this action. Specifically, Robert C. Workman in his individual capacity, Kelly Workman Tick, and Matthew T. Workman lack standing. Accordingly, their claims should be dismissed for lack of subject matter jurisdiction.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**FOR A FOURTEENTH DEFENSE**

177.    The actions alleged in Plaintiffs' Complaint and injuries caused thereby, if any, which are denied, were caused by the acts or omissions of third parties which acted a direct and proximate cause of Plaintiff's injuries, if any, which are denied, in such a way to constitute a supervening or intervening cause ending all liability on the party of GWB.

**FOR A FIFTEENTH DEFENSE**

178.    As to the civil conspiracy claimed by Plaintiffs against GWB, GWB is immune from liability to third persons arising from the performance of their professional activities as attorneys on behalf of and with the knowledge of its client.

**FOR A SIXTEENTH DEFENSE**

179.     Upon information and belief, Plaintiffs' claim are or may be barred by the defense of payment and accord and satisfaction. Alternatively, GWB is entitled to a set off for any and all such payments.

**FOR A SEVENTEENTH DEFENSE**

180.    Plaintiffs' claims sounding in fraud (including negligent misrepresentation) are not pleaded with the requisite specificity under Rule 9(b) of the South Carolina Rules of Civil Procedure and must be dismissed.

**FOR AN EIGHTEENTH DEFENSE**

181.    The cause of action for alleged violations of the South Carolina Unfair Trade Practices Act should be dismissed to the extent it is brought by any of the Plaintiffs in a representative capacity.

**FOR A NINETEENTH DEFENSE**

182.    Plaintiffs' claims are barred, in whole or in part, because statements made in litigation are subject to an absolute privilege.

TPGL 13920455v1

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

WHEREFORE, GWB, having fully answered the Complaint herein, prays unto this Honorable Court for the following relief:

A.      That Plaintiffs' action against GWB be dismissed with prejudice;

B.      That the Plaintiffs have and recover nothing of GWB;

C.      That the costs of this action, including reasonable attorney's fees, be applied against some party other than GWB;

D.      FOR A TRIAL BY JURY on all issues so triable; and

E.      For such other and further relief as the Court deems just and proper.

Respectfully submitted,

TURNER PADGET GRAHAM & LANEY, P.A.

s/John S. Wilkerson
John S. Wilkerson, III, SC Bar No. 6105
P.O. Box 22129
Charleston, South Carolina 29413
Telephone:   843-576-2801
Facsimile:   843-577-1649
Email: jwilkerson@turnerpadget.com

AND

W. Taylor Stanley, SC Bar No.: 101377
Lindsey M. Behnke, SC Bar No.: 105719
P.O. Box 1473
Columbia, South Carolina 29202
Telephone:   803-227-4215
                       803-227-4324
Facsimile:   803-400-1560
                       803-400-1525
Email: tstanley@turnerpadget.com
           lbehnke@turnerpadget.com

ATTORNEYS FOR DEFENDANT GALLIVAN, WHITE & BOYD, P.A.

September 1, 2023
Charleston, South Carolina

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

IN THE COURT OF COMMON PLEAS

Civil Action No. 2023-CP-10-01832

Robert C. Workman, Individually and as
Personal Representative of the Estate of James
K. Workman, Kelly Workman Tick and
Matthew T. Workman,

Plaintiffs,

vs.

State Farm Mutual Automobile Insurance
Company and Gallivan White & Boyd, P.A.,

Defendants.

**DEFENDANT GALLIVAN WHITE &
BOYD, P.A.'S NOTICE OF MOTION
AND MOTION FOR JUDGMENT
<u>ON THE PLEADINGS</u>**

Pursuant to Rule 12(c) of the South Carolina Rules of Civil Procedure, Defendant Gallivan White & Boyd, P.A. ("GWB") hereby moves for judgment on the pleadings as to the allegations brought against GWB in Plaintiffs' Complaint. The well pled facts contained in the Complaint, GWB's Answer, and in the documents attached thereto or specifically referenced therein and upon which the claims and defenses are based, establish that GWB is entitled to judgment as a matter of law. This Motion is also based upon controlling authorities and such memoranda and arguments as may be submitted in support hereof.

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Rule 12(c), SCRCP. "A judgment on the pleadings is proper where there is no issue of fact raised by the complaint that would entitle plaintiff to judgment if resolved in plaintiff's favor." *Sapp v. Ford Motor Co.,* 386 S.C. 143, 146, 687 S.E.2d 47, 49 (2009) (citing *Russell v. Columbia*, 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991)). "The motion does not admit the inferences drawn by the plaintiff from the facts nor does it admit conclusions of law." *Firemen's Ins. Co. v. Cincinnati Ins. Co.*, 302 S.C. 234, 394 S.E.2d 855 (Ct. App. 1990).

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Plaintiffs' Complaint alleges four causes of action against GWB: aiding and abetting abuse of process; negligent misrepresentation; negligence; and civil conspiracy. Defendants are entitled to judgment as a matter of law on each of these causes of action because (1) GWB is immune from Plaintiffs' claims; (2) GWB owed no duty of care to Plaintiffs; and (3) the Complaint raises no issue of fact that would entitle it to judgment on any of its causes of action. First, the pleadings are clear that GWB was at all times acting on behalf of its client, State Farm. As a general rule, "an attorney is immune from liability to third persons arising from the performance of his professional activities as an attorney on behalf of and with the knowledge of his client." *Gaar v. N. Myrtle Beach Realty Co.*, 287 S.C. 525, 528, 339 S.E.2d 887, 889 (Ct. App. 1986). Second, the Estate of James K. Workman was an opposing party to State Farm in the underlying action, and it is well-established than an attorney does not owe a duty of care to an opposing party. *See Restatement 3d of the Law Governing Lawyers*, §51, cmt c (Am. Law Inst. 2000). Third, for reasons that will be set forth in greater detail in a Memorandum of Law in Support of this Motion, the Complaint does not contain any facts that would entitle the Plaintiffs to judgment against GWB on any of the causes of action. Therefore, based on the uncontradicted facts as set forth in the pleadings, Plaintiffs' claims against GWB fail as a matter of law.

In addition, with the exception of the Estate of James K. Workman, Plaintiffs lack standing to bring the Complaint. Robert C. Workman in his individual capacity, Kelly Workman Tick, and Matthew T. Workman (the "Individual Plaintiffs") have not suffered an invasion of any legally protected interest. Even assuming all the allegations in the Complaint are true, the Individual Plaintiffs were not parties in the Declaratory Judgment Action on which the Complaint is based. *See* Compl. ¶ 74. The Complaint does not state any facts that connect the events complained of to the Individual Plaintiffs and their legally protected interests. The only specific interest ascribed to the individual Plaintiffs in the Complaint is that they are heirs of the Estate (Compl. ¶¶ 20-22),

TPGL 13879150v1

which is not an interest that gives rise to standing in South Carolina. *See Estate of Corley*, 299 S.C. 525, 526, 386 S.E.2d 264, 265 (Ct. App. 1989). For this reason, there are no facts alleged under which the Individual Plaintiffs would be entitled to judgment in this lawsuit.

Therefore, based on the undisputed facts as set forth in the pleadings, GWB is entitled to dismissal of Plaintiffs' claims as a matter of law. This Motion will be further supported by a Memorandum of Law in Support and/or other materials as may be filed before the hearing on this motion and/or presented at the hearing on this motion.

WHEREFORE, GWB respectfully requests that this Court issue an Order granting its Motion for Judgment on the Pleadings.

Respectfully submitted,

TURNER PADGET GRAHAM & LANEY, P.A.

s/John S. Wilkerson
John S. Wilkerson, III, SC Bar No. 6105
P.O. Box 22129
Charleston, South Carolina 29413
Telephone:   843-576-2801
Facsimile:    843-577-1649
Email: jwilkerson@turnerpadget.com

AND

W. Taylor Stanley, SC Bar No.: 101377
Lindsey M. Behnke, SC Bar No.: 105719
P.O. Box 1473
Columbia, South Carolina 29202
Telephone:   803-227-4215
                      803-227-4324
Facsimile:    803-400-1560
                      803-400-1525
Email: tstanley@turnerpadget.com
          lbehnke@turnerpadget.com

ATTORNEYS FOR DEFENDANT GALLIVAN, WHITE & BOYD, P.A.

September 1, 2023
Charleston, South Carolina

TPGL 13879150v1

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | | |
|---|---|---|
| State Farm Mutual Automobile Insurance Company, | ) ) ) | C.A. No.: **2:21-cv-2623-MBS** |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT** |
| | ) | **(DECLARATORY JUDGMENT)** |
| Melvin O. Lamb III, Melvin O. Lamb, Jr., The Estate of James K. Workman, Michael H. Moore, Deborah D. Plott, Angela R. Edwards, Constance J. Molinaro, Mario F. Molinaro, Jonathan D. Keller, Katherine M. Vonesh, Mathis S. Billman, and Luke E. Billman, | ) ) ) ) ) ) ) ) | **(Non-jury)** |
| Defendants. | ) ) | |

Plaintiff, State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"), complaining of the above-named Defendants, alleges and states as follows:

1. State Farm is a corporation organized and existing under the laws of the State of Illinois, licensed to issue insurance policies in the State of South Carolina.

2. Upon information and belief, Defendant Melvin O. Lamb III ("Son") is a citizen and resident of Charleston County, South Carolina.

3. Upon information and belief, Defendant Melvin O. Lamb, Jr. ("Father") is a citizen and resident of Charleston County, South Carolina.

4. Upon information and belief, James K. Workman ("Workman") was, prior to his death, a citizen and resident of Charleston County, South Carolina.

5. Upon information and belief, Defendant Michael H. Moore ("Moore") is a citizen and resident of Charleston County, South Carolina.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

6.      Upon information and belief, Defendant Deborah D. Plott ("Plott") is a citizen and resident of Charleston County, South Carolina.

7.      Upon information and belief, Defendant Angela R. Edwards ("Edwards") is a citizen and resident of Charleston County, South Carolina.

8.      Upon information and belief, Defendant Constance J. Molinaro ("Constance") is a citizen and resident of Charleston County, South Carolina.

9.      Upon information and belief, Defendant Mario F. Molinaro ("Mario") is a citizen and resident of Charleston County, South Carolina.

10.      Upon information and belief, Defendant Jonathan D. Keller ("Keller") is a citizen and resident of Charleston County, South Carolina.

11.      Upon information and belief, Defendant Katherine M. Vonesh ("Vonesh") is a citizen and resident of Charleston County, South Carolina.

12.      Upon information and belief, Defendant Mathis S. Billman ("Mathis") is a citizen and resident of Charleston County, South Carolina.

13.      Upon information and belief, Defendant Luke E. Billman ("Luke") is a citizen and resident of Charleston County, South Carolina.

14.      This action involves the construction of an automobile insurance policy issued and delivered by State Farm to Defendant Melvin O. Lamb, Jr., in Charleston County, South Carolina.

15.      Jurisdiction exists because there is complete diversity of citizenship between State Farm and the defendants and because the amount in controversy, including the potential costs of defense and indemnification of Son and Father under the policy, exceeds $75,000.00. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. §1332.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

16.     Venue is appropriate under 28 U.S.C. §1391 because the policy at issue in this case insures persons, property, or lives located in this district and was issued in this district.

17.     This is an insurance coverage action brought pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rule of Civil Procedure to determine whether State Farm has a duty to defend or indemnify Son and/or Father for all claims related to or arising out of an accident which occurred in Mount Pleasant, South Carolina, on or about June 12, 2021.

## FACTUAL ALLEGATIONS

18.     At all relevant times hereto, State Farm issued an automobile insurance policy (hereinafter "the Policy") to Father bearing policy number 632 3189-B07-40. The Policy contains bodily injury liability limits in the amount of $25,000 per person/$50,000 per accident and property damage limits of $25,000 per accident. A copy of the Policy is attached hereto as **Exhibit A**[1].

19.     On or about February 26, 2020, State Farm issued form 6023DC, a driver exclusion endorsement excluding Son from coverage under the Policy. Pursuant to S.C. Code Ann. §38-77-340, the exclusion was signed by Father and confirmed that either the driver's license of the Son had been turned in to the Department of Motor Vehicles or that Son obtained appropriate insurance through another policy. A copy of the endorsement, which remained in effect on subsequent policies issued by State Farm including the Policy at issue, is included in Exhibit A and its contents are incorporated herein by reference.

20.     According to the driver exclusion, when a vehicle is operated by an excluded driver, State Farm "SHALL NOT BE LIABLE AND NO LIABILITY OR OBLIGATION OF

---

[1] Premium information and Father's address have been redacted.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ANY KIND SHALL ATTACH TO [State Farm] FOR BODILY INJURY, LOSS, OR DAMAGE".

21.     The driver exclusion further states the named insured acknowledges that the driver exclusion "is binding upon every insured to whom this policy applies."

22.     On June 12, 2021, Son was involved in a motor vehicle accident on U.S. Highway 17 in Mount Pleasant, South Carolina while operating a 2004 Chevrolet Tahoe, VIN 1GNEK13Z54R235227, owned by Father and insured under the Policy. Upon information and belief, Son struck the rear of Workman's vehicle, which was stopped due to traffic. This impact started a chain-reaction causing Workman to strike the vehicles operated by Moore and Keller.

23.     Upon information and belief, after striking Workman, Son also struck the vehicles operated by Moore, Plott, and Edwards.

24.     Upon information and belief, Moore and Edwards each then struck the vehicle operated by Constance and owned by Mario, and Plott struck the vehicle operated by Mathis and owned by Luke.

25.     Upon information and belief, Son, Workman, Moore, and Edwards were transported via EMS to local hospitals for treatment following the accident. Upon further information and belief, Workman allegedly died as a result of the injuries he sustained in the accident.

26.     State Farm is informed and believes Workman, Moore, Keller, Plott, Edwards, Constance, Mario, Mathis, and/or Luke may claim injuries and/or property damage as a result of this collision.

27.     State Farm has investigated this matter and believes, based upon the Policy exclusion referenced herein and applicable South Carolina law, it has no duty to defend or

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

indemnify Father or Son from any claim arising out of the accident described herein, and seeks a declaration from this Court concerning the same.

### FOR A FIRST CAUSE OF ACTION
**(Declaratory Judgment)**

28.     State Farm realleges and incorporates the foregoing paragraphs as if fully set forth herein.

29.     Form 6023DC DRIVER EXCLUSION, for Policy 632-3189-B07-40 is an effective and valid endorsement excluding coverage for any loss occurring as a result of Son's operation of a motor vehicle.

30.     Father, as the named insured, signed an acknowledgment consistent with S.C. Code Ann. §38-77-340, relating to the driver exclusion, acknowledging that Son was an excluded driver and no coverage would be provided for any loss occurring as a result of Son's operation of a motor vehicle.

31.     At the time of the subject accident, Son had been an excluded driver from the Policy for over a year.

32.     By the plain language of the exclusion, State Farm has no duty to defend or indemnify Father or Son for bodily injury, loss, or damage occurring as a result of Son operating a motor vehicle.

33.     State Farm's driver exclusion is in accordance with the South Carolina Code of Laws and is a valid and enforceable exclusion of coverage.

34.     Based on the exclusion, State Farm seeks a declaratory judgment that it has no obligation or duty to defend or indemnify Son or Father for any claims arising out of the incident described herein.

WHEREFORE, State Farm prays that the Court issue an Order:

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

a. Declaring the driver exclusion issued by State Farm is valid and enforceable;

b. Declaring the driver exclusion issued by State Farm excludes coverage for any bodily injury, loss, or damage occurring while Son is operating a motor vehicle;

c. Declaring State Farm has no duty or obligation to defend or indemnify Son or Father for the claims arising out of the accident described herein; and

d. For such other and further relief as this Honorable Court may deem just and proper.

Respectfully submitted,

*s/William T. Young III*
Jennifer E. Johnsen (Fed. ID 5427)
William T. Young III (Fed. ID 10201)
GALLIVAN, WHITE & BOYD, P.A.
P. O. Box 10589 (29603)
55 Beattie Place, Suite 1200
Greenville, South Carolina 29601
(864) 271-9580
jjohnsen@gwblawfirm.com
byoung@gwblawfirm.com

*Attorneys for Plaintiff*

August 16, 2021
Greenville, South Carolina

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**EXHIBIT A**

State Farm Mutual Automobile Insurance Company
PO Box 89000
Atlanta GA 30356-9900

48738-C-C-C   MATCH 00166 MUTL  DOI

**DECLARATIONS PAGE**

NAMED INSURED          00166
                000007 0058      40-1397-5 C   A
LAMB, MELVIN O JR

| | |
|---|---|
| **POLICY NUMBER** | 632 3189-B07-40B |

**POLICY PERIOD** JUN 10 2021 to FEB 07 2022
12:01 A.M. Standard Time

ıhlıılıılıılılllmılllıılıllılılılılılllllllı

**AGENT**
JACK TANKERSLEY
454 W COLEMAN BLVD
MT PLEASANT, SC 29464-5653

PHONE: (843)881-8888

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.**

**YOUR CAR**

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|------|------|-------|------------|--------------------|-------|
| 2004 | CHEVROLET | TAHOE | SPORT WG | 1GNEK13Z54R235227 | 405H521000 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---------|-------------------|----------|
| A | Liability Coverage | |
| | Bodily Injury Limits | |
| | Each Person,  Each Accident | |
| | $25,000     $50,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $25,000 | |
| U | Uninsured Motor Vehicle Coverage | |
| | Bodily Injury Limits | |
| | Each Person,  Each Accident | |
| | $25,000     $50,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $25,000 | |

**\* Total premium for JUN 10 2021 to FEB 07 2022.**          This is not a bill

---

**IMPORTANT MESSAGES**

Replaced policy number 6323189-40A.

**Your total renewal premium for AUG 07 2021 to FEB 07 2022 is**

\* The total premium listed above reflects a recent change to your policy and the 6 month renewal premium.

State Farm works hard to offer you the best combination of price, service, and protection.    The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports.

You have the right to request, no more than once annually, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.

**Notice of insurance information collection practices - personal , family, or household insurance transactions:**
We often collect personal information from persons other than the individual or individuals listed on the policy.
Such personal information may, in certain circumstances, be disclosed to third parties without your authorization.
If you would like  additional information concerning the collection and disclosure of personal information – and your right to see and correct any personal information in your files - it will be furnished upon request.

---

**EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)**

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET –
FORM 9840A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
6126MT     AMENDATORY ENDORSEMENT.
6128DP     AMENDATORY ENDORSEMENT.
9940A      AMENDATORY ENDORSEMENT.
6023DC DRIVER EXCLUSION-MELVIN O LAMB III.

Agent:        JACK TANKERSLEY
Telephone:   (843)881-8888
Prepared    JUL 14 2021        1397-B3A



Please read the policy carefully. If there is an
accident, contact your State Farm agent or one
of our Claim Offices at once. (See "INSURED'S
DUTIES" in this policy booklet.)

Georgia-South Carolina Office
11350 Johns Creek Parkway
Duluth, GA 30098-0001
Phone: (770) 418-5000

State Farm®
**Car Policy**
Booklet

**South Carolina**
Policy Form 9840A

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# CONTENTS

**THIS POLICY** .................................... 3

**DEFINITIONS** .................................... 4

**LIABILITY COVERAGE** ......................... 6

  Additional Definition ........................ 6

  Insuring Agreement ........................... 7

  Supplementary Payments ..................... 7

  Limits .............................................. 8

  Nonduplication ................................. 8

  Exclusions ....................................... 8

  If Other Liability Coverage Applies......... 10

  Required Out-of-State Liability Coverage .. 11

  Financial Responsibility Certification .... 11

**PERSONAL INJURY PROTECTION** ..... 11

  Additional Definitions........................ 11

  Insuring Agreement ........................... 12

  Determining Medical Expenses ............... 13

  Arbitration ..................................... 13

  Limits ............................................ 13

  Exclusions ...................................... 14

  If Other Personal Injury Protection
  Coverage or Similar Vehicle Insurance
  Applies .......................................... 15

  Workers' Compensation Coordination ...... 16

  Our Payment Options .......................... 16

**MEDICAL PAYMENTS COVERAGE** .... 17

  Additional Definitions........................ 17

  Insuring Agreement ........................... 18

  Determining Medical Expenses ............... 18

  Arbitration ..................................... 18

  Limit ............................................. 19

  Exclusions ...................................... 19

  If Other Medical Payments Coverage or
  Similar Vehicle Insurance Applies .......... 20

  Our Payment Options .......................... 21

**UNINSURED MOTOR VEHICLE
COVERAGE** ...................................... 21

  Additional Definitions........................ 21

  Insuring Agreement ........................... 22

  Our Right to Defend ........................... 22

Limits ............................................ 22

Nonduplication ................................. 22

Exclusions ...................................... 23

If Other Uninsured Motor Vehicle
Coverage Applies .............................. 23

Our Payment Options .......................... 24

**UNDERINSURED MOTOR VEHICLE
COVERAGE** ...................................... 25

  Additional Definitions......................... 25

  Insuring Agreement ........................... 25

  Our Right to Defend ........................... 25

  Limits ............................................ 25

  Nonduplication ................................. 26

  Exclusions ...................................... 26

  If Other Underinsured Motor Vehicle
  Coverage Applies .............................. 27

  Our Payment Options .......................... 28

**PHYSICAL DAMAGE COVERAGES** .... 28

  Additional Definitions......................... 28

  Insuring Agreements .......................... 29

  Supplementary Payments – Comprehensive
  Coverage and Collision Coverage............ 31

  Limits and Loss Settlement – Comprehen-
  sive Coverage and Collision Coverage...... 31

  Limits – Car Rental and Travel Expenses
  Coverage......................................... 33

  Nonduplication ................................. 33

  Exclusions ...................................... 33

  If Other Physical Damage Coverage or
  Similar Coverage Applies..................... 35

  Financed Vehicle .............................. 36

  Our Payment Options ......................... 36

**DEATH, DISMEMBERMENT AND
LOSS OF SIGHT COVERAGE** ............... 37

  Additional Definition ......................... 37

  Insuring Agreement ........................... 37

  Benefit .......................................... 37

  Exclusions ...................................... 38

  Our Payment Options .......................... 38

2:21-cv-02623-MBS    Date Filed 08/16/21    Entry Number 1-1    Page 4 of 61
2:25-cv-00035-RMG    Date Filed 01/02/25    Entry Number 1-1    Page 201 of 1295

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**INSURED'S DUTIES**............................... 39

    Notice to Us of an Accident or Loss ......... 39

    Notice to Us of a Claim or Lawsuit .......... 39

    Insured's Duty to Cooperate With Us ....... 39

    Questioning Under Oath ........................... 39

    Other Duties Under the Physical
    Damage Coverages ................................... 39

    Other Duties Under Personal Injury
    Protection Coverage, Medical Payments
    Coverage, Uninsured Motor Vehicle
    Coverage, Underinsured Motor Vehicle
    Coverage, and Death, Dismemberment
    and Loss of Sight Coverage ..................... 40

**GENERAL TERMS** ................................... 41

    When Coverage Applies............................ 41

Where Coverage Applies............................ 41

Newly Owned or Newly Leased Car......... 41

Changes to This Policy.............................. 42

Premium .................................................... 43

Renewal ..................................................... 43

Nonrenewal ............................................... 43

Cancellation............................................... 43

Assignment................................................ 44

Bankruptcy or Insolvency of the Insured .. 44

Concealment or Fraud ............................... 44

Our Right to Recover Our Payments......... 44

Legal Action Against Us ........................... 45

Choice of Law ........................................... 45

Severability................................................ 45

Conformity to Law .................................... 45

# THIS POLICY

1. This policy consists of:

    a. the most recently issued Declarations Page;

    b. the policy booklet version shown on that Declarations Page; and

    c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:

    a. *us*; and

    b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

    a. based on payment of premium for the coverages chosen; and

    b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, & ENDORSEMENTS" on the Declarations Page, in reliance on the following statements:

    (1) The named insured shown on the Declarations Page is the sole owner of *your car*.

    (2) Neither *you* nor any member of *your* household has, within the past three years, had:

      (a) vehicle insurance canceled or nonrenewed by an insurer; or

      (b) either:

        (i) a license to drive; or

        (ii) a vehicle registration

      suspended, revoked, or refused.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(3) *Your car* is used for pleasure and business.

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:

a. the statements in 3.b. above are made by such named insured or applicant and are true; and

b. *we* provide this insurance on the basis those statements are true.

5. *Your* purchase of this policy may allow *you* to purchase certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other policies from the ***State Farm Companies***, subject to their applicable eligibility rules.

# DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other form of these words and phrases. Defined words and phrases are printed in boldface italics.

***Bodily Injury*** means bodily injury to a ***person*** and sickness, disease, or death that results from it.

***Car*** means a land motor vehicle with four or more wheels, designed for use primarily on public roads. ***Car*** does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

***Car Business*** means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

***Financial Responsibility Act*** means the Motor Vehicle Financial Responsibility Act of South Carolina.

***Fungi*** means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

a. Mycotoxins;

b. Spores;

c. Scents; or

d. Byproducts.

***Newly Acquired Car*** means a ***car*** newly ***owned by you***. A ***car*** ceases to be a ***newly acquired car*** on the earlier of:

1. the effective date and time of a policy, including any binder, issued by ***us*** or any other company that describes the ***car*** as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date the ***car*** is delivered to ***you***.

If a ***newly acquired car*** is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that ***newly acquired car***, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the ***newly acquired car*** is delivered to ***you***.

***Non-Owned Car*** means a ***car*** that is in the lawful possession of ***you*** or any ***resident relative*** and that neither:

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

1. is **owned by**:

   a. **you**;

   b. any **resident relative**;

   c. any other **person** who resides primarily in **your** household; or

   d. an employer of any **person** described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:

   a. **you**; or

   b. any **resident relative**

   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or **loss**.

**Occupying** means in, on, entering, or exiting.

**Our** means the Company issuing this policy as shown on the Declarations Page.

**Owned By** means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 31 or more consecutive days, to.

**Pedestrian** means a **person** who is not **occupying**:

1. a motorized vehicle; or

2. a vehicle designed to be pulled by a motorized vehicle.

**Person** means a human being.

**Private Passenger Car** means:

1. a **car** of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry **persons** and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:

   a. that is not used for:

      (1) wholesale; or

      (2) retail

   b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

**Resident Relative** means a **person**, other than **you**, who resides primarily with the first **person** shown as a named insured on the Declarations Page and who is:

1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

2. a ward or a foster child of that named insured, his or her spouse, or a **person** described in 1. above.

**State Farm Companies** means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

**Temporary Substitute Car** means a **car** that is in the lawful possession of the **person** operating it and that:

1. replaces **your car** for a short time while **your car** is out of use due to its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. damage; or

   e. theft; and

2. neither **you** nor the **person** operating it own or have registered.

If a **car** qualifies as both a **non-owned car** and a **temporary substitute car**, then it is considered a **temporary substitute car** only.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*Trailer* means:

1. a trailer:

   a. designed to be pulled by a ***private passenger car***;

   b. not designed to carry ***persons***; and

   c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a ***car***.

*Us* means the Company issuing this policy as shown on the Declarations Page.

*We* means the Company issuing this policy as shown on the Declarations Page.

*You* or *Your* means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a *person*, then "***you***" or "***your***" includes the spouse of the first ***person*** shown as a named insured if the spouse resides primarily with that named insured.

*Your Car* means the vehicle shown under "YOUR CAR" on the Declarations Page. ***Your car*** does not include a vehicle that ***you*** no longer own or lease.

If a ***car*** is shown on the Declarations Page under "YOUR CAR", and ***you*** ask ***us*** to replace it with a ***car*** newly ***owned by you***, then the ***car*** being replaced will continue to be considered ***your car*** until the earliest of:

1. the end of the 30th calendar day immediately following the date the ***car*** newly ***owned by you*** is delivered to ***you***;

2. the date this policy is no longer in force; or

3. the date ***you*** no longer own or lease the ***car*** being replaced.

## LIABILITY COVERAGE

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1. ***you*** and ***resident relatives*** for:

   a. the ownership, maintenance, or use of:

      (1) ***your car***;

      (2) a ***newly acquired car***; or

      (3) a ***trailer***; and

   b. the maintenance or use of:

      (1) a ***non-owned car***; or

      (2) a ***temporary substitute car***;

2. the first ***person*** shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a ***car*** that is ***owned by***, or furnished by an employer to, a ***person*** who resides primarily in ***your*** household, but only if such ***car*** is neither ***owned by***, nor furnished by an employer to, the first ***person*** shown as a named insured on the Declarations Page or that ***person's*** spouse;

3. any other ***person*** for his or her use of:

   a. ***your car***;

   b. a ***newly acquired car***;

   c. a ***temporary substitute car***; or

   d. a ***trailer*** while attached to a ***car*** described in a., b., or c. above.

   Such vehicle must be used with the expressed or implied consent of ***you***; and

4. any other ***person*** or organization vicariously liable for the use of a vehicle by an ***insured*** as defined in 1., 2., or 3. above, but only for such vicarious liability. This

2:21-cv-02623-MBS    Date Filed 08/16/21    Entry Number 1-1    Page 8 of 61
2:25-cv-00035-RMG    Date Filed 01/02/25    Entry Number 1-1    Page 205 of 1295

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. *We* will pay:

   a. damages an *insured* becomes legally liable to pay because of:

      (1) *bodily injury* to others; and

      (2) damage to property

      caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy;

   b. attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages; and

   c. court costs charged to an *insured* and resulting from that part of a lawsuit:

      (1) that seeks damages payable under this policy's Liability Coverage; and

      (2) against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay attorney fees and court costs incurred after *we* deposit in court or pay the amount due under this policy's Liability Coverage.

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages, fees, and costs described in the **Insuring Agreement**

above, the interest, premiums, costs, and expenses listed below that result from such accident:

1. Interest on damages owed by the *insured* that accrues:

   a. before a judgment, where owed by law, but only on that part of the judgment *we* pay; and

   b. after a judgment. *We* will not pay interest on damages paid or payable by a party other than the *insured* or *us*.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage;

2. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for bonds that exceed this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage; and

3. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

7

9840A

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## Limits

1. The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

   a. The limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident. "*Bodily injury* to any one *person"* includes all injury and damages to other *persons* resulting from that *bodily injury,* and all emotional distress resulting from that *bodily injury* sustained by other *persons* who do not sustain that *bodily injury*.

   b. The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *persons* injured in the same accident.

2. The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

3. These Liability Coverage limits are the most *we* will pay regardless of the number of:

   a. *insureds*;

   b. claims made;

   c. vehicles insured; or

   d. vehicles involved in the accident.

## Nonduplication

*We* will not pay any damages or expenses under Liability Coverage that have already been paid under Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

## Exclusions

THERE IS NO COVERAGE FOR AN *INSURED*:

1. TO THE EXTENT THE LIABILITY COVERAGE LIMITS OF THIS POLICY EXCEED THE LIABILITY COVERAGE LIMITS REQUIRED BY THE *FINANCIAL RESPONSIBILITY ACT* IF SUCH *INSURED* INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

3. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

4. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees;

5. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

7. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH

2:21-cv-02623-MBS    Date Filed 08/16/21    Entry Number 1-1    Page 10 of 61
2:25-cv-00035-RMG    Date Filed 01/02/25    Entry Number 1-1    Page 207 of 1295

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

THAT **INSURED'S** EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A **CAR BUSINESS**. This exclusion does not apply to:

  a. **you**;

  b. any **resident relative**; or

  c. any agent, employee, or business partner of **you** or any **resident relative**; or

  d. any **person** other than a **person** described in a., b., or c. above up to the liability coverage limits required by the **Financial Responsibility Act**;

while maintaining or using **your car**, a **newly acquired car**, a **temporary substitute car**, or a **trailer owned by you**;

8. WHILE THAT **INSURED** IS VALET PARKING A VEHICLE. This exclusion does not apply up to the liability coverage limits required by the **Financial Responsibility Act** while an **insured** is valet parking **your car**, a **newly acquired car**, a **temporary substitute car**, or a **trailer owned by you**;

9. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN **YOUR CAR**, A **NEWLY ACQUIRED CAR**, A **TEMPORARY SUBSTITUTE CAR**, OR A **TRAILER** IN ANY BUSINESS OR OCCUPATION OTHER THAN A **CAR BUSINESS** OR VALET PARKING. This exclusion does not apply to the maintenance or use of a **private passenger car**;

10. FOR DAMAGE TO PROPERTY WHILE IT IS:

  a. **OWNED BY**;

  b. RENTED TO;

  c. USED BY;

  d. IN THE CARE OF; OR

  e. TRANSPORTED BY

**YOU**, A **RESIDENT RELATIVE**, OR THE **PERSON** WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:

  a. motor vehicle **owned by** the employer of **you** or any **resident relative** if such damage is caused by an **insured** while operating another motor vehicle;

  b. residence while rented to or leased to an **insured**; or

  c. private garage while rented to or leased to an **insured**;

11. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

12. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION;

13. WHILE USING A **TRAILER** WITH A MOTOR VEHICLE IF THAT **INSURED** IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

14. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

  a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

  b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

This exclusion (14.) does not apply to **your car** up to the liability coverage limits required by the **Financial Responsibility Act**; OR

15. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**If Other Liability Coverage Applies**

1. If Liability Coverage provided by this policy and one or more other Car Policies issued to **you** or any **resident relative** by the **State Farm Companies** apply to the same accident, then:

    a. the Liability Coverage limits of such policies will not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. **We** may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of **your car** or a **trailer** attached to it.

    a. If:

        (1) this is the only Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Liability Coverage which applies to the accident as primary coverage; and

        (2) liability coverage provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

    then **we** will pay the proportion of damages payable as primary that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other liability coverage that apply as primary coverage.

    b. If:

        (1) more than one Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** provides Liability Coverage which applies to the accident as primary coverage; and

        (2) liability coverage provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

    then the **State Farm Companies** will pay the proportion of damages payable as primary that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

    a. If:

        (1) this is the only Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Liability Coverage which applies to the accident as excess coverage; and

        (2) liability coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

    then **we** will pay the proportion of damages payable as excess that **our** applicable limit bears to the sum of **our** applicable limit and the limits of all other liability coverage that apply as excess coverage.

    b. If:

        (1) more than one Car Policy issued to **you** or any **resident relative** by the **State Farm Companies** provides Liability Coverage which applies to the accident as excess coverage; and

        (2) liability coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same accident,

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

then the **State Farm Companies** will pay the proportion of damages payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1.  an **insured** is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law,

financial responsibility law, or similar law; and

2.  this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## PERSONAL INJURY PROTECTION COVERAGE

This policy provides Personal Injury Protection Coverage if "P" with a number beside it is shown under "SYMBOLS" on the Declarations Page. "P" with a number beside it is **your** "coverage symbol".

Check **your** coverage symbol with the **Schedule** in the provision titled **Limits** for the choice of coverage **you** made.

**Additional Definitions**

**Insured** means:

1.  **you** and **resident relatives**:

    a.  while **occupying** a **motor vehicle** other than a motorcycle; or

    b.  if struck as a **pedestrian** by a **motor vehicle**; or

2.  any other **person** while **occupying**:

    a.  **your car**;

    b.  a **newly acquired car**;

    c.  a **temporary substitute car**; or

    d.  a **trailer** while attached to a **car** described in a., b., or c. above.

    Such vehicle must be used with the expressed or implied consent of **you**.

**Medical Expenses** mean **reasonable expenses** for **medical services**.

**Medical Services** mean treatments, procedures, products, and other services that are:

1.  necessary to achieve maximum medical improvement for the **bodily injury**;

2.  rendered by a healthcare provider:

    a.  who is licensed as a healthcare provider if a license is required by law; and

    b.  within the legally authorized scope of that healthcare provider's practice;

3.  commonly and customarily recognized throughout the medical profession and

2:21-cv-02623-MBS     Date Filed 08/16/21     Entry Number 1-1     Page 13 of 61
2:25-cv-00035-RMG     Date Filed 01/02/25     Entry Number 1-1     Page 210 of 1295

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

within the United States of America as appropriate for the treatment of the ***bodily injury***;

4. primarily designed to serve a medical purpose;

5. not experimental; and

6. not for research purposes.

***Motor Vehicle*** means a vehicle or trailer of a kind required to be registered under South Carolina law.

***Reasonable Expenses*** mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar ***medical services*** in the geographical area in which the charges were incurred;

2. The fee specified in any fee schedule:

   a. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where ***medical services*** are provided; and

   b. as prescribed or authorized by the law of the state where ***medical services*** are provided;

3. The fees agreed to by both the ***insured's*** healthcare provider and ***us***; or

4. The fees agreed upon between the ***insured's*** healthcare provider and a third party when ***we*** have a contract with such third party.

**Insuring Agreement**

**Medical Expenses** and **Funeral Expenses** apply to all Personal Injury Protection Coverages. **Loss of Income** and **Essential Services Expenses** apply only to coverages with coverage symbol P1, P2, P3, P4, P5, P6, and P7.

1. **Medical Expenses**

   ***We*** will pay ***medical expenses*** incurred because of ***bodily injury*** that is sustained by an ***insured*** and caused by accident resulting from the maintenance or use of a ***motor vehicle*** as a vehicle if:

   a. that ***insured*** is first provided ***medical services*** within one year immediately following the date of the accident; and

   b. such ***medical expenses*** are for ***medical services*** that are provided within three years immediately following the date of the accident.

2. **Funeral Expenses**

   ***We*** will pay funeral expenses incurred for an ***insured*** who dies within three years immediately following the date of a ***motor vehicle*** accident if the death is a direct result of ***bodily injury*** sustained in such accident.

3. **Loss of Income**

   ***We*** will pay 85% of an ***insured's*** actual loss of earnings from work due to ***bodily injury*** that is sustained by an ***insured*** and caused by a ***motor vehicle*** accident. This applies only if the ***insured*** was receiving earnings from work at the time of the accident. The loss must be incurred within three years of the date of the accident and while the ***insured*** is living.

4. **Essential Services Expenses**

   ***We*** will pay reasonable expenses incurred for needed services the ***insured*** would have done for his or her family, but is unable to do because of ***bodily injury*** that is sustained by that ***insured*** and caused by a ***motor vehicle*** accident. This benefit applies only if the ***insured*** was not receiving earnings from work at the time of the accident. The expense must be incurred within three years of the date of the accident and while the ***insured*** is living.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:

    a.   utilization reviews;

    b.   peer reviews; and

    c.   medical bill reviews

    to determine if the incurred charges are *medical expenses*;

2. use a medical examination of the *insured* to determine if:

    a.   the *bodily injury* was caused by a *motor vehicle* accident; and

    b.   the expenses incurred are *medical expenses;* and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Arbitration**

1. If there is a disagreement as to:

    a.   whether incurred charges are *medical expenses*; or

    b.   the amount due under this coverage for Funeral Expenses, Loss of Income, or Essential Services Expenses

    then the disagreement will be resolved by arbitration upon written request of the *insured* or *us*.

2. The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

    The *insured* and *we* will each select a competent arbitrator.  These two arbitrators will select a third competent arbitrator.  If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

    Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party.  Both parties will share equally the cost of the third arbitrator.

3. The arbitrators shall only decide whether incurred charges are *medical expenses* and the amount due under this coverage for Funeral Expenses, Loss of Income, or Essential Services Expenses.  Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

    a.   *us*;

    b.   the *insured*;

    c.   any assignee of the *insured*; and

    d.   any *person* or organization with whom the *insured* expressly or impliedly contracts for *medical services*, funeral services, or essential services.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

6. *We* do not waive any of *our* rights by submitting to arbitration.

**Limits**

1. The most *we* will pay is the amount shown under "Aggregate Limit" in the **Schedule** for *your* coverage symbol.  This limit is the most *we* will pay for all loss and expense combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

    a.   insureds;

    b.   claims made;

    c.   vehicles insured; or

    d.   vehicles involved in the accident.

2. Subject to the aggregate limit shown in the **Schedule** for *your* coverage symbol, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

3. **Schedule**

| Coverage Symbol | Medical Expenses | Funeral Expenses | Loss of Income | Essential Services Expenses | Aggregate Limit |
|---|---|---|---|---|---|
| P1 | Yes | Yes | Yes | Yes | $1,000 |
| P2 | Yes | Yes | Yes | Yes | $1,500 |
| P3 | Yes | Yes | Yes | Yes | $2,000 |
| P4 | Yes | Yes | Yes | Yes | $2,500 |
| P5 | Yes | Yes | Yes | Yes | $5,000 |
| P6 | Yes | Yes | Yes | Yes | $10,000 |
| P7 | Yes | Yes | Yes | Yes | $25,000 |
| P8 | Yes | Yes | No | No | $1,000 |
| P9 | Yes | Yes | No | No | $1,500 |
| P10 | Yes | Yes | No | No | $2,000 |
| P11 | Yes | Yes | No | No | $2,500 |
| P12 | Yes | Yes | No | No | $5,000 |
| P13 | Yes | Yes | No | No | $10,000 |
| P14 | Yes | Yes | No | No | $25,000 |

**Exclusions**

THERE IS NO COVERAGE FOR AN ***INSURED***:

1. WHO INTENTIONALLY CAUSES AN ACCIDENT WHICH RESULTS IN THAT ***INSURED'S BODILY INJURY***;

2. WHILE VOLUNTARILY ***OCCUPYING*** A ***MOTOR VEHICLE*** KNOWN BY THAT ***PERSON*** TO BE STOLEN;

3. WHILE COMMITTING A FELONY;

4. WHILE ATTEMPTING TO ELUDE A POLICE OFFICER;

5. WHILE ***OCCUPYING***, USING, OR MAINTAINING A MOTORCYCLE;

6. WHO IS EITHER ***OCCUPYING*** OR STRUCK AS A ***PEDESTRIAN*** BY A VEHICLE, ***OWNED BY*** THAT ***INSURED***, ***YOU***, OR ANY ***RESIDENT RELATIVE*** IF IT IS NOT ***YOUR CAR*** OR A ***NEWLY ACQUIRED CAR***;

7. WHO IS ***OCCUPYING*** A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN ***INSURED***;

8. WHO IS ***OCCUPYING*** A VEHICLE WHILE IT IS BEING USED TO CARRY ***PERSONS*** FOR A CHARGE. This exclusion does not apply to:

   a. the use of a ***private passenger car*** on a share-the-expense basis; or

   b. an ***insured*** while ***occupying*** a ***non-owned car*** as a passenger;

9. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT ***INSURED'S*** EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A ***CAR BUSINESS***. This exclusion does not apply to:

   a. ***you***;

   b. any ***resident relative***; or

   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using ***your car***, a ***newly acquired car***, a ***temporary substitute car***, or a ***trailer owned by you***;

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

10. WHILE THAT **INSURED** IS VALET PARKING A VEHICLE;

11. WHILE MAINTAINING OR USING A **NON-OWNED CAR** IN ANY BUSINESS OR OCCUPATION OTHER THAN A **CAR BUSINESS** OR VALET PARKING. This exclusion does not apply to the maintenance or use of a **private passenger car**;

12. WHO IS EITHER **OCCUPYING** OR STRUCK AS A **PEDESTRIAN** BY A VEHICLE THAT:

    a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS;

    b. RUNS ON RAILS OR CRAWLER-TREADS; OR

    c. IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

13. WHOSE **BODILY INJURY** RESULTS FROM WAR OF ANY KIND;

14. WHOSE **BODILY INJURY** RESULTS FROM:

    a. NUCLEAR REACTION;

    b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

    c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

15. WHOSE **BODILY INJURY** RESULTS FROM THE DISCHARGE OF A FIREARM;

16. WHOSE **BODILY INJURY** RESULTS FROM EXPOSURE TO **FUNGI**; OR

17. WHO IS **OCCUPYING** A VEHICLE WHILE IT IS:

    a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (17.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Personal Injury Protection Coverage or Similar Vehicle Insurance Applies**

1. An **insured** shall not recover for the same expense or loss under both this coverage and other similar vehicle insurance.

2. If Personal Injury Protection Coverage is provided by this policy and one or more other vehicle policies issued to **you** or any **resident relative** by the **State Farm Companies** apply to the same **bodily injury**, then:

    a. the Personal Injury Protection Coverage limits of such policies shall not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. **We** may choose one or more policies from which to make payment.

3. The Personal Injury Protection Coverage provided by this policy applies as primary coverage for an **insured** who sustains **bodily injury** while **occupying your car** or a **trailer** attached to it.

    a. If:

        (1) this is the only vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Personal Injury Protection Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

        (2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

then *we* will pay the proportion of expenses or loss payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as primary coverage.

b.  If:

(1)  more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Personal Injury Protection Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

(2)  personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of expenses or loss payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as primary coverage.

4.  Except as provided in 3. above, the Personal Injury Protection Coverage provided by this policy applies as excess coverage, but only in the amount by which the limits of this coverage exceed the primary coverage.

a.  If:

(1)  this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Personal Injury Protection Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2)  personal injury protection coverage or other similar vehicle insurance

provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then *we* will pay the proportion of expenses or loss payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as excess coverage.

b.  If:

(1)  more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Personal Injury Protection Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2)  personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of expenses or loss payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as excess coverage.

**Workers' Compensation Coordination**

Any Personal Injury Protection Coverage provided by this policy applies as excess over any benefits recovered under any workers' compensation law or any other similar law.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1.  The *insured*;

2.  The *insured's* surviving spouse;

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

3.  A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4.  A *person* authorized by law to receive such payment; or

5.  Any *person* or organization that provides the *medical services*, funeral services, or other services payable under this coverage.

# MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1.  *you* and *resident relatives*:

    a.  while *occupying*:

        (1)  *your car*;

        (2)  a *newly acquired car*;

        (3)  a *temporary substitute car*;

        (4)  a *non-owned car*; or

        (5)  a *trailer* while attached to a *car* described in (1), (2), (3), or (4) above; or

    b.  if struck as a *pedestrian* by a motor vehicle or any type of trailer; and

2.  any other *person* while *occupying*:

    a.  *your car*;

    b.  a *newly acquired car*;

    c.  a *temporary substitute car*; or

    d.  a *trailer* while attached to a *car* described in a., b., or c. above.

    Such vehicle must be used with the expressed or implied consent of *you*.

*Medical Expenses* mean *reasonable expenses* for *medical services*.

*Medical Services* mean treatments, procedures, products, and other services that are:

1.  necessary to achieve maximum medical improvement for the *bodily injury*;

2.  rendered by a healthcare provider:

    a.  who is licensed as a healthcare provider if a license is required by law; and

    b.  within the legally authorized scope of that healthcare provider's practice;

3.  commonly and customarily recognized throughout the medical profession and within the United States of America as appropriate for the treatment of the *bodily injury*;

4.  primarily designed to serve a medical purpose;

5.  not experimental; and

6.  not for research purposes.

*Reasonable Expenses* mean the lowest one of the following charges:

1.  The usual and customary fees charged by a majority of healthcare providers who provide similar *medical services* in the geographical area in which the charges were incurred;

2.  The fee specified in any fee schedule:

    a.  applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where *medical services* are provided; and

    b.  as prescribed or authorized by the law of the state where *medical services* are provided;

3.  The fees agreed to by both the *insured's* healthcare provider and *us*; or

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

4. The fees agreed upon between the *insured's* healthcare provider and a third party when *we* have a contract with such third party.

## Insuring Agreement

*We* will pay:

1. *medical expenses* incurred because of *bodily injury* that is sustained by an *insured* and caused by accident resulting from the maintenance or use of a motor vehicle as a vehicle if:

   a. that *insured* is first provided *medical services* within one year immediately following the date of the accident; and

   b. such *medical expenses* are for *medical services* that are provided within three years immediately following the date of the accident; and

2. funeral expenses incurred for an *insured* who dies within three years immediately following the date of a motor vehicle accident if the death is a direct result of *bodily injury* sustained in such accident.

## Determining Medical Expenses

*We* have the right to:

1. obtain and use:

   a. utilization reviews;

   b. peer reviews; and

   c. medical bill reviews

   to determine if the incurred charges are *medical expenses*;

2. use a medical examination of the *insured* to determine if:

   a. the *bodily injury* was caused by a motor vehicle accident; and

   b. the expenses incurred are *medical expenses;* and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

## Arbitration

1. If there is a disagreement as to whether incurred charges are *medical expenses*, then the disagreement will be resolved by arbitration upon written request of the *insured* or *us*.

2. The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

   The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

   Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

3. The arbitrators shall only decide whether incurred charges are *medical expenses*. Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

   a. *us*;

   b. the *insured*;

   c. any assignee of the *insured*; and

   d. any *person* or organization with whom the *insured* expressly or impliedly contracts for *medical services*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

6. *We* do not waive any of *our* rights by submitting to arbitration.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Limit**

The Medical Payments Coverage limit is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person". This limit is the most *we* will pay for the *medical expenses* and funeral expenses combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

Subject to the limit shown on the Declarations Page, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO IS STRUCK AS A *PEDESTRIAN* BY A MOTOR VEHICLE, *OWNED BY* THAT *INSURED* OR *YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

2. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

3. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

4. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*;

   b. any *resident relative*; or

   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

6. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

7. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

8. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

9. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   b. RUNS ON RAILS OR CRAWLER-TREADS;

10. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

11. WHOSE *BODILY INJURY* RESULTS FROM:

    a. NUCLEAR REACTION;

    b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

    c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

12. WHOSE ***BODILY INJURY*** RESULTS FROM THE DISCHARGE OF A FIRE-ARM;

13. WHOSE ***BODILY INJURY*** RESULTS FROM EXPOSURE TO ***FUNGI***; OR

14. WHO IS ***OCCUPYING*** A VEHICLE WHILE IT IS:

    a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An ***insured*** shall not recover for the same ***medical expenses*** or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** apply to the same ***bodily injury***, then:

    a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. ***We*** may choose one or more policies from which to make payment.

3. If other medical payments coverage, personal injury protection coverage, or similar

vehicle insurance applies, then the Medical Payments Coverage provided by this policy applies as excess coverage.

a. If:

    (1) this is the only vehicle policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

    (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same accident,

then ***we*** will pay the proportion of ***medical expenses*** and funeral expenses payable as excess that ***our*** applicable limit bears to the sum of ***our*** applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

b. If:

    (1) more than one vehicle policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

    (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same accident,

then the ***State Farm Companies*** will pay the proportion of ***medical expenses*** and funeral expenses payable as excess that the maximum amount that may be paid by the ***State Farm Companies*** as determined in 2. above

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment; or

5. Any *person* or organization that provides the *medical services* or funeral services.

## UNINSURED MOTOR VEHICLE COVERAGE

This policy provides Uninsured Motor Vehicle Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying* or using:

   a. *your car*;

   b. a *newly acquired car*; or

   c. a *temporary substitute car*;

   with the expressed or implied consent of *you*; and

4. any *person* to the extent he or she may recover damages under a state wrongful death statute because of the death of an *insured* under 1., 2., or 3. above.

*Motor Vehicle* means a self-propelled vehicle or trailer designed for use on public roads, but does not include tractor engines, road rollers, farm trailers, tractor cranes, power shovels, well drillers, or electric trolleys.

*Property Damage* means damage to property of the *insured*.

*Uninsured Motor Vehicle* means a *motor vehicle*:

1. the ownership, maintenance, and use of which is:

   a. not insured or bonded for bodily injury and property damage liability at the time of the accident; or

   b. insured or bonded for bodily injury and property damage liability at the time of the accident; but

      (1) the limits are less than required by the *Financial Responsibility Act*;

      (2) the insuring company:

         (a) denies that its policy provides liability coverage for damages that result from the accident; or

         (b) is or becomes insolvent; or

      (3) a cause of action for the *bodily injury* or *property damage* is barred by the South Carolina Tort Claims Act; or

2. the owner and driver of which remain unknown, but only if:

   a. the *bodily injury* or *property damage* was caused by physical contact with the unknown vehicle, or the accident was witnessed by someone other than the owner or driver of the insured vehicle. The witness must sign an affidavit attesting to the truth of the facts of the accident contained in the affidavit; and

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

b.   the *insured* was not negligent in failing to determine the identity of the other vehicle and the driver of the other vehicle at the time of the accident.

*Uninsured Motor Vehicle* does not include a motor vehicle *owned by*:

1. a self-insurer in accordance with the applicable provisions of law; or

2. the State or any of its political subdivisions when the vehicle is operated by a *person* with proper authorization.

**Insuring Agreement**

*We* will pay damages for *bodily injury* and *property damage* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be sustained by an *insured*. The *bodily injury* and *property damage* must be caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle*.

**Our Right to Defend**

*We* have the right to appear and defend in the name of the owner and driver of the *uninsured motor vehicle* on the issues of legal liability of, and the damages owed by, such owner or driver.

**Limits**

1. The Uninsured Motor Vehicle Coverage limits for *bodily injury* are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

   a. The most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident is the lesser of:

   (1) the amount of all damages resulting from that *bodily injury* reduced by the sum of all payments for damages resulting from that *bodily injury* made by or on behalf of any *person* or organization who is or may be held legally liable for that *bodily injury*; or

   (2) the limit shown under "Each Person".

   "*Bodily injury* to any one *person*" includes all injury and damages to other *persons* resulting from that *bodily injury*, and all emotional distress resulting from that *bodily injury* sustained by other *persons* who do not sustain that *bodily injury*.

   b. Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident".

2. The Uninsured Motor Vehicle Coverage limit for *property damage* is shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Property Damage Limit – Each Accident". The most *we* will pay for *property damage* is the lesser of:

   a. the amount of *property damage* reduced by the sum of all payments made by or on behalf of any *person* or organization who is or may be held legally liable for that *property damage*; or

   b. the limit shown under "Each Accident".

3. These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

   a. *insureds*;

   b. claims made;

   c. vehicles insured; or

   d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

b. for **bodily injury** under Liability Coverage of any policy issued by the **State Farm Companies** to **you** or any **resident relative**;

2. that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

   to or for the **insured** under any workers' compensation law, disability benefits law, or similar law; or

3. that are **property damage** paid or payable under any policy of property insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN **INSURED** WHO, WITHOUT **OUR** WRITTEN CONSENT, SETTLES WITH ANY **PERSON** OR ORGANIZATION WHO MAY BE LIABLE FOR THE **BODILY INJURY** OR **PROPERTY DAMAGE** AND THEREBY IMPAIRS **OUR** RIGHT TO RECOVER **OUR** PAYMENTS;

2. TO THE EXTENT THE UNINSURED MOTOR VEHICLE COVERAGE LIMITS OF THIS POLICY EXCEED THE COVERAGE LIMITS REQUIRED BY THE **FINANCIAL RESPONSIBILITY ACT**:

   a. FOR AN **INSURED** WHO SUSTAINS **BODILY INJURY** WHILE **OCCUPYING** A MOTOR VEHICLE **OWNED BY YOU** OR ANY **RESIDENT RELATIVE** IF:

     (1) THE MOTOR VEHICLE IS NOT **YOUR CAR** OR A **NEWLY ACQUIRED CAR**; AND

     (2) IT WAS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

   b. IF THE **UNINSURED MOTOR VEHICLE** IS **OWNED BY YOU** OR ANY **RESIDENT RELATIVE**; OR

   c. FOR **PROPERTY DAMAGE**:

     (1) TO A MOTOR VEHICLE; OR

     (2) IN A MOTOR VEHICLE

     **OWNED BY YOU** OR ANY **RESIDENT RELATIVE** IF THE MOTOR VEHICLE WAS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

3. FOR **PROPERTY DAMAGE** THAT WAS PROXIMATELY CAUSED BY THE DRIVER OF **YOUR CAR** OR A **NEWLY ACQUIRED CAR**;

4. FOR AN **INSURED** WHOSE **BODILY INJURY** RESULTS FROM THE DISCHARGE OF A FIREARM;

5. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

   c. ANY PROPERTY INSURER;

6. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION; OR

7. FOR THE FIRST $200 OF **PROPERTY DAMAGE** SUSTAINED BY EACH **INSURED** IN EACH ACCIDENT.

**If Other Uninsured Motor Vehicle Coverage Applies**

1. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an **insured** who sustains **bodily injury** or **property damage** while **occupying your car**.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

2. Except as provided in item 1. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

3. If:

    a. **you** or any **resident relative** sustains **bodily injury** or **property damage**:

      (1) while **occupying** a motor vehicle not **owned by you** or any **resident relative**; or

      (2) while not **occupying** a motor vehicle; and

    b. Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to **you** or any **resident relative** by the **State Farm Companies** apply to the same **bodily injury** or **property damage**, then

the maximum amount that may be paid from all such policies combined is the single highest limit provided by any one of the policies. **We** may choose one or more policies from which to make payment.

4. If **you** or any **resident relative** sustains **bodily injury** or **property damage** while **occupying** a motor vehicle other than **your car** that is **owned by you** or any **resident relative**, then this coverage applies only to the extent of the uninsured motor vehicle coverage applicable to the motor vehicle that the **insured** was **occupying**.

However, if the motor vehicle that the **insured** was **occupying** was not insured for uninsured motor vehicle coverage at the time of the accident, then the maximum amount that may be paid from all policies combined that are issued to **you** or any **resident relative** by the **State Farm Companies** is the minimum limits required by the **Financial Responsibility Act**. **We** may choose one or more policies from which to make payment.

5. Subject to items 1., 2., 3., and 4. above, if this policy and one or more other sources provide uninsured motor vehicle coverage for the same damages on a:

    a. primary basis, then **we** will pay the proportion of damages payable as primary that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as primary coverage; or

    b. excess basis, then **we** will pay the proportion of damages payable as excess that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

### Our Payment Options

**We** may, at **our** option, make payment to one or more of the following:

1. The **insured**;

2. The **insured's** surviving spouse;

3. A parent or guardian of the **insured**, if the **insured** is a minor or an incompetent **person**; or

4. A **person** authorized by law to receive such payment.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# UNDERINSURED MOTOR VEHICLE COVERAGE

This policy provides Underinsured Motor Vehicle Coverage if "W" is shown under "SYM-BOLS" on the Declarations Page.

**Additional Definitions**

***Insured*** means:

1. ***you***;

2. ***resident relatives***;

3. any other ***person*** while ***occupying*** or using:

   a. ***your car***;

   b. a ***newly acquired car***; or

   c. a ***temporary substitute car***;

   with the expressed or implied consent of ***you***; and

4. any ***person*** to the extent he or she may recover damages under a state wrongful death statute because of the death of an ***insured*** under 1., 2., or 3. above.

***Motor Vehicle*** means a self-propelled vehicle or trailer designed for use on public roads, but does not include tractor engines, road rollers, farm trailers, tractor cranes, power shovels, well drillers, or electric trolleys.

***Property Damage*** means damage to property of the ***insured***.

***Underinsured Motor Vehicle*** means a ***motor vehicle*** the ownership, maintenance, and use of which is either:

1. insured or bonded for bodily injury and property damage liability at the time of the accident; or

2. self-insured under any motor vehicle financial responsibility law, any motor carrier law, or any similar law

in an amount that is at least equal to the amount required by the ***Financial Responsibility Act*** and:

1. the amount of the insurance, bonds, and self-insurance from all sources is less than the amount of the ***insured's*** damages; or

2. the ***insured's*** damages exceed any damages cap or limitation imposed by statute.

***Underinsured Motor Vehicle*** does not include a motor vehicle while located for use as a dwelling or other premises.

**Insuring Agreement**

***We*** will pay damages for ***bodily injury*** and ***property damage*** an ***insured*** is legally entitled to recover from the owner or driver of an ***underinsured motor vehicle***. The ***bodily injury*** must be sustained by an ***insured***. The ***bodily injury*** and ***property damage*** must be caused by an accident that involves the operation, maintenance, or use of an ***underinsured motor vehicle***.

***We*** will pay only if all bodily injury and property damage liability bonds, policies, and self-insurance plans that apply to the ***insured's bodily injury*** or ***property damage*** have been:

1. used up by payment of judgments or settlements; or

2. paid to the extent required by any damages cap or limitation imposed by statute.

**Our Right to Defend**

***We*** have the right to appear and defend in the name of the owner and driver of the ***underinsured motor vehicle*** on the issues of legal liability of, and the damages owed by, such owner or driver.

**Limits**

1. The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

   a. The most ***we*** will pay for all damages resulting from ***bodily injury*** to any one ***person*** injured in any one accident is the lesser of:

      (1) the amount of all damages resulting from that ***bodily injury*** reduced by the sum of all payments for damages resulting from that

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*bodily injury* made by or on behalf of any *person* or organization who is or may be held legally liable for that *bodily injury*; or

(2) the limit shown under "Each Person".

"*Bodily injury* to any one *person*" includes all injury and damages to other *persons* resulting from that *bodily injury,* and all emotional distress resulting from that *bodily injury* sustained by other *persons* who do not sustain that *bodily injury*.

b. Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident".

2. The Underinsured Motor Vehicle Coverage limit for *property damage* is shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Property Damage Limit – Each Accident". The most *we* will pay for *property damage* is the lesser of:

a. the amount of *property damage* reduced by the sum of all payments made by or on behalf of any *person* or organization who is or may be held legally liable for that *property damage*; or

b. the limit shown under "Each Accident".

3. These Underinsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

a. *insureds*;
b. claims made;
c. vehicles insured; or
d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Underinsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

a. by or on behalf of any *person* or organization who is or may be held

legally liable for the *bodily injury* to the *insured*; or

b. for *bodily injury* under Liability Coverage of any policy issued by the **State Farm Companies** to *you* or any *resident relative*;

2. that:

a. have already been paid;
b. could have been paid; or
c. could be paid

to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that are *property damage* paid or payable under any policy of property insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN **INSURED** WHO, WITHOUT **OUR** WRITTEN CONSENT, SETTLES WITH ANY **PERSON** OR ORGANIZATION WHO MAY BE LIABLE FOR THE **BODILY INJURY** OR **PROPERTY DAMAGE** AND THEREBY IMPAIRS **OUR** RIGHT TO RECOVER **OUR** PAYMENTS;

2. TO THE EXTENT THE UNDERINSURED MOTOR VEHICLE COVERAGE LIMITS OF THIS POLICY EXCEED THE COVERAGE LIMITS REQUIRED BY THE **FINANCIAL RESPONSIBILITY ACT**:

a. FOR AN **INSURED** WHO SUSTAINS **BODILY INJURY** WHILE **OCCUPYING** A MOTOR VEHICLE **OWNED BY YOU** OR ANY **RESIDENT RELATIVE** IF:

(1) THE MOTOR VEHICLE IS NOT **YOUR CAR** OR A **NEWLY ACQUIRED CAR**; AND

(2) IT WAS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE

COVERAGE AT THE TIME OF THE ACCIDENT;

b. IF THE *UNDERINSURED MOTOR VEHICLE* IS *OWNED BY YOU* OR ANY *RESIDENT RELATIVE*; OR

c. FOR *PROPERTY DAMAGE*:

(1) TO A MOTOR VEHICLE: OR

(2) IN A MOTOR VEHICLE

*OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF THE MOTOR VEHICLE WAS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

3. FOR *PROPERTY DAMAGE* THAT WAS PROXIMATELY CAUSED BY THE DRIVER OF *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

4. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

5. TO THE EXTENT IT BENEFITS:

a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

c. ANY PROPERTY INSURER; OR

6. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION.

**If Other Underinsured Motor Vehicle Coverage Applies**

1. The Underinsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustain *bodily injury* or *property damage* while *occupying your car*.

2. Except as provided in item 1. above, the Underinsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

3. If:

a. *you* or any *resident relative* sustains *bodily injury* or *property damage*:

(1) while *occupying* a motor vehicle not *owned by you* or any *resident relative*; or

(2) while not *occupying* a motor vehicle; and

b. Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury* or *property damage*, then

the maximum amount that may be paid from all such policies combined is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

4. If *you* or any *resident relative* sustains *bodily injury* or *property damage* while *occupying* a motor vehicle other than *your car* that is *owned by you* or any *resident relative*, then this coverage applies only to the extent of the underinsured motor vehicle coverage applicable to the motor vehicle that the *insured* was *occupying*.

However, if the motor vehicle that the *insured* was *occupying* was not insured for underinsured motor vehicle coverage at the time of the accident, then the maximum amount that may be paid from all policies combined that are issued to *you* or any *resident relative* by the *State Farm Companies* is the minimum limits required by the *Financial Responsibility Act*. *We* may choose one or more policies from which to make payment.

5. Subject to items 1., 2., 3., and 4. above, if this policy and one or more other sources

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

provide underinsured motor vehicle coverage for the same damages on a:

a. primary basis, then *we* will pay the proportion of damages payable as primary that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits of all other underinsured motor vehicle coverage that apply as primary coverage; or

b. excess basis, then *we* will pay the proportion of damages payable as excess that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits of all other underinsured motor vehicle coverage that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*;

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a *non-owned car* while it is:

a. being driven by an *insured*; or

b. in the custody of an *insured* if at the time of the *loss* it is:

(1) not being driven; or

(2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*;

6. a *non-owned trailer* while it is being used by an *insured*; and

7. a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

campers must be securely fixed as a permanent part of the *trailer* or camper.

***Daily Rental Charge*** means the sum of:

1. the daily rental rate;

2. mileage charges; and

3. related taxes.

***Insured*** means ***you*** and ***resident relatives***.

***Loss*** means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a ***covered vehicle***. ***Loss*** does not include any reduction in the value of any ***covered vehicle*** after it has been repaired, as compared to its value before it was damaged.

***Loss Caused By Collision*** means a ***loss*** caused by:

1. a ***covered vehicle*** hitting or being hit by another vehicle or another object; or

2. the overturning of a ***covered vehicle***.

Any ***loss*** caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a ***Loss Caused By Collision***.

***Non-Owned Camper*** means a camper designed to be mounted on a pickup truck that is in the lawful possession of an ***insured*** and that neither:

1. is ***owned by***:

    a. an ***insured***;

    b. any other ***person*** who resides primarily in ***your*** household; or

    c. an employer of any ***person*** described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an ***insured*** during any part of each of the 31 or more consecutive days immediately prior to the date of the ***loss***.

***Non-Owned Trailer*** means a ***trailer*** that is in the lawful possession of an ***insured*** and that neither:

1. is ***owned by***:

    a. an ***insured***;

    b. any other ***person*** who resides primarily in ***your*** household; or

    c. an employer of any ***person*** described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an ***insured*** during any part of each of the 31 or more consecutive days immediately prior to the date of the ***loss***.

**Insuring Agreements**

1. **Comprehensive Coverage**

    ***We*** will pay:

    a. for ***loss***, except ***loss caused by collision***, to a ***covered vehicle***; and

    b. transportation expenses incurred by an ***insured*** as a result of the total theft of ***your car*** or a ***newly acquired car***. These transportation expenses are payable:

    (1) during the period that:

        (a) starts on the date ***you*** report the theft to ***us***; and

        (b) ends on the earliest of:

            (i) the date the vehicle is returned to ***your*** possession in a drivable condition;

            (ii) the date ***we*** offer to pay for the ***loss*** if the vehicle has not yet been recovered; or

            (iii) the date ***we*** offer to pay for the ***loss*** if the vehicle is recovered, but is a total loss as determined by ***us***; and

    (2) during the period that:

        (a) starts on the date the vehicle is left at a repair facility if the

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

(b) ends on the date the vehicle is repaired.

These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

2. **Collision Coverage**

   *We* will pay for *loss caused by collision* to a *covered vehicle*.

3. **Emergency Road Service Coverage**

   *We* will pay the fair cost incurred by an *insured* for:

   a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;

   b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;

   c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;

   d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition.  *We* do not pay the cost of the gas, oil, battery, or tire; and

   e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

4. **Car Rental and Travel Expenses Coverage**

   a. **Car Rental Expense**

      *We* will pay the *daily rental charge* incurred when *you* rent a *car* from a *car business* while *your car* or a *newly acquired car* is:

      (1) not drivable; or

(2) being repaired

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay this *daily rental charge* incurred during a period that:

(1) starts on the date:

   (a) the vehicle is not drivable as a result of the *loss*; or

   (b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

   (a) the date the vehicle has been repaired or replaced;

   (b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

   (c) five days after *we* offer to pay for the *loss* if the vehicle is:

      (i) a total loss as determined by *us*; or

      (ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by *you* must be reported to *us* before *we* will pay such amount.

   b. **Travel Expenses**

      *We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home.  *We* will only pay these expenses if they are incurred by:

      (1) an *insured* during the period that:

         (a) starts after the *loss* occurs; and

         (b) ends on the earlier of:

2:21-cv-02623-MBS    Date Filed 08/16/21    Entry Number 1-1    Page 32 of 61
2:25-cv-00035-RMG    Date Filed 01/02/25    Entry Number 1-1    Page 229 of 1295

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

(ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

c. **Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive deductible or collision deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage or Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

   a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

   b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an

*insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable;

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

   a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

   b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

   If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

   a. Pay the cost to repair the *covered vehicle* minus any applicable deductible. The deductible amount does not apply to *loss* to safety glass.

      (1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

         (a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

         (b) A bid or repair estimate approved by *us*; or

         (c) A repair estimate that is written based upon or adjusted to:

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(i) the prevailing competitive price;

(ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

(iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

(2) The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

(3) If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment;

b. Pay the actual cash value of the *covered vehicle* minus any applicable deductible.

(1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or *us*, using the following procedures:

(a) The owner and *we* will each select a competent appraiser.

(b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

owner of the *covered vehicle* and *us*.

    (f) *We* do not waive any of *our* rights by submitting to an appraisal.

  (2) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*; or

c. Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1. **Car Rental Expense**

   The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

   a. The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

     (1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount;

     (2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

   b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the

most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

2. **Travel Expenses**

   The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

3. **Rental Car – Repayment of Deductible Expense**

   The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

   a. INTENTIONALLY DAMAGED; OR

   b. STOLEN

   BY OR AT THE DIRECTION OF AN *INSURED*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

   a. THEFT;

   b. CONVERSION;

   c. EMBEZZLEMENT; OR

   d. SECRETION

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

BY AN ***INSURED***, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A ***PERSON*** WHO OBTAINS POSSESSION OF THE ***COVERED VEHICLE*** WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. ***LOSS*** TO ***YOUR CAR*** OR A ***NEWLY ACQUIRED CAR*** IF AN ***INSURED*** VOLUNTARILY RELINQUISHES POSSESSION OF THAT ***CAR*** TO A ***PERSON*** OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY ***COVERED VEHICLE*** TO THE EXTENT ***OUR*** PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR ***LOSS*** TO SUCH ***COVERED VEHICLE***;

7. ***LOSS*** TO ANY ***COVERED VEHICLE*** DUE TO ***FUNGI***. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE ***FUNGI*** RESULT FROM A ***LOSS*** THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. ***WE*** WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF ***FUNGI***, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY ***COVERED VEHICLE*** THAT ARE DUE TO THE EXISTENCE OF ***FUNGI***;

8. ***LOSS*** TO ANY ***COVERED VEHICLE*** THAT RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. ***LOSS*** TO ANY ***COVERED VEHICLE*** THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT ***COVERED VEHICLE*** BY ANY GOVERNMENTAL AUTHORITY;

10. ***LOSS*** TO ANY ***COVERED VEHICLE*** THAT RESULTS FROM WAR OF ANY KIND;

11. ***YOUR CAR*** WHILE SUBJECT TO ANY:

    a. LIEN AGREEMENT;

    b. RENTAL AGREEMENT;

    c. LEASE AGREEMENT; OR

    d. SALES AGREEMENT

    NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY ***NON-OWNED CAR*** WHILE IT IS:

    a. BEING MAINTAINED OR USED BY ANY ***PERSON*** WHILE THAT ***PERSON*** IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A ***CAR BUSINESS***; OR

    b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A ***CAR BUSINESS***. This exclusion (12.b.) does not apply to a ***private passenger car***;

13. ANY PART OR EQUIPMENT OF A ***COVERED VEHICLE*** IF THAT PART OR EQUIPMENT:

    a. FAILS OR IS DEFECTIVE; OR

    b. IS DAMAGED AS A DIRECT RESULT OF:

       (1) WEAR AND TEAR;

       (2) FREEZING; OR

       (3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

       OF THAT PART OR EQUIPMENT.

    This exclusion does not apply if the ***loss*** is the result of theft of the ***covered vehicle***;

14. ANY PART OR EQUIPMENT:

    a. THAT IS NOT LEGAL FOR USE IN OR ON THE ***COVERED VEHICLE***

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

IN THE JURISDICTION WHERE THE **COVERED VEHICLE** IS REGISTERED; OR

b. THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE **COVERED VEHICLE** IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE **COVERED VEHICLE**.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

a. *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

b. *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

b. **OWNED BY** AN **INSURED**; AND

c. NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY **COVERED VEHICLE** WHILE IT IS:

a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by the **State Farm Companies** apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

   If similar coverage provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same *loss* or expense, then the **State Farm Companies** will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the **State Farm Companies** bears to the sum of such amount and the limits of

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

If similar coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same **loss** or expense, then the **State Farm Companies** will pay the proportion of the **loss** or expense payable as excess that the maximum amount that may be paid by the **State Farm Companies** bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in **your car**. Coverage for the creditor's interest is only provided for a **loss** that is payable to **you**.

   However, if this policy is cancelled or non-renewed, then **we** will provide coverage for the creditor's interest until **we** notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a **loss** that would have been payable to **you** if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date **we** mail or electronically transmit a notice of the termination to the creditor.

2. If **we** pay such creditor, then **we** are entitled to the creditor's right of recovery against **you** to the extent of **our** payment.

**Our** right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

   a. **We** may, at **our** option, make payment to one or more of the following for **loss** to a **covered vehicle owned by you**:

      (1) **You**;

      (2) The repairer; or

      (3) A creditor shown on the Declarations Page, to the extent of its interest.

   b. **We** may, at **our** option, make payment to one or more of the following for **loss** to a **covered vehicle** not **owned by you**:

      (1) **You**;

      (2) The owner of such vehicle;

      (3) The repairer; or

      (4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

   **We** may, at **our** option, make payment to one or more of the following:

   a. **You**;

   b. The **insured** who incurred the expense; or

   c. Any party that provided the service for which payment is owed.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

***Insured*** means a ***person*** whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

**Insuring Agreement**

***We*** will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an ***insured***:

1. dies; or

2. suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The ***insured*** must be ***occupying*** or be struck as a ***pedestrian*** by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days immediately following the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most ***we*** will pay for any one ***insured*** in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

The benefits shown in the schedules are doubled for an ***insured*** who at the time of the accident was ***occupying*** a ***private passenger car*** and using a seat belt in the manner recommended by the vehicle's manufacturer.

### Death, Dismemberment and Loss of Sight Benefits Schedules

| If the amount shown on the Declarations Page for the *insured* is $5,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb and a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

| If the amount shown on the Declarations Page for the *insured* is $10,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

9840A

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Exclusions**

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE DOES NOT APPLY TO AN *INSURED*:

1.  WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A *CAR BUSINESS*;

2.  WHILE *OCCUPYING*, LOADING, OR UNLOADING:

    a.  AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

    b.  A VEHICLE, OTHER THAN AN EMERGENCY VEHICLE, WHILE USED IN THE:

        (1)  *INSURED'S* BUSINESS; OR

        (2)  COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A *CAR BUSINESS*.

        This exclusion (2.b.) does not apply if the vehicle is a *private passenger car*;

    c.  A MILITARY VEHICLE; OR

    d.  A VEHICLE WHILE IT IS:

        (1)  BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

        (2)  ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

3.  WHILE *OCCUPYING*, LOADING, UNLOADING, OR WHO IS STRUCK AS A *PEDESTRIAN* BY:

    a.  A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

    b.  A MOTOR VEHICLE THAT IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

    c.  A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4.  FOR DEATH, DISMEMBERMENT, LOSS OF SIGHT, OR *TOTAL DISABILITY* THAT RESULTS FROM:

    a.  WAR OF ANY KIND;

    b.  NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

    c.  THE DISCHARGE OF A FIREARM;

    d.  EXPOSURE TO *FUNGI*;

    e.  SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *INSURED* WAS SANE OR INSANE; OR

    f.  DISEASE except pus-forming infection due to *bodily injury* sustained in the accident.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1.  The *insured*;

2.  The *insured's* surviving spouse;

3.  A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4.  A *person* or organization authorized by law to receive such payment.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# INSURED'S DUTIES

1. **Notice to Us of an Accident or Loss**

   The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

   a. *your* name;

   b. the names and addresses of all *persons* involved in the accident or *loss*;

   c. the hour, date, place, and facts of the accident or *loss*; and

   d. the names and addresses of witnesses to the accident or *loss*.

2. **Notice to Us of a Claim or Lawsuit**

   a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

   b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

3. **Insured's Duty to Cooperate With Us**

   a. The *insured* must cooperate with *us* and, when asked, assist *us* in:

      (1) making settlements;

      (2) securing and giving evidence;

      (3) attending, and getting witnesses to attend, depositions, hearings, and trials; and

      (4) preserving his or her right to recover damages from others.

   b. The *insured* must not, except at his or her own cost, voluntarily:

      (1) make any payment to others; or

      (2) assume any obligation to others

      unless authorized by the terms of this policy.

   c. Any *person* or organization making claim under this policy must, when *we*

require, give *us* proof of loss on forms *we* furnish.

4. **Questioning Under Oath**

   Under:

   a. Liability Coverage, each *insured*;

   b. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage, each *insured*, or any other *person* or organization making claim or seeking payment; and

   c. Physical Damage Coverages, each *insured* or owner of a *covered vehicle*, or any other *person* or organization making claim or seeking payment;

   must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require. Such *person* or organization must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

5. **Other Duties Under the Physical Damage Coverages**

   When there is a *loss*, *you* or the owner of the *covered vehicle* must:

   a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

   b. make a prompt report to the police when the *loss* is the result of theft;

   c. allow *us* to:

39
9840A

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(1) inspect any damaged property before its repair or disposal;

(2) test any part or equipment before that part or equipment is removed or repaired; and

(3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

(1) records;

(2) receipts; and

(3) invoices

that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

**6. Other Duties Under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage**

A *person* making claim under:

a. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

(1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

(2) be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request;

(3) provide written authorization for *us* to obtain:

(a) medical bills;

(b) medical records;

(c) wage, salary, and employment information; and

(d) any other information *we* deem necessary to substantiate the claim.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

(4) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

b. Uninsured Motor Vehicle Coverage must report an accident, involving a motor vehicle whose owner and driver remain unknown, to the police and to *us* within a reasonable period of time; and

c. Uninsured Motor Vehicle Coverage and Underinsured Motor Vehicle Coverage must:

(1) send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident; and

(2) if making a claim for *property damage*:

(a) allow *us* to:

(i) inspect any *property damage* before its repair or disposal;

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(ii) test any part or equipment before that part or equipment is removed or repaired; and

(iii) move the damaged property at *our* expense in order to conduct such inspection or testing; and

(b) protect the damaged property from additional damage. ***We*** will pay any reasonable expense incurred to do so that is reported to ***us***;

(c) provide ***us*** all:

(i) records;

(ii) receipts; and

(iii) invoices

that ***we*** request and allow ***us*** to make copies;

(d) not abandon the damaged property to ***us***; and

(e) give ***us*** sworn proof of claim within 60 days of the accident. This proof of claim must state:

(i) who owns the property and how much they own;

(ii) the amount of any claims or liens on the property;

(iii) the value of the property at the time of the accident;

(iv) details of the accident; and

(v) details of any other insurance applicable to the property.

## GENERAL TERMS

1. **When Coverage Applies**

   The coverages provided by this policy are shown on the Declarations Page and apply to accidents and ***losses*** that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

2. **Where Coverage Applies**

   The coverages provided by this policy are shown on the Declarations Page and apply to accidents and ***losses*** that occur:

   a. in the United States of America and its territories and possessions;

   b. in Canada; and

   c. while a vehicle for which coverage is provided by this policy is being

   shipped between the ports of the United States of America, its territories, its possessions, and Canada.

   The Liability Coverage, Personal Injury Protection Coverage, Medical Payments Coverage, and Physical Damage Coverages also apply in Mexico within 50 miles of the United States border. A Physical Damage Coverage ***loss*** in Mexico is determined on the basis of cost at the nearest United States point.

   Death, Dismemberment and Loss of Sight Coverage applies anywhere in the world.

3. **Newly Owned or Newly Leased Car**

   If ***you*** want to insure a ***car*** newly ***owned by you*** with the ***State Farm Companies*** after that ***car*** ceases to be a ***newly acquired car***, then ***you*** must either:

   a. request ***we*** replace the ***car*** currently shown on the Declarations Page of this policy with the ***car*** newly ***owned by***

2:21-cv-02623-MBS    Date Filed 08/16/21    Entry Number 1-1    Page 43 of 61
2:25-cv-00035-RMG    Date Filed 01/02/25    Entry Number 1-1    Page 240 of 1295

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

(1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

(2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b. apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

4. **Changes to This Policy**

a. **Changes in Policy Provisions**

*We* may only change the provisions of this policy by:

(1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

(2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of South Carolina without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

b. **Change of Interest**

(1) No change of interest in this policy is effective unless *we* consent in writing.

(2) Except under Death, Dismemberment and Loss of Sight Coverage, if a named insured shown on the Declarations Page dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

(a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

(b) the legal representative of the deceased named insured.

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named insured.

c. **Joint and Individual Interests**

If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

d. **Change of Policy Address**

*We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

(1) *you*; or

(2) the United States Postal Service.

2:21-cv-02623-MBS    Date Filed 08/16/21    Entry Number 1-1    Page 44 of 61
2:25-cv-00035-RMG    Date Filed 01/02/25    Entry Number 1-1    Page 241 of 1295

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

5. **Premium**

   a. Unless as otherwise provided by an alternative payment plan in effect with the ***State Farm Companies*** with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

   b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

   c. The premium for this policy may vary based upon the purchase of other insurance from the ***State Farm Companies***.

   d. The premium for this policy is based upon information ***we*** have received from ***you*** or other sources. ***You*** must inform ***us*** if any information regarding the following is incorrect or incomplete, or changes during the policy period, and ***you*** must answer questions ***we*** ask regarding the following:

      (1) ***Your car***, or its use, including annual mileage;

      (2) The ***persons*** who regularly drive ***your car***, including newly licensed family members;

      (3) ***Your*** marital status; or

      (4) The location where ***your car*** is primarily garaged.

   If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to ***us*** when ***we*** ask, then ***we*** may decrease or increase the premium during the policy period. If ***we*** decrease the premium during the policy period, then ***we*** will provide a refund or a credit in the amount of the decrease. If ***we*** increase the premium during the policy period, then ***you*** must pay the amount of the increase.

6. **Renewal**

   ***We*** agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless ***we*** mail or deliver a nonrenewal notice or a cancellation notice as set forth in 7. and 8. below.

7. **Nonrenewal**

   If ***we*** decide not to renew this policy, then, at least 30 days before the end of the current policy period, ***we*** will mail or deliver a nonrenewal notice to the most recent policy address that ***we*** have on record for the named insured who is shown on the Declarations Page.

8. **Cancellation**

   a. **How You May Cancel**

      ***You*** may cancel this policy by providing to ***us*** advance notice of the date cancellation is effective. ***We*** may confirm the cancellation in writing.

   b. **How and When We May Cancel**

      ***We*** may cancel this policy by mailing or delivering a written notice to the most recent policy address that ***we*** have on record for the named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

      (1) If ***we*** mail or deliver a cancellation notice:

         (a) during the first 90 days following this policy's effective date; or

         (b) because the premium is not paid when due,

         then the date cancellation is effective will be at least 15 days after the date ***we*** mail or deliver the cancellation notice.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Otherwise, the date cancellation is effective will be at least 20 days after the date *we* mail or deliver the cancellation notice.

(2) After this policy has been in force for more than 90 days, *we* will not cancel this policy before the end of the current policy period unless:

    (a) the premium is not paid when due; or

    (b) *you*, any *resident relative*, or any other *person* who usually drives *your car* has had his or her driver's license under suspension or revocation:

        (1) during the policy period; or

        (2) if the policy is a renewal, during its policy period or the 90 days immediately preceding the last anniversary of the effective date of the policy.

**c. Return of Unearned Premium**

If *you* cancel this policy, then premium may be earned on a short rate basis. If *we* cancel this policy, then premium will be earned on a pro rata basis.

Any unearned premium may be returned within a reasonable time after cancellation. Delay in the return of any unearned premium does not affect the cancellation date.

**9. Assignment**

No assignment of benefits or other transfer of rights is binding upon *us* unless approved by *us*.

**10. Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the *insured* or his or her estate will not relieve *us* of *our* obligations under this policy.

**11. Concealment or Fraud**

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

**12. Our Right to Recover Our Payments**

a. Personal Injury Protection Coverage, Medical Payments Coverage, Underinsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by *us*.

b. To the extent allowed by law, under Uninsured Motor Vehicle Coverage:

    (1) the right of recovery of the *insured* passes to *us*, to the extent of *our* payments;

    (2) *we* will pay *our* share of the reasonable costs of any recovery. *Our* share is the percent that *our* recovery bears to the total recovery. *We* reserve the right to select an attorney to handle the recovery; and

    (3) an *insured* making claim for *property damage* must assign to *us*, to the extent of *our* payments, the right to any other compensation for it. *We* do not have to make any payment until the *insured* has done this.

c. Under all other coverages, the following apply:

    (1) **Subrogation**

    If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, then *we* will be subrogated to that right to the extent of *our* payment.

    The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

    (a) doing nothing to impair that legal right;

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(b) executing any documents *we* may need to assert that legal right; and

(c) taking legal action through *our* representatives when *we* ask.

(2) **Reimbursement**

If *we* make payment under this policy and the ***person*** or organization to or for whom *we* make payment recovers or has recovered from another ***person*** or organization, then the ***person*** or organization to or for whom *we* make payment must:

(a) hold in trust for *us* the proceeds of any recovery; and

(b) reimburse *us* to the extent of *our* payment.

13. **Legal Action Against Us**

Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against *us* regarding:

a. Liability Coverage after the amount of damages an ***insured*** is legally liable to pay has been finally determined by:

(1) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(2) agreement between the claimant and *us*.

b. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, and Physical Damage Coverages if the legal action relating to these coverages is brought against *us* within three years immediately following the date of the accident.

c. Underinsured Motor Vehicle Coverage if copies of the pleadings in the action establishing liability are served upon *us* in the manner provided by law.

14. **Choice of Law**

Without regard to choice of law rules, the law of the state of:

a. South Carolina will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b. Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

(1) Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

(2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

15. **Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.

16. **Conformity to Law**

The coverage provided by this policy is done so in accordance with South Carolina insurance law. If any provisions of this policy are in conflict with South Carolina statutes, the policy is amended to conform to the minimum requirements of the statutes.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Policy Form 9840A
©, Copyright, State Farm Mutual Automobile Insurance Company, 2009

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**PLEASE ATTACH TO YOUR POLICY BOOKLET**

Policy Number: 622-489-B07-40B

## 6126MT AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

**THIS POLICY**

The following has been added to item 5.:

*Your* purchase of this policy may allow *you* to purchase an excess and surplus lines policy from the *State Farm Companies*, subject to applicable eligibility rules.

QR code

E814-0203
1749-US

© Copyright, State Farm Mutual Automobile Insurance Company, 2016

---

## 6940A AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **THIS POLICY**

   Item 5. is changed to read:

   *Your* purchase of this policy may allow:

   a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules; or

   b. the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

2. **LIABILITY COVERAGE**

   **Insuring Agreement and Supplementary Payments** are replaced by the following:

   **Insuring Agreement**

   1. *We* will pay damages an *insured* becomes legally liable to pay because of:

      a. *bodily injury* to others; and

      b. damage to property caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.

   2. *We* have the right to:

      a. investigate, negotiate, and settle any claim or lawsuit;

      b. defend an *insured* in any claim or lawsuit, with attorney's chosen by *us*; and

      c. appeal any award or legal decision

      for damages payable under this policy's Liability Coverage.

   **Supplementary Payments**

   *We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

   1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

   2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

      a. that seeks damages payable under this policy's Liability Coverage; and

      b. against which *we* defend an *insured* with attorneys chosen by *us*.

© Copyright, State Farm Mutual Automobile Insurance Company, 2010

00597/04377
ED1

Policy Number: 622-589-B07400J

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

We have no duty to pay court costs incurred after we deposit in court or pay the amount due under the **In-suring Agreement** of this policy's Liability Coverage;

b. after a judgment.

We have no duty to pay interest that accrues after we deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. **We** also have no duty to pay interest that accrues on any damages paid or payable by a party other than the **insured or us**.

4. Premiums for bonds, provided by a company chosen by **us**, required to appeal a decision in a lawsuit against an **insured**. **We** have no duty to:

a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

b. furnish or apply for any bonds; or

c. pay premiums for bonds pur-chased after **we** deposit in court, pay, or offer to pay, the amount due under the **Insur-ing Agreement** of this policy's Liability Coverage; and

3. Interest the **insured** is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

a. before a judgment, but only the interest on the lesser of:
(1) that part of the damages **we** pay; or
(2) this policy's applicable Li-ability Coverage limit; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an **insured**:

a. Loss of wages or salary, but not other income, up to $200 for each day an **insured** attends, at **our** request:
(1) an arbitration;
(2) a mediation; or
(3) a trial or a lawsuit; and

b. Reasonable expenses incurred by an **insured** at **our** request other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are in-curred by an **insured** must be re-ported to **us** before **we** will pay such incurred costs or expenses.

3. **GENERAL TERMS**

a. The paragraph under **Where Coverage Applies** that reads:

Liability Coverage, Personal Injury Protection Coverage, Medical Payments Coverage, and Physical Damage Coverages also apply in Mexico within 50 miles of the United States of America border. A Physical Damage Coverage *loss* in Mexico is determined on the basis of cost at the nearest United States of America point.

is deleted.

b. The following is added:

**Limited Coverage in Mexico**
This policy does not provide Mexi-can auto insurance and does not comply with Mexican auto insur-ance requirements. If **you** or any other **insured** plan to drive in Mexi-co, then auto insurance providing

coverage in Mexico should be pur-chased from a Mexican insurance company.

Subject to the above paragraph, the following coverages apply in Mex-ico, but only for accidents and *loss-es* that occur in Mexico within 50 miles of the United States of Amer-ica border and only for **insureds** as defined under each of the following coverages:

a. **Liability Coverage**
For claims brought against an **insured** in Mexico, the **Sup-plementary Payments** provi-sion of this policy's Liability Coverage is changed to read:

**We** may, in addition to the damages described in item 1 of the **Insuring Agreement** of this policy's Liability Cover-age, pay or reimburse, at **our** option, reasonable attorney fees for an attorney licensed in Mexico to appear for and pro-vide advice to **insureds** as de-fined under this policy's Liability Coverage.

b. **Personal Injury Protection Coverage**

c. **Medical Payments Coverage**

d. **Physical Damage Coverages**
Any amount payable for the re-pair or replacement of the *cov-ered vehicle* under the **Limits and Loss Settlement — Com-prehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the

*covered vehicle* in the United States of America.

**WE HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OC-CURRED IN THE STATE OF SOUTH CAROLINA IN THE UNITED STATES OF AMERICA.**

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** pro-vision of this policy apply.

**If Other Coverage Applies**
Any coverage provided by this **Lim-ited Coverage in Mexico** provision is excess over any other applicable insurance.

**WE HAVE NO DUTY TO PRO-VIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.**

**Legal Action Against Us**
Any legal action against **us** arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of South Carolina in the United States of America.

c. Paragraph c. of 5. **Premium** is changed to read:

c. The premium for this policy may vary based upon:
(1) the purchase of other prod-ucts or services from the *State Farm Companies*;
(2) the purchase of products or services from an organiza-tion that has entered into an agreement or contract with

© Copyright, State Farm Mutual Automobile Insurance Company, 2010
6940A

© Copyright, State Farm Mutual Automobile Insurance Company, 2010
6940A

00597/04377

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**PLEASE ATTACH TO YOUR POLICY BOOKLET**

Policy Number: 632-989-B07-40B

the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.



BU-8200
1799-15

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

6940A

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

/

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## 6128DP AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

   *Newly Acquired Car* is changed to read:

   *Newly Acquired Car* means a *car* newly *owned by you* or a *resident relative*.

   A *car* ceases to be a *newly acquired car* on the earlier of:

   1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

   2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or a *resident relative*.

   If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500.

2. **LIABILITY COVERAGE**

   a. **Additional Definition**

   Item 4. of *Insured* is changed to read:

   *Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is:

   a. neither *owned by*, nor hired by, that other *person* or organization; and

   b. neither available for, nor being used for, carrying *persons* for a charge.

   b. **Exclusions**

   (1) Exclusion 6. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS:

   a. MADE AVAILABLE; OR

   b. BEING USED

   TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

   (2) The exception to exclusion 10. is changed to read:

   This exclusion does not apply to damage to a:

   a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

   b. residence while rented to or leased to an *insured*; or

   c. private garage while rented to or leased to an *insured*;

6128DP

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

3. **PERSONAL INJURY PROTECTION COVERAGE**

   a. **Additional Definitions**

   Item 1.a. of *Insured* is changed to read:

   > *Insured* means *you* and *resident relatives* while *occupying*:
   >
   > (1) *your car*;
   >
   > (2) a *newly acquired car*; or
   >
   > (3) a *motor vehicle*, other than a motorcycle, not *owned by you* or any *resident relative*; or

   b. **Exclusions**

   (1) Exclusion 6. is changed to read:

   > THERE IS NO COVERAGE FOR AN *INSURED* WHO IS STRUCK AS A PEDESTRIAN BY A *MOTOR VEHICLE*, *OWNED BY* THAT *INSURED* OR *YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

   (2) Exclusion 8. is changed to read:

   > THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:
   >
   > a. MADE AVAILABLE; OR
   >
   > b. BEING USED
   >
   > TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:
   >
   > a. the use of a *private passenger car* on a share-the-expense basis; or
   >
   > b. an *insured* while *occupying* a *non-owned car* as a passenger;

4. **MEDICAL PAYMENTS COVERAGE**

   **Exclusions**

   Exclusion 4. is changed to read:

   > THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:
   >
   > a. MADE AVAILABLE; OR
   >
   > b. BEING USED
   >
   > TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:
   >
   > a. the use of a *private passenger car* on a share-the-expense basis; or
   >
   > b. an *insured* while *occupying* a *non-owned car* as a passenger;

5. **UNINSURED MOTOR VEHICLE COVERAGE**

   a. **Exclusions**

   Exclusion 2. is changed to read:

   > THERE IS NO COVERAGE FOR
   >
   > a. AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* THAT *INSURED* IF:
   >
   > (1) THE MOTOR VEHICLE IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; AND
   >
   > (2) IT WAS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT; OR
   >
   > b. *PROPERTY DAMAGE* SUSTAINED BY AN *INSURED*:
   >
   > (1) TO A MOTOR VEHICLE: OR

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(2) IN A MOTOR VEHICLE ***OWNED BY*** THAT ***INSURED*** IF THE MOTOR VEHICLE WAS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

b. **If Other Uninsured Motor Vehicle Coverage Applies**

Item 4. is changed to read:

4.  If:

a. ***you*** sustain ***bodily injury*** or ***property damage*** while ***occupying*** a motor vehicle other than ***your car*** that is ***owned by***:

(1) ***you***, then this coverage applies only to the extent of the uninsured motor vehicle coverage applicable to the motor vehicle that ***you*** were ***occupying***; or

(2) any ***resident relative***, then, in addition to the amount paid from the policy insuring the motor vehicle ***you*** were ***occupying***, the maximum amount that may be paid from all other policies combined that are issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** is the single highest limit provided by any one of the policies. ***We*** may choose one or more policies from which to make payment.

b. a ***resident relative*** sustains ***bodily injury*** or ***property damage*** while ***occupying*** a motor vehicle other than ***your car*** that is ***owned by***:

(1) ***you***, then, in addition to the amount paid from the policy insuring the motor vehicle that that ***resident relative*** was ***occupying***, the maximum amount that may be paid from all other policies combined that are issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** is the single highest limit provided by any one of the policies. ***We*** may choose one or more policies from which to make payment;

(2) that ***resident relative***, then this coverage applies only to the extent of the uninsured motor vehicle coverage applicable to the motor vehicle that that ***resident relative*** was ***occupying***; or

(3) a different ***resident relative***, then, in addition to the amount paid from the policy insuring the motor vehicle that that ***resident relative*** was ***occupying***, the maximum amount that may be paid from all other policies combined that are issued to ***you*** or any ***resident relative*** by the ***State Farm***

6128DP

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*Companies* is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

6. **UNDERINSURED MOTOR VEHICLE COVERAGE**

   a. **Exclusions**

   Exclusion 2. is changed to read:

   THERE IS NO COVERAGE FOR

   a. AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* THAT *INSURED* IF:

   (1) THE MOTOR VEHICLE IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; AND

   (2) IT WAS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;OR

   b. *PROPERTY DAMAGE* SUSTAINED BY AN *INSURED*:

   (1) TO A MOTOR VEHICLE: OR

   (2) IN A MOTOR VEHICLE

   *OWNED BY* THAT *INSURED* IF THE MOTOR VEHICLE WAS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

   b. **If Other Underinsured Motor Vehicle Coverage Applies**

   Item 4. is changed to read:

4. If:

   a. *you* sustain *bodily injury* or *property damage* while *occupying* a motor vehicle other than *your car* that is *owned by*:

   (1) *you*, then this coverage applies only to the extent of the underinsured motor vehicle coverage applicable to the motor vehicle that *you* were *occupying*; or

   (2) any *resident relative*, then, in addition to the amount paid from the policy insuring the motor vehicle *you* were *occupying*, the maximum amount that may be paid from all other policies combined that are issued to *you* or any *resident relative* by the **State Farm Companies** is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

   b. a *resident relative* sustains *bodily injury* or *property damage* while *occupying* a motor vehicle other than *your car* that is *owned by*:

   (1) *you*, then, in addition to the amount paid from the policy insuring the motor vehicle that that *resident relative* was *occupying*, the maximum amount that may be paid from all other

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

policies combined that are issued to **you** or any **resident relative** by the **State Farm Companies** is the single highest limit provided by any one of the policies. **We** may choose one or more policies from which to make payment;

(2) that **resident relative**, then this coverage applies only to the extent of the underinsured motor vehicle coverage applicable to the motor vehicle that that **resident relative** was **occupying**; or

(3) a different **resident relative**, then, in addition to the amount paid from the policy insuring the motor vehicle that that **resident relative** was **occupying**, the maximum amount that may be paid from all other policies combined that are issued to **you** or any **resident relative** by the **State Farm Companies** is the single highest limit provided by any one of the policies. **We** may choose one or more policies from which to make payment.

7. **PHYSICAL DAMAGE COVERAGES**

a. The paragraph that reads:

If a deductible applies to Comprehensive Coverage, then it is shown

on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

is changed to read:

**Deductible**

1. If "D" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Comprehensive Coverage, if any, is the dollar amount shown on the Declarations Page next to the title of this coverage. However, **we** will not deduct more than $500 for any **loss** to a **newly acquired car**.

2. If "G" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Collision Coverage is the dollar amount shown on the Declarations Page next to the title of this coverage. However, **we** will not deduct more than $500 for any **loss caused by collision** to a **newly acquired car**.

b. **Insuring Agreements**

**Car Rental and Travel Expenses Coverage**

Item 4.a. **Car Rental Expense** is changed to read:

**Car Rental Expense**

**We** will pay the **daily rental charge** incurred when an **insured** rents a **car** from a **car business** while **your car** or a **newly acquired car** is:

(1) not drivable; or

(2) being repaired

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay this *daily rental charge* incurred during a period that:

(1) starts on the date:

    (a) the vehicle is not drivable as a result of the *loss*; or

    (b) the vehicle is left at a repair facility if vehicle is drivable; and

(2) ends on the earliest of:

    (a) the date the vehicle has been repaired or replaced;

    (b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

    (c) seven days after *we* offer to pay for the *loss* if the vehicle is:

        (i) a total loss as determined by *us*; or

        (ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by an *insured* must be reported to *us* before *we* will pay such amount.

c. **Exclusions**

Exclusion 3. is changed to read:

THERE IS NO COVERAGE FOR ANY ***COVERED VEHICLE*** WHILE IT IS:

a. MADE AVAILABLE; OR

b. BEING USED

TO CARRY ***PERSONS*** FOR A CHARGE. This exclusion does not apply to the use of a ***private passenger car*** on a share-the-expense basis;

8. **INSURED'S DUTIES**

a. Item 6.a.(3) is changed to read:

A ***person*** making claim under:

a. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage, must:

(3) provide written authorization for *us* to obtain medical bills, medical records, wage information, salary information, employment information, and any other information *we* deem necessary to substantiate the claim.

Such authorizations must not:

(a) restrict *us* from performing *our* business functions in:

    (i) obtaining records, bills, information, and data; nor

    (ii) using or retaining records, bills, information, and data collected or received by *us*;

(b) require *us* to violate federal or state laws or regulations;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(c) prevent **us** from fulfilling **our** data reporting and data retention obligations to insurance regulators; or

(d) prevent **us** from disclosing claim information and data:

(i) to enable performance of **our** business functions;

(ii) to meet **our** reporting obligations to insurance regulators;

(iii) to meet **our** reporting obligations to insurance data consolidators; and

(iv) as otherwise permitted by law.

If an injured **insured** is a minor, unable to act, or dead, then his or her legal representative must provide **us** with the written authorization.

If the holder of the information refuses to provide it to **us** despite the authorization, then at **our** request the **person** making claim or his or her legal representative must obtain the information and promptly provide it to **us**; and

b. The following is added to item 6.:

A **person** making claim under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage, must submit to **us** all information **we** need to comply with federal and state laws and regulations.

9. **GENERAL TERMS**

a. The following is added to **Newly Owned or Newly Leased Car**:

If a **resident relative** wants to insure a **car** newly **owned by** the **resident relative** with the **State Farm Companies** after that **car** ceases to be a **newly acquired car**, then the **resident relative** must apply to the **State Farm Companies** for a separate policy to insure the **car** newly **owned by** the **resident relative**. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

b. The following are added to **GENERAL TERMS**:

**Electronic Delivery**

With **your** consent, **we** may, if allowed by law, electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

**Our Rights Regarding Claim Information**

a. **We** will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of **our** business functions.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

b. Subject to a. above, **we** will not be restricted in or prohibited from:

(1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

(2) using any of the items described in item b.(1) above; or

(3) retaining:

(a) any of the items in item b.(1) above; or

(b) any other information **we** have in **our** possession as a result of **our** processing, handling, or otherwise resolving claims submitted under this policy.

c. **We** may disclose any of the items in item b.(1) above and any of the information described in item b.(3)(b) above:

(1) to enable performance of **our** business functions;

(2) to meet **our** reporting obligations to insurance regulators;

(3) to meet **our** reporting obligations to insurance data consolidators;

(4) to meet other obligations required by law; and

(5) as otherwise permitted by law.

d. **Our** rights under a., b., and c. above shall not be impaired by any:

(1) authorization related to any claim submitted under this policy; or

(2) act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

This policy is issued by State Farm Mutual Automobile Insurance Company.

### MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary                        President

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## 6023DC DRIVER EXCLUSION

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

Named Insured **LAMB, MELVIN O JR**

Policy Number **632 3189-B07-40**

Effective Date **02/26/2020**
12:01 A.M. Standard Time

IT IS AGREED THAT UNDER COVERAGES:
**A/U 25/50/25**

*WE* SHALL NOT BE LIABLE AND NO LIABILITY OR OBLIGATION OF ANY KIND SHALL ATTACH TO *US* FOR *BODILY INJURY, LOSS,* OR DAMAGE WHILE ANY MOTOR VEHICLE IS OPERATED BY:

**LAMB, MELVIN O III**
(*Person* excluded)

ALL OTHER TERMS OF THIS POLICY ARE UNCHANGED.

I DECLARE THAT:

1. THE DRIVER'S LICENSE OF THE EXCLUDED *PERSON* HAS BEEN TURNED IN TO THE DEPARTMENT OF MOTOR VEHICLES; OR

2. AN APPROPRIATE POLICY OF LIABILITY INSURANCE OR OTHER SECURITY AS MAY BE AUTHORIZED BY LAW HAS BEEN PROPERLY EXECUTED IN THE NAME OF THE *PERSON* TO BE EXCLUDED.

I AGREE TO ACCEPT THIS ENDORSEMENT AND ACKNOWLEDGE THAT THIS AGREEMENT:

1. IS BINDING UPON EVERY *INSURED* TO WHOM THIS POLICY APPLIES; AND

2. WILL BE INCLUDED IN ANY SUBSTITUTION OR RENEWAL OF THIS POLICY.

(Signature of a Named Insured)

1006065                                                                146458  10-16-2013

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| State Farm Mutual Automobile Insurance Company, | ) | Civil Action No.: 2:21-cv-2623-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Melvin O. Lamb III, Melvin O. Lamb Jr., The Estate of James K. Workman, Michael H. Moore, Deborah D. Plott, Angela R. Edwards, Constance J. Molinaro, Mario F. Molinaro, Jonathan D. Keller, Katherine M. Vonesh, Mathis S. Billman, and Luke E. Billman, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Plaintiff State Farm Mutual Automobile Insurance Company's ("State Farm") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 41(a)(2) ("Motion to Dismiss"), Motion to Stay Discovery, Motion for Service by Publication, and Motion for Protective Order. Defendant the Estate of James K. Workman (the "Estate of Workman") opposes the Motion to Dismiss and has filed a Motion for Sanctions as to State Farm. For the reasons explained below, the Motion to Dismiss is granted, the Motion for Sanctions is denied, and the remaining motions are denied as moot.

**BACKGROUND**

State Farm initiated this action seeking a declaratory judgment as to its duty to defend or indemnify Defendants Melvin O. Lamb, III and his son, Melvin O. Lamb, Jr., for all claims related to or arising out of a motor vehicle accident that occurred in Mount Pleasant, South Carolina, on or about June 12, 2021. The complaint references an automobile insurance policy

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

issued by State Farm to Melvin O. Lamb, Jr., which provides for bodily injury liability limits in the amount of $25,000 per person/$50,000 per accident and property damage limits of $25,000 per accident (the "Policy") and references a driver exclusion endorsement (the "Exclusion") that State Farm contends excludes Melvin O. Lamb, III from coverage under the Policy.  ECF No. 1 at ¶¶ 18, 19.  State Farm alleges that Melvin O. Lamb, Jr. signed the Exclusion pursuant to S.C. Code Ann. § 38-77-340 and "confirmed that either the driver's license of [Melvin O. Lamb, III] had been turned in to the Department of Motor Vehicles or that [Melvin O. Lamb, III] obtained appropriate insurance through another policy."  *Id.*

The car accident occurred while Melvin O. Lamb, III was driving a 2004 Chevrolet Tahoe owned by Melvin O. Lamb, Jr. and insured under the Policy. The complaint alleges that Melvin O. Lamb, III struck the rear of the Estate of Workman's vehicle, "which was stopped due to traffic," and that the "impact started a chain-reaction causing Workman to strike the vehicles operated by [Defendant Michael H. Moore] and [Defendant Jonathan D. Keller]."  ECF No. 1 at ¶ 22.  The complaint alleges that Melvin O. Lamb, III then "struck the vehicles operated by Moore, [Defendant Deborah D. Plott] and [Defendant Angela R. Edwards] and that "Moore and Edwards each then struck the vehicle operated by [Defendant Constance Molinaro] and owned by [Defendant Mario Molinaro], and Plott struck the vehicle operated by Mathis and owned by Luke."  *Id.* at ¶ 24.  The complaint alleges that Mr. Workman died as a result of the injuries he sustained during the accident.  *Id.* at ¶ 25.  State Farm filed the complaint contending that based upon the Exclusion and applicable South Carolina law, "it has no duty to defend or indemnify [Melvin O. Lamb, III or Melvin O. Lamb, Jr.] from any claim arising out of the accident described herein."  *Id.* at ¶ 27.  In so contending, State Farm sought the following relief: a declaration that the Exclusion is valid and enforceable; a declaration that the Exclusion excludes

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

coverage for any bodily injury, loss, or damage that occurred while Melvin O. Lamb, III was operating a motor vehicle; and a declaration that State Farm has no duty or obligation to defend or indemnify Melvin O. Lamb, III or Melvin O. Lamb, Jr. for the claims arising out of the motor vehicle accident described herein.

Melvin O. Lamb, Jr. filed an answer and asserted a counterclaim contending that "State Farm should be ordered to continue to defend the Defendant in the underlying automobile accident tort litigation instituted by Defendant Workman, and to indemnify Defendant for any liability for the same, which is specifically denied." ECF No. 42 at 2. The Estate of Workman filed only an answer to the complaint.[1] The parties proceeded with discovery and, in January 2022, State Farm filed a motion seeking to serve Melvin O. Lamb, III by publication. Approximately three weeks later, State Farm filed the Motion to Dismiss.

In the Motion to Dismiss, State Farm asserts:

> [it] is and has been defending Melvin O. Lamb, Jr., in an underlying lawsuit brought against him by the Estate of James K. Workman ("the Estate"). No other lawsuits are pending against Melvin O. Lamb, Jr. arising out of the automobile accident. Further, upon information and belief, no civil actions have been brought against Melvin O. Lamb, III arising out of the automobile accident.

ECF No. 64 at 1. State Farm further asserts:

> [it] has reached a resolution of the coverage issues that are the subject of this action and has agreed to defend and indemnify the insureds, Melvin O. Lamb, Jr. and Melvin O. Lamb, III, under the subject policy for claims that have been, or may be brought against them arising out of the automobile accident, under the terms of the subject policy.

> State Farm's resolution of the coverage issues with the insureds moots this declaratory judgment action, including the counterclaim asserted by Melvin O. Lamb, Jr., and there is no justiciable controversy to be resolved by the court.

---

[1] Defendants Keller, Edwards, and the Molinaros were dismissed by stipulation. Defendants Moore, Plott, Vornesh, and the Billmans failed to enter an appearance and default was entered as to them.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*Id.* at 2.  State Farm states it sought to voluntarily dismiss the action and that the Estate of Workman does not consent.  Accordingly, State Farm seeks an order from the court dismissing this case pursuant to Rule 41(a)(2).

State Farm also filed a Motion to Stay Discovery pending disposition of the Motion to Dismiss.  ECF No. 65.  The Estate of Workman filed an opposition brief to the Motion to Dismiss and Motion to Stay Discovery, ECF No. 67, and filed a Motion for Sanctions as to State Farm, ECF No. 66.  State Farm and the Estate of Workman then filed a joint motion asking the court to stay briefing on these motions pending the two parties' efforts to resolve the dispute through mediation.  ECF No. 68.  The parties were ultimately unsuccessful at reaching a resolution.  The pending motions are now ripe and, on June 3, 2022, State Farm filed a Motion for Protective Order to prevent the Estate of Workman from deposing three State Farm employees until and unless the court denies the Motion to Dismiss.  ECF No. 84.

The court exercises subject matter jurisdiction pursuant to 28 U.S.C § 1332 and, for the reasons discussed below, grants the Motion to Dismiss and denies the Motion for Sanctions.

## LEGAL STANDARD

Rule 41(a) permits a plaintiff to dismiss an action without a court order by filing either a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment, or by filing a stipulation of dismissal signed by all parties who have appeared.  Fed. R. Civ. P. 41(a)(1).  Rule 41(a)(2) provides that where the terms of Rule 41(a)(1) are not satisfied, a plaintiff may dismiss an action by court order only.  Rule 41(a)(2) applies here because the only two Defendants to appear in this matter each filed an answer and the Estate of Workman does not consent to State Farm's voluntary dismissal.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Whether to grant a voluntary dismissal under Rule 41(a)(2) lies within the discretion of the court. *Davis v. USX, Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). "The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." *Id.* (citations omitted). The Rule authorizes the court to impose conditions on a voluntary dismissal so as to "obviate any prejudice to the defendants which may otherwise result from dismissal without prejudice." *Id.* "In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant." *Id.* (citation omitted).

Also at issue here is the Estate of Workman's Motion for Sanctions, made pursuant to Federal Rule of Civil Procedure 37. Rule 26(b)(1) authorizes discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

On proper notice, a party may move for an order compelling disclosure or discovery. Fed. R. Civ. P. 37(a)(1). If a party fails to obey an order to provide or permit discovery, the court may order sanctions, to include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*Id.* at Rule 37(b)(2)(A). Instead of or in addition to the above sanctions, the court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* at Rule 37(b)(2)(C). The court may also impose any of the above-described sanctions, or any other appropriate sanctions, in the event a party fails to provide information or identify a witness as required by Rule 26(a) or (e), *id.* at Rule 37(c)(1), or fails to serve answers to interrogatories, *id.* at Rule 37(d)(1), (3).[2]

## DISCUSSION

### I.  Arguments

The Estate of Workman opposes the Motion to Dismiss and bases its opposition on the same contention that serves as the basis for its Motion for Sanctions, the allegation that State Farm "attached a bogus policy declarations page to its Complaint to support the exclusion." *Id.* The Estate of Workman asserts that State Farm "now admits the declarations page was created after the wreck," and further asserts that "the policy endorsement form that State Farm cited as a basis for excluding [Melvin O. Lamb, III] was never approved by the S.C. Department of Insurance as

---

[2] The Estate of Workman also moves for sanctions pursuant to 28 U.S.C. § 1927, "the Court's inherent power," and to "other law." ECF No. 66 at 2. Section 1927 provides, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Estate of Workman does not discuss application of this provision in its Motion, nor does the record plainly demonstrate how State Farm has acted so as to multiply proceedings unreasonably or vexatiously. As for the reference to "other law," Federal Rule of Civil Procedure 11 imposes certain requirements on attorneys with respect to the representations they make to a court in their pleadings, motions, and other papers and authorizes the court to order sanctions upon a finding that those requirements have been violated. However, the Estate of Workman does not assert any argument that sanctions under Rule 11 would be appropriate and the court is not inclined to address the matter *sua sponte*, particularly in light of the testimonial evidence provided in State Farm's response to the Motion for Sanctions.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

required by S.C. Code Ann. § 38-77-340." *Id.* at 3.  More specifically, the Estate of Workman alleges:

> Defendant Workman Estate served discovery on State Farm seeking evidence supporting its allegations, including that it "investigated this matter and believes based upon the Policy exclusion referenced herein and applicable South Carolina law, it has no duty to defend or indemnify the Father or Son…" [] Defendant also sought evidence that supports State Farm's claim it had issued a valid and effective endorsement excluding coverage for "Policy 632-3189-B07-40" that complied with S.C. Code Ann. §38-77-340. [] State Farm objected. (ECF 66-14, State Farm's Responses to Workman's Second Discovery Requests dated Jan. 28, 2022 and ECF 66-11 State Farm's Objections to Workman's Request for Admission and Third Discovery Requests dated Jan. 28, 2022.) Now, State Farm seeks protection from having to answer, along with an order allowing the DJ action to be dismissed. []

*Id.* at 3.  The Estate of Workman asserts that the court should permit voluntary dismissal only upon the imposition of the following conditions: "State Farm be required to answer all outstanding discovery and divulge any agreement regarding dismissal that it struck with [Melvin O. Lamb, Jr.]"; and "a finding that State Farm's policy exclusion is ineffective." ECF No. 67 at 2.  In addition to asking the court to impose the conditions described above, the Estate of Workman asks in the Motion for Sanctions for the court to order "compensation for counsel's time, expense," and to "enjoin State Farm from filing declaratory judgment actions in this district only upon the satisfaction of certain steps like attaching a verification subject to penalty of perjury signed by an executive of State Farm." ECF No. 66 at 17.

In its response to the Motion for Sanctions, State Farm states:

> [its] Underwriting Department made a series of administrative errors relative to the [P]olicy following its February 2020 inception. These administrative errors resulted in the Underwriting Department's incomplete processing of the applicable excluded driver endorsement and the omission of the endorsement from the policy's declarations pages; the Claims Department being unaware of the applicable excluded driver endorsement and therefore making misstatements during claim handling regarding coverage available under the [P]olicy; and, upon realizing its prior omission, the Underwriting Department's post-loss preparation of a new declarations page listing the endorsement. These mishaps and the correction of the same occurred

2:21-cv-02623-MBS    Date Filed 07/28/22    Entry Number 87    Page 8 of 11
2:25-cv-00035-RMG    Date Filed 01/02/25    Entry Number 1-1    Page 266 of 1295

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

before the filing of [this action], not for purposes of filing [this action], and none of them are fraudulent.

ECF No. 81 at 2, 3-5. *See* ECF Nos. 81-1, 81-2 (declaration and transcript of deposition testimony of Shay Anderson, Team Manager of State Farm's Underwriting Department, chronicling administrative errors concerning the Policy and Exclusion). *See also* ECF No. 81-3 (declaration of Darren Murdoch, State Farm Claim Team Manager, attesting to the fact that when a claim was submitted regarding the motor vehicle accident, a State Farm claim specialist learned of a possible driver exclusion and determined an investigation was necessary).

State Farm also recounts that counsel for the Estate of Workman took State Farm's Rule 30(b)(6) deposition on December 14, 2021, and "focused his questions on the administrative errors discussed above and whether the Excluded Driver Endorsement form was approved by the SCDOI." ECF No. 81 at 8. State Farm represents that "[s]hortly after the deposition, and considering the totality of the circumstances, State Farm agreed to withdraw its reservation of rights, defend and indemnify Mr. Lamb and Lamb III, and sought consent from the parties to dismiss [this action]." *Id.* State Farm asserts that following the Estate of Workman's objection to a voluntary dismissal and its filing of the Motion for Sanctions, State Farm "requested the amount of attorneys' fees and costs incurred by Mr. Lamb and the Estate, requested mediation, agreed to pay the attorneys' fees submitted by Mr. Lamb, and agreed to pay the Estate $10,000,000 in exchange for a full release of the claims against Mr. Lamb and Lamb III." *Id.* In addition to providing this background and asserting the Motion for Sanctions misconstrues the nature of State Farm's administrative mistakes, State Farm argues that "the Motion does not identify an appropriate basis for sanctions under the facts of this case," and moreover is procedurally defective.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

In its reply in support of its Motion, the Estate of Workman reiterates that this action is "based on a fraudulently created document, a policy declarations page created more than a month after the collision, and a false certification about which policy was in effect at the time of the collision," and essentially asserts that State Farm's acknowledgement of its duty to defend and indemnify Melvin O. Lamb, III is not relevant to the issues raised in the pending motions.

## II.    Findings

The court addresses the Motion to Dismiss first and finds that voluntary dismissal is appropriate.  First, there is no suggestion in the briefs that the Lambs are prejudiced by State Farm's dismissal of this case and it is not clear to the court how the Estate of Workman would be prejudiced.  The Estate of Workman does not reference the word prejudice in its response to the Motion to Dismiss and does not otherwise illustrate any prejudice incurred.  Rather, the Estate of Workman states simply that "State Farm initiated this action [] [and] [n]ow that Defendants have caught State Farm trying to avoid responsibility without a good faith basis, State Farm should not simply be allowed to walk away."  ECF No. 67 at 7.  The court notes from its own review of the docket that the case was filed in August 2021, less than a year ago, and the discovery process commenced in September 2021 with the issuance of a scheduling order.  The case is still young and the parties have not yet invested time and energy into undertakings such as extensive discovery practice or preparing motions for summary judgment.

Second, the Estate of Workman did not assert a counterclaim against State Farm and has not moved to amend its pleading to assert any such counterclaim.  The Estate of Workman is merely defending against the complaint that State Farm filed.  State Farm represents, and no one refutes, that the controversy alleged in the complaint is resolved in its entirety.  Accordingly, there is no longer a live dispute for the court to adjudicate.  As for the court's ability to impose conditions

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

on a voluntary dismissal, the court finds that neither of the proposed conditions is appropriate. The court declines to order State Farm to engage in additional discovery, for reasons addressed below, and also declines to render an advisory opinion on State Farm's policy exclusion. The finality of a Rule 41 dismissal is sufficient to trigger the protections of *res judicata*. *See Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 319-20 (4th Cir. 2002) (holding that "claim preclusion requires only a valid and final judgment").

With respect to the Motion for Sanctions, the Estate of Workman requests relief based on allegations that State Farm has committed fraud on the court—not based on an argument that State Farm has engaged in discovery abuses. ECF No. 83 at 3 (asserting the Motion for Sanctions "seeks to hold State Farm accountable for filing false documents in the U.S. District Court to have this Court determine that based on the documents it attached, it had no responsibility to its insureds"). Indeed, there is no record of State Farm disobeying a discovery order or violating the rules governing discovery.[3] Furthermore, there is no live claim pending in this action on which the court could order the parties to engage in discovery; as mentioned, the Estate of Workman did not assert a counterclaim. Discovery is appropriate only insofar as it relates to a party's claim or defense. As State Farm contends in its response to the Motion for Sanctions, the discovery the Estate of Workman continues to seek is simply not relevant to any claim or defense because the underlying dispute has been resolved and the Estate of Workman did not assert an independent claim against State Farm. The requested discovery is similarly out of proportion to the needs of the case.

---

[3] The Estate of Workman filed a motion to compel against State Farm in November 2021, ECF No. 44, and withdrew the motion ten days later, ECF No. 45.

ELECTRONICALLY FILED - 2023 Sep 01 11:36 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

For these reasons, the court grants the Motion to Dismiss, ECF No. 64, denies the Motion for Sanctions, ECF No. 66, and dismisses this case with prejudice pursuant to Rule 41(a)(2).  The Motion for Service by Publication, ECF No. 63, the Motion to Stay Discovery, ECF No. 65, and the Motion for Protective Order, ECF No. 84, are denied as moot.

**IT IS SO ORDERED.**

/s/Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

July 28, 2022
Charleston, South Carolina

2:25-cv-00035-RMG     Date Filed 01/02/25     Entry Number 1-1     Page 270 of 1295

ELECTRONICALLY FILED - 2023 Oct 16 3:34 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**STATE OF SOUTH CAROLINA**
**COUNTY OF CHARLESTON**

**COURT OF COMMON PLEAS**
**CASE NO. 23-CP-10-1832**

ROBERT C. WORKMAN,
INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
JAMES K. WORKMAN, KELLY
WORKMAN TICK AND MATTHEW T.
WORKMAN,

      PLAINTIFFS,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY AND
GALLIVAN, WHITE & BOYD, P.A.,

      DEFENDANTS.

**PLAINTIFFS' NOTICE AND
MOTION TO COMPEL
DISCOVERY FROM
DEFENDANT GALLIVAN,
WHITE & BOYD, PA
AND MEMORANDUM IN
SUPPORT**

**TO: JOHN S. WILKERSON, ESQ., ATTORNEY FOR DEFENDANT GALLIVAN,
WHITE & BOYD, P.A.**

**PLEASE TAKE NOTICE** that at such time and place as may be set by the Court, no sooner than 10 days from today, Plaintiffs will move to compel discovery responses to the discovery served in this case and seek such other and proper relief as is just and proper. The basis for this motion is set forth in the attached memorandum in support.

        KAHN LAW FIRM, LLP
        s/ JUSTIN S. KAHN
        SC BAR NO. 65100
        PO BOX 31397
        CHARLESTON, SC 29417-1397
        P. 843.577.2128
        F. 843.577.3538
        JSKAHN@KAHNLAWFIRM.COM
        ATTORNEYS FOR PLAINTIFFS

ELECTRONICALLY FILED - 2023 Oct 16 3:34 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

TABLE OF CONTENTS

1.  Concise Summary of the Nature of the Case ............................... 1

2.  Concise Statement of the Pertinent Facts ............................. 2

3.  Argument ............................................................. 2
    3.1.  No Protection for Communications In Furtherance of Tort or Crime  2
    3.2.  Boilerplate Objections Improper ................................. 4
    3.3.  Claims of Privilege Shall Describe the Nature of the Materials
          Withheld .................................................. 6

4.  Discovery At Issue ................................................... 7
    4.1.  Standard Interrogatories Nos. 1 and 6 – Witnesses and Supplemental
          No. 2 ..................................................... 7
    4.2.  List of All Documents and Witnesses and Summary ................. 7
    4.3.  Supplemental Discovery Request Related to Facts and Documents
          Supporting Defenses ........................................ 8
    4.4.  Documents Reviewed by Witness Not Produced and Not Protected . 8
    4.5.  State Farm's Policies and Procedures Related to Creating or
          Modifying a Declarations Page Like the One at Issue ............ 9
    4.6.  Complete Claims File Should Be Produced ........................ 10
    4.7.  Materials In Possession of GWB To Support Allegations Made in the
          Complaint it Filed ........................................ 10
    4.8.  Communications with Deponent Witness Should Be Produced ...... 11
    4.9.  Materials Reviewed by GWB Are Discoverable in this Case ........ 11
    4.10. Materials Referenced or Referred to in Answering Interrogatories
          Should be Produced ........................................ 12

5.  Conclusion ........................................................ 13

1.  CONCISE SUMMARY OF THE NATURE OF THE CASE

This lawsuit is against an insurance company and its law firm alleging

improper conduct, including the use of forged documents and making false

statements concerning the relevant insurance policy in a different lawsuit. The

discovery sought is not protected by any privilege because there is no protection

ELECTRONICALLY FILED - 2023 Oct 16 3:34 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

for tortious or intentional conduct. *See State v. Doster*, 276 S.C. 647, 284 S.E.2d 218 (1981).

## 2.    CONCISE STATEMENT OF THE PERTINENT FACTS

Standard interrogatories and supplemental discovery was served to obtain documents created, used and reviewed by the law firm before and after it filed suit. After reviewing the discovery responses (Ex. 1 Defendant's Responses to Plaintiffs' First Discovery Requests) and outlining the improper discovery responses (Ex. 2 Letter Kahn to Wilkerson Oct. 10, 2023), supplemental responses correcting the deficiencies have not been provided.

Many documents have been produced which generally consist of correspondence, filings made in court and discovery exchanged in the prior lawsuit. However, boilerplate and unsupported objections have been made and need to be addressed by the Court. A privilege log was provided but it fails to comply with SCRCP, Rule 26(b)(5) and is insufficient to support the alleged claims made.

## 3.    ARGUMENT

### 3.1.    NO PROTECTION FOR COMMUNICATIONS IN FURTHERANCE OF TORT OR CRIME

The South Carolina Supreme Court makes clear there is *no protection* for communications in furtherance of criminal tortious or fraudulent conduct.

ELECTRONICALLY FILED - 2023 Oct 16 3:34 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

> Not every communication within the attorney and client relationship is privileged. The public policy protecting confidential communications must be balanced against the public interest in the proper administration of justice. *N. L. R. B. v. Harvey*, 349 F.2d 900 (4th Cir. 1965); *Sepler v. State*, 191 So.2d 588 (Fla.App.1966). This is exemplified by the widely recognized rule that the privilege does not extend to communications in furtherance of criminal, tortious or fraudulent conduct. *United States v. United Shoe Machinery Corporation*, 89 F.Supp. 357 (D.Mass.1950); 125 A.L.R. 508; 16 A.L.R.2d 1029.
>
> *State v. Doster*, 276 S.C. 647, 651, 284 S.E.2d 218, 220 (1981).

The Complaint specifically alleges criminal conduct, tortious conduct and fraudulent conduct. The crime of forgery is plead along with facts supporting it. Complaint ¶¶ 7, 13, 14, 41, 42, 76, 81, 91 (citing S.C. Code Ann. § 16-13-10), 111, 115, etc. It is specifically alleged the law firm worked with and aided and abetted State Farm in participating in improper conduct in various ways: Fraud, Abuse of Process, Conspiracy, etc.

Generally, the party asserting the privilege must establish the confidential nature of the communication. *State v. Doster*, 276 S.C. 647, 653, 284 S.E.2d 218, 220 (1981). To establish an attorney-client privilege, the person asserting the privilege must show that the relationship between the parties was that of attorney and client and that the communications were confidential in nature for the purpose of obtaining legal advice. *Crawford v. Henderson*, 356 S.C. 389, 395,

ELECTRONICALLY FILED - 2023 Oct 16 3:34 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

589 S.E.2d 204, 207-08 (Ct. App. 2003). The essential elements giving rise to the privilege were stated by Wigmore to be: "(1) Where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *State v. Doster*, 276 S.C. 647, 651, 284 S.E.2d 218, 219-20 (1981). The privilege must be tailored to protect only confidences disclosed within the relationship. And the court must determine the question of privilege without first requiring disclosure of the substance of the communication. *Id*.

### 3.2.   BOILERPLATE OBJECTIONS IMPROPER

Even if there was a proper basis to object, boilerplate and unsupported objections are improper.  Judge Young's insightful memorandum directed to attorneys regarding discovery motions makes this clear and is incorporated herein. (Ex. 3 Young Memorandum).

"An affirmative duty does exist to answer interrogatories and respond to requests to produce." *CFRE, LLC v. Greenville County Assessor LLC v. Greenville County Assessor*, 395 S.C. 67, 83, 716 S.E.2d 877, 885 (2011). Objections to interrogatories must be specific and supported by a detailed explanation why the interrogatories are improper or may result in waiver of the

ELECTRONICALLY FILED - 2023 Oct 16 3:34 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

objections. *In re Folding Carton Antitrust Litigation*., 83 F.R.D. 260, 264 (N.D. Ill. 1979). The mere statement by a party that the interrogatory was "overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection to an interrogatory. *Josephs v. Harris Corp*., 677 F.2d 985, 992 (3d Cir. 1982). Parties shall not make nonspecific, boilerplate objections. Objections that state that the discovery request is "vague, overly broad, or unduly burdensome" are, standing alone, meaningless and will be found meritless by the court.

A party objecting must explain the specific and particular way in which a given request is vague, overly broad, or unduly burdensome. *Curtis v. Time Warner Entm't-Advance/Newhouse P'ship,* 2013 WL 2099496, at *2 (D.S.C. May 14, 2013). Parties should not recite a formulaic objection followed by an answer to the request. It has become common practice for a party to object on the basis of any of the above reasons and then state that, "notwithstanding the above," the party will respond to the discovery request, subject to or without waiving such objection. Such an objection and answer preserve nothing and serve only to waste the time and resources of both the parties and the court. Such practice leaves the requesting party uncertain as to whether the question has actually been fully answered or whether only a portion of the question has been

ELECTRONICALLY FILED - 2023 Oct 16 3:34 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

answered. *Id.* citing 2004 A.B.A. Civil Discovery Standards, 2004 A.B.A. Sec. Lit. 18. One objecting to discovery must show specifically how, despite the broad and liberal construction afforded the discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden. *Roesberg v. Johns-Manville Corp.,* 85 F.R.D. 292, 296 (E.D. Pa. 1980). It is not proper to object merely because answering interrogatories may require expending considerable time, effort or expense or may interfere with business operations. *Id.* at 97.

### 3.3.   CLAIMS OF PRIVILEGE SHALL DESCRIBE THE NATURE OF THE MATERIALS WITHHELD

Rule 26(b)(5)(A) requires "the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." This was not done here. The privilege log, although about 100 pages, has many cells blank and lacks specifics to enable one to ascertain whether privileges apply. SCRCP, Rule 26(b)(5).

ELECTRONICALLY FILED - 2023 Oct 16 3:34 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## 4.    DISCOVERY AT ISSUE

### 4.1.    STANDARD INTERROGATORIES NOS. 1 AND 6 – WITNESSES AND SUPPLEMENTAL NO. 2

Interrogatory **nos. 1 and 6** and **supplemental request no. 2**, relate to listing and producing documents, witnesses and summary of facts known. It is clear that the responses are incomplete. Based on the privilege log produced, many more people should appear and a summary of the facts to which they have knowledge should be provided and produce the documents. This was not done.

### 4.2.    LIST OF ALL DOCUMENTS AND WITNESSES AND SUMMARY

Rule 33(b)(2) and (6) specifically allow one to obtain a list of all documents in possession of the opposing party as well as a list of witnesses and a summary of their testimony sufficient to inform one of the important facts known or observed by the witness. The law firm improperly objects to these standard interrogatories using boilerplate language like:

> GWB objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, work product doctrine or other applicable privilege. GWB further objects to this Interrogatory to the extent that it seeks confidential information not subject to disclosure.

A full response and production of documents is required.

ELECTRONICALLY FILED - 2023 Oct 16 3:34 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 4.3.   Supplemental Discovery Request Related to Facts and Documents Supporting Defenses

Supplemental discovery request **no. 1** requests GWB to state facts supporting affirmative defenses and produce the documents supporting those defenses. GWB objected "to the extent that they are protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. GWB also objects to this request to the extent that it seeks confidential information not subject to disclosure." Again, there is no such protection in this case and GWB has failed to show such protection exists. Further, GWB has intentionally withheld "the file it maintained while representing State Farm…"

The entire file should be produced as it is not protected. Further, the file is relevant and would show whether GWB did an adequate investigation before filing the case, learned of additional information while the case was pending to take proper steps to correct or withdraw and determine what State Farm may have told it about the forged documents, unapproved form used in the lawsuit or why it wanted to pursue a lawsuit using false materials.

### 4.4.   Documents Reviewed by Witness Not Produced and Not Protected

Supplemental discovery **request no. 6** seeks the production of all documents, emails and the attachments reviewed by or referenced by Shay Anderson in her deposition of December 14, 2021. GWB improperly states

8

ELECTRONICALLY FILED - 2023 Oct 16 3:34 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

boilerplate objections including "GWB objects to this Request to the extent that it seeks documents protected by attorney-client privilege, the work product doctrine or any other applicable privilege."

Documents reviewed or referred to by a witness in a deposition are not protected and should be produced. Further, in the context of this case, no protection applies.

### 4.5. STATE FARM'S POLICIES AND PROCEDURES RELATED TO CREATING OR MODIFYING A DECLARATIONS PAGE LIKE THE ONE AT ISSUE

As to supplemental discovery request **no. 19** related to producing State Farm's policies, procedures, guidelines and/or rules that were to be followed when creating and/or modifying a declaration page such as the one at issue in this case for the time period of January 1, 2020 through the present, GWB does not state whether it has such materials. GWB states only:

> To the extent that GWB has responsive documents, it objects to producing those documents before a Confidentiality Order is entered in this case and refers to its Privilege Log.

If GWB has these materials, they should be produced. The objection does not make clear if it even possesses them. Further, no basis is stated as to why such materials should be subject to a protective order.

ELECTRONICALLY FILED - 2023 Oct 16 3:34 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## 4.6. Complete Claims File Should Be Produced

As to supplemental discovery request **no. 23** related to producing State

Farm's claims file, GWB provides boilerplate objections.

> GWB objects to this Request on the grounds that it
> seeks documents protected by the attorney-client
> privilege, the work product doctrine, or any other
> applicable privilege. To the extent that GWB is in
> possession of requested documents, they are reflected
> in the Privilege Log produced herewith.

The materials should be produced. There is no protection.

## 4.7. Materials In Possession of GWB To Support Allegations Made in the Complaint it Filed

As to supplemental discovery request **nos. 26, 27, and 28**, those relate to

producing documents supporting specific allegations in the complaint that

"State Farm has investigated this matter and believes..." as well as the

statement related to the Son had been an excluded driver from the Policy for

over a year" and "Pursuant to S.C. Code Ann. §38-77-340, the exclusion was

signed by father."

GWB objects with boilerplate language.

> GWB objects to this Request to the extent that it seeks
> information subject to the attorney-client privilege,
> work product doctrine or any other applicable
> privilege. Subject to and without waiving this
> objection, GWB refers to the Policy, including the
> excluded driver endorsement which was attached to

the declaratory judgment action Complaint and is
produced herein as GWB_000454-000514.

There are no applicable protections afforded to this request. The

materials should be produced.

## 4.8. COMMUNICATIONS WITH DEPONENT WITNESS SHOULD BE PRODUCED

Supplemental discovery request **No. 29** relates to communications with

Shay Anderson, a deponent and witness in the case.

GWB objects to this request on the grounds that it
seeks information that is protected by the attorney-
client privilege. GWB refers to its Privilege Log
produced herewith.

These communications and documents are not protected and the privilege

log is inadequate as it lacks dates, topics and specifics needed to determine the

applicability of any claimed privilege as required by Rule 26(b)(5).

## 4.9. MATERIALS REVIEWED BY GWB ARE DISCOVERABLE IN THIS CASE

Supplemental discovery request Nos. 30 — 34, generally relate to what

materials were reviewed by GWB before and after filing. These are not

protected. Among other things, these documents go to show the inadequate

investigation performed by GWB before filing suit and making various

allegations without support.

GWB objects to this request on the grounds that it
seeks information that is protected by the attorney-

11

ELECTRONICALLY FILED - 2023 Oct 16 3:34 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

client privilege and/or the work product doctrine.
GWB refers to its Privilege Log produced herewith.

Further, the privilege log is inadequate as it lacks dates, topics and specifics needed to determine the applicability of any claimed privilege as required by Rule 26(b)(5).

### 4.10. Materials Referenced or Referred to in Answering Interrogatories Should be Produced

As to Supplemental Discovery Request no. 35 related to producing materials referenced in answering the discovery, those materials have not been produced. GWB merely references documents produced labeled GWB_000001-004394.

Repeated reference is made in many objections to various alleged privileged or protected documents. Those objections are not supported and the materials have not been produced or identified as required by Rule 26(b)(5) with sufficient specificity. Thus, they should be produced.

ELECTRONICALLY FILED - 2023 Oct 16 3:34 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Oct 16 3:34 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

5.   **Conclusion**

There is no protection between an attorney and client available for the improper conduct, including using forged documents in a lawsuit and making false statements concerning the relevant insurance policy. Further, the boilerplate and unsupported objections should be disregarded. All documents and responses should be immediately produced and the Court should grant such other and further relief as is deemed just and proper.

**Kahn Law Firm, LLP**
s/ Justin S. Kahn [SC Bar No. 65100]
Wes B. Allison
SC Bar No. 100533
WAllison@KahnLawFirm.com
PO Box 31397
Charleston, SC 29417-1397
P 843.577.2128 | F 843.577.3538
JSKAHN@KAHNLAWFIRM.COM
**Attorneys For Plaintiffs**

**Rule 11 Motion Affirmation**

Counsel states and hereby affirms that prior to filing this motion counsel has communicated, in writing, with opposing counsel and has attempted in good faith to resolve the matter contained in the motion. Further, it is believed as to certain matters related to the claims of privilege that consultation would serve no useful purpose. **s/ Justin S. Kahn**

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Robert C. Workman, individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew T. Workman,

Plaintiffs,

vs.

State Farm Mutual Automobile Insurance Company and Gallivan, White & Boyd, P.A.,

Defendants.

COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CIVIL ACTION NO. 23-CP-10-1832

**DEFENDANT
GALLIVAN, WHITE & BOYD, P.A.'S
RESPONSES TO PLAINTIFFS' FIRST
<u>DISCOVERY REQUESTS</u>**

**TO:    PLAINTIFFS AND THEIR ATTORNEY:**

Pursuant to Rules 33 and 34 of the South Carolina Rules of Civil Procedure, the Defendant Gallivan White & Boyd, P.A., ("GWB" or "Defendant") responds to Plaintiff's First Discovery Requests as follows:

<u>**STANDARD INTERROGATORIES**</u>

1.    Give the names and addresses of persons known to the parties or counsel to be witnesses concerning the facts of the case and indicate whether or not written or recorded statements have been taken from the witnesses and indicate who has possession of such statements.

<u>**ANSWER**</u>:

a)    **Jennifer E. Johnsen
c/o Turner Padget Graham & Laney
40 Calhoun Street, Suite 200 (29401)
P.O. Box 22129
Charleston, SC 29413**

**Jennifer Johnsen is an attorney at GWB who represented State Farm in the Declaratory Judgment Action, C.A. No.: 2:21-cv-02623-MBS ("the DJA"). This witness is expected to testify in accordance with GWB's Answer, as to her**

# EXH. 1

TPGL 13995412v1

knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.

b)      **William T. Young**
       **c/o Turner Padget Graham & Laney**
       **40 Calhoun Street, Suite 200 (29401)**
       **P.O. Box 22129**
       **Charleston, SC 29413**

       William Young is an attorney who formerly worked at GWB and represented State Farm in the Declaratory Judgment Action ("the DJA"). This witness is expected to testify in accordance with GWB's Answer, as to his knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.

c)      **Natalie R. Ecker**
       **c/o Turner Padget Graham & Laney**
       **40 Calhoun Street, Suite 200 (29401)**
       **P.O. Box 22129**
       **Charleston, SC 29413**

       Natalie Ecker is an attorney at GWB who represented State Farm in the DJA. This witness is expected to testify in accordance with GWB's Answer, as to her knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.

d)      **Julia A. Bradshaw**
       **c/o Turner Padget Graham & Laney**
       **40 Calhoun Street, Suite 200 (29401)**
       **P.O. Box 22129**
       **Charleston, SC 29413**

       Julia Bradshaw is an attorney who formerly worked at GWB at the time of the DJA. This witness is expected to testify in accordance with GWB's Answer, as to her knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.

e)      **Robert C. Workman, individually and Personal Representative of the Estate**
       **of James K. Workman**
       **c/o Kahn Law Firm**
       **562 Savannah Highway**
       **Charleston, SC 29407**

       It is expected that this witness will testify regarding the allegations of the Complaint, and to the facts and circumstances surrounding the DJA and this action. No written or recorded statements have been taken.

TPGL 13995412v1

f)    **Kelly Workman Tick**
      **c/o Kahn Law Firm**
      **562 Savannah Highway**
      **Charleston, SC 29407**

      **This witness is a Plaintiff in this action, but was not a party to the Underlying Action. It is expected this witness will testify regarding the allegations of the Complaint. No written or recorded statements have been taken.**

g)    **Matthew T. Workman**
      **c/o Kahn Law Firm**
      **562 Savannah Highway**
      **Charleston, SC 29407**

      **This witness is a Plaintiff in this action, but was not a party to the Underlying Action. It is expected this witness will testify regarding the allegations of the Complaint. No written or recorded statements have been taken.**

h)    **Representative of State Farm**
      **c/o Whelan Mellen & Norris**
      **89 Broad Street**
      **Charleston, SC 29401**

      **Plaintiffs conducted a 30(b)(6) deposition of State Farm in the DJA and Shay Anderson served as State Farm's representative. At this time, GWB does not know whether Plaintiffs would notice another 30(b)(6) deposition of State Farm, attempt to call individual witnesses from State Farm, or both. No written or recorded statements have been taken.**

i)    **Melvin O. Lamb, Jr.**
      **Address Unknown**

      **Melvin O. Lamb, Jr. is the named insured on the policy covering the Tahoe involved in the accident. Although Lamb admitted to having signed the Excluded Driver Endorsement in his Answer in the DJA, he filed an Amended Answer three days later in which he denied having signed the Excluded Driver Endorsement and asserted a counterclaim for indemnification against State Farm. No written or recorded statements have been taken.**

j)    **Melvin O. Lamb, III**
      **Address Unknown**

      **Melvin O. Lamb, III is the driver of the Tahoe in the accident that resulted in the death of James K. Workman. No written or recorded statements have been taken.**

TPGL 13995412v1

**GWB reserves the right to call additional witnesses, including any witness or expert identified by any party through the course of discovery.**

2.     Set forth a list of photographs, plats, sketches or other prepared documents in possession of the party that relate to the claim or defense in the case.

**ANSWER:     GWB objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, work product doctrine or other applicable privilege. GWB further objects to this Interrogatory to the extent that it seeks confidential information not subject to disclosure. Subject to and without waiving the foregoing objections, GWB refers to the documents produced herewith and bates labeled GWB_000001-004394. GWB reserves the right to supplement this response at a later date and incorporates by reference all documents produced by the other parties in this action.**

3.     In cases involving personal injury set forth the names and addresses of all physicians who have treated the party and all hospitals to which the party has been committed in connection with said injuries and also set forth a statement of all medical costs involved.

**ANSWER:     Not applicable.**

4.     Set forth the names and addresses of all insurance companies which have liability insurance coverage relating to the claim and set forth the number or numbers of the policies involved and the amount or amounts of liability coverage provided in each policy. This includes umbrella coverage and coverage associated with each of the Defendants.

**ANSWER:     The following insurance policies may provide coverage relating to the claims asserted in this litigation:**

> **(a)     LPL Policy #LPPL221000075001 - Ascot Specialty Insurance Company.**

> **(b)     Excess Policy #LPL7CACD7KJ002 - Ironshore Specialty Insurance Company.**

5.      List the names and addresses of any expert witnesses whom the party proposes to use as a witness at the trial of the case.

**ANSWER:     GWB has not determined an expert witness(es), if any, it will utilize at the trial of this case. GWB will supplement this response to the extent required by the South Carolina Rules of Civil Procedure and any applicable Scheduling Order.**

6.      For each person known to the parties or counsel to be a witness concerning the facts of the case, set forth either a summary sufficient to inform the other party of the important facts known to or observed by such witness, or provide a copy of any written or recorded statements taken from such witnesses.

**ANSWER:     Please see Answer to Interrogatory No. 1.**

7.      [Defendants only.] If the defendants are improperly identified, give the proper identification and state whether counsel will accept service of an amended summons and pleading reflecting the correct information.

**ANSWER:     GWB is properly identified.**

## SUPPLEMENTAL DISCOVERY REQUESTS

1.      As to each affirmative defense you assert, state a detailed factual basis for said defense and PRODUCE all documents supporting said defense.

**RESPONSE:  GWB objects to this request on the grounds that it is premature, as discovery is still ongoing. Subject to and without waiving this objection, Plaintiffs' Complaint fails to plead any facts that would entitle it to recovery from GWB. Plaintiff Estate of Robert C. Workman was an opposing party in the DJA and the remaining Plaintiffs were not parties to the DJA. Therefore, GWB owed no independent duty to Plaintiffs that could give rise to a cause of action. Further, GWB is immune from Plaintiffs' claims because it was at all times**

relevant to the Complaint acting in its professional capacity as State Farm's counsel. GWB reserves the right to supplement this response as the case progresses to trial.

GWB has in its possession the file it maintained while representing State Farm Mutual Automobile Insurance Company in the DJA. GWB objects to the production of these documents to the extent that they are protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. GWB also objects to this request to the extent that it seeks confidential information not subject to disclosure. Subject to and without waiving the foregoing objections, GWB refers to non-privileged and non-confidential documents produced herewith and bates labeled GWB_000001-004394. GWB reserves the right to supplement this response as the case progresses to trial.

2.      PRODUCE all documentation concerning State Farm Claim Number 4021B2-49D with a date of loss of June 12, 2021. This is to include all:

a.      Confirmation of Coverage documents;

b.      Claim file notes, entries, communications and the like;

c.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim specialist Lee Shivers;

d.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim associate Deborah Grigg;

e.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim team manager Darren P Murdoch;

f.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Underwriter Jessica Bass;

g.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Underwriter Team Manager Shay Anderson;

h..     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by statefarmclaims@statefarm.com;

i.  Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by agent John P Tankersley, III or Jack Tankersley, Pam Middleton or anyone else in that office.

j.  Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Melvin Lamb, Jr.;

k.  Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Melvin Lamb, III;

l.  Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Valerie Lamb;

m.  Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by law firms or attorneys representing people asserting claims;

n.  Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by law firms or attorneys representing you;

o.  Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by each claimant;

**RESPONSE: GWB objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. GWB also objects to this request to the extent that it seeks confidential information not subject to disclosure. Subject to and without waiving the foregoing objections, to the extent that GWB is in possession of responsive documents, they are produced herein. Further answering, to the extent this request seeks communications between GWB and its client, those documents are protected by the attorney-client privilege. GWB refers to its Privilege Log produced herewith. GWB reserves the right to supplement this response as the case progresses to trial.**

3.  Fully identify each claimant and/or person making a claim related to the June 12, 2021 collision, whether named in the declaratory judgment action or not and to the extent not produced above, PRODUCE all communications with them or their representatives, including agreements to be bound by the declaratory judgment action filed in this matter.

**RESPONSE:** **GWB objects to this Request on the grounds that it is not relevant to the claims or defenses at issue in this action. Subject to and without waiving this objection, GWB refers to the declaratory judgment action pleadings and communications that are produced herein.**

4.      PRODUCE all of State Farm's documents and documentation concerning the 2004 Chevrolet Tahoe VIN 1GNEK13Z54R235227 driven on June 12, 2021. This includes but is not limited to State Farm insurance policies: 632 3189-B07-40; 632 3189-B07-40A, and 632 3189-B07-40B. This production request includes producing the below listed items in addition to the complete audit trail, including but not limited to identifying who logged into the system, entries made, dates and times thereof, who made said entries, additions, or deletions, who reviewed and/or made said entries and/or changes, etc.

a.      Claims Files;

b.      Underwriting Files;

c.      Entries in computer systems (including Rumba, Enterprise and ECS) and identify who made the entries and when such entries were made;

d.      Emails;

e.      Texts;

f.      Notes;

g.      Faxes;

h.      Declaration Pages;

i.      Requests to modify, alter, change, create, etc. the declarations pages;

j.      Requests to modify, alter, change, create, etc. the policy(s);

k.      Responses to any requests to modify, alter, change, create, etc. the declarations pages;

l.      Responses to any requests to modify, alter, change, create, etc. the policy declarations;

m.      Auto Renewal;

n.     Balance Due Notice;

o.     Policy Master Record;

p.     Suspensions;

q.     Reinstatements;

r.     Cancellations;

s.     Underwriting documents;

t.     Approvals; and

u.     Service Requests made whether to the Complex Unit or otherwise.

**RESPONSE: This Request does not appear to be directed to GWB. To the extent that a response from GWB is required, GWB has in its possession only those documents that its client, State Farm, provided it in the declaratory judgment action. GWB objects to the production of those documents to the extent that they are protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the documents produced herein and its Privilege Log.**

5.     Fully identify each person who was involved in creating the Declarations Page that states "Prepared Jul 14 2021" attached as Exhibit A to the Complaint in Civil Action 2:21-cv-2623-MBS and as to each person, PRODUCE all documentation related to creating said document, including the requests to create and fully explain the reasons said Declarations Page was created.

**RESPONSE:  GWB objects to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB does not have sufficient information to identify each person involved in creating the referenced Declarations Page. GWB refers to the referenced Declarations Page produced herein and bates labeled GWB_000454. GWB is not in possession of any further documents responsive to this request.**

6.     PRODUCE all documents, emails and the attachments reviewed by or referenced by Shay Anderson in her deposition of __December 14, 2021__. This includes but is not limited to those:

    a.     Involving Jessica Bass as Referenced on pp. 16-17;

    b.     Involving Karen Bond as Referenced on pp. 16-17;

    c.     Involving any actuary or actuarial as referenced on pp. 31-33, 35-36, 38-39;

    d.     Involving Jennifer Johnsen, Esq.;

    e.     The unknown person referenced on p. 59;

    f.     Involving the SERFF Tracking Number SFMA-126372492; and

    g.     Form filings;

**RESPONSE: GWB objects to this Request to the extent that it seeks documents protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the transcript and exhibits of Shay Anderson's deposition, which are produced herewith and bates labeled GWB_003729-004134.**

7.     PRODUCE all records, notes and documents Shay Anderson, Underwriting Team Manager, created, reviewed and/or referred to in her declaration under penalty of perjury dated May 24, 2022 which was filed as Entry No. 81-1 in C.A. No.: 2:21-CV-02623-MBS.

**RESPONSE: GWB objects to this Request on the grounds that it seeks materials protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB is not in possession of the requested compilation of materials.**

8.     PRODUCE all records, notes and documents Lana Willingham created, reviewed and/or referred to in her declaration under penalty of perjury dated May 23, 2022 which was filed

as Entry No. 81-4 in C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to the service request to process an excluded driver endorsement.

**RESPONSE: See response to Supplemental Discovery Request No. 7.**

9. PRODUCE all records, notes and documents Darren Murdoch created, reviewed and/or referred to in his declaration under penalty of perjury dated May 23, 2022 which was filed as Entry No. 81-3 in C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to paragraphs 12-16.

**RESPONSE: See response to Supplemental Discovery Request No. 7.**

10. PRODUCE each endorsement and declarations page created by State Farm from the inception of any coverage through the present for the Tahoe at issue referenced in the Complaint filed in Civil Action 2:21-cv-2623-MBS and all documentation supporting the reasons said documents were created.

**RESPONSE: GWB is not in possession of each endorsement and declarations page created by State Farm from the inception of coverage through the present. To the extent GWB is in possession of responsive documents, those are produced herein.**

11. PRODUCE State Farm policies, processes and/or procedures for driver exclusion agreements related to keeping or retaining acceptable policyholders while excluding certain drivers in the household exclusions that were in effect from January 1, 2020 through the present.

**RESPONSE: Responsive documents were produced in the DJA and designated confidential. GWB objects to producing the requested documents before a Confidentiality Order is entered in this case and refers to its Privilege Log produced herewith.**

12. PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval or that the South Carolina Department of Insurance

approved the form 6023DC attached to the Complaint filed in the declaratory judgment civil action number 2:21-cv-2623-MBS. If no such documentation exists, please state that.

**RESPONSE:  This request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

13.    PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval and/or that the South Carolina Department of Insurance approved the form 6023DC before January 1, 2022.

**RESPONSE: This request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

14.    PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval or that the South Carolina Department of Insurance approved the form 6023DC after January 1, 2022.

**RESPONSE:  This request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

15.    To the extent not already produced, PRODUCE State Farm's complete file and documentation related to submission and approval by the South Carolina Department of Insurance for the Form 6023DC Driver Exclusion attached to the Complaint in Civil Action 2:21-cv-2623-MBS. This includes letters sent by State Farm to the South Carolina Department of Insurance as well as communications received.

**RESPONSE:  This Request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

16.     PRODUCE each communication sent by State Farm denying claims based upon the State Farm South Carolina 6023DC Driver Exclusion Form for the time period of May 1, 2019 through May 1, 2022. This is not limited to Plaintiffs in this case.

**RESPONSE:  This Request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB objects to this request to the extent that it seeks documents protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB is not in possession of responsive documents.**

17.     As to the Tahoe at issue, PRODUCE each certified policy record which underwriter Jessica Bass or anyone else at State Farm created, including but not limited to those dated 08/05/2021 and 11/22/2021 and PRODUCE the requests and responses related to generating each certified policy record.

**RESPONSE:  GWB objects to this request to the extent that it seeks documents protected by attorney-client privilege. Subject to and without waiving this objection, GWB refers to documents produced herewith and bates labeled GWB_000001-004394. GWB is not in possession of any other responsive documents.**

18.     PRODUCE all documents, including the files, notes, computer entries, who made the entries, the audit trail and the like for each computer system of State Farm showing the creation, storage, management, access, including who accessed a web-based system called ECS related to the claims involving Mr. Lamb and Plaintiffs.

**RESPONSE:  This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

19.    PRODUCE all State Farm's policies, procedures, guidelines and/or rules that were to be followed when creating and/or modifying a declaration page such as the one at issue in this case for the time period of January 1, 2020 through the present.

**RESPONSE: To the extent that GWB has responsive documents, it objects to producing those documents before a Confidentiality Order is entered in this case and refers to its Privilege Log.**

20.    PRODUCE the employment files for each State Farm employee, including those listed below, who was involved with the changes made to the declarations page at issue, including a signed copy of their completed Code of Conduct form to be completed annually. (The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest.) This request to produce also includes write ups for violations of State Farm policies.

a.    Jessica Bass

b.    Lee Shivers

c.    Shay Anderson

d.    Darren P Murdoch

e.    Lana Willingham

**RESPONSE: This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

21.     PRODUCE State Farm's Code of Conduct training course materials and videos as described in State Farm's Doing the Right Thing Code of Conduct, p. 28, in part reproduced below.

---

Code of Conduct/DOING THE RIGHT THING/CODE OF CONDUCT FORM COMPLETION

## Code of Conduct Form Completion

We believe in following all applicable laws and regulations, and in behaving ethically and honestly. In accordance with these principles, we all must complete and submit the Code of Conduct Form annually, alongside the annual Code of Conduct training course. The form should also be filled out any time an actual or potential violation of this Code or conflict of interest arises.

The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest. Submitting the form indicates that you have read and understood the Code of Conduct and:

---

**RESPONSE: This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

22.     As to each expert you propose to use as a witness at the trial of the case, PRODUCE and/or state:

     a.      a complete statement of all opinions the witness will express and the basis and reasons for them;

     b.      the facts or data considered by the witness in forming them;

     c.      any exhibits that will be used to summarize or support them;

     d.      the witness's qualifications, including a list of all publications authored in the previous 10 years;

     e.      a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

     f.      a statement of the compensation to be paid for the study and testimony in the case.

**RESPONSE: See answer to Interrogatory No. 5.**

23.    To the extent not already produced, PRODUCE Defendant State Farm's complete claims file relating to the claims made as a result of the collision at issue in this action regardless of who submitted a claim, whether maintained in defendant's field office, regional office, home office, or any other office, including without limitation:

   a.    All letters, memoranda, and other forms of written or computerized communication to or from any employee of defendant relating in any way to the processing of the claim at issue in this action;

   b.    All written or computerized records of any oral communication, whether in person or by telephone, to or from any employee of defendant relating in any way to the processing of the claim at issue in this action;

   c.    All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any claimant relating in any way to the collision at issue in this action;

   d.    All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any third party relating in any way to the claim at issue in this action;

   e.    All written or computerized records of any investigation conducted in connection with the claim at issue in this action;

   f.    All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, to or from any employee of defendant relating in any way to the decision to deny claims asserted in the collision;

   g.    All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any third party relating in any way to the decision to deny Plaintiffs claims;

   h.    All other written or computerized documents pertaining to the claim at issue in this litigation; and

   i.    The file folders in which the preceding documents are kept.

**RESPONSE: GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.**

**To the extent that GWB is in possession of requested documents, they are reflected in the Privilege Log produced herewith.**

24.     PRODUCE State Farm's complete underwriting files referring or relating in any way to the policy at issue in this action, including without limitation:

    a.     All letters, memoranda, and other forms of written or computerized communication and written or computerized records of oral communications, whether in person or by telephone, referring or relating in any way to the issuance of the policy at issue in this action; and

    b.     The file folders in which the preceding documents are kept.

**RESPONSE: This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

25.     PRODUCE All claims manuals, memoranda, directives, letters, and other forms of written or computerized communication directed to claims personnel, claims managers, claims supervisors, or any other person acting on behalf of State Farm in the handling of claims that refer or relate in any way to the handling of claims generally or to the handling of claims of like character to the claim at issue in this action, including without limitation:

    a.     the documents reflecting State Farm's claim settlement policies as they existed at the time State Farm denied the claims at issue in this action; and

    b.     the documents reflecting any subsequent changes of policy.

**RESPONSE: This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

26.     As to the statement "State Farm has investigated this matter and believes, based upon the Policy exclusion referenced herein and applicable South Carolina law, it has no duty to defend or indemnify Father or Son from any claim arising out of the accident described herein..." in paragraph 27 of the Complaint in Civil Action 2:21-cv-2623-MBS filed August 16, 2021:

a.    PRODUCE all documents supporting the truth of the statement that was in the possession, custody or control of State Farm as of August 16, 2021;

b.    PRODUCE all documents supporting the truth of the statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

c.    FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.

**RESPONSE: GWB objects to this Request to the extent that it seeks information subject to the attorney-client privilege, work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the Policy, including the excluded driver endorsement which was attached to the declaratory judgment action Complaint and is produced herein as GWB_000454-000514.**

27.    As to the statement "At the time of the subject accident, Son had been an excluded driver from the Policy for over a year" made in paragraph 31 of the Complaint filed August 16, 2021:

a.    PRODUCE all documents supporting the above statement that was in the possession, custody or control of State Farm defendant as of August 16, 2021;

b.    PRODUCE all documents supporting the above statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

c.    FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.

**RESPONSE: Please see Response to Supplemental Discovery Request No. 26.**

28.    As to the statement "Pursuant to S.C. Code Ann. §38-77-340, the exclusion was signed by Father..." made in paragraph 19 of the Complaint filed August 16, 2021:

a.    PRODUCE all documents supporting the above statement that was in the possession, custody or control of State Farm defendant as of August 16, 2021;

b.    PRODUCE all documents supporting the above statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

    c.      FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.

**RESPONSE: Please see Response to Supplemental Discovery Request No. 26.**

29.      PRODUCE all communications between Shay Anderson, State Farm Underwriting Team Manager, and Gallivan, White & Boyd, P.A. which relate to C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to reference to SERFF tracking number(s) and documents.

**RESPONSE: GWB objects to this request on the grounds that it seeks information that is protected by the attorney-client privilege. GWB refers to its Privilege Log produced herewith.**

30.      PRODUCE all documentation, including records, State Farm files and other materials created and/or reviewed showing the investigation and research performed by Gallivan White & Boyd, P.A. prior to filing the Complaint in C.A. No.: 2:21-CV-02623-MBS that supported allegations and claims asserted in the lawsuit. This includes drafts of complaints.

**RESPONSE: GWB objects to this request on the grounds that it seeks information that is protected by the attorney-client privilege and/or the work product doctrine. GWB refers to its Privilege Log produced herewith.**

31.      PRODUCE all documentation, including records, State Farm files and other materials created and/or reviewed showing the investigation and research performed by Gallivan White & Boyd, P.A. after filing the Complaint in C.A. No.: 2:21-CV-02623-MBS that supported allegations and claims asserted in the lawsuit.

**RESPONSE: GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Further answering, GWB refers to its Privilege Log produced herewith.**

32.    As to the lawsuit filed C.A. No.: 2:21-CV-02623-MBS, PRODUCE all documents State Farm provided to Gallivan, White & Boyd, P.A. before the law firm filed the Complaint in Civil Action 2:21-cv-2623-MBS. This includes emails, texts, files shared via a service, billing record modifications and/or changes, etc.

**RESPONSE: GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the documents filed with the DJA Complaint and produced herewith. Further answering, GWB refers to its Privilege Log.**

33.    PRODUCE all documents State Farm provided to Gallivan, White & Boyd, P.A. after the Complaint in Civil Action 2:21-cv-2623-MBS was filed. This includes emails, texts, files shared via a service, billing record modifications and/or changes, etc.

**RESPONSE: GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Further answering, GWB refers to its Privilege Log produced herewith.**

34.    PRODUCE all documents Gallivan, White & Boyd, P.A. provided to State Farm while it represented State Farm in the matter which is the subject of Civil Action 2:21-cv-2623-MBS. This includes retainer agreements, agreements to represent State Farm, emails, texts, files shared via a service, billing records, etc.

**RESPONSE: GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Further answering, GWB refers to its Privilege Log produced herewith.**

35.     As to each of the standard interrogatories above as well as other discovery requests, PRODUCE the documents that are referenced or referred to in answering said interrogatories.

**RESPONSE: GWB refers to the documents produced herewith and bates labeled GWB_000001-004394.**

36.     PRODUCE each document or other evidence you intend to introduce at the trial of this case.

**RESPONSE: GWB objects to this Request to the extent that it seeks to invade the mental impressions, legal conclusions, thoughts, impressions and trial strategies of counsel, which are protected by the work product doctrine and/or attorney-client privilege.  Subject to and without waiving this objection, GWB reserves the right to use the documents produced herewith and bates labeled GWB_000001-004394. GWB further reserves the right to utilize any other documents produced by any other party to this action and to supplement this response as the case progresses to trial.**

37.     Fully identify the names of the individuals who assisted in responding to these discovery requests.

**RESPONSE: The undersigned counsel for GWB prepared the responses to these discovery requests.**

TURNER PADGET GRAHAM & LANEY, P.A.

s/John S. Wilkerson, III
John S. Wilkerson, III, Fed. Id. No. 4657
P.O. Box 22129
Charleston, South Carolina 29413
Telephone:     843-576-2801
Facsimile:     843-577-1649
Email: jwilkerson@turnerpadget.com

AND

W. Taylor Stanley, Fed. Id. No.: 11741
Lindsey M. Behnke, Fed. Id. No.: 13921
P.O. Box 1473
Columbia, South Carolina 29202
Telephone:     803-227-4215
               803-227-4324
Facsimile:     803-400-1560
               803-400-1525
Email:   tstanley@turnerpadget.com
          lbehnke@turnerpadget.com

ATTORNEYS FOR GALLIVAN, WHITE & BOYD, P.A.

October 6, 2023
Charleston, South Carolina

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Robert C. Workman, individually and as
Personal Representative of the Estate of
James K. Workman, Kelly Workman Tick,
and Matthew T. Workman,

                Plaintiffs,

     vs.

State Farm Mutual Automobile Insurance
Company and Gallivan, White & Boyd, P.A.,

                Defendants.

COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CIVIL ACTION NO. 23-CP-10-1832

**<u>CERTIFICATE OF SERVICE</u>**

       The undersigned hereby certifies that on 6th day of October, 2023, a copy of ***Defendant Gallivan, White & Boyd, P.A.'s Response to Plaintiffs' First Discovery Requests*** has been served upon counsel of record via electronic mail, unless otherwise requested, to:

Justin S. Kahn
Wes B. Allison
Kahn Law Firm, LLP
P.O. Box 31397
Charleston, SC 29417-1397
jskahn@kahnlawfirm.com
wallison@kahnlawfirm.com

*Attorneys for Plaintiffs*

Robert W. Whelan
M. Kathleen McTighe Mellen
Whelan Mellen & Norris, LLC
89 Broad Street
Charleston, SC 29401
robbie@whelanmellen.com
katie@whelanmellen.com

*Attorneys for State Farm Mutual Automobile
Insurance Company*

*April D. Hage*

# KAHN LAW FIRM, LLP
## 562 SAVANNAH HIGHWAY
## CHARLESTON, SC 29407
### WWW.KAHNLAWFIRM.COM

ELLIS I. KAHN*^
JUSTIN S. KAHN*^+
WES B. ALLISON +

MAILING
P.O. BOX 31397
CHARLESTON, SC 29417-1397
PHONE 843.577.2128
E-MAIL JSKAHN@KAHNLAWFIRM.COM

October 10, 2023

VIA EMAIL

John S. Wilkerson, Esq.
Turner Padget Graham and Laney, P.A.
PO Box 22129
Charleston, SC 29413
jwilkerson@turnerpadget.com

        Re:    Workman v. State Farm, et al.

Dear John:

        I have reviewed through the privilege log and believe that it is incomplete and fails to support withholding of documents and materials. The privilege log as provided is incomplete and lacks in many cases dates and specifics to determine the applicability of any claimed privilege. Rule 26(b)(5)(A) requires that "the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." That has not been done. Further, claims of common interest cannot apply as your client filed suit against various people so communications with them or their attorneys is not protected under a common interest.

        Please produce the materials today so we can avoid filing a motion to compel.

        Examples of unsupported contentions include your claims that providing documents sent from or received by attorneys representing people sued by your client are subject to protection. This does not make sense.  Further, the attorney client privilege and work product do not apply in this case where it is alleged that your clients engaged in tortious and/or other improper intentional conduct.

        As to the discovery responses, they are clearly inadequate and contain boilerplate objections. Those responses include the vague, "protected from

* SOUTH CAROLINA AND DISTRICT OF COLUMBIA
^ BOARD CERTIFIED BY THE NATIONAL BOARD OF TRIAL ADVOCACY (CIVIL PRACTICE AND CIVIL TRIAL ADVOCACY) AND
THE AMERICAN BOARD OF PROFESSIONAL LIABILITY ATTORNEYS (MEDICAL MALPRACTICE)
+ UNITED STATES COURT OF FEDERAL CLAIMS

**EXH. 2**

disclosure by the attorney-client privilege, work product doctrine or other applicable privilege." You fail to define or explain how these apply or what, "other applicable privilege" means. Additional boilerplate language includes, "GWB further objects to this Interrogatory to the extent that it seeks confidential information not subject to disclosure." I don't know of any "confidential information" protection in a case like this.

Here is the list of discovery responses that are at issue:

Interrogatory nos. 1 and 6, related to witnesses and summary of facts. It is clear that the responses are incomplete.

Interrogatory no. 2 related to providing a list of documents contains boilerplate and inadequate responses.

Similar examples of unsupported objections include the following related to supplemental discovery requests:

No. 2, relates to our request for documents concerning the specific claim number with a particular date of loss. An improper objection is stated.

No. 6 also includes improper objections to producing materials reviewed by a witness to prepare for a deposition. See e.g. no. 6.

Nos. 7, 8, 9 include improper objections to producing documents reviewed by a witness related to declarations filed in court that were used to support the filings.

No. 19 requests policies and procedures of State Farm. It is not clear from the response if you client has documents or not. Please clarify.

No. 23 requests the claim file which is not protected as claimed.

Nos. 26, 27, 28, relate to producing documents supporting specific allegations in the complaint that State Farm has investigated this matter and believes…" as well as the statement related to the Son had been an excluded driver from the Policy for over a year" and "Pursuant to S.C. Code Ann. §38-77-340, the exclusion was signed by father" There is no applicable protections afforded to this

request. Produce the documents or state your client has no documents that support this.

No. 29 relates to communications with Shay Anderson. These are not protected and the privilege log is inadequate as it lacks dates, topics and specifics needed to determine the applicability of any claimed privilege.

Nos. 30 – 34, generally relate to what materials were reviewed by GWB before and after filing. These are not protected and the privilege log is inadequate as it lacks dates, topics and specifics needed to determine the applicability of any claimed privilege.

No. 35 asks to produce the materials referred to in answering the interrogatories….It appears that all of the materials, including those reviewed have not been produced.

If the insurance policies have been produced, please identify the bates numbers.

Please don't hesitate to call if you would like to discuss this further.

With kind regards, I am

Yours sincerely,

Justin S. Kahn

JSK/pm



*State of South Carolina*

*The Circuit Court of the Ninth Judicial Circuit*

**Roger M. Young, Sr.**
**Judge**

<div align="right">Charleston County Judicial Center
100 Broad Street, Suite 368
Charleston, SC 29401
Phone:  (843) 958-2015
Fax:  (843) 958-5108
ryoungj@sccourts.org</div>

## MEMORANDUM

To:          Attorneys and Parties with Discovery motions

From:        Judge Roger Young

Subject:     Preparation for discovery motions

---

The following may assist you in preparation for your upcoming hearing.  If you have resolved your motions, please advise the Clerk's office. You may find it useful in working out a resolution as it shows I how generally view common discovery issues.

**Boilerplate or generalized objections are tantamount to no objection at all**

Each discovery response, whether to an interrogatory or discovery response, whether to an interrogatory or discovery production is to be answered or objected to separately. The rule is clear that each interrogatory "shall "shall be answered separately and fully in writing..."  SCRCP, Rule 33(a).  If there are objections to interrogatories or requests for interrogatories or requests for production, "the reasons for objection shall be stated…" SCRCP, Rules 33(a) and 34(b). Whether the reasons are satisfactory is to be decided on a case by case basis.  However, keeping in mind the general purposes and concepts stated in the rules can help combat frivolous and obfuscatory objections.

"An affirmative duty does exist to answer interrogatories and respond to requests to produce." *CFRE, LLC v. Greenville County Assessor LLC v. Greenville County Assessor,* 395 S.C. 67, *395 S.C. 67,* 83, 716 S.E.2d 877, 885 (2011)83, 716 S.E.2d 877, 885 (2011). Objections to interrogatories must be specific and supported by a detailed explanation why the interrogatories are improper or may result in waiver of the objections.  *In re Folding Carton Antitrust Litigation.*, 83 F.R.D. 260, 264 (N.D. Ill. 1979). The mere statement by a party that the by a party that the interrogatory was "overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection to an interrogatory.  *Josephs v. Harris Corp.* 677 F.2d 985, 992 (3d Cir. 1982). Parties shall not make nonspecific, boilerplate objections. **Objections that state that the discovery request is "vague, overly broad, or unduly burdensome" are, standing alone, meaningless and will be found meritless by the court.** A party objecting must explain

**EXH. 3**

the specific and particular way in which a given request is vague, overly broad, or unduly burdensome.[1] *Curtis v. Time Warner Entm't-Advance/Newhouse* P *'ship,* 2013 WL 2099496, at *2 (D.S.C. May 14, *2013*). Parties should not recite a formulaic objection followed by an answer to the request. It has become common practice for a party to object on the basis of any of the above reasons and then state that, "notwithstanding the above," the party will respond to the discovery request, subject to or without waiving such objection. Such an objection and answer preserve nothing and serves only to waste the time and resources of both the parties and the court. Such practice leaves the requesting party uncertain as to whether the question has actually been actually been fully answered or whether only a portion of the question has been answered. *Id*. citing 2004 A.B.A. Civil Discovery Standards, 2004 A.B.A. Sec. Lit. 18. One objecting to discovery must show specifically how, despite the broad and liberal construction afforded the discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden. *Roesberg v. Johns-Manville Corp.,* 85 F.R.D. 292, 296 (E.D. Pa. 1980). It is not proper to object merely because answering interrogatories may require expending considerable time, effort or expense or may interfere with business operations. *Id.* at 97.

"General objections" that purportedly apply to all discovery responses are improper. These general objections do not comply with the letter or spirit of the rules as they do not provide the specificity required to each request.[2]

---

[1] *Walker v. Lakewood Condo. Owners Ass'n,* 186 F.R.D. 584, 587 (C.D. Cal. 1999); *see also Steed v. EverHome Mortg. Co.*, 308 Fed. Appx. 364, 371 (11th Cir. 2009) ("[B]oilerplate objections may border on a frivolous response to discovery requests."); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) ("[T]o say an interrogatory was overly broad, burdensome, oppressive and irrelevant [is] not adequate to voice a successful objection to an interrogatory." (internal quotations omitted)); *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory."); *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 688 (S.D. Fla. 2011) ("[B]oilerplate objections [are] legally inadequate or meaningless."); *Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.*, 2011 WL 669352, at *2 (E.D. Mich. Feb. 17, 2011)("Boilerplate or generalized objections are tantamount to no objection at all ...."); *Hager v. Graham*, 267 F.R.D. 486, 498 (N.D. W. Va. 2010) ("The objection is only a general statement that does not specify how the [request for production] is vague, ambiguous, and overly broad. Therefore, the objection is improper."); *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009) ("Boilerplate objections are not acceptable; specific objections are required ...." (internal quotations omitted)); *A. Farber & P'rs, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections.").

[2] *Mills v. E. Gulf Coal Preparation Co., LLC*, 259 F.R.D. 118, 132 (S.D. W. Va. 2009) ("Failure to state objections specifically in conformity with the Rules will be regarded as a waiver of those objections."); *Sabol v. Brooks*, 469 F. Supp. 2d 324, 328 (D. Md. 2006) ("[F]ailure to make particularized objections to document requests constitutes a waiver of those objections."); *In re*

For an objecting party to carry its burden, the objection must be specific, the party making it must explain why it applies on the facts of the case to the request being made, and if the party is providing information subject to the objection, the party must articulate how it is applying the objection to limit the information it is providing.[3] In short, objections should be plain enough and specific enough so that the Court can understand in what way the discovery is claimed to be objectionable. *See generally Curtis v. Time Warner Entmt'-Advance/Newhouse P'ship*, 2013 WL 2099496, at *2 (D.S.C. May 14, 2013). *See generally* Kosieradzki & Rahimi, *supra*, at 30–31 ("Objections must be sufficiently particular to advise the requesting party and the court to what extent the discovery request is objectionable.").

General objections to requests as excessive, overbroad, and unduly burdensome, without more detail as outlined herein, are considered by the Court as *per se* insufficient. The objecting party must show specifically how each discovery request is burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D. Kan. 1997); *accord Roesberg v. Johns–Manville Corp.,* 85 F.R.D. 292, 29–97 (E.D. Pa. 1980) (explaining that an objecting party "must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive ... by submitting affidavits or offering evidence revealing the nature of the burden" (internal citations omitted)). Responses which provide no information whatsoever in support of these assertions are very likely to be overruled and may be sanctionable if deemed to be abusive violations by the Court.

### Use of Standard Interrogatories – Abusive Objections

Rule 33(b) lists specific interrogatories that are allowed "[i]n all cases…" and should be served. Attorneys responding to these standard interrogatories with paragraphs of copy and paste generic

---

*Folding Carton Antitrust Litig.*, 83 F.R.D. 260, 264 (N.D. Ill. 1979) ("General objections may result in waiver of the objections"). *See generally* Wise, *supra*, at 569 ("[B]ecause general objections are nonspecific and 'hide the ball' with respect to what information or material is being provided and what information or material is being withheld and why ... [they] have been universally condemned by courts for this very reason."); Mark Kosieradzki & Kara Rahimi, *Keep Discovery Civil: When Opposing Counsel Obstructs or Deflects Your Access to Evidence, Look to the Rules and Long–Settled Case Law for Relief. Both Are on Your Side*, Trial, June 2008, at 32 ("[C]ourts have held that asserting numerous general objections obscures any valid objections and may result in a waiver of the valid objections absent a showing of good cause.").

[3] *See Josephs*, 677 F.2d at 992 (explaining that a party's objections must "show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive" (internal quotations and alterations omitted)); *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008)(explaining that if party's objections "are not applied with sufficient specificity to enable this Court to evaluate their merits ... this Court will overrule [the party's] objections in their entirety"); *Folding Carton*, 83 F.R.D. at 264 ("Objections to interrogatories must be specific and [be] supported by a detailed explanation why the interrogatories are improper.").

objections are engaging in dilatory conduct. Neither attorneys nor courts should tolerate such obstructive behavior.

Rule 33(b) requires responding with important facts known or observed by witness so that the summary is restricted to the actual knowledge of the witness. Note to Rule 33(b). The rules make it clear that specific objections and reasons are required when responding. There can be no good reason to objecting to standard interrogatories.

## Production of Documents

As to documents produced in response to discovery requests, the responding party shall produce them "as" they are kept in the usual course business or shall organize and label them to correspond with the categories in the request." SCRCP, Rule 34(b). If the form for producing the information is not specified or otherwise agreed upon, the responding party must produce the information in a form which it is ordinarily maintained that is reasonably usable. SCRCP, Rule 34(b)(1). When dealing with electronic discovery, it "must relate to the claims and defenses asserted in the pleadings and should serve as a means for facilitating a just and cost-effective resolution of disputes." Notes to 2011 Amendment, SCRCP, Rule 34.

## Duty to Consult Before Moving to Compel

One submitting discovery requests may move for an order under Rule 37(a) with respect to any objection to or other failure to answer the interrogatory or request for production. SCRCP, Rule 33(a) and 34(b). If the discovery responses received are improper, consult with the other party and try to resolve the issues.  Rule 11 requires that before filing a motion, one communicate with opposing counsel and attempt in good faith to resolve the matter contained in the motion, unless the movant's counsel certifies that consultation would serve no useful purpose or could not be timely held.  SCRCP, Rule 11(a). After consulting, compromises may be reached so that only the actual controversies are presented to the court.

The rule requires that the movant's counsel affirm that consultation has taken place. Attaching correspondence showing the attempts to resolve the matter with the articulated reasons from both sides can help demonstrate the issues for the court.

## Burden —   Motion to Compel

After consulting as required, one needs to move to compel the other side to sufficiently respond to your requests. As part of the motion, provide the court with both the request and the responses at issue, and explain why the responses are deficient in the context of the case. Articulate specific reasons, not generalities as to why the discovery sought is proper. Generally, the initial burden is on the party moving to compel to inform the court (1) which discovery requests are the subject of the motion, (2) which responses are disputed, (3) why the party believes the responses are deficient, (4) why any objections are not justified, and (5) why the information sought through discovery is discoverable. After the moving party has met its burden, the party resisting discovery must show specifically how each interrogatory or request for production is not relevant or how each is overly broad, burdensome or oppressive. If claims of privilege or work product

are made, the factors and facts supporting such claims should be supported with specifics, not generalities, in the form of a privilege log that will provide enough information for you and the court to evaluate the objection.

## Opinions and Contentions Proper

The rules allow one to serve discovery designed to eliminate the need for depositions or other expensive ways of establishing opinions or contentions of the parties. An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law.  SCRCP, Rule 33(d). Similarly, requests for admission may be served for purposes of the pending action only concerning any matters within the scope of Rule 26(b) that relate to statements or opinions of fact or of the application of law, including the genuineness of any documents described in the request. SCRCP, Rule 36(a).  Further, opinions of experts are proper subjects of discovery as well. SCRCP, Rule 26(b)(4)(A).

## Privilege Log - Express Claims of Privilege or Trial Preparation

A party may withhold information otherwise discoverable by expressly claiming such material is privileged or subject to protection as trial preparation material. SCRCP, Rule 26(b)(5). The claim shall be made expressly and shall describe the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection. SCRCP, Rule 26(b)(5)(A-B).  *See also* Note to 1996 Amendment. The Rules expressly require the disclosure of the nature of evidence prior to any claim of privilege so other parties may assess the applicability of the privilege or protection.  *Samples v. Mitchell,* 329 S.C. 105, 111, 495 S.E.2d 213, 216 n.5 (Ct. App. 1997). The obligation to describe what is being withheld and why also applies to non-parties when responding to a subpoena, under SCRCP, Rule 45(d)(2). SCRCP, Rule 26(b)(5) Note to 1996 Amendment.

For, example, the work product rule would not excuse the failure to disclose the existence of a surveillance video tape pursuant to the standard interrogatories. If an attorney believed the other side had no right to this evidence, either because of relevancy or because of the work product rule, she should have either objected to the interrogatory or disclosed the existence, but not the content, of the evidence and moved for a protective order.  *Samples v. Mitchell,* 329 S.C. 105, 111, 495 S.E.2d 213, 216 (Ct. App. 1997). The decision whether a document is privileged is for the court, not the party. Privileged Matter—Assertion of Privilege, 8 Fed. Prac. & Proc. Civ.  § 2016.1 (3d ed.).  In making determinations as to the adequacy of the privilege log, the court should be guided by a sense of reasonableness in deciding what should be required. *Id.*

The use of a "privilege log" by party withholding the material is designed to satisfy the requirement that the claim to be made expressly and provide the other party with an opportunity to assess the applicability of the claimed privilege or protection. The description should provide a feasible means of understanding why each document is privileged or protected. Depending on the case, a privilege log may consist of details like a description and date of the document along with who created and received it. The required detail of the privilege log should be decided on a

5

case by case basis. However, the log should not generically assert privilege or simply use words like "privileged document."

### Attorney-Client Privilege

Generally, the party asserting the privilege must establish the confidential nature of the communication. *State v. Doster,* 276 S.C. 647, 653, 284 S.E.2d 218, 220 (1981). To establish an attorney-client privilege, the person asserting the privilege must show that the relationship between the parties was that of attorney and client and that the communications were confidential in nature for the purpose of obtaining legal advice. *Crawford v. Henderson*, 356 S.C. 389, 395, 589 S.E.2d 204, 207-08 (Ct. App. App. 2003). The essential elements giving rise to the privilege were stated by Wigmore to be: "(1) Where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *State v. Doster*, 276 S.C. 647, 651, 284 S.E.2d 218, 219-20 (1981).

The privilege must be tailored to protect only confidences disclosed within the relationship. And the court must determine the question of privilege without first requiring disclosure of the substance of the communication. *Id.* Not every communication within the attorney and client relationship is privileged. The privilege does not extend to communications in furtherance of criminal, tortious or fraudulent conduct. *Id.*

### Attorney Work Product and Limitations

"The attorney work product doctrine protects discovery documents prepared in anticipation of litigation, unless a substantial need can be shown by *the requesting party." Stokes Craven— Holding Corp. v. Robinson,* 416 S.C.517, 537, 787 S.E.2d 485, 495 (2016). "Generally, in determining whether a document has been prepared 'in anticipation of litigation,' most courts look to whether or not the document was prepared because of the prospect of litigation." *Id.*

"The document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). Thus, materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule *26(b)(3). Id. See also, Tobaccoville USA, Inc. v. McMaster*, 387 S.C. 287, 294, 692 S.E.2d 526, 530 (2010). A party must show more than a statute governing the party's actions considers the possibility of future litigation or concerns litigation. *Id.*

### Motion for Protection

If the discovery process threatens to become abusive or create a particularized harm to a litigant or third party, the trial judge may issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden by expense." *Hollman v. Woolfson,* 384 S.C. 571,

578, 683 S.E.2d, 495, 498(2009). "The person requesting protection from the court or Commission must initially show good cause by alleging a particularized harm which will result if the challenged discovery is had...Once the party seeking the protective order has met its burden of showing good cause by alleging a particularized harm, the party seeking the discovery must come forward and show that the information that is sought 'is both relevant and necessary to the case. When both parties meet their burden of proof, the court must weigh the opposing factors.'" *Hamm v. SCPSC*, 312 S.C. 238, 439 S.E.2d 852, 854 (1994); *see also, Hollman v. Woolfson*, 384 S.C. 571, 578, 683 S.E.2d 495, 498 (2009).

**Duty To Supplement**

A party who has responded to a discovery request under Rules 31, 33, 34 and 36 with a response that was complete when made is under a duty to promptly transmit to the other party information sought which comes to the knowledge of a party, his representative or attorney after the original answers have been submitted. SCRCP, Rule 26(e). "This duty to supplement does not apply to discovery under Rule 30 Depositions Upon Oral Examination."
"[T]here is an additional duty to provide supplemental information on expert witnesses and witnesses with knowledge of the facts of the case regardless of the form of the discovery request. The obligation to supplement prior discovery responses includes the duty to amend or supplement answers which are found to be incorrect or misleading…" SCRCP, Rule 26(e) Note to 1996 Amendment.

**Conclusion**

The moving party shall provide an affidavit detailing the attempts to resolve the motion prior to the hearing shall be presented. The affidavit should list a statement of services rendered which details the time and fees generated from pursuit of the discovery sought in the Motion to Compel. **Affidavits, briefs and proposed Orders** granting the requested relief and leaving a blank for the amount of fees and costs to be awarded **shall be presented to the court at the hearing** and shall also be served on opposing counsel prior to the hearing. **Failure to comply may result in denial of the relief.**

As to any objection to discovery on the basis that the information sought is either privileged or work product, the objecting party shall prepare and present at the time of the hearing their **privilege log** detailing the basis for the claim to privilege or reason why it should be excluded from production.

**At a minimum**, the privilege log should detail the date of the communication/statement, who prepared or made the statement, to whom the statement was directed to and finally, the specific basis for the privilege should be included in the log. While this will necessitate much more work on the part of the party claiming the privilege, **failure to prepare and bring** this log to the hearing will result in the **privilege claimed considered waived** by the court and the **motion to compel shall be granted**.

The Motion to Compel hearing shall constitute a hearing under Rule 37(d) 4, SCRCP.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA
COUNTY OF CHARLESTON

COURT OF COMMON PLEAS
CASE NO. 23-CP-10-1832

ROBERT C. WORKMAN,
INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
JAMES K. WORKMAN, KELLY
WORKMAN TICK AND MATTHEW T.
WORKMAN,

          PLAINTIFFS,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY AND
GALLIVAN, WHITE & BOYD, P.A.,

          DEFENDANTS.

PLAINTIFFS' NOTICE AND
MOTION TO COMPEL
DISCOVERY FROM
DEFENDANT STATE FARM
MUTUAL AUTOMOBILE
INSURANCE COMPANY
AND MEMORANDUM IN
SUPPORT

TO:  ROBERT WHALEN. ESQ. AND KATIE MELLEN, ESQ., ATTORNEYS FOR
DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

**PLEASE TAKE NOTICE** that at such time and place as may be set by the Court, no sooner than 10 days from today, Plaintiffs will move to compel discovery responses to the discovery served in this case and seek such other and proper relief as is just and proper. The basis for this motion is set forth in the attached memorandum in support.

KAHN LAW FIRM, LLP
s/ JUSTIN S. KAHN
SC BAR NO. 65100
PO BOX 31397
CHARLESTON, SC 29417-1397
P. 843.577.2128
F. 843.577.3538
JSKAHN@KAHNLAWFIRM.COM
ATTORNEYS FOR PLAINTIFFS

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

TABLE OF CONTENTS

1. **Concise Summary of the Nature of the Case** .......................... 2

2. **Concise Statement of the Pertinent Facts** ............................ 2

3. **Argument** ....................................................... 3
    3.1. No Protection for Communications In Furtherance of Tort or Crime   3
    3.2. Boilerplate Objections Improper ................................ 5
    3.3. Claims of Privilege Shall Describe the Nature of the Materials Withheld .................................................... 7

4. **Discovery At Issue** ............................................. 7
    4.1. Interrogatories Nos. 1 and 6 – Witnesses and Supp. No. 2 ........... 7
    4.2. Discovery Documents Supporting Its Defenses ..................... 9
    4.3. Documents Reviewed by Witness Not Protected ................... 9
    4.4. Others Making Claims ......................................... 10
    4.5. Audit Trail Changes Made By State Farm and Other Claims ....... 11
    4.6. Who and How Forged Documents Created Discoverable ........... 13
    4.7. Materials Reviewed by State Farm's Witnesses Who Signed Statements ................................................... 14
    4.8. As to Tahoe Produce All Endorsements and Dec Pages Created .... 14
    4.9. Policies, Processes and Procedures for Driver Exclusions .......... 15
    4.10. Materials Reviewed by GWB Are Discoverable in this Case ....... 16
    4.11. Produce Materials Referenced to in Answer Discovery ............. 17
    4.12. Produce Requests Related to the Creation of the Certified Policy Records .................................................... 18
    4.13. File Notes and Access Records Are Discoverable .................. 19
    4.14. Policies to Be Followed When Creating and Modifying Declarations Pages Are Discoverable ...................................... 19
    4.15. Employee Files and Signed Forms Will Not Commit Fraud ........ 19
    4.16. Training Related to Not Committing Fraud is Discoverable ........ 20
    4.17. Clarify If Production is Complete or Not ......................... 21
    4.18. Produce Documents Supporting Allegations Made in the Federal Court Complaint at Issue ...................................... 21
    4.19. Produce Materials Shared with GWB ............................ 22
    4.20. Identify Who Assisted in Preparing Discovery Responses .......... 22

5. **Conclusion** .................................................... 23

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

1.    **CONCISE SUMMARY OF THE NATURE OF THE CASE**

Among other illegal and improper misconduct, State Farm intentionally created a forged declarations page *after* a collision and used that document in a lawsuit to falsely assert it proved coverage was excluded. It further created and used other false documents, including a "Certified Policy Record" which falsely claimed the falsely created declarations page was in effect at the time of the collision.

This lawsuit is against an insurance company and its law firm alleging improper conduct, including the use of forged documents and making false statements concerning the relevant insurance policy in a different lawsuit. The discovery sought is not protected by any privilege because there is no protection for tortious or intentional conduct. *See State v. Doster*, 276 S.C. 647, 284 S.E.2d 218 (1981).

2.    **CONCISE STATEMENT OF THE PERTINENT FACTS**

Standard interrogatories and supplemental discovery were served on State Farm. These seek to obtain information and documents created, used and reviewed by State Farm before and after the lawsuit it filed where it used forged documents to use in the case. After reviewing the discovery responses (Ex. 1 Defendant's Answers to Standard Interrogatories, Ex. 2 Defendants Answers to Supplemental Discovery Requests, Ex. 3 Privilege log listing one item) and

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

outlining the improper discovery responses (Ex. 4 Letter Kahn to Mellen Oct. 10, 2023), supplemental responses correcting the deficiencies have not been provided although promised.

Documents have been produced which generally consist of correspondence, filings made in court and discovery exchanged in the prior lawsuit. However, boilerplate and unsupported objections have been made and need to be addressed by the Court. A privilege log was provided but it fails to comply with SCRCP, Rule 26(b)(5). One document is listed. This is insufficient to support the alleged claims made. Further, it was asserted that a privilege log would not be provided until after a confidentiality order is entered.

3.   **ARGUMENT**

   **3.1.   NO PROTECTION FOR COMMUNICATIONS IN FURTHERANCE OF TORT OR CRIME**

   The South Carolina Supreme Court makes clear there is *no protection* for communications in furtherance of criminal tortious or fraudulent conduct.

> Not every communication within the attorney and client relationship is privileged. The public policy protecting confidential communications must be balanced against the public interest in the proper administration of justice. *N. L. R. B. v. Harvey*, 349 F.2d 900 (4th Cir. 1965); *Sepler v. State*, 191 So.2d 588 (Fla.App.1966). This is exemplified by the widely recognized rule that the privilege does not extend to communications in furtherance of criminal, tortious or fraudulent conduct. *United States v. United Shoe*

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*Machinery Corporation*, 89 F.Supp. 357 (D.Mass.1950); 125 A.L.R. 508; 16 A.L.R.2d 1029.

*State v. Doster*, 276 S.C. 647, 651, 284 S.E.2d 218, 220 (1981).

The Complaint specifically alleges criminal conduct, tortious conduct and fraudulent conduct. The crime of forgery is plead along with facts supporting it. Complaint ¶¶ 7, 13, 14, 41, 42, 76, 81, 91 (citing S.C. Code Ann. § 16-13-10), 111, 115, etc. It is specifically alleged the law firm worked with and aided and abetted State Farm in participating in improper conduct in various ways: Fraud, Abuse of Process, Conspiracy, etc.

Generally, the party asserting the privilege must establish the confidential nature of the communication. *State v. Doster*, 276 S.C. 647, 653, 284 S.E.2d 218, 220 (1981). To establish an attorney-client privilege, the person asserting the privilege must show that the relationship between the parties was that of attorney and client and that the communications were confidential in nature for the purpose of obtaining legal advice. *Crawford v. Henderson*, 356 S.C. 389, 395, 589 S.E.2d 204, 207-08 (Ct. App. 2003). The essential elements giving rise to the privilege were stated by Wigmore to be: "(1) Where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

himself or by the legal adviser, (8) except the protection be waived." *State v. Doster*, 276 S.C. 647, 651, 284 S.E.2d 218, 219-20 (1981). The privilege must be tailored to protect only confidences disclosed within the relationship. And the court must determine the question of privilege without first requiring disclosure of the substance of the communication. *Id.*

### 3.2.   BOILERPLATE OBJECTIONS IMPROPER

Even if there was a proper basis to object, boilerplate and unsupported objections are improper.  Judge Young's insightful memorandum directed to attorneys regarding discovery motions makes this clear and is incorporated herein. (Ex. 5 Judge Young Discovery Memorandum).

"An affirmative duty does exist to answer interrogatories and respond to requests to produce." *CFRE, LLC v. Greenville County Assessor LLC v. Greenville County Assessor*, 395 S.C. 67, 83, 716 S.E.2d 877, 885 (2011). Objections to interrogatories must be specific and supported by a detailed explanation why the interrogatories are improper or may result in waiver of the objections. *In re Folding Carton Antitrust Litigation.*, 83 F.R.D. 260, 264 (N.D. Ill. 1979). The mere statement by a party that the interrogatory was "overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection to an interrogatory. *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982). Parties shall not make nonspecific, boilerplate objections.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Objections that state that the discovery request is "vague, overly broad, or unduly burdensome" are, standing alone, meaningless and will be found meritless by the court.

A party objecting must explain the specific and particular way in which a given request is vague, overly broad, or unduly burdensome. *Curtis v. Time Warner Entm't-Advance/Newhouse P'ship,* 2013 WL 2099496, at *2 (D.S.C. May 14, 2013). Parties should not recite a formulaic objection followed by an answer to the request. It has become common practice for a party to object on the basis of any of the above reasons and then state that, "notwithstanding the above," the party will respond to the discovery request, subject to or without waiving such objection. Such an objection and answer preserve nothing and serve only to waste the time and resources of both the parties and the court. Such practice leaves the requesting party uncertain as to whether the question has actually been fully answered or whether only a portion of the question has been answered. *Id.* citing 2004 A.B.A. Civil Discovery Standards, 2004 A.B.A. Sec. Lit. 18. One objecting to discovery must show specifically how, despite the broad and liberal construction afforded the discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*Roesberg v. Johns-Manville Corp.,* 85 F.R.D. 292, 296 (E.D. Pa. 1980). It is not proper to object merely because answering interrogatories may require expending considerable time, effort or expense or may interfere with business operations. *Id.* at 97.

### 3.3. CLAIMS OF PRIVILEGE SHALL DESCRIBE THE NATURE OF THE MATERIALS WITHHELD

Rule 26(b)(5)(A) requires "the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." This was not done here. The privilege log consists of listing only 1 document and lacks specifics to enable one to ascertain whether privileges apply. SCRCP, Rule 26(b)(5).

## 4. DISCOVERY AT ISSUE

### 4.1. INTERROGATORIES NOS. 1 AND 6 – WITNESSES AND SUPP. NO. 2

Interrogatory **nos. 1 and 6** and **supplemental request no. 2**, relate to listing and producing documents, witnesses and summary of facts known. It is clear that the responses are incomplete. This is seen by State Farm's reference to employees of entire departments but only listing two in each

- Employees of State Farm's Claims Department, *including* Lee Shivers and Darren Murdoch and

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

- Employees of State Farm's Underwriting Department, *including* Shay Anderson and Lana Willingham

It is obvious the list of witnesses is incomplete because other employees of State Farm were involved in the process and have not been identified. Further, the facts they may have knowledge of is inadequate as well with boilerplate language like "all as reflected in *the nonprivileged and non-work product protected portions of State Farm's underwriting records and Claim File*."

As to No. 2 – State Farm withheld and failed to identify "the nonprivileged and non-work product protected **underwriting records** of State Farm" or "the nonprivileged and non- work product protected portions of State Farm's "Claim File" for Claim No. 40-21B2-49D." Further, State Farm then claimed it has some special system that has a distinct meaning to State Farm and failed to produce the materials.

Rule 33(b)(2) and (6) specifically allows one to obtain a list of all documents in possession of the opposing party as well as a list of witnesses and a summary of their testimony sufficient to inform one of the important facts known or observed by the witness. The names of witnesses and their knowledge of the facts is required to be provided under the rules should be provided.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Further, the materials should be produced. There is *no* rule authorizing withholding the materials requested.

### 4.2.  DISCOVERY DOCUMENTS SUPPORTING ITS DEFENSES

Supplemental discovery request **no. 1** requests State Farm to state facts supporting affirmative defenses and produce the documents supporting those defenses. State Farm objected claiming it was premature. There is no such proper objection. Either State Farm currently has facts and documents to support its defenses, or it does not and can supplement later.

### 4.3.  DOCUMENTS REVIEWED BY WITNESS NOT PROTECTED

As to supplemental discovery requests Nos. 2, 23 and 24 concerning producing documentation related to a specific claim number with a specific loss date, and claims file at issue, State Farm provided a boilerplate objection. It simply stated the request is "overly broad, unduly burdensome, and seeking material not relevant to the parties' claims and defenses because it is unlimited in time and scope, with no particular period of time identified in the request…"

First, the request is on its face limited in time and scope as it is limited to a specific claims file with a specific loss date. Second, relevant to the parties' claims and defenses is not the proper scope of discovery in state court. Third, the generic and unsupported claim is made that the request is "seeking attorney-client privileged or work product protected "documentation" that is

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

outside the scope of discovery…" Last, State Farm interposes improper delay by claiming "will produce the nonprivileged and non-work product protected portions of its Claim File for Claim No. 40-21B2-49D. The term "Claim File" has a distinct meaning to State Farm. State Farm does not maintain a physical file folder with respect to most claims …"

There is an utter failure to support this contention and no basis in law is cited. State Farm also makes a statement that is not recognized by the discovery process that "At the time of production, State Farm will also serve a privilege log identifying all information and material redacted or otherwise withheld from the Claim File."

These materials should be produced as they are relevant and discoverable as they concern this specific claim.

### 4.4. OTHERS MAKING CLAIMS

Discovery request no. 3 relates to the identify other people making claims related to the collision and to produce communications sent and received. State Farm makes another boiler plate objection. These materials are relevant and discoverable as it would likely show State Farm repeated its lies and made further misrepresentations to others. Among other things, it shows intent and repetition.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 4.5. AUDIT TRAIL CHANGES MADE BY STATE FARM AND OTHER CLAIMS

Discovery requests nos. 4 and 18 relate to the Tahoe and claims at issue, the policies and people involved in changing the documents related to it and an audit trail of changes made. Shay Anderson specifically testified in the prior lawsuit on behalf of State Farm that there was an audit trail, it would show who made changes and it is easy to access.

```
11 Q. Okay. How would one determine why this
12 Declarations Page that's attached to Exhibit 2 --
13 Defense Exhibit 2 -- how would one determine who
14 created it?
15 A. You would have to look in the audit trail of our --
16 of our system.
```
        Ex. 6, Anderson Dep. p. 96

```
3 Q. And then what does the Rumba System audit trail
4 show you?
5 A. It would show you the changes, the premium charges,
6 and the person that made the entry.
```
        *Id*. at 100.

```
20 Q. ... and all the things you've described, it's easy
21 to print off the audit trail?
22 A. You could, yes.
```
        *Id*. at 101.

The discovery properly requests State Farm documents related to the Tahoe. State Farm's generic and boilerplate objections include the improper statement that "this request for production as vague, ambiguous, overly broad, unduly burdensome, unnecessarily duplicative, and seeking information not relevant to any party's claims or defenses." The fact that State Farm claims

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

something is "incredibly overbroad" does not explain anything. There is zero need to wait for a confidentiality order for State Farm to produce the materials.

State Farm fails to define or produce "nonprivileged and non-work product protected underwriting information and documents" and "a privilege log describing redactions made or items withheld from the Claim File or underwriting records based on the attorney-client privilege or work product doctrine." Is State Farm really asserting that some lawyer logged into its system and entered work product related to a particular policy issued? If so, State Farm has failed to identify who that attorney is or how it could possibly be work product. The fact that State Farm does not maintain a physical file is a non-sensical statement. The assertion made is State Farm "does not maintain a physical file folder with respect to most policies. Instead, underwriting information and documents are generally created, stored, managed, and accessed electronically in multiple locations." The request does not relate to "most policies" but rather the specific one at issue that it forged to file a lawsuit.

All materials should be produced and/or access given to the computer system in read only to go through the electronic file.

12

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 4.6.  WHO AND HOW FORGED DOCUMENTS CREATED DISCOVERABLE

Discovery request no. 5 relates to who participated in the forged and bogus declarations page that State Farm used in a lawsuit. The request properly asks to identify who participated in this and to produce the documentation related to it. This is very much at issue in this case despite the feigned contention otherwise. Further, the responses are relevant to the subject matter involved in the pending litigation. *See* SCRCP, Rule 26(b)(1) Scope of Discovery. The various boilerplate objections are improper for the same reasons explained above. The failure to identify the people involved and instead blame "State Farm's underwriting system" is nonsensical. Does State Farm have some AI that controls the improper changing of documents? Where is the "service request," who made it and when? State Farm's suggestion that Plaintiffs must wait for "the nonprivileged and non-work product protected underwriting records being produced in response to other discovery requests upon entry of an appropriate Confidentiality Order evidence facts set forth in Ms. Anderson's May 24, 2022 Declaration" is not proper.

The materials should be produced.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 4.7. MATERIALS REVIEWED BY STATE FARM'S WITNESSES WHO SIGNED STATEMENTS

Request nos. 6-9 properly request the production of documents created, used, or reviewed by various State Farm employees who gave statements about the matter is a proper request. Generic and boilerplate objections are made:

> State Farm objects to this request for production as seeking materials not relevant to the claims or defenses in this suit and protected by the attorney-client privilege and work product doctrine. As alleged in Plaintiffs' Complaint, this lawsuit concerns State Farm's filing of the DJA on August 16, 2021 and actions alleged to have occurred before the filing of the DJA. That said, the nonprivileged and non-work product protected underwriting records being produced in response to other discovery requests upon entry of an appropriate Confidentiality Order evidence facts…

These are not supported by any rule or law. The boilerplate responses do not cite any basis for waiting for any confidentiality order. Further, the lawsuit is not limited to what took place before filing the declaratory judgment action.

### 4.8. AS TO TAHOE PRODUCE ALL ENDORSEMENTS AND DEC PAGES CREATED

As to Request no. 10, State Farm should produce the endorsements and declarations page created by it from the inception of the coverage through the present for the Tahoe at issue and all documentation supporting the reasons the documents were created. To suggest that the materials "will be included in the

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

nonprivileged and non-work product protected underwriting records being produced in response to other discovery requests upon entry of an appropriate Confidentiality Order" is not proper. What nonprivileged and non-work product documents could possibly exist related to producing the endorsement and declarations pages of the Tahoe? The documents are relevant, discoverable and should be produced.

### 4.9. POLICIES, PROCESSES AND PROCEDURES FOR DRIVER EXCLUSIONS

Request no. 11 seeks the production of policies, processes and procedures for driver exclusion agreements related to keeping or retaining acceptable policyholders while excluding others. The suggestion that State Farm will solely decide versions of the relevant "portions" of the Auto Process Guide for Feb. 13, 2020 through July 14, 2021 is not a time limit that has any logic or stated basis. The request asks for materials from Jan. 1, 2020. So, adding an extra 43 days should not be an issue. As to the end date chosen by State Farm, there is no valid basis for choosing the date when discovery has not been allowed to confirm anything State Farm has said about the alleged "service request" to forge the declarations page. The stated boilerplate objection "State Farm objects to the remainder of this request for production which seeks production of policies, processes, and procedures for driver exclusion agreements with effective dates

15

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

that end prior to February 13, 2021 and start after July 14, 2021 as being overly broad and not relevant to the claims or defenses in this suit." is not proper. *See* Ex. 6 Judge Young's memo.

### 4.10. Materials Reviewed by GWB Are Discoverable in this Case

As to requests nos. 12 - 15, State Farm should produce the documents submitted to the SC Department of Insurance or state documents were not submitted. If they have been provided, state the bates numbers. If this was done after January 1, 2022, the documentation should be produced.

At issues is State Farm's knowledge that its claim that the form was in compliance with the law was false. It would know that the forms were never submitted nor approved. The materials should be produced.

The objection "State Farm objects to this request for production as seeking information not relevant to the parties' claims and defenses in this suit. The alleged actions and inactions on which Plaintiffs' claims are based occurred, if ever, before January 1, 2022." is improper. If State Farm submitted a request after, that would obviously show it knew that such a request was needed and the statement in the complaint it filed that the form complied with the law and it investigated the matter before filing can be shown to be false.

Further, State Farm makes the statement that "At some point after implementation of 6023DC, State Farm determined it would be beneficial to State Farm and its policyholders to include identifying information on the form for tracking purposes. Therefore, lines for policyholder name; policy #; and effective date of the form were placed onto the top portion of 6023DC." And "State Farm's belief was that these administrative changes did not require a reapproval of 6023DC and, therefore, reapproval was not sought."

If such a determination was made and belief existed, produce the documentation supporting the statements as requested.

### 4.11. PRODUCE MATERIALS REFERENCED TO IN ANSWER DISCOVERY

As to request no. 16 related to producing communications sent by State Farm denying claims based on the unapproved form, it improperly states "State Farm objects to this request for production as seeking material not relevant to any party's claims or defenses in this case and unduly burdensome. Materials State Farm sent non-parties between May 1, 2019 and May 1, 2022 denying claims based on a particular endorsement have no bearing on any issue in dispute, and have no tendency to make the existence of any material fact more or less probable. State Farm further objects to this request as unjustifiably

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

seeking confidential, personal information of and concerning its insureds and third parties, none of whom are parties to the case."

First, the boilerplate claim this is not relevant to claims or defenses is not a proper objection. The generic statement that such a request is unduly burdensome is unsupported and boilerplate. Separately, the request does relate to State Farm's pattern, practice and intent in repeatedly and knowingly denying claims using a bogus and unapproved form. State Farm's contention that the request "unjustifiably" seeks "confidential, personal information of and concerning its insured and third parties" is not only not supported but does not make sense. If State Farm was denying coverage, the people would not be insureds. Further, why would third parties who were wrongfully denied coverage using false documents be upset by State Farm disclosing this?

### 4.12. Produce Requests Related to the Creation of the Certified Policy Records

As to No. 17, related to certified policy records, State Farm failed to produce the requests related to generating those. There is no basis to fail to produce the requested materials and claim an objection that "nonprivileged and non-work product protected underwriting records and Claim File which State Farm is producing in response to other discovery requests upon entry of an appropriate Confidentiality Order." The materials should be produced.

18

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 4.13. FILE NOTES AND ACCESS RECORDS ARE DISCOVERABLE

As to request no. 18, the file and notes related to the creation, storage and management of the file related to the claims involving Mr. Lamb and the Plaintiffs and who accessed it is relevant and discoverable. Any stated boilerplate objections are improper.

### 4.14. POLICIES TO BE FOLLOWED WHEN CREATING AND MODIFYING DECLARATIONS PAGES ARE DISCOVERABLE

Request no. 19 properly requests documents related to policies to be followed when creating and modifying a declaration page during the time period. There is no stated basis to claim such materials are subject to a Confidentiality Order.

### 4.15. EMPLOYEE FILES AND SIGNED FORMS WILL NOT COMMIT FRAUD

Request no. 20 seeks the employment files for the people involved in making changes to the declarations page and their signed acknowledgement that they would not engage in fraud as described and mandated in the State Farm Code of Conduct. This is a proper request. State Farm requires its employees to complete and submit the Code of Conduct Form annually with the annual Code of Conduct training course. Complaint, ¶ 89, Exhibit B, p. 28

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## Preventing Fraud

Fraud is intentional or reckless conduct that deceives or is intended to deceive someone. This includes fraudulent, illegal, unauthorized or dishonest acts. We manage the risk of fraud through our shared value of integrity, utilizing our business processes, controls and the standards in this Code.

We all have a duty to follow established procedures and report suspected fraud, misconduct or dishonesty to your supervisor, another member of leadership, Human Resources & Development, the Open Door policy or contact the Compliance & Ethics Hotline.

There is nothing overly broad about it. Based on the filed declarations of State Farm employees that State Farm previously used, the files relate to those involved in this process. State Farm's boilerplate objections and contention that the system, not a particular person, prepared the declarations page is nonsensical. Is State Farm really claiming its system spontaneously decided to generate a new document which was to be used in litigation? The files should be produced along with the signed statements as required by State Farm's publicly stated Code of Conduct as shown above.

### 4.16. TRAINING RELATED TO NOT COMMITTING FRAUD IS DISCOVERABLE

Request no. 21 relates to State Farm's code of conduct and training materials related to not committing fraud. State Farm asserts that its training related to preventing fraud is somehow protected does not make any sense. The boilerplate objection that "State Farm objects to this request as being overly

20

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

broad in that it seeks the production of all State Farm's confidential, proprietary "Code of Conduct training course materials and videos," regardless of the year in which they were used, and as seeking irrelevant material. State Farm's confidential "Code of Conduct training course materials and videos" have no bearing on any issue in dispute and have no tendency to make the existence of any fact of consequence more or less probable" is without merit.

It is clearly discoverable. It was proposed to State Farm that it could limit it from the time the Code of Conduct attached to the complaint it filed in federal court was created through the present. It has not provided the materials.

### 4.17. Clarify If Production is Complete or Not

Request no. 25 appears to be a partial production of policies, manuals and the like. State Farm should clarify whether additional documents should be included.

### 4.18. Produce Documents Supporting Allegations Made in the Federal Court Complaint at Issue

As to request nos. 26 – 28, these relate to producing documents and explaining statements contained in the Complaint filed by State Farm. In response to No. 26, State Farm makes a boilerplate and improper objection stating "State Farm directs Plaintiffs to the nonprivileged and non-work product protected portions of the Claim File for Claim No. 40-21B2-49D which

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

will be produced upon entry of an appropriate Confidentiality Order and reflect State Farm's investigation of the Lamb Excluded Driver Endorsement." No such rule or law allows State Farm to withhold these documents. State Farm fails to provide an explanation with factual support as requested.

### 4.19. Produce Materials Shared with GWB

As to requests nos. 29-34, in general, documents are requested related to communications and materials supplied to or created by Gallivan White and Boyd. State Farm provides improper boilerplate objections like "State Farm objects to this request as being overly broad and seeking information not relevant to the claims or defenses in this suit. State Farm further objects to this request as seeking attorney-client privilege and work product protected communications and materials which are outside the scope of discovery." These are improper and in the context of this case, documents should be produced as no privilege log was provided to address these materials.

### 4.20. Identify Who Assisted in Preparing Discovery Responses

Request no. 37 asks for the names of individuals who assisted in responding to the discovery requests. This is a proper request as it can identify witnesses or those with knowledge. State Farm should respond.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## 5.   Conclusion

The rules require proper responses, not boilerplate and unsupported copy and paste responses. There there is no protection for an insurance company who intentionally created and used false documents in a lawsuit and claims. There is no protection between an attorney and client available for the improper conduct, including using forged documents in a lawsuit and making false statements concerning the relevant insurance policy. All documents and responses should be immediately produced and the Court should grant such other and further relief as is deemed just and proper.

KAHN LAW FIRM, LLP
s/ JUSTIN S. KAHN [SC BAR NO. 65100]
WES B. ALLISON
SC BAR NO. 100533
WALLISON@KAHNLAWFIRM.COM
PO BOX 31397
CHARLESTON, SC 29417-1397
P 843.577.2128 | F 843.577.3538
JSKAHN@KAHNLAWFIRM.COM
ATTORNEYS FOR PLAINTIFFS

**Rule 11 Motion Affirmation**

Counsel states and hereby affirms that prior to filing this motion counsel has communicated, in writing, with opposing counsel and has attempted in good faith to resolve the matter contained in the motion. Further, it is believed as to certain matters related to the claims of privilege that consultation would serve no useful purpose. **s/ Justin S. Kahn**

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA )
           ) IN THE COURT OF COMMON PLEAS
COUNTY OF CHARLESTON  ) NINTH JUDICIAL CIRCUIT

| | | |
|---|---|---|
| | ) | Case No. 2023-CP-10-01832 |
| Robert C. Workman, Individually and as | ) | |
| Personal Representative of the Estate of | ) | |
| James K. Workman, Kelly Workman | ) | |
| Tick and Matthew T. Workman, | ) | |
| | ) | |
| Plaintiffs, | ) | **STATE FARM MUTUAL** |
| | ) | **AUTOMOBILE INSURANCE** |
| | ) | **COMPANY'S ANSWERS TO THE** |
| vs. | ) | **"STANDARD INTERROGATORIES"** |
| | ) | **IN PLAINTIFFS' FIRST DISCOVERY** |
| State Farm Mutual Automobile Insurance | ) | **REQUESTS TO DEFENDANTS** |
| Company and Gallivan, White & Boyd, | ) | |
| P.A., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pursuant to Rule 33 of the South Carolina Rules of Civil Procedure, Defendant State Farm

Mutual Automobile Insurance Company ("State Farm") answers the "Standard Interrogatories" in

Plaintiffs' First Discovery Requests to Defendants as follows.

### PLAINTIFFS' "STANDARD INTERROGATORIES"

1. Give the names and addresses of persons known to the parties or counsel to be

witnesses concerning the facts of the case and indicate whether or not written or recorded

statements have been taken from the witnesses and indicate who has possession of such statements.

**ANSWER**: Plaintiffs are witnesses concerning their allegations and claimed damages.

Otherwise, the following may have information concerning the facts of the case:

  **a.** **Melvin O. Lamb, Jr.**, who, upon information and belief, has not given a written

    or recorded statement relevant to this case;

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

    b. **Pam Middleton and Mark Black of State Farm Agent Jack Tankersley's office**, neither of whom have given a written or recorded statement relevant to this case;

    c. **Employees of State Farm's Claims Department, including Lee Shivers and Darren Murdoch**, the latter of whom has given a written statement relevant to this case, which statement was filed in Civil Action No. 2:21-cv-02623-MBS (the "DJA");

    d. **Employees of State Farm's Underwriting Department, including Shay Anderson and Lana Willingham**, both of whom have given written or recorded statements relevant to this case, which statements were transcribed by a court reporter or otherwise filed in the DJA;

2.    Set forth a list of photographs, plats, sketches or other prepared documents in possession of the party that relate to the claim or defense in the case.

**ANSWER**: State Farm is not in possession of any plats, sketches, photographs, or the like that relate to the claims or defenses in this case. While State Farm is in possession of photographs depicting the scene of and damage caused by the June 12, 2021 collision, those photographs do not relate to the claims or defenses in this case.

With respect to "other prepared documents" that relate to the claims or defenses, State Farm directs Plaintiffs to the following, which are already in their counsel's possession: filings in the DJA; the discovery served in the DJA; and the transcript of the Shay Anderson's testimony in the Rule 30(b)(6) deposition of State Farm taken in the DJA.

State Farm further directs Plaintiffs to the following, which will be produced by State Farm: State Farm's check in the amount of $10,000,000 made payable to the "Kahn Law Firm LLP

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Escrow Account FBO Estate of James Kelly Workman and His Beneficiaries"; the nonprivileged and non-work product protected underwriting records of State Farm relevant to the policy insuring Melvin O. Lamb, Jr.'s 2004 Tahoe (the "Tahoe Policy") and the excluded driver endorsement signed and accepted by Melvin O. Lamb, Jr. which set forth that his son, Melvin O. Lamb, III ("Lamb III"), would not drive the Tahoe and no coverage would be afforded if Lamb III was driving the Tahoe (the "Lamb Excluded Driver Endorsement"); and the nonprivileged and non-work product protected portions of State Farm's "Claim File" for Claim No. 40-21B2-49D. As for the latter, State Farm does not maintain a physical file folder with respect to most claims. Instead, information regarding a claim is created, stored, managed, and accessed primarily in and through the Enterprise Claims System ("ECS"), a proprietary web-based system used by State Farm. The term "Claim File," therefore, has a distinct meaning to State Farm and consists of what is retrieved from ECS and generated for production outside the ECS environment.

3.     In cases involving personal injury set forth the names and addresses of all physicians who have treated the party and all hospitals to which the party has been committed in connection with said injuries and also set forth a statement of all medical costs involved.

**ANSWER**: Not applicable.

4.     Set forth the names and addresses of all insurance companies which have liability insurance coverage relating to the claim and set forth the number or numbers of the policies involved and the amount or amounts of liability coverage provided in each policy. This includes umbrella coverage and coverage associated with each of the Defendants.

**ANSWER**: Not applicable.

5.     List the names and addresses of any expert witnesses whom the party proposes to use as a witness at the trial of the case.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**ANSWER**: State Farm, at this time, has not engaged a testifying expert witness.

6.    For each person known to the parties or counsel to be a witness concerning the facts of the case, set forth either a summary sufficient to inform the other party of the important facts known to or observed by such witness, or provide a copy of any written or recorded statements taken from such witnesses.

**ANSWER**: In addition to the Plaintiffs, who are witnesses concerning their allegations and claimed damages,

   a.  **Melvin O. Lamb, Jr.**, has knowledge of the Tahoe Policy and the Lamb Excluded Driver Endorsement.

   b.  **Pam Middleton and Mark Black of State Farm Agent Jack Tankersley's office**, may have knowledge of their communications with State Farm, which communications are reflected in the nonprivileged and non-work product protected portions of State Farm's underwriting records and Claim File.

   c.  **Employees of State Farm's Claims Department, including Lee Shivers and Darren Murdoch**, have knowledge of their communications with State Farm's Underwriting Department, Melvin O. Lamb, III, and others, the handling of Claim No. 40-21B2-49D, and the filing of the DJA, all as reflected in the nonprivileged and non-work product protected portions of State Farm's underwriting records and Claim File.

   d.  **Employees of State Farm's Underwriting Department, including Shay Anderson and Lana Willingham**, have knowledge and information relevant to the claims and defenses of this case as set forth in their recorded statements taken in the DJA;

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

7.　[Defendants only.] If the defendants are improperly identified, give the proper identification and state whether counsel will accept service of an amended summons and pleading reflecting the correct information.

**ANSWER**: State Farm Mutual Automobile Insurance Company has not been improperly identified as a named defendant in this suit.

WHELAN MELLEN & NORRIS, LLC

By: _____
Robert W. Whelan
Bar No. 71174
E-Mail: robbie@whelanmellen.com
M. Kathleen McTighe Mellen
Bar No. 100826
E-Mail: katie@whelanmellen.com
89 Broad Street
Charleston, SC 29401
(843) 998-7099

*Attorneys for Defendant State Farm Mutual Automobile Insurance Company*

September 29, 2023
Charleston, South Carolina

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned Administrative Assistant of the law offices of Whelan Mellen Norris, LLC, attorneys for Defendant State Farm Mutual Automobile Insurance Company, do hereby certify that I have served all counsel in this action with a copy of the pleading(s) hereinbelow specified by mailing a copy of the same by electronic mail only to the following address(es):

Pleading:

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S ANSWERS TO THE "STANDARD INTERROGATORIES" IN PLAINTIFFS' FIRST DISCOVERY REQUESTS TO DEFENDANTS**

Counsel Served:

Justin S. Kahn
Kahn Law Firm, LLP
 jskahn@kahnlawfirm.com

*Attorneys for Plaintiff*

John S. Wilkerson, III
W. Taylor Stanley
Lindsey M. Behnke
Turner Padget Graham & Laney, P.A.
jwilkerson@turnerpadget.com
tstanley@turnerpadget.com
lbehnke@turnerpadget.com

*Attorneys for Defendant Gallivan White & Boyd, P.A.*

_____
Traci Corallo
Administrative Assistant

September 29, 2023

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA    )
                                )    IN THE COURT OF COMMON PLEAS
COUNTY OF CHARLESTON       )    NINTH JUDICIAL CIRCUIT

|  |  |  |
|---|---|---|
| | ) | Case No. 2023-CP-10-01832 |
| Robert C. Workman, Individually and as | ) | |
| Personal Representative of the Estate of | ) | |
| James K. Workman, Kelly Workman | ) | |
| Tick and Matthew T. Workman, | ) | |
| | ) | |
| Plaintiffs, | ) | **STATE FARM MUTUAL** |
| | ) | **AUTOMOBILE INSURANCE** |
| | ) | **COMPANY'S ANSWERS AND** |
| vs. | ) | **RESPONSES TO THE** |
| | ) | **"SUPPLEMENTAL DISCOVERY** |
| State Farm Mutual Automobile Insurance | ) | **REQUESTS" IN PLAINTIFFS' FIRST** |
| Company and Gallivan, White & Boyd, | ) | **DISCOVERY REQUESTS TO** |
| P.A., | ) | **DEFENDANTS** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pursuant to Rules 33 and 34 of the South Carolina Rules of Civil Procedure, Defendant State Farm Mutual Automobile Insurance Company ("State Farm") answers the interrogatories and responds to the requests for production set forth under the "Supplemental Discovery Requests" section of Plaintiffs' First Discovery Requests to Defendants as follows.

**PLAINTIFFS' "SUPPLEMENTAL DISCOVERY REQUESTS"**

1.      **As to each affirmative defense you assert, state a detailed factual basis for said defense and PRODUCE all documents supporting said defense.**

**ANSWER/RESPONSE**: Discovery has only just begun in this case and, therefore, the "detailed factual basis" supporting the affirmative defenses pled by State Farm in its Answer is being developed and discovered. Accordingly, State Farm objects to this interrogatory and request for production as being premature. As for the facts that gave rise to a good faith basis to assert the affirmative defenses pleaded by State Farm in its Answer, State Farm responds as follows.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

As for the affirmative defenses set forth in paragraphs 163, 168, 169, and 172 of State Farm's Answer, State Farm directs Plaintiffs to the facts set forth in its Motion to Dismiss and Reply in Support of Motion to Dismiss filed in Civil Action No. 2:21-cv-02623-MBS (the "DJA"). As for the affirmative defenses set forth in paragraphs 164, 166, 167, 170, 171 of State Farm's Answer, State Farm directs Plaintiffs to their Complaint. Finally, as for the affirmative defense set forth in paragraph 165, State Farm directs Plaintiffs to the fact the Estate of James K. Workman (the "Estate") did not assert a counterclaim against State Farm in the DJA and the Estate's Motion for Sanctions in the DJA was denied.

2.     **PRODUCE all documentation concerning State Farm Claim Number 4021B2-49D with a date of loss of June 12, 2021. This is to include all:**

      a.   **Confirmation of Coverage documents;**

      b.   **Claim file notes, entries, communications and the like;**

      c.   **Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim specialist Lee Shivers;**

      d.   **Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim associate Deborah Grigg;**

      e.   **Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim team manager Darren P Murdoch;**

      f.   **Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Underwriter Jessica Bass;**

      g.   **Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Underwriter Team Manager Shay Anderson;**

      h.   **Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by statefarmclaims@statefarm.com;**

      i.   **Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by agent John P**

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Tankersley, III or Jack Tankersley, Pam Middleton or anyone else in that office.

**j.**   Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Melvin Lamb, Jr.;

**k.**   Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Melvin Lamb, III;

**l.**   Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Valerie Lamb;

**m.**   Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by law firms or attorneys representing people asserting claims;

**n.**   Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by law firms or attorneys representing you

**o.**   Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by each claimant;

**RESPONSE:** As an initial matter, State Farm objects to this request for production as being overly broad, unduly burdensome, and seeking material not relevant to the parties' claims and defenses because it is unlimited in time and scope, with no particular period of time identified in the request seeking "All documentation concerning State Farm Claim Number 4021B2-49D with a date of loss of June 12, 2021." State Farm further objects to items (b), (c), (e), (f), (g), (h), (j), (k), (l), and (n) as seeking attorney-client privileged or work product protected "documentation" that is outside the scope of discovery. Subject to and based on these objections, upon entry of an appropriate Confidentiality Order, State Farm will produce the nonprivileged and non-work product protected portions of its Claim File for Claim No. 40-21B2-49D. The term "Claim File" has a distinct meaning to State Farm. State Farm does not maintain a physical file folder with respect to most claims. Instead, information, including documentation, regarding its claims, including Claim No. 40-21B2-49D, is created, stored, managed, and accessed primarily in and through the Enterprise Claims System ("ECS"), a proprietary web-based system used by State Farm. The "Claim File," as State Farm uses that term, is information and documentation collected from ECS and generated for production

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

outside the ECS environment. At the time of production, State Farm will also serve a privilege log identifying all information and material redacted or otherwise withheld from the Claim File.

       **3.**      **Fully identify each claimant and/or person making a claim related to the June 12, 2021 collision, whether named in the declaratory judgment action or not and to the extent not produced above, PRODUCE all communications with them or their representatives, including agreements to be bound by the declaratory judgment action filed in this matter.**

       **ANSWER/RESPONSE**: State Farm objects to this interrogatory and request for production as seeking information not relevant to Plaintiffs' claims or the defenses in this suit. That said, the nonprivileged and non-work product protected portions of State Farm's Claim File for Claim No. 40-21B2-49D, which is being produced in response to other discovery requests upon entry of an appropriate Confidentiality Order, identifies individuals with claims related to the June 12, 2021 collision and includes communications with them; accordingly, State Farm directs Plaintiffs thereto pursuant to Rule 33(d).

       **4.**      **PRODUCE all of State Farm's documents and documentation concerning the 2004 Chevrolet Tahoe VIN 1GNEK13Z54R235227 driven on June 12, 2021. This includes but is not limited to State Farm insurance policies: 632 3189-B07-40; 632 3189-B07-40A, and 632 3189-B07-40B. This production request includes producing the below listed items in addition to the complete audit trail, including but not limited to identifying who logged into the system, entries made, dates and times thereof, who made said entries, additions, or deletions, who reviewed and/or made said entries and/or changes, etc.**

           **a.**   **Claims Files;**
           **b.**   **Underwriting Files;**
           **c.**   **Entries in computer systems (including Rumba, Enterprise and ECS) and identify who made the entries and when such entries were made;**
           **d.**   **Emails;**

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

e.   **Texts;**

f.   **Notes;**

g.   **Faxes;**

h.   **Declaration Pages;**

i.   **Requests to modify, alter, change, create, etc. the declarations pages;**

j.   **Requests to modify, alter, change, create, etc. the policy(s);**

k.   **Responses to any requests to modify, alter, change, create, etc. the declarations pages;**

1.   **Responses to any requests to modify, alter, change, create, etc. the policy declarations;**

m.   **Auto Renewal;**

n.   **Balance Due Notice;**

o.   **Policy Master Record;**

p.   **Suspensions;**

q.   **Reinstatements;**

r.   **Cancellations;**

s.   **Underwriting documents;**

t.   **Approvals; and**

u.   **Service Requests made whether to the Complex Unit or otherwise.**

**RESPONSE**: State Farm objects to this request for production as vague, ambiguous, overly broad, unduly burdensome, unnecessarily duplicative, and seeking information not relevant to any party's claims or defenses. As an example, Plaintiffs' request for the identity of every person "who logged into the system" for apparently any purpose over an unidentified period of time, "Approvals," the meaning of which is unknown, "Entries in computer systems," regardless of the nature is incredibly overbroad, onerous in nature, and seeks information which is not relevant, much less pertinent or necessary to the adjudication of this action. and unduly burdensome. Subject to and based on these objections, upon entry of an appropriate Confidentiality Order, State Farm will produce nonprivileged and non-work product protected portions of its Claim File for Claim No. 40-21B2-49D; nonprivileged and non-work product protected underwriting information and documents

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(generally referred to by State Farm in these responses as "underwriting records") relevant to the policy insuring Melvin O. Lamb, Jr.'s 2004 Tahoe (the "Tahoe Policy") and the excluded driver endorsement signed and accepted by Melvin O. Lamb, Jr. as part of the Tahoe Policy, which endorsement sets forth that his son, Melvin O. Lamb, III ("Lamb III"), would not drive the Tahoe and no coverage would be afforded if Lamb III was driving the Tahoe (the "Lamb Excluded Driver Endorsement"); and a privilege log describing redactions made or items withheld from the Claim File or underwriting records based on the attorney-client privilege or work product doctrine. With respect to the production of underwriting records upon entry of a Confidentiality Order, just as State Farm does not maintain a physical file folder with respect to most claims, it does not maintain a physical file folder with respect to most policies. Instead, underwriting information and documents are generally created, stored, managed, and accessed electronically in multiple locations.

   5.     **Fully identify each person who was involved in creating the Declarations Page that states "Prepared Jul 14 2021" attached as Exhibit A to the Complaint in Civil Action 2:21-cv-2623-MBS and as to each person, PRODUCE all documentation related to creating said document, including the requests to create and fully explain the reasons said Declarations Page was created.**

   **ANSWER/RESPONSE**: State Farm's underwriting system (not a particular person) prepared the Tahoe Policy's Declaration Page that was included with Exhibit A to the Complaint filed in the DJA after Lana Willingham, a Complex Underwriting Service Assistant in State Farm's underwriting department, handled, on or around July 13, 2021, a service request to process an excluded driver endorsement on the Tahoe Policy. The nonprivileged and non-work product protected underwriting records State Farm is producing in response to Request No. 4 upon entry of a

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Confidentiality Order reflect, among other things, the service request entered by Karina Bevis, identified by her alias MST4, which Lana Willingham handled.

6.     **PRODUCE all documents, emails and the attachments reviewed by or referenced by Shay Anderson in her deposition of December 14, 2021. This includes but is not limited to those:**

    a.     **Involving Jessica Bass as Referenced on pp. 16-17;**

    b.     **Involving Karen Bond as Referenced on pp. 16-17;**

    c.     **Involving any actuary or actuarial as referenced on pp. 31-33, 35-36, 38-39;**

    d.     **Involving Jennifer Johnsen, Esq.;**

    e.     **The unknown person referenced on p. 59;**

    f.     **Involving the SERFF Tracking Number SFMA-126372492; and**

    g.     **Form filings;**

**RESPONSE**: State Farm objects to this request for production as seeking information not relevant to the claims or defenses in this suit. According to the deposition transcript, Ms. Anderson referenced in her deposition testimony emails she sent and documents she reviewed for purposes of preparing for her deposition taken in the DJA under Rule 30(b)(6) of the Federal Rules of Civil Procedure. Ms. Anderson's preparation for her deposition in the DJA, including emails she sent or documents she reviewed, is of no relevance to the claims or defenses in this suit. Furthermore, Plaintiffs' counsel took the subject deposition, in person, and is in possession of the "documents, emails and the attachments reviewed by . . . Shay Anderson in her deposition of December 14, 2021."

7.     **PRODUCE all records, notes and documents Shay Anderson, Underwriting Team Manager, created, reviewed and/or referred to in her declaration under penalty of perjury dated May 24, 2022 which was filed as Entry No. 81-1 in C.A. No.: 2:21-CV-02623-MBS.**

**RESPONSE**: State Farm objects to this request for production as seeking materials not relevant to the claims or defenses in this suit and protected by the attorney-client privilege and work product doctrine. As alleged in Plaintiffs' Complaint, this lawsuit concerns State Farm's filing of the DJA on August 16, 2021 and actions alleged to have occurred before the filing of the DJA. That said, the nonprivileged and non-work product protected underwriting records being produced in response to other discovery requests upon entry of an appropriate Confidentiality Order evidence facts set forth in Ms. Anderson's May 24, 2022 Declaration.

**8.       PRODUCE all records, notes and documents Lana Willingham created, reviewed and/or referred to in her declaration under penalty of perjury dated May 23, 2022 which was filed as Entry No. 81-4 in C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to the service request to process an excluded driver endorsement.**

**RESPONSE**: State Farm objects to this request for production as seeking materials not relevant to the claims or defenses in this suit and protected by the attorney-client privilege and work product doctrine. As alleged in Plaintiffs' Complaint, this lawsuit concerns State Farm's filing of the DJA on August 16, 2021 and actions alleged to have occurred before the filing of the DJA. That said, the nonprivileged and non-work product protected underwriting records being produced in response to other discovery requests upon entry of an appropriate Confidentiality Order evidence facts set forth in Ms. Willingham's May 23, 2022 Declaration.

**9.       PRODUCE all records, notes and documents Darren Murdoch created, reviewed and/or referred to in his declaration under penalty of perjury dated May 23, 2022 which was filed as Entry No. 81-3 in C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to paragraphs 12-16.**

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**RESPONSE**: State Farm objects to this request for production as seeking materials not relevant to the claims or defenses in this suit and protected by the attorney-client privilege and work product doctrine. As alleged in Plaintiffs' Complaint, this lawsuit concerns State Farm's filing of the DJA on August 16, 2021 and actions alleged to have occurred before the filing of the DJA. That said, the nonprivileged and non-work product protected Claim File being produced in response to other discovery requests upon entry of an appropriate Confidentiality Order evidence facts set forth in Mr. Murdoch's May 23, 2022 Declaration.

10.    **PRODUCE each endorsement and declarations page created by State Farm from the inception of any coverage through the present for the Tahoe at issue referenced in the Complaint filed in Civil Action 2:21-cv-2623-MBS and all documentation supporting the reasons said documents were created.**

**RESPONSE**: While there were endorsements that formed part of the Tahoe Policy, State Farm did not create endorsements for the Tahoe Policy. The Declarations Pages prepared by State Farm on February 21, 2020, September 8, 2020, and July 14, 2021 for the Tahoe Policy were produced to the Estate in the DJA and, therefore, Plaintiffs' counsel is already in possession of the requested documents. That said, these Declarations Pages will be included in the nonprivileged and non-work product protected underwriting records being produced in response to other discovery requests upon entry of an appropriate Confidentiality Order.

11.    **PRODUCE State Farm policies, processes and/or procedures for driver exclusion agreements related to keeping or retaining acceptable policyholders while excluding certain drivers in the household exclusions that were in effect from January 1, 2020 through the present.**

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**RESPONSE**: Upon entry of an appropriate Confidentiality Order, State Farm will produce the following, which are the versions of relevant portions of the Auto Process Guide in effect on or between February 13, 2020, the date State Farm's underwriting department received the application for the Tahoe Policy, and July 14, 2021, the date by which Lana Willingham handled the service request concerning the Lamb Excluded Driver Endorsement and a new Declarations Page to the Tahoe Policy was prepared:

| Auto Process Guide | Version Date |
|---|---|
| PG 140-E04; ENTERING ENDORSEMENTS AND EXCEPTIONS | 8/29/2019 |
| PG 140-E04; ENTERING ENDORSEMENTS AND EXCEPTIONS | 4/6/2020 |
| PG 140-E04; ENTERING ENDORSEMENTS AND EXCEPTIONS | 6/25/2020 |
| PG 140-E04; ENTERING ENDORSEMENTS AND EXCEPTIONS | 9/3/2020 |
| PG 140-E04; ENTERING ENDORSEMENTS AND EXCEPTIONS | 9/29/2020 |
| PG 140-E04; ENTERING ENDORSEMENTS AND EXCEPTIONS | 10/14/2020 |
| PG 140-E04; ENTERING ENDORSEMENTS AND EXCEPTIONS | 10/20/2020 |
| PG 140-E04; ENTERING ENDORSEMENTS AND EXCEPTIONS | 11/11/2020 |
| PG 140-E04; ENTERING ENDORSEMENTS AND EXCEPTIONS | 11/18/2020 |
| PG 140-E04; ENTERING ENDORSEMENTS AND EXCEPTIONS | 12/24/2020 |
| PG 140-E04; ENTERING ENDORSEMENTS AND EXCEPTIONS | 5/18/2021 |

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | |
|---|---|
| PG 260-D01; DRIVER EXCLUSION AGREEMENT | 2/13/2020 |
| PG 260-D01; DRIVER EXCLUSION AGREEMENT | 6/17/2020 |
| PG 260-D01; DRIVER EXCLUSION AGREEMENT | 7/8/2020 |
| PG 260-D01; DRIVER EXCLUSION AGREEMENT | 7/29/2020 |
| PG 260-D01; DRIVER EXCLUSION AGREEMENT | 12/15/2020 |
| PG 260-D01; DRIVER EXCLUSION AGREEMENT | 2/8/2021 |
| PG 260-D01; DRIVER EXCLUSION AGREEMENT | 3/17/2021 |
| PG 260-D01; DRIVER EXCLUSION AGREEMENT | 5/11/2021 |
| PG 260-D01; DRIVER EXCLUSION AGREEMENT | 6/1/2021 |
| PG 260-D01; DRIVER EXCLUSION AGREEMENT | 6/8/2021 |
| PG 260-D01; DRIVER EXCLUSION AGREEMENT | 6/9/2021 |
| PG 260-D01; DRIVER EXCLUSION AGREEMENT | 6/28/2021 |
| PG 540-D04; DRIVER EXCLUSION SCREEN | 10/1/2019 |
| PG 540-D04; DRIVER EXCLUSION SCREEN | 2/18/2020 |

State Farm objects to the remainder of this request for production which seeks production of policies, processes, and procedures for driver exclusion agreements with effective dates that end prior to February 13, 2021 and start after July 14, 2021 as being overly broad and not relevant to the claims or defenses in this suit.

**12.    PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval or that the South Carolina Department of Insurance approved the form 6023DC attached to the Complaint filed in the declaratory judgment civil action number 2:21-cv-2623-MBS. If no such documentation exists, please state that.**

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**RESPONSE**: State Farm submitted form 6023DC to the South Carolina Department of Insurance ("SCDOI") for approval for two types of insurance, private passenger auto and commercial auto. The submissions were made under filing numbers SFMA-126372492 and SFMA-126372966, respectively, and both were approved by the SCDOI in April 2010. At some point after implementation of 6023DC, State Farm determined it would be beneficial to State Farm and its policyholders to include identifying information on the form for tracking purposes. Therefore, lines for policyholder name; policy #; and effective date of the form were placed onto the top portion of 6023DC. Included in Exhibit A to the Complaint filed in the DJA is the Lamb Excluded Driver Endorsement, which is an example of the form with those three lines of identifying information added. Because the original approved contents of 6023DC were not changed in any way by the addition of the three lines for identifying information, State Farm's belief was that these administrative changes did not require a reapproval of 6023DC and, therefore, reapproval was not sought.

13.     **PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval and/or that the South Carolina Department of Insurance approved the form 6023DC before January 1, 2022.**

**RESPONSE**: State Farm produces herewith documentation showing State Farm, in November 2009, submitted to the SCDOI for approval form 6023DC for private passenger auto and commercial auto insurance, and that the form was approved for both types of insurance in April 2010. State Farm objects to this request to the extent it seeks any further documentation as overly broad, unreasonably duplicative, unduly burdensome, and potentially invading protections afforded by the attorney-client privilege.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

14.     **PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval or that the South Carolina Department of Insurance approved the form 6023DC after January 1, 2022.**

**RESPONSE**: State Farm objects to this request for production as seeking information not relevant to the parties' claims and defenses in this suit. The alleged actions and inactions on which Plaintiffs' claims are based occurred, if ever, before January 1, 2022.

15.     **To the extent not already produced, PRODUCE State Farm's complete file and documentation related to submission and approval by the South Carolina Department of Insurance for the Form 6023DC Driver Exclusion attached to the Complaint in Civil Action 2:21-cv-2623-MBS. This includes letters sent by State Farm to the South Carolina Department of Insurance as well as communications received.**

**RESPONSE**: State Farm submitted form 6023DC to the SCDOI for approval for two types of insurance, private passenger auto and commercial auto. The submissions were made under filing numbers SFMA-126372492 and SFMA-126372966, respectively, and both were approved by the SCDOI in April 2010. At some point after implementation of 6023DC, State Farm determined it would be beneficial to State Farm and its policyholders to include identifying information on the form for tracking purposes. Therefore, lines for policyholder name; policy #; and effective date of the form were placed onto the top portion of 6023DC. Included in Exhibit A to the Complaint filed in the DJA is the Lamb Excluded Driver Endorsement, which is an example of the form with those three lines of identifying information added. Because the original approved contents of 6023DC were not changed in any way by the addition of the three lines for identifying information, State Farm's belief was that these administrative changes did not require a reapproval of 6023DC and, therefore, reapproval was not sought. To the extent this request seeks documentation concerning

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

State Farm's submission and the SCDOI's approval of form 6023DC without the three lines of identifying information, then State Farm directs Plaintiffs to the response and objections to Request No. 13, above.

**16.     PRODUCE each communication sent by State Farm denying claims based upon the State Farm South Carolina 6023DC Driver Exclusion Form for the time period of May 1, 2019 through May 1, 2022. This is not limited to Plaintiffs in this case.**

**RESPONSE**: State Farm objects to this request for production as seeking material not relevant to any party's claims or defenses in this case and unduly burdensome. Communications State Farm sent non-parties between May 1, 2019 and May 1, 2022 denying claims based on a particular endorsement have no bearing on any issue in dispute, and have no tendency to make the existence of any material fact more or less probable. State Farm further objects to this request as unjustifiably seeking confidential, personal information of and concerning its insureds and third-parties, none of whom are parties to the case.

**17.     As to the Tahoe at issue, PRODUCE each certified policy record which underwriter Jessica Bass or anyone else at State Farm created, including but not limited to those dated 08/05/2021 and 11/22/2021 and PRODUCE the requests and responses related to generating each certified policy record.**

**RESPONSE**: The Certified Policy Records dated August 5, 2021 and November 22, 2021 are the only Certified Policy Records created by State Farm on the Tahoe Policy for the June 12, 2021 Date of Loss for Claim No. 40-21B2-49D. These Certified Policy Records were produced to the Estate in the DJA and, therefore, Plaintiffs' counsel is already in possession of the requested documents. These Certified Policy Records are also included in the nonprivileged and non-work product protected underwriting records and Claim File which State Farm is producing in response

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

to other discovery requests upon entry of an appropriate Confidentiality Order. Produced herewith are Lee Shivers' request for a Certified Policy Record which led to the preparation of the August 5, 2021 Certified Policy Record and underwriting's response to the same, as well as Shay Anderson's request for a Certified Policy Record which led to the preparation of the November 22, 2021 Certified Policy Record and underwriting's response to the same.

**18.    PRODUCE all documents, including the files, notes, computer entries, who made the entries, the audit trail and the like for each computer system of State Farm showing the creation, storage, management, access, including who accessed a web-based system called ECS related to the claims involving Mr. Lamb and Plaintiffs.**

**RESPONSE**: State Farm objects to the portion of this request which seeks production of "the audit trail and the like for each computer system of State Farm showing the creation, storage, management, access, including who accessed a web-based system called ECS related to the claims involving Mr. Lamb and Plaintiffs" as being vague, ambiguous, overbroad, and irrelevant. State Farm further objects to this request for production to the extent it seeks disclosure of material protected by the attorney-client privilege or work product doctrine. In reliance on these objections, State Farm will produce the nonprivileged and non-work product protected portions of its Claim File and, at the time of production, will serve a privilege log identifying the redactions and material withheld based on attorney-client privilege and the work product doctrine.

**19.    PRODUCE all State Farm's policies, procedures, guidelines and/or rules that were to be followed when creating and/or modifying a declaration page such as the one at issue in this case for the time period of January 1, 2020 through the present.**

**RESPONSE**: Assuming the Declarations Page "at issue in this case" is the Declarations Page included in Exhibit A to the Complaint filed in the DJA, State Farm directs Plaintiffs to PG

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

140-E04, Entering Endorsements and Exceptions, dated 5/18/2021 and in effect on July 14, 2021, the date the Declarations Page "at issue in this case" was prepared, which will be produced upon entry of an appropriate Confidentiality Order. State Farm objects to the remainder of this request for production which seeks production of policies, processes, and procedures not in effect on July 14, 2021, as overly broad and seeking information not relevant to the parties' claims and defenses.

**20.     PRODUCE the employment files for each State Farm employee, including those listed below, who was involved with the changes made to the declarations page at issue, including a signed copy of their completed Code of Conduct form to be completed annually. (The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest.) This request to produce also includes write ups for violations of State Farm policies.**

          **a.     Jessica Bass**

          **b.     Lee Shivers**

          **c.     Shay Anderson**

          **d.     Darren P Murdoch**

          **e.     Lana Willingham**

**RESPONSE**: State Farm objects to the request for production of "the employment files," "completed Code of Conduct form[s]," and "write ups for violations of State Farm policies" "for each State Farm employee … who was involved with the changes made to the declarations page at issue," whether such employee is specifically listed or unidentified, as being overly broad in time and subject matter, irrelevant, and unjustifiably seeking confidential, personal information of employees. Furthermore, as best State Farm can understand this request and Plaintiffs' allegations, Jessica Bass,

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Lee Shivers, Shay Anderson and Darren P. Murdoch were not "involved with the changes made to the declarations page at issue." As explained in the DJA and in these discovery responses, State Farm's underwriting system (not a particular person) prepared the Tahoe Policy's Declaration Page that was included in Exhibit A to the Complaint filed in the DJA after Lana Willingham, a Complex Underwriting Service Assistant in State Farm's underwriting department, handled on July 13, 2021, a service request to process an excluded driver endorsement on the Tahoe Policy.

**21.** **PRODUCE State Farm's Code of Conduct training course materials and videos as described in State Farm's Doing the Right Thing Code of Conduct, p. 28, in part reproduced below.**

**RESPONSE**: State Farm objects to this request as being overly broad in that it seeks the production of all State Farm's confidential, proprietary "Code of Conduct training course materials and videos," regardless of the year in which they were used, and as seeking irrelevant material. State Farm's confidential "Code of Conduct training course materials and videos" have no bearing on any issue in dispute and have no tendency to make the existence of any fact of consequence more or less probable.

**22.** **As to each expert you propose to use as a witness at the trial of the case, PRODUCE and/or state:**

      **a.** **a complete statement of all opinions the witness will express and the basis and reasons for them;**

      **b.** **the facts or data considered by the witness in forming them;**

      **c.** **any exhibits that will be used to summarize or support them;**

      **d.** **the witness's qualifications, including a list of all publications authored in the previous 10 years;**

      **e.** **a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and**

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

f.   a statement of the compensation to be paid for the study and testimony in the case.

**RESPONSE**: State Farm has not yet engaged a testifying expert but, if one is engaged, State Farm objects to item (a) because expert reports are not required in state court and State Farm need not produce or state every opinion a testifying expert will express along with the basis and reasons for each such opinion, all of which can and should be obtained through a deposition. If State Farm engages a testifying expert, State Farm also objects to items (d), (e), and (f) to the extent the information requested does not already exist in a tangible form.

**23.**     **To the extent not already produced, PRODUCE Defendant State Farm's complete claims file relating to the claims made as a result of the collision at issue in this action regardless of who submitted a claim, whether maintained in defendant's field office, regional office, home office, or any other office, including without limitation:**

a.   **All letters, memoranda, and other forms of written or computerized communication to or from any employee of defendant relating in any way to the processing of the claim at issue in this action;**

b.   **All written or computerized records of any oral communication, whether in person or by telephone, to or from any employee of defendant relating in any way to the processing of the claim at issue in this action;**

c.   **All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any claimant relating in any way to the collision at issue in this action;**

d.   **All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any third party relating in any way to the claim at issue in this action;**

e.   **All written or computerized records of any investigation conducted in connection with the claim at issue in this action;**

f.   **All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, to or from any employee of defendant relating in any way to the decision to deny claims asserted in the collision;**

18

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

  **g. All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any third party relating in any way to the decision to deny Plaintiffs claims;**

  **h. All other written or computerized documents pertaining to the claim at issue in this litigation; and**

  **i. The file folders in which the preceding documents are kept.**

**RESPONSE**: State Farm objects to this request for "State Farm's complete claims file … including without limitation" items (a) through (i) as overly broad, irrelevant, and potentially unduly burdensome because items (a) through (i) go well beyond the material included in a "Claim File" generated for production outside of ECS. As explained above, the term "Claim File" has a distinct meaning to State Farm. State Farm does not maintain a physical file folder with respect to most claims. Instead, information, including documentation, regarding its claims, including Claim No. 40-21B2-49D, is created, stored, managed, and accessed primarily in and through ECS, a proprietary web-based system used by State Farm. The "Claim File," therefore, is information and documentation collected from ECS and generated for production outside the ECS environment. Subject to and based on these objections and explanations, State Farm, upon entry of an appropriate Confidentiality Order, will produce the nonprivileged and non-work product protected portions of its Claim File for Claim No. 40-21B2-49D.

  **24. PRODUCE State Farm's complete underwriting files referring or relating in any way to the policy at issue in this action, including without limitation:**

  **a. All letters, memoranda, and other forms of written or computerized communication and written or computerized records of oral communications, whether in person or by telephone, referring or relating in any way to the issuance of the policy at issue in this action; and**

  **b. The file folders in which the preceding documents are kept.**

**RESPONSE**: As explained above, just as State Farm does not maintain a physical file folder with respect to most claims, it does not maintain a physical file folder with respect to most policies.

Instead, underwriting information and documents are generally created, stored, managed, and accessed electronically in multiple locations. Upon entry of an appropriate Confidentiality Order, State Farm will produce the nonprivileged, non-work product protected underwriting records relevant to the Tahoe Policy and the Lamb Excluded Driver Endorsement. To the extent this request seeks something more, State Farm objects on grounds of overbreadth, relevance, and potential undue burden.

**25.     PRODUCE All claims manuals, memoranda, directives, letters, and other forms of written or computerized communication directed to claims personnel, claims managers, claims supervisors, or any other person acting on behalf of State Farm in the handling of claims that refer or relate in any way to the handling of claims generally or to the handling of claims of like character to the claim at issue in this action, including without limitation:**

>      a.     **the documents reflecting State Farm's claim settlement policies as they existed at the time State Farm denied the claims at issue in this action; and**
>      b.     **the documents reflecting any subsequent changes of policy.**

 **RESPONSE**: State Farm objects to this request for production, which is unlimited in time and scope and seeks, among other things, all "written … communication" that "refer or relate in any way to the handling of claims generally" and was "directed to claims personnel, claims managers, claims supervisors, or any other person acting on behalf of State Farm in the handling of claims," as overbroad, unduly burdensome, and seeking information not relevant to the claims or defenses in this action as well as information protected from discovery by attorney client privilege or the work product doctrine.

Based on and subject to these objections, State Farm produces herewith the following sections of its Auto Claim Manual in effect on or between June 12, 2021, the date of loss on Claim No. 40-21B2-49D, and August 16, 2021, the date State Farm filed the DJA:

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| Auto Claim Manual | Version Date |
|---|---|
| Claims with Excess Exposure | 12/18/2019 |
| Our Commitment to Our Policyholders | 9/16/2015 |
| Preface | 12/11/2019 |

Upon entry of an appropriate Confidentiality Order, State Farm will also produce the following confidential sections of its Auto Claim Manual in effect on or between June 12, 2021, the date of loss on Claim No. 40-21B2-49D, and August 16, 2021, the date State Farm filed the DJA:

| Auto Claim Manual | Version Date |
|---|---|
| Property and Casualty Claims Reporting | 6/2/2021 |
| Property and Casualty Claims Reporting | 6/23/2021 |

26.    **As to the statement "State Farm has investigated this matter and believes, based upon the Policy exclusion referenced herein and applicable South Carolina law, it has no duty to defend or indemnify Father or Son from any claim arising out of the accident described herein... "in paragraph 27 of the Complaint in Civil Action 2:21-cv-2623-MBS filed August 16, 2021:**

    a.  **PRODUCE all documents supporting the truth of the statement that was in the possession, custody or control of State Farm as of August 16, 2021;**

    b.  **PRODUCE all documents supporting the truth of the statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and**

    c.  **FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.**

**RESPONSE:** State Farm directs Plaintiffs to the Lamb Excluded Driver Endorsement, which was signed and accepted by Melvin O. Lamb, Jr., the named insured of the Tahoe Policy. Furthermore, State Farm directs Plaintiffs to the nonprivileged and non-work product protected portions of the Claim File for Claim No. 40-21B2-49D which will be produced upon entry of an

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

appropriate Confidentiality Order and reflect State Farm's investigation of the Lamb Excluded Driver Endorsement.

27.    **As to the statement "At the time of the subject accident, Son had been an excluded driver from the Policy for over a year" made in paragraph 31 of the Complaint filed August 16, 2021:**

      a.  **PRODUCE all documents supporting the above statement that was in the possession, custody or control of State Farm defendant as of August 16, 2021;**

      b.  **PRODUCE all documents supporting the above statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and**

      c.  **FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.**

**RESPONSE:** State Farm directs Plaintiffs to the Lamb Excluded Driver Endorsement, which was signed and accepted by Melvin O. Lamb, Jr., the named insured of the Tahoe Policy, more than a year before the June 12, 2021 accident.

28.    **As to the statement "Pursuant to S.C. Code Ann. §38-77-340, the exclusion was signed by Father..." made in paragraph 19 of the Complaint filed August 16, 2021:**

      a.  **PRODUCE all documents supporting the above statement that was in the possession, custody or control of State Farm defendant as of August 16, 2021;**

      b.  **PRODUCE all documents supporting the above statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and**

      c.  **FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.**

**RESPONSE:** State Farm directs Plaintiffs to the Lamb Excluded Driver Endorsement, which was signed and accepted by Melvin O. Lamb, Jr., the named insured of the Tahoe Policy and the "Father" referenced in paragraph 19 of the Complaint filed in the DJA.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

29.    **PRODUCE all communications between Shay Anderson, State Farm Underwriting Team Manager, and Gallivan, White & Boyd, P.A. which relate to C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to reference to SERFF tracking number(s) and documents.**

**RESPONSE**: State Farm objects to this request as seeking attorney client privileged communications and protected work product. For purposes of preparing a privilege log, State Farm is conducting a search for emails between Shay Anderson and Gallivan, White & Boyd, P.A. that reference Claim No. 40-21B2-49D and will serve a privilege log of the emails responsive to this request that are being withheld on the grounds of attorney client privilege or the work product doctrine.

30.    **PRODUCE all documentation, including records, State Farm files and other materials created and/or reviewed showing the investigation and research performed by Gallivan White & Boyd, P.A. prior to filing the Complaint in C.A. No.: 2:21-CV-02623-MBS that supported allegations and claims asserted in the lawsuit. This includes drafts of complaints.**

**RESPONSE**: State Farm objects to this request as seeking attorney client privileged communications and protected work product, including opinion work product belonging to Gallivan, White & Boyd, P.A.

31.    **PRODUCE all documentation, including records, State Farm files and other materials created and/or reviewed showing the investigation and research performed by Gallivan White & Boyd, P.A. after filing the Complaint in C.A. No.: 2:21-CV-02623-MBS that supported allegations and claims asserted in the lawsuit.**

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**RESPONSE**: State Farm objects to this request on grounds of relevance, given the claims asserted by Plaintiffs arise from State Farm's filing of the DJA and its actions leading up thereto. State Farm also objects to this request as seeking attorney client privileged communications and protected work product, including opinion work product belonging to Gallivan, White & Boyd, P.A.

**32.    As to the lawsuit filed C.A. No.: 2:21-CV-02623-MBS, PRODUCE all documents State Farm provided to Gallivan, White & Boyd, P.A. before the law firm filed the Complaint in Civil Action 2:21-cv-2623-MBS. This includes emails, texts, files shared via a service, billing record modifications and/or changes, etc.**

**RESPONSE**: Prior to the date the DJA was filed, State Farm provided Gallivan, White & Boyd, P.A. the Lamb Excluded Driver Endorsement, the motor vehicle accident report for the June 12, 2021 collision, the August 5, 2021 Certified Policy Record, and the Claim File as generated on July 22, 2021. Plaintiffs' counsel is in possession of the first three items, and the nonprivileged and non-work product portions of the Claim File as generated on July 22, 2021 are included in the Claim File which State Farm is producing in response to other discovery requests upon entry of an appropriate Confidentiality Order. To the extent this request seeks State Farm's communications, including emails, with Gallivan, White & Boyd, P.A., State Farm objects to the request as seeking attorney-client privileged and work product protected communications which are outside the scope of discovery. For purposes of preparing a privilege log, State Farm is conducting a search for emails between it and Gallivan, White & Boyd, P.A. that reference Claim No. 40-21B2-49D and will serve a privilege log of the emails responsive to this request that are being withheld on the grounds of attorney client privilege or the work product doctrine.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

33.    **PRODUCE all documents State Farm provided to Gallivan, White & Boyd, P.A. after the Complaint in Civil Action 2:21-cv-2623-MBS was filed. This includes emails, texts, files shared via a service, billing record modifications and/or changes, etc.**

RESPONSE: State Farm objects to this request on grounds of relevance, given the claims asserted by Plaintiffs arise from State Farm's filing of the DJA and its actions leading up thereto. To the extent this request seeks State Farm's communications, including emails, with Gallivan, White & Boyd, P.A., State Farm further objects to the request as seeking attorney-client privileged and work product protected communications which are outside the scope of discovery.

34.    **PRODUCE all documents Gallivan, White & Boyd, P.A. provided to State Farm while it represented State Farm in the matter which is the subject of Civil Action 2:21-cv-2623-MBS. This includes retainer agreements, agreements to represent State Farm, emails, texts, files shared via a service, billing records, etc.**

RESPONSE: State Farm objects to this request as being overly broad and seeking information not relevant to the claims or defenses in this suit. State Farm further objects to this request as seeking attorney-client privileged and work product protected communications and materials which are outside the scope of discovery.

35.    **As to each of the standard interrogatories above as well as other discovery requests, PRODUCE the documents that are referenced or referred to in answering said interrogatories.**

RESPONSE: All documents identified in State Farm's discovery responses, except for those identified in connection with State Farm's objections, have been or will be produced as otherwise set forth herein.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

36.     **PRODUCE each document or other evidence you intend to introduce at the trial of this case.**

**RESPONSE**: State Farm objects to this request to the extent it seeks, through a request for production, counsel's trial strategy, which is undiscoverable opinion work product. State Farm further objects to this request to the extent it seeks documents or other evidence that would be introduced at trial solely for impeachment purposes and has not otherwise been requested or produced through discovery. State Farm may introduce at the trial of this case any document produced by the parties or otherwise produced in discovery in this case, to the extent the document is relevant and admissible.

37.     **Fully identify the names of the individuals who assisted in responding to these discovery requests.**

**ANSWER:** State Farm objects to this interrogatory as overly broad and seeking information not relevant to the parties' claims or defenses.

WHELAN MELLEN & NORRIS, LLC

By: _____
     Robert W. Whelan
     Bar No. 71174
     E-Mail: robbie@whelanmellen.com
     M. Kathleen McTighe Mellen
     Bar No. 100826
     E-Mail: katie@whelanmellen.com
     89 Broad Street
     Charleston, SC 29401
     (843) 998-7099

*Attorneys for Defendant State Farm Mutual Automobile Insurance Company*

September 29, 2023
Charleston, South Carolina

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## CERTIFICATE OF SERVICE

I, the undersigned Administrative Assistant of the law offices of Whelan Mellen Norris, LLC, attorneys for Defendant State Farm Mutual Automobile Insurance Company, do hereby certify that I have served all counsel in this action with a copy of the pleading(s) hereinbelow specified by mailing a copy of the same by electronic mail only to the following address(es):

Pleading:

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S ANSWERS AND RESPONSES TO THE "SUPPLEMENTAL DISCOVERY REQUESTS" IN PLAINTIFFS' FIRST DISCOVERY REQUESTS TO DEFENDANTS**

Counsel Served:

Justin S. Kahn
Kahn Law Firm, LLP
 jskahn@kahnlawfirm.com

*Attorneys for Plaintiff*

John S. Wilkerson, III
W. Taylor Stanley
Lindsey M. Behnke
Turner Padget Graham & Laney, P.A.
jwilkerson@turnerpadget.com
tstanley@turnerpadget.com
lbehnke@turnerpadget.com

*Attorneys for Defendant Gallivan White & Boyd, P.A.*

_____
Traci Corallo
Administrative Assistant

September 29, 2023

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA     )
                            )     IN THE COURT OF COMMON PLEAS
COUNTY OF CHARLESTON        )     NINTH JUDICIAL CIRCUIT

                                   )     Case No. 2023-CP-10-01832
Robert C. Workman, Individually and as   )
Personal Representative of the Estate of )
James K. Workman, Kelly Workman          )
Tick and Matthew T. Workman,             )
                                          )
                         Plaintiffs,      )     **STATE FARM MUTUAL**
                                          )     **AUTOMOBILE INSURANCE**
          vs.                             )     **COMPANY'S PRIVILEGE LOG**
                                          )
State Farm Mutual Automobile Insurance    )
Company and Gallivan, White & Boyd,       )
P.A.,                                     )
                                          )
                         Defendants.      )
_____ )

| Privilege Log No. | Bates | Description | Designation |
|---|---|---|---|
| 1 | WORKMAN00000007PROD | Redaction of portion of Shay Anderson's email concerning communications with State Farm's counsel, GWB, in the DJA | Work Product |

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

WHELAN MELLEN & NORRIS, LLC

By:_____

Robert W. Whelan
Bar No. 71174
E-Mail: robbie@whelanmellen.com
M. Kathleen McTighe Mellen
Bar No. 100826
E-Mail: katie@whelanmellen.com
89 Broad Street
Charleston, SC 29401
(843) 998-7099

*Attorneys for Defendant State Farm Mutual Automobile
Insurance Company*

September 29, 2023
Charleston, South Carolina

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# KAHN LAW FIRM, LLP
## 562 SAVANNAH HIGHWAY
## CHARLESTON, SC 29407
### WWW.KAHNLAWFIRM.COM

ELLIS I. KAHN*^
JUSTIN S. KAHN*^+
WES B. ALLISON +

MAILING
P.O. BOX 31397
CHARLESTON, SC 29417-1397
PHONE 843.577.2128
E-MAIL JSKAHN@KAHNLAWFIRM.COM

October 10, 2023

M. Kathleen ("Katie") McTighe Mellen, Esq.
WHELAN MELLEN & NORRIS, LLC
89 Broad Street
Charleston, SC, 29401
Katie@whelanmellen.com

      Re:   Workman v. State Farm and GWB
           Civil Action No. 2023-CP-10-01832

Katie:

Thank you for providing me with a counter to the proposed confidentiality order. I will review it. As to my thoughts about the failure of your client to provide proper discovery and responses, I continue to believe that the responses are inadequate and in violation of Judge Young's memo related to boilerplate objections.

It is obvious that your client has failed to identify witnesses who should have been listed. The failure to do so is inexplicable. Your client provides generic and boilerplate objections related to protections which do not apply and fails to provide a meaningful and complete privilege log. Rule 26(b)(5)(A) requires that "the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." That has not been done.

In part, this lawsuit is based on claims that State Farm engaged in the crime of forgery and other conduct that is not protected by any such boilerplate objection or protection.

As to the one item listed in the privilege log Workman 7 Prod, this does not qualify for many reasons including the email does not appear to be sent to any

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

attorney identified in any discovery. Further, the part apparently redacted appears on Workman 6.

Separately, as to the materials that were produced, many pages have been cut off or are of poor quality to read. See e.g. Workman Production numbers 11-14, 25 - 35, 213, 225 – 227, 446, 454 – 456.

I did speak with Robbie late Friday and have not heard back about failure to comply with discovery in this matter as stated in my email of Oct. 6.

I know of no rule which allows one to refrain from producing a privilege log until a confidentiality order is issued. If the materials are not produced immediately, I will be filing a motion to compel.

Items at issue include items specifically authorized by the South Carolina Supreme Court to be asked in every case.
Standard Interrogatory
Nos. 1 and 6 – the list of witness is obviously incomplete.
No. 2 – your withhold and fail to identify
    "the nonprivileged and non-work product protected **underwriting records** of State Farm"
    "the nonprivileged and non- work product protected portions of State Farm's "Claim File" for Claim No. 40-21B2-49D" and then claim that State Farm has some special system that has a distinct meaning to State Farm and failure to produce the materials.

**Supplemental Discovery**
No. 1 – There is no proper objection to a question as being premature. Either your client currently has facts and documents to support its defenses, or it does not and can supplement later. To the extent you object, remove it and respond.

Nos. 2, 23 and 24 requesting production of documentation related to a specific claim number with a specific loss date, and claims file at issue, you provide a boilerplate objection that the request is "overly broad, unduly burdensome, and seeking material not relevant to the parties' claims and defenses because it is unlimited in time and scope, with no particular period of time identified in the request…" First, it is per se not limited in time and scope. Second, relevant to the parties' claims and defenses is not the proper scope of discovery in state court.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Third, the generic and unsupported claim is made that the request is "seeking attorney-client privileged or work product protected "documentation" that is outside the scope of discovery…" Also, you claim "will produce the nonprivileged and non-work product protected portions of its Claim File for Claim No. 40-21B2-49D. The term "Claim File" has a distinct meaning to State Farm. State Farm does not maintain a physical file folder with respect to most claims …" There is an utter failure to support this contention and no basis in law is cited. Your client also makes a statement that is not recognized by the discovery process that "At the time of production, State Farm will also serve a privilege log identifying all information and material redacted or otherwise withheld from the Claim File."

No. 3 relates to identify other people making claims related to the collision and to produce communications with them or their representatives. State Farm makes another boilerplate objection.

No. 4 and No. 18 relates to the Tahoe and claims at issue, the policies and people involved in changing the documents related to it and an audit trail of changes made. Shay Anderson specifically testified on behalf of State Farm that there was an audit trail in her deposition. See e.g. pp. 96-97. The discovery request properly requests the documents related to this vehicle. Your client's generic and boilerplate objections include the improper statement that "this request for production is vague, ambiguous, overly broad, unduly burdensome, unnecessarily duplicative, and seeking information not relevant to any party's claims or defenses." The fact that you claim something is "incredibly overbroad" does not explain anything. There is zero need to wait for a confidentiality order to have your client decide what it wants to produce. It fails to define what "nonprivileged and non-work product protected underwriting information and documents" and "a privilege log describing redactions made or items withheld from the Claim File or underwriting records based on the attorney-client privilege or work product doctrine" could possibly exist. Is State Farm really asserting that some lawyer logged into the system and entered work product related to a particular policy issued? If so, your client has failed to identify who that attorney is or how it could possibly be work product. The fact that your client does not maintain a physical file is a non-sensical statement. The assertion made is "it does not maintain a physical file folder with respect to most policies. Instead, underwriting information and documents are generally created, stored, managed, and accessed electronically in multiple locations." The request does not relate to "most policies" but rather the specific one at issue that it forged to file a lawsuit.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

No. 5 relates to who participated in the forged and bogus declarations page that your client used in a lawsuit. The request properly asks to identify who participated in this and to produce the documentation related to it. This is very much at issue in this case despite your contention otherwise. Further, the responses can certainly be relevant to the subject matter involved in the pending litigation. *See* Rule 26(b)(1) Scope of Discovery. The various boilerplate objections are improper for the same reasons explained above. Your failure to identify the people involved and instead blame "State Farm's underwriting system" is nonsensical. Does State Farm have some AI that controls the improper changing of documents? Where is the service request you reference and who made it? Your suggestion that we must wait for "the nonprivileged and non-work product protected underwriting records being produced in response to other discovery requests upon entry of an appropriate Confidentiality Order evidence facts set forth in Ms. Anderson's May 24, 2022 Declaration" is not proper.

Nos. 6-9 properly request the production of documents created, used, or reviewed by various State Farm employees who gave statements about the matter is a proper request. Your generic and boilerplate objections to the effect of "State Farm objects to this request for production as seeking materials not relevant to the claims or defenses in this suit and protected by the attorney-client privilege and work product doctrine. As alleged in Plaintiffs' Complaint, this lawsuit concerns State Farm's filing of the DJA on August 16, 2021 and actions alleged to have occurred before the filing of the DJA. That said, the nonprivileged and non-work product protected underwriting records being produced in response to other discovery requests upon entry of an appropriate Confidentiality Order evidence facts…" is not supported by any rule or law. The boilerplate responses do not cite any basis for us having to wait for any confidentiality order. Further, the lawsuit is not limited to what took place before filing the declaratory judgment action.

No. 10. State Farm should produce the endorsements and declarations page created by it from the inception of the coverage through the present for the Tahoe at issue and all documentation supporting the reasons the documents were created. Your suggestion that the materials "will be included in the nonprivileged and non-work product protected underwriting records being produced in response to other discovery requests upon entry of an appropriate Confidentiality Order" is not proper. What nonprivileged and non-work product documents could possibly exist related to producing the endorsement and declarations pages of the Tahoe? The documents should be produced.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

No. 11 requests the production of policies, processes and procedures for driver exclusion agreements related to keeping or retaining acceptable policyholders while excluding others should be produced. The suggestion that your client will solely decide versions of the relevant "portions" of the Auto Process Guide for Feb. 13, 2020 through July 14, 2021 is not a time limit that has any logic or stated basis. The request asks for materials from Jan. 1, 2020. So, adding an extra 43 days should not be an issue. As to the end date chosen by State Farm, there is no valid basis for choosing the date when discovery has not been allowed to confirm anything State Farm has said about the alleged "service request" to forge the declarations page. The stated boilerplate objection "State Farm objects to the remainder of this request for production which seeks production of policies, processes, and procedures for driver exclusion agreements with effective dates that end prior to February 13, 2021 and start after July 14, 2021 as being overly broad and not relevant to the claims or defenses in this suit." is not proper. Please refer to Judge Young's memo on this.

As to Nos. 12 - 15, produce the documents submitted to the SC Department of Insurance or state documents were not submitted. If they have been provided, state the bates numbers. If this was done after January 1, 2022, produce the documentation. The objection "State Farm objects to this request for production as seeking information not relevant to the parties' claims and defenses in this suit. The alleged actions and inactions on which Plaintiffs' claims are based occurred, if ever, before January 1, 2022." Is improper. If your client submitted a request after, that would obviously show it knew that such a request was needed and the statement in the complaint that the form complied with the law and it investigated the matter before filing can be shown to be false.

Further, you now "At some point after implementation of 6023DC, State Farm determined it would be beneficial to State Farm and its policyholders to include identifying information on the form for tracking purposes. Therefore, lines for policyholder name; policy #; and effective date of the form were placed onto the top portion of 6023DC." And "State Farm's belief was that these administrative changes did not require a reapproval of 6023DC and, therefore, reapproval was not sought." If such a determination was made and belief existed, produce the documentation supporting your statements as requested.

As to No. 16 related to producing communications sent by your client denying claims based on the unapproved form, your client improperly states "State Farm objects to this request for production as seeking material not relevant to any

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

party's claims or defenses in this case and unduly burdensome. Communications State Farm sent non-parties between May 1, 2019 and May 1, 2022 denying claims based on a particular endorsement have no bearing on any issue in dispute, and have no tendency to make the existence of any material fact more or less probable. State Farm further objects to this request as unjustifiably seeking confidential, personal information of and concerning its insureds and third parties, none of whom are parties to the case." First, the boilerplate claim this is not relevant to claims or defenses is not a proper objection. The generic statement that such a request is unduly burdensome is unsupported and boilerplate. Separately, the request does relate to your client's pattern, practice and intent in repeatedly and knowingly denying claims using a bogus form. Your client's contention that the request "unjustifiably" seeks "confidential, personal information of and concerning its insured and third parties" is not only not supported but does not make sense. For example, it seems if State Farm was denying coverage, the people would not be insureds. Further, why would third parties who were wrongfully denied coverage be upset by your company disclosing this information to us?

As to No. 17, related to certified policy records, thank you for stating those have been produced. However, your client has failed to produce the requests related to generating those. Please produce those materials pursuant to the requests. There is no basis to fail to produce the requested materials and claim an objection that "nonprivileged and non-work product protected underwriting records and Claim File which State Farm is producing in response to other discovery requests upon entry of an appropriate Confidentiality Order."

No. 18 is addressed above. Succinctly, the file and notes related to the creation, storage and management of the file related to the claims involving Mr. Lamb and the Plaintiffs and who accessed it is relevant and discoverable. Any stated boilerplate objections are improper.

No. 19 requests documents related to policies to be followed when creating and modifying a declaration page during the time period are proper. There is no stated basis to claim such materials are subject to a Confidentiality Order.

No. 20 requests the employment files for the people involved in making changes to the declarations page and their signed acknowledgement that they would not engage in fraud as described and mandated in the State Farm Code of Conduct is proper. There is nothing overly broad about this request. Based on the filed declarations, they appear to have involvement in this process. State Farm's

boilerplate objections and contention that the system, not a particular person prepared the declarations page is nonsensical. Is State Farm really claiming its system spontaneously decided to generate a new document which was to be used in litigation? Please produce the files and signed statements as required by the Code of Conduct.

No. 21 relates to State Farm's code of conduct and training materials related to not committing fraud. State Farm is claiming that its training related to this is somehow protected does not make any sense. The boilerplate objection that "State Farm objects to this request as being overly broad in that it seeks the production of all State Farm's confidential, proprietary "Code of Conduct training course materials and videos," regardless of the year in which they were used, and as seeking irrelevant material. State Farm's confidential "Code of Conduct training course materials and videos" have no bearing on any issue in dispute and have no tendency to make the existence of any fact of consequence more or less probable" is without merit. It is clearly discoverable. If you wish to limit it to a particular time period, how about from the time the Code of Conduct attached to the complaint was created and published through the present?

No. 25 appears to be a partial production of policies, manuals and the like. Please clarify whether additional document should be included.

Nos. 26 – 28 relates to producing documents and explaining statements contained in the Complaint. In response to No. 26, State Farm makes a boilerplate and improper objection stating "State Farm directs Plaintiffs to the nonprivileged and non-work product protected portions of the Claim File for Claim No. 40-21B2-49D which will be produced upon entry of an appropriate Confidentiality Order and reflect State Farm's investigation of the Lamb Excluded Driver Endorsement." No such rule or law allows State Farm to withhold these documents.

As to Nos. 26-28, State Farm fails to provide an explanation with factual support as requested.

As to Nos. 29-34, in general, documents are requested related to communications and materials supplied to or created by Gallivan White and Boyd. State Farm provides improper boilerplate objections like, "State Farm objects to this request as being overly broad and seeking information not relevant to the claims or defenses in this suit. State Farm further objects to this request as seeking attorney-client privileged and work product protected communications and

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

materials which are outside the scope of discovery." These are improper and in the context of this case, documents should be produced as no privilege log was provided to address these materials.

No. 37 asks for the names of individuals who assisted in responding to the discovery requests. This is a proper request as it can identify witnesses or those with knowledge. Please respond.

Thank you.

Sincerely,

Justin S. Kahn

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832



*State of South Carolina*

*The Circuit Court of the Ninth Judicial Circuit*

**Roger M. Young, Sr.**
**Judge**

Charleston County Judicial Center
100 Broad Street, Suite 368
Charleston, SC 29401
Phone:  (843) 958-2015
Fax:  (843) 958-5108
ryoungj@sccourts.org

## MEMORANDUM

To:              Attorneys and Parties with Discovery motions

From:          Judge Roger Young

Subject:       Preparation for discovery motions

The following may assist you in preparation for your upcoming hearing.  If you have resolved your motions, please advise the Clerk's office. You may find it useful in working out a resolution as it shows I how generally view common discovery issues.

**Boilerplate or generalized objections are tantamount to no objection at all**

Each discovery response, whether to an interrogatory or discovery response, whether to an interrogatory or discovery production is to be answered or objected to separately. The rule is clear that each interrogatory "shall "shall be answered separately and fully in writing..."  SCRCP, Rule 33(a).  If there are objections to interrogatories or requests for interrogatories or requests for production, "the reasons for objection shall be stated…" SCRCP, Rules 33(a) and 34(b). Whether the reasons are satisfactory is to be decided on a case by case basis.  However, keeping in mind the general purposes and concepts stated in the rules can help combat frivolous and obfuscatory objections.

"An affirmative duty does exist to answer interrogatories and respond to requests to produce." *CFRE, LLC v. Greenville County Assessor LLC v. Greenville County Assessor,* 395 S.C. 67, *395 S.C. 67,* 83, 716 S.E.2d 877, 885 (2011)83, 716 S.E.2d 877, 885 (2011). Objections to interrogatories must be specific and supported by a detailed explanation why the interrogatories are improper or may result in waiver of the objections.  *In re Folding Carton Antitrust Litigation.*, 83 F.R.D. 260, 264 (N.D. Ill. 1979). The mere statement by a party that the by a party that the interrogatory was "overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection to an interrogatory.  *Josephs v. Harris Corp.* 677 F.2d 985, 992 (3d Cir. 1982). Parties shall not make nonspecific, boilerplate objections. **Objections that state that the discovery request is "vague, overly broad, or unduly burdensome" are, standing alone, meaningless and will be found meritless by the court.** A party objecting must explain

the specific and particular way in which a given request is vague, overly broad, or unduly burdensome.[1] *Curtis v. Time Warner Entm't-Advance/Newhouse* P *'ship*, 2013 WL 2099496, at *2 (D.S.C. May 14, *2013*). Parties should not recite a formulaic objection followed by an answer to the request. It has become common practice for a party to object on the basis of any of the above reasons and then state that, "notwithstanding the above," the party will respond to the discovery request, subject to or without waiving such objection. Such an objection and answer preserve nothing and serves only to waste the time and resources of both the parties and the court. Such practice leaves the requesting party uncertain as to whether the question has actually been actually been fully answered or whether only a portion of the question has been answered. *Id*. citing 2004 A.B.A. Civil Discovery Standards, 2004 A.B.A. Sec. Lit. 18. One objecting to discovery must show specifically how, despite the broad and liberal construction afforded the discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden. *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980). It is not proper to object merely because answering interrogatories may require expending considerable time, effort or expense or may interfere with business operations. *Id*. at 97.

"General objections" that purportedly apply to all discovery responses are improper. These general objections do not comply with the letter or spirit of the rules as they do not provide the specificity required to each request.[2]

---

[1] 1 *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999); *see also Steed v. EverHome Mortg. Co.*, 308 Fed. Appx. 364, 371 (11th Cir. 2009) ("[B]oilerplate objections may border on a frivolous response to discovery requests."); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) ("[T]o say an interrogatory was overly broad, burdensome, oppressive and irrelevant [is] not adequate to voice a successful objection to an interrogatory." (internal quotations omitted)); *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory."); *Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 688 (S.D. Fla. 2011) ("[B]oilerplate objections [are] legally inadequate or meaningless."); *Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.*, 2011 WL 669352, at *2 (E.D. Mich. Feb. 17, 2011)("Boilerplate or generalized objections are tantamount to no objection at all ...."); *Hager v. Graham*, 267 F.R.D. 486, 498 (N.D. W. Va. 2010) ("The objection is only a general statement that does not specify how the [request for production] is vague, ambiguous, and overly broad. Therefore, the objection is improper."); *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009) ("Boilerplate objections are not acceptable; specific objections are required ...." (internal quotations omitted)); *A. Farber & P'rs, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections.").

[2] *Mills v. E. Gulf Coal Preparation Co., LLC*, 259 F.R.D. 118, 132 (S.D. W. Va. 2009) ("Failure to state objections specifically in conformity with the Rules will be regarded as a waiver of those objections."); *Sabol v. Brooks*, 469 F. Supp. 2d 324, 328 (D. Md. 2006) ("[F]ailure to make particularized objections to document requests constitutes a waiver of those objections."); *In re*

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

For an objecting party to carry its burden, the objection must be specific, the party making it must explain why it applies on the facts of the case to the request being made, and if the party is providing information subject to the objection, the party must articulate how it is applying the objection to limit the information it is providing.[3] In short, objections should be plain enough and specific enough so that the Court can understand in what way the discovery is claimed to be objectionable. _See generally Curtis v. Time Warner Entmt'-Advance/Newhouse P'ship_, 2013 WL 2099496, at *2 (D.S.C. May 14, 2013). *See generally* Kosieradzki & Rahimi, *supra*, at 30–31 ("Objections must be sufficiently particular to advise the requesting party and the court to what extent the discovery request is objectionable.").

General objections to requests as excessive, overbroad, and unduly burdensome, without more detail as outlined herein, are considered by the Court as *per se* insufficient. The objecting party must show specifically how each discovery request is burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D. Kan. 1997); *accord Roesberg v. Johns–Manville Corp.,* 85 F.R.D. 292, 29–97 (E.D. Pa. 1980) (explaining that an objecting party "must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive ... by submitting affidavits or offering evidence revealing the nature of the burden" (internal citations omitted)). Responses which provide no information whatsoever in support of these assertions are very likely to be overruled and may be sanctionable if deemed to be abusive violations by the Court.

### Use of Standard Interrogatories – Abusive Objections

Rule 33(b) lists specific interrogatories that are allowed "[i]n all cases…" and should be served. Attorneys responding to these standard interrogatories with paragraphs of copy and paste generic

---

*Folding Carton Antitrust Litig.*, 83 F.R.D. 260, 264 (N.D. Ill. 1979) ("General objections may result in waiver of the objections"). *See generally* Wise, *supra*, at 569 ("[B]ecause general objections are nonspecific and 'hide the ball' with respect to what information or material is being provided and what information or material is being withheld and why ... [they] have been universally condemned by courts for this very reason."); Mark Kosieradzki & Kara Rahimi, *Keep Discovery Civil: When Opposing Counsel Obstructs or Deflects Your Access to Evidence, Look to the Rules and Long–Settled Case Law for Relief. Both Are on Your Side*, Trial, June 2008, at 32 ("[C]ourts have held that asserting numerous general objections obscures any valid objections and may result in a waiver of the valid objections absent a showing of good cause.").

[3] *See Josephs*, 677 F.2d at 992 (explaining that a party's objections must "show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive" (internal quotations and alterations omitted)); *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008)(explaining that if party's objections "are not applied with sufficient specificity to enable this Court to evaluate their merits ... this Court will overrule [the party's] objections in their entirety"); *Folding Carton*, 83 F.R.D. at 264 ("Objections to interrogatories must be specific and [be] supported by a detailed explanation why the interrogatories are improper.").

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

objections are engaging in dilatory conduct. Neither attorneys nor courts should tolerate such obstructive behavior.

Rule 33(b) requires responding with important facts known or observed by witness so that the summary is restricted to the actual knowledge of the witness. Note to Rule 33(b). The rules make it clear that specific objections and reasons are required when responding. There can be no good reason to objecting to standard interrogatories.

## Production of Documents

As to documents produced in response to discovery requests, the responding party shall produce them "as" they are kept in the usual course business or shall organize and label them to correspond with the categories in the request." SCRCP, Rule 34(b). If the form for producing the information is not specified or otherwise agreed upon, the responding party must produce the information in a form which it is ordinarily maintained that is reasonably usable. SCRCP, Rule 34(b)(1). When dealing with electronic discovery, it "must relate to the claims and defenses asserted in the pleadings and should serve as a means for facilitating a just and cost-effective resolution of disputes." Notes to 2011 Amendment, SCRCP, Rule 34.

## Duty to Consult Before Moving to Compel

One submitting discovery requests may move for an order under Rule 37(a) with respect to any objection to or other failure to answer the interrogatory or request for production. SCRCP, Rule 33(a) and 34(b). If the discovery responses received are improper, consult with the other party and try to resolve the issues. Rule 11 requires that before filing a motion, one communicate with opposing counsel and attempt in good faith to resolve the matter contained in the motion, unless the movant's counsel certifies that consultation would serve no useful purpose or could not be timely held. SCRCP, Rule 11(a). After consulting, compromises may be reached so that only the actual controversies are presented to the court.

The rule requires that the movant's counsel affirm that consultation has taken place. Attaching correspondence showing the attempts to resolve the matter with the articulated reasons from both sides can help demonstrate the issues for the court.

## Burden — Motion to Compel

After consulting as required, one needs to move to compel the other side to sufficiently respond to your requests. As part of the motion, provide the court with both the request and the responses at issue, and explain why the responses are deficient in the context of the case. Articulate specific reasons, not generalities as to why the discovery sought is proper. Generally, the initial burden is on the party moving to compel to inform the court (1) which discovery requests are the subject of the motion, (2) which responses are disputed, (3) why the party believes the responses are deficient, (4) why any objections are not justified, and (5) why the information sought through discovery is discoverable. After the moving party has met its burden, the party resisting discovery must show specifically how each interrogatory or request for production is not relevant or how each is overly broad, burdensome or oppressive. If claims of privilege or work product

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

are made, the factors and facts supporting such claims should be supported with specifics, not generalities, in the form of a privilege log that will provide enough information for you and the court to evaluate the objection.

**Opinions and Contentions Proper**

The rules allow one to serve discovery designed to eliminate the need for depositions or other expensive ways of establishing opinions or contentions of the parties. An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law.  SCRCP, Rule 33(d). Similarly, requests for admission may be served for purposes of the pending action only concerning any matters within the scope of Rule 26(b) that relate to statements or opinions of fact or of the application of law, including the genuineness of any documents described in the request. SCRCP, Rule 36(a).  Further, opinions of experts are proper subjects of discovery as well. SCRCP, Rule 26(b)(4)(A).

**Privilege Log - Express Claims of Privilege or Trial Preparation**

A party may withhold information otherwise discoverable by expressly claiming such material is privileged or subject to protection as trial preparation material. SCRCP, Rule 26(b)(5). The claim shall be made expressly and shall describe the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection. SCRCP, Rule 26(b)(5)(A-B).  *See also* Note to 1996 Amendment. The Rules expressly require the disclosure of the nature of evidence prior to any claim of privilege so other parties may assess the applicability of the privilege or protection.  *Samples v. Mitchell,* 329 S.C. 105, 111, 495 S.E.2d 213, 216 n.5 (Ct. App. 1997). The obligation to describe what is being withheld and why also applies to non-parties when responding to a subpoena, under SCRCP, Rule 45(d)(2). SCRCP, Rule 26(b)(5) Note to 1996 Amendment.

For, example, the work product rule would not excuse the failure to disclose the existence of a surveillance video tape pursuant to the standard interrogatories. If an attorney believed the other side had no right to this evidence, either because of relevancy or because of the work product rule, she should have either objected to the interrogatory or disclosed the existence, but not the content, of the evidence and moved for a protective order.  *Samples v. Mitchell,* 329 S.C. 105, 111, 495 S.E.2d 213, 216 (Ct. App. 1997). The decision whether a document is privileged is for the court, not the party. Privileged Matter—Assertion of Privilege, 8 Fed. Prac. & Proc. Civ.  § 2016.1 (3d ed.).  In making determinations as to the adequacy of the privilege log, the court should be guided by a sense of reasonableness in deciding what should be required. *Id.*

The use of a "privilege log" by party withholding the material is designed to satisfy the requirement that the claim to be made expressly and provide the other party with an opportunity to assess the applicability of the claimed privilege or protection. The description should provide a feasible means of understanding why each document is privileged or protected. Depending on the case, a privilege log may consist of details like a description and date of the document along with who created and received it. The required detail of the privilege log should be decided on a

case by case basis. However, the log should not generically assert privilege or simply use words like "privileged document."

### Attorney-Client Privilege

Generally, the party asserting the privilege must establish the confidential nature of the communication. *State v. Doster,* 276 S.C. 647, 653, 284 S.E.2d 218, 220 (1981). To establish an attorney-client privilege, the person asserting the privilege must show that the relationship between the parties was that of attorney and client and that the communications were confidential in nature for the purpose of obtaining legal advice. *Crawford v. Henderson*, 356 S.C. 389, 395, 589 S.E.2d 204, 207-08 (Ct. App. App. 2003). The essential elements giving rise to the privilege were stated by Wigmore to be: "(1) Where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *State v. Doster*, 276 S.C. 647, 651, 284 S.E.2d 218, 219-20 (1981).

The privilege must be tailored to protect only confidences disclosed within the relationship. And the court must determine the question of privilege without first requiring disclosure of the substance of the communication. *Id.* Not every communication within the attorney and client relationship is privileged. The privilege does not extend to communications in furtherance of criminal, tortious or fraudulent conduct. *Id.*

### Attorney Work Product and Limitations

"The attorney work product doctrine protects discovery documents prepared in anticipation of litigation, unless a substantial need can be shown by *the requesting party." Stokes Craven—Holding Corp. v. Robinson,* 416 S.C.517, 537, 787 S.E.2d 485, 495 (2016). "Generally, in determining whether a document has been prepared 'in anticipation of litigation,' most courts look to whether or not the document was prepared because of the prospect of litigation." *Id.*

"The document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). Thus, materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule *26(b)(3). Id. See also, Tobaccoville USA, Inc. v. McMaster*, 387 S.C. 287, 294, 692 S.E.2d 526, 530 (2010). A party must show more than a statute governing the party's actions considers the possibility of future litigation or concerns litigation. *Id.*

### Motion for Protection

If the discovery process threatens to become abusive or create a particularized harm to a litigant or third party, the trial judge may issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden by expense." *Hollman v. Woolfson,* 384 S.C. 571,

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

578, 683 S.E.2d, 495, 498(2009). "The person requesting protection from the court or Commission must initially show good cause by alleging a particularized harm which will result if the challenged discovery is had...Once the party seeking the protective order has met its burden of showing good cause by alleging a particularized harm, the party seeking the discovery must come forward and show that the information that is sought 'is both relevant and necessary to the case. When both parties meet their burden of proof, the court must weigh the opposing factors.'" *Hamm v. SCPSC*, 312 S.C. 238, 439 S.E.2d 852, 854 (1994); *see also, Hollman v. Woolfson*, 384 S.C. 571, 578, 683 S.E.2d 495, 498 (2009).

**Duty To Supplement**

A party who has responded to a discovery request under Rules 31, 33, 34 and 36 with a response that was complete when made is under a duty to promptly transmit to the other party information sought which comes to the knowledge of a party, his representative or attorney after the original answers have been submitted. SCRCP, Rule 26(e). "This duty to supplement does not apply to discovery under Rule 30 Depositions Upon Oral Examination."
"[T]here is an additional duty to provide supplemental information on expert witnesses and witnesses with knowledge of the facts of the case regardless of the form of the discovery request. The obligation to supplement prior discovery responses includes the duty to amend or supplement answers which are found to be incorrect or misleading…" SCRCP, Rule 26(e) Note to 1996 Amendment.

**Conclusion**

The moving party shall provide an affidavit detailing the attempts to resolve the motion prior to the hearing shall be presented. The affidavit should list a statement of services rendered which details the time and fees generated from pursuit of the discovery sought in the Motion to Compel. **Affidavits, briefs and proposed Orders** granting the requested relief and leaving a blank for the amount of fees and costs to be awarded **shall be presented to the court at the hearing** and shall also be served on opposing counsel prior to the hearing. **Failure to comply may result in denial of the relief.**

As to any objection to discovery on the basis that the information sought is either privileged or work product, the objecting party shall prepare and present at the time of the hearing their **privilege log** detailing the basis for the claim to privilege or reason why it should be excluded from production.

**At a minimum**, the privilege log should detail the date of the communication/statement, who prepared or made the statement, to whom the statement was directed to and finally, the specific basis for the privilege should be included in the log. While this will necessitate much more work on the part of the party claiming the privilege, **failure to prepare and bring** this log to the hearing will result in the **privilege claimed considered waived** by the court and the **motion to compel shall be granted**.

The Motion to Compel hearing shall constitute a hearing under Rule 37(d) 4, SCRCP.

**Shay Anderson**
**December 14, 2021**

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

State Farm Mutual Automobile    )
Insurance Company,              )
                                )
            Plaintiff,          )
                                )
            -vs-                )   C.A. No. 2:21-cv-2623-MBS
                                )
Melvin O.  Lamb III, Melvin O. )
Lamb, Jr., The Estate of James )
K.  Workman, Michael H.  Moore,)
Deborah D.  Plott, Angela R.   )
Edwards, Constance J. Molinaro,)
Mario F.  Molinaro, Jonathan D.)
Keller, Katherine M.  Vonesh,  )
Mathis S.  Billman, and Luke E.)
Billman,                       )
                                )
            Defendants.         )
_____)


VIDEOTAPED 30(b)(6) DEPOSITION OF SHAY ANDERSON ON BEHALF

OF STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

DECEMBER 14, 2021


     PURSUANT to Notice and/or agreement between the

parties, the videotaped 30(b)(6) deposition of SHAY

ANDERSON, called by the Defendants, was taken commencing at

the hour of 9:32 A.M. on Tuesday, December 14, 2021, at

Gallivan, White & Boyd, P.A.,  55 Beattie Place, Suite

1200, Greenville, South Carolina.

                         Barbara M. McCurley, Reporter

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Shay Anderson
December 14, 2021

Page 96

```
 1   A.   Right.

 2   Q.   Who created this Declarations Page that's attached

 3        as Exhibit A to Defense Exhibit 2, or at whose

 4        instruction?

 5   A.   I don't know.

 6   Q.   What would the process typically -- is it typical

 7        for State Farm to create a new Declarations Page

 8        following a collision to try to deny coverage?

 9        MS.  JOHNSEN: Object to the form.

10   A.   No.

11   Q.   Okay.  How would one determine why this

12        Declarations Page that's attached to Exhibit 2 --

13        Defense Exhibit 2 -- how would one determine who

14        created it?

15   A.   You would have to look in the audit trail of our --

16        of our system.

17   Q.   Oh, I didn't realize -- I'm used to dealing with

18        hospitals.  So, tell me about State Farm's audit

19        trail system.  What is -- how does that work?

20   A.   There would just be a screen that says who -- who

21        made the entry.

22   Q.   All right, what did -- as part of that audit trail,

23        anything show why that was created?

24   A.   I believe we recognized that the signed endorsement

25        was on file through the claims review, and were
```

Shay Anderson
December 14, 2021

Page 97

1         correcting the policy.

2   Q.   So, thank you, that is some more information.  So,

3         when State Farm was reviewing whether or not to pay

4         the claim ...

5       MS.  JOHNSEN: Object to the form.  I'm sorry.  Go

6   ahead.

7       MR.  KAHN: That's all right.

8   Q.   You said, claims review, right?

9   A.   Yes.

10   Q.   Help me understand what you mean as part of this

11        claims review process, that this error was -- these

12        errors were recognized.

13   A.   I can only speak from the underwriting side of

14        things, but claims does contact underwriting for

15        documents, much like these you've seen.

16   Q.   Well, the documents the claims department would

17        have contacted underwriting about would have been

18        things like Defense Exhibit 6 and 8, right?

19       MS.  JOHNSEN: Object to the form.

20   A.   Yes.

21   Q.   Okay.  Have you seen audit trails or the

22        information contained in audit trails with State

23        Farm before?

24   A.   Yes.

25   Q.   Okay.  Help me -- is that something easy to pull up

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Shay Anderson
December 14, 2021

Page 98

1         on a screen?

2    A.   Yes.

3    Q.   Okay.  And how does that process of looking at an

4         audit trail work?  Like, how would you do that?

5    A.   Ask that again or be more specific.

6    Q.   Sure.  I mean, I assume you have like, a user name

7         and password you log into the State Farm system.

8    A.   Yes.

9    Q.   What is that system?

10   A.   It's called Rumba.

11   Q.   R-u ...

12   A.   M-b-a, like the dance.

13   Q.   All right, not R-h-u-m-b-a?

14   A.   No.

15   Q.   All right, so are you able to access the Rumba

16        System -- or how do you access the Rumba System?

17   A.   With an ID and password.

18   Q.   Okay.  Is that -- do you have to be in a home

19        office or you can do that remotely?

20   A.   You could do it remotely if you have access to the

21        system.

22   Q.   Well, sure.  All right, and so you have access to

23        that system?

24   A.   Yes.

25   Q.   And does State Farm issue you some kind of computer

State Farm v. Melvin O. Lamb, III, et al
Irveta J. Shouse        Court Reporting        864-303-1723

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Shay Anderson
December 14, 2021

Page 99

```
 1            to use or do you have your own?
 2    A.      Yes, no, we have the State -- a company issued
 3            laptop.
 4    Q.      And I didn't know if there was anything special
 5            about that laptop that allows it to access the
 6            Rumba System or can you access the Rumba System
 7            from any internet browser with the user ID and
 8            password?
 9    A.      No.
10    Q.      No, which way?
11    A.      No, you cannot access it except from the State Farm
12            issued laptop, with the appropriate software.
13    Q.      Okay.  Got you.  And user name and password?
14    A.      Yes.
15    Q.      If you have the laptop user name and password, it's
16            easy to access the Rumba System?
17    A.      And if you have access, yes.
18    Q.      Okay.  All right, you have -- it's easy for you to
19            access the Rumba System?
20    A.      Yes.
21    Q.      You've accessed the Rumba System in the past?
22    A.      Yes.
23    Q.      And basically, you login -- what do you do, type in
24            a policy number or what do you do?  How does it
25            work?
```

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Shay Anderson
December 14, 2021

Page 100

1   A.   Most -- typically, yes, you would access it via
2        policy number.
3   **Q.   And then what does the Rumba System audit trail**
4        **show you?**
5   A.   It would show you the changes, the premium charges,
6        and the person that made the entry.
7   **Q.   All right, so -- again, I'm used to things for like**
8        **medical records, which would show something like**
9        **when somebody entered something into the medical**
10       **chart.  Not only is that information entered, but**
11       **who entered it and maybe even the IP address or the**
12       **location of where that entry was made, and some**
13       **other information, the date and time.**
14  A.   Uh-huh (Affirmative answer).
15  **Q.   Is that the kind of information that ...**
16  A.   You would have date, time, and -- and like a user
17       ID ...
18  **Q.   Okay.**
19  A.   ... would show.
20  **Q.   All right, and based on that user ID, State Farm**
21       **could determine who made the various entries as**
22       **part of this audit trail?**
23  A.   Yes.
24  **Q.   Is that user ID something that's easy for you to,**
25       **like hover over and figure out who it is?**

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Shay Anderson
December 14, 2021

Page 101

1    A.    Yes, you can tell who it is.

2    Q.    **Did you access the Rumba System concerning this**

3          **matter?**

4    A.    Yes.

5    Q.    **When did you do that?**

6    A.    In the last few weeks.

7    Q.    **Okay.  You know, as part of getting prepared for**

8          **today's deposition?**

9    A.    Yes.

10   Q.    **And did you print anything from the Rumba System?**

11   A.    I did not.

12   Q.    **Are you able to print something from the Rumba**

13         **System?**

14   A.    Not working from home.

15   Q.    **Well, I understand.  What I mean, when you're**

16         **properly logged in with ...**

17   A.    Yes.

18   Q.    **... State Farm computer ...**

19   A.    Yes.

20   Q.    **... and all the things you've described, it's easy**

21         **to print off the audit trail?**

22   A.    You could, yes.

23   Q.    **There's no extraordinary effort required to do**

24         **that, right?**

25   A.    I don't think so.

ELECTRONICALLY FILED - 2023 Nov 01 8:25 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 102

1    Q.    Okay.  Would that audit trail provide additional

2          information about the various steps and processes

3          that took place concerning, what I'll call the

4          Tahoe policy, that we've been talking about?

5    A.    No.  I mean, it would just show that an entry was

6          made to produce this Dec Page on this date.

7    Q.    It would show -- would it show any kind of request

8          being made to produce this Dec Page that's Exhibit

9          A to Defense Exhibit 2?

10   A.    No.

11   Q.    Do you know how that -- why this came about --

12         creating this document after the fact?

13   A.    Again, only because I think they recognized the

14         error.

15   Q.    They being?

16   A.    The underwriting recognized the error after, you

17         know, having a request from claims to produce

18         documents, we recognized the error that the signed

19         exclusion actually was on file, but the appropriate

20         date entry steps had not been taken for it to

21         appear on the Declarations Page when it was

22         printed.

23   Q.    And those errors are the various ones you've talked

24         about?

25   A.    Yes.

ELECTRONICALLY FILED - 2024 Feb 05 1:07 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA    )
                                   )    IN THE COURT OF COMMON PLEAS

COUNTY OF CHARLESTON      )    NINTH JUDICIAL CIRCUIT

|  |  |
|---|---|
| | )  Case No. 2023-CP-10-01832 |
| Robert C. Workman, Individually and as | ) |
| Personal Representative of the Estate of | ) |
| James K. Workman, Kelly Workman | ) |
| Tick and Matthew T. Workman, | ) |
| | ) |
| Plaintiffs, | )   **CONSENT CONFIDENTIALITY** |
| | )   **ORDER** |
| vs. | ) |
| | ) |
| State Farm Mutual Automobile Insurance | ) |
| Company and Gallivan, White & Boyd, | ) |
| P.A., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Defendant State Farm Mutual Automobile Insurance Company, Plaintiffs Robert C. Workman, individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew Workman, and Defendant Gallivan, White & Boyd, P.A. (each referred to herein as a "party" and collectively as the "parties"), have stipulated that certain discovery material is and should be treated as confidential, and have agreed to the terms of this order; accordingly, it is ORDERED:

1.     **Scope.** All documents produced in the course of discovery, all responses to discovery requests and all deposition testimony and deposition exhibits and any other materials which may be subject to discovery (hereinafter collectively "documents") shall be subject to this Order concerning confidential information as set forth below.

2.     **Form and Timing of Designation.** Confidential documents shall be so designated by placing or affixing the word "CONFIDENTIAL" on the document in a manner which will not interfere with the legibility of the document and which will permit complete removal of the Confidential designation. Documents shall be designated CONFIDENTIAL prior to, or

ELECTRONICALLY FILED - 2024 Feb 05 1:07 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

contemporaneously with, the production or disclosure of the documents. Inadvertent or unintentional production of documents without prior designation as confidential shall not be deemed a waiver, in whole or in part, of the right to designate documents as confidential as otherwise allowed by this Order.

3. **Documents Which May be Designated Confidential.** Any party may designate documents as confidential but only after review of the documents by an attorney who has, in good faith, determined that the documents contain information protected from disclosure by statute, sensitive personal information, trade secrets, or confidential research, development, or commercial information. The certification shall be made concurrently with the disclosure of the documents, using the form attached hereto at Attachment A which shall be executed subject to the standards of Rule 11 of the South Carolina Rules of Civil Procedure. Information or documents which are available in the public may not be designated as confidential.

4. **Depositions.** Portions of depositions shall be deemed confidential only if designated as such when the deposition is taken or within five business days after receipt of the final transcript. Such designation shall be specific as to the portions to be protected.

5. **Protection of Confidential Material.**

a. **General Protections.** Documents designated CONFIDENTIAL under this Order shall not be used or disclosed by the parties or counsel for the parties or any other persons identified below (¶ 5.b.) for any purposes whatsoever other than preparing for and conducting the above-captioned litigation in which the documents were disclosed (including any appeal of that litigation).

b. **Limited Third Party Disclosures.** The parties and counsel for the parties shall not disclose or permit the disclosure of any documents designated CONFIDENTIAL under the terms of this Order to any other person or entity except as set forth in subparagraphs

ELECTRONICALLY FILED - 2024 Feb 05 1:07 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(1)-(5) below, and then only after the person to whom disclosure is to be made has executed an acknowledgment (in the form set forth at Attachment B hereto), that he or she has read and understands the terms of this Order and is bound by it. Subject to these requirements, the following categories of persons may be allowed to review documents which have been designated CONFIDENTIAL pursuant to this Order:

(1)    counsel and employees of counsel for the parties who have responsibility for the preparation and trial of the lawsuit;

(2)    as to confidential documents served by the producing party, the receiving parties and employees of a receiving party to this Order but only to the extent counsel for the receiving party shall certify that the specifically named individual party or employee's assistance is necessary to the conduct of the litigation in which the information is disclosed[1];

(3)    court reporters, videographers and those engaged for depositions and those persons, if any, specifically engaged for the limited purpose of making duplicates or photocopies of documents;

(4)    consultants, investigators, or experts (hereinafter referred to collectively as "experts") employed by the parties or counsel for the parties to assist in the preparation and trial of the lawsuit; and

(5)    other persons only upon consent of the producing party or upon order of the court and on such conditions as are agreed to or ordered.

---

[1] At or prior to the time such party or employee completes his or her acknowledgment of review of this Order and agreement to be bound by it (Attachment B hereto), counsel shall complete a certification in the form shown at Attachment C hereto. Counsel shall retain the certification together with the form signed by the party or employee.

ELECTRONICALLY FILED - 2024 Feb 05 1:07 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

c.     **Control of Documents.**     Counsel for the parties shall take reasonable efforts to prevent unauthorized disclosure of documents designated as Confidential pursuant to the terms of this order. Counsel shall maintain a record of those persons, including employees of counsel, who have reviewed or been given access to the documents along with the originals of the forms signed, including electronic versions, by those persons acknowledging their obligations under this Order.

d.     **Copies.**     All copies, duplicates, extracts, summaries, or descriptions (hereinafter referred to collectively as "copies"), of documents designated as Confidential under this Order or any portion of such a document, shall be immediately affixed with the designation "CONFIDENTIAL" if the word does not already appear on the copy. All such copies shall be afforded the full protection of this Order.

6.     **Filing of Confidential Materials.**     In the event a party seeks to file any material that is subject to protection under this Order with the court, that party shall take appropriate action to ensure the documents receive proper protection from public disclosure including: (1) filing a redacted document with the consent of the party who designated the document as confidential; (2) where appropriate (*e.g.* in relation to discovery and evidentiary motions), submitting the documents solely for *in camera* review; or (3) where the preceding measures are not adequate, seeking permission to file the document under seal. Absent extraordinary circumstances making prior consultation impractical or inappropriate, the party seeking to submit the document to the court shall first consult with counsel for the party who designated the document as confidential to determine if some measure less restrictive than filing the document under seal may serve to provide adequate protection. This duty exists irrespective of the duty to consult on the underlying motion. Nothing in this Order shall be construed as a prior directive to the Clerk of Court to allow any

ELECTRONICALLY FILED - 2024 Feb 05 1:07 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

document be filed under seal. The parties understand documents may be filed under seal only with the permission of the court after proper motion.

7.  **Greater Protection of Specific Documents.**  No party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an Order providing such special protection.

8.  **Challenges to Designation as Confidential.**  Any CONFIDENTIAL designation is subject to challenge.   The following procedures shall apply to any such challenge.

a.  The burden of proving the necessity of a Confidential designation remains with the party asserting confidentiality.

b.  A party who contends documents designated CONFIDENTIAL are not entitled to confidential treatment (the "challenging party") shall give notice via email to the party who affixed the designation (the "producing party") of the specific basis for the challenge. The producing party who so designated the documents shall have fifteen (15) days from the date of the emailed notice to determine if the dispute can be resolved without judicial intervention and, if not, to move for an Order confirming the Confidential designation. The producing party's failure to so move deems the materials challenged as not being entitled to confidential treatment under this Confidentiality Order. The producing party may seek from the challenging party a reasonable extension of the 15-day time period set forth in this paragraph and the challenging party shall not unreasonably deny the producing party such reasonable extension.

c.  Notwithstanding any challenge to the designation of documents as confidential, all material previously designated CONFIDENTIAL shall continue to be treated as subject to the full protections of this Order until one of the following occurs:

(1)     the party who claims the documents are confidential withdraws such designation in writing;

(2)     the party who claims the documents are confidential fails to move timely for an Order designating the documents as confidential as set forth in paragraph 8.b. above; or

(3)     the court rules the documents should no longer be designated as confidential information.

9.     **Treatment on Conclusion of Litigation.**

a.     **Order Remains in Effect.**  All provisions of this Order restricting the use of documents designated CONFIDENTIAL shall continue to be binding after the conclusion of the litigation unless otherwise agreed or ordered.

b.     **Return of CONFIDENTIAL Documents.**  Within thirty (30) days after the conclusion of the litigation, including conclusion of any appeal, all documents treated as confidential under this Order, including copies as defined above (¶5.d.) shall be returned to the producing party unless: (1) the document has been entered as evidence or filed (unless introduced or filed under seal); (2) the parties stipulate to destruction in lieu of return; or (3) as to documents containing the notations, summations, or other mental impressions of the receiving party, that party elects destruction.  Notwithstanding the above requirements to return or destroy documents, counsel may retain attorney work product including an index which refers or relates to information designated CONFIDENTIAL so long as that work product does not duplicate verbatim substantial portions of the text of confidential documents.  This work product continues to be Confidential under the terms of this Order.  An attorney may use his or her work product in a subsequent litigation

ELECTRONICALLY FILED - 2024 Feb 05 1:07 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Feb 05 1:07 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

provided that its use does not disclose the confidential documents or confidential information set forth therein.

10.    **Order Subject to Modification.**  This Order shall be subject to modification on motion of any party or any other person who may show an adequate interest in the matter to intervene for purposes of addressing the scope and terms of this Order.  The Order shall not, however, be modified until the parties shall have been given notice and an opportunity to be heard on the proposed modification.

11.    **No Judicial Determination.**   This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery.  Nothing herein shall be construed or presented as a judicial determination that any specific document or item of information designated as CONFIDENTIAL by counsel is subject to protection under Rule 26(c) of the South Carolina Rules of Civil Procedure or otherwise until such time as a document-specific ruling shall have been made.

12.    **Persons Bound.**  This Order shall take effect when entered and shall be binding upon: (1) counsel who signed below and their respective law firms; (2) the parties; and (3) persons set forth in ¶ 5(b) that complete Attachment B to the Order.

*[Signatures of Counsel on Following Page]*

ELECTRONICALLY FILED - 2024 Feb 05 1:07 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

WE SO MOVE AND CONSENT:

By: /s/ M. Kathleen McTighe Mellen
    Robert W. Whelan
    Bar No. 71174
    E-Mail: robbie@whelanmellen.com
    M. Kathleen McTighe Mellen
    Bar No. 100826
    E-Mail: katie@whelanmellen.com
    WHELAN MELLEN & NORRIS, LLC
    89 Broad Street
    Charleston, SC 29401
    (843) 998-7099

    *Attorneys for Defendant State Farm Mutual Automobile Insurance Company*

WE SO CONSENT:

By: /s/ Justin S. Kahn
    Justin S. Kahn
    Bar No. 65100
    E-Mail: jskahn@kahnlawfirm.com
    KAHN LAW FIRM, LLP
    Post Office Box 31397
    Charleston, SC 29417-1397
    (843) 577-2128

    *Attorneys for Plaintiffs*

By: /s/ John S. Wilkerson, III
    John S. Wilkerson, III
    Bar No. 6105
    E-Mail: jwilkerson@turnerpadget.com
    W. Taylor Stanley
    Bar No. 101377
    E-Mail: tstanley@turnerpadget.com
    Lindsey M. Behnke
    Bar No. 105719
    E-Mail: lbehnke@turnerpadget.com
    TURNER PADGET GRAHAM & LANEY, P.A.
    Post Office Box 22129
    Charleston, SC 29413
    (843) 576-2801

    *Attorneys for Defendant Gallivan, White & Boyd, P.A.*

Dated: February 5, 2024

ELECTRONICALLY FILED - 2024 Feb 05 1:07 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## ATTACHMENT A

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | |
| | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF CHARLESTON | ) | NINTH JUDICIAL CIRCUIT |

|  |  |
|---|---|
| | )    Case No. 2023-CP-10-01832 |
| Robert C. Workman, Individually and as | ) |
| Personal Representative of the Estate of | ) |
| James K. Workman, Kelly Workman | ) |
| Tick and Matthew T. Workman, | ) |
| | ) |
| Plaintiffs, | )    **CERTIFICATION BY COUNSEL OF** |
| | )    **DESIGNATION OF INFORMATION** |
| | )    **AS CONFIDENTIAL** |
| vs. | ) |
| | ) |
| State Farm Mutual Automobile Insurance | ) |
| Company and Gallivan, White & Boyd, | ) |
| P.A., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Documents produced herewith with Bates numbers listed on the attached index have been marked as CONFIDENTIAL subject to the Confidentiality Order entered in this action which Order is dated _____.

By signing below, I am certifying that I have personally reviewed the marked documents and believe, based on that review, that they are properly subject to protection under the terms of Paragraph 3 of the Confidentiality Order.

Date: _____

_____
Signature of Counsel

_____
Printed Name of Counsel

ELECTRONICALLY FILED - 2024 Feb 05 1:07 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**ATTACHMENT B**

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | |
| | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF CHARLESTON | ) | NINTH JUDICIAL CIRCUIT |

|  |  |
|---|---|
| | )    Case No. 2023-CP-10-01832 |
| Robert C. Workman, Individually and as | ) |
| Personal Representative of the Estate of | ) |
| James K. Workman, Kelly Workman | ) |
| Tick and Matthew T. Workman, | ) |
| | ) |
| Plaintiffs, | )    **ACKNOWLEDGMENT OF** |
| | )    **UNDERSTANDING** |
| | )    **AND AGREEMENT TO BE BOUND** |
| vs. | ) |
| | ) |
| State Farm Mutual Automobile Insurance | ) |
| Company and Gallivan, White & Boyd, | ) |
| P.A., | ) |
| | ) |
| Defendants. | ) |
| | ) |

      The undersigned hereby acknowledges that he or she has read the Confidentiality Order dated _____, in the above captioned action, understands the terms thereof, and agrees to be bound by such terms. The undersigned submits to the jurisdiction of the Charleston County, South Carolina, Court of Common Pleas in matters relating to the Confidentiality Order and understands the terms of said Order obligate him/her to use discovery materials designated CONFIDENTIAL solely for the purposes of the above-captioned action, and not to disclose any such confidential information to any other person, firm or concern.

      The undersigned acknowledges that violation of the Confidentiality Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address: _____

Date: _____

_____
Signature

ELECTRONICALLY FILED - 2024 Feb 05 1:07 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## ATTACHMENT C

| STATE OF SOUTH CAROLINA | ) | |
|---|---|---|
| | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF CHARLESTON | ) | NINTH JUDICIAL CIRCUIT |

|  |  |  |
|---|---|---|
| | ) | Case No. 2023-CP-10-01832 |
| Robert C. Workman, Individually and as | ) | |
| Personal Representative of the Estate of | ) | |
| James K. Workman, Kelly Workman | ) | |
| Tick and Matthew T. Workman, | ) | |
| | ) | **CERTIFICATION OF COUNSEL OF** |
| Plaintiffs, | ) | **NEED FOR ASSISTANCE OF** |
| | ) | **PARTY/EMPLOYEE** |
| vs. | ) | |
| | ) | |
| State Farm Mutual Automobile Insurance | ) | |
| Company and Gallivan, White & Boyd, | ) | |
| P.A., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pursuant to the Confidentiality Order entered in this action, most particularly the provisions of Paragraph 5.b.2., I certify that the assistance of _____ is reasonably necessary to the conduct of this litigation and that this assistance requires the disclosure to this individual of information produced by another party and designated as CONFIDENTIAL.

I have explained the terms of the Confidentiality Order to the individual named above and will obtain his or her signature on an "Acknowledgment of Understanding and Agreement to be Bound" (Attachment B to the Confidentiality Order) prior to releasing any confidential documents to the named individual and I will release only such confidential documents as are reasonably necessary to the conduct of the litigation.

The individual named above is:

❑     A named party;

❑     An employee of named party _____. This employee's job title is _____ and work address is _____.

Date: _____

_____
Signature of Counsel

_____
Printed Name of Counsel

ELECTRONICALLY FILED - 2024 Feb 05 1:07 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832



Charleston Common Pleas

**Case Caption:**     Robert C Workman , plaintiff, et al VS   State Farm Mutual
Automobile Insurance Company , defendant, et al

**Case Number:**     2023CP1001832

**Type:**     Order/Consent Order

So Ordered

s/Jennifer B. McCoy #2764

Electronically signed on 2024-02-05 12:17:44     page 12 of 12

ELECTRONICALLY FILED - 2024 Mar 05 2:23 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

IN THE COURT OF COMMON PLEAS

Civil Action No. 2023-CP-10-01832

Robert C. Workman, Individually and as
Personal Representative of the Estate of
James K. Workman, Kelly Workman Tick
and Matthew T. Workman,

Plaintiffs,

vs.

State Farm Mutual Automobile Insurance
Company and Gallivan White & Boyd, P.A.,

Defendants.

**MOTION AND ORDER RELIEVING
COUNSEL**

This matter comes before the Court upon motion of counsel for Defendant Gallivan White & Boyd, P.A. ("Defendant") to have W. Taylor Stanley relieved as counsel pursuant to Rule 11(b) of the South Carolina Rules of Civil Procedure. W. Taylor Stanley has left the law firm of Turner Padget Graham & Laney and seeks to withdraw from this matter. John S. Wilkerson and Lindsey M. Behnke, who have already made appearances for Defendant in this case, shall remain counsel of record for Defendant. Therefore, upon motion of Defendant and with consent of W. Taylor Stanley,

IT IS HEREBY ORDERED that W. Taylor Stanley, Esquire, be and hereby is, relieved as Attorney for Defendant Gallivan White & Boyd, P.A.

**[JUDGE'S SIGNATURE TO FOLLOW]**

1

ELECTRONICALLY FILED - 2024 Mar 05 2:23 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

I SO MOVE:

s/Lindsey M. Behnke
Lindsey M. Behnke, SC Bar No.: 105179
1901 Main Street, Suite 1700 (29201)
Post Office Box 1473
Columbia, South Carolina 29202
Telephone: 803-227-4324
Facsmile: 803-400-1525
Email: lbehnke@turnerpadget.com


John S. Wilkerson, III, SC Bar No.:  6105
40 Calhoun Street, Suite 200
Post Office Box 22129
Charleston, South Carolina 29413-2129
Telephone:     843-576-2801
Facsimile:     843-577-1649
Email:  jwilkerson@turnerpadget.com

*Attorneys for Defendant Gallivan White & Boyd, P.A.*


I SO CONSENT:

s/W. Taylor Stanley
W. Taylor Stanley (S.C. Bar No. 101377)
ADAMS AND REESE LLP
1221 Main St., Suite 1200
Columbia, SC 29201
Telephone: 803-212-6518
Facsimile: 803-343-1236
Email: taylor.stanley@arlaw.com

ELECTRONICALLY FILED - 2024 Mar 05 2:23 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832



Charleston Common Pleas

**Case Caption:**   Robert C Workman , plaintiff, et al VS   State Farm Mutual
                    Automobile Insurance Company , defendant, et al

**Case Number:**   2023CP1001832

**Type:**   Order/Relieve Counsel

So Ordered

s/Jennifer B. McCoy #2764

Electronically signed on 2024-03-05 12:44:26     page 3 of 3

ELECTRONICALLY FILED - 2024 Apr 15 3:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | |
|---|---|
| **ROBERT C. WORKMAN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES K. WORKMAN, KELLY WORKMAN TICK, AND MATTHEW T. WORKMAN,**<br><br>**PLAINTIFFS,**<br><br>**V.**<br><br>**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND GALLIVAN, WHITE & BOYD, P.A.,**<br><br>**DEFENDANTS.** | **COURT OF COMMON PLEAS**<br>**CASE NO.:  2023-CP-10-1832**<br><br><br><br>**PLAINTIFFS' MOTION FOR LEAVE OF OUT-OF-STATE ATTORNEY TO BE ADMITTED *PRO HAC VICE*** |

Pursuant to Rules for admission of persons to practice law in the courts of South Carolina, Justin S. Kahn, a member in good standing of the South Carolina Bar, having been admitted to practice in said Court on November 18, 1992, moves for an Order granting Sean K. Claggett, Esquire of Claggett & Sykes Law Firm, member in good standing of the Nevada Bar, having been admitted to practice in said Court in 2003, leave *pro hac vice* to try the above-referenced case on behalf of the Plaintiffs under the direct supervision of Justin S. Kahn.

**Kahn Law Firm, LLP**

s/Justin S. Kahn [SC Bar No. 65100]
jskahn@kahnlawfirm.com
Wes B. Allison - SC Bar No. 100533
wallison@kahnlawfirm.com
PO Box 31397
Charleston, SC 29417-1397
**p** 843.577.2128 | **f** 843.577.3538
**Attorneys For Plaintiffs**

Charleston, SC
April 15, 2024

# VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE* IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

Robert C. Workman, Individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick and Matthew T. Workman
_____
Plaintiff

vs.

State Farm Mutual Automobile Insurance Company and Gallivan, White & Boyd, P.A.
_____
Defendant

2023CP1001832
_____
Case No.

Court of Common Pleas Charleston County
_____
Tribunal

Mailing Address of Tribunal:  100 Broad St. Ste. 106, Charleston, SC, 29401

Comes now  Sean Claggett _____, applicant herein, and respectfully represents the following:

1. Applicant resides at:

7967 Sherman Oaks Avenue
_____
Street Address

| Las Vegas | Clark | Nevada | 89129 |
|---|---|---|---|
| City | County | State | Zip Code |

702-682-3473
_____
Telephone

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of)

Claggett & Sykes Law Firm _____, with offices at

4101 Meadows Lane, Suite 100
_____
Street Address

| Las Vegas | Clark | Nevada | 89107 |
|---|---|---|---|
| City | County | State | Zip Code |
| 702-655-2346 | 702-682-3473 | 702-655-3763 | sclaggett@claggettlaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

3. Applicant has been retained personally or as a member of the above-named law firm by Robert C. Workman, Kelly Workman Tick and Matthew T. Workman    to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since _____ September _____ of _____ 2008 _____, Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of

ELECTRONICALLY FILED - 2024 Apr 15 3:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Nevada _____ where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

5.  List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
| --- | --- |
| Nevada District Court | September 25, 2003 |
| Nevada Supreme Court | December 1, 2003 |
| | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

Applicant is a member of good standing in the courts listed above

6.  Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency?  If yes, give particulars, e.g., jurisdiction, court date.

No.

7.  Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked?  If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

No.

8.  Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

No.

9.  Please be aware that local counsel must be Rule 403 certified.  Local counsel of record associated

with Applicant in this case is Justin S. Kahn _____ of the Kahn Law Firm, LLP

law firm, which has offices at:

562 Savannah Highway
Street Address

| Charleston | Charleston | SC | 29407 |
| --- | --- | --- | --- |
| City | County | State | Zip Code |
| 843-577-2128 | | 843-577-3538 | jskahn@kahnlawfirm.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

ELECTRONICALLY FILED - 2024 Apr 15 3:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Apr 15 3:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

65100
_____
South Carolina Bar Number
(You must provide Bar Number)

    10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| N/A |
|---|

    11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| Yes |
|---|

    12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this _____ 10th _____ day of _____ April _____, 20 24

_____
APPLICANT

# VERIFICATION

STATE OF  Nevada                              )

COUNTY OF  Clark                              )

I,        Sean K. Claggett                              , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this   10th   day of   April            , 20 24

_____
(Notary Signature)

Notary Public for the State of    Nevada

My Commission Expires:   08/17/2024

JOANNE AQUINO MONTEBON
Notary Public-State of Nevada
APPT. NO. 22-1844-01
My Appt. Expires 08-17-2024

# LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this    15th    day of   April      , 20 24

_____
LOCAL COUNSEL OF RECORD

# CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211 accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this _____ day of _____ , 20 24

_____

*Page 4 of 4*

ELECTRONICALLY FILED - 2024 Apr 15 3:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# STATE BAR OF NEVADA



## CERTIFICATE OF STANDING

**Issue Date:** 4/5/2024

**Attorney Name:** Sean K. Claggett

**Neveda Bar Number:** 8407

**License Type:** ATTORNEY

**License Status:** Active

**Admit/Certification Date:** 9/25/2003

**3100 W. Charleston Blvd.**
**Suite 100**
**Las Vegas, NV 89102**
**phone 702.382.2200**
**toll free 800.254.2797**
**fax 702.382.2075**

**9456 Double R Blvd., Ste. B**
**Reno, NV 89521-5977**
**phone 775.329.4100**
**fax 775.329.0522**

**www.nvbar.org**

To Whom It May Concern:

The State Bar of Nevada records indicate that the attorney named above was admitted or certified to practice in the State of Nevada and is in good standing as of the issue date.

If the attorney's License Type is NMATTORNEY (non-member attorney), they were certified to practice pursuant to Nevada Supreme Court Rule 49.1 'Limited practice certification for certain attorneys'. Refer to License Status for the subsection.

This certification expires 30 days from the issue date unless sooner revoked or rendered invalid by operation of rule or law.

Questions may be directed to  memberservices@nvbar.org.

Mary Jorgensen
Member Services Director

No.2024 -10542569
verify by email at memberservices@nvbar.org

ELECTRONICALLY FILED - 2024 Apr 15 3:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

IN THE COURT OF COMMON PLEAS

Civil Action No. 2023-CP-10-01832

Robert C. Workman, Individually and as
Personal Representative of the Estate of
James K. Workman, Kelly Workman Tick
and Matthew T. Workman,

Plaintiffs,

vs.

State Farm Mutual Automobile Insurance
Company and Gallivan White & Boyd, P.A.,

Defendants.

**DEFENDANT GALLIVAN WHITE &
BOYD, P.A.'S MEMORANDUM
IN OPPOSITION TO PLAINTIFFS'
<u>MOTION TO COMPEL</u>**

This matter is before the Court pursuant to Plaintiffs' Motion to Compel filed on October 16, 2023. Defendant Gallivan White & Boyd, P.A. ("GWB"), by and through its undersigned counsel, respectfully submits this Memorandum in Opposition to Plaintiffs' Motion to Compel (the "Motion").

<u>**INTRODUCTION**</u>

In their discovery requests, Plaintiffs sought numerous documents protected by the attorney-client privilege and work product doctrine. <u>Exhibit A</u>[1]. In its responses, GWB objected to the production of those documents. <u>Exhibit B</u>[2]. The crux of Plaintiffs' Motion is their contention that the documents are not privileged under a narrow exception for tortious, criminal, or otherwise fraudulent conduct. *See* Motion, pp. 1-2. ("The discovery sought is not protected by any privilege because there is no protection for tortious or intentional conduct"). For the reasons set forth herein,

---

[1] <u>Exhibit A.</u> Plaintiffs' First Discovery Requests to Defendants
[2] <u>Exhibit B.</u> GWB's Responses to Plaintiffs' First Discovery Requests

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Plaintiffs have not made the showing required to overcome these discovery protections. Further, GWB has addressed a number of Plaintiffs' discovery concerns by supplementing its responses and amending its privilege log, resolving any controversy as to those issues. Finally, the remaining arguments in Plaintiffs' Motion are without merit. Therefore, Plaintiffs' Motion to Compel should be denied.

## FACTUAL BACKGROUND

The events relevant to this case begin with an automobile accident involving a Tahoe owned by Melvin O. Lamb, Jr. ("Lamb Jr.") and insured by State Farm Mutual Automobile Insurance Company ("State Farm"). (See Compl. ¶ 3.) On June 12, 2021, Lamb Jr.'s son, Melvin O. Lamb, III ("Lamb III"), was driving the Tahoe and caused an accident that tragically led to the death of James K. Workman (the "Accident"). Id. State Farm retained GWB as counsel and provided GWB with the applicable policy (the "Tahoe Policy"). The Tahoe Policy included a named driver exclusion that excluded Lamb III from coverage (the "Driver Exclusion") and carried bodily injury limits of $25,000 per person/$50,000 per accident and property damage limits of $25,000 per accident. Exhibit C[3]. Based upon the Driver Exclusion, GWB filed a declaratory judgment action (the "DJA" or the "Underlying Action"). Exhibit C. The DJA sought a finding that there was no coverage for the losses incurred by the Accident because Lamb III was an excluded driver under the Tahoe Policy. Exhibit C, ¶¶ 29-34 and pg. 61.

Plaintiffs' Complaint precariously rests upon an unsubstantiated and far-fetched theory: that State Farm falsified policy documents and GWB negligently submitted those documents to the court, risking serious liability to avoid paying Seventy-Five Thousand ($75,000.00) Dollars in

---

[3] Exhibit C. DJA Complaint with Exhibit A, C.A. No. 2:21-cv-02623-MBS (ECF 1, August 16, 2021)

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

policy limits for an automobile accident. Plaintiffs do not have a scrap of evidence, testimonial or otherwise, to support their accusations. Meanwhile, before Plaintiffs filed this Complaint, State Farm provided a full explanation of the processing error that Plaintiffs are attempting to distort as fraud, producing relevant documents and sworn testimony from multiple State Farm employees. Nevertheless, Plaintiffs aim to leverage their already refuted conspiracy theory to procure the entirety of GWB's work product and communications with its client, State Farm. Plaintiffs' allegations lack merit and are currently the subject of Motions for Judgment on the Pleadings filed by State Farm and GWB. A full argument on the merits of the case is beyond the scope of this Response, as it relates more directly to the pending Motions for Judgment on the Pleadings. However, an explanation of the circumstances surrounding the Tahoe Policy and the Driver Exclusion is necessary to evaluate Plaintiffs' Motion.

At the time of the Accident Lamb III was, and had been since 2017, an excluded driver on all of Lamb Jr.'s auto policies. Exhibit D[4], ¶¶ 5 & 10. Due to a data entry error, the Driver Exclusion, while valid and in State Farm's records, was not appended to the declarations page of the Tahoe Policy. Exhibit D at ¶ 11. When State Farm discovered that the Driver Exclusion was not attached to the declarations page, it corrected the error, leading to the generation of a new certified copy of the Tahoe Policy, which it provided to GWB on August 5, 2021. Exhibit E[5], ¶ 7. This correction occurred before the filing of the DJA on August 16, 2021. GWB, having received the certified Tahoe Policy with the Driver Exclusion, had everything it needed to file the DJA

---

[4] Exhibit D. Declaration of Shay Anderson, GWB_000323-000324. This declaration was filed in the DJA as Exhibit 1 to State Farm's Response in Opposition to Motion for Sanctions, C.A. No. 2:21-cv-02623-MBS (ECF 81, May 24, 2022).

[5] Exhibit E. Declaration of Darren Murdoch, GWB_000354-000356. Exhibit 3 to State Farm's Response in Opposition to Motion for Sanctions, C.A. No. 2:21-cv-02623-MBS (ECF 81, May 24, 2022).

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Complaint. The Driver Exclusion signed by Lamb Jr. on February 26, 2020 explicitly identified the Tahoe policy, stating: "[t]his endorsement is a part of the policy." Exhibit C, pg. 67. State Farm merely failed to complete the step of the processing that would have triggered a new declarations page. Exhibit D, ¶ 11. This oversight, while inconvenient and unfortunately timed in light of the Accident, in no way impacted the validity of the Driver Exclusion. Regardless of when GWB became aware of the processing error, the Driver Exclusion's enforceability is not dependent on flawless processing by State Farm. South Carolina Code Section 38-77-340 requires that the insurance company and its insured agree in writing "that coverage under such a policy of liability insurance shall not apply, and they must declare in the agreement that the excluded person either turned in his driver's license or is otherwise insured." Nationwide Ins. Co. of Am. v. Knight, 433 S.C. 371, 379-80, 858 S.E.2d 633, 637 (2021). The Driver Exclusion met each of those requirements. Exhibit C, pg. 67. The DJA was a routine and rational step towards resolving the question of coverage, not a nefarious attempt to shirk coverage, as Plaintiffs falsely allege. Plaintiffs' allegations of fraud are belied by the fact that State Farm was forthcoming with the processing errors and, when it became clear that those errors had created too much confusion, State Farm reversed course and defended and indemnified Lamb Jr. and Lamb III. *See* Order, C.A. No. 2:21-cv-02623-MBS (ECF 83, July 28, 2022). In the end, the Estate of James K. Workman was not damaged by the DJA. Ironically, the DJA led to the estate being paid a settlement well in excess of the policy limits. Despite the dubiousness of their allegations, Plaintiffs insist that they are entitled to receive the entirety of GWB's materials from its representation of State Farm in the DJA.

      Plaintiffs' unsubstantiated accusations cannot overcome the attorney-client privilege or work product protections. In their Motion, Plaintiffs also raise concerns with GWB's privilege log

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

and falsely assert that GWB's discovery responses contain "boilerplate" objections. Although GWB's first privilege log provided all the required information, GWB has since supplemented it, to narrow the discovery issues before this court. Similarly, GWB has supplemented its discovery responses to the extent possible. The remaining issues Plaintiffs have raised are without merit.

## LEGAL STANDARD

The scope of discovery, while broad, is limited by privileges. The privileges relevant to Plaintiffs' motion are the attorney-client privilege and work product doctrine.

A.    *Attorney-Client Privilege*

The attorney-client privilege protects against disclosure of confidential communications by a client to his attorney. This privilege is based upon a wise policy that considers that the interests of society are best promoted by inviting the utmost confidence on the part of the client in disclosing his secrets to this professional advisor.

*Tobaccoville USA, Inc. v. McMaster*, 387 S.C. 287, 293 692 S.E.2d 526, 529 (S.C. 2010) (quoting *State v. Owens*, 309 S.C. 402, 407, 424 S.E.2d 473, 476 (1992)). The attorney-client privilege is necessarily expansive in its scope:

(1)Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection waived.

*Id.* at 530, 692 S.E.2d at 529 (quoting *State v. Doster*, 276 S.C. 647, 651, 284 S.E.2d 218, 219-20 (1981)). "The privilege belongs to the client and, unless waived by him, survives even his death." 276 S.C. at 651, 284 S.E.2d at 219. This privilege is not lightly ignored, and in the absence of a waiver, is only overturned upon a showing of "criminal, tortious, or fraudulent conduct." *Id.* The Fourth Circuit has further clarified the test for this exception:

Specifically, we have held that the party invoking the crime-fraud exception must make a *prima facie* showing that (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud.

*In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005) (citing *Chaudry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999)). "Prong one of this test is satisfied by a *prima facie* showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." *Id.* (citing *In re Grand Jury Investigation*, 842 F.2 1223, 1226 (11th Cir. 1987); *In re Sealed Case*, 676 F.2d at 815, *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982)). The second prong is satisfied by "a showing of a close relationship between the attorney-client communications and the possible criminal or fraudulent activity." *Id.* (citing *Chaudhry*, 174 F.3d at 403).

B.     Work Product Doctrine

Work product encompasses those materials prepared in anticipation of litigation, and is outside the scope of discovery absent a showing of substantial need. See Rule 26(b)(3), SCRCP. "[T]he general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order." *Hickman v. Taylor*, 329 U.S. 495, 512, 67 S. Ct. 385, 394, 91 L. Ed. 451 (1947). Further, even if a party can show substantial need, the court must still "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Rule 26(b)(3), SCRCP. *See also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.,* Inc., 967 F.2d 980, 985 (4th Cir. 1992) (If the documents sought "embody opinions and theories about the litigation, discovery is refused without further inquiry").

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Effectively, there are two categories of work product. The first category (which does not contain the attorneys' or parties' mental impressions, theories, strategies, etc.), is only discoverable if the other party has a substantial need and cannot otherwise obtain the documents. This category is often referred to as "fact work product." To the extent Plaintiffs would argue they do not need to show substantial need for GWB's fact work product because of the alleged tortious conduct, work product is protected under the same standard as the attorney-client privilege. *See In re Grand Jury # 5,* 401 F.3d at 252-53 (work product "may be discovered upon *prima facie* evidence of a crime or fraud as to the client only.").

The second category of work product is called "opinion work product". It captures the mental impressions, opinions and strategies of counsel and therefore "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re Grand Jury Subpoena,* 870 F.3d 312, 316 (4th Cir. 2017) (internal citation omitted). *See also* Rule 26(b)(3) ("the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation"). The bar for compelling the production of opinion work product is much higher than for fact work product. In order to obtain these highly protected documents, it is not enough to make a *prima facie* showing of fraud. Rather, the party seeking the discovery must demonstrate that the attorney had actual knowledge of the client's crime or fraud and/or knowingly participated in it. 870 F.3d at 316.

## ARGUMENT

Plaintiffs' Motion should be denied for the following reasons: (1) the materials sought by Plaintiffs are privileged and Plaintiffs have not made the required showing to compel their production; (2) GWB has supplemented its discovery responses and amended its privilege log,

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

resolving several of Plaintiffs' complaints; and (3) Plaintiffs' remaining objections to GWB's discovery responses are without merit.

## I.     GWB's file is privileged and Plaintiffs have not made the requisite showing to access the records.

In their Motion, Plaintiffs claim the attorney-client privilege and work product doctrine are destroyed by the alleged falsification of policy documents; therefore, they are entitled to review GWB's entire file pertaining to the DJA. However, Plaintiffs' Complaint does not support such accusations and is currently the subject of Motions for Judgment on the Pleadings filed by both State Farm and GWB. The legitimacy of the Tahoe Policy documents was already litigated in the DJA, where Defendants presented convincing evidence that the conduct Plaintiffs characterize as fraud was truly an inadvertent processing error with no real impact on the applicability of the Driver Exclusion. Meanwhile, Plaintiffs have no support for their accusations. Consequently, although Plaintiffs' Motion provides a recitation of law for what is commonly referred to as the "crime-fraud exception," Plaintiffs' application of that law to the facts fails to provide the showing necessary to overcome the attorney-client and work product protections. Plaintiffs' attempt to obtain GWB's complete file requires the Court to look at the fundamental issues in this case and consider whether there is sufficient evidence to support Plaintiffs' allegations of tortious or fraudulent conduct. For the reasons set forth herein, Plaintiffs have not made a sufficient showing to gain access to GWB's privileged communications and/or work product.

### A.     Attorney-Client Privilege

In order to destroy the attorney-client privilege, Plaintiffs must present "a *prima facie* showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed" and "a close relationship between the

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

attorney-client communications and the possible criminal or fraudulent activities." *In re Grand Jury # 5,* 401 F.3d at 251 (internal citations omitted). Plaintiffs cannot satisfy either element.

First, Plaintiffs have made no showing that State Farm was engaged in any type of actionable fraud. Instead, Plaintiffs cling to their unsubstantiated accusations in the face of overwhelming evidence to the contrary, in hopes of monetizing State Farm's mistake. Despite Plaintiffs' attempts to distort them, the true facts are plain. Lamb III had been an excluded driver on all of Lamb Jr.'s auto policies for several years, and the Driver Exclusion for the Tahoe Policy was signed by Lamb on February 26, 2020. See Exhibit D. State Farm made one mistake: it did not attach the Driver Exclusion to the declarations page in its system, leading to a cascade of confusion. State Farm meticulously traced the effects of that one mistake and provided a full explanation to the court and other parties in the Underlying Action via sworn declarations from State Farm employees. *See* Exhibits D – F[6]. Conversely, Plaintiffs have not introduced a scrap of evidence to support their logic-defying narrative. This Court must consider which is more plausible: that State Farm made a processing error; or that Lamb Jr., who had excluded his son on all his auto policies for years, allowed him as a driver on the Tahoe Policy and upon hearing of the Accident, State Farm forged and/or falsified documents, exposing itself to significant liability, all to avoid paying $75,000.00 in policy limits. The only "evidence" Plaintiffs can point to is the differing versions of the policy documents, which State Farm has thoroughly explained.

Second, there is no relationship between the alleged fraud and the attorney-client communications. The declarations page attached to the DJA Complaint was generated by State Farm, according to its process to correct the inadvertent omission of the signed Driver Exclusion,

---

[6] Exhibit F. Declaration of Lana Willingham, GWB_000358-000359. Exhibit 4 to State Farm's Response in Opposition to Motion for Sanctions, C.A. No. 2:21-cv-02623-MBS (ECF 81, May 24, 2022).

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

and then provided it to GWB prior to the filing of the DJA. <u>Exhibits D – F.</u> Plaintiffs' allegations, which GWB strongly denies, fail to connect GWB to the alleged fraud. Plaintiffs' Complaint specifically alleges that State Farm "create[d] a forged and false declarations page" prior to contacting GWB about the Accident. *See* Compl. ¶¶ 7-8. Even under Plaintiffs' theory of events, as alleged in their Complaint, GWB had no involvement in the alleged fraud, so there would be no connection between GWB's communications and the alleged fraudulent conduct.

The attorney-client privilege between State Farm and GWB remains intact because Plaintiffs have not made the *prima facie* showing of intentional or tortious conduct required to justify intrusion into the attorney-client relationship. On the contrary, State Farm has made a *prima facie* showing that its actions were *not* fraudulent. Plaintiffs have only hurled accusations. Here, as is often the case, the simplest explanation is the truth: Upon realizing the Driver Exclusion had not been attached to the declarations page, State Farm corrected the documents according to its processes, documented those corrections, and provided the accurate documents to its attorneys, who properly sought a determination of coverage from the court. There was no attempt to conceal what had occurred: State Farm's corrections generated a new declarations page and State Farm explained the errors and their correction in its 30(b)(6) deposition and the declarations of its employees in the DJA. Ultimately, State Farm accepted full responsibility for its error, and Workman's Estate received a settlement well over anything it could have expected to receive had the DJA not been filed. Because Plaintiffs have not made any showing of fraudulent or tortious conduct, GWB's privileged communications with its client should remain protected.

B.     *Work Product Doctrine*

Under Rule 26 of the South Carolina Rules of Civil Procedure, documents prepared in anticipation of litigation or for trial by a party or that party's attorney are only discoverable upon

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

a showing of substantial need and an inability to obtain the documents by any other means. Rule 26(b)(3), SCRCP. Further, even if such materials are discoverable, the court must still "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Rule 26(b)(3), SCRCP.

Plaintiffs have not shown any substantial need for GWB's work product, nor how the equivalent is unobtainable. In fact, much of GWB's file from the DJA is readily accessible to Plaintiffs. The Estate was a Defendant in the DJA and received all the discovery in that case. Further, GWB's Amended Privilege Log identifies where the non-privileged equivalents of many documents were produced. *See* Exhibit G. As to the remaining "fact work product" in GWB's file, Plaintiffs have no need of those documents. Much of the file contains administrative materials which, although prepared by GWB for purposes of the DJA litigation, have no bearing whatsoever on the substance of this case. To the extent Plaintiffs argue they do not need to show substantial need for these documents because of the alleged tortious conduct, work product is protected under the same standard as the attorney-client privilege. *See In re Grand Jury # 5,* 401 F.3d at 252-53 (work product "may be discovered upon *prima facie* evidence of a crime or fraud as to the client only."). For the reasons set forth above, Plaintiffs have not made a *prima facie* showing of any crime or fraud committed by State Farm, nor have they connected the alleged fraud to the attorney-client relationship. The evidence is clear: State Farm made a simple processing error that was corrected and fully disclosed to the court and parties. Therefore, Plaintiffs are not entitled to any of GWB's work product.

Second, the mental impressions, opinions and strategies of counsel are entitled to "a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017) (internal citation omitted). To pry into

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

these documents, Plaintiffs must show that the "attorney in question was aware of or a knowing participant in the criminal conduct." *In re Grand Jury # 5*, 401 F.3d 247, 252 n.3 (quoting *In re Doe*, 662 F.2d 1073 (4th Cir. 1981)). Plaintiffs have not come close to meeting this burden. First, as set forth herein, Plaintiffs have made no showing that any fraudulent or criminal conduct occurred. They can only point to differing versions of policy documents, for which State Farm has already provided a meticulous explanation. Second, Plaintiffs have made no showing that GWB ever knew the documents were allegedly false. In fact, Plaintiffs' fraud cause of action is against State Farm alone. *See generally* Compl. Meanwhile, Plaintiffs' allegations against GWB focus on an alleged failure to investigate its client, not knowing participation in fraudulent activity. *See generally* Compl. Therefore, any work product containing the mental impressions, opinions and strategies of counsel remains absolutely protected. However, should the court determine otherwise, GWB requests that the court review such documents in camera before determining whether they must be produced.

**II.      Prior to filing this Response, GWB supplemented its discovery responses and amended its privilege log, resolving several controversies raised by Plaintiffs' Motion.**

         In an effort to narrow the discovery controversies brought before the court, GWB has endeavored to resolve as much of Plaintiffs' complaints as it can without compromising attorney-client and work product protections. This case involves an Underlying Litigation with numerous attorneys, which necessarily complicates any evaluation of attorney-client privilege and the work product and common interest doctrines. Further, Plaintiffs' discovery requests were broad, implicating a large number of documents. Analyzing such a large volume of documents for privilege is a complex and time intensive process. GWB has in good faith endeavored to provide Plaintiffs with thorough discovery responses, while preserving applicable privileges. When necessary, GWB has re-examined its privilege log and supplemented it in the interests of full

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

disclosure. Specifically, GWB has amended its privilege log to include a description of each document withheld and has supplemented its responses. Because GWB has worked to resolve Plaintiffs' discovery concerns and has, since the filing of the Motion, supplemented its privilege log and document production, there is no remaining controversy other than the crime-fraud exception addressed in Section I above. Therefore, Plaintiffs' Motion should be denied.

A. *GWB has amended its Privilege Log, resolving any controversy over the form and contents of the Privilege Log.*

A party claiming privilege "shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Rule 26(b)(5)(A), SCRCP. GWB's first privilege log included the following information: (1) name of the document; (2) senders and recipients of emails; (3) the date and time of each email; and (4) the privilege claimed. Because GWB was State Farm's attorney in the Underlying Litigation, many documents were privileged and the log exceeded one hundred pages.

Plaintiffs have raised concerns over GWB's privilege log, and an explanation of how that privilege log was created will be helpful here. GWB attorneys and employees frequently communicated with State Farm via email, sharing documents as part of ongoing litigation and for the purpose of giving or receiving legal advice. Therefore, those communications and documents are protected by the attorney-client privilege and/or work product doctrine. GWB's privilege log groups documents in their families. For example, if an email contains an attachment, that attachment is associated with the email and appears immediately after the email on the privilege log. In their Motion, Plaintiffs complain that GWB's privilege log contains blank cells. The reason for this is easily ascertained upon review. The privilege log has columns for the dates and times

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

emails were sent, as well as the senders and recipients. Some of the documents in the privilege log are not emails, and so those cells are blank, not because GWB has omitted information, but because the cell is inapplicable.

Plaintiffs also claim that the privilege log is not descriptive enough. "Depending on the case, a privilege log may consist of details like a description and date of the document along with who created and received it" and "[t]he required detail of the privilege log should be decided on a case by case basis." Exhibit 3 to Plaintiffs' Motion, Judge Young Memo. GWB's first privilege log contained document titles, dates, the parties to the communication, and the privilege asserted, which was sufficient to identify the documents withheld. However, in the interest of narrowing the issues before this court, GWB has added a column titled "Description" to the privilege log, which provides further details of each document withheld. Exhibit G. This supplementation resolves any controversy over the form of the privilege log.

Lastly, documents that were designated Confidential in the Underlying Action were included in the privilege log in this action, pending the entry of a Confidentiality Order. GWB has since supplemented its production to include those documents, and removed the same from the privilege log.

        B.      *GWB has supplemented its discovery responses, resolving several issues raised by Plaintiffs in their Motion.*

GWB refers to its Supplemental Responses to Plaintiffs' First Discovery Requests, attached hereto as Exhibit H. In the interest of completeness, this section briefly summarizes GWB's supplemental responses.

Plaintiffs assert that GWB's responses to Standard Interrogatories Numbers 1 and 6 are incomplete. Interrogatory Number 1 sought a list of witnesses and Number 6 a summary of the facts known to those witnesses. In its first discovery responses, GWB listed ten witnesses with

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

summaries of the facts known to them. <u>Exhibit B.</u> Plaintiffs assert that the documents reveal that more witnesses should have been listed. GWB's intent was not to conceal potential witnesses; it produced over 4,000 pages of documents and included the names of all recipients and senders of emails on its privilege log. However, many of those individuals are not witnesses to the particular facts of this case. For example, GWB's file includes emails to and from employees in its billing department, legal assistants, and other administrative professionals who have no substantive knowledge of the facts of this case. Therefore, although GWB has supplemented its responses with greater specificity, not every individual who appears on an email or the privilege log is a witness in this case.

Supplemental Request No. 19 sought State Farm's policies, procedures, guidelines and/or rules for modifying a declaration page. This request could have encompassed any number of documents, which in any event would be State Farm's proprietary documents and the appropriate subject of a Confidentiality Order. GWB has re-examined its file and determined that it does not have any responsive documents in its possession.

## III.     Plaintiffs' Motion mischaracterizes GWB's responses and lacks merit.

Throughout their Motion, Plaintiffs claim that GWB raised boilerplate objections. "Objections that state that the discovery request is 'vague, overly broad, or unduly burdensome' are, standing alone, meaningless and will be found meritless by the court." *See* Motion, pg. 5. Plaintiffs take this proposition from a discovery memorandum by Judge Young, which is extensively cited and attached as Exhibit 3 to the Motion. However, Plaintiffs' Motion ignores the fact that GWB did not raise a single boilerplate objection in its discovery responses. In fact, the vast majority of GWB's objections were made to preserve the attorney-client and work product privileges. GWB was retained by State Farm to represent it in litigation; therefore, a large portion

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

of the documents in GWB's possession are by definition privileged communications and/or work product, necessitating the exact objections GWB made. GWB is unaware of any basis, whether in Judge Young's discovery memorandum or elsewhere, for deeming a privilege objection boilerplate, especially when accompanied by a privilege log.

Further, Plaintiffs take issue with several proper discovery responses. Supplemental Request No. 1 asked GWB to set forth a detailed factual basis for its affirmative defenses and produce all documents that support said defense. In their Motion, Plaintiffs present only GWB's privilege objection to the court, claiming that GWB did not respond to the Request. GWB did substantively respond to the Request, explaining the basis for its defense and referring to the non-privileged documents produced. Exhibit B, pp. 5-6.

Supplemental Request No. 2 sought all documents relating to the State Farm claim associated with the Accident. This request was extensive, and included fifteen subparts. GWB referred to the documents it produced, and objected to the extent the request sought privileged materials. Plaintiffs' Motion is unclear as to their particular objection to this response; however, GWB did properly refer to the documents produced at that time, and has since supplemented its production, as permitted by the South Carolina Rules of Civil Procedure.

Supplemental Discovery Requests 6 and 29 sought the production of all documents, emails and attachments reviewed by State Farm employee Shay Anderson in preparation for the 30(b)(6) deposition of State Farm in the DJA, and all communications between Shay Anderson and GWB. Shay Anderson was State Farm's designee for the purposes of the 30(b)(6) deposition and communicated with GWB attorneys for the purpose of seeking legal advice, cloaking those materials in attorney-client and work product protections. Further, GWB included any non-privileged documents in its response, referring to the exhibits to the 30(b)(6) deposition, which

were responsive to the request and non-privileged. Otherwise, the communications and documents exchanged between Shay Anderson and State Farm's counsel in preparation for the 30(b)(6) deposition were clearly for the purpose of obtaining legal advice and are therefore privileged.

Supplemental Request 23 seeks State Farm's claim file, which remains privileged. GWB received this file confidentially from its client, with a full expectation of privacy for the purposes of litigation. This privilege belongs to State Farm and has not been waived; therefore, GWB cannot ethically produce the claim file.

Supplemental Requests 26-28 sought the identification of the documents GWB had in its possession to support specific allegations in the DJA. In its responses, GWB refers to the policy documents, bates labeled GWB_000454-000514. These are the documents upon which the DJA was based. Further, because Plaintiffs' discovery requests could be construed to encompass privileged communications, GWB preserved its privilege-based objections, while producing the responsive documents.

Supplemental Requests 30-34 sought research, investigation, drafts, and other materials created and/or reviewed by GWB in the course of the DJA. Documents prepared in anticipation of litigation (i.e. drafts, research, and other similar materials) are work product. *See* Rule 26(b)(3), SCRCP ("tangible things...prepared in anticipation of litigation"). Further, many of these materials and the communications concerning them contain the mental impressions, opinions and strategies of counsel. Accordingly, GWB objected to this Request on the basis of privilege and referred to its privilege log. This objection was and remains proper. Further, GWB has since amended its privilege log to add detailed descriptions of each document. *See* Exhibit G.

Supplemental Request 35 sought all materials referenced in answering Plaintiffs' discovery requests. GWB properly referred to the documents it had produced, which were all referenced in

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

discovery. For the reasons set forth in this Response, Plaintiffs' contention that none of the materials are privileged is without merit.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion to Compel should be denied and GWB's file should remain protected by the applicable discovery rules and protections.

Respectfully submitted,

TURNER PADGET GRAHAM & LANEY, P.A.

<u>s/John S. Wilkerson III</u>
John S. Wilkerson, III, SC Bar No.:  6105
40 Calhoun Street, Suite 200
Post Office Box 22129
Charleston, South Carolina 29413-2129
Telephone:   843-576-2801
Facsimile:     843-577-1649
Email:  jwilkerson@turnerpadget.com

Lindsey M. Behnke, SC Bar No.: 105719
1901 Main Street, Suite 1700 (29201)
Post Office Box 1473
Columbia, South Carolina 29202
Telephone:     803-227-4324
Facsimile:      803-400-1525
Email: lbehnke@turnerpadget.com

ATTORNEYS FOR GALLIVAN, WHITE & BOYD, P.A.

May 28, 2024
Charleston, South Carolina

EXHIBIT A

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | |
|---|---|
| **STATE OF SOUTH CAROLINA**<br><br>**COUNTY OF CHARLESTON** | **COURT OF COMMON PLEAS**<br>**NINTH JUDICIAL CIRCUIT**<br>**CASE NO. 23-CP-10-1832** |
| **ROBERT C. WORKMAN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES K. WORKMAN, KELLY WORKMAN TICK AND MATTHEW T. WORKMAN,**<br><br>**PLAINTIFFS,**<br><br>**V.**<br><br>**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND GALLIVAN, WHITE & BOYD, P.A.,**<br><br>**DEFENDANTS.** | **PLAINTIFF ROBERT C. WORKMAN'S FIRST DISCOVERY REQUESTS TO DEFENDANTS** |

**TO DEFENDANTS:**

Pursuant to SCRCP Rules 26, 33, 34 and 36, please fully respond to the discovery served upon you in the time allowed by the rules. Please provide responses to Plaintiffs' counsel named below. Please do not provide boilerplate objections. If protection is claimed, please provide a privilege log. If you have no responsive materials, please so state.

**STANDARD INTERROGATORIES**

1. Give the names and addresses of persons known to the parties or counsel to be witnesses concerning the facts of the case and indicate whether or not

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

written or recorded statements have been taken from the witnesses and indicate who has possession of such statements.

2. Set forth a list of photographs, plats, sketches or other prepared documents in possession of the party that relate to the claim or defense in the case.

3. In cases involving personal injury set forth the names and addresses of all physicians who have treated the party and all hospitals to which the party has been committed in connection with said injuries and also set forth a statement of all medical costs involved.

4. Set forth the names and addresses of all insurance companies which have liability insurance coverage relating to the claim and set forth the number or numbers of the policies involved and the amount or amounts of liability coverage provided in each policy. This includes umbrella coverage and coverage associated with each of the Defendants.

5. List the names and addresses of any expert witnesses whom the party proposes to use as a witness at the trial of the case.

6. For each person known to the parties or counsel to be a witness concerning the facts of the case, set forth either a summary sufficient to inform the other party of the important facts known to or observed by such witness, or provide a copy of any written or recorded statements taken from such witnesses.

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

7. [Defendants only.] If the defendants are improperly identified, give the proper identification and state whether counsel will accept service of an amended summons and pleading reflecting the correct information.

## SUPPLEMENTAL DISCOVERY REQUESTS

1. As to each affirmative defense you assert, state a detailed factual basis for said defense and PRODUCE all documents supporting said defense.

2. PRODUCE all documentation concerning **State Farm Claim Number 40-21B2-49D** with a **date of loss of June 12, 2021**. This is to include all:
   a. Confirmation of Coverage documents;
   b. Claim file notes, entries, communications and the like;
   c. Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by **claim specialist Lee Shivers**;
   d. Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by **claim associate Deborah Grigg**;
   e. Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by **claim team manager Darren P Murdoch**;
   f. Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by **Underwriter Jessica Bass**;

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

g.  Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Underwriter Team Manager **Shay Anderson**;

h.  Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by **statefarmclaims@statefarm.com**;

i.  Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by agent **John P Tankersley, III** or **Jack Tankersley, Pam Middleton or anyone else in that office**.

j.  Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by **Melvin Lamb, Jr.**;

k.  Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by **Melvin Lamb, III**;

l.  Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by **Valerie Lamb**;

m. Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by **law firms or attorneys representing people asserting claims**;

n.  Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by **law firms or attorneys representing you**;

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

    o. Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by **each claimant**;

3. Fully identify each claimant and/or person making a claim related to the June 12, 2021 collision, whether named in the declaratory judgment action or not and to the extent not produced above, **PRODUCE** all communications with them or their representatives, including agreements to be bound by the declaratory judgment action filed in this matter.

4. PRODUCE all of State Farm's documents and documentation concerning the 2004 Chevrolet Tahoe VIN 1GNEK13Z54R235227 driven on June 12, 2021. This includes but is not limited to State Farm insurance policies: 632 3189-B07-40; 632 3189-B07-40A, and 632 3189-B07-40B. This production request includes producing the below listed items in addition to the complete audit trail, including but not limited to identifying who logged into the system, entries made, dates and times thereof, who made said entries, additions, or deletions, who reviewed and/or made said entries and/or changes, etc.

    a. Claims Files;

    b. Underwriting Files;

    c. Entries in computer systems (including Rumba, Enterprise and ECS) and identify who made the entries and when such entries were made;

    d. Emails;

    e. Texts;

    f. Notes;

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

g.  Faxes;

h.  Declaration Pages;

i.  Requests to modify, alter, change, create, etc. the declarations pages;

j.  Requests to modify, alter, change, create, etc. the policy(s);

k.  Responses to any requests to modify, alter, change, create, etc. the declarations pages;

l.  Responses to any requests to modify, alter, change, create, etc. the policy declarations;

m.  Auto Renewal;

n.  Balance Due Notice;

o.  Policy Master Record;

p.  Suspensions;

q.  Reinstatements;

r.  Cancellations;

s.  Underwriting documents;

t.  Approvals; and

u.  Service Requests made whether to the Complex Unit or otherwise.

5.  Fully identify each person who was involved in creating the Declarations Page that states "Prepared Jul 14 2021" attached as Exhibit A to the Complaint in Civil Action 2:21-cv-2623-MBS and as to each person, PRODUCE all documentation related to creating said document, including the requests to create and fully explain the reasons said Declarations Page was created.

6

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

6. PRODUCE all documents, emails and the attachments reviewed by or referenced by Shay Anderson in her deposition of December 14, 2021. This includes but is not limited to those:

   a. Involving Jessica Bass as Referenced on pp. 16-17;

   b. Involving Karen Bond as Referenced on pp. 16-17;

   c. Involving any actuary or actuarial as referenced on pp. 31-33, 35-36, 38-39;

   d. Involving Jennifer Johnsen, Esq.;

   e. The unknown person referenced on p. 59;

   f. Involving the SERFF Tracking Number SFMA-126372492; and

   g. Form filings;

7. PRODUCE all records, notes and documents **Shay Anderson**, Underwriting Team Manager, created, reviewed and/or referred to in her declaration under penalty of perjury dated May 24, 2022 which was filed as Entry No. 81-1 in C.A. No.: 2:21-CV-02623-MBS.

8. PRODUCE all records, notes and documents **Lana Willingham** created, reviewed and/or referred to in her declaration under penalty of perjury dated May 23, 2022 which was filed as Entry No. 81-4 in C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to the service request to process an excluded driver endorsement.

9. PRODUCE all records, notes and documents **Darren Murdoch** created, reviewed and/or referred to in his declaration under penalty of perjury dated

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

May 23, 2022 which was filed as Entry No. 81-3 in C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to paragraphs 12-16.

10. PRODUCE each endorsement and declarations page created by State Farm from the inception of any coverage through the present for the Tahoe at issue referenced in the Complaint filed in Civil Action 2:21-cv-2623-MBS and all documentation supporting the reasons said documents were created.

11. PRODUCE State Farm policies, processes and/or procedures for driver exclusion agreements related to keeping or retaining acceptable policyholders while excluding certain drivers in the household exclusions that were in effect from January 1, 2020 through the present.

12. PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval or that the South Carolina Department of Insurance approved the form 6023DC attached to the Complaint filed in the declaratory judgment civil action number 2:21-cv-2623-MBS. If no such documentation exists, please state that.

13. PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval and/or that the South Carolina Department of Insurance approved the form 6023DC **before** January 1, 2022.

14. PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval or that the South

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Carolina Department of Insurance approved the form 6023DC **after** January 1, 2022.

15. To the extent not already produced, PRODUCE State Farm's complete file and documentation related to submission and approval by the South Carolina Department of Insurance for the Form 6023DC Driver Exclusion attached to the Complaint in Civil Action 2:21-cv-2623-MBS. This includes letters sent by State Farm to the South Carolina Department of Insurance as well as communications received.

16. PRODUCE each communication sent by State Farm denying claims based upon the State Farm South Carolina 6023DC Driver Exclusion Form for the time period of May 1, 2019 through May 1, 2022. This is not limited to Plaintiffs in this case.

17. As to the Tahoe at issue, PRODUCE each certified policy record which underwriter Jessica Bass or anyone else at State Farm created, including but not limited to those dated 08/05/2021 and 11/22/2021 and PRODUCE the requests and responses related to generating each certified policy record.

18. PRODUCE all documents, including the files, notes, computer entries, who made the entries, the audit trail and the like for each computer system of State Farm showing the creation, storage, management, access, including who accessed a web-based system called ECS related to the claims involving Mr. Lamb and Plaintiffs.

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

19. PRODUCE all State Farm's policies, procedures, guidelines and/or rules that were to be followed when creating and/or modifying a declaration page such as the one at issue in this case for the time period of January 1, 2020 through the present.

20. PRODUCE the employment files for each State Farm employee, including those listed below, who was involved with the changes made to the declarations page at issue, including a signed copy of their completed Code of Conduct form to be completed annually. (The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest.) This request to produce also includes write ups for violations of State Farm policies.

    a. Jessica Bass
    b. Lee Shivers
    c. Shay Anderson
    d. Darren P Murdoch
    e. Lana Willingham

21. PRODUCE State Farm's Code of Conduct training course materials and videos as described in State Farm's Doing the Right Thing Code of Conduct, p. 28, in part reproduced below.

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Code of Conduct / DOING THE RIGHT THING / CODE OF CONDUCT FORM COMPLETION

# Code of Conduct Form Completion

We believe in following all applicable laws and regulations, and in behaving ethically and honestly. In accordance with these principles, we all must complete and submit the Code of Conduct Form annually, alongside the annual Code of Conduct training course.  The form should also be filled out any time an actual or potential violation of this Code or conflict of interest arises.

The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest. Submitting the form indicates that you have read and understood the Code of Conduct and:

22. As to each expert you propose to use as a witness at the trial of the case, PRODUCE and/or state:

    a. a complete statement of all opinions the witness will express and the basis and reasons for them;

    b. the facts or data considered by the witness in forming them;

    c. any exhibits that will be used to summarize or support them;

    d. the witness's qualifications, including a list of all publications authored in the previous 10 years;

    e. a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

    f. a statement of the compensation to be paid for the study and testimony in the case.

23. To the extent not already produced, PRODUCE Defendant State Farm's complete claims file relating to the claims made as a result of the collision at issue in this action regardless of who submitted a claim, whether maintained

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

in defendant's field office, regional office, home office, or any other office, including without limitation:

    a) All letters, memoranda, and other forms of written or computerized communication to or from any employee of defendant relating in any way to the processing of the claim at issue in this action;

    b) All written or computerized records of any oral communication, whether in person or by telephone, to or from any employee of defendant relating in any way to the processing of the claim at issue in this action;

    c) All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any claimant relating in any way to the collision at issue in this action;

    d) All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any third party relating in any way to the claim at issue in this action;

    e) All written or computerized records of any investigation conducted in connection with the claim at issue in this action;

    f) All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, to or from any employee of defendant relating in any way to the decision to deny claims asserted in the collision;

    g) All written or computerized communications and written or computerized records of oral communications, whether in person or

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

by telephone, between any employee of defendant and any third party relating in any way to the decision to deny Plaintiffs claims;

h) All other written or computerized documents pertaining to the claim at issue in this litigation; and

i) The file folders in which the preceding documents are kept.

24. PRODUCE State Farm's complete underwriting files referring or relating in any way to the policy at issue in this action, including without limitation:

a) All letters, memoranda, and other forms of written or computerized communication and written or computerized records of oral communications, whether in person or by telephone, referring or relating in any way to the issuance of the policy at issue in this action; and

b) The file folders in which the preceding documents are kept.

25. PRODUCE All claims manuals, memoranda, directives, letters, and other forms of written or computerized communication directed to claims personnel, claims managers, claims supervisors, or any other person acting on behalf of State Farm in the handling of claims that refer or relate in any way to the handling of claims generally or to the handling of claims of like character to the claim at issue in this action, including without limitation:

a) the documents reflecting State Farm's claim settlement policies as they existed at the time State Farm denied the claims at issue in this action; and

b) the documents reflecting any subsequent changes of policy.

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

26. As to the statement "State Farm has investigated this matter and believes, based upon the Policy exclusion referenced herein and applicable South Carolina law, it has no duty to defend or indemnify Father or Son from any claim arising out of the accident described herein…" in paragraph 27 of the Complaint in Civil Action 2:21-cv-2623-MBS filed August 16, 2021:

   a. PRODUCE all documents supporting the truth of the statement that was in the possession, custody or control of State Farm as of August 16, 2021;

   b. PRODUCE all documents supporting the truth of the statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

   c. **FULLY EXPLAIN** the facts you had in your possession, custody or control and why they supported the quoted statement.

27. As to the statement "At the time of the subject accident, Son had been an excluded driver from the Policy for over a year" made in paragraph 31 of the Complaint filed August 16, 2021:

   a. PRODUCE all documents supporting the above statement that was in the possession, custody or control of State Farm defendant as of August 16, 2021;

   b. PRODUCE all documents supporting the above statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

   c. **FULLY EXPLAIN** the facts you had in your possession, custody or control and why they supported the quoted statement.

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

28. As to the statement "Pursuant to S.C. Code Ann. §38-77-340, the exclusion was signed by Father…" made in paragraph 19 of the Complaint filed August 16, 2021:

    a.  PRODUCE all documents supporting the above statement that was in the possession, custody or control of State Farm defendant as of August 16, 2021;

    b.  PRODUCE all documents supporting the above statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

    c.  **FULLY EXPLAIN** the facts you had in your possession, custody or control and why they supported the quoted statement.

29. PRODUCE all communications between Shay Anderson, State Farm Underwriting Team Manager, and Gallivan, White & Boyd, P.A. which relate to C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to reference to SERFF tracking number(s) and documents.

30. PRODUCE all documentation, including records, State Farm files and other materials created and/or reviewed showing the investigation and research performed by Gallivan White & Boyd, P.A. *prior* to filing the Complaint in C.A. No.: 2:21-CV-02623-MBS that supported allegations and claims asserted in the lawsuit. This includes drafts of complaints.

31. PRODUCE all documentation, including records, State Farm files and other materials created and/or reviewed showing the investigation and research

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

performed by Gallivan White & Boyd, P.A. *after* filing the Complaint in C.A. No.: 2:21-CV-02623-MBS that supported allegations and claims asserted in the lawsuit.

32. As to the lawsuit filed C.A. No.: 2:21-CV-02623-MBS, PRODUCE all documents State Farm provided to Gallivan, White & Boyd, P.A. *before* the law firm filed the Complaint in Civil Action 2:21-cv-2623-MBS. This includes emails, texts, files shared via a service, billing record modifications and/or changes, etc.

33. PRODUCE all documents State Farm provided to Gallivan, White & Boyd, P.A. *after* the Complaint in Civil Action 2:21-cv-2623-MBS was filed. This includes emails, texts, files shared via a service, billing record modifications and/or changes, etc.

34. PRODUCE all documents Gallivan, White & Boyd, P.A. provided to State Farm while it represented State Farm in the matter which is the subject of Civil Action 2:21-cv-2623-MBS. This includes retainer agreements, agreements to represent State Farm, emails, texts, files shared via a service, billing records, etc.

35. As to each of the standard interrogatories above as well as other discovery requests, PRODUCE the documents that are referenced or referred to in answering said interrogatories.

36. PRODUCE each document or other evidence you intend to introduce at the trial of this case.

37. Fully identify the names of the individuals who assisted in responding to these discovery requests.

KAHN LAW FIRM, LLP

Justin S. Kahn
SC Bar ID 65100
PO Box 31397
Charleston, SC 29417-1397
p. 843.577.2128
f. 843.577.3538
jskahn@kahnlawfirm.com
ATTORNEYS FOR PLAINTIFFS

April 17, 2023

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

EXHIBIT B

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Robert C. Workman, individually and as
Personal Representative of the Estate of
James K. Workman, Kelly Workman Tick,
and Matthew T. Workman,

                         Plaintiffs,

         vs.

State Farm Mutual Automobile Insurance
Company and Gallivan, White & Boyd, P.A.,

                        Defendants.

COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CIVIL ACTION NO.  23-CP-10-1832

**DEFENDANT
GALLIVAN, WHITE & BOYD, P.A.'S
RESPONSES TO PLAINTIFFS' FIRST
DISCOVERY REQUESTS**

**TO:** **PLAINTIFFS AND THEIR ATTORNEY:**

      Pursuant to Rules 33 and 34 of the South Carolina Rules of Civil Procedure, the Defendant

Gallivan White & Boyd, P.A., ("GWB" or "Defendant") responds to Plaintiff's First Discovery

Requests as follows:

## STANDARD INTERROGATORIES

      1.      Give the names and addresses of persons known to the parties or counsel to be

witnesses concerning the facts of the case and indicate whether or not written or recorded

statements have been taken from the witnesses and indicate who has possession of such statements.

**ANSWER:**

        a)      **Jennifer E. Johnsen**
                    **c/o Turner Padget Graham & Laney**
                    **40 Calhoun Street, Suite 200 (29401)**
                    **P.O. Box 22129**
                    **Charleston, SC 29413**

                    **Jennifer Johnsen is an attorney at GWB who represented State Farm in the
                    Declaratory Judgment Action, C.A. No.: 2:21-cv-02623-MBS ("the DJA").
                    This witness is expected to testify in accordance with GWB's Answer, as to her**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.

b)      **William T. Young**
        **c/o Turner Padget Graham & Laney**
        **40 Calhoun Street, Suite 200 (29401)**
        **P.O. Box 22129**
        **Charleston, SC 29413**

        **William Young is an attorney who formerly worked at GWB and represented State Farm in the Declaratory Judgment Action ("the DJA"). This witness is expected to testify in accordance with GWB's Answer, as to his knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.**

c)      **Natalie R. Ecker**
        **c/o Turner Padget Graham & Laney**
        **40 Calhoun Street, Suite 200 (29401)**
        **P.O. Box 22129**
        **Charleston, SC 29413**

        **Natalie Ecker is an attorney at GWB who represented State Farm in the DJA. This witness is expected to testify in accordance with GWB's Answer, as to her knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.**

d)      **Julia A. Bradshaw**
        **c/o Turner Padget Graham & Laney**
        **40 Calhoun Street, Suite 200 (29401)**
        **P.O. Box 22129**
        **Charleston, SC 29413**

        **Julia Bradshaw is an attorney who formerly worked at GWB at the time of the DJA. This witness is expected to testify in accordance with GWB's Answer, as to her knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.**

e)      **Robert C. Workman, individually and Personal Representative of the Estate of James K. Workman**
        **c/o Kahn Law Firm**
        **562 Savannah Highway**
        **Charleston, SC 29407**

        **It is expected that this witness will testify regarding the allegations of the Complaint, and to the facts and circumstances surrounding the DJA and this action. No written or recorded statements have been taken.**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

f)     **Kelly Workman Tick**
**c/o Kahn Law Firm**
**562 Savannah Highway**
**Charleston, SC 29407**

**This witness is a Plaintiff in this action, but was not a party to the Underlying Action. It is expected this witness will testify regarding the allegations of the Complaint. No written or recorded statements have been taken.**

g)     **Matthew T. Workman**
**c/o Kahn Law Firm**
**562 Savannah Highway**
**Charleston, SC 29407**

**This witness is a Plaintiff in this action, but was not a party to the Underlying Action. It is expected this witness will testify regarding the allegations of the Complaint. No written or recorded statements have been taken.**

h)     **Representative of State Farm**
**c/o Whelan Mellen & Norris**
**89 Broad Street**
**Charleston, SC 29401**

**Plaintiffs conducted a 30(b)(6) deposition of State Farm in the DJA and Shay Anderson served as State Farm's representative. At this time, GWB does not know whether Plaintiffs would notice another 30(b)(6) deposition of State Farm, attempt to call individual witnesses from State Farm, or both. No written or recorded statements have been taken.**

i)     **Melvin O. Lamb, Jr.**
**Address Unknown**

**Melvin O. Lamb, Jr. is the named insured on the policy covering the Tahoe involved in the accident. Although Lamb admitted to having signed the Excluded Driver Endorsement in his Answer in the DJA, he filed an Amended Answer three days later in which he denied having signed the Excluded Driver Endorsement and asserted a counterclaim for indemnification against State Farm. No written or recorded statements have been taken.**

j)     **Melvin O. Lamb, III**
**Address Unknown**

**Melvin O. Lamb, III is the driver of the Tahoe in the accident that resulted in the death of James K. Workman. No written or recorded statements have been taken.**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**GWB reserves the right to call additional witnesses, including any witness or expert identified by any party through the course of discovery.**

2.     Set forth a list of photographs, plats, sketches or other prepared documents in possession of the party that relate to the claim or defense in the case.

**ANSWER:     GWB objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, work product doctrine or other applicable privilege. GWB further objects to this Interrogatory to the extent that it seeks confidential information not subject to disclosure. Subject to and without waiving the foregoing objections, GWB refers to the documents produced herewith and bates labeled GWB_000001-004394. GWB reserves the right to supplement this response at a later date and incorporates by reference all documents produced by the other parties in this action.**

3.     In cases involving personal injury set forth the names and addresses of all physicians who have treated the party and all hospitals to which the party has been committed in connection with said injuries and also set forth a statement of all medical costs involved.

**ANSWER:     Not applicable.**

4.     Set forth the names and addresses of all insurance companies which have liability insurance coverage relating to the claim and set forth the number or numbers of the policies involved and the amount or amounts of liability coverage provided in each policy. This includes umbrella coverage and coverage associated with each of the Defendants.

**ANSWER:     The following insurance policies may provide coverage relating to the claims asserted in this litigation:**

    **(a)     LPL Policy #LPPL221000075001 - Ascot Specialty Insurance Company.**

    **(b)     Excess Policy #LPL7CACD7KJ002 - Ironshore Specialty Insurance Company.**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

5.    List the names and addresses of any expert witnesses whom the party proposes to use as a witness at the trial of the case.

**ANSWER:    GWB has not determined an expert witness(es), if any, it will utilize at the trial of this case. GWB will supplement this response to the extent required by the South Carolina Rules of Civil Procedure and any applicable Scheduling Order.**

6.    For each person known to the parties or counsel to be a witness concerning the facts of the case, set forth either a summary sufficient to inform the other party of the important facts known to or observed by such witness, or provide a copy of any written or recorded statements taken from such witnesses.

**ANSWER:    Please see Answer to Interrogatory No. 1.**

7.    [Defendants only.] If the defendants are improperly identified, give the proper identification and state whether counsel will accept service of an amended summons and pleading reflecting the correct information.

**ANSWER:    GWB is properly identified.**

## SUPPLEMENTAL DISCOVERY REQUESTS

1.    As to each affirmative defense you assert, state a detailed factual basis for said defense and PRODUCE all documents supporting said defense.

**RESPONSE:  GWB objects to this request on the grounds that it is premature, as discovery is still ongoing. Subject to and without waiving this objection, Plaintiffs' Complaint fails to plead any facts that would entitle it to recovery from GWB. Plaintiff Estate of Robert C. Workman was an opposing party in the DJA and the remaining Plaintiffs were not parties to the DJA. Therefore, GWB owed no independent duty to Plaintiffs that could give rise to a cause of action. Further, GWB is immune from Plaintiffs' claims because it was at all times**

TPGL 13995412v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

relevant to the Complaint acting in its professional capacity as State Farm's counsel. GWB reserves the right to supplement this response as the case progresses to trial.

GWB has in its possession the file it maintained while representing State Farm Mutual Automobile Insurance Company in the DJA. GWB objects to the production of these documents to the extent that they are protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. GWB also objects to this request to the extent that it seeks confidential information not subject to disclosure. Subject to and without waiving the foregoing objections, GWB refers to non-privileged and non-confidential documents produced herewith and bates labeled GWB_000001-004394. GWB reserves the right to supplement this response as the case progresses to trial.

2.     PRODUCE all documentation concerning State Farm Claim Number 4021B2-49D with a date of loss of June 12, 2021. This is to include all:

a.     Confirmation of Coverage documents;

b.     Claim file notes, entries, communications and the like;

c.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim specialist Lee Shivers;

d.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim associate Deborah Grigg;

e.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim team manager Darren P Murdoch;

f.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Underwriter Jessica Bass;

g.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Underwriter Team Manager Shay Anderson;

h..     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by statefarmclaims@statefarm.com;

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

  i. Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by agent John P Tankersley, III or Jack Tankersley, Pam Middleton or anyone else in that office.

  j. Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Melvin Lamb, Jr.;

  k. Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Melvin Lamb, III;

  l. Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Valerie Lamb;

  m. Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by law firms or attorneys representing people asserting claims;

  n. Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by law firms or attorneys representing you;

  o. Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by each claimant;

**RESPONSE: GWB objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. GWB also objects to this request to the extent that it seeks confidential information not subject to disclosure. Subject to and without waiving the foregoing objections, to the extent that GWB is in possession of responsive documents, they are produced herein. Further answering, to the extent this request seeks communications between GWB and its client, those documents are protected by the attorney-client privilege. GWB refers to its Privilege Log produced herewith. GWB reserves the right to supplement this response as the case progresses to trial.**

  3. Fully identify each claimant and/or person making a claim related to the June 12, 2021 collision, whether named in the declaratory judgment action or not and to the extent not produced above, PRODUCE all communications with them or their representatives, including agreements to be bound by the declaratory judgment action filed in this matter.

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**RESPONSE:** **GWB objects to this Request on the grounds that it is not relevant to the claims or defenses at issue in this action. Subject to and without waiving this objection, GWB refers to the declaratory judgment action pleadings and communications that are produced herein.**

4.     PRODUCE all of State Farm's documents and documentation concerning the 2004 Chevrolet Tahoe VIN 1GNEK13Z54R235227 driven on June 12, 2021. This includes but is not limited to State Farm insurance policies: 632 3189-B07-40; 632 3189-B07-40A, and 632 3189-B07-40B. This production request includes producing the below listed items in addition to the complete audit trail, including but not limited to identifying who logged into the system, entries made, dates and times thereof, who made said entries, additions, or deletions, who reviewed and/or made said entries and/or changes, etc.

     a.     Claims Files;

     b.     Underwriting Files;

     c.     Entries in computer systems (including Rumba, Enterprise and ECS) and identify who made the entries and when such entries were made;

     d.     Emails;

     e.     Texts;

     f.     Notes;

     g.     Faxes;

     h.     Declaration Pages;

     i.     Requests to modify, alter, change, create, etc. the declarations pages;

     j.     Requests to modify, alter, change, create, etc. the policy(s);

     k.     Responses to any requests to modify, alter, change, create, etc. the declarations pages;

     l.     Responses to any requests to modify, alter, change, create, etc. the policy declarations;

     m.     Auto Renewal;

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

n.  Balance Due Notice;

o.  Policy Master Record;

p.  Suspensions;

q.  Reinstatements;

r.  Cancellations;

s.  Underwriting documents;

t.  Approvals; and

u.  Service Requests made whether to the Complex Unit or otherwise.

**RESPONSE:** **This Request does not appear to be directed to GWB. To the extent that a response from GWB is required, GWB has in its possession only those documents that its client, State Farm, provided it in the declaratory judgment action. GWB objects to the production of those documents to the extent that they are protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the documents produced herein and its Privilege Log.**

5.  Fully identify each person who was involved in creating the Declarations Page that states "Prepared Jul 14 2021" attached as Exhibit A to the Complaint in Civil Action 2:21-cv-2623-MBS and as to each person, PRODUCE all documentation related to creating said document, including the requests to create and fully explain the reasons said Declarations Page was created.

**RESPONSE:** **GWB objects to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB does not have sufficient information to identify each person involved in creating the referenced Declarations Page. GWB refers to the referenced Declarations Page produced herein and bates labeled GWB_000454. GWB is not in possession of any further documents responsive to this request.**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

6.      PRODUCE all documents, emails and the attachments reviewed by or referenced by Shay Anderson in her deposition of **December 14, 2021**. This includes but is not limited to those:

    a.      Involving Jessica Bass as Referenced on pp. 16-17;

    b.      Involving Karen Bond as Referenced on pp. 16-17;

    c.      Involving any actuary or actuarial as referenced on pp. 31-33, 35-36, 38-39;

    d.      Involving Jennifer Johnsen, Esq.;

    e.      The unknown person referenced on p. 59;

    f.      Involving the SERFF Tracking Number SFMA-126372492; and

    g.      Form filings;

**RESPONSE: GWB objects to this Request to the extent that it seeks documents protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the transcript and exhibits of Shay Anderson's deposition, which are produced herewith and bates labeled GWB_003729-004134.**

7.      PRODUCE all records, notes and documents Shay Anderson, Underwriting Team Manager, created, reviewed and/or referred to in her declaration under penalty of perjury dated May 24, 2022 which was filed as Entry No. 81-1 in C.A. No.: 2:21-CV-02623-MBS.

**RESPONSE: GWB objects to this Request on the grounds that it seeks materials protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB is not in possession of the requested compilation of materials.**

8.      PRODUCE all records, notes and documents Lana Willingham created, reviewed and/or referred to in her declaration under penalty of perjury dated May 23, 2022 which was filed

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

as Entry No. 81-4 in C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to the service request to process an excluded driver endorsement.

**RESPONSE: See response to Supplemental Discovery Request No. 7.**

9.      PRODUCE all records, notes and documents Darren Murdoch created, reviewed and/or referred to in his declaration under penalty of perjury dated May 23, 2022 which was filed as Entry No. 81-3 in C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to paragraphs 12-16.

**RESPONSE: See response to Supplemental Discovery Request No. 7.**

10.      PRODUCE each endorsement and declarations page created by State Farm from the inception of any coverage through the present for the Tahoe at issue referenced in the Complaint filed in Civil Action 2:21-cv-2623-MBS and all documentation supporting the reasons said documents were created.

**RESPONSE: GWB is not in possession of each endorsement and declarations page created by State Farm from the inception of coverage through the present. To the extent GWB is in possession of responsive documents, those are produced herein.**

11.      PRODUCE State Farm policies, processes and/or procedures for driver exclusion agreements related to keeping or retaining acceptable policyholders while excluding certain drivers in the household exclusions that were in effect from January 1, 2020 through the present.

**RESPONSE: Responsive documents were produced in the DJA and designated confidential. GWB objects to producing the requested documents before a Confidentiality Order is entered in this case and refers to its Privilege Log produced herewith.**

12.      PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval or that the South Carolina Department of Insurance

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

approved the form 6023DC attached to the Complaint filed in the declaratory judgment civil action number 2:21-cv-2623-MBS. If no such documentation exists, please state that.

**RESPONSE:   This request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

13.     PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval and/or that the South Carolina Department of Insurance approved the form 6023DC before January 1, 2022.

**RESPONSE: This request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

14.     PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval or that the South Carolina Department of Insurance approved the form 6023DC after January 1, 2022.

**RESPONSE: This request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

15.     To the extent not already produced, PRODUCE State Farm's complete file and documentation related to submission and approval by the South Carolina Department of Insurance for the Form 6023DC Driver Exclusion attached to the Complaint in Civil Action 2:21-cv-2623-MBS. This includes letters sent by State Farm to the South Carolina Department of Insurance as well as communications received.

**RESPONSE: This Request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

TPGL 13995412v1

16.     PRODUCE each communication sent by State Farm denying claims based upon the State Farm South Carolina 6023DC Driver Exclusion Form for the time period of May 1, 2019 through May 1, 2022. This is not limited to Plaintiffs in this case.

**RESPONSE:  This Request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB objects to this request to the extent that it seeks documents protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB is not in possession of responsive documents.**

17.     As to the Tahoe at issue, PRODUCE each certified policy record which underwriter Jessica Bass or anyone else at State Farm created, including but not limited to those dated 08/05/2021 and 11/22/2021 and PRODUCE the requests and responses related to generating each certified policy record.

**RESPONSE:  GWB objects to this request to the extent that it seeks documents protected by attorney-client privilege. Subject to and without waiving this objection, GWB refers to documents produced herewith and bates labeled GWB_000001-004394. GWB is not in possession of any other responsive documents.**

18.     PRODUCE all documents, including the files, notes, computer entries, who made the entries, the audit trail and the like for each computer system of State Farm showing the creation, storage, management, access, including who accessed a web-based system called ECS related to the claims involving Mr. Lamb and Plaintiffs.

**RESPONSE:  This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

TPGL 13995412v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

19.     PRODUCE all State Farm's policies, procedures, guidelines and/or rules that were to be followed when creating and/or modifying a declaration page such as the one at issue in this case for the time period of January 1, 2020 through the present.

**RESPONSE**: **To the extent that GWB has responsive documents, it objects to producing those documents before a Confidentiality Order is entered in this case and refers to its Privilege Log.**

20.     PRODUCE the employment files for each State Farm employee, including those listed below, who was involved with the changes made to the declarations page at issue, including a signed copy of their completed Code of Conduct form to be completed annually. (The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest.) This request to produce also includes write ups for violations of State Farm policies.

     a.     Jessica Bass

     b.     Lee Shivers

     c.     Shay Anderson

     d.     Darren P Murdoch

     e.     Lana Willingham

**RESPONSE**: **This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

21.     PRODUCE State Farm's Code of Conduct training course materials and videos as described in State Farm's Doing the Right Thing Code of Conduct, p. 28, in part reproduced below.

---

Code of Conduct/DOING THE RIGHT THING/CODE OF CONDUCT FORM COMPLETION

## Code of Conduct Form Completion

We believe in following all applicable laws and regulations, and in behaving ethically and honestly. In accordance with these principles, we all must complete and submit the Code of Conduct Form annually, alongside the annual Code of Conduct training course. The form should also be filled out any time an actual or potential violation of this Code or conflict of interest arises.

The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest. Submitting the form indicates that you have read and understood the Code of Conduct and:

---

**RESPONSE: This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

22.     As to each expert you propose to use as a witness at the trial of the case, PRODUCE and/or state:

a.     a complete statement of all opinions the witness will express and the basis and reasons for them;

b.     the facts or data considered by the witness in forming them;

c.     any exhibits that will be used to summarize or support them;

d.     the witness's qualifications, including a list of all publications authored in the previous 10 years;

e.     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

f.     a statement of the compensation to be paid for the study and testimony in the case.

**RESPONSE: See answer to Interrogatory No. 5.**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

23.    To the extent not already produced, PRODUCE Defendant State Farm's complete claims file relating to the claims made as a result of the collision at issue in this action regardless of who submitted a claim, whether maintained in defendant's field office, regional office, home office, or any other office, including without limitation:

a.    All letters, memoranda, and other forms of written or computerized communication to or from any employee of defendant relating in any way to the processing of the claim at issue in this action;

b.    All written or computerized records of any oral communication, whether in person or by telephone, to or from any employee of defendant relating in any way to the processing of the claim at issue in this action;

c.    All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any claimant relating in any way to the collision at issue in this action;

d.    All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any third party relating in any way to the claim at issue in this action;

e.    All written or computerized records of any investigation conducted in connection with the claim at issue in this action;

f.    All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, to or from any employee of defendant relating in any way to the decision to deny claims asserted in the collision;

g.    All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any third party relating in any way to the decision to deny Plaintiffs claims;

h.    All other written or computerized documents pertaining to the claim at issue in this litigation; and

i.    The file folders in which the preceding documents are kept.

**RESPONSE:** **GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**To the extent that GWB is in possession of requested documents, they are reflected in the Privilege Log produced herewith.**

24.     PRODUCE State Farm's complete underwriting files referring or relating in any way to the policy at issue in this action, including without limitation:

    a.     All letters, memoranda, and other forms of written or computerized communication and written or computerized records of oral communications, whether in person or by telephone, referring or relating in any way to the issuance of the policy at issue in this action; and

    b.     The file folders in which the preceding documents are kept.

**RESPONSE: This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

25.     PRODUCE All claims manuals, memoranda, directives, letters, and other forms of written or computerized communication directed to claims personnel, claims managers, claims supervisors, or any other person acting on behalf of State Farm in the handling of claims that refer or relate in any way to the handling of claims generally or to the handling of claims of like character to the claim at issue in this action, including without limitation:

    a.     the documents reflecting State Farm's claim settlement policies as they existed at the time State Farm denied the claims at issue in this action; and

    b.     the documents reflecting any subsequent changes of policy.

**RESPONSE: This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

26.     As to the statement "State Farm has investigated this matter and believes, based upon the Policy exclusion referenced herein and applicable South Carolina law, it has no duty to defend or indemnify Father or Son from any claim arising out of the accident described herein..." in paragraph 27 of the Complaint in Civil Action 2:21-cv-2623-MBS filed August 16, 2021:

TPGL 13995412v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

a.   PRODUCE all documents supporting the truth of the statement that was in the possession, custody or control of State Farm as of August 16, 2021;

b.   PRODUCE all documents supporting the truth of the statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

c.   FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.

**RESPONSE:** **GWB objects to this Request to the extent that it seeks information subject to the attorney-client privilege, work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the Policy, including the excluded driver endorsement which was attached to the declaratory judgment action Complaint and is produced herein as GWB_000454-000514.**

27.   As to the statement "At the time of the subject accident, Son had been an excluded driver from the Policy for over a year" made in paragraph 31 of the Complaint filed August 16, 2021:

a.   PRODUCE all documents supporting the above statement that was in the possession, custody or control of State Farm defendant as of August 16, 2021;

b.   PRODUCE all documents supporting the above statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

c.   FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.

**RESPONSE:** **Please see Response to Supplemental Discovery Request No. 26.**

28.   As to the statement "Pursuant to S.C. Code Ann. §38-77-340, the exclusion was signed by Father..." made in paragraph 19 of the Complaint filed August 16, 2021:

a.   PRODUCE all documents supporting the above statement that was in the possession, custody or control of State Farm defendant as of August 16, 2021;

b.   PRODUCE all documents supporting the above statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

    c.    FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.

**RESPONSE: Please see Response to Supplemental Discovery Request No. 26.**

29.    PRODUCE all communications between Shay Anderson, State Farm Underwriting Team Manager, and Gallivan, White & Boyd, P.A. which relate to C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to reference to SERFF tracking number(s) and documents.

**RESPONSE: GWB objects to this request on the grounds that it seeks information that is protected by the attorney-client privilege. GWB refers to its Privilege Log produced herewith.**

30.    PRODUCE all documentation, including records, State Farm files and other materials created and/or reviewed showing the investigation and research performed by Gallivan White & Boyd, P.A. prior to filing the Complaint in C.A. No.: 2:21-CV-02623-MBS that supported allegations and claims asserted in the lawsuit. This includes drafts of complaints.

**RESPONSE: GWB objects to this request on the grounds that it seeks information that is protected by the attorney-client privilege and/or the work product doctrine. GWB refers to its Privilege Log produced herewith.**

31.    PRODUCE all documentation, including records, State Farm files and other materials created and/or reviewed showing the investigation and research performed by Gallivan White & Boyd, P.A. after filing the Complaint in C.A. No.: 2:21-CV-02623-MBS that supported allegations and claims asserted in the lawsuit.

**RESPONSE: GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Further answering, GWB refers to its Privilege Log produced herewith.**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

32.     As to the lawsuit filed C.A. No.: 2:21-CV-02623-MBS, PRODUCE all documents State Farm provided to Gallivan, White & Boyd, P.A. before the law firm filed the Complaint in Civil Action 2:21-cv-2623-MBS. This includes emails, texts, files shared via a service, billing record modifications and/or changes, etc.

**RESPONSE: GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the documents filed with the DJA Complaint and produced herewith. Further answering, GWB refers to its Privilege Log.**

33.     PRODUCE all documents State Farm provided to Gallivan, White & Boyd, P.A. after the Complaint in Civil Action 2:21-cv-2623-MBS was filed. This includes emails, texts, files shared via a service, billing record modifications and/or changes, etc.

**RESPONSE: GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Further answering, GWB refers to its Privilege Log produced herewith.**

34.     PRODUCE all documents Gallivan, White & Boyd, P.A. provided to State Farm while it represented State Farm in the matter which is the subject of Civil Action 2:21-cv-2623-MBS. This includes retainer agreements, agreements to represent State Farm, emails, texts, files shared via a service, billing records, etc.

**RESPONSE: GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Further answering, GWB refers to its Privilege Log produced herewith.**

TPGL 13995412v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

35.    As to each of the standard interrogatories above as well as other discovery requests, PRODUCE the documents that are referenced or referred to in answering said interrogatories.

**RESPONSE**: **GWB refers to the documents produced herewith and bates labeled GWB_000001-004394.**

36.    PRODUCE each document or other evidence you intend to introduce at the trial of this case.

**RESPONSE**: **GWB objects to this Request to the extent that it seeks to invade the mental impressions, legal conclusions, thoughts, impressions and trial strategies of counsel, which are protected by the work product doctrine and/or attorney-client privilege. Subject to and without waiving this objection, GWB reserves the right to use the documents produced herewith and bates labeled GWB_000001-004394. GWB further reserves the right to utilize any other documents produced by any other party to this action and to supplement this response as the case progresses to trial.**

37.    Fully identify the names of the individuals who assisted in responding to these discovery requests.

**RESPONSE**: **The undersigned counsel for GWB prepared the responses to these discovery requests.**

TURNER PADGET GRAHAM & LANEY, P.A.

s/John S. Wilkerson, III
John S. Wilkerson, III, Fed. Id. No. 4657
P.O. Box 22129
Charleston, South Carolina 29413
Telephone:    843-576-2801
Facsimile:    843-577-1649
Email: jwilkerson@turnerpadget.com

AND

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

W. Taylor Stanley, Fed. Id. No.: 11741
Lindsey M. Behnke, Fed. Id. No.: 13921
P.O. Box 1473
Columbia, South Carolina 29202
Telephone:      803-227-4215
                  803-227-4324
Facsimile:      803-400-1560
                  803-400-1525
Email: tstanley@turnerpadget.com
        lbehnke@turnerpadget.com

ATTORNEYS FOR GALLIVAN, WHITE & BOYD, P.A.


October 6, 2023
Charleston, South Carolina

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Robert C. Workman, individually and as
Personal Representative of the Estate of
James K. Workman, Kelly Workman Tick,
and Matthew T. Workman,

                              Plaintiffs,

          vs.

State Farm Mutual Automobile Insurance
Company and Gallivan, White & Boyd, P.A.,

                              Defendants.

COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CIVIL ACTION NO.  23-CP-10-1832

**CERTIFICATE OF SERVICE**

     The undersigned hereby certifies that on 6th day of October, 2023, a copy of *Defendant Gallivan, White & Boyd, P.A.'s Response to Plaintiffs' First Discovery Requests* has been served upon counsel of record via electronic mail, unless otherwise requested, to:

Justin S. Kahn
Wes B. Allison
Kahn Law Firm, LLP
P.O. Box 31397
Charleston, SC  29417-1397
jskahn@kahnlawfirm.com
wallison@kahnlawfirm.com

*Attorneys for Plaintiffs*

Robert W. Whelan
M. Kathleen McTighe Mellen
Whelan Mellen & Norris, LLC
89 Broad Street
Charleston, SC  29401
robbie@whelanmellen.com
katie@whelanmellen.com

*Attorneys for State Farm Mutual Automobile
Insurance Company*

TPGL 13995412v1

EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| State Farm Mutual Automobile Insurance Company, | ) | C.A. No.: 2:21-CV-02623-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Melvin O. Lamb III, Melvin O. Lamb, Jr., | ) | **DECLARATION** |
| The Estate of James K. Workman, | ) | **OF SHAY ANDERSON** |
| Michael H. Moore, Deborah D. Plott, | ) | |
| Angela R. Edwards, Katherine M. Vonesh, | ) | |
| Mathis S. Billman, and Luke E. Billman, | ) | |
| | ) | |
| Defendants. | ) | |

I, Shay Anderson, declare and state as follows:

1.  I am over the age of 21 and I am of sound mind.

2.  I am employed by State Farm Mutual Automobile Insurance Company ("State Farm") as a Team Manager in State Farm's Underwriting Department ("Underwriting").

3.  As part of my job responsibilities, I am knowledgeable of and familiar with Underwriting's processes and procedures for issuing and cancelling automobile insurance contracts in South Carolina, preparing declarations pages, and the performance and handling of underwriting policy transactions. I am also knowledgeable of and familiar with Underwriting's documentation of policy transactions and its record keeping.

4.  I have reviewed and I am familiar with underwriting records relative to insurance policies issued by State Farm to Melvin O. Lamb, Jr. ("Mr. Lamb") and my statements in this declaration are based on my review and findings.

5.  In February 2020, Mr. Lamb was the named insured on more than one auto policy issued by State Farm. Since at least 2017, Mr. Lamb's son, Melvin O. Lamb, III, was an excluded driver on all of Mr. Lamb's in-force auto policies, meaning Mr. Lamb accepted and executed an endorsement excluding all coverage for injury, loss, or damage in the event his son was operating a vehicle. Mr. Lamb accepted and executed those excluded driver endorsements to his auto policies on October 2, 2017, October 27, 2017, November 6, 2017, July 10, 2019, September 7, 2018, January 10, 2020, and February 26, 2020.

6.  On February 7, 2020, Mr. Lamb applied for an auto policy insuring a 2004 Chevrolet Tahoe. Underwriting received the application on February 13, 2020.

Declaration of Shay Anderson, Page **1** of **2**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

7.     Issuance of a new policy generates a declarations page, and certain transactions on the policy may generate new declarations pages thereafter.

8.     On or about February 21, 2020, policy number 632 3189-B07-40 (the "Tahoe Policy") was issued by State Farm with an effective date of February 7, 2020 and a declarations page was prepared (the "First Dec Page").

9.     At the time Mr. Lamb applied for the Tahoe Policy and at the time of the Tahoe Policy's issuance, Lamb III was not a rated driver for Mr. Lamb's Tahoe Policy or any of his other household auto policies.

10.     At the time Mr. Lamb applied for the Tahoe Policy and at the time of the Tahoe Policy's issuance, Lamb III was an excluded driver on each of the other household policies pursuant to excluded driver endorsements signed and accepted by Mr. Lamb.

11.     On March 10, 2020, an excluded driver endorsement to the Tahoe Policy, signed by Mr. Lamb on February 26, 2020, was sent from the Agent's office to Underwriting, but the data entry necessary for that endorsement to appear on a declarations page was not completed by Underwriting.

12.     It appears from Underwriting's records that this processing omission with respect to the excluded driver endorsement was discovered by Underwriting on or around July 9, 2021. A service request was thereafter initiated for the complex unit to complete the previously overlooked entry of the excluded driver endorsement on the Tahoe Policy.

13.     On July 26, 2021, Mr. Lamb requested cancellation of the Tahoe Policy.

14.     Underwriting received the cancellation request on July 27, 2021.

15.     Underwriting processed the cancellation on August 2, 2021, with the effective date of cancellation being June 13, 2021.

16.     On August 5, 2021, a few days after the cancellation request had been received and processed, Underwriting prepared a certified copy of the Tahoe Policy for a June 12, 2021 date of loss.

I, Shay Anderson, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on: 05/24/2022

Shay Anderson
Underwriting Team Manager

Declaration of Shay Anderson, Page **2** of **2**

GWB_000324

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| State Farm Mutual Automobile Insurance Company, | ) ) ) | C.A. No.: 2:21-CV-02623-MBS |
| Plaintiff, | ) ) | |
| vs. | ) ) | **DECLARATION OF DARREN MURDOCH** |
| Melvin O. Lamb III, Melvin O. Lamb, Jr., The Estate of James K. Workman, Michael H. Moore, Deborah D. Plott, Angela R. Edwards, Katherine M. Vonesh, Mathis S. Billman, and Luke E. Billman, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

I, Darren Murdoch, declare and state as follows:

1.  I am over the age of 21, I am of sound mind, and I am personally knowledgeable of the facts set forth in this declaration.

2.  I am employed as a Claim Team Manager with State Farm Mutual Automobile Insurance Company ("State Farm"). As a Claim Team Manager, I manage a team of State Farm Claim Specialists handling claims made under automobile insurance policies, which includes supervising and reviewing claim handling activities.

3.  As part of my responsibilities as Claim Team Manager, I am knowledgeable about claim handling activities and procedures as well as State Farm's record keeping practices with respect to insurance claims made with and handled by State Farm.

4.  It is the regular practice of State Farm Claim Specialists and Team Managers to create, store, manage, and access information regarding an insurance claim with State Farm through a web-based system called ECS.

5.  File notes are made by State Farm Claim Specialists and Team Managers in ECS to log or document information, events, and actions in the course of handling a particular claim, including, by way of example, coverage and liability investigations, coverage and liability determinations, and information, correspondence, documents, and records received. These file notes made by Claim Specialists and Team Managers are recorded, maintained and kept in ECS

Declaration of Darren Murdoch, Page **1** of **3**

GWB_000354

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

in the ordinary course of State Farm's business of handling insurance claims at or near the time of the information, events, and actions they log or document.

6.    I have reviewed in ECS Claim No. 40-21B2-49D (the "subject claim"), which claim arises from a June 12, 2021 car accident involving Melvin O. Lamb, III, ("Lamb III") driving a Tahoe insured by State Farm under an automobile insurance policy issued to Lamb III's father, Melvin O. Lamb, Jr. (the "subject policy").

7.    The following information, events, and activities are within my personal knowledge as the Team Manager for the subject claim or are otherwise documented in ECS for the subject claim:

a.    On June 18, 2021, Claim Specialist Christine Riddick learned of a possible driver exclusion for Lamb III, however she did not see an excluded driver on the subject policy and therefore noted investigation was needed.

b.    That same day, Claim Specialist Lee Shivers investigated coverage. Mr. Shivers spoke with Mark Black of State Farm Agent Jack Tankersley's office regarding the existence of an excluded driver endorsement with respect to Lamb III on the subject policy. Mr. Black informed Mr. Shivers there was no such an endorsement on the subject policy, but there were on the other household policies.

c.    On June 19, 2021, I asked Mr. Shivers to call Underwriting to verify there was no excluded driver on the subject policy because it would be unusual for there to be an excluded driver on some but not all household cars.

d.    On June 29, 2021, Mr. Shivers confirmed with Underwriting there was not a driver exclusion on the subject policy. He later sent letters to Lamb III and Mr. Lamb stating there was "a potential for exposure beyond the limits of liability coverage afforded you under your policy."

e.    On or about July 16, 2021, Mr. Shivers and I learned from underwriting there was an excluded driver endorsement on the subject policy, which endorsement underwriting had received in March 2020 and was effective February 26, 2020.

f.    Thereafter, Claims retained separate counsel to represent Mr. Lamb, Lamb III, and State Farm.

g.    On August 4, 2021, State Farm sent separate Reservation of Rights letters to Mr. Lamb and Lamb III notifying them there may be no duty to defend, indemnify, or

GWB_000355

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

otherwise perform under the subject policy due to Lamb III operating the Tahoe at the time of the accident and the applicable excluded driver endorsement.

h.      Also on August 4, 2021, Mr. Shivers requested from Underwriting a certified copy of the subject policy to provide to State Farm's counsel.

i.      On August 5, 2021, Mr. Shivers received the certified copy of the subject policy from Underwriting and provided the same to State Farm's counsel at Gallivan White & Boyd PA.

I, Darren Murdoch, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on: 5/23/2022

Darren P. Murdoch
Darren Murdoch

Digitally signed by Darren P. Murdoch
Date: 2022.05.23 15:05:56 -04'00'

Declaration of Darren Murdoch, Page **3** of **3**

GWB_000356

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| State Farm Mutual Automobile Insurance Company, | ) ) ) | C.A. No.: 2:21-CV-02623-MBS |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| Melvin O. Lamb III, Melvin O. Lamb, Jr., The Estate of James K. Workman, Michael H. Moore, Deborah D. Plott, Angela R. Edwards, Katherine M. Vonesh, Mathis S. Billman, and Luke E. Billman, | ) ) ) ) ) ) | **DECLARATION OF LANA WILLINGHAM** |
| Defendants. | ) ) | |

I, Lana Willingham, declare and state as follows:

1.    I am over the age of 21, I am of sound mind, and I am personally knowledgeable of the facts set forth in this declaration.

2.    I am employed by State Farm Mutual Automobile Insurance Company ("State Farm") as a Complex Underwriting Service Assistant in State Farm's Underwriting Department.

3.    As part of my job responsibilities, I am knowledgeable of and familiar with State Farm's underwriting processes for policy transactions and underwriting policies.

4.    On or around July 13, 2021, I handled a service request to process an excluded driver endorsement ("driver exclusion") on policy number 632 3189-B07-40 (the "subject policy").

5.    According to the service request, the driver exclusion was effective February 26, 2020.

6.    When I went to enter the driver exclusion on the subject policy, I found the policy had a system generated date block which, unless removed, left June 10, 2021 as the first available date for the policy transaction.

7.    I did not remove the date block on the subject policy. Therefore, when I added the driver exclusion to the subject policy effective February 26, 2020, I used the first available date of June 10, 2021 for the effective date of the transaction.

GWB_000358

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

8.      At the time I added the driver exclusion to the subject policy I did not know there was a claim pending with a June 12, 2021 date of loss.

9.      The date block on the subject policy was not related to the June 12, 2021 date of loss or any claim pending on the subject policy. Instead, the date block was the result of a system reassignment of the named insured Melvin O. Lamb, Jr. as the assigned driver of the Tahoe insured under the subject policy.

10.     Prior to June 10, 2021, Mr. Lamb was identified in State Farm's Underwriting system as the primary operator but not the assigned driver of the Tahoe. His granddaughter was listed as the assigned driver of the Tahoe.

11.     Prior to June 10, 2021, Mr. Lamb was also the named insured on another policy insuring a Honda Pilot, and Mr. Lamb was identified in State Farm's Underwriting system as both the primary operator and the assigned driver of the Honda Pilot. At the time, Mr. Lamb was not identified as the assigned driver of any other household vehicles besides the Honda Pilot.

12.     Mr. Lamb cancelled the policy insuring the Honda Pilot.

13.     Underwriting's policies and procedures require each household driver who is eligible for rating be assigned to an eligible household vehicle. Therefore, when Mr. Lamb cancelled the policy insuring the Honda Pilot, the only household policy on which he was identified as an assigned driver, the Underwriting system (not a particular person) reassigned Mr. Lamb as an assigned driver of the Tahoe. The system reassignment occurred on June 11, 2021, making Mr. Lamb an assigned driver of the Tahoe effective June 10, 2021. This system reassignment created the June 10, 2021 date block on the subject policy.

I, Lana Willingham, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on: _5 - 23 - 2022_   _Lana Willingham_
                                Lana Willingham

Declaration of Lana Willingham, Page **2** of **2**

EXHIBIT H

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Robert C. Workman, individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew T. Workman,

                    Plaintiffs,

          vs.

State Farm Mutual Automobile Insurance Company and Gallivan, White & Boyd, P.A.,

                    Defendants.

COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CIVIL ACTION NO.  23-CP-10-1832

**DEFENDANT
GALLIVAN, WHITE & BOYD, P.A.'S
FIRST SUPPLEMENTAL RESPONSES TO
PLAINTIFFS' FIRST DISCOVERY
REQUESTS**

**TO:   PLAINTIFFS AND THEIR ATTORNEYS:**

Pursuant to Rules 33 and 34 of the South Carolina Rules of Civil Procedure, the Defendant Gallivan White & Boyd, P.A., ("GWB" or "Defendant") submits its First Supplemental Responses to Plaintiffs' First Discovery Requests as follows:

**SUPPLEMENTAL RESPONSES TO PLAINTIFFS' STANDARD INTERROGATORIES**

1.       Give the names and addresses of persons known to the parties or counsel to be witnesses concerning the facts of the case and indicate whether or not written or recorded statements have been taken from the witnesses and indicate who has possession of such statements.

**ANSWER:**

a)       **Jennifer E. Johnsen**
         **c/o Turner Padget Graham & Laney**
         **40 Calhoun Street, Suite 200 (29401)**
         **P.O. Box 22129**
         **Charleston, SC 29413**

         **Jennifer Johnsen is an attorney at GWB who represented State Farm in the Declaratory Judgment Action, C.A. No.: 2:21-cv-02623-MBS ("the DJA"). This witness is expected to testify in accordance with GWB's Answer, as to her**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.

b)    **William T. Young**
      **c/o Turner Padget Graham & Laney**
      **40 Calhoun Street, Suite 200 (29401)**
      **P.O. Box 22129**
      **Charleston, SC 29413**

      **William Young is an attorney who formerly worked at GWB and represented State Farm in the Declaratory Judgment Action ("the DJA"). This witness is expected to testify in accordance with GWB's Answer, as to his knowledge of the facts and circumstances related to this action and the DJA.  No written or recorded statements have been taken.**

c)    **Natalie R. Ecker**
      **c/o Turner Padget Graham & Laney**
      **40 Calhoun Street, Suite 200 (29401)**
      **P.O. Box 22129**
      **Charleston, SC 29413**

      **Natalie Ecker is an attorney at GWB who represented State Farm in the DJA. This witness is expected to testify in accordance with GWB's Answer, as to her knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.**

d)    **Julia A. Bradshaw**
      **c/o Turner Padget Graham & Laney**
      **40 Calhoun Street, Suite 200 (29401)**
      **P.O. Box 22129**
      **Charleston, SC 29413**

      **Julia Bradshaw is an attorney who formerly worked at GWB at the time of the DJA. This witness is expected to testify in accordance with GWB's Answer, as to her knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.**

e)    **Robert C. Workman, individually and Personal Representative of the Estate of James K. Workman**
      **c/o Kahn Law Firm**
      **562 Savannah Highway**
      **Charleston, SC 29407**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

It is expected that this witness will testify regarding the allegations of the Complaint, and to the facts and circumstances surrounding the DJA and this action. No written or recorded statements have been taken.

f)     **Kelly Workman Tick**
       **c/o Kahn Law Firm**
       **562 Savannah Highway**
       **Charleston, SC 29407**

This witness is a Plaintiff in this action, but was not a party to the Underlying Action. It is expected this witness will testify regarding the allegations of the Complaint. No written or recorded statements have been taken.

g)     **Matthew T. Workman**
       **c/o Kahn Law Firm**
       **562 Savannah Highway**
       **Charleston, SC 29407**

This witness is a Plaintiff in this action, but was not a party to the Underlying Action.  It is expected this witness will testify regarding the allegations of the Complaint. No written or recorded statements have been taken.

h)     **Representatives of State Farm**
       **c/o Whelan Mellen & Norris**
       **89 Broad Street**
       **Charleston, SC 29401**

Plaintiffs conducted a 30(b)(6) deposition of State Farm in the DJA and Shay Anderson served as State Farm's representative.  At this time, GWB does not know whether Plaintiffs would notice another 30(b)(6) deposition of State Farm, attempt to call individual witnesses from State Farm, or both. No written or recorded statements have been taken.

i)     **Melvin O. Lamb, Jr.**
       **Address Unknown**

Melvin O. Lamb, Jr. is the named insured on the policy covering the Tahoe involved in the accident.  Although Lamb admitted to having signed the Excluded Driver Endorsement in his Answer in the DJA, he filed an Amended Answer three days later in which he denied having signed the Excluded Driver Endorsement and asserted a counterclaim for indemnification against State Farm. No written or recorded statements have been taken.

j)     **Melvin O. Lamb, III**
       **Address Unknown**

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Melvin O. Lamb, III is the driver of the Tahoe in the accident that resulted in the death of James K. Workman. No written or recorded statements have been taken.**

**GWB reserves the right to call additional witnesses, including any witness or expert identified by any party through the course of discovery.**

**SUPPLEMENTAL ANSWER:**

**Shay Anderson, an employee of State Farm's Underwriting Department, was deposed in the DJA and submitted a Declaration in that case. GWB is not aware of any other written or recorded statements from Shay Anderson.**

**Darren Murdoch, an employee of State Farm's Claims Department, submitted a Declaration in the DJA. GWB is not aware of any other written or recorded statements.**

**Lana Willingham, an employee of State Farm's Underwriting Department, submitted a Declaration in the DJA. GWB is not aware of any other written or recorded statements.**

**Lee Shivers, State Farm Claims Specialist. No written or recorded statement has been taken.**

2.      Set forth a list of photographs, plats, sketches or other prepared documents in possession of the party that relate to the claim or defense in the case.

**ANSWER:**

**GWB objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, work product doctrine or other applicable privilege. GWB further objects to this Interrogatory to the extent that it seeks confidential information not subject to disclosure. Subject to and without waiving the foregoing objections, GWB refers to the documents produced herewith and bates labeled GWB_000001-004394. GWB reserves the right to supplement this response at a later date and incorporates by reference all documents produced by the other parties in this action.**

**SUPPLEMENTAL ANSWER:**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**GWB further refers to the documents produced herewith and identified in Attachment A to these Supplemental Discovery Responses; and its Amended Privilege Log.**

3.      In cases involving personal injury set forth the names and addresses of all physicians who have treated the party and all hospitals to which the party has been committed in connection with said injuries and also set forth a statement of all medical costs involved.

**ANSWER:      Not applicable.**

4.      Set forth the names and addresses of all insurance companies which have liability insurance coverage relating to the claim and set forth the number or numbers of the policies involved and the amount or amounts of liability coverage provided in each policy. This includes umbrella coverage and coverage associated with each of the Defendants.

**ANSWER:      The following insurance policies may provide coverage relating to the claims asserted in this litigation:**

**(a)      LPL Policy #LPPL221000075001 - Ascot Specialty Insurance Company.**

**(b)      Excess Policy #LPL7CACD7KJ002 - Ironshore Specialty Insurance Company.**

5.      List the names and addresses of any expert witnesses whom the party proposes to use as a witness at the trial of the case.

**ANSWER:**

**GWB has not determined an expert witness(es), if any, it will utilize at the trial of this case. GWB will supplement this response to the extent required by the South Carolina Rules of Civil Procedure and any applicable Scheduling Order.**

6.      For each person known to the parties or counsel to be a witness concerning the facts of the case, set forth either a summary sufficient to inform the other party of the important facts

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

known to or observed by such witness, or provide a copy of any written or recorded statements taken from such witnesses.

**ANSWER:**     **Please see Answer to Interrogatory No. 1.**

7.      [Defendants only.] If the defendants are improperly identified, give the proper identification and state whether counsel will accept service of an amended summons and pleading reflecting the correct information.

**ANSWER:**     **GWB is properly identified.**

## SUPPLEMENTAL RESPONSES TO PLAINTIFFS' SUPPLEMENTAL DISCOVERY REQUESTS

1.      As to each affirmative defense you assert, state a detailed factual basis for said defense and PRODUCE all documents supporting said defense.

**RESPONSE:**

**GWB objects to this request on the grounds that it is premature, as discovery is still ongoing. Subject to and without waiving this objection, Plaintiffs' Complaint fails to plead any facts that would entitle it to recovery from GWB. Plaintiff Estate of Robert C. Workman was an opposing party in the DJA and the remaining Plaintiffs were not parties to the DJA. Therefore, GWB owed no independent duty to Plaintiffs that could give rise to a cause of action. Further, GWB is immune from Plaintiffs' claims because it was at all times relevant to the Complaint acting in its professional capacity as State Farm's counsel. GWB reserves the right to supplement this response as the case progresses to trial.**

**GWB has in its possession the file it maintained while representing State Farm Mutual Automobile Insurance Company in the DJA. GWB objects to the production of these documents to the extent that they are protected by the attorney-client privilege, the work**

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

product doctrine, or any other applicable privilege. GWB also objects to this request to the extent that it seeks confidential information not subject to disclosure. Subject to and without waiving the foregoing objections, GWB refers to non-privileged and non-confidential documents produced herewith and bates labeled GWB_000001-004394. GWB reserves the right to supplement this response as the case progresses to trial.

**SUPPLEMENTAL RESPONSE:**

GWB further refers to the documents produced herewith and identified in Attachment A to these Supplemental Discovery Responses; and its Amended Privilege Log.

2.      PRODUCE all documentation concerning State Farm Claim Number 4021B2-49D with a date of loss of June 12, 2021. This is to include all:

a.      Confirmation of Coverage documents;

b.      Claim file notes, entries, communications and the like;

c.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim specialist Lee Shivers;

d.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim associate Deborah Grigg;

e.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim team manager Darren P Murdoch;

f.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Underwriter Jessica Bass;

g.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Underwriter Team Manager Shay Anderson;

h..     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by statefarmclaims@statefarm.com;

i.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by agent John P Tankersley, III or Jack Tankersley, Pam Middleton or anyone else in that office.

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

j.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Melvin Lamb, Jr.;

k.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Melvin Lamb, III;

l.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Valerie Lamb;

m.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by law firms or attorneys representing people asserting claims;

n.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by law firms or attorneys representing you;

o.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by each claimant;

**RESPONSE:**

**GWB objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. GWB also objects to this request to the extent that it seeks confidential information not subject to disclosure. Subject to and without waiving the foregoing objections, to the extent that GWB is in possession of responsive documents, they are produced herein. Further answering, to the extent this request seeks communications between GWB and its client, those documents are protected by the attorney-client privilege. GWB refers to its Privilege Log produced herewith. GWB reserves the right to supplement this response as the case progresses to trial.**

**SUPPLEMENTAL RESPONSE:**

**GWB further refers to the documents produced herewith and identified in Attachment A to these Supplemental Discovery Responses; and its Amended Privilege Log.**

3.     Fully identify each claimant and/or person making a claim related to the June 12, 2021 collision, whether named in the declaratory judgment action or not and to the extent not

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

produced above, PRODUCE all communications with them or their representatives, including agreements to be bound by the declaratory judgment action filed in this matter.

**RESPONSE:**

**GWB objects to this Request on the grounds that it is not relevant to the claims or defenses at issue in this action. Subject to and without waiving this objection, GWB refers to the declaratory judgment action pleadings and communications that are produced herein.**

4.      PRODUCE all of State Farm's documents and documentation concerning the 2004 Chevrolet Tahoe VIN 1GNEK13Z54R235227 driven on June 12, 2021. This includes but is not limited to State Farm insurance policies: 632 3189-B07-40; 632 3189-B07-40A, and 632 3189-B07-40B. This production request includes producing the below listed items in addition to the complete audit trail, including but not limited to identifying who logged into the system, entries made, dates and times thereof, who made said entries, additions, or deletions, who reviewed and/or made said entries and/or changes, etc.

    a.      Claims Files;

    b.      Underwriting Files;

    c.      Entries in computer systems (including Rumba, Enterprise and ECS) and identify who made the entries and when such entries were made;

    d.      Emails;

    e.      Texts;

    f.      Notes;

    g.      Faxes;

    h.      Declaration Pages;

    i.      Requests to modify, alter, change, create, etc. the declarations pages;

    j.      Requests to modify, alter, change, create, etc. the policy(s);

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

k.      Responses to any requests to modify, alter, change, create, etc. the declarations pages;

l.      Responses to any requests to modify, alter, change, create, etc. the policy declarations;

m.      Auto Renewal;

n.      Balance Due Notice;

o.      Policy Master Record;

p.      Suspensions;

q.      Reinstatements;

r.      Cancellations;

s.      Underwriting documents;

t.      Approvals; and

u.      Service Requests made whether to the Complex Unit or otherwise.

**RESPONSE:**

**This Request does not appear to be directed to GWB. To the extent that a response from GWB is required, GWB has in its possession only those documents that its client, State Farm, provided it in the declaratory judgment action. GWB objects to the production of those documents to the extent that they are protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the documents produced herein and its Privilege Log.**

5.      Fully identify each person who was involved in creating the Declarations Page that states "Prepared Jul 14 2021" attached as Exhibit A to the Complaint in Civil Action 2:21-cv-2623-MBS and as to each person, PRODUCE all documentation related to creating said document, including the requests to create and fully explain the reasons said Declarations Page was created.

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**RESPONSE:**

GWB objects to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB does not have sufficient information to identify each person involved in creating the referenced Declarations Page. GWB refers to the referenced Declarations Page produced herein and bates labeled GWB_000454. GWB is not in possession of any further documents responsive to this request.

6.    PRODUCE all documents, emails and the attachments reviewed by or referenced by Shay Anderson in her deposition of **December 14, 2021**. This includes but is not limited to those:

    a.    Involving Jessica Bass as Referenced on pp. 16-17;

    b.    Involving Karen Bond as Referenced on pp. 16-17;

    c.    Involving any actuary or actuarial as referenced on pp. 31-33, 35-36, 38-39;

    d.    Involving Jennifer Johnsen, Esq.;

    e.    The unknown person referenced on p. 59;

    f.    Involving the SERFF Tracking Number SFMA-126372492; and

    g.    Form filings;

**RESPONSE:**

GWB objects to this Request to the extent that it seeks documents protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the transcript and exhibits of Shay Anderson's deposition, which are produced herewith and bates labeled GWB_003729-004134.

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**SUPPLEMENTAL RESPONSE:**

Further answering, in the 30(b)(6) deposition of State Farm in the Underlying Action, Shay Anderson testified that she reviewed the Declaratory Judgment Complaint, State Farm's discovery responses in the Underlying Action, documents produced by State Farm in the Underlying Action prior to the deposition, and documents produced in response to the Estate's subpoena to State Farm. See Deposition Transcript, pp. 11-13.

7.      PRODUCE all records, notes and documents Shay Anderson, Underwriting Team Manager, created, reviewed and/or referred to in her declaration under penalty of perjury dated May 24, 2022 which was filed as Entry No. 81-1 in C.A. No.: 2:21-CV-02623-MBS.

**RESPONSE:**

GWB objects to this Request on the grounds that it seeks materials protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB is not in possession of the requested compilation of materials.

**SUPPLEMENTAL RESPONSE:**

Further answering, while GWB is not in possession of a specific compilation of materials Shay Anderson reviewed ahead of her declaration, GWB refers to the non-privileged and non-work product policy documents already produced in this case.

8.      PRODUCE all records, notes and documents Lana Willingham created, reviewed and/or referred to in her declaration under penalty of perjury dated May 23, 2022 which was filed as Entry No. 81-4 in C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to the service request to process an excluded driver endorsement.

**RESPONSE: See response to Supplemental Discovery Request No. 7.**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**SUPPLEMENTAL RESPONSE:**

**Further answering, while GWB is not in possession of a specific compilation of materials Lana Willingham reviewed ahead of her declaration, GWB refers to the non-privileged and non-work product policy documents already produced in this case.**

9.     PRODUCE all records, notes and documents Darren Murdoch created, reviewed and/or referred to in his declaration under penalty of perjury dated May 23, 2022 which was filed as Entry No. 81-3 in C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to paragraphs 12-16.

**RESPONSE:  See response to Supplemental Discovery Request No. 7.**

**SUPPLEMENTAL RESPONSE:**

**Further answering, while GWB is not in possession of a specific compilation of materials Darren Murdoch reviewed ahead of his declaration, GWB refers to the non-privileged and non-work product policy documents already produced in this case.**

10.     PRODUCE each endorsement and declarations page created by State Farm from the inception of any coverage through the present for the Tahoe at issue referenced in the Complaint filed in Civil Action 2:21-cv-2623-MBS and all documentation supporting the reasons said documents were created.

**RESPONSE:**

**GWB is not in possession of each endorsement and declarations page created by State Farm from the inception of coverage through the present. To the extent GWB is in possession of responsive documents, those are produced herein.**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**SUPPLEMENTAL RESPONSE:**

**GWB refers to Declarations Pages and Endorsements for policy periods February 7, 2020 to August 7, 2020; August 23, 2020 to February 7, 2021; and June 10, 2021 to February 7, 2022. These Declarations Pages and Endorsements were produced in the DJA litigation, and have also been produced multiple times in this case, including at GWB_001148 – 001172.**

11.    PRODUCE State Farm policies, processes and/or procedures for driver exclusion agreements related to keeping or retaining acceptable policyholders while excluding certain drivers in the household exclusions that were in effect from January 1, 2020 through the present.

**RESPONSE:**

**Responsive documents were produced in the DJA and designated confidential. GWB objects to producing the requested documents before a Confidentiality Order is entered in this case and refers to its Privilege Log produced herewith.**

**SUPPLEMENTAL RESPONSE:**

**GWB refers to documents produced pursuant to the Confidentiality Order and bates labeled GWB_004717-004738. These documents were produced in a prior litigation in response to a subpoena from the Estate of James K. Workman.**

12.    PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval or that the South Carolina Department of Insurance approved the form 6023DC attached to the Complaint filed in the declaratory judgment civil action number 2:21-cv-2623-MBS. If no such documentation exists, please state that.

**RESPONSE:**

**This request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

13.     PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval and/or that the South Carolina Department of Insurance approved the form 6023DC before January 1, 2022.

**RESPONSE:**

**This request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

14.     PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval or that the South Carolina Department of Insurance approved the form 6023DC after January 1, 2022.

**RESPONSE:**

**This request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

15.     To the extent not already produced, PRODUCE State Farm's complete file and documentation related to submission and approval by the South Carolina Department of Insurance for the Form 6023DC Driver Exclusion attached to the Complaint in Civil Action 2:21-cv-2623-MBS. This includes letters sent by State Farm to the South Carolina Department of Insurance as well as communications received.

**RESPONSE:**

**This Request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

16.     PRODUCE each communication sent by State Farm denying claims based upon the State Farm South Carolina 6023DC Driver Exclusion Form for the time period of May 1, 2019 through May 1, 2022. This is not limited to Plaintiffs in this case.

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**RESPONSE:**

**This Request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB objects to this request to the extent that it seeks documents protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB is not in possession of responsive documents.**

17.     As to the Tahoe at issue, PRODUCE each certified policy record which underwriter Jessica Bass or anyone else at State Farm created, including but not limited to those dated 08/05/2021 and 11/22/2021 and PRODUCE the requests and responses related to generating each certified policy record.

**RESPONSE:**

**GWB objects to this request to the extent that it seeks documents protected by attorney-client privilege. Subject to and without waiving this objection, GWB refers to documents produced herewith and bates labeled GWB_000001-004394. GWB is not in possession of any other responsive documents.**

**SUPPLEMENTAL RESPONSE:**

**The certified policy records dated August 5, 2021 and November 22, 2021 are the only certified policy records in GWB's possession. These were produced in the Underlying Action and are produced in this case at GWB_001185 and GWB_001212.**

18.     PRODUCE all documents, including the files, notes, computer entries, who made the entries, the audit trail and the like for each computer system of State Farm showing the creation, storage, management, access, including who accessed a web-based system called ECS related to the claims involving Mr. Lamb and Plaintiffs.

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**RESPONSE:**

**This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

19.    PRODUCE all State Farm's policies, procedures, guidelines and/or rules that were to be followed when creating and/or modifying a declaration page such as the one at issue in this case for the time period of January 1, 2020 through the present.

**RESPONSE:**

**To the extent that GWB has responsive documents, it objects to producing those documents before a Confidentiality Order is entered in this case and refers to its Privilege Log.**

**SUPPLEMENTAL RESPONSE:**

**Upon information and belief, GWB is not in possession of documents responsive to this request.**

20.    PRODUCE the employment files for each State Farm employee, including those listed below, who was involved with the changes made to the declarations page at issue, including a signed copy of their completed Code of Conduct form to be completed annually. (The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest.) This request to produce also includes write ups for violations of State Farm policies.

a.    Jessica Bass

b.    Lee Shivers

c.    Shay Anderson

d.    Darren P Murdoch

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

    e.    Lana Willingham

**RESPONSE:**

    **This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

    21.    PRODUCE State Farm's Code of Conduct training course materials and videos as described in State Farm's Doing the Right Thing Code of Conduct, p. 28, in part reproduced below.

---

Code of Conduct/DOING THE RIGHT THING/CODE OF CONDUCT FORM COMPLETION

## Code of Conduct Form Completion

We believe in following all applicable laws and regulations, and in behaving ethically and honestly. In accordance with these principles, we all must complete and submit the Code of Conduct Form annually, alongside the annual Code of Conduct training course. The form should also be filled out any time an actual or potential violation of this Code or conflict of interest arises.

The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest. Submitting the form indicates that you have read and understood the Code of Conduct and:

---

**RESPONSE:**

    **This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

    22.    As to each expert you propose to use as a witness at the trial of the case, PRODUCE and/or state:

    a.    a complete statement of all opinions the witness will express and the basis and reasons for them;

    b.    the facts or data considered by the witness in forming them;

    c.    any exhibits that will be used to summarize or support them;

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

    d.     the witness's qualifications, including a list of all publications authored in the previous 10 years;

    e.     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

    f.     a statement of the compensation to be paid for the study and testimony in the case.

**RESPONSE:**

    **See answer to Interrogatory No. 5.**

23.    To the extent not already produced, PRODUCE Defendant State Farm's complete claims file relating to the claims made as a result of the collision at issue in this action regardless of who submitted a claim, whether maintained in defendant's field office, regional office, home office, or any other office, including without limitation:

    a.     All letters, memoranda, and other forms of written or computerized communication to or from any employee of defendant relating in any way to the processing of the claim at issue in this action;

    b.     All written or computerized records of any oral communication, whether in person or by telephone, to or from any employee of defendant relating in any way to the processing of the claim at issue in this action;

    c.     All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any claimant relating in any way to the collision at issue in this action;

    d.     All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any third party relating in any way to the claim at issue in this action;

    e.     All written or computerized records of any investigation conducted in connection with the claim at issue in this action;

    f.     All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, to or from any employee of defendant relating in any way to the decision to deny claims asserted in the collision;

    g.     All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

of defendant and any third party relating in any way to the decision to deny Plaintiffs claims;

h.  All other written or computerized documents pertaining to the claim at issue in this litigation; and

i.  The file folders in which the preceding documents are kept.

**RESPONSE:**

**GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. To the extent that GWB is in possession of requested documents, they are reflected in the Privilege Log produced herewith.**

24.  PRODUCE State Farm's complete underwriting files referring or relating in any way to the policy at issue in this action, including without limitation:

a.  All letters, memoranda, and other forms of written or computerized communication and written or computerized records of oral communications, whether in person or by telephone, referring or relating in any way to the issuance of the policy at issue in this action; and

b.  The file folders in which the preceding documents are kept.

**RESPONSE:**

**This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

25.  PRODUCE All claims manuals, memoranda, directives, letters, and other forms of written or computerized communication directed to claims personnel, claims managers, claims supervisors, or any other person acting on behalf of State Farm in the handling of claims that refer or relate in any way to the handling of claims generally or to the handling of claims of like character to the claim at issue in this action, including without limitation:

a.  the documents reflecting State Farm's claim settlement policies as they existed at the time State Farm denied the claims at issue in this action; and

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

  b.  the documents reflecting any subsequent changes of policy.

**RESPONSE:**

  **This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

  26.  As to the statement "State Farm has investigated this matter and believes, based upon the Policy exclusion referenced herein and applicable South Carolina law, it has no duty to defend or indemnify Father or Son from any claim arising out of the accident described herein..." in paragraph 27 of the Complaint in Civil Action 2:21-cv-2623-MBS filed August 16, 2021:

  a.  PRODUCE all documents supporting the truth of the statement that was in the possession, custody or control of State Farm as of August 16, 2021;

  b.  PRODUCE all documents supporting the truth of the statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

  c.  FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.

**RESPONSE:**

  **GWB objects to this Request to the extent that it seeks information subject to the attorney-client privilege, work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the Policy, including the excluded driver endorsement which was attached to the declaratory judgment action Complaint and is produced herein as GWB_000454-000514.**

  27.  As to the statement "At the time of the subject accident, Son had been an excluded driver from the Policy for over a year" made in paragraph 31 of the Complaint filed August 16, 2021:

  a.  PRODUCE all documents supporting the above statement that was in the possession, custody or control of State Farm defendant as of August 16, 2021;

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

    b.    PRODUCE all documents supporting the above statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

    c.    FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.

**RESPONSE:**

**Please see Response to Supplemental Discovery Request No. 26.**

28.    As to the statement "Pursuant to S.C. Code Ann. §38-77-340, the exclusion was signed by Father..." made in paragraph 19 of the Complaint filed August 16, 2021:

    a.    PRODUCE all documents supporting the above statement that was in the possession, custody or control of State Farm defendant as of August 16, 2021;

    b.    PRODUCE all documents supporting the above statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

    c.    FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.

**RESPONSE:**

**Please see Response to Supplemental Discovery Request No. 26.**

29.    PRODUCE all communications between Shay Anderson, State Farm Underwriting Team Manager, and Gallivan, White & Boyd, P.A. which relate to C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to reference to SERFF tracking number(s) and documents.

**RESPONSE:**

**GWB objects to this request on the grounds that it seeks information that is protected by the attorney-client privilege. GWB refers to its Privilege Log produced herewith.**

30.    PRODUCE all documentation, including records, State Farm files and other materials created and/or reviewed showing the investigation and research performed by Gallivan

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

White & Boyd, P.A. prior to filing the Complaint in C.A. No.: 2:21-CV-02623-MBS that supported allegations and claims asserted in the lawsuit. This includes drafts of complaints.

**RESPONSE:**

**GWB objects to this request on the grounds that it seeks information that is protected by the attorney-client privilege and/or the work product doctrine. GWB refers to its Privilege Log produced herewith.**

**SUPPLEMENTAL RESPONSE:**

**Subject to and without waiving this objection, GWB states that prior to filing the DJA, it obtained a copy of the policy and the named driver exclusion, which were attached as exhibits to the DJA Complaint and produced multiple times in this case, including at GWB_000454-000514.**

31.    PRODUCE all documentation, including records, State Farm files and other materials created and/or reviewed showing the investigation and research performed by Gallivan White & Boyd, P.A. after filing the Complaint in C.A. No.: 2:21-CV-02623-MBS that supported allegations and claims asserted in the lawsuit.

**RESPONSE:**

**GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Further answering, GWB refers to its Privilege Log produced herewith.**

**SUPPLEMENTAL RESPONSE:**

**Subject to and without waiving this objection, GWB refers to the policy documents produced in this case.**

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

32. As to the lawsuit filed C.A. No.: 2:21-CV-02623-MBS, PRODUCE all documents State Farm provided to Gallivan, White & Boyd, P.A. before the law firm filed the Complaint in Civil Action 2:21-cv-2623-MBS. This includes emails, texts, files shared via a service, billing record modifications and/or changes, etc.

**RESPONSE:**

**GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the documents filed with the DJA Complaint and produced herewith. Further answering, GWB refers to its Privilege Log.**

33. PRODUCE all documents State Farm provided to Gallivan, White & Boyd, P.A. after the Complaint in Civil Action 2:21-cv-2623-MBS was filed. This includes emails, texts, files shared via a service, billing record modifications and/or changes, etc.

**RESPONSE:**

**GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Further answering, GWB refers to its Privilege Log produced herewith.**

34. PRODUCE all documents Gallivan, White & Boyd, P.A. provided to State Farm while it represented State Farm in the matter which is the subject of Civil Action 2:21-cv-2623-MBS. This includes retainer agreements, agreements to represent State Farm, emails, texts, files shared via a service, billing records, etc.

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**RESPONSE:**

**GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Further answering, GWB refers to its Privilege Log produced herewith.**

35.      As to each of the standard interrogatories above as well as other discovery requests, PRODUCE the documents that are referenced or referred to in answering said interrogatories.

**RESPONSE:**

**GWB refers to the documents produced herewith and bates labeled GWB_000001-004394.**

**SUPPLEMENTAL RESPONSE:**

**GWB further refers to the documents produced herewith and identified in Attachment A to these Supplemental Discovery Responses; and its Amended Privilege Log.**

36.      PRODUCE each document or other evidence you intend to introduce at the trial of this case.

**RESPONSE:**

**GWB objects to this Request to the extent that it seeks to invade the mental impressions, legal conclusions, thoughts, impressions and trial strategies of counsel, which are protected by the work product doctrine and/or attorney-client privilege.  Subject to and without waiving this objection, GWB reserves the right to use the documents produced herewith and bates labeled GWB_000001-004394. GWB further reserves the right to utilize any other documents produced by any other party to this action and to supplement this response as the case progresses to trial.**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**SUPPLEMENTAL RESPONSE:**

GWB further refers to the documents produced herewith and identified in Attachment A to these Supplemental Discovery Responses; and its Amended Privilege Log.

37.     Fully identify the names of the individuals who assisted in responding to these discovery requests.

**RESPONSE:**

The undersigned counsel for GWB prepared the responses to these discovery requests.

TURNER PADGET GRAHAM & LANEY, P.A.

s/John S. Wilkerson
John S. Wilkerson, III, SC Bar No.:  6105
40 Calhoun Street, Suite 200
Post Office Box 22129
Charleston, South Carolina 29413-2129
Telephone:   843-576-2801
Facsimile:     843-577-1649
Email:   jwilkerson@turnerpadget.com

Lindsey M. Behnke, SC Bar No.: 105719
1901 Main Street, Suite 1700 (29201)
Post Office Box 1473
Columbia, South Carolina 29202
Telephone:       803-227-4324
Facsimile:        803-400-1525
Email: lbehnke@turnerpadget.com

ATTORNEYS FOR GALLIVAN, WHITE & BOYD, P.A.

May 24, 2024
Charleston, South Carolina

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Robert C. Workman, individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew T. Workman,

                    Plaintiffs,

          vs.

State Farm Mutual Automobile Insurance Company and Gallivan, White & Boyd, P.A.,

                    Defendants.

COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CIVIL ACTION NO. 23-CP-10-1832

**Attachment A to GWB's First Supplemental Discovery Responses:
Index of Supplemental Document Production**

Non-privileged portions of the following documents are produced as part of GWB's Supplemental Document Production dated May 24, 2024. The privileged portions of the documents are redacted and included on the Amended Privilege Log.

| | |
|---|---|
| GWB_004539-004551 | GWB_006457-006468 |
| GWB_004991-004992 | GWB_006504-006520 |
| GWB_005488-005490 | GWB_006845-006846 |
| GWB_005613-005616 | GWB_007803-007804 |
| GWB_005619-005620 | GWB_007806-007811 |
| GWB_005758-005761 | GWB_007821-7822 |
| GWB_005780 | GWB_007825-007826 |
| GWB_005827 | GWB_000784 |
| GWB_005831-005835 | GWB_007844-007847 |
| GWB_005921-005922 | GWB_007868-007874 |
| GWB_005932-005933 | GWB_008257-008260 |
| GWB_005947-005950 | GWB_008342-008346 |
| GWB_005961-005965 | GWB_008414-008416 |
| GWB_005974-005975 | GWB_008468 |
| GWB_005991-005992 | GWB_009248-009249 |
| GWB_006376-006377 | GWB_009971-009997 |
| GWB_006438-006439 | GWB_010000-010001 |
| GWB_006440-006452 | GWB_010493-010500 |

The following documents are produced un-redacted under the Confidentiality Order:
GWB_004395
GWB_004716-004738
GWB_008983-009007
GWB_009250-009290

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Robert C. Workman, individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew T. Workman,

Plaintiffs,

vs.

State Farm Mutual Automobile Insurance Company and Gallivan, White & Boyd, P.A.,

Defendants.

COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CIVIL ACTION NO. 23-CP-10-1832

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 24th day of May, 2024, a copy of ***Defendant Gallivan, White & Boyd, P.A.'s First Supplemental Responses to Plaintiffs' First Discovery Requests,*** GWB's supplemental document production as described in Attachment A; and Amended Privilege Log, has been served upon counsel of record via electronic mail, unless otherwise requested, to:

Justin S. Kahn                 *Attorneys for Plaintiffs*
Wes B. Allison
Kahn Law Firm, LLP
P.O. Box 31397
Charleston, SC 29417-1397
jskahn@kahnlawfirm.com
wallison@kahnlawfirm.com
Sean Claggett
sean@claggettlaw.com

Robert W. Whelan          *Attorneys for State Farm Mutual Automobile*
M. Kathleen McTighe Mellen      *Insurance Company*
Whelan Mellen & Norris, LLC
89 Broad Street
Charleston, SC 29401
robbie@whelanmellen.com
katie@whelanmellen.com

s/Cynthia Dillard
Cynthia Dillard

TPGL 14485263v1

Gallivan White and Boyd, P.A. Amended Privilege Log

EXHIBIT G

| Beginning Bates | File Name | Email To Address | Email From Address | Email CC Address | Email Date Received | Email Time Received | Description | Privilege |
|---|---|---|---|---|---|---|---|---|
| GWB_004405-4406; GWB_000010-000011 | Correspondence.pdf | | | | | | Redaction of Letter from Mitch Griffith, attorney hired by SFMAIC to represent and defend Lamb III, to Robert Wyndham, personal attorney for Lamb III, regarding demand from Estate of Workman and message to be relayed to Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_004407 | Email from Lee Shivers.pdf | | | | | | Email between Shay Anderson (SFMAIC) and Lee Shivers (SFMAIC) for purposes of gathering information for DJA litigation. | Attorney-Client Privilege |
| GWB_004409 | File Memoranda and Handwritten Notes.pdf | | | | | | Jennifer Johnsen's handwritten notes revealing her mental impressions and opinions of the DJA litigation and her confidential communications with SFMAIC | Work Product |
| GWB_004463 | Filing Summary.pdf | | | | | | SERFF filing information gathered for purposes of DJA. While this version of the document has been withheld for work product, the same document was used as an exhibit to the 30(b)(6) deposition of SFMAIC in the DJA and has been produced in this matter at GWB_001576-001581 | Work Product |
| GWB_004469 | GWB Statements and Expenses.pdf | | | | | | Invoices from process servers utilized by GWB for purposes of the DJA litigation | Work Product |
| GWB_004484 | Policy Master Record.pdf | | | | | | Policy Record and State Farm process guide gathered for purposes of litigation. While this version of the document has been withheld for work product, the same document was previously produced in the DJA litigation as a confidential production, and has been produced and designated confidential in this action at GWB_004716 | Attorney-Client Privilege; Work Product |
| GWB_004507 | Note Apr 18, 2022.pdf | | | | | | Jennifer Johnsen's handwritten notes revealing her mental impressions and opinions of the DJA litigation | Work Product |
| GWB_004520 | 6384-2825 New Matter Report (10223400.1).pdf | | | | | | GWB's new matter intake form; firm document prepared for purposes of the DJA litigation | Work Product |
| GWB_004523 | CONTACTS (10222270.1).docx | | | | | | GWB's list of contacts; firm document prepared for purposes of the DJA litigation | Work Product |
| GWB_004525 | File Index (10538432.1).doc | | | | | | GWB's index of their file; firm document prepared for purposes of the DJA litigation | Work Product |
| GWB_004528 | File Labels (10538351.1).docx | | | | | | GWB's filing labels; firm document prepared for purposes of the DJA litigation | Work Product |
| GWB_004531 | JEJ Notes - Phone Call with Darren Murdoch and Lee Shivers (11.11.21) (10871879.1).pdf | | | | | | Jennifer Johnsen's handwritten notes revealing her mental impressions and opinions of the DJA litigation and her confidential communications with Darren Murdoch (SFMAIC) and Lee Shivers (SFMAIC) | Work Product |
| GWB_004532 | JEJ Notes - Phone Call with Shay Anderson (11.12.21) (10871880.1).pdf | | | | | | Jennifer Johnsen's handwritten notes revealing her mental impressions and opinions of the DJA litigation and her confidential communications with Shay Anderson (SFMAIC) | Work Product |
| GWB_004533 | Service Status on Defendants (10304598.1).docx | | | | | | GWB's internal tracking list of the status of serving defendants; firm document prepared for purposes of the DJA litigation | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| Bates | Description | From | To | | Date | Time | Privilege Reason | Privilege Type |
|---|---|---|---|---|---|---|---|---|
| GWB_004535 | State Farm v. Workman and Lamb Case Sheet (10448664.1).docx | | | | | | GWB's internal case sheet tracking the status of various steps in the litigation; firm document prepared for purposes of the DJA litigation | Work Product |
| GWB_004552 | Acknowledgement letter to adjuster - Lamb (10222262.1).docx | | | | | | Draft of letter from attorney Julia Bradshaw (GWB) to Lee Shivers (SFMAIC) acknowledging the assignment of matter to GWB. Communication prepared for purposes of future litigation | Attorney-Client Privilege; Work Product |
| GWB_004553 | Acknowledgement letter to adjuster - Lamb (10222335.1).pdf | | | | | | Letter from attorney Julia Bradshaw (GWB) to Lee Shivers (SFMAIC) acknowledging assignment of matter to GWB. Communication prepared for purposes of future litigation | Attorney-Client Privilege; Work Product |
| GWB_004554 | Letter to Melvin O. Lamb. III (new address for Robert Wyndham) (10859277.1).docx | | | | | | Draft of letter to Lamb III's personal attorney Robert Wyndham. Work product prepared for purposes of the DJA litigation | Attorney-Client Privilege; Common Interest; Work Product |
| GWB_004556 | Letter to Melvin O. Lamb. III (withdrawing ROR, etc.) (10843358.1).docx | | | | | | Draft of letter to Lamb III. Work product prepared for purposes of the DJA litigation | Attorney-Client Privilege; Common Interest; Work Product |
| GWB_004558 | Letter to Melvin O. Lamb, Jr. (withdrawing ROR, etc.) (10843374.1).docx | | | | | | Draft of letter to Mark Mason, Lamb Jr.'s personal attorney. Work product prepared for purposes of the DJA litigation | Attorney-Client Privilege; Common Interest; Work Product |
| GWB_004560 | Letter to Wyndham re_ Griffith letter (10286957.1).docx | | | | | | Draft of letter to Robert Wyndham, Lamb III's personal attorney regarding demand received from Estate of Workman | Work Product; Common Interest |
| GWB_004562 | RE_ Use of Credit card to Pay Invoice (Workman vs Lamb) (10314289.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Kim Free <kfree@gwblawfirm.com> | | 8/23/2021 | 5:31:41 PM | Emails between GWB employees regarding payment of process server invoices for purposes of the DJA litigation | Work Product |
| GWB_004563 | RE_ Use of Credit card to Pay Invoice (Workman vs Lamb) (10314294.1).msg | Kim Free <kfree@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/23/2021 | 5:35:30 PM | Emails between GWB employees regarding payment of process server invoices for purposes of the DJA litigation | Work Product |
| GWB_004564 | 2022.02.14 Motion to Stay Pending Mediation JK mod (JEJ redline 2_14_2022) (10937567.1).docx | | | | | | Draft of Motion to Stay Pending Mediation with track changes and comments revealing the mental impressions of counsel retained to represent SFMAIC in the DJA litigation | Work Product |
| GWB_004565 | 2022.05.20 - Lamb - WORKING DRAFT - Resp to Motion for Sanctions (JEJ redline) (11362337.1).docx | | | | | | Draft of response to Motion for Sanctions with track changes and comments revealing the mental impressions, opinions and strategies of counsel retained to represent SFMAIC in the DJA litigation | Work Product |
| GWB_004589 | Affidavit in support of order of publication (10681363.1).docx | | | | | | Draft of affidavit in support of motion for publication to serve Melvin O. Lamb III, prepared for purposes of the DJA litigation | Work Product |
| GWB_004593 | SF Motion to Stay Discovery (10827752.1).docx | | | | | | Draft of SFMAIC's Motion to Stay Discovery prepared for purposes of the DJA litigation | Work Product |
| GWB_004596 | SF Motion to Stay Discovery (revised) (10833268.1).docx | | | | | | Draft of SFMAIC's Motion to Stay Discovery prepared for purposes of the DJA litigation | Work Product |
| GWB_004600 | SF Motion to Stay Discovery (revised_formatted) (10841368.1).docx | | | | | | Draft of SFMAIC's Motion to Stay Discovery prepared for purposes of the DJA litigation | Work Product |
| GWB_004604 | SF Rule 41(a)(2) Motion to Dismiss (10827548.1).docx | | | | | | Draft of SFMAIC's Motion for Voluntary Dismissal prepared for purposes of the DJA litigation | Work Product |
| GWB_004607 | Memo ISO Motion to Quash and for a Protective Order (10419726.1).docx | | | | | | Draft of SFMAIC's Memo in Support of Motion to Quash and for Protective Order, prepared for purposes of the DJA litigation | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_004615 | Motion to Quash and for a Protective Order (10412262.1).docx | | | | | Draft document, mistitled, contains a draft of a notice of filing proofs of service. Prepared for purposes of the DJA litigation | Work Product |
| GWB_004617 | Motion to Quash and for a Protective Order (10419676.1).docx | | | | | Draft of SFMAIC's Motion to Quash and for Protective Order, prepared for purposes of the DJA litigation | Work Product |
| GWB_004620 | Timeline for SF Policy (11193965.1).docx | | | | | Attorney work product. Chronology of events prepared by Jennifer Johnsen for purposes of the DJA litigation and revealing her mental impressions, opinions and strategies | Work Product |
| GWB_004624 | Stipulation as to Jonathan Keller WBS EDITS (10477155.1).docx | | | | | Draft Stipulation of Dismissal as to Jonathan Keller prepared for purposes of the DJA litigation | Work Product |
| GWB_004626 | Complaint (10262116.1).docx | | | | | Draft of DJA Complaint prepared for purposes of litigation | Work Product |
| GWB_004632 | DO NOT USE - Summons for Auto Owners Insurance (10276431.1).pdf | | | | | Draft of summons prepared for purposes of DJA | Work Product |
| GWB_004634 | DO NOT USE - Summons for Progressive Insurance (10276410.1).pdf | | | | | Draft of summons prepared for purposes of DJA | Work Product |
| GWB_004636 | DO NOT USE - Summons for Safeco Insurance (10276451.1).pdf | | | | | Draft of summons prepared for purposes of DJA | Work Product |
| GWB_004638 | DO NOT USE - Summons for USAA Insurance (10276443.1).pdf | | | | | Draft of summons prepared for purposes of DJA | Work Product |
| GWB_004640 | Responses to third set of discovery (with revisions (RW and JEJ) 1_22_22) (10833031.1).docx | | | | | Draft of responses to Estate of Workman's Requests for Admission and Third Discovery Requests with track changes and comments revealing the mental impressions, opinions and strategies of counsel retained by SFMAIC for the purposes of the DJA litigation | Work Product |
| GWB_004655 | Responses to third set of discovery (with revisions) (10823625.1).docx | | | | | Draft of responses to Estate of Workman's Requests for Admission and Third Discovery Requests with track changes and comments revealing the mental impressions, opinions and strategies of counsel retained by SFMAIC for the purposes of the DJA litigation | Work Product |
| GWB_004668 | SF Objections and Responses to Workman_s Third Discovery Requests (10742827.1).docx | | | | | Draft of responses to Estate of Workman's Requests for Admission and Third Discovery Requests with track changes and comments revealing the mental impressions, opinions and strategies of counsel retained by SFMAIC for the purposes of the DJA litigation | Work Product |
| GWB_004680 | SF Objections_Responses to Workman_s Second Discovery Requests (10742741.1).docx | | | | | Draft of responses to Estate of Workman's Requests for Admission and Third Discovery Requests revealing the mental impressions, opinions and strategies of counsel retained by SFMAIC for the purposes of the DJA litigation | Work Product |
| GWB_004682 | SF REsponses and Objections to RTA and Thirs Set of Discovery (Clean Copy revised 1_22_22) (10833032.1).docx | | | | | Draft of responses to Estate of Workman's Requests for Admission and Third Discovery Requests revealing the mental impressions, opinions and strategies of counsel retained by SFMAIC for the purposes of the DJA litigation | Work Product |
| GWB_004696 | SF Responses to 26.03 interrogatories (10538152.1).docx | | | | | Draft of SFMAIC's Responses to 26.03 Interrogatories prepared for purposes of the DJA litigation | Work Product |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_004702 | SF Responses to Workman's First Discovery Requests (10449972.1).docx | | | | | | Draft of SFMAIC's Responses to Estate of Workman's First Discovery Requests prepared for purposes of the DJA litigation | Work Product |
| GWB_004709 | SF Responses to Workman_s First Discovery Requests (10673270.1).docx | | | | | | Draft of SFMAIC's Responses to Estate of Workman's First Discovery Requests prepared for purposes of the DJA litigation | Work Product |
| GWB_004739 | (10634949.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | Brian Boyle <brian.boyle.g6lg@statefarm.com>; HOME LAW-BOYLE <home.law-boyle.386l00@statefarm.com>; Brittany Perez <brittany.perez.vabto8@statefarm.com>; Shay Anderson <shay.anderson.grfs@statefarm.com> | 11/18/2021 | 5:51:48 PM | Emails between Attorney Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC), copying other State Farm employees. Contains requests from Attorney Johnsen and responses from SFMAIC regarding the Tahoe Policy, for the purposes of the DJA litigation | Attorney-Client Privilege |
| GWB_004741 | (10635505.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | Brian Boyle <brian.boyle.g6lg@statefarm.com>; HOME LAW-BOYLE <home.law-boyle.386l00@statefarm.com>; Brittany Perez <brittany.perez.vabto8@statefarm.com>; Shay Anderson <shay.anderson.grfs@statefarm.com> | 11/19/2021 | 8:07:29 AM | Emails between Attorney Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC), copying other State Farm employees. Contains requests from Attorney Johnsen and responses from SFMAIC regarding the Tahoe Policy, and attaches materials gathered for purposes of the DJA litigation and draft of discovery responses. While the attachments to this privileged email are withheld, the materials have been produced elsewhere. | Attorney-Client Privilege; Work Product |
| GWB_004743 | MELVIN O LAMB APPLICATION_Redacted.pdf | | | | | | Attachment to privileged email GWB_004741. Produced in the DJA and produced in this case at GWB_001101-001105 | Attorney-Client Privilege; Work Product |
| GWB_004748 | MELVIN O LAMB JR - Payment Docs from BOS.PDF | | | | | | Attachment to privileged email GWB_004741. Produced in the DJA and produced in this case at GWB_001144-001146 | Attorney-Client Privilege; Work Product |
| GWB_004751 | MELVIN O LAMB JR  REFUNDS .pdf | | | | | | Attachment to privilege email GWB_004741. Produced in the DJA and produced in this case at GWB_001140-001143 | Attorney-Client Privilege; Work Product |
| GWB_004755 | MELVIN O LAMB JR BALANCE DUES.PDF | | | | | | Attachment to privileged email GWB_004741. Produced in the DJA and produced in this case at GWB_001116-001131 | Attorney-Client Privilege; Work Product |
| GWB_004771 | MELVIN O LAMB JR REINSTATEMENT NOTICES.pdf | | | | | | Attachment to privileged email GWB_004741. Produced in the DJA and produced in this case at GWB_001132-001135 | Attorney-Client Privilege; Work Product |
| GWB_004775 | MELVIN O LAMB JR RENEWAL NOTICE 08.07.21.pdf | | | | | | Attachment to privileged email GWB_004741. Produced in the DJA and produced in this case at GWB_001111-001118 | Attorney-Client Privilege; Work Product |
| GWB_004781 | SF Responses to Workman_s First Discovery Requests.DOCX | | | | | | Attachment to privileged email GWB_004741. Draft of SFMAIC's Responses to Estate of Workman's First Discovery Requests prepared for purposes of the DJA litigation | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_004788 | Tahoe Docs from Claim Rep.pdf | | | | | | Attachment to privileged email GWB_004741. This attachment contains SFMAIC correspondence made for the purposes of the DJA litigation. The rest of the documents contained in this attachment were produced in the DJA and were produced in this case at GWB_001147-001164; GWB_001186-001190; GWB_001106-001110; GWB_001165-001184; GWB_001138-001139; GWB_001120-001121; and GWB_001144-001146 | Attorney-Client Privilege; Work Product |
| GWB_004860 | (10637360.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs @statefarm.com> | Brian Boyle <brian.boyle.g6lg@ statefarm.com>; HOME LAW-BOYLE <home.law-boyle.386l00@stat efarm.com>; Brittany Perez <brittany.perez.vab to8@statefarm.co m> | 11/19/2021 | 1:32:42 PM | Emails between Shay Anderson and Attorney Jennifer Johnsen, containing Johnsen's questions and Anderson's responses, for the purposes of the DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_004862 | (10642568.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs @statefarm.com> | | 11/22/2021 | 1:13:42 PM | Emails between Shay Anderson and Attorney Jennifer Johnsen, containing Johnsen's questions and Anderson's responses, for the purposes of the DJA litigation. Email attaches materials gathered for purposes of the DJA litigation. While the attachments to this privileged email are withheld, the materials have been produced elsewhere. | Attorney-Client Privilege; Work Product |
| GWB_004863 | 4021B249D.00000.msg | Shay Anderson <shay.anderson.grfs@statefa rm.com> | HOME AUTO-PL-SOUTH-UND-DOCS <home.auto-pl-south-und-docs.535o19@statefa rm.com> | | 11/22/2021 | 12:00:33 PM | Attachment to privileged email GWB_004862. Produced elsewhere at WORKMAN00000008PROD | Attorney-Client Privilege; Work Product |
| GWB_004864 | 6023DC.PDF | | | | | | Attachment to privileged email GWB_004862. Produced elsewhere at WORKMAN00000024PROD | Attorney-Client Privilege; Work Product |
| GWB_004865 | 6128DP.PDF | | | | | | Attachment to privileged email GWB_04862. Produced elsewhere at WORKMAN00000016PROD-WORKMAN00000023PROD | Attorney-Client Privilege; Work Product |
| GWB_004873 | 6323189-40.pdf | | | | | | Attachment to privileged email GWB_004862. Produced elsewhere at WORKMAN00000009PROD-00000014PROD | Attorney-Client Privilege; Work Product |
| GWB_004879 | 9840A.PDF | | | | | | Attachment to privileged email GWB_004862. Produced elsewhere at WORKMAN00000025PROD-00000036PROD | Attorney-Client Privilege; Work Product |
| GWB_004891 | MELVIN LAMB-signed.pdf | | | | | | Attachment to privileged email GWB_004862. Produced elsewhere at WORKMAN00000015PROD | Attorney-Client Privilege; Work Product |
| GWB_004892 | 4021B249D.msg | Shay Anderson <shay.anderson.grfs@statefa rm.com> | Lee Shivers <lee.shivers.d8yf@sta tefarm.com> | | 11/22/2021 | 12:53:00 PM | Attachment to privileged email GWB_004862. Email between Shay Anderson (SFMAIC) and Lee Shivers (SFMAIC) made for purposes of gathering information for DJA litigation. | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_004893 | DocRetrievalServlet.pdf | | | | | Attachment to privileged email GWB_004862. Documents gathered for purposes of DJA litigation. Produced elsewhere at WORKMAN0000008PPROD; WORKMAN00000024PROD; WORKMAN0000016-00000023PROD; WORKMAN0000009-00000014PROD; WORKMAND00000025-00000036PROD; WORKMAN0000015PROD | Attorney-Client Privilege; Work Product |
| GWB_004921 | (40-21B2-49D) RE_ Voicemail Message (STATE FARM _ DavidR) From_8442928615 (10306180.1).msg | Bill Young <byoung@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | | 7/26/2021 | 3:24:35 PM | Internal GWB email regarding the assignment of matter from SFMAIC | Work Product |
| GWB_004923 | (6384-2825) Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Complaint (10298072.1).msg | Bill Young <byoung@gwblawfirm.com>; Luchana Smith <lsmith@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | | 8/17/2021 | 5:52:46 PM | Internal GWB email regarding assignment of matter and plan for serving defendants for purposes of the DJA action. Email attaches filed copies of DJA complaint and summons. While the attachments to this email are withheld, the same documents are publicly available and have been produced elsewhere. | Work Product |
| GWB_004925 | DE 01 - Declaratory Judgment Complaint.pdf | | | | | Attachment to GWB_004923. Publicly filed document which has already been produced at multiple bates labels, including GWB_000442 | Work Product |
| GWB_004931 | DE 02 - Plaintiff's Answers to LR 26.01 ROGs.pdf | | | | | Attachment to GWB_004923. Publicly filed document which has already been produced at multiple bates labels, including GWB_000515 | Work Product |
| GWB_004934 | DE 03 - Summons Issued to Melvin O. Lamb, III.pdf | | | | | Attachment to GWB_004923. Publicly filed document which has already been produced at multiple bates labels, including GWB_000518 | Work Product |
| GWB_004936 | DE 04 - Summons Issued to Melvin O. Lamb, Jr..pdf | | | | | Attachment to GWB_004923. Publicly filed document which has already been produced at multiple bates labels, including GWB_000520 | Work Product |
| GWB_004938 | DE 05 - Summons Issued to The Estate of James K. Workman.pdf | | | | | Attachment to GWB_004923. Publicly filed document which has already been produced at multiple bates labels, including GWB_000522 | Work Product |
| GWB_004940 | DE 06 - Summons Issued to Michael H. Moore.pdf | | | | | Attachment to GWB_004923. Publicly filed document which has already been produced at multiple bates labels, including GWB_000524 | Work Product |
| GWB_004942 | DE 07 - Summons Issued to Deborah D. Plott.pdf | | | | | Attachment to GWB_004923. Publicly filed document which has already been produced at multiple bates labels, including GWB_000526 | Work Product |
| GWB_004944 | DE 08 - Summons Issued to Angela R. Edwards.pdf | | | | | Attachment to GWB_004923. Publicly filed document which has already been produced at multiple bates labels, including GWB_000528 | Work Product |
| GWB_004946 | DE 09 - Summons Issued to Constance J. Molinaro.pdf | | | | | Attachment to GWB_004923. Publicly filed document which has already been produced at multiple bates labels, including GWB_000530 | Work Product |
| GWB_004948 | DE 10 - Summons Issued to Mario F. Molinaro.pdf | | | | | Attachment to GWB_004923. Publicly filed document which has already been produced at multiple bates labels, including GWB_000532 | Work Product |
| GWB_004950 | DE 11 - Summons Issued to Jonathan D. Keller.pdf | | | | | Attachment to GWB_004923. Publicly filed document which has already been produced at multiple bates labels, including GWB_000534 | Work Product |
| GWB_004952 | DE 12 - Summons Issued to Katherine M. Vonesh.pdf | | | | | Attachment to GWB_004923. Publicly filed document which has already been produced at multiple bates labels, including GWB_000536 | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_004954 | DE 13 - Summons Issued to Mathis S. Billman.pdf | | | | | | Attachment to GWB_004923. Publicly filed document which has already been produced at multiple bates labels, including GWB_000538 | Work Product |
| GWB_004956 | DE 14 - Summons Issued to Luke E. Billman.pdf | | | | | | Attachment to GWB_004923. Publicly filed document which has already been produced at multiple bates labels, including GWB_000540 | Work Product |
| GWB_004958 | (GWB file 6384-2825) Claim # 4021B249D _ Estate of James Workman v. Melvin O. Lamb Jr. _ Invoice 270327 (11427625.1).msg | lee.shivers.d8yf@statefarm.com <lee.shivers.d8yf@statefarm.com> | Scott LaVigne <slavigne@gwblawfirm.com> | | 6/13/2022 | 2:32:58 PM | Email from GWB's billing department to SFMAIC attaching invoices for GWB's representation of State Farm in the litigation | Work Product |
| GWB_004959 | Invoice_270327_Proforma_284207_2022.06.13_12.29.09.pdf | | | | | | GWB's invoice to SFMAIC for legal services rendered in the DJA. Includes time entries describing work performed for the litigation and revealing mental impressions of counsel and discussions with SFMAIC | Work Product |
| GWB_004983 | (GWB file 6384-2825) Claim # 40-21B2-49D Estate of James Workman v. Melvin O. Lamb, Jr. _ Invoice 268850 (11315590.1).msg | lee.shivers.d8yf@statefarm.com <lee.shivers.d8yf@statefarm.com> | Ashley Clardy <aclardy@gwblawfirm.com> | Paula Forbes <pforbes@gwblawfirm.com> | 5/12/2022 | 3:53:25 PM | Email from GWB's billing department to SFMAIC attaching invoices for GWB's representation of State Farm in the litigation | Work Product |
| GWB_004984 | Invoice_268850_Proforma_281343_2022.05.12_14.02.18_v2.pdf | | | | | | GWB's invoice to SFMAIC for legal services rendered in the DJA. Includes time entries describing work performed for the litigation and revealing mental impressions of counsel and discussions with SFMAIC | Work Product |
| GWB_004990 | (GWB file 6384-2825) Estate of James Workman v. Melvin O. Lamb, Jr. (10477047.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Scott LaVigne <slavigne@gwblawfirm.com> | | 10/11/2021 | 3:46:23 PM | Internal GWB email regarding billing to client SFMAIC in connection with DJA litigation | Work Product |
| GWB_004991 | (Workman_ Lamb) FW_ Motion to Stay Pending Mediation (11226855.1).msg | Guy Conti (Work) <guy.conti.fS8t@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | Guy Conti (Other) <home.law-conti.662h00@statefarm.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Natalie Ecker <eckern@gwblawfirm.com> | 2/14/2022 | 5:00:06 PM | Redaction of email from attorney Robbie Whelan, counsel retained to represent SFMAIC in the DJA, to Guy Conti (SFMAIC), copying counsel retained by SFMAIC to represent in the DJA and other SFMAIC employees regarding potential mediation. Confidential attorney/client communication revealing the mental impressions and strategies of counsel, attaching draft of Motion to Stay Pending Mediation. | Attorney-Client Privilege; Work Product |
| GWB_004993 | 2022.02.14 Motion to Stay Pending Mediation JK mod.docx | | | | | | Attachment to GWB_004993 | Attorney-Client Privilege; Work Product |
| GWB_004994 | 40-21B2-42D (10222334.1).msg | statefarmclaims@statefarm.com <statefarmclaims@statefarm.com> | Cynthia Smart <csmart@gwblawfirm.com> | Julia Bradshaw <jbradshaw@gwblawfirm.com> | 7/27/2021 | 1:32:54 PM | Email from Cynthia Smart (GWB legal assistant), copying attorney Julia Bradshaw (GWB) to SFMAIC attaching acknowledgement letter | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_004995 | Acknowledgement letter to adjuster - Lamb.pdf | | | | | | Attachment to GWB_004994. Acknowledgement letter from GWB attorney Julia Bradshaw to SFMAIC adjuster. Communication between attorney and client that would not have been prepared were it not for impending litigation. | Attorney-Client Privilege |
| GWB_004996 | 40-21B2-42D (10227767.1).msg | statefarmclaims@statefarm.com <statefarmclaims@statefarm.com> | Cynthia Smart <csmart@gwblawfirm.com> | Julia Bradshaw <jbradshaw@gwblawfirm.com> | 7/28/2021 | 5:12:22 PM | Email from Cynthia Smart (GWB legal assistant), copying attorney Julia Bradshaw (GWB) to SFMAIC adjuster regarding time demand. | Attorney-Client Privilege |
| GWB_004997 | 4021B2249D  DJ Action (10533416.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Lee Shivers <lee.shivers.d8yf@statefarm.com> | 10/25/2021 | 12:38:37 PM | Emails between attorney Jennifer Johnsen and Darren Murdoch (SFMAIC) and Lee Shivers (SFMAIC) regarding the DJA and the need for a witness for the 30(b)(6) deposition of SFMAIC in the DJA. Attaching Notice of Deposition. While the attachment to this email is withheld, the same document has been produced elsewhere. | Attorney-Client Privilege |
| GWB_004999 | 2021.09.28 30(b) Deposition Notice.pdf | | | | | | Attachment to GWB_004997. This document was publicly filed in the DJA litigation and has been produced in this case at GWB_000104 | Attorney-Client Privilege |
| GWB_005003 | 4021B2249D  DJ Action (10533994.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | | 10/25/2021 | 2:17:05 PM | Emails between attorney Jennifer Johnsen and Darren Murdoch (SFMAIC) and Lee Shivers (SFMAIC) regarding the DJA and the need for a witness for the 30(b)(6) deposition of SFMAIC in the DJA. Attaching Notice of Deposition. While the attachment to this email is withheld, the same document has been produced elsewhere. | Attorney-Client Privilege |
| GWB_005005 | 2021.09.28 30(b) Deposition Notice.pdf | | | | | | Attachment to GWB_005003. This document was publicly filed in the DJA litigation and has been produced in this case at GWB_000104 | Attorney-Client Privilege |
| GWB_005009 | 40-21B2-49D - Estate of James Workman v. Melvin O. Lamb Jr. (Pre-suit) 6384-2825 (10245841.1).msg | statefarmclaims@statefarm.com <statefarmclaims@statefarm.com> | Pat Klitzing <pklitzing@gwblawfirm.com> | | 8/4/2021 | 9:03:05 AM | Email from Pat Litzing (GWB billing department) to SFMAIC regarding billing system for the purposes of the DJA litigation | Work Product |
| GWB_005010 | 40-21B2-49D (10244820.1).msg | statefarmclaims@statefarm.com <statefarmclaims@statefarm.com> | Cynthia Smart <csmart@gwblawfirm.com> | lee.shivers.d8yf@statefarm.com <lee.shivers.d8yf@statefarm.com>; darren.p.murdoch.grlu@statefarm.com <darren.p.murdoch.grlu@statefarm.com>; Julia Bradshaw <jbradshaw@gwblawfirm.com> | 8/3/2021 | 3:51:47 PM | Email from Cynthia Smart (GWB legal assistant) to SFMAIC and copying attorney Julia Bradshaw (GWB)  regarding time demand | Attorney-Client Privilege |
| GWB_005011 | 40-21B2-49D (10269691.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Bill Young <byoung@gwblawfirm.com> | Grayson Smith <gsmith@gwblawfirm.com> | 8/10/2021 | 9:07:01 AM | Email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) and copying attorney Grayson Smith (GWB) attaching drafts of the DJA Complaint with exhibits and draft Answers to Local Rule 26.01 Interrogatories | Attorney-Client Privilege; Work Product |
| GWB_005012 | Complaint.DOCX | | | | | | Attachment to GWB_005011. Draft of DJA Complaint prepared by attorneys retained by SFMAIC for purposes of the DJA litigation | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_005021 | Driver Exclusion Form- effective 02262020.PDF | | | | | | Attachment to GWB_005011. While the attachment to the privileged email has been withheld, the same document was publicly filed in the DJA and has been produced multiple times in this litigation, including at GWB_001147 | Attorney-Client Privilege; Work Product |
| GWB_005022 | Lamb Declarations Page Redacted.PDF | | | | | | Attachment to GWB_005011. While the attachment to the privileged email has been withheld, the same document was publicly filed in the DJA and has been produced multiple times in this litigation, including at GWB_004285 | Attorney-Client Privilege; Work Product |
| GWB_005023 | Plaintiff_s Answers to 26.01 Interrogatories.DOCX | | | | | | Attachment to GWB_005011. Draft of Answers to 26.01 Interrogatories prepared by attorneys retained by SFMAIC for purposes of the DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_005026 | 40-21B2-49D (10293835.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@state farm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/17/2021 | 9:19:54 AM | Email from attorney Bill Young to Darren Murdoch at State Farm attaching Summons and Complaint filed by the Estate against Lamb Jr. While the attachment to this privileged email has been withheld, the same document was publicly filed and is therefore readily obtainable by other means. | Attorney-Client Privilege |
| GWB_005027 | Workman v Lamb S&C.pdf | | | | | | Attachment to GWB_005027. Filed copy of Complaint by the Estate of Workman against Melvin O. Lamb Jr. Publicly filed in C.A. No. 2021-CP-10-03743 | Attorney-Client Privilege |
| GWB_005035 | 40-21B2-49D (10304135.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@state farm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/19/2021 | 11:22:25 AM | Email from attorney Bill Young to Darren Murdoch at State Farm attaching filed copies of the Declaratory Judgment Complaint and Plaintiff's Answers to Local Rule 26.01 Interrogatories. While the attachments to this privileged email were withheld, the same documents were publicly filed in the DJA and have been produced multiple times in this litigation. | Attorney-Client Privilege |
| GWB_005036 | DE 01 - Declaratory Judgment Complaint.PDF | | | | | | Attachment to GWB_005035. Publicly available document and previously produced multiple times in this case, including at GWB_000442 | Attorney-Client Privilege |
| GWB_005042 | DE 02 - Plaintiff_s Answers to LR 26.01 ROGs.PDF | | | | | | Attachment to GWB_005035. Publicly available document and previously produced multiple times in this case, including at GWB_000515 | Attorney-Client Privilege |
| GWB_005045 | 40-21B2-49D (10347942.1).msg | Bill Young <byoung@gwblawfirm.com> | Lee Shivers <lee.shivers.d8yf@statefarm.com> | | 8/5/2021 | 11:17:33 AM | Email from Lee Shivers (SFMAIC) to Bill Young (GWB) attaching materials gathered for purposes of the DJA. | Attorney-Client Privilege; Work Product |
| GWB_005046 | DocRetrievalServlet.pdf | | | | | | Attachment to privileged email GWB_005045. Documents gathered for purposes of DJA litigation. These documents were produced in the DJA and produced in this case multiple times, including at WORKMAN00000009PROD-00000014PROD; WORKMAN0000016-00000023PROD; WORKMAND00000025-00000036PROD; GWB_000261 | Attorney-Client Privilege; Work Product |
| GWB_005073 | 4021B249D (10364239.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@state farm.com> | Bill Young <byoung@gwblawfirm.com> | | 9/8/2021 | 4:46:33 PM | Email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) attaching draft response to time limit demand by Estate of Workman. Confidential communication for purposes of DJA litigation | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_005074 | Letter to Kahn Responding to 9.2 Time Limit Demand.DOCX | | | | | | Attachment to GWB_005073. Draft of response to time limit demand. Work product prepared by attorney for purposes of DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_005077 | 40-21B2-49D (11171193.1).msg | lee.shivers.d8yf@statefarm.c om <lee.shivers.d8yf@statefarm .com> | Christine Kelly <cmkelly@gwblawfir m.com> | statefarmclaims@s tatefarm.com <statefarmclaims@ statefarm.com> | 4/12/2022 | 10:49:45 AM | Email from Christine Kelly (GWB collections clerk) to Lee Shivers (SFMAIC) regarding payment status of invoices for legal services rendered in the DJA litigation and attaching invoices | Attorney-Client Privilege; Work Product |
| GWB_005079 | 6384-2825 Invoice # 264293.pdf | | | | | | Attachment to GWB_005077. GWB's invoice to SFMAIC for legal services rendered in the DJA. Includes time entries describing work performed for the litigation and revealing mental impressions of counsel and discussions with SFMAIC | Attorney-Client Privilege; Work Product |
| GWB_005087 | 6384-2825 Invoice 260990 1.11.22.pdf | | | | | | Attachment to GWB_005077. GWB's invoice to SFMAIC for legal services rendered in the DJA. Includes time entries describing work performed for the litigation and revealing mental impressions of counsel and discussions with SFMAIC | Attorney-Client Privilege; Work Product |
| GWB_005092 | 6384-2825 Invoice 262738.pdf | | | | | | Attachment to GWB_005077. GWB's invoice to SFMAIC for legal services rendered in the DJA. Includes time entries describing work performed for the litigation and revealing mental impressions of counsel and discussions with SFMAIC | Attorney-Client Privilege; Work Product |
| GWB_005102 | 4021B249D (11771300.1).msg | statefarmclaims@statefarm. com <statefarmclaims@statefarm .com> | Christine Kelly <cmkelly@gwblawfir m.com> | Lee Shivers <lee.shivers.d8yf@ statefarm.com> | 9/2/2022 | 9:48:39 AM | Email from Christine Kelly (GWB collections clerk) to Lee Shivers (SFMAIC) regarding payment status of invoices for legal services rendered in the DJA litigation and attaching invoices | Attorney-Client Privilege; Work Product |
| GWB_005105 | Invoice_270327_Proforma_284 207_2022.06.13_12.29.09.pdf | | | | | | Attachment to GWB_005102. GWB's invoice to SFMAIC for legal services rendered in the DJA. Includes time entries describing work performed for the litigation and revealing mental impressions of counsel and discussions with SFMAIC | Attorney-Client Privilege; Work Product |
| GWB_005129 | Invoice_271932_Proforma_286 063_2022.07.12_09.51.14.pdf | | | | | | Attachment to GWB_005102. GWB's invoice to SFMAIC for legal services rendered in the DJA. Includes time entries describing work performed for the litigation and revealing mental impressions of counsel and discussions with SFMAIC | Attorney-Client Privilege |
| GWB_005133 | Invoice_274227_Proforma_288 910_2022.08.15_10.53.32.pdf | | | | | | Attachment to GWB_005102. GWB's invoice to SFMAIC for legal services rendered in the DJA. Includes time entries describing work performed for the litigation and revealing mental impressions of counsel and discussions with SFMAIC | Attorney-Client Privilege |
| GWB_005136 | 6384-2825  INVOICE 259169 Appeal Assistance Needed  =- Written prior approval required (10948151.1).msg | Natalie Ecker <eckern@gwblawfirm.com> | Melanie Smith <msmith@gwblawfir m.com> | | 2/16/2022 | 1:59:59 PM | Internal GWB email between collections clerk and attorney Natalie Ecker regarding invoice pertaining to DJA litigation and attaching same | Work Product |
| GWB_005137 | 259169 iar.pdf | | | | | | Attachment to GWB_005136 | Work Product |
| GWB_005141 | 6384-2825 - New claim rep (11771812.1).msg | Denise Kirk <dkirk@gwblawfirm.com> | Christine Kelly <cmkelly@gwblawfir m.com> | | 9/2/2022 | 10:54:40 AM | Internal GWB email regarding SFMAIC claim rep for DJA litigation file | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_005142 | 6384-2825  Rate Verification needed (10948046.1).msg | Paula Forbes <pforbes@gwblawfirm.com> | Melanie Smith <msmith@gwblawfirm.com> | | 2/16/2022 | 1:48:33 PM | Internal GWB email confirming rates for DJA litigation | Work Product |
| GWB_005143 | 259169 iar.pdf | | | | | | Attachment to GWB_005142 | Work Product |
| GWB_005147 | 6384-2825 _ Estate of Workman v. Lamb _ Updated Budget needed (10858262.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Natalie Ecker <eckern@gwblawfirm.com> | Paula Forbes <pforbes@gwblawfirm.com> | | 1/27/2022 | 9:24:32 PM | Internal GWB email regarding budget for DJA litigation | Work Product |
| GWB_005148 | 6384-2825 Current budget - need updated budget.pdf | | | | | | Attachment to GWB_005147 | Work Product |
| GWB_005154 | 6384-2825 Workman v. Lamb _ Claim No._ 40-21B2-49D _ Updated Budget and Invoice 262738 (10967728.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Paula Forbes <pforbes@gwblawfirm.com> | | 2/22/2022 | 2:34:01 PM | Internal GWB email attaching updated budget for DJA and invoice | Work Product |
| GWB_005155 | 6384-2825 Invoice 262738 2.7.2022.pdf | | | | | | Attachment to GWB_005154 | Work Product |
| GWB_005165 | 6384-2825 Workman updated budget as of 2.22.22.pdf | | | | | | Attachment to GWB_005154 | Work Product |
| GWB_005169 | 67_Worksman_s MIO to SF Motion to Stay Discovery and Dismissal.PDF (11260678.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 4/26/2022 | 11:18:29 AM | Email from attorney Jennifer Johnsen to attorney Robbie Whelan (both attorneys retained by SFMAIC to represent it in the DJA litigation) attaching a filed copy of SFMAIC's Motion to Stay Discovery and Dismissal. While the attachment is being withheld, the same document is publicly available and has been producued elsewhere. | Work Product |
| GWB_005170 | 67_Worksman_s MIO to SF Motion to Stay Discovery and Dismissal.PDF | | | | | | Attachment to GWB_005169. Publicly filed in the DJA litigation and produced elsewhere in this case at GWB_000281 | Work Product |
| GWB_005185 | Answer to Counterclaim (10681707.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 12/2/2021 | 3:32:59 PM | Internal GWB email between attorney Jennifer Johnsen and Amanda Houser (GWB legal assistant) regarding filing of answer to counterclaim | Work Product |
| GWB_005186 | Automatic reply_ 2021-CP-10-03743 Robert Worman v. Melvin Otto Lamb, Jr. (11226850.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Robbie Whelan <robbie@whelanmellen.com> | | 4/11/2022 | 12:46:40 PM | Automatic reply from attorney Robbie Whelan to attorney Jennifer Johnsen. Non-substantive email. | Work Product |
| GWB_005187 | Automatic reply_ 40-21B2-42D (10228336.1).msg | Cynthia Smart <csmart@gwblawfirm.com> | HOME CLMS-STATEFARMCLAIMS <statefarmclaims@statefarm.com> | | 7/28/2021 | 5:13:23 PM | Automatic reply from SFMAIC email address to Cynthia Smart (GWB legal assistant). Non-substantive email. | Attorney-Client Privilege |
| GWB_005188 | Automatic reply_ 40-21B2-49D - Estate of James Workman v. Melvin O. Lamb Jr. (Pre-suit) 6384-2825 (10245901.1).msg | Pat Klitzing <pklitzing@gwblawfirm.com> | HOME CLMS-STATEFARMCLAIMS <statefarmclaims@statefarm.com> | | 8/4/2021 | 9:10:48 AM | Automatic reply from SFMAIC email address to Pat Klitzing (GWB billing department). Non-substantive email. | Attorney-Client Privilege |
| GWB_005189 | Automatic reply_ 40-21B2-49D (10244833.1).msg | Cynthia Smart <csmart@gwblawfirm.com> | HOME CLMS-STATEFARMCLAIMS <statefarmclaims@statefarm.com> | | 8/3/2021 | 3:53:05 PM | Automatic reply from SFMAIC email address to Cynthia Smart (GWB legal assistant). Non-substantive email. | Attorney-Client Privilege |
| GWB_005190 | Automatic reply_ 40-21B2-49D (11171208.1).msg | Christine Kelly <cmkelly@gwblawfirm.com> | HOME CLMS-STATEFARMCLAIMS <statefarmclaims@statefarm.com> | | 4/12/2022 | 10:51:14 AM | Automatic reply from SFMAIC email address to Christine Kelly (GWB collections). Non-substantive email. | Attorney-Client Privilege |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_005191 | Automatic reply_ 4021B249D (11771315.1).msg | Christine Kelly <cmkelly@gwblawfirm.com> | HOME CLMS-STATEFARMCLAIMS <statefarmclaims@statefarm.com> | | 9/2/2022 | 9:50:37 AM | Automatic reply from SFMAIC email address to Christine Kelly (GWB collections). Non-substantive email. | Attorney-Client Privilege |
| GWB_005192 | Automatic reply_ Lamb DJ Action 4021b249d (10776705.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Tyran Turner <tyran.turner.e123@statefarm.com> | | 1/6/2022 | 11:46:40 AM | Automatic reply from Tyran Turner (SFMAIC) to attorney Jennifer Johnsen. Non-substantive email. | Attorney-Client Privilege |
| GWB_005193 | Automatic reply_ Lamb DJ Action 4021b249d _ GWB 6384 2825 _ Need outdated budget rejected (10741792.1).msg | Paula Forbes <pforbes@gwblawfirm.com> | HOME CLMS-STATEFARMCLAIMS <statefarmclaims@statefarm.com> | | 12/21/2021 | 9:01:05 AM | Automatic reply from SFMAIC email address to Paula Forbes (GWB billing). Non-substantive email. | Attorney-Client Privilege |
| GWB_005194 | Automatic reply_ Melvin Lamb, Jr. Cl. No. 4021B249D (10630478.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | | 11/17/2021 | 4:34:42 PM | Automatic reply from Shay Anderson (SFMAIC) to attorney Jennifer Johnsen. Non-substantive email. | Attorney-Client Privilege |
| GWB_005195 | Automatic reply_ State Farm DJ re_ Melvin Lamb, Jr. (10783821.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | | 1/9/2022 | 7:55:04 PM | Automatic reply from Shay Anderson (SFMAIC) to attorney Jennifer Johnsen. Non-substantive email. | Attorney-Client Privilege |
| GWB_005196 | Call on SC Excluded Driver Endorsement (10865224.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; charles@whelanmellen.com <charles@whelanmellen.com>; robbie@whelanmellen.com <robbie@whelanmellen.com> | Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | 1/12/2021 | 4:02:57 PM | Email from Monique James (SFMAIC) to attorneys Jennifer Johnsen, Charles Norris and Robbie Whelan and copying Guy Conti (SFMAIC) regarding excluded driver endorsement. Confidential attorney-client communication for purposes of DJA litigation | Attorney-Client Privilege |
| GWB_005197 | Cl. No. 4021B249D Melvin O Lamb, Jr. Large File Recipient Access (10686715.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Administrator <postmaster@gwblawfirm.com> | | 12/6/2021 | 8:06:30 AM | System email confirming delivery of files to Shay Anderson (SFMAIC). | Attorney-Client Privilege |
| GWB_005198 | Cl. No. 4021B249D Melvin O Lamb, Jr. (10630634.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com>; Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | 11/17/2021 | 4:59:39 PM | Email from attorney Jennifer Johnsen to Lee Shivers (SFMAIC), Darren Murdoch (SFMAIC) and Shay Anderson (SFMAIC) attaching a draft of responses to the Estate of Workman's discovery requests for purposes of the DJA litigation | Attorney-Client Privilege |
| GWB_005199 | SF Responses to Workman_s First Discovery Requests.DOCX | | | | | | Attachment to GWB_005199. Draft responses to Estate's first discovery requests. Attorney work product prepared for purposes of litigation | Attorney-Client Privilege; Work Product |
| GWB_005206 | Cl. No. 4021B249D Melvin O Lamb, Jr. (10644190.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Lee Shivers <lee.shivers.d8yf@statefarm.com> | 11/22/2021 | 6:08:21 PM | Email from Darren Murdoch (SFMAIC) to attorney Jennifer Johnson regarding draft discovery responses in DJA litigation | Attorney-Client Privilege |
| GWB_005207 | Cl. No. 4021B249D Melvin O Lamb, Jr. (10685902.1).msg | Shay Anderson <shay.anderson.grfs@statefarm.com> | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 12/3/2021 | 5:02:25 PM | Email from Amanda Houser (GWB legal assistant) to Shay Anderson (SFMAIC) and attorney Jennifer Johnsen attaching documents for purposes of the DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_005208 | Mimecast Large File Send (keyless).msg | [f905081].imanmain@031be.imanage.work <[f905081].imanmain@031be.imanage.work> | ahouser@gwblawfirm.com <ahouser@gwblawfirm.com> | | 12/3/2021 | 5:02:24 PM | GWB system email confirming link to documents sent. No documents attached. | Attorney-Client Privilege; Work Product |
| GWB_005209 | deposition - SC_ (10763115.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | Todd Sivills <todd.sivills.hg8i@statefarm.com> | 12/1/2021 | 11:35:32 AM | Emails between attorney Jennifer Johnsen and Shay Anderson (SFMAIC), copying Todd Sivills (SFMAIC), regarding the upcoming 30(b)(6) deposition of SFMAIC and discovery for purposes of the DJA litigation | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_005213 | DJ_Interpleader Complaint.DOCX (10266834.1).msg | Grayson Smith <gsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/9/2021 | 1:55:53 PM | Email from attorney Bill Young (GWB) to attorney Grayson Smith (GWB) attaching draft of DJA complaint for internal review | Work Product |
| GWB_005214 | Complaint.DOCX | | | | | | Attachment to GWB_005214. Draft of DJA Complaint prepared by attorneys retained by SFMAIC for purposes of litigation | Work Product |
| GWB_005223 | Driver Exclusion Form 4021b249D (10247551.1).msg | Bill Young <byoung@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | | 7/22/2021 | 5:18:47 PM | Email from Darren Murdoch (SFMAIC) to attorney Bill Young (GWB) attaching document for purposes of DJA litigation | Attorney-Client Privilege |
| GWB_005224 | VC 0001  Pg 0001  Driver Exclusion Form- effective 02262020.pdf | | | | | | Attachment to GWB_005223. While the attachment to the privileged email is withheld, the same document has been produced multiple times in the DJA and in this case, including at GWB_004345 | Attorney-Client Privilege |
| GWB_005225 | FW_ Invoice from We Serve Law (6384-2825) (10444956.1).msg | Kim Free <kfree@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 10/4/2021 | 9:41:09 AM | Internal GWB email forwarding process server invoice for DJA litigation | Work Product |
| GWB_005227 | FW_ We Serve Law updated your invoice ( 6384-2825 ) (10466919.1).msg | Kim Free <kfree@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 10/8/2021 | 11:02:33 AM | Internal GWB email forwarding process server invoice for DJA litigation | Work Product |
| GWB_005229 | RE_ Invoice from We Serve Law (6384-2825) (10445579.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Kim Free <kfree@gwblawfirm.com> | | 10/4/2021 | 11:16:05 AM | Internal GWB email forwarding process server invoice for DJA litigation and attaching receipt of same | Work Product |
| GWB_005231 | 6384-2825_We Serve Law_Invoice - 362901.pdf | | | | | | Attachment to GWB_005229 | Work Product |
| GWB_005232 | RE_ We Serve Law updated your invoice ( 6384-2825 ) (10473026.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Kim Free <kfree@gwblawfirm.com> | | 10/11/2021 | 9:44:09 AM | Internal GWB forwarding process server invoice for DJA litigation and attaching receipt of same | Work Product |
| GWB_005234 | 6384-2825 We Serve Law Invoice - 363091.pdf | | | | | | Attachment to GWB_005232 | Work Product |
| GWB_005235 | Estate of James Workman vs. Melvin Lamb, et al (10335769.1).msg | Bill Young <byoung@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/30/2021 | 1:07:32 PM | Internal GWB email regarding the status of service of DJA complaint on defendants | Work Product |
| GWB_005236 | Estate of Workman (10361956.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 9/8/2021 | 10:35:51 AM | Internal GWB email regarding status of affidavits and acceptance of service in the DJA action | Work Product |
| GWB_005237 | Estate of Workman v. Lamb (10293851.1).msg | warren.moise@gmail.com <warren.moise@gmail.com>; mgriffith@griffithfreeman.com <mgriffith@griffithfreeman.com> | Bill Young <byoung@gwblawfirm.com> | | 8/17/2021 | 9:21:22 AM | Email from attorney Bill Young (GWB) to Warren Moise (attorney retained by SFMAIC to represent and defend Lamb Jr.) and Mitch Griffith (attorney retained by SFMAIC to represent and defend Lamb III) attaching complaint filed by Workman Estate against Lamb Jr. | Attorney-Client Privilege; Common Interest |
| GWB_005238 | Workman v Lamb S&C.pdf | | | | | | Attachment to GWB_005237. Summons and Complaint filed by the Estate of Workman against Lamb Jr. in C.A. No. 2021-CP-10-03743. Publicly accessible document. | Attorney-Client Privilege; Common Interest |
| GWB_005246 | Expense report in Workman (11195422.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 4/19/2022 | 10:12:06 AM | Internal GWB email regarding expense report in connection with the DJA litigation | Work Product |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_005247 | Federal Court - Declaratory Judgment Actions (10362654.1).msg | Phil Reeves <Preeves@gwblawfirm.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Nick Farr <nfarr@gwblawfirm.com>; Natalie Ecker <eckern@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | David Rheney <drheney@gwblawfirm.com> | 9/8/2021 | 12:13:59 PM | Email from attorney Bill Young to other GWB lawyers regarding recent judicial opinions related to declaratory judgment actions. Email reveals attorney's mental impressions and opinions related to the DJA litigation | Work Product |
| GWB_005248 | CONTINENTAL CASUALTY COMPANY Plaintiff v MCCABE TROTTER And BEVERLY PC and TAMMY.pdf | | | | | | Attachment to GWB_005247. Publicly available court opinion | Work Product |
| GWB_005253 | Trustgard Insurance Company v Collins.pdf | | | | | | Attachment to GWB_005247. Publicly available court opinion | Work Product |
| GWB_005260 | Final Responses and Objections to RTA and Third Discovery Requests.nrl (10842677.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 1/25/2022 | 3:57:47 PM | Internal GWB email attaching a link to draft of SFMAIC's Responses and Objections to Requests to Admit and Third Discovery Requests. Prepared for purposes of DJA litigation | Work Product |
| GWB_005261 | Final Responses and Objections to RTA and Third Discovery Requests.nrl | | | | | | Attachment to GWB_005260. No document. Attachment to email was an internal link. | Work Product |
| GWB_005262 | FW_ (10635589.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 11/19/2021 | 9:09:35 AM | Emails between Attorney Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC), copying other State Farm employees. Contains requests from Attorney Johnsen and responses from SFMAIC regarding the Tahoe Policy, and attaches materials gathered for purposes of the DJA litigation and draft of discovery responses. While the attachments to this privileged email are withheld, the materials have been produced elsewhere. | Attorney-Client Privilege; Work Product |
| GWB_005264 | MELVIN O LAMB APPLICATION_Redacted.pdf | | | | | | Attachment to privileged email GWB_005262. Produced in the DJA and produced in this case at GWB_001101-001105 | Attorney-Client Privilege; Work Product |
| GWB_005269 | MELVIN O LAMB JR - Payment Docs from BOS.PDF | | | | | | Attachment to privileged email GWB_005262. Produced in the DJA and produced in this case at GWB_001144-001146 | Attorney-Client Privilege; Work Product |
| GWB_005272 | MELVIN O LAMB JR  REFUNDS .pdf | | | | | | Attachment to privilege email GWB_005262. Produced in the DJA and produced in this case at GWB_001140-001143 | Attorney-Client Privilege; Work Product |
| GWB_005276 | MELVIN O LAMB JR BALANCE DUES.PDF | | | | | | Attachment to privileged email GWB_005262. Produced in the DJA and produced in this case at GWB_001116-001131 | Attorney-Client Privilege; Work Product |
| GWB_005292 | MELVIN O LAMB JR REINSTATEMENT NOTICES.pdf | | | | | | Attachment to privileged email GWB_005262. Produced in the DJA and produced in this case at GWB_001132-001135 | Attorney-Client Privilege; Work Product |
| GWB_005296 | MELVIN O LAMB JR RENEWAL NOTICE 08.07.21.pdf | | | | | | Attachment to privileged email GWB_005262. Produced in the DJA and produced in this case at GWB_001111-001118 | Attorney-Client Privilege; Work Product |
| GWB_005302 | SF Responses to Workman_s First Discovery Requests.DOCX | | | | | | Attachment to privileged email GWB_005262. Draft of SFMAIC's Responses to Estate of Workman's First Discovery Requests prepared for purposes of the DJA litigation | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| Bates | Document | From | To | CC | Date | Time | Description | Privilege |
|---|---|---|---|---|---|---|---|---|
| GWB_005309 | Tahoe Docs from Claim Rep.pdf | | | | | | Attachment to privileged email GWB_005262. This attachment contains SFMAIC correspondence made for the purposes of the DJA litigation. The rest of the documents contained in this attachment were produced in the DJA and were produced in this case at GWB_001147-001164; GWB_001186-001190; GWB_001106-001110; GWB_001165-001184; GWB_001138-001139; GWB_001120-001121; and GWB_001144-001146 | Attorney-Client Privilege; Work Product |
| GWB_005381 | FW_ (GWB file 6384-2825) Claim # 4021B249D _ Estate of James Workman v. Melvin O. Lamb Jr. _ Invoice 270327 (11616653.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com> | Christine Kelly <cmkelly@gwblawfirm.com> | | 8/3/2022 | 10:10:48 AM | Email from Christine Kelly (GWB collections clerk) to Lee Shivers (SFMAIC) re payment status of invoices for legal services rendered in the DJA litigation and attaching invoice | Attorney-Client Privilege |
| GWB_005382 | Invoice_270327_Proforma_284207_2022.06.13_12.29.09.pdf | | | | | | Attachment to GWB_005381. Invoice for legal services in the DJA litigation, includes time entries reflecting specific work performed by State Farm's attorneys in the DJA | Attorney-Client Privilege; Work Product |
| GWB_005406 | FW_ (GWB file 6384-2825) Claim # 4021B249D _ Estate of James Workman v. Melvin O. Lamb Jr. _ Invoice 270327 (11704423.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com> | Christine Kelly <cmkelly@gwblawfirm.com> | | 8/18/2022 | 12:04:53 PM | Email from Christine Kelly (GWB collections clerk) to Lee Shivers (SFMAIC) re payment status of invoices for legal services rendered in the DJA litigation and attaching invoices | Attorney-Client Privilege |
| GWB_005408 | Invoice_270327_Proforma_284207_2022.06.13_12.29.09.pdf | | | | | | Attachment to GWB_005406. Invoice for legal services in the DJA litigation, includes time entries reflecting specific work performed by State Farm's attorneys in the DJA | Attorney-Client Privilege |
| GWB_005432 | Invoice_271932_Proforma_286063_2022.07.12_09.51.14.pdf | | | | | | Attachment to GWB_005406. Invoice for legal services in the DJA litigation, includes time entries reflecting specific work performed by State Farm's attorneys in the DJA | Attorney-Client Privilege |
| GWB_005436 | FW_ 1_14_22 - State Farm DJ re_ Melvin Lamb, Jr. (10788298.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Wendy Purdue <wendy.purdue.pd07@statefarm.com> | HOME LAW-MENKE <home.law-menke.275l00@statefarm.com> | 1/10/2022 | 4:47:32 PM | Email between Wendy Purdue (SFMAIC) and attorney Jennifer Johnsen (GWB) regarding responding to discovery requests in the DJA and revealing Attorney Johnsen's mental impressions, opinions and strategies in the DJA litigation. While the attachments to this privileged email have been withheld, the documents themselves were distributed in the DJA and have been produced elsewhere in this case. | Attorney-Client Privilege |
| GWB_005438 | 2021.12.15 Workman Estate Supplemental Discovery Requests.PDF | | | | | | Attachment to GWB_005436. Produced in this case at GWB_001257 | Attorney-Client Privilege |
| GWB_005440 | 2021.12.20 Workman_s 3rd Discovery Requests.PDF | | | | | | Attachment to GWB_005436. Produced in this case at GWB_001259 | Attorney-Client Privilege |
| GWB_005455 | 2021.12.22 Workman_s Corrected Third Discovery Request.PDF | | | | | | Attachment to GWB_005436. Produced in this case at GWB_001274 | Attorney-Client Privilege |
| GWB_005459 | FW_ 2021-CP-10-03743 Robert Worman v. Melvin Otto Lamb, Jr. (10985104.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Mark Mason <mark@masonlawfirm.com> | Warren Moise <warren.moise@gmail.com> | 2/7/2022 | 3:49:46 PM | Email from attorney Mark Mason to Jennifer Johnsen (attorney representing SFMAIC in the DJA) and Warren Moise (attorney retained by SFMAIC to represent and defend Lamb Jr.) regarding motions roster. While the attachments to this email are withheld, the documents are publicly available | Attorney-Client Privilege; Common Interest |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_005461 | Judge Roger M. Young Memo.pdf | | | | | | Attachment to GWB_005459. Publicly available document, Judge Roger M. Young's Memorandum to Charleston County Bar dated July 2, 2018 | Attorney-Client Privilege; Common Interest |
| GWB_005485 | NOTICE REGARDING ALL MOTIONS TO COMPEL.docx | | | | | | Attachment to GWB_005459. Publicly available document, Notice Regarding All Motions to Compel | Attorney-Client Privilege; Common Interest |
| GWB_005486 | FW_ 2021-CP-10-03743 Robert Worman v. Melvin Otto Lamb, Jr. (11226848.1).msg | Monique James <monique.james.gtgq@state farm.com>; Guy Conti <guy.conti.f58t@statefarm.c om>; robbie@whelanmellen.com <robbie@whelanmellen.com >; charles@whelanmellen.com <charles@whelanmellen.co m> | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | | 4/11/2022 | 3:14:56 PM | Email from attorney Jennifer Johnsen to Monique James (SFMAIC), Guy Conti (SFMAIC), Robbie Whelan (attorney retained by SFMAIC for the DJA litigation), and Charles Norris (attorney retained by SFMAIC for the DJA litigation). Email contains counsel's thoughts and opinions regarding mediation in the DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_005488 | FW_ 21-2623 State Farm Mutual Automobile Insurance Company v. Lamb et al (10970077.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Natalie Ecker <eckern@gwblawfirm .com> | Amanda Houser <ahouser@gwblaw firm.com> | 2/23/2022 | 7:55:28 AM | Redaction of email between GWB attorneys re Jennifer Johnsend and Natalie Ecker. Work product for purposes of the DJA litigation | Work Product |
| GWB_005489 | FW_ 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Melvin O. Lamb III, et al. (10532110.1).msg | Amanda Houser <ahouser@gwblawfirm.com > | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | | 10/25/2021 | 9:51:53 AM | Redaction of email from attorney Jennifer Johnsen to Amanda Houser (GWB legal assistant) re instructions for scheduling order and discovery plan and attaching draft documents. Work product for purposes of the DJA litigation | Work Product |
| GWB_005491 | Joint Rule 26(f) Discovery Plan.doc | | | | | | Attachment to GWB_005489. Draft of Joint Rule 26(f) Discovery Plan. Multiple versions of this document have been produced, including at GWB_004196 | Work Product |
| GWB_005494 | Proposed Consent Amended Conference and Scheduling Order.docx | | | | | | Attachment to GWB_005489. Draft of Consent Amended Scheduling Order. Multiple versions of this document have been produced, including at GWB_004199 | Work Product |
| GWB_005497 | FW_ 40-21B2-49D - Estate of James Workman v. Melvin O. Lamb Jr. (Pre-suit) 6384-2825 (10324760.1).msg | lee.shivers.d8yf@statefarm.c om <lee.shivers.d8yf@statefarm .com> | Pat Klitzing <pklitzing@gwblawfir m.com> | | 8/25/2021 | 4:47:22 PM | Email from Pat Litzing (GWB billing department) to Lee Shivers (SFMAIC) regarding budget for purposes of DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_005498 | FW_ 40-21B2-49D (10278509.1).msg | Grayson Smith <gsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfir m.com> | | 8/11/2021 | 6:41:16 PM | Email from attorney Bill Young (GWB) to attorney Grayson Smith (GWB) forwarding emails with Darren Murdoch (SFMAIC) and attaching Supreme Court opinion. Attorney-client communications and work product for purposes of DJA; contains mental impressions and opinions of counsel | Attorney-Client Privilege; Work Product |
| GWB_005500 | Op. 28050 - USAA v. Pickens.pdf | | | | | | Attachment to email GWB_005498. Research compiled of purposes of DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_005507 | FW_ 40-21B2-49D (10352997.1).msg | Pat Klitzing <pklitzing@gwblawfirm.com > | Scott LaVigne <slavigne@gwblawfir m.com> | | 9/3/2021 | 9:36:22 AM | Internal GWB email regarding rates and assignment of SFMAIC matter; for purposes of DJA litigation | Work Product |
| GWB_005508 | FW_ 40218249D (10356261.1).msg | mgriffith@griffithfreeman.co m <mgriffith@griffithfreeman.c om> | Bill Young <byoung@gwblawfir m.com> | warren.moise@gm ail.com <warren.moise@g mail.com> | 9/7/2021 | 9:47:40 AM | Email from attorney Bill Young (GWB) to Mitch Griffith (attorney retained by SFMAIC to represent Lamb III) attaching correspondence received by SFMAIC from the Workman Estate | Attorney-Client Privilege; Common Interest |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_005509 | 2021.09.03 Tyger River demand for Workman Personal Injury coverage.pdf | | | | | | Attachment to GWB_005508. | Attorney-Client Privilege; Common Interest |
| GWB_005522 | FW_ 4021b249d (10639749.1).msg | Shay Anderson <shay.anderson.grfs@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | | 11/12/2021 | 11:06:37 AM | Email from attorney Jennifer Johnsen (GWB) to Shay Anderson (SFMAIC) attaching documents relating to the Tahoe policy. While the attachment to the email is withheld, the documents have been produced elsewhere. | Attorney-Client Privilege |
| GWB_005523 | Scanned Image.pdf | | | | | | Attachment to GWB_005522. With the exception of an internal SFMAIC communication made for the purpose of DJA litigation, all other documents have been produced at WORKMAN00000024PROD; GWB_001106-001110; GWB_001165-001172; GWB_001173-001184; GWB_001138-001139; GWB_001120-001121 | Attorney-Client Privilege |
| GWB_005595 | FW_ 6384-2825 - New claim rep (11771872.1).msg | Scott LaVigne <slavigne@gwblawfirm.com>; Pat Klitzing <pklitzing@gwblawfirm.com> | Denise Kirk <dkirk@gwblawfirm.com> | Christine Kelly <cmkelly@gwblawfirm.com> | | 9/2/2022 | 10:57:06 AM | Internal GWB email regarding assignment of matter from SFMAIC, for purposes of DJA litigation | Work Product |
| GWB_005596 | FW_ 6384-2825 _ Estate of Workman v. Lamb _ Updated Budget needed (10959022.1).msg | Scott LaVigne <slavigne@gwblawfirm.com> | Paula Forbes <pforbes@gwblawfirm.com> | | | 2/20/2022 | 7:35:26 PM | Internal GWB emails regarding budget for DJA litigation | Work Product |
| GWB_005598 | FW_ 6384-2825 Workman v. Lamb _ Claim No._ 40-21B2-49D _ Updated Budget and Invoice 262738 (10967928.1).msg | Tyran Turner <tyran.turner.e123@statefarm.com>; Lee Shivers <lee.shivers.d8yf@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | | 2/22/2022 | 2:46:09 PM | Email from attorney Jennifer Johnsen (GWB) to Tyran Turner (SFMAIC) and Lee Shivers (SFMAIC) regarding budget for DJA litigation and budget and invoice | Attorney-Client Privilege |
| GWB_005599 | 6384-2825 Invoice 262738 2.7.2022.pdf | | | | | | | Attachment to GWB_005598. Invoice for legal services rendered by GWB in its representation of SFMAIC in the DJA litigation. Includes descriptions of specific work performed and reveals mental impressions and strategies of counsel and communications with SFMAIC | Attorney-Client Privilege; Work Product |
| GWB_005609 | 6384-2825 Workman updated budget as of 2.22.22.pdf | | | | | | | Attachment to GWB_005598. Budget for DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_005613 | FW_ Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Complaint (10304260.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | | 8/19/2021 | 11:34:24 AM | Redaction of internal GWB email regarding handling of file for DJA litigation | Work Product |
| GWB_005615 | FW_ Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Mediation Order (10414545.1).msg | Amanda Houser <ahouser@gwblawfirm.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Nekayla McKinney <nMcKinney@gwblawfirm.com> | | | 9/23/2021 | 11:17:24 AM | Redaction of internal GWB email between GWB legal assistants sharing filed Mediation Order. While attachment is withheld, the document was publicly filed and has been previously produced in this case. | Work Product |
| GWB_005617 | DE 26 - Mediation Order (Mediation Due 5.31.22).pdf | | | | | | | Attachment to GWB_005615. Previously produced at GWB_000397 | Work Product |
| GWB_005619 | FW_ Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Scheduling Order (10414481.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Nekayla McKinney <nMcKinney@gwblawfirm.com> | | | 9/23/2021 | 11:04:29 AM | Redaction of internal GWB email between GWB legal assistants sharing Conference and Scheduling Order. While attachment is withheld, the document was publicly filed and has been previously produced in this case. | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_005621 | DE 25 - Conference and Scheduling Order 9.21.21.pdf | | | | | | Attachment to GWB_005619. Previously produced at GWB_000390 | Work Product |
| GWB_005628 | FW_ DJ_Interpleader Complaint.DOCX (10269556.1).msg | Grayson Smith <gsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/10/2021 | 8:45:31 AM | Email from attorney Bill Young (GWB) to attorney Grayson Smith (GWB) attaching draft of DJA complaint for internal review | Work Product |
| GWB_005629 | Complaint.DOCX | | | | | | Attachment to GWB_005628. Draft of DJA complaint. Attorney work product for purposes of DJA litigation | Work Product |
| GWB_005638 | FW_ Estate of Workman v. Lamb, Jr. (10361147.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Terry Rouse <trouse@gwblawfirm.com> | | 9/8/2021 | 8:55:13 AM | Email between Terry Rouse (GWB paralegal) and Luchana Smith (GWB paralegal), forwarding email from Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) attaching discovery requests in the case brought by the Estate against Lamb Jr. | Work Product |
| GWB_005639 | Plaintiff's First Discovery Requests to Defendant.pdf | | | | | | Attachment to GWB_005639. Plaintiff's First Discovery Requests to Defendant in C.A. No. 2021 CP-10-03743. Document was distributed by the Workman Estate in that matter and is available by other means | Work Product |
| GWB_005644 | FW_ Estate of Workman v. Lamb, Jr. (10367561.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | 9/9/2021 | 1:21:31 PM | Email between Luchana Smith (GWB paralegal) and Nekayla McKinney (GWB legal assistant), forwarding email from Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) attaching discovery requests in the case brought by the Estate against Lamb Jr. | Work Product |
| GWB_005646 | Plaintiff's First Discovery Requests to Defendant.pdf | | | | | | Attachment to GWB_005644. Plaintiff's First Discovery Requests to Defendant in C.A. No. 2021 CP-10-03743. Document was distributed by the Workman Estate in that matter and is available by other means | Work Product |
| GWB_005651 | FW_ Estate of Workman v. Lamb, Jr. (10367575.1).msg | Bill Young <byoung@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 9/9/2021 | 1:23:16 PM | Email between Luchana Smith (GWB paralegal) and Bill Young (GWB attorney), forwarding email from Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) attaching discovery requests in the case brought by the Estate against Lamb Jr. | Work Product |
| GWB_005653 | Plaintiff's First Discovery Requests to Defendant.pdf | | | | | | Attachment to GWB_005651. Plaintiff's First Discovery Requests to Defendant in C.A. No. 2021 CP-10-03743. Document was distributed by the Workman Estate in that matter and is available by other means | Work Product |
| GWB_005658 | FW_ for Lamb deposition - approval date for SC Driver's Exclusion Endorsement, 6023DC (10673681.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | Brian Boyle <brian.boyle.g6lg@statefarm.com>; HOME LAW-BOYLE <home.law-boyle.386l00@statefarm.com>; Brittany Perez <brittany.perez.vabto8@statefarm.com>; Shay Anderson <shay.anderson.grfs@statefarm.com> | 11/16/2021 | 10:58:28 AM | Email from Shay Anderson (SFMAIC) to Jennifer Johnsen (GWB attorney) regarding information gathered at the request of GWB for the purposes of the DJA litigation | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| Bates | Document | From | To | CC | Date | Time | Description | Privilege |
|---|---|---|---|---|---|---|---|---|
| GWB_005659 | FW_ Invoice for Service for Mario and Constance Molinaro (10316240.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Kim Free <kfree@gwblawfirm.com> | | 8/24/2021 | 11:26:11 AM | Emails between Kim Free (GWB accounting) and Luchana Smith (GWB paralegal) regarding invoices from process servers for DJA litigation | Work Product |
| GWB_005661 | We Serve 2020 - W9.pdf | | | | | | Attachment to GWB_005659. W-9 for payment of process server | Work Product |
| GWB_005667 | FW_ Invoice from We Serve Law (362101) (10337255.1).msg | Kim Free <kfree@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/30/2021 | 4:12:32 PM | Emails between Kim Free (GWB accounting) and Luchana Smith (GWB paralegal) regarding invoices from process servers for DJA litigation | Work Product |
| GWB_005669 | FW_ LAMB - Signed Waiver of Service attached (10363151.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | Mark Mason <mark@masonlawfirm.com> | 9/8/2021 | 1:57:05 PM | Email between Bill Young and Mark Mason regarding waiver of service on behalf of Lamb Jr. and attaching signed waiver of service which was subsequently filed. | Attorney-Client Privilege; Common Interest |
| GWB_005670 | Waiver of Service (signed) 9-8-21.pdf | | | | | | Attachment to GWB_005669. Signed waiver of service. While the attachment is withheld with the email, the waiver was filed in the DJA | Attorney-Client Privilege; Common Interest |
| GWB_005672 | FW_ LAMB - Signed Waiver of Service attached (10393687.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 9/16/2021 | 7:35:27 PM | Emails between GWB paralegal, assistant, and attorney regarding filing of Acceptance of Service in DJA litigation | Work Product |
| GWB_005674 | Waiver of Service (signed) 9-8-21.pdf | | | | | | Attachment to GWB_005672 | Work Product |
| GWB_005676 | FW_ Melvin O. Lamb Jr. Cl. No. 4021B249D (10948772.1).msg | Melanie Smith <msmith@gwblawfirm.com> | Natalie Ecker <eckern@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 2/16/2022 | 3:06:26 PM | Internal GWB emails containing communication with SFMAIC requesting authority to perform legal research for purposes of DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_005677 | FW_ Melvin O. Lamb, III - Letter from State Farm (10859331.1).msg | robert@wyndhamlaw.com <robert@wyndhamlaw.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/28/2022 | 9:35:35 AM | Email from Jennifer Johnsen (GWB attorney for SFMAIC) to Robert Wyndham (Lamb III's personal attorney) attaching letter from SFMAIC to Lamb III, driver of vehicle insured by SFMAIC | Attorney-Client Privilege; Common Interest |
| GWB_005678 | Letter to Melvin O Lamb III 1_27_2022.pdf | | | | | | Attachment to email bates labeled GWB_005677. Letter from SFMAIC to Robert Wyndham, personal attorney to Lamb III (driver of insured vehicle) | Attorney-Client Privilege; Common Interest |
| GWB_005679 | FW_ New Assignment 4021B249D (10287066.1).msg | Bill Young <byoung@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | | 7/22/2021 | 4:02:16 PM | Email from Tania McGee (GWB legal assistant) to attorney Bill Young (GWB) forwarding email from attorney David Cleveland, previously retained by SFMAIC to represent Lamb III and Lamb Jr., to SFMAIC regarding actions taken during his representation of Lamb III and Lamb Jr. and attaching documents received as part of GWB's representation of SFMAIC in anticipated litigation. While the attachments to this privileged email are withheld, the same documents were produced in the DJA and have been produced in this case | Work Product; Attorney-Client Privilege |
| GWB_005681 | Melvin Otto Lamb III - Criminal Report.pdf | | | | | | Attachment to GWB_005679. Produced in the DJA and produced in this case at GWB_00642-00649 | Work Product; Attorney-Client Privilege |
| GWB_005690 | Police Report.pdf | | | | | | Attachment to GWB_005679. Produced in the DJA and in this case at GWB_00581-00586 | Work Product; Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_005697 | FW_ New Assignment 4021B249D (10306174.1).msg | Billing Inquiries <BillingInquiries@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | | 7/22/2021 | 3:07:09 PM | Email from Tania McGee (GWB legal assistant) to GWB's billing inquiries requesting conflicts search and forwarding email from attorney David Cleveland, previously retained by SFMAIC to represent Lamb III and Lamb Jr., to SFMAIC regarding actions taken during his representation of Lamb | Work Product |
| GWB_005699 | FW_ New Serve - lsmith@gwblawfirm.com (10503046.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | 10/17/2021 | 11:36:22 PM | Email from Luchana Smith (GWB paralegal) to Jennifer Johnsen (GWB attorney representing SFMAIC) and Amanda Houser (GWB legal assistant). Forwarding email from process server regarding attempts to serve Lamb III with the DJA complaint | Work Product |
| GWB_005704 | FW_ New Serve - lsmith@gwblawfirm.com (10508608.1).msg | info@weserverlaw.com <info@weserverlaw.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/18/2021 | 5:12:42 PM | Email from Amanda Houser (GWB legal assistant) to process server regarding attempts to serve Lamb III with DJA complaint and requesting a skip trace | Work Product |
| GWB_005709 | FW_ New Serve - lsmith@gwblawfirm.com (10511382.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/19/2021 | 12:27:17 PM | Email from Amanda Houser (GWB legal assistant) to Jennifer Johnsen (GWB attorney representing SFMAIC) regarding payment for skip trace to locate Lamb III to serve the DJA complaint | Work Product |
| GWB_005715 | FW_ New Serve - lsmith@gwblawfirm.com (10513244.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/19/2021 | 4:26:51 PM | Email from Amanda Houser (GWB legal assistant) to Jennifer Johnsen (GWB attorney representing SFMAIC) regarding status of process server's attempts to serve Lamb III with the DJA complaint and attaching results of process server's skip trace | Work Product |
| GWB_005722 | MELVIN OTTO LAMB III-People-Search-202110191622.pdf | | | | | | Attachment to GWB_005715 | Work Product |
| GWB_005724 | FW_ New Serve - Melvin Lamb III (10531817.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/25/2021 | 9:21:13 AM | Email from Amanda Houser (GWB legal assistant) to Jennifer Johnsen (GWB attorney representing SFMAIC) regarding status of process server's attempts to serve Lamb III with the DJA complaint | Work Product |
| GWB_005731 | FW_ Recommendation for Melvin Lamb 4021B249D (10244891.1).msg | Julia Bradshaw <jbradshaw@gwblawfirm.com> | Cynthia Smart <csmart@gwblawfirm.com> | | 8/3/2021 | 4:02:43 PM | Email from Cynthia Smart (GWB legal assistant) to Julia Bradshaw (GWB attorney representing SFMAIC), forwarding email from Bill Young (GWB attorney) to Darren Murdoch (SFMAIC). Email contains mental impression, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_005733 | FW_ SFMAIC v. Lamb, III, Melvin O., et al. - New Subpoena Discovery Referral - Claim No_ 40-21B2-49D (2021-21144-SC) (10592894.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | | 11/5/2021 | 11:35:53 AM | Emails between Shay Anderson (SFMAIC) and Jennifer Johnsen (GWB attorney representing SFMAIC) regarding the 30(b)(6) deposition of SFMAIC in the DJA litigation | Attorney-Client Privilege |
| GWB_005735 | FW_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC_ Attorney Client Privileged _ Work Product (10859779.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/28/2022 | 10:08:33 AM | Emails between Jennifer Johnsen (GWB attorney) and Tyran Turner (SFMAIC) regarding correspondence from SFMAIC to Robert Wyndham, personal attorney for Lamb III, driver of vehicle insured by SFMAIC and attaching correspondence | Attorney-Client Privilege; Common Interest |
| GWB_005737 | Letter to Melvin O Lamb III ( New address for Robert Wyndham).pdf | | | | | | Attachment to GWB_005735. Letter from SFMAIC to Lamb III, driver of vehicle insured by SFMAIC, c/o Lamb III's attorney Robert Wyndham | Attorney-Client Privilege; Common Interest |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_005738 | FW_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10865298.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com >; charles@whelanmellen.com <charles@whelanmellen.co m> | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | | | 1/21/2022 | 4:28:07 PM | Email from Jennifer Johnsen (GWB attorney for SFMAIC) to attorneys Robbie Whelan and Charles Norris (also representing SFMAIC in the DJA), re discussions between those same attorneys and SFMAIC in connection with the DJA litigation. Email contains the mental impressions, opinions, strategies, and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_005740 | FW_ SFMAIC v. Lamb, III, Melvin O., et al. - Draft responses to Requests for Admission, etc. - 40-21B2-49D (2021-21144 SC) (10865308.1).msg | Robbie Whelan <robbie@whelanmellen.com >; Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Chris Menke <chris.menke.a9mg@ statefarm.com> | Charles Norris <charles@whelan mellen.com>; Guy Conti <guy.conti.f58t@st atefarm.com>; Nicole Granger <nicole.granger.qu 4l@statefarm.com >; HOME LAW-MENKE <home.law-menke.275l00@sta tefarm.com> | | 1/24/2022 | 5:42:34 PM | Email from Chris Menke (SFMAIC) to attorneys representing SFMAIC in the DJA and copying other SFMAIC employees regarding answers to discovery in the DJA litigation and attaching document prepared by SFMAIC to share with its counsel for purposes of responding to discovery in the DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_005741 | 2021-21144 - RFA - Lamb v SFMAIC.docx | | | | | | | Attachment to GWB_005740. Document prepared by SFMAIC to share with its counsel for purposes of responding to discovery in the DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_005745 | Web capture_24-1-2022_162244_collab.sfcollab.o rg.jpeg | | | | | | | Attachment to GWB_005740. Document prepared by SFMAIC to share with its counsel for purposes of responding to discovery in the DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_005746 | FW_ SFMAIC v.Melvin O. Lamb, Jr. et al. (10860531.1).msg | Tyran Turner <tyran.turner.e123@statefar m.com>; Lee Shivers <lee.shivers.d8yf@statefarm .com> | Monique James <monique.james.gtgq @statefarm.com> | Jennifer Johnsen <Jjohnsen@gwbla wfirm.com> | | 1/28/2022 | 10:58:42 AM | Emails between Jennifer Johnsen (GWB attorney for SFMAIC), Monique James (SFMAIC), Tyran Turner (SFMAIC) and Lee Shivers (SFMAIC) regarding Mark Mason (attorney for SFMAIC's insured Lamb Jr.). Email thread reveals the mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege |
| GWB_005750 | Mason Invoice.pdf | | | | | | | Attachment to GWB_005746 | Attorney-Client Privilege |
| GWB_005757 | W-9 Mark Mason.pdf | | | | | | | Attachment to GWB_005746 | Attorney-Client Privilege |
| GWB_005758 | FW_ State Farm matter (11226833.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfirm.com > | Robbie Whelan <robbie@whelanmell en.com> | | | 4/7/2022 | 2:02:41 PM | Redaction of email from Robbie Whelan (attorney for SFMAIC) to Jennifer Johnsen (attorney for SFMAIC), forwarding email thread with Justin Kahn. | Work Product |
| GWB_005760 | FW_ State Farm Mutual Auto. Ins. Co. v. Melvin O. Lamb III, et al. (10872438.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com >; charles@whelanmellen.com <charles@whelanmellen.co m>; Guy Conti <guy.conti.f58t@statefarm.c om> | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | | | 1/29/2022 | 4:57:50 PM | Redaction of email from Jennifer Johnsen (GWB attorney for SFMAIC) to Robbie Whelan (attorney for SFMAIC) Charles Norris (attorney for SFMAIC) and Guy Conti (SFMAIC). Attorney Johnsen forwarding email from Justin Kahn and attaching discovery already served upon the Workman Estate. Redacted portion contains the mental impressions, opinions and strategies of counsel. While the attachment is withheld, the document has been produced elsewhere | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_005762 | Cover Ltr, SF Discovery Objections_Responses and COS.pdf | | | | | | Attachment to GWB_005760. SFMAIC discovery responses served in the DJA litigation and produced in this case at GWB_000001; GWB_000017-000018; GWB_000021-000035 | Attorney-Client Privilege |
| GWB_005780 | FW_ State Farm v. Lamb et al (10872398.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com>; charles@whelanmellen.com <charles@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/28/2022 | 11:54:46 AM | Redaction of email from Jennifer Johnsen (attorney for SFMAIC) to Robbie Whelan (attorney for SFMAIC), forwarding an email from Justin Kahn. | Attorney-Client Privilege; Work Product |
| GWB_005781 | FW_ State Farm v. Lamb et al. - Affidavits of Service (10368062.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | 9/9/2021 | 2:34:31 PM | Email from Luchana Smith (GWB paralegal) to Tania McGee (GWB legal assistant) and Bill Young (GWB attorney) attaching the affidavits of service received from process server in the DJA litigation | Work Product |
| GWB_005783 | WeServeNJ Bulk serves.pdf | | | | | | Attachment to GWB_005781. Affidavits of service gathered by process server hired by GWB for purposes of DJA litigation. These same affidavits of service were publicly filed in the DJA | Work Product |
| GWB_005795 | FW_ State Farm v. Lamb et al. - Affidavits of Service (10368108.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 9/9/2021 | 2:39:46 PM | Email from Billy Young (GWB attorney) to Nekayla McKinney (GWB legal assistant) forwarding affidavits of service gathered by process server for DJA litigation | Work Product |
| GWB_005797 | WeServeNJ Bulk serves.pdf | | | | | | Attachment to GWB_005795. Affidavits of service gathered by process server hired by GWB for purposes of DJA litigation. These same affidavits of service were publicly filed in the DJA | Work Product |
| GWB_005809 | FW_ State Farm v. Lamb et al. - Affidavits of Service (10368122.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | | 9/9/2021 | 2:40:39 PM | Email from Tania McGee (GWB legal assistant) to Nekayla McKinney (GWB legal assistant) attaching affidavits of service received from process server in the DJA litigation | Work Product |
| GWB_005811 | WeServeNJ Bulk serves.pdf | | | | | | Attachment to GWB_005809. Affidavits of service gathered by process server hired by GWB for purposes of DJA litigation. These same affidavits of service were publicly filed in the DJA | Work Product |
| GWB_005823 | FW_ State Farm v. Lamb et al. - Affidavits of Service (10372268.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | 9/10/2021 | 1:26:16 PM | Email from Luchana Smith (GWB paralegal) to GWB legal assistants Tania McGee and Nekayla McKinney attaching an affidavit of service in the DJA litigation | Work Product |
| GWB_005825 | Katherine M Vonesh.pdf | | | | | | Attachment to GWB_005823 | Work Product |
| GWB_005827 | FW_ State Farm v. Lamb, et al. (10750396.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 12/15/2021 | 4:01:00 PM | Redaction of internal GWB email from Jennifer Johnsen (GWB attorney) to Amanda Houser (GWB legal assistant) forwarding email and attaching Workman Estate's supplemental discovery requests. While attachment has been withheld with the email, this same document has been produced elsewhere | Work Product |
| GWB_005828 | 2021.12.15 JSKahn to JEJohnsen.pdf | | | | | | Attachment to GWB_005827. Produced at GWB_000070 | Work Product |
| GWB_005829 | 2021.12.15 Workman Estate Supplemental Discovery Requests.pdf | | | | | | Attachment to GWB_005827. Produced at GWB_001257 | Work Product |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_005831 | FW_ State Farm v. Lamb, et al (10889709.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com>; charles@whelanmellen.com <charles@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 2/1/2022 | 11:45:40 AM | Redaction of email from Jennifer Johnsen (GWB attorney) to Robbie Whelan (attorney for SFMAIC) and Charles Norris (attorney for SFMAIC). Work product containing attorney's mental impressions, opinions and strategies | Work Product |
| GWB_005833 | FW_ State Farm v. Lamb, et al (10985306.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com>; charles@whelanmellen.com <charles@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com>; Monique James <monique.james.gtgq@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 2/3/2022 | 6:58:20 PM | Redaction of email from Jennifer Johnsen (GWB attorney) to Robbie Whelan (attorney for SFMAIC), Charles Norris (attorney for SFMAIC), Guy Conti (SFMAIC) and Monique James (SFMAIC). Email is confidential communication between attorney and client and contains the mental impressions of counsel. Email attaches Summons and Complaint filed by the Estate against Lamb III. While the attachment has been withheld with the email, the Complaint was publicly filed and has been produced elsewhere in this case | Attorney-Client Privilege; Work Product |
| GWB_005836 | 2022.02.03 Summons and Complaint.pdf | | | | | | Attachment to GWB_005833. Publicly available document and previously produced at GWB_002845 | Attorney-Client Privilege; Work Product |
| GWB_005844 | FW_ State Farm v. Lamb, et al (DJ action) (10304555.1).msg | rwyndham@gedneyhowe.com <rwyndham@gedneyhowe.com> | Bill Young <byoung@gwblawfirm.com> | mgriffith@griffithfreeman.com <mgriffith@griffithfreeman.com> | 8/19/2021 | 12:15:32 PM | Email from Bill Young (GWB attorney for SFMAIC) to Robert Wyndham (Lamb III's attorney) and Mitch Griffith (attorney retained by SFMAIC to represent Lamb III) attaching filed copies of the DJA Complaint, Answers to LR 26.01 Interrogatories, Exhibit A and Summons to Lamb III. While attachments the email are withheld, the same documents were publicly filed and have been produced elsewhere in this case | Attorney-Client Privilege; Common Interest |
| GWB_005845 | DE 01 - Declaratory Judgment Complaint.PDF | | | | | | Attachment to GWB_005844. Publicly filed document previously produced in this case at GWB_000442 | Attorney-Client Privilege; Common Interest |
| GWB_005851 | DE 02 - Plaintiff_s Answers to LR 26.01 ROGs.PDF | | | | | | Attachment to GWB_005844. Publicly filed document previously produced in this case at GWB_000515 | Attorney-Client Privilege; Common Interest |
| GWB_005854 | DE 03 - Summons Issued to Melvin O. Lamb, III.PDF | | | | | | Attachment to GWB_005844. Publicly filed document previously produced in this case at GWB_000518 | Attorney-Client Privilege; Common Interest |
| GWB_005856 | Filed Exhibit A to Complaint.pdf | | | | | | Attachment to GWB_005844. Publicly filed document previously produced in this case at GWB_000454 | Attorney-Client Privilege; Common Interest |
| GWB_005917 | FW_ State Farm v. Melvin Lamb, et al. (10419640.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 9/24/2021 | 3:17:41 PM | Internal GWB email from Bill Young (attorney) to Nekayla McKinney (legal assistant) attaching draft filing and instructions to file | Work Product |
| GWB_005920 | Notice of Extension.docx | | | | | | Attachment to GWB_005917 | |
| GWB_005921 | FW_ State Farm v. Workman (10502834.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/7/2021 | 3:35:04 PM | Redaction of portion of email thread from Jennifer Johnsen (GWB attorney) to Luchana Smith (GWB paralegal) regarding potential addresses to serve Lamb III | Work Product |
| GWB_005922 | FW_ State Farm v. Workman (10692933.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | Nekayla McKinney <nMcKinney@gwblawfirm.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 12/7/2021 | 10:49:22 AM | Reaction of portion of email thread from Luchana Smith (GWB paralegal) to Jennifer Johnsen (GWB attorney) and other GWB legal assistants regarding subpoena from the Workman Estate and attaching same | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_005923 | 2021.08.27 Plt's Subpoena to State Farm.pdf | | | | | | Attachment to GWB_005922. While attachment has been withheld, the document was distributed in the DJA litigation and has been previously produced in this case at GWB_003457 | Work Product |
| GWB_005932 | FW_ State Farm v. Workman (10693840.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com>; Nekayla McKinney <McKinney@gwblawfirm.com> | 12/7/2021 | 11:44:27 AM | Redaction of portion of email thread from Amanda Houser (GWB legal assistant) to Jennifer Johnsen (GWB attorney) and other GWB legal assistants regarding subpoena from the Workman Estate and attaching same | Work Product |
| GWB_005934 | 2021.08.20 Plaintiff's Subpoena to State Farm Agent.pdf | | | | | | Attachment to GWB_005932. While attachment has been withheld, the document was distributed in the DJA litigation and has been previously produced in this case at GWB_003453 | Work Product |
| GWB_005938 | 2021.08.27 Plt's Subpoena to State Farm.pdf | | | | | | Attachment to GWB_005932. While attachment has been withheld, the document was distributed in the DJA litigation and has been previously produced in this case at GWB_003457 | Work Product |
| GWB_005947 | FW_ State Farm v. Workman (10889553.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Mark Mason <mark@masonlawfirm.com> | | 2/1/2022 | 11:00:57 AM | Redaction of email from Mark Mason (attorney for Lamb Jr., SFMAIC's insured) to Jennifer Johnsen (SFMAIC's attorney in the DJA litigation) | Attorney-Client Privilege; Common Interest |
| GWB_005949 | FW_ State Farm v. Workman (10889710.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com>; charles@whelanmellen.com <charles@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com>; Monique James <monique.james.gtgq@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 2/1/2022 | 11:38:22 AM | Redaction of emails between Jennifer Johnsen (GWB attorney for SFMAIC), Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC). Contains mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_005951 | FW_ State Farm v. Workman (6384-2825) - Discovery requests and 30(b)(6) Depo (10561072.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com>; Nekayla McKinney <McKinney@gwblawfirm.com> | 10/31/2021 | 7:43:03 PM | Internal GWB emails regarding assignement of SFMAIC matter and attaching documents from case | Work Product |
| GWB_005952 | 2021.09.28 Cover letter JSKahn to WTYoung.PDF | | | | | | Attachment to GWB_005951. While attachment is withheld with email, the same document has been produced at GWB_000056 | Work Product |
| GWB_005953 | 2021.09.28 Workman Estate First Discovery Requests to PLTF State Farm.PDF | | | | | | Attachment to GWB_005951. While attachment is withheld with email, the same document has been produced at GWB_001253 | Work Product |
| GWB_005957 | 30(b)(6) NOD - State Farm (11_4_21 @ Kahn Law Firm) (served 9-28-21).PDF | | | | | | Attachment to GWB_005951. While attachment is withheld with email, the same document has been produced at GWB_001239 | Work Product |
| GWB_005961 | FW_ State Farm v. Workman Amended Depo Notice (10713461.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Natalie Ecker <eckern@gwblawfirm.com> | | 12/13/2021 | 1:16:29 PM | Redaction of portion of email from Natalie Ecker (GWB attorney for SFMAIC) to Amanda Houser (GWB legal assistant) re instructions to file confidentiality order | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_005965 | FW_ State Farm v. Workman et al (10592694.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com>; Lee Shivers <lee.shivers.d8yf@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 11/3/2021 | 3:46:25 PM | Redaction of email from Jennifer Johnsen (GWB attorney) to Darren Murdoch (SFMAIC) and Lee Shivers (SFMAIC) regarding discovery responses | Attorney-Client Privilege |
| GWB_005966 | FW_ Subpoena to State Farm - Estate of Workman v. Lamb (10464316.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/7/2021 | 3:47:07 PM | Email between Amanda Houser (GWB legal assistant) and Luchana Smith (GWB paralegal) re location of documents produced in response to subpoena from Workman Estate and attaching link | Work Product |
| GWB_005967 | Subpoena to State Farm - Estate of Workman v. Lamb [GWB-IMANMAIN.FID905081].nrl | | | | | | Attachment to GWB_005966. Internal GWB link, no document attached. However, email refers to subpoena issued and previously produced | Work Product |
| GWB_005968 | FW_ Voicemail Message (STATE FARM _ DavidR) From_8442928615 (10306177.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | David Rheney <drheney@gwblawfirm.com> | | 7/22/2021 | 1:27:01 PM | Internal GWB email forwarding voicemail from Darren Murdoch (SFMAIC) | Attorney-Client Privilege; Work Product |
| GWB_005969 | MSG01000.WAV | | | | | | Attachment to GWB_005968, recording of voicemail from Darren Murdoch (SFMAIC) to GWB attorney for purposes of anticipated litigation | Attorney-Client Privilege |
| GWB_005970 | FW_ Voicemail Message (STATE FARM _ DavidR) From_8442928615 (10306178.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | David Rheney <drheney@gwblawfirm.com> | | 7/21/2021 | 3:33:04 PM | Internal GWB email forwarding voicemail from Darren Murdoch (SFMAIC) | Attorney-Client Privilege |
| GWB_005971 | MSG00997.WAV | | | | | | Attachment to GWB_005970, recording of voicemail from Darren Murdoch (SFMAIC) to GWB attorney for purposes of anticipated litigation | Attorney-Client Privilege |
| GWB_005972 | FW_ Workman (10447392.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/4/2021 | 4:37:05 PM | Email from Amanda Houser (legal assistant) to Nekayla McKinney (legal assistant) forwarding email from Jennifer Johnsen (GWB attorney for SFMAIC) requesting information on status of file for purposes of DJA litigation | Work Product |
| GWB_005974 | FW_ Workman (11226832.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Robbie Whelan <robbie@whelanmellen.com> | | 4/8/2022 | 12:53:53 PM | Redaction of email from Robbie Whelan (attorney for SFMAIC) to Jennifer Johnsen (GWB attorney for SFMAIC) | Work Product |
| GWB_005975 | FW_ Workman Discovery State Farm v. Workman (10738595.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Natalie Ecker <eckern@gwblawfirm.com> | 12/20/2021 | 2:19:29 PM | Reaction of portion of email thread from Jennifer Johnsen (GWB attorney) to GWB legal assistant and GWB attorney Natalie Ecker, requesting that discovery response deadline be calendared | Work Product |
| GWB_005976 | 2021.12.20 Johnsen 3rd Discovery Requests.pdf | | | | | | Attachment to GWB_005975. While the attachment to the internal GWB email is withheld, the same document has been previously produced at GWB_001259 | Work Product |
| GWB_005991 | FW_ Workman v. Lamb (10403773.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 9/21/2021 | 9:44:33 AM | Redaction of portion of email thread between Bill Young (GWB attorney for SFMAIC) and Jennifer Johnsen (GWB attorney for SFMAIC) attaching Workman Estate's 30(b)(6) deposition notice | Work Product |
| GWB_005993 | 2021.09.20 Plaintiff's Subpoena and 30(b)(6) NOD to State Farm.pdf | | | | | | Attachment to GWB_005991. While attachment to email is withheld, this document has been previously produced at GWB_000560 | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_006000 | FW_ Workman v. Lamb (10807115.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com>; charles@whelanmellen.com <charles@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/17/2022 | 3:21:34 PM | Email between Jennifer Johnsen (GWB attorney for SFMAIC) and Robbie Whelan and Charles Norris (attorneys for SFMAIC) regarding Tyger River demands and attaching same | Work Product |
| GWB_006003 | 2021.09.03 Tyger River demand for Workman Personal Injury coverage.pdf | | | | | | Attachment to GWB_006000. While the attachment to the work product email is withheld, the letter is readily available to Plaintiffs' counsel, as it was sent by the same counsel representing the Estate of Workman in the DJA action and in the state court actions against Lamb Jr. and Lamb III | Work Product |
| GWB_006016 | 2021.11.29 Tyger River demand for Workman.PDF | | | | | | Attachment to GWB_006000. While the attachment to the work product email is withheld, the letter is readily available to Plaintiffs' counsel, as it was sent by the same counsel representing the Estate of Workman in the DJA action and in the state court actions against Lamb Jr. and Lamb III. Same letter was previously produced in this case at GWB_000057 | Work Product |
| GWB_006029 | 2021.7.12 PD  Tyder River Demand for Workman.pdf | | | | | | Attachment to GWB_006000. While the attachment to the work product email is withheld, the letter is readily available to Plaintiffs' counsel, as it was sent by the same counsel representing the Estate of Workman in the DJA action and in the state court actions against Lamb Jr. and Lamb III. Same letter was previously produced in this case at GWB_003570. Attachment also includes the accident report, the same portions of which were produced at GWB_000575-000580 and GWB_000589 | Work Product |
| GWB_006044 | FW_ Workman v. Lamb EXTREMELY CONFIDENTIAL (11122875.1).msg | Guy Conti (Work) <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Robbie Whelan <robbie@whelanmellen.com> | | 3/8/2022 | 2:54:41 PM | Redaction of email from Robbie Whelan (attorney for SFMAIC) to Guy Conti (SFMAIC), Charles Norris (attorney for SFMAIC) and Jennifer Johnsen (GWB attorney for SFMAIC). Email forwards email from Justin Kahn attaching autopsy photographs and includes communications between counsel and client for purposes of seeking legal advice | Attorney-Client Privilege |
| GWB_006045 | 2022.03.08 Workman Autopsy Photograph Production Produced | | | | | | Attachment to GWB_006044. While the attachment is being withheld with the privileged email, this document is already in Plaintiffs' counsel production, as it originated from Plaintiffs' counsel in the DJA and/or lawsuits against Lamb Jr. and Lamb III | Attorney-Client Privilege |
| GWB_006111 | FW_ Your recent new matter has been assigned a case number (10222408.1).msg | Julia Bradshaw <jbradshaw@gwblawfirm.com> | Cynthia Smart <csmart@gwblawfirm.com> | | 7/27/2021 | 1:44:53 PM | Email from Cynthia Smart (GWB legal assistant) to Julia Bradshaw (GWB attorney) noting that the SFMAIC matter is now open in GWB's system | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| GWB_006112 | Fwd_ (10635587.1).msg | | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 11/18/2021 | 6:28:28 PM | Email from Jennifer Johnsen (GWB attorney) to Amanda Houser (GWB legal assistant) forwarding emails between Johnsen and Shay Anderson (SFMAIC) regarding discovery responses in the DJA litigation and gathering relevant documents for puroposes of the DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_006114 | Fwd_ (10635588.1).msg | | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 11/18/2021 | 11:36:16 PM | Email from Jennifer Johnsen (GWB attorney) to Amanda Houser (GWB legal assistant) forwarding emails between Johnsen and Shay Anderson (SFMAIC) regarding discovery responses in the DJA litigation and gathering relevant documents for puroposes of the DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_006116 | Fwd_ (10642851.1).msg | | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 11/22/2021 | 2:09:13 PM | Email from Jennifer Johnsen (GWB attorney) to Amanda Houser (GWB legal assistant) forwarding emails between Johnsen and Shay Anderson (SFMAIC) regarding discovery responses in the DJA litigation and gathering relevant documents for purposes of the DJA litigation. While attachments to this email are withheld, the same documents were produced in the DJA litigation and have been produced elsewhere in this case | Attorney-Client Privilege; Work Product |
| GWB_006118 | 4021B249D.00000.msg | | Shay Anderson <shay.anderson.grfs@statefarm.com> | HOME AUTO-PL-SOUTH-UND-DOCS <home.auto-pl-south-und-docs.535o19@statefarm.com> | | 11/22/2021 | 12:00:33 PM | Attachment to privileged email GWB_006116. Produced in this case at WORKMAN00000008PROD. | Attorney-Client Privilege; Work Product |
| GWB_006119 | 6023DC.PDF | | | | | | | Attachment to privileged email GWB_006116. Produced in this case at WORKMAN00000024PROD. | Attorney-Client Privilege; Work Product |
| GWB_006120 | 6128DP.PDF | | | | | | | Attachment to privileged email GWB_006116. Produced in this case at WORKMAN00000016PROD-00000023PROD. | Attorney-Client Privilege; Work Product |
| GWB_006128 | 6323189-40.pdf | | | | | | | Attachment to privileged email GWB_006116. Produced in this case at WORKMAN00000009PROD-00000014PROD. | Attorney-Client Privilege; Work Product |
| GWB_006134 | 9840A.PDF | | | | | | | Attachment to privileged email GWB_006116. Produced in this case at WORKMAN00000025PROD-00000036PROD. | Attorney-Client Privilege; Work Product |
| GWB_006146 | MELVIN LAMB-signed.pdf | | | | | | | Attachment to privileged email GWB_006116. Produced in this case at WORKMAN00000015PROD. | Attorney-Client Privilege; Work Product |
| GWB_006147 | 4021B249D.msg | | Shay Anderson <shay.anderson.grfs@statefarm.com> | Lee Shivers <lee.shivers.d8yf@statefarm.com> | | 11/22/2021 | 12:53:00 PM | Attachment to privileged email GWB_006116. Email between Shay Anderson (SFMAIC) and Lee Shivers (SFMAIC) made for purposes of gathering information for DJA litigation. | Attorney-Client Privilege; Work Product |
| GWB_006148 | DocRetrievalServlet.pdf | | | | | | | Attachment to privilege email GWB_006116. Produced in this case at WORKMAN00000008PROD; WORKMAN00000024PROD; WORKMAN00000016PROD-00000023PROD; WORKMAN00000015PROD | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_006176 | Fwd_ (10673585.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com>; Darren Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 11/18/2021 | 6:29:46 PM | Emails between Jennifer Johnsen (GWB) and Lee Shivers (SFMAIC), Darren Murdoch (SFMAIC) and Shay Anderson (SFMAIC) regarding gathering documents and information for purposes of DJA litigation. | Attorney-Client Privilege |
| GWB_006178 | Fwd_ 2021-CP-10-03743 Robert Worman v. Melvin Otto Lamb, Jr. (11226849.1).msg | Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 4/11/2022 | 1:02:33 PM | Email from Jennifer Johnsen (GWB) to Robbie Whelan (retained by SFMAIC for the DJA litigation), forwarding Jennifer Johnsen's communications with Mark Mason (Lamb Jr's attorney) and Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) regarding the mediation | Attorney-Client Privilege; Common Interest |
| GWB_006183 | Fwd_ 2021-CP-10-03743 Robert Worman v. Melvin Otto Lamb, Jr. (11226851.1).msg | Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 4/11/2022 | 12:31:12 PM | Email from Jennifer Johnsen (GWB) to Robbie Whelan (retained by SFMAIC for the DJA litigation), forwarding Jennifer Johnsen's communications with Mark Mason (Lamb Jr's attorney) and Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) regarding the mediation | Attorney-Client Privilege |
| GWB_006187 | Fwd_ 40-21B2-49D (10352318.1).msg | Scott LaVigne <slavigne@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 9/2/2021 | 5:13:09 PM | Internal GWB email forwarding email from Darren Murdoch (SFMAIC) regarding GWB's rate for work on the file | Attorney-Client Privilege; Work Product |
| GWB_006188 | Fwd_ i think you already sent but can you re-send me Shay's depo_ (11226834.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 4/7/2022 | 11:48:21 AM | Email from Jennifer Johnsen to Amanda Houser (GWB legal assistant) forwarding email from Robbie Whelan (counsel for SFMAIC) and requesting Shay Anderson's deposition transcript | Work Product |
| GWB_006189 | Fwd_ State Farm v. Melvin Lamb, Jr. et al. (10608233.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 11/11/2021 | 3:38:19 PM | Internal GWB email forwarding email thread with Mark Mason regarding service attempts on Lamb III | Common Interest; Work Product |
| GWB_006191 | Fwd_ State Farm v. Workman_Lamb et al. (10763106.1).msg | Tyran Turner <tyran.turner.e123@statefarm.com>; Lee Shivers <lee.shivers.d8yf@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 12/2/2021 | 1:39:57 PM | Email from Jennifer Johnsen to Tyran Turner (SFMAIC) and Shay Anderson (SFMAIC), attaching draft response to Tyger River demand for their review | Attorney-Client Privilege |
| GWB_006192 | Response to 11_29_21 Tyger River demand.DOCX | | | | | | Draft response to Tyger River demand prepared by attorney for SFMAIC for purposes of DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_006196 | GWB Invoices 262736, 260990, & 264293 _ 6384-2825 Workman v. Lamb _ Claim No._ 40-21B2-49D (11052628.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com> | Christine Kelly <cmkelly@gwblawfirm.com> | | 3/16/2022 | 10:21:41 AM | Email from Christine Kelly (GWB collections clerk) to Lee Shivers (SFMAIC) requesting an updated payment status and attaching invoices for legal services | Work Product |
| GWB_006197 | 6384-2825 Invoice # 264293.pdf | | | | | | GWB invoice containing description of work performed for SFMAIC for purposes of the DJA litigation and revealing the mental impressions and strategies of counsel | Work Product |
| GWB_006205 | 6384-2825 Invoice 260990 1.11.22.pdf | | | | | | GWB invoice containing description of work performed for SFMAIC for purposes of the DJA litigation and revealing the mental impressions and strategies of counsel | Work Product |
| GWB_006210 | 6384-2825 Invoice 262738.pdf | | | | | | GWB invoice containing description of work performed for SFMAIC for purposes of the DJA litigation and revealing the mental impressions and strategies of counsel | Work Product |
| GWB_006220 | HEADS UP_ State Farm v. Lamb_Workman Physical File (10699089.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Nekayla McKinney <nmcKinney@gwblawfirm.com> | | 12/7/2021 | 9:10:18 AM | Email between GWB legal assistants regarding GWB's file for DJA litigation | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_006221 | i think you already sent but can you re-send me Shay's depo_ (11226835.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Robbie Whelan <robbie@whelanmellen.com> | | 4/7/2022 | 11:44:08 AM | Email from Robbie Whelan (attorney retained by SFMAIC for the DJA litigation) and Jennifer Johnsen (GWB) requesting transcript of Shay Anderson's deposition | Work Product |
| GWB_006222 | Invoice 257772  (6384-2825) expense portion (10712086.1).msg | Paula Forbes <pforbes@gwblawfirm.com> | Christine Kelly <cmkelly@gwblawfirm.com> | Ella Canfield <ecanfield@gwblawfirm.com> | 12/13/2021 | 10:32:59 AM | Email from Christine Kelly (GWB collections) to Paula Forbes (GWB billing) regarding submission of invoice | Work Product |
| GWB_006223 | Invoice for Service for Jonathan Keller -6384-2825 (10314409.1).msg | Kim Free <kfree@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/23/2021 | 8:51:17 PM | Internal GWB email regarding inoivce for process server for DJA litigation | Work Product |
| GWB_006225 | Invoice for Service for Katherine Vonesh- 6384-2825 (10314411.1).msg | Kim Free <kfree@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/23/2021 | 8:52:22 PM | Internal GWB email regarding inoivce for process server for DJA litigation | Work Product |
| GWB_006228 | Invoice for Service for Luke and Mathis Billman- 6384-2825 (10314412.1).msg | Kim Free <kfree@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/23/2021 | 8:54:24 PM | Internal GWB email regarding inoivce for process server for DJA litigation | Work Product |
| GWB_006230 | Invoice for Service for Mario and Constance Molinaro (10314405.1).msg | Kim Free <kfree@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/23/2021 | 8:46:43 PM | Internal GWB email regarding inoivce for process server for DJA litigation and attaching process server W-9 | Work Product |
| GWB_006232 | We Serve 2020 - W9.pdf | | | | | | Attachment to GWB_006230. Process server's W-9 | Work Product |
| GWB_006238 | Invoice for Service on Deborah Plott (6384-2825) (10314406.1).msg | Kim Free <kfree@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/23/2021 | 8:47:59 PM | Internal GWB email regarding inoivce for process server for DJA litigation | Work Product |
| GWB_006241 | Invoice for Service on Michael Moore- 6384-2825 (10314407.1).msg | Kim Free <kfree@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/23/2021 | 8:49:17 PM | Internal GWB email regarding inoivce for process server for DJA litigation | Work Product |
| GWB_006244 | Invoice from We Serve Law (363418) (10517780.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | service@paypal.com <service@paypal.com> | | 10/18/2021 | 5:16:22 PM | Internal GWB email regarding inoivce for process server for DJA litigation | Work Product |
| GWB_006245 | Invoice from We Serve Law (364416) (10626028.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | service@paypal.com <service@paypal.com> | | 11/16/2021 | 11:05:38 AM | Internal GWB email regarding inoivce for process server for DJA litigation | Work Product |
| GWB_006246 | June 12, 2021 Accident (10395994.1).msg | jjacksa@tompsc.com <jjacksa@tompsc.com> | Bill Young <byoung@gwblawfirm.com> | epostell@tompsc.com <epostell@tompsc.com> | 9/17/2021 | 1:32:01 PM | Email from attorney Bill Young (GWB) to investigating officer requesting a time to disucss the accident, in connection with GWB's representation of SFMAIC in the DJA litigation | Work Product |
| GWB_006247 | Lamb (10817835.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com>; charles@whelanmellen.com <charles@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/19/2022 | 1:34:29 PM | Email from Jennifer Johnsen (GWB) to attorneys Robbie Whelan and Charles Norris attaching draft responses to the Estate's requests for admission and third set of discovery requests. | Attorney-Client Privilege; Work Product |
| GWB_006248 | SF Objections and Responses to Workman_s Third Discovery Requests.DOCX | | | | | | Attachment to GWB_006247. Draft of responses to the Estate's requests for admission and third set of discovery requests. Work product prepared by counsel for purposes of the DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_006260 | Lamb (10833034.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/22/2022 | 4:03:27 PM | Email from Jennifer Johnsen (GWB) to attorneys Robbie Whelan and Charles Norris attaching draft responses to the Estate's requests for admission and third set of discovery requests. | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_006261 | Responses to third set of discovery (with revisions (RW and JEJ) 1_22_22).DOCX | | | | | | Attachment to GWB_006260. Draft responses to Estate's request for admission and third discovery requests; attorney work product with redlines containing counsel's comments, revisions and mental impressions | Attorney-Client Privilege; Work Product |
| GWB_006276 | SF REsponses and Objections to RTA and Thirs Set of Discovery (Clean Copy revised 1_22_22).DOCX | | | | | | Attachment to GWB_006260. Draft responses to Estate's request for admission and third discovery requests; attorney work product prepared by counsel for purposes of representing State Farm in the litigation | Attorney-Client Privilege; Work Product |
| GWB_006290 | Lamb (10865249.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com>; charles@whelanmellen.com <charles@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | | 1/17/2022 | 2:40:52 PM | Email from Jennifer Johnsen (GWB) to attorneys Robbie Whelan and Charles Norris, attaching Estate's supplemental discovery requests. While the attachment to the email is withheld, the same document has been produced elsewhere. | Work Product |
| GWB_006291 | 2021.12.15 Workman Estate Supplemental Discovery Requests.PDF | | | | | | Attachment to GWB_006290. While the attachment has been withheld with the email, this same document was previously produced as GWB_001257 | Work Product |
| GWB_006293 | Lamb (10865250.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com>; charles@whelanmellen.com <charles@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | | 1/17/2022 | 2:28:40 PM | Email from Jennifer Johnsen (GWB) to Robbie Whelan and Charles Norris, attaching Estate's third discovery requests and corrected third discovery requests. While the attachment to the email is withheld, the same document has been produced elsewhere. | Work Product |
| GWB_006294 | 2021.12.20 Workman_s 3rd Discovery Requests.PDF | | | | | | Attachment to GWB_006293. While the attachment has been withheld with the email, the same document was previously produced as GWB_001259 | Attorney-Client Privilege; Work Product |
| GWB_006309 | 2021.12.22 Workman_s Corrected Third Discovery Request.PDF | | | | | | Attachment to GWB_006293. While the attachment has been withheld with the email, the same document was previously produced as GWB_001274 | Attorney-Client Privilege; Work Product |
| GWB_006313 | Lamb (10865293.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | | 1/20/2022 | 1:46:33 PM | Email from Jennifer Johnsen (GWB) to attorney Robbie Whelan attaching draft objections to the Estate's second set of discovery | Work Product |
| GWB_006314 | SF Objections_Responses to Workman_s Second Discovery Requests.DOCX | | | | | | Attachment to GWB_006313. Draft objections and responses to the Estate's second set of discovery requests; attorney work product prepared by counsel for purposes of representing State Farm in the litigation | Work Product |
| GWB_006316 | Lamb (10872273.1).msg | Mark A. Mason <mark@masonlawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | | 1/26/2022 | 11:41:46 AM | Email from Jennifer Johnsen (GWB) to Mark Mason (Lamb Jr.'s attorney) regarding address for Lamb III | Attorney-Client Privilege; Work Product; Common Interest |
| GWB_006317 | Lamb (11092887.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | | 3/24/2022 | 3:17:51 PM | Email from Jennifer Johnsen (GWB) to attorney Robbie Whelan regarding upcoming mediation | Work Product |
| GWB_006318 | lamb (11226827.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Charles Norris <charles@whelanmellen.com> | | | 4/15/2022 | 8:58:09 AM | Email from attorney Charles Norris (retained by SFMAIC) to Jennifer Johnsen (GWB) regarding mediation | Work Product |
| GWB_006319 | Lamb (11260507.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | | | 4/8/2022 | 12:03:33 PM | Email from Guy Conti (SFMAIC) to Jennifer Johnsen (GWB) regarding correspondence to SFMAIC's insureds. Attorney-client communication for purposes of DJA litigation | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_006320 | Lamb (quick question) (10975839.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Robbie Whelan <robbie@whelanmellen.com> | | 2/14/2022 | 12:35:55 PM | Email from Robbie Whelan (attorney retained by SFMAIC for the DJA litigation) and Jennifer Johnsen (GWB) regarding coordinating the filing of a stay in the DJA litigation | Work Product |
| GWB_006321 | Lamb 4021B249D (10985279.1).msg | Tyran Turner <tyran.turner.e123@statefarm.com>; Lee Shivers <lee.shivers.d8yf@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 2/3/2022 | 11:06:28 AM | Email from Jennifer Johnsen (GWB) to Tyran Turner (SFMAIC) and Lee Shivers (SFMAIC) regarding budget for DJA litigation | Attorney-Client Privilege |
| GWB_006322 | Lamb DJ Action 4021b249d (10741298.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com>; Tyran Turner <tyran.turner.e123@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 12/20/2021 | 6:44:01 PM | Email from Jennifer Johnsen (GWB) to Lee Shivers (SFMAIC) and Tyran Turner (SFMAIC) containing a summary of the deposition of Shay Anderson. Work product prepared by attorney and containing attorney's mental impressions, opinions and strategies. This email also attached the Estate's second and third discovery requests. While the attachments are withheld with the email, the same documents have been produced elsewhere | Attorney-Client Privilege; Work Product |
| GWB_006324 | 2021.12.15 Workman Estate Supplemental Discovery Requests.pdf | | | | | | Attachment to GWB_006322. While attachment is withheld with email, the same document was previously produced at GWB_001257 | Attorney-Client Privilege |
| GWB_006326 | 2021.12.20 Johnsen 3rd Discovery Requests.pdf | | | | | | Attachment to GWB_006322. While attachment is withheld with email, the same document was previously produced at GWB_001259 | Attorney-Client Privilege |
| GWB_006341 | Lamb Motions (10827838.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/20/2022 | 7:32:42 PM | Email from Jennifer Johnsen (GWB) to Robbie Whelan (attorney retained by SFMAIC for the DJA litigation) coordinating drafts of Motion to Stay Discovery and Motion to Dismiss in the DJA litigation | Work Product |
| GWB_006342 | SF Motion to Stay Discovery.DOCX | | | | | | Draft of SFMAIC's Motion to Stay in the DJA litigation; attorney work produced prepared for purposes of litigation. | Work Product |
| GWB_006345 | SF Rule 41(a)(2) Motion to Dismiss.DOCX | | | | | | Draft of SMAIC's Motion to Dismiss in the DJA litigation; attorney work product prepared for purposes of litigation | Work Product |
| GWB_006348 | Melvin Lamb - Cl. No. 4021B249D (10556434.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/29/2021 | 10:24:01 AM | Email from Jennifer Johnsen (GWB) to Lee Shivers (SFMAIC) attaching Estate's Answer to DJA. Email contains confidential communications and observations of counsel. While the attachment is withheld with the email, it is publicly available and has been produced elsewhere | Attorney-Client Privilege |
| GWB_006349 | 35_Answer of the Estate of James K. Workman.PDF | | | | | | Attachment to GWB_006348. While the attachment is withheld with the email, it was publicly filed in the DJA and has been previously produced as GWB_000412 | Attorney-Client Privilege |
| GWB_006355 | Melvin Lamb - Cl.no. 4021B249D (10555571.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | 10/28/2021 | 6:55:27 PM | Email from Jennifer Johnsen (GWB) to Darren Murdoch (SFMAIC) and Lee Shivers (SFMAIC) attaching draft responses to Estate's first discovery requests | Attorney-Client Privilege |
| GWB_006356 | SF Responses to Workman_s First Discovery Requests.DOCX | | | | | | Attachment to GWB_006355. Draft discovery responses prepared by attorney for purposes of DJA litigation | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_006363 | Melvin Lamb III - No Executed Acceptance of Service (10448526.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com>; Amanda Houser <ahouser@gwblawfirm.com> | 10/5/2021 | 9:14:13 AM | Email from Nekayla McKinney (GWB legal assistant) to Luchana Smith (GWB paralegal) and copying other GWB assistants regarding whether there is an acceptance of service for Lamb III | Work Product |
| GWB_006364 | Melvin Lamb III (10362771.1).msg | mgriffith@griffithfreeman.com <mgriffith@griffithfreeman.com> | Bill Young <byoung@gwblawfirm.com> | | 9/8/2021 | 12:34:09 PM | Email from attorney Bill Young (GWB) to Mitch Griffith (attorney retained by SFMAIC to represent Lamb III) regarding whether there has been any contact with Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_006365 | Melvin Lamb, III (10451931.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Jennifer Johnsen <JJohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | 10/5/2021 | 4:22:08 PM | Email from attorney Jennifer Johnsen (GWB) to Luchana Smith (GWB paralegal) regarding status of service of Lamb III | Work Product |
| GWB_006366 | Melvin Lamb, III (10532061.1).msg | mark@masonlawfirm.com <mark@masonlawfirm.com> | Jennifer Johnsen <JJohnsen@gwblawfirm.com> | | 10/25/2021 | 9:49:46 AM | Email from Jennifer Johnsen to Mark Mason (attorney for SFMAIC's insured, Lamb Jr.) regarding location of Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_006367 | Melvin Lamb, Jr. Cl. No. 4021B249D (10630468.1).msg | Shay Anderson <shay.anderson.grfs@statefarm.com> | Jennifer Johnsen <JJohnsen@gwblawfirm.com> | | 11/17/2021 | 4:34:04 PM | Email from Jennifer Johnsen (GWB) to Shay Anderson (SFMAIC) regarding gathering information for purposes of the DJA litigation. | Attorney-Client Privilege |
| GWB_006368 | Melvin O. Lamb III (10287244.1).msg | rwyndham@gedneyhowe.com <rwyndham@gedneyhowe.com> | Bill Young <byoung@gwblawfirm.com> | mgriffith@griffithfreeman.com <mgriffith@griffithfreeman.com> | 8/13/2021 | 5:53:33 PM | Email from attorney Bill Young (GWB) to Robert Wyndham (attorney for Lamb III) and Mitch Griffith (attorney retained by SFMAIC to represent Lamb III) attaching correspondence to attorney Wyndham | Attorney-Client Privilege; Common Interest |
| GWB_006369 | Ltr to Wyndham.pdf | | | | | | Attachment to GWB_006368. Letter from attorney Bill Young to Lamb III's attorney Robert Wyndham re time limit demand by the Estate and passing along message from SFMAIC | Attorney-Client Privilege; Common Interest |
| GWB_006371 | Melvin O. Lamb Jr. Cl. No. 4021B249D (10673665.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com>; Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Jennifer Johnsen <JJohnsen@gwblawfirm.com> | | 11/17/2021 | 4:36:05 PM | Email from Jennifer Johnsen (GWB) to Lee Shivers (SFMAIC) requesting permission to have associate perform research in relation to GWB's representation of SFMAIC | Attorney-Client Privilege |
| GWB_006372 | Melvin O. lamb Jr - tort action (10699088.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <JJohnsen@gwblawfirm.com> | | 12/7/2021 | 5:41:25 AM | Email from Jennifer Johnsen (GWB) to Amanda Houser (GWB legal assistant) asking her assistant to check the state court tort action for any filings regarding a subpoena issued by the Estate on August 20 | Work Product |
| GWB_006373 | Melvin O. Lamb, III - Letter from State Farm (10854216.1).msg | Robert Wyndham <rwyndham@gedneyhowe.com> | Jennifer Johnsen <JJohnsen@gwblawfirm.com> | | 1/27/2022 | 12:59:31 PM | Email from Jennifer Johnsen (GWB) to Robert Wyndham (attorney for Lamb III), attaching a letter from SFMAIC to Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_006374 | Letter to Melvin O Lamb III 1_27_2022.pdf | | | | | | Attachment to GWB_006373. Letter from SFMAIC to Lamb III, c/o attorney Robert Wyndham | Attorney-Client Privilege; Common Interest |
| GWB_006375 | Melvin O. Lamb, Jr. DJ Action - Claim No_ 40-21B2-49D (10597334.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com>; Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Jennifer Johnsen <JJohnsen@gwblawfirm.com> | | 11/9/2021 | 3:15:02 PM | Email from Jennifer Johnsen (GWB) to Lee Shivers (SFMAIC) and Darren Murdoch (SFMAIC), updating on 30(b)(6) and requesting time to discuss same | Attorney-Client Privilege |
| GWB_006376 | New Assignment  4021B249D (10306176.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | | 7/22/2021 | 2:46:27 PM | Redaction of email from attorney David Cleveland (previously retained by SFMAIC to represent Lamb III and Lamb Jr.) to Darren Murdoch (SFMAIC) and Lee Shivers (SFMAIC), regarding actions taken by David Cleveland during his representation of Lamb III and Lamb Jr. | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_006378 | New SF Matter 40-21B2-49D Workman v_ Lamb (10222394.1).msg | Grayson Smith <gsmith@gwblawfirm.com>; Cynthia Smart <csmart@gwblawfirm.com>; Kayla Brown <kbrown@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfir m.com> | | 7/26/2021 | 10:33:16 AM | Email from Amanda Houser (GWB legal assistant) to Grayson Smith (GWB attorney) and other GWB assistants re file organization for the SFMAIC matter | Work Product |
| GWB_006379 | Office Payment Request No. 38913 Approved (10517778.1).msg | Amanda Houser <ahouser@gwblawfirm.com > | jpatel@gwblawfirm.c om <jpatel@gwblawfirm. com> | | 10/19/2021 | 2:50:56 PM | Payment request for process server invoice in the DJA litigation | Work Product |
| GWB_006380 | Office Payment Request No. 38925 Approved (10517779.1).msg | Amanda Houser <ahouser@gwblawfirm.com > | jpatel@gwblawfirm.c om <jpatel@gwblawfirm. com> | | 10/20/2021 | 2:18:05 PM | Payment request for process server invoice in the DJA litigation | Work Product |
| GWB_006381 | RE_ Dates on Dec Pages, 632 3189-40 (10678310.1).msg | Shay Anderson <shay.anderson.grfs@statefa rm.com>; Lee Shivers <lee.shivers.d8yf@statefarm .com> | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | Brian Boyle <brian.boyle.g6lg@ statefarm.com>; HOME LAW-BOYLE <home.law- boyle.386l00@stat efarm.com>; Brittany Perez <brittany.perez.vab to8@statefarm.co m> | 11/30/2021 | 3:11:35 PM | Emails between Jennifer Johnsen (GWB), Shay Anderson (SFMAIC), Lee Shivers (SFMAIC) and other SFMAIC employees regarding declaration pages and gathering information for purposes of the DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_006384 | RE_ (10636719.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Amanda Houser <ahouser@gwblawfir m.com> | | 11/19/2021 | 11:38:57 AM | Email between Jennifer Johnsen (GWB) and Amanda Houser (GWB legal assistant) regarding documents received from SFMAIC. Attaches a link to GWB's document management system | Work Product |
| GWB_006386 | Claim File_4021B249D_17316270632 58828.nrl | | | | | | Attachment to GWB_006384. Link to GWB's document management system (no document attached) | Work Product |
| GWB_006387 | RE_ (10638004.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Shay Anderson <shay.anderson.grfs @statefarm> | | 11/19/2021 | 3:08:18 PM | Emails between Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) and State Farm employees. Johnsen posing questions to SFMAIC and their responses for purposes of gathering information for the DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_006390 | RE_ (10671850.1).msg | Shay Anderson <shay.anderson.grfs@statefa rm.com>; Lee Shivers <lee.shivers.d8yf@statefarm .com> | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | Brian Boyle <brian.boyle.g6lg@ statefarm.com>; HOME LAW-BOYLE <home.law- boyle.386l00@stat efarm.com>; Brittany Perez <brittany.perez.vab to8@statefarm.co m> | 11/30/2021 | 2:42:50 PM | Emails between Jennifer Johnsen (GWB), Shay Anderson (SFMAIC) and other SFMAIC employees regarding declaration pages and State Farm's procedure for declaration pages and endorsements. While the attachments are withheld with the email, they have been produced elsewhere | Attorney-Client Privilege; Work Product |
| GWB_006393 | Dec Page 2_21_20.pdf | | | | | | Attachment to GWB_006390. While the attachment is withheld with the email, the document has been previously produced at GWB_001583 | Attorney-Client Privilege |
| GWB_006394 | Dec page 7_14-21.pdf | | | | | | Attachment to GWB_006390. While the attachment is withheld with the email, the document has been previously produced at WORKMAN00000009PROD | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_006395 | Dec Page 9_8_20.pdf | | | | | | Attachment to GWB_006390. While the attachment is withheld with the email, the document has been previously produced at GWB_001589 | Attorney-Client Privilege |
| GWB_006396 | RE_ (10673579.1).msg | Shay Anderson <shay.anderson.grfs@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Brian Boyle <brian.boyle.g6lg@statefarm.com>; HOME LAW-BOYLE <home.law-boyle.386l00@statefarm.com>; Brittany Perez <brittany.perez.vabto8@statefarm.com> | 11/19/2021 | 1:00:23 PM | Emails between Jennifer Johnsen (GWB), Shay Anderson (SFMAIC) gathering information on SFMAIC's processing of excluded driver forms and policies. Work product revealing attorney's mental impressions | Attorney-Client Privilege; Work Product |
| GWB_006398 | RE_ (10673580.1).msg | Shay Anderson <shay.anderson.grfs@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Brian Boyle <brian.boyle.g6lg@statefarm.com>; HOME LAW-BOYLE <home.law-boyle.386l00@statefarm.com>; Brittany Perez <brittany.perez.vabto8@statefarm.com> | 11/19/2021 | 1:34:01 PM | Emails between Jennifer Johnsen (GWB), Shay Anderson (SFMAIC) gathering information on SFMAIC's processing of excluded driver forms and policies. Work product revealing attorney's mental impressions | Attorney-Client Privilege |
| GWB_006401 | RE_ (10673581.1).msg | Shay Anderson <shay.anderson.grfs@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Brian Boyle <brian.boyle.g6lg@statefarm.com>; HOME LAW-BOYLE <home.law-boyle.386l00@statefarm.com>; Brittany Perez <brittany.perez.vabto8@statefarm.com> | 11/19/2021 | 1:38:11 PM | Emails between Jennifer Johnsen (GWB), Shay Anderson (SFMAIC) gathering information on SFMAIC's processing of excluded driver forms and policies. Work product revealing attorney's mental impressions | Attorney-Client Privilege |
| GWB_006404 | Re_ (10673582.1).msg | Shay Anderson <shay.anderson.grfs@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 11/19/2021 | 3:08:49 PM | Emails between Jennifer Johnsen (GWB), Shay Anderson (SFMAIC) gathering information on SFMAIC's processing of excluded driver forms and policies. Work product revealing attorney's mental impressions | Attorney-Client Privilege |
| GWB_006407 | image003.jpg | | | | | | Blank attachment to GWB_006404 email | Attorney-Client Privilege |
| GWB_006408 | image005.jpg | | | | | | Blank attachment to GWB_006404 email | Attorney-Client Privilege |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_006409 | RE_ (10678303.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Lee Shivers <lee.shivers.d8yf@statefarm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | Brian Boyle <brian.boyle.g6lg@statefarm.com>; HOME LAW-BOYLE <home.law-boyle.386l00@statefarm.com>; Brittany Perez <brittany.perez.vabto8@statefarm.com>; Shay Anderson <shay.anderson.grfs@statefarm.com> | 11/30/2021 | 8:53:07 AM | Emails between Jennifer Johnsen (GWB), Shay Anderson (SFMAIC) gathering information on SFMAIC's declaration pages. Work product revealing attorney's mental impressions | Attorney-Client Privilege |
| GWB_006411 | RE_ (10686554.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 12/6/2021 | 8:42:18 AM | Emails between Shay Anderson (SFMAIC) and Jennifer Johnsen (GWB) regarding travel arrangements for deposition | Attorney-Client Privilege |
| GWB_006412 | RE_ (10694200.1).msg | Shay Anderson <shay.anderson.grfs@statefarm.com> | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 12/7/2021 | 12:18:55 PM | Email from Amanda Houser (GWB legal assistant) to Shay Anderson (SFMAIC) attaching the Estate's subpoena to SFMAIC in the Estate's case against Lamb Jr. While the attachment has been withheld with the email, the document has been produced elsewhere | Attorney-Client Privilege |
| GWB_006413 | 2021.08.27 Plt_s Subpoena to State Farm.PDF | | | | | | Attachment to GWB_006412. This same document was previously produced at GWB_003457 | Attorney-Client Privilege |
| GWB_006422 | Re_ (10763080.1).msg | Shay Anderson <shay.anderson.grfs@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 12/1/2021 | 9:00:54 AM | Emails between Shay Anderson (SFMAIC) and Jennifer Johnsen (GWB) regarding arrangements for deposition and whether it can be conducted via Zoom | Attorney-Client Privilege |
| GWB_006426 | image003.jpg | | | | | | Blank attachment to GWB_006422 | Attorney-Client Privilege |
| GWB_006427 | image005.jpg | | | | | | Blank attachment to GWB_006422 | Attorney-Client Privilege |
| GWB_006428 | RE_ (10763083.1).msg | Shay Anderson <shay.anderson.grfs@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 12/1/2021 | 10:14:33 AM | Emails between Shay Anderson (SFMAIC) and Jennifer Johnsen (GWB) regarding arrangements for deposition and whether it can be conducted via Zoom | Attorney-Client Privilege |
| GWB_006432 | RE_ (10763084.1).msg | Shay Anderson <shay.anderson.grfs@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 12/1/2021 | 11:32:29 AM | Emails between Shay Anderson (SFMAIC) and Jennifer Johnsen (GWB) regarding arrangements for deposition and whether it can be conducted via Zoom | Attorney-Client Privilege |
| GWB_006436 | RE_ (40-21B2-49D) RE_ Voicemail Message (STATE FARM _ DavidR) From_8442928615 (10306179.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 7/26/2021 | 3:25:00 PM | Internal GWB emails regarding staffing of matter and including a summary of voicemail from Darren Murdoch (SFMAIC) | Attorney-Client Privilege; Work Product |
| GWB_006438 | RE_ (6384-2825) Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Complaint (10298163.1).msg | Tania McGee <tmcgee@gwblawfirm.com>; Bill Young <byoung@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/17/2021 | 7:31:12 PM | Redaction of emails between GWB staff regarding staffing of SFMAIC matter and service of summons in DJA litigation | Work Product |
| GWB_006440 | Re_ (6384-2825) Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Complaint (10298318.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | 8/18/2021 | 8:12:45 AM | Redaction of emails between GWB staff and GWB attorney Bill Young regarding service of summons in DJA litigation | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_006442 | RE_ (6384-2825) Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Complaint (10298785.1).msg | Bill Young <byoung@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/18/2021 | 9:17:15 AM | Redaction of emails between GWB staff and GWB attorney Bill Young regarding service of summons in DJA litigation | Work Product |
| GWB_006444 | RE_ (6384-2825) Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Complaint (10304564.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/19/2021 | 12:17:03 PM | Redaction of emails between GWB staff and GWB attorney Bill Young regarding service of summons in DJA litigation | Work Product |
| GWB_006447 | RE_ (6384-2825) Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Complaint (10314416.1).msg | Bill Young <byoung@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/23/2021 | 9:09:38 PM | Redaction of emails between GWB staff and GWB attorney Bill Young regarding service of summons in DJA litigation | Work Product |
| GWB_006450 | Re_ (6384-2825) Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Complaint (10315304.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/23/2021 | 9:43:37 PM | Redaction of emails between GWB staff and GWB attorney Bill Young regarding service of summons in DJA litigation | Work Product |
| GWB_006453 | RE_ (6384-2825) Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Complaint (10315358.1).msg | Bill Young <byoung@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | 8/24/2021 | 9:53:17 AM | Redaction of emails between GWB staff and GWB attorney Bill Young regarding service of summons in DJA litigation | Work Product |
| GWB_006457 | RE_ (6384-2825) Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Complaint (10315391.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | 8/24/2021 | 9:55:20 AM | Redaction of emails between GWB staff and GWB attorney Bill Young regarding service of summons in DJA litigation | Work Product |
| GWB_006461 | RE_ (6384-2825) Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Complaint (10315487.1).msg | Bill Young <byoung@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/24/2021 | 9:59:05 AM | Redaction of emails between GWB staff and GWB attorney Bill Young regarding service of summons in DJA litigation | Work Product |
| GWB_006465 | Re_ (6384-2825) Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Complaint (10315517.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/24/2021 | 10:00:23 AM | Redaction of emails between GWB staff and GWB attorney Bill Young regarding service of summons in DJA litigation | Work Product |
| GWB_006469 | RE_ (GWB file 6384-2825) Claim # 40-21B2-49D Estate of James Workman v. Melvin O. Lamb, Jr. _ Invoice 271932 (11529325.1).msg | lee.shivers.d8yf@statefarm.com <lee.shivers.d8yf@statefarm.com> | Alisha Moody <amoody@gwblawfirm.com> | Paula Forbes <pforbes@gwblawfirm.com> | 7/12/2022 | 11:26:01 AM | Email from GWB's billing department to Lee Shivers (SFMAIC) attaching invoice for legal services | Work Product |
| GWB_006470 | Invoice_271932_Proforma_286063_2022.07.12_09.51.14.pdf | | | | | | Attachment to GWB_006469. GWB invoice containing description of work performed for SFMAIC in the DJA litigation, including mental impressions and strategies of counsel | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_006474 | RE_ (GWB file 6384-2825) Claim # 40-21B2-49D Estate of James Workman v. Melvin O. Lamb, Jr. _ Invoice 274227 (11688033.1).msg | lee.shivers.d8yf@statefarm.com <lee.shivers.d8yf@statefarm.com> | Alisha Moody <amoody@gwblawfirm.com> | | 8/17/2022 | 9:46:09 AM | Email from GWB's billing department to Lee Shivers (SFMAIC) attaching invoice for legal services | Work Product |
| GWB_006475 | Invoice_274227_Proforma_288910_2022.08.15_10.53.32_v2.pdf | | | | | | Attachment to GWB_006474. GWB invoice containing description of work performed for SFMAIC in the DJA litigation | Work Product |
| GWB_006478 | RE_ (GWB file 6384-2825) Estate of James Workman v. Melvin O. Lamb, Jr. (10477098.1).msg | Scott LaVigne <slavigne@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/11/2021 | 3:50:57 PM | Emails between GWB billing department and Jennifer Johnsen regarding billing for DJA litigation | Work Product |
| GWB_006479 | RE_ (GWB file 6384-2825) Estate of James Workman v. Melvin O. Lamb, Jr. (10477123.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Scott LaVigne <slavigne@gwblawfirm.com> | | 10/11/2021 | 3:54:20 PM | Emails between GWB billing department and Jennifer Johnsen regarding billing for DJA litigation | Work Product |
| GWB_006480 | RE_ 1_14_22 - State Farm DJ re_ Melvin Lamb, Jr. (10788590.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Wendy Purdue <wendy.purdue.pd07@statefarm.com> | HOME LAW-MENKE <home.law-menke.275l00@statefarm.com>; Chris Menke <chris.menke.a9mg@statefarm.com> | 1/10/2022 | 5:41:28 PM | Emails between Jennifer Johnsen, Wendy Purdue and Chris Menke at State Farm regarding call to discuss supplemental discovery requests from the Estate and the approval of the excluded driver form by the DOI. Contains confidential communications and mental impressions of counsel | Attorney-Client Privilege; Work Product |
| GWB_006482 | Re_ 2021-CP-10-03743 Robert Worman v. Melvin Otto Lamb, Jr. (10985105.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Mark Mason <mark@masonlawfirm.com> | Warren Moise <warren.moise@gmail.com> | 2/7/2022 | 4:18:33 PM | Emails between Jennifer Johnsen (GWB), Mark Mason (attorney for Lamb Jr., SFMAIC's insured) and Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) regarding handling of upcoming motion in case brought by the Estate against Lamb Jr. | Attorney-Client Privilege; Common Interest |
| GWB_006484 | image001.gif | | | | | | Blank attachment to email bates labeled GWB_006482 | Attorney-Client Privilege; Common Interest |
| GWB_006485 | Re_ 2021-CP-10-03743 Robert Worman v. Melvin Otto Lamb, Jr. (10985142.1).msg | Warren Moise <warren.moise@gmail.com>; Mark Mason <mark@masonlawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 2/8/2022 | 9:30:44 AM | Emails between Jennifer Johnsen (GWB), Mark Mason (attorney for Lamb Jr., SFMAIC's insured) and Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) regarding handling of upcoming motion in case brought by the Estate against Lamb Jr. | Attorney-Client Privilege; Common Interest |
| GWB_006488 | Re_ 2021-CP-10-03743 Robert Worman v. Melvin Otto Lamb, Jr. (10985149.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Mark Mason <mark@masonlawfirm.com> | Warren Moise <warren.moise@gmail.com> | | 2/8/2022 | 9:26:49 AM | Emails between Jennifer Johnsen (GWB), Mark Mason (attorney for Lamb Jr., SFMAIC's insured) and Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) regarding handling of upcoming motion in case brought by the Estate against Lamb Jr. | Attorney-Client Privilege; Common Interest |
| GWB_006491 | RE_ 2021-CP-10-03743 Robert Worman v. Melvin Otto Lamb, Jr. (11226846.1).msg | Charles Norris <charles@whelanmellen.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Monique James <monique.james.gtgq@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com> | Guy Conti <guy.conti.f58t@statefarm.com> | | 4/11/2022 | 4:34:15 PM | Emails between Jennifer Johnsen (GWB), attorneys Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and Guy Conti (SFMAIC) regarding upcoming mediation and whether attorney for Lamb Jr. would attend | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | Description | |
|---|---|---|---|---|---|---|---|---|
| GWB_006494 | RE_ 2021-CP-10-03743 Robert Worman v. Melvin Otto Lamb, Jr. (11226847.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Monique James <monique.james.gtgq@statefarm.com>; Guy Conti <guy.conti.f58t@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com> | Charles Norris <charles@whelanmellen.com> | | 4/11/2022 | 3:24:35 PM | Emails between Jennifer Johnsen (GWB), attorneys Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and Guy Conti (SFMAIC) regarding upcoming mediation and whether attorney for Lamb Jr. would attend | Attorney-Client Privilege |
| GWB_006497 | Re_ 2021-CP-10-03743 Robert Worman v. Melvin Otto Lamb, Jr. (11260549.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Mark Mason <mark@masonlawfirm.com> | Warren Moise <warren.moise@gmail.com> | 4/11/2022 | 12:27:35 PM | Emails between Jennifer Johnsen (GWB), attorneys Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and Guy Conti (SFMAIC) regarding upcoming mediation and whether attorney for Lamb Jr. would attend | Attorney-Client Privilege; Common Interest |
| GWB_006500 | Re_ 2021-CP-10-03743 Robert Worman v. Melvin Otto Lamb, Jr. (11260550.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Mark Mason <mark@masonlawfirm.com> | Warren Moise <warren.moise@gmail.com> | 4/11/2022 | 1:00:58 PM | Emails between Jennifer Johnsen (GWB), attorneys Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and Guy Conti (SFMAIC) regarding upcoming mediation and whether attorney for Lamb Jr. would attend | Attorney-Client Privilege; Common Interest |
| GWB_006504 | Re_ 21-2623 State Farm Mutual Automobile Insurance Company v. Lamb et al (10970182.1).msg | Natalie Ecker <eckern@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 2/23/2022 | 8:06:54 AM | Redaction of email between Jennifer Johnsen (GWB) and Natalie Ecker (GWB) | Work Product |
| GWB_006505 | image001.png | | | | | | Image attached to GWB_006504. District court logo | Work Product |
| GWB_006506 | RE_ 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Melvin O. Lamb III, et al. (10532369.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/25/2021 | 10:19:34 AM | Redaction of emails between Jennifer Johnsen (GWB) and Amanda Houser (GWB assistant) regarding finalizing filing for scheduling order and discovery plan | Work Product |
| GWB_006508 | RE_ 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Melvin O. Lamb III, et al. (10532476.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/25/2021 | 10:30:37 AM | Redaction of emails between Jennifer Johnsen (GWB) and Amanda Houser (GWB assistant) regarding finalizing filing for scheduling order and discovery plan | Work Product |
| GWB_006511 | RE_ 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Melvin O. Lamb III, et al. (10532498.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/25/2021 | 10:33:35 AM | Redaction of emails between Jennifer Johnsen (GWB) and Amanda Houser (GWB assistant) regarding finalizing filing for scheduling order and discovery plan | Work Product |
| GWB_006514 | RE_ 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Melvin O. Lamb III, et al. (10532794.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/25/2021 | 11:10:54 AM | Redaction of emails between Jennifer Johnsen (GWB) and Amanda Houser (GWB assistant) regarding finalizing filing for scheduling order and discovery plan | Work Product |
| GWB_006517 | RE_ 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Melvin O. Lamb III, et al. (10592866.1).msg | Mark Mason <mark@masonlawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 11/5/2021 | 5:23:26 PM | Redaction of emails between Jennifer Johnsen and Mark Mason (attorney for SFMAIC's insured Lamb Jr.) | Attorney-Client Privilege; Common Interest |
| GWB_006521 | RE_ 40 21B2 49D (11249249.1).msg | Traci Johnson <traci.johnson.cnrz@statefarm.com> | Christine Kelly <cmkelly@gwblawfirm.com> | | 4/27/2022 | 2:29:01 PM | Emails between GWB's collections clerk and SFMAIC regarding submission of invoices | Work Product |
| GWB_006524 | RE_ 40 21B2 49D (11408947.1).msg | Traci Johnson <traci.johnson.cnrz@statefarm.com> | Christine Kelly <cmkelly@gwblawfirm.com> | | 6/7/2022 | 12:24:48 PM | Emails between GWB's collections clerk and SFMAIC regarding submission of invoices | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| Bates | Document | From | To | CC | Date | Time | Description | Privilege |
|---|---|---|---|---|---|---|---|---|
| GWB_006527 | Invoice_262738_Proforma_274417_2022.02.07_10.30.10.pdf | | | | | | GWB invoice for legal services in the DJA litigation revealing mental impressions of counsel | Work Product |
| GWB_006537 | Invoice_264293_Proforma_276730_2022.03.03_16.27.30.pdf | | | | | | GWB invoice for legal services in the DJA litigation revealing mental impressions of counsel | Work Product |
| GWB_006545 | Invoice_267065_Proforma_278524_2022.04.13_16.52.00.pdf | | | | | | GWB invoice for legal services in the DJA litigation revealing mental impressions of counsel | Work Product |
| GWB_006549 | Invoice_268850_Proforma_281343_2022.05.12_14.02.18.pdf | | | | | | GWB invoice for legal services in the DJA litigation revealing mental impressions of counsel | Work Product |
| GWB_006555 | RE_ 40 21B2 49D (11409127.1).msg | Christine Kelly <cmkelly@gwblawfirm.com> | Traci Johnson <traci.johnson.cnrz@statefarm.com> | | 6/7/2022 | 12:35:16 PM | Emails between GWB's collections clerk and SFMAIC regarding submission and payment of invoices | Work Product |
| GWB_006558 | RE_ 40 21B2 49D (11422560.1).msg | Christine Kelly <cmkelly@gwblawfirm.com> | Traci Johnson <traci.johnson.cnrz@statefarm.com> | | 6/10/2022 | 12:55:38 PM | Emails between GWB's collections clerk and SFMAIC re submission and payment of invoices | Work Product |
| GWB_006561 | RE_ 40 21B2 49D (11423150.1).msg | Traci Johnson <traci.johnson.cnrz@statefarm.com> | Christine Kelly <cmkelly@gwblawfirm.com> | | 6/10/2022 | 2:20:13 PM | Emails between GWB's collections clerk and SFMAIC regarding submission and payment of invoices | Work Product |
| GWB_006565 | RE_ 4021B249D  DJ Action (10538552.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Lee Shivers <lee.shivers.d8yf@statefarm.com> | 10/25/2021 | 4:50:20 PM | Emails between Jennifer Johnsen (GWB), Darren Murdoch (SFMAIC) and Lee Shivers (SFMAIC). Johnsen requesting information on the Tahoe policy and documents for purposes of the DJA litigation | Attorney-Client Privilege |
| GWB_006568 | RE_ 4021B249D  DJ Action (10566398.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Lee Shivers <lee.shivers.d8yf@statefarm.com> | 10/25/2021 | 1:32:23 PM | Emails between Jennifer Johnsen (GWB), Darren Murdoch (SFMAIC) and Lee Shivers (SFMAIC) regarding 30(b)(6) deposition of SFMAIC and designation of witness | Attorney-Client Privilege |
| GWB_006570 | RE_ 4021B249D  DJ Action (10566413.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/25/2021 | 2:53:18 PM | Emails between Jennifer Johnsen and Darren Murdoch regarding responding to the Estate's discovery and identifying a witness for SFMAIC 30(b)(6) deposition. Email attaches a copy of the declaratory judgment complaint. | Attorney-Client Privilege |
| GWB_006572 | DE 01 - Declaratory Judgment Complaint with Exhibit.PDF | | | | | | Attachment to GWB_006570. Publicly filed document previously produced at GWB_006572 | Attorney-Client Privilege |
| GWB_006639 | RE_ 4021B249D  DJ Action (10566509.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Lee Shivers <lee.shivers.d8yf@statefarm.com>; Tyran Turner <tyran.turner.e123@statefarm.com> | 10/26/2021 | 5:22:01 PM | Emails between Jennifer Johnsen (GWB), Darren Murdoch (SFMAIC) and Lee Shivers (SFMAIC) regarding responding to the Estate's discovery and identifying a State Farm witness with knowledge on the relevant points | Attorney-Client Privilege |
| GWB_006643 | RE_ 4021B249D  DJ Action (10566510.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Lee Shivers <lee.shivers.d8yf@statefarm.com>; Tyran Turner <tyran.turner.e123@statefarm.com> | 10/26/2021 | 4:42:16 PM | Emails between Jennifer Johnsen (GWB), Darren Murdoch (SFMAIC) and Lee Shivers (SFMAIC) regarding responding to the Estate's discovery and identifying a State Farm witness with knowledge on the relevant points | Attorney-Client Privilege |
| GWB_006646 | RE_ 40-21B2-49D (1013-726) (10287016.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/13/2021 | 4:29:53 PM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC) regarding potential suit by the Estate of Workman | Attorney-Client Privilege |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_006648 | RE_ 40-21B2-49D (1013-726) (10287245.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@st atefarm.com> | Bill Young <byoung@gwblawfir m.com> | | 8/13/2021 | 5:54:20 PM | Email from Bill Young (GWB) to Darren Murdoch (SFMAIC) attaching letters sent to Justin Kahn and Robert Wyndham (attorney for Lamb III) | Attorney-Client Privilege |
| GWB_006650 | Ltr to Wyndham.pdf | | | | | | Attachment to GWB_006648. Letter from Bill Young (attorney for SFMAIC) to Robert Wyndham (attorney for Lamb III) regarding time limit demand and passing along message to Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_006652 | Response to Kahn TLD.pdf | | | | | | Attachment to GWB_006648. While attachment is withheld with the email, this letter was previously produced at GWB_001393 | Attorney-Client Privilege |
| GWB_006655 | RE_ 40-21B2-49D (10270305.1).msg | Bill Young <byoung@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.g r1u@statefarm.com> | | 8/10/2021 | 10:14:02 AM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC) regarding filing of declaratory judgment complaint and answers to LR 26.01 interrogatories | Attorney-Client Privilege |
| GWB_006656 | RE_ 40-21B2-49D (10276361.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@st atefarm.com> | Bill Young <byoung@gwblawfir m.com> | | 8/11/2021 | 12:04:24 PM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC) regarding filing of declaratory judgment action and the impact of a recent Supreme Court opinion on how they should proceed. Communication between attorney and client revealing attorney's mental impressions and strategies | Attorney-Client Privilege |
| GWB_006657 | Op. 28050 - USAA v. Pickens.pdf | | | | | | Attachment to GWB_006656. Publicly available court opinion | Attorney-Client Privilege |
| GWB_006664 | RE_ 40-21B2-49D (10284420.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@st atefarm.com> | Bill Young <byoung@gwblawfir m.com> | | 8/13/2021 | 11:05:00 AM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC) regarding filing action and rates on matter | Attorney-Client Privilege |
| GWB_006665 | RE_ 40-21B2-49D (10289597.1).msg | Bill Young <byoung@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.g r1u@statefarm.com> | | 8/16/2021 | 9:54:45 AM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC) regarding filing action and rates on matter | Attorney-Client Privilege |
| GWB_006667 | RE_ 40-21B2-49D (10289863.1).msg | Bill Young <byoung@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.g r1u@statefarm.com> | | 8/16/2021 | 10:27:54 AM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC) regarding filing action and rates on matter | Attorney-Client Privilege |
| GWB_006669 | RE_ 40-21B2-49D (10294006.1).msg | Bill Young <byoung@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.g r1u@statefarm.com> | | 8/17/2021 | 9:36:56 AM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC) regarding complaint filed by Justin Kahn | Attorney-Client Privilege |
| GWB_006670 | RE_ 40-21B2-49D (10304152.1).msg | Bill Young <byoung@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.g r1u@statefarm.com> | | 8/19/2021 | 11:25:13 AM | Emails between Darren Murdoch (State Farm) and Bill Young (GWB) regarding permission to hire process server to serve the declaratory judgment complaint | Attorney-Client Privilege |
| GWB_006671 | RE_ 40-21B2-49D (10304240.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@st atefarm.com> | Bill Young <byoung@gwblawfir m.com> | | 8/19/2021 | 11:32:15 AM | Emails between Darren Murdoch (SFMAIC) and Bill Young (GWB) regarding permission to hire process server to serve the declaratory judgment complaint and attaching filed Exhibit A to Complaint. | Attorney-Client Privilege |
| GWB_006672 | Filed Exhibit A to Complaint.pdf | | | | | | Attachment to GWB_006671. Publicly filed document previously produced at GWB_000454 | Attorney-Client Privilege |
| GWB_006733 | RE_ 40-21B2-49D (10337330.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@st atefarm.com> | Bill Young <byoung@gwblawfir m.com> | | 8/30/2021 | 4:23:46 PM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC) to update on status of serving parties and discussing potential subpoena to SFMAIC | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_006735 | RE_ 40-21B2-49D (10337360.1).msg | Bill Young <byoung@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | | 8/30/2021 | 4:28:14 PM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC) to update on status of serving parties and discussing potential subpoena to SFMAIC | Attorney-Client Privilege |
| GWB_006737 | RE_ 40-21B2-49D (10337454.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/30/2021 | 4:41:37 PM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC) regarding subpoena to SFMAIC and attaching subpoena | Attorney-Client Privilege |
| GWB_006739 | 2021.08.27 Plt's Subpoena to State Farm.pdf | | | | | | Attachment to GWB_006737. Already produced at GWB_003457 | Attorney-Client Privilege |
| GWB_006745 | RE_ 40-21B2-49D (10337534.1).msg | Bill Young <byoung@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | | 8/30/2021 | 4:59:01 PM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC) discussing subpoena to SFMAIC | Attorney-Client Privilege |
| GWB_006747 | RE_ 40-21B2-49D (10337547.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/30/2021 | 5:00:16 PM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC) discussing subpoena to SFMAIC | Attorney-Client Privilege |
| GWB_006750 | RE_ 4021b249d (10566511.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | | 10/26/2021 | 5:39:02 PM | Emails from Jennifer Johnsen (GWB) to Lee Shivers (SFMAIC) regarding approval of excluded driver endorsement form, for purposes of gathering information for the DJA litigation | Attorney-Client Privilege |
| GWB_006751 | RE_ 4021b249d (10592166.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | 11/8/2021 | 5:08:02 PM | Emails between Jennifer Johnsen (GWB), Lee Shivers (SFMAIC) and Darren Murdoch (SFMAIC). Johnsen following up to ensure GWB has received all the documents relating to the Tahoe | Attorney-Client Privilege |
| GWB_006754 | RE_ 4021b249d (10639695.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | | 11/9/2021 | 7:06:12 PM | Emails between Jennifer Johnsen (GWB) and Lee Shivers (SFMAIC) regarding certified policy for purposes of DJA litigation | Attorney-Client Privilege |
| GWB_006755 | RE_ 4021b249d (10673666.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | | 11/17/2021 | 4:57:46 PM | Emails between Jennifer Johnsen (GWB) and Lee Shivers (SFMAIC) regarding certified policy for purposes of DJA litigation | Attorney-Client Privilege |
| GWB_006757 | RE_ 40-21B2-49D (11175538.1).msg | Christine Kelly <cmkelly@gwblawfirm.com> | Traci Johnson <traci.johnson.cnrz@statefarm.com> | | 4/13/2022 | 9:07:22 AM | Emails between GWB's collections department and SFMAIC regarding invoices for legal services in connection with the DJA | Work Product |
| GWB_006759 | RE_ 40-21B2-49D (11175921.1).msg | Traci Johnson <traci.johnson.cnrz@statefarm.com> | Christine Kelly <cmkelly@gwblawfirm.com> | | 4/13/2022 | 9:55:24 AM | Emails between GWB's collections department and SFMAIC regarding invoices for legal services in connection with the DJA | Work Product |
| GWB_006762 | RE_ 6384-2825 INVOICE 259169 Appeal Assistance Needed =- Written prior approval required (10948228.1).msg | Melanie Smith <msmith@gwblawfirm.com> | Natalie Ecker <eckern@gwblawfirm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Amanda Houser <ahouser@gwblawfirm.com> | 2/16/2022 | 2:11:25 PM | Internal GWB emails regarding a billing audit | Work Product |
| GWB_006763 | RE_ 6384-2825 INVOICE 259169 Appeal Assistance Needed =- Written prior approval required (10948589.1).msg | Natalie Ecker <eckern@gwblawfirm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | | 2/16/2022 | 2:44:06 PM | Internal GWB emails regarding a billing audit | Work Product |
| GWB_006765 | RE_ 6384-2825 INVOICE 259169 Appeal Assistance Needed =- Written prior approval required (10948667.1).msg | Natalie Ecker <eckern@gwblawfirm.com> | Melanie Smith <msmith@gwblawfirm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Amanda Houser <ahouser@gwblawfirm.com> | 2/16/2022 | 2:53:42 PM | Internal GWB emails regarding a billing audit | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| GWB_006767 | RE_ 6384-2825 - New claim rep (11771912.1).msg | Denise Kirk <dkirk@gwblawfirm.com>; Pat Klitzing <pklitzing@gwblawfirm.com> | Scott LaVigne <slavigne@gwblawfirm.com> | Christine Kelly <cmkelly@gwblawfirm.com> | 9/2/2022 | 10:59:07 AM | Internal GWB emails regarding billing contacts for DJA litigation | Work Product |
|---|---|---|---|---|---|---|---|---|
| GWB_006768 | RE_ 6384-2825 - New claim rep (11772707.1).msg | Scott LaVigne <slavigne@gwblawfirm.com>; Denise Kirk <dkirk@gwblawfirm.com> | Pat Klitzing <pklitzing@gwblawfirm.com> | | 9/2/2022 | 11:41:46 AM | Internal GWB emails regarding billing contacts for DJA litigation | Work Product |
| GWB_006770 | RE_ 6384-2825_ Rate Verification needed (10948099.1).msg | Paula Forbes <pforbes@gwblawfirm.com> | Melanie Smith <msmith@gwblawfirm.com> | | 2/16/2022 | 1:54:57 PM | Internal GWB emails regarding rates for DJA litigation | Work Product |
| GWB_006771 | RE_ 6384-2825_ Rate Verification needed (10948160.1).msg | Melanie Smith <msmith@gwblawfirm.com> | Paula Forbes <pforbes@gwblawfirm.com> | | 2/16/2022 | 2:01:08 PM | Internal GWB emails regarding rates for DJA litigation | Work Product |
| GWB_006773 | RE_ 6384-2825_ Rate Verification needed (10953258.1).msg | Melanie Smith <msmith@gwblawfirm.com> | Paula Forbes <pforbes@gwblawfirm.com> | Billing Inquiries <BillingInquiries@gwblawfirm.com> | 2/17/2022 | 2:51:19 PM | Internal GWB emails regarding rates for DJA litigation | Work Product |
| GWB_006775 | Re_ 6384-2825 _ Estate of Workman v. Lamb _ Updated Budget needed (10858737.1).msg | Paula Forbes <pforbes@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/28/2022 | 8:42:03 AM | Internal GWB emails revised budget | Work Product |
| GWB_006776 | RE_ 6384-2825 _ Estate of Workman v. Lamb _ Updated Budget needed (10858854.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Paula Forbes <pforbes@gwblawfirm.com> | | 1/28/2022 | 8:57:37 AM | Internal GWB emails revised budget | Work Product |
| GWB_006777 | Legal Exchange Budget Form.xlsx | | | | | | Attachment to GWB_006776 | Work Product |
| GWB_006779 | RE_ 6384-2825 _ Estate of Workman v. Lamb _ Updated Budget needed (10891117.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Natalie Ecker <eckern@gwblawfirm.com> | Paula Forbes <pforbes@gwblawfirm.com> | | 2/3/2022 | 2:59:55 PM | Internal GWB emails about budget for DJA litigation | Work Product |
| GWB_006780 | 6384-2825 Legal Exchange Budget Form.xlsx | | | | | | Attachment to GWB_006780 | Work Product |
| GWB_006783 | TimeCardListByDate - 20220203-1455.xlsx | | | | | | Attachment to GWB_006780 | Work Product |
| GWB_006807 | RE_ 6384-2825 _ Estate of Workman v. Lamb _ Updated Budget needed (10891205.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Paula Forbes <pforbes@gwblawfirm.com> | | 2/3/2022 | 3:12:32 PM | Internal GWB emails about budget for DJA litigation | Work Product |
| GWB_006809 | RE_ 6384-2825 _ Estate of Workman v. Lamb _ Updated Budget needed (10940910.1).msg | Paula Forbes <pforbes@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 2/15/2022 | 2:05:01 PM | Internal GWB emails about budget for DJA litigation | Work Product |
| GWB_006811 | RE_ 6384-2825 _ Estate of Workman v. Lamb _ Updated Budget needed (10965426.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Paula Forbes <pforbes@gwblawfirm.com> | | 2/22/2022 | 11:06:03 AM | Internal GWB emails about budget for DJA litigation | Work Product |
| GWB_006813 | 6384-2825 Workman draft updated budget.pdf | | | | | | Attachment to GWB_006811 | Work Product |
| GWB_006817 | RE_ 6384-2825 Receipts from We Serve (10316453.1).msg | Kim Free <kfree@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/24/2021 | 11:46:56 AM | Internal GWB emails about receipts from process servers for DJA litigation | Work Product |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_006818 | RE_ 6384-2825 Workman v. Lamb _ Claim No._ 40-21B2-49D _ Updated Budget and Invoice 262738 (10969746.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Paula Forbes <pforbes@gwblawfirm.com> | | 2/22/2022 | 5:03:29 PM | Emails between GWB billing department and Jennifer Johnsen regarding invoice for DJA litigation | Work Product |
| GWB_006819 | 6384-2825 Invoice 260990 1.11.22.pdf | | | | | | Attachment to GWB_006818. Invoice for legal services in the DJA litigation; includes descriptions of work performed and reveals mental impressions and strategies of counsel | Work Product |
| GWB_006824 | RE_ 6384-2825 Workman v. Lamb _ Claim No._ 40-21B2-49D _ Updated Budget and Invoice 262738 (10969798.1).msg | Tyran Turner <tyran.turner.e123@statefarm.com>; Lee Shivers <lee.shivers.d8yf@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 2/22/2022 | 5:17:02 PM | Email from Jennifer Johnsen (GWB) to Tyran Turner (SFMAIC) attaching GWB invoice for fees and costs | Attorney-Client Privilege |
| GWB_006826 | 6384-2825 Invoice 260990 1.11.22.pdf | | | | | | Attachment to GWB_006824. Invoice for legal services in the DJA litigation; includes descriptions of work performed and reveals mental impressions and strategies of counsel | Attorney-Client Privilege; Work Product |
| GWB_006831 | RE_ 6384-2825 Workman v. Lamb _ Claim No._ 40-21B2-49D _ Updated Budget and Invoice 262738 (10978993.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Lee Shivers <lee.shivers.d8yf@statefarm.com> | Tyran Turner <tyran.turner.e123@statefarm.com> | | 2/24/2022 | 2:20:45 PM | Email from Tyran Turner (SFMAIC) to Jennifer Johnsen (GWB) acknowledging receipt of invoice | Attorney-Client Privilege |
| GWB_006833 | RE_ 6384-2825 Workman v. Lamb _ Claim No._ 40-21B2-49D _ Updated Budget and Invoice 264293 (11008098.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com> | Ashley Clardy <aclardy@gwblawfirm.com> | | 3/4/2022 | 9:52:10 AM | Email from GWB's billing department to Lee Shivers (SFMAIC) attaching invoice for legal services | Attorney-Client Privilege |
| GWB_006834 | Invoice_264293_Proforma_276730_2022.03.03_16.27.30_v2.pdf | | | | | | Attachment to GWB_006833. Invoice for legal services in the DJA litigation; includes descriptions of work performed and reveals mental impressions and strategies of counsel | Attorney-Client Privilege |
| GWB_006842 | Re_ Acceptance of Service - State Farm v. Lamb (10361163.1).msg | Bill Young <byoung@gwblawfirm.com> | Mark Mason <mark@masonlawfirm.com> | warren.moise@gmail.com <warren.moise@gmail.com> | 9/8/2021 | 7:40:06 AM | Emails between Bill Young (GWB), Mark Mason (attorney for Lamb Jr., SFMAIC's insured) and Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) regarding acceptance of service in DJA litigation | Attorney-Client Privilege; Common Interest |
| GWB_006844 | Re_ Acceptance of Service-State Farm v. Lamb (10337738.1).msg | Bill Young <byoung@gwblawfirm.com> | Robert Wyndham <rwyndham@gedneyhowe.com> | mgriffith@griffithfreeman.com <mgriffith@griffithfreeman.com> | 8/30/2021 | 5:53:13 PM | Emails between Bill Young (GWB), Robert Wyndham (attorney for Lamb III) and Mitch Griffith (attorney retained by SFMAIC to represent Lamb III) | Attorney-Client Privilege; Common Interest |
| GWB_006845 | RE_ Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Complaint (10304406.1).msg | Bill Young <byoung@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | | 8/19/2021 | 11:52:24 AM | Redaction of emails between Bill Young (GWB) and Tania McGee (GWB legal assistant) about file organization in DJA litigation | Work Product |
| GWB_006847 | RE_ Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Memorandum,Opinion & Order (11604571.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Natalie Ecker <eckern@gwblawfirm.com> | | 7/29/2022 | 5:03:52 PM | Redaction of emails between GWB attorneys Jennifer Johnsen and Natalie Ecker regarding Order filed by Court in DJA litigation and attaching same | Work Product |
| GWB_006849 | Order.pdf | | | | | | Attachment to GWB_006847. Publicly filed document previously produced at GWB_000378 | Work Product |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_006860 | RE_ Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Scheduling Order (10414453.1).msg | Bill Young <byoung@gwblawfirm.com> | Nekayla McKinney <nMcKinney@gwblawfirm.com> | | 9/23/2021 | 10:59:25 AM | Redaction of email between GWB legal assistant and Bill Young regarding calendaring of conference and scheduling order | Work Product |
| GWB_006862 | DE 25 - Conference and Scheduling Order  9.21.21.pdf | | | | | | Attachment to GWB_006862. Publicly filed document previously produced at GWB_000390 | Work Product |
| GWB_006869 | RE_ Activity in Case 2_21-cv-02623-MBS State Farm Mutual Automobile Insurance Company v. Lamb et al Scheduling Order (10414462.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 9/23/2021 | 11:00:44 AM | Redaction of email between GWB legal assistant and Bill Young regarding calendaring of conference and scheduling order | Work Product |
| GWB_006871 | RE_ Affidavit in support of order of publication.nrl (10681522.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com | Amanda Houser <ahouser@gwblawfirm.com> | | 12/2/2021 | 3:12:06 PM | Emails between Amanda Houser (GWB legal assistant) and Jennifer Johnsen (GWB attorney) attaching link to draft affidavit in support of order of publication | Work Product |
| GWB_006872 | Affidavit in support of order of publication.nrl | | | | | | Attachment to GWB_006871. Link to electronic file (no document) | Work Product |
| GWB_006873 | RE_ Call (10843465.1).msg | Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/25/2022 | 10:07:52 AM | Emails between Jennifer Johnsen and Robbie Whelan, attorneys representing State Farm, containing those attorneys' mental impressions, opinions and strategies and reflecting communications with client SFMAIC | Attorney-Client Privilege; Work Product |
| GWB_006874 | RE_ Call (10843466.1).msg | Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/25/2022 | 10:06:29 AM | Emails between Jennifer Johnsen and Robbie Whelan, attorneys representing State Farm, containing those attorneys' mental impressions, opinions and strategies and reflecting communications with client SFMAIC | Attorney-Client Privilege; Work Product |
| GWB_006876 | RE_ Call (10843467.1).msg | Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/25/2022 | 10:36:25 AM | Emails between Jennifer Johnsen and Robbie Whelan, attorneys representing State Farm, containing those attorneys' mental impressions, opinions and strategies and reflecting communications with client SFMAIC | Attorney-Client Privilege; Work Product |
| GWB_006878 | RE_ Call (10843476.1).msg | Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/25/2022 | 9:53:17 AM | Emails between Jennifer Johnsen and Robbie Whelan, attorneys representing State Farm, containing those attorneys' mental impressions, opinions and strategies and reflecting communications with client SFMAIC | Attorney-Client Privilege; Work Product |
| GWB_006879 | RE_ Call (10869284.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Robbie Whelan <robbie@whelanmellen.com> | | 1/25/2022 | 9:38:47 AM | Emails between Jennifer Johnsen and Robbie Whelan, attorneys representing State Farm, containing those attorneys' mental impressions, opinions and strategies and reflecting communications with client SFMAIC | Attorney-Client Privilege; Work Product |
| GWB_006880 | RE_ Call (10869293.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Robbie Whelan <robbie@whelanmellen.com> | | 1/25/2022 | 9:58:17 AM | Emails between Jennifer Johnsen and Robbie Whelan, attorneys representing State Farm, containing those attorneys' mental impressions, opinions and strategies and reflecting communications with client SFMAIC | Attorney-Client Privilege; Work Product |
| GWB_006881 | RE_ Call (10869362.1).msg | Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/25/2022 | 10:33:54 AM | Emails between Jennifer Johnsen and Robbie Whelan, attorneys representing State Farm, containing those attorneys' mental impressions, opinions and strategies and reflecting communications with client SFMAIC | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | From | To | CC | Date | Time | Description | Privilege |
|---|---|---|---|---|---|---|---|---|
| GWB_006883 | RE_ Call on SC Excluded Driver Endorsement (10865225.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; charles@whelanmellen.com <charles@whelanmellen.com>; robbie@whelanmellen.com <robbie@whelanmellen.com> | Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | 1/12/2022 | 4:18:40 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC), and Guy Conti and Monique James (SFMAIC) to schedule time for a call | Attorney-Client Privilege |
| GWB_006884 | RE_ Call on SC Excluded Driver Endorsement (10865226.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Monique James <monique.james.gtgq@statefarm.com>; Charles Norris <charles@whelanmellen.com> | Robbie Whelan <robbie@whelanmellen.com> | Guy Conti <guy.conti.f58t@statefarm.com> | 1/12/2022 | 4:20:10 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC), and Guy Conti and Monique James (SFMAIC) to schedule time for a call | Attorney-Client Privilege |
| GWB_006885 | RE_ Call on SC Excluded Driver Endorsement (10865234.1).msg | Monique James <monique.james.gtgq@statefarm.com>; charles@whelanmellen.com <charles@whelanmellen.com>; robbie@whelanmellen.com <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | 1/12/2022 | 4:12:07 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC), and Guy Conti and Monique James (SFMAIC) to schedule time for a call | Attorney-Client Privilege |
| GWB_006886 | RE_ Cl. No. 4021B249D Melvin O Lamb, Jr. (10633749.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | | 11/18/2021 | 2:36:15 PM | Emails between Jennifer Johnsen (GWB), Shay Anderson (SFMAIC), and Darren Murdoch (SFMAIC). Johnsen requesting feedback on previously submitted draft discovery responses as part of DJA litigation | Attorney-Client Privilege |
| GWB_006887 | Re_ Cl. No. 4021B249D Melvin O Lamb, Jr. (10673620.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com>; Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | 11/18/2021 | 1:34:37 PM | Emails between Jennifer Johnsen (GWB), Shay Anderson (SFMAIC), and Darren Murdoch (SFMAIC). Johnsen requesting feedback on previously submitted draft discovery responses as part of DJA litigation | Attorney-Client Privilege |
| GWB_006888 | RE_ Cl. No. 4021B249D Melvin O Lamb, Jr. (10673710.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 11/22/2021 | 6:09:48 PM | Emails between Jennifer Johnsen (GWB), Shay Anderson (SFMAIC), and Darren Murdoch (SFMAIC). Johnsen requesting feedback on previously submitted draft discovery responses as part of DJA litigation | Attorney-Client Privilege |
| GWB_006889 | RE_ Cl. No._ 4021B249D  DJ Action (10521951.1).msg | lee.shivers.d8yf@statefarm.com <lee.shivers.d8yf@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/21/2021 | 11:12:55 AM | Email from Jennifer Johnsen (GWB) to Lee Shivers (SFMAIC), regarding 30(b)(6) deposition of SFMAIC and designation of witness; attaching deposition notice | Attorney-Client Privilege |
| GWB_006891 | 2021.09.28 30(b) Deposition Notice.pdf | | | | | | Attachment to GWB_006889. Previously produced at GWB_001239 | Attorney-Client Privilege |
| GWB_006895 | RE_ Cl. No._ 4021B249D  DJ Action (10528761.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Lee Shivers <lee.shivers.d8yf@statefarm.com> | | 10/22/2021 | 12:49:15 PM | Emails between Jennifer Johnsen (GWB) and Lee Sivers (SFMAIC) regarding when the Tahoe was added to the policy. Email for purposes of DJA litigation | Attorney-Client Privilege |
| GWB_006897 | RE_ Cl. No._ 4021B249D  DJ Action (10551183.1).msg | lee.shivers.d8yf@statefarm.com <lee.shivers.d8yf@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/22/2021 | 11:18:04 AM | Emails between Jennifer Johnsen (GWB) and Lee Sivers (SFMAIC) regarding when the Tahoe was added to the policy. Email for purposes of DJA litigation | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_006899 | Re _ Cl. No._ 4021B249D DJ Action (10551184.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/22/2021 | 2:30:37 PM | Emails between Jennifer Johnsen (GWB) and Lee Sivers (SFMAIC) regarding when the Tahoe was added to the policy. Email for purposes of DJA litigation | Attorney-Client Privilege |
| GWB_006901 | image001.jpg | | | | | | Blank attachment to GWB_006899 | Attorney-Client Privilege |
| GWB_006902 | RE_ deposition - SC_ (10763070.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | | 12/2/2021 | 1:23:55 PM | Emails between Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) regarding arrangements for 30(b)(6) deposition | Attorney-Client Privilege |
| GWB_006907 | RE_ deposition - SC_ (10763086.1).msg | Shay Anderson <shay.anderson.grfs@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Todd Sivills <todd.sivills.hg8i@statefarm.com> | 12/1/2021 | 12:01:26 PM | Emails between Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) regarding arrangements for 30(b)(6) deposition | Attorney-Client Privilege |
| GWB_006912 | RE_ deposition - SC_ (10763093.1).msg | Shay Anderson <shay.anderson.grfs@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Todd Sivills <todd.sivills.hg8i@statefarm.com> | 12/1/2021 | 12:22:24 PM | Emails between Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) regarding arrangements for 30(b)(6) deposition | Attorney-Client Privilege |
| GWB_006917 | RE_ deposition - SC_ (10763118.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | | 12/1/2021 | 12:54:34 PM | Emails between Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) regarding arrangements for 30(b)(6) deposition | Attorney-Client Privilege |
| GWB_006922 | RE_ deposition - SC_ (10763131.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | | 12/1/2021 | 8:09:21 PM | Emails between Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) regarding arrangements for 30(b)(6) deposition | Attorney-Client Privilege |
| GWB_006927 | RE_ deposition - SC_ (10763137.1).msg | Shay Anderson <shay.anderson.grfs@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 12/2/2021 | 5:49:31 PM | Emails between Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) regarding arrangements for 30(b)(6) deposition | Attorney-Client Privilege |
| GWB_006933 | RE_ Did Monique approve payment of MM's bill_ (10872425.1).msg | Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/28/2022 | 10:07:10 AM | Email from Jennifer Johnsen (GWB) to Robbie Whelan (attorney retained by SFMAIC for the DJA litigation) regarding approval of bill in DJA litigation | Work Product |
| GWB_006934 | RE_ DJ Action re_ Melvin Lamb, Jr. et al. (10566508.1).msg | Mark Mason <mark@masonlawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/26/2021 | 5:23:37 PM | Emails between Jennifer Johnsen (GWB) and Mark Mason (attorney for Lamb Jr., SFMAIC's insured) regarding service attempts on Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_006937 | Re_ DJ Action re_ Melvin Lamb, Jr. et al. (10566520.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Mark Mason <mark@masonlawfirm.com> | | 10/26/2021 | 4:27:32 PM | Emails between Jennifer Johnsen (GWB) and Mark Mason (attorney for Lamb Jr., SFMAIC's insured) regarding service attempts on Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_006939 | RE_ DJ Action re_ Melvin Lamb, Jr. et al. (10592965.1).msg | Mark Mason <mark@masonlawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 11/1/2021 | 4:18:14 PM | Emails between Jennifer Johnsen (GWB) and Mark Mason (attorney for Lamb Jr., SFMAIC's insured) regarding service attempts on Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_006942 | RE_ DJ_Interpleader Complaint.DOCX (10270131.1).msg | Grayson Smith <gsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/10/2021 | 10:11:55 AM | Emails between Bill Young (GWB) and Grayson Smith (GWB attorney) regarding strategy for DJA litigation | Work Product |
| GWB_006943 | RE_ Driver Exclusion Form 4021b249D (10247549.1).msg | Bill Young <byoung@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | | 7/26/2021 | 6:36:30 PM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC). Bill Young confirming the date the exluded driver form was signed and gathering information from client in anticipation of litigation | Attorney-Client Privilege |
| GWB_006945 | RE_ Driver Exclusion Form 4021b249D (10247550.1).msg | Bill Young <byoung@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | | 7/23/2021 | 9:34:39 AM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC). Bill Young confirming the date the exluded driver form was signed and gathering information from client in anticipation of litigation | Attorney-Client Privilege |
| GWB_006946 | RE_ Driver Exclusion Form 4021b249D (10247567.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Bill Young <byoung@gwblawfirm.com> | | 7/27/2021 | 9:35:46 AM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC). Bill Young confirming the date the exluded driver form was signed and gathering information from client in anticipation of litigation | Attorney-Client Privilege |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_006948 | RE_ Driver Exclusion Form 4021b249D (10247568.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@state farm.com> | Bill Young <byoung@gwblawfir m.com> | | 7/23/2021 | 11:12:30 AM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC). Bill Young confirming the date the exluded driver form was signed and gathering information from client in anticipation of litigation | Attorney-Client Privilege |
| GWB_006950 | RE_ Driver Exclusion Form 4021b249D (10247569.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@state farm.com> | Bill Young <byoung@gwblawfir m.com> | | 7/23/2021 | 9:12:27 AM | Emails between Bill Young (GWB) and Darren Murdoch (SFMAIC). Bill Young confirming the date the exluded driver form was signed and gathering information from client in anticipation of litigation | Attorney-Client Privilege |
| GWB_006951 | RE_ Estate of James Workman vs. Melvin Lamb, et al (10335787.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfir m.com> | | 8/30/2021 | 1:09:17 PM | Internal GWB emails regarding status of affidavits of service in DJA litigation | Work Product |
| GWB_006952 | RE_ Estate of James Workman vs. Melvin Lamb, et al (10335955.1).msg | Bill Young <byoung@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm. com> | | 8/30/2021 | 1:32:20 PM | Internal GWB emails regarding status of affidavits of service in DJA litigation | Work Product |
| GWB_006953 | RE_ Estate of James Workman vs. Melvin Lamb, et al (10335961.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfir m.com> | | 8/30/2021 | 1:33:02 PM | Internal GWB emails regarding status of affidavits of service in DJA litigation | Work Product |
| GWB_006955 | RE_ Estate of James Workman vs. Melvin Lamb, et al (10335968.1).msg | Bill Young <byoung@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm. com> | | 8/30/2021 | 1:33:54 PM | Internal GWB emails regarding status of affidavits of service in DJA litigation | Work Product |
| GWB_006957 | RE_ Estate of James Workman vs. Melvin Lamb, et al (10337679.1).msg | Bill Young <byoung@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm. com> | | 8/30/2021 | 5:37:34 PM | Internal GWB emails regarding status of affidavits of service in DJA litigation | Work Product |
| GWB_006959 | RE_ Estate of Workman v. Lamb (10294528.1).msg | Bill Young <byoung@gwblawfirm.com> ; warren.moise@gmail.com <warren.moise@gmail.com> | Mitch Griffith <Mgriffith@griffithfre eman.com> | | 8/17/2021 | 10:34:56 AM | Emails between Mitch Griffith (attorney hired by State Farm to represent Lamb III), Warren Moise (attorney hired by State Farm to represent Lamb Jr.) and Bill Young (GWB) regarding complaint filed by the Estate against Lamb Jr. | Attorney-Client Privilege; Common Interest |
| GWB_006960 | RE_ Estate of Workman v. Lamb, Jr. (10337137.1).msg | Chyrra Greene <Chyrra.Greene@grimcab.co m> | Bill Young <byoung@gwblawfir m.com> | warren.moise@gm ail.com <warren.moise@g mail.com> | 8/30/2021 | 3:56:53 PM | Emails between Bill Young and Warren Moise's office (attorney hired by State Farm to represent Lamb Jr.) regarding discovery requests and subpoena from the Estate | Attorney-Client Privilege; Common Interest |
| GWB_006961 | RE_ Estate of Workman v. Lamb, Jr. (10361911.1).msg | Terry Rouse <trouse@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm. com> | | 9/8/2021 | 10:30:38 AM | Internal emails between GWB legal assistants regarding discovery requests to Defendant in state court action | Work Product |
| GWB_006962 | RE_ Estate of Workman v. Lamb, Jr. (10367616.1).msg | Bill Young <byoung@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm. com> | | 9/9/2021 | 1:29:01 PM | Internal emails between GWB legal assistants regarding discovery requests to Defendant in state court action | Work Product |
| GWB_006964 | RE_ Estate of Workman v. Lamb, Jr. (10367623.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.c om> | Luchana Smith <lsmith@gwblawfirm. com> | Tania McGee <tmcgee@gwblawf irm.com> | 9/9/2021 | 1:29:42 PM | Internal emails between GWB legal assistants regarding discovery requests to Defendant in state court action | Work Product |
| GWB_006966 | RE_ Estate of Workman v. Lamb, Jr. (10367636.1).msg | Luchana Smith <lsmith@gwblawfirm.com>; Nekayla McKinney <nMcKinney@gwblawfirm.c om> | Tania McGee <tmcgee@gwblawfir m.com> | | 9/9/2021 | 1:31:34 PM | Internal emails between GWB legal assistants regarding discovery requests to Defendant in state court action | Work Product |
| GWB_006968 | RE_ Estate of Workman v. Lamb, Jr. (10367642.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm. com> | | 9/9/2021 | 1:33:18 PM | Internal emails between GWB legal assistants regarding discovery requests to Defendant in state court action | Work Product |
| GWB_006971 | RE_ Estate of Workman v. Lamb, Jr. (10367659.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm. com> | | 9/9/2021 | 1:35:57 PM | Internal emails between GWB legal assistants regarding discovery requests to Defendant in state court action | Work Product |
| GWB_006974 | Re_ Estate of Workman v. Lamb, Jr. (10375447.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfir m.com> | | 9/9/2021 | 1:25:33 PM | Internal emails between GWB legal assistants regarding discovery requests to Defendant in state court action | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_006976 | RE_ Estate of Workman v. Lamb, Jr. (10375453.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | | 9/9/2021 | 2:27:34 PM | Internal emails between GWB legal assistants regarding discovery requests to Defendant in state court action | Work Product |
| GWB_006979 | RE_ FAXAGE - New 11 page fax received from 3097635544 2021-10-01 11_50_59 EDT (10441455.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/1/2021 | 12:51:57 PM | Emails between Jennifer Johnsen and Amanda Houser regarding subpoena for 30(b)(6) deposition of SFMAIC and calendaring deadlines | Work Product |
| GWB_006981 | Re_ FAXAGE - New 11 page fax received from 3097635544 2021-10-01 11_50_59 EDT (10441466.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/1/2021 | 12:54:13 PM | Emails between Jennifer Johnsen and Amanda Houser regarding subpoena for 30(b)(6) deposition of SFMAIC and calendaring deadlines | Work Product |
| GWB_006983 | RE_ FAXAGE - New 11 page fax received from 3097635544 2021-10-01 11_50_59 EDT (10441517.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/1/2021 | 1:03:49 PM | Emails between Jennifer Johnsen and Amanda Houser regarding subpoena for 30(b)(6) deposition of SFMAIC and calendaring deadlines | Work Product |
| GWB_006985 | Re_ FAXAGE - New 11 page fax received from 3097635544 2021-10-01 11_50_59 EDT (10441606.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/1/2021 | 1:18:28 PM | Emails between Jennifer Johnsen and Amanda Houser regarding subpoena for 30(b)(6) deposition of SFMAIC and calendaring deadlines | Work Product |
| GWB_006987 | RE_ FAXAGE - New 11 page fax received from 3097635544 2021-10-01 11_50_59 EDT (10441614.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/1/2021 | 1:19:35 PM | Emails between Jennifer Johnsen and Amanda Houser regarding subpoena for 30(b)(6) deposition of SFMAIC and calendaring deadlines | Work Product |
| GWB_006990 | RE_ Federal Court filing  (6384-2825) (10292703.1).msg | Bill Young <byoung@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | 8/16/2021 | 5:48:15 PM | Emails between attorney Billy Young and GWB legal assistants regarding status of filings in DJA litigation | Work Product |
| GWB_006991 | RE_ HEADS UP _ State Farm v. Lamb_ Workman Physical File (10692169.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 12/7/2021 | 9:37:07 AM | Emails between GWB legal assistants regarding GWB's file for DJA litigation | Work Product |
| GWB_006992 | RE_ Invoice 257772 (6384-2825) expense portion (10712704.1).msg | Christine Kelly <cmkelly@gwblawfirm.com> | Paula Forbes <pforbes@gwblawfirm.com> | Ella Canfield <ecanfield@gwblawfirm.com> | 12/13/2021 | 11:32:28 AM | Emails between GWB billing staff regarding submission of invoice for DJA litigation | Work Product |
| GWB_006994 | RE_ Invoice 257772 (6384-2825) expense portion (10712806.1).msg | Paula Forbes <pforbes@gwblawfirm.com> | Christine Kelly <cmkelly@gwblawfirm.com> | Ella Canfield <ecanfield@gwblawfirm.com> | 12/13/2021 | 11:38:10 AM | Emails between GWB billing staff regarding submission of invoice for DJA litigation | Work Product |
| GWB_006996 | RE_ Invoice for Service for Mario and Constance Molinaro (10315352.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Kim Free <kfree@gwblawfirm.com> | | 8/24/2021 | 9:52:44 AM | Emails between GWB billing staff regarding payment of process server invoices for DJA litigation | Work Product |
| GWB_006999 | RE_ Invoice for Service for Mario and Constance Molinaro (10315364.1).msg | Kim Free <kfree@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/24/2021 | 9:53:51 AM | Emails between GWB billing staff regarding payment of process server invoices for DJA litigation | Work Product |
| GWB_007001 | RE_ Invoice for Service for Mario and Constance Molinaro (10316219.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Kim Free <kfree@gwblawfirm.com> | | 8/24/2021 | 11:24:58 AM | Emails between GWB billing staff regarding payment of process server invoices for DJA litigation | Work Product |
| GWB_007003 | RE_ Invoice for Service for Mario and Constance Molinaro (10316260.1).msg | Kim Free <kfree@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/24/2021 | 11:29:12 AM | Emails between GWB billing staff regarding payment of process server invoices for DJA litigation | Work Product |
| GWB_007006 | RE_ Invoice from We Serve Law (362101) (10342715.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Kim Free <kfree@gwblawfirm.com> | | 8/31/2021 | 1:10:52 PM | Emails between GWB billing staff and paralegal regarding payment of process server invoices for DJA litigation | Work Product |
| GWB_007008 | 6384-2825 We Serve Invoice - 362101.pdf | | | | | | Attachment to GWB_007006. Process server invoice | Work Product |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_007009 | RE_ Invoice from We Serve Law (362101) (10344333.1).msg | Kim Free <kfree@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 8/31/2021 | 4:34:54 PM | Emails between GWB billing staff and paralegal regarding payment of process server invoices for DJA litigation | Work Product |
| GWB_007012 | RE_ June 12, 2021 Accident (10396233.1).msg | jjacksa@tompsc.com <jjacksa@tompsc.com> | Bill Young <byoung@gwblawfirm.com> | epostell@tompsc.com <epostell@tompsc.com> | 9/17/2021 | 2:15:25 PM | Emails between attorney Bill Young (GWB) and Officer Jacksa (investigating officer) regarding whether any vehicle passengers were identified in the accident report | Work Product |
| GWB_007013 | Lamb Accident Report.pdf | | | | | | Attachment to GWB_007013. Accident report previously produced in this litigation at GWB_002074 | Work Product |
| GWB_007019 | RE_ Lamb - response to motion for sanctions (11382225.1).msg | Katie Mellen <katie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Robbie Whelan <robbie@whelanmellen.com> | 5/23/2022 | 2:50:53 PM | Emails between Jennifer Johnsen, Katie Mellen and Robbie Whelan (all attorneys retained by SFMAIC for the DJA litigation) regarding drafts of SFMAIC's response to Workman Estate's Motion for Sanctions | Work Product |
| GWB_007020 | 2022.05.20 - Lamb - WORKING DRAFT - Resp to Motion for Sanctions (JEJ redline).DOCX | | | | | | Attachment to GWB_007019. Attorney work product which includes the mental impressions, opinions and strategies of counsel | Work Product |
| GWB_007044 | RE_ Lamb (10872367.1).msg | Mark A. Mason <mark@masonlawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/27/2022 | 9:46:26 AM | Emails between Jennifer Johnsen (GWB) and Mark Mason (attorney for Lamb Jr., SFMAIC's insured) regarding address for Lamb IIII | Attorney-Client Privilege; Common Interest |
| GWB_007045 | RE_ Lamb (11174958.1).msg | Guy Conti <guy.conti.f58t@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 4/8/2022 | 2:22:57 PM | Emails between Jennifer Johnsen (GWB) and Guy Conti (SFMAIC) regarding correspondence sent from SFMAIC to Lamb III | Attorney-Client Privilege |
| GWB_007047 | RE_ lamb (11226828.1).msg | Charles Norris <charles@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 4/15/2022 | 9:25:53 AM | Emails between Jennifer Johnsen (GWB) and Charles Norris (SFMAIC) regarding call to discuss mediation | Work Product |
| GWB_007048 | RE_ lamb (11226829.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Charles Norris <charles@whelanmellen.com> | | 4/15/2022 | 9:28:34 AM | Emails between Jennifer Johnsen (GWB) and Charles Norris (SFMAIC) regarding call to discuss mediation | Work Product |
| GWB_007049 | RE_ Lamb (11250419.1).msg | Bill@RyanMontgomeryLaw.com <Bill@RyanMontgomeryLaw.com> | Amanda Houser <ahouser@gwblawfirm.com> | Natalie Ecker <eckern@gwblawfirm.com> | 4/27/2022 | 5:15:23 PM | Emails between Amanda Houser (GWB legal assistant) and Bill Young (attorney who represented SFMAIC earlier in the DJA litigation) regarding Bill Young's request for DJA case caption and signature blocks | Work Product |
| GWB_007050 | Lamb_Workman Caption and Attys.docx | | | | | | Attachment to GWB_007049. Word version of DJA case caption and signature blocks. | Work Product |
| GWB_007051 | RE_ Lamb (11250425.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Bill Young <Bill@RyanMontgomeryLaw.com> | Natalie Ecker <eckern@gwblawfirm.com> | 4/27/2022 | 5:16:38 PM | Emails between Amanda Houser (GWB legal assistant) and Bill Young (attorney who represented SFMAIC earlier in the DJA litigation) regarding Bill Young's request for DJA case caption and signature blocks | Work Product |
| GWB_007053 | Re_ Lamb (11250462.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Bill Young <Bill@RyanMontgomeryLaw.com> | | 4/27/2022 | 5:38:10 PM | Emails between Amanda Houser (GWB legal assistant) and Bill Young (attorney who represented SFMAIC earlier in the DJA litigation) regarding Bill Young's request for DJA case caption and signature blocks | Work Product |
| GWB_007055 | image001.00000.jpg | | | | | | Attachment to GWB_007053. Non-substantive, image of GWB logo | Work Product |
| GWB_007056 | image001.jpg | | | | | | Attachment to GWB_007053. Non-substantive, image of GWB logo | Work Product |
| GWB_007057 | Lamb_Workman Caption and Attys.docx | | | | | | Attachment to GWB_007049. Word version of DJA case caption and signature blocks. | Work Product |
| GWB_007058 | RE_ Lamb (11260509.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | | 4/8/2022 | 12:23:46 PM | Emails between Jennifer Johnsen (GWB) and Guy Conti (SFMAIC) regarding correspondence sent from SFMAIC to Lamb III | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_007059 | RE_ Lamb (quick question) (11226856.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | Natalie Ecker <eckern@gwblawfi rm.com> | 2/14/2022 | 12:57:28 PM | Emails between Robbie Whelan, Jennifer Johnsen, and Natalie Ecker (attorneys retained by SFMAIC for DJA litigation) regarding arrangements to sign and file stay | Work Product |
| GWB_007060 | RE_ Lamb 4021B249D (10985147.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm. com> | Tyran Turner <tyran.turner.e123@ statefarm.com> | Lee Shivers <lee.shivers.d8yf@ statefarm.com> | 2/8/2022 | 9:18:47 AM | Emails between Jennifer Johnsen (GWB), Lee Shivers (SFMAIC) and Tyran Turner (SFMAIC) regarding new budget for DJA litigation | Attorney-Client Privilege |
| GWB_007061 | RE_ Lamb 4021B249D (10985152.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm. com> | Tyran Turner <tyran.turner.e123@ statefarm.com> | Lee Shivers <lee.shivers.d8yf@ statefarm.com> | 2/8/2022 | 10:04:20 AM | Emails between Jennifer Johnsen (GWB), Lee Shivers (SFMAIC) and Tyran Turner (SFMAIC) regarding new budget for DJA litigation | Attorney-Client Privilege |
| GWB_007063 | RE_ Lamb 4021B249D (10985179.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm. com> | Tyran Turner <tyran.turner.e123@ statefarm.com> | Lee Shivers <lee.shivers.d8yf@ statefarm.com> | 2/8/2022 | 1:52:06 PM | Emails between Jennifer Johnsen (GWB), Lee Shivers (SFMAIC) and Tyran Turner (SFMAIC) regarding new budget for DJA litigation | Attorney-Client Privilege |
| GWB_007065 | RE_ Lamb DJ Action 4021b249d (10776697.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm .com>; Tyran Turner <tyran.turner.e123@statefar m.com> | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | | 1/6/2022 | 11:46:02 AM | Emails between Jennifer Johnsen (GWB), Lee Shivers (SFMAIC) and Tyran Turner (SFMAIC) forwarding Johnsen's summary of Shay Anderson's deposition and requesting information to respond to additional discovery from the Workman Estate. Email contains mental impressions, opinions, and strategies of counsel | Attorney-Client Privilege |
| GWB_007068 | RE_ Lamb DJ Action 4021b249d _ GWB 6384-2825 _ Need outdated budget rejected (10741740.1).msg | lee.shivers.d8yf@statefarm.c om <lee.shivers.d8yf@statefarm .com> | Paula Forbes <pforbes@gwblawfir m.com> | HOME CLMS-STATEFARMCLAIM S <statefarmclaims@ statefarm.com> | 12/21/2021 | 8:53:19 AM | Email between GWB's billing department and Lee Shivers (SFMAIC) regarding budgets and submission of invoices | Work Product |
| GWB_007069 | RE_ Lamb DJ Action 4021b249d _ GWB 6384-2825 _ Need outdated budget rejected (10756051.1).msg | Paula Forbes <pforbes@gwblawfirm.com> | Lee Shivers <lee.shivers.d8yf@sta tefarm.com> | | 12/28/2021 | 4:50:19 PM | Email between GWB's billing department and Lee Shivers (SFMAIC) regarding budgets and submission of invoices | Work Product |
| GWB_007070 | RE_ Lamb DJ Action 4021b249d _ GWB 6384-2825 _ Need outdated budget rejected (10756259.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm .com> | Paula Forbes <pforbes@gwblawfir m.com> | | 12/29/2021 | 7:42:13 AM | Email between GWB's billing department and Lee Shivers (SFMAIC) regarding budgets and submission of invoices | Work Product |
| GWB_007071 | RE_ Lamb docs (10704016.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfir m.com> | Natalie Ecker <eckern@gwblawfi rm.com> | 12/9/2021 | 11:41:47 AM | Emails between attorney Jennifer Johnsen and legal assistant Amanda Houser regarding production of documents and marking confidential | Work Product |
| GWB_007072 | State Farm - 000139-000161 (Supplemental_Confidential).p df | | | | | | Attachment to GWB_007071. Documents to be produced, and which were ultimately produced in the DJA as State Farm_000139-000161. Documents were withheld prior to the entry of the Confidentiality Order in this case,  but have now been produced at GWB_003216-003238 | Confidential; Work Product |
| GWB_007095 | Re_ Lamb docs (10707622.1).msg | Amanda Houser <ahouser@gwblawfirm.com > | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | | 12/10/2021 | 10:38:04 AM | Emails between attorney Jennifer Johnsen and legal assistant Amanda Houser regarding production of documents and marking confidential | Work Product |
| GWB_007096 | RE_ Lamb docs (10707965.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfir m.com> | | 12/10/2021 | 11:19:06 AM | Emails between attorney Jennifer Johnsen and legal assistant Amanda Houser regarding production of documents and marking confidential | Work Product |
| GWB_007097 | COS Supp Production.DOCX | | | | | | Attachment to GWB_007096. Draft certificate of service | Work Product |
| GWB_007098 | Cover Ltr for Supp Production.docx | | | | | | Attachment to GWB_007096. Draft cover letter for document production | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_007099 | State Farm - 000139-000161 (Supplemental_Confidential).pdf | | | | | Attachment to GWB_007096. Documents to be produced, and which were ultimately produced in the DJA as State Farm_000139-000161. Documents were withheld prior to the entry of the Confidentiality Order in this case, but have now been produced at GWB_003216-003238 | Work Product |
| GWB_007122 | Re_ Lamb docs (10707967.1).msg | Amanda Houser <ahouser@gwblawfirm.com > | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 12/10/2021 | 11:19:33 AM | Emails between attorney Jennifer Johnsen and legal assistant Amanda Houser regarding production of documents and marking confidential | Work Product |
| GWB_007123 | RE_ Lamb docs (10707975.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Amanda Houser <ahouser@gwblawfirm.com> | 12/10/2021 | 11:20:22 AM | Emails between attorney Jennifer Johnsen and legal assistant Amanda Houser regarding production of documents and marking confidential | Work Product |
| GWB_007125 | RE_ Lamb Motions (10830629.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Robbie Whelan <robbie@whelanmellen.com> | 1/21/2022 | 12:28:26 PM | Emails between Robbie Whelan and Jennifer Johnsen (attorneys retained by SFMAIC in the DJA litigation) regarding drafts of Motion to Dismiss and Motion to Stay | Work Product |
| GWB_007126 | RE_ Marvin Lamb, III (10639721.1).msg | rwyndham@gedneyhowe.com <rwyndham@gedneyhowe.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 11/8/2021 | 11:57:41 AM | Emails between Jennifer Johnsen and Robert Wyndham (attorney for Lamb III) regarding location of Lamb III for purposes of serving him with DJA | Attorney-Client Privilege; Common Interest |
| GWB_007127 | RE_ mediation being postponed to a later date (11100571.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Robbie Whelan <robbie@whelanmellen.com> | 3/28/2022 | 11:43:11 AM | Emails between Robbie Whelan and Jennifer Johnsen (attorneys retained by SFMAIC in the DJA litigation) regarding postponed mediation | Work Product |
| GWB_007128 | RE_ Melvin Lamb - Cl. No. 4021B249D (10557080.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Lee Shivers <lee.shivers.d8yf@statefarm.com> | 10/29/2021 | 11:37:54 AM | Emails between Lee Shivers (SFMAIC) and Jennifer Johnsen (GWB), with questions posed by Jennifer Johnsen about the Tahoe Policy and Driver Exclusion and SFMAIC's responses for the purposes of the DJA litigation | Attorney-Client Privilege |
| GWB_007129 | RE_ Melvin Lamb - Cl. No. 4021B249D (10565251.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Lee Shivers <lee.shivers.d8yf@statefarm.com> | 11/1/2021 | 2:43:17 PM | Emails between Lee Shivers (SFMAIC) and Jennifer Johnsen (GWB), with questions posed by Jennifer Johnsen about the Tahoe Policy and Driver Exclusion and SFMAIC's responses for the purposes of the DJA litigation | Attorney-Client Privilege |
| GWB_007131 | RE_ Melvin Lamb - Cl. No. 4021B249D (10592925.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Lee Shivers <lee.shivers.d8yf@statefarm.com> | 11/1/2021 | 1:05:50 PM | Emails between Lee Shivers (SFMAIC) and Jennifer Johnsen (GWB), with questions posed by Jennifer Johnsen about the Tahoe Policy and Driver Exclusion and SFMAIC's responses for the purposes of the DJA litigation | Attorney-Client Privilege |
| GWB_007133 | RE_ Melvin Lamb (10522286.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Amanda Houser <ahouser@gwblawfirm.com> | 10/21/2021 | 11:28:29 AM | Emails between attorney Jennifer Johnsen and legal assistant Amanda Houser regarding documents produced by attorney Bill Young in response to subpoena | Work Product |
| GWB_007134 | RE_ Melvin Lamb (10523359.1).msg | Amanda Houser <ahouser@gwblawfirm.com > | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 10/21/2021 | 12:37:58 PM | Emails between attorney Jennifer Johnsen and legal assistant Amanda Houser regarding documents produced by attorney Bill Young in response to subpoena | Work Product |
| GWB_007135 | RE_ Melvin Lamb (10701249.1).msg | Natalie Ecker <eckern@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | 12/8/2021 | 2:49:45 PM | Emails between attorney Natalie Ecker and legal assistant Amanda Houser regarding draft of confidentiality order and attaching same | Work Product |
| GWB_007136 | Confidentiality_Order_Draft Motion Order Cert and Acknowledgement.doc | | | | | Attachment to GWB_007135. Working draft of confidentiality order | Work Product |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_007150 | RE_ Melvin Lamb III - No Executed Acceptance of Service (10448592.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com>; Amanda Houser <ahouser@gwblawfirm.com> | 10/5/2021 | 9:23:59 AM | Emails between GWB legal assistants regarding whether there is any acceptance of service for Lamb III | Work Product |
| GWB_007151 | RE_ Melvin Lamb III - No Executed Acceptance of Service (10448662.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com>; Amanda Houser <ahouser@gwblawfirm.com> | 10/5/2021 | 9:31:24 AM | Emails between GWB legal assistants regarding whether there is any acceptance of service for Lamb III | Work Product |
| GWB_007153 | RE_ Melvin Lamb III - No Executed Acceptance of Service (10448735.1).msg | Luchana Smith <lsmith@gwblawfirm.com>; Nekayla McKinney <nMcKinney@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | 10/5/2021 | 9:39:50 AM | Emails between GWB legal assistants regarding whether there is any acceptance of service for Lamb III | Work Product |
| GWB_007155 | RE_ Melvin Lamb III - No Executed Acceptance of Service (10448810.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 10/5/2021 | 9:48:05 AM | Emails between GWB legal assistants regarding whether there is any acceptance of service for Lamb III | Work Product |
| GWB_007157 | RE_ Melvin Lamb, III (10451977.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | 10/5/2021 | 4:27:23 PM | Emails between attorney Jennifer Johnsen and GWB legal assistant and paralegal regarding status of service on Lamb III | Work Product |
| GWB_007158 | Re_ Melvin O. Lamb III, Mount Pleasant SC (10670972.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | We Serve Law LLC <info@weservelaw.com> | | 11/30/2021 | 1:11:47 PM | Email from process server attaching proof of service in DJA litigation | Work Product |
| GWB_007177 | WeServeNJ - Melvin Lamb, III - sub serve 1176 Pleasant Pines-20211129110354.pdf | | | | | | Attachment to GWB_007158. Proof of service from process server. Document was filed in the DJA action and is publicly available | Work Product |
| GWB_007178 | RE_ Melvin O. Lamb III, Mount Pleasant SC (10680530.1).msg | We Serve Law LLC <info@weservelaw.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 12/2/2021 | 1:02:33 PM | Emails between GWB legal assistant Amanda Houser and process server regarding status of obtaining affidavits of non-service for failed attempts to serve in the DJA litigation | Work Product |
| GWB_007192 | Re_ Melvin O. Lamb III, Mount Pleasant SC (10680550.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | We Serve Law LLC <info@weservelaw.com> | | 12/2/2021 | 1:06:36 PM | Emails between GWB legal assistant Amanda Houser and process server regarding status of obtaining affidavits of non-service for failed attempts to serve in the DJA litigation | Work Product |
| GWB_007212 | RE_ Melvin O. Lamb III, Mount Pleasant SC (10680645.1).msg | We Serve Law LLC <info@weservelaw.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 12/2/2021 | 1:26:07 PM | Emails between GWB legal assistant Amanda Houser and process server regarding status of obtaining affidavits of non-service for failed attempts to serve in the DJA litigation | Work Product |
| GWB_007226 | RE_ Melvin O. Lamb III, Mount Pleasant SC (10680668.1).msg | We Serve Law LLC <info@weservelaw.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 12/2/2021 | 1:30:16 PM | Emails between GWB legal assistant Amanda Houser and process server regarding status of obtaining affidavits of non-service for failed attempts to serve in the DJA litigation | Work Product |
| GWB_007240 | Re_ Melvin O. Lamb III, Mount Pleasant SC (10680678.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | We Serve Law LLC <info@weservelaw.com> | | 12/2/2021 | 1:31:12 PM | Emails between GWB legal assistant Amanda Houser and process server regarding status of obtaining affidavits of non-service for failed attempts to serve in the DJA litigation | Work Product |
| GWB_007261 | RE_ Melvin O. Lamb III, Mount Pleasant SC (10743893.1).msg | We Serve Law LLC <info@weservelaw.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 12/21/2021 | 1:13:22 PM | Emails between GWB legal assistant Amanda Houser and process server regarding status of obtaining affidavits of non-service for failed attempts to serve in the DJA litigation | Work Product |
| GWB_007276 | Re_ Melvin O. Lamb III, Mount Pleasant SC (10743909.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | We Serve Law LLC <info@weservelaw.com> | | 12/21/2021 | 1:15:45 PM | Emails between GWB legal assistant Amanda Houser and process server regarding status of obtaining affidavits of non-service for failed attempts to serve in the DJA litigation | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_007297 | Re_ Melvin O. Lamb III, Mount Pleasant SC (10748214.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | We Serve Law LLC <info@weservelaw.com> | | 12/22/2021 | 12:42:49 PM | Emails between GWB legal assistant Amanda Houser and process server regarding status of obtaining affidavits of non-service for failed attempts to serve in the DJA litigation and attaching affidavits | Work Product |
| GWB_007316 | We Serve NJ - Melvin O Lamb, III-20211222114749.pdf | | | | | | Attachment to GWB_007297. Affidavit of attempted service on Lamb III. Document was filed in the DJA litigation and is publicly available | Work Product |
| GWB_007320 | RE_ Melvin O. Lamb Jr. Cl. No. 4021B249D (10673614.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | | 11/18/2021 | 10:52:26 AM | Emails between Jennifer Johnsen (GWB) and Darren Murdoch (SFMAIC) regarding approval to conduct research. Email reveals counsel's mental impressions and strategies | Attorney-Client Privilege |
| GWB_007321 | RE_ Melvin O. Lamb Jr. Cl. No. 4021B249D (10949015.1).msg | Natalie Ecker <eckern@gwblawfirm.com> | Melanie Smith <msmith@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 2/16/2022 | 3:39:42 PM | Forwarding approval of research by SFMAIC to GWB collections | Work Product |
| GWB_007323 | Re_ Melvin O. Lamb, III - Letter from State Farm (10859760.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Robert Wyndham <Robert@wyndhamlaw.com> | | 1/28/2022 | 10:05:45 AM | Emails between Jennifer Johnsen (GWB) and Robert Wyndham (attorney for Lamb III) regarding letter from SFMAIC to Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_007324 | RE_ Melvin O. Lamb, III - Letter from State Farm (10859787.1).msg | Robert Wyndham <Robert@wyndhamlaw.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/28/2022 | 10:09:12 AM | Emails between Jennifer Johnsen (GWB) and Robert Wyndham (attorney for Lamb III) regarding letter from SFMAIC to Lamb III attaching same | Attorney-Client Privilege; Common Interest |
| GWB_007326 | Letter to Melvin O Lamb III ( New address for Robert Wyndham).pdf | | | | | | Attachment to GWB_007324. Letter from SFMAIC to Lamb III, c/o Lamb III's attorney Robert Wyndham. Confidential communication for purposes of DJA litigation | Attorney-Client Privilege; Common Interest |
| GWB_007327 | RE_ Melvin O. Lamb, III - Letter from State Farm (10872426.1).msg | Robert Wyndham <Robert@wyndhamlaw.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/28/2022 | 10:07:23 AM | Emails between Jennifer Johnsen (GWB) and Robert Wyndham (attorney for Lamb III) regarding letter from SFMAIC to Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_007329 | RE_ Melvin O. Lamb, III - Letter from State Farm (10872608.1).msg | Robert Wyndham <Robert@wyndhamlaw.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/31/2022 | 5:55:34 PM | Emails between Jennifer Johnsen (GWB) and Robert Wyndham (attorney for Lamb III) regarding letter from SFMAIC to Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_007331 | Re_ Melvin O. Lamb, III - Letter from State Farm (11191782.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Robert Wyndham <Robert@wyndhamlaw.com> | | 4/18/2022 | 12:21:21 PM | Emails between Jennifer Johnsen (GWB) and Robert Wyndham (attorney for Lamb III) regarding letter from SFMAIC to Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_007333 | RE_ Melvin O. Lamb, Jr. Cl. No. 4021B249DState Farm Tyger River Demand (10763101.1).msg | Lee Shivers <lee.shivers.d8yf@statefarm.com>; Tyran Turner <tyran.turner.e123@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 12/1/2021 | 9:53:54 PM | Emails between Jennifer Johnsen (GWB), Lee Shivers (SFMAIC) and Tyran Turner (SFMAIC) regarding demand for policy limits by the Estate. Email contains the mental impressions, opinions and strategies of counsel | Attorney-Client Privilege |
| GWB_007335 | RE_ Melvin O. Lamb, Jr. Cl. No. 4021B249DState Farm Tyger River Demand (10763107.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Tyran Turner <tyran.turner.e123@statefarm.com> | Lee Shivers <lee.shivers.d8yf@statefarm.com>; Tyran Turner <tyran.turner.e123@statefarm.com> | 12/1/2021 | 8:44:55 AM | Emails between Jennifer Johnsen (GWB), Lee Shivers (SFMAIC) and Tyran Turner (SFMAIC) regarding demand for policy limits by the Estate. Email contains the mental impressions, opinions and strategies of counsel | Attorney-Client Privilege |
| GWB_007337 | RE_ Melvin O. Lamb, Jr. DJ Action -Claim No_ 40-21B2-49D (10597476.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | | 11/9/2021 | 3:24:07 PM | Emails between Jennifer Johnsen (GWB) and Darren Murdoch (SFMAIC) regarding Johnsen's discussions with Shay Anderson regarding documents gathered for litigation purposes and the upcoming 30(b)(6) deposition and requesting time for a call to discuss | Attorney-Client Privilege |
| GWB_007338 | RE_ New Address for Robert Wyndham (10859303.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 1/28/2022 | 9:32:30 AM | Emails between Jennifer Johnsen and Amanda Houser (legal assistant) regarding address for attorney for Lamb III | Attorney-Client Privilege; Common Interest |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_007339 | RE_ New Assignment 4021B249D (10287108.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@st atefarm.com> | Tania McGee <tmcgee@gwblawfir m.com> | Bill Young <byoung@gwblawf irm.com> | | 7/22/2021 | 4:05:19 PM | Email between Tania McGee (GWB legal assistant), Darren Murdoch (SFMAIC) and Bill Young (GWB attorney) regarding SFMAIC's retention of GWB in connection with the accident | Attorney-Client Privilege |
| GWB_007341 | RE_ New Assignment 4021B249D (10306168.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.g r1u@statefarm.com> | | | 7/22/2021 | 4:32:09 PM | Email between Tania McGee (GWB legal assistant), Darren Murdoch (SFMAIC) and Bill Young (GWB attorney) regarding SFMAIC's retention of GWB in connection with the accident | Attorney-Client Privilege |
| GWB_007344 | RE_ New Assignment 4021B249D (10306172.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | Paula Forbes <pforbes@gwblawfir m.com> | | | 7/22/2021 | 3:12:18 PM | Internal GWB emails running conflicts check for new SFMAIC matter | Work Product |
| GWB_007347 | RE_ New Assignment 4021B249D (10306175.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@st atefarm.com> | Tania McGee <tmcgee@gwblawfir m.com> | | | 7/22/2021 | 2:52:04 PM | Email between Tania McGee (GWB legal assistant), Darren Murdoch (SFMAIC) regarding SFMAIC's retention of GWB in connection with the accident and requesting documents. Includes forwarded email from David Cleveland, attorney previously retained by SFMAIC to represent Lamb Jr. and Lamb III, re actions taken during attorney Cleveland's representation | Attorney-Client Privilege |
| GWB_007349 | RE_ New Serve - lsmith@gwblawfirm.com (10336075.1).msg | We Serve Law LLC <info@weservelaw.com> | Luchana Smith <lsmith@gwblawfirm. com> | | | 8/30/2021 | 1:50:51 PM | Emails between Luchana Smith (GWB paralegal) and process server regarding serving defendants in DJA litigation | Work Product |
| GWB_007352 | Re_ New Serve - lsmith@gwblawfirm.com (10336669.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | We Serve Law LLC <info@weservelaw.c om> | | | 8/30/2021 | 3:01:57 PM | Emails between Luchana Smith (GWB paralegal) and process server regarding serving defendants in DJA litigation | Work Product |
| GWB_007356 | RE_ New Serve - lsmith@gwblawfirm.com (10341167.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | We Serve Law LLC <info@weservelaw.c om> | | | 8/30/2021 | 5:54:44 PM | Emails between Luchana Smith (GWB paralegal) and process server regarding serving defendants in DJA litigation | Work Product |
| GWB_007360 | RE_ New Serve - lsmith@gwblawfirm.com (10341184.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | We Serve Law LLC <info@weservelaw.c om> | | | 8/31/2021 | 11:26:54 AM | Emails between Luchana Smith (GWB paralegal) and process server regarding serving defendants in DJA litigation | Work Product |
| GWB_007365 | RE_ New Serve - lsmith@gwblawfirm.com (10375583.1).msg | We Serve Law LLC <info@weservelaw.com> | Luchana Smith <lsmith@gwblawfirm. com> | | | 9/13/2021 | 10:40:43 AM | Emails between Luchana Smith (GWB paralegal) and process server regarding serving defendants in DJA litigation | Work Product |
| GWB_007369 | RE_ New Serve - lsmith@gwblawfirm.com (10511515.1).msg | Amanda Houser <ahouser@gwblawfirm.com > | Jennifer Johnsen <jjohnsen@gwblawf m.com> | | | 10/19/2021 | 12:50:10 PM | Emails between Jennifer Johnsen (GWB attorney) and Amanda Houser (GWB legal assistant) regarding payment of process server in DJA litigation | Work Product |
| GWB_007375 | RE_ New Serve - lsmith@gwblawfirm.com (10511535.1).msg | We Serve Law LLC <info@weservelaw.com> | Amanda Houser <ahouser@gwblawfir m.com> | | | 10/19/2021 | 12:53:51 PM | Emails between Amanda Houser (GWB legal assistant) and process server in DJA litigation regarding processing invoice | Work Product |
| GWB_007381 | Re_ New Serve - lsmith@gwblawfirm.com (10511550.1).msg | Amanda Houser <ahouser@gwblawfirm.com > | We Serve Law LLC <info@weservelaw.c om> | | | 10/19/2021 | 12:55:51 PM | Emails between Amanda Houser (GWB legal assistant) and process server in DJA litigation regarding processing invoice and attaching W-9 | Work Product |
| GWB_007389 | We Serve 2020 - W9.pdf | | | | | | | Attachment to GWB_007381. Process server's W-9 | Work Product |
| GWB_007395 | RE_ New Serve - lsmith@gwblawfirm.com (10513077.1).msg | We Serve Law LLC <info@weservelaw.com> | Amanda Houser <ahouser@gwblawfir m.com> | | | 10/19/2021 | 4:11:32 PM | Emails between Amanda Houser (GWB legal assistant) and process server in DJA litigation regarding processing invoice and attaching invoice and check from GWB | Work Product |
| GWB_007402 | We Serve Law Inv 363418 - Skip Trace for Melvin O. Lamb III $55.00.pdf | | | | | | | Attachment to GWB_007395. Invoice for skip trace for Lamb III and GWB check for same | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_007405 | RE_ New Serve - lsmith@gwblawfirm.com (10513169.1).msg | We Serve Law LLC <info@weservelaw.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/19/2021 | 4:20:25 PM | Emails between Amanda Houser (GWB legal assistant) and process server regarding attempts to locate Lamb III to serve him with the DJA Complaint | Work Product |
| GWB_007411 | Re_ New Serve - lsmith@gwblawfirm.com (10513208.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | We Serve Law LLC <info@weservelaw.com> | | 10/19/2021 | 4:23:01 PM | Emails between Amanda Houser (GWB legal assistant) and process server regarding attempts to locate Lamb III to serve him with the DJA Complaint and attaching location report | Work Product |
| GWB_007420 | MELVIN OTTO LAMB III-People-Search-202110191622.pdf | | | | | | Attachment to GWB_007411. Location report on Lamb III | Work Product |
| GWB_007422 | Re_ New Serve - lsmith@gwblawfirm.com (10513435.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/19/2021 | 4:58:59 PM | Emails between Jennifer Johnsen (GWB attorney) and Amanda Houser (GWB legal assistant) regarding address for Lamb III and attempts to serve him with DJA Complaint | Work Product |
| GWB_007429 | We Serve Law Inv 363469 - Service to Melvin Lamb III $155.00.pdf | | | | | | Process server invoice and GWB check for service of process fee for Lamb III | Work Product |
| GWB_007432 | We Serve Law Inv 363671 Service on Lamb III at Work Tree Service $155.00.pdf | | | | | | Process server invoice and GWB check for service of process fee for Lamb III | Work Product |
| GWB_007434 | We Serve Law Inv 364416 Service of Summons, Complaint and 26.01 IROGs on Melvin Lamb III $220.00.pdf | | | | | | Process server invoice and GWB check for service of process fee for Lamb III | Work Product |
| GWB_007437 | RE_ New Serve - Melvin Lamb III (10531855.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/25/2021 | 9:27:13 AM | Emails between Jennifer Johnsen (GWB attorney) and Amanda Houser (GWB legal assistant) regarding process server unable to serve Lamb III | Work Product |
| GWB_007445 | RE_ New Serve - Melvin Lamb III (10531925.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/25/2021 | 9:33:54 AM | Emails between Jennifer Johnsen (GWB attorney) and Amanda Houser (GWB legal assistant) regarding process server unable to serve Lamb III and contact information for Robert Wyndham, Lamb III's attorney | Work Product |
| GWB_007453 | RE_ Question (10289707.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/16/2021 | 10:09:24 AM | Emails between Darren Murdoch (SFMAIC) and Bill Young (GWB). Murdoch seeking and receiving advice from attorney Young regarding anticipated litigation | Attorney-Client Privilege |
| GWB_007454 | RE_ Recommendation for Melvin Lamb 4021b249D (10247566.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/2/2021 | 2:37:07 PM | Emails between Darren Murdoch (SFMAIC) and Bill Young (GWB) regarding attorney Young's recommendations and strategies for anticipated litigation. Reveals the mental impressions, opinions and strategies of counsel. | Attorney-Client Privilege |
| GWB_007455 | RE_ Recommendation for Melvin Lamb 4021b249D (10258945.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/6/2021 | 12:03:53 PM | Emails between Darren Murdoch (SFMAIC) and Bill Young (GWB) regarding attorney Young's recommendations and strategies for anticipated litigation. Reveals the mental impressions, opinions and strategies of counsel. | Attorney-Client Privilege |
| GWB_007456 | RE_ Recommendation for Melvin Lamb 4021b249D (10264882.1).msg | Bill Young <byoung@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | | 8/9/2021 | 9:29:19 AM | Emails between Darren Murdoch (SFMAIC) and Bill Young (GWB) regarding attorney Young's recommendations and strategies for anticipated litigation. Reveals the mental impressions, opinions and strategies of counsel. | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_007457 | Re_ Responses to third set of discovery (with revisions) (10865300.1).msg | Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/22/2022 | 10:10:10 AM | Emails between Jennifer Johnsen and Robbie Whelan, attorneys representing SFMAIC in the DJA litigation, regarding responses to third set of discovery | Work Product |
| GWB_007458 | RE_ September 21, 2021 letter from Bill Young to Sean Wilson (10592860.1).msg | Warren Moise <warren.moise@gmail.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 11/5/2021 | 1:00:12 PM | Emails between Jennifer Johnsen (GWB attorney for SFMAIC) and Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) regarding letter sent from Bill Young (attorney) Sean Wilson (attorney for Chrystal Brown) in response to policy limits demand | Attorney-Client Privilege; Common Interest |
| GWB_007459 | Response to Wilson Demand.PDF | | | | | | Attachment to GWB_007458. While the attachment is withheld with the email, the same letter has been produced in this case at GWB_000085 | Work Product |
| GWB_007462 | RE_ Service of Melvin Lamb III (10459241.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/6/2021 | 3:11:50 PM | Emails between Luchana Smith (GWB paralegal) and Jennifer Johnsen regarding address for Lamb III and attempts to serve him in the DJA litigation | Work Product |
| GWB_007465 | RE_ Service of Melvin Lamb III (10459241.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 10/6/2021 | 3:13:55 PM | Emails between Luchana Smith (GWB paralegal) and Jennifer Johnsen regarding address for Lamb III and attempts to serve him in the DJA litigation | Work Product |
| GWB_007468 | RE_ SF Objections and Responses to Workman_s Third Discovery Requests (10865292.1).msg | Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Charles Norris <charles@whelanmellen.com> | 1/20/2022 | 12:55:58 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) regarding revisions to SFMAIC's responses to Estate of Workman's Third Discovery Requests | Work Product |
| GWB_007469 | RE_ SF Responses to 26.03 interrogatories.DOCX (10539146.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/25/2021 | 5:31:36 PM | Email from Amanda Houser (GWB legal assistant) to Jennifer Johnsen (GWB attorney), attaching a link to a draft of SFMAIC's responses to 26.03 interrogatories | Work Product |
| GWB_007470 | SF Responses to 26.03 interrogatories.nrl | | | | | | Attachment to GWB_007469. Link to draft, no document attached | Work Product |
| GWB_007471 | RE_ SFMAIC v. Lamb et al.. 2021-21144  ATTORNEY-CLIENT PRIVILEGED COMMUNICATION (10856108.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Monique James <monique.james.gtgq@statefarm.com> | | 1/27/2022 | 2:00:45 PM | Emails between Jennifer Johnsen (GWB) and Monique James (SFMAIC). Confidential communication for purposes of DJA litigation | Attorney-Client Privilege |
| GWB_007472 | RE_ SFMAIC v. Lamb et al.. 2021-21144  ATTORNEY-CLIENT PRIVILEGED COMMUNICATION (10856110.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Monique James <monique.james.gtgq@statefarm.com> | | 1/27/2022 | 2:11:07 PM | Emails between Jennifer Johnsen (GWB) and Monique James (SFMAIC). Confidential communication for purposes of DJA litigation | Attorney-Client Privilege |
| GWB_007474 | Re_ SFMAIC v. Lamb, III, Melvin O., et al.  - New Subpoena Discovery Referral - Claim No_ 40-21B2-49D (2021-21144-SC) (10592885.1).msg | Shay Anderson <shay.anderson.grfs@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 11/5/2021 | 9:30:28 PM | Emails between Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) setting up time to discuss upcoming 30(b)(6) deposition of SFMAIC | Attorney-Client Privilege |
| GWB_007477 | image001.jpg | | | | | | Attachment to GWB_007474 | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_007478 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - New Subpoena Discovery Referral - Claim No_ 40-21B2-49D (2021-21144-SC) (10592909.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Brittany Perez <brittany.perez.vabto8@statefarm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com>; HOME LAW-BOYLE <home.law-boyle.386l00@statefarm.com>; Brian Boyle <brian.boyle.g6lg@statefarm.com>; Denny O'Donald <denny.odonald.cjpk@statefarm.com>; Teresa Hobson <teresa.hobson.gmnk@statefarm.com> | 11/3/2021 | 1:11:19 PM | Emails between Jennifer Johnsen (GWB) and SFMAIC regarding 30(b)(6) deposition of SFMAIC and attaching various documents | Attorney-Client Privilege |
| GWB_007480 | SFMAIC v. Lamb, III, Melvin O., et al. - Declaratory Judgment Complaint with Exhibit - Claim No_ 40-21B2-49D (2021-21144-SC).PDF | | | | | | Attachment to GWB_007478. While attachment is withheld with the email, the document has been produced elsewhere at GWB_000448 | Attorney-Client Privilege |
| GWB_007547 | SFMAIC v. Lamb, III, Melvin O., et al. - IMDC Referral - Claim No_ 40-21B2-49D (2021-21144-SC).PDF | | | | | | Attachment to GWB_0007478. Non-substantive document. Computer generated message indicating that a pdf is loading | Attorney-Client Privilege |
| GWB_007548 | SFMAIC v. Lamb, III, Melvin O., et al. - Lamb Depo Notice (002) Claim No_ 40-21B2-49D (2021-21144-SC).PDF | | | | | | Attachment to GWB_007478. While attachment is withheld with the email, the document has been produced elsewhere at GWB_001239 | Attorney-Client Privilege |
| GWB_007552 | RE_ SFMAIC v. Lamb, III, Melvin O., et al.  - New Subpoena Discovery Referral - Claim No_ 40-21B2-49D (2021-21144-SC) (10639706.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | | 11/8/2021 | 7:45:25 AM | Emails between Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) setting up time to discuss upcoming 30(b)(6) deposition of SFMAIC | Attorney-Client Privilege |
| GWB_007555 | RE_ SFMAIC v. Lamb, III, Melvin O., et al.  - New Subpoena Discovery Referral - Claim No_ 40-21B2-49D (2021-21144-SC) (10639707.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | | 11/8/2021 | 8:52:50 AM | Emails between Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) setting up time to discuss upcoming 30(b)(6) deposition of SFMAIC | Attorney-Client Privilege |
| GWB_007558 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10842752.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | | 1/25/2022 | 4:07:48 PM | Email from Jennifer Johnsen (GWB) to Robbie Whelan (attorney for SFMAIC) regarding strategy moving forward in DJA litigation. Attorney work product containing mental impressions, opinions, and strategies of counsel | Work Product |
| GWB_007559 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10843471.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; Monique James <monique.james.gtgq@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Charles Norris <charles@whelanmellen.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com> | 1/25/2022 | 6:27:44 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| GWB_007562 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10843472.1).msg | Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Guy Conti (Work) <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com>; Guy Conti (Other) <home.law-conti.662h00@statefarm.com> | 1/25/2022 | 6:23:36 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence between SFMAIC and its insured and attaching draft of correspondence | Attorney-Client Privilege; Work Product |
|---|---|---|---|---|---|---|---|---|
| GWB_007564 | Letter to Melvin O. Lamb. III (withdrawing ROR, etc.).DOCX | | | | | | Attachment to GWB_007562. Draft of letter to Lamb III, attorney work product | Attorney-Client Privilege; Work Product |
| GWB_007566 | Letter to Melvin O. Lamb, Jr. (withdrawing ROR, etc.).DOCX | | | | | | Attachment to GWB_007562. Draft of letter to Lamb Jr, attorney work product | Attorney-Client Privilege; Work Product |
| GWB_007568 | Workman Insurance Card.pdf | | | | | | Attachment to GWB_007562. Photo of Lamb Jr. insurance card | Attorney-Client Privilege; Work Product |
| GWB_007569 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10856030.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Robbie Whelan <robbie@whelanmellen.com> | Guy Conti (Work) <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com>; Guy Conti (Other) <home.law-conti.662h00@statefarm.com> | 1/25/2022 | 4:22:25 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege; Work Product |
| GWB_007570 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10856034.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Charles Norris <charles@whelanmellen.com> | Guy Conti (Work) <guy.conti.f58t@statefarm.com>; Monique James <monique.james.gtgq@statefarm.com>; Guy Conti (Other) <home.law-conti.662h00@statefarm.com> | 1/25/2022 | 4:37:56 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_007572 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10856047.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Monique James <monique.james.gt> | 1/25/2022 | 5:18:03 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege; Work Product |
| GWB_007574 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10856055.1).msg | Monique James <monique.james.gtgq@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | Charles Norris <charles@whelanmellen.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com> | 1/25/2022 | 6:06:28 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege |
| GWB_007576 | Re_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10856067.1).msg | Guy Conti <guy.conti.f58t@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | Monique James <monique.james.gtgq@statefarm.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com> | 1/25/2022 | 6:11:10 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege; Work Product |
| GWB_007578 | image001.png | | | | | | Attachment to GWB_007576. Non-substantive, image of logo | Attorney-Client Privilege |
| GWB_007579 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10856074.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Robbie Whelan <robbie@whelanmellen.com> | Guy Conti (Work) <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com>; Guy Conti (Other) <home.law-conti.662h00@statefarm.com> | 1/25/2022 | 9:18:39 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_007581 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10856080.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Robbie Whelan <robbie@whelanmellen.com> | Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com> | 1/26/2022 | 11:21:59 AM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege; Work Product |
| GWB_007584 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10856081.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Robbie Whelan <robbie@whelanmellen.com> | Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com> | 1/26/2022 | 1:05:15 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege; Work Product |
| GWB_007588 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10856082.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Monique James <monique.james.gtgq@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | Charles Norris <charles@whelanmellen.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com> | 1/26/2022 | 2:07:44 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege; Work Product |
| GWB_007592 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10856083.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | Charles Norris <charles@whelanmellen.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com> | 1/26/2022 | 2:11:09 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege; Work Product |
| GWB_007597 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10856085.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Monique James <monique.james.gtgq@statefarm.com> | | 1/26/2022 | 2:34:54 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege; Work Product |
| GWB_007601 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10856091.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Monique James <monique.james.gtgq@statefarm.com> | | 1/27/2022 | 10:34:43 AM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege; Work Product |
| GWB_007606 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10856093.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Monique James <monique.james.gtgq@statefarm.com> | | 1/27/2022 | 10:39:56 AM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_007611 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10856094.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Monique James <monique.james.gtgq@statefarm.com> | | 1/27/2022 | 10:49:11 AM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege; Work Product |
| GWB_007616 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10856097.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Tyran Turner <tyran.turner.e123@statefarm.com> | | 1/27/2022 | 11:42:09 AM | Emails between Jennifer Johnsen (GWB) and Tyran Turner (SFMAIC). Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III. Attaching letters. | Attorney-Client Privilege; Work Product |
| GWB_007617 | Letter to Melvin O Lamb III (Withdrawing ROR etc).pdf | | | | | | Attachment to GWB_007616. Letter from SFMAIC to Lamb III c/o attorney Robert Wyndham | Attorney-Client Privilege; Work Product; Common Interest |
| GWB_007618 | Letter to Melvin O Lamb Jr (withdrawing ROR etc).pdf | | | | | | Attachment to GWB_007616. Letter from SFMAIC to Lamb Jr c/o Mark Mason | Attorney-Client Privilege; Work Product; Common Interest |
| GWB_007620 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10859685.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Tyran Turner <tyran.turner.e123@statefarm.com> | Monique James <monique.james.gtgq@statefarm.com> | 1/28/2022 | 10:00:55 AM | Emails between Jennifer Johnsen (GWB) and Tyran Turner (SFMAIC). Privileged communications regarding correspondence from SFMAIC to Lamb III. Attaching letter. | Attorney-Client Privilege; Work Product |
| GWB_007622 | Letter to Melvin O Lamb III ( New address for Robert Wyndham).pdf | | | | | | Attachment to GWB_007622. Letter from SFMAIC to Lamb III c/o attorney Robert Wyndham | Attorney-Client Privilege; Work Product; Common Interest |
| GWB_007623 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10865274.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com>; Guy Conti <guy.conti.f58t@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com>; Charles Norris <charles@whelanmellen.com>; Mark Tilkin <mark.tilkin.gzj7@statefarm.com> | 1/19/2022 | 12:03:58 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys retained by SFMAIC for the DJA litigation) and SFMAIC regarding strategy for next steps in the DJA litigation and potential dismissal. Contains mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_007625 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10865280.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com> | Monique James <monique.james.gtgq@statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com>; Charles Norris <charles@whelanmellen.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Mark Tilkin <mark.tilkin.gzj7@statefarm.com> | 1/19/2022 | 12:00:17 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys retained by SFMAIC for the DJA litigation) and SFMAIC regarding strategy for next steps in the DJA litigation and potential dismissal. Contains mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_007627 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10865281.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfirm com>; Robbie Whelan <robbie@whelanmellen.com >; Monique James <monique.james.gtgq@state farm.com> | Guy Conti <guy.conti.f58t@stat efarm.com> | HOME LAW-CONTI <home.law-conti.662h00@stat efarm.com>; Nicole Granger <nicole.granger.qu 4l@statefarm.com >; Charles Norris <charles@whelan mellen.com>; Mark Tilkin <mark.tilkin.gzj7@ statefarm.com> | 1/19/2022 | 12:37:28 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys retained by SFMAIC for the DJA litigation) and SFMAIC regarding strategy for next steps in the DJA litigation and potential dismissal. Contains mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_007629 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10865284.1).msg | Monique James <monique.james.gtgq@state farm.com>; Guy Conti <guy.conti.f58t@statefarm.c om> | Robbie Whelan <robbie@whelanmell en.com> | HOME LAW-CONTI <home.law-conti.662h00@stat efarm.com>; Nicole Granger <nicole.granger.qu 4l@statefarm.com >; Charles Norris <charles@whelan mellen.com>; Jennifer Johnsen <Jjohnsen@gwbla wfirm.com>; Mark Tilkin <mark.tilkin.gzj7@ statefarm.com> | 1/19/2022 | 11:54:34 AM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys retained by SFMAIC for the DJA litigation) and SFMAIC regarding strategy for next steps in the DJA litigation and potential dismissal. Contains mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_007631 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10869353.1).msg | Guy Conti <guy.conti.f58t@statefarm.c om> | Monique James <monique.james.gtgq @statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@stat efarm.com>; Nicole Granger <nicole.granger.qu 4l@statefarm.com >; Mark Tilkin <mark.tilkin.gzj7@ statefarm.com>; Robbie Whelan <robbie@whelanm ellen.com>; Jennifer Johnsen <Jjohnsen@gwbla wfirm.com>; Chris Menke <chris.menke.a9m g@statefarm.com >; Monique James <monique.james.gt gq@statefarm.com > | 1/25/2022 | 3:23:21 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan (attorney retained by SFMAIC for the DJA litigation) and SFMAIC regarding draft responses to Estate's Requests to Admit and Second Discovery Requests and next steps in the DJA litigation | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_007632 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10872271.1).msg | Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Guy Conti (Work) <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> ; Guy Conti (Other) <home.law-conti.662h00@statefarm.com> | 1/26/2022 | 9:42:02 AM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege; Work Product |
| GWB_007635 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10872274.1).msg | Monique James <monique.james.gtgq@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Guy Conti <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com> | 1/26/2022 | 11:53:22 AM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same | Attorney-Client Privilege; Work Product |
| GWB_007638 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10872276.1).msg | Monique James <monique.james.gtgq@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Guy Conti <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com> | 1/26/2022 | 2:39:22 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same. Attaching drafts | Attorney-Client Privilege; Work Product |
| GWB_007642 | Letter to Melvin O. Lamb. III (withdrawing ROR, etc.).DOCX | | | | | | Attachment to GWB_007638. Draft of letter from SFMAIC to Lamb III | Attorney-Client Privilege; Work Product |
| GWB_007644 | Letter to Melvin O. Lamb, Jr. (withdrawing ROR, etc.).DOCX | | | | | | Attachment to GWB_007638. Draft of letter from SFMAIC to Lamb III | Attorney-Client Privilege; Work Product |
| GWB_007646 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10872283.1).msg | Monique James <monique.james.gtgq@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 1/26/2022 | 2:42:07 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same. | Attorney-Client Privilege; Work Product |
| GWB_007650 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10872366.1).msg | Monique James <monique.james.gtgq@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Guy Conti <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com> | 1/27/2022 | 9:47:17 AM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same. | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_007655 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10872368.1).msg | Monique James <monique.james.gtgq@state farm.com> | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | | 1/27/2022 | 10:54:40 AM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys for SFMAIC in the DJA litigation) and SFMAIC. Privileged communications regarding correspondence from SFMAIC to Lamb Jr and Lamb III and revisions to same. Attaching drafts | Attorney-Client Privilege; Work Product |
| GWB_007660 | Letter to Melvin O. Lamb. III (withdrawing ROR, etc.).DOCX | | | | | | Attachment to GWB_007655. Draft of letter from SFMAIC to Lamb III c/o attorney Robert Wyndham | Attorney-Client Privilege; Work Product |
| GWB_007662 | Letter to Melvin O. Lamb, Jr. (withdrawing ROR, etc.).DOCX | | | | | | Attachment to GWB_007655. Draft of letter from SFMAIC to Lamb Jr c/o attorney Mark Mason | Attorney-Client Privilege; Work Product |
| GWB_007664 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10872369.1).msg | Monique James <monique.james.gtgq@state farm.com> | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | | 1/27/2022 | 10:55:35 AM | Emails between Jennifer Johnsen (GWB) and Monique James (SFMAIC) re status of letters from SFMAIC to Lamb Jr. and Lamb III | Attorney-Client Privilege |
| GWB_007669 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10872489.1).msg | Tyran Turner <tyran.turner.e123@statefar m.com> | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | Monique James <monique.james.gt gq@statefarm.com > | 1/28/2022 | 9:31:58 AM | Emails between Jennifer Johnsen (GWB), Tyran Turner (SFMAIC) and Monique James (SFMAIC) re revised draft of letter to Lamb III c/o attorney Robert Wyndham | Attorney-Client Privilege; Work Product |
| GWB_007671 | Letter to Melvin O. Lamb. III (new address for Robert Wyndham).DOCX | | | | | | Attachment to GWB_007671. Draft of letter from SFMAIC to Lamb III c/o Robert Wyndham | Attorney-Client Privilege; Work Product |
| GWB_007673 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC (10865277.1).msg | Guy Conti <guy.conti.f58t@statefarm.c om> | Monique James <monique.james.gtgq @statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@stat efarm.com>; Nicole Granger <nicole.granger.qu 4l@statefarm.com >; Charles Norris <charles@whelan mellen.com>; Robbie Whelan <robbie@whelanm ellen.com>; Jennifer Johnsen <Jjohnsen@gwbla wfirm.com>; Mark Tilkin <mark.tilkin.gzj7@ statefarm.com>; Monique James <monique.james.gt gq@statefarm.com > | 1/19/2022 | 9:49:47 AM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys retained by SFMAIC for the DJA litigation) and SFMAIC regarding strategy for next steps in the DJA litigation and potential dismissal. Contains mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_007674 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - 40-21B2-49D (2021-21144 SC) (10843463.1).msg | Guy Conti <guy.conti.f58t@statefarm.c om> | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | HOME LAW-CONTI <home.law-conti.662h00@stat efarm.com>; Nicole Granger <nicole.granger.qu 4l@statefarm.com > | 1/25/2022 | 10:16:20 AM | Emails between Jennifer Johnsen (GWB) and Guy Conti (SFMAIC) re status of DJA litigation | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| GWB_007675 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - Corr from plaintiff's counsel - 40-21B2-49D (2021-21144 SC) (10974129.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Guy Conti (Work) <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Guy Conti (Other) <home.law-conti.662h00@statefarm.com> | 2/22/2022 | 5:56:00 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys retained by SFMAIC for the DJA litigation) and SFMAIC regarding status of DJA litigation and upcoming mediation. Contains mental impressions, opinions and strategies of counsel | Attorney-Client Privilege; Work Product |
|---|---|---|---|---|---|---|---|---|
| GWB_007677 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - Corr from plaintiff's counsel - 40-21B2-49D (2021-21144 SC) (10991065.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Guy Conti (Work) <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Guy Conti (Other) <home.law-conti.662h00@statefarm.com> | 2/24/2022 | 4:44:31 PM | Emails between Jennifer Johnsen (GWB), Robbie Whelan and Charles Norris (attorneys retained by SFMAIC for the DJA litigation) and SFMAIC regarding status of DJA litigation and upcoming mediation. Contains mental impressions, opinions and strategies of counsel | Attorney-Client Privilege; Work Product |
| GWB_007680 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - Deposition notices from Workman's counsel - 40-21B2-49D (2021-21144 SC) (11382330.1).msg | Katie Mellen <katie@whelanmellen.com>; Robbie Whelan <robbie@whelanmellen.com> | Guy Conti <guy.conti.f58t@statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; Jennifer Hunt <jennifer.hunt.vaal6f@statefarm.com> | 5/26/2022 | 12:40:12 PM | Emails between Jennifer Johnsen, Robbie Whelan, Charles Norris and Katie Mellen (attorneys for SFMAIC) and SFMAIC regarding motions in the DJA litigation and strategy for the same. Reveals mental impressions, opinions and strategies of counsel | Attorney-Client Privilege; Work Product |
| GWB_007683 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - Draft Motion to Dismiss and Motion to Stay 40-21B2-49D (2021-21144 SC) (10869313.1).msg | Robbie Whelan <robbie@whelanmellen.com> | Guy Conti <guy.conti.f58t@statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com> | 1/25/2022 | 12:39:52 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) regarding draft Motion to Dismiss and Motion to Stay | Attorney-Client Privilege |
| GWB_007684 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - Draft responses to Requests for Admission, etc. - 40-21B2-49D (2021-21144 SC) (10843469.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Guy Conti (Work) <guy.conti.f58t@statefarm.com>; Chris Menke <chris.menke.a9mg@statefarm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Charles Norris <charles@whelanmellen.com>; HOME LAW-MENKE <home.law-menke.275l00@statefarm.com> | 1/25/2022 | 11:10:00 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding draft responses to Requests for Admission | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_007685 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - Draft responses to Requests for Admission, etc. - 40-21B2-49D (2021-21144 SC) (10865304.1).msg | Chris Menke <chris.menke.a9mg@statefarm.com>; Guy Conti <guy.conti.f58t@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com>; HOME LAW-MENKE <home.law-menke.275l00@statefarm.com> | 1/24/2022 | 8:48:46 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding draft responses to Second Discovery Requests and attaching same | Attorney-Client Privilege; Work Product |
| GWB_007687 | SF Objections_Responses to Workman_s Second Discovery Requests.pdf | | | | | | Attachment to GWB_007685. Draft responses to Estate of Workman's Second Discovery Requests | Attorney-Client Privilege; Work Product |
| GWB_007689 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - Draft responses to Requests for Admission, etc. - 40-21B2-49D (2021-21144 SC) (10865305.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Chris Menke <chris.menke.a9mg@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | HOME LAW-MENKE <home.law-menke.275l00@statefarm.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com> | 1/24/2022 | 10:20:48 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding draft responses to Requests to Admit and Third Discovery Requests and attaching revisions to same | Attorney-Client Privilege; Work Product |
| GWB_007690 | SF REsponses and Objections to RTA and Thirs Set of Discovery (Clean Copy revised 1_22_22).pdf | | | | | | Attachment to GWB_007689. Working draft of Responses to Estate's Request for Admission and Third Discovery Requests | Attorney-Client Privilege; Work Product |
| GWB_007704 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - Draft responses to Requests for Admission, etc. - 40-21B2-49D (2021-21144 SC) (10865306.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; Chris Menke <chris.menke.a9mg@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | HOME LAW-MENKE <home.law-menke.275l00@statefarm.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com> | 1/24/2022 | 10:58:11 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding draft responses to Requests to Admit and Third Discovery Requests and attaching draft | Attorney-Client Privilege; Work Product |
| GWB_007705 | Draft Lamb - SF Responses and Objections to RTA and Third Set of Discovery.docx | | | | | | Attachment to GWB_007704. Draft of responses to Requests to Admit and Third Discovery Requests | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_007719 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - Draft responses to Second Discovery Requests - 40-21B2-49D (2021-21144 SC) (10869335.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Chris Menke <chris.menke.a9mg@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com>; HOME LAW-MENKE <home.law-menke.275l00@statefarm.com> | 1/25/2022 | 9:18:32 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding approval of responses to Second Discovery Requests | Attorney-Client Privilege; Work Product |
| GWB_007721 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - Motion for Protective Order, DUE TOMORROW - 40-21B2-49D (2021-21144 SC) (11501902.1).msg | Katie Mellen <katie@whelanmellen.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | robert.whelan@nelsonmullins.com <robert.whelan@nelsonmullins.com> | 6/2/2022 | 10:33:30 PM | Emails between Jennifer Johnsen, Katie Mellen and Robbie Whelan (all attorneys retained by SFMAIC for the DJA litigation) re draft Motion for Protective Order regarding potential Depositions of Declarants. Thread includes communications between same attorneys and SFMAIC | Work Product; Attorney-Client Privilege |
| GWB_007722 | image001.jpg | | | | | | Attachment to GWB_007721. Logo from email signature. Non-substantive | Work Product |
| GWB_007723 | SFMAIC v. Lamb et al - Motion for Protective Order re Depositions of Declarants.docx | | | | | | Attachment to GWB_007721. Draft of Motion for Protective Order re depositions of declarants | Work Product |
| GWB_007732 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - Plaintiff's Response to MPO - 40-21B2-49D (2021-21144 SC) (11472915.1).msg | Katie Mellen <katie@whelanmellen.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | | 6/24/2022 | 1:31:19 PM | Emails between Jennifer Johnsen and Katie Mellen (attorneys for SFMAIC in the DJA) regarding documents produced by SFMAIC in the DJA and in response to subpoena. Thread includes communications with client SFMAIC | Attorney-Client Privilege; Work Product |
| GWB_007734 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - Supplemental Discovery Requests due 1_14_22 - 2021-21144 (10865211.1).msg | Chris Menke <chris.menke.a9mg@statefarm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | HOME LAW-MENKE <home.law-menke.275l00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 1/11/2022 | 4:34:06 PM | Email from Jennifer Johnsen (GWB) to Chris Menke (SFMAIC) attaching Driver Exclusion form. While attachment has been withheld with the email, the same document has been produced elsewhere. | Attorney-Client Privilege |
| GWB_007736 | 6023DC Driver Exclusion.pdf | | | | | | Attachment to GWB_007734. Driver exclusion. Previously produced in the DJA and multiple times in this case, including at GWB_001575 | Attorney-Client Privilege |
| GWB_007737 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. - Supplemental Discovery Requests due 1_14_22 - 2021-21144 (10865212.1).msg | Chris Menke <chris.menke.a9mg@statefarm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | HOME LAW-MENKE <home.law-menke.275l00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 1/11/2022 | 7:33:24 PM | Emails between Jennifer Johnsen (GWB) and Chris Menke (SFMAIC) regarding the driver exclusion form. Privilege communication including counsel's mental impressions and opinions | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_007739 | RE_ SFMAIC v. Lamb, III, Melvin O., et al. -Conf. Call re_ Motion for Sanctions - 40-21B2-49D (2021-21144 SC) (10975884.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Robbie Whelan <robbie@whelanmellen.com>; Monique James <monique.james@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | Charles Norris <charles@whelanmellen.com> | | 2/15/2022 | 2:14:19 PM | Email between attorneys for SFMAIC and SFMAIC setting up conference call to discuss Motion for Sanctions in DJA | Attorney-Client Privilege |
| GWB_007740 | Re_ SFMAIC v. Lamb, Jr. et al. (10857881.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Mark Mason <mark@masonlawfirm.com> | | 1/27/2022 | 4:52:04 PM | Emails between Mark Mason (attorney for Lamb Jr) and Jennifer Johnsen (GWB) regarding Mason's W-9 and bill | Attorney-Client Privilege; Common Interest |
| GWB_007742 | 1163_001.pdf | | | | | | Attachment to GWB_007740. Mark Mason (attorney for Lamb Jr., SFMAIC's insured) W-9 and bill | Attorney-Client Privilege; Common Interest |
| GWB_007750 | RE_ SFMAIC v.Melvin O. Lamb, Jr. et al. (10858032.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Monique James <monique.james.gtgq@statefarm.com>; Charles Norris <charles@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | | 1/27/2022 | 5:16:08 PM | Emails between Robbie Whelan, Jennifer Johnsen, and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding bill from Lamb Jr.'s attorney | Attorney-Client Privilege |
| GWB_007752 | RE_ SFMAIC v.Melvin O. Lamb, Jr. et al. (10858094.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Robbie Whelan <robbie@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com>; Charles Norris <charles@whelanmellen.com> | Guy Conti <guy.conti.f58t@statefarm.com> | | 1/27/2022 | 5:38:43 PM | Emails between Robbie Whelan, Jennifer Johnsen, and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding bill from Lamb Jr.'s attorney | Attorney-Client Privilege |
| GWB_007755 | RE_ SFMAIC v.Melvin O. Lamb, Jr. et al. (10858102.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Monique James <monique.james.gtgq@statefarm.com>; Charles Norris <charles@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | | 1/27/2022 | 5:42:02 PM | Emails between Robbie Whelan, Jennifer Johnsen, and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding bill from Lamb Jr.'s attorney | Attorney-Client Privilege |
| GWB_007758 | RE_ SFMAIC v.Melvin O. Lamb, Jr. et al. (10858117.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Robbie Whelan <robbie@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com>; Charles Norris <charles@whelanmellen.com> | Guy Conti <guy.conti.f58t@statefarm.com> | | 1/27/2022 | 5:49:03 PM | Emails between Robbie Whelan, Jennifer Johnsen, and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding bill from Lamb Jr.'s attorney | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_007761 | RE_ SFMAIC v.Melvin O. Lamb, Jr. et al. (10859827.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; Jennifer Johnsen <ljohnsen@gwblawfirm.com>; Monique James <monique.james.gtgq@statefarm.com>; Charles Norris <charles@whelanmellen.com> | Robbie Whelan <robbie@whelanmellen.com> | | 1/28/2022 | 10:14:27 AM | Emails between Robbie Whelan, Jennifer Johnsen, and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding bill from Lamb Jr.'s attorney | Attorney-Client Privilege |
| GWB_007765 | RE_ SFMAIC v.Melvin O. Lamb, Jr. et al. (10860173.1).msg | Mark Mason <mark@masonlawfirm.com> | Jennifer Johnsen <ljohnsen@gwblawfirm.com> | | 1/28/2022 | 10:40:12 AM | Emails between Jennifer Johnsen (GWB) and Mark Mason (Lamb Jr.'s attorney) regarding Mason's bill | Attorney-Client Privilege; Common Interest |
| GWB_007767 | RE_ SFMAIC v.Melvin O. Lamb, Jr. et al. (10860293.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com>; Jennifer Johnsen <ljohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com> | Monique James <monique.james.gtgq@statefarm.com> | | 1/28/2022 | 10:42:55 AM | Emails between Robbie Whelan, Jennifer Johnsen, and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding bill from Lamb Jr.'s attorney | Attorney-Client Privilege |
| GWB_007771 | Re_ SFMAIC v.Melvin O. Lamb, Jr. et al. (10860330.1).msg | Jennifer Johnsen <ljohnsen@gwblawfirm.com> | Mark Mason <mark@masonlawfirm.com> | | 1/28/2022 | 10:44:34 AM | Emails between Jennifer Johnsen (GWB) and Mark Mason (Lamb Jr.'s attorney) regarding Mason's bill | Attorney-Client Privilege; Common Interest |
| GWB_007774 | Re_ SFMAIC v.Melvin O. Lamb, Jr. et al. (10860846.1).msg | Jennifer Johnsen <ljohnsen@gwblawfirm.com> | Charles Norris <charles@whelanmellen.com> | Robbie Whelan <robbie@whelanmellen.com> | 1/28/2022 | 11:12:30 AM | Emails between Jennifer Johnsen, Charles Norris, and Robbie Whelan (attorneys for SFMAIC) regarding dismissal of DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_007778 | RE_ SFMAIC v.Melvin O. Lamb, Jr. et al. (10872395.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com>; Monique James <monique.james.gtgq@statefarm.com>; Charles Norris <charles@whelanmellen.com> | Jennifer Johnsen <ljohnsen@gwblawfirm.com> | | 1/28/2022 | 10:18:24 AM | Emails between Robbie Whelan, Jennifer Johnsen, and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding bill from Lamb Jr.'s attorney | Attorney-Client Privilege |
| GWB_007782 | RE_ SFMAIC v.Melvin O. Lamb, Jr. et al. (10872396.1).msg | Monique James <monique.james.gtgq@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com> | Jennifer Johnsen <ljohnsen@gwblawfirm.com> | | 1/28/2022 | 10:47:09 AM | Emails between Robbie Whelan, Jennifer Johnsen, and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding bill from Lamb Jr.'s attorney and attaching invoice | Attorney-Client Privilege |
| GWB_007786 | Mason Invoice.pdf | | | | | | Attachment to GWB_007782. Invoice from Mark Mason (attorney for SFMAIC's insured Lamb Jr) | Attorney-Client Privilege |
| GWB_007793 | W-9 Mark Mason.pdf | | | | | | Attachment to GWB_007782. W-9 from Mark Mason (attorney for SFMAIC's insured Lamb Jr) | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_007794 | RE_ SFMAIC v.Melvin O. Lamb, Jr. et al. (10872397.1).msg | Monique James <monique.james.gtgq@state farm.com>; Robbie Whelan <robbie@whelanmellen.co m>; Guy Conti <guy.conti.f58t@statefarm.c om>; Charles Norris <charles@whelanmellen.co m> | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | | 1/28/2022 | 10:56:07 AM | Emails between Robbie Whelan, Jennifer Johnsen, and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding potential dismissal of DJA litigation | Attorney-Client Privilege |
| GWB_007798 | RE_ SFMAIC v.Melvin O. Lamb, Jr. et al. (10872488.1).msg | Guy Conti <guy.conti.f58t@statefarm.c om>; Robbie Whelan <robbie@whelanmellen.co m>; Monique James <monique.james.gtgq@state farm.com>; Charles Norris <charles@whelanmellen.co m> | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | | 1/27/2022 | 5:50:44 PM | Emails between Robbie Whelan, Jennifer Johnsen, and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding bill from Lamb Jr.'s attorney | Attorney-Client Privilege |
| GWB_007802 | RE_ State Farm DJ re_ Melvin Lamb, Jr. (10787123.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Shay Anderson <shay.anderson.grfs @statefarm.com> | | 1/10/2022 | 2:21:44 PM | Emails between Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) regarding supplemental discovery requests from the Estate of Workman and including Jennifer Johnsen's mental impressions and recommendations in the DJA litigation | Attorney-Client Privilege |
| GWB_007803 | RE_ State Farm Mutual Auto. Ins. Co. v. Melvin O. Lamb III, et al. (10865556.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com >; Charles Norris <charles@whelanmellen.co m>; Guy Conti <guy.conti.f58t@statefarm.c om> | Robbie Whelan <robbie@whelanmell en.com> | | 1/31/2022 | 6:54:04 AM | Redaction of emails between Robbie Whelan, Jennifer Johnsen, and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding Estate's attorney's request for supplemental discovery responses | Attorney-Client Privilege |
| GWB_007805 | Re_ State Farm timeline (11260668.1).msg | Robbie Whelan <robbie@whelanmellen.co m> | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | | 4/25/2022 | 7:57:29 AM | Emails between Jennifer Johnsen and Robbie Whelan (attorneys for SFMAIC) regarding confidential attorney work product prepared by Jennifer Johnsen for purposes of the DJA litigation | Work Product |
| GWB_007806 | Re_ State Farm v. Estate of Workman, et al DJ action (10711522.1).msg | Patricia Gibbons <Patricia.Gibbons@grimcab. com> | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | Amanda Houser <ahouser@gwblaw firm.com> | 12/13/2021 | 9:00:18 AM | Redaction of emails between Jennifer Johnsen and Patricia Gibbons (paralegal for Warren Moise, Lamb Jr.'s attorney) regarding confidentiality order | Attorney-Client Privilege; Common Interest |
| GWB_007809 | RE_ State Farm v. Estate of Workman, et al DJ action (10711526.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Patricia Gibbons <Patricia.Gibbons@gr imcab.com> | Amanda Houser <ahouser@gwblaw firm.com> | 12/13/2021 | 9:04:35 AM | Redaction of emails between Jennifer Johnsen and Patricia Gibbons (paralegal for Warren Moise, Lamb Jr.'s attorney) regarding confidentiality order | Attorney-Client Privilege; Common Interest |
| GWB_007812 | RE_ State Farm v. Lamb (10363266.1).msg | Bill Young <byoung@gwblawfirm.com >; Nekayla McKinney <nMcKinney@gwblawfirm.c om> | Luchana Smith <lsmith@gwblawfirm. com> | Tania McGee <tmcgee@gwblawf irm.com> | 9/8/2021 | 2:18:56 PM | Emails between Bill Young (GWB attorney) and GWB staff regarding filing of affidavits of service in DJA litigation | Work Product |
| GWB_007813 | RE_ State Farm v. Lamb (10363304.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.c om> | Tania McGee <tmcgee@gwblawfir m.com> | | 9/8/2021 | 2:25:17 PM | Emails between Bill Young (GWB attorney) and GWB staff regarding filing of affidavits of service in DJA litigation | Work Product |
| GWB_007814 | RE_ State Farm v. Lamb (10363367.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | Nekayla McKinney <nMcKinney@gwbla wfirm.com> | | 9/8/2021 | 2:33:27 PM | Emails between Bill Young (GWB attorney) and GWB staff regarding filing of affidavits of service in DJA litigation | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_007816 | RE_ State Farm v. Lamb (10363375.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | | 9/8/2021 | 2:34:20 PM | Emails between Bill Young (GWB attorney) and GWB staff regarding filing of affidavits of service in DJA litigation | Work Product |
| GWB_007818 | RE_ State Farm v. Lamb et al. - DRAFT Email to JK (10985285.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; robbie@whelanmellen.com>; charles@whelanmellen.com <charles@whelanmellen.co m> | Guy Conti <guy.conti.f58t@stat efarm.com> | | 2/3/2022 | 11:56:00 AM | Emails between Robbie Whelan, Jennifer Johnsen, and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding drafts of correspondence to Justin Kahn, attorney for the Estate and approval of same | Attorney-Client Privilege; Work Product |
| GWB_007819 | RE_ State Farm v. Lamb et al. - DRAFT Email to JK (10985288.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Guy Conti <guy.conti.f58t@statefarm.c om>; charles@whelanmellen.co m> | Robbie Whelan <robbie@whelanmell en.com> | | 2/3/2022 | 12:55:49 PM | Emails between Robbie Whelan, Jennifer Johnsen, and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding drafts of correspondence to Justin Kahn, attorney for the Estate and approval of same | Attorney-Client Privilege; Work Product |
| GWB_007820 | Re_ State Farm v. Lamb et al. - DRAFT Email to JK (10985289.1).msg | Robbie Whelan <robbie@whelanmellen.com > | Charles Norris <charles@whelanmel len.com> | Jennifer Johnsen <Jjohnsen@gwbla wfirm.com>; Guy Conti <guy.conti.f58t@st atefarm.com> | 2/3/2022 | 1:02:35 PM | Emails between Robbie Whelan, Jennifer Johnsen, and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding drafts of correspondence to Justin Kahn, attorney for the Estate and approval of same | Attorney-Client Privilege; Work Product |
| GWB_007821 | RE_ State Farm v. Lamb et al (10872399.1).msg | Robbie Whelan <robbie@whelanmellen.com > | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | Charles Norris <charles@whelan mellen.com>; Guy Conti <guy.conti.f58t@st atefarm.com> | 1/28/2022 | 12:34:57 PM | Redaction of emails between Robbie Whelan, Jennifer Johnsen, and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding draft Stipulation of Dismissal with Prejudice and attaching draft | Attorney-Client Privilege; Work Product |
| GWB_007823 | Stipulation of Dismissal With Prejudice.DOCX | | | | | | Attachment to GWB_007821. Draft of Stipulation of Dismissal with Prejudice | Attorney-Client Privilege; Work Product |
| GWB_007825 | Re_ State Farm v. Lamb et al (10872405.1).msg | Guy Conti <guy.conti.f58t@statefarm.c om> | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | Robbie Whelan <robbie@whelanm ellen.com>; Charles Norris <charles@whelan mellen.com> | 1/28/2022 | 12:51:14 PM | Redaction of emails between Robbie Whelan, Jennifer Johnsen, and Charles Norris (attorneys for SFMAIC) and SFMAIC regarding draft Stipulation of Dismissal with Prejudice | Attorney-Client Privilege; Work Product |
| GWB_007827 | image001.png | | | | | | Attachment to GWB_007825. Non-substantive. Image of logo from email signature | Attorney-Client Privilege |
| GWB_007828 | ~WRD0000.jpg | | | | | | Attachment to GWB_007825. Blank image | Attorney-Client Privilege |
| GWB_007829 | RE_ State Farm v. Lamb et al (10872428.1).msg | Robbie Whelan <robbie@whelanmellen.com > | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | | 1/28/2022 | 4:50:38 PM | Emails between Jennifer Johnsen and Robbie Whelan (attorneys for SFMAIC) regarding status of filing the Stipulation of Dismissal | Work Product |
| GWB_007832 | RE_ State Farm v. Lamb et al (10872435.1).msg | Robbie Whelan <robbie@whelanmellen.com > | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | Charles Norris <charles@whelan mellen.com>; Guy Conti <guy.conti.f58t@st atefarm.com> | 1/28/2022 | 3:55:42 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) regarding status of filing the Stipulation of Dismissal | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_007834 | RE_ State Farm v. Lamb et al (10872436.1).msg | Robbie Whelan <robbie@whelanmellen.com > | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Charles Norris <charles@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com> | 1/28/2022 | 5:31:08 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) regarding status of filing the Stipulation of Dismissal | Attorney-Client Privilege |
| GWB_007837 | Re_ State Farm v. Lamb et al (10872437.1).msg | Guy Conti <guy.conti.f58t@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Robbie Whelan <robbie@whelanmellen.com>; Charles Norris <charles@whelanmellen.com> | 1/28/2022 | 6:14:19 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) regarding status of filing the Stipulation of Dismissal | Attorney-Client Privilege |
| GWB_007840 | image001.png | | | | | | Attachment to GWB_007840. Non-substantive. Image of logo from email signature | Attorney-Client Privilege |
| GWB_007841 | ~WRD0001.jpg | | | | | | Attachment to GWB_007840. Blank image. | Attorney-Client Privilege |
| GWB_007842 | Re_ State Farm v. Lamb et al (10872515.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Robbie Whelan <robbie@whelanmellen.com> | Charles Norris <charles@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com> | 1/28/2022 | 12:11:24 PM | Redaction of emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) regarding drafting Stipulation of Dismissal | Attorney-Client Privilege |
| GWB_007843 | Email Signature Logos 2020.png | | | | | | Attachment to GWB_007842. Logos from email signatures | Attorney-Client Privilege |
| GWB_007844 | Re_ State Farm v. Lamb et al (10872516.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Robbie Whelan <robbie@whelanmellen.com> | Charles Norris <charles@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com> | 1/28/2022 | 12:45:09 PM | Redaction of emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) regarding drafting Stipulation of Dismissal | Attorney-Client Privilege |
| GWB_007846 | RE_ State Farm v. Lamb et al (10872517.1).msg | Robbie Whelan <robbie@whelanmellen.com >; Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Guy Conti <guy.conti.f58t@statefarm.com> | Charles Norris <charles@whelanmellen.com> | 1/28/2022 | 12:46:45 PM | Redaction of emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) regarding drafting Stipulation of Dismissal | Attorney-Client Privilege |
| GWB_007848 | Re_ State Farm v. Lamb et al (10872531.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Robbie Whelan <robbie@whelanmellen.com> | Guy Conti <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com> | 1/28/2022 | 7:03:16 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) regarding status of filing the Stipulation of Dismissal | Attorney-Client Privilege |
| GWB_007852 | RE_ State Farm v. Lamb, et al. - Affidavits of Service (10368115.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com>; Nekayla McKinney <NMcKinney@gwblawfirm.com> | 9/9/2021 | 2:40:09 PM | Emails between Tania McGee (GWB legal asisstant), Luchana Smith (GWB paralegal) and attorney Bill Young regarding status of affidavits of service in the DJA litigation | Work Product |
| GWB_007854 | RE_ State Farm v. Lamb, et al. - Affidavits of Service (10368123.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com>; Nekayla McKinney <NMcKinney@gwblawfirm.com> | 9/9/2021 | 2:41:09 PM | Emails between Tania McGee (GWB legal asisstant), Luchana Smith (GWB paralegal) and attorney Bill Young regarding status of affidavits of service in the DJA litigation | Work Product |
| GWB_007856 | RE_ State Farm v. Lamb, et al. - Affidavits of Service (10372867.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Nekayla McKinney <nMcKinney@gwblawfirm.com> | | 9/10/2021 | 2:59:12 PM | Emails between Tania McGee (GWB legal asisstant), Luchana Smith (GWB paralegal) and attorney Bill Young regarding status of affidavits of service in the DJA litigation | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_007859 | RE_ State Farm v. Lamb, et al. - Affidavits of Service (10372871.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | 9/10/2021 | 3:00:23 PM | Emails between Tania McGee (GWB legal asisstant), Luchana Smith (GWB paralegal) and attorney Bill Young regarding status of affidavits of service in the DJA litigation | Work Product |
| GWB_007862 | RE_ State Farm v. Lamb, et al. - Affidavits of Service (10372876.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Nekayla McKinney <nMcKinney@gwblawfirm.com> | | 9/10/2021 | 3:01:48 PM | Emails between Tania McGee (GWB legal asisstant), Luchana Smith (GWB paralegal) and attorney Bill Young regarding status of affidavits of service in the DJA litigation | Work Product |
| GWB_007865 | RE_ State Farm v. Lamb, et al. (10452114.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/5/2021 | 4:44:56 PM | Emails between attorney Jennifer Johnsen and legal assistant Amanda Houser regarding undeliverable email and corrected email address | Work Product |
| GWB_007868 | RE_ State Farm v. Lamb, et al. (10458764.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 10/6/2021 | 1:53:51 PM | Redaction of emails between attorney Jennifer Johnsen and paralegal Luchana Smith regarding contact information for attorney Robert Wyndham | Work Product |
| GWB_007871 | RE_ State Farm v. Lamb, et al (10907545.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | | 2/4/2022 | 10:29:55 AM | Redaction of emails between attorneys for SFMAIC Jennifer Johnsen, Robbie Whelan and Charles Norris and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding approach to mediation | Attorney-Client Privilege |
| GWB_007875 | RE_ State Farm v. Lamb, et al (10917515.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Robbie Whelan <robbie@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com>; Monique James <monique.james.gtgq@statefarm.com> | Charles Norris <charles@whelanmellen.com> | | 2/9/2022 | 2:28:55 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Justin Kahn's statement that he planned to file a motion for sanctions against SFMAIC. Includes the mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_007881 | RE_ State Farm v. Lamb, et al (10918051.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; Robbie Whelan <robbie@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/9/2022 | 3:23:11 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Justin Kahn's statement that he planned to file a motion for sanctions against SFMAIC. Includes the mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_007887 | RE_ State Farm v. Lamb, et al (10918271.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; Robbie Whelan <robbie@whelanmellen.com> | Monique James <monique.james.gtgq@statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/9/2022 | 3:55:44 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Justin Kahn's statement that he planned to file a motion for sanctions against SFMAIC. Includes the mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_007894 | RE_ State Farm v. Lamb, et al (10918381.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com>; Robbie Whelan <robbie@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/9/2022 | 4:05:31 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Justin Kahn's statement that he planned to file a motion for sanctions against SFMAIC. Includes the mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_007901 | RE_ State Farm v. Lamb, et al (10919618.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; Robbie Whelan <robbie@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/10/2022 | 9:10:50 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Justin Kahn's statement that he planned to file a motion for sanctions against SFMAIC. Includes the mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_007908 | RE_ State Farm v. Lamb, et al (10920180.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/10/2022 | 10:01:42 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Justin Kahn's statement that he planned to file a motion for sanctions against SFMAIC. Includes the mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_007916 | RE_ State Farm v. Lamb, et al (10920253.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/10/2022 | 10:10:02 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Justin Kahn's statement that he planned to file a motion for sanctions against SFMAIC. Includes the mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_007924 | RE_ State Farm v. Lamb, et al (10921893.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/10/2022 | 1:29:39 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's Motion for Sanctions. Includes the mental impressions, opinions, strategies and recommendations of counsel. Attaches filed copy of the Motion for Sanctions | Attorney-Client Privilege; Work Product |
| GWB_007933 | Workman motion for sanctions.pdf | | | | | | Attachment to GWB_007924. Filed document previously produced in this case at GWB_000149 | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_007950 | Re_ State Farm v. Lamb, et al (10922325.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Charles Norris <charles@whelanmellen.com> | Guy Conti <guy.conti.f58t@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/10/2022 | 2:02:58 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's Motion for Sanctions. Includes the mental impressions, opinions, strategies and recommendations of counsel. Attaches filed copy of the Motion for Sanctions | Attorney-Client Privilege; Work Product |
| GWB_007955 | image001.00000.png | | | | | | Attachment to GWB_007950. Logo from email signature | Attorney-Client Privilege |
| GWB_007956 | image001.00001.png | | | | | | Attachment to GWB_007950. Logo from email signature | Attorney-Client Privilege |
| GWB_007957 | image001.00002.png | | | | | | Attachment to GWB_007950. Logo from email signature | Attorney-Client Privilege |
| GWB_007958 | image001.png | | | | | | Attachment to GWB_007950. Logo from email signature | Attorney-Client Privilege |
| GWB_007959 | image002.00000.jpg | | | | | | Attachment to GWB_007950. Blank image | Attorney-Client Privilege |
| GWB_007960 | image002.00001.jpg | | | | | | Attachment to GWB_007950. Blank image | Attorney-Client Privilege |
| GWB_007961 | image002.00002.jpg | | | | | | Attachment to GWB_007950. Blank image | Attorney-Client Privilege |
| GWB_007962 | image002.00003.jpg | | | | | | Attachment to GWB_007950. Blank image | Attorney-Client Privilege |
| GWB_007963 | image002.00004.jpg | | | | | | Attachment to GWB_007950. Blank image | Attorney-Client Privilege |
| GWB_007964 | image002.00005.jpg | | | | | | Attachment to GWB_007950. Blank image | Attorney-Client Privilege |
| GWB_007965 | image002.00006.jpg | | | | | | Attachment to GWB_007950. Blank image | Attorney-Client Privilege |
| GWB_007966 | image002.jpg | | | | | | Attachment to GWB_007950. Blank image | Attorney-Client Privilege |
| GWB_007967 | image003.00000.png | | | | | | Attachment to GWB_007950. Logo from email signature | Attorney-Client Privilege |
| GWB_007968 | image003.png | | | | | | Attachment to GWB_007950. Logo from email signature | Attorney-Client Privilege |
| GWB_007969 | Workman motion for sanctions.pdf | | | | | | Attachment to GWB_007950. Filed document previously produced in this case at GWB_000149 | Attorney-Client Privilege |
| GWB_007986 | RE_ State Farm v. Lamb, et al (10924563.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com> | Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/10/2022 | 5:38:34 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions against SFMAIC. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_007995 | RE_ State Farm v. Lamb, et al (10925450.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Guy Conti <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 9:22:17 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions against SFMAIC. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008004 | RE_ State Farm v. Lamb, et al (10925919.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 10:01:39 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions against SFMAIC. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008014 | RE_ State Farm v. Lamb, et al (10926023.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Robbie Whelan <robbie@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com>; Monique James <monique.james.gtgq@statefarm.com> | Charles Norris <charles@whelanmellen.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 10:17:59 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008024 | RE_ State Farm v. Lamb, et al (10926080.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Guy Conti <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 10:23:55 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008034 | RE_ State Farm v. Lamb, et al (10926094.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Monique James <monique.james.gtgq@statefarm.com> | | 2/11/2022 | 10:25:26 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008044 | RE_ State Farm v. Lamb, et al (10926328.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; Robbie Whelan <robbie@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com> | Monique James <monique.james.gtgq@statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 10:45:13 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_008054 | RE_ State Farm v. Lamb, et al (10927031.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Robbie Whelan <robbie@whelanmellen.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 11:45:35 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008064 | RE_ State Farm v. Lamb, et al (10927122.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Robbie Whelan <robbie@whelanmellen.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 11:55:10 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008075 | RE_ State Farm v. Lamb, et al (10927166.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 12:00:47 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008086 | RE_ State Farm v. Lamb, et al (10928548.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 2:41:42 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008097 | Re_ State Farm v. Lamb, et al (10929796.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 6:29:01 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008109 | image001.png | | | | | | Attachment to GWB_008097. Logo from email signature | Attorney-Client Privilege |
| GWB_008110 | image003.jpg | | | | | | Attachment to GWB_008097. Blank image | Attorney-Client Privilege |
| GWB_008111 | image004.png | | | | | | Attachment to GWB_008097. Logo from email signature | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_008112 | RE_ State Farm v. Lamb, et al (10929797.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com> | Monique James <monique.james.gtgq@statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 6:30:20 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008124 | RE_ State Farm v. Lamb, et al (10929800.1).msg | Monique James <monique.james.gtgq@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; charles@whelanmellen.com <charles@whelanmellen.com> | Guy Conti <guy.conti.f58t@statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 6:46:45 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008136 | Re_ State Farm v. Lamb, et al (10929804.1).msg | Guy Conti <guy.conti.f58t@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | Monique James <monique.james.gtgq@statefarm.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 7:05:11 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008149 | RE_ State Farm v. Lamb, et al (10929807.1).msg | Robbie Whelan <robbie@whelanmellen.com> | Guy Conti <guy.conti.f58t@statefarm.com> | Monique James <monique.james.gtgq@statefarm.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; charles@whelanmellen.com <charles@whelanmellen.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 7:12:58 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_008162 | RE_ State Farm v. Lamb, et al (10929808.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com> | Monique James <monique.james.gtgq@statefarm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; charles@whelanmellen.com <charles@whelanmellen.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 7:39:37 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008175 | RE_ State Farm v. Lamb, et al (10975861.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 11:48:01 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008185 | RE_ State Farm v. Lamb, et al (10975862.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 10:15:13 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008194 | RE_ State Farm v. Lamb, et al (10975863.1).msg | Charles Norris <charles@whelanmellen.com>; Robbie Whelan <robbie@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com>; Monique James <monique.james.gtgq@statefarm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/11/2022 | 10:25:54 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008204 | Re_ State Farm v. Lamb, et al (10985204.1).msg | Guy Conti <guy.conti.f58t@statefarm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | | 2/10/2022 | 9:22:22 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding mediation and Estate's intention to file a motion for sanctions. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008212 | image001.png | | | | | | Attachment to GWB_008204. Logo from email signature | Attorney-Client Privilege |
| GWB_008213 | image002.png | | | | | | Attachment to GWB_008204. Logo from email signature | Attorney-Client Privilege |
| GWB_008214 | ~WRD0000.jpg | | | | | | Attachment to GWB_008204. Blank image | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | From | To | CC | Date | Time | Description | Privilege |
|---|---|---|---|---|---|---|---|---|
| GWB_008215 | RE_ State Farm v. Lamb, et al (10985205.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com>; Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/10/2022 | 10:14:27 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding mediation and Estate's intention to file a motion for sanctions. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008223 | RE_ State Farm v. Lamb, et al (10985207.1).msg | Charles Norris <charles@whelanmellen.com>; Robbie Whelan <robbie@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com>; Monique James <monique.james.gtgq@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 2/9/2022 | 2:44:45 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding mediation and Estate's intention to file a motion for sanctions. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008229 | RE_ State Farm v. Lamb, et al (10985227.1).msg | Charles Norris <charles@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Guy Conti <guy.conti.f58t@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com>; HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 2/10/2022 | 4:27:02 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008238 | RE_ State Farm v. Lamb, et al (10985231.1).msg | Monique James <monique.james.gtgq@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 2/10/2022 | 6:30:49 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding Estate's motion for sanctions and mediation. Includes the mental impressions, opinions, strategies and recommendations of counsel. | Attorney-Client Privilege; Work Product |
| GWB_008248 | RE_ State Farm v. Lamb, et al (10985274.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com> | Robbie Whelan <robbie@whelanmellen.com> | Guy Conti (Work) <guy.conti.f58t@statefarm.com> | 2/2/2022 | 4:42:07 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) regarding dismissal of DJA litigation. Contains the mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege |
| GWB_008250 | RE_ State Farm v. Lamb, et al (10985275.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com> | Guy Conti <guy.conti.f58t@statefarm.com> | | 2/2/2022 | 4:44:30 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) regarding dismissal of DJA litigation. Contains the mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| Bates | Filename | From | To | CC | Date | Time | Description | Privilege |
|---|---|---|---|---|---|---|---|---|
| GWB_008252 | Re_ State Farm v. Lamb, et al (10985276.1).msg | Guy Conti <guy.conti.f58t@statefarm.com> | Charles Norris <charles@whelanmellen.com> | Robbie Whelan <robbie@whelanmellen.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | 2/2/2022 | 4:46:40 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) regarding dismissal of DJA litigation. Contains the mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege |
| GWB_008255 | RE_ State Farm v. Lamb, et al (10985277.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com>; charles@whelanmellen.com <charles@whelanmellen.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | | 2/2/2022 | 4:30:35 PM | Emails between Jennifer Johnsen and Robbie Whelan (attorneys for SFMAIC) regarding dismissal of DJA litigation. Contains the mental impressions, opinions, strategies and recommendations of counsel | Work Product |
| GWB_008257 | RE_ State Farm v. Lamb, et al (10985318.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com>; Monique James <monique.james.gtgq@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | | 2/4/2022 | 7:19:57 AM | Redaction of emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding the Estate's filing of a complaint against Lamb III | Attorney-Client Privilege |
| GWB_008261 | Re_ State Farm v. Lamb, et al (DJ action) (10304488.1).msg | Bill Young <byoung@gwblawfirm.com>; Mark Mason <mark@masonlawfirm.com> | Warren Moise <warren.moise@gmail.com> | | 8/19/2021 | 12:03:25 PM | Emails between attorneys Bill Young (GWB), Warren Moise, and Mark Mason regarding acceptance of service of DJA Summons and Complaint | Attorney-Client Privilege; Common Interest |
| GWB_008263 | RE_ State Farm v. Lamb, et al (DJ action) (10304538.1).msg | Warren Moise <warren.moise@gmail.com>; Mark Mason <mark@masonlawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/19/2021 | 12:13:47 PM | Emails between attorneys Bill Young (GWB), Warren Moise, and Mark Mason regarding acceptance of service of DJA Summons and Complaint | Attorney-Client Privilege; Common Interest |
| GWB_008265 | Re_ State Farm v. Lamb, et al (DJ action) (10304576.1).msg | Bill Young <byoung@gwblawfirm.com>; Warren Moise <warren.moise@gmail.com> | Mark Mason <mark@masonlawfirm.com> | | 8/19/2021 | 12:19:01 PM | Emails between attorneys Bill Young (GWB), Warren Moise, and Mark Mason regarding acceptance of service of DJA Summons and Complaint | Attorney-Client Privilege; Common Interest |
| GWB_008267 | RE_ State Farm v. Lamb, et al (DJ action) (10304606.1).msg | Mark Mason <mark@masonlawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/19/2021 | 12:25:23 PM | Emails between attorneys Bill Young (GWB), Warren Moise, and Mark Mason regarding acceptance of service of DJA Summons and Complaint and Mark Mason's retention as counsel for Lamb Jr. | Attorney-Client Privilege; Common Interest |
| GWB_008270 | Re_ State Farm v. Lamb, et al (DJ action) (10304634.1).msg | Bill Young <byoung@gwblawfirm.com> | Mark Mason <mark@masonlawfirm.com> | | 8/19/2021 | 12:29:57 PM | Emails between attorneys Bill Young (GWB), Warren Moise, and Mark Mason regarding acceptance of service of DJA Summons and Complaint and Mark Mason's retention as counsel for Lamb Jr. | Attorney-Client Privilege; Common Interest |
| GWB_008273 | RE_ State Farm v. Melvin Lamb et al. - 30(b)(6) Transcript of Anderson (10931424.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Barbara McCurley <bmm@apslegalease.com> | | 2/11/2022 | 5:32:20 PM | Emails between GWB legal assistant Amanda Houser and court reporter regarding invoice and transcript for deposition of Shay Anderson | Work Product |
| GWB_008274 | RE_ State Farm v. Melvin Lamb et al. - 30(b)(6) Transcript of Anderson (10931462.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Barbara McCurley <bmm@apslegalease.com> | | 2/14/2022 | 9:26:58 AM | Emails between GWB legal assistant Amanda Houser and court reporter regarding invoice and transcript for deposition of Shay Anderson. Attaching errata sheet from deposition | Work Product |
| GWB_008275 | Anderson Shay errata sheet.pdf | | | | | | Attachment to GWB_008274. Previously produced at GWB_003729 | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| Bates | Description | From | To | CC | Date | Time | Privilege Description | Privilege |
|---|---|---|---|---|---|---|---|---|
| GWB_008277 | RE_ State Farm v. Melvin Lamb, et al. (10414546.1).msg | Bill Young <byoung@gwblawfir m.com> | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | | 9/23/2021 | 11:17:15 AM | Email between GWB attorneys Jennifer Johnsen and Bill Young regarding status of DJA litigation and service of parties | Work Product |
| GWB_008279 | RE_ State Farm v. Melvin Lamb, et al. (10414628.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Bill Young <byoung@gwblawfir m.com> | | 9/23/2021 | 11:32:13 AM | Email between GWB attorneys Jennifer Johnsen and Bill Young regarding status of DJA litigation and service of parties | Work Product |
| GWB_008282 | RE_ State Farm v. Melvin Lamb, et al. (10414635.1).msg | Bill Young <byoung@gwblawfir m.com> | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | | 9/23/2021 | 11:33:44 AM | Email between GWB attorneys Jennifer Johnsen and Bill Young regarding status of DJA litigation and service of parties | Work Product |
| GWB_008285 | RE_ State Farm v. Melvin Lamb, et al. (10420278.1).msg | Bill Young <byoung@gwblawfir m.com> | Nekayla McKinney <nMcKinney@gwbla wfirm.com> | | 9/24/2021 | 5:31:31 PM | Emails between attorney Bill Young and legal assistant Nekayla McKinney regarding filing of notice of extension in DJA litigation | Work Product |
| GWB_008288 | Re_ State Farm v. Melvin Lamb, Jr. et al. (10606714.1).msg | Mark Mason <mark@masonlawfir m.com> | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | Amanda Houser <ahouser@gwblaw firm.com> | 11/11/2021 | 1:12:29 PM | Emails between Mark Mason (attorney for Lamb Jr) and Jennifer Johnsen (GWB) regarding service of complaint on Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_008289 | image001.gif | | | | | | Attachment to GWB_008288. Logo from email signature | Attorney-Client Privilege; Common Interest |
| GWB_008290 | Re_ State Farm v. Melvin Lamb, Jr. et al. (10606863.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | Mark Mason <mark@masonlawfir m.com> | | 11/11/2021 | 11:49:27 AM | Emails between Mark Mason (attorney for Lamb Jr) and Jennifer Johnsen (GWB) regarding service of complaint on Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_008292 | Re_ State Farm v. Melvin Lamb, Jr. et al. (10607052.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | Mark Mason <mark@masonlawfir m.com> | | 11/11/2021 | 2:08:24 PM | Emails between Mark Mason (attorney for Lamb Jr) and Jennifer Johnsen (GWB) regarding service of complaint on Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_008294 | Re_ State Farm v. Melvin Lamb, Jr. et al. (10607718.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | Mark Mason <mark@masonlawfir m.com> | | 11/11/2021 | 2:32:03 PM | Emails between Mark Mason (attorney for Lamb Jr) and Jennifer Johnsen (GWB) regarding service of complaint on Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_008296 | RE_ State Farm v. Melvin Lamb, Jr. et al. (10608281.1).msg | mark@masonlawfirm.com <mark@masonlawfir m.com> | Amanda Houser <ahouser@gwblawfir m.com> | Jennifer Johnsen <Jjohnsen@gwbla wfirm.com> | 11/11/2021 | 3:44:45 PM | Emails between Mark Mason (attorney for Lamb Jr), Jennifer Johnsen (GWB) and legal assistant Amanda Houser regarding service of complaint on Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_008299 | RE_ State Farm v. Melvin Lamb, Jr. et al. (10608552.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | Amanda Houser <ahouser@gwblawfir m.com> | | 11/11/2021 | 4:04:29 PM | Emails between Jennifer Johnsen (GWB) and legal assistant Amanda Houser re service of Lamb III | Work Product |
| GWB_008301 | Re_ State Farm v. Melvin Lamb, Jr. et al. (10608747.1).msg | Amanda Houser <ahouser@gwblawfir m.com> | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | | 11/11/2021 | 4:10:18 PM | Emails between Jennifer Johnsen (GWB) and legal assistant Amanda Houser regarding service of complaint on Lamb III | Attorney-Client Privilege; Common Interest; Work Product |
| GWB_008303 | Re_ State Farm v. Melvin Lamb, Jr. et al. (10612010.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | Amanda Houser <ahouser@gwblawfir m.com> | | 11/12/2021 | 9:53:28 AM | Emails between Jennifer Johnsen (GWB) and legal assistant Amanda Houser regarding service of complaint on Lamb III | Work Product |
| GWB_008306 | Re_ State Farm v. Melvin Lamb, Jr. et al. (10612120.1).msg | Amanda Houser <ahouser@gwblawfir m.com> | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | | 11/12/2021 | 10:02:37 AM | Emails between Jennifer Johnsen (GWB) and legal assistant Amanda Houser regarding service of complaint on Lamb III | Work Product |
| GWB_008309 | RE_ State Farm v. Workman - Service on Melvin Lamb III (10414725.1).msg | Bill Young <byoung@gwblawfir m.com> | Luchana Smith <lsmith@gwblawfirm. com> | | 9/23/2021 | 11:48:18 AM | Emails between attorney Bill Young and paralegal Luchana Smith regarding service of complaint on Lamb III | Work Product |
| GWB_008310 | RE_ State Farm v. Workman (10464264.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfir m.com> | Luchana Smith <lsmith@gwblawfirm. com> | | 10/7/2021 | 3:40:29 PM | Emails between attorney Jennifer Johnsen and paralegal Luchana Smith regarding service of complaint on Lamb III | Work Product |
| GWB_008312 | RE_ State Farm v. Workman (10480890.1).msg | Luchana Smith <lsmith@gwblawfirm. com> | Amanda Houser <ahouser@gwblawfir m.com> | Jennifer Johnsen <Jjohnsen@gwbla wfirm.com> | 10/12/2021 | 10:54:02 AM | Emails between attorney Jennifer Johnsen, legal assistant Amanda Houser and paralegal Luchana Smith regarding service of complaint on Lamb III | Work Product |
| GWB_008314 | RE_ State Farm v. Workman (10481867.1).msg | Amanda Houser <ahouser@gwblawfir m.com> | Luchana Smith <lsmith@gwblawfirm. com> | Jennifer Johnsen <Jjohnsen@gwbla wfirm.com> | 10/12/2021 | 11:39:10 AM | Emails between attorney Jennifer Johnsen, legal assistant Amanda Houser and paralegal Luchana Smith regarding service of complaint on Lamb III | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_008316 | RE_ State Farm v. Workman (10693226.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | Nekayla McKinney <nMcKinney@gwblawfirm.com> | 12/7/2021 | 10:59:37 AM | Emails between GWB legal assistants Houser and McKinney and paralegal Smith regarding subpoenas received from Workman Estate and status of responses | Work Product |
| GWB_008318 | RE_ State Farm v. Workman (10693350.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | Nekayla McKinney <nMcKinney@gwblawfirm.com> | 12/7/2021 | 11:02:51 AM | Emails between GWB legal assistants Houser and McKinney and paralegal Smith regarding subpoenas received from Workman Estate and status of responses | Work Product |
| GWB_008320 | RE_ State Farm v. Workman (10693374.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 12/7/2021 | 11:05:20 AM | Emails between GWB legal assistants Houser and McKinney and paralegal Smith regarding subpoenas received from Workman Estate and status of responses | Work Product |
| GWB_008322 | RE_ State Farm v. Workman (10693443.1).msg | Luchana Smith <lsmith@gwblawfirm.com>; Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Nekayla McKinney <nMcKinney@gwblawfirm.com> | 12/7/2021 | 11:08:08 AM | Emails between attorney Jennifer Johnsen and GWB legal assistants and paralegal regarding subpoena from the Workman Estate to SFMAIC and status of response | Work Product |
| GWB_008324 | RE_ State Farm v. Workman (10693483.1).msg | Luchana Smith <lsmith@gwblawfirm.com>; Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Nekayla McKinney <nMcKinney@gwblawfirm.com> | 12/7/2021 | 11:09:06 AM | Emails between attorney Jennifer Johnsen and GWB legal assistants and paralegal regarding subpoena from the Workman Estate to SFMAIC and status of response | Work Product |
| GWB_008326 | RE_ State Farm v. Workman (10693574.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Amanda Houser <ahouser@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | Nekayla McKinney <nMcKinney@gwblawfirm.com> | 12/7/2021 | 11:17:57 AM | Emails between attorney Jennifer Johnsen and GWB legal assistants and paralegal regarding subpoena from the Workman Estate to SFMAIC and status of response | Work Product |
| GWB_008328 | RE_ State Farm v. Workman (10693585.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 12/7/2021 | 11:18:43 AM | Emails between GWB legal assistant Houser paralegal Smith regarding subpoenas received from Workman Estate and status of responses | Work Product |
| GWB_008331 | RE_ State Farm v. Workman (10889610.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Robbie Whelan <robbie@whelanmellen.com> | Charles Norris <charles@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com>; Monique James <monique.james.gtgq@statefarm.com> | 2/1/2022 | 11:59:37 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding communications between SFMAIC and Mark Mason, attorney for Lamb Jr., for purposes of the DJA litigation. Contains mental impressions, opinions and recommendations of counsel | Attorney-Client Privilege; Common Interest; Work Product |
| GWB_008333 | RE_ State Farm v. Workman (10889611.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | 2/1/2022 | 12:20:14 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding communications between SFMAIC and Mark Mason, attorney for Lamb Jr., for purposes of the DJA litigation. Contains mental impressions, opinions and recommendations of counsel | Attorney-Client Privilege; Common Interest; Work Product |
| GWB_008336 | RE_ State Farm v. Workman (10985251.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Robbie Whelan <robbie@whelanmellen.com> | Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | 2/1/2022 | 8:49:41 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding communications between SFMAIC and Mark Mason, attorney for Lamb Jr., for purposes of the DJA litigation. Contains mental impressions, opinions and recommendations of counsel | Attorney-Client Privilege; Common Interest; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| Bates | Document | From | To | CC | Date | Time | Description | Privilege |
|---|---|---|---|---|---|---|---|---|
| GWB_008339 | RE_ State Farm v. Workman (10985256.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Charles Norris <charles@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com> | 2/2/2022 | 10:55:47 AM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding communications between SFMAIC and Mark Mason, attorney for Lamb Jr., for purposes of the DJA litigation. Contains mental impressions, opinions and recommendations of counsel | Attorney-Client Privilege; Common Interest; Work Product |
| GWB_008342 | Re_ State Farm v. Workman (11121793.1).msg | Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 3/29/2022 | 10:17:38 PM | Redaction of email between SFMAIC attorneys Jennifer Johnsen and Robbie Whelan regarding proposed letter to Judge Seymour | Work Product |
| GWB_008346 | RE_ State Farm v. Workman (11121921.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Robbie Whelan <robbie@whelanmellen.com> | | 3/30/2022 | 5:12:29 AM | Redaction of email between SFMAIC attorneys Jennifer Johnsen and Robbie Whelan regarding proposed letter to Judge Seymour | Work Product |
| GWB_008347 | Re_ State Farm v. Workman (6384-2825) - Discovery requests and 30(b)(6) Depo (10444240.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com>; Luchana Smith <lsmith@gwblawfirm.com> | 10/3/2021 | 3:54:37 PM | Emails between GWB legal assistants and attorney Jennifer Johnsen regarding calendaring deadlines in DJA litigation | Work Product |
| GWB_008348 | Re_ State Farm v. Workman (6384-2825) - Discovery requests and 30(b)(6) Depo (10561429.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/31/2021 | 11:48:00 PM | Emails between GWB legal assistants and attorney Jennifer Johnsen regarding calendaring deadlines in DJA litigation | Work Product |
| GWB_008349 | Re_ State Farm v. Workman (6384-2825) - Discovery requests and 30(b)(6) Depo (10561430.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 11/1/2021 | 9:07:09 AM | Emails between GWB legal assistants and attorney Jennifer Johnsen regarding calendaring deadlines in DJA litigation | Work Product |
| GWB_008351 | RE_ State Farm v. Workman et al (10592890.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | | 11/5/2021 | 10:15:07 AM | Emails between Darren Murdoch (SFMAIC) and attorney Jennifer Johnsen preparing responses to Estate's discovery requests and gathering documents for same | Attorney-Client Privilege |
| GWB_008353 | RE_ State Farm v. Workman et al (10639722.1).msg | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com>; Lee Shivers <lee.shivers.d8yf@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 11/8/2021 | 3:19:28 PM | Emails between Darren Murdoch (SFMAIC) and attorney Jennifer Johnsen preparing responses to Estate's discovery requests and gathering documents for same | Attorney-Client Privilege |
| GWB_008355 | Re_ State Farm v. Workman_Lamb et al. (10680683.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 12/2/2021 | 1:32:00 PM | Emails between attorney Jennifer Johnsen and legal assistant Amanda Houser regarding draft of response to Tyger River demand | Work Product |
| GWB_008356 | RE_ State Farm v. Workman_Lamb et al. (10685349.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Tyran Turner <tyran.turner.e123@statefarm.com> | DF - AUTO - Drop File Document <DF-AUTO-CL@internal.statefarm.com> | 12/3/2021 | 3:13:03 PM | Emails between Tyran Turner (SFMAIC) and attorney Jennifer Johnsen regarding demand from attorney for the Estate | Attorney-Client Privilege |
| GWB_008357 | RE_ State Farm v. Workman_Lamb et al. (10763073.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Tyran Turner <tyran.turner.e123@statefarm.com> | | 12/2/2021 | 1:52:49 PM | Emails between Tyran Turner (SFMAIC) and attorney Jennifer Johnsen regarding response to demand from attorney for the Estate | Attorney-Client Privilege |
| GWB_008358 | RE_ State Farm v. Workman_Lamb et al. (10763152.1).msg | Tyran Turner <tyran.turner.e123@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 12/3/2021 | 10:39:13 AM | Emails between Tyran Turner (SFMAIC) and attorney Jennifer Johnsen regarding response to demand from attorney for the Estate | Attorney-Client Privilege |
| GWB_008359 | RE_ State Farm v. Workman_Lamb et al. (10763155.1).msg | Tyran Turner <tyran.turner.e123@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | DF - AUTO - Drop File Document <DF-AUTO-CL@internal.statefarm.com> | 12/3/2021 | 3:25:54 PM | Emails between Tyran Turner (SFMAIC) and attorney Jennifer Johnsen regarding response to demand from attorney for the Estate | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_008361 | RE_ SUBPOENA NEEDED - State Farm v. Workman_Lamb (10692405.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | 12/7/2021 | 10:01:27 AM | Emails between GWB legal assistants and paralegal regarding location of subpoena received from the Estate | Work Product |
| GWB_008362 | RE_ Subpoena to State Farm - Estate of Workman v. Lamb (10464411.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 10/7/2021 | 4:00:32 PM | Emails between GWB legal assistants and paralegal regarding location of subpoena received from the Estate | Work Product |
| GWB_008363 | RE_ Subpoena to State Farm - Estate of Workman v. Lamb (10464519.1).msg | Luchana Smith <lsmith@gwblawfirm.com>; Nekayla McKinney <nMcKinney@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/7/2021 | 4:18:52 PM | Emails between GWB legal assistants and paralegal regarding organization of file for DJA litigation | Work Product |
| GWB_008365 | RE_ Subpoena to State Farm - Estate of Workman v. Lamb (10464530.1).msg | Amanda Houser <ahouser@gwblawfirm.com>; Nekayla McKinney <nMcKinney@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 10/7/2021 | 4:22:01 PM | Emails between GWB legal assistants and paralegal regarding organization of file for DJA litigation | Work Product |
| GWB_008367 | RE_ The Estate of James Workman (10359292.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 9/7/2021 | 2:45:00 PM | Emails between attorney Bill Young and paralegal Luchana Smith regarding status of filing of affidavits of service in the DJA litigation | Work Product |
| GWB_008368 | RE_ The Estate of James Workman (10359316.1).msg | Bill Young <byoung@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 9/7/2021 | 2:47:48 PM | Emails between attorney Bill Young and paralegal Luchana Smith regarding status of filing of affidavits of service in the DJA litigation | Work Product |
| GWB_008369 | RE_ UPDATE FOR CONFLICTS_ New Assignment  4021B249D (10306169.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | Paula Forbes <pforbes@gwblawfirm.com> | | 7/22/2021 | 3:54:28 PM | GWB internal conflicts search results, clearing conflicts | |
| GWB_008373 | RE_ Voicemail Message (STATE FARM _ DavidR) From_8442928615 (10306170.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | David Rheney <drheney@gwblawfirm.com> | | 7/22/2021 | 3:48:11 PM | Emails between GWB attorney David Rheney and legal assistant Tania McGee regarding initial assignment of new matter from SFMAIC | Work Product |
| GWB_008374 | RE_ We Serve Law LLC (10517777.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Kim Free <kfree@gwblawfirm.com> | | 10/19/2021 | 2:30:34 PM | Emails between GWB accounting and legal assistant regarding payment of invoice from process server utilized in the DJA litigation | Work Product |
| GWB_008375 | RE_ Workman (10446158.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/4/2021 | 1:11:07 PM | Emails between attorney Jennifer Johnsen and legal assistant Amanda Houser regarding contact information for attorneys in the DJA litigation | Work Product |
| GWB_008376 | RE_ Workman (10447107.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/4/2021 | 3:56:13 PM | Emails between attorney Jennifer Johnsen and legal assistant Amanda Houser regarding contact information for attorneys in the DJA litigation | Work Product |
| GWB_008378 | RE_ Workman (10447269.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 10/4/2021 | 4:16:45 PM | Emails between attorney Jennifer Johnsen and legal assistant Amanda Houser regarding contact information for attorneys in the DJA litigation | Work Product |
| GWB_008380 | RE_ Workman (10447326.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/4/2021 | 4:24:51 PM | Emails between attorney Jennifer Johnsen and legal assistant Amanda Houser regarding contact information for attorneys in the DJA litigation | Work Product |
| GWB_008382 | RE_ Workman (10448522.1).msg | Amanda Houser <ahouser@gwblawfirm.com> | Nekayla McKinney <nMcKinney@gwblawfirm.com> | | 10/5/2021 | 9:12:59 AM | Emails between GWB legal assistants regarding contact  information for attorneys in the DJA litigation and status of service of defendants in DJA litigation. Attaching case sheet. | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_008384 | State Farm v. Workman and Lamb Case Sheet.docx | | | | | | Attachment to GWB_008382. Document created by GWB for purposes of keeping track of service of various defendants in the DJA litigation | Work Product |
| GWB_008387 | RE_ Workman (10448646.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/5/2021 | 9:29:28 AM | Emails between attorney Jennifer Johnsen and legal assistants regarding contact  information for attorneys in the DJA litigation and status of service of defendants in DJA litigation. | Work Product |
| GWB_008390 | RE_ Workman (10448709.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/5/2021 | 9:37:07 AM | Emails between attorney Jennifer Johnsen and legal assistant Amanda Houser regarding status of service of defendants in DJA litigation and attaching case sheet | Work Product |
| GWB_008392 | State Farm v. Workman and Lamb Case Sheet.nrl | | | | | | Attachment to GWB_008390. Link to document created by GWB for purposes of keeping track of service of various defendants in the DJA litigation. Link only, no document attached | Work Product |
| GWB_008393 | Re_ Workman (11226825.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Robbie Whelan <robbie@whelanmellen.com> | | 4/19/2022 | 9:21:20 PM | Emails between attorneys Jennifer Johnsen and Robbie Whelan regarding potential for second mediation and response to Estate's motion for sanctions | Work Product |
| GWB_008394 | RE_ Workman docs, etc. (10466591.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/8/2021 | 10:42:22 AM | Emails between attorney Jennifer Johnsen and legal assistant Amanda Houser regarding documents in GWB's file for DJA litigation | Work Product |
| GWB_008395 | RE_ Workman file (12660762.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 4/18/2023 | 9:30:20 AM | Emails between attorney Jennifer Johnsen and legal assistant Amanda Houser regarding location of GWB's file of DJA litigation | Work Product |
| GWB_008396 | RE_ Workman v. Lamb (10229009.1).msg | Julia Bradshaw <jbradshaw@gwblawfirm.com> | Cynthia Smart <csmart@gwblawfirm.com> | | 7/29/2021 | 10:13:38 AM | Email from GWB legal assistant Cynthia Smart to attorney Julia Bradshaw regarding calendaring response deadline to demand from Workman Estate | Work Product |
| GWB_008399 | RE_ Workman v. Lamb EXTREMELY CONFIDENTIAL (11122398.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Guy Conti (Work) <guy.conti.f58t@statefarm.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Charles Norris <charles@whelanmellen.com> | | 3/8/2022 | 5:02:03 PM | Redaction of emails between attorneys for SFMAIC Jennifer Johnsen, Robbie Whelan and Charles Norris and Guy Conti (SFMAIC) regarding documents received from Justin Kahn and labeled "extremely confidential" | Attorney-Client Privilege |
| GWB_008400 | RE_ Workman v. Lamb mediation (11100576.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com>; Charles Norris <charles@whelanmellen.com> | 3/28/2022 | 5:51:20 PM | Emails between attorneys for SFMAIC Jennifer Johnsen, Robbie Whelan and Charles Norris and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding dates and strategy for upcoming mediation. Contains the mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_008402 | RE_ Workman v. Lamb mediation (11100577.1).msg | Monique James <monique.james.gtgq@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | Charles Norris <charles@whelanmellen.com> | 3/28/2022 | 6:05:41 PM | Emails between attorneys for SFMAIC Jennifer Johnsen, Robbie Whelan and Charles Norris and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding dates and strategy for upcoming mediation. Contains the mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_008405 | RE_ Workman v. Lamb mediation (11121769.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com> | Monique James <monique.james.gtgq@statefarm.com> | Jennifer Johnsen <Ijohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com> | 3/29/2022 | 6:43:31 PM | Emails between attorneys for SFMAIC Jennifer Johnsen, Robbie Whelan and Charles Norris and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding dates and strategy for upcoming mediation. Contains the mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_008408 | Re_ Workman v. Lamb mediation (11121770.1).msg | Guy Conti <guy.conti.f58t@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | Monique James <monique.james.gtgq@statefarm.com>; Jennifer Johnsen <Ijohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com> | 3/29/2022 | 6:41:32 PM | Emails between attorneys for SFMAIC Jennifer Johnsen, Robbie Whelan and Charles Norris and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding dates and strategy for upcoming mediation. Contains the mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_008411 | Re_ Workman v. Lamb mediation (11121880.1).msg | Guy Conti <guy.conti.f58t@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | Monique James <monique.james.gtgq@statefarm.com>; Jennifer Johnsen <Ijohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com> | 3/29/2022 | 10:25:22 AM | Emails between attorneys for SFMAIC Jennifer Johnsen, Robbie Whelan and Charles Norris and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding dates and strategy for upcoming mediation. Contains the mental impressions, opinions, strategies and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_008414 | RE_ Workman v. Lamb Subpoena to State Farm (10332648.1).msg | Warren Moise <warren.moise@gmail.com> | Bill Young <byoung@gwblawfirm.com> | | 8/28/2021 | 1:37:36 PM | Redaction of email between Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) and GWB attorney Bill Young regarding subpoena from the Estate | Attorney-Client Privilege; Common Interest |
| GWB_008415 | Re_ Workman v. Lamb Subpoena to State Farm (10332664.1).msg | Bill Young <byoung@gwblawfirm.com> | Warren Moise <warren.moise@gmail.com> | | 8/28/2021 | 3:31:22 PM | Redaction of email between Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) and GWB attorney Bill Young regarding subpoena from the Estate | Attorney-Client Privilege; Common Interest |
| GWB_008417 | RE_ Workman v_ Lamb - Conflict Check (10222385.1).msg | Cynthia Smart <csmart@gwblawfirm.com> | Pat Klitzing <pklitzing@gwblawfirm.com> | Billing Inquiries <BillingInquiries@gwblawfirm.com> | 7/26/2021 | 12:11:39 PM | Results of GWB conflicts search, no conflict | Work Product |
| GWB_008418 | RE_ Workman vs Lamb- Service on Lamb III (10565945.1).msg | Luchana Smith <lsmith@gwblawfirm.com>; Amanda Houser <ahouser@gwblawfirm.com>; Nekayla McKinney <nMcKinney@gwblawfirm.com> | Jennifer Johnsen <Ijohnsen@gwblawfirm.com> | | 11/1/2021 | 4:17:48 PM | Emails between attorney Jennifer Johnsen and GWB legal assistants and paralegal regarding status of service of Lamb III in the DJA litigation | Work Product |
| GWB_008419 | RE_ Workman vs Lamb- Service on Lamb III (10565960.1).msg | Jennifer Johnsen <Ijohnsen@gwblawfirm.com>; Amanda Houser <ahouser@gwblawfirm.com>; Nekayla McKinney <nMcKinney@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 11/1/2021 | 4:21:19 PM | Emails between attorney Jennifer Johnsen and GWB legal assistants and paralegal regarding status of service of Lamb III in the DJA litigation | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| Bates | Description | From | To | CC | Date | Time | Summary | Privilege |
|---|---|---|---|---|---|---|---|---|
| GWB_008420 | RE_ Workman_Lamb (10975849.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com>; Monique James <monique.james.gtgq@statefarm.com>; Guy Conti (Work) <guy.conti.f58t@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | Charles Norris <charles@whelanmellen.com>; Guy Conti (Other) <home.law-conti.662h00@statefarm.com> | 2/14/2022 | 6:14:50 PM | Emails between attorneys Jennifer Johnsen, Robbie Whelan and Charles Norris and Monique James (SFMAIC) and Guy Conti (SFMAIC) regarding motion to stay in DJA litigation | Attorney-Client Privilege |
| GWB_008422 | RE_ Workman_Lamb (10975855.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com>; Guy Conti (Work) <guy.conti.f58t@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Charles Norris <charles@whelanmellen.com>; Guy Conti (Other) <home.law-conti.662h00@statefarm.com> | 2/14/2022 | 6:09:55 PM | Emails between attorneys Jennifer Johnsen, Robbie Whelan and Charles Norris and Monique James (SFMAIC) and Guy Conti (SFMAIC) regarding motion to stay in DJA litigation and attaching a draft of the same with Jennifer Johnsen's revisions | Attorney-Client Privilege; Work Product |
| GWB_008424 | 2022.02.14 Motion to Stay Pending Mediation JK mod (JEJ redline 2_14_2022).DOCX | | | | | | Attachment to GWB_008422. Draft of motion to stay with Jennifer Johnsen's revisions | Attorney-Client Privilege; Work Product |
| GWB_008425 | RE_ Workman_Lamb (10975856.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Monique James <monique.james.gtgq@statefarm.com>; Guy Conti (Work) <guy.conti.f58t@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Charles Norris <charles@whelanmellen.com>; Guy Conti (Other) <home.law-conti.662h00@statefarm.com>; Natalie Ecker <eckern@gwblawfirm.com> | 2/14/2022 | 6:20:29 PM | Emails between attorneys Jennifer Johnsen, Natalie Ecker (GWB), Robbie Whelan and Charles Norris and Monique James (SFMAIC) and Guy Conti (SFMAIC) regarding motion to stay in DJA litigation and attaching a draft of the same with Jennifer Johnsen's revisions | Attorney-Client Privilege |
| GWB_008427 | Re_ Workman_Lamb matter (10975832.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Patricia Gibbons <patricia.gibbons@grimcab.com> | Warren Moise <warren.moise@gmail.com> | mark@masonlawfirm.com <mark@masonlawfirm.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 2/14/2022 | 11:17:19 AM | Emails between Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.), Mark Mason (Lamb Jr.'s attorney), Robbie Whelan and Jennifer Johnsen regarding arrangements for mediation | Attorney-Client Privilege; Common Interest; Work Product |
| GWB_008428 | RE_ Workman_Lamb matter (10975833.1).msg | Warren Moise <warren.moise@gmail.com>; Robbie Whelan <robbie@whelanmellen.com> | Patricia Gibbons <Patricia.Gibbons@grimcab.com> | mark@masonlawfirm.com <mark@masonlawfirm.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 2/14/2022 | 11:24:11 AM | Emails between Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.), Mark Mason (Lamb Jr.'s attorney), Robbie Whelan and Jennifer Johnsen regarding arrangements for mediation | Attorney-Client Privilege; Common Interest; Work Product |
| GWB_008429 | Recommendation for Melvin Lamb 4021b249D (10247548.1).msg | Bill Young <byoung@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.r1a@statefarm.com> | | 8/2/2021 | 11:53:45 AM | Email from Darren Murdoch (SFMAIC) to Bill Young (GWB attorney) requesting recommendation for Melvin Lamb matter | Attorney-Client Privilege |
| GWB_008430 | September 21, 2021 letter from Bill Young to Sean Wilson (10592895.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Warren Moise <warren.moise@gmail.com> | | 11/5/2021 | 12:22:30 PM | Email from Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) and Jennifer Johnsen (attorney for SFMAIC) requesting copy of letter from Bill Young to Sean Wilson | Attorney-Client Privilege; Common Interest |
| GWB_008431 | Service of Melvin Lamb III (10459231.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 10/6/2021 | 3:10:26 PM | Emails between GWB paralegal Luchana Smith and Jennifer Johnsen re attempts to serve Lamb III with DJA complaint | Work Product |
| GWB_008434 | SF v. Workman_Lamb (10477840.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/11/2021 | 6:04:19 PM | Email from Amanda Houser (legal assistant) to Jennifer Johnsen attaching a draft stipulation of dismissal in the DJA litigation | Work Product |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_008435 | Stipulation as to Angela Edwards.DOCX | | | | | Attachment to GWB_008434. Draft stipulation of dismissal as to Angela Edwards | Work Product |
| GWB_008437 | SF v Workman_Lamb (10792976.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm> | Amanda Houser <ahouser@gwblawfirm.com> | 1/11/2022 | 4:23:01 PM | Email from Amanda Houser (legal assistant) to Jennifer Johnsen attaching driver exclusion | Work Product |
| GWB_008438 | 6023DC Driver Exclusion.pdf | | | | | Attachment to GWB_008437. While attachment to work product email is withheld, the document has been produced multiple times in this case, including at GWB_001575 | Work Product |
| GWB_008439 | SFMAIC v. Lamb  2021-21144 - Large File Recipient Access (10924460.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm> | Administrator <postmaster@gwblawfirm.com> | 2/10/2022 | 5:16:23 PM | Automatically generated email showing that large file was successfully shared with client. See GWB_008440 description below | Attorney-Client Privilege |
| GWB_008440 | SFMAIC v. Lamb  2021-21144 - (10924156.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; Monique James <monique.james.gtgq@statefarm.com>; robbie@whelanmellen.com <robbie@whelanmellen.com>; charles@whelanmellen.com <charles@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 2/10/2022 | 4:26:12 PM | Email from Jennifer Johnsen to Guy Conti (SFMAIC), Monique James (SFMAIC), and attorneys Robbie Whelan and Charles Norris attaching a link to the exhibits filed in support of the Estate's Motion for Sanctions | Attorney-Client Privilege |
| GWB_008441 | SFMAIC v. Lamb  2021-21144 - [GWB-IMANMAIN.FID905081].msg | [f905081].imanmain@031be.imanage.work <[f905081].imanmain@031b e.imanage.work> | jjohnsen@gwblawfirm.com <jjohnsen@gwblawfirm.com> | 2/10/2022 | 4:26:09 PM | Automatically generated email showing transmittal of exhibits to Motion for Sanctions via link | Attorney-Client Privilege |
| GWB_008442 | SFMAIC v. Lamb  2021-21144 - (10985226.1).msg | guy.conti.f58t@statefarm.com <guy.conti.f58t@statefarm.com>; charles@whelanmellen.com <charles@whelanmellen.com>; robbie@whelanmellen.com <robbie@whelanmellen.com>; monique.james.gtgq@statefarm.com <monique.james.gtgq@statefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 2/10/2022 | 4:26:12 PM | Automatically generated email showing transmittal of exhibits to Motion for Sanctions via link | Attorney-Client Privilege |
| GWB_008443 | SFMAIC v. Lamb et al.. 2021-21144  ATTORNEY-CLIENT PRIVILEGED COMMUNICATION (10854540.1).msg | Monique James <monique.james.gtgq@statefarm.com>; Guy Conti <guy.conti.f58t@statefarm.com>; robbie@whelanmellen.com <robbie@whelanmellen.com>; charles@whelanmellen.com <charles@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 1/27/2022 | 1:23:22 PM | Email from attorney Jennifer Johnsen to Guy Conti (SFMAIC), Monique James (SFMAIC) and attorneys Robbie Whelan and Charles Norris attaching correspondence from SFMAIC to Lamb III and Lamb Jr. | Attorney-Client Privilege |
| GWB_008444 | Melvin O. Lamb, III - Letter from State Farm [GWB-IMANMAIN.FID905081].msg | Robert Wyndham <rwyndham@gedneyhowe.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 1/27/2022 | 12:59:31 PM | Attachment to GWB_008443. Email transmitting letter from SFMAIC to Robert Wyndham, attorney for Lamb III. | Attorney-Client Privilege; Work Product; Common Interest |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_008445 | Letter to Melvin O Lamb III (Withdrawing ROR etc).pdf | | | | | | Attachment to GWB_008443. Letter from SFMAIC to Lamb III, c/o his attorney Robert Wyndham | Attorney-Client Privilege; Work Product; Common Interest |
| GWB_008446 | SFMAIC v.Melvin O. Lamb, Jr. et al. [GWB-IMANMAIN.FID905081].msg | Mark A. Mason <mark@masonlawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Edwin Warren Moise <warren.moise@gmail.com> | 1/27/2022 | 12:55:35 PM | Attachment to GWB_008443. Email transmitting letter from SFMAIC to Mark Mason and Warren Moise, attorneys for Lamb Jr. | Attorney-Client Privilege; Work Product; Common Interest |
| GWB_008447 | Letter to Melvin O Lamb III (Withdrawing ROR etc).pdf | | | | | | Attachment to GWB_008443. Letter from SFMAIC to Lamb III, c/o his attorney Robert Wyndham | Attorney-Client Privilege; Work Product; Common Interest |
| GWB_008448 | Letter to Melvin O Lamb Jr (withdrawing ROR etc).pdf | | | | | | Attachment to GWB_008443. Letter from SFMAIC to Lamb Jr., c/o his attorney Mark Mason and copying Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) | Attorney-Client Privilege; Work Product; Common Interest |
| GWB_008450 | SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC Attorney Client Privileged _ Work Product (10869354.1).msg | Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com>; Mark Tilkin <mark.tilkin.gzj7@statefarm.com>; Robbie Whelan <robbie@whelanmellen.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Chris Menke <chris.menke.a9mg@statefarm.com> | 1/25/2022 | 12:52:47 PM | Emails between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding draft responses to Estate's Second Discovery Requests and Estate's RTA and Third Discovery Requests and attaching same | Attorney-Client Privilege; Work Product |
| GWB_008451 | Draft Lamb - SF Responses and Objections to RTA and Third Set of Discovery (005).docx | | | | | | Attachment to GWB_008450. Draft of SFMAIC's responses to Estate's Requests to Admit and Third Set of Discovery with revisions. Attorney work product | Attorney-Client Privilege; Work Product |
| GWB_008464 | SF Objections_Responses to Workman_s Second Discovery Requests.pdf | | | | | | Attachment to GWB_008450. Draft of SFMAIC's responses to Estate's Second Discovery Requests. Attorney work product | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_008466 | SFMAIC v. Lamb, III, Melvin O., et al. - 2021-21144 - SC (10865254.1).msg | Monique James <monique.james.gtgq@statefarm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com>; Charles Norris <charles@whelanmellen.com>; Robbie Whelan <robbie@whelanmellen.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Mark Tilkin <mark.tilkin.gzj7@statefarm.com> | 1/17/2022 | 2:51:27 PM | Email between Jennifer Johnsen, Robbie Whelan and Charles Norris (attorneys for SFMAIC) and Guy Conti (SFMAIC) and Monique James (SFMAIC) regarding strategy for DJA litigation. Reveals the recommendations and strategies of counsel. | Attorney-Client Privilege |
| GWB_008467 | SFMAIC v. Lamb, III, Melvin O., et al. - 40-21B2-49D (2021-21144 SC) (10869322.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Guy Conti <guy.conti.f58t@statefarm.com> | HOME LAW-CONTI <home.law-conti.662h00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 1/25/2022 | 9:14:26 AM | Email between attorney Jennifer Johnsen and Guy Conti (SFMAIC) regarding the status of filing motions to dismiss and stay, in light of SFMAIC and its counsel's strategy for resolving the DJA litigation | Attorney-Client Privilege |
| GWB_008468 | SFMAIC v. Lamb, III, Melvin O., et al. - Corr from plaintiff's counsel - 40-21B2-49D (2021-21144 SC) (10985369.1).msg | Guy Conti (Work) <guy.conti.f58t@statefarm.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com> | Robbie Whelan <robbie@whelanmellen.com> | Guy Conti (Other) <home.law-conti.662h00@statefarm.com> | 2/22/2022 | 5:52:44 PM | Redaction of email from attorney Robbie Whelan to attorneys Jennifer Johnsen and Charles Norris, and Guy Conti (SFMAIC) regarding email received from Justin Kahn, potential demand from Estate and mediation | Attorney-Client Privilege |
| GWB_008469 | SFMAIC v. Lamb, III, Melvin O., et al. - Draft Motion to Dismiss and Motion to Stay - 40-21B2-49D (2021-21144 SC) (10869301.1).msg | Guy Conti (Work) <guy.conti.f58t@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | Guy Conti (Other) <home.law-conti.662h00@statefarm.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Charles Norris <charles@whelanmellen.com> | 1/25/2022 | 11:00:04 AM | Email from attorney Robbie Whelan to attorneys Jennifer Johnsen and Charles Norris, and Guy Conti (SFMAIC) attaching drafts of motion to stay and motion to dismiss | Attorney-Client Privilege; Work Product |
| GWB_008470 | SF Motion to Stay Discovery.DOCX | | | | | | Attachment to GWB_008469. Draft of SFMAIC's Motion to Stay Discovery | Attorney-Client Privilege; Work Product |
| GWB_008474 | SF Rule 41(a)(2) Motion to Dismiss.DOCX | | | | | | Attachment to GWB_008469. Draft of SFMAIC's Motion to Dismiss | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| Bates | Description | From | To | CC | Date | Time | Privilege |
|---|---|---|---|---|---|---|---|
| GWB_008477 | SFMAIC v. Lamb, III, Melvin O., et al. - Draft responses to Requests for Admission, etc. - 40-21B2-49D (2021-21144 SC) (10865303.1).msg | Robbie Whelan <robbie@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com> | Chris Menke <chris.menke.a9mg@statefarm.com> | Jennifer Johnsen <Jjohnsen@gwbawfirm.com>; Charles Norris <charles@whelanmellen.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com>; HOME LAW-MENKE <home.law-menke.275l00@statefarm.com> | 1/24/2022 | 8:21:10 AM | Email from Chris Menke (SFMAIC) to attorneys Jennifer Johnsen, Robbie Whelan and Charles Norris and copying other SFMAIC employees regarding answers to discovery in the DJA litigation and attaching documents | Attorney-Client Privilege |
| GWB_008478 | 2021.12.15 Workman Estate Supplemental Discovery Requests.PDF | | | | | | Attachment to GWB_008477. Estate of Workman's Second Discovery Requests to SFMAIC. While the attachment to the email is withheld, the same document was previously produced at GWB_001257 | Attorney-Client Privilege |
| GWB_008480 | [EXTERNAL] FW SFMAIC v. Lamb, III, Melvin O., et al. - Draft responses to Requests for Admission, etc. - 40-21B2-49D (2021-21144 SC).msg | Chris Menke <chris.menke.a9mg@statefarm.com>; Guy Conti <guy.conti.f58t@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | HOME LAW-MENKE <home.law-menke.275l00@statefarm.com>; Jennifer Johnsen <Jjohnsen@gwbawfirm.com>; Charles Norris <charles@whelanmellen.com> | 1/24/2022 | 7:00:13 AM | Attachment to GWB_008477. Email from attorney Robbie Whelan to Chris Menke (SFMAIC), Guy Conti (SFMAIC) and attorneys Jennifer Johnsen and Charles Norris attaching draft Responses and Objections to Estate's RTA and Third Set of Discovery | Attorney-Client Privilege |
| GWB_008481 | SF REsponses and Objections to RTA and Thirs Set of Discovery (Clean Copy revised 1_22_22).pdf | | | | | | Attachment to GWB_008477. Draft of SFMAIC's Objections and Responses to Estate's Request for Admission and Third Discovery Requests | Attorney-Client Privilege; Work Product |
| GWB_008495 | SFMAIC v. Lamb, III, Melvin O., et al. - Draft responses to Requests for Admission, etc. - 40-21B2-49D (2021-21144 SC) (10869300.1).msg | Guy Conti (Work) <guy.conti.f58t@statefarm.com>; Chris Menke <chris.menke.a9mg@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <Jjohnsen@gwbawfirm.com>; Charles Norris <charles@whelanmellen.com>; HOME LAW-MENKE <home.law-menke.275l00@statefarm.com> | 1/25/2022 | 10:39:14 AM | Email from attorney Robbie Whelan to attorneys Jennifer Johnsen and Charles Norris, and Guy Conti (SFMAIC) and Chris Menke (SFMFAIC) attaching draft of SFMAIC's Responses and Objections to Requests to Admit and Third Set of Discovery | Attorney-Client Privilege; Work Product |
| GWB_008496 | Draft Lamb - SF Responses and Objections to RTA and Third Set of Discovery (005).docx | | | | | | Attachment to GWB_008495. Revised draft of SFMAIC's Responses and Objections to Requests to Admit and Third Set of Discovery | Attorney-Client Privilege; Work Product |
| GWB_008510 | SFMAIC v. Lamb, III, Melvin O., et al. - Draft responses to Requests for Admission, etc. - 40-21B2-49D (2021-21144 SC) (10869312.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Robbie Whelan <robbie@whelanmellen.com>; Guy Conti <guy.conti.f58t@statefarm.com> | Chris Menke <chris.menke.a9mg@statefarm.com> | Charles Norris <charles@whelanmellen.com>; HOME LAW-MENKE <home.law-menke.275l00@statefarm.com> | 1/25/2022 | 12:39:46 PM | Emails between attorneys Jennifer Johnsen, Robbie Whelan and Charles Norris and Chris Menke (SFMAIC) regarding revisions to draft Responses and Objections to Requests to Admit and Third Set of Discovery | Attorney-Client Privilege; Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_008512 | SFMAIC v. Lamb, III, Melvin O., et al. - Mediation status - 40-21B2-49D (2021-21144 SC) (11226826.1).msg | Guy Conti (Work) <guy.conti.f58t@statefarm.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Robbie Whelan <robbie@whelanmellen.com> | Guy Conti (Other) <home.law-conti.662h00@statefarm.com>; Katie Mellen <katie@whelanmellen.com>; Jennifer Hunt <jennifer.hunt.vaal6f@statefarm.com> | 4/20/2022 | 10:16:49 AM | Email from attorney Robbie Whelan to attorneys Jennifer Johnsen and Katie Mellen and Guy Conti (SFMAIC) and Jennifer Hunt (SFMAIC) regarding strategy and timing for mediation | Attorney-Client Privilege |
| GWB_008513 | SFMAIC v. Lamb, III, Melvin O., et al. - Plaintiff's Response to MPO - 40-21B2-49D (2021-21144 SC) (11501602.1).msg | Katie Mellen <katie@whelanmellen.com>; Guy Conti (Work) <guy.conti.f58t@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | Guy Conti (Other) <home.law-conti.662h00@statefarm.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Jennifer Hunt <jennifer.hunt.vaal6f@statefarm.com>; Traci Corallo <traci@whelanmellen.com> | 6/17/2022 | 5:20:34 PM | Email from attorney Robbie Whelan to attorneys Jennifer Johnsen and Katie Mellen and Guy Conti (SFMAIC) and Jennifer Hunt (SFMAIC) regarding Estate's response to SFMAIC's Motion for Protective Order and attaching same | Attorney-Client Privilege |
| GWB_008514 | 2022.06.17 - Response to State Farm Motion for Protection.pdf | | | | | | Attachment to GWB_008513. While attachment to the email is withheld, the document was filed in the DJA litigation (2:21-cv-02623-MBS at ECF 85) | Attorney-Client Privilege |
| GWB_008526 | SFMAIC v. Lamb, III, Melvin O., et al. - Reply to Response to Motion for Sanctions - 40-21B2-49D (2021-21144 SC) (11501879.1).msg | Guy Conti (Work) <guy.conti.f58t@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | Guy Conti (Other) <home.law-conti.662h00@statefarm.com>; Jennifer Hunt <jennifer.hunt.vaal6f@statefarm.com>; Jennifer Johnsen <Jjohnsen@gwblawfirm.com>; Katie Mellen <katie@whelanmellen.com> | 6/1/2022 | 9:07:28 AM | Email from attorney Robbie Whelan to attorneys Jennifer Johnsen and Katie Mellen and Guy Conti (SFMAIC) and Jennifer Hunt (SFMAIC) regarding Estate's Reply to SFMAIC's Response in Opposition to Motion for Sanctions and attaching same | Attorney-Client Privilege |
| GWB_008528 | 2022.05.31  Reply to State Farm Response Typo Corrected.pdf | | | | | | Attachment to GWB_008526. While attachment to email is withheld, the document was previously produced at GWB_001847 | Attorney-Client Privilege |
| GWB_008541 | SFMAIC v. Lamb, III, Melvin O., et al. - Supplemental Discovery Requests due 1_14_22 - 2021-21144 (10865206.1).msg | Jennifer Johnsen <Jjohnsen@gwblawfirm.com> | Chris Menke <chris.menke.a9mg@statefarm.com> | HOME LAW-MENKE <home.law-menke.275l00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 1/11/2022 | 3:53:40 PM | Email from Chris Menke (SFMAIC) to attorney Jennifer Johnsen regarding driver exclusion form utlized in Shay Anderson's deposition | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_008542 | SFMAIC v.Melvin O. Lamb, Jr. et al. (10854178.1).msg | Mark A. Mason <mark@masonlawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | Edwin Warren Moise <warren.moise@g mail.com> | 1/27/2022 | 12:55:35 PM | Email from Jennifer Johnsen to Mark Mason (attorney for Lamb Jr.) and Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) attaching letter from SFMAIC to Lamb Jr. and letter from SFMAIC to Lamb III | Attorney-Client Privilege; Common Interest; Work Product |
| GWB_008543 | Letter to Melvin O Lamb III 1_27_2022.pdf | | | | | | Attachment to GWB_008542. Letter from SFMAIC to Lamb III c/o his attorney Robert Wyndham | Attorney-Client Privilege; Common Interest; Work Product |
| GWB_008544 | Letter to Melvin O Lamb Jr 1_27_2022.pdf | | | | | | Attachment to GWB_008542. Letter from SFMAIC to Lamb Jr. c/o his attorney Mark Mason | Attorney-Client Privilege; Common Interest; Work Product |
| GWB_008546 | State Farm  v. Melvin O. Lamb jr., et al. (10699087.1).msg | Amanda Houser <ahouser@gwblawfirm.com > | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | | 12/6/2021 | 7:06:36 PM | Email from attorney Jennifer Johnsen to her legal assistant regarding GWB's file for the DJA litigation | Work Product |
| GWB_008547 | State Farm b. Melvin O. Lamb III, et al. (11253126.1).msg | Bill@RyanMontgomeryLaw.c om <Bill@RyanMontgomeryLaw. com> | Amanda Houser <ahouser@gwblawfir m.com> | | 4/28/2022 | 11:52:04 AM | Email from legal assistant Amanda Houser to attorney Bill Young attaching filed Stipulations of Dismissal in the DJA litigation | Work Product |
| GWB_008548 | 29_Stipulation as to Jonathan Keller.PDF | | | | | | Attachment to GWB_008547. Stipulation as to Jonathan Keller. While attachment to email is withheld, the document was filed in the DJA and has been previously produced at GWB_000360 | Work Product |
| GWB_008550 | 31_Stipulation as to Angela Edwards.PDF | | | | | | Attachment to GWB_008547. Stipulation as to Angela Edwards. While attachment to email is withheld, the document was filed in the DJA and has been previously produced at GWB_000362 | Work Product |
| GWB_008552 | 33_Stipulation as to Constance and Mario Molinaro.PDF | | | | | | Attachment to GWB_008547. Stipulation as to Constance and Mario Molinaro. While attachment to email is withheld, the document was filed in the DJA and has been previously produced at GWB_000364 | Work Product |
| GWB_008554 | State Farm DJ action - Lamb (10763138.1).msg | Amanda Houser <ahouser@gwblawfirm.com > | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | | 12/2/2021 | 4:40:35 PM | Email from attorney Jennifer Johnsen to legal assistant Amanda Houser requesting that she gather the documents produced by SFMAIC in the DJA and discovery responses, in preparation of the 30(b)(6) deposition | Work Product |
| GWB_008555 | State Farm DJ Action (10843464.1).msg | Mark A. Mason <mark@masonlawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | | 1/25/2022 | 10:08:53 AM | Email from Jennifer Johnsen to Lamb Jr.'s attorney Mark Mason requesting time for a call | Attorney-Client Privilege; Common Interest |
| GWB_008556 | State Farm DJ re_ Melvin Lamb, Jr. (10783819.1).msg | Shay Anderson <shay.anderson.grfs@statefa rm.com> | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | | 1/9/2022 | 7:49:58 PM | Email from attorney Jennifer Johnsen to Shay Anderson (SFMAIC) attaching supplemental discovery requests from the Estate. Attorney Johnsen posing questions relating to the responses and documents requested | Attorney-Client Privilege; Work Product |
| GWB_008557 | 2021.12.15 Workman Estate Supplemental Discovery Requests.PDF | | | | | | Attachment to GWB_008556. While attachment is withheld with the privileged email, the document has been previously produced at GWB_001257 | Attorney-Client Privilege |
| GWB_008559 | 2021.12.20 Workman_s 3rd Discovery Requests.PDF | | | | | | Attachment to GWB_008556. While attachment is withheld with the privileged email, the document has been previously produced at GWB_001259 | Attorney-Client Privilege |
| GWB_008574 | 2021.12.22 Workman_s Corrected Third Discovery Request.PDF | | | | | | Attachment to GWB_008556. While attachment is withheld with the privileged email, the document has been previously produced at GWB_001274 | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_008578 | State Farm Mut. Auto. Ins. Co. v. Melvin O. Lamb III, et al. (11150195.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com> | Amanda Houser <ahouser@gwblawfirm.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | 4/7/2022 | 12:03:24 PM | Email from legal assistant Amanda Houser to attorney Robbie Whelan attaching transcript of 30(b)(6) deposition and exhibits. | Work Product |
| GWB_008579 | Anderson, Shay cond.PDF | | | | | | Attachment to GWB_008578. While attachment is withheld with email, the document has been previously produced at GWB_001426 | Work Product |
| GWB_008655 | Anderson, Shay Def exh 1-17.PDF | | | | | | Attachment to GWB_008578. While attachment is withheld with email, the document has been previously produced at GWB_001502 | Work Product |
| GWB_008793 | Anderson, Shay Plt exh 1-6.PDF | | | | | | Attachment to GWB_008578. While attachment is withheld with email, the document has been previously produced at GWB_001640 | Work Product |
| GWB_008799 | Anderson, Shay.PDF | | | | | | Attachment to GWB_008578. While attachment is withheld with email, the document has been previously produced at GWB_001646 | Work Product |
| GWB_009008 | State Farm Secure Messaging_ New Message from darren.p.murdoch.gr1u@statefarm.com (10306173.1).msg | Tania McGee <tmcgee@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | | 7/22/2021 | 3:11:11 PM | Notification of receipt of secure message. Non-substantive | Attorney-Client Privilege |
| GWB_009009 | secure.pdf | | | | | | Attachment to GWB_009009. No document | Attorney-Client Privilege |
| GWB_009010 | State Farm Secure Messaging_ New Message from shay.anderson.grfs@statefarm.com (10865205.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Shay Anderson <shay.anderson.grfs@statefarm.com> | Chris Menke <chris.menke.a9mg@statefarm.com>; HOME LAW-MENKE <home.law-menke.275l00@statefarm.com>; Nicole Granger <nicole.granger.qu4l@statefarm.com> | 1/11/2022 | 3:12:05 PM | Notification of receipt of secure message. Non-substantive | Attorney-Client Privilege |
| GWB_009011 | secure.pdf | | | | | | Attachment to GWB_009010. No document. | Attorney-Client Privilege |
| GWB_009012 | State Farm timeline (11260667.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 4/24/2022 | 9:04:57 PM | Email from attorney Jennifer Johnsen to attorney Robbie Whelan attaching a draft of a timeline prepared by attorney Jennifer Johnsen for purposes of the DJA litigation. | Work Product |
| GWB_009013 | Timeline for SF Policy.DOCX | | | | | | Document prepared by attorney Jennifer Johnsen for purposes of the DJA litigation. Confidential document prepared exclusively for client and counsel and containing the mental impressions and opinions of counsel | Work Product |
| GWB_009017 | State Farm v. Lamb (10304666.1).msg | Mark Mason <mark@masonlawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 8/19/2021 | 12:37:41 PM | Email from attorney Bill Young to Mark Mason (attorney for Lamb Jr.) attaching filed pleadings in the DJA litigation | Attorney-Client Privilege; Common Interest |
| GWB_009018 | DE 02 - Plaintiff_s Answers to LR 26.01 ROGs.PDF | | | | | | Attachment to GWB_009017. While attachment is withheld with email, the document was filed in the DJA and has been previously produced in this case, including at GWB_000515 | Attorney-Client Privilege; Common Interest |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_009021 | DE 04 - Summons Issued to Melvin O. Lamb, Jr..PDF | | | | | | Attachment to GWB_009017. While attachment is withheld with email, the document was filed in the DJA and has been previously produced in this case, including at GWB_000520 | Attorney-Client Privilege; Common Interest |
| GWB_009023 | DR 01 - Declaratory Judgment Complaint with Exhibit.PDF | | | | | | Attachment to GWB_009017. While attachment is withheld with email, the document was filed in the DJA and has been previously produced in this case, including at GWB_000448 | Attorney-Client Privilege; Common Interest |
| GWB_009090 | State Farm v. Lamb (10363223.1).msg | Luchana Smith <lsmith@gwblawfirm.com>; Nekayla McKinney <nMcKinney@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 9/8/2021 | 2:11:28 PM | Email from attorney Bill Young to GWB paralegal and legal assistant re filing of affidavits of service and waivers of service in the DJA litigation | Work Product |
| GWB_009091 | State Farm v. Lamb et al. --- DRAFT Email to JK (10985280.1).msg | Guy Conti <guy.conti.f58t@statefarm.com>; robbie@whelanmellen.com <robbie@whelanmellen.com>; charles@whelanmellen.com <charles@whelanmellen.com> | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | | 2/3/2022 | 11:39:57 AM | Email from attorney Jennifer Johnsen to attorneys Robbie Whelan and Charles Norris, and Guy Conti (SFMAIC) with draft email to Justin Kahn, counsel for the Estate | Attorney-Client Privilege |
| GWB_009092 | State Farm v. Lamb et al (11250469.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | Natalie Ecker <eckern@gwblawfirm.com> | 4/27/2022 | 5:42:46 PM | Email from legal assistant Amanda Houser to attorneys Jennifer Johnsen and Natalie Ecker attaching link to letter from Justin Kahn to the Court | Work Product |
| GWB_009093 | 76_Ltr from Atty Kahn to Court re Extenstion of Time.nrl | | | | | | Attachment to GWB_009092. Attachment is a link, not the document itself, however, the document was filed in the DJA and has been previously produced at GWB_000092 | Work Product |
| GWB_009094 | State Farm v. Lamb, et al. - Affidavits of Service (10367913.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Bill Young <byoung@gwblawfirm.com> | | 9/9/2021 | 2:11:32 PM | Email from attorney Bill Young to paralegal Luchana Smith attaching unsigned affidavits of service and requesting that she contact the process server to obtain signed affidavits | Work Product |
| GWB_009095 | Affidavit of Service for Constance Molinaro.PDF | | | | | | Attachment to GWB_009094. Unsigned affidavit of service to be returned to process server for signature | Work Product |
| GWB_009097 | Affidavit of Service for Deborah D. Plott.PDF | | | | | | Attachment to GWB_009094. Unsigned affidavit of service to be returned to process server for signature | Work Product |
| GWB_009099 | Affidavit of Service for Jonathan Keller.PDF | | | | | | Attachment to GWB_009094. Unsigned affidavit of service to be returned to process server for signature | Work Product |
| GWB_009100 | Affidavit of Service for Katherine M. Vonesh.PDF | | | | | | Attachment to GWB_009094. Unsigned affidavit of service to be returned to process server for signature | Work Product |
| GWB_009102 | Affidavit of Service for Mario Molinaro.PDF | | | | | | Attachment to GWB_009094. Unsigned affidavit of service to be returned to process server for signature | Work Product |
| GWB_009104 | Affidavit of Service for Mathis Billman.PDF | | | | | | Attachment to GWB_009094. Unsigned affidavit of service to be returned to process server for signature | Work Product |
| GWB_009106 | Affidavit of Service to Luke Billman.PDF | | | | | | Attachment to GWB_009094. Unsigned affidavit of service to be returned to process server for signature | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_009108 | Affidavit of Service to Michael Moore.PDF | | | | | | Attachment to GWB_009094. Unsigned affidavit of service to be returned to process server for signature | Work Product |
| GWB_009110 | State Farm v. Lamb, et al. - Waiver of Service for Melvin O. Lamb, Jr. (10362118.1).msg | Mark Mason <mark@masonlawfirm.com> | Bill Young <byoung@gwblawfirm.com> | warren.moise@gmail.com <warren.moise@gmail.com> | 9/8/2021 | 10:56:05 AM | Email from attorney Bill Young to Mark Mason (attorney for Lamb Jr.) and Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) attaching a proposed waiver of service for Mark Mason's signature | Attorney-Client Privilege; Common Interest |
| GWB_009111 | Waiver of Service - Melvin O. Lamb, Jr..DOCX | | | | | | Attachment to GWB_009110. Draft waiver of service as to Lamb Jr. | Attorney-Client Privilege; Common Interest |
| GWB_009113 | State Farm v. Lamb, et al. (10304335.1).msg | mgriffith@griffithfreeman.com <mgriffith@griffithfreeman.com>; warren.moise@gmail.com <warren.moise@gmail.com> | Bill Young <byoung@gwblawfirm.com> | | 8/19/2021 | 11:43:31 AM | Email from attorney Bill Young to attorneys Mitch Griffith (retained by SFMAIC to represent Lamb III) and Warren Moise (retained by SFMAIC to represent Lamb Jr.) attaching filed summons to Lamb Jr. and Lamb III | Attorney-Client Privilege; Common Interest |
| GWB_009114 | DE 03 - Summons Issued to Melvin O. Lamb, III.PDF | | | | | | Attachment to GWB_009113. While attachment is withheld with email, the document was filed in the DJA and has been previously produced at GWB_000518 | Attorney-Client Privilege; Common Interest |
| GWB_009116 | DE 04 - Summons Issued to Melvin O. Lamb, Jr..PDF | | | | | | Attachment to GWB_009113. While attachment is withheld with email, the document was filed in the DJA and has been previously produced at GWB_000520 | Attorney-Client Privilege; Common Interest |
| GWB_009118 | State Farm v. Lamb, et al (DJ action) (10304242.1).msg | mgriffith@griffithfreeman.com <mgriffith@griffithfreeman.com>; warren.moise@gmail.com <warren.moise@gmail.com> | Bill Young <byoung@gwblawfirm.com> | | 8/19/2021 | 11:32:30 AM | Email from attorney Bill Young to attorneys Mitch Griffith (retained by SFMAIC to represent Lamb III) and Warren Moise (retained by SFMAIC to represent Lamb Jr.) attaching filed pleadings in the DJA litigation | Attorney-Client Privilege; Common Interest |
| GWB_009119 | DE 01 - Declaratory Judgment Complaint.PDF | | | | | | Attachment to GWB_009118. While attachment is withheld with email, the document was filed in the DJA and has been previously produced multiple times, including at GWB_000442 | Attorney-Client Privilege; Common Interest |
| GWB_009125 | DE 02 - Plaintiff_s Answers to LR 26.01 ROGs.PDF | | | | | | Attachment to GWB_009118. While attachment is withheld with email, the document was filed in the DJA and has been previously produced multiple times, including at GWB_000515 | Attorney-Client Privilege; Common Interest |
| GWB_009128 | Filed Exhibit A to Complaint.pdf | | | | | | Attachment to GWB_009118. While attachment is withheld with email, the document was filed in the DJA and has been previously produced multiple times, including at GWB_000454 | Attorney-Client Privilege; Common Interest |
| GWB_009189 | State Farm v. Lamb_Estate of Workman et al. (10481964.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 10/12/2021 | 11:45:33 AM | Email from legal assistant Amanda Houser to attorney Jennifer Johnsen attaching draft of Joint Rule 26(f) Discovery Plan | Work Product |
| GWB_009190 | Joint Rule 26(f) Discovery Plan.DOC | | | | | | Attachment to GWB_009189. Draft of Joint Rule 26(f) Discovery Plan | Work Product |
| GWB_009193 | State Farm v. Melvin Lamb et al. - 30(b)(6) Transcript of Anderson (10926208.1).msg | greenville@apslegalease.com <greenville@apslegalease.com> | Amanda Houser <ahouser@gwblawfirm.com> | | 2/11/2022 | 10:37:35 AM | Email from Amanda Houser (legal assistant) to court reporter requesting copy of transcript from 30(b)(6) deposition in the DJA litigation | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_009194 | State Farm v. Workman - Service on Melvin Lamb III (10414659.1).msg | Luchana Smith <lsmith@gwblawfirm> | Bill Young <byoung@gwblawfirm.com> | | 9/23/2021 | 11:37:04 AM | Email from attorney Bill Young to paralegal Luchana Smith regarding attempted service of Lamb III | Work Product |
| GWB_009195 | State Farm v. Workman (6384-2825) - Discovery requests and 30(b)(6) Depo (10444221.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com | Tania McGee <tmcgee@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com>; Luchana Smith <lsmith@gwblawfirm.com> | 10/3/2021 | 3:33:51 PM | Email from legal assistant Tania McGee to attorney Jennifer Johnsen regarding assignment of DJA litigation to Jennifer Johnsen and attaching documents received by attorney Bill Young in the litigation | Work Product |
| GWB_009196 | 2021.09.28 Cover letter JSKahn to WTYoung.PDF | | | | | | Attachment to GWB_009195. While attachment to email is withheld, the document has been previously produced at GWB_000056 | Work Product |
| GWB_009197 | 2021.09.28 Workman Estate First Discovery Requests to PLTF State Farm.PDF | | | | | | Attachment to GWB_009195. While attachment to email is withheld, the document has been previously produced at GWB_001253 | Work Product |
| GWB_009201 | 30(b)(6) NOD - State Farm (11_4_21 @ Kahn Law Firm) (served 9-28-21).PDF | | | | | | Attachment to GWB_009195. While attachment to email is withheld, the document has been previously produced at GWB_001239 | Work Product |
| GWB_009205 | State Farm v. Workman_Lamb (10692546.1).msg | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | 12/7/2021 | 10:21:10 AM | Email from legal assistant Amanda Houser to legal assistant Nekayla McKinner attaching link to Notice of Deposition | Work Product |
| GWB_009206 | 30(b)(6) NOD - State Farm (11_4_21 @ Kahn Law Firm) (served 9-28-21).nrl | | | | | | Attachment to GWB_009205. Link to document previously produced at GWB_001239 | Work Product |
| GWB_009207 | State Farm v. Workman_Lamb et al. (10680569.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Amanda Houser <ahouser@gwblawfirm.com> | | 12/2/2021 | 1:10:39 PM | Email from legal assistant Amanda Houser to attorney Jennifer Johnsen attaching draft of response to Estate's Tyger River demand, with incorporated revisions | Work Product |
| GWB_009208 | Response to 11_29_21 Tyger River demand.DOCX | | | | | | Attachment to GWB_009207. Draft of response to Estate's Tyger River demand | Work Product |
| GWB_009212 | SUBPOENA NEEDED - State Farm v. Workman_Lamb (10692384.1).msg | Luchana Smith <lsmith@gwblawfirm.com> | Nekayla McKinney <nMcKinney@gwblawfirm.com> | Amanda Houser <ahouser@gwblawfirm.com> | 12/7/2021 | 9:59:47 AM | Email from legal assistant Nekayla McKinny to paralegal Luchana Smith looking for subpoena sent by Estate on August 20, 2021 | Work Product |
| GWB_009213 | Subpoena to State Farm - Estate of Workman v. Lamb Large File Recipient Access (10397406.1).msg | Bill Young <byoung@gwblawfirm.com> | Administrator <postmaster@gwblawfirm.com> | | 9/17/2021 | 4:49:17 PM | Automatically generated email confirming that files were accessed by Justin Kahn. Non-substantive. | Work Product |
| GWB_009214 | Subpoena to State Farm - Estate of Workman v. Lamb Large File Recipient Access (10417104.1).msg | Bill Young <byoung@gwblawfirm.com> | Administrator <postmaster@gwblawfirm.com> | | 9/24/2021 | 9:27:33 AM | Automatically generated email confirming that files were accessed by Warren Moise. Non-substantive. | Work Product |
| GWB_009215 | The Estate of James Workman (10358691.1).msg | Bill Young <byoung@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | | 9/7/2021 | 1:37:01 PM | Email from paralegal Luchana Smith to attorney Bill Young regarding affidavits of service received by process server, and acceptances of service that are still needed | Work Product |
| GWB_009216 | UPDATE FOR CONFLICTS_ New Assignment 4021B249D (10306171.1).msg | Paula Forbes <pforbes@GWBlawfirm.com> | Tania McGee <tmcgee@gwblawfirm.com> | | 7/22/2021 | 3:25:34 PM | Internal GWB emails running conflicts check for new SFMAIC matter and attaching documents for that purpose | Work Product |
| GWB_009219 | Melvin Otto Lamb III - Criminal Report.pdf | | | | | | Attachment to GWB_009216. While attachment is withheld with email, the document has been previously produced at GWB_000642 | Work Product |
| GWB_009228 | Police Report.pdf | | | | | | Attachment to GWB_009216. While attachment is withheld with email, the document has been previously produced at GWB_000575 | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_009235 | Use of Credit card to Pay Invoice (Workman vs Lamb (10314209.1).msg | Kim Free <kfree@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm. com> | Bill Young <byoung@gwblawf irm.com> | 8/23/2021 | 5:04:10 PM | Internal GWB email regarding payment of process server invoice by credit card | Work Product |
| GWB_009236 | We Serve Law W-9 for New Check Request (10511596.1).msg | Juhi Patel <jpatel@gwblawfirm.com>; Kim Free <kfree@gwblawfirm.com>; Tricia Hartin <thartin@gwblawfirm.com>; Zakiya Williams <zwilliams@gwblawfirm.com > | Amanda Houser <ahouser@gwblawfir m.com> | | 10/19/2021 | 1:07:09 PM | Email from legal assistant to GWB accounting attaching W-9 for check request related to payment for service of DJA litigation complaint | Work Product |
| GWB_009237 | We Serve 2020 - W9.pdf | | | | | | Attachment to GWB_009236. W-9 for process server used in the DJA litigation | Work Product |
| GWB_009243 | Workman - Cl. No. 4021B249D (10502633.1).msg | darren.p.murdoch.gr1u@sta tefarm.com <darren.p.murdoch.gr1u@st atefarm.com> | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | | 10/3/2021 | 8:37:03 PM | Email from attorney Jennifer Johnsen to Darren Murdoch (SFMAIC) attaching response sent by attorney Bill Young to Justin Kahn regarding subpoena and 30(b)(6) deposition notice | Attorney-Client Privilege |
| GWB_009244 | Response to Deposition Notice and Subpoena (for email).PDF | | | | | | Attachment to GWB_009243. While attachment is withheld with email, the document has been previously produced at GWB_000083 | Attorney-Client Privilege |
| GWB_009246 | Workman (11226836.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Robbie Whelan <robbie@whelanmell en.com> | | 4/7/2022 | 8:32:42 AM | Email from attorney Robbie Whelan to attorney Jennifer Johnsen regarding mediation | Work Product |
| GWB_009247 | Workman (11260661.1).msg | robbie@whelanmellen.com <robbie@whelanmellen.com > | Jennifer Johnsen <jjohnsen@gwblawfir m.com> | | 4/19/2022 | 6:39:05 PM | Email from attorney Jennifer Johnsen to attorney Robbie Whelan regarding mediation and the Estate's request to stay a motion | Work Product |
| GWB_009291 | Workman v. Lamb (10230855.1).msg | Julia Bradshaw <jbradshaw@gwblawfirm.co m> | Cynthia Smart <csmart@gwblawfir m.com> | | 7/29/2021 | 3:28:34 PM | Email from legal assistant Cynthia Smart to attorney Julia Bradshaw regarding attempted call to Lee Shivers (SFMAIC) | Work Product |
| GWB_009292 | Workman v. Lamb mediation (11100574.1).msg | Monique James <monique.james.gtgq@state farm.com>; Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Robbie Whelan <robbie@whelanmell en.com> | Guy Conti (Work) <guy.conti.f58t@st atefarm.com>; Charles Norris <charles@whelan mellen.com> | 3/28/2022 | 5:26:09 PM | Email from attorney Robbie Whelan to attorneys Jennifer Johnsen and Charles Norris, and Monique James (SFMAIC) and Guy Conti (SFMAIC) regarding strategy and approach for upcoming mediation. Privileged communication containing the mental impressions, opinions and recommendations of counsel | Attorney-Client Privilege; Work Product |
| GWB_009294 | Workman v. Lamb--Letter from plaintiff's counsel --(2021-21144) (11226824.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com > | Robbie Whelan <robbie@whelanmell en.com> | Guy Conti (Work) <guy.conti.f58t@st atefarm.com>; Guy Conti (Other) <home.law-conti.662h00@stat efarm.com>; Katie Mellen <katie@whelanmel len.com>; Charles Norris <charles@whelan mellen.com> | 3/25/2022 | 8:27:39 PM | Email from attorney Robbie Whelan to attorneys Jennifer Johnsen and Charles Norris, and Monique James (SFMAIC) and Guy Conti (SFMAIC) regarding letter received from Justin Kahn and strategy for upcoming mediation | Attorney-Client Privilege; Work Product |
| GWB_009295 | 2022.03.25 Letter Re Motion for Stay and Mediation.pdf | | | | | | Attachment to GWB_009294. While attachment is withheld with email, the document was previously produced at GWB_003467 | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| Bates | Title | From | To | CC | Date | Time | Description | Privilege |
|---|---|---|---|---|---|---|---|---|
| GWB_009297 | Workman vs Lamb- Service on Lamb III (10565926.1).msg | Amanda Houser <ahouser@gwblawfirm.com>; Nekayla McKinney <nMcKinney@gwblawfirm.com> | Luchana Smith <lsmith@gwblawfirm.com> | Jennifer Johnsen <Jjohnsen@gwbla wfirm.com> | 11/1/2021 | 4:15:55 PM | Email from paralegal Luchana Smith to legal assistant Amanda Houser regarding the status of service on Lamb III in the DJA litigation | Work Product |
| GWB_009298 | Workman_Lamb (11226854.1).msg | Monique James <monique.james.gtgq@state farm.com>; Guy Conti (Work) <guy.conti.f58t@statefarm.com> | Robbie Whelan <robbie@whelanmellen.com> | Charles Norris <charles@whelan mellen.com>; Jennifer Johnsen <Jjohnsen@gwbla wfirm.com>; Guy Conti (Other) <home.law-conti.662h00@stat efarm.com> | 2/14/2022 | 5:01:41 PM | Email from attorney Robbie Whelan to attorneys Jennifer Johnsen and Charles Norris, and Monique James (SFMAIC) and Guy Conti (SFMAIC) regarding photos received from Justin Kahn related to the DJA litigation | Attorney-Client Privilege |
| GWB_009299 | 2022.02.14 Quick overview for Whelan.docx | | | | | | Attachment to GWB_009298. While the attachment is withheld with the privileged email, this document is already in Plaintiffs' possession, as it was prepared by Justin Kahn, attorney for the Estate in the DJA and attorney for Plaintiffs in this case | Attorney-Client Privilege |
| GWB_009303 | Workman_Lamb matter (10975830.1).msg | warren.moise@gmail.com <warren.moise@gmail.com>; mark@masonlawfirm.com <mark@masonlawfirm.com> | Robbie Whelan <robbie@whelanmellen.com> | Jennifer Johnsen <Jjohnsen@gwbla wfirm.com> | 2/14/2022 | 11:07:26 AM | Email from attorney Robbie Whelan to Mark Mason (attorney for Lamb Jr.) and Warren Moise (attorney retained by SFMAIC to represent Lamb Jr.) regarding scheduling of mediation | Attorney-Client Privilege; Common Interest; Work Product |
| GWB_009304 | Your recent new matter has been assigned a case number (10222396.1).msg | Cynthia Smart <csmart@gwblawfirm.com> | New_Matter_Numbe r_Update@gwblawfir m.com <New_Matter_Numb er_Update@gwblawfi rm.com> | | 7/27/2021 | 9:46:00 AM | Internal GWB email assigning a case number to new SFMAIC matter | Work Product |
| GWB_009305 | 2004 Chevrolet Tahoe (10598391.1).pdf | | | | | | Documents shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. Documents have been previously produced at GWB_001106-1110; GWB_001147-1164; GWB_001120-001121; GWB_001138-001139 | Work Product |
| GWB_009341 | Accident Report (10249334.1).pdf | | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. This same document has been produced elsewhere, including at GWB_002074 | Work Product |
| GWB_009347 | 632 3189-40 Lamb, Melvin - Application (10865200.1).pdf | | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. This same document has been produced elsewhere, including at GWB_001101-001105 | Work Product |
| GWB_009352 | 632 3189-40 Lamb, Melvin - CHD, CRIC (10865201.1).pdf | | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. | Work Product |
| GWB_009361 | 632 3189-40 Lamb, Melvin - CUI (10865202.1).pdf | | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. | Work Product |
| GWB_009362 | 632 3189-40 Lamb, Melvin - F10 and images (10865186.1).pdf | | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GWB_009370 | 632 3189-40 Lamb, Melvin - F17, AI (10865187.1).pdf | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. | Work Product |
| GWB_009380 | 632 3189-40 Lamb, Melvin - F5 (10865203.1).pdf | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. | Work Product |
| GWB_009390 | 632 3189-40 Lamb, Melvin - F6, F2 (10865204.1).pdf | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. | Work Product |
| GWB_009424 | 632 3189-40 Lamb, Melvin - GRP (10865188.1).pdf | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. | Work Product |
| GWB_009429 | 632 3189-40 Lamb, Melvin - HC (10865189.1).pdf | | | | | Materials gathered in connection with the DJA litigation and shared by SFMAIC with its attorneys for purposes of representation in the litigation | Work Product |
| GWB_009439 | 632 3189-40 Lamb, Melvin - HH Client Violations (10865190.1).pdf | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. | Work Product |
| GWB_009445 | 632 3189-40 Lamb, Melvin - HN (10865191.1).pdf | | | | | Materials gathered in connection with the DJA litigation and shared by SFMAIC with its attorneys for purposes of representation in the litigation. Document contains notes entered by SFMAIC in connection with the DJA litigation, and which would not have been entered if not for the litigation | Work Product |
| GWB_009457 | 632 3189-40 Lamb, Melvin - HP (10865192.1).pdf | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. | Work Product |
| GWB_009461 | 632 3189-40 Lamb, Melvin - IPMR (10865193.1).pdf | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. | Work Product |
| GWB_009462 | 632 3189-40 Lamb, Melvin - MLD (10865194.1).pdf | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. | Work Product |
| GWB_009463 | 632 3189-40 Lamb, Melvin - PMR, F9 (10865195.1).pdf | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. | Work Product |
| GWB_009481 | 632 3189-40 Lamb, Melvin - PRH (10865196.1).pdf | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. | Work Product |
| GWB_009483 | 632 3189-40 Lamb, Melvin - SH (10865197.1).pdf | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation in the DJA litigation. | Work Product |
| GWB_009493 | Microsoft Outlook - Memo Style - Email to Actuary (10865198.1).pdf | | | | | Internal SFMAIC email revealing communication received from attorney Jennifer Johnsen and regarding information requested for purposes of representation of SFMAIC in the DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_009495 | Microsoft Outlook - Memo Style - Email to J Johnsen (10865199.1).pdf | | | | | Email from Shay Anderson (SFMAIC) to Jennifer Johnsen (GWB attorney) re information gathered at the request of GWB for the purposes of the DJA litigation | Attorney-Client Privilege; Work Product |
| GWB_009496 | Initial Intake (10222359.1).docx | | | | | Internal initial interview form for new GWB case files | Work Product |

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_009501 | JEJ Notes - Lamb Notes (10_5_21) (10533314.1).pdf | | | | | | Handwritten notes by Jennifer Johnsen for purposes of DJA litigation. Attorney work product revealing attorney's mental impressions | Work Product |
| GWB_009502 | JEJ Notes - Lee Shivers w_ Statefarm (10_5_21) (10533513.1).pdf | | | | | | Handwritten notes by Jennifer Johnsen for purposes of DJA litigation. Attorney work product revealing attorney's mental impressions | Work Product |
| GWB_009503 | MEMO TO FILE Atty Notes (10222358.1).docx | | | | | | Notes by attorney Julia Bradshaw regarding the DJA litigation, revealing her mental impressions and work performed by attorney Bradshaw in DJA litigation | Work Product |
| GWB_009505 | Certified Copy of Policy (10253294.1).pdf | | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation of SFMAIC in the DJA litigation. Documents have been previously produced at GWB_001160-001184 and GWB_000780 | Work Product |
| GWB_009532 | Claim File_4021B249D_17316270632 58828 (10222319.1).pdf | | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation of SFMAIC in the DJA litigation. Claim file prepared by SFMAIC because of the Accident involving a vehicle insured by SFMAIC and in anticipation of litigation | Work Product |
| GWB_009998 | Driver Exclusion Form- effective 02262020 (10253301.1).pdf | | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation of SFMAIC in the DJA litigation. Document has been previously produced at GWB_004284 | Work Product |
| GWB_009999 | Lamb Declarations Page Redacted (10269670.1).pdf | | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation of SFMAIC in the DJA litigation. Document has been previously produced at GWB_000811 | Work Product |
| GWB_010002 | PG 260-D01 - Driver Exclusion Agreement (10697842.1).pdf | | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation of SFMAIC in the DJA litigation. Document has been produced at GWB_008985-009006 | Work Product |
| GWB_010024 | PG 260-D01 - Driver Exclusion Agreement (10697847.1).pdf | | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation of SFMAIC in the DJA litigation. Document has been produced at GWB_008985-009006 | Work Product |
| GWB_010046 | RUMBA Document (10697844.1).pdf | | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation of SFMAIC in the DJA litigation. Document has been produced at GWB_004716 | Work Product |
| GWB_010047 | RUMBA Document (10697845.1).pdf | | | | | | Document shared by SFMAIC with its attorneys at GWB for purposes of representation of SFMAIC in the DJA litigation. Document has been produced at GWB_004716 | Work Product |
| GWB_010048 | Lamb 1 (10466734.1).pdf | | | | | | Pre-production compilation of documents shared by SFMAIC with its attorneys at GWB for purposes of representation of SFMAIC in the DJA litigation. These documents were produced in response to a subpoena and have been produced in this case at GWB_000765-000873 | Work Product |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| GWB_010157 | Lamb 1 (2) (11472838.1).pdf | | | | | | Compilation of documents shared by SFMAIC with its attorneys at GWB for purposes of representation of SFMAIC in the DJA litigation. These documents have been produced elsewhere. | | Work Product |
| GWB_010266 | Lamb 2 (10466711.1).pdf | | | | | | Pre-production compilation of documents shared by SFMAIC with its attorneys at GWB for purposes of representation of SFMAIC in the DJA litigation. These documents were produced in response to a subpoena and have been produced in this case at GWB_000874-000993 | | Work Product |
| GWB_010386 | Lamb 3 (10466717.1).pdf | | | | | | Pre-production compilation of documents shared by SFMAIC with its attorneys at GWB for purposes of representation of SFMAIC in the DJA litigation. These documents were produced in response to a subpoena and have been produced in this case at GWB_000994-001009 | | Work Product |
| GWB_010402 | Lamb 4 (10466721.1).pdf | | | | | | Pre-production compilation of documents shared by SFMAIC with its attorneys at GWB for purposes of representation of SFMAIC in the DJA litigation. These documents were produced in response to a subpoena and have been produced in this case at GWB_001010-001100 | | Work Product |
| GWB_010501 | Chrystal Brown Agreement and Stipulation re_ Coverage Action (10572174.1).docx | | | | | | Draft of an Agreement and Stipulation prepared for purposes of the DJA litigation | | Work Product |
| GWB_010504 | MEMO TO FILE Settlement Discussions & Negotiations (10222379.1).docx | | | | | | Blank memo to file. Internal GWB template for attorney notes | | Work Product |
| GWB_0010563 | Note Apr 21, 2022(3).pdf | | | | | | Handwritten notes by Jennifer Johnsen for purposes of DJA litigation. Attorney work product revealing attorney's mental impressions and conversations with co-counsel | | Work Product |
| GWB_010564 | Note Apr 26, 2022.pdf | | | | | | Handwritten notes by Jennifer Johnsen for purposes of DJA litigation. Attorney work product revealing attorney's mental impressions and conversations with client and co-counsel | | Work Product |
| GWB_010571 | Note Mar 25, 2022.pdf | | | | | | Handwritten notes by Jennifer Johnsen for purposes of DJA litigation. Attorney work product revealing attorney's mental impressions and conversations with co-counsel | | Work Product |
| GWB_010573 | Note Mar 28, 2022 (4).pdf | | | | | | Handwritten notes by Jennifer Johnsen for purposes of DJA litigation. Attorney work product revealing attorney's mental impressions and conversations with co-counsel | | Work Product |
| GWB_010575 | Note Mar 28, 2022.pdf | | | | | | Handwritten notes by Jennifer Johnsen for puropses of DJA litigation | | Work Product |
| GWB_010576 | RE_4021B249D DJ Action (10538813.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Lee Shivers <lee.shivers.d8yf@statefarm.com>; Tyran Turner <tyran.turner.e123@statefarm.com> | 10/25/2021 | 4:58 PM | Emails between GWB attorney Jennifer Johnsen and Darren Murdoch (SFMAIC), copying other SFMAIC employees. Requests from attorney Jennifer Johnsen for various documents and information for purposes of the DJA litigation. | | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Gallivan White and Boyd, P.A. Amended Privilege Log

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GWB_010579 | RE_4021B249D DJ Action (10544161.1).msg | Jennifer Johnsen <jjohnsen@gwblawfirm.com> | Darren P Murdoch <darren.p.murdoch.gr1u@statefarm.com> | Lee Shivers <lee.shivers.d8yf@statefarm.com>; Tyran Turner <tyran.turner.e123@statefarm.com> | 10/26/2021 | 5:02 PM | Emails between GWB attorney Jennifer Johnsen and Darren Murdoch (SFMAIC), copying other SFMAIC employees. Requests from attorney Jennifer Johnsen for various documents and information for purposes of responding to discovery in the DJA litigation and regarding identification of a SFMAIC witness for deposition | Attorney-Client Privilege |

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

EXHIBIT H

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Robert C. Workman, individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew T. Workman,

Plaintiffs,

vs.

State Farm Mutual Automobile Insurance Company and Gallivan, White & Boyd, P.A.,

Defendants.

COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CIVIL ACTION NO. 23-CP-10-1832

**DEFENDANT
GALLIVAN, WHITE & BOYD, P.A.'S
FIRST SUPPLEMENTAL RESPONSES TO
PLAINTIFFS' FIRST DISCOVERY
REQUESTS**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**TO:    PLAINTIFFS AND THEIR ATTORNEYS:**

Pursuant to Rules 33 and 34 of the South Carolina Rules of Civil Procedure, the Defendant Gallivan White & Boyd, P.A., ("GWB" or "Defendant") submits its First Supplemental Responses to Plaintiffs' First Discovery Requests as follows:

**SUPPLEMENTAL RESPONSES TO PLAINTIFFS' STANDARD INTERROGATORIES**

1.    Give the names and addresses of persons known to the parties or counsel to be witnesses concerning the facts of the case and indicate whether or not written or recorded statements have been taken from the witnesses and indicate who has possession of such statements.

**ANSWER:**

a)    **Jennifer E. Johnsen**
      **c/o Turner Padget Graham & Laney**
      **40 Calhoun Street, Suite 200 (29401)**
      **P.O. Box 22129**
      **Charleston, SC 29413**

      **Jennifer Johnsen is an attorney at GWB who represented State Farm in the Declaratory Judgment Action, C.A. No.: 2:21-cv-02623-MBS ("the DJA"). This witness is expected to testify in accordance with GWB's Answer, as to her**

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.

b)  **William T. Young**
**c/o Turner Padget Graham & Laney**
**40 Calhoun Street, Suite 200 (29401)**
**P.O. Box 22129**
**Charleston, SC 29413**

**William Young is an attorney who formerly worked at GWB and represented State Farm in the Declaratory Judgment Action ("the DJA"). This witness is expected to testify in accordance with GWB's Answer, as to his knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.**

c)  **Natalie R. Ecker**
**c/o Turner Padget Graham & Laney**
**40 Calhoun Street, Suite 200 (29401)**
**P.O. Box 22129**
**Charleston, SC 29413**

**Natalie Ecker is an attorney at GWB who represented State Farm in the DJA. This witness is expected to testify in accordance with GWB's Answer, as to her knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.**

d)  **Julia A. Bradshaw**
**c/o Turner Padget Graham & Laney**
**40 Calhoun Street, Suite 200 (29401)**
**P.O. Box 22129**
**Charleston, SC 29413**

**Julia Bradshaw is an attorney who formerly worked at GWB at the time of the DJA. This witness is expected to testify in accordance with GWB's Answer, as to her knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.**

e)  **Robert C. Workman, individually and Personal Representative of the Estate of James K. Workman**
**c/o Kahn Law Firm**
**562 Savannah Highway**
**Charleston, SC 29407**

It is expected that this witness will testify regarding the allegations of the Complaint, and to the facts and circumstances surrounding the DJA and this action. No written or recorded statements have been taken.

f)      **Kelly Workman Tick**
        **c/o Kahn Law Firm**
        **562 Savannah Highway**
        **Charleston, SC 29407**

This witness is a Plaintiff in this action, but was not a party to the Underlying Action. It is expected this witness will testify regarding the allegations of the Complaint. No written or recorded statements have been taken.

g)      **Matthew T. Workman**
        **c/o Kahn Law Firm**
        **562 Savannah Highway**
        **Charleston, SC 29407**

This witness is a Plaintiff in this action, but was not a party to the Underlying Action. It is expected this witness will testify regarding the allegations of the Complaint. No written or recorded statements have been taken.

h)      **Representatives of State Farm**
        **c/o Whelan Mellen & Norris**
        **89 Broad Street**
        **Charleston, SC 29401**

Plaintiffs conducted a 30(b)(6) deposition of State Farm in the DJA and Shay Anderson served as State Farm's representative. At this time, GWB does not know whether Plaintiffs would notice another 30(b)(6) deposition of State Farm, attempt to call individual witnesses from State Farm, or both. No written or recorded statements have been taken.

i)      **Melvin O. Lamb, Jr.**
        **Address Unknown**

Melvin O. Lamb, Jr. is the named insured on the policy covering the Tahoe involved in the accident. Although Lamb admitted to having signed the Excluded Driver Endorsement in his Answer in the DJA, he filed an Amended Answer three days later in which he denied having signed the Excluded Driver Endorsement and asserted a counterclaim for indemnification against State Farm. No written or recorded statements have been taken.

j)      **Melvin O. Lamb, III**
        **Address Unknown**

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Melvin O. Lamb, III is the driver of the Tahoe in the accident that resulted in the death of James K. Workman. No written or recorded statements have been taken.**

**GWB reserves the right to call additional witnesses, including any witness or expert identified by any party through the course of discovery.**

<u>**SUPPLEMENTAL ANSWER:**</u>

**Shay Anderson, an employee of State Farm's Underwriting Department, was deposed in the DJA and submitted a Declaration in that case. GWB is not aware of any other written or recorded statements from Shay Anderson.**

**Darren Murdoch, an employee of State Farm's Claims Department, submitted a Declaration in the DJA. GWB is not aware of any other written or recorded statements.**

**Lana Willingham, an employee of State Farm's Underwriting Department, submitted a Declaration in the DJA. GWB is not aware of any other written or recorded statements.**

**Lee Shivers, State Farm Claims Specialist. No written or recorded statement has been taken.**

2.      Set forth a list of photographs, plats, sketches or other prepared documents in possession of the party that relate to the claim or defense in the case.

<u>**ANSWER**</u>**:**

**GWB objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, work product doctrine or other applicable privilege. GWB further objects to this Interrogatory to the extent that it seeks confidential information not subject to disclosure. Subject to and without waiving the foregoing objections, GWB refers to the documents produced herewith and bates labeled GWB_000001-004394. GWB reserves the right to supplement this response at a later date and incorporates by reference all documents produced by the other parties in this action.**

<u>**SUPPLEMENTAL ANSWER:**</u>

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**GWB further refers to the documents produced herewith and identified in Attachment A to these Supplemental Discovery Responses; and its Amended Privilege Log.**

3.     In cases involving personal injury set forth the names and addresses of all physicians who have treated the party and all hospitals to which the party has been committed in connection with said injuries and also set forth a statement of all medical costs involved.

**ANSWER:     Not applicable.**

4.     Set forth the names and addresses of all insurance companies which have liability insurance coverage relating to the claim and set forth the number or numbers of the policies involved and the amount or amounts of liability coverage provided in each policy. This includes umbrella coverage and coverage associated with each of the Defendants.

**ANSWER:     The following insurance policies may provide coverage relating to the claims asserted in this litigation:**

**(a)     LPL Policy #LPPL221000075001 - Ascot Specialty Insurance Company.**

**(b)     Excess Policy #LPL7CACD7KJ002 - Ironshore Specialty Insurance Company.**

5.     List the names and addresses of any expert witnesses whom the party proposes to use as a witness at the trial of the case.

**ANSWER:**

**GWB has not determined an expert witness(es), if any, it will utilize at the trial of this case. GWB will supplement this response to the extent required by the South Carolina Rules of Civil Procedure and any applicable Scheduling Order.**

6.     For each person known to the parties or counsel to be a witness concerning the facts of the case, set forth either a summary sufficient to inform the other party of the important facts

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

known to or observed by such witness, or provide a copy of any written or recorded statements taken from such witnesses.

**ANSWER:**     **Please see Answer to Interrogatory No. 1.**

7.     [Defendants only.] If the defendants are improperly identified, give the proper identification and state whether counsel will accept service of an amended summons and pleading reflecting the correct information.

**ANSWER:**     **GWB is properly identified.**

## SUPPLEMENTAL RESPONSES TO PLAINTIFFS' SUPPLEMENTAL DISCOVERY REQUESTS

1.     As to each affirmative defense you assert, state a detailed factual basis for said defense and PRODUCE all documents supporting said defense.

**RESPONSE:**

**GWB objects to this request on the grounds that it is premature, as discovery is still ongoing. Subject to and without waiving this objection, Plaintiffs' Complaint fails to plead any facts that would entitle it to recovery from GWB. Plaintiff Estate of Robert C. Workman was an opposing party in the DJA and the remaining Plaintiffs were not parties to the DJA. Therefore, GWB owed no independent duty to Plaintiffs that could give rise to a cause of action. Further, GWB is immune from Plaintiffs' claims because it was at all times relevant to the Complaint acting in its professional capacity as State Farm's counsel. GWB reserves the right to supplement this response as the case progresses to trial.**

**GWB has in its possession the file it maintained while representing State Farm Mutual Automobile Insurance Company in the DJA. GWB objects to the production of these documents to the extent that they are protected by the attorney-client privilege, the work**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**product doctrine, or any other applicable privilege. GWB also objects to this request to the extent that it seeks confidential information not subject to disclosure. Subject to and without waiving the foregoing objections, GWB refers to non-privileged and non-confidential documents produced herewith and bates labeled GWB_000001-004394. GWB reserves the right to supplement this response as the case progresses to trial.**

## SUPPLEMENTAL RESPONSE:

**GWB further refers to the documents produced herewith and identified in Attachment A to these Supplemental Discovery Responses; and its Amended Privilege Log.**

2.      PRODUCE all documentation concerning State Farm Claim Number 4021B2-49D with a date of loss of June 12, 2021. This is to include all:

a.      Confirmation of Coverage documents;

b.      Claim file notes, entries, communications and the like;

c.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim specialist Lee Shivers;

d.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim associate Deborah Grigg;

e.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim team manager Darren P Murdoch;

f.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Underwriter Jessica Bass;

g.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Underwriter Team Manager Shay Anderson;

h..     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by statefarmclaims@statefarm.com;

i.      Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by agent John P Tankersley, III or Jack Tankersley, Pam Middleton or anyone else in that office.

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

j.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Melvin Lamb, Jr.;

k.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Melvin Lamb, III;

l.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Valerie Lamb;

m.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by law firms or attorneys representing people asserting claims;

n.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by law firms or attorneys representing you;

o.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by each claimant;

**RESPONSE:**

     **GWB objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. GWB also objects to this request to the extent that it seeks confidential information not subject to disclosure. Subject to and without waiving the foregoing objections, to the extent that GWB is in possession of responsive documents, they are produced herein. Further answering, to the extent this request seeks communications between GWB and its client, those documents are protected by the attorney-client privilege. GWB refers to its Privilege Log produced herewith. GWB reserves the right to supplement this response as the case progresses to trial.**

**SUPPLEMENTAL RESPONSE:**

     **GWB further refers to the documents produced herewith and identified in Attachment A to these Supplemental Discovery Responses; and its Amended Privilege Log.**

     3.     Fully identify each claimant and/or person making a claim related to the June 12, 2021 collision, whether named in the declaratory judgment action or not and to the extent not

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

produced above, PRODUCE all communications with them or their representatives, including agreements to be bound by the declaratory judgment action filed in this matter.

**RESPONSE:**

**GWB objects to this Request on the grounds that it is not relevant to the claims or defenses at issue in this action. Subject to and without waiving this objection, GWB refers to the declaratory judgment action pleadings and communications that are produced herein.**

4.     PRODUCE all of State Farm's documents and documentation concerning the 2004 Chevrolet Tahoe VIN 1GNEK13Z54R235227 driven on June 12, 2021. This includes but is not limited to State Farm insurance policies: 632 3189-B07-40; 632 3189-B07-40A, and 632 3189-B07-40B. This production request includes producing the below listed items in addition to the complete audit trail, including but not limited to identifying who logged into the system, entries made, dates and times thereof, who made said entries, additions, or deletions, who reviewed and/or made said entries and/or changes, etc.

    a.    Claims Files;

    b.    Underwriting Files;

    c.    Entries in computer systems (including Rumba, Enterprise and ECS) and identify who made the entries and when such entries were made;

    d.    Emails;

    e.    Texts;

    f.    Notes;

    g.    Faxes;

    h.    Declaration Pages;

    i.    Requests to modify, alter, change, create, etc. the declarations pages;

    j.    Requests to modify, alter, change, create, etc. the policy(s);

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

k.      Responses to any requests to modify, alter, change, create, etc. the declarations pages;

l.      Responses to any requests to modify, alter, change, create, etc. the policy declarations;

m.      Auto Renewal;

n.      Balance Due Notice;

o.      Policy Master Record;

p.      Suspensions;

q.      Reinstatements;

r.      Cancellations;

s.      Underwriting documents;

t.      Approvals; and

u.      Service Requests made whether to the Complex Unit or otherwise.

**RESPONSE**:

**This Request does not appear to be directed to GWB. To the extent that a response from GWB is required, GWB has in its possession only those documents that its client, State Farm, provided it in the declaratory judgment action. GWB objects to the production of those documents to the extent that they are protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the documents produced herein and its Privilege Log.**

5.      Fully identify each person who was involved in creating the Declarations Page that states "Prepared Jul 14 2021" attached as Exhibit A to the Complaint in Civil Action 2:21-cv-2623-MBS and as to each person, PRODUCE all documentation related to creating said document, including the requests to create and fully explain the reasons said Declarations Page was created.

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**RESPONSE:**

**GWB objects to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB does not have sufficient information to identify each person involved in creating the referenced Declarations Page. GWB refers to the referenced Declarations Page produced herein and bates labeled GWB_000454. GWB is not in possession of any further documents responsive to this request.**

6.      PRODUCE all documents, emails and the attachments reviewed by or referenced by Shay Anderson in her deposition of **December 14, 2021**. This includes but is not limited to those:

a.      Involving Jessica Bass as Referenced on pp. 16-17;

b.      Involving Karen Bond as Referenced on pp. 16-17;

c.      Involving any actuary or actuarial as referenced on pp. 31-33, 35-36, 38-39;

d.      Involving Jennifer Johnsen, Esq.;

e.      The unknown person referenced on p. 59;

f.      Involving the SERFF Tracking Number SFMA-126372492; and

g.      Form filings;

**RESPONSE:**

**GWB objects to this Request to the extent that it seeks documents protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the transcript and exhibits of Shay Anderson's deposition, which are produced herewith and bates labeled GWB_003729-004134.**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**SUPPLEMENTAL RESPONSE:**

Further answering, in the 30(b)(6) deposition of State Farm in the Underlying Action, Shay Anderson testified that she reviewed the Declaratory Judgment Complaint, State Farm's discovery responses in the Underlying Action, documents produced by State Farm in the Underlying Action prior to the deposition, and documents produced in response to the Estate's subpoena to State Farm. See Deposition Transcript, pp. 11-13.

7.　　PRODUCE all records, notes and documents Shay Anderson, Underwriting Team Manager, created, reviewed and/or referred to in her declaration under penalty of perjury dated May 24, 2022 which was filed as Entry No. 81-1 in C.A. No.: 2:21-CV-02623-MBS.

**RESPONSE:**

GWB objects to this Request on the grounds that it seeks materials protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB is not in possession of the requested compilation of materials.

**SUPPLEMENTAL RESPONSE:**

Further answering, while GWB is not in possession of a specific compilation of materials Shay Anderson reviewed ahead of her declaration, GWB refers to the non-privileged and non-work product policy documents already produced in this case.

8.　　PRODUCE all records, notes and documents Lana Willingham created, reviewed and/or referred to in her declaration under penalty of perjury dated May 23, 2022 which was filed as Entry No. 81-4 in C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to the service request to process an excluded driver endorsement.

**RESPONSE: See response to Supplemental Discovery Request No. 7.**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**SUPPLEMENTAL RESPONSE:**

**Further answering, while GWB is not in possession of a specific compilation of materials Lana Willingham reviewed ahead of her declaration, GWB refers to the non-privileged and non-work product policy documents already produced in this case.**

9.      PRODUCE all records, notes and documents Darren Murdoch created, reviewed and/or referred to in his declaration under penalty of perjury dated May 23, 2022 which was filed as Entry No. 81-3 in C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to paragraphs 12-16.

**RESPONSE:  See response to Supplemental Discovery Request No. 7.**

**SUPPLEMENTAL RESPONSE:**

**Further answering, while GWB is not in possession of a specific compilation of materials Darren Murdoch reviewed ahead of his declaration, GWB refers to the non-privileged and non-work product policy documents already produced in this case.**

10.      PRODUCE each endorsement and declarations page created by State Farm from the inception of any coverage through the present for the Tahoe at issue referenced in the Complaint filed in Civil Action 2:21-cv-2623-MBS and all documentation supporting the reasons said documents were created.

**RESPONSE:**

**GWB is not in possession of each endorsement and declarations page created by State Farm from the inception of coverage through the present. To the extent GWB is in possession of responsive documents, those are produced herein.**

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**SUPPLEMENTAL RESPONSE:**

**GWB refers to Declarations Pages and Endorsements for policy periods February 7, 2020 to August 7, 2020; August 23, 2020 to February 7, 2021; and June 10, 2021 to February 7, 2022. These Declarations Pages and Endorsements were produced in the DJA litigation, and have also been produced multiple times in this case, including at GWB_001148 – 001172.**

11. PRODUCE State Farm policies, processes and/or procedures for driver exclusion agreements related to keeping or retaining acceptable policyholders while excluding certain drivers in the household exclusions that were in effect from January 1, 2020 through the present.

**RESPONSE:**

**Responsive documents were produced in the DJA and designated confidential. GWB objects to producing the requested documents before a Confidentiality Order is entered in this case and refers to its Privilege Log produced herewith.**

**SUPPLEMENTAL RESPONSE:**

**GWB refers to documents produced pursuant to the Confidentiality Order and bates labeled GWB_004717-004738. These documents were produced in a prior litigation in response to a subpoena from the Estate of James K. Workman.**

12. PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval or that the South Carolina Department of Insurance approved the form 6023DC attached to the Complaint filed in the declaratory judgment civil action number 2:21-cv-2623-MBS. If no such documentation exists, please state that.

**RESPONSE:**

**This request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

13.     PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval and/or that the South Carolina Department of Insurance approved the form 6023DC before January 1, 2022.

**RESPONSE:**

**This request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

14.     PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval or that the South Carolina Department of Insurance approved the form 6023DC after January 1, 2022.

**RESPONSE:**

**This request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

15.     To the extent not already produced, PRODUCE State Farm's complete file and documentation related to submission and approval by the South Carolina Department of Insurance for the Form 6023DC Driver Exclusion attached to the Complaint in Civil Action 2:21-cv-2623-MBS. This includes letters sent by State Farm to the South Carolina Department of Insurance as well as communications received.

**RESPONSE:**

**This Request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

16.     PRODUCE each communication sent by State Farm denying claims based upon the State Farm South Carolina 6023DC Driver Exclusion Form for the time period of May 1, 2019 through May 1, 2022. This is not limited to Plaintiffs in this case.

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**RESPONSE:**

**This Request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB objects to this request to the extent that it seeks documents protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB is not in possession of responsive documents.**

17.     As to the Tahoe at issue, PRODUCE each certified policy record which underwriter Jessica Bass or anyone else at State Farm created, including but not limited to those dated 08/05/2021 and 11/22/2021 and PRODUCE the requests and responses related to generating each certified policy record.

**RESPONSE:**

**GWB objects to this request to the extent that it seeks documents protected by attorney-client privilege. Subject to and without waiving this objection, GWB refers to documents produced herewith and bates labeled GWB_000001-004394. GWB is not in possession of any other responsive documents.**

**SUPPLEMENTAL RESPONSE:**

**The certified policy records dated August 5, 2021 and November 22, 2021 are the only certified policy records in GWB's possession. These were produced in the Underlying Action and are produced in this case at GWB_001185 and GWB_001212.**

18.     PRODUCE all documents, including the files, notes, computer entries, who made the entries, the audit trail and the like for each computer system of State Farm showing the creation, storage, management, access, including who accessed a web-based system called ECS related to the claims involving Mr. Lamb and Plaintiffs.

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**RESPONSE:**

**This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

19.　PRODUCE all State Farm's policies, procedures, guidelines and/or rules that were to be followed when creating and/or modifying a declaration page such as the one at issue in this case for the time period of January 1, 2020 through the present.

**RESPONSE:**

**To the extent that GWB has responsive documents, it objects to producing those documents before a Confidentiality Order is entered in this case and refers to its Privilege Log.**

**SUPPLEMENTAL RESPONSE:**

**Upon information and belief, GWB is not in possession of documents responsive to this request.**

20.　PRODUCE the employment files for each State Farm employee, including those listed below, who was involved with the changes made to the declarations page at issue, including a signed copy of their completed Code of Conduct form to be completed annually. (The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest.) This request to produce also includes write ups for violations of State Farm policies.

a.　Jessica Bass

b.　Lee Shivers

c.　Shay Anderson

d.　Darren P Murdoch

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

e.     Lana Willingham

**RESPONSE:**

**This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

21.     PRODUCE State Farm's Code of Conduct training course materials and videos as described in State Farm's Doing the Right Thing Code of Conduct, p. 28, in part reproduced below.

---

Code of Conduct/DOING THE RIGHT THING/CODE OF CONDUCT FORM COMPLETION

## Code of Conduct Form Completion

We believe in following all applicable laws and regulations, and in behaving ethically and honestly. In accordance with these principles, we all must complete and submit the Code of Conduct Form annually, alongside the annual Code of Conduct training course. The form should also be filled out any time an actual or potential violation of this Code or conflict of interest arises.

The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest. Submitting the form indicates that you have read and understood the Code of Conduct and:

---

**RESPONSE:**

**This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

22.     As to each expert you propose to use as a witness at the trial of the case, PRODUCE and/or state:

a.     a complete statement of all opinions the witness will express and the basis and reasons for them;

b.     the facts or data considered by the witness in forming them;

c.     any exhibits that will be used to summarize or support them;

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

    d.      the witness's qualifications, including a list of all publications authored in the previous 10 years;

    e.      a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

    f.      a statement of the compensation to be paid for the study and testimony in the case.

**RESPONSE:**

**See answer to Interrogatory No. 5.**

23.    To the extent not already produced, PRODUCE Defendant State Farm's complete claims file relating to the claims made as a result of the collision at issue in this action regardless of who submitted a claim, whether maintained in defendant's field office, regional office, home office, or any other office, including without limitation:

    a.      All letters, memoranda, and other forms of written or computerized communication to or from any employee of defendant relating in any way to the processing of the claim at issue in this action;

    b.      All written or computerized records of any oral communication, whether in person or by telephone, to or from any employee of defendant relating in any way to the processing of the claim at issue in this action;

    c.      All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any claimant relating in any way to the collision at issue in this action;

    d.      All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any third party relating in any way to the claim at issue in this action;

    e.      All written or computerized records of any investigation conducted in connection with the claim at issue in this action;

    f.      All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, to or from any employee of defendant relating in any way to the decision to deny claims asserted in the collision;

    g.      All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

of defendant and any third party relating in any way to the decision to deny Plaintiffs claims;

h.    All other written or computerized documents pertaining to the claim at issue in this litigation; and

i.    The file folders in which the preceding documents are kept.

**RESPONSE:**

**GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. To the extent that GWB is in possession of requested documents, they are reflected in the Privilege Log produced herewith.**

24.    PRODUCE State Farm's complete underwriting files referring or relating in any way to the policy at issue in this action, including without limitation:

a.    All letters, memoranda, and other forms of written or computerized communication and written or computerized records of oral communications, whether in person or by telephone, referring or relating in any way to the issuance of the policy at issue in this action; and

b.    The file folders in which the preceding documents are kept.

**RESPONSE:**

**This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

25.    PRODUCE All claims manuals, memoranda, directives, letters, and other forms of written or computerized communication directed to claims personnel, claims managers, claims supervisors, or any other person acting on behalf of State Farm in the handling of claims that refer or relate in any way to the handling of claims generally or to the handling of claims of like character to the claim at issue in this action, including without limitation:

a.    the documents reflecting State Farm's claim settlement policies as they existed at the time State Farm denied the claims at issue in this action; and

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

      b.     the documents reflecting any subsequent changes of policy.

**RESPONSE:**

     **This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

26.     As to the statement "State Farm has investigated this matter and believes, based upon the Policy exclusion referenced herein and applicable South Carolina law, it has no duty to defend or indemnify Father or Son from any claim arising out of the accident described herein..." in paragraph 27 of the Complaint in Civil Action 2:21-cv-2623-MBS filed August 16, 2021:

      a.     PRODUCE all documents supporting the truth of the statement that was in the possession, custody or control of State Farm as of August 16, 2021;

      b.     PRODUCE all documents supporting the truth of the statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

      c.     FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.

**RESPONSE:**

     **GWB objects to this Request to the extent that it seeks information subject to the attorney-client privilege, work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the Policy, including the excluded driver endorsement which was attached to the declaratory judgment action Complaint and is produced herein as GWB_000454-000514.**

27.     As to the statement "At the time of the subject accident, Son had been an excluded driver from the Policy for over a year" made in paragraph 31 of the Complaint filed August 16, 2021:

      a.     PRODUCE all documents supporting the above statement that was in the possession, custody or control of State Farm defendant as of August 16, 2021;

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

     b.     PRODUCE all documents supporting the above statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

     c.     FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.

**RESPONSE:**

**Please see Response to Supplemental Discovery Request No. 26.**

28.     As to the statement "Pursuant to S.C. Code Ann. §38-77-340, the exclusion was signed by Father..." made in paragraph 19 of the Complaint filed August 16, 2021:

     a.     PRODUCE all documents supporting the above statement that was in the possession, custody or control of State Farm defendant as of August 16, 2021;

     b.     PRODUCE all documents supporting the above statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

     c.     FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.

**RESPONSE:**

**Please see Response to Supplemental Discovery Request No. 26.**

29.     PRODUCE all communications between Shay Anderson, State Farm Underwriting Team Manager, and Gallivan, White & Boyd, P.A. which relate to C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to reference to SERFF tracking number(s) and documents.

**RESPONSE:**

**GWB objects to this request on the grounds that it seeks information that is protected by the attorney-client privilege. GWB refers to its Privilege Log produced herewith.**

30.     PRODUCE all documentation, including records, State Farm files and other materials created and/or reviewed showing the investigation and research performed by Gallivan

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

White & Boyd, P.A. prior to filing the Complaint in C.A. No.: 2:21-CV-02623-MBS that supported allegations and claims asserted in the lawsuit. This includes drafts of complaints.

**RESPONSE:**

**GWB objects to this request on the grounds that it seeks information that is protected by the attorney-client privilege and/or the work product doctrine. GWB refers to its Privilege Log produced herewith.**

**SUPPLEMENTAL RESPONSE:**

**Subject to and without waiving this objection, GWB states that prior to filing the DJA, it obtained a copy of the policy and the named driver exclusion, which were attached as exhibits to the DJA Complaint and produced multiple times in this case, including at GWB_000454-000514.**

31.    PRODUCE all documentation, including records, State Farm files and other materials created and/or reviewed showing the investigation and research performed by Gallivan White & Boyd, P.A. after filing the Complaint in C.A. No.: 2:21-CV-02623-MBS that supported allegations and claims asserted in the lawsuit.

**RESPONSE:**

**GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Further answering, GWB refers to its Privilege Log produced herewith.**

**SUPPLEMENTAL RESPONSE:**

**Subject to and without waiving this objection, GWB refers to the policy documents produced in this case.**

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

32.     As to the lawsuit filed C.A. No.: 2:21-CV-02623-MBS, PRODUCE all documents State Farm provided to Gallivan, White & Boyd, P.A. before the law firm filed the Complaint in Civil Action 2:21-cv-2623-MBS. This includes emails, texts, files shared via a service, billing record modifications and/or changes, etc.

**RESPONSE:**

**GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the documents filed with the DJA Complaint and produced herewith. Further answering, GWB refers to its Privilege Log.**

33.     PRODUCE all documents State Farm provided to Gallivan, White & Boyd, P.A. after the Complaint in Civil Action 2:21-cv-2623-MBS was filed. This includes emails, texts, files shared via a service, billing record modifications and/or changes, etc.

**RESPONSE:**

**GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Further answering, GWB refers to its Privilege Log produced herewith.**

34.     PRODUCE all documents Gallivan, White & Boyd, P.A. provided to State Farm while it represented State Farm in the matter which is the subject of Civil Action 2:21-cv-2623-MBS. This includes retainer agreements, agreements to represent State Farm, emails, texts, files shared via a service, billing records, etc.

**RESPONSE:**

**GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Further answering, GWB refers to its Privilege Log produced herewith.**

35.     As to each of the standard interrogatories above as well as other discovery requests, PRODUCE the documents that are referenced or referred to in answering said interrogatories.

**RESPONSE:**

**GWB refers to the documents produced herewith and bates labeled GWB_000001-004394.**

**SUPPLEMENTAL RESPONSE:**

**GWB further refers to the documents produced herewith and identified in Attachment A to these Supplemental Discovery Responses; and its Amended Privilege Log.**

36.     PRODUCE each document or other evidence you intend to introduce at the trial of this case.

**RESPONSE:**

**GWB objects to this Request to the extent that it seeks to invade the mental impressions, legal conclusions, thoughts, impressions and trial strategies of counsel, which are protected by the work product doctrine and/or attorney-client privilege.  Subject to and without waiving this objection, GWB reserves the right to use the documents produced herewith and bates labeled GWB_000001-004394. GWB further reserves the right to utilize any other documents produced by any other party to this action and to supplement this response as the case progresses to trial.**

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**SUPPLEMENTAL RESPONSE:**

GWB further refers to the documents produced herewith and identified in Attachment A to these Supplemental Discovery Responses; and its Amended Privilege Log.

37.     Fully identify the names of the individuals who assisted in responding to these discovery requests.

**RESPONSE:**

The undersigned counsel for GWB prepared the responses to these discovery requests.

TURNER PADGET GRAHAM & LANEY, P.A.

s/John S. Wilkerson
John S. Wilkerson, III, SC Bar No.:  6105
40 Calhoun Street, Suite 200
Post Office Box 22129
Charleston, South Carolina 29413-2129
Telephone:   843-576-2801
Facsimile:     843-577-1649
Email:   jwilkerson@turnerpadget.com

Lindsey M. Behnke, SC Bar No.: 105719
1901 Main Street, Suite 1700 (29201)
Post Office Box 1473
Columbia, South Carolina 29202
Telephone:     803-227-4324
Facsimile:     803-400-1525
Email: lbehnke@turnerpadget.com

ATTORNEYS FOR GALLIVAN, WHITE & BOYD, P.A.

May 24, 2024
Charleston, South Carolina

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Robert C. Workman, individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew T. Workman,

Plaintiffs,

vs.

State Farm Mutual Automobile Insurance Company and Gallivan, White & Boyd, P.A.,

Defendants.

COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CIVIL ACTION NO.  23-CP-10-1832

**Attachment A to GWB's First Supplemental Discovery Responses:**
**Index of Supplemental Document Production**

Non-privileged portions of the following documents are produced as part of GWB's Supplemental Document Production dated May 24, 2024. The privileged portions of the documents are redacted and included on the Amended Privilege Log.

| | |
|---|---|
| GWB_004539-004551 | GWB_006457-006468 |
| GWB_004991-004992 | GWB_006504-006520 |
| GWB_005488-005490 | GWB_006845-006846 |
| GWB_005613-005616 | GWB_007803-007804 |
| GWB_005619-005620 | GWB_007806-007811 |
| GWB_005758-005761 | GWB_007821-7822 |
| GWB_005780 | GWB_007825-007826 |
| GWB_005827 | GWB_000784 |
| GWB_005831-005835 | GWB_007844-007847 |
| GWB_005921-005922 | GWB_007868-007874 |
| GWB_005932-005933 | GWB_008257-008260 |
| GWB_005947-005950 | GWB_008342-008346 |
| GWB_005961-005965 | GWB_008414-008416 |
| GWB_005974-005975 | GWB_008468 |
| GWB_005991-005992 | GWB_009248-009249 |
| GWB_006376-006377 | GWB_009971-009997 |
| GWB_006438-006439 | GWB_010000-010001 |
| GWB_006440-006452 | GWB_010493-010500 |

The following documents are produced un-redacted under the Confidentiality Order:
GWB_004395
GWB_004716-004738
GWB_008983-009007
GWB_009250-009290

ELECTRONICALLY FILED - 2024 May 28 5:05 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Robert C. Workman, individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew T. Workman,

                    Plaintiffs,

        vs.

State Farm Mutual Automobile Insurance Company and Gallivan, White & Boyd, P.A.,

                    Defendants.

COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CIVIL ACTION NO.  23-CP-10-1832

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 24th day of May, 2024, a copy of ***Defendant Gallivan, White & Boyd, P.A.'s First Supplemental Responses to Plaintiffs' First Discovery Requests,*** GWB's supplemental document production as described in Attachment A; and Amended Privilege Log, has been served upon counsel of record via electronic mail, unless otherwise requested, to:

Justin S. Kahn                          *Attorneys for Plaintiffs*
Wes B. Allison
Kahn Law Firm, LLP
P.O. Box 31397
Charleston, SC  29417-1397
jskahn@kahnlawfirm.com
wallison@kahnlawfirm.com
Sean Claggett
sean@claggettlaw.com

Robert W. Whelan                        *Attorneys for State Farm Mutual Automobile*
M. Kathleen McTighe Mellen              *Insurance Company*
Whelan Mellen & Norris, LLC
89 Broad Street
Charleston, SC  29401
robbie@whelanmellen.com
katie@whelanmellen.com

                    s/Cynthia Dillard
                    Cynthia Dillard

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 May 28 5:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

IN THE COURT OF COMMON PLEAS

Civil Action No. 2023-CP-10-01832

Robert C. Workman, Individually and as
Personal Representative of the Estate of
James K. Workman, Kelly Workman Tick
and Matthew T. Workman,

Plaintiffs,

vs.

State Farm Mutual Automobile Insurance
Company and Gallivan White & Boyd, P.A.,

Defendants.

**DEFENDANT GALLIVAN WHITE &
BOYD, P.A.'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR
<u>JUDGMENT ON THE PLEADINGS</u>**

NOW COMES Defendant Gallivan, White & Boyd, P.A. ("GWB"), by and through its

undersigned counsel, pursuant to Rule 12(c) of the South Carolina Rules of Civil Procedure and

other applicable law set forth herein, and respectfully submits this Memorandum in Support of its

Motion for Judgment on the Pleadings as to GWB and states the following:

## <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

On April 14, 2023, Plaintiffs filed suit against State Farm Mutual Automobile Insurance

Company ("State Farm") and GWB (collectively, "Defendants"). GWB was served with the

Complaint on May 8, 2023. On May 19, 2023, State Farm removed the case to the United States

District Court for the District of South Carolina and on August 3, 2023, the case was remanded to

state court.

The events of this Complaint are preceded by an automobile accident involving a vehicle

owned by Melvin O. Lamb, Jr. ("Lamb") and insured by State Farm. (*See* Compl. ¶ 3.) On June

12, 2021, Lamb's son, Melvin O. Lamb, III ("Lamb III"), was driving Lamb's vehicle and caused

an accident that led to the death of James K. Workman (the "Accident"). *Id.* GWB was retained as

ELECTRONICALLY FILED - 2024 May 28 5:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

counsel for State Farm and in that capacity filed a declaratory judgment action (the "DJA" or the "Underlying Action") on behalf of State Farm. The DJA sought a finding that there was no coverage for the losses incurred by the Accident on the grounds that Lamb III was an excluded driver under the policy. *See* DJA Compl. ¶ 29-34, Aug. 16, 2021, C.A. No. 2:21-cv-02623, ECF No. 1.[1] In the Complaint in this case, Plaintiffs allege that State Farm and GWB used falsified documents to represent to the Estate of James K. Workman ("the Estate") that there was no coverage for Lamb III. *See generally*, Compl. Per the Complaint, an allegedly false declarations page was attached to the DJA filed against the Estate, but there is no allegation that GWB had any knowledge of the alleged falsity. *See* Compl. ¶ 12. Instead of stating facts specific to GWB, Plaintiffs leap to the unsupported conclusion that "Defendants" intended to "misrepresent and mislead Plaintiffs and others as to the actual terms of the applicable insurance policy." Compl. ¶ 13.

Despite these allegations, Plaintiffs have not set forth any facts that connect GWB to the creation of the allegedly false declarations page. Plaintiffs specifically allege that "[a]nother reason and purpose State Farm created a false declarations page was to provide it to its lawyers at GWB and to use in litigation." Compl. ¶ 49. A plain reading of this paragraph indicates that GWB was the unknowing recipient of allegedly false information, not that GWB participated in a scheme.[2] Taking Plaintiffs' allegations on their face, the allegedly falsified documents would have been

---

[1] GWB requests that this court take judicial notice of the pleadings and exhibits filed in the DJA pursuant to Rule 201, South Carolina Rules of Evidence (A court may take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

[2] GWB accepts as true, for the purposes of this Motion, the allegations of the Complaint as required under the standard *Russell v. City of Columbia*, 305 S.C. 86, 406 S.E.2d 338 (1991), but does not otherwise endorse those allegations.

ELECTRONICALLY FILED - 2024 May 28 5:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

indistinguishable from any other record. *See* Compl. ¶¶ 53-57. Plaintiffs' complaint against GWB is based upon the unsubstantiated assertion that it should have investigated the validity of the certified records provided by its client. *See* Compl. ¶ 69.

Based on these allegations, Plaintiffs have brought four causes of action against GWB: (1) aiding and abetting abuse of process; (2) negligent misrepresentation; (3) negligence; and (4) conspiracy. GWB is entitled to judgment on the pleadings on each of these causes of action pursuant to Rule 12(c) of the South Carolina Rules of Civil Procedure and other applicable law set forth herein.

## STANDARD OF REVIEW

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Rule 12(c), SCRCP. The standard for a Motion for Judgment on the Pleadings is the same as a Motion to Dismiss. *See Brown v. United Ins. Co. of America*, 268 S.C. 254, 257, 233 S.E.2d 298, 300 (1977) (quoting *Wooten v. Standard Life & Casualty Insurance Co.,* 239 S.C. 243, 248, 122 S.E.2d 637, 639 (1961)) ("A motion for judgment on the pleadings is in the nature of a demurrer, and will be granted 'when, under the admitted facts, the moving party would be entitled to judgment on the merits, without regard to what the findings might be on the facts on which the issue is joined.'"). "When considering such motion, the court must regard all properly pleaded factual allegations as admitted." *Russell v. City of Columbia*, 305 S.C. 86, 406 S.E.2d 338 (1991). On review of the motion, the court may not consider matters outside the pleadings. *Firemen's Ins. Co. v. Cincinnati Ins. Co.*, 302 S.C. 234, 236, 394 S.E.2d 855, 856 (Ct. App. 1990)." "The motion does not admit the inferences drawn by the plaintiff from the facts nor does it admit conclusions of law." *Id.* If upon review, "there is no issue of fact raised by the

ELECTRONICALLY FILED - 2024 May 28 5:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

complaint that would entitle plaintiff to judgment if resolved in plaintiff's favor," then judgment on the pleadings is proper. *Russell v. Columbia,* 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991)."

## ARGUMENT

**I.**     **GWB is immune from liability because it was acting on behalf of its client at all relevant times.**

Regardless of any finding of fact, GWB is entitled to judgment on the merits because "an attorney is immune from liability to third persons arising from the performance of his professional activities as an attorney on behalf of and with the knowledge of his client." *Gaar v. N. Myrtle Beach Realty Co.*, 287 S.C. 525, 528, 339 S.E.2d 887, 889 (Ct. App. 1986) (affirming summary judgment on a malicious prosecution claim against two lawyers because the lawyers "acted solely in their capacity as attorneys" when they sued the plaintiff on behalf of their client). This general immunity exists because:

> [t]he attorney normally conducts the litigation solely in his professional capacity. He has no personal interest in the suit. In his professional capacity the attorney is not liable, except to his client and those in privity with his client, for injury allegedly arising out of the performance of his professional duties.

*Id.* 287 S.C. at 529, 339 S.E.2d at 889 (citing *W.D.G., Inc. v. Mutual Mfg. & Supply Co.*, 5 Ohio Op.3d 397 (1976)) (internal quotations omitted). This immunity is extensive: "Even if the attorney who initiates civil proceedings for his client has no probable cause to do so, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of the client's claim." *Id.* (citing *Restatement (Second of Torts*, Section 674 comment d (1975)).

Exceptions to this general immunity are rare. "[W]here non-clients….are concerned, an attorney's liability [for failing to protect from malfeasance] is generally limited to the narrow set of circumstances in which the attorney [herself] has committed fraud or a malicious or tortious act." *Michelin Ret. Plan v. Chicago Transit Auth. Retiree Health Care Tr.*, No.

ELECTRONICALLY FILED - 2024 May 28 5:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

616V03604DCCJDA, 2019 WL 487565, at *11 (D.S.C. Jan. 28, 2019), report and recommendation adopted as modified, No. 616CV03604DCCJDA, 2019 WL 2098843 (D.S.C. May 13, 2019) (internal citations omitted). For example, an attorney simply being mistaken during the course of the representation is not sufficient to destroy the immunity. In *Hager v. McCabe, Trotter & Beverly, P.C.*, the South Carolina Court of Appeals held that the trial court had properly dismissed fraud and conversion claims brought against an HOA's counsel because the plaintiffs did not allege that "the firm acted to serve its own interests rather than or in addition to the HOA's interests." 435 S.C. 740, 747, 869 S.E.2d 886, 889 (Ct. App. 2022). In *Hager*, the plaintiffs' claim was "based on the firm's supposedly incorrect interpretation of [the HOA's] governing documents". *Id.* The court made clear that even if it were true that the firm incorrectly interpreted the documents, the actions the firm took were "in the scope of representing the HOA", and therefore the "outside-of-scope" exception to attorney immunity did not apply. *Id.* at 747-48, 869 S.E.2d at 889.

It cannot be overstated: Plaintiffs have no relationship to GWB. The Estate was an opposing party in a lawsuit in which GWB served as State Farm's counsel. The Complaint does not allege, nor could it, that GWB was acting outside of its professional capacity as State Farm's counsel. Nor does the Complaint allege that GWB was acting in its own interest. Further, no facts are pled (nor could they be pled) that would suggest that GWB acted fraudulently. Notably, the fraud cause of action is brought against State Farm alone. *See* Compl. ¶¶ 117-131. Plaintiffs' Complaint does not (nor could it) raise any issue of fact that would destroy GWB's immunity. Even if the Court were not inclined to dismiss on this blanket immunity, GWB is entitled to judgment on the merits for each cause of action, as set forth below.

## II.     Second Cause of Action: Aiding and Abetting Abuse of Process

 "[A]buse of process is the employment of legal process for some purpose other than that which it was intended by the law to effect – the improper use of a regularly issued process." *Huggins v. Winn-Dixie Greenville, Inc.*, 249 S.C. 206, 209, 153 S.E.2d 693, 695 (1967) (quoting 34 Am. Jur., *Malicious Prosecution*, Section 3, p. 704) (internal quotations omitted). Abuse of process occurs where there is "(1) an ulterior purpose, and (2) a willful act in the use of the process not proper in the regular conduct of the proceedings." *Broadmoor Apartments of Charleston v. Horwitz*, 306 S.C. 482, 486 (1991) (citing *Huggins,* 249 S.C. 206, 153 S.E.2d 693). "The improper purpose element of an abuse of process claim usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself." *Swicegood v. Lott*, 379 S.C. 346, 352, 665 S.E.2d 211, 214 (Ct. App. 2008). In South Carolina, the "willful act" element is comprised of three different components: "(1) an act that is either willful or overt; (2) in the use of the process; (3) that is ultimately reprehensible because it is either (a) unauthorized or (b) aimed at an illegitimate collateral objective." *Id.* at 354, 665 S.E.2d at 215 (citing *Food Lion, Inc. v. United Food & Commercial Workers Intern. Union*, 351 S.E. 65, 71, 567 S.E.2d 251, 254 (Ct. App. 2002)).  If an abuse of process has occurred, then "liability for an abuse of process extends to all who *knowingly* participate, aid, or abet in the abuse." 306 S.C. at 486 (citing 1 Am. Jur.2d *Abuse of Process* § 17; 72 C.J.S. *Process* § 112) (emphasis added).

Plaintiffs have not raised any issue of fact that would support a claim against GWB for aiding and abetting an alleged abuse of process. To be liable for aiding and abetting, the defendant must know that a wrong is being committed and choose to participate. There is no allegation in the Complaint that GWB ever knew the documents in question were allegedly false. Further, without knowledge of the documents' alleged falsity, GWB could not have had any ulterior purpose or

TPGL 14493286v1

ELECTRONICALLY FILED - 2024 May 28 5:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 May 28 5:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

objective beyond representing its client in a legitimate court proceeding. In this case, there was a question of whether coverage applied, and so GWB filed a DJA on behalf of State Farm to ask the court to determine the issue of coverage. There was no improper purpose, and the fact that Plaintiffs disagree about the question of coverage does not convert the DJA into an abuse of process. For these reasons, GWB is entitled to judgment in its favor on Plaintiffs' second cause of action.

## III.     Fourth Cause of Action: Negligent Misrepresentation

"To establish liability for negligent misrepresentation, the plaintiff must show by a preponderance of the evidence: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate cause of his reliance on the representation." *Turner v. Milliman*, 392 S.C. 116, 123, 708 S.E.2d 766, 769 (2011). Even accepting all of the allegations in the Complaint as true, Plaintiffs have not raised any issue of fact sufficient to meet elements two, three, four and five above. As to the second element, it is well-established that an attorney acts on behalf of the client in a professional capacity, and does not have an independent interest in the litigation. *See Gaar* at 529, 339 S.E.2d at 889. The Complaint does not state any facts which suggest even the possibility of a pecuniary interest on the part of GWB. Instead, Plaintiffs make a blanket statement that "Defendants had a pecuniary interest in making these representations", without offering any facts to support such a conclusion as to GWB. Compl. ¶ 135. GWB was counsel for State Farm, regardless of the ultimate outcome of the coverage dispute, and had no financial interest in the denial of coverage.

ELECTRONICALLY FILED - 2024 May 28 5:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

As to the third element, a duty of care does not materialize simply because Plaintiffs claim that it exists. Plaintiffs do not allege any facts in support of this element, but once again assert a legal conclusion that "Defendants owed a duty of care to investigate the facts and law and communicate truthful information to the Plaintiffs and others." Comp. ¶ 137. Although not clearly articulated, Plaintiffs apparently base the duty of care on the South Carolina Rules of Professional Conduct ("RPC"). *See* Rules of Professional Conduct: 4.1, RPC, Rule 407, SCACR. However, the RPC are not designed to create civil liability. *See Spence v. Wingate*, 395 S.C. 148, 161, 716 S.E.2d 920, 927 (2011) ("the Rules of Professional Conduct do not, in themselves, create a cause of action. . .the rules are intended for guidance and disciplinary purposes, not to form the basis for civil litigation."). The RPC themselves preclude their use as the basis for a cause of action:

> Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. . .The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.

Rules of Professional Conduct: Scope [7], RPC, Rule 407, SCACR.

In general, "an attorney owes no duty to a non-client unless he 'breaches some independent duty to a third person or acts in his own personal interest, outside the scope of his representation of the client.'" *Argoe v. Three Rivers Behav. Ctr. & Psychiatric Sols.,* 388 S.C. 394, 400, 697 S.E.2d 551, 554 (2010) (quoting *Stiles v. Onorato*, 318 S.C. 297, 300, 457 S.E.2d 601, 602 (1995)). The rationale for this policy is grounded in the very nature of the adversary system:

> A lawyer representing a party in litigation has no duty of care to the opposing party under this Section, and hence no liability for lack of care, except in unusual situations such as when a litigant is provided an opinion letter from opposing counsel as part of a settlement. . .Imposing such a duty could discourage vigorous representation of the lawyer's own client through fear of liability to the opponent.

ELECTRONICALLY FILED - 2024 May 28 5:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*Restatement 3d of the Law Governing Lawyers*, § 51, cmt c (Am. Law Inst. 2000). Plaintiffs have not pled any facts which would justify imposing such a duty of care on GWB. Rather, they have concluded that Defendants owed a duty to their opposing party without providing any factual support for the extension of such a duty to GWB under the circumstances.

As to the fourth element, Plaintiffs have not alleged any facts which show how GWB specifically breached the duty allegedly owed to Plaintiffs. The Fourth Cause of Action simply states that "Defendants. . .fail[ed] to exercise due or reasonable care." Compl. ¶ 138. Plaintiffs have only made vague and conclusory statements that Defendants should have investigated, without putting forward any facts to support their assertions. Interestingly, Plaintiffs' own characterization of the facts suggests that if the documents were falsified, it was done in such a way as to not raise suspicions. *See* Compl. ¶¶ 53-57. If the events occurred as Plaintiffs describe in the Complaint, there is no reason why GWB could have suspected that it needed to verify the authenticity of the documents.

Lastly, as to the fifth element, Plaintiffs have not alleged facts showing that they justifiably relied on the alleged misrepresentations. Rather than set forth facts, the Complaint conclusively states that "Plaintiffs and others justifiably relied on the representations." Compl. ¶ 139. This is a "naked assertion devoid of further factual enhancement," not a factual allegation. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955) (internal citations omitted). Plaintiffs have not explained how they relied on the alleged misrepresentations or provided any other support for this assertion. Further, GWB respectfully requests the court to take judicial notice of the Estate's Answer in the DJA, pursuant to Rule 201 of the South Carolina Rules of Evidence. In its Answer to the DJA Complaint, the Estate denied State Farm's allegations that the driver exclusion endorsement was valid and effectively excluded Lamb III from coverage. *See*

ELECTRONICALLY FILED - 2024 May 28 5:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Ans. of the Estate of James K. Workman, ¶ 7, Oct. 26, 2021, C.A. No. 2:21-cv-02623, ECF No. 35. Not only does the Complaint in this action fail to explain how Plaintiffs relied on the representations they allege were made, the Estate's own pleading in the public record of the Underlying Action establishes that it did not accept the alleged misrepresentations as true, let alone rely upon them.

For the foregoing reasons, GWB is entitled to judgment on Plaintiff's Fourth Cause of Action.

## IV.    Fifth Cause of Action: Negligence

Plaintiffs' Negligence claim against GWB should be dismissed for failure to plead sufficient facts to support their contentions that GWB owed a duty to Plaintiffs and that such duty was breached. "In order to prevail in a negligence cause of action, the plaintiff must establish: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached the duty by a negligent act or omission; (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) the plaintiff suffered an injury or damages." *Moore v. Weinberg*, 373 S.C. 209, 220, 644 S.E.2d 740, 746 (2007).

Plaintiffs have not put forth any facts supporting the existence of a duty owed by GWB to Plaintiffs. "An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance." *Spence*, 395 S.C. at 161, 716 S.E.2d at 927 (quoting *Hendricks,* 353 S.C. at 456, 578 S.E.2d at 714) (internal quotations and brackets omitted). Plaintiffs seem to base GWB's alleged duty to them on the general professional standards of an attorney. *See* Affidavit of Thomas Pendarvis (Ex. A to Compl.)[3]. However, the existence of

---

[3] "Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any plat, photograph, diagram, document, or

TPGL 14493286v1

ELECTRONICALLY FILED - 2024 May 28 5:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

professional standards does not give a party the right to recover against an opposing party's attorney in a civil action. *See Restatement 3d of the Law Governing Lawyers*, § 51, cmt c, *supra* ("A lawyer representing a party in litigation has no duty of care to the opposing party under this Section. . .."); Rules of Professional Conduct: Scope [7], RPC, Rule 407, SCACR ("Violation of a Rule. . .[does not] create any presumption. . .that a legal duty has been breached. . ."); and *Argoe v. Three Rivers Behavioral Ctr.  Psychiatric Solutions*, 697 S.E.2d 551, 554 (S.C. 2010) (holding that because Appellant, the father of the attorney's client, was not himself the attorney's client, there was no "duty of care arising from such a relationship").

Plaintiffs assert, without any factual support, that GWB owed them, a non-client and an opposing party, a specific duty of care such that they can recover damages from GWB for the actions GWB took when representing a party adverse to one of the Plaintiffs. This contention defies logic and the very foundation of the adversary system. Without an allegation of facts showing a plausible fraud or tortious conduct by such attorney(s), Plaintiffs may not recover in a negligence action on the grounds that opposing counsel did not look out for their interests. *See Mich. Ret. Plan*, 2019 WL 487565, at *11.

Plaintiffs also suggest that GWB should have investigated its own client. Even taking the Complaint on its face, Plaintiffs have not pled any facts which suggest that GWB had any reason to suspect the alleged falsity of the documents. Plaintiffs' Complaint asserts that GWB breached a duty to them, the adverse party, by not preemptively investigating its own clients' documents, even when there was no reason to suspect that the documents allegedly may not have been exactly what they purported to be. If Plaintiffs' logic is followed, and accepting their allegations as true, then

---

other paper which is an exhibit to a pleading is a part thereof for all purposes if a copy is attached to such pleading." Rule 10(c), SCRCP.

ELECTRONICALLY FILED - 2024 May 28 5:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

attorneys must operate under the assumption that documents they receive from their clients are potentially falsified, turning the attorney-client relationship on its head and placing attorneys at odds with their clients. Because Plaintiffs have not alleged sufficient facts to reach a plausibility that GWB owed them a duty or breached that duty, GWB is entitled to Judgment on the Pleadings.

## V.     Sixth Cause of Action: Conspiracy

Plaintiffs' civil conspiracy claim should be dismissed because it (1) does not allege any separate facts in furtherance of the conspiracy and therefore fails to state a claim on its face and (2) does not allege that GWB acted outside the scope of its representation of State Farm. To properly state a claim for civil conspiracy, a plaintiff must set forth facts sufficient to show "(1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." *Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 861 S.E.2d 774, 780 (2021). In South Carolina, a plaintiff "must plead additional facts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit dismissal of the claim." *Hackworth v. Greywood at Hammett, LLC*, 385 S.C. 110, 682 S.E.2d 871, 875 (Ct. App. 2009), *overruled on other grounds by Paradis*, 861 S.E.2d 774. *See also Jinks v. Sea Pines Resort*, LLC, 2021 U.S. Dist. LEXIS 194965, *14 (D.S.C. 2021) (stating that a plaintiff "cannot avoid pleading separate and independent acts in furtherance of the conspiracy by simply couching her conspiracy claim as an alternative [to other causes of action]").

Plaintiffs have not alleged any additional facts to support their conspiracy cause of action. Rather, they have incorporated the prior allegations by reference and merely recited the elements of civil conspiracy, without providing any supporting facts. *See* Compl. ¶¶ 148-152. This is exactly

the type of pleading that can never state a cause of action for civil conspiracy under South Carolina law.

Even if Plaintiffs had properly pled civil conspiracy, they still have not set forth facts sufficient to support a cause of action for conspiracy against GWB. Attorneys cannot conspire with their clients. An attorney can only be held liable for civil conspiracy "when in addition to representing a client, he breaches some independent duty to a third person or acts in his own personal interest, outside the scope of his representation of the client." *Kozel v. Kozel*, 299 F. Supp. 3d 737, 757 (D.S.C. 2018) (quoting *Stiles*, 457 S.E.2d at 602). So long as an attorney is acting within the scope of the representation of the client, the attorney owes no duty to a non-client. *See Stiles v. Onorato*, 318 S.C. 297, 457 S.E.2d 601, 602 (1995). The Complaint does not allege any facts suggesting that GWB ever acted outside the scope of its representation, nor does it allege that GWB breached an independent duty. On the face of the Complaint, it is clear that GWB was at all times acting in its capacity as counsel for State Farm and not in its own interest. For the foregoing reasons, judgment on the pleadings is appropriate on Plaintiffs' conspiracy claim.

## VI. Robert C. Workman, individually, Kelly Workman Tick and Matthew T. Workman lack standing to bring the Complaint

With the exception of the Estate of James K. Workman, the Plaintiffs lack standing to bring the Complaint. Standing is "a party's right to make a legal claim or seek judicial enforcement of a duty or right." *Powell ex rel. Kelley v. Bank of Am.*, 379 S.C. 437, 444, 665 S.E.2d 237, 241 (Ct. App. 2008) (quoting *Black's Law Dictionary* 1413 (7th ed. 1999)). Standing may be conferred by statute, the constitution, or public importance. *See S.C. Pub. Int. Found. v. S.C. DOT*, 421 S.C. 110, 117, 804 S.E.2d 854, 858 (2017). Plaintiffs have not asserted standing based on statute or public importance, and therefore must establish constitutional standing. There are three elements of constitutional standing:

ELECTRONICALLY FILED - 2024 May 28 5:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 May 28 5:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Powell ex rel. Kelley v. Bank of Am.,* 379 S.C. 437, 444, 665 S.E.2d 237, 241 (Ct. App. 2008) (quoting *Smiley v. South Carolina Dep't of Health & Envt'l Control*, 374 S.C. 326, 329, 649 S.E.2d 31, 32-33 (2007)). The legally protected interest element requires the person bringing the action to have "a real, material, or substantial interest in the subject matter of the action" rather than "a nominal or technical interest in the action." *Uhlig LLC v. Shirley*, 2011 U.S. Dist. LEXIS 31833, *10, 2011 WL 1119548 (D.S.C. 2011) (citing *Sloan v. Greenville County*, 356 S.C. 531, 547, 590 S.E.2d 338, 347 (Ct. App. 2003)).

Robert C. Workman in his individual capacity, Kelly Workman Tick, and Matthew T. Workman (the "Individual Plaintiffs") have not suffered an invasion of any legally protected interest. Even assuming all the allegations in the Complaint are true, the Individual Plaintiffs were not parties in the DJA on which the Complaint is based. *See* Compl. ¶ 74. The Complaint obscures this fact by referring to "Plaintiffs" as a group and vaguely asserting that "[a]s a result of Defendants' wrongful conduct, Plaintiffs and others obtained counsel to address issues, including those related to their own automobile policies". *See* Compl. ¶¶ 101, 102, and 105. Ultimately, the Complaint fails to state facts that directly connect the events complained of to the Individual Plaintiffs and their legally protected interests. The only specific interest ascribed to the individual Plaintiffs  in the Complaint is that they are heirs of the Estate (Compl. ¶¶ 20-22), which is not an interest that gives rise to standing in South Carolina. *See Estate of Corley*, 299 S.C. 525, 526, 386 S.E.2d 264, 265 (Ct. App. 1989) (holding that "the heirs [of the estate] were not real parties in

14

ELECTRONICALLY FILED - 2024 May 28 5:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

interest [in an action to recover property of the decedent] because they were not the legal representatives of the estate and therefore did not have standing to pursue the action. . .”). Therefore, the Individual Plaintiffs lack standing and judgment on the pleadings is merited.

### **CONCLUSION**

For the foregoing reasons, the Court should grant GWB's Motion for Judgment on the Pleadings.

Respectfully submitted,

TURNER PADGET GRAHAM & LANEY, P.A.

s/John S. Wilkerson III
John S. Wilkerson, III, SC Bar No.:  6105
40 Calhoun Street, Suite 200
Post Office Box 22129
Charleston, South Carolina 29413-2129
Telephone:   843-576-2801
Facsimile:   843-577-1649
Email:   jwilkerson@turnerpadget.com

Lindsey M. Behnke, SC Bar No.: 105719
1901 Main Street, Suite 1700 (29201)
Post Office Box 1473
Columbia, South Carolina 29202
Telephone:     803-227-4324
Facsimile:     803-400-1525
Email:   lbehnke@turnerpadget.com

ATTORNEYS FOR GALLIVAN, WHITE & BOYD, P.A.

May 28, 2024
Charleston, South Carolina

TPGL 14493286v1

STATE OF SOUTH CAROLINA   )
                                  )    IN THE COURT OF COMMON PLEAS
COUNTY OF CHARLESTON     )    NINTH JUDICIAL CIRCUIT

|  |  |  |
|---|---|---|
| | ) | Case No. 2023-CP-10-01832 |
| Robert C. Workman, Individually and as | ) | |
| Personal Representative of the Estate of | ) | |
| James K. Workman, Kelly Workman | ) | |
| Tick and Matthew T. Workman, | ) | |
| | ) | |
| Plaintiffs, | ) | **DEFENDANT** |
| | ) | **STATE FARM MUTUAL** |
| | ) | **AUTOMOBILE INSURANCE** |
| vs. | ) | **COMPANY'S** |
| | ) | **RESPONSE IN OPPOSITION TO** |
| | ) | **APPLICATION OF THE CRIME-** |
| State Farm Mutual Automobile Insurance | ) | **FRAUD EXCEPTION** |
| Company and Gallivan, White & Boyd, | ) | |
| P.A., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant State Farm Mutual Automobile Insurance Company ("State Farm") opposes Plaintiffs' Motion to Compel ("Motion," filed Nov. 1, 2023) further responses to any of the forty-four (44) interrogatories and requests for production—some of which have up to twenty-three (23) discrete subparts—in Plaintiffs' First Discovery Requests. While State Farm opposes the Motion in full as well as the new arguments raised in Plaintiffs' Supplemental Memorandum in Support (emailed July 3, 2024), this brief addresses Plaintiffs' argument for application of the crime-fraud exception to the attorney-client privilege.

## **Background**

This lawsuit seeks to impose liability on State Farm and its counsel, Gallivan, White & Boyd, P.A. ("GWB"), for State Farm's August 16, 2021 filing of a declaratory judgment action against, *inter alios*, the Estate of Robert C. Workman (the "Workman Estate"), in the United States District Court for the District of South Carolina (the "DJA," Case No. 2:21-cv-02623-MBS) and for actions taken by State Farm prior to its retention of GWB and its filing of the DJA.

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

As it pertains to the events at issue in this suit, State Farm retained GWB on July 21, 2021 in connection with Claim No. 40-21B2-49D (the "Claim"), which consisted of third-party personal injury and property damage claims asserted by multiple parties, including the Workman Estate, against State Farm's insured Melvin O. Lamb, Jr., and his son, Melvin O. Lamb III, as a result of a June 12, 2021 car accident caused by Lamb III while driving a Tahoe insured by State Farm under a policy issued to Lamb Jr (the "Tahoe Policy") in February 2020.

Through its counsel, GWB, State Farm filed the DJA on August 16, 2021 to enforce an excluded driver endorsement and void coverage for the Claim. The excluded driver endorsement, which had been signed and accepted by Lamb Jr., the named insured, was received by State Farm's Underwriting Department on March 10, 2020. The signed endorsement, however, was not processed by State Farm's Underwriting Department, and therefore did not appear on the Tahoe Policy's Declarations Page, until after the June 12, 2021 car accident, when the processing omission was discovered and corrected. The processing of the excluded driver endorsement on July 13, 2021 caused a new Declarations Page to be prepared on July 14, 2021. Plaintiffs claim the July 14, 2021 preparation of the new Declarations Page was an act of criminal forgery. (*See* Compl.; Pls' Supp. Brief in Supp. of Mot. to Compel at 4.)

When State Farm filed the DJA, it attached a copy of the Tahoe Policy as an exhibit, including the new Declarations Page which stated, in the lower right-hand corner, it was prepared on July 14, 2021 (*i.e.,* after the accident). Plaintiffs insist the allegations concerning the excluded driver endorsement—which the Workman Estate denied in its Answer in the DJA-- constitute actionable fraud and abuse of process and were the product of a civil conspiracy between it and GWB. (*See* Compl.; Pls' Supp. Brief in Supp. of Mot. to Compel at 7-8.)

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

The same conduct that serves as the basis for this suit was presented as a Motion for Sanctions to the United States District Court for the District of South Carolina in the DJA litigation. The Court roundly rejected these identical arguments. (Mot. for Sanctions, ECF No. 66 in Case No. 2:21-cv-02623-MBS.) Acknowledging the Workman Estate's assertions that it sought to hold State Farm accountable for a "fraudulently created document" and "filing false documents in the U.S. District Court," Judge Seymour denied any relief:

> With respect to the Motion for Sanctions, the Estate of Workman requests relief based on allegations that State Farm has committed fraud on the court. . . . [T]he court . . . denies the Motion for Sanctions, ECF No. 66, and dismisses the case with prejudice pursuant to Rule 41(a)(2)."

(Order at 9, 10, 11, ECF No. 87 in Case No. 2:21-cv-02623-MBS, attached as **Ex. A**.)

Judge Seymour further noted that while the Workman Estate had not asserted any argument for sanctions under Rule 11, she was "not inclined to address the matter *sua sponte*, **particularly in light of the testimonial evidence provided in State Farm's response to the Motion for Sanctions**." (Order at 6, n.2, Ex. A (emphasis added).)

The evidence Judge Seymour relied upon includes declarations and deposition testimony explaining, *inter alia*,(a) the underwriting processing error that occurred in 2020 that resulted in the excluded driver endorsement not being listed on the policy's pre-accident declarations pages, (b) the discovery of the processing error after the accident, (c) steps taken by State Farm in response to the processing error and (d) the outcome of those steps, including the preparation of the July 14, 2021 declarations page on the policy. (*See* State Farm's Resp. in Opp. to Mot. for Sanctions, ECF No. 81 in Case No. 2:21-cv-02623-MBS, attached as **Ex. B**.)

### The Crime-Fraud Exception

Undeterred by the failed Motion for Sanctions in the DJA, Plaintiffs brought the present suit and now insist all of State Farm's communications with its lawyers having anything to do with

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

the Claim or the DJA are discoverable because of the crime-fraud exception to the attorney-client privilege. Under the crime-fraud exception, "attorney-client and work product privileges may be lost … when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud." *In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005). According to Plaintiffs, "all documents withheld or partially redacted should be produced," no questions asked, because "[t]here is no protection for communications or documents in furtherance of criminal, tortious or fraudulent conduct," their "Complaint specifically alleges criminal, tortious and fraudulent conduct," and "[t]he crime of forgery is plead along with facts supporting it." (Pls.' Supp. Brief in Supp. of Mot. to Compel at 5-6, 8-9.) The Court should refuse to apply the crime-fraud exception and deny Plaintiffs' motion to compel the production of privileged and work product protected communications for at least two reasons.

**1. Plaintiffs' allegations do not constitute the evidentiary showing necessary for application of the crime-fraud exception to attorney-client privilege.**

First, Plaintiffs have not met their prima facie burden of establishing application of the crime-fraud exception. To invoke the exception, the party asserting it first "must make a prima facie showing that (1) the client was engaged in or planning a criminal or fraudulent scheme when [it] sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *In re Grand Jury Proc. #5 Empaneled Jan. 28, 2004*, 401 F.3d at 251.

The first element "is satisfied by a showing of evidence that, if believed by a trier of fact, would establish the elements of some [criminal or fraudulent conduct] that was ongoing or about to be committed." *In re Grand Jury Investigation*, 842 F.2d 1223, 1226 (11th Cir. 1987). The first element is not satisfied where the party seeking to invoke the exception relies on mere allegations or suspicions of criminality or fraud. *Id*.

With respect to the second element of the prima facie showing Plaintiffs must make, "[t]here must be a 'purposeful nexus' between the communication or document and the [criminal or] fraudulent activity"—in other words, "the communications must be made in furtherance of the alleged [crime or] fraud"—because privileged "[c]ommunications that are merely relevant to the fraudulent scheme will not trigger the crime fraud exception." *Schaefer v. Family Med. Centers of S.C., LLC*, 2019 WL 5893478, at *2 (D.S.C. July 26, 2019) (internal citations omitted).

Plaintiffs have not and cannot make the necessary evidentiary showing to establish either element for application of the crime-fraud exception. As set forth in the Motion, Plaintiffs' sole argument and justification for application of the crime fraud exception are the ***allegations*** in the Complaint:

> The Complaint specifically alleges criminal conduct, tortious conduct and fraudulent conduct. The crime of forgery is plead along with facts supporting it. It is specifically alleged the law firm worked with and aided and abetted State Farm in participating in improper conduct in various ways: Fraud, Abuse of Process, Conspiracy, etc.

(Mot. at 4 (internal citation omitted.)

Significantly, Plaintiffs' allegations alone cannot invoke or justify application of the crime-fraud exception. *See In re Infinity Bus. Grp., Inc.*, 530 B.R. 316, 325 (Bankr. D.S.C. 2015) (party failed to meet burden of demonstrating crime-fraud exception applied when it simply made "generic references" to the allegations in its Complaint); *Neuder v. Battelle Pac. Nw. Nat. Lab.*, 194 F.R.D. 289, 298 (D.D.C. 2000) ("In order to invoke the exception, 'more is necessary than mere allegations of wrongdoing or simply naming the attorney as a defendant in the litigation.'"); *Coleman v. Am. Broad. Companies, Inc.*, 106 F.R.D. 201, 207 (D.D.C. 1985) ("To invoke the 'crime-fraud' exception to the privilege, it is not necessary to prove beyond a reasonable doubt that the attorney or client were attempting or did commit a crime or fraud. However, more is necessary than mere allegations of wrongdoing or simply naming the attorney as a defendant in

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

the litigation."); *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 40 (D. Md. 1974) ("The mere allegation of fraud, however, is not sufficient to terminate the attorney-client privilege. Prima facie evidence of fraud, not mere suspicion of fraud, is required to abrogate the privilege.").

Under Plaintiffs' version of the crime-fraud exception, "a party would simply need to plead sufficient facts to state a cause of action for fraud pursuant to [Rule] 9, and include in the allegations that the opposing party was using litigation as part of the scheme to defraud." *Kane v. Bank of Am. Nat'l Ass'n*, No. 13-CV-8053, 2016 WL 3364768, at *2 (N.D. Ill. June 17, 2016). "If Plaintiff[s] were correct," which they are not, "the crime-fraud exception would become so broad that it would swallow the privilege." *Id*. Because Plaintiffs have not met their prima facie burden, no further analysis is needed, and the crime-fraud exception cannot apply.

### 2. Application of the crime-fraud exception does not result in a blanket waiver of all privileged and protected communications and materials.

Even if Plaintiffs met their prima facie burden to invoke the crime-fraud exception, application of the exception cannot, as a matter of law, result in a blanket waiver of all communications between State Farm and its counsel concerning the complained of events and acts. The crime-fraud exception only applies to "client communications in furtherance of ***contemplated*** or ***ongoing*** criminal or fraudulent conduct." *Schaefer*, 2019 WL 5893478, at *2 (emphasis added). When the crime-fraud exception is applied, the privilege "ceases to operate . . . where the desired advice refers *not to prior wrongdoing*, but to *future wrongdoing*" and, in this regard, the United States Supreme Court has explained that clients should be free to make full disclosure to their attorneys of past wrongdoings and the "attorney-client privilege must necessarily protect the confidences of wrongdoers" with respect to prior wrongdoing. *United States v. Zolin*, 491 U.S. 554, 572 (1989) (emphasis in original).

The limited scope of the crime-fraud exception, when applicable, is significant. For example, Plaintiffs' Supplemental Brief in Support argues all redacted or withheld communications must be produced because "[t]he crime of forgery is plead along with facts supporting it." Even if Plaintiffs' allegations constituted evidence that could establish the crime of forgery, the alleged crime was completed on July 14, 2021, **before** State Farm's July 21, 2021 retention of GWB as its counsel. Thus the preparation of the new Declarations Page, even if it constituted the crime of forgery, cannot justify application of the crime-fraud exception to State Farm's later communications with GWB, nor the work product later created by State Farm or GWB in anticipation of or for the underlying DJA. Furthermore, State Farm's communications with attorneys regarding its previous preparation of the new Declarations Page would be communications referring to the alleged prior "wrongdoing," not future wrongdoing, and, therefore, could never be subject to the crime-fraud exception.

In short, if the crime-fraud exception has any application in this case, it must be determined on a communication-by-communication basis and it cannot result in a blanket waiver.

### Conclusion

For the reasons set forth herein and argued at the July 10, 2024 hearing, the crime-fraud exception should not apply, but, if it does apply, it should be limited to only those attorney-client communications the Court determines to be in furtherance of a current or future crime or fraud as opposed to past wrongdoing.

*[Signature Page to Follow]*

7

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

WHELAN MELLEN & NORRIS, LLC

By: _s/M. Kathleen McTighe Mellen_
    Robert W. Whelan
    Bar No. 7114
    E-Mail: robbie@whelanmellen.com
    M. Kathleen McTighe Mellen
    Bar No. 100826
    E-Mail: katie@whelanmellen.com
    89 Broad Street
    Charleston, SC 29401
    (843) 998-7099

*Attorneys for State Farm Mutual Automobile Insurance Company*

Charleston, South Carolina

July 8, 2024

# Exhibit A

*Order Denying Motion for Sanctions in DJA*

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| State Farm Mutual Automobile Insurance Company, | ) ) ) | Civil Action No.: 2:21-cv-2623-MBS |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER** |
| Melvin O. Lamb III, Melvin O. Lamb Jr., The Estate of James K. Workman, Michael H. Moore, Deborah D. Plott, Angela R. Edwards, Constance J. Molinaro, Mario F. Molinaro, Jonathan D. Keller, Katherine M. Vonesh, Mathis S. Billman, and Luke E. Billman, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the court on Plaintiff State Farm Mutual Automobile Insurance Company's ("State Farm") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 41(a)(2) ("Motion to Dismiss"), Motion to Stay Discovery, Motion for Service by Publication, and Motion for Protective Order. Defendant the Estate of James K. Workman (the "Estate of Workman") opposes the Motion to Dismiss and has filed a Motion for Sanctions as to State Farm. For the reasons explained below, the Motion to Dismiss is granted, the Motion for Sanctions is denied, and the remaining motions are denied as moot.

## BACKGROUND

State Farm initiated this action seeking a declaratory judgment as to its duty to defend or indemnify Defendants Melvin O. Lamb, III and his son, Melvin O. Lamb, Jr., for all claims related to or arising out of a motor vehicle accident that occurred in Mount Pleasant, South Carolina, on or about June 12, 2021. The complaint references an automobile insurance policy

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

issued by State Farm to Melvin O. Lamb, Jr., which provides for bodily injury liability limits in the amount of $25,000 per person/$50,000 per accident and property damage limits of $25,000 per accident (the "Policy") and references a driver exclusion endorsement (the "Exclusion") that State Farm contends excludes Melvin O. Lamb, III from coverage under the Policy.  ECF No. 1 at ¶¶ 18, 19.  State Farm alleges that Melvin O. Lamb, Jr. signed the Exclusion pursuant to S.C. Code Ann. § 38-77-340 and "confirmed that either the driver's license of [Melvin O. Lamb, III] had been turned in to the Department of Motor Vehicles or that [Melvin O. Lamb, III] obtained appropriate insurance through another policy."  *Id.*

The car accident occurred while Melvin O. Lamb, III was driving a 2004 Chevrolet Tahoe owned by Melvin O. Lamb, Jr. and insured under the Policy. The complaint alleges that Melvin O. Lamb, III struck the rear of the Estate of Workman's vehicle, "which was stopped due to traffic," and that the "impact started a chain-reaction causing Workman to strike the vehicles operated by [Defendant Michael H. Moore] and [Defendant Jonathan D. Keller]."  ECF No. 1 at ¶ 22.  The complaint alleges that Melvin O. Lamb, III then "struck the vehicles operated by Moore, [Defendant Deborah D. Plott] and [Defendant Angela R. Edwards] and that "Moore and Edwards each then struck the vehicle operated by [Defendant Constance Molinaro] and owned by [Defendant Mario Molinaro], and Plott struck the vehicle operated by Mathis and owned by Luke."  *Id.* at ¶ 24.  The complaint alleges that Mr. Workman died as a result of the injuries he sustained during the accident.  *Id.* at ¶ 25.  State Farm filed the complaint contending that based upon the Exclusion and applicable South Carolina law, "it has no duty to defend or indemnify [Melvin O. Lamb, III or Melvin O. Lamb, Jr.] from any claim arising out of the accident described herein."  *Id.* at ¶ 27.  In so contending, State Farm sought the following relief: a declaration that the Exclusion is valid and enforceable; a declaration that the Exclusion excludes

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

coverage for any bodily injury, loss, or damage that occurred while Melvin O. Lamb, III was operating a motor vehicle; and a declaration that State Farm has no duty or obligation to defend or indemnify Melvin O. Lamb, III or Melvin O. Lamb, Jr. for the claims arising out of the motor vehicle accident described herein.

Melvin O. Lamb, Jr. filed an answer and asserted a counterclaim contending that "State Farm should be ordered to continue to defend the Defendant in the underlying automobile accident tort litigation instituted by Defendant Workman, and to indemnify Defendant for any liability for the same, which is specifically denied." ECF No. 42 at 2. The Estate of Workman filed only an answer to the complaint.[1] The parties proceeded with discovery and, in January 2022, State Farm filed a motion seeking to serve Melvin O. Lamb, III by publication. Approximately three weeks later, State Farm filed the Motion to Dismiss.

In the Motion to Dismiss, State Farm asserts:

[it] is and has been defending Melvin O. Lamb, Jr., in an underlying lawsuit brought against him by the Estate of James K. Workman ("the Estate"). No other lawsuits are pending against Melvin O. Lamb, Jr. arising out of the automobile accident. Further, upon information and belief, no civil actions have been brought against Melvin O. Lamb, III arising out of the automobile accident.

ECF No. 64 at 1. State Farm further asserts:

[it] has reached a resolution of the coverage issues that are the subject of this action and has agreed to defend and indemnify the insureds, Melvin O. Lamb, Jr. and Melvin O. Lamb, III, under the subject policy for claims that have been, or may be brought against them arising out of the automobile accident, under the terms of the subject policy.

State Farm's resolution of the coverage issues with the insureds moots this declaratory judgment action, including the counterclaim asserted by Melvin O. Lamb, Jr., and there is no justiciable controversy to be resolved by the court.

---

[1] Defendants Keller, Edwards, and the Molinaros were dismissed by stipulation. Defendants Moore, Plott, Vornesh, and the Billmans failed to enter an appearance and default was entered as to them.

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*Id.* at 2.  State Farm states it sought to voluntarily dismiss the action and that the Estate of Workman does not consent.  Accordingly, State Farm seeks an order from the court dismissing this case pursuant to Rule 41(a)(2).

State Farm also filed a Motion to Stay Discovery pending disposition of the Motion to Dismiss.  ECF No. 65.  The Estate of Workman filed an opposition brief to the Motion to Dismiss and Motion to Stay Discovery, ECF No. 67, and filed a Motion for Sanctions as to State Farm, ECF No. 66.  State Farm and the Estate of Workman then filed a joint motion asking the court to stay briefing on these motions pending the two parties' efforts to resolve the dispute through mediation.  ECF No. 68.  The parties were ultimately unsuccessful at reaching a resolution.  The pending motions are now ripe and, on June 3, 2022, State Farm filed a Motion for Protective Order to prevent the Estate of Workman from deposing three State Farm employees until and unless the court denies the Motion to Dismiss.  ECF No. 84.

The court exercises subject matter jurisdiction pursuant to 28 U.S.C § 1332 and, for the reasons discussed below, grants the Motion to Dismiss and denies the Motion for Sanctions.

## LEGAL STANDARD

Rule 41(a) permits a plaintiff to dismiss an action without a court order by filing either a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment, or by filing a stipulation of dismissal signed by all parties who have appeared.  Fed. R. Civ. P. 41(a)(1).  Rule 41(a)(2) provides that where the terms of Rule 41(a)(1) are not satisfied, a plaintiff may dismiss an action by court order only.  Rule 41(a)(2) applies here because the only two Defendants to appear in this matter each filed an answer and the Estate of Workman does not consent to State Farm's voluntary dismissal.

Whether to grant a voluntary dismissal under Rule 41(a)(2) lies within the discretion of the court. *Davis v. USX, Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). "The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." *Id.* (citations omitted). The Rule authorizes the court to impose conditions on a voluntary dismissal so as to "obviate any prejudice to the defendants which may otherwise result from dismissal without prejudice." *Id.* "In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant." *Id.* (citation omitted).

Also at issue here is the Estate of Workman's Motion for Sanctions, made pursuant to Federal Rule of Civil Procedure 37. Rule 26(b)(1) authorizes discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

On proper notice, a party may move for an order compelling disclosure or discovery. Fed. R. Civ. P. 37(a)(1). If a party fails to obey an order to provide or permit discovery, the court may order sanctions, to include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*Id.* at Rule 37(b)(2)(A). Instead of or in addition to the above sanctions, the court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* at Rule 37(b)(2)(C). The court may also impose any of the above-described sanctions, or any other appropriate sanctions, in the event a party fails to provide information or identify a witness as required by Rule 26(a) or (e), *id.* at Rule 37(c)(1), or fails to serve answers to interrogatories, *id.* at Rule 37(d)(1), (3).[2]

## DISCUSSION

### I.    Arguments

The Estate of Workman opposes the Motion to Dismiss and bases its opposition on the same contention that serves as the basis for its Motion for Sanctions, the allegation that State Farm "attached a bogus policy declarations page to its Complaint to support the exclusion." *Id.* The Estate of Workman asserts that State Farm "now admits the declarations page was created after the wreck," and further asserts that "the policy endorsement form that State Farm cited as a basis for excluding [Melvin O. Lamb, III] was never approved by the S.C. Department of Insurance as

---

[2] The Estate of Workman also moves for sanctions pursuant to 28 U.S.C. § 1927, "the Court's inherent power," and to "other law." ECF No. 66 at 2. Section 1927 provides, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Estate of Workman does not discuss application of this provision in its Motion, nor does the record plainly demonstrate how State Farm has acted so as to multiply proceedings unreasonably or vexatiously. As for the reference to "other law," Federal Rule of Civil Procedure 11 imposes certain requirements on attorneys with respect to the representations they make to a court in their pleadings, motions, and other papers and authorizes the court to order sanctions upon a finding that those requirements have been violated. However, the Estate of Workman does not assert any argument that sanctions under Rule 11 would be appropriate and the court is not inclined to address the matter *sua sponte*, particularly in light of the testimonial evidence provided in State Farm's response to the Motion for Sanctions.

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

required by S.C. Code Ann. § 38-77-340." *Id.* at 3. More specifically, the Estate of Workman alleges:

> Defendant Workman Estate served discovery on State Farm seeking evidence supporting its allegations, including that it "investigated this matter and believes based upon the Policy exclusion referenced herein and applicable South Carolina law, it has no duty to defend or indemnify the Father or Son…" [] Defendant also sought evidence that supports State Farm's claim it had issued a valid and effective endorsement excluding coverage for "Policy 632-3189-B07-40" that complied with S.C. Code Ann. §38-77-340. [] State Farm objected. (ECF 66-14, State Farm's Responses to Workman's Second Discovery Requests dated Jan. 28, 2022 and ECF 66-11 State Farm's Objections to Workman's Request for Admission and Third Discovery Requests dated Jan. 28, 2022.) Now, State Farm seeks protection from having to answer, along with an order allowing the DJ action to be dismissed. []

*Id.* at 3. The Estate of Workman asserts that the court should permit voluntary dismissal only upon the imposition of the following conditions: "State Farm be required to answer all outstanding discovery and divulge any agreement regarding dismissal that it struck with [Melvin O. Lamb, Jr.]"; and "a finding that State Farm's policy exclusion is ineffective." ECF No. 67 at 2. In addition to asking the court to impose the conditions described above, the Estate of Workman asks in the Motion for Sanctions for the court to order "compensation for counsel's time, expense," and to "enjoin State Farm from filing declaratory judgment actions in this district only upon the satisfaction of certain steps like attaching a verification subject to penalty of perjury signed by an executive of State Farm." ECF No. 66 at 17.

In its response to the Motion for Sanctions, State Farm states:

> [its] Underwriting Department made a series of administrative errors relative to the [P]olicy following its February 2020 inception. These administrative errors resulted in the Underwriting Department's incomplete processing of the applicable excluded driver endorsement and the omission of the endorsement from the policy's declarations pages; the Claims Department being unaware of the applicable excluded driver endorsement and therefore making misstatements during claim handling regarding coverage available under the [P]olicy; and, upon realizing its prior omission, the Underwriting Department's post-loss preparation of a new declarations page listing the endorsement. These mishaps and the correction of the same occurred

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

before the filing of [this action], not for purposes of filing [this action], and none of them are fraudulent.

ECF No. 81 at 2, 3-5. *See* ECF Nos. 81-1, 81-2 (declaration and transcript of deposition testimony of Shay Anderson, Team Manager of State Farm's Underwriting Department, chronicling administrative errors concerning the Policy and Exclusion). *See also* ECF No. 81-3 (declaration of Darren Murdoch, State Farm Claim Team Manager, attesting to the fact that when a claim was submitted regarding the motor vehicle accident, a State Farm claim specialist learned of a possible driver exclusion and determined an investigation was necessary).

State Farm also recounts that counsel for the Estate of Workman took State Farm's Rule 30(b)(6) deposition on December 14, 2021, and "focused his questions on the administrative errors discussed above and whether the Excluded Driver Endorsement form was approved by the SCDOI." ECF No. 81 at 8. State Farm represents that "[s]hortly after the deposition, and considering the totality of the circumstances, State Farm agreed to withdraw its reservation of rights, defend and indemnify Mr. Lamb and Lamb III, and sought consent from the parties to dismiss [this action]." *Id.* State Farm asserts that following the Estate of Workman's objection to a voluntary dismissal and its filing of the Motion for Sanctions, State Farm "requested the amount of attorneys' fees and costs incurred by Mr. Lamb and the Estate, requested mediation, agreed to pay the attorneys' fees submitted by Mr. Lamb, and agreed to pay the Estate $10,000,000 in exchange for a full release of the claims against Mr. Lamb and Lamb III." *Id.* In addition to providing this background and asserting the Motion for Sanctions misconstrues the nature of State Farm's administrative mistakes, State Farm argues that "the Motion does not identify an appropriate basis for sanctions under the facts of this case," and moreover is procedurally defective.

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

In its reply in support of its Motion, the Estate of Workman reiterates that this action is "based on a fraudulently created document, a policy declarations page created more than a month after the collision, and a false certification about which policy was in effect at the time of the collision," and essentially asserts that State Farm's acknowledgement of its duty to defend and indemnify Melvin O. Lamb, III is not relevant to the issues raised in the pending motions.

## II.     Findings

The court addresses the Motion to Dismiss first and finds that voluntary dismissal is appropriate. First, there is no suggestion in the briefs that the Lambs are prejudiced by State Farm's dismissal of this case and it is not clear to the court how the Estate of Workman would be prejudiced. The Estate of Workman does not reference the word prejudice in its response to the Motion to Dismiss and does not otherwise illustrate any prejudice incurred. Rather, the Estate of Workman states simply that "State Farm initiated this action [] [and] [n]ow that Defendants have caught State Farm trying to avoid responsibility without a good faith basis, State Farm should not simply be allowed to walk away." ECF No. 67 at 7. The court notes from its own review of the docket that the case was filed in August 2021, less than a year ago, and the discovery process commenced in September 2021 with the issuance of a scheduling order. The case is still young and the parties have not yet invested time and energy into undertakings such as extensive discovery practice or preparing motions for summary judgment.

Second, the Estate of Workman did not assert a counterclaim against State Farm and has not moved to amend its pleading to assert any such counterclaim. The Estate of Workman is merely defending against the complaint that State Farm filed. State Farm represents, and no one refutes, that the controversy alleged in the complaint is resolved in its entirety. Accordingly, there is no longer a live dispute for the court to adjudicate. As for the court's ability to impose conditions

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

on a voluntary dismissal, the court finds that neither of the proposed conditions is appropriate.  The court declines to order State Farm to engage in additional discovery, for reasons addressed below, and also declines to render an advisory opinion on State Farm's policy exclusion.  The finality of a Rule 41 dismissal is sufficient to trigger the protections of *res judicata*.  *See Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 319-20 (4th Cir. 2002) (holding that "claim preclusion requires only a valid and final judgment").

With respect to the Motion for Sanctions, the Estate of Workman requests relief based on allegations that State Farm has committed fraud on the court—not based on an argument that State Farm has engaged in discovery abuses.  ECF No. 83 at 3 (asserting the Motion for Sanctions "seeks to hold State Farm accountable for filing false documents in the U.S. District Court to have this Court determine that based on the documents it attached, it had no responsibility to its insureds").  Indeed, there is no record of State Farm disobeying a discovery order or violating the rules governing discovery.[3]  Furthermore, there is no live claim pending in this action on which the court could order the parties to engage in discovery; as mentioned, the Estate of Workman did not assert a counterclaim.  Discovery is appropriate only insofar as it relates to a party's claim or defense.  As State Farm contends in its response to the Motion for Sanctions, the discovery the Estate of Workman continues to seek is simply not relevant to any claim or defense because the underlying dispute has been resolved and the Estate of Workman did not assert an independent claim against State Farm.  The requested discovery is similarly out of proportion to the needs of the case.

---

[3] The Estate of Workman filed a motion to compel against State Farm in November 2021, ECF No. 44, and withdrew the motion ten days later, ECF No. 45.

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

For these reasons, the court grants the Motion to Dismiss, ECF No. 64, denies the Motion for Sanctions, ECF No. 66, and dismisses this case with prejudice pursuant to Rule 41(a)(2). The Motion for Service by Publication, ECF No. 63, the Motion to Stay Discovery, ECF No. 65, and the Motion for Protective Order, ECF No. 84, are denied as moot.

**IT IS SO ORDERED.**

/s/Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

July 28, 2022
Charleston, South Carolina

# Exhibit B

*State Farm's Opposition to Motion for Sanctions in DJA*

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company,<br><br>Plaintiff,<br><br>vs.<br><br>Melvin O. Lamb III, Melvin O. Lamb, Jr., The Estate of James K. Workman, Michael H. Moore, Deborah D. Plott, Angela R. Edwards, Katherine M. Vonesh, Mathis S. Billman, and Luke E. Billman,<br><br>Defendants. | C.A. No.: 2:21-CV-02623-MBS<br><br>**RESPONSE IN OPPOSITION TO MOTION FOR SANCTIONS** |

The Estate of James K. Workman (the "Estate"), which recently settled its liability claims against Melvin O. Lamb, Jr. ("Mr. Lamb") and his son Melvin O. Lamb, III ("Lamb III") with State Farm Mutual Automobile Insurance Company ("State Farm"),[1] seeks sanctions against State Farm based on the filing of this declaratory judgment action ("DJA"). State Farm opposes the Motion for Sanctions (ECF No. 66, the "Motion") and responds as follows.

**INTRODUCTION**

The Estate claims State Farm prepared and filed a "false" insurance policy with its DJA and made false allegations in the DJA regarding an excluded driver endorsement for purposes of misleading and deceiving the Court and the parties. While a salacious narrative, the Estate is wrong. There is no "false" policy. There is one policy of insurance that is the subject of the DJA, and each declarations page issued during the life of the policy was "real," and none were "false." Likewise, State Farm did not submit any false allegations concerning an excluded driver endorsement. There is no dispute, State Farm's insured—Mr. Lamb—signed and accepted an

---

[1] During mediation, State Farm agreed to pay $10,000,000 on behalf of Mr. Lamb and Lamb III to settle the Estate's wrongful death and survival claims against them.

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

endorsement to the policy excluding any coverage for loss when his son—Lamb III—was driving.

In truth, State Farm's Underwriting Department made a series of administrative errors relative to the policy following its February 2020 inception. These administrative errors resulted in the Underwriting Department's incomplete processing of the applicable excluded driver endorsement and the omission of the endorsement from the policy's declarations pages; the Claims Department being unaware of the applicable excluded driver endorsement and therefore making misstatements during claim handling regarding coverage available under the policy; and, upon realizing its prior omission, the Underwriting Department's post-loss preparation of a new declarations page listing the endorsement. These mishaps and the correction of the same occurred before the filing of the DJA, not for purposes of filing the DJA, and none of them are fraudulent.

Like all insurance companies that file complaints for declaratory relief on the issue of coverage, State Farm understands company records relative to the policy and purported coverage are subject to discovery. It defies logic to suggest State Farm would choose to perpetrate a discoverable fraud on the court rather than simply pay the Estate and other claimants a *total* of no more than $50,000, the per accident liability limit under the policy.

## FACTUAL BACKGROUND

Mr. Lamb has been insured with State Farm for many years, and for many years his son, Lamb III, has been an excluded driver on all of Mr. Lamb's auto policies. (*See* Anderson Dec. ¶ 5, attached as **Ex. 1**.) Since 2017, for each policy in force, Mr. Lamb accepted and executed an endorsement excluding all coverage for injury, loss, or damage in the event his son was operating a vehicle. (*See* Anderson Dec. ¶ 5; *see also*, Anderson Dep. Tr. 172:10-21, attached as **Ex. 2**.) In fact, Mr. Lamb accepted and executed those excluded driver endorsements to his auto policies on October 2, 2017, October 27, 2017, November 6, 2017, July 10, 2019, September 7, 2018, January

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

10, 2020, and February 26, 2020. (*See* Anderson Dec. ¶ 5.)

Regarding the subject policy, on February 7, 2020, Mr. Lamb applied for insurance on a 2004 Chevrolet Tahoe. (*See* Anderson Dec. ¶ 6.) On February 13, 2020, a week after the application was completed, State Farm's Underwriting Department ("Underwriting") received the application. (Anderson Dec. ¶ 6.) Thereafter, on or about February 21, 2020, policy number 632 3189-B07-40 (the "Tahoe Policy") was issued by State Farm with an effective date of February 7, 2020 and a declarations page was prepared (the "First Dec Page"). (*See* Anderson Dec. ¶ 8; *see also*, Anderson Dep. Tr. 73:10-17.) According to the First Dec Page, the Tahoe Policy consisted of the declarations page, the policy booklet, and "any endorsements that apply." (First Dec. Page, ECF No. 66-5.) At the time Mr. Lamb applied for the Tahoe Policy and at the time of the Tahoe Policy's issuance, Lamb III was not a rated driver for Mr. Lamb's Tahoe Policy or his other household auto policies and Lamb III was an excluded driver on each of the other household policies pursuant to excluded driver endorsements signed and accepted by Mr. Lamb. (*See* Anderson Dec. ¶¶ 9, 10; *see also*, Anderson Dep. Tr. 76:17-25; 171:25-172:21.)

On February 26, 2020, six days after the Tahoe Policy and First Dec Page were issued, Mr. Lamb executed an excluded driver endorsement to the Tahoe Policy (the "Excluded Driver Endorsement"), agreeing, as he had done with his other auto policies, there was no coverage if his son—Lamb III—was driving the vehicle. (*See* Excluded Driver Endorsement, ECF No. 1-1 p. 61.) The Excluded Driver Endorsement identified the Tahoe Policy and stated, "This endorsement is a part of the policy." (Excluded Driver Endorsement, ECF No. 1-1 p. 61.)

The signed Excluded Driver Endorsement was sent by the Agent's office to Underwriting on March 10, 2020. (Anderson Dep. Tr. 169:1-4, 173:1-9; *see also*, Anderson Dec. ¶ 11.) Given it was signed by Mr. Lamb and received by Underwriting after the February 21, 2020 preparation of

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

the original declarations page, the Excluded Driver Endorsement was not listed on the Tahoe Policy's First Dec Page. (Anderson Dep. Tr. 70:3-19, 73:5-74:11.) Following receipt of the signed Excluded Driver Endorsement, Underwriting should have made an entry in its system to have the endorsement appear on the declarations page, which would have triggered preparation of a new declarations page. (Anderson Dep. Tr. 82:2-6, 92:1-5, 173:10-24.) Instead, Underwriting imaged the signed Excluded Driver Endorsement it received but failed to complete the data entry that would have triggered the issuance of a new declarations page listing the endorsement. (Anderson Dep. Tr. 81:19-82:6, 92:1-5, 169:1-4, 173:10-174:6; *see also*, Anderson Dec. ¶ 11.)

Many months later, on September 8, 2020, for reasons unrelated to this litigation, a new declarations page was prepared on the Tahoe Policy ("Second Dec Page"), reflecting a policy period of August 23, 2020 to February 7, 2021. (Second Dec Page, ECF No. 66-6; *see also*, Anderson Dep. Tr. 80:14-19.) Each time a new declarations page is issued, a letter is added to the end of the policy number. (Anderson Dep. Tr. 84:10-22.) Thus, the Second Dec Page reflected the Tahoe Policy number with the letter "A" appended to it. (Anderson Dep. Tr. 84:10-22.) The prior oversight with respect to processing the Excluded Driver Endorsement was not recognized and, therefore, the endorsement excluding Lamb III, though received by and on file with Underwriting, was not identified on the Second Dec Page. (Anderson Dep. Tr. 81:19-24.) Nonetheless, like the First Dec Page, the Second Dec Page stated the Tahoe Policy consisted of the declarations page, the policy booklet, and "any endorsements that apply." (Second Dec Page, ECF No. 66-6.) Again, the Excluded Driver Endorsement Mr. Lamb signed and returned to State Farm stated it applied to the Tahoe Policy. (Excluded Driver Endorsement, ECF No. 1-1 p. 61.)

On June 12, 2021, Lamb III caused a serious, multi-car accident involving, among others, Mr. Workman. Tragically, Mr. Workman died as a result of the accident. State Farm's Claims

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Department ("Claims") was informed of the loss and liability claim. On June 18, 2021, State Farm learned of a possible driver exclusion for Lamb III on the Tahoe Policy. (Murdoch Dec. ¶ 7.a, attached as **Ex. 3**.) Claims was unaware of such exclusion on the Tahoe Policy and noted investigation was needed. (Murdoch Dec. ¶ 7.a.)

Investigating coverage, Claims spoke with the State Farm Agent's office as well as Underwriting regarding the existence of an excluded driver endorsement with respect to Lamb III on the Tahoe Policy. (Murdoch Dec. ¶¶ 7.b, 7.d.) Presumably as a result of the March 2020 failure to fully process the endorsement, both Mr. Black and Underwriting informed Claims there was no such endorsement on the Tahoe Policy. (*See* Murdoch Dec. ¶¶ 7.b, 7.d.) Unbeknownst to Claims, this was incorrect, as the Excluded Driver Endorsement had been signed by Mr. Lamb in February 2020, and it had been imaged and received by Underwriting in March 2020. (Anderson Dep. Tr. 169:1-4, 173:1-9.) Unaware of the Excluded Driver Endorsement, Claims sent letters to Mr. Lamb and Lamb III informing them of "a potential for exposure beyond the limits of liability coverage afforded [them] under [the Tahoe] policy." (Murdoch Dec. ¶ 7.d.)

On or around July 9, 2021, the processing omission with respect to the Excluded Driver Endorsement was discovered by Underwriting, and a service request was initiated for Underwriting to process the Excluded Driver Endorsement. (Anderson Dec. ¶ 12.) On or around July 13, 2021, Underwriting processed the entry of the Excluded Driver Endorsement on the Tahoe Policy, which policy transaction triggered the preparation of a new declarations page ("Third Dec Page") on July 14, 2021 listing the Excluded Driver Endorsement. (*See* Willingham Decl. ¶ 4, attached as **Ex. 4**; *see also*, Anderson Dep. Tr. 87:9-88:16.) Because this was the third declarations page on the Tahoe Policy, the letter "B" was appended to the Tahoe Policy number. (Anderson Dep. Tr. 103:20-24.)

While the Excluded Driver Endorsement to the Tahoe Policy was signed, accepted, and effective February 26, 2020, the start of the policy period identified on the Third Dec Page identifying the Excluded Driver Endorsement was June 10, 2021, which was two days prior to the date of loss, with an end date of February 7, 2022.[2] (Anderson Dep. Tr. 90:5-91:7.) The temporal proximity between the Third Dec Page's June 10, 2021 policy period start date and the June 12, 2021 date of loss was nothing more than coincidence. The Underwriting Service Assistant who handled the service request was not aware of the claim relating to the June 12, 2021 accident when she used the June 10, 2021 date to effect the policy transaction. (*See* Willingham Decl. ¶¶ 7, 8, 13.) Rather, for reasons unrelated to the loss or the DJA, June 10, 2021 was the first available date for the effective date of the transaction adding the Excluded Driver Endorsement and was chosen by the Underwriting Service Assistant for that reason. (*See* Willingham Decl. ¶¶ 6-13.)

Claims was informed of the Excluded Driver Endorsement on the Tahoe Policy on or around July 16, 2021. (Murdoch Dec. ¶ 7.e.) Thereafter, Claims retained separate counsel to represent Mr. Lamb, Lamb III, and State Farm, and, on August 4, 2021, State Farm sent Reservation of Rights letters to Mr. Lamb and Lamb III notifying them there may be no duty to defend or indemnify under the Tahoe Policy due to the Excluded Driver Endorsement. (Murdoch Dec. ¶¶ 7.f, 7.g.) On August 4, 2021, Claims, requested a certified copy of the Tahoe Policy from Underwriting, which it received and provided to counsel on August 5, 2021. (Murdoch Dec. ¶¶

---

[2] At the time the Third Dec Page was prepared, Mr. Lamb had not yet requested cancellation of the Tahoe Policy, hence the February 7, 2022 policy period end date appearing on the Third Dec Page. As discussed below, Mr. Lamb requested cancellation of the Tahoe policy on July 26, 2021, and on August 2, 2021 his cancellation request was processed by Underwriting, with the effective date of cancellation being June 13, 2021, the day after the loss. This explains the policy period reflected on the policy certification signed by Underwriting—June 10, 2021 through June 13, 2021—being different from the policy period reflected on the Third Dec Page—June 10, 2021 through February 7, 2022.

7.h, 7.i.)

In the interim, on July 26, 2021, Mr. Lamb requested cancellation of the Tahoe Policy. (*See* Anderson Dec. ¶ 13.) Underwriting received the cancellation request on July 27, 2021, and it processed the cancellation on August 2, 2021, with the effective date of cancellation being June 13, 2021, the day after the accident. (*See* Anderson Dec. ¶¶ 14, 15.) In short, Underwriting identified its processing error and prepared the Third Dec Page **before** the Tahoe Policy cancellation was requested, received, and processed, (*see* Willingham Decl. ¶ 4; Anderson Dec. ¶¶ 13-15), but received Claims' request for a certified copy of the policy and prepared the certified copy of the Tahoe Policy **after** the Tahoe Policy cancellation was received and processed (*see* Certified Policy Record, ECF No. 1-1; Anderson Dec. ¶ 16).

In other words, the requested cancellation, receipt of the cancellation request, and processing of the cancellation of the Tahoe Policy occurred **between** the July 14, 2021 preparation of the Third Dec Page and the August 5, 2021 preparation of the certified copy of the Tahoe Policy. Thus, while the certified policy record generated for the June 12, 2021 date of loss included the Third Dec Page showing a policy period of June 10, 2021 to February 7, 2022, it included a certification stating the policy period was June 10, 2021 to June 13, 2021.[3] (*See* ECF No. 1-1.)

On August 16, 2021, State Farm filed the DJA seeking a judicial order there was no coverage under the Tahoe Policy for the losses resulting from the June 12, 2021 accident given the Excluded Driver Endorsement. (ECF No. 1.) It attached the certified policy record created on August 5, 2021 to its complaint. (ECF No. 1-1.) It alleged Mr. Lamb executed the Excluded Driver Endorsement and that the Excluded Driver Endorsement applied to the Tahoe Policy. (ECF No. 1.) These allegations were true. The facts and circumstances surrounding the preparation of the

---

[3] *See also* explanation *supra* note 2.

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Third Dec Page were not alleged in the DJA.

On December 14, 2021, the Estate took State Farm's Rule 30(b)(6) deposition, during which counsel for the Estate focused his questions on the administrative errors discussed above and whether the Excluded Driver Endorsement form was approved by the SCDOI. Shortly after the deposition, and considering the totality of the circumstances, State Farm agreed to withdraw its reservation of rights, defend and indemnify Mr. Lamb and Lamb III, and sought consent from the parties to dismiss the DJA. The Estate objected and filed this Motion. State Farm requested the amount of attorneys' fees and costs incurred by Mr. Lamb and the Estate,[4] requested mediation, agreed to pay the attorneys' fees submitted by Mr. Lamb, and agreed to pay the Estate $10,000,000 in exchange for a full release of the claims against Mr. Lamb and Lamb III.

<div align="center"><b>ARGUMENT</b></div>

The Estate's Motion should be denied for several reasons. First, the Motion misconstrues mistakes as a nefarious conspiracy which—ironically—benefitted the Estate. Second, the Motion does not identify an appropriate basis for sanctions under the facts of this case. Third, the Motion is procedurally defective.

**I.     State Farm's errors, while acknowledged and regrettable, are grossly misconstrued by the Estate.**

Clearly, State Farm acknowledges mistakes were made. Most significantly, the failure to identify an applicable endorsement on the declarations page of the Tahoe Policy led to State Farm briefly—but incorrectly—suggesting to Mr. Lamb and Lamb III there was liability coverage under the Tahoe Policy for the June 12, 2021 loss. While acknowledging (and paying for) its mistakes, State Farm contests how its errors are framed and misconstrued in the Estate's Motion.

---

[4] The Estate declined to provide any information concerning their fees or costs related to the DJA.

<div align="center">8</div>

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**A.    While there were three declarations pages, there was only one Tahoe Policy.**

Issuance of a new policy generates a declarations page, and certain transactions on the policy may generate new declarations pages thereafter. (Anderson Dec. ¶ 7; *see also*, Anderson Dep. Tr. 70:14-19, 133:11-134:14.) The Estate, however, conflates different declarations pages with different policies of insurance, referring separately to "Policy 40A" and "Policy 40B," with the former being "the real policy" and the latter being the "false" policy "State Farm created and used . . . as an attachment to this lawsuit to avoid its duty to defend and indemnify its insureds." (Mot. at 3, 6-7.)

As noted on each declarations page, the Tahoe Policy consists of the declarations page, the policy booklet, "and any endorsements that apply." The First Dec Page, the Second Dec Page, and the Third Dec Page are not, as the Estate appears to assert, the embodiment of three separate and distinct insurance policies issued by State Farm. Instead, they are consecutive declarations pages issued on one policy of insurance, the Tahoe Policy.

In support of its contention that the different letters appended to the end of the Tahoe Policy number on the Second Dec Page and the Third Dec Page show there were separate and distinct insurance policies, the Estate cites the following Rule 30(b)(6) testimony of State Farm:

> **Q.    And 632 3189-B07-40, that policy number or ones like it are the way State Farm refers to various policies it issues to its insured?**
>
> A.    Auto policies, yes.

(Anderson Dep. Tr. 66:21-67:4.) Not cited by the Estate is the explanation provided for the appendage of a letter at the end of the policy number, which was discussed when the Estate's counsel questioned State Farm regarding the Second Dec Page and the addition of an "A" to the end of the Tahoe Policy number:

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

> **Q.      Why was this document—why was the letter "A" added on to the end of this? . . .**
>
> **A.      So the prior Dec Page . . . is the Dec Page – the first Dec Page issued under the policy number. [This document], with the "A" at the end of the policy number, represents the second declarations page, so each subsequent one would have "A", "B", "C", "D".**

(Anderson Dep. Tr. 84:10-22.) In sum, the existence of subsequent declarations pages on a policy of insurance does not change the fact there is one policy of insurance, of which the declarations page is just one part.

**B.      The Third Dec Page is real, not "false," – declarations pages are often and necessarily prepared with effective dates or policy period start dates that precede the date of preparation.**

State Farm's oversight in processing the signed and received Excluded Driver Endorsement had not yet been discovered as of the June 12, 2021 date of loss. Once discovered, the policy transaction to have the endorsement listed on the declarations page triggered the preparation of the Third Dec Page. (*See* Anderson Dep. Tr. 82:2-20, 134:11-14; *see also*, Willingham Dec.) Thus, it is true that on the June 12, 2021 date of loss the Third Dec Page had not yet been prepared. But that does not render the Third Dec Page "false" or any less "real" than the Second Dec Page.

The Estate's argument presumes the effective date of a policy corresponds to the date the declarations page is generated. This is inaccurate (not to mention impractical) and without any support. In fact, the effective date of coverage and the preparation date of associated documents (*e.g.,* declarations pages, endorsements, etc.) frequently differ, and the critical inquiry is not when an associated document was physically prepared.

To put this into context, the Tahoe Policy was issued on or around February 20, 2020, with an effective date of February 7, 2020. The First Dec Page, however, was not prepared until February 21, 2020. If an accident occurred between February 7, 2020 and February 21, 2020, there

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

could be no argument the Tahoe Policy did not exist or that there was no coverage on the date of loss simply because the First Dec Page had not yet been prepared. Nor would it be fraud to later certify the policy record on the date of loss as including the subsequently prepared declarations page. In short, the effective date or policy period start date shown on a declarations page preceding the date the declarations page was physically prepared is a common and often necessary practice. It is not evidence of a nefarious conspiracy to alter coverage under a policy of insurance.

   **C.     There is and can be no dispute, Mr. Lamb accepted and signed the Excluded Driver Endorsement on his Tahoe Policy in February 2020.**

   Undoubtedly, both State Farm and Mr. Lamb, the insured, had or should have had every expectation Lamb III was an excluded driver on the Tahoe Policy long before and on the date of loss given Mr. Lamb's signed acceptance of the Excluded Driver Endorsement and Underwriting's receipt of the same.

   As explained in State Farm's Rule 30(b)(6) deposition, it was State Farm's business practice to list applicable endorsements on the declarations page and had the processing error not occurred, a new declarations page would have been prepared following State Farm's receipt of Excluded Driver Endorsement to the Tahoe Policy:

> We received the signed exclusion form, I believe around March 2020, we should have issued a new declarations page then, reflecting that the exclusion endorsement had been signed effective February 26, 2020.
>
> . . .
>
> [I]n typical processing, we should have produced a new declarations page shortly after receiving the signed exclusion endorsement, which would have been shown on the face of the Dec Page.

(Anderson Dep. Tr. 92:1-5, 141:24-142:2.)

   That said, the processing error and subsequent omission of the Excluded Driver Endorsement on the declarations page does not mean, *ipso facto*, the endorsement signed and

11

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

accepted by State Farm's insured was inapplicable or otherwise not a part of the Tahoe Policy such that it was improper, once the error was discovered, to have the endorsement added to the declarations page retroactively. For example, the Eleventh Circuit held an excluded driver endorsement was a part of the policy even though it was omitted from the list of endorsements on the policy's declaration page because the endorsement on its face indicated it was made a part of the policy—it stated it modified the insurance provided under the policy, identified the named insured, listed the policy number, and indicated the endorsement's effective date—and "[n]othing on the declarations page (or anywhere else in the policy) indicate[d] that an endorsement *must* be listed on the declarations page to modify the policy." *Gotham Ins. Co. v. W. Coast Fire Prot. Corp.*, 752 F. App'x 793, 797 (11th Cir. 2018). *See also*, *Frigo v. Motors Ins. Corp.*, 648 N.E.2d 180, 187 (Ill. Ct. App. 1995) (concluding as "obvious" that an underinsured motorist endorsement was part of the contract of insurance despite its inadvertent omission from the list of endorsements where it was undisputed the parties originally agreed upon a contract containing such coverage).

**D.** **State Farm's addition of three lines of administrative information on an SCDOI approved form does not render the form ineffective, nor does it make the form fraudulent.**

The Excluded Driver Endorsement accepted by Mr. Lamb on his auto policies is Form 6023DC. The South Carolina Department of Insurance ("SCDOI") approved form 6023DC in April 2010. The approved form satisfied the statutory requirements for driver exclusions in South Carolina set forth under S.C. Code Ann. § 38-77-340. After the form was placed in use, State Farm added three lines so the policyholder name, policy number and effective date could be added to the approved form:

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

This allowed State Farm—and its insureds—to match the endorsement to the appropriate policy. The approved contents of the form and substance of the form were not altered in any way. Further, the addition of three lines for administrative information could not warrant disapproval of the form under South Carolina law. Indeed, a form can only be disapproved if it: (1) fails to meet the requirements of applicable law the SCDOI is authorized to enforce; (2) contains provisions which are unfair, deceptive, ambiguous, misleading or unfairly discriminatory; or (3) is solicited by means of advertising, communication or dissemination of information which is deceptive or misleading. S.C. Code Ann. § 38-61-20. Form 6023DC with the addition of lines for administrative information does none of these things.

In any event, the Estate's argument the Excluded Driver Endorsement was not an approved form and therefore was not valid or effective is not evidence of fraud upon the court. At best, it is a defense on the merits of a declaratory judgment State Farm has asked to dismiss. State Farm's positions asserted in pleadings may be accepted or rejected by a court or a finder of fact. Taking a position to which defenses may be asserted is not fraud.

**E.     State Farm's intent was to correct an identified processing error in Underwriting, not to deceive or mislead.**

The Excluded Driver Endorsement was signed by Mr. Lamb on February 26, 2020 and stated it was a part of the Tahoe Policy. While it is not common for State Farm to have to correct a processing error post-loss, it is State Farm's practice to list applicable endorsements on its declarations pages and State Farm took the steps necessary to do so when its processing omission was discovered, which regrettably occurred after the accident.

The Estate inquired of State Farm during its Rule 30(b)(6) deposition whether the Third Dec Page was created to defraud the court:

> **Q.     Did State Farm create this document to file with the Federal Court?**
>
> A.     No, . . . they produced the Dec Page to appropriately add the exclusion to the declarations page because we recognized it was on file and signed at a prior date.
>
> **Q.     So after the collision took place on June 12th, 2021, State Farm created a different declarations page?**
>
> A.     We created a declarations page to correct the error.

(Anderson Dep. Tr. 88:5-16.) The error was the processing error—the failure to make a data entry that would have included the endorsement, which was on file, appear on the declarations page. This was discussed in the Rule 30(b)(6) deposition when the Estate questioned State Farm about the Second Dec Page, which was prepared after State Farm's receipt of the Excluded Driver Endorsement, and why it did not list the applicable endorsement:

> **Q.     And typically, you would see [the excluded driver] on this [second] declarations page . . . if the form 6023DC was in effect concerning a particular driver?**
>
> A.     Correct.
>
> **Q.     Do you know why, on this declarations page, the form 6023DC or any form 6023DC was not listed?**
>
> A.     It was a processing error.
>
> **Q.     Okay.**
>
> A.     We did have the signed form on file at this point in time.
>
> **Q.     When you say processing error, what do you mean by that?**
>
> A.     We just failed to make a[n] entry that would have that endorsement appear on the declarations page although it was – the signed form was on file.

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

> Q.    What do you mean a processing error?
>
> A.    A data entry error.

(Anderson Dep. Tr. 81:14-82:6.) In sum, the Certified Policy Record attached to the DJA reflects State Farm's correction of a prior processing error promptly after the error was discovered. It does not reflect an attempt to fabricate evidence or commit fraud on the Court. After all, the insured Mr. Lamb knew he signed the Excluded Driver Endorsement to the Tahoe Policy.

## II.    The Estate's Motion for Sanctions Should be Denied on the Merits.

Even if the Estate's claims of ill-intentioned misconduct are accepted as true, those claims are insufficient to warrant sanctions under the three-legged stool of authority cited by the Estate— Rule 37; 28 U.S.C. § 1927; and the Court's inherent power. As explained more fully below, Rule 37 is inapplicable because no discovery rule or order has been violated; section 1927 is inapplicable because there is no allegation, much less evidence, State Farm's counsel acted in bad faith and vexatiously multiplied litigation; and the Court's inherent power is inapplicable because the administrative mistakes and the timing of State Farm's correction of those administrative mistakes were not fraudulent, and State Farm's allegations in the DJA and attachment of a certified copy of the Tahoe Policy to the DJA do not rise to the necessary level of "fraud on the court" to justify invocation of that power.

### A.    Rule 37 is inapplicable and cannot support an award of sanctions.

At the outset, the conduct alleged by the Estate is not regulated by Rule 37, "[t]he purpose of [which] is to allow the district courts to *punish deliberate noncompliance* with the federal rules of *discovery* and to deter such conduct in the future." *Zornes v. Specialty Indus., Inc.,* No. 97– 2337, 1998 WL 886997, at *9 (4th Cir. Dec.21, 1998) (emphasis added). "The requirement of deliberate noncompliance is especially critical when [the movant,] seeks attorney's fees

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

under Rule 37, as '[t]he narrow exceptions to the American Rule [that each party bears its own attorney's fees] effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders." *Melton ex rel. Dutton v. Carolina Power & Light Co.*, No. 4:11-CV-00270-RBH, 2012 WL 4322520, at *3 (D.S.C. Sept. 19, 2012) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 47 (1991)). Furthermore, Rule 37 explicitly requires the movant certify it has in good faith conferred or attempted to confer with the noncompliant party to secure compliance without court action. Fed. R. Civ. P. 37(a)(2)(A), (B). In fact, a failure to confer may obviate paying attorneys' fees under the Rule. Fed. R. Civ. P. 37(a)(4)(A).[5]

None of the discovery abuses within the purview of Rule 37—*e.g.*, failure to respond to discovery or make required disclosures, failure to comply with court orders, failure to appear for depositions—are alleged to be applicable in the Estate's motion. The Estate does not even attempt to explain how State Farm's alleged conduct in discovery runs afoul of Rule 37. The only reference to discovery in the Estate's seventeen-page motion is its claim a "Rumba System audit trail" should be produced because State Farm's witness reviewed it before her deposition. If the Motion stems from this claim, the proper procedure would have been to (1) consult with State Farm concerning this issue; (2) if necessary, after consultation, file a motion to compel explaining the relevance and entitlement to the materials; (3) and if a discovery order of the Court were violated, seek sanctions under Rule 37(b). The Estate skipped over first and second base entirely, which is not allowed by Rule 37.

---

[5] Actually, an unsuccessful motion under Rule 37 "shall . . . require the moving party or the attorney filing the motion or both of them to pay to the party . . . . who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees" under some circumstances. Fed. R. Civ. P. 37(a)(4)(B).

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

In short, the Estate has not filed a motion to compel, alleged violation of a Court order, challenged State Farm's initial disclosures, or demonstrated any of the other criteria that warrant relief under Rule 37. *See Melendez-Garcia v. Sanchez*, 629 F.3d 25, 33 (1st Cir. 2010) ("The plain language of Rule 37(b) provides that before a court can impose sanctions, the offending party must 'fail[ ] to obey an order to provide or permit discovery.'"); *Brandt v. Vulcan, Inc.,* 30 F.3d 752, 756 (7th Cir. 1994) ("The rule's plain language limits its applicability to situations where a court order has been violated. Moreover, the caselaw reveals that Rule 37(b)(2) has been invoked only against parties who have disobeyed a discovery ruling of some sort."). The Court, therefore, should deny the Estate's Motion.

**B.      The Motion is silent as to how 28 U.S.C. § 1927 applies and the record does not reflect conduct within the purview of the penal statute.**

In support of its Motion, the Estate cites twice (though never discusses) 28 U.S.C. § 1927, a penal statute that should be strictly construed. *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 718 (8th Cir. 1999) ("Because section 1927 is penal in nature, it should be strictly construed so that it does not dampen the legitimate zeal of an attorney in representing his client.") (internal quotations omitted). This section, titled "Counsel's liability for excessive costs," authorizes a court to make a party's attorney "satisfy personally" excess costs in a case caused by the attorney's unreasonable and vexatious multiplication of the proceedings:

> Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Not only must the proceedings be multiplied by the attorney's conduct, "Section 1927 requires a finding of counsel's bad faith as a precondition to the imposition of fees." *Thomas v. Ford Motor Co.*, 244 F. App'x 535, 539 (4th Cir. 2007).

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

The Estate has failed to meet its heavy burden under section 1927, which would include presenting compelling evidence of bad faith on the part of State Farm's counsel. *Cont'l Cas. Co. v. McCabe Trotter & Beverly, P.C.*, No. 2:21-CV-01849-DCN, 2021 WL 3811383, at *5 (D.S.C. Aug. 26, 2021) (denying the Estate's counsel's request for sanctions under section 1927 in another case, finding no bad faith or vexatious litigation conduct and noting "the extraordinary circumstances necessary to justify a shift in attorneys' fees are not present"); *Durham Sch. Servs., L.P. v. Gen. Drivers*, No. 2:14-CV-1241-DCN, 2016 WL 1095498, at *3 (D.S.C. Mar. 21, 2016) ("It is clear that in the Fourth Circuit, '[b]ad faith on the part of the attorney is a precondition to imposing fees under § 1927.'").

The Estate made no effort in its Motion to explain what actions by State Farm's counsel multiplied the proceedings in this DJA, nor could it because, as soon as State Farm made the decision to withdraw its reservation of rights letters, it immediately moved to dismiss and end the DJA, which the Estate opposed. Similarly, the Estate has not asserted bad faith on the part of counsel. Indeed, the Estate never mentions State Farm's counsel in the Motion. Moreover, the Motion cites no case interpreting section 1927, makes no attempt to apply the statute to the facts of this case, and never uses or discusses any of the key words from the statute—multiply, proceedings, unreasonably, vexatiously, or incurred.[6]

Perfunctory and undeveloped arguments such as the Estate's are waived, *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 727 (4th Cir. 2021),[7] and, in any event, there is no basis in

---

[6] Vexatiously does appear in a 140-word block quote at pages 9 through 10 of the Estate's motion concerning the Court's inherent powers, but not in relation to 28 U.S.C. § 1927.

[7] "The court has no obligation to fashion arguments for a party or to further develop a party's argument when it is wholly conclusory, unexplained, and unadorned with citation to legal authority." *Clayton v. Nationwide Mut. Ins. Co.*, 260 F. Supp. 3d 514, 521 (D.S.C. 2017) (citation omitted). "As a general rule, parties may not outsource their legal research to the court or otherwise foist upon it the necessary legwork to flesh out a legal claim or defense because, by permitting a

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

the record to satisfy 28 U.S.C. § 1927. The Estate's failure to even *allege* unreasonable and vexatious multiplication of the DJA by conduct of counsel or bad faith on the part of counsel demonstrates there was none. For these reasons, the Court should deny the Estate's Motion.

### C.    No "fraud on the Court" has occurred to justify resorting to the Court's inherent powers.

The Estate's last argument is the Court's inherent powers combined with alleged "fraud upon the Court" justifies its request for sanctions and recovery of additional monies. This argument fails because the allegations in and the attachments to the DJA were not fraudulent, much less the most egregious type of fraud necessarily contemplated by the relief sought by the Estate.

The Estate relies upon *Chambers v. NASCO, Inc.*, in which the United States Supreme Court was confronted with a litigant who sought to subvert the judicial process through a pattern of extreme conduct—creating fraudulent transfers to deprive the court of jurisdiction, intentionally withholding information from the court, ignoring warnings from the district judge of unethical conduct, earning contempt sanctions, taking unnecessary discovery, filing meritless appeals and trial court motions and the like—through multiple attorneys and over a long period of time. 501 U.S. 32 (1991). The Supreme Court held the conduct was so egregious as to be beyond the scope of numerous statutes and rules of civil procedure that provide courts with powers to issue sanctions in a variety of circumstances. *Id.* In that extreme and unusual scenario, the Supreme Court held it proper for the judiciary's "inherent powers" to be used to sanction conduct beyond the scope of rules or statutes. *Id.* However, the Court warned such inherent powers "ought be exercised with great caution" and "must be exercised with restraint and discretion." *Id.* at 44 (quoting *Ex parte Burr,* 9 Wheat. 529, 531 (1824)).

---

party to do so, the court edges into the impermissible advocatory role of argument-creator." *Id.* (citation omitted).

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Accordingly, courts have used their inherent powers to sanction fraud upon the court only in extreme circumstances, and not under facts such as those alleged by the Estate. In *First Reliance Bank v. Romig*, this Court rejected a defendant's motion for sanctions under the Court's inherent power where incorrect policy provisions were referred to in a complaint and amended complaint, exhibits to the amended complaint, an expert affidavit attached to the complaint, and in a mediation presentation. The Court held the defendant had not met the heavy burden of establishing the serious allegation of fraud on the court, which must involve corruption of the judicial process itself. It noted the accusation of fraud upon the court should neither be lightly leveled by a party nor lightly concluded by the court, and, not being convinced the plaintiff or its counsel was guilty of anything more than an unfortunate mistake with respect to the misidentification of an insurance policy, it denied the request for sanctions:

> While the Court cannot be certain why the plaintiff submitted the wrong policy to its expert, that it was the product of innocent error seems possible if not likely. Ironic as this observation may be in the context of a legal malpractice action, lawyers do make honest mistakes, and not every one of them warrants a sanction. The Court understands that this litigation has the potential to raise strong feelings on both sides, but it would urge the parties to give one another the benefit of the doubt where possible. The defendant has not convinced the Court that the plaintiff is guilty of anything more than an unfortunate mistake, and, accordingly, the [request for sanctions] is denied.

*First Reliance Bank v. Romig,* No. 4:14-CV-00084-BHH, 2014 WL 5644602, at *9 (D.S.C. Nov. 4, 2014).

Similarly, in *Howes v. Wells Fargo Bank, N.A.*, a district court affirmed a bankruptcy judge's refusal to award a plaintiff sanctions for the defendants' alleged fraud upon the court (and was affirmed by the Fourth Circuit on this point) where the defendants "conceded that their own carelessness has contributed to confusion in this case" and mistakes in court filings were found by

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

the court to be "due to 'sloppiness' and 'bumbling' by" the defendants. No. CV ELH-14-2814, 2015 WL 5836924, at *28–29 (D. Md. Sept. 30, 2015), *aff'd in part*, *remanded in part*, 676 F. App'x 207 (4th Cir. 2017). Despite the mistakes and the defendants' concessions, the district court found the complained of conduct fell far below the standard for fraud on the court:

> Notwithstanding such missteps or errors, plaintiffs have not alleged facts that amount to fraud upon the court. To be sure, a precise definition of "fraud on the court" is "elusive." It is a "nebulous concept" that is "construed very narrowly...." Clearly, it "is not your 'garden variety fraud.'" As the Fourth Circuit has explained, "not only must fraud on the court involve an intentional plot to deceive the judiciary, but it must also touch on the public interest in a way that fraud between individual parties generally does not." Moreover, "this doctrine should be invoked only when parties attempt "the more egregious forms of subversion of the legal process ..., those that we cannot necessarily expect to be exposed by the normal adversary process.'" These "egregious cases" include "bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged."

*Id*.

State Farm's filing of the DJA, the allegations made therein, and the attachment of the certified policy record do not constitute fraud of any kind, much less "the most egregious forms of subversion of the legal process" and "an intentional plot to deceive the judiciary." Instead, the allegations contained in the DJA are true. At best, State Farm should have included in its DJA allegations setting forth the circumstances surrounding State Farm's receipt and processing of the Excluded Driver Endorsement and the post-loss preparation of the Third Dec Page. The absence of such allegations from the DJA was, if anything, the product of innocent error as the Court found in *Romig* or is otherwise akin to the "missteps or errors" the *Howes* Court found.

It is undisputed Mr. Lamb executed the Excluded Driver Endorsement to the Tahoe Policy and the endorsement should have been identified on the Tahoe Policy's declaration pages long before the date of loss. Presumably in concession thereof, the Estate's Motion points out "remedies

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

like mutual mistake, reformation, etc. were available to plead and prove." (Mot. at 16.) Why would anyone give up these remedies to engage in fraud upon the court? Under any stretch of the imagination, they would not. Moreover, State Farm made no attempt to hide its actions. By way of example, it used the "B" designation at the end of the Tahoe Policy number on the Third Dec Page, while all post-loss correspondence issued before the Third Dec Page's July 14, 2021 preparation reflected the Tahoe Policy number with the "A" appended to the end of it. The conduct the Estate complains of simply does not fit the circumstances present in *Chambers* or its progeny and does not warrant imposition of the Court's inherent powers to issue sanctions.

**D.    Under the circumstances, an award of sanctions is unnecessary to advance goals of compensating for wrongfully incurred costs (if any) or punishing State Farm should the Court find sanctionable conduct.**

Finally, should the Court find any sanctionable conduct, any goal of compensating the Estate or its counsel or punishing State Farm for such conduct has already been accomplished through State Farm's own atonement. For example, an award of attorneys' fees under section 1927 is "compensatory in nature" and the court must show a causal link between the wrongful conduct and the costs wrongfully incurred:

> An award of costs, expenses, and attorney's fees pursuant to § 1927 is compensatory in nature—not punitive. It requires the court to show a causal link between wrongful conduct and an unreasonable and vexatious multiplication of proceedings, then to connect the costs wrongfully incurred as a result of the sanctioned attorney's conduct to the amount awarded to the moving party.

*Six v. Generations Fed. Credit Union*, 891 F.3d 508, 520 (4th Cir. 2018). But here, the "wrongful conduct" of which the Estate complains resulted in recovery of $9,975,000.00 *more* than the $25,000 per-person bodily injury liability limit being litigated in the DJA. In other words, the Estate did not lose money because of the complained of conduct, it recovered significantly more

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

than the Tahoe Policy would have allowed even if the excluded driver endorsement were ultimately found ineffective or inapplicable.

Likewise, the Estate cites a Washington state court decision (Mot. at 4), which states "The purposes of sanctions orders are to deter, to punish, to compensate and to educate." *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1084 (Wash. 1993). State Farm's payment to the Estate of $10,000,000 on a $25,000/$50,000 minimum liability limits policy has accomplished all four purposes, rendering sanctions unnecessary.

**III.     The Motion is Procedurally Defective and Should be Denied.**

Local Civil Rule 7.02 (D.S.C.) requires "all motions," absent an enumerated exemption not applicable here, to "contain an affirmation by the movant's counsel that prior to filing the motion he ... conferred or attempted to confer with opposing counsel and attempted in good faith to resolve the matter contained in the motion." A movant's failure to comply with this Local Civil Rule renders its motion procedurally defective and warrants denial of the motion. *See, e.g.*, *Bishop of Charleston v. Adams*, No. 2:21-CV-1093-BHH, 2022 WL 407405, at *6 (D.S.C. Feb. 10, 2022) ("Plaintiffs failed to confer with the State prior to filing their Motion, warranting denial."); *Williams v. Clement*, No. 0:18-CV-00437-JMC, 2019 WL 1146682, at *6 (D.S.C. Mar. 13, 2019) ("A party's failure to comply with the Local Civil Rules is sufficient to deny his or her motion.").

The Estate's Motion contains no such affirmation. Instead, the Motion states the Estate's counsel "told State Farm's counsel that a motion seeking sanctions for its conduct would be filed." The Estate did not confer with State Farm or make any attempt to resolve the matters complained of by the Estate. Quite the contrary, the Estate has opposed State Farm's efforts to end the litigation. As a result, the Motion for Sanctions is procedurally defective and should be denied.

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**CONCLUSION**

The Estate's Motion is based on faulty assumptions of fact and intent and without legal support. It is substantively defective, it is procedurally defective, and it should be denied.

WHELAN MELLEN & NORRIS, LLC

By: /s/ M. KATHLEEN McTIGHE MELLEN
    Robert W. Whelan
    Federal Bar No. 9242
    E-Mail: robbie@whelanmellen.com
    Charles R. Norris
    Federal Bar No. 2549
    E-Mail: charles@whelanmellen.com
    M. Kathleen McTighe Mellen
    Federal Bar No. 11652
    E-Mail: katie@whelanmellen.com
    Post Office Box 939
    Charleston, SC 29402
    (843) 998-7099

GALLIVAN, WHITE & BOYD, P.A.

By: /s/ JENNIFER E. JOHNSEN
    Jennifer E. Johnsen
    Federal Bar No. 5427
    E-Mail: jjohnsen@gwblawfirm.com
    Post Office Box 10589 (29603)
    55 Beattie Place, Suite 1200
    Greenville, SC 29601
    (864) 271-9580

*Attorneys for State Farm Mutual Automobile Insurance Company*

May 24, 2022

Charleston, South Carolina

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# Exhibit 1

*Declaration of Shay Anderson*

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| State Farm Mutual Automobile Insurance Company, | ) ) ) | C.A. No.: 2:21-CV-02623-MBS |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| Melvin O. Lamb III, Melvin O. Lamb, Jr., The Estate of James K. Workman, Michael H. Moore, Deborah D. Plott, Angela R. Edwards, Katherine M. Vonesh, Mathis S. Billman, and Luke E. Billman, | ) ) ) ) ) ) ) | **DECLARATION OF SHAY ANDERSON** |
| Defendants. | ) ) | |

I, Shay Anderson, declare and state as follows:

1.      I am over the age of 21 and I am of sound mind.

2.      I am employed by State Farm Mutual Automobile Insurance Company ("State Farm") as a Team Manager in State Farm's Underwriting Department ("Underwriting").

3.      As part of my job responsibilities, I am knowledgeable of and familiar with Underwriting's processes and procedures for issuing and cancelling automobile insurance contracts in South Carolina, preparing declarations pages, and the performance and handling of underwriting policy transactions. I am also knowledgeable of and familiar with Underwriting's documentation of policy transactions and its record keeping.

4.      I have reviewed and I am familiar with underwriting records relative to insurance policies issued by State Farm to Melvin O. Lamb, Jr. ("Mr. Lamb") and my statements in this declaration are based on my review and findings.

5.      In February 2020, Mr. Lamb was the named insured on more than one auto policy issued by State Farm. Since at least 2017, Mr. Lamb's son, Melvin O. Lamb, III, was an excluded driver on all of Mr. Lamb's in-force auto policies, meaning Mr. Lamb accepted and executed an endorsement excluding all coverage for injury, loss, or damage in the event his son was operating a vehicle. Mr. Lamb accepted and executed those excluded driver endorsements to his auto policies on October 2, 2017, October 27, 2017, November 6, 2017, July 10, 2019, September 7, 2018, January 10, 2020, and February 26, 2020.

6.      On February 7, 2020, Mr. Lamb applied for an auto policy insuring a 2004 Chevrolet Tahoe. Underwriting received the application on February 13, 2020.

Declaration of Shay Anderson, Page **1** of **2**

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

7.      Issuance of a new policy generates a declarations page, and certain transactions on the policy may generate new declarations pages thereafter.

8.      On or about February 21, 2020, policy number 632 3189-B07-40 (the "Tahoe Policy") was issued by State Farm with an effective date of February 7, 2020 and a declarations page was prepared (the "First Dec Page").

9.      At the time Mr. Lamb applied for the Tahoe Policy and at the time of the Tahoe Policy's issuance, Lamb III was not a rated driver for Mr. Lamb's Tahoe Policy or any of his other household auto policies.

10.      At the time Mr. Lamb applied for the Tahoe Policy and at the time of the Tahoe Policy's issuance, Lamb III was an excluded driver on each of the other household policies pursuant to excluded driver endorsements signed and accepted by Mr. Lamb.

11.      On March 10, 2020, an excluded driver endorsement to the Tahoe Policy, signed by Mr. Lamb on February 26, 2020, was sent from the Agent's office to Underwriting, but the data entry necessary for that endorsement to appear on a declarations page was not completed by Underwriting.

12.      It appears from Underwriting's records that this processing omission with respect to the excluded driver endorsement was discovered by Underwriting on or around July 9, 2021. A service request was thereafter initiated for the complex unit to complete the previously overlooked entry of the excluded driver endorsement on the Tahoe Policy.

13.      On July 26, 2021, Mr. Lamb requested cancellation of the Tahoe Policy.

14.      Underwriting received the cancellation request on July 27, 2021.

15.      Underwriting processed the cancellation on August 2, 2021, with the effective date of cancellation being June 13, 2021.

16.      On August 5, 2021, a few days after the cancellation request had been received and processed, Underwriting prepared a certified copy of the Tahoe Policy for a June 12, 2021 date of loss.

I, Shay Anderson, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on: 05/24/2022

Shay Anderson
Underwriting Team Manager

Declaration of Shay Anderson, Page **2** of **2**

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# Exhibit 2

*Transcript of Deposition of Shay Anderson on behalf of
State Farm Mutual Automobile Insurance Company*

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) C.A. No. 2:21-cv-2623-MBS |
| | ) |
| Melvin O. Lamb III, Melvin O. Lamb, Jr., The Estate of James K. Workman, Michael H. Moore, Deborah D. Plott, Angela R. Edwards, Constance J. Molinaro, Mario F. Molinaro, Jonathan D. Keller, Katherine M. Vonesh, Mathis S. Billman, and Luke E. Billman, | ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

VIDEOTAPED 30(b)(6) DEPOSITION OF SHAY ANDERSON ON BEHALF

OF STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

DECEMBER 14, 2021

PURSUANT to Notice and/or agreement between the

parties, the videotaped 30(b)(6) deposition of SHAY

ANDERSON, called by the Defendants, was taken commencing at

the hour of 9:32 A.M. on Tuesday, December 14, 2021, at

Gallivan, White & Boyd, P.A., 55 Beattie Place, Suite

1200, Greenville, South Carolina.

Barbara M. McCurley, Reporter

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 66

1    (Defendant's Exhibit number 6 marked for

2    identification.)

3    Q.    All right.  I'm going to hand you what's been

4          marked as Defense Exhibit number 6.  I don't

5          remember if I said Plaintiff's again, so Defense

6          Exhibit number 6.  Have you -- you've seen that

7          document before, right?

8    A.    I have.

9    Q.    All right, and this is the Declarations Page for

10         the Tahoe at issue but for a different time period,

11         right?

12   A.    Yes.

13   Q.    At the top right of Defendant Exhibit number 6, it

14         says, "Declarations Page", right?

15   A.    Yes.

16   Q.    And below that, it has a policy number 632 3189-B -

17         - is that an O-7 or zero-7 -- do you know?

18   A.    Zero - seven.

19   Q.    Thank you.  All right, dash 40?

20   A.    Yes.

21   Q.    All right.  And 632 3189-B07-40, that policy number

22         or ones like it are the way State Farm refers to

23         various policies it issues to its insured?

24   A.    Auto policies, yes.

25   Q.    Oh, auto policies, thank you.  All right, so as to

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 67

1       auto policies, State Farm has unique numbers or

2       letters that correspond to the automobile polices

3       it issues to its insureds?

4   A.  Yes.

5   Q.  And then below that, State Farm puts on this

6       Declarations Page, the period of time that the

7       policy would be good for, assuming the insured

8       makes their payments?

9   A.  Correct.

10  Q.  And if you look sort of, to the left, it describes

11      the car at issue in this case, the Tahoe.  Is that

12      where it says, "Tahoe"?  Do you see that?

13  A.  Yes.

14  Q.  And it's got a vehicle ID number ending in 5227?

15  A.  Yes.

16  Q.  Where it says class, it has a series of letters and

17      numbers, 603H501000.  Do you know what that number

18      means or those -- that ...

19  A.  It stands for classification.  It relates to the

20      driver that's rated, different discounts on the

21      policy ...

22  Q.  Okay.

23  A.  ... or surcharges.

24  Q.  All right.  At the bottom -- well, I say the

25      bottom, the middle, it says the total premium for

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 70

1        Endorsements" -- do you see where I am?

2    A.   Yes.

3    Q.   **There's no reference to 6023DC Driver Exclusion,**

4         **right?**

5    A.   Correct.  It had not been signed at the time that

6         the Declarations Page was issued.

7    Q.   **Okay.  And it also does not list Melvin Lamb, III**

8         **as an excluded driver underneath there, right?**

9    A.   Right, because the exclusion had not been signed.

10   Q.   **And typically, had the 6023DC Driver Exclusion**

11        **endorsement applied, you would expect it to appear**

12        **underneath, right there?**

13        MS.  JOHNSEN: Object to the form.

14   A.   So, this is the Declarations Page issued from the

15        inception of the application.  If the driver's

16        exclusion is not indicated on the application or

17        submitted with the application, we would issue the

18        Declaration Page without it until the exclusion is

19        received.

20   Q.   **Okay.  So when the exclusion is received, you would**

21        **expect to have the reference made to the 6023DC**

22        **endorsement at that location, right?**

23   A.   Yes.

24   Q.   **All right.  That's all I'm asking.**

25   A.   Okay.

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 73

1    Q.    Do you know the circumstances of this document

2          being created?

3    A.    What do you mean circumstances?

4    Q.    Why it was created and ...

5    A.    It was created because we had received an added car

6          application for the Tahoe, and Melvin Lamb, III was

7          excluded on other household policies, therefore we

8          needed a new signed exclusion for this new

9          application or this new policy for the Tahoe.

10   Q.    All right.  And do you know why Defense Exhibit

11         number 6 would show an effective date before

12         Defense Exhibit -- the last page of Defense Exhibit

13         number 2 was signed or prepared?

14   A.    Well, the application was effective February 7, so

15         the Declarations Page matches up with that.

16   Q.    When was the policy effective?

17   A.    February 7th.

18   Q.    Okay.  So, the -- is it always that the

19         application's date and the effective date are the

20         same or no?

21   A.    The -- the Declarations Page produced from the

22         original application, yes, the effective date would

23         be the same.

24   Q.    All right, so -- well, I guess what I'm trying to

25         understand is once -- why the Declarations Page

**Shay Anderson**
**December 14, 2021**

Page 74

1          would be issued before having the driver exclusion

2          form signed.

3     A.   We have a process to follow up for the signed form,

4          if it's not received with the application.

5     Q.   Okay.  Help -- what is that process, typically?

6     A.   Again, we would issue the Declarations Page without

7          the endorsement.  We would ask the agent to submit

8          the signed endorsement typically, within a 21-day

9          time frame.  And then, if it's not received, we

10         would consider if, you know, additional action

11         needed to be taken.

12    Q.   All right, so the agent -- there would be some kind

13         of communication between State Farm and the agent

14         to get the form signed?

15    A.   Yes.

16    Q.   All right.  I haven't seen that in these documents

17         produced.  Is -- would you think there would be

18         such a thing?  Is that an email or ...

19    A.   We don't retain that.

20    Q.   Okay.  Do you know what communication like that

21         typically says?

22    A.   That we need a signed exclusion and please send it.

23    Q.   Or bad things -- or the -- well, not bad things --

24         or the policy is at risk of being cancelled?

25    A.   I don't know if the memo says that, but that is ...

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

2:21-cv-02623-MBS    Date Filed 05/24/22    Entry Number 81-2    Page 8 of 28
2:25-cv-00035-RMG    Date Filed 01/02/25    Entry Number 1-1    Page 715 of 1295

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

```
                                                    Page  76
  1            created and the time State Farm would contact an

  2            agent if follow-up like that is needed --

  3            typically, about how much time?

  4    A.      Typically, just a few days.

  5    Q.      Okay.  I thought you said something about 21 days

  6            earlier, I thought, but maybe I misunderstood the

  7            context of that.

  8    A.      So once we send a note to the agent reminding them

  9            that we need the driver exclusion, we would look

 10            for that to come in within a 21-day period.

 11    Q.      Okay.  So it's not that it necessarily has to be

 12            signed within -- well, I guess -- okay.  Thank you.

 13            Does each time State Farm issue a new Declaration

 14            Page, is the agent supposed to get the driver

 15            exclusion form signed?

 16    A.      No.

 17    Q.      Do you know if State Farm provided any premium

 18            discount for the exclusion in this matter -- for

 19            this Dec Page number 6?

 20    A.      We did not -- we did not rate for Melvin Lamb, III,

 21            so the premium would have been more had we rated

 22            for Melvin Lamb, III.

 23    Q.      How can you tell whether or not Melvin Lamb, III

 24            was rated?

 25    A.      The classification tells me that he was not rated.
```

**Shay Anderson**
**December 14, 2021**

Page 80

```
 1    Q.   All right.  Well, this is a Declarations Page for
 2         the Tahoe, right?
 3    A.   It is.
 4    Q.   And it's got a policy period of August 23, 2020 to
 5         February 7, 2021, right?
 6    A.   Yes.
 7    Q.   And if my math was right, the August 23rd date is
 8         about 16 days after the August 7th expiration date
 9         listed on the prior Dec Page?
10    A.   Yes.
11    Q.   Does that suggest to you that the prior policy was
12         cancelled and a new one came into being?
13         MS.  JOHNSEN: Object to the form.
14    A.   If -- no, I don't think the policy cancelled.  If I
15         recall, we ended up producing this new Declarations
16         Page and billing again for the premium owed, so I
17         don't think the policy ever lapsed.  I can't
18         remember if there was a payment in this time frame
19         or not.
20    Q.   All right.  Well, the -- there's a new policy
21         number, right -- at the top right?
22    A.   Yes.
23    Q.   And there's a different premium amount shown, right
24         -- 966.12?
25    A.   Yes.
```

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 81

```
 1   Q.   And that's about three times the premium amount
 2        shown on the prior Declaration Page?
 3   A.   Yes.
 4   Q.   And this Declarations Page also, at the bottom
 5        left, where it says, "Exceptions, Policy Booklet &
 6        Endorsements" -- do you see where I am at the
 7        bottom left?
 8   A.   Yes.
 9   Q.   It does not show or reference form 6023DC, correct?
10   A.   Correct.
11   Q.   And it does not list Melvin Lamb, III as an
12        excluded driver, right?
13   A.   Correct.
14   Q.   And typically, you would see that on a Declarations
15        Page like that if the form 6023DC was in effect
16        concerning a particular driver?
17        MS.  JOHNSEN: Object to the form.
18   A.   Correct.
19   Q.   Do you know why, on this Declarations Page, the
20        form 6023DC or any form 6023DC was not listed?
21   A.   It was a processing error.
22   Q.   Okay.
23   A.   We did have the signed form on file at this point
24        in time.
25   Q.   When you say processing error, what do you mean by
```

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 82

```
 1        that?

 2   A.   We just failed to make a entry that would have that

 3        endorsement appear on the Declarations Page,

 4        although it was -- the signed form was on file.

 5   Q.   What do you mean a processing error?

 6   A.   A data entry error.

 7   Q.   That data entry error was the failure of State Farm

 8        to list as an applicable endorsement, 6023DC?

 9   A.   Yes.

10   Q.   And that error was also the failure to list Melvin

11        Lamb, III as an excluded driver on this form?

12   A.   Yes.

13   Q.   Who was responsible for that error?

14   A.   I don't know.

15   Q.   How long has State Farm known about that error?

16   A.   I don't know.

17   Q.   What steps did it take -- State Farm take to

18        correct that error?

19   A.   I believe there's a subsequent Declarations Page

20        produced that does reflect the endorsement.

21   Q.   Okay.  And if we look at what's been marked as

22        Defense Exhibit number 8 ...

23   A.   Yes.

24   Q.   ... I think it's the one right in front of you.

25   A.   Yes.
```

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 84

```
 1        for the August 7th, 2020 to February 7th, 2021.  It
 2        states that there in "Important Messages".
 3        Roughly, at this time, there was also a State Farm
 4        dividend being calculated and with the timing of
 5        that, and the balance due, and the pending
 6        cancellation, they just produced a -- or a
 7        Declarations Page was produced to include the
 8        renewal and the past premium owed.  It was a timing
 9        issue.
10   Q.   Why was this document -- why was the letter "A"
11        added on to the end of this?  And I'm sorry.  Let
12        me be clear.  Defense Exhibit number 8, under where
13        it says, "Policy Number" -- to the right, where it
14        says, "Policy Number", it says, "632 3189-B07-40A",
15        which is different than the policy number
16        identified on the prior Dec Page, right?
17   A.   So the prior Dec Page, Exhibit 6, is the Dec Page -
18        - the first Dec Page issued under the policy
19        number.  Exhibit 8, with the "A" at the end of the
20        policy number, represents the second Declarations
21        Page, so each subsequent one would have "A", "B",
22        "C", "D".
23   Q.   Okay.  And at the bottom, under "Important
24        Messages", it says, "Replaced policy number
25        6323189-40".  Do you see that?
```

**Shay Anderson**
**December 14, 2021**

Page 87

```
 1   A.   Yes.

 2   Q.   Do you see where I am?

 3   A.   Uh-huh (Affirmative answer).

 4   Q.   All right.  Yes?  You said, uh-huh.

 5   A.   Yes.

 6   Q.   The -- is this the form that you were talking about

 7        a moment ago?

 8   A.   It is, yes.

 9   Q.   All right, so when we look at Exhibit A to Defense

10        Exhibit 2, which is like around page 7, I think, of

11        this document, it shows at the top right, a policy

12        number of "632 3189-B07-40B", correct?

13   A.   Yes.

14   Q.   Do you see the policy period June 10th, 2021 to

15        February 7th, 2022?

16   A.   I do.

17   Q.   This document, at the bottom, when we look at it,

18        do you see where it says, "Prepared July 14, 2021"?

19   A.   Yes.

20   Q.   This document was created by State Farm over a

21        month after the collision, right?

22   A.   Yes.

23   Q.   Is it the typical practice of State Farm to create

24        new Declaration Pages following a collision?

25   A.   It is not, no.
```

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 88

1   Q.   On this Declarations Page, at the bottom left, it

2        shows, "6023DC Driver Exclusion-Melvin O Lamb,

3        III".  Do you see that?

4   A.   I do.

5   Q.   Did State Farm create this document to file with

6        the Federal Court?

7        MS.  JOHNSEN: Object to the form.

8   A.   No, I -- they produced the Dec Page to

9        appropriately add the exclusion to the Declarations

10       Page because we recognized it was on file and

11       signed at a prior date.

12  Q.   So after the collision took place on June 12th,

13       2021, State Farm created a different Declarations

14       Page?

15  A.   We created a Declarations Page to correct the

16       error.

17  Q.   After the collision took place June 12th, 2021,

18       State Farm created a different Declarations Page?

19  A.   Yes.

20  Q.   That different Declarations Page has a different

21       policy number?

22  A.   The last digit of the policy number is different,

23       yes.

24  Q.   And State Farm changed the policy period to be

25       retroactive two days before the collision, right?

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 90

 1      this collision, did not list Melvin Lamb, III as an

 2      excluded driver or identify 6023DC as an applicable

 3      endorsement, right?

 4   A. Correct.

 5   Q. **Do you know why State Farm decided to change the**

 6      **date on Defense Exhibit number 2, the Declarations**

 7      **Page that's attached as Exhibit A to two days**

 8      **before the collision and not go all the way back to**

 9      **August 23rd, 2020 or February 7th, 2021?**

10   A. It was -- that was a processing error, as well.

11      They should have gone back to the date the

12      exclusion was signed, which was February 26, 2020.

13   Q. **What do you mean, that was a processing error as**

14      **well?**

15   A. Because the exclusion had been -- was on file, had

16      been signed as of 2/26/2020.  Once we discovered

17      that it had not -- the processing error had been

18      made to not list that on the Declarations Page, we

19      should have gone back and produced the Declarations

20      Page -- a new Declarations Page, the date the

21      exclusion endorsement was signed rather than using

22      June 10th.

23   Q. **So, what -- I don't understand the error.  Help me**

24      **understand.  What should this -- and I'm looking at**

25      **Defense Exhibit number 2, Exhibit A, Declarations**

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 91

1          Page that has a "B" at the end.

2     A.   Yes.

3     Q.   **What is the error for the policy period?**

4     A.   The policy period should have gone back -- or there

5          may have needed to be multiple new Dec Pages issued

6          that would reflect the endorsement first being

7          signed on February 26, 2020.

8     Q.   **All right, so it sounds like there was even another**

9          **error, which is the failure to issue multiple**

10         **Declaration Pages showing under "Exceptions, Policy**

11         **Booklet & Endorsements", 6023DC Driver Exclusion -**

12         **Melvin O Lamb, III's name, right?**

13    A.   Yes.

14    Q.   **So how many errors were made related to these**

15         **Declaration Pages relating to this Tahoe?**

16    A.   If we're speaking about the driver exclusion

17         endorsement ...

18    Q.   **Yes.**

19    A.   ... two, in my opinion.

20    Q.   **Okay.  Well, I thought you also said that the date**

21         **was wrong.  Well, let's first walk through what the**

22         **two errors you think are.**

23    A.   We should have -- when we received the signed

24         exclusion form, after the first -- it was received

25         after the first Declarations Page was issued,

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 92

```
 1          Exhibit 6.  We received the signed exclusion form,
 2          I believe around March 2020, we should have issued
 3          a new Declarations Page then, reflecting that the
 4          exclusion endorsement had been signed effective
 5          February 26, 2020.
 6    Q.    Okay.
 7    A.    When that was discovered later in roughly, July of
 8          2021, we should have gone back to that date then.
 9    Q.    Why is that?
10    A.    Because we had the signed form on file effective
11          2/26/2020.
12    Q.    But none of the Declarations Pages in existence up
13          to and including the time of the collision on June
14          12th, 2021, concerning the Tahoe showed
15          applicability or the application of form 6023DC
16          Driver Exclusion, right?
17    A.    Correct.
18    Q.    And State Farm defines its policy to include the
19          Declarations Page it creates, to go with the
20          policy, right?
21    A.    Yes.
22    Q.    And the policy up through June 12th, 2021, which
23          would include the Declarations Pages in existence
24          concerning the Tahoe, never showed Melvin O Lamb,
25          III as an excluded driver, correct?
```

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 103

1   Q.   Is it typical for State Farm to create a

2        Declarations Page different than the Declaration

3        Pages in existence at the time of a collision,

4        after the fact?

5   A.   I would not say it's typical.

6   Q.   And why is it not typical?

7   A.   Well, in this case, we're just -- we're correcting

8        an error.  If there's no error, there would be no

9        reason to reproduce the Dec Page.

10  Q.   So this Exhibit A is not typically made in the

11       ordinary course of State Farm's business?

12  A.   Exhibit A -- sorry, I thought you said 8.

13  Q.   No.

14       MS.  JOHNSEN: Object to the form.

15  Q.   Let me try it again.  Plaintiff's Exhibit number 2,

16       Exhibit A, which is the Declarations Page that

17       you've been talking about having multiple errors

18       corrected ...

19  A.   Uh-huh (Affirmative answer).

20  Q.   This document was created on July 14th, 2021,

21       right?

22  A.   Uh-huh (Affirmative answer).

23  Q.   Yes?

24  A.   Yes.

25  Q.   And the manner in which this document was created

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

                                                    Page 133

1        corrections?

2    A.  No. I can say this is a form letter, if you will,

3        and anything to that effect, would not have been

4        part of her response.

5    Q.  **Is this form letter auto-generated based on the**

6        **information in State Farm's system?**

7    A.  It requires some input -- manual input.  It's not

8        auto-generated.

9    Q.  **Well, would it auto-generate the policy number?**

10   A.  I don't know.

11   Q.  **All right, she states in that third paragraph, "It**

12       **is State Farm's business practice to print a new**

13       **Declarations Page only when a policy issuance**

14       **transaction such as a change of coverage occurs".**

15       **Do you see that?**

16   A.  Yes.

17   Q.  **There had been no change of coverage, right?**

18       **MS.  JOHNSEN:** Object to the form.

19   A.  For which Declarations Page?

20   Q.  **When State Farm printed, on July 14th, 2021, what's**

21       **been attached as Exhibit A to the Complaint filed**

22       **in this matter, which is Defense Exhibit 2 and it's**

23       **Exhibit A to that, there had been no change of**

24       **coverage, right?**

25   A.  That's an example.

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 134

```
 1   Q.   Okay.

 2   A.   So, such as coverage change, that's not the only

 3        ...

 4   Q.   Okay.

 5   A.   ... reason a new Declarations Page would be

 6        produced.

 7   Q.   All right, but is it true that there had been no

 8        change in coverage?

 9   A.   Not in coverages ...

10   Q.   Okay.

11   A.   ... or coverage limits, but the entry was made to

12        have the endorsement appear on the Declarations

13        Page and that would, in itself cause a new

14        Declarations Page to need to be produced.

15   Q.   So, the audit trail would reflect an entry to

16        generate a new Declarations Page in the Rumba

17        System?

18   A.   Yes.

19        MS.  JOHNSEN: Object to the form.

20   Q.   And it would have -- the system, the audit trail,

21        would have who entered that change to take place?

22   A.   Yes.

23   Q.   Is that somebody in State Farm's home office in

24        Illinois?

25   A.   I don't know where they're located.
```

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 141

1   Q.   And Melvin O.  Lamb, III's name does not appear as

2        an excluded driver on that document.

3   A.   Correct because we had not received the signed

4        exclusion at that point in time.

5   Q.   Okay.  And the signed exclusion is Defense Exhibit

6        2, Exhibit A, which is the copy of the -- which is

7        Complaint in that -- it's right there in front of

8        you?

9   A.   Yes.

10  Q.   Oh, I'm sorry.  It's actually, the last page of

11       Defense Exhibit 2.

12  A.   Yes.

13  Q.   I apologize.  Thank you.  After State Farm received

14       that signed form, it never added Melvin O.  Lamb,

15       III as an excluded driver to the Tahoe until July

16       14th, 2021.

17       MS.  JOHNSEN: Object to the form.

18  A.   Right.  We did not correct the clerical error until

19       then.

20  Q.   You call it a clerical error.  It's an error,

21       right?

22  A.   Yes.

23  Q.   And why is it an error?

24  A.   Because in typical processing, we should have

25       produced a new Declarations Page shortly after

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 142

```
 1          receiving the signed exclusion endorsement, which
 2          would have been shown on the face of the Dec Page.
 3     Q.   And in this case, State Farm did not change the
 4          Declarations Page until after claims had been made,
 5          right?
 6     A.   Correct.  That's when we became aware of the error.
 7     Q.   Did State Farm attempt to correct or notify the
 8          recipients of those various letters we went through
 9          talking about coverage, that oops, we made a
10          mistake, there really isn't coverage here?
11     A.   I did not see a reference to that in the claims
12          letters.
13     Q.   Would that be the proper thing to do?
14          MS.  JOHNSEN: Object to the form.
15     A.   I don't know their procedure there.
16     Q.   Who would know that?
17     A.   Claims.
18     Q.   Would that be like -- somebody like Ms.  Bass or
19          someone else?  Do you know?
20     A.   No.  Jessica is in underwriting.
21     Q.   Oh, I'm sorry, right.  So somebody like Lee Shivers
22          or someone else?
23     A.   Yes.
24     Q.   Do you know why State Farm, if it believes errors
25          were made, has not written letters to the various
```

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 169

```
 1    A.   He would -- Mr. Melvin Lamb, Jr. would have
 2         signed the endorsement.  I don't know where, but it
 3         is submitted from the agent to underwriting and
 4         imaged within our servers.
 5    Q.   Okay.  So the endorsement is imaged to State Farm
 6         from the agent's office?
 7    A.   Yes.
 8    Q.   Okay.  So it's not done on a computer, correct?
 9    A.   No.
10    Q.   And why is that?
11    A.   We don't use electronic signatures on those
12         documents to my knowledge, especially at that time.
13    Q.   Okay.  And so that's an actual physical signature
14         on the document?
15    A.   Yes, and my understanding is South Carolina
16         requires a signature.
17    Q.   And on Defendant's Exhibit number 2, the last page,
18         that also has a physical signature on it.
19    A.   It does.
20    Q.   Is that correct?
21    A.   It does.
22    Q.   Okay.  So, based on your review of these
23         endorsements, and there are five here, in addition
24         to the one that is on Exhibit number 2 ...
25    A.   Yes.
```

**Shay Anderson**
**December 14, 2021**

Page 171

1   A.   No, he was not being rated on the policy.

2   **Q.   And what -- how do you know that?**

3   A.   Well, the application did not list him as a

4        household driver and that classification would be

5        different if Melvin Lamb, III were a rated driver.

6   **Q.   What would be different about the classification?**

7   A.   The first digit would be an 8 or a 9 ...

8   **Q.   And ...**

9   A.   ... I believe, based on -- I don't remember his age

10       at the time of the accident.

11  **Q.   So the 8 or 9 would be based on the fact that he's**

12       **a male driver?**

13  A.   Yes.

14  **Q.   Over or under a certain age?**

15  A.   Yes.  It would not be a 6.

16  **Q.   And would it also -- would it have been a 4?  I**

17       **think you testified later that there was a**

18       **different rating on this policy that had to do with**

19       **a female driver under the age of 21.  Is that**

20       **right?**

21  A.   Right.

22  **Q.   Would that classification code have been used for**

23       **Melvin Lamb, III?**

24  A.   No.

25  **Q.   Was there -- was this policy ever rated to include**

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 172

1           Melvin Lamb, III as a driver?

2   A.      No.

3   Q.      Would State Farm have rated this policy differently

4           with regard to the amount of premium that it would

5           have charged Melvin Lamb, Jr.  if Melvin Lamb, III

6           had been included on the policy?

7           MR.  KAHN: Objection.

8   A.      Yeah.  If Melvin Lamb, III had been a rated driver,

9           yes the premium would have been probably more.

10  Q.      State Farm -- had State Farm ever issued a policy

11          to Melvin Lamb, Jr.  that included Melvin Lamb, III

12          as a driver?

13          MR.  KAHN: Objection.

14  A.      Prior to the point in time in which he became an

15          excluded driver.

16  Q.      So prior to 2017?

17  A.      Yes.

18  Q.      Okay.  But not since 2017, had State Farm issued a

19          policy to him that included Melvin Lamb, III as a

20          driver?

21  A.      I don't believe so.

22  Q.      Okay.  With regard to the Chevy Tahoe policy, there

23          is a copy of the executed excluded driver

24          endorsement on the back of Defendant's number 2.

25  A.      Yes.

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 173

1   Q.   Does State Farm have, in its record, a copy of that

2        executed form?

3   A.   Yes.

4   Q.   And it's an image of that document.  Is that right?

5   A.   Correct.

6   Q.   And that would have been received by -- from whom?

7   A.   The agent would have submitted it to underwriting.

8   Q.   Do you know when it was submitted?

9   A.   I think around March 10th, 2020.

10  Q.   You testified earlier that there was a clerical

11       error that occurred at some point regarding this

12       endorsement.  Do you remember that?

13       MR.  KAHN: Objection.

14  A.   Yes.

15  Q.   So, if you would, please explain what the error

16       was.

17  A.   If we had followed typical processing when the

18       signed exclusion endorsement had been received in

19       March of 2020, shortly thereafter, we would have

20       made an entry within our system -- a data entry --

21       entry to include that endorsement on our records so

22       that it would appear on the Dec Pages when they

23       were produced or the Renewal Notices when they were

24       produced.

25  Q.   And the fact that that initial error occurred is

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Shay Anderson**
**December 14, 2021**

Page 174

1     what you were trying to explain is why there were

2     subsequent errors?

3     MR. KAHN: Objection.

4  A.  Correct.

5  Q.  Because that initial entry wasn't made.

6  A.  Correct.

7  Q.  Is that right?

8  A.  Yes.

9     MR. KAHN: Objection.

10 Q.  Did State Farm ever treat this policy as not

11    excluding Melvin Lamb, III as a -- as an excluded

12    driver?

13    MR. KAHN: Objection.

14 A.  No.

15 Q.  And it -- the premium that it charged was based on

16    the classification codes that it did initially.  Is

17    that right?

18    MR. KAHN: Objection.

19 A.  Yes.

20 Q.  The 6 -- using the 6?

21 A.  Yes, the classification codes reflected that we

22    didn't charge a premium for Melvin Lamb, III.

23 Q.  Now there were some questions that Mr. Kahn posed

24    to you regarding policy numbers, where one has an

25    "A" and one has a "B".  Do you remember that?

**Shay Anderson**
**December 14, 2021**

Page 184

STATE OF SOUTH CAROLINA)
                       :    C E R T I F I C A T E
COUNTY OF    GREENVILLE)

Be it known that I took the deposition of SHAY
ANDERSON;

That I was then and there a Notary Public in and
for the State of South Carolina-at-Large;

That by virtue thereof, I was duly authorized to
administer an oath;

That the witness was by me first duly sworn to
testify the truth, the whole truth, and nothing but the
truth concerning the matter in controversy aforesaid;

That the foregoing transcript of 183 pages is a
true and correct transcript of the testimony given in
this matter;

That I am not related to nor an employee of any of
the parties hereto, nor a relative or employee of any
attorney or counsel employed by the parties hereto, nor
interested in the outcome of this action.

WITNESS MY HAND AND SEAL this 29TH day of December,
2021.

_____

Barbara M. McCurley

Notary Public for South Carolina

My Commission Expires: 07/02/2024

**State Farm v. Melvin O. Lamb, III, et al**
**Irveta J. Shouse        Court Reporting        864-303-1723**

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# Exhibit 3

*Declaration of Darren Murdoch*

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| State Farm Mutual Automobile Insurance Company, | ) ) ) | C.A. No.: 2:21-CV-02623-MBS |
| Plaintiff, | ) ) | |
| vs. | ) ) | **DECLARATION OF DARREN MURDOCH** |
| Melvin O. Lamb III, Melvin O. Lamb, Jr., The Estate of James K. Workman, Michael H. Moore, Deborah D. Plott, Angela R. Edwards, Katherine M. Vonesh, Mathis S. Billman, and Luke E. Billman, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

I, Darren Murdoch, declare and state as follows:

1.  I am over the age of 21, I am of sound mind, and I am personally knowledgeable of the facts set forth in this declaration.

2.  I am employed as a Claim Team Manager with State Farm Mutual Automobile Insurance Company ("State Farm"). As a Claim Team Manager, I manage a team of State Farm Claim Specialists handling claims made under automobile insurance policies, which includes supervising and reviewing claim handling activities.

3.  As part of my responsibilities as Claim Team Manager, I am knowledgeable about claim handling activities and procedures as well as State Farm's record keeping practices with respect to insurance claims made with and handled by State Farm.

4.  It is the regular practice of State Farm Claim Specialists and Team Managers to create, store, manage, and access information regarding an insurance claim with State Farm through a web-based system called ECS.

5.  File notes are made by State Farm Claim Specialists and Team Managers in ECS to log or document information, events, and actions in the course of handling a particular claim, including, by way of example, coverage and liability investigations, coverage and liability determinations, and information, correspondence, documents, and records received. These file notes made by Claim Specialists and Team Managers are recorded, maintained and kept in ECS

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

in the ordinary course of State Farm's business of handling insurance claims at or near the time of the information, events, and actions they log or document.

6.     I have reviewed in ECS Claim No. 40-21B2-49D (the "subject claim"), which claim arises from a June 12, 2021 car accident involving Melvin O. Lamb, III, ("Lamb III") driving a Tahoe insured by State Farm under an automobile insurance policy issued to Lamb III's father, Melvin O. Lamb, Jr. (the "subject policy").

7.     The following information, events, and activities are within my personal knowledge as the Team Manager for the subject claim or are otherwise documented in ECS for the subject claim:

   a.     On June 18, 2021, Claim Specialist Christine Riddick learned of a possible driver exclusion for Lamb III, however she did not see an excluded driver on the subject policy and therefore noted investigation was needed.

   b.     That same day, Claim Specialist Lee Shivers investigated coverage. Mr. Shivers spoke with Mark Black of State Farm Agent Jack Tankersley's office regarding the existence of an excluded driver endorsement with respect to Lamb III on the subject policy. Mr. Black informed Mr. Shivers there was no such an endorsement on the subject policy, but there were on the other household policies.

   c.     On June 19, 2021, I asked Mr. Shivers to call Underwriting to verify there was no excluded driver on the subject policy because it would be unusual for there to be an excluded driver on some but not all household cars.

   d.     On June 29, 2021, Mr. Shivers confirmed with Underwriting there was not a driver exclusion on the subject policy. He later sent letters to Lamb III and Mr. Lamb stating there was "a potential for exposure beyond the limits of liability coverage afforded you under your policy."

   e.     On or about July 16, 2021, Mr. Shivers and I learned from underwriting there was an excluded driver endorsement on the subject policy, which endorsement underwriting had received in March 2020 and was effective February 26, 2020.

   f.     Thereafter, Claims retained separate counsel to represent Mr. Lamb, Lamb III, and State Farm.

   g.     On August 4, 2021, State Farm sent separate Reservation of Rights letters to Mr. Lamb and Lamb III notifying them there may be no duty to defend, indemnify, or

otherwise perform under the subject policy due to Lamb III operating the Tahoe at the time of the accident and the applicable excluded driver endorsement.

h.    Also on August 4, 2021, Mr. Shivers requested from Underwriting a certified copy of the subject policy to provide to State Farm's counsel.

i.    On August 5, 2021, Mr. Shivers received the certified copy of the subject policy from Underwriting and provided the same to State Farm's counsel at Gallivan White & Boyd PA.

I, Darren Murdoch, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on: 5/23/2022                Darren P. Murdoch

Darren Murdoch

Digitally signed by Darren P. Murdoch
Date: 2022.05.23 15:05:56 -04'00'

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# Exhibit 4

*Declaration of Lana Willingham*

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| State Farm Mutual Automobile Insurance Company, | ) ) ) | C.A. No.: 2:21-CV-02623-MBS |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| Melvin O. Lamb III, Melvin O. Lamb, Jr., The Estate of James K. Workman, Michael H. Moore, Deborah D. Plott, Angela R. Edwards, Katherine M. Vonesh, Mathis S. Billman, and Luke E. Billman, | ) ) ) ) ) ) ) | **DECLARATION OF LANA WILLINGHAM** |
| Defendants. | ) ) | |

I, Lana Willingham, declare and state as follows:

1.    I am over the age of 21, I am of sound mind, and I am personally knowledgeable of the facts set forth in this declaration.

2.    I am employed by State Farm Mutual Automobile Insurance Company ("State Farm") as a Complex Underwriting Service Assistant in State Farm's Underwriting Department.

3.    As part of my job responsibilities, I am knowledgeable of and familiar with State Farm's underwriting processes for policy transactions and underwriting policies.

4.    On or around July 13, 2021, I handled a service request to process an excluded driver endorsement ("driver exclusion") on policy number 632 3189-B07-40 (the "subject policy").

5.    According to the service request, the driver exclusion was effective February 26, 2020.

6.    When I went to enter the driver exclusion on the subject policy, I found the policy had a system generated date block which, unless removed, left June 10, 2021 as the first available date for the policy transaction.

7.    I did not remove the date block on the subject policy. Therefore, when I added the driver exclusion to the subject policy effective February 26, 2020, I used the first available date of June 10, 2021 for the effective date of the transaction.

ELECTRONICALLY FILED - 2024 Jul 08 4:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

8.      At the time I added the driver exclusion to the subject policy I did not know there was a claim pending with a June 12, 2021 date of loss.

9.      The date block on the subject policy was not related to the June 12, 2021 date of loss or any claim pending on the subject policy. Instead, the date block was the result of a system reassignment of the named insured Melvin O. Lamb, Jr. as the assigned driver of the Tahoe insured under the subject policy.

10.     Prior to June 10, 2021, Mr. Lamb was identified in State Farm's Underwriting system as the primary operator but not the assigned driver of the Tahoe. His granddaughter was listed as the assigned driver of the Tahoe.

11.     Prior to June 10, 2021, Mr. Lamb was also the named insured on another policy insuring a Honda Pilot, and Mr. Lamb was identified in State Farm's Underwriting system as both the primary operator and the assigned driver of the Honda Pilot. At the time, Mr. Lamb was not identified as the assigned driver of any other household vehicles besides the Honda Pilot.

12.     Mr. Lamb cancelled the policy insuring the Honda Pilot.

13.     Underwriting's policies and procedures require each household driver who is eligible for rating be assigned to an eligible household vehicle. Therefore, when Mr. Lamb cancelled the policy insuring the Honda Pilot, the only household policy on which he was identified as an assigned driver, the Underwriting system (not a particular person) reassigned Mr. Lamb as an assigned driver of the Tahoe. The system reassignment occurred on June 11, 2021, making Mr. Lamb an assigned driver of the Tahoe effective June 10, 2021. This system reassignment created the June 10, 2021 date block on the subject policy.


        I, Lana Willingham, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on: _5 - 23 - 2022_  _Lana Willingham_
                              Lana Willingham

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | **COURT OF COMMON PLEAS** |
| | **NINTH JUDICIAL CIRCUIT** |
| **COUNTY OF CHARLESTON** | **CASE NO. 23-CP-10-1832** |

**ROBERT C. WORKMAN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES K. WORKMAN, KELLY WORKMAN TICK AND MATTHEW T. WORKMAN,**

     **PLAINTIFFS,**

**V.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND GALLIVAN, WHITE & BOYD, P.A.,**

     **DEFENDANTS.**

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT STATE FARM'S MOTION FOR JUDGMENT ON THE PLEADINGS**

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## TABLE OF CONTENTS

1. INTRODUCTION - SUMMARY ........................................................................... 3
  1.1. Forged Declarations Page Used in Lawsuit Shown Below .......................5
  1.2. Summary of Facts Plead and Inferences Therefrom ................................6
  1.3. Dismissal Standard Not Met..................................................................6
2. FACTS PLEAD AND INFERENCES SUPPORT ALL CAUSES OF ACTION........... 7
  2.1. Multi Car Collision by State Farm Insured .............................................7
  2.2. State Farm Confirms Coverage Before Creating Forged Documents To Deny Coverage ....................................................................................7
  2.3. Son Never Excluded and Form Never Approved As Required ...............7
  2.4. State Farm Creates False Documents to Deny Coverage.........................8
  2.5. Creation of False Declaration Page is a Crime ......................................8
  2.6. Unlawful to Use Unapproved Insurance Forms....................................8
  2.7. Violation of State Farm's Own Fraud Policies .......................................9
  2.8. Defendants Work Together in a Conspiracy By Using False Documents and Making False Statements................................................................9
  2.9. Knowledge Plaintiffs and Others Would Rely on False Documents ......10
  2.10. Plaintiffs Need Not Prove Fraud In Pleadings, Only Allege It ...............11
3. MOTION TO DISMISS STANDARD NOT MET................................................. 12
4. CONCISE SUMMARY OF THE NATURE OF THE CASE..................................... 12
5. CONCISE STATEMENT OF PERTINENT FACTS ............................................. 13
6. ARGUMENT ............................................................................................. 13
  6.1. Abuse of Process - Creation and Use of False Documents To Litigate ..13
    6.1.1. Abuse of Process Elements ............................................................14
    6.1.2. Facts Supporting Ulterior Purpose and Willful Acts Plead.............15
    6.1.3. Pursuit of Primary Objective Other than Claimed in Lawsuit........16
    6.1.4. Ulterior Motive Actionable Because Pursued Course Using Forged Documents.....................................................................................17

6.2.   Fraud and Negligent Misrepresentation – Reliance Plead and Duty to Disclose Facts, Not Hide Them ................................................................18

6.2.1. Plaintiffs Relied on the Documents and Were Forced to Litigate Because They Would Be Assumed True .........................................20

6.2.2. Reliance Not Needed — Fraud Per Se .............................................22

6.2.3. Duty To Disclose Because State Farm Chose to Speak .................23

6.2.4. Duties as Insurer to Third-Party Claimant .....................................24

6.3.   Civil Conspiracy ......................................................................................26

6.3.1. Conspiracy Exists As State Farm Did Not Conspire With Itself But Rather With Law Firm ...................................................................26

6.3.2. Overt Acts Plead and Incorporated in Civil Conspiracy ................28

6.4.   SCUTPA Applies to Automobile Insurers Like State Farm ...................29

6.4.1. Defendants Have Burden of Proving Exemption ............................31

6.5.   Right to Amend .......................................................................................31

7.  CONCLUSION............................................................................................ 32

State Farm failed to submit a memorandum in support of its motion as the

Court directed by Wednesday July 3 at 5:00 p.m. As such, its motion should be

denied. If needed, this memo applies to arguments it may make.

1.  **INTRODUCTION - SUMMARY**

A month after a fatal multicar collision, State Farm forged a declarations

page to exclude its insured, the at-fault driver, from coverage. Then, it collaborated

with its lawyers to use the false policy and an insurance form never approved for

use by the South Carolina Department of Insurance in court proceedings against

those injured and its own insureds. The Estate of James K. Workman and his heirs,

Robert C. Workman, Kelly Workman Tick, and Matthew T. Workman are suing

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

State Farm Mutual Automobile Insurance Company (State Farm) and Gallivan White & Boyd, P.A. (GWB) for their misconduct. Plaintiffs claim that State Farm and GWB engaged in numerous improper actions, including creating and using fake documents, both before and after filing the lawsuit, to hide the truth and compel them into unnecessary litigation. The forged Declarations Page used by the Defendants and attached to the Complaint they filed is reproduced below with call outs showing some of the changes made *after* the collision. Changes include:

- Adding Exclusion for insured driver;

- different policy number;

- different policy period;

- preparation date *a month after* the collision;

- statement that it replaced the actual policy; and

- Redactions by GWB to obscure information that would show differences in premiums from the actual policy.

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## 1.1. Forged Declarations Page Used in Lawsuit Shown Below



ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## 1.2.   Summary of Facts Plead and Inferences Therefrom

State Farm made false documents after a collision to use in litigation to mislead and avoid paying legitimate claims of Plaintiffs and others. The documents include not only the forged declarations page but certified policy records falsely stating the bogus policy was in effect at the time of the collision. State Farm engaged in improper conduct including to force Plaintiffs and others to bow to its pressure or hire counsel and incur expense, and use their own uninsured coverage.

## 1.3.   Dismissal Standard Not Met

State Farm moves is seeking a judgment on the pleadings. The law, facts plead and inferences from those facts do not support their motions.

> A judgment on the pleadings against the plaintiff is not proper if there is an issue of fact raised by the complaint which, if resolved in favor of the plaintiff, would entitle him to judgment. A judgment on the pleadings is in the nature of a demurrer. ***All properly pleaded factual allegations are deemed admitted*** for purposes of the consideration of a demurrer. When a fact is well pleaded, ***any inference of law or conclusions of fact that may properly arise therefrom are to be regarded as embraced*** in the averment. Moreover, ***a complaint is sufficient if it states any cause of action or it appears that the plaintiff is entitled to any relief whatsoever***. Our courts have held that pleadings in a case ***should be construed liberally so that substantial justice is done between the parties***. Further, a ***judgment on the pleadings is considered to be a drastic procedure*** by our courts.
>
> *Russell v. City of Columbia*, 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991) (internal citations omitted) (emphasis added).

6

Facts outside of the pleadings and defenses like reasonable or detrimental reliance are not proper to consider. Plaintiffs adequately plead facts, and the inferences drawn from these facts substantiate each of the legal claims. If needed, Plaintiffs move to amend the pleadings. *See e.g. Skydive Myrtle Beach, Inc. v. Horry Cnty.*, 426 S.C. 175, 179, 826 S.E.2d 585, 587 (2019).

2.      FACTS PLEAD AND INFERENCES SUPPORT ALL CAUSES OF ACTION

Facts plead and the inferences support all causes of action, including Abuse of Process, Fraud, Misrepresentation, SCUTPA and Civil Conspiracy.

### 2.1.   Multi Car Collision by State Farm Insured

On June 12, 2021, Plaintiffs' father Mr. James K. Workman suffered and died from injuries in a multi-car collision. The collision was caused by State Farm insureds Melvin O. Lamb, Jr., who owned and negligently entrusted his SUV to his son Melvin O. Lamb, III (Son). Compl. ¶¶ 2-3, 30-33.

### 2.2.   State Farm Confirms Coverage Before Creating Forged Documents To Deny Coverage

First, State Farm confirmed coverage to Plaintiffs stating it "certifies that policy number **632318940A**, covering (a) 2004 Chevrolet TAHOE…was in effect on the accident date of June 12, 2021" (Compl. ¶¶ 4-6). State Farm also confirmed coverage to its insureds (Compl. ¶¶ 37-39).

### 2.3.   Son Never Excluded and Form Never Approved As Required

Before the collision State Farm's Tahoe policy did not exclude Son who was driving the SUV or reference a Driver Exclusion Form 6023DC. Compl. ¶¶ 33-35.

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 2.4. State Farm Creates False Documents to Deny Coverage

About one month *after* the collision State Farm created a forged declarations page to make it look like Son was excluded from coverage. It used the forged document in a Declaratory Judgment lawsuit. This was wrong because, it breach duties owed to Plaintiffs and others to pay the claims and indemnify its insureds. This was done willfully so State Farm could avoid paying claims to Plaintiffs and others. *See e.g.* Compl. ¶¶ 7, 11-15, 40-43, 49, 57, 64-65, 72.

### 2.5. Creation of False Declaration Page is a Crime

To deny coverage, State Farm created a false declarations page in violation of its own rules to use with its lawyers in a lawsuit. *See e.g.* Compl. ¶¶ 7-14, 49, 83-91-100. Creating and using this document is the crime of forgery. S.C. Code Ann. § 16-13-10. Compl. ¶¶ 91-97. "Both under this statute and the common law a person may commit forgery by being present, and knowingly aiding and abetting another in the perpetration of the crime." *Brown v. Bailey*, 215 S.C. 175, 185, 54 S.E.2d 769, 773 (1949).

### 2.6. Unlawful to Use Unapproved Insurance Forms

Before using forms, including one to exclude an insured driver from coverage, an insurer must submit it for approval to the S.C. Department of Insurance (SCDOI). S.C. Code Ann. § 38-77-340. State Farm knew the using an unapproved form, like the Form 6023DC attached to the Complaint was illegal and improper. Compl. ¶ 71, 91-93. State Farm falsely stated the form complied with the

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

law. Compl. ¶¶ 58-61. State Farm knew Plaintiffs, the Court and others would rely on and not know State Farm was using an unapproved form and believe it was real in making determinations about the applicability of their own insurance coverage. Compl. ¶¶ 99-100. (For example and by reasonable inference, Plaintiffs and others would need to use their own uninsured coverage instead of using the liability coverage and their own underinsured coverage.)

### 2.7. Violation of State Farm's Own Fraud Policies

State Farm violated its own fraud prevention policies by engaging in the illegal and improper conduct, including forging a dec page. Compl. ¶¶ 83-90.

### 2.8. Defendants Work Together in a Conspiracy By Using False Documents and Making False Statements

Defendants worked together to file the declaratory judgment action and use the forged declarations page and unapproved form to wrongfully deny coverage to Plaintiffs and others. Compl. ¶¶ 1, 12, 58-72, 77, 149-151. These actions represent at least one or more overt acts in furtherance of their conspiracy and agreement to deprive Plaintiffs and others of insurance benefits. GWB sought to benefit itself by getting paid and satisfying its client by working with State Farm without sufficient investigation. This action was part of an improper scheme aimed at gaining an

unfair advantage and deceitfully attempting to mislead the Plaintiffs, the Court, and others. *See e.g.* Compl. ¶¶ 62-82, 135 and Ex. A to Compl. Aff. Pendarvis.[1]

### 2.9. Knowledge Plaintiffs and Others Would Rely on False Documents

State Farm knew plaintiffs and others would depend on and consider the documents as genuine and accurate for making decisions about hiring attorneys, litigating, and determining their own available coverage (uninsured coverage as opposed to underinsured coverage). Compl. ¶¶ 44-52. State Farm intended Plaintiffs and others to rely on the documents as being true and in making decisions about Plaintiffs' own automobile insurance policies. Compl. ¶ 99. After litigation began, State Farm created and provided a false Certified Policy Record to "certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 632 3189-B07-40B including any endorsements…" that apply and that the "policy was in effect on the loss date of 06/12/2021." The statements were knowingly false. Compl. ¶¶ 54-56.

---

[1] In a recent 5th Circuit decision in an attorney malpractice matter, the Court held "In analyzing breach, courts hold lawyers "to the standard of care which would be exercised by a reasonably prudent attorney." *Cosgrove*, 774 S.W.2d at 664. "The standard is an objective exercise of professional judgment, not the subjective belief that his acts are in good faith." *Id.* at 665. Put simply, courts must consider whether the allegedly negligent attorney made "a reasonable inquiry in the legal and factual basis of the claim at the time the suit was filed." *Matter of Champion Printing & Copying, L.L.C.*, No. 21-51234, 2023 WL 179851, at *3 (5th Cir. Jan. 13, 2023). This shows that attorneys have duties to reasonably inquire into the legal and factual basis at the time suit is filed.

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 2.10. Plaintiffs Need Not Prove Fraud In Pleadings, Only Allege It

When pleading fraud, "the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." SCRCP, Rule 9(b). Reliance is a condition of mind. Plaintiffs plead reliance on documents and statements made by Defendants. For example, Plaintiffs relied on the documents being true when:

- obtaining counsel to defend them in the lawsuit brought by Defendants using false documents;

- addressing issues concerning their own automobile policies like the applicability of uninsured coverage instead of underinsured coverage;

- negotiating coverage issues with their carrier like subrogation rights versus no subrogation rights; and

- Plaintiffs retained counsel to defend them in the lawsuit, spent effort, time, money for costs and expenses to address issues "related to their own automobile policies."

(Compl. ¶¶ 15, 44, 47, 101-102, 105, 130):

A civil pleading based on fraud is sufficiently particular if it alleges all of the essential elements of actionable fraud.

> *the rules do not require a plaintiff to plead fraud with complete insight before discovery is complete.* While the pleader need not allege evidentiary facts to comply with the rule setting forth the particularity required in all averments of fraud, the pleader must allege ultimate facts and cannot rely upon conclusions, and the fraud must

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

> appear clearly from the facts alleged and be independent of conclusions.
>
> 71 C.J.S. Pleading § 72 (emphasis added).

As has been alleged, Plaintiffs relied on the statements contained in the lawsuit filed by State Farm to hire counsel *before* answering the lawsuit and during the litigation process. Plaintiffs were required to rely on the false documents and false statements made to continue to defend themselves, expend money, time and resources to investigate the statements made. Further, after Plaintiffs answered denying the material allegations, Defendants continued their misrepresentations by never correcting the false statements and assertions forcing Plaintiffs to continue to litigate. Compl. ¶¶ 101-103.

**3.    MOTION TO DISMISS STANDARD NOT MET**

In the light most favorable to Plaintiffs, the Complaint sufficiently pleads facts, inferences from those facts and causes of action against the Defendants. Should the Court find otherwise, Plaintiffs request leave to amend the Complaint.

**4.    CONCISE SUMMARY OF THE NATURE OF THE CASE**

Plaintiffs allege State Farm and GWB collaborated to deny insurance coverage by creating and using false documents in a court proceeding. After the scheme was exposed, State Farm dismissed its lawsuit and admitted to the falsified documents. Plaintiffs seek accountability for the Defendants' misconduct and the harm caused by their actions.

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

There was money paid to the Estate and heirs to settle the wrongful death claim. State Farm did not pay to settle claims involving its wrongful conduct, but rather to avoid a bad faith claim because it exposed its insureds to an excess verdict after refusing to resolve within policy limits before filing its bogus suit.[2] The settlement agreement made clear that payment was not to resolve the wrongful conduct of defendants for bringing and prosecuting a bogus lawsuit using false and fabricated documents.

## 5.   CONCISE STATEMENT OF PERTINENT FACTS

This lawsuit was filed in South Carolina state court, removed and remanded. Motions to dismiss were filed. State Farm did not timely file a supporting memo.

## 6.   ARGUMENT

### 6.1.   Abuse of Process - Creation and Use of False Documents To Litigate

State Farm engaged in improper and willful acts not proper in the regular conduct of process and litigation. It had an ulterior motive other than to use the process for which it was intended – use the process to deny coverage by creating and using false documents and subjecting Plaintiffs to litigation using those materials. Unsurprisingly, State Farm cites no case holding that creating and using false papers to litigate and deprive coverage is a proper use of the process. Instead,

---

[2] State Farm created the false documents instead of properly and timely resolving the claim and protect its insureds pursuant to *Tyger River Pine Company v. Maryland Casualty Company*, 170 S.C. 286, 170 S.E. 346 (1933).

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

State Farm merely argues disingenuously that no abuse of process claim exists because a declaratory judgment action is a proper kind of case to file. Its arguments should be disregarded, and its motion denied.

### 6.1.1.    Abuse of Process Elements

"The essential elements of abuse of process are (1) an ulterior purpose, and (2) a willful act in the use of the process that is not proper in the regular conduct of the proceeding." *Pallares v. Seinar*, 407 S.C. 359, 370, 756 S.E.2d 128, 133 (2014). "The tort of abuse of process is intended to compensate a party for harm resulting from another party's **misuse** of the legal system." *Id.* (internal citations omitted and emphasis added). "Process," as used in this context, has been interpreted broadly to include the entire range of procedures incident to the litigation process. *Id*. When "[o]ne who uses a legal process, whether criminal or civil, against another *primarily* to accomplish a purpose for which it is not designed, is subject to liability for harm caused by the abuse of process." *Pallares v. Seinar*, 407 S.C. 359, 371, 756 S.E.2d 128, 133 (2014). The tort centers on events *occurring outside the process*; the improper purpose *usually takes the form* of coercion to obtain a collateral advantage, *not properly involved in the proceeding itself*, such as the surrender of property or the payment of money, by the use of the process as a threat or club. *Id*. at 134. *See also* RESTATEMENT

(SECOND) OF TORTS § 682 (1977) cmt. b. The proper purpose of the process is not designed to use false documents to try to declare rights as occurred here.

### 6.1.2.     Facts Supporting Ulterior Purpose and Willful Acts Plead

State Farm's primary objective was to use false and fraudulent documents and have a Court bless its false documents and illegal form. Creating and using false documents to use as part of the process are not proper in the conduct of litigation nor aimed at a legitimate use of the process. Compl. ¶ 112. State Farm used the process "against another primarily to accomplish a purpose for which it is not designed." 1 AM. JUR. 2d Abuse of Process § 1.

Plaintiffs properly plead the elements and factual allegations to support an abuse of process cause of action. The ulterior purpose was to create and use false and forged documents in a legal proceeding and in discovery with their counsel. *See e.g.* Compl. ¶¶ 13 – 16. This conduct was willful. Using false documents specifically created for litigation is not proper in the regular conduct of a proceeding. Defendants cite no authority that holds such an absurd position is the law or is lawful.

Factual allegations are plead to support this cause of action.

- Creating and using a fake insurance declarations page for the purpose of using it in legal proceedings;

- Trying to pass off the forged declarations page as genuine and valid;

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

- Using bogus documents in litigation;

- Falsely asserting documents were part of actual insurance policy;

- Making false claims that a form attached to the Complaint complied with the law despite lack of approval by the Department of Insurance; and

- Other improper motives and purposes.

*See*, e.g. Compl. ¶¶ 49, 57, 64, 110-112, 146.

Combined with the other facts plead throughout the Complaint, Plaintiffs have sufficiently plead a cause of action and facts supporting abuse of process.

### 6.1.3.    Pursuit of Primary Objective Other than Claimed in Lawsuit

Although a declaratory judgment action may be a valid cause of action, when a party files and pursues such a lawsuit using forged documents to obtain a result not possible without such documents, an abuse of process occurs. Using false documents in court is a coercive tactic that aims to manipulate and unfairly influence the legal process. State Farm's position that filing a declaratory judgment action is not an abuse of process standing alone may be correct. However, State Farm did not merely file a declaratory judgment action. It created false documents to have a court determine there was no coverage and that its unapproved form was valid. Using false documents exerts coercive and improper pressure on the opposing party, compelling them to accept false information or to concede their position. Not only does using false documents damage the credibility of the legal

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

system, it also puts the innocent party at a significant disadvantage. Unfair judgments, reputation damage, and a general sense of distrust can arise from this unethical practice, eroding the integrity of the entire legal system.

### 6.1.4.  Ulterior Motive Actionable Because Pursued Course Using Forged Documents

State Farm created the false documents outside of the process to use in the lawsuit. "The tort centers on events occurring outside the process; the improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself…by the use of the process as a threat or club." *Pallares v. Seinar*, 407 S.C. 359, 371, 756 S.E.2d 128, 134 (2014).

Ulterior motives for using false documents in court proceedings include gaining an unfair advantage and improperly manipulating the case's outcome in favor of the party presenting these documents. Defendants brought the lawsuit for ulterior purposes, including coercing Plaintiffs into using their own coverage rather than for the sole purpose for which it was intended, to have the Court render a decision based on real and valid documents. *See e.g.* Compl. ¶¶ 46-49, 99 (use and rely on false documents to make decisions about available coverage, whether to litigate the matter, to provide to its attorney to use in litigation.)

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 6.2.  Fraud and Negligent Misrepresentation – Reliance Plead and Duty to Disclose Facts, Not Hide Them

State Farm may argue Plaintiffs did not reasonably rely on the forged documents. That is a defense, and not to be considered for this motion. Additionally, one should not be given the opportunity to free himself from an allegation of fraud by claiming non-reliance.[3] Such a finding "would leave swindlers free to extinguish their victims' remedies …." *Slack v. James*, 364 S.C. 609, 619, 614 S.E.2d 636, 641 (2005).

One who commits fraud is not free to immunize itself by claiming as a defense that the fraud was subsequently discovered so there is no wrong. By way of analogy, long ago, the United States Supreme Court held "concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead a defense to protect itself is to make the law which was designed to prevent fraud the means by which it is made successful and secure." *Bailey v. Glover*, 88 U.S. 342, 349, 22 L. Ed. 636 (1874). In sum, it is not proper for one to claim lack of reasonable reliance as a bar when one creates and uses false documents for all to rely upon as being true. It is sufficient at this stage of the proceedings for Plaintiffs to plead reasonable reliance, not prove it.

---

[3] "Courts around the country have reached similar conclusions on similar facts and have allowed claims of pre-contract fraudulent representations of potential income to survive integration clause challenges." *Weaver v. Mega Life & Health Ins. Co.*, No. 1:06CV108, 2007 WL 9734422, at *5 (N.D. W. Va. Mar. 19, 2007).

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Last, "[t]he general rule is that questions concerning reliance and its reasonableness are factual questions for the jury." *Unlimited Servs., Inc. v. Macklen Enterprises, Inc.*, 303 S.C. 384, 387, 401 S.E.2d 153, 155 (1991); *Slack v. James*, 364 S.C. 609, 615, 614 S.E.2d 636, 639 (2005). As explained, Plaintiffs plead facts supporting reliance on the false statements made. It is for a jury to decide, not by way of Defendants' motions.

Once State Farm undertook to speak in a court proceeding, it was required to do so completely and truthfully. The affirmative false disclosures made form the basis of the lawsuit, not the failure to disclose information. State Farm intended Plaintiffs and others would rely on the documents as being true to make decisions about Plaintiffs' own insurance. Complaint ¶ 99.

Plaintiffs adequately plead reliance on the statements as being true. For example, because of the reliance on the documents as being true, Plaintiffs and others hired counsel to defend them in the lawsuit brought by Defendants as well as address the issues concerning their own automobile policies. Compl. ¶¶ 101-102. Plaintiffs did not know the documents were false at the time. Plaintiffs relied on the documents as being true when they needed to address issues such as the applicability of uninsured coverage instead of underinsured coverage with their carrier, negotiating and addressing coverage issues with their carrier because of the documents created by State Farm, as well as negotiate the subrogation rights of

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

their carrier. Because the documents attached to the Complaint were relied on as being true, Plaintiffs retained counsel to defend them in the lawsuit, and spent effort, time, and money to address issues "related to their own automobile policies." Compl. ¶¶ 15, 44, 47, 101-102, 105.

### 6.2.1.    Plaintiffs Relied on the Documents and Were Forced to Litigate Because They Would Be Assumed True

State Farm argues lack of reliance because at the time an answer was filed, Plaintiffs denied allegations. First, this is outside of the pleadings and should not be considered. Separately, Plaintiffs did rely on the truth of the documents. Plaintiffs hired counsel to address and deal with their own insurance coverage issues caused by Defendants' assertion that there was no coverage, filed motions and otherwise were forced to litigate the matter. Compl. ¶¶ 101-103.

In any case, after Plaintiffs denied allegations, Defendants continued to assert the documents were true by not correcting the false statements or immediately ending the case. This forced Plaintiffs to file an answer, engage in discovery, and file a motion to compel discovery and take a deposition of State Farm with its associated costs and expenses.

Due to the wrongful conduct of the Defendants, Plaintiffs expended time, resources and expenses to expose the fraud. Compl. ¶¶ 15, 105, 116. Plaintiffs' persistence and investigation of the facts claimed true by Defendants caused damage. This was not because Plaintiffs knew there was fraud from the moment

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

the suit began, but rather the work needed to counter the statements made by Defendants assumed to be based in truth.

The fact that Plaintiffs denied the allegations of the Complaint about 60 days after being served does not mean they did not, as factually plead, rely on or act as if the documents were true before answering. In any case, even after Plaintiffs denied the allegations, Defendants continued the ruse. This forced Plaintiffs to continue to address the veracity of the documents.

*Quare*: When Plaintiffs denied the allegations of the Complaint, did Defendants suddenly say, "Oh you're right, these are false documents, sorry for the confusion and waste of time?" No, they kept moving forward with litigation, forcing Plaintiffs to continue defending the bogus lawsuit. Defendants even improperly relied on the bogus documents by seeking and obtaining the entry of default against five others they sued who did not answer the lawsuit. Compl. ¶115. Based on Defendants' actions and representations that the policy was real and valid, the clerk entered default. *Id*.

Interestingly, had Plaintiffs not obtained counsel and not expended time, money and effort to question the documents, a Court would have granted State Farm's declaratory relief. As a result, Defendants' overt and fraudulent acts would have succeeded. If the Plaintiffs admitted the allegations of the Complaint as being

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

true, would State Farm say Plaintiffs are judicially estopped from asserting claims now? Such fast and loose conduct by the Defendants should not be rewarded.

### 6.2.2.   Reliance Not Needed — Fraud Per Se

Separately, reliance is not needed under South Carolina law related to one who makes false statements or misrepresentations in connection with an insurance matter. It is fraud *per se* to engage in the conduct of making misrepresentations or false statements to deny payment to Plaintiffs. This is fraud under the Omnibus Insurance Fraud and Reporting Immunity Act which defines "False statement or misrepresentation." S.C. Code Ann. § 38-55-530 (D).

> "False statement or misrepresentation" means a statement or representation made by a person that is false, material, made with the person's knowledge of the falsity of the statement and made with the intent of obtaining … or attempting to obtain … an undeserved economic advantage or benefit or made with the intent to deny … any benefit or payment in connection with an insurance transaction, and **such shall constitute fraud**."

Thus, there is no need to plead or show reliance to prove fraud as to State Farm. The statute applies as State Farm made a representation with the intent to obtain an **undeserved economic advantage** (avoid paying insurance proceeds / not paying coverage due) with the intent to deny payment in **connection with the insurance transaction** (insurance claim / lawsuit). It was patently illegal for State Farm and its attorneys to assist in making false statements or misrepresentations in connection with insurance claims. S.C. Code Ann. § 38-55-540.

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 6.2.3.     Duty To Disclose Because State Farm Chose to Speak

To the extent State Farm argues there was a lack of duty to speak the truth, this is incorrect because State Farm undertook to speak on the issue of coverage. When it did so, it assumed the duty to tell the whole truth and make a full and fair disclosure as to matters to which it chose to speak. 37 AM. JUR. 2d Fraud and Deceit § 203. Similarly,

> A representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter is a fraudulent misrepresentation. RESTATEMENT (SECOND) OF TORTS § 529 (1977).[4]

Tort law recognizes "that half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations." *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 188 (2016). As stated in footnote 3 of the opinion:

> This rule recurs throughout the common law. In tort law, for example, "if the defendant does speak, he must disclose enough to prevent his words from being misleading." W. Keeton, D. Dobbs, R. Keeton, & D.

---

[4] A "statement containing a half-truth may be as misleading as a statement wholly false. Thus, a statement that contains only favorable matters and omits all reference to unfavorable matters is as much a false representation as if all the facts stated were untrue." Restatement (Second) of Torts § 529 (1977) (cmt. a). Further, the "recipient is entitled to know the undisclosed facts in so far as they are material and to form his own opinion of their effect." Restatement (Second) of Torts § 529 (1977) (cmt. b).

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Owen, Prosser and Keeton on Law of Torts § 106, p. 738 (5th ed. 1984).

State Farm is "subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation." RESTATEMENT (SECOND) OF TORTS § 525 (1977). State Farm made its fraudulent misrepresentations to induce Plaintiffs "to act or to refrain from action in reliance upon it…" *Id*. Thus, State Farm had a duty to speak the whole truth and is subject to liability for failing to do so.

### 6.2.4.    Duties as Insurer to Third-Party Claimant

State Farm, as an insurance company dealing with a claimant, has duties to not hide or misrepresent but rather speak the truth or at least not to provide "deceptive or misleading information with respect to coverages." S.C. Code Ann. § 38-59-20. By failing to disclose the existence of documents showing coverage was not excluded, State Farm, as an insurer, engaged in "unfairly competitive practices having as their purpose or effect evasion of the coverages as provided in this [Automobile Insurance] chapter." S.C. Code Ann. § 38-77-10. *See* e.g. statutes cited under UTPA cause of action. Compl. ¶¶ 154-156.

State Farm's conduct was deceptive or misleading in violation of various provisions of S.C. Code Ann. § 38-59-20. These include invoking policy defenses not in good faith and with a reasonable expectation of prevailing with the primary purpose of discouraging a third-party claim or "any other practice which

constitutes unreasonable delay in paying or an unreasonable failure to pay or settle in full claims, including third-party claims." Although the UTPA does not apply to acts *permitted by law*, merely because an industry is regulated does not exempt it from the UTPA. *See e.g. State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 414 S.C. 33, 72, 777 S.E.2d 176, 196 (2015).

As to GWB, "[t]here is no question but what legal services come within the definition of this [UTPA] statute." *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 338, 732 S.E.2d 166, 174 (2012). Citing *Pepper v. Routh Crabtree, APC*, 219 P.3d 1017, 1024–25 (Alaska 2009) (the legal profession is not exempt from UTPA coverage simply because a state supreme court has the authority to discipline attorneys for misconduct as the Rules of Civil Procedure and the Rules of Professional Conduct are not the type of ongoing, careful regulation required to trigger an exemption; the court concluded "that the attorney disciplinary system and consumer protection laws can coexist as long as the legislature does not purport to take away this court's exclusive power to admit, suspend, discipline, or disbar" attorneys). The trial court erred in relying upon the regulated industries exception as to a law firm. *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 338, 732 S.E.2d 166, 174 (2012).

The burden of proving exemption from the provisions of this article shall be on the one claiming the exemption. S.C. Code Ann. § 39-5-40. Here, at this stage

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

of the pleadings, Defendants do not meet their burden. Whether there was a UTPA violation is a question of fact, not a matter of law.

### 6.3. Civil Conspiracy

"A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means." 15A C.J.S. Conspiracy § 1. This cause of action is plead properly.

### 6.3.1. Conspiracy Exists As State Farm Did Not Conspire With Itself But Rather With Law Firm

To the extent Defendants argue an attorney and client cannot engage in a civil conspiracy because the relationship is one of attorney-client or agent-principal, this is incorrect. The assumption argued by State Farm is that the attorney agent is working solely for the interests of the principal and does not have separate duties. Here, it was plead that GWB acted in its own interests and had duties separate from State Farm. *See* e.g. Compl. ¶¶ 68-73 and Pendarvis' Affidavit citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §110(1), Rule 11 and other duties of candor to third-parties and the tribunal. Compl. including ¶¶ 42-45. The lawyers with GWB had and breached "their independent duties to Plaintiffs to investigate and confirm the evidence they submitted in support of State Farm's claims in the Federal Lawsuit provided a non-frivolous basis to support the claims before filing the Federal Lawsuit. The lawyers at the Law Firm apparently either did not conduct a reasonable investigation to

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

evaluate the evidence that State Farm provided to support the claim, or they may have proceeded with the Federal Lawsuit to maintain their relationship with State Farm, notwithstanding whether the evidence appeared to support a meritorious claim." *Id. See also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §98 (2000):

> A lawyer communicating on behalf of a client with a nonclient may not:
>
> (1) knowingly make a false statement of material fact or law to the nonclient;
>
> (2) make other statements prohibited by law; or
>
> (3) fail to make a disclosure of information required by law.

While it may be true that "agents for a corporation acting in the scope of their duties cannot conspire with the corporation…"[5], the law does not prevent a civil conspiracy claim against one acting in violation of duties owed, acting outside the scope of their duties or for their own interests as has been alleged here. "If two people conspire to commit fraud, for example, but the actual fraudulent conduct is carried out by only one of them, the injured plaintiff should be able to sue both of

---

[5] *McMillan v. Oconee Mem'l Hosp., Inc.*, 367 S.C. 559, 564, 626 S.E.2d 884, 887 (2006), *overruled by Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 861 S.E.2d 774 (2021).

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

them." *Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 579, 861 S.E.2d 774, 783 (2021), *reh'g denied* (Aug. 18, 2021) (Few, J. Concur).

In breach of these and other duties owed to Plaintiffs and others, GWB substantially assisted State Farm in the litigation, in part, by negligently, recklessly and/or knowingly using and continuing to use bogus documents against Plaintiffs and others without adequately or reasonably investigating the validity and/or propriety of those documents. Compl. ¶ 69 and Pendarvis Aff.

### 6.3.2. Overt Acts Plead and Incorporated in Civil Conspiracy

Rule 8 allows a short and plain statement of the facts showing that the pleader is entitled to relief. Rule 1 requires pleadings be construed to secure the just, speedy and inexpensive determination of every action. Defendants' overt acts are plead. These include:

- Creating, filing and pursuing litigation using bogus documents for improper purposes including to try to make the Plaintiffs and others abandon claims made for coverage available under the actual State Farm policy, to improperly deny coverage, and to avoid paying legitimate claims. Compl. ¶ 72;

- Working together creating and filing false documents in a coordinated effort to deny Plaintiffs and others coverage; Compl. ¶ 1;

- Attaching false declarations page to the Complaint; Compl. ¶ 77;

- Claiming false declarations page "remained in effect"; Compl. ¶ 78;

- Redacting declarations page to hide information. Compl. ¶ 79; and

- Asserting "State Farm has investigated this matter and believes, based upon the Policy exclusion referenced herein and applicable South Carolina law, it has no duty to defend or indemnify Father or Son [Melvin O. Lamb, Jr. and Melvin O. Lamb, III] from any claim arising out of the accident described herein, and seeks a declaration from this Court concerning the same." (Emphasis added). Compl. ¶ 75.

Plaintiffs plead overt acts in furtherance of the conspiracy.

### 6.4.   SCUTPA Applies to Automobile Insurers Like State Farm

This Court must presume the General Assembly knew what it meant and intended when it specifically stated that the South Carolina Unfair and Deceptive Trade Practices Act (SCUTPA) applies to automobile insurance matters. S.C. Code Ann. § 38-77-341 (1) specifically states SCUTPA applies to insurance companies.

> **It is an unfair trade practice as defined in Section 39-5-20** [SCUTPA] to:
>
> (1) knowingly and wilfully make or cause to be made any *false statement* or *representation of a material fact* for use in an application *for payment* or *for use in determining the right to payment under this chapter*;

S.C. Code Ann. § 38-77-341 (1) (emphasis added).

Despite the clear language that the SCUTPA applies in automobile insurance matters, State Farm claims SCUTPA does not apply to it as an automobile insurance company. This is incorrect.

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

State Farm, it is alleged, knowingly and willfully made or caused to be made false statements or representations of material fact for use in determining Plaintiffs' right to payment of insurance proceeds. Compl. ¶ 156.

Further, despite State Farm knowing it was unlawful to use a form until it had been filed with and approved by the Director of the Department of Insurance, it chose to use and assert that the unapproved form was a basis to deny coverage to Plaintiffs and others. Compl. ¶¶ 58-61.

The application, powers and remedies of SCUPTA "shall be cumulative and supplementary to all powers and remedies otherwise provided by law." S.C. Code Ann. § 39-5-160. It applies to trade and commerce. S.C. Code Ann. § 39-5-10 (b).

There are few specific limited exceptions of the applicability of SCUPTA. One such exemption is stated in S.C. Code Ann. § 39-5-40 which addresses very limited portions of the insurance code to which it does not apply. Those limited portions are stated in subsection (c).

> (c) This article does not supersede or apply to unfair trade practices covered and regulated under Title 38, **Chapter 57, Sections 38-57-10 through 38-55-320**.

Those are limited only to S.C. Code Ann. 38-57. However, the section related to S.C. Code Ann. § 38-77-341 is not included in this exclusion.

Regulated industries are not automatically exempt from the application of SCUTPA. If there is a regulation which permits certain acts, those will not be a

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

violation of SCUTPA. SCUTPA expressly provides it is inapplicable to "[a]ctions or transactions permitted under laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." S.C. Code § 39–5–40(a) (1985). "This exception exempts an entity from liability where its actions are lawful or where it does something required by law, or does something that would otherwise be a violation of the Act, but which is allowed under other statutes or regulations." *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 196–97 (2015).

### 6.4.1.    Defendants Have Burden of Proving Exemption

"For the purpose of this section, the burden of proving exemption from the provisions of this article shall be upon the person claiming the exemption." S.C. Code Ann. § 39-5-40.  State Farm cannot meet its burden showing exemption. There is a district court decision[6] that does not address the application of S.C. Code Ann. § 38-77-341 (1) to automobile insurers like State Farm. Thus, it fails to meet its burden of proving exemption.

### 6.5.    Right to Amend

To the extent needed Plaintiffs request the right to amend the Complaint should the Court determine there are any parts that are inadequate.

---

[6] *Trustees of Grace Reformed Episcopal Church v. Charleston Ins. Co.*, 868 F. Supp. 128, 130 (D.S.C. 1994).

7. **CONCLUSION**

Plaintiffs' 36-page Complaint contains 161 separate paragraphs and incorporates the affidavit of a legal expert stating duties were owed by the law firm and were breached. Should the Court not remand the matter, the motions to dismiss should be denied. To the extent it is necessary to file an amended complaint to address the purported pleading deficiencies, Plaintiffs request this right.

Respectfully submitted,

**KAHN LAW FIRM, LLP**
s/ Justin S. Kahn [SC No. 65100]
Wes B. Allison [SC No. 100533
WAllison@KahnLawFirm.com
PO Box 31397
Charleston, SC 29417-1397
*p 843.577.2128 | f 843.577.3538*
*jskahn@kahnlawfirm.com*

Sean K. Claggett (Pro Hac Vice)
Claggett & Sykes Law Firm
4101 Meadows Lane, Suite 100
Las Vegas NV 89107
(702) 213-2566
**ATTORNEYS FOR PLAINTIFFS**

ELECTRONICALLY FILED - 2024 Jul 11 7:21 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA
COUNTY OF CHARLESTON

COURT OF COMMON PLEAS
CASE NO. 23-CP-10-1832

ROBERT C. WORKMAN, INDIVIDUALLY
AND AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF JAMES K. WORKMAN,
KELLY WORKMAN TICK AND MATTHEW
T. WORKMAN,

        PLAINTIFFS,

V.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY AND
GALLIVAN, WHITE & BOYD, P.A.,

        DEFENDANTS.

PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO DISMISS

## TABLE OF CONTENTS

1. INTRODUCTION ...................................................................2

2. CONCISE FACTUAL ALLEGATIONS ..............................................3

3. ARGUMENT .......................................................................8

   3.1. GWB Not Acting Solely on Its Own Behalf and Used and Modified for Use False Documents; Thus, No Immunity ...................................9

   3.2. Facts Connect GWB to Modification of False Document .................12

   3.3. GWB Not Immune For Stating False or Improper Reasons For Redacting Document ........................................................13

   3.4. Aiding and Abetting Abuse of Process Properly Plead ....................14

   3.5. Abuse of Process - Creation and Use of False Documents To Litigate ...................................................................................14

      3.5.1. Abuse of Process Elements.........................................15

      3.5.2. Facts Supporting Ulterior Purpose and Willful Acts Plead .......16

      3.5.3. Pursuit of Primary Objective Other than Claimed in Lawsuit...18

      3.5.4. Ulterior Motive Actionable Because Pursued Course Using Forged Documents ..................................................19

3.6.    Negligent Misrepresentation Properly Plead ......................................20

3.7.    Reliance Not Needed — Fraud Per Se ...............................................21

3.8.    GWB Was Negligent and Breached Various Duties Owed. ..............22

3.9.    Duty To Investigate Before Filing .....................................................24

3.10.   Continuing Duty to Correct Prior Misstatements Breached .............28

3.11.   Civil Conspiracy ................................................................................29

    3.11.1.    Conspiracy Exists As State Farm Did Not Conspire With Itself But Rather With Law Firm ...............................................29

    3.11.2.    Overt Acts Plead and Incorporated in Civil Conspiracy ....31

3.12.   Standing – All Children Are Beneficiaries and Have Standing .........32

    3.12.1.    Personal Representative Has Standing ...............................33

3.13.   Right to Amend ..................................................................................34

**4.   CONCLUSION ...........................................................................................34**

## 1.   INTRODUCTION

The Estate of James K. Workman and his heirs, Robert C. Workman, Kelly Workman Tick, and Matthew T. Workman are suing State Farm Mutual Automobile Insurance Company (State Farm) and Gallivan White & Boyd, P.A. (GWB).[1] The well-pleaded factual allegations are that the Defendants worked together using forged and false insurance documents created by State Farm to deny insurance coverage to Plaintiffs and others after James K. Workman was killed in a collision caused by a State Farm insured.

---

[1] This memo contains corrections to the one sent to the Court and parties Wed. July 3, 2024.

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 2.   CONCISE FACTUAL ALLEGATIONS

After a deadly multicar collision, State Farm created a declarations page to exclude the at fault driver from coverage. Then, it collaborated with its lawyers to use the forged record and an unapproved insurance form in court proceedings against those injured and its own insureds. The Estate of James K. Workman and his heirs, Robert C. Workman, Kelly Workman Tick, and Matthew T. Workman are suing State Farm Mutual Automobile Insurance Company (State Farm) and Gallivan White & Boyd, P.A. (GWB) for their misconduct. Plaintiffs allege many improprieties about the creation and use of the bogus documents and conduct of GWB before and after filing the lawsuit to obscure the truth and force them to litigate.

Plaintiffs properly allege that GWB wrongfully asserted and continued to assert through litigation false facts, including that a State Farm policy declarations page purporting to exclude the driver who killed Mr. Workman was valid, when in fact it was created after the collision. Exhibit A to the DJ Complaint in 2:21-cv-02623-MBS. Plaintiffs further allege GWB intentionally redacted information on the invalid declarations page to obscure the truth and to prevent the fraud from being discovered.

As alleged, that document contains language that creates questions that would cause a reasonable attorney to investigate further before filing the lawsuit

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

and representing it was the policy existing at the time of the collision. The collision was June 12, 2021. The declarations page purporting to exclude the at-fault driver was created over a month later, July 14, 2021. Specific information concerning "pieces" of this document are referenced throughout the Complaint. *See* e.g. Compl. pp. 12, 17.

In general, as to GWB, Plaintiffs allege many failures by GWB's choice to use this document and move forward without first reasonably and adequately investigating it. Compl., ¶¶ 68, 137, 146 and Ex. A, Affidavit of Pendarvis.

Examples of questions raised on the face of the forged declarations page include:

- Why does it add an excluded driver that was not previously excluded?

- Why does it state it was "Prepared JUL 14 2021" which is more than a month after the collision?

- Why does it have a different policy number than the policy number provided to Plaintiffs before litigation?

- Why does the policy period happen to begin two days before the collision and extend out almost six months, when in fact the policy was cancelled on June 13, 2021?

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

For the ease of seeing the Declarations Page attached as Ex. A to the

Complaint in context, it is shown below with added call outs.



GWB is not immune for its conduct. To the extent needed to support denying GWB's motion, additional and specific factual alleged wrongful conduct of GWB is below:

- Falsely stating that "State Farm has investigated this matter and believes, based upon the Policy exclusion referenced herein and applicable South Carolina law, it has no duty to defend or indemnify…" when there was no evidence that was true; Compl., ¶¶ 75-76;

- Attaching a false declarations page and unapproved form claiming they were part of the State Farm Policy *when it knew or should have known* that was misleading or false; Compl., ¶ 77;

- Attaching a copy of the false declarations page containing an endorsement purportedly excluding son from coverage and *negligently and/or falsely stating* the endorsement "remained in effect" for the Policy at issue. Compl., ¶ 78;

- Intentionally hiding the facts and information concerning the false policy and misconduct by redacting parts of the declarations page attached to the Complaint as Exhibit A. Compl., ¶ 79; (overt act)

- Intentionally stating "premium information and father's address have been redacted" when that was not a proper purpose but rather an

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

improper purpose when the real purpose was not to redact that information but rather obscure and hide facts and amounts on the forged document different than those on the actual policy. Compl., 80-82; (overt act)

- Failing to make a reasonable investigation and determine that the documents used by State Farm were forged or not proper, when it knew or should have known the documents State Farm used to support its claim were improperly manufactured; Compl., ¶ 115;

- Wrongful conduct causing Plaintiffs to obtain counsel to defend them in the lawsuit; Compl., ¶ 101;

- Wrongful conduct causing Plaintiffs to address issues concerning their own UM coverage; Compl., ¶ 102;

- Aiding and abetting in and participating in the abuse of process by failing to make a reasonable investigation and determine the documents used by State Farm were forged or not proper, using the process for an improper purpose to declare there was no coverage using false documents, perpetuating the litigation and failing to take affirmative steps to disassociate itself from the lawsuit, amend the Complaint or alert Plaintiffs, the Court or others about the wrongful conduct of State Farm; Compl. ¶ 115;

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

- Negligently and/or intentionally made misrepresentations to the Plaintiffs, including that the bogus declarations page was real and that the form complied with South Carolina law; Compl. ¶ 133; (overt act)

- Defendants affirmatively failed to disclose material statements and/or truthful facts even though possessing expertise or special knowledge that would ordinarily make it reasonable for another to rely on such statements; Compl. ¶ 134;

- Failing to investigate adequately and properly, failing to take reasonable remedial measures, using fraudulent documents for means that have no legitimate or substantial purpose creating delay, expense or burdens on Plaintiffs and others, etc. Compl. ¶ 146;

- Reasons set forth in the Affidavit of Pendarvis; Compl., Ex. A.

Many of the above facts state overt and improper acts by both Defendants which support denying the motion to dismiss.

## 3.    ARGUMENT

Plaintiffs sufficiently plead all causes of action against GWB. Plaintiffs allege and show facts that GWB owed duties to Plaintiffs which were breached as set forth in the various causes of action. GWB aided and abetted the abuse of process by knowingly using and/or modifying false documents for an improper purpose in litigation. GWB negligently misrepresented the facts and documents

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

related to the lawsuit and Plaintiffs relied upon those to obtain counsel, deal with their UM/UIM carrier and incurred expense and costs related to defending the bogus lawsuit. As set forth in the Complaint, GWB owed duties to Plaintiffs which were breached and resulted in harm. GWB engaged in overt acts in furtherance of the conspiracy with State Farm by using and redacting documents and affirmatively claiming they were true when they were not.

Plaintiffs have standing to pursue these claims as explained below.

GWB's motion to dismiss should be denied.

### 3.1.    GWB Not Acting Solely on Its Own Behalf and Used and Modified for Use False Documents; Thus, No Immunity

Exceptions exist to attorney immunity where an attorney has committed fraud or a malicious or tortious act. As has been alleged, GWB owed various duties to Plaintiffs. Compl. ¶¶ 65-71. GWB "filed the lawsuit using bogus documents." Compl. ¶ 73. It participated in the creation or perpetuation of a false document by redacting information for an improper purpose, to prevent "Defendants' deception being exposed." Compl., ¶ 82. Plaintiffs allege GWB made false statements, in reckless disregard for the truth or otherwise were otherwise negligent. Compl. ¶¶ 76.  Plaintiffs alleged an ulterior purpose, improperly using the process to approve false and forged documents and doing willful and improper conduct. Plaintiffs plead GWB redacted information from an exhibit "to improperly obscure and hide facts and amounts on the forged

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

document that were different than those existing on the actual policy from Plaintiffs, the Court and others." Compl. ¶¶ 80 and 81. The information was redacted for "improper purposes" to avoid Defendants' deception from being exposed. Compl. ¶ 82. Plaintiffs have pleaded GWB knew about the falsity of the documents as well as participated and used them knowingly. *See* e.g. Compl. ¶ 115.

These allegations of manipulating and using false documents are such that "an attorney may be held liable where he acts in bad faith or for his own personal motivations." *Nautilus Ins. Co. v. Murdaugh*, No. CV 2:22-1307-RMG, 2022 WL 3648458, at *2 (D.S.C. Aug. 23, 2022). An attorney can be liable when committing fraud or malfeasance or tortious acts. "A number of jurisdictions recognize that an attorney may be held liable where he acts in bad faith or for his own personal motivations. *See generally Annotation* 97 ALR 3rd 688 (attorney's liability for abuse of process); *Annotation* 46 ALR 4th 249 (attorney's liability for malicious prosecution). *See also* RESTATEMENT (SECOND) OF TORTS § 674, comment d (attorney who acts without probable cause for an improper purpose is subject to same liability for the wrongful use of civil proceedings as any other person). Moreover, several courts have held that an attorney may be held liable arising out of a conspiracy with his client." *Stiles v. Onorato*, 318 S.C. 297, 299, 457 S.E.2d 601, 602 (1995).

10

*Stiles* cites with approval various cases holding that an attorney may be liable to a third party.

> *Wolfrich Corp. v. U.S. Automobile Assn.,* 149 Cal.App.3d 1206, 197 Cal.Rptr. 446 (1983) (attorneys may be liable for participation in tortious acts with their clients, and such liability may rest on a conspiracy); *Doctors' Co. v. Superior Court,* 49 Cal.3d 39, 260 Cal.Rptr. 183, 775 P.2d 508 (1989); *Fraidin v. Weitzman,* 93 Md.App. 168, 611 A.2d 1046 (1992) (attorney liable for conspiracy if actively involved in wrongful conduct). Additionally, attorneys have been held liable for fraud and conversion in conjunction with their representation of clients. *See, e.g., L & H Airco, Inc. v. Rapistan Corp.,* 446 N.W.2d 372 (Minn.1989) (attorney who makes affirmative misrepresentations to an adversary or conspires with his or her client may be held liable for fraud); *Pew v. First National Bank,* 827 F.2d 1488 (11th Cir.1987); *Bongard v. Winter,* 516 So.2d 27 (Fla.App.1987); *Guillebeau v. Jenkins,* 182 Ga.App. 225, 355 S.E.2d 453 (1987) (implying that an attorney may be sued by an adversary for fraud); *LaBarre v. Gold,* 520 So.2d 1327 (Miss.1987) (attorney liable for conversion for improperly paying real estate proceeds only to his client).

*Stiles v. Onorato*, 318 S.C. 297, 299–300, 457 S.E.2d 601, 602 (1995)

It was error for the trial court to dismiss the complaint on the basis that an attorney is absolutely immune under any and all circumstances. *Id*.

Further, a lawyer is subject to liability to a nonclient when a nonlawyer would be in similar circumstances. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 58 (2000). GWB's reference to legal malpractice under

11

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §48 and 50 does not apply here. A nonlawyer is subject to liability for conduct stated throughout the Complaint.

The allegations pleaded show that GWB is not immune from suit because it was either acting in bad faith or not acting solely on behalf of its client at all relevant times. Defendants motion should be denied as the facts alleged and inferences reasonably deducible therefrom would entitle the plaintiff to any relief on any theory of the case. *Stiles v. Onorato*, 318 S.C. 297, 300, 457 S.E.2d 601, 602–03 (1995).

### 3.2.    Facts Connect GWB to Modification of False Document

To escape liability, GWB claims Plaintiffs do not connect GWB to the "creation" of the allegedly false documents. While it has not been alleged that GWB created the false documents, it has been alleged that GWB used them knowingly and made modifications by making redactions to hide the falsity of the document. Compl., ¶¶ 43, 79-82.  As alleged these acts of redacting information were intentional and improper to hide amounts different than the actual policy premiums shown on the real declarations page that existed at the time of the collision. As alleged, these redactions were done to prevent Defendants' deception about the fake policy from being exposed. Compl., ¶ 82.

The facts, as alleged, are sufficient to support all claims against GWB.

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 3.3.  GWB Not Immune For Stating False or Improper Reasons For Redacting Document

It has been alleged GWB stated improper reasons for redacting the information to prevent Defendants' deception from being exposed. Compl., ¶¶ 43, 79-82. GWB stated a false reason for the redaction, to redact the premium information and the father's home address. Compl. ¶¶ 43, 79-82. It does not appear that insurance premium information or an address of a party qualify as matters properly to be redacted. SCRCP, Rule 41.2 of the South Carolina Rules of Procedure. GWB "worked together" with State Farm "in a coordinated effort to deny Plaintiffs and others from the benefit of insurance coverage." Compl. ¶1.

These factual allegations, that GWB improperly redacted information and stated a false reason for the redaction are sufficient to deny the motion to dismiss. Further, a jury can conclude that the reasons GWB redacted the information was for the improper purpose of hiding the false information as well as for its own personal motivation, to please its client and keep its client's business.

A lawyer's motive is assessed separately from that of the client. However, the client's motives, if known to a lawyer, may constitute evidence bearing on the lawyer's motives. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 57 (2000). It has been plead that GWB knew of State

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Farm's improper or illegal conduct and nonetheless acted by filing and continuing to pursue the litigation.

These allegations support misconduct of GWB which furthered their own personal interests that would fall outside the purview of attorney immunity under South Carolina law. *Nautilus Ins. Co. v. Murdaugh*, No. CV 2:22-1307-RMG, 2022 WL 3648458, at *2 (D.S.C. Aug. 23, 2022).

### 3.4.    Aiding and Abetting Abuse of Process Properly Plead

Plaintiffs have properly plead abuse of process and GWB's abetting of it. Succinctly, as has been plead and argued herein, GWB aided the improper use of the litigation by attempting to have a determination based on false and/or forged documents and did so with willful acts. For example, it has been alleged that GWB substantially assisted State Farm in the litigation, in part, by "negligently, recklessly and/or knowingly using and continuing to use bogus documents against Plaintiffs and others without adequately or reasonably investigating the validity and/or propriety of those documents." Compl. ¶ 69.

### 3.5.    Abuse of Process - Creation and Use of False Documents To Litigate

Defendants engaged in improper and willful acts not proper in the regular conduct of process and litigation. It had an ulterior motive other than to use the process for which it was intended – use the process to deny coverage by creating and using false documents and subjecting Plaintiffs to litigation using

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

those materials. No case is cited by Defendants that creating and using false papers to litigate and deprive coverage is a proper use of the process. Instead, they merely argues disingenuously that no abuse of process claim exists because a declaratory judgment action is a proper kind of case to file. Its arguments should be disregarded, and its motion denied.

### 3.5.1.    Abuse of Process Elements

"The essential elements of abuse of process are (1) an ulterior purpose, and (2) a willful act in the use of the process that is not proper in the regular conduct of the proceeding." *Pallares v. Seinar*, 407 S.C. 359, 370, 756 S.E.2d 128, 133 (2014). "The tort of abuse of process is intended to compensate a party for harm resulting from another party's **misuse** of the legal system." *Id.* (internal citations omitted and emphasis added). "Process," as used in this context, has been interpreted broadly to include the entire range of procedures incident to the litigation process. *Id.* When "[o]ne who uses a legal process, whether criminal or civil, against another *primarily* to accomplish a purpose for which it is not designed, is subject to liability for harm caused by the abuse of process." *Pallares v. Seinar*, 407 S.C. 359, 371, 756 S.E.2d 128, 133 (2014). The tort centers on events *occurring outside the process*; the improper purpose *usually takes the form* of coercion to obtain a collateral advantage, *not properly involved in the proceeding itself*, such as the surrender of property or the

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

payment of money, by the use of the process as a threat or club. *Id*. at 134. *See also* RESTATEMENT (SECOND) OF TORTS § 682 (1977) cmt. b. The proper purpose of the process is not designed to use false documents to try to declare rights as occurred here.

### 3.5.2.  Facts Supporting Ulterior Purpose and Willful Acts Plead

State Farm's primary objective was to use false and fraudulent documents and have a Court bless its false documents and illegal form. Creating and using false documents to use as part of the process are not proper in the conduct of litigation nor aimed at a legitimate use of the process. Compl. ¶ 112. State Farm used the process "against another primarily to accomplish a purpose for which it is not designed." 1 AM. JUR. 2d Abuse of Process § 1.

Plaintiffs properly plead the elements and factual allegations to support an abuse of process cause of action. The ulterior purpose was to create and use false and forged documents in a legal proceeding and in discovery with their counsel. *See e.g*. Compl. ¶¶ 13 – 16. This conduct was willful. Using false documents specifically created for litigation is not proper in the regular conduct of a proceeding. Defendants cite no authority that holds such an absurd position is the law or is lawful.

Factual allegations are plead to support this cause of action.

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

- Creating and using a fake insurance declarations page for the purpose of using it in legal proceedings;

- Trying to pass off the forged declarations page as genuine and valid;

- Using bogus documents in litigation;

- Falsely asserting documents were part of actual insurance policy;

- Making false claims that a form attached to the Complaint complied with the law despite lack of approval by the Department of Insurance; and

- Other improper motives and purposes.

*See*, e.g. Compl. ¶¶ 49, 57, 64, 110-112, 146.

Combined with the other facts plead throughout the Complaint, Plaintiffs have sufficiently plead a cause of action and facts supporting abuse of process and that GWB aided and abetted in the abuse of process. *See e.g.* Complaint ¶ 115.

> GWB aided and abetted in and participated in the conduct described, including abuse of process in one or more ways, including:
>
> i) Participating in drafting the Complaint;
>
> ii) Filing the Complaint;
>
> iii) Failing to make a reasonable investigation and determine that the documents used by State Farm7 were forged or not proper, when it knew or should have known the documents STATE FARM used to support its claim were improperly manufactured;

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

iv) Perpetuating the litigation, including requesting and obtaining defaults against parties who did not file Answers to the declaratory judgment suit;

and

v) Continued to represent State Farm while failing to take affirmative steps to disassociate from the lawsuit, amend the Complaint or alert the Court, the Plaintiffs and others about the false documents, illegal actions and conduct of State Farm.

Thus, Defendants' motion should be denied.

### 3.5.3.    Pursuit of Primary Objective Other than Claimed in Lawsuit

Although a declaratory judgment action may be a valid cause of action, when a party files and pursues such a lawsuit using forged documents to obtain a result not possible without such documents, an abuse of process occurs. Using false documents in court is a coercive tactic that aims to manipulate and unfairly influence the legal process. However, State Farm did not merely file a declaratory judgment action. It created false documents to have a court determine there was no coverage and that its unapproved form was valid. Using false documents exerts coercive and improper pressure on the opposing party, compelling them to accept false information or to concede their position. Not only does using false documents damage the credibility of the legal system, it also puts the innocent party at a significant disadvantage. Unfair judgments,

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

reputation damage, and a general sense of distrust can arise from this unethical practice, eroding the integrity of the entire legal system.

### 3.5.4.  Ulterior Motive Actionable Because Pursued Course Using Forged Documents

State Farm created the false documents outside of the process to use in the lawsuit. "The tort centers on events occurring outside the process; the improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself…by the use of the process as a threat or club." *Pallares v. Seinar*, 407 S.C. 359, 371, 756 S.E.2d 128, 134 (2014).

Ulterior motives for using false documents in court proceedings include gaining an unfair advantage and improperly manipulating the case's outcome in favor of the party presenting these documents. Defendants brought the lawsuit for ulterior purposes, including coercing Plaintiffs into using their own coverage rather than for the sole purpose for which it was intended, to have the Court render a decision based on real and valid documents. *See e.g*. Compl. ¶¶ 46-49, 99 (use and rely on false documents to make decisions about available coverage, whether to litigate the matter, to provide to its attorney to use in litigation.)

Thus, Defendants' motion should be denied.

### 3.6.    Negligent Misrepresentation Properly Plead

Plaintiffs have properly plead GWB's negligent misrepresentation including reliance. Succinctly, as has been plead and argued herein, GWB had a pecuniary interest in satisfying and keeping its client State Farm. As discussed herein, GWB had duties to properly investigate and otherwise act in relation to Plaintiffs as nonclients. It has been sufficiently plead that GWB breached these duties and as a result, Plaintiffs were harmed.

To the extent GWB claims lack of reliance, that is a defense, and not to be considered for this motion. Additionally, one should not be given the opportunity to free himself from an allegation of fraud by claiming non-reliance.[2] Such a finding "would leave swindlers free to extinguish their victims' remedies …." *Slack v. James*, 364 S.C. 609, 619, 614 S.E.2d 636, 641 (2005).

One who commits fraud is not free to immunize itself by claiming as a defense that the fraud was subsequently discovered so there is no wrong. By way of analogy, long ago, the United States Supreme Court held "concealing a fraud, or by committing a fraud in a manner that it concealed itself until such

---

[2] "Courts around the country have reached similar conclusions on similar facts and have allowed claims of pre-contract fraudulent representations of potential income to survive integration clause challenges." *Weaver v. Mega Life & Health Ins. Co.*, No. 1:06CV108, 2007 WL 9734422, at *5 (N.D. W. Va. Mar. 19, 2007).

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

time as the party committing the fraud could plead a defense to protect itself is to make the law which was designed to prevent fraud the means by which it is made successful and secure." *Bailey v. Glover*, 88 U.S. 342, 349, 22 L. Ed. 636 (1874). In sum, it is not proper for one to claim lack of reasonable reliance as a bar when one creates and uses false documents for all to rely upon as being true. It is sufficient at this stage of the proceedings for Plaintiffs to plead reasonable reliance, not prove it.

Last, "[t]he general rule is that questions concerning reliance and its reasonableness are factual questions for the jury." *Unlimited Servs., Inc. v. Macklen Enterprises, Inc.*, 303 S.C. 384, 387, 401 S.E.2d 153, 155 (1991); *Slack v. James*, 364 S.C. 609, 615, 614 S.E.2d 636, 639 (2005). As explained, Plaintiffs plead facts supporting reliance on the false statements made. It is for a jury to decide, not by way of Defendants' motions.

### 3.7.   Reliance Not Needed — Fraud Per Se

Separately, reliance is not needed under South Carolina law related to one who makes false statements or misrepresentations in connection with an insurance matter. It is fraud *per se* to engage in the conduct of making misrepresentations or false statements to deny payment to Plaintiffs. This is fraud under the Omnibus Insurance Fraud and Reporting Immunity Act which

defines "False statement or misrepresentation." S.C. Code Ann. § 38-55-530 (D).

> "False statement or misrepresentation" means a statement or representation made by a person that is false, material, made with the person's knowledge of the falsity of the statement and made with the intent of obtaining … or attempting to obtain … an undeserved economic advantage or benefit or made with the intent to deny … any benefit or payment in connection with an insurance transaction, and ***such shall constitute fraud***."

Thus, there is no need to plead or show reliance to prove fraud as to Defendants. The statute applies Defendants made a representation with the intent to obtain an ***undeserved economic advantage*** (avoid paying insurance proceeds / not paying coverage due) with the intent to deny payment in ***connection with the insurance transaction*** (insurance claim / lawsuit). It was patently illegal for State Farm and its attorneys to assist in making false statements or misrepresentations in connection with insurance claims. S.C. Code Ann. § 38-55-540. Thus, Defendants motion should be denied.

### 3.8.   GWB Was Negligent and Breached Various Duties Owed.

The Complaint alleges sufficient facts and is properly supported by the affidavit and expert opinion identifying the duties and breaches by GWB.

It was plead that GWB acted in its own interests and had duties separate from State Farm. *See* e.g. Compl., ¶¶ 68-73, 137, 146, pp. 42-45 and Ex. A

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Pendarvis Affidavit citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §110(1), Rule 11 and other duties of candor to third-parties and the tribunal.

The lawyers with GWB had and breached "their independent duties to Plaintiffs to investigate and confirm the evidence they submitted in support of State Farm's claims in the Federal Lawsuit provided a non-frivolous basis to support the claims before filing the Federal Lawsuit. The lawyers at the Law Firm apparently either did not conduct a reasonable investigation to evaluate the evidence that State Farm provided to support the claim, or they may have proceeded with the Federal Lawsuit to maintain their relationship with State Farm, notwithstanding whether the evidence appeared to support a meritorious claim." *Id*. *See also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §98 (2000):

> A lawyer communicating on behalf of a client with a nonclient may not:
>
> (1) knowingly make a false statement of material fact or law to the nonclient;
>
> (2) make other statements prohibited by law; or
>
> (3) fail to make a disclosure of information required by law.

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

The law does not prevent a civil conspiracy or other claim against one acting in violation of duties owed, acting outside the scope of their duties or for their own interests as has been alleged here.

### 3.9.  Duty To Investigate Before Filing

In South Carolina, lawyers have a duty to make a reasonable inquiry to determine whether there is evidence supporting their factual allegations before filing a lawsuit. The Supreme Court held that a trial court correctly found that, had appellant [attorney] "conducted a reasonable investigation, he would have known there was no basis for the…" action filed. *Ex parte Gregory*, 663 S.E.2d 46, 51 (2008). Similarly, FED. R. CIV. P. 11(b), applicable in this matter as the case was filed in federal court, imposes an affirmative duty to make a reasonable inquiry to determine whether there is evidence supporting the factual allegations before filing a lawsuit.

> The filing of papers "without taking the necessary care in their preparation" is an "abuse of the judicial system" that is subject to Rule 11 sanction. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Rule 11 creates an "incentive to stop, think and investigate more carefully before serving and filing papers." *Id.* (quotation marks omitted). "Rule 11 'explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed.'" *AJ Energy LLC v. Woori Bank*, 829 Fed. App'x 533, 535 (2d Cir. 2020) (summary order) (quoting *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998)).

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*Mata v. Avianca, Inc.*, No. 22-CV-1461 (PKC), 2023 WL 4114965, at

*11 (S.D.N.Y. June 22, 2023).

Similarly, the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS

§ 110 (2000) states:

> **(1) A lawyer may not bring or defend a proceeding or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good-faith argument for an extension, modification, or reversal of existing law.**
>
> ---
>
> *Cmt. b. Rationale.* Frivolous advocacy inflicts distress, wastes time, and causes increased expense to the tribunal and adversaries and may achieve results for a client that are unjust. Nonetheless, disciplinary enforcement against frivolous litigation is rare. Most bar disciplinary agencies rely on the courts in which litigation occurs to deal with abuse. Tribunals usually sanction only extreme abuse. Administration and interpretation of prohibitions against frivolous litigation should be tempered by concern to avoid overenforcement.
>
> *Cmt. c. Procedural sanction against unfounded assertions in litigation.* Procedural rules modeled on Rule 11 of the Federal Rules of Civil Procedure impose affirmative obligations going beyond a requirement of minimally plausible position. In addition, courts have inherent power to impose sanctions against frivolous or otherwise abusive litigation tactics (see generally § 1, Comment *b*).
>
> Such procedural rules generally have four elements, although jurisdictions differ on particulars. First, a lawyer may file a pleading, motion, or other paper

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

> only after making an inquiry about facts and law that is reasonable in the circumstances. Second, the lawyer's conclusions as to the facts and law must meet an objective, minimal standard of supportability. Third, litigation measures may not be taken for an improper purpose, even in instances in which they are otherwise minimally supportable. Finally, remedies provided for violations may include sanctions such as fee shifting, which in appropriate cases may be imposed directly on an offending lawyer (see Comment g).

By analogy, although a legal malpractice case, in analyzing a breach of the standard of care, courts hold lawyers "to the standard of care which would be exercised by a reasonably prudent attorney." *Cosgrove*, 774 S.W.2d at 664. "The standard is an objective exercise of professional judgment, not the subjective belief that his acts are in good faith." *Id.* at 665. Put simply, courts must consider whether the allegedly negligent attorney made "a reasonable inquiry in the legal and factual basis of the claim at the time the suit was filed." *Matter of Champion Printing & Copying, L.L.C.*, No. 21-51234, 2023 WL 179851, at *3 (5th Cir. Jan. 13, 2023).

Here, Plaintiffs attached an affidavit and expert opinion identifying the duties and breaches by GWB. *See* e.g. Compl., ¶¶ 137, 146, Ex. A Affidavit Pendarvis. When combined with the factual allegations, Plaintiffs satisfy the plausibility requirement sufficient to deny the motions to dismiss.

It has been alleged that in violation of duties owed, GWB:

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

- advised or otherwise participated with State Farm in the use of the documents, litigation and proceedings when such acts were improper and/or unlawful. Compl., ¶¶ 65;

- without a reasonably adequate investigation into the law or facts drafted a Complaint using false documents seeking a determination there was no coverage or duty to defend. Compl., ¶ 66;

- without a reasonably adequate investigation into the law or facts used the bogus documents and filed a Complaint. Compl., ¶ 67;

- substantially assisted in the litigation by negligently, recklessly and/or knowingly using and continuing to use bogus documents against Plaintiffs and others without adequately or reasonably investigating the validity and/or propriety of those documents. Compl., ¶ 69; and

- claiming the form attached to the Complaint Complied with the law and that the endorsement attached existed before the collision; Compl., ¶ 70.

GWB owed a duty of care to investigate the facts and law and truthfully communicate information to the Plaintiffs and others. As the facts plead plausibly show, GWB breached its duties. The motion to dismiss should be denied.

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 3.10.  Continuing Duty to Correct Prior Misstatements Breached

The duty to correct prior misstatement continued throughout the litigation. It is alleged that GWB failed to take the steps required to affirmatively correct or amend false statements made. *See* e.g. Compl., ¶ 115. *See* e.g. *In re Rivers*, 409 S.C. 80, 92, 761 S.E.2d 234, 240–41 (2014) (Rule 3.3 (lawyer shall not make false statement of fact to tribunal); Rule 4.1 (in course of representing client, lawyer shall not make false statement of material fact to third person)). The federal rule also states this duty.

> An attorney's Compliance with Rule 11(b)(2) is not assessed solely at the moment that the paper is submitted. The 1993 amendments to Rule 11 added language that certifies an attorney's Rule 11 obligation continues when "later advocating" a legal contention first made in a written filing covered by the Rule. Thus, "a litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." Rule 11, advisory committee's note to 1993 amendment. The failure to correct a prior statement in a pending motion is the later advocacy of that statement and is subject to sanctions. *Galin v. Hamada*, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017) ("[A] court may impose sanctions on a party for refusing to withdraw an allegation or claim even after it is shown to be inaccurate.") (Furman, J.) (internal quotation marks, alterations, and citation omitted); *Bressler v. Liebman*, 1997 WL 466553, at *8 (S.D.N.Y. Aug. 14, 1997) (an attorney was potentially liable under Rule 11 when he "continued to press the

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

claims ... in conferences after information provided by opposing counsel and analysis by the court indicated the questionable merit of those claims.") (Preska, J.)

*Mata v. Avianca, Inc.*, No. 22-CV-1461 (PKC), 2023 WL 4114965, at *13 (S.D.N.Y. June 22, 2023).

Failing to correct statements and documents even after the fraud became apparent required Plaintiffs to continue to defend, file motions and resulted in damage. Compl., ¶¶ 101-103.

### 3.11.  Civil Conspiracy

"A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means." 15A C.J.S. Conspiracy § 1. This cause of action is plead properly.

### 3.11.1.  Conspiracy Exists As State Farm Did Not Conspire With Itself But Rather With Law Firm

To the extent Defendants argue an attorney and client cannot engage in a civil conspiracy because the relationship is one of attorney-client or agent-principal, this is incorrect. The assumption argued by State Farm is that the attorney agent is working solely for the interests of the principal and does not have separate duties. Here, it was plead that GWB acted in its own interests and had duties separate from State Farm. *See* e.g. Compl.  ¶¶ 68-73 and Pendarvis' Affidavit citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §110(1), Rule 11 and other duties of candor to third-parties and the tribunal.

29

Compl. including ¶¶ 42-45. The lawyers with GWB had and breached "their independent duties to Plaintiffs to investigate and confirm the evidence they submitted in support of State Farm's claims in the Federal Lawsuit provided a non-frivolous basis to support the claims before filing the Federal Lawsuit. The lawyers at the Law Firm apparently either did not conduct a reasonable investigation to evaluate the evidence that State Farm provided to support the claim, or they may have proceeded with the Federal Lawsuit to maintain their relationship with State Farm, notwithstanding whether the evidence appeared to support a meritorious claim." *Id*. *See also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §98 (2000):

> A lawyer communicating on behalf of a client with a nonclient may not:
>
> (1) knowingly make a false statement of material fact or law to the nonclient;
>
> (2) make other statements prohibited by law; or
>
> (3) fail to make a disclosure of information required by law.

While it may be true that "agents for a corporation acting in the scope of their duties cannot conspire with the corporation…"[3], the law does not prevent

---

[3] *McMillan v. Oconee Mem'l Hosp., Inc.*, 367 S.C. 559, 564, 626 S.E.2d 884, 887 (2006), *overruled by Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 861 S.E.2d 774 (2021).

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

a civil conspiracy claim against one acting in violation of duties owed, acting outside the scope of their duties or for their own interests as has been alleged here. "If two people conspire to commit fraud, for example, but the actual fraudulent conduct is carried out by only one of them, the injured plaintiff should be able to sue both of them." *Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 579, 861 S.E.2d 774, 783 (2021), *reh'g denied* (Aug. 18, 2021) (Few, J. Concur).

In breach of these and other duties owed to Plaintiffs and others, GWB substantially assisted State Farm in the litigation, in part, by negligently, recklessly and/or knowingly using and continuing to use bogus documents against Plaintiffs and others without adequately or reasonably investigating the validity and/or propriety of those documents. Compl. ¶ 69 and Pendarvis Aff.

### 3.11.2. Overt Acts Plead and Incorporated in Civil Conspiracy

Rule 8 allows a short and plain statement of the facts showing that the pleader is entitled to relief. Rule 1 requires pleadings be construed to secure the just, speedy and inexpensive determination of every action. Defendants' overt acts are plead. These include:

- Creating, filing and pursuing litigation using bogus documents for improper purposes including to try to make the Plaintiffs and others abandon claims made for coverage available under the actual State

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Farm policy, to improperly deny coverage, and to avoid paying legitimate claims. Compl. ¶ 72;

- Working together creating and filing false documents in a coordinated effort to deny Plaintiffs and others coverage; Compl. ¶ 1;

- Attaching false declarations page to the Complaint; Compl. ¶ 77;

- Claiming false declarations page "remained in effect"; Compl. ¶ 78;

- Redacting declarations page to hide information. Compl. ¶ 79; and

- Asserting "State Farm has investigated this matter and believes, based upon the Policy exclusion referenced herein and applicable South Carolina law, it has no duty to defend or indemnify Father or Son [Melvin O. Lamb, Jr. and Melvin O. Lamb, III] from any claim arising out of the accident described herein, and seeks a declaration from this Court concerning the same." (Emphasis added). Compl. ¶ 75.

Plaintiffs plead overt acts in furtherance of the conspiracy.

### 3.12.  Standing – All Children Are Beneficiaries and Have Standing
Plaintiffs have standing and should not be precluded from claims.

Defendants filed suit against the Estate attempting to deny liability and property coverage for the wrongful death and other claims brought by the Estate. The law states that only the personal representative may bring claims on behalf of the heirs. "Every such action shall be brought by or in the name of the executor or administrator of such person." S.C. Code Ann. § 15-51-20. Further, "[e]very such action shall be *for the benefit of the…children…*" S.C. Code Ann. § 15-51-

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

20. As the children are the beneficiaries of the Estate and the Estate was sued seeking to deprive benefits to the children who are the beneficiaries, they have standing. The fact that they were not named is irrelevant because they are the beneficiaries as matter of law to the policy proceeds. As there is a statute that provides actions are for the benefit of the children, they have standing to bring a claim against those who acted against their interests and sought to deprive them of the proceeds.

Defendants brought the lawsuit against the Estate as well as others to have the Court declare that the insurance policy did not provide benefits to the Estate. As Defendants tried to deprive coverage to the Estate, the beneficiaries of the Estate have standing.

### 3.12.1.  Personal Representative Has Standing

Mr. Workman's survival action survives to the personal representative. "Causes of action for and in respect to any and all injuries and trespasses to and upon real estate and any and all injuries to the person or to personal property shall survive both to and against the personal or real representative, as the case may be, of a deceased person and the legal representative of an insolvent person or a defunct or insolvent corporation, any law or rule to the contrary notwithstanding." S.C. Code Ann. § 15-5-90. Thus, Robert C. Workman

ELECTRONICALLY FILED - 2024 Jul 11 7:23 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

certainly has standing individually and as the personal representative of the estate.

### 3.13.  Right to Amend

To the extent needed Plaintiffs request the right to amend the Complaint should the Court determine there are any parts that are inadequate.

### 4.  CONCLUSION

Plaintiffs' 36-page Complaint contains 161 separate paragraphs and incorporates the affidavit of a legal expert stating duties were owed by the law firm and were breached. Should the Court not remand the matter, the motions to dismiss should be denied. To the extent it is necessary to file an amended Complaint to address the purported pleading deficiencies, Plaintiffs request this right.

Respectfully submitted,

**KAHN LAW FIRM, LLP**
s/ Justin S. Kahn [SC No. 65100]
Wes B. Allison [SC No. 100533
WAllison@KahnLawFirm.com
PO Box 31397
Charleston, SC 29417-1397
*p 843.577.2128 | f 843.577.3538*
*jskahn@kahnlawfirm.com*

Sean K. Claggett (Pro Hac Vice)
Claggett & Sykes Law Firm
4101 Meadows Lane, Suite 100
Las Vegas NV 89107
(702) 213-2566
**ATTORNEYS FOR PLAINTIFFS**

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA
COUNTY OF CHARLESTON

COURT OF COMMON PLEAS
CASE NO. 23-CP-10-1832

ROBERT C. WORKMAN, INDIVIDUALLY
AND AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF JAMES K. WORKMAN,
KELLY WORKMAN TICK AND MATTHEW T.
WORKMAN,

PLAINTIFFS,

V.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY AND
GALLIVAN, WHITE & BOYD, P.A.,

DEFENDANTS.

PLAINTIFFS' SUPPLEMENTAL
MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL DISCOVERY
FROM DEFENDANTS

## TABLE OF CONTENTS

1. Concise Summary of the Nature of the Case .......................................... 2

2. Concise Statement of the Facts ............................................................ 2
   2.1. Discovery Served on Defendants ................................................. 2
   2.2. Forged Declarations Page ........................................................... 3

3. Summary of Argument ......................................................................... 5

4. Concise Summary of the Nature of the Case ........................................ 6

5. Argument ............................................................................................ 8
   5.1. Criminal and Tortious Conduct Means No Protection ...................... 8
   5.2. No Attorney-Privilege Protection Applies ...................................... 9
   5.3. Work Product Protection Not Established ..................................... 10
   5.4. In another Case, State Farm Changes 1M to 25k ........................... 10

6. Discovery At Issue ............................................................................. 10
   6.1. Documents, witnesses and summary of facts known ...................... 10
        6.1.1. Failure to Identify Witnesses ............................................ 11
   6.2. State Farm Has Prepared Documents But Creates A Subset for
        Discovery and Withholds. ........................................................ 14
   6.3. Materials Related to Others Making Claims .................................. 16

6.4.     Tahoe Policy Documents and Audit Trail Changes Made By State Farm and Other Claims....................................................................17

6.5.     Who and How Forged Documents Created Discoverable ...............18

6.6.     Materials Reviewed by State Farm's Witnesses Who Signed Statements ........................................................................................19

6.7.     Materials Requesting the Creation of Certified Policy Records Should Be Produced ..................................................................................19

6.8.     Produce Employment Files and No Fraud Acknowledgement .........20

6.9.     Produce Training About Not Committing Fraud ..............................20

6.10.    Materials Reviewed by GWB Are Discoverable in this Case...........20

**7.    Conclusion.............................................................................................22**

This memorandum supplements the previously filed motion and memorandum in support of motions to compel the Defendants.[1]

## 1.     Concise Summary of the Nature of the Case

Following a deadly collision, an insurance company created a declarations page to exclude the at fault driver. Then, it collaborated with its lawyers to use that false document and an unapproved insurance form in court proceedings against those injured in the collision and its own insureds.

## 2.     Concise Statement of the Facts

### 2.1.     Discovery Served on Defendants

Discovery was served to obtain the documents and files of State Farm to shed light on its illegal and improper conduct outlined in the Complaint. The insurance company responded with boilerplate objections and inadequate responses. A motion to compel was filed. State Farm supplemented with more

---

[1] This memo contains corrections to the one sent to the Court and parties Wed. July 3, 2024.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

detailed inadequate responses and a privilege log. Exs. 1 and 2. A motion to compel was filed against GWB and it too supplemented with another privilege log. Exs. 3 and 4. Information and documents are sought from both Defendants.

### 2.2. Forged Declarations Page

The forged Declarations Page used by Defendants and attached to the Complaint is reproduced below. The call outs show changes made a *month after* the collision. The actual declarations page that existed at the time of the collision did not contain these changes. The false document contains:

- Excluded driver not on actual policy at the time of the collision;

- A different policy number than the one at the time of the collision;

- A different policy period;

- A preparation date *a month after* the collision;

- A statement that it replaced the actual policy; and

- Redactions made by GWB to obscure information that would show differences in premiums from the actual policy.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832



ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 3.    Summary of Argument

There is no protection for communications or documents in furtherance

of criminal, tortious or fraudulent conduct.

> Not every communication within the attorney and
> client relationship is privileged. The public policy
> protecting confidential communications must be
> balanced against the public interest in the proper
> administration of justice. *N. L. R. B. v. Harvey*, 349
> F.2d 900 (4th Cir. 1965); *Sepler v. State*, 191 So.2d
> 588 (Fla.App.1966). This is exemplified by the widely
> recognized rule that the privilege does not extend to
> communications in furtherance of criminal, tortious or
> fraudulent conduct. *United States v. United Shoe
> Machinery Corporation*, 89 F.Supp. 357
> (D.Mass.1950); 125 A.L.R. 508; 16 A.L.R.2d 1029.
>
> *State v. Doster*, 276 S.C. 647, 651, 284 S.E.2d 218,
> 220 (1981).

The Complaint alleges State Farm collaborated with its lawyers to create

and use false documents in a prior court proceeding. In discovery, given the

allegations made, when asked to produce their files, they cannot seek protection

by claiming work product or attorney-client privilege.

Also, State Farm previously referenced notes made in this matter and

described them as part of its normal business.[2] Now, it cannot change its

position and claim those notes are protected.

---

[2] File notes are made by State Farm Claim Specialists and Team Managers in ECS to log or
document information, events, and actions in the course of handling a particular claim,
including, by way of example, coverage and liability investigations, coverage and liability
determinations, and information, correspondence, documents, and records received. These file

During the prior litigation, State Farm told a Court what was in its file. Now, when asked to produce the file to verify the statements, it is improper to claim the materials are protected.[3] Last, State Farm cannot selectively produce parts of notes while simultaneously withholding others claiming protection.

Similarly, as to GWB, there is no support for the withholding of the materials. Thus, all documents withheld or partially redacted should be produced.

## 4. Concise Summary of the Nature of the Case

Among other illegal and improper misconduct, to exclude coverage State Farm intentionally created a forged declarations page *a month after* a collision. It then used that document in a lawsuit to falsely assert the policy was in place at the time of the collision and there was no coverage. State Farm created and used other bogus documents, including a "Certified Policy Record" falsely claiming policy 632 3189-B07-**40B** was in effect at the time of the collision. Ex. 6 Certified Policy Record.

On June 12, 2021, the insurance card presented to police at the scene showed State Farm Policy number 632 3189-B07-**40A** and an effective policy

---

notes made by Claim Specialists and Team Managers are recorded, maintained and kept in ECS in the ordinary course of State Farm's business of handling insurance claims at or near the time of the information, events, and actions they log or document. **Ex**. 5 Murdoch, Darren Declaration 2022.05.23

[3] *Id*.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

period of Feb. 07 to Aug 07, 2021. Images below are from the officer body cam.



Standard interrogatories and supplemental discovery were served to obtain information about people involved and the documents created, used and reviewed before and after the lawsuit it filed using the forged documents.

The pleadings filed by Defendants in the underlying action assert demonstrably false statements. Ex. 7 Federal Court Complaint. The truth of those assertions and the knowledge of their falsity is discoverable. For example, Defendants asserted as fact:

> State Farm **has investigated this matter and believes**, based upon **the Policy exclusion referenced** herein and applicable South Carolina law, it has no duty to defend or indemnify Father or Son ... ¶ 27

> On or about **February 26, 2020**, State Farm **issued** form 6023DC, a driver exclusion endorsement excluding Son from coverage under the Policy. **Pursuant to S.C. Code Ann. §38-77-340**, the exclusion was signed by Father…. **A copy of the endorsement**, which **remained in effect on**

7

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

> **subsequent policies** issued by State Farm including the **Policy at issue**, is included in **Exhibit A** and its contents are incorporated herein by reference. ¶ 19.
>
> At the time of the subject accident, **Son had been an excluded driver from the Policy for over a year**. ¶ 31.

Documents have been produced which generally consist of correspondence, filings made in court and discovery exchanged in the prior lawsuit. However, heavily redacted documents and boilerplate and unsupported objections have been made. Supplemental privilege logs were provided but they fail to comply with SCRCP, Rule 26(b)(5) and do not support protection. Further, both lack specifics for all responses like dates. Further, GWB even claims that communications with *opposing counsel* are protected and part of a common interest protection. **See e.g. Ex. 4** to GWB Memo Amended Priv. Log unnumbered pp. 13, 15, 16, 19, 61, 68, 69, 70. GWB asserts that opposing counsel Mark Mason, Warren Moise and Mitch Griffith who were defending parties sued by State Farm are protected.

**5.    Argument**

**5.1.    Criminal and Tortious Conduct Means No Protection**

Documents and communications sought are not protected. "[T]he widely recognized rule [is] that the privilege does not extend to communications in furtherance of criminal, tortious or fraudulent conduct." *State v. Doster*, 276 S.C. 647, 651, 284 S.E.2d 218, 220 (1981). The Complaint specifically alleges

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

criminal, tortious and fraudulent conduct. The crime of forgery is plead along with facts supporting it. Complaint ¶¶ 7, 13, 14, 41, 42, 76, 81, 91 (citing S.C. Code Ann. § 16-13-10), 111, 115, etc. It is specifically alleged the law firm worked with and aided and abetted State Farm in participating in improper conduct in various ways. ¶¶ 1, 115, 149-152. Thus, all materials should be produced without redactions.

### 5.2. No Attorney-Privilege Protection Applies

The party asserting the privilege must establish the confidential nature of the communication. *State v. Doster*, 276 S.C. 647, 653, 284 S.E.2d 218, 220 (1981). To establish an attorney-client privilege, the person asserting the privilege must show that the relationship between the parties was that of attorney and client and that the communications were confidential in nature for the purpose of obtaining legal advice. *Crawford v. Henderson*, 356 S.C. 389, 395, 589 S.E.2d 204, 207-08 (Ct. App. 2003). The essential elements giving rise to the privilege were stated by Wigmore to be: "(1) Where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *State v.*

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*Doster*, 276 S.C. 647, 651, 284 S.E.2d 218, 219-20 (1981). The privilege must be tailored to protect only confidences disclosed within the relationship. *Id*.

State Farm and GWB fail to support with admissible facts each of the elements needed to support the protections it generically claims. Further, such protections do not apply here.

### 5.3.  Work Product Protection Not Established

Nonetheless, when one can show a substantial need, the work product protection is set aside and production required. The law recognizes that even work product material is subject to disclosure if a substantial need is shown. Here, such a need exists as materials are needed to show the intent, knowledge and planning of the Defendants.

### 5.4.  In another Case, State Farm Changes 1M to 25k

Discovery into State Farm's notes, files and procedures is relevant and discoverable as it has previously asserted mistake when it changed a $1,000,000 policy into a $25,000 policy after a fatal crash. Ex. 8 New Mexico Article.

## 6.  Discovery At Issue

### 6.1.  Documents, witnesses and summary of facts known

Interrogatory **nos. 1 and 6** and **supplemental request no. 2**, relate to listing and producing documents, witnesses and summary of facts known to them. The responses are incomplete and heavily redacted.

GWB claims protection for documents reviewed by or referenced by a 30(b)(6) State Farm representative Shay Anderson in her deposition of Dec. 14, 2021. Documents reviewed or referred to by a witness in a deposition are not protected and should be produced. Further, in the context of this case, no protection applies.

### 6.1.1. Failure to Identify Witnesses

Examples of improper responses to identifying witnesses with knowledge include State Farm's listing of only 20 State Farm witnesses[4] when documents produced clearly show many more were involved in the cover up and falsification of documents. GWB fails to identify any State Farm witnesses yet seeks to protect communications with State Farm employees. For example Brian Boyle <brian.boyle.g6lg@ statefarm.com>; and Brittany Perez who were copied on emails were not identified as witnesses.

State Farm fails to identify witnesses like Steven Sikora who noted before filing the bogus lawsuit that the insured at fault driver "is a listed driver and **not excluded on the policy.**" He even advised to settle the claim, not to

---

[4] Lee Shivers, Darren Murdoch, Shay Anderson, Lana Willingham, Jessica Bass, Nancy Martin, Sheryl Schlaug, Pam Pride, Duane McNeese, Luis Giraldo, Sasha Kimmins, Melodie Cruz, Olivia Jones, Michael Tarango, Antonia Walter, Lamont McCall, Nikki Nunn, Karina Bevis, Jamie Russell, and Jamie Wenzl. Ex. 1 pp. 2-3.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

litigate it.



Ex. 9 SFMAIC_Workman_0134.

Another improperly and heavily redacted note about the same witness

State Farm fails to identify states "**We confirmed no excluded drivers on this**

**policy**…" Ex. 9.1 SFMAIC_Workman_0135

The same unidentified witness notes the illegal conduct. "Underwriting

added an excluded driver endorsement on this policy after we verified with

them there wasn't an excluded driver on this claim." Ex. 10

SFMAIC_Workman_0131-132. Steven Sikora and Monique James are not

identified even though they appear throughout State Farm documents, including

this one about this "complicated claim" that is also redacted.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832



Workman00005290

State Farm has not identified other witnesses, including Michael N. Young, Jeff Kresner, Tyran Turner who are copied on emails related to false certified policy records and yet State Farm redacts information from that email chain as well.



How can State Farm legitimately redact information from documents that relate to creating a "new certified policy" because "the one sent to the claim file

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

earlier did not include the executed driver's exclusion endorsement." Ex. 11 Workman000006Prod and 7.

*Quare*: Why would State Farm fail to identify people who document the driver was not excluded and redact their notes based on privilege?

State Farm's games should not be sanctified. It should identify all witnesses and provide the complete and unredacted materials immediately.

### 6.2.    State Farm Has Prepared Documents But Creates A Subset for Discovery and Withholds.

As to Standard Interrogatory request 1 to identify all prepared documents (and supplemental request no. 2 and 23 to produce said documents) – State Farm plays games. First, it states it has underwriting materials and an electronic claims file that has a "distinct meaning" and consists of what is retrieved from its ECS system. But, what it produces is not complete. Rather, what is partially produced is "generated for production outside the ECS environment…" Thus, State Farm has a universe of material that comprises the claims file for this matter, but it produces only a partial solar system. Its explanation is below.

> With respect to the term "Claim File" as used herein,
> State Farm does not maintain a physical file folder
> with respect to most claims, and it did not maintain a
> physical file folder with respect to Claim No. 40-
> 21B2-49D. Instead, information regarding a claim,
> including Claim No. 40-21B2-49D, is created, stored,
> managed, and accessed primarily in and through the
> Enterprise Claims System ("ECS"), a proprietary
> web-based system used by State Farm. The term

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

"Claim File," therefore, has a distinct meaning to State Farm and consists of what is retrieved from ECS and generated for production outside the ECS environment pursuant to CPG 4040-100, the Claims Procedures Guide that outlines the necessary steps to reproduce a complete copy of the Claim File through ECS in response to discovery. Relevant versions of CPG 4040-100 are Bates labeled WORKMAN00005491PROD through WORKMAN000005505PROD, designated confidential, and produced herewith pursuant to the February 5, 2024 Confidentiality Order.

As to the partial information produced, it withholds vague and unspecified "nonprivileged and non-work product protected **underwriting records** of State Farm" or "the nonprivileged and non- work product protected portions of State Farm's "Claim File" for Claim No. 40-21B2-49D." *See e.g.* Ex. 1 SF Response p. 11.

State Farm does not get to produce in discovery a subset of information and documents based on its own self-serving definitions and limit the production further. To the extent the materials were produced to GWB, it should have to produce them as well.

Rule 33(b)(2) and (6) specifically allows one to obtain a list of all documents in possession of the opposing party as well as a list of witnesses and a summary of their testimony sufficient to inform one of the important facts known or observed by the witness. The names of witnesses and their knowledge of the facts is required to be provided under the rules. Further, all the materials

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

should be produced. There is *no* rule authorizing withholding the materials requested. And, the materials are not confidential in any way. This is not a situation where the claims file in an active case is being sought.

### 6.3.    Materials Related to Others Making Claims

Supplemental discovery request no. 3 relates to identifying others making claims related to the June 12, 2021 collision and producing communications sent and received. These would include communications with other lawyers or injured claimants where State Farm was falsely communicating lack of coverage. This is relevant to intent, repetition and a pattern and practice of deception. State Farm makes boilerplate objections and states communications with other claimants or their counsel is not relevant to this lawsuit. It further improperly seeks to limit the production of materials before it filed its lawsuit. State Farm's generic assertion of unduly burdensome and unlimited in time does not make sense. The time is limited to this claim and the electronic system it has can produce this information unredacted and completely.

Repeatedly making misrepresentations to multiple people about the same forged documents before and after filing a lawsuit is discoverable and should be produced.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 6.4.    Tahoe Policy Documents and Audit Trail Changes Made By State Farm and Other Claims

Supplemental discovery requests nos. 4 and 18 relate to the bullet vehicle Tahoe and claims at issue, the policies and people involved in changing the documents along with all computer entries and an audit trail of changes made. State Farm makes boilerplate contentions like such a request is "over an unidentified period of time…" That is silly as the time is limited to the claims at issue for the collision on June 12, 2021 and the one car insured from Feb. 2020. State Farm asserts that a subset of redacted information it has produced which is "nonprivileged, non-work product protected" is sufficient.

State Farm's 30(b)(6) representative testified in the underlying case that there is an audit trail, it would show who made changes and it is easy to access.

**11 Q. Okay. How would one determine why this**
**12 Declarations Page that's attached to Exhibit 2 --**
**13 Defense Exhibit 2 -- how would one determine who**
**14 created it?**
**15 A. You would have to look in the audit trail of our --**
**16 of our system.**
        Ex. 12, Anderson Dep. p. 96

**3 Q. And then what does the Rumba System audit trail**
**4 show you?**
**5 A. It would show you the changes, the premium charges,**
**6 and the person that made the entry.**
        *Id*. at 100.

**20 Q. ... and all the things you've described, it's easy**
**21 to print off the audit trail?**
**22 A. You could, yes.**
        *Id*. at 101.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

The discovery properly requests State Farm documents related to the Tahoe and claims related to the collision of June 12, 2021.

As to attorney client privileged or work product, is State Farm really asserting some lawyer logged into its system and entered work product related to a particular policy issued? If so, State Farm has failed to identify who that attorney is or how it could possibly be work product. State Farm's merely asserts that it "does not maintain a physical file folder with respect to most policies. Instead, underwriting information and documents are generally created, stored, managed, and accessed electronically in multiple locations." The request does not relate to "most policies" but rather the specific one at issue that it forged to file a lawsuit.

All materials should be produced unredacted and/or access given to the computer system in read only to go through the electronic file.

### 6.5.   Who and How Forged Documents Created Discoverable

Supplemental discovery request no. 5 relates to identifying each person who participated in creating the bogus declarations page Defendants used in a lawsuit. This is at issue despite the feigned contention otherwise. The responses are relevant to the subject matter involved in the pending litigation. The various boilerplate objections are improper for the same reasons explained above. Further stating merely that the nonprivileged, non-work product protected

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

underwriting records are produced is insufficient. The failure to identify the people involved and instead blame "State Farm's underwriting system" is nonsensical. Does State Farm have some AI that controls the improper changing of documents?

All materials should be produced unredacted. There is no privilege or protection available for requesting who was involved in creating the false records and producing the documents showing their notes.

### 6.6.    Materials Reviewed by State Farm's Witnesses Who Signed Statements

Supplemental requests nos. 6-9 seek the production of documents created, used, or reviewed by various State Farm employees who gave written statements about the matter. All materials should be produced, not just limited to what took place before filing the declaratory judgment action. All materials should be produced unredacted.

### 6.7.    Materials Requesting the Creation of Certified Policy Records Should Be Produced

Supplemental request no. 17 seeks the production of certified policy records and communications about them. These documents falsely certify that the forged declarations page was part of the policy at the time of the collision. All documents related to those should be produced. There is no protection available to assert by State Farm.

### 6.8.    Produce Employment Files and No Fraud Acknowledgement

Supplemental request no. 20 relates to producing the employee files for people involved in making the forged documents. Further, each State Farm employee is to sign annually an acknowledgement that they will not engage in fraud with the annual Code of Conduct training course. Complaint, ¶ 89, Exhibit B, p. 28. This request is proper and the materials should be produced.

### 6.9.    Produce Training About Not Committing Fraud

Supplemental Request No. 21 seeks State Farm's code of conduct training materials related to not committing fraud. State Farm objects claiming the production of the materials has no bearing on any issue in dispute and has no tendency to make the existence of any fact of consequence more or less probable. This is without merit. State Farm requires its employees to complete and submit the Code of Conduct Form annually with the annual Code of Conduct training course. Complaint, **Exhibit 5**, p. No. 28.

If State Farm is not having employees sign the no annual no fraud document, that is certainly discoverable. The materials should be produced.

### 6.10.   Materials Reviewed by GWB Are Discoverable in this Case

As to Supplemental requests Nos. 26-34, State Farm and GWB should produce the materials and communications about the commencement of and support for the lawsuit and its continuation. There is no applicable privilege or protection available. Further, the privilege log is inadequate and there are no

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

documents supplied to prove each element needed to refrain from the production of these materials. For example, GWB claims that communications with *opposing counsel* are protected. *See e.g.* Ex. 4. Further examples of the inadequacy of the log include items that are listed without dates.

If GWB did not possess information needed to make the assertion, then that would support its negligence. If it possessed information which contradicted the assertions made, those are discoverable as well.

Further, as to materials submitted to the SC Department of Insurance, State Farm makes the statement that "At some point after implementation of 6023DC, State Farm determined it would be beneficial to State Farm and its policyholders to include identifying information on the form for tracking purposes. Therefore, lines for policyholder name; policy #; and effective date of the form were placed onto the top portion of 6023DC." And "State Farm's belief was that these administrative changes did not require a reapproval of 6023DC and, therefore, reapproval was not sought."

If such a determination was made and belief existed, produce the documentation supporting the statements as requested.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## 7.    Conclusion

All materials sought should be produced, unredacted and in full. There is

no basis for seeking protection.

Respectfully submitted,

**KAHN LAW FIRM, LLP**
s/ JUSTIN S. KAHN [SC NO. 65100]
WES B. ALLISON [SC NO. 100533
WALLISON@KAHNLAWFIRM.COM
PO BOX 31397
CHARLESTON, SC 29417-1397
*P 843.577.2128 | F 843.577.3538*
*JSKAHN@KAHNLAWFIRM.COM*

SEAN K. CLAGGETT (PRO HAC VICE)
CLAGGETT & SYKES LAW FIRM
4101 MEADOWS LANE, SUITE 100
LAS VEGAS NV 89107
(702) 213-2566
**ATTORNEYS FOR PLAINTIFFS**

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Robert C. Workman, individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew T. Workman,

<div align="center">Plaintiffs,</div>

<div align="center">vs.</div>

State Farm Mutual Automobile Insurance Company and Gallivan, White & Boyd, P.A.,

<div align="center">Defendants.</div>

COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CIVIL ACTION NO. 23-CP-10-1832

**DEFENDANT
GALLIVAN, WHITE & BOYD, P.A.'S
FIRST SUPPLEMENTAL RESPONSES TO
PLAINTIFFS' FIRST DISCOVERY
REQUESTS**

**TO:   PLAINTIFFS AND THEIR ATTORNEYS:**

Pursuant to Rules 33 and 34 of the South Carolina Rules of Civil Procedure, the Defendant Gallivan White & Boyd, P.A., ("GWB" or "Defendant") submits its First Supplemental Responses to Plaintiffs' First Discovery Requests as follows:

**SUPPLEMENTAL RESPONSES TO PLAINTIFFS' STANDARD INTERROGATORIES**

1.     Give the names and addresses of persons known to the parties or counsel to be witnesses concerning the facts of the case and indicate whether or not written or recorded statements have been taken from the witnesses and indicate who has possession of such statements.

**ANSWER:**

a)     **Jennifer E. Johnsen**
       **c/o Turner Padget Graham & Laney**
       **40 Calhoun Street, Suite 200 (29401)**
       **P.O. Box 22129**
       **Charleston, SC 29413**

       **Jennifer Johnsen is an attorney at GWB who represented State Farm in the Declaratory Judgment Action, C.A. No.: 2:21-cv-02623-MBS ("the DJA"). This witness is expected to testify in accordance with GWB's Answer, as to her**

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA   )
                               )    IN THE COURT OF COMMON PLEAS
COUNTY OF CHARLESTON    )    NINTH JUDICIAL CIRCUIT

|  |  |
|---|---|
| | )   Case No. 2023-CP-10-01832 |
| Robert C. Workman, Individually and as | ) |
| Personal Representative of the Estate of | ) |
| James K. Workman, Kelly Workman | ) |
| Tick and Matthew T. Workman, | ) |
| | ) |
| Plaintiffs, | )   **<u>STATE FARM MUTUAL</u>** |
| | )   **<u>AUTOMOBILE INSURANCE</u>** |
| | )   **<u>COMPANY'S FIRST</u>** |
| vs. | )   **<u>SUPPLEMENTAL RESPONSES TO</u>** |
| | )   **<u>PLAINTIFFS' FIRST DISCOVERY</u>** |
| | )   **<u>REQUESTS</u>** |
| State Farm Mutual Automobile Insurance | ) |
| Company and Gallivan, White & Boyd, | ) |
| P.A., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Pursuant to Rules 33 and 34 of the South Carolina Rules of Civil Procedure, Defendant State Farm Mutual Automobile Insurance Company ("State Farm") supplements its answers and responses to the "Standard Interrogatories" and "Supplemental Discovery Requests" in Plaintiffs' First Discovery Requests to Defendants as follows.

## PLAINTIFFS' "STANDARD INTERROGATORIES"

**1.**    **Give the names and addresses of persons known to the parties or counsel to be witnesses concerning the facts of the case and indicate whether or not written or recorded statements have been taken from the witnesses and indicate who has possession of such statements.**

**SUPPLEMENTAL ANSWER**: Plaintiffs are witnesses concerning their allegations and claimed damages. Otherwise, the following may have information concerning the facts of the case:

    **a.**  **Melvin O. Lamb, Jr.**, who, upon information and belief, has not given a written or recorded statement relevant to this case.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

b.  **Pam Middleton and Mark Black**, employees of State Farm Agent Jack Tankersley's office, neither of whom have given a written or recorded statement relevant to this case.

c.  **Lee Shivers and Darren Murdoch**, employees within State Farm's Claims Department, the latter of whom has given a written statement relevant to this case, which statement was filed in the declaratory judgment action filed by State Farm concerning Claim No. 40-21B2-49D, Civil Action No. 2:21-cv-02623-MBS (the "DJA") and is in Plaintiffs' counsel's possession. While Mr. Murdoch and Mr. Shivers are the primary witnesses from within State Farm's Claims Department, other State Farm employees were involved in the handling of Claim No. 40-21B2-49D as reflected in the previously produced records identified in item d. of State Farm's answer to Standard Interrogatory 2 of Plaintiffs' First Discovery Requests.

d.  **Shay Anderson and Lana Willingham**, employees within State Farm's Underwriting Department, both of whom have given written or recorded statements relevant to this case, which statements were transcribed by a court reporter or otherwise filed in the DJA and are in Plaintiffs' counsel's possession.

e.  **Jessica Bass**, an employee within State Farm's Underwriting Department, who has not given a written or recorded statement relevant to this case.

f.  **The following current and former employees within State Farm's Underwriting Department who are identified by their aliases in the underwriting records produced by State Farm, Bates labeled SFMAIC_Workman_3663 through SFMAIC_Workman_3882,** none of whom have given written or recorded statements relevant to this case:

| Alias | Name | Position Held at Time of Note |
|-------|------|-------------------------------|
| AN6J | Nancy Martin | Underwriting Service Assistant |
| ATSG | Sheryl Schlaug | Underwriting Service Assistant |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| BFLN | Pam Pride | Underwriting Service Assistant |
| DFGL | Duane McNeese | Underwriting Service Assistant |
| EJO2 | Luis Giraldo | Underwriter |
| EYKR | Sasha Kimmins | Underwriter |
| FFE8 | Melodie Cruz | Underwriting Service Assistant |
| HVJD | Olivia Jones | Underwriting Service Assistant |
| ICUB | Michael Tarango | Underwriter |
| K46Q | Antonia Walter | Underwriting Service Assistant |
| KGCH | Lamont McCall | Underwriting Service Assistant |
| KJDX | Nikki Nunn | Underwriter |
| MST4 | Karina Bevis | Underwriter |
| TJK3 | Jamie Russell | Underwriting Service Assistant |
| VAA3MQ | Jamie Wenzl | Underwriter |

**2.    Set forth a list of photographs, plats, sketches or other prepared documents in possession of the party that relate to the claim or defense in the case.**

**SUPPLEMENTAL ANSWER**: State Farm is not in possession of any plats, sketches, or photographs that relate to the claims or defenses in this case. While State Farm is in possession of photographs depicting the scene of and damage caused by the June 12, 2021 collision that resulted in Claim No. 40-21B2-49D, which photographs are included in and have been produced with item d., identified below, those photographs do not relate to the claims or defenses in this case.

With respect to "other prepared documents" that relate to the claims or defenses, State Farm identifies the following:

a.    Filings in the DJA, the discovery served in the DJA, and the transcript of Shay Anderson's testimony in the Rule 30(b)(6) deposition of State Farm taken in the DJA, all of which were already in Plaintiffs' counsel's possession at the time this suit was filed.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

b.  State Farm's check in the amount of $10,000,000 made payable to the "Kahn Law Firm LLP Escrow Account FBO Estate of James Kelly Workman and His Beneficiaries," Bates labeled SFMAIC_Workman_3883-3884, a copy of which is produced herewith.

c.  The nonprivileged, non-work product protected underwriting records of State Farm relevant to Policy No. 6323-189-40 insuring Melvin O. Lamb, Jr.'s 2004 Tahoe (the "Tahoe Policy") and the excluded driver endorsement signed and accepted by Melvin O. Lamb, Jr. which set forth that his son, Melvin O. Lamb, III ("Lamb III"), would not drive the Tahoe and no coverage would be afforded if Lamb III was driving the Tahoe (the "Lamb Excluded Driver Endorsement"). State Farm has already produced the nonprivileged, non-work product protected portions of the underwriting records, Bates labeled SFMAIC_Workman_3663 through SFMAIC_Workman_3882, some pages of which were produced pursuant to the February 5, 2024 Confidentiality Order. At the time of its production of the portion of the underwriting records Bates labeled SFMAIC_Workman_3663 through SFMAIC_Workman_3848, State Farm served its Second Supplemental Privilege Log identifying and describing the redactions made therein on the basis of attorney-client privilege or the work product doctrine.

d.  The nonprivileged, non-work product protected portions of State Farm's "Claim File," the meaning of which is explained below, for Claim No. 40-21B2-49D, which State Farm has already produced in response to several of the Supplemental Requests in Plaintiffs' First Discovery Requests and is Bates labeled SFMAIC_Workman_0001 through SFMAIC_Workman_3662. At the time of its production of SFMAIC_Workman_0001 through SFMAIC_Workman_3662, State Farm served its First Supplemental Privilege Log identifying and describing all information and material redacted or otherwise withheld on the basis of attorney-client privilege or the work product doctrine.

e.  The Preface, Our Commitment to Our Policyholders, Property and Casualty Claims Reporting, and Claims with Excess Exposure sections of State Farm's Auto Claim Manual, which were previously produced in response to Supplemental Request No. 25 of Plaintiffs' First Discovery Requests and are Bates labeled WORKMAN0000000037PROD through WORKMAN0000000039PROD and WORKMAN0000004997PROD through WORKMAN000000512PROD, the latter of

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP100183

which were produced under the February 5, 2024 Confidentiality Order; as well as the Investigation of Coverage Questions, Monitoring Injury Files, and Liability Coverage for Bodily Injury (BI); Uninsured Motorist - Bodily Injury (UM); Underinsured Motorist - Bodily Injury (UIM) sections of State Farm's Auto Claim Manual, Bates labeled WORKMAN00005451PROD through WORKMAN00005490PROD and produced herewith in response to Supplemental Request No. 25 of Plaintiffs' First Discovery Requests

f.   The Entering Endorsements and Exceptions, Driver Exclusion Agreement, Certified Policy Record and Confirmation of Coverage, and Driver Exclusion Screen sections of State Farm's Underwriting Auto Process Guide, which were previously produced pursuant to the February 5, 2024 Confidentiality Order in response to Supplemental Request No. 11 of Plaintiffs' First Discovery Requests and are Bates labeled WORKMAN00000513PROD through WORKMAN00000894PROD.

g.   The Preface, Claim Investigation, and Claim Activity and Processing sections of State Farm's Standard Claim Processes, which were previously produced pursuant to the February 5, 2024 Confidentiality Order in response to Supplemental Request No. 25 of Plaintiffs' First Discovery Requests and are Bates labeled WORKMAN00000895PROD through WORKMAN00001002PROD and WORKMAN00001086PROD through WORKMAN00001193PROD.

h.   The Preamble, Informational Links, Contact and Notification, Coverage, Demands, Settlement, and Litigation sections of State Farm's Jurisdictional References, which were previously produced pursuant to the February 5, 2024 Confidentiality Order in response to Supplemental Request No. 25 of Plaintiffs' First Discovery Requests and are Bates labeled WORKMAN00001003PROD through WORKMAN00001085PROD and WORKMAN00001194PROD through WORKMAN00001276PROD.

i.   Records of State Farm's submission of 6023DC to the South Carolina Department of Insurance ("SCDOI") for approval and the SCDOI's approval of the same, which were previously produced in response to Supplemental Request No. 12 of Plaintiffs' First Discovery Requests and are Bates labeled WORKMAN00000040PROD through WORKMAN00000496PROD.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

j. Nonprivileged, non-work product protected emails, Bates labeled WORKMAN00005187PROD through WORKMAN00005450PROD, produced along with State Farm's Third Supplemental Privilege Log in response to Supplemental Request No. 2 of Plaintiffs' First Discovery Requests.

With respect to the term "Claim File" as used herein, State Farm does not maintain a physical file folder with respect to most claims, and it did not maintain a physical file folder with respect to Claim No. 40-21B2-49D. Instead, information regarding a claim, including Claim No. 40-21B2-49D, is created, stored, managed, and accessed primarily in and through the Enterprise Claims System ("ECS"), a proprietary web-based system used by State Farm. The term "Claim File," therefore, has a distinct meaning to State Farm and consists of what is retrieved from ECS and generated for production outside the ECS environment pursuant to CPG 4040-100, the Claims Procedures Guide that outlines the necessary steps to reproduce a complete copy of the Claim File through ECS in response to discovery. Relevant versions of CPG 4040-100 are Bates labeled WORKMAN00005491PROD through WORKMAN000005505PROD, designated confidential, and produced herewith pursuant to the February 5, 2024 Confidentiality Order.

**6.** **For each person known to the parties or counsel to be a witness concerning the facts of the case, set forth either a summary sufficient to inform the other party of the important facts known to or observed by such witness, or provide a copy of any written or recorded statements taken from such witnesses.**

**SUPPLEMENTAL ANSWER**: In addition to the Plaintiffs, who are witnesses concerning their allegations and claimed damages, State Farm has identified in response to Standard Interrogatory No. 1 the following individuals and State Farm summarizes the important facts it expects may be known to these individuals as follows or otherwise directs Plaintiffs to business records produced by State Farm as permitted under Rule 33:

6

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

a. **Melvin O. Lamb, Jr.** – State Farm expects this witness may have knowledge of the Tahoe Policy, the Lamb Excluded Driver Endorsement he signed and accepted on the Tahoe Policy, his communications with State Farm about the Lamb Excluded Driver Endorsement in connection with State Farm's investigation of coverage on Claim No. 40-21B2-49D, State Farm's withdrawal of its reservation of rights and extension of coverage on Claim No. 40-21B2-49D, and State Farm's payment of $10,000,000 to the Estate of James Kelly Workman ("Workman Estate") and the beneficiaries of the Workman Estate on Claim No. 40-21B2-49D in exchange for a release of the Workman Estate and beneficiaries' claims against him and his son, Lamb III.

b. **Pam Middleton and Mark Black**, employees of State Farm Agent Jack Tankersley's office – State Farm expects these witnesses may have knowledge of their communications with State Farm, which communications are reflected in the nonprivileged, non-work product protected portions of State Farm's underwriting records and Claim File, Bates labeled SFMAIC_Workman_3663 through SFMAIC_Workman_3848 and SFMAIC_Workman_0001 through SFMAIC_Workman_3662, respectively, the Agency's receipt of the Lamb Excluded Driver Endorsement signed and accepted by Melvin O. Lamb, Jr. as part of the Tahoe Policy, and the Agency's submission of the executed Lamb Excluded Driver Endorsement to State Farm's Underwriting Department.

c. **Lee Shivers and Darren Murdoch**, employees within State Farm's Claims Department – State Farm expects these witnesses may have knowledge of their communications with State Farm's Underwriting Department as reflected in the nonprivileged, non-work product protected portions of the underwriting records and Claim File, both previously produced and Bates labeled SFMAIC_Workman_3663 through SFMAIC_Workman_3848 and SFMAIC_Workman_0001 through SFMAIC_Workman_3662, respectively; State Farm's communications with the Workman Estate, with its insured Melvin O. Lamb, Jr., with the insured's son, Melvin O. Lamb, III, and others, the handling of Claim No. 40-21B2-49D, and the filing of the DJA, all as reflected in the nonprivileged, non-work product protected portions of State

ELECTRONICALLY FILED - 2024 Jul 11 17:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Farm's Claim File, previously produced and Bates labeled SFMAIC_Workman_0001 through SFMAIC_Workman_3662. While Mr. Murdoch and Mr. Shivers are the primary witnesses from within State Farm's Claims Department, other State Farm employees were involved in and may have knowledge and information about their respective involvement in the handling of Claim No. 40-21B2-49D. Pursuant to Rule 33, State Farm directs Plaintiffs to the nonprivileged, non-work product protected portions of State Farm's Claim File for Claim No. 40-21B2-49D (SFMAIC_Workman_0001-3662), the business records from which the identity and involvement of these individuals may be ascertained.

d. **Shay Anderson and Lana Willingham**, employees of State Farm's Underwriting Department – these witnesses are expected to have knowledge and information as set forth in their recorded statements taken in the DJA, of which Plaintiffs are already in possession.

e. **Jessica Bass**, employee of State Farm's Underwriting Department – State Farm expects this witness may have knowledge of the Certified Policy Records she prepared for the Tahoe Policy.

f. **Current and former employees of State Farm's Underwriting Department**, identified in subparagraph f. of State Farm's answer to Plaintiffs' Standard Interrogatory No. 1 – State Farm expects these witnesses may have knowledge or information about the Lamb Excluded Driver Endorsement, the Tahoe Policy, and/or actions taken in relation to the same as reflected in the note(s) electronically entered by each, identifiable by the employee alias appearing in the column to the right of the note itself, in the previously produced underwriting records. Pursuant to Rule 33, State Farm directs Plaintiffs to these electronically entered note(s) in Rumba (SFMAIC_Workman_3678 - 3680, 3688), the business records from which the involvement of the underwriting employees may be ascertained.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

<div align="center">

**PLAINTIFFS' "SUPPLEMENTAL DISCOVERY REQUESTS"**

</div>

1.      **As to each affirmative defense you assert, state a detailed factual basis for said defense and PRODUCE all documents supporting said defense.**

**SUPPLEMENTAL ANSWER/RESPONSE**: State Farm directs Plaintiffs to and incorporates by reference herein its Motion to Dismiss and Reply in Support of Motion to Dismiss, both publicly filed and served on Plaintiffs in Civil Action No. 2:23-cv-02133-RMG (ECF Nos. 6, 29), which sets forth the factual and legal basis for the affirmative defenses set forth in paragraphs 163, 164, 166, 167, 168, 169, 170, and 172 of State Farm's Answer. State Farm also directs Plaintiffs to their Complaint, the allegations of which, if true, provide further factual basis for the affirmative defenses set forth in paragraphs 164, 166, 167, and 170 of State Farm's Answer, as well as the factual basis for the affirmative defense set forth in paragraph 171. Furthermore, discovery is underway and additional facts and evidence supporting the affirmative defenses in paragraphs 168, 169, 170, and 172 are being developed. Finally, as for the affirmative defense set forth in paragraph 165, State Farm directs Plaintiffs to the fact the Workman Estate did not assert a counterclaim against State Farm in the DJA and its Motion for Sanctions in the DJA was denied.

2.      **PRODUCE all documentation concerning State Farm Claim Number 4021B2-49D with a date of loss of June 12, 2021. This is to include all:**

a.   **Confirmation of Coverage documents;**

b.   **Claim file notes, entries, communications and the like;**

c.   **Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim specialist Lee Shivers;**

d.   Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim associate Deborah Grigg;

e.   Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim team manager Darren P Murdoch;

f.   Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Underwriter Jessica Bass;

g.   Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Underwriter Team Manager Shay Anderson;

h.   Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by statefarmclaims@statefarm.com;

i.   Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by agent John P Tankersley, III or Jack Tankersley, Pam Middleton or anyone else in that office.

j.   Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Melvin Lamb, Jr.;

k.   Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Melvin Lamb, III;

l.   Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Valerie Lamb;

m.   Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by law firms or attorneys representing people asserting claims;

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

    **n.**   **Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by law firms or attorneys representing you**

    **o.**   **Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by each claimant;**

**SUPPLEMENTAL RESPONSE:** As an initial matter, State Farm directs Plaintiffs to the nonprivileged, non-work product protected portions of its "Claim File," the meaning of which is explained in State Farm's response to Standard Interrogatory 2 of Plaintiffs' First Discovery Requests, for Claim No. 40-21B2-49D, which was previously produced and Bates labeled SFMAIC_Workman_0001 through SFMAIC_Workman_3662. State Farm's production of the Claim File includes:

- Confirmation of Coverage documents requested in item (a);

- nonprivileged, non-work product protected file notes, entries, and communications requested in item (b);

- nonprivileged, non-work product protected file notes, entries and communications like letters, emails, and faxes drafted, sent, or received by Lee Shivers, Deborah Grigg, or Darren Murdoch, requested in items (c), (d), and (e);

- Certified Policy Records executed by Jessica Bass, documentation requested in item (f);

- nonprivileged, non-work product protected emails sent to and from the email address statefarmclaims@statefarm.com, requested in item (h);

- communications sent by State Farm to Melvin Lamb, Jr., Lamb III, Valerie Lamb, and other third-party claimants, requested in items (j), (k), (l), and (o);

- and communications sent to or from law firms or attorneys representing third-party claimants on Claim No. 40-21B2-49D, requested in item (m).

As reflected in State Farm's Privilege Log, served contemporaneously with State Farm's production of the nonprivileged, non-work product protected portions of the Claim File, the

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

following are outside the scope of discovery and have been withheld or otherwise redacted from the Claim File:

- attorney-client privileged and/or work product protected file notes, entries, and communications requested in item (b);

- attorney-client privileged and/or work product protected file notes, entries and communications like letters, emails, and faxes drafted, sent, or received by Lee Shivers or Darren Murdoch, requested in items (c) and (e);

- attorney-client privileged and/or work product protected emails sent to or from Shay Anderson, requested in item (g);

- attorney-client privileged and/or work product protected emails sent to and from the email address statefarmclaims@statefarm.com, requested in item (h);

- attorney-client privileged and/or work product protected communications sent to Melvin Lamb, Jr. and Lamb III by their respective counsel that State Farm was copied on or otherwise forwarded by their respective counsel which are responsive to items (j), (k), and (l);

- attorney-client privileged and/work product protected communications sent to or from Gallivan, White & Boyd, P.A. ("GWB"), including attorneys Bill Young and Jennifer Johnsen of GWB, requested in item (n).

Beyond requesting the previously produced Claim File, State Farm objects to this request as being overly broad, unduly burdensome, and seeking material not relevant to the subject matters involved in the pending action, whether in relation to the claims of Plaintiffs or the defenses of Defendants, because it is unlimited in time, with no particular period of time identified in the request, and unlimited in scope, seeking "[a]ll documentation concerning" Claim No. 40-21B2-49D. Plaintiffs contend that because this request is limited to a particular claim number, it is per se limited in time and scope. This is incorrect. Not all aspects of Claim No. 40-21B2-49D, which include, for example, property damage subrogation arbitrations brought by other insurers and even the defense of this action,

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

are relevant to the subject matters involved in this action, which, based on the pleadings, State Farm understands to be its March 10, 2020 receipt and handling thereafter of the Lamb Excluded Driver Endorsement, up to and including its issuance of a new Declarations Page for the Tahoe Policy on July 14, 2021; State Farm's August 16, 2021 filing of the DJA in relation to Claim No. 40-21B2-49D; State Farm's coverage investigation in Claim No. 40-21B2-49D prior to its August 16, 2021 filing of the DJA; and statements made by State Farm in the handling of Claim No. 40-21B2-49D about the existence of coverage or lack thereof prior to its August 16, 2021 filing of the DJA. Also, Claim No. 40-21B2-49D remains open as a result of this action, and therefore the period of time in which "documentation concerning" the claim is created—for example, attorney-client privileged and work product protected emails exchanged between the undersigned counsel and State Farm as well as work product prepared by undersigned counsel in its defense of this action—far exceeds the time period relevant to and the scope of the subject matters involved in the pending action, which time periods ends August 16, 2021.

Limiting this remainder of this request for documentation and communications in items (a) through (o) which concern Claim No. 40-21B2-49D, are related to subject matters involved in the pending action and were created or exchanged before December 14, 2021 (a date long before which the conduct giving rise to Plaintiffs' allegations and claims had concluded), all based on the above objections, in addition to the nonprivileged, non-work product protected Claim File, State Farm further responds as follows.

State Farm directs Plaintiffs to the documents produced herewith, Bates labeled WORKMAN00005187PROD through WORKMAN00005450PROD, which consist of nonprivileged, non-work product protected emails and/or attachments thereto that were identified by reviewing the results of searches conducted for emails referencing Claim No. 40-21B2-49D or

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Policy No. 6323-189-40, whether in the email itself or an attachment thereto. The documents produced herewith, WORKMAN00005187PROD through WORKMAN00005450PROD, include nonprivileged, non-work product protected emails sent to or from Lee Shivers, Darren Murdoch, Jessica Bass, Shay Anderson, the email address statefarmclaims@statefarm.com, Melvin Lamb, Jr., Lamb III, Valerie Lamb, and third-party claimants, or their counsel, on Claim No. 40-21B2-49D, as requested in items (c), (e), (f), (g), (h), (j), (k), (l), (m), and (o). No emails sent to or from Deborah Grigg, Jack Tankersley, Pam Middleton, or the Agency, as requested in items (d) and (i), concerning the subject matters involved in the pending action were located through the search.

As reflected State Farm's Third Supplemental Privilege Log served contemporaneously with the production of WORKMAN00005187PROD through WORKMAN00005450PROD, emails and attachments to emails that were created prior to December 14, 2021 that relate or may relate to subject matters involved in the pending action but which are attorney-client privileged and/or work product protected and, therefore, outside the scope of discovery, have been withheld and other emails containing, in part, attorney-client privileged information, which itself is outside the scope of discovery, have been redacted.

**3.     Fully identify each claimant and/or person making a claim related to the June 12, 2021 collision, whether named in the declaratory judgment action or not and to the extent not produced above, PRODUCE all communications with them or their representatives, including agreements to be bound by the declaratory judgment action filed in this matter.**

**SUPPLEMENTAL ANSWER/RESPONSE**: In addition to identifying the Workman Estate and including State Farm's communications with its counsel, the nonprivileged, non-work product protected portions of State Farm's Claim File for Claim No. 40-21B2-49D, previously produced in response to other discovery requests, identifies other individuals with third-party liability claims related

14

to the June 12, 2021 collision (collectively, the "Other Claimants") and includes State Farm's communications with the Other Claimants or their counsel. State Farm also directs Plaintiffs to the documents Bates labeled WORKMAN00005187PROD through WORKMAN00005450PROD, which State Farm has produced in response to Supplemental Request No. 2 of Plaintiffs' First Discovery Requests and includes communications between State Farm and the Other Claimants or their counsel.

State Farm objects to the remainder of this request for "all communications" with Other Claimants or their counsel as being overly broad, unduly burdensome, and seeking material not relevant to the subject matter involved in the pending action, whether in relation to the claims of Plaintiffs or the defenses of Defendants, because it is unlimited in time, with no particular period of time identified in the request, and unlimited in scope, with no particular subject matter identified in the request. For example, not all communications between State Farm and Other Claimants or their counsel concern Claim No. 40-21B2-49D. As evidenced by the "Frequency Search Automatic Match Report" in the previously produced Claim File (SFMAIC_Workman_0065-67), some of the Other Claimants have been involved in other insurance claims with State Farm. Even if the request were limited to communications concerning Claim No. 40-21B2-49D, not all communications with Other Claimants or their counsel are relevant to the subject matters involved in this action, which, based on the pleadings, State Farm understands to be its March 10, 2020 receipt and handling thereafter of the Lamb Excluded Driver Endorsement, up to and including its issuance of a new Declarations Page for the Tahoe Policy on July 14, 2021; State Farm's August 16, 2021 filing of the DJA in relation to Claim No. 40-21B2-49D; State Farm's coverage investigation in Claim No. 40-21B2-49D prior to its August 16, 2021 filing of the DJA; and statements made by State Farm in the

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

handling of Claim No. 40-21B2-49D about the existence of coverage or lack thereof prior to its August 16, 2021 filing of the DJA.

**4.     PRODUCE all of State Farm's documents and documentation concerning the 2004 Chevrolet Tahoe VIN 1GNEK13Z54R235227 driven on June 12, 2021. This includes but is not limited to State Farm insurance policies: 632 3189-B07-40; 632 3189-B07-40A, and 632 3189-B07-40B. This production request includes producing the below listed items in addition to the complete audit trail, including but not limited to identifying who logged into the system, entries made, dates and times thereof, who made said entries, additions, or deletions, who reviewed and/or made said entries and/or changes, etc.**

> a.   **Claims Files;**
>
> b.   **Underwriting Files;**
>
> c.   **Entries in computer systems (including Rumba, Enterprise and ECS) and identify who made the entries and when such entries were made;**
>
> d.   **Emails;**
>
> e.   **Texts;**
>
> f.   **Notes;**
>
> g.   **Faxes;**
>
> h.   **Declaration Pages;**
>
> i.   **Requests to modify, alter, change, create, etc. the declarations pages;**
>
> j.   **Requests to modify, alter, change, create, etc. the policy(s);**
>
> k.   **Responses to any requests to modify, alter, change, create, etc. the declarations pages;**
>
> 1.   **Responses to any requests to modify, alter, change, create, etc. the policy declarations;**
>
> m.   **Auto Renewal;**
>
> n.   **Balance Due Notice;**

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

    **o.**    **Policy Master Record;**

    **p.**    **Suspensions;**

    **q.**    **Reinstatements;**

    **r.**    **Cancellations;**

    **s.**    **Underwriting documents;**

    **t.**    **Approvals; and**

    **u.**    **Service Requests made whether to the Complex Unit or otherwise.**

**SUPPLEMENTAL RESPONSE:** State Farm objects to the portion of this request that seeks "all of State Farm's documents and documentation concerning the 2004 Chevrolet Tahoe VIN 1GNEK13Z54R235227 driven on June 12, 2021" and all emails, texts, notes, and faxes "concerning the 2004 Chevrolet Tahoe VIN 1GNEK13Z54R235227 driven on June 12, 2021" as overly broad and seeking information not relevant to the subject matters involved in the pending action, whether in relation to the claims of Plaintiffs or the defenses of Defendants. This suit does not broadly concern *the Tahoe* owned by Melvin O. Lamb, Jr. Rather, based on the pleadings, State Farm understands the subject matters involved in this action to be its March 10, 2020 receipt and handling thereafter of *the Lamb Excluded Driver Endorsement*, up to and including its issuance of a new Declarations Page for the Tahoe Policy on July 14, 2021; its August 16, 2021 filing of *the DJA* in relation to Claim No. 40-21B2-49D; its *coverage investigation* in Claim No. 40-21B2-49D leading up to its August 16, 2021 filing of the DJA; and *statements it made* in the handling of Claim No. 40-21B2-49D about the existence of coverage or lack thereof prior to the August 16, 2021 filing of the DJA.

State Farm also objects to the portion of this request for production which seeks "the complete audit trail" of an unidentified, undescribed "system," "including but not limited to identifying who logged into the system" over an unspecified period of time and the "entries made,

17

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

dates and times thereof, who made said entries, additions, or deletions, who reviewed and/or made said entries and/or changes, etc." touching on any subject matter over an unidentified period of time in the unidentified system, as being vague, ambiguous, overly broad, and seeking information not relevant to the subject matters involved in the pending litigation. If Plaintiffs intended to request the "audit trail" for the issuance of the Declarations Page prepared on the Tahoe Policy on July 14, 2021 which Underwriting Team Manager Shay Anderson described in her testimony during the December 14, 2021 Rule 30(b)(6) deposition of State Farm taken in the DJA, then State Farm directs Plaintiffs to the underwriting records previously produced and Bates labeled SFMAIC_Workman_3663 through SFMAIC_Workman_3882.

Otherwise, limiting this request to the specified items to the extent they relate to Claim No. 40-21B2-49D and/or Policy No. 6323-189-40—that is, the Tahoe Policy—and are relevant to the subject matter involved in the pending action—that is, the permissible scope of discovery under Rule 26(b)(1)—State Farm responds as follows.

With respect to "Claims Files" requested in item (a), State Farm directs Plaintiffs to the nonprivileged, non-work product protected portions of its Claim File for Claim No. 40-21B2-49D, previously produced and Bates labeled SFMAIC_Workman_0001 through SFMAIC_Workman_3662. The previously produced Claim File includes entries and file notes made in ECS for Claim No. 40-21B2-49D, which are requested in items (c) and (f) of this request. Each of the file notes in the Claim File identifies the individual who entered the file note and the date and time the file note was entered. With respect to other Claim File entries and any updates/changes thereto, the "File History – File Changes" section of the Claim File identifies the individual who made or otherwise updated the entries and the date and time of such entries/updates. The Claim File for Claim No. 40-21B2-49D also contains nonprivileged, non-work product

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

protected emails and faxes sent and received, which emails and faxes are requested in items (d) and (g) of this request. The previously produced Claim File further contains Declarations Pages issued on the Tahoe Policy, Renewals of the Tahoe Policy, Balance Due Notices on the Tahoe Policy, the Tahoe Policy's Policy Master Record, Reinstatement Notices on the Tahoe Policy, Cancellation Notices on the Tahoe Policy, and other underwriting documents concerning the Tahoe Policy, like the policy application, requested in items (h), (m), (n), (o), (q), (r), and (s) of this request, respectively. With respect to portions of the Claim File, including file notes, other entries, emails, and faxes that have been redacted or otherwise held as being outside the scope of discovery because they are attorney-client privileged or otherwise work product protected, State Farm directs Plaintiffs to its First Supplemental Privilege Log, which was produced contemporaneously with the production of the nonprivileged, non-work product protected portions of the Claim File.

With respect to "Underwriting Files" requested in item (b), State Farm directs Plaintiffs to the nonprivileged, non-work product protected portions of the underwriting records relating to the Tahoe Policy, previously produced and Bates labeled SFMAIC_Workman_3663 through SFMAIC_Workman_3882. In this regard, State Farm does not maintain a physical file folder with respect to most policies, and it did not maintain a physical file for the Tahoe Policy; instead, underwriting information and documents relating to the Tahoe Policy were created, stored, managed, and accessed electronically in multiple locations.

The previously produced underwriting records include entries and file notes made in Rumba on the Tahoe Policy, which are requested in items (c) and (f) of this request, and the notes electronically entered in Rumba include service requests made on the Tahoe Policy as requested in item (u), including the service request entered by Karina Bevis (MST4) on July 13, 2021 for the complex unit to complete the previously overlooked entry of the Lamb Excluded Driver Endorsement

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

on the Tahoe Policy (*see* N1 appearing on SFMAIC_Workman_3680). With respect to the July 13, 2021 note with the service request and the other household and policy notes included in the underwriting records (*see* SFMAIC_Workman_3678–3683 and SFMAIC_Workman_3687–3689) as requested in items (f), the author and date each note was entered is identified in the columns appearing to the right of each note, with the authors being identified by the following aliases:

| Alias | Name |
| --- | --- |
| AN6J | Nancy Martin |
| ATSG | Sheryl Schlaug |
| BFLN | Pam Pride |
| DFGL | Duane McNeese |
| EJO2 | Luis Giraldo |
| EYKR | Sasha Kimmins |
| FFE8 | Melodie Cruz |
| HVJD | Olivia Jones |
| ICUB | Michael Tarango |
| K46Q | Antonia Walter |
| KGCH | Lamont McCall |
| KJDX | Nikki Nunn |
| MST4 | Karina Bevis |
| TJK3 | Jamie Russell |
| VAA3MQ | Jamie Wenzl |
| KAXN | Donna Duncan |

With respect to portions of the notes electronically entered in Rumba that are redacted as being outside the scope of discovery because they reflect attorney-client privileged or work product protected information, State Farm directs Plaintiffs to its Second Supplemental Privilege Log, which was served contemporaneously with State Farm's production of the nonprivileged, non-work product protected portions of the underwriting records.

The previously produced underwriting records also include the Declarations Pages issued on the Tahoe Policy, Renewals of the Tahoe Policy, Balance Due Notices on the Tahoe Policy, the

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Tahoe Policy's Policy Master Record, Reinstatement Notices on the Tahoe Policy, Cancellation Notices on the Tahoe Policy, and other Rumba screens captured concerning the Tahoe Policy, all as requested in items (h), (m), (n), (o), (q), (r), and (s) of this request, respectively.

To the extent the application for the Tahoe Policy and State Farm's Underwriting Department's processing of the same is considered a request to create a declarations page and policy as requested in items (i) and (j) of this request, that application is included with the previously produced underwriting records. To the extent the service request entered by Karina Bevis (MST4) on July 13, 2021 for the complex unit to complete the previously overlooked entry of the Lamb Excluded Driver Endorsement on the Tahoe Policy is a request to modify, change, or alter the Tahoe Policy or a request to create a new Declarations Page for the Tahoe Policy as requested in items (i) and (j) of this request, that service request is included with the previously produced underwriting records (*see* N1 appearing on SFMAIC_Workman_3680).

To the extent Lana Willingham's completion of the July 13, 2021 service request is a response to a request to modify, alter, or change the Tahoe Policy or a response to a request to modify, alter, change, or create a new Declarations Page to the Tahoe Policy as requested in items (k) and (l) of this request, then State Farm directs Plaintiffs to the Rumba screens—specifically, the Premium History screens and corresponding Detailed Deposit Information screens—previously produced in the underwriting records which document the actions taken by Ms. Willingham that resulted in the Declarations Page prepared July 14, 2021 (*see* SFMAIC_ Workman_3879-3880, SFMAIC_Workman_3822-3823). Also contained in the previously produced underwriting records are the Premium History Screens and corresponding Detailed Deposit Information screens (*see* SFMAIC_Workman_3849-3852, SFMAIC_Workman_3865-3866) documenting the policy transactions and actions that led to the Tahoe Policy's Declarations

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Pages prepared February 21, 2020 and September 8, 2020 (*see* SFMAIC_Workman_3808-3811, SFMAIC_Workman_3816-3817, SFMAIC_Workman_3822-3823). They also contain the Premium History screens and corresponding Detailed Deposit Information screens for other transactions and entries made in relation to the Tahoe Policy (*see* SFMAIC_Workman_3765-3781, SFMAIC_Workman_3849-3882). In this regard, appearing on each Premium History screen is a deposit number ("DEP NO"), and a corresponding Detailed Deposit Information screen exists for each deposit number, from which the identity of the person entering the transaction and the date and time of the specific transaction can be determined. Other than these records, State Farm has not identified any requests to modify, alter, change, or create a Declarations Page on the Tahoe Policy or the Tahoe Policy itself or responses thereto as requested in items (i), (j), (k) and (l) of this request.

     **5.**      **Fully identify each person who was involved in creating the Declarations Page that states "Prepared Jul 14 2021" attached as Exhibit A to the Complaint in Civil Action 2:21-cv-2623-MBS and as to each person, PRODUCE all documentation related to creating said document, including the requests to create and fully explain the reasons said Declarations Page was created.**

     **SUPPLEMENTAL ANSWER/RESPONSE:** State Farm's underwriting system (not a particular person) prepared on July 14, 2021 the Tahoe Policy's Declaration Page that was included with Exhibit A to the Complaint filed by State Farm in the DJA after Lana Willingham, a Complex Underwriting Service Assistant in State Farm's underwriting department, handled, on July 13, 2021, a service request to process the Lamb Excluded Driver Endorsement on the Tahoe Policy. The July 13, 2021 entry made by Ms. Willingham to process the Lamb Excluded Driver Endorsement on the Tahoe Policy is reflected in the previously produced Premium History and Detailed Deposit Information screen for deposit number 48739 was a policy transaction that resulted in the July 14,

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

2021 preparation of a new Declarations Page for the Tahoe Policy. The nonprivileged, non-work product protected underwriting records State Farm previously produced reflect, among other things, the service request entered by Karina Bevis, identified by her alias MST4, on July 13, 2021 (*see* SFMAIC_Workman_3680), the Premium History and Detailed Deposit Information screens for deposit number 48739 (*see* SFMAIC_Workman_3879-3880), and the Declarations Page prepared on July 14, 2021 as a result of the July 13, 2021 policy transaction (*see* SFMAIC_Workman_3780).

      **6.**     **PRODUCE all documents, emails and the attachments reviewed by or referenced by Shay Anderson in her deposition of December 14, 2021. This includes but is not limited to those:**

      **a.**     **Involving Jessica Bass as Referenced on pp. 16-17;**

      **b.**     **Involving Karen Bond as Referenced on pp. 16-17;**

      **c.**     **Involving any actuary or actuarial as referenced on pp. 31-33, 35-36, 38-39;**

      **d.**     **Involving Jennifer Johnsen, Esq.;**

      **e.**     **The unknown person referenced on p. 59;**

      **f.**     **Involving the SERFF Tracking Number SFMA-126372492; and**

      **g.**     **Form filings;**

    **SUPPLEMENTAL RESPONSE**: Ms. Anderson's deposition testimony taken in the December 14, 2021 Rule 30(b)(6) deposition of State Farm taken in the DJA references, as requested in item (a), that she emailed with Jessica Bass about the August 5, 2021 Certified Policy Record prepared on the Tahoe Policy and her request for an updated Certified Policy Record. Emails with Jessica Bass that include Ms. Anderson's request for a new Certified Policy Record for the Tahoe Policy and the response to the same are reflected in the documents Bates labeled

ELECTRONICALLY FILED - 2024 Jul 11 17:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

WORKMAN00000006PROD-WORKMAN00000007PROD, previously produced in response to Supplemental Request No. 17 of Plaintiffs' First Discovery Requests.

With respect to "form filings" requested in item (g), Ms. Anderson testified she did not have access to the filings with the SCDOI that show form 6023DC was approved by the SCDOI in 2010. State Farm submitted form 6023DC to the SCDOI for approval for two types of insurance, private passenger auto and commercial auto under SERFF filing numbers SFMA-126372492 and SFMA-126372966, respectively, and both were approved by the SCDOI in April 2010. Records of State Farm's submission and the SCDOI's approval of form 6023DC were previously produced and are Bates labeled WORKMAN00000040PROD-WORKMAN00000284PROD and WORKMAN00000285PROD-WORKMAN00000496PROD.

State Farm objects to the remainder of this request which seeks, in item (b), production of Ms. Anderson's November 2021 emails with a "training person" who Ms. Anderson believed was Karen Bond; in items (c), (e), and (f), production of Ms. Anderson's November 2021 emails with State Farm's actuarial department about form 6023DC having been filed with and approved by the SCDOI; and, in items (d) and (f), production of Ms. Anderson's November and December 2021 emails with State Farm's counsel, Attorney Jennifer Johnson of GWB, including the email Attorney Jennifer Johnsen of GWB had in her possession during the deposition, from which she read a SERFF tracking number associated with 6023DC's filing with and approval by the SCDOI for Plaintiffs' counsel's use in the deposition, as seeking information outside the scope of discovery.

As set forth under Rule 26 of the South Carolina Rules of Civil Procedure, the scope of discovery includes "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Based on the pleadings, State Farm understands the subject matters

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

involved in the pending action to be its March 10, 2020 receipt and handling thereafter of the Lamb Excluded Driver Endorsement, up to and including its issuance of a new Declarations Page for the Tahoe Policy on July 14, 2021; its August 16, 2021 filing of the DJA in relation to Claim No. 40-21B2-49D; its coverage investigation in Claim No. 40-21B2-49D leading up to its August 16, 2021 filing of the DJA; and statements it made in the handling of Claim No. 40-21B2-49D about the existence of coverage or lack thereof prior to the August 16, 2021 filing of the DJA.

Ms. Anderson's preparation for the Rule 30(b)(6) deposition taken in the DJA is not a relevant subject matter involved in the pending action. Moreover, Ms. Anderson's November and December 2021 email exchanges gathering and providing information requested by SFMAIC's counsel in the DJA and gathering information in preparation for the Rule 30(b)(6) deposition of State Farm in the DJA have no bearing on the relevant subject matters in the pending action. In any event, these emails were all exchanged for purposes of responding to discovery in the DJA and, therefore, are work product protected. The emails exchanged between Ms. Anderson and Attorney Johnsen are also attorney-client privileged. These November and December 2021 emails are identified in State Farm's Third Supplemental Privilege Log produced herewith.

7.      **PRODUCE all records, notes and documents Shay Anderson, Underwriting Team Manager, created, reviewed and/or referred to in her declaration under penalty of perjury dated May 24, 2022 which was filed as Entry No. 81-1 in C.A. No.: 2:21-CV-02623-MBS.**

**SUPPLEMENTAL RESPONSE**: With respect to the records and documents referenced in Ms. Anderson's May 24, 2022 Declaration filed in the DJA, State Farm directs Plaintiffs to the October 2, 2017, November 6, 2017, September 7, 2018, January 10, 2020, and February 26, 2020 excluded driver endorsements previously produced with the Claim File for Claim No. 40-21B2-

49D (*see* SFMAIC_Workman_3451, SFMAIC_Workman_2094, SFMAIC_Workman_2094, SFMAIC_Workman_3397, SFMAIC_Workman_2038, and SFMAIC_Workman_3377, respectively); the February 7, 2020 auto application previously produced with the underwriting records (*see* SFMAIC_Workman_3663-3667); the Rumba screens documenting the issuance of the Tahoe Policy (SFMAIC_Workman_3849-3850); the Rumba screens documenting the February 20, 2021 actions that led to the preparation of the February 21, 2020 Declarations Page on the Tahoe Policy (*see* SFMAIC_Workman_3851-3852); the Rumba screens showing Lamb III was not a rated driver on the Tahoe Policy (*see* SFMAIC_Workman_3670, SFMAIC_Workman_3712-3714), the Echo Policy Transaction showing the Lamb Excluded Driver Endorsement being submitted to and received by Underwriting on March 10, 2020 and March 11, 2020, respectively, and the Rumba screen documenting the March 11, 2020 imaging of the Lamb Excluded Driver Endorsement (*see* SFMAIC_Workman_3796; SFMAIC_Workman_3792), the note entered in Rumba documenting Underwriting's discovery of the processing omission with respect to the Lamb Excluded Driver Endorsement and the service request for the complex unit to complete the processing of the Lamb Excluded Driver Endorsement (*see* SFMAIC_Workman_3680); the Echo Policy Transaction showing Melvin O. Lamb, Jr.'s July 26, 2021 requested cancellation of the Tahoe Policy and Underwriting's receipt and processing of the same (*see* SFMAIC_Workman_3793), and the August 5, 2021 Certified Policy Record (*see* SFMAIC_Workman_3629-3656). State Farm is gathering and will produce the remaining excluded driver endorsements, effective October 27, 2017 and July 10, 2019, referred to in the May 24, 2022 Declaration.

State Farm objects to the remainder of this request as seeking materials not relevant to the subject matters involved in the pending action which, based on the pleadings, State Farm

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

understands to be its March 10, 2020 receipt and handling thereafter of the Lamb Excluded Driver Endorsement, up to and including its issuance of a new Declarations Page for the Tahoe Policy on July 14, 2021; its August 16, 2021 filing of the DJA in relation to Claim No. 40-21B2-49D; its coverage investigation in Claim No. 40-21B2-49D leading up to its August 16, 2021 filing of the DJA; and statements it made in the handling of Claim No. 40-21B2-49D about the existence of coverage or lack thereof prior to the August 16, 2021 filing of the DJA. Documents created by Ms. Anderson in connection with her May 24, 2022 Declaration and documents she reviewed but did not identify or reference in the May 24, 2022 Declaration—which include, for example, unsigned drafts of the May 24, 2022 Declaration and May 23 and May 24, 2022 emails Ms. Anderson exchanged with State Farm's undersigned counsel concerning her declaration—are not subject matters involved in the pending action, nor are they relevant to the involved subject matters. Even if they were relevant to the subject matters involved in the pending action, documents created by Ms. Anderson in connection with her May 24, 2022 Declaration and documents she reviewed but did not identify or reference in the May 24, 2022 Declaration—which include, for example, unsigned drafts of the May 24, 2022 Declaration and May 23 and May 24, 2022 emails with State Farm's undersigned counsel concerning her declaration—would still be outside the scope of discovery because they are protected by the attorney-client privilege and work product doctrine.

**8.      PRODUCE all records, notes and documents Lana Willingham created, reviewed and/or referred to in her declaration under penalty of perjury dated May 23, 2022 which was filed as Entry No. 81-4 in C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to the service request to process an excluded driver endorsement.**

        **SUPPLEMENTAL RESPONSE**: With respect to records and documents referenced in Lana Willingham's May 23, 2022 Declaration, State Farm directs Plaintiffs to the underwriting

records previously produced and Bates labeled SFMAIC_Workman_3663 through SFMAIC_Workman_3882, including the July 13, 2021 service request entered by Karina Bevis (MST4) for the complex unit to complete the processing of the Lamb Excluded Driver Endorsement (*see* N1 appearing on SFMAIC_Workman_3680) and the Rumba screens showing the system reassignment of Melvin O. Lamb, Jr. as an assigned driver of the Tahoe (*see* SFMAIC_Workman_3748-3751).

State Farm objects to the remainder of this request as seeking materials not relevant to the subject matters involved in the pending action which, based on the pleadings, State Farm understands to be its March 10, 2020 receipt and handling thereafter of the Lamb Excluded Driver Endorsement, up to and including its issuance of a new Declarations Page for the Tahoe Policy on July 14, 2021; its August 16, 2021 filing of the DJA in relation to Claim No. 40-21B2-49D; its coverage investigation in Claim No. 40-21B2-49D leading up to its August 16, 2021 filing of the DJA; and statements it made in the handling of Claim No. 40-21B2-49D about the existence of coverage or lack thereof prior to the August 16, 2021 filing of the DJA. Documents created by Ms. Willingham in connection with her May 23, 2022 Declaration and documents she reviewed but did not identify or reference in her declaration—which include, for example, unsigned drafts of the May 23, 2022 Declaration and May 23, 2022 emails Ms. Willingham exchanged with State Farm's undersigned counsel concerning her declaration—are not subject matters involved in the pending action, nor are they relevant to the involved subject matters. Even if they were relevant to the subject matters involved in the pending action, documents created by Ms. Willingham in connection with her May 23, 2022 Declaration and documents she reviewed but did not identify or reference in her declaration—which include, for example, unsigned drafts of the May 23, 2022 Declaration and May 23, 2022 emails with State Farm's undersigned counsel concerning her

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

declaration—would still be outside the scope of discovery because they are protected by the attorney-client privilege and work product doctrine.

**9.     PRODUCE all records, notes and documents Darren Murdoch created, reviewed and/or referred to in his declaration under penalty of perjury dated May 23, 2022 which was filed as Entry No. 81-3 in C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to paragraphs 12-16.**

SUPPLEMENTAL RESPONSE: With respect to information, events and activities referenced in Darren Murdoch's May 23, 2022 Declaration, State Farm directs Plaintiffs to the nonprivileged, non-work product protected portions of the Claim File, previously produced and Bates labeled SFMAIC_Workman_0001 through SFMAIC_Workman_3662. Specifically, State Farm directs Plaintiffs to the portion of the June 18, 2021 file note of Christine Riddick documenting a possible driver exclusion for Lamb III and her investigation of the same (*see* SFMAIC_Workman_0140-141); the portion of the June 18, 2021 file note of Lee Shivers documenting his conversation with Mark Black of State Farm Agent Jack Tankersley's office regarding an excluded driver endorsement on the Tahoe Policy (*see* SFMAIC_Workman_0140); the portion of the June 19, 2021 file note of Mr. Murdoch requesting Mr. Shivers call Underwriting to verify there was no excluded driver on the Tahoe Policy because it would be unusual for there to be an excluded driver on some but not all household cars (*see* SFMAIC_Workman_0139); the portion of the June 29, 2021 file note entered by Mr. Shivers documenting his call with Underwriting confirming there was not an excluded driver on the Tahoe Policy (*see* SFMAIC_Workman_0137); the June 16, 2021 file notes entered by Mr. Shivers and Mr. Murdoch at 3:18 PM CDT and 2:56 PM CDT, respectively, documenting what they learned from Underwriting about the existence of the Lamb Excluded Driver Endorsement (*see*

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

SFMAIC_Workman_0132); the August 4, 2021 Reservation of Rights letters sent to Melvin O. Lamb, Jr. and Lamb III (*see* SFMAIC_Workman_0755-758); the August 4, 2021 file note entered by Mr. Shivers documenting his request for a certified copy of the Tahoe Policy (*see* SFMAIC_Workman_0123); and the August 5, 2021 certified copy of the Tahoe Policy (*see* SFMAIC_Workman_3629-3656).

State Farm objects to the remainder of this request as seeking materials not relevant to the subject matters involved in the pending action which, based on the pleadings, State Farm understands to be its March 10, 2020 receipt and handling thereafter of the Lamb Excluded Driver Endorsement, up to and including its issuance of a new Declarations Page for the Tahoe Policy on July 14, 2021; its August 16, 2021 filing of the DJA in relation to Claim No. 40-21B2-49D; its coverage investigation in Claim No. 40-21B2-49D leading up to its August 16, 2021 filing of the DJA; and statements it made in the handling of Claim No. 40-21B2-49D about the existence of coverage or lack thereof prior to the August 16, 2021 filing of the DJA. Documents created by Mr. Murdoch in connection with his May 23, 2022 Declaration and documents he reviewed but did not identify or reference in his declaration—which include, for example, unsigned drafts of the May 23, 2022 Declaration and May 23, 2022 emails Mr. Murdoch exchanged with State Farm's undersigned counsel concerning his declaration— are not subject matters involved in the pending action, nor are they relevant to the involved subject matters. Even if they were relevant to the subject matters involved in the pending action, documents created by Mr. Murdoch in connection with his May 23, 2022 Declaration and documents he reviewed but did not identify or reference in his declaration—which include, for example, unsigned drafts of the May 23, 2022 Declaration and May 23, 2022 emails he exchanged with State Farm's undersigned counsel concerning his

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

declaration—would still be outside the scope of discovery because they are protected by the attorney-client privilege and work product doctrine.

10.     **PRODUCE each endorsement and declarations page created by State Farm from the inception of any coverage through the present for the Tahoe at issue referenced in the Complaint filed in Civil Action 2:21-cv-2623-MBS and all documentation supporting the reasons said documents were created.**

**SUPPLEMENTAL RESPONSE**: While there were endorsements that formed part of the Tahoe Policy, State Farm did not create endorsements for the Tahoe Policy. The Declarations Pages created for the Tahoe Policy were prepared by State Farm on February 21, 2020, September 8, 2020, and July 14, 2021. Both the Declarations Pages and the endorsements on the Tahoe Policy were produced to the Workman Estate's counsel in the DJA and, therefore, Plaintiffs' counsel has been in possession of the requested documents since before this action was filed. State Farm further directs Plaintiffs to the previously produced nonprivileged, non-work product protected portions of the Claim File (*see* SFMAIC_Workman_3155-3163, SFMAIC_Workman_3165-3170, SFMAIC_Workman_3180-3199, SFMAIC_Workman_3642-3649, SFMAIC_Workman_3651-3656, and SFMAIC_Workman_3658) as well as the previously produced nonprivileged, non-work product protected portions of the underwriting records (SFMAIC_Workman_3808-3827, SFMAIC_Workman_3840-3848), both of which also contains these Declaration Pages and endorsements that were part of the Tahoe Policy from inception.

With respect to documentation of the policy transactions/entries that caused each of the three Declarations Pages to be issued, State Farm directs Plaintiffs to the Rumba screens—specifically, the Premium History screens and corresponding Detailed Deposit Information screens—previously produced in the underwriting records which document the policy transactions

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

and actions that led to the Tahoe Policy's Declarations Pages prepared February 21, 2020, September 8, 2020, and July 14, 2021 (*see* SFMAIC_Workman_3849-3852, SFMAIC_Workman_3865-3866, SFMAIC_Workman_3879-3880).

11.    **PRODUCE State Farm policies, processes and/or procedures for driver exclusion agreements related to keeping or retaining acceptable policyholders while excluding certain drivers in the household exclusions that were in effect from January 1, 2020 through the present.**

**SUPPLEMENTAL RESPONSE**: State Farm directs Plaintiff to the following chapters of the Auto Process Guide, previously produced under the Confidentiality Order and Bates labeled WORKMAN00000513PROD-WORKMAN000000894PROD, concerning the use of and how to enter Driver Exclusion Endorsements that were in effect on or between January 1, 2020 and July 14, 2021, the date the last Declarations Page on the Tahoe Policy was prepared and the date by which Lana Willingham had handled the July 13, 2021 service request concerning the Lamb Excluded Driver Endorsement as evidenced on the Premium History and Detailed Deposit Information screens for the deposit number 48739 (*see* SFMAIC_Workman_3879-3880):

| Auto Process Guide | Version Date | Bates Labeled: |
|---|---|---|
| PG 140-E04; Entering Endorsements and Exceptions | 8/29/2019 | WORKMAN00000602PROD-WORKMAN00000608PROD |
| PG 140-E04; Entering Endorsements and Exceptions | 4/6/2020 | WORKMAN00000595PROD-WORKMAN00000601PROD |
| PG 140-E04; Entering Endorsements and Exceptions | 6/25/2020 | WORKMAN00000556PROD-WORKMAN00000562PROD |
| PG 140-E04; Entering Endorsements and Exceptions | 9/3/2020 | WORKMAN00000563PROD-WORKMAN00000569PROD |
| PG 140-E04; Entering Endorsements and Exceptions | 9/29/2020 | WORKMAN00000542PROD-WORKMAN00000548PROD |
| PG 140-E04; Entering Endorsements and Exceptions | 10/14/2020 | WORKMAN00000549PROD-WORKMAN00000555PROD |
| PG 140-E04; Entering Endorsements and Exceptions | 10/20/2020 | WORKMAN00000577PROD-WORKMAN00000583PROD |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | |
|---|---|---|
| PG 140-E04; Entering Endorsements and Exceptions | 11/11/2020 | WORKMAN00000524PROD-WORKMAN00000530PROD |
| PG 140-E04; Entering Endorsements and Exceptions | 11/18/2020 | WORKMAN00000570PROD-WORKMAN00000576PROD |
| PG 140-E04; Entering Endorsements and Exceptions | 12/24/2020 | WORKMAN00000517PROD-WORKMAN00000523PROD |
| PG 140-E04; Entering Endorsements and Exceptions | 5/18/2021 | WORKMAN00000584PROD-WORKMAN00000590PROD |
| PG 260-D01; Driver Exclusion Agreement | 11/8/2019 | WORKMAN00000807PROD-WORKMAN00000828PROD |
| PG 260-D01; Driver Exclusion Agreement | 2/13/2020 | WORKMAN00000873PROD-WORKMAN00000894PROD |
| PG 260-D01; Driver Exclusion Agreement | 6/17/2020 | WORKMAN00000631PROD-WORKMAN00000652PROD |
| PG 260-D01; Driver Exclusion Agreement | 7/8/2020 | WORKMAN00000675PROD-WORKMAN00000696PROD |
| PG 260-D01; Driver Exclusion Agreement | 7/29/2020 | WORKMAN00000653PROD-WORKMAN00000674PROD |
| PG 260-D01; Driver Exclusion Agreement | 12/15/2020 | WORKMAN00000697PROD-WORKMAN00000718PROD |
| PG 260-D01; Driver Exclusion Agreement | 2/8/2021 | WORKMAN00000851PROD-WORKMAN00000872PROD |
| PG 260-D01; Driver Exclusion Agreement | 3/17/2021 | WORKMAN00000719PROD-WORKMAN00000740PROD |
| PG 260-D01; Driver Exclusion Agreement | 5/11/2021 | WORKMAN00000763PROD-WORKMAN00000784PROD |
| PG 260-D01; Driver Exclusion Agreement | 6/1/2021 | WORKMAN00000609PROD-WORKMAN00000630PROD |
| PG 260-D01; Driver Exclusion Agreement | 6/8/2021 | WORKMAN00000741PROD-WORKMAN00000762PROD |
| PG 260-D01; Driver Exclusion Agreement | 6/9/2021 | WORKMAN00000829PROD-WORKMAN00000850PROD |
| PG 260-D01; Driver Exclusion Agreement | 6/28/2021 | WORKMAN00000785PROD-WORKMAN00000806PROD |
| PG500-C04; Certified Policy Record and Confirmation of Coverage | 4/8/2020 | WORKMAN00000531PROD-WORKMAN00000541PROD |
| PG 540-D04; Driver Exclusion Screen | 10/1/2019 | WORKMAN00000513PROD-WORKMAN00000516PROD |
| PG 540-D04; Driver Exclusion Screen | 2/18/2020 | WORKMAN00000591PROD-WORKMAN00000594PROD |

State Farm objects to the remainder of this request which seeks production of the above policies, processes, and procedures for driver exclusion agreements with a first effective date after July 14, 2021 as being overly broad and seeking production of materials not relevant to the subject matters involved in the pending action. While State Farm's March 10, 2020 receipt and handling

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

thereafter of the Lamb Excluded Driver Endorsement, up to and including its issuance of a new Declarations Page for the Tahoe Policy on July 14, 2021, is a subject matter involved in the pending action, Lana Willingham handled the service request concerning the Lamb Excluded Driver Endorsement on July 13, 2021 and Ms. Willingham's actions on the Tahoe Policy resulted in the Declarations Page on the Tahoe Policy being prepared July 14, 2021, as evidenced by the previously produced underwriting records  (*see* SFMAIC_Workman_3879-3880).

12.    **PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval or that the South Carolina Department of Insurance approved the form 6023DC attached to the Complaint filed in the declaratory judgment civil action number 2:21-cv-2623-MBS. If no such documentation exists, please state that.**

SUPPLEMENTAL RESPONSE: State Farm submitted form 6023DC to the SCDOI for approval for two types of insurance, private passenger auto and commercial auto, in November 2009. The submissions were made under SERFF filing numbers SFMA-126372492 and SFMA-126372966, respectively, and both were approved by the SCDOI in April 2010. Records of State Farm's submission and the SCDOI's approval of form 6023DC were previously produced and are Bates labeled WORKMAN00000040PROD-WORKMAN00000284PROD and WORKMAN 00000285PROD-WORKMAN00000496PROD. At some point after implementation of 6023DC, State Farm determined it would be beneficial to State Farm and its policyholders to include identifying information on the form for tracking purposes. Therefore, lines for policyholder name; policy #; and effective date of the form were placed onto the top portion of 6023DC. Included in Exhibit A to the Complaint filed in the DJA is the Lamb Excluded Driver Endorsement, which is an example of the form with those three lines of identifying information added. Because the

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

original approved contents of 6023DC were not changed in any way by the addition of the three lines for identifying information, State Farm's belief was that these administrative changes did not require a reapproval of 6023DC and, therefore, reapproval of 6023DC with those three lines of identifying information added was not sought. Accordingly, State Farm does not have documentation showing form 6023DC with the three lines of identifying information added was resubmitted to or reapproved by the SCDOI.

**13.     PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval and/or that the South Carolina Department of Insurance approved the form 6023DC before January 1, 2022.**

**SUPPLEMENTAL RESPONSE**: State Farm, in November 2009, submitted to the SCDOI for approval form 6023DC for private passenger auto and commercial auto insurance under SERFF filing numbers SFMA-126372492 and SFMA-126372966, the form was approved for both types of insurance in April 2010, and the records reflecting State Farm's 2009 submission and the SCDOI's 2010 approval of 6023DC have already been produced and are Bates labeled WORKMAN00000040PROD through WORKMAN00000496PROD. State Farm objects to the remainder of this request for "all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval and/or that the South Carolina Department of Insurance approved the form 6023DC before January 1, 2022" as overly broad, unreasonably cumulative and duplicative, unduly burdensome, and potentially invading protections afforded by the attorney-client privilege. While there may be other "documentation showing" State Farm's submission of form 6023DC in 2009 and the SCDOI's approval of the form in 2010—for example, emails confirming or discussing the submission or the approval—the 2009 submission and the 2010 approval of 6023DC are not disputed events or questions of fact in the case. Accordingly,

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

the request that State Farm search for, gather, review, and produce "all documentation showing" the 2009 submission by State Farm and the 2010 approval by the SCDOI, beyond that which has already been produced, is unreasonably cumulative and duplicative and may include attorney-client privileged communications between State Farm and its counsel which would, in any event, be outside the scope of discovery permitted under Rule 26(b)(1).

**14.      PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval or that the South Carolina Department of Insurance approved the form 6023DC after January 1, 2022.**

**SUPPLEMENTAL RESPONSE**: As explained in its answer to Supplemental Request No. 12 to Plaintiffs' First Discovery Requests, State Farm submitted form 6023DC for approval to the SCDOI in 2009 and the SCDOI approved form 6023DC in 2010, as reflected in the records previously produced and Bates labeled WORKMAN00000040PROD through WORKMAN00000496PROD. State Farm did not resubmit form 6023DC to the SCDOI for approval after January 1, 2022. Instead, after it discontinued use of 6023DC with the addition of three lines of identifying information, State Farm submitted to the SCDOI for approval in May 2022 a new form, *6023DC.1 Driver Exclusion Endorsement*, for private passenger auto and commercial auto insurance under SERFF filing numbers SFMA-133257167 and SFMA-133257167, and *6023DC.1 Driver Exclusion Endorsement* was approved for both types of insurance by the SCDOI in June 2022. Accordingly, State Farm has no documentation responsive to this request as drafted.

**15.      To the extent not already produced, PRODUCE State Farm's complete file and documentation related to submission and approval by the South Carolina Department of Insurance for the Form 6023DC Driver Exclusion attached to the Complaint in Civil**

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Action 2:21-cv-2623-MBS. **This includes letters sent by State Farm to the South Carolina Department of Insurance as well as communications received.**

**SUPPLEMENTAL RESPONSE**: State Farm submitted form 6023DC to the SCDOI for approval for two types of insurance, private passenger auto and commercial auto, in November 2009. The submissions were made under SERFF filing numbers SFMA-126372492 and SFMA-126372966, respectively, and both were approved by the SCDOI in April 2010. Records of State Farm's 2009 submission and the SCDOI's 2010 approval of form 6023DC were previously produced and are Bates labeled WORKMAN00000040PROD-WORKMAN00000284PROD and WORKMAN00000285PROD-WORKMAN00000496PROD. At some point after implementation of 6023DC, State Farm determined it would be beneficial to State Farm and its policyholders to include identifying information on the form for tracking purposes. Therefore, lines for policyholder name; policy #; and effective date of the form were placed onto the top portion of 6023DC. Included in Exhibit A to the Complaint filed in the DJA is the Lamb Excluded Driver Endorsement, which is an example of the form with those three lines of identifying information added. Because the original approved contents of 6023DC were not changed in any way by the addition of the three lines for identifying information, State Farm's belief was that these administrative changes did not require a reapproval of 6023DC and, therefore, reapproval of 6023DC with those three lines of identifying information added was not sought. Accordingly, State Farm does not have documentation showing form 6023DC with the three lines of identifying information added was resubmitted to or reapproved by the SCDOI. State Farm only has documentation showing form 6023DC without the three lines of identifying information added was submitted to and approved by the SCDOI, which documentation relates to whether the Lamb Excluded Driver Endorsement was approved by the SCDOI and has already been produced.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

To the extent it seeks documentation beyond that which has already been produced with respect to form 6023DC, State Farm objects to this request which seeks "State Farm's complete file and documentation *related to* submission and approval by the [SCDOI] for the Form 6023DC Driver Exclusion attached to the Complaint in [the DJA]"—that is, 6023DC with the three lines of identifying information added—as overly broad and, as a result, seeking documentation and materials not relevant to the subject matters involved in the pending action because it is unlimited in time. While State Farm's filing of the DJA with the Lamb Excluded Driver Endorsement as an attachment to its Complaint in August 2021 is a subject matter involved in the pending litigation, this request goes beyond the documentation of the November 2009 submission and April 2010 approval of 6023DC, which is the documentation State Farm had in its possession when it filed the DJA with the Lamb Excluded Driver Endorsement as an attachment thereto. This request, as drafted without temporal limits, would encompass, for example, documentation created on and after December 14, 2021, including materials and communications prepared by or for counsel in connection with State Farm's defense of the February 10, 2022 Motion for Sanctions filed by Plaintiffs' counsel on behalf of the Workman Estate in the DJA, materials and communications prepared by or for counsel in connection with State Farm's defense of this action (*e.g.*, materials and communications prepared by or for counsel in connection with this objection would be swept up by the unlimited scope of this request), and materials and communications prepared in connection with replies of State Farm to inquiries made or examinations conducted by the SCDOI. Such documentation is not only outside the scope of discovery because it is not relevant to the subject matters involved in the pending litigation, it also includes documentation protected from disclosure under S.C. Code Ann. §§ 38-13-30(F), 38-13-140, and 38-13-160 and documentation

otherwise outside the scope of discovery because it is attorney-client privileged or work product protected.

16.     **PRODUCE each communication sent by State Farm denying claims based upon the State Farm South Carolina 6023DC Driver Exclusion Form for the time period of May 1, 2019 through May 1, 2022. This is not limited to Plaintiffs in this case.**

**SUPPLEMENTAL RESPONSE:** State Farm objects to this request for production as seeking material not relevant to the subject matter of the pending action, which, based on the pleadings, State Farm understands to be its March 10, 2020 receipt and handling thereafter of the Lamb Excluded Driver Endorsement, up to and including its issuance of a new Declarations Page for the Tahoe Policy on July 14, 2021; its August 16, 2021 filing of the DJA in relation to Claim No. 40-21B2-49D; its coverage investigation in Claim No. 40-21B2-49D leading up to its August 16, 2021 filing of the DJA; and statements made by State Farm in the handling of Claim No. 40-21B2-49D about the existence of coverage or lack thereof prior to the August 16, 2021 filing of the DJA. State Farm used 6023DC with the additional three lines of identifying information on it, an example of which is the Lamb Excluded Driver Endorsement, with the understanding it was an approved form. No substantive terms of Form 6023DC approved by the SCDOI in 2010 were changed or modified by the addition of three lines of identifying information. While Plaintiffs may take the position the Lamb Excluded Driver Endorsement was not approved by the SCDOI because of the addition of three lines of identifying information, there has been no such finding by the Court, much less a finding that form 6023DC with addition of three lines of identifying information was invalid or unenforceable under S.C. Code § 38-77-340 even if "unapproved" as claimed by Plaintiffs. Given the subject matters involved in the pending action, the lack of any finding by a court that 6023DC with the addition of three lines of identifying information constituted the use

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

of an unapproved form, the lack of any finding by a court that 6023DC with the addition of three lines of identifying information was invalid or unenforceable under S.C. Code § 38-77-340, and the fact that this is not a purported class action and Rule 34 cannot be used to facilitate a fishing expedition, communications State Farm sent *a non-party insured* or *non-party claimants* disclaiming or otherwise denying coverage on *other claims* (not the subject Claim No. 40-21B2-49D) based on form 6023DC that included the additional three lines of identifying information on it and had been executed and accepted by *a non-party insured* of State Farm as being part of the *non-party's automobile insurance policy* (not the Tahoe Policy) at this time would have no bearing on any genuine question of material fact pertaining to the subject matters involved in the pending action.

      **17.    As to the Tahoe at issue, PRODUCE each certified policy record which underwriter Jessica Bass or anyone else at State Farm created, including but not limited to those dated 08/05/2021 and 11/22/2021 and PRODUCE the requests and responses related to generating each certified policy record.**

      **SUPPLEMENTAL RESPONSE:** The Certified Policy Records dated August 5, 2021 and November 22, 2021 are the only Certified Policy Records created by State Farm on the Tahoe Policy for the June 12, 2021 Date of Loss for Claim No. 40-21B2-49D. State Farm directs Plaintiffs to the August 4, 2021 request by Lee Shivers for a certified copy of the Tahoe Policy previously produced by State Farm and Bates labeled WORKMAN00000001PROD-WORKMAN00000002PROD; the August 5, 2021 response from Underwriting to Lee Shivers' August 4, 2021 certified policy request, previously produced and Bates labeled WORKMAN00000003PROD-WORKMAN00000005PROD; the August 5, 2021 Certified Policy Record, previously produced and Bates labeled SFMAIC_Workman_3629-3656,

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

SFMAIC_Workman_3143-3170; the November 19, 2021 request of Ms. Anderson for a certified copy of the Tahoe Policy, previously produced by State Farm and Bates labeled WORKMAN00000006PROD-WORKMAN00000007PROD; and the November 22, 2021 responses from Jessica Bass to Ms. Anderson's November 19, 2021 certified policy request and attached November 22, 2021 Certified Policy Record, previously produced and Bates labeled WORKMAN00000006PROD and WORKMAN00000008PROD-WORKMAN00000036PROD.

18.    **PRODUCE all documents, including the files, notes, computer entries, who made the entries, the audit trail and the like for each computer system of State Farm showing the creation, storage, management, access, including who accessed a web-based system called ECS related to the claims involving Mr. Lamb and Plaintiffs.**

**SUPPLEMENTAL RESPONSE**: Information and materials related to Claim No. 40-21B2-49D were created, stored, managed, and accessed in ECS.  State Farm has already produced the nonprivileged, non-work product protected portions of the Claim File for Claim No. 40-21B2-49D, which includes the nonprivileged, non-work product protected documents stored, managed, and accessed in ECS and the nonprivileged, non-work product protected notes and entries created, stored, managed, and accessed in ECS. With respect to when such documents were added to the Claim File and by whom, State Farm directs Plaintiffs to the Document List Details Report (SFMAIC_Workman_0628-743) included in the previously produced Claim File.  With respect to who entered the file notes (including those that were redacted based on attorney-client privilege or work product as reflected in State Farm's First Supplemental Privilege Log) and when those notes were entered, each of the file notes in the previously produced Claim File identifies the individual who entered the file note and the date and time the file note was entered. With respect to other nonprivileged, non-work product protected entries in ECS on Claim No. 40-21B2-49D and any

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

updates or modifications to those entries, the "File History - File Note System Generated," "File History - Tasks,"  "File History - File Changes," and "File History - Financial Changes," sections of the previously produced Claim File (SFMAIC_Workman_0142-423) identifies the individual who made or otherwise updated the entries and the date and time of such entries/updates. State Farm objects to the remainder of this request which seeks "the audit trail and the like" for ECS, including the identification of every person who has ever accessed Claim No. 40-21B2-49D in ECS at any time, for any purpose, as being overly broad and seeking information and materials not relevant to the subject matters involved in the pending action. To the extent an individual accessed Claim No. 40-21B2-49D in ECS during the time of the subject matters involved in the pending litigation and entered a file note, created an entry, or modified an entry, their identity is already disclosed in the previously produced Claim File. To the extent an individual accessed Claim No. 40-21B2-49D in ECS during the time of the subject matters involved in the pending litigation but did not enter a file note or create or modify an entry in ECS, then their identity has no relevance to the subject matters involved in the pending action. Moreover, because the request is unlimited in time and Claim No. 40-21B2-49D is open and will remain open through the defense of this litigation, it seeks the identities of individuals who accessed Claim No. 40-21B2-49D in ECS long after the time period of the subject matters involved in the pending action, including the identities of individuals who accessed Claim No. 40-21B2-49D solely for purposes of the defense of this litigation.

**19.     PRODUCE all State Farm's policies, procedures, guidelines and/or rules that were to be followed when creating and/or modifying a declaration page such as the one at issue in this case for the time period of January 1, 2020 through the present.**

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**SUPPLEMENTAL RESPONSE**: Assuming the Declarations Page "at issue in this case" is the Declarations Page to the Tahoe Policy prepared July 14, 2021 that was included in Exhibit A to the Complaint filed in the DJA, State Farm directs Plaintiffs to PG 140-E04, Entering Endorsements and Exceptions, dated May 18, 2021 and in effect on July 13, 2021, the date Lana Willingham processed the Lamb Excluded Driver Endorsement, which is addressed in PG 140-E04 and is the policy transaction that resulted in the new Declarations Page prepared on July 14, 2021 for the Tahoe Policy. State Farm objects to the remainder of this request which seeks production of policies, processes, and procedures not in effect on July 13, 2021, the date Ms. Willingham processed the Lamb Excluded Driver Endorsement, which is addressed in PG 140-E04, or July 14, 2021, the date the resulting Declarations Page on the Tahoe Policy was prepared, as overly broad and seeking information not relevant to the parties' claims and defenses.

20.     **PRODUCE the employment files for each State Farm employee, including those listed below, who was involved with the changes made to the declarations page at issue, including a signed copy of their completed Code of Conduct form to be completed annually. (The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest.) This request to produce also includes write ups for violations of State Farm policies.**

      a.   **Jessica Bass**

      b.   **Lee Shivers**

      c.   **Shay Anderson**

      d.   **Darren P Murdoch**

      e.   **Lana Willingham**

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**SUPPLEMENTAL RESPONSE**: As best State Farm can understand this request and Plaintiffs' allegations, Jessica Bass, Lee Shivers, Shay Anderson and Darren P. Murdoch were not "involved with the changes made to the declarations page at issue." As explained in the DJA and in these discovery responses, State Farm's underwriting system (not a particular person) prepared the Tahoe Policy's Declaration Page included in Exhibit A to the Complaint filed in the DJA after Lana Willingham, a Complex Underwriting Service Assistant in State Farm's underwriting department, handled on July 13, 2021, a service request to process an excluded driver endorsement on the Tahoe Policy. Furthermore, State Farm objects to the request for production of "the employment files," all "completed Code of Conduct form[s]," and "write ups for violations of State Farm policies" "for each State Farm employee … who was involved with the changes made to the declarations page at issue," whether such employee is specifically listed or unidentified in the request, as being overly broad in time and subject matter, irrelevant, and unjustifiably seeking confidential, personal information of employees. Employment files contain a myriad of materials that have no relevance to the subject matter of this case, including, for example, employment offers and acceptances, records of changes to an employee's position or compensation, as well as irrelevant, highly sensitive materials such as copies of birth certificates, driver's licenses, and social security cards. In terms of overbreadth, the fact the request is also unlimited in time is significant; for example, Jessica Bass, Shay Anderson, Darren Murdoch, and Lana Willingham have each been employed with State Farm for over twenty years.

**23.     To the extent not already produced, PRODUCE Defendant State Farm's complete claims file relating to the claims made as a result of the collision at issue in this action regardless of who submitted a claim, whether maintained in defendant's field office, regional office, home office, or any other office, including without limitation:**

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

a.   All letters, memoranda, and other forms of written or computerized communication to or from any employee of defendant relating in any way to the processing of the claim at issue in this action;

b.   All written or computerized records of any oral communication, whether in person or by telephone, to or from any employee of defendant relating in any way to the processing of the claim at issue in this action;

c.   All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any claimant relating in any way to the collision at issue in this action;

d.   All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any third party relating in any way to the claim at issue in this action;

e.   All written or computerized records of any investigation conducted in connection with the claim at issue in this action;

f.   All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, to or from any employee of defendant relating in any way to the decision to deny claims asserted in the collision;

g.   All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any third party relating in any way to the decision to deny Plaintiffs claims;

h.   All other written or computerized documents pertaining to the claim at issue in this litigation; and

i.   The file folders in which the preceding documents are kept.

**SUPPLEMENTAL RESPONSE**: State Farm directs Plaintiffs to the nonprivileged, non-work product portions of the Claim File for Claim No. 40-21B2-49D, previously produced and Bates

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

labeled SFMAIC_Workman_0001 through SFMAIC_Workman_3662, which constitutes the complete Claim File as of May 5, 2022, the date it was generated for production outside of ECS, and State Farm's First Supplemental Privilege Log, which was served contemporaneously with State Farm's production of the Claim File and identifies the portions thereof that were redacted or otherwise withheld based on the attorney-client privilege or the work product doctrine. State Farm objects to the request for items (a) through (i) as overly broad, irrelevant, and potentially unduly burdensome because items (a) through (i) go beyond that which is included in the Claim File and the request is unlimited in time and not reasonably tailored in scope. In this regard, the period of time in which Claim No. 40-21B2-49D was open and handled far exceeds the period of time in which the alleged conduct occurred and, in any event, not all aspects of Claim No. 40-21B2-49D are relevant to the subject matter of this action.

24. **PRODUCE State Farm's complete underwriting files referring or relating in any way to the policy at issue in this action, including without limitation:**

    a. **All letters, memoranda, and other forms of written or computerized communication and written or computerized records of oral communications, whether in person or by telephone, referring or relating in any way to the issuance of the policy at issue in this action; and**

    b. **The file folders in which the preceding documents are kept.**

**SUPPLEMENTAL RESPONSE**: State Farm does not maintain a physical file folder with respect to most policies, and it did not maintain a physical file folder with respect to the Tahoe Policy. Instead, underwriting information and documents for the Tahoe Policy were created, stored, managed, and accessed electronically in multiple locations. State Farm directs Plaintiffs to the nonprivileged, non-work product protected underwriting records previously produced and Bates labeled SFMAIC_Workman_3663 through SFMAIC_Workman_3882. Contemporaneously with its

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

production of the portion of the underwriting records Bates labeled SFMAIC_Workman_3663 through SFMAIC_Workman_3848, State Farm served its Second Supplemental Privilege Log identifying and describing the redactions made therein on the basis of attorney-client privilege or the work product doctrine. To the extent this request also seeks "all … written or computerized communication and written or computerized records of oral communications … relating in any way to the issuance of" the Tahoe Policy," State Farm objects to the request on grounds of overbreadth, relevance, and potential undue burden given the request is unlimited in time and further because the issuance of the Tahoe Policy in February 2020 is not an issue in dispute in this litigation.

25.     **PRODUCE All claims manuals, memoranda, directives, letters, and other forms of written or computerized communication directed to claims personnel, claims managers, claims supervisors, or any other person acting on behalf of State Farm in the handling of claims that refer or relate in any way to the handling of claims generally or to the handling of claims of like character to the claim at issue in this action, including without limitation:**

    a.     **the documents reflecting State Farm's claim settlement policies as they existed at the time State Farm denied the claims at issue in this action; and**

    b.     **the documents reflecting any subsequent changes of policy.**

**SUPPLEMENTAL RESPONSE**: State Farm objects to this request for production, which is unlimited in time and scope and seeks, among other things, all "written … communication" that "refer or relate in any way to the handling of claims generally" and was "directed to claims personnel, claims managers, claims supervisors, or any other person acting on behalf of State Farm in the handling of claims," as overbroad, unduly burdensome, and seeking materials that are not relevant to the subject matters involved in the pending action. As an initial matter, the request is unlimited in time and scope. The subject matters involved in the pending litigation—State Farm's March 10,

47

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

2020 receipt and handling thereafter of the Lamb Excluded Driver Endorsement, up to and including its issuance of a new Declarations Page for the Tahoe Policy on July 14, 2021; State Farm's August 16, 2021 filing of the DJA in relation to Claim No. 40-21B2-49D; State Farm's coverage investigation in Claim No. 40-21B2-49D leading up to its August 16, 2021 filing of the DJA; and statements made by State Farm in the handling of Claim No. 40-21B2-49D about the existence of coverage or lack thereof prior to the August 16, 2021 filing of the DJA—are not. Further, Plaintiffs were not State Farm's insureds, there is no claim, nor could there be any claim, for bad faith claim handling brought by Plaintiffs, and State Farm, as a matter of law, owed no duties to Plaintiffs with respect to the handling of Claim No. 40-21B2-49D. Accordingly, the broad request for all communications that refer or relate "in any way to the handling of claims generally," or even "claims of like character" to Claim No. 40-21B2-49D is outside the scope of discovery.

Based on and subject to these objections, State Farm directs Plaintiffs to the Auto Claim Manual Sections produced herewith and Bates labeled WORKMAN00005451PROD through WORKMAN00005490PROD as well as the previously produced Auto Claim Manual sections, Standard Claim Processes, and Jurisdictional References, some of which were produced pursuant to the February 5, 2024 Confidentiality Order, all of which were in effect on or between June 12, 2021, the date of loss on Claim No. 40-21B2-49D, and August 16, 2021, the date State Farm filed the DJA, and concern, whether in whole or in part, communications concerning coverage with third-party claimants or their counsel during the handling of third-party liability claims, coverage investigations of third-party liability claims, third-party liability claims with excess exposure, third-party liability claim settlement practices, and filing of declaratory judgment actions:

| Auto Claim Manual | Version Date | Bates Labeled |
|---|---|---|
| Our Commitment to Our Policyholders | 9/16/2015 | WORKMAN00000038PROD-WORKMAN00000038PROD |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| Preface | 12/11/2019 | WORKMAN00000037PROD-WORKMAN00000037PROD |
| Claims With Excess Exposure | 12/18/2019 | WORKMAN00000039PROD-WORKMAN00000039PROD |
| Investigation Of Coverage Questions | 7/29/2020 | WORKMAN00005451PROD-WORKMAN00005469PROD |
| Monitoring Injury Files | 9/30/2020 | WORKMAN00005489PROD-WORKMAN00005490PROD |
| Monitoring Injury Files | 6/23/2021 | WORKMAN00005470PROD-WORKMAN00005471PROD |
| Property and Casualty Claims Reporting | 6/2/2021 | WORKMAN00000497PROD-WORKMAN00000504PROD |
| Property and Casualty Claims Reporting | 6/23/2021 | WORKMAN00000505PROD-WORKMAN00000512PROD |
| Liability Coverage For Bodily Injury (BI); Uninsured Motorist - Bodily Injury (UM); Underinsured Motorist - Bodily Injury (UIM) | 3/31/2021 | WORKMAN00005472PROD-WORKMAN00005488PROD |

| Auto Standard Claim Process | Pull Date | Bates Labeled |
|---|---|---|
| Preface | 6/12/2021 | WORKMAN00001086PROD-WORKMAN00001086PROD |
| Preface | 7/1/2021 | WORKMAN00001002PROD-WORKMAN00001002PROD |
| Claim Investigation | 6/12/2021 | WORKMAN00001087PROD-WORKMAN00001105PROD |
| Claim Investigation | 7/1/2021 | WORKMAN00000895PROD-WORKMAN00000913PROD |
| Claim Activity and Processing | 6/12/2021 | WORKMAN00001106PROD-WORKMAN00001193PROD |
| Claim Activity and Processing | 7/1/2021 | WORKMAN00000914PROD-WORKMAN00001001PROD |

| Auto Jurisdictional Reference | Pull Date | Bates Labeled |
|---|---|---|
| Preamble | 6/12/2021 | WORKMAN00001194PROD-WORKMAN00001194PROD |
| Preamble | 7/1/2021 | WORKMAN00001003PROD-WORKMAN00001003PROD |
| Informational Links | 6/12/2021 | WORKMAN00001195PROD-WORKMAN00001195PROD |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| Informational Links | 7/1/2021 | WORKMAN00001004PROD-WORKMAN00001004PROD |
| Contact and Notification | 6/12/2021 | WORKMAN00001196PROD-WORKMAN00001215PROD |
| Contact and Notification | 7/1/2021 | WORKMAN00001005PROD-WORKMAN00001024PROD |
| Coverage | 6/12/2021 | WORKMAN00001216PROD-WORKMAN00001242PROD |
| Coverage | 7/1/2021 | WORKMAN00001025PROD-WORKMAN00001051PROD |
| Demands | 6/12/2021 | WORKMAN00001243PROD-WORKMAN00001244PROD |
| Demands | 7/1/2021 | WORKMAN00001052PROD-WORKMAN00001053PROD |
| Settlement | 6/12/2021 | WORKMAN00001245PROD-WORKMAN00001260PROD |
| Settlement | 7/1/2021 | WORKMAN00001054PROD-WORKMAN00001069PROD |
| Litigation | 6/12/2021 | WORKMAN00001261PROD-WORKMAN00001276PROD |
| Litigation | 7/1/2021 | WORKMAN00001070PROD-WORKMAN00001085PROD |

26.     As to the statement "State Farm has investigated this matter and believes, based upon the Policy exclusion referenced herein and applicable South Carolina law, it has no duty to defend or indemnify Father or Son from any claim arising out of the accident described herein..." in paragraph 27 of the Complaint in Civil Action 2:21-cv-2623-MBS filed August 16, 2021:

> a. **PRODUCE all documents supporting the truth of the statement that was in the possession, custody or control of State Farm as of August 16, 2021;**

> b. **PRODUCE all documents supporting the truth of the statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and**

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

c. **FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.**

**SUPPLEMENTAL ANSWER/RESPONSE:** State Farm directs Plaintiffs to the Lamb Excluded Driver Endorsement, which was signed and accepted by Melvin O. Lamb, Jr., the named insured of the Tahoe Policy, and received by State Farm in March 2020, more than a year before the June 12, 2021 date of loss in Claim No. 40-21B2-49D. Furthermore, State Farm directs Plaintiffs to the nonprivileged, non-work product protected portions of the Claim File for Claim No. 40-21B2-49D, previously produced and Bates labeled SFMAIC_Workman_0001 through SFMAIC_Workman_3662, which reflects State Farm's investigation of the Lamb Excluded Driver Endorsement. As reflected in the Claim File previously produced, at the time of the August 16, 2021 filing of the DJA, State Farm knew the Lamb Excluded Driver Endorsement existed and the South Carolina Supreme Court had issued its decision of *USAA v. Pickens*.

29. **PRODUCE all communications between Shay Anderson, State Farm Underwriting Team Manager, and Gallivan, White & Boyd, P.A. which relate to C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to reference to SERFF tracking number(s) and documents.**

**SUPPLEMENTAL RESPONSE:** State Farm objects to this request as seeking materials outside the scope of discovery because they are not relevant to the subject matters involved in the pending action—which, based on the pleadings, State Farm understands to be its March 10, 2020 receipt and handling thereafter of the Lamb Excluded Driver Endorsement, up to and including its issuance of a new Declarations Page for the Tahoe Policy on July 14, 2021, its August 16, 2021 filing of the DJA in relation to Claim No. 40-21B2-49D, its coverage investigation in Claim No. 40-21B2-49D leading up to its August 16, 2021 filing of the DJA, and statements it made in the

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

handling of Claim No. 40-21B2-49D about the existence of coverage or lack thereof prior to the August 16, 2021 filing of the DJA—and are, in any event, attorney-client privileged and work product protected.

Ms. Anderson's first communication with GWB relating to the DJA occurred on November 5, 2021 after Ms. Anderson was notified of a Rule 30(b)(6) deposition of State Farm in the DJA for which she would be the designated representative. Ultimately the Rule 30(b)(6) deposition took place on December 14, 2021. Neither the December 14, 2021 testimony given in the Rule 30(b)(6) deposition nor State Farm's preparation, through its designated representative Ms. Anderson, for the Rule 30(b)(6) deposition between November 5, 2021 and December 14, 2021 are subject matters involved in the pending action. Even if they were, the communications are attorney client privileged and work product protected. For purposes of preparing a privilege log, State Farm conducted a search for emails between Ms. Anderson and GWB that reference Claim No. 40-21B2-49D. State Farm's Third Supplemental Privilege Log, served herewith, identifies the November 5, 2021 through December 14, 2021 emails between Ms. Anderson and GWB located through that search that are being withheld on the grounds of attorney client privilege and the work product doctrine.

After the December 14, 2021 Rule 30(b)(6) deposition, the Workman Estate served additional discovery requests on State Farm in the DJA. Ms. Anderson and GWB, specifically attorney Jennifer Johnsen of GWB, exchanged emails regarding these discovery requests on January 9, 2022 and January 11, 2022. The January 9, 2022 and January 11, 2022 emails exchanged between Ms. Anderson and GWB concerning discovery served on State Farm in the DJA have no relevance to the subject matters involved in the pending action. Even if they did, the communications are attorney-client privileged and work product protected.

**30.     PRODUCE all documentation, including records, State Farm files and other materials created and/or reviewed showing the investigation and research performed by Gallivan White & Boyd, P.A. prior to filing the Complaint in C.A. No.: 2:21-CV-02623-MBS that supported allegations and claims asserted in the lawsuit. This includes drafts of complaints.**

**SUPPLEMENTAL RESPONSE:** State Farm objects to this request for documentation and records showing the investigation and research performed by GWB lawyers prior to filing State Farm's Complaint in the DJA, including draft pleadings, as seeking attorney client privileged communications and protected work product, including opinion work product belonging to GWB.

The purpose of a privilege log is to provide the requesting party with sufficient information to enable it to evaluate the applicability of the claimed privilege or protection. Here, the discovery request seeks materials that by definition are privileged and work product protected, nothing else, and therefore a privilege log should be unnecessary. In any event, the portions of State Farm's Claim File that reflect communications between State Farm and GWB prior to the filing of the DJA which reveal GWB's research and investigation which were withheld on the basis of attorney-client privilege and work product protection are identified in State Farm's First Supplemental Privilege Log, which was served contemporaneously with State Farm's production of the nonprivileged, non-work product protected portions of the Claim File. Furthermore, State Farm's emails with GWB relating to or otherwise revealing GWB's research and investigation prior to the filing of the DJA that were identified by a search for emails referencing Claim No. 40-21B2-49D and are being withheld on the basis of attorney-client privilege and/or the work product doctrine are identified in State Farm's Third Supplemental Privilege Log produced herewith.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

31.     **PRODUCE all documentation, including records, State Farm files and other materials created and/or reviewed showing the investigation and research performed by Gallivan White & Boyd, P.A. after filing the Complaint in C.A. No.: 2:21-CV-02623-MBS that supported allegations and claims asserted in the lawsuit.**

**SUPPLEMENTAL RESPONSE:** State Farm objects to this request as seeking materials outside the scope of discovery because they are not relevant to the subject matters involved in the pending action—which, based on the pleadings, State Farm understands to be its March 10, 2020 receipt and handling thereafter of the Lamb Excluded Driver Endorsement, up to and including its issuance of a new Declarations Page for the Tahoe Policy on July 14, 2021, its August 16, 2021 filing of the DJA in relation to Claim No. 40-21B2-49D, its coverage investigation in Claim No. 40-21B2-49D leading up to its August 16, 2021 filing of the DJA, and statements it made in the handling of Claim No. 40-21B2-49D about the existence of coverage or lack thereof prior to the August 16, 2021 filing of the DJA—and are, in any event, attorney-client privileged and work product protected. While the subject matters involved in the pending action cover a period of time up to and including, but not beyond, August 16, 2021, the date the DJA was filed, this request seeks only materials created after August 16, 2021. Even if the requested materials were relevant to subject matters involved in the pending action, they are nonetheless outside the scope of discovery because they are attorney-client privileged and work product protected.

The purpose of a privilege log is to provide the requesting party with sufficient information to enable it to evaluate the applicability of the claimed privilege or protection. Here, the discovery request seeks materials that are, by definition, privileged and work product protected, nothing else, and therefore a privilege log should be unnecessary. In any event, the portions of State Farm's Claim File that reflect communications between State Farm and GWB after the filing of the DJA

54

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

which were withheld on the basis of attorney-client privilege and work product protection are identified in State Farm's First Supplemental Privilege Log, which was served contemporaneously with State Farm's production of the nonprivileged, non-work product protected portions of the Claim File. Furthermore, State Farm's emails with GWB that are related to the subject matters involved in the pending action and were created or exchanged after the filing of the DJA but before December 14, 2021, the date by which all conduct alleged by Plaintiffs in their Complaint had ended, that were identified by a search for emails referencing Claim No. 40-21B2-49D and are being withheld on the basis of attorney-client privilege and/or the work product doctrine are identified in State Farm's Third Supplemental Privilege Log produced herewith.

**32.     As to the lawsuit filed C.A. No.: 2:21-CV-02623-MBS, PRODUCE all documents State Farm provided to Gallivan, White & Boyd, P.A. before the law firm filed the Complaint in Civil Action 2:21-cv-2623-MBS. This includes emails, texts, files shared via a service, billing record modifications and/or changes, etc.**

**SUPPLEMENTAL RESPONSE:** Prior to the date the DJA was filed, State Farm provided GWB the Lamb Excluded Driver Endorsement, the motor vehicle accident report for the June 12, 2021 collision, the August 5, 2021 Certified Policy Record, and the Claim File as generated on July 22, 2021. Plaintiffs' counsel is in possession of the first three items, and the nonprivileged, non-work product portions of the Claim File as generated on July 22, 2021 are included in the Claim File which State Farm previously produced and Bates labeled SFMAIC_Workman_0001 through SFMAIC_Workman_3662. To the extent this request seeks State Farm's emails with GWB between July 21, 2022, the date GWB was engaged as counsel for State Farm in connection with Claim No. 40-21B2-49D, and August 16, 2021, the date the DJA

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

was filed, State Farm objects to the request as seeking attorney-client privileged and work product protected communications which are outside the scope of discovery.

The purpose of a privilege log is to provide the requesting party with sufficient information to enable it to evaluate the applicability of the claimed privilege or protection. Here, the request for emails exchanged between State Farm and GWB in this context seeks materials that by definition are privileged and work product protected, nothing else, and therefore a privilege log should be unnecessary. In any event, the portions of State Farm's Claim File that reflect communications between State Farm and GWB for the requested time period prior to the filing of the DJA are identified in the First Supplemental Privilege Log that was served contemporaneously with State Farm's production of the nonprivileged, non-work product protected portions of the Claim File. Furthermore, State Farm's emails with GWB during the requested time period that were identified by a search for emails referencing Claim No. 40-21B2-49D and are being withheld on the basis of attorney-client privilege and/or the work product doctrine are identified in State Farm's Third Supplemental Privilege Log produced herewith.

**33.    PRODUCE all documents State Farm provided to Gallivan, White & Boyd, P.A. after the Complaint in Civil Action 2:21-cv-2623-MBS was filed. This includes emails, texts, files shared via a service, billing record modifications and/or changes, etc.**

**SUPPLEMENTAL RESPONSE:** State Farm objects to this request as overly broad and seeking materials outside the scope of discovery because they are not relevant to the subject matters involved in the pending action—which, based on the pleadings, State Farm understands to be its March 10, 2020 receipt and handling thereafter of the Lamb Excluded Driver Endorsement, up to and including its issuance of a new Declarations Page for the Tahoe Policy on July 14, 2021, its August 16, 2021 filing of the DJA in relation to Claim No. 40-21B2-49D, its coverage

investigation in Claim No. 40-21B2-49D leading up to its August 16, 2021 filing of the DJA, and statements it made in the handling of Claim No. 40-21B2-49D about the existence of coverage or lack thereof prior to the August 16, 2021 filing of the DJA—and are, in any event, attorney-client privileged and work product protected. As an initial matter, this request seeks all documents State Farm provided to GWB after the filing of the DJA, regardless of whether the documents were provided in connection with the DJA or another matter. Furthermore, while the subject matters involved in the pending action cover a period of time up to and including, but not beyond, August 16, 2021, the date the DJA was filed, this request seeks only materials created after August 16, 2021. Finally, even if the requested materials were relevant to subject matters involved in the pending action, they are nonetheless outside the scope of discovery because they are attorney-client privileged and work product protected.

The purpose of a privilege log is to provide the requesting party with sufficient information to enable it to evaluate the applicability of the claimed privilege or protection. Here, the discovery request seeks materials that are, by definition, privileged and work product protected, nothing else, and therefore a privilege log is unnecessary and would serve no useful purpose. In any event, the portions of State Farm's Claim File that reflect communications between State Farm and GWB after the filing of the DJA which were withheld on the basis of attorney-client privilege and work product protection are identified in State Farm's First Supplemental Privilege Log, which was served contemporaneously with State Farm's production of the nonprivileged, non-work product protected portions of the Claim File. Furthermore, State Farm's emails with GWB concerning the DJA and issues raised in the same that were created or exchanged after the filing of the DJA but before December 14, 2021, long before which all alleged conduct had concluded, that were identified by a search for emails referencing Claim No. 40-21B2-49D and are being withheld on the

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

basis of attorney-client privilege and/or the work product doctrine are identified in State Farm's Third

Supplemental Privilege Log produced herewith.

**34.     PRODUCE all documents Gallivan, White & Boyd, P.A. provided to State Farm while it represented State Farm in the matter which is the subject of Civil Action 2:21-cv-2623-MBS. This includes retainer agreements, agreements to represent State Farm, emails, texts, files shared via a service, billing records, etc.**

SUPPLEMENTAL RESPONSE: State Farm objects to this request as being overly broad and outside the scope of discovery permissible under Rule 26(b)(1). Specifically, the scope of discovery consists of nonprivileged, non-work product protected information and materials that are relevant to the subject matters involved in the pending action, which, based on the pleadings, State Farm understands to be its March 10, 2020 receipt and handling thereafter of the Lamb Excluded Driver Endorsement, up to and including its issuance of a new Declarations Page for the Tahoe Policy on July 14, 2021; its August 16, 2021 filing of the DJA in relation to Claim No. 40-21B2-49D; its coverage investigation in Claim No. 40-21B2-49D leading up to its August 16, 2021 filing of the DJA; and statements it made in the handling of Claim No. 40-21B2-49D about the existence of coverage or lack thereof prior to the August 16, 2021 filing of the DJA. While the subject matters involved in the pending action are limited to the time period between June 12, 2021 date of loss in Claim No. 40-21B2-49D and the August 16, 2021 filing of the DJA, GWB represented State Farm in the DJA through its dismissal on July 28, 2022. Documents provided by GWB to State Farm that were saved by State Farm in ECS, to the extent not privileged or work product protected, have been produced with the Claim File. Documents provided by GWB to State Farm that were saved in ECS for Claim No. 40-21B2-49D but withheld from the previous production of the Claim File on the basis of attorney-client privilege or the work product doctrine

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

are identified in the First Supplemental Privilege Log that was served contemporaneously with the production of the nonprivileged, non-work product protected portions of the Claim File. Furthermore, documents emailed by GWB to State Farm that were identified by a search for emails referencing Claim No. 40-21B2-49D and that have been withheld on the basis of attorney-client privilege and/or the work product doctrine are identified in State Farm's Third Supplemental Privilege Log produced herewith.

37.     **Fully identify the names of the individuals who assisted in responding to these discovery requests.**

**SUPPLEMENTAL ANSWER:** State Farm objects to this interrogatory as overly broad and seeking information not relevant to the parties' claims or defenses. Attorneys, paralegals, and State Farm representatives assisted in preparing State Farm's responses to the Supplemental Discovery Requests in Plaintiffs' First Discovery Requests to State Farm, including, for example, by making materials available to the undersigned counsel for review and production. To the extent not identified in State Farm's answer to Standard Interrogatory No. 1 of Plaintiffs' First Discovery Requests, these individuals are not fact witnesses with respect to the subject matters involved in the pending action which, as State Farm understands it, includes State Farm's March 10, 2020 receipt and handling thereafter of the Lamb Excluded Driver Endorsement, State Farm's issuance of a new Declarations Page for the Tahoe Policy on July 14, 2021, State Farm's August 16, 2021 filing of the DJA in relation to Claim No. 40-21B2-49D, State Farm's coverage investigation in Claim No. 40-21B2-49D leading up to its August 16, 2021 filing of the DJA, and statements made by State Farm in the handling of Claim No. 40-21B2-49D about the existence of coverage or lack thereof prior to the August 16, 2021 filing of the DJA.

*[Signature Page to Follow]*

WHELAN MELLEN & NORRIS, LLC

By: _____

Robert W. Whelan
Bar No. 71174
E-Mail: robbie@whelanmellen.com
M. Kathleen McTighe Mellen
Bar No. 100826
E-Mail: katie@whelanmellen.com
89 Broad Street
Charleston, SC 29401
(843) 998-7099

*Attorneys for Defendant State Farm Mutual Automobile Insurance Company*

May 24, 2024

Charleston, South Carolina

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## <u>CERTIFICATE OF SERVICE</u>

I, an attorney of the law firm Whelan Mellen Norris, LLC, counsel for Defendant State Farm Mutual Automobile Insurance Company, do hereby certify that I have served all counsel in this action with a copy of the pleading(s) hereinbelow specified by emailing a copy of the same to the following address(es):

| | |
|---|---|
| Pleading: | **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S FIRST SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST DISCOVERY REQUESTS** |
| Counsel Served: | Justin S. Kahn<br>Kahn Law Firm, LLP<br>jskahn@kahnlawfirm.com<br>pmichel@kahnlawfirm.com<br><br>*Attorneys for Plaintiffs*<br><br>John S. Wilkerson, III<br>Lindsey M. Behnke<br>Turner Padget Graham & Laney, P.A.<br>jwilkerson@turnerpadget.com<br>lbehnke@turnerpadget.com<br><br>*Attorneys for Defendant Gallivan White & Boyd, P.A.* |

_____
M. Kathleen McTighe Mellen

May 24, 2024

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.

b)  **William T. Young**
    **c/o Turner Padget Graham & Laney**
    **40 Calhoun Street, Suite 200 (29401)**
    **P.O. Box 22129**
    **Charleston, SC 29413**

    **William Young is an attorney who formerly worked at GWB and represented State Farm in the Declaratory Judgment Action ("the DJA"). This witness is expected to testify in accordance with GWB's Answer, as to his knowledge of the facts and circumstances related to this action and the DJA.  No written or recorded statements have been taken.**

c)  **Natalie R. Ecker**
    **c/o Turner Padget Graham & Laney**
    **40 Calhoun Street, Suite 200 (29401)**
    **P.O. Box 22129**
    **Charleston, SC 29413**

    **Natalie Ecker is an attorney at GWB who represented State Farm in the DJA. This witness is expected to testify in accordance with GWB's Answer, as to her knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.**

d)  **Julia A. Bradshaw**
    **c/o Turner Padget Graham & Laney**
    **40 Calhoun Street, Suite 200 (29401)**
    **P.O. Box 22129**
    **Charleston, SC 29413**

    **Julia Bradshaw is an attorney who formerly worked at GWB at the time of the DJA. This witness is expected to testify in accordance with GWB's Answer, as to her knowledge of the facts and circumstances related to this action and the DJA. No written or recorded statements have been taken.**

e)  **Robert C. Workman, individually and Personal Representative of the Estate of James K. Workman**
    **c/o Kahn Law Firm**
    **562 Savannah Highway**
    **Charleston, SC 29407**

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

It is expected that this witness will testify regarding the allegations of the Complaint, and to the facts and circumstances surrounding the DJA and this action. No written or recorded statements have been taken.

f)    **Kelly Workman Tick**
      **c/o Kahn Law Firm**
      **562 Savannah Highway**
      **Charleston, SC 29407**

      This witness is a Plaintiff in this action, but was not a party to the Underlying Action. It is expected this witness will testify regarding the allegations of the Complaint. No written or recorded statements have been taken.

g)    **Matthew T. Workman**
      **c/o Kahn Law Firm**
      **562 Savannah Highway**
      **Charleston, SC 29407**

      This witness is a Plaintiff in this action, but was not a party to the Underlying Action.  It is expected this witness will testify regarding the allegations of the Complaint. No written or recorded statements have been taken.

h)    **Representatives of State Farm**
      **c/o Whelan Mellen & Norris**
      **89 Broad Street**
      **Charleston, SC 29401**

      Plaintiffs conducted a 30(b)(6) deposition of State Farm in the DJA and Shay Anderson served as State Farm's representative.  At this time, GWB does not know whether Plaintiffs would notice another 30(b)(6) deposition of State Farm, attempt to call individual witnesses from State Farm, or both. No written or recorded statements have been taken.

i)    **Melvin O. Lamb, Jr.**
      **Address Unknown**

      Melvin O. Lamb, Jr. is the named insured on the policy covering the Tahoe involved in the accident.  Although Lamb admitted to having signed the Excluded Driver Endorsement in his Answer in the DJA, he filed an Amended Answer three days later in which he denied having signed the Excluded Driver Endorsement and asserted a counterclaim for indemnification against State Farm. No written or recorded statements have been taken.

j)    **Melvin O. Lamb, III**
      **Address Unknown**

3

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Melvin O. Lamb, III is the driver of the Tahoe in the accident that resulted in the death of James K. Workman. No written or recorded statements have been taken.**

**GWB reserves the right to call additional witnesses, including any witness or expert identified by any party through the course of discovery.**

**<u>SUPPLEMENTAL ANSWER:</u>**

**Shay Anderson, an employee of State Farm's Underwriting Department, was deposed in the DJA and submitted a Declaration in that case. GWB is not aware of any other written or recorded statements from Shay Anderson.**

**Darren Murdoch, an employee of State Farm's Claims Department, submitted a Declaration in the DJA. GWB is not aware of any other written or recorded statements.**

**Lana Willingham, an employee of State Farm's Underwriting Department, submitted a Declaration in the DJA. GWB is not aware of any other written or recorded statements.**

**Lee Shivers, State Farm Claims Specialist. No written or recorded statement has been taken.**

2.     Set forth a list of photographs, plats, sketches or other prepared documents in possession of the party that relate to the claim or defense in the case.

**<u>ANSWER</u>:**

**GWB objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, work product doctrine or other applicable privilege. GWB further objects to this Interrogatory to the extent that it seeks confidential information not subject to disclosure. Subject to and without waiving the foregoing objections, GWB refers to the documents produced herewith and bates labeled GWB_000001-004394. GWB reserves the right to supplement this response at a later date and incorporates by reference all documents produced by the other parties in this action.**

**<u>SUPPLEMENTAL ANSWER:</u>**

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**GWB further refers to the documents produced herewith and identified in Attachment A to these Supplemental Discovery Responses; and its Amended Privilege Log.**

3.      In cases involving personal injury set forth the names and addresses of all physicians who have treated the party and all hospitals to which the party has been committed in connection with said injuries and also set forth a statement of all medical costs involved.

**ANSWER:      Not applicable.**

4.      Set forth the names and addresses of all insurance companies which have liability insurance coverage relating to the claim and set forth the number or numbers of the policies involved and the amount or amounts of liability coverage provided in each policy. This includes umbrella coverage and coverage associated with each of the Defendants.

**ANSWER:      The following insurance policies may provide coverage relating to the claims asserted in this litigation:**

**(a)      LPL Policy #LPPL221000075001 - Ascot Specialty Insurance Company.**

**(b)      Excess Policy #LPL7CACD7KJ002 - Ironshore Specialty Insurance Company.**

5.      List the names and addresses of any expert witnesses whom the party proposes to use as a witness at the trial of the case.

**ANSWER:**

**GWB has not determined an expert witness(es), if any, it will utilize at the trial of this case. GWB will supplement this response to the extent required by the South Carolina Rules of Civil Procedure and any applicable Scheduling Order.**

6.      For each person known to the parties or counsel to be a witness concerning the facts of the case, set forth either a summary sufficient to inform the other party of the important facts

known to or observed by such witness, or provide a copy of any written or recorded statements taken from such witnesses.

**ANSWER:**     **Please see Answer to Interrogatory No. 1.**

7.     [Defendants only.] If the defendants are improperly identified, give the proper identification and state whether counsel will accept service of an amended summons and pleading reflecting the correct information.

**ANSWER:**     **GWB is properly identified.**

## SUPPLEMENTAL RESPONSES TO PLAINTIFFS' SUPPLEMENTAL DISCOVERY REQUESTS

1.     As to each affirmative defense you assert, state a detailed factual basis for said defense and PRODUCE all documents supporting said defense.

**RESPONSE:**

GWB objects to this request on the grounds that it is premature, as discovery is still ongoing. Subject to and without waiving this objection, Plaintiffs' Complaint fails to plead any facts that would entitle it to recovery from GWB. Plaintiff Estate of Robert C. Workman was an opposing party in the DJA and the remaining Plaintiffs were not parties to the DJA. Therefore, GWB owed no independent duty to Plaintiffs that could give rise to a cause of action. Further, GWB is immune from Plaintiffs' claims because it was at all times relevant to the Complaint acting in its professional capacity as State Farm's counsel. GWB reserves the right to supplement this response as the case progresses to trial.

GWB has in its possession the file it maintained while representing State Farm Mutual Automobile Insurance Company in the DJA. GWB objects to the production of these documents to the extent that they are protected by the attorney-client privilege, the work

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

product doctrine, or any other applicable privilege. GWB also objects to this request to the extent that it seeks confidential information not subject to disclosure. Subject to and without waiving the foregoing objections, GWB refers to non-privileged and non-confidential documents produced herewith and bates labeled GWB_000001-004394. GWB reserves the right to supplement this response as the case progresses to trial.

**SUPPLEMENTAL RESPONSE:**

GWB further refers to the documents produced herewith and identified in Attachment A to these Supplemental Discovery Responses; and its Amended Privilege Log.

2.     PRODUCE all documentation concerning State Farm Claim Number 4021B2-49D with a date of loss of June 12, 2021. This is to include all:

a.     Confirmation of Coverage documents;

b.     Claim file notes, entries, communications and the like;

c.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim specialist Lee Shivers;

d.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim associate Deborah Grigg;

e.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by claim team manager Darren P Murdoch;

f.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Underwriter Jessica Bass;

g.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Underwriter Team Manager Shay Anderson;

h..     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by statefarmclaims@statefarm.com;

i.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by agent John P Tankersley, III or Jack Tankersley, Pam Middleton or anyone else in that office.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

j.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Melvin Lamb, Jr.;

k.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Melvin Lamb, III;

l.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by Valerie Lamb;

m.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by law firms or attorneys representing people asserting claims;

n.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by law firms or attorneys representing you;

o.     Documentation, Notes, File Notes, Communications (whether letters, emails, faxes, etc.) drafted, sent and/or received by each claimant;

**RESPONSE:**

**GWB objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. GWB also objects to this request to the extent that it seeks confidential information not subject to disclosure. Subject to and without waiving the foregoing objections, to the extent that GWB is in possession of responsive documents, they are produced herein. Further answering, to the extent this request seeks communications between GWB and its client, those documents are protected by the attorney-client privilege. GWB refers to its Privilege Log produced herewith. GWB reserves the right to supplement this response as the case progresses to trial.**

**SUPPLEMENTAL RESPONSE:**

**GWB further refers to the documents produced herewith and identified in Attachment A to these Supplemental Discovery Responses; and its Amended Privilege Log.**

3.     Fully identify each claimant and/or person making a claim related to the June 12, 2021 collision, whether named in the declaratory judgment action or not and to the extent not

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

produced above, PRODUCE all communications with them or their representatives, including agreements to be bound by the declaratory judgment action filed in this matter.

**RESPONSE:**

**GWB objects to this Request on the grounds that it is not relevant to the claims or defenses at issue in this action. Subject to and without waiving this objection, GWB refers to the declaratory judgment action pleadings and communications that are produced herein.**

4.     PRODUCE all of State Farm's documents and documentation concerning the 2004 Chevrolet Tahoe VIN 1GNEK13Z54R235227 driven on June 12, 2021. This includes but is not limited to State Farm insurance policies: 632 3189-B07-40; 632 3189-B07-40A, and 632 3189-B07-40B. This production request includes producing the below listed items in addition to the complete audit trail, including but not limited to identifying who logged into the system, entries made, dates and times thereof, who made said entries, additions, or deletions, who reviewed and/or made said entries and/or changes, etc.

      a.     Claims Files;

      b.     Underwriting Files;

      c.     Entries in computer systems (including Rumba, Enterprise and ECS) and identify who made the entries and when such entries were made;

      d.     Emails;

      e.     Texts;

      f.     Notes;

      g.     Faxes;

      h.     Declaration Pages;

      i.     Requests to modify, alter, change, create, etc. the declarations pages;

      j.     Requests to modify, alter, change, create, etc. the policy(s);

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

k.      Responses to any requests to modify, alter, change, create, etc. the declarations pages;

l.      Responses to any requests to modify, alter, change, create, etc. the policy declarations;

m.      Auto Renewal;

n.      Balance Due Notice;

o.      Policy Master Record;

p.      Suspensions;

q.      Reinstatements;

r.      Cancellations;

s.      Underwriting documents;

t.      Approvals; and

u.      Service Requests made whether to the Complex Unit or otherwise.

**RESPONSE:**

     **This Request does not appear to be directed to GWB. To the extent that a response from GWB is required, GWB has in its possession only those documents that its client, State Farm, provided it in the declaratory judgment action. GWB objects to the production of those documents to the extent that they are protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the documents produced herein and its Privilege Log.**

     5.      Fully identify each person who was involved in creating the Declarations Page that states "Prepared Jul 14 2021" attached as Exhibit A to the Complaint in Civil Action 2:21-cv-2623-MBS and as to each person, PRODUCE all documentation related to creating said document, including the requests to create and fully explain the reasons said Declarations Page was created.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**RESPONSE:**

**GWB objects to this Request to the extent that it seeks documents protected by the attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB does not have sufficient information to identify each person involved in creating the referenced Declarations Page. GWB refers to the referenced Declarations Page produced herein and bates labeled GWB_000454. GWB is not in possession of any further documents responsive to this request.**

6.     PRODUCE all documents, emails and the attachments reviewed by or referenced by Shay Anderson in her deposition of **December 14, 2021**. This includes but is not limited to those:

a.     Involving Jessica Bass as Referenced on pp. 16-17;

b.     Involving Karen Bond as Referenced on pp. 16-17;

c.     Involving any actuary or actuarial as referenced on pp. 31-33, 35-36, 38-39;

d.     Involving Jennifer Johnsen, Esq.;

e.     The unknown person referenced on p. 59;

f.     Involving the SERFF Tracking Number SFMA-126372492; and

g.     Form filings;

**RESPONSE:**

**GWB objects to this Request to the extent that it seeks documents protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the transcript and exhibits of Shay Anderson's deposition, which are produced herewith and bates labeled GWB_003729-004134.**

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**SUPPLEMENTAL RESPONSE:**

Further answering, in the 30(b)(6) deposition of State Farm in the Underlying Action, Shay Anderson testified that she reviewed the Declaratory Judgment Complaint, State Farm's discovery responses in the Underlying Action, documents produced by State Farm in the Underlying Action prior to the deposition, and documents produced in response to the Estate's subpoena to State Farm. See Deposition Transcript, pp. 11-13.

7.     PRODUCE all records, notes and documents Shay Anderson, Underwriting Team Manager, created, reviewed and/or referred to in her declaration under penalty of perjury dated May 24, 2022 which was filed as Entry No. 81-1 in C.A. No.: 2:21-CV-02623-MBS.

**RESPONSE:**

GWB objects to this Request on the grounds that it seeks materials protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB is not in possession of the requested compilation of materials.

**SUPPLEMENTAL RESPONSE:**

Further answering, while GWB is not in possession of a specific compilation of materials Shay Anderson reviewed ahead of her declaration, GWB refers to the non-privileged and non-work product policy documents already produced in this case.

8.     PRODUCE all records, notes and documents Lana Willingham created, reviewed and/or referred to in her declaration under penalty of perjury dated May 23, 2022 which was filed as Entry No. 81-4 in C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to the service request to process an excluded driver endorsement.

**RESPONSE: See response to Supplemental Discovery Request No. 7.**

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**SUPPLEMENTAL RESPONSE:**

**Further answering, while GWB is not in possession of a specific compilation of materials Lana Willingham reviewed ahead of her declaration, GWB refers to the non-privileged and non-work product policy documents already produced in this case.**

9.     PRODUCE all records, notes and documents Darren Murdoch created, reviewed and/or referred to in his declaration under penalty of perjury dated May 23, 2022 which was filed as Entry No. 81-3 in C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to paragraphs 12-16.

**RESPONSE:  See response to Supplemental Discovery Request No. 7.**

**SUPPLEMENTAL RESPONSE:**

**Further answering, while GWB is not in possession of a specific compilation of materials Darren Murdoch reviewed ahead of his declaration, GWB refers to the non-privileged and non-work product policy documents already produced in this case.**

10.     PRODUCE each endorsement and declarations page created by State Farm from the inception of any coverage through the present for the Tahoe at issue referenced in the Complaint filed in Civil Action 2:21-cv-2623-MBS and all documentation supporting the reasons said documents were created.

**RESPONSE:**

**GWB is not in possession of each endorsement and declarations page created by State Farm from the inception of coverage through the present. To the extent GWB is in possession of responsive documents, those are produced herein.**

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**SUPPLEMENTAL RESPONSE:**

**GWB refers to Declarations Pages and Endorsements for policy periods February 7, 2020 to August 7, 2020; August 23, 2020 to February 7, 2021; and June 10, 2021 to February 7, 2022. These Declarations Pages and Endorsements were produced in the DJA litigation, and have also been produced multiple times in this case, including at GWB_001148 – 001172.**

11.     PRODUCE State Farm policies, processes and/or procedures for driver exclusion agreements related to keeping or retaining acceptable policyholders while excluding certain drivers in the household exclusions that were in effect from January 1, 2020 through the present.

**RESPONSE:**

**Responsive documents were produced in the DJA and designated confidential. GWB objects to producing the requested documents before a Confidentiality Order is entered in this case and refers to its Privilege Log produced herewith.**

**SUPPLEMENTAL RESPONSE:**

**GWB refers to documents produced pursuant to the Confidentiality Order and bates labeled GWB_004717-004738. These documents were produced in a prior litigation in response to a subpoena from the Estate of James K. Workman.**

12.     PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval or that the South Carolina Department of Insurance approved the form 6023DC attached to the Complaint filed in the declaratory judgment civil action number 2:21-cv-2623-MBS. If no such documentation exists, please state that.

**RESPONSE:**

**This request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

13.     PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval and/or that the South Carolina Department of Insurance approved the form 6023DC before January 1, 2022.

**RESPONSE:**

    **This request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

14.     PRODUCE all documentation showing that State Farm submitted to the South Carolina Department of Insurance for approval or that the South Carolina Department of Insurance approved the form 6023DC after January 1, 2022.

**RESPONSE:**

    **This request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

15.     To the extent not already produced, PRODUCE State Farm's complete file and documentation related to submission and approval by the South Carolina Department of Insurance for the Form 6023DC Driver Exclusion attached to the Complaint in Civil Action 2:21-cv-2623-MBS. This includes letters sent by State Farm to the South Carolina Department of Insurance as well as communications received.

**RESPONSE:**

    **This Request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB is not in possession of any responsive documents.**

16.     PRODUCE each communication sent by State Farm denying claims based upon the State Farm South Carolina 6023DC Driver Exclusion Form for the time period of May 1, 2019 through May 1, 2022. This is not limited to Plaintiffs in this case.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**RESPONSE:**

**This Request does not appear to be directed to GWB. To the extent a response from GWB is required, GWB objects to this request to the extent that it seeks documents protected by attorney-client privilege, the work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB is not in possession of responsive documents.**

17.      As to the Tahoe at issue, PRODUCE each certified policy record which underwriter Jessica Bass or anyone else at State Farm created, including but not limited to those dated 08/05/2021 and 11/22/2021 and PRODUCE the requests and responses related to generating each certified policy record.

**RESPONSE:**

**GWB objects to this request to the extent that it seeks documents protected by attorney-client privilege. Subject to and without waiving this objection, GWB refers to documents produced herewith and bates labeled GWB_000001-004394. GWB is not in possession of any other responsive documents.**

**SUPPLEMENTAL RESPONSE:**

**The certified policy records dated August 5, 2021 and November 22, 2021 are the only certified policy records in GWB's possession. These were produced in the Underlying Action and are produced in this case at GWB_001185 and GWB_001212.**

18.      PRODUCE all documents, including the files, notes, computer entries, who made the entries, the audit trail and the like for each computer system of State Farm showing the creation, storage, management, access, including who accessed a web-based system called ECS related to the claims involving Mr. Lamb and Plaintiffs.

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**RESPONSE:**

**This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

19.     PRODUCE all State Farm's policies, procedures, guidelines and/or rules that were to be followed when creating and/or modifying a declaration page such as the one at issue in this case for the time period of January 1, 2020 through the present.

**RESPONSE:**

**To the extent that GWB has responsive documents, it objects to producing those documents before a Confidentiality Order is entered in this case and refers to its Privilege Log.**

**SUPPLEMENTAL RESPONSE:**

**Upon information and belief, GWB is not in possession of documents responsive to this request.**

20.     PRODUCE the employment files for each State Farm employee, including those listed below, who was involved with the changes made to the declarations page at issue, including a signed copy of their completed Code of Conduct form to be completed annually. (The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest.) This request to produce also includes write ups for violations of State Farm policies.

a.     Jessica Bass

b.     Lee Shivers

c.     Shay Anderson

d.     Darren P Murdoch

e.    Lana Willingham

**RESPONSE:**

**This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

21.    PRODUCE State Farm's Code of Conduct training course materials and videos as described in State Farm's Doing the Right Thing Code of Conduct, p. 28, in part reproduced below.

---

Code of Conduct/DOING THE RIGHT THING/CODE OF CONDUCT FORM COMPLETION

## Code of Conduct Form Completion

We believe in following all applicable laws and regulations, and in behaving ethically and honestly. In accordance with these principles, we all must complete and submit the Code of Conduct Form annually, alongside the annual Code of Conduct training course. The form should also be filled out any time an actual or potential violation of this Code or conflict of interest arises.

The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest. Submitting the form indicates that you have read and understood the Code of Conduct and:

---

**RESPONSE:**

**This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

22.    As to each expert you propose to use as a witness at the trial of the case, PRODUCE and/or state:

a.    a complete statement of all opinions the witness will express and the basis and reasons for them;

b.    the facts or data considered by the witness in forming them;

c.    any exhibits that will be used to summarize or support them;

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

    d.      the witness's qualifications, including a list of all publications authored in the previous 10 years;

    e.      a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

    f.      a statement of the compensation to be paid for the study and testimony in the case.

**RESPONSE:**

    **See answer to Interrogatory No. 5.**

23.    To the extent not already produced, PRODUCE Defendant State Farm's complete claims file relating to the claims made as a result of the collision at issue in this action regardless of who submitted a claim, whether maintained in defendant's field office, regional office, home office, or any other office, including without limitation:

    a.      All letters, memoranda, and other forms of written or computerized communication to or from any employee of defendant relating in any way to the processing of the claim at issue in this action;

    b.      All written or computerized records of any oral communication, whether in person or by telephone, to or from any employee of defendant relating in any way to the processing of the claim at issue in this action;

    c.      All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any claimant relating in any way to the collision at issue in this action;

    d.      All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee of defendant and any third party relating in any way to the claim at issue in this action;

    e.      All written or computerized records of any investigation conducted in connection with the claim at issue in this action;

    f.      All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, to or from any employee of defendant relating in any way to the decision to deny claims asserted in the collision;

    g.      All written or computerized communications and written or computerized records of oral communications, whether in person or by telephone, between any employee

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

of defendant and any third party relating in any way to the decision to deny Plaintiffs claims;

h.    All other written or computerized documents pertaining to the claim at issue in this litigation; and

i.    The file folders in which the preceding documents are kept.

**RESPONSE:**

**GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. To the extent that GWB is in possession of requested documents, they are reflected in the Privilege Log produced herewith.**

24.    PRODUCE State Farm's complete underwriting files referring or relating in any way to the policy at issue in this action, including without limitation:

a.    All letters, memoranda, and other forms of written or computerized communication and written or computerized records of oral communications, whether in person or by telephone, referring or relating in any way to the issuance of the policy at issue in this action; and

b.    The file folders in which the preceding documents are kept.

**RESPONSE:**

**This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

25.    PRODUCE All claims manuals, memoranda, directives, letters, and other forms of written or computerized communication directed to claims personnel, claims managers, claims supervisors, or any other person acting on behalf of State Farm in the handling of claims that refer or relate in any way to the handling of claims generally or to the handling of claims of like character to the claim at issue in this action, including without limitation:

a.    the documents reflecting State Farm's claim settlement policies as they existed at the time State Farm denied the claims at issue in this action; and

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

      b.      the documents reflecting any subsequent changes of policy.

**RESPONSE:**

      **This Request does not appear to be directed to GWB. Further answering, GWB is not in possession of any responsive documents.**

26.      As to the statement "State Farm has investigated this matter and believes, based upon the Policy exclusion referenced herein and applicable South Carolina law, it has no duty to defend or indemnify Father or Son from any claim arising out of the accident described herein..." in paragraph 27 of the Complaint in Civil Action 2:21-cv-2623-MBS filed August 16, 2021:

      a.      PRODUCE all documents supporting the truth of the statement that was in the possession, custody or control of State Farm as of August 16, 2021;

      b.      PRODUCE all documents supporting the truth of the statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

      c.      FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.

**RESPONSE:**

      **GWB objects to this Request to the extent that it seeks information subject to the attorney-client privilege, work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the Policy, including the excluded driver endorsement which was attached to the declaratory judgment action Complaint and is produced herein as GWB_000454-000514.**

27.      As to the statement "At the time of the subject accident, Son had been an excluded driver from the Policy for over a year" made in paragraph 31 of the Complaint filed August 16, 2021:

      a.      PRODUCE all documents supporting the above statement that was in the possession, custody or control of State Farm defendant as of August 16, 2021;

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

b.     PRODUCE all documents supporting the above statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

c.     FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.

**RESPONSE:**

**Please see Response to Supplemental Discovery Request No. 26.**

28.     As to the statement "Pursuant to S.C. Code Ann. §38-77-340, the exclusion was signed by Father..." made in paragraph 19 of the Complaint filed August 16, 2021:

a.     PRODUCE all documents supporting the above statement that was in the possession, custody or control of State Farm defendant as of August 16, 2021;

b.     PRODUCE all documents supporting the above statement that was in the possession, custody or control of Gallivan White & Boyd, P.A. as of August 16, 2021; and

c.     FULLY EXPLAIN the facts you had in your possession, custody or control and why they supported the quoted statement.

**RESPONSE:**

**Please see Response to Supplemental Discovery Request No. 26.**

29.     PRODUCE all communications between Shay Anderson, State Farm Underwriting Team Manager, and Gallivan, White & Boyd, P.A. which relate to C.A. No.: 2:21-CV-02623-MBS. This includes but is not limited to reference to SERFF tracking number(s) and documents.

**RESPONSE:**

**GWB objects to this request on the grounds that it seeks information that is protected by the attorney-client privilege. GWB refers to its Privilege Log produced herewith.**

30.     PRODUCE all documentation, including records, State Farm files and other materials created and/or reviewed showing the investigation and research performed by Gallivan

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

White & Boyd, P.A. prior to filing the Complaint in C.A. No.: 2:21-CV-02623-MBS that supported allegations and claims asserted in the lawsuit. This includes drafts of complaints.

**RESPONSE:**

**GWB objects to this request on the grounds that it seeks information that is protected by the attorney-client privilege and/or the work product doctrine. GWB refers to its Privilege Log produced herewith.**

**SUPPLEMENTAL RESPONSE:**

**Subject to and without waiving this objection, GWB states that prior to filing the DJA, it obtained a copy of the policy and the named driver exclusion, which were attached as exhibits to the DJA Complaint and produced multiple times in this case, including at GWB_000454-000514.**

31.    PRODUCE all documentation, including records, State Farm files and other materials created and/or reviewed showing the investigation and research performed by Gallivan White & Boyd, P.A. after filing the Complaint in C.A. No.: 2:21-CV-02623-MBS that supported allegations and claims asserted in the lawsuit.

**RESPONSE:**

**GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Further answering, GWB refers to its Privilege Log produced herewith.**

**SUPPLEMENTAL RESPONSE:**

**Subject to and without waiving this objection, GWB refers to the policy documents produced in this case.**

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

32.     As to the lawsuit filed C.A. No.: 2:21-CV-02623-MBS, PRODUCE all documents State Farm provided to Gallivan, White & Boyd, P.A. before the law firm filed the Complaint in Civil Action 2:21-cv-2623-MBS. This includes emails, texts, files shared via a service, billing record modifications and/or changes, etc.

**RESPONSE:**

**GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Subject to and without waiving this objection, GWB refers to the documents filed with the DJA Complaint and produced herewith. Further answering, GWB refers to its Privilege Log.**

33.     PRODUCE all documents State Farm provided to Gallivan, White & Boyd, P.A. after the Complaint in Civil Action 2:21-cv-2623-MBS was filed. This includes emails, texts, files shared via a service, billing record modifications and/or changes, etc.

**RESPONSE:**

**GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Further answering, GWB refers to its Privilege Log produced herewith.**

34.     PRODUCE all documents Gallivan, White & Boyd, P.A. provided to State Farm while it represented State Farm in the matter which is the subject of Civil Action 2:21-cv-2623-MBS. This includes retainer agreements, agreements to represent State Farm, emails, texts, files shared via a service, billing records, etc.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**RESPONSE:**

GWB objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, work product doctrine or any other applicable privilege. Further answering, GWB refers to its Privilege Log produced herewith.

35.     As to each of the standard interrogatories above as well as other discovery requests, PRODUCE the documents that are referenced or referred to in answering said interrogatories.

**RESPONSE:**

GWB refers to the documents produced herewith and bates labeled GWB_000001-004394.

**SUPPLEMENTAL RESPONSE:**

GWB further refers to the documents produced herewith and identified in Attachment A to these Supplemental Discovery Responses; and its Amended Privilege Log.

36.     PRODUCE each document or other evidence you intend to introduce at the trial of this case.

**RESPONSE:**

GWB objects to this Request to the extent that it seeks to invade the mental impressions, legal conclusions, thoughts, impressions and trial strategies of counsel, which are protected by the work product doctrine and/or attorney-client privilege. Subject to and without waiving this objection, GWB reserves the right to use the documents produced herewith and bates labeled GWB_000001-004394. GWB further reserves the right to utilize any other documents produced by any other party to this action and to supplement this response as the case progresses to trial.

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**SUPPLEMENTAL RESPONSE:**

GWB further refers to the documents produced herewith and identified in Attachment A to these Supplemental Discovery Responses; and its Amended Privilege Log.

37.    Fully identify the names of the individuals who assisted in responding to these discovery requests.

**RESPONSE:**

The undersigned counsel for GWB prepared the responses to these discovery requests.

<div style="text-align:center">

TURNER PADGET GRAHAM & LANEY, P.A.

s/John S. Wilkerson
John S. Wilkerson, III, SC Bar No.:  6105
40 Calhoun Street, Suite 200
Post Office Box 22129
Charleston, South Carolina 29413-2129
Telephone:   843-576-2801
Facsimile:     843-577-1649
Email:  jwilkerson@turnerpadget.com

Lindsey M. Behnke, SC Bar No.: 105719
1901 Main Street, Suite 1700 (29201)
Post Office Box 1473
Columbia, South Carolina 29202
Telephone:      803-227-4324
Facsimile:      803-400-1525
Email: lbehnke@turnerpadget.com

ATTORNEYS FOR GALLIVAN, WHITE & BOYD, P.A.

</div>

May 24, 2024
Charleston, South Carolina

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Robert C. Workman, individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew T. Workman,

Plaintiffs,

vs.

State Farm Mutual Automobile Insurance Company and Gallivan, White & Boyd, P.A.,

Defendants.

COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CIVIL ACTION NO. 23-CP-10-1832

**Attachment A to GWB's First Supplemental Discovery Responses:
Index of Supplemental Document Production**

    Non-privileged portions of the following documents are produced as part of GWB's Supplemental Document Production dated May 24, 2024. The privileged portions of the documents are redacted and included on the Amended Privilege Log.

| | |
|---|---|
| GWB_004539-004551 | GWB_006457-006468 |
| GWB_004991-004992 | GWB_006504-006520 |
| GWB_005488-005490 | GWB_006845-006846 |
| GWB_005613-005616 | GWB_007803-007804 |
| GWB_005619-005620 | GWB_007806-007811 |
| GWB_005758-005761 | GWB_007821-7822 |
| GWB_005780 | GWB_007825-007826 |
| GWB_005827 | GWB_000784 |
| GWB_005831-005835 | GWB_007844-007847 |
| GWB_005921-005922 | GWB_007868-007874 |
| GWB_005932-005933 | GWB_008257-008260 |
| GWB_005947-005950 | GWB_008342-008346 |
| GWB_005961-005965 | GWB_008414-008416 |
| GWB_005974-005975 | GWB_008468 |
| GWB_005991-005992 | GWB_009248-009249 |
| GWB_006376-006377 | GWB_009971-009997 |
| GWB_006438-006439 | GWB_010000-010001 |
| GWB_006440-006452 | GWB_010493-010500 |

The following documents are produced un-redacted under the Confidentiality Order:
GWB_004395
GWB_004716-004738
GWB_008983-009007
GWB_009250-009290

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Robert C. Workman, individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick, and Matthew T. Workman,

               Plaintiffs,

      vs.

State Farm Mutual Automobile Insurance Company and Gallivan, White & Boyd, P.A.,

               Defendants.

COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CIVIL ACTION NO.  23-CP-10-1832

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on the 24th day of May, 2024, a copy of ***Defendant Gallivan, White & Boyd, P.A.'s First Supplemental Responses to Plaintiffs' First Discovery Requests,*** GWB's supplemental document production as described in Attachment A; and Amended Privilege Log, has been served upon counsel of record via electronic mail, unless otherwise requested, to:

Justin S. Kahn               *Attorneys for Plaintiffs*
Wes B. Allison
Kahn Law Firm, LLP
P.O. Box 31397
Charleston, SC  29417-1397
jskahn@kahnlawfirm.com
wallison@kahnlawfirm.com
Sean Claggett
sean@claggettlaw.com

Robert W. Whelan         *Attorneys for State Farm Mutual Automobile*
M. Kathleen McTighe Mellen   *Insurance Company*
Whelan Mellen & Norris, LLC
89 Broad Street
Charleston, SC  29401
robbie@whelanmellen.com
katie@whelanmellen.com

              s/Cynthia Dillard
              Cynthia Dillard

TPGL 14485263v1

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| State Farm Mutual Automobile Insurance Company, | ) ) ) | C.A. No.: 2:21-CV-02623-MBS |
| Plaintiff, | ) ) | |
| vs. | ) ) | **DECLARATION OF DARREN MURDOCH** |
| Melvin O. Lamb III, Melvin O. Lamb, Jr., The Estate of James K. Workman, Michael H. Moore, Deborah D. Plott, Angela R. Edwards, Katherine M. Vonesh, Mathis S. Billman, and Luke E. Billman, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

I, Darren Murdoch, declare and state as follows:

1.  I am over the age of 21, I am of sound mind, and I am personally knowledgeable of the facts set forth in this declaration.

2.  I am employed as a Claim Team Manager with State Farm Mutual Automobile Insurance Company ("State Farm"). As a Claim Team Manager, I manage a team of State Farm Claim Specialists handling claims made under automobile insurance policies, which includes supervising and reviewing claim handling activities.

3.  As part of my responsibilities as Claim Team Manager, I am knowledgeable about claim handling activities and procedures as well as State Farm's record keeping practices with respect to insurance claims made with and handled by State Farm.

4.  It is the regular practice of State Farm Claim Specialists and Team Managers to create, store, manage, and access information regarding an insurance claim with State Farm through a web-based system called ECS.

5.  File notes are made by State Farm Claim Specialists and Team Managers in ECS to log or document information, events, and actions in the course of handling a particular claim, including, by way of example, coverage and liability investigations, coverage and liability determinations, and information, correspondence, documents, and records received. These file notes made by Claim Specialists and Team Managers are recorded, maintained and kept in ECS

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

in the ordinary course of State Farm's business of handling insurance claims at or near the time of the information, events, and actions they log or document.

6.    I have reviewed in ECS Claim No. 40-21B2-49D (the "subject claim"), which claim arises from a June 12, 2021 car accident involving Melvin O. Lamb, III, ("Lamb III") driving a Tahoe insured by State Farm under an automobile insurance policy issued to Lamb III's father, Melvin O. Lamb, Jr. (the "subject policy").

7.    The following information, events, and activities are within my personal knowledge as the Team Manager for the subject claim or are otherwise documented in ECS for the subject claim:

a.    On June 18, 2021, Claim Specialist Christine Riddick learned of a possible driver exclusion for Lamb III, however she did not see an excluded driver on the subject policy and therefore noted investigation was needed.

b.    That same day, Claim Specialist Lee Shivers investigated coverage. Mr. Shivers spoke with Mark Black of State Farm Agent Jack Tankersley's office regarding the existence of an excluded driver endorsement with respect to Lamb III on the subject policy. Mr. Black informed Mr. Shivers there was no such an endorsement on the subject policy, but there were on the other household policies.

c.    On June 19, 2021, I asked Mr. Shivers to call Underwriting to verify there was no excluded driver on the subject policy because it would be unusual for there to be an excluded driver on some but not all household cars.

d.    On June 29, 2021, Mr. Shivers confirmed with Underwriting there was not a driver exclusion on the subject policy. He later sent letters to Lamb III and Mr. Lamb stating there was "a potential for exposure beyond the limits of liability coverage afforded you under your policy."

e.    On or about July 16, 2021, Mr. Shivers and I learned from underwriting there was an excluded driver endorsement on the subject policy, which endorsement underwriting had received in March 2020 and was effective February 26, 2020.

f.    Thereafter, Claims retained separate counsel to represent Mr. Lamb, Lamb III, and State Farm.

g.    On August 4, 2021, State Farm sent separate Reservation of Rights letters to Mr. Lamb and Lamb III notifying them there may be no duty to defend, indemnify, or

otherwise perform under the subject policy due to Lamb III operating the Tahoe at the time of the accident and the applicable excluded driver endorsement.

h.      Also on August 4, 2021, Mr. Shivers requested from Underwriting a certified copy of the subject policy to provide to State Farm's counsel.

i.      On August 5, 2021, Mr. Shivers received the certified copy of the subject policy from Underwriting and provided the same to State Farm's counsel at Gallivan White & Boyd PA.

I, Darren Murdoch, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on: 5/23/2022

Darren P. Murdoch
Darren Murdoch

Digitally signed by Darren P. Murdoch
Date: 2022.05.23 15:05:56 -04'00'

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

 **StateFarm**

## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 632 3189-B07-40B including any endorsements, if applicable, for the policy term(s) 06/10/2021 to 06/13/2021 and insuring LAMB, MELVIN O JR based on available records.

It is State Farm's business practice to print a new Declarations Page only when a policy issuance transaction such as a change of coverage occurs. Therefore, the included Declarations Page which was in effect at the time of loss will indicate the policy period of the last policy issuance transaction.

The policy was in effect on the loss date of 06/12/2021.

Jessica Bass
Underwriter
Date:     08/05/2021

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

State Farm Mutual Automobile Insurance Company

*PO Box 89000*
*Atlanta GA 30356-9900*

48739-5-C    MATCH  00166  MUTL  VOL

## DECLARATIONS PAGE

NAMED INSURED        00166
        000007 0058        40-1397-5 C        A
LAMB, MELVIN O JR
1176 PLEASANT PINES RD
MT PLEASANT SC  29464-3722

| POLICY NUMBER | 632 3189-B07-40B |
|---|---|
| POLICY PERIOD JUN 10 2021 to FEB 07 2022 |
| 12:01 A.M. Standard Time |

AGENT

JACK TANKERSLEY
454 W COLEMAN BLVD
MT PLEASANT, SC 29464-5653

PHONE: (843)881-8888

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.**

### YOUR CAR

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|---|---|---|---|---|---|
| 2004 | CHEVROLET | TAHOE | SPORT WG | 1GNEK13Z54R235227 | 405H521000 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---|---|---|
| A | Liability Coverage | $1250.77 |
| | Bodily Injury Limits | |
| | Each Person,   Each Accident | |
| | $25,000      $50,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $25,000 | |
| U | Uninsured Motor Vehicle Coverage | $19.96 |
| | Bodily Injury Limits | |
| | Each Person,   Each Accident | |
| | $25,000      $50,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $25,000 | |

| * Total premium for JUN 10 2021 to FEB 07 2022. | $1,270.73 | This is not a bill. |
|---|---|---|

### IMPORTANT MESSAGES

Replaced policy number 6323189-40A.

**Your total renewal premium for AUG 07 2021 to FEB 07 2022 is $983.67.**

**\* The total premium listed above reflects a recent change to your policy and the 6 month renewal premium.**

State Farm works hard to offer you the best combination of price, service, and protection.   The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports.

You have the right to request, no more than once annually, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.

**Notice of insurance information collection practices - personal , family, or household insurance transactions:**
We often collect personal information from persons other than the individual or individuals listed on the policy.
Such personal information may, in certain circumstances, be disclosed to third parties without your authorization.
If you would like  additional information concerning the collection and disclosure of personal information - and your right to see and correct any personal information in your files - it will be furnished upon request.

### EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9840A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
6126MT    AMENDATORY ENDORSEMENT.
6128DP    AMENDATORY ENDORSEMENT.
6940A     AMENDATORY ENDORSEMENT.
6023DC DRIVER EXCLUSION-MELVIN O LAMB III.

| | |
|---|---|
| Agent: | JACK TANKERSLEY |
| Telephone: | (843)881-8888 |
| Prepared | JUL 14 2021     1397-B3A |

00596/04377
155-3866.2  04-2005 (o1a025hd)
I4SX6N  (o1a025ta)

See Reverse Side
(o1e0254c)

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary                    President

B10

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**PLEASE ATTACH TO YOUR POLICY BOOKLET**

Policy Number: 632 3189-B07-40B
Sheet 1 of 2

## 6126MT AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

**THIS POLICY**

The following has been added to item 5:.

*Your* purchase of this policy may allow *you* to purchase an excess and surplus lines policy from the *State Farm Companies*, subject to applicable eligibility rules.

## 6940A AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **THIS POLICY**

   Item 5 is changed to read:

   *Your* purchase of this policy may allow:

   a. *you* to purchase or obtain certain coverages, coverage options, coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules; or

   b. the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

2. **LIABILITY COVERAGE**

   Insuring Agreement and Supplementary Payments are replaced by the following:

   **Insuring Agreement**

   1. *We* will pay damages an *insured* becomes legally liable to pay because of:

      a. *bodily injury* to others; and

      b. damage to property;

      caused by an accident that involves a vehicle for which that *insured* is

   2. *We* have the right to:

      a. investigate, negotiate, and settle any claim or lawsuit;

      b. defend an *insured* in any claim or lawsuit, with attorney's chosen by *us*; and

      c. appeal any award or legal decision.

   for damages payable under this policy's Liability Coverage:

   **Supplementary Payments**

   *We* will pay, in addition to the damages described in the Insuring Agreement of this policy's Liability Coverage, those items listed below that result from such accident:

   1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney's fees incurred after *we* deposit in court or pay the amount due under the Insuring Agreement of this policy's Liability Coverage;

   2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

      a. that seeks damages payable under this policy's Liability Coverage; and

      b. against which *we* defend an *insured* with attorneys chosen by *us*.

00597/04377
ED1

State Farm - 000088

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**PLEASE ATTACH TO YOUR POLICY BOOKLET**

Policy Number: 632 3189-B07-40B

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

a. before a judgment, but only the interest on the lesser of:

(1) that part of the damages *we* pay, or

(2) this policy's applicable Liability Coverage limit; and

b. after a judgment.

*We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*.

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

b. furnish or apply for any bonds; or

c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

(1) an arbitration;

(2) a mediation; or

(3) a trial of a lawsuit; and

b. Reasonable expenses incurred by an *insured* at *our* request, other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above, that are incurred by an *insured* must be reported to *us* before we will pay such incurred costs or expenses.

3. **GENERAL TERMS**

a. The paragraph under **Where Coverage Applies** that reads:

is deleted.

The following is added:

**Limited Coverage in Mexico**

This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing

coverage in Mexico should be purchased from a Mexican insurance company.

Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *loss*es that occur in Mexico within 50 miles of the United States of America border and only for *insured*s as defined under each of the following coverages:

a. **Liability Coverage**

For claims brought against an *insured* in Mexico, the Supplementary Payments provision of this policy's Liability Coverage is changed to read:

*We* may, in addition to the damages described in item 1 of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at *our* option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insured*s as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

b. **Personal Injury Protection Coverage**

c. **Medical Payments Coverage**

d. **Physical Damage Coverages**

Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement – Comprehensive and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the

*covered vehicle* in the United States of America.

**WE HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.**

**WE HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF SOUTH CAROLINA IN THE UNITED STATES OF AMERICA.**

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this Limited Coverage in Mexico provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of South Carolina in the United States of America.

c. Paragraph c. of 5. *Premium* is changed to read:

c. The *premium* for this policy may vary based upon:

(1) The *premium* for this policy may vary based upon:

(2) the purchase of products or services from the *State Farm Companies*.

(2) the purchase of products or services from an organization that has entered into an agreement or contract with

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

6940/A

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

6940/A

00597/04377

State Farm - 000089

**PLEASE ATTACH TO YOUR POLICY BOOKLET**

Policy Number: 632 3189-B07-40B
Sheet 2 of 2

the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

© Copyright, State Farm Mutual Automobile Insurance Company, 2010

Page 4 of 4

6940A

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

00698/04377
ED1

State Farm - 000090

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## 6128DP AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

    *Newly Acquired Car* is changed to read:

    *Newly Acquired Car* means a *car* newly *owned by you* or a *resident relative*.

    A *car* ceases to be a *newly acquired car* on the earlier of:

    1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

    2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or a *resident relative*.

    If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500.

2. **LIABILITY COVERAGE**

    a. **Additional Definition**

    Item 4. of *Insured* is changed to read:

    *Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is:

    a. neither *owned by*, nor hired by, that other *person* or organization; and

    b. neither available for, nor being used for, carrying *persons* for a charge.

    b. **Exclusions**

    (1) Exclusion 6. is changed to read:

    THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS:

    a. MADE AVAILABLE; OR

    b. BEING USED

    TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

    (2) The exception to exclusion 10. is changed to read:

    This exclusion does not apply to damage to a:

    a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

    b. residence while rented to or leased to an *insured*; or

    c. private garage while rented to or leased to an *insured*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

6128DP

State Farm - 000091

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

3. **PERSONAL INJURY PROTECTION COVERAGE**

   a. **Additional Definitions**

   Item 1.a. of *Insured* is changed to read:

   *Insured* means *you* and *resident relatives* while *occupying*:

   (1) *your car*;

   (2) a *newly acquired car*; or

   (3) a *motor vehicle*, other than a motorcycle, not *owned by you* or any *resident relative*; or

   b. **Exclusions**

   (1) Exclusion 6. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* WHO IS STRUCK AS A PEDESTRIAN BY A *MOTOR VEHICLE*, *OWNED BY* THAT *INSURED* OR *YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

   (2) Exclusion 8. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. MADE AVAILABLE; OR

   b. BEING USED

   TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

4. **MEDICAL PAYMENTS COVERAGE**

   **Exclusions**

   Exclusion 4. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. MADE AVAILABLE; OR

   b. BEING USED

   TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

5. **UNINSURED MOTOR VEHICLE COVERAGE**

   a. **Exclusions**

   Exclusion 2. is changed to read:

   THERE IS NO COVERAGE FOR

   a. AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* THAT *INSURED* IF:

   (1) THE MOTOR VEHICLE IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; AND

   (2) IT WAS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT; OR

   b. *PROPERTY DAMAGE* SUSTAINED BY AN *INSURED*:

   (1) TO A MOTOR VEHICLE: OR

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

6128DP

State Farm - 000092

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(2) IN A MOTOR VEHICLE *OWNED BY* THAT *INSURED* IF THE MOTOR VEHICLE WAS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

**b.  If Other Uninsured Motor Vehicle Coverage Applies**

Item 4. is changed to read:

4.  If:

a.  *you* sustain *bodily injury* or *property damage* while *occupying* a motor vehicle other than *your car* that is *owned by*:

(1) *you*, then this coverage applies only to the extent of the uninsured motor vehicle coverage applicable to the motor vehicle that *you* were *occupying*; or

(2) any *resident relative*, then, in addition to the amount paid from the policy insuring the motor vehicle *you* were *occupying*, the maximum amount that may be paid from all other policies combined that are issued to *you* or any *resident relative* by the *State Farm Companies* is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

b.  a *resident relative* sustains *bodily injury* or *property damage* while *occupying* a motor vehicle other than *your car* that is *owned by*:

(1) *you*, then, in addition to the amount paid from the policy insuring the motor vehicle that that *resident relative* was *occupying*, the maximum amount that may be paid from all other policies combined that are issued to *you* or any *resident relative* by the *State Farm Companies* is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment;

(2) that *resident relative*, then this coverage applies only to the extent of the uninsured motor vehicle coverage applicable to the motor vehicle that that *resident relative* was *occupying*; or

(3) a different *resident relative*, then, in addition to the amount paid from the policy insuring the motor vehicle that that *resident relative* was *occupying*, the maximum amount that may be paid from all other policies combined that are issued to *you* or any *resident relative* by the *State Farm*

6128DP

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

State Farm - 000093

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*Companies* is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

6. **UNDERINSURED MOTOR VEHICLE COVERAGE**

   a. **Exclusions**

   Exclusion 2. is changed to read:

   THERE IS NO COVERAGE FOR

   a. AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* THAT *INSURED* IF:

      (1) THE MOTOR VEHICLE IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; AND

      (2) IT WAS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;OR

   b. *PROPERTY DAMAGE* SUSTAINED BY AN *INSURED*:

      (1) TO A MOTOR VEHICLE: OR

      (2) IN A MOTOR VEHICLE

      *OWNED BY* THAT *INSURED* IF THE MOTOR VEHICLE WAS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

   b. **If Other Underinsured Motor Vehicle Coverage Applies**

   Item 4. is changed to read:

4. If:

   a. *you* sustain *bodily injury* or *property damage* while *occupying* a motor vehicle other than *your car* that is *owned by*:

      (1) *you*, then this coverage applies only to the extent of the underinsured motor vehicle coverage applicable to the motor vehicle that *you* were *occupying*; or

      (2) any *resident relative*, then, in addition to the amount paid from the policy insuring the motor vehicle *you* were *occupying*, the maximum amount that may be paid from all other policies combined that are issued to *you* or any *resident relative* by the *State Farm Companies* is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

   b. a *resident relative* sustains *bodily injury* or *property damage* while *occupying* a motor vehicle other than *your car* that is *owned by*:

      (1) *you*, then, in addition to the amount paid from the policy insuring the motor vehicle that that *resident relative* was *occupying*, the maximum amount that may be paid from all other

6128DP

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

State Farm - 000094

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

policies combined that are issued to *you* or any *resident relative* by the *State Farm Companies* is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment;

(2) that *resident relative*, then this coverage applies only to the extent of the underinsured motor vehicle coverage applicable to the motor vehicle that that *resident relative* was *occupying*; or

(3) a different *resident relative*, then, in addition to the amount paid from the policy insuring the motor vehicle that that *resident relative* was *occupying*, the maximum amount that may be paid from all other policies combined that are issued to *you* or any *resident relative* by the *State Farm Companies* is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

7. **PHYSICAL DAMAGE COVERAGES**

a. The paragraph that reads:

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

is changed to read:

**Deductible**

1. If "D" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Comprehensive Coverage, if any, is the dollar amount shown on the Declarations Page next to the title of this coverage. However, *we* will not deduct more than $500 for any *loss* to a *newly acquired car*.

2. If "G" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Collision Coverage is the dollar amount shown on the Declarations Page next to the title of this coverage. However, *we* will not deduct more than $500 for any *loss caused by collision* to a *newly acquired car*.

b. **Insuring Agreements**

**Car Rental and Travel Expenses Coverage**

Item 4.a. **Car Rental Expense** is changed to read:

**Car Rental Expense**

*We* will pay the *daily rental charge* incurred when an *insured* rents a *car* from a *car business* while *your car* or a *newly acquired car* is:

(1) not drivable; or

(2) being repaired

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

6128DP

State Farm - 000095

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay this *daily rental charge* incurred during a period that:

(1) starts on the date:

    (a) the vehicle is not drivable as a result of the *loss*; or

    (b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

    (a) the date the vehicle has been repaired or replaced;

    (b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

    (c) seven days after *we* offer to pay for the *loss* if the vehicle is:

        (i) a total loss as determined by *us*; or

        (ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by an *insured* must be reported to *us* before *we* will pay such amount.

c. **Exclusions**

Exclusion 3. is changed to read:

THERE IS NO COVERAGE FOR ANY ***COVERED VEHICLE*** WHILE IT IS:

a. MADE AVAILABLE; OR

b. BEING USED

TO CARRY ***PERSONS*** FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

8. **INSURED'S DUTIES**

a. Item 6.a.(3) is changed to read:

A *person* making claim under:

a. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage, must:

(3) provide written authorization for *us* to obtain medical bills, medical records, wage information, salary information, employment information, and any other information *we* deem necessary to substantiate the claim.

Such authorizations must not:

    (a) restrict *us* from performing *our* business functions in:

        (i) obtaining records, bills, information, and data; nor

        (ii) using or retaining records, bills, information, and data collected or received by *us*;

    (b) require *us* to violate federal or state laws or regulations;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

6128DP

(c) prevent *us* from fulfilling *our* data reporting and data retention obligations to insurance regulators; or

(d) prevent *us* from disclosing claim information and data:

   (i) to enable performance of *our* business functions;

   (ii) to meet *our* reporting obligations to insurance regulators;

   (iii) to meet *our* reporting obligations to insurance data consolidators; and

   (iv) as otherwise permitted by law.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

b. The following is added to item 6.:

A *person* making claim under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage, must submit to *us* all information *we* need to comply with federal and state laws and regulations.

9. **GENERAL TERMS**

a. The following is added to **Newly Owned or Newly Leased Car**:

If a *resident relative* wants to insure a *car* newly *owned by* the *resident relative* with the **State Farm Companies** after that *car* ceases to be a *newly acquired car*, then the *resident relative* must apply to the **State Farm Companies** for a separate policy to insure the *car* newly *owned by* the *resident relative*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

b. The following are added to **GENERAL TERMS**:

**Electronic Delivery**

With *your* consent, *we* may, if allowed by law, electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

**Our Rights Regarding Claim Information**

a. *We* will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of *our* business functions.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

6128DP

State Farm - 000097

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP100-1832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

b. Subject to a. above, *we* will not be restricted in or prohibited from:

    (1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

    (2) using any of the items described in item b.(1) above; or

    (3) retaining:

        (a) any of the items in item b.(1) above; or

        (b) any other information *we* have in *our* possession as a result of *our* processing, handling, or otherwise resolving claims submitted under this policy.

c. *We* may disclose any of the items in item b.(1) above and any of the information described in item b.(3)(b) above:

    (1) to enable performance of *our* business functions;

    (2) to meet *our* reporting obligations to insurance regulators;

    (3) to meet *our* reporting obligations to insurance data consolidators;

    (4) to meet other obligations required by law; and

    (5) as otherwise permitted by law.

d. *Our* rights under a., b., and c. above shall not be impaired by any:

    (1) authorization related to any claim submitted under this policy; or

    (2) act or omission of an *insured* or a legal representative acting on an *insured's* behalf.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

6128DP

State Farm - 000098

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## 6023DC DRIVER EXCLUSION

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

Named Insured _____

Policy Number _____

Effective Date _____
       12:01 A.M. Standard Time

IT IS AGREED THAT UNDER COVERAGES:

_____

*WE* SHALL NOT BE LIABLE AND NO LIABILITY OR OBLIGATION OF ANY KIND SHALL ATTACH TO *US* FOR ***BODILY INJURY, LOSS,*** OR DAMAGE WHILE ANY MOTOR VEHICLE IS OPERATED BY:

_____

(***Person*** excluded)

ALL OTHER TERMS OF THIS POLICY ARE UNCHANGED.

I DECLARE THAT:

1. THE DRIVER'S LICENSE OF THE EXCLUDED ***PERSON*** HAS BEEN TURNED IN TO THE DEPARTMENT OF MOTOR VEHICLES; OR

2. AN APPROPRIATE POLICY OF LIABILITY INSURANCE OR OTHER SECURITY AS MAY BE AUTHORIZED BY LAW HAS BEEN PROPERLY EXECUTED IN THE NAME OF THE ***PERSON*** TO BE EXCLUDED.

I AGREE TO ACCEPT THIS ENDORSEMENT AND ACKNOWLEDGE THAT THIS AGREEMENT:

1. IS BINDING UPON EVERY ***INSURED*** TO WHOM THIS POLICY APPLIES; AND

2. WILL BE INCLUDED IN ANY SUBSTITUTION OR RENEWAL OF THIS POLICY.

_____

(Signature of a Named Insured)

1006065    146458  10-16-2013

State Farm - 000099

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**State Farm®**

Please read the policy carefully. If there is an accident, contact your State Farm agent or one of our Claim Offices at once. (See "INSURED'S DUTIES" in this policy booklet.)

Georgia-South Carolina Office
11350 Johns Creek Parkway
Duluth, GA 30098-0001
Phone: (770) 418-5000

**State Farm®
Car Policy
Booklet**

South Carolina
Policy Form 9840A

## CONTENTS

| | |
|---|---|
| THIS POLICY | 3 |
| DEFINITIONS | 4 |
| LIABILITY COVERAGE | 6 |
| Additional Definition | 6 |
| Insuring Agreement | 7 |
| Supplementary Payments | 7 |
| Limits | 8 |
| Nonduplication | 8 |
| Exclusions | 8 |
| If Other Liability Coverage Applies | 10 |
| Required Out-of-State Liability Coverage | 11 |
| Financial Responsibility Certification | 11 |
| PERSONAL INJURY PROTECTION | 11 |
| Additional Definitions | 11 |
| Insuring Agreement | 12 |
| Determining Medical Expenses | 13 |
| Arbitration | 13 |
| Limits | 13 |
| Exclusions | 14 |
| If Other Personal Injury Protection Coverage or Similar Vehicle Insurance Applies | 15 |
| Workers' Compensation Coordination | 15 |
| MEDICAL PAYMENTS COVERAGE | 17 |
| Additional Definition | 17 |
| Insuring Agreement | 18 |
| Determining Medical Expenses | 18 |
| Arbitration | 19 |
| Limit | 19 |
| Exclusions | 19 |
| If Other Medical Payments Coverage or Similar Vehicle Insurance Applies | 20 |
| Our Payment Options | 21 |
| UNINSURED MOTOR VEHICLE COVERAGE | 21 |
| Additional Definitions | 21 |
| Insuring Agreement | 22 |
| Our Right to Defend | 22 |
| Limits | 22 |
| Nonduplication | 22 |
| Exclusions | 23 |
| If Other Uninsured Motor Vehicle Coverage Applies | 23 |
| Our Payment Options | 24 |
| UNDERINSURED MOTOR VEHICLE COVERAGE | 25 |
| Additional Definitions | 25 |
| Insuring Agreement | 25 |
| Our Right to Defend | 25 |
| Limits | 25 |
| Nonduplication | 26 |
| Exclusions | 26 |
| If Other Underinsured Motor Vehicle Coverage Applies | 27 |
| Our Payment Options | 28 |
| PHYSICAL DAMAGE COVERAGES | 28 |
| Additional Definitions | 28 |
| Insuring Agreements | 29 |
| Supplementary Payments – Comprehensive Coverage and Collision Coverage | 31 |
| Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage | 31 |
| Limits – Car Rental and Travel Expenses | 33 |
| Coverage | 33 |
| Nonduplication | 33 |
| Exclusions | 33 |
| If Other Physical Damage Coverage or Similar Coverage Applies | 35 |
| Financed Vehicles | 36 |
| Our Payment Options | 36 |
| DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE | 37 |
| Additional Definition | 37 |
| Insuring Agreement | 37 |
| Benefit | 37 |
| Exclusions | 38 |
| Our Payment Options | 38 |

2
9840A

| | |
|---|---|
| INSURED'S DUTIES | 39 |
| Notice to Us of an Accident or Loss | 39 |
| Notice to Us of a Claim or Lawsuit | 39 |
| Insured's Duty to Cooperate With Us | 39 |
| Questioning Under Oath | 39 |
| Other Duties Under the Physical Damage Coverages | 39 |
| Other Duties Under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage | 40 |
| GENERAL TERMS | 41 |
| When Coverage Applies | 41 |
| Where Coverage Applies | 41 |
| Newly Owned or Newly Leased Car | 41 |
| Changes to This Policy | 42 |
| Premium | 43 |
| Renewal | 43 |
| Nonrenewal | 43 |
| Cancellation | 43 |
| Assignment | 44 |
| Bankruptcy or Insolvency of the Insured | 44 |
| Concealment or Fraud | 44 |
| Our Right to Recover Our Payments | 44 |
| Legal Action Against Us | 45 |
| Choice of Law | 45 |
| Severability | 45 |
| Conformity to Law | 45 |

## THIS POLICY

1. This policy consists of:
   a. the most recently issued Declarations Page;
   b. the policy booklet version shown on that Declarations Page, and
   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:
   a. *us*, and
   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

   a. based on payment of premium for the coverages chosen; and
   b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, & ENDORSEMENTS" on the Declarations Page, in reliance on the following statements:
      (1) The *named insured* shown on the Declarations Page is the sole owner or *of your car*.
      (2) Neither *you* nor any member of *your* household has, within the past three years, had:
         (a) a vehicle insurance canceled or nonrenewed by an insurer; or
         (b) either:
            (i) a license to drive, or
            (ii) a vehicle registration suspended, revoked, or refused.

   (3) *Your car* is used for pleasure and business

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:
   a. the statements in 3.b. above are made by such named insured or applicant and are true; and

   b. *we* provide this insurance on the basis those statements are true.

5. *Your* purchase of this policy may allow *you* to purchase certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other policies from the *State Farm Companies*, subject to their applicable eligibility rules.

## DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other form of these words and phrases. Defined words and phrases are printed in bold-face italics

*Bodily Injury* means bodily injury to a *person* and sickness, disease, or death that results from it.

*Car* means a land motor vehicle with four or more wheels, designed for use primarily on public roads. *Car* does not include:

   1. Any vehicle while located for use as a dwelling or other premises; or
   2. A truck tractor designed to pull any type of trailer.

*Car Business* means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

*Financial Responsibility Act* means the Motor Vehicle Financial Responsibility Act of South Carolina.

*Fungi* means any type or form of fungus or fungi and includes:
   1. Mold;
   2. Mildew; and

3. Any of the following that are produced or released by fungi:
   a. Mycotoxins;
   b. Spores;
   c. Scents; or
   d. Byproducts.

*Newly Acquired Car* means a car newly owned by *you*. A *car* ceases to be a *newly acquired car* on the earlier of:
   1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or
   2. the end of the 14th calendar day immediately following the date the car is delivered to *you*.

If a *newly acquired car* is not otherwise afforded Comprehensive Coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you*.

*Non-Owned Car* means a car that is in the lawful possession of *you* or any resident relative and that neither:

3
9840A

4
9840A

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

1. is owned by:
   a. you;
   b. any *resident relative*;
   c. any other *person* who resides primarily in *your* household, or
   d. an employee of any *person* described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:
   a. *you*; or
   b. any *resident relative*

   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or loss.

*Occupying* means in, on, entering, or exiting.

*Our* means the Company issuing this policy as shown on the Declarations Page.

*Owned By* means:
1. owned by;
2. registered to; or
3. leased, if the lease is written for a period of 31 or more consecutive days, to.

*Pedestrian* means a *person* who is not *occupying*:
1. a motorized vehicle; or
2. a vehicle designed to be pulled by a motorized vehicle.

*Person* means a human being.

*Private Passenger Car* means:
1. a car of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry *persons* and their luggage; or
2. a pickup truck, van, minivan, or sport utility vehicle:
   a. that is not used for:
      (1) wholesale; or
      (2) retail

pickup or delivery; and
   b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

*Resident Relative* means a *person*, other than *you*, who resides primarily with the first *person* shown as a named insured on the Declarations Page and who is:
1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or
2. a ward or a foster child of that named insured, his or her spouse, or a *person* described in 1. above.

*State Farm Companies* means one or more of the following:
1. State Farm Mutual Automobile Insurance Company;
2. State Farm Fire and Casualty Company; and
3. Subsidiaries or affiliates of either 1. or 2. above.

*Temporary Substitute Car* means a *car* that is in the lawful possession of the *person* operating it and that:
1. replaces *your car* for a short time while *your car* is out of use due to its:
   a. breakdown;
   b. repair;
   c. servicing;
   d. damage; or
   e. theft; and
2. neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a non-owned *car* and a temporary substitute *car*, then it is considered a temporary substitute *car* only.

*Trailer* means:
1. a trailer
   a. designed to be pulled by a private passenger *car*;
   b. not designed to carry property; or
   c. while not used as premises for office, store, or display purposes; or
2. a farm implement or farm wagon while being pulled on public roads by a *car*.

*Us* means the Company issuing this policy as shown on the Declarations Page.

*We* means the Company issuing this policy as shown on the Declarations Page.

*You* or *Your* means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a person, then "*you*" or "*your*"

includes the spouse of the first *person* shown as a named insured if the spouse resides primarily with that named insured.

*Your Car* means the vehicle shown under "YOUR CAR" on the Declarations Page. *Your car* does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under "YOUR CAR", and *you* ask us to replace it with a *car* newly owned by *you*, then the *car* being replaced will continue to be considered *your car* until the earlier of:
1. the end of the 30th calendar day immediately following the date the *car* newly owned by *you* is delivered to *you*;
2. the date this policy is no longer in force; or
3. the date *you* no longer own or lease the *car* being replaced.

## LIABILITY COVERAGE

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:
1. *you* and *resident relatives* for:
   a. the ownership, maintenance, or use of:
      (1) *your car*;
      (2) a *newly acquired car*; or
      (3) a *trailer*; and
   b. the maintenance or use of:
      (1) a non-owned *car*; or
      (2) a temporary substitute *car*;

The first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or

use of a *car* that is owned by, or furnished by an employer to, a *person* who resides primarily in *your* household, but only if such *car* is neither owned by, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse;

2. any other *person* for his or her use of:
   a. *your car*;
   b. a *newly acquired car*;
   c. a temporary substitute *car*; or
   d. a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used with the expressed or implied consent of *you*, and

3. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This

---

provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

**Insuring Agreement**
1. We will pay:
   a. damages an *insured* becomes legally liable to pay because of:
      (1) *bodily injury* to others, and
      (2) damage to property

   caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy;
   b. attorney fees for attorneys chosen by us to defend an *insured* who is sued for such damages; and
   c. court costs charged to an *insured* and resulting from that part of a lawsuit:
      (1) that seeks damages payable under this policy's Liability Coverage, and
      (2) against which we defend an *insured* with attorneys chosen by us.

We have no duty to pay attorney fees and court costs incurred after we deposit in court or pay the amount due under this policy's Liability Coverage.
2. We have the right to:
   a. investigate, negotiate, and settle any claim or lawsuit;
   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by us; and
   c. appeal any award or legal decision for damages payable under this policy's Liability Coverage.

**Supplementary Payments**
We will pay, in addition to the damages, fees, and costs described in the Insuring Agreement

above, the interest, premiums, costs, and expenses listed below that result from such accidents:
1. Interest on damages owed by the *insured* that accrues:
   a. before a judgment, when owed by law, but only on that part of the judgment we pay; and
   b. after a judgment. We will not pay interest on damages paid or payable by a party other than the *insured* or us.

   We have no duty to pay interest that accrues after we deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage.
2. Premiums for bonds, provided by a company chosen by us, required to appeal a decision in a lawsuit against an *insured*. We have no duty to:
   a. pay for bonds that exceed this policy's applicable Liability Coverage limit;
   b. furnish or apply for any bonds; or
   c. pay premiums for bonds purchased after we deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage; and
3. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:
   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:
      (1) an arbitration;
      (2) a mediation; or
      (3) a trial of a lawsuit; and
   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to us before we will pay such incurred costs or expenses

**Limits**
1. The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

   The Limit shown under "Each Person" is the most we will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident, including all *bodily injury* sustained by that one *person* and all emotional distress resulting from that *bodily injury* sustained by other *persons* who do not sustain that *bodily injury*.

   The limit shown under "Each Accident" is the most we will pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *persons* injured in the same accident.

   The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident." The limit shown is the most we will pay for all damages resulting from damage to property in any one accident.
2. These Liability Coverage limits are the most we will pay regardless of the number of:
   a. *insureds*;
   b. claims made;
   c. vehicles insured; or
   d. vehicles involved in the accident.

**Nonduplication**
We will not pay any damages or expenses under Liability Coverage that have already been paid under Uninsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:
1. TO THE EXTENT THE LIABILITY COVERAGE LIMITS OF THIS POLICY EXCEED THE LIABILITY COVERAGE LIMITS REQUIRED BY THE *FINANCIAL RESPONSIBILITY ACT* IF SUCH *INSURED* INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;
2. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;
3. FOR *BODILY INJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that insured's household employee who is neither covered, nor required to be covered, under workers' compensation insurance;
4. FOR *BODILY INJURY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees;
5. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;
6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a private passenger *car* on a share-the-expense basis;
7. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

a. *you*;

b. *any resident relative*; or

c. any agent, employee, or business partner of *you* or any *resident relative*; or

d. any person other than a person described in a., b., or c. above up to the liability coverage limits required by the *Financial Responsibility law*;

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*.

8. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE. This exclusion does not apply up to the liability coverage limits required by the *Financial Responsibility Act* while an *insured* is valet parking *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*.

9. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*.

10. FOR DAMAGE TO PROPERTY WHILE IT IS:

a. OWNED BY;

b. RENTED TO;

c. USED BY;

d. IN THE CARE OF OR;

e. TRANSPORTED BY

YOU, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:

a. motor vehicle *owned by the employer of you* or any *resident relative* if such damage is caused by an *Insured* while operating another motor vehicle;

b. residence while rented to or loaned to an *Insured*; or

c. private garage while rented to or loaned to an *Insured*.

11. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

12. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION;

13. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE.

14. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

This exclusion (14.) does not apply to *your car* up to the liability coverage limits required by the *Financial Responsibility Act*; OR

15. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If Liability Coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

a. the Liability Coverage limits of such policies will not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

a. If:

(1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as primary coverage, and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

b. If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* which applies to the accident as primary coverage;

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also apply as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as excess coverage, and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

b. If

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Companies* also apply as excess coverage for the same accident,

---

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1. an *Insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law,

financial responsibility law, or similar law, and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

---

**PERSONAL INJURY PROTECTION COVERAGE**

This policy provides Personal Injury Protection Coverage if "P" with a number beside it is shown under "SYMBOLS" on the Declarations Page. "P" with a number beside it is *your* "coverage symbol".

Check *your* coverage symbol with the Schedule in the provision titled Limits for the choice of coverage *you* made.

**Additional Definitions**

*Insured* means:

1. *you* and *resident relative*:

a. while occupying a *motor vehicle* other than a motorcycle; or

b. if struck as a *pedestrian* by a *motor vehicle*; or

2. any other *person* while occupying:

a. *your car*;

b. a *newly acquired car*;

c. a *temporary substitute car*; or

d. a *trailer* while attached to a car described in a., b., or c. above.

Such vehicle must be used with the expressed or implied consent of *you*.

*Medical Expenses* mean *reasonable expenses* for *medical services*.

*Medical Services* mean treatment, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the *bodily injury*;

2. rendered by a healthcare provider:

a. who is licensed as a healthcare provider if a license is required by law; and

b. within the legally authorized scope of that healthcare provider's practice;

3. commonly and customarily recognized throughout the medical profession and

within the United States of America as appropriate for the treatment of the *bodily injury*;

4. primarily designed to serve a medical purpose;

5. not experimental; and

6. not for research purposes

*Motor Vehicle* means a vehicle or trailer of a kind required to be registered under South Carolina law.

*Reasonable Expenses* mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar *medical services* in the geographical area in which the charges were incurred;

2. The fee specified in any fee schedule:

a. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where *medical services* are provided, and

b. as prescribed or authorized by the law where the *Insured* receives the *medical services* are provided;

3. The fees agreed to by both the *Insured's* healthcare provider and *us*; or

4. The fees agreed upon between the *Insured's* healthcare provider and a third party when *we* have a contract with such third party.

**Insuring Agreement**

*Medical Expenses* and *Funeral Expenses* apply to all Personal Injury Protection Coverages. *Loss of Income* and *Essential Services Expenses* apply only to coverages with coverage symbol P1, P2, P3, P4, P5, P6, and P7.

1. **Medical Expenses**

*We* will pay *medical expenses* incurred because of *bodily injury* that is sustained by an *Insured* and caused by accident resulting from the maintenance or use of a *motor vehicle* as a vehicle if:

a. that *Insured* is first provided *medical services* within one year immediately following the date of the accident; and

b. such *medical expenses* are for *medical services* that are provided within three years immediately following the date of the accident.

2. **Funeral Expenses**

*We* will pay funeral expenses incurred for an *Insured* who dies within three years immediately following the date of a *motor vehicle* accident if the death is a direct result of *bodily injury* sustained in such accident.

3. **Loss of Income**

*We* will pay 85% of an *Insured's* actual loss of earnings from work due to *bodily injury* that is sustained by an *Insured* and caused by a *motor vehicle* accident. This applies only if the *Insured* was receiving earnings from work at the time of the accident. The loss must be incurred within three years of the date of the accident and while the *Insured* is living.

4. **Essential Services Expenses**

*We* will pay reasonable expenses incurred for needed services that an *Insured* would have done for his or her family, but is unable to do because of *bodily injury* that is sustained by the *Insured* and caused by a *motor vehicle* accident. This benefit applies only if the *Insured* was not receiving earnings from work at the time of the accident. The expense must be incurred within three years of the date of the accident and while the *Insured* is living.

State Farm - 000102

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Determining Medical Expenses**

We have the right to:

1. obtain and use:
   a. utilization reviews;
   b. peer reviews; and
   c. medical bill reviews

   to determine if the incurred charges are *medical expenses*;

2. use a medical examination of the *insured* to determine if:
   a. the *bodily injury* was caused by a *motor vehicle accident*; and
   b. the expenses incurred are *medical expenses*; and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Arbitration**

1. If there is a disagreement as to:
   a. whether incurred charges are *medical expenses*; or
   b. the amount due under this coverage for Funeral Expenses, Loss of Income, or Essential Services Expenses

   then the disagreement will be resolved by arbitration upon written request of the *insured* or us.

2. The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

   The *insured* and we will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or we may petition a court that has jurisdiction to select the third arbitrator.

   Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

3. The arbitrators shall only decide whether incurred charges are *medical expenses* and the amount due under this coverage for Funeral Expenses, Loss of Income, or Essential Services Expenses. Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

   A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:
   a. us;
   b. the *insured*;
   c. any assignee of the *insured*; and
   d. any *person* or organization with whom the *insured* expressly or impliedly contracts for *medical services*, funeral services, or essential services.

4. Subject to 1, 2, 3, and 4, above, state court rules governing procedure and admission of evidence will be used.

5. We do not waive any of our rights by submitting to arbitration.

**Limits**

1. The most we will pay is the amount shown under "Aggregate Limit" in the Schedule for *your* coverage symbol. This limit is the most we will pay for all loss and expense combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:
   a. insureds;
   b. claims made;
   c. vehicles insured; or
   d. vehicles involved in the accident.

2. Subject to the aggregate limit shown in the Schedule for *your* coverage symbol, the most we will pay for funeral expenses incurred for any one *insured* is $3,000.

**Schedule**

| Coverage Symbol | Medical Expenses | Funeral Expenses | Loss of Income | Essential Services Expenses | Aggregate Limit |
|---|---|---|---|---|---|
| P1 | Yes | Yes | Yes | Yes | $1,000 |
| P2 | Yes | Yes | Yes | Yes | $1,500 |
| P3 | Yes | Yes | Yes | Yes | $2,000 |
| P4 | Yes | Yes | Yes | Yes | $2,500 |
| P5 | Yes | Yes | Yes | Yes | $5,000 |
| P6 | Yes | Yes | Yes | Yes | $10,000 |
| P7 | Yes | Yes | Yes | Yes | $25,000 |
| P8 | Yes | Yes | No | No | $1,000 |
| P9 | Yes | Yes | No | No | $1,500 |
| P10 | Yes | Yes | No | No | $2,000 |
| P11 | Yes | Yes | No | No | $2,500 |
| P12 | Yes | Yes | No | No | $5,000 |
| P13 | Yes | Yes | No | No | $10,000 |
| P14 | Yes | Yes | No | No | $25,000 |

**Exclusions**

THERE IS NO COVERAGE FOR AN *IN-SURED*:

1. WHO INTENTIONALLY CAUSES AN ACCIDENT WHICH RESULTS IN THAT *INSURED'S BODILY INJURY*;

2. WHILE VOLUNTARILY *OCCUPYING* A *MOTOR VEHICLE* KNOWN BY THAT *PERSON* TO BE STOLEN;

3. WHILE COMMITTING A FELONY;

4. WHILE ATTEMPTING TO ELUDE A POLICE OFFICER;

5. WHILE *OCCUPYING*, USING, OR MAINTAINING A MOTORCYCLE;

6. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE, *OWNED BY THAT IN-SURED*, *YOU*, OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

7. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

8. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:
   a. the use of a *private passenger car* on a share-the-expense basis; or
   b. an *insured* while *occupying* a non-*owned car* as a passenger.

9. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:
   a. *you*;
   b. any *resident relative*; or
   c. any agent, employee, or business partner of a, or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

---

10. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

11. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

12. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:
    a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS;
    b. RUNS ON RAILS OR CRAWLER-TREADS; OR
    c. IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

13. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

14. WHOSE *BODILY INJURY* RESULTS FROM:
    a. NUCLEAR REACTION,
    b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE, OR
    c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

15. WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

16. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*; OR

17. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:
    a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (17.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Personal Injury Protection Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same expense or loss under both this coverage and other similar vehicle insurance.

2. If Personal Injury Protection Coverage is provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:
   a. the Personal Injury Protection Coverage limits of such policies shall not be added together to determine the most that may be paid; and
   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. We may choose one or more policies from which to make payment.

3. The Personal Injury Protection Coverage provided by this policy applies as primary coverage for an *insured* to recover *bodily injury* while *occupying your car* or a *trailer* attached to it.

4. If:
   a. (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Personal Injury Protection Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and
      (2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident;

then we will pay the proportion of expenses or loss payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as primary coverage.

b. If:
   (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Personal Injury Protection Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and
   (2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident;

then the *State Farm Companies* will pay the proportion of expenses or loss payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as primary coverage.

c. Except as provided in 3. above, the Personal Injury Protection Coverage provided by this policy applies as excess coverage, but only in the amount by which the limits of this coverage exceed the primary coverage.

d. If:
   (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Personal Injury Protection Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and
   (2) personal injury protection coverage or other similar vehicle insurance

provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then we will pay the proportion of expenses or loss payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as excess coverage.

e. If:
   (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Personal Injury Protection Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and
   (2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of expenses or loss payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as excess coverage.

**Workers' Compensation Coordination**

Any Personal Injury Protection Coverage provided by this policy applies as excess over any benefits recovered under any workers' compensation law or any other similar law.

**Our Payment Options**

We may, at our option, make payment to one or more of the following:

1. The *Insured*;
2. The *Insured's* surviving spouse;

13
9840A

14
9840A

15
9840A

16
9840A

ELECTRONICALLY FILED - 2024 Jul 11 17:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent person, or

4. A person authorized by law to receive such payment; or

5. Any person or organization that provides the *medical services*, funeral services, or other services payable under this coverage.

## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you* and *resident relatives*:
   a. while occupying:
      (1) *your car*;
      (2) a *newly acquired car*;
      (3) a *temporary substitute car*;
      (4) a *non-owned car*; or
      (5) a *trailer* while attached to a car described in (1), (2), (3), or (4) above; or
   b. if struck as a *pedestrian* by a motor vehicle or any type of *trailer*; and

2. any other person while occupying:
   a. *your car*;
   b. a *newly acquired car*;
   c. a *temporary substitute car*; or
   d. a *trailer* while attached to a car described in a., b., or c. above.

Such vehicle must be used with the expressed or implied consent of you.

*Medical Expenses* mean reasonable expenses for *medical services*.

*Medical Services* mean treatments, procedures, products, and other services that are:

1. necessary to achieve *maximum medical improvement* for the *bodily injury*;

2. rendered by a healthcare provider:
   a. while so licensed as a healthcare provider if a license is required by law; and
   b. within the legally authorized scope of that healthcare provider's practice;

3. commonly and customarily recognized throughout the medical profession and within the United States of America as appropriate for the treatment of the *bodily injury*;

4. primarily designed to serve a medical purpose;

5. not experimental; and

6. not for research purposes.

*Reasonable Expenses* mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar *medical services* in the geographical area in which the charges were incurred;

2. The fee specified in any fee schedule:
   a. applicable to *medical payments* coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where *medical services* are provided; and
   b. as prescribed or authorized by the law of the state where *medical services* are provided;

3. The fees agreed to by both the *insured's* healthcare provider and us; or

17
9840A

4. The fees agreed upon between the *insured's* healthcare provider and a third party when we have a contract with such third party.

**Insuring Agreement**

*We* will pay:

1. *medical expenses* incurred because of *bodily injury* that is sustained by an *insured* and caused by accident resulting from the maintenance or use of a motor vehicle as a vehicle if:
   a. that incurred is first provided *medical services* within one year immediately following the date of the accident, and
   b. such *medical expenses* are for *medical services* that are provided within three years immediately following the date of the accident; and

2. funeral expenses incurred for an *insured* who dies within three years immediately following the date of a motor vehicle accident if the death is a direct result of *bodily injury* sustained in such accident.

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:
   a. utilization reviews;
   b. peer reviews; and
   c. medical bill reviews

to determine if the incurred charges are *medical expenses*;

2. use a medical examination of the *insured* to determine if:
   a. the *bodily injury* was caused by a motor vehicle accident, and
   b. the expenses incurred are *medical expenses*; and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

18
9840A

**Arbitration**

1. If there is a disagreement as to whether incurred charges are *medical expenses*, then the disagreement will be resolved by arbitration upon written request of the *insured* or *us*.

2. The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

3. The arbitrators shall only decide whether incurred charges are *medical expenses*. Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:
   a. *us*;
   b. the *insured*;
   c. any assignee of the *insured*; and
   d. any person or organization with whom the *insured* expressly or impliedly contracts for *medical services*.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and arbitration in evidence will be used.

6. *We* do not waive any of our rights by submitting to arbitration.

---

**Limit**

The Medical Payments Coverage limit is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person". This limit is the most *we* will pay for the *medical expenses* and funeral expenses combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

1. *insureds*,
2. claims made,
3. vehicles insured, or
4. vehicles involved in the accident.

Subject to the limit shown on the Declarations Page, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

**Exclusions**

THERE IS NO COVERAGE FOR AN *IN-SURED*:

1. WHO IS STRUCK AS A *PEDESTRIAN* BY A MOTOR VEHICLE, *OWNED BY* THAT *INSURED OR YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*.

2. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY IN-JURY*.

3. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*.

4. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:
   a. the use of a private passenger car on a share-the-expense basis; or
   b. an *insured* while occupying a *non-owned car* as a passenger.

5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN

19
9840A

OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:
   a. *you*;
   b. any *resident relative*; or
   c. any agent, employee, or business partner of a, or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*.

6. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE.

7. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a private passenger car.

8. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES.

9. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:
   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR
   b. RUNS ON RAILS OR CRAWLER TREADS.

10. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND.

11. WHOSE *BODILY INJURY* RESULTS FROM:
   a. NUCLEAR REACTION;
   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR
   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

12. WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIRE-ARM;

13. WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO FUNGI; OR

14. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:
   a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR
   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An *insured* shall not recover for the same *medical expenses* or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury*, then:
   a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and
   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

If other medical payments coverage, personal injury protection coverage, or similar

20
9840A

vehicle insurance applies, then the Medical Payments Coverage provided by this policy applies as excess coverage.

a. If:
   (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and
   (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as excess that our applicable limit bears to the sum of our applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

b. If:
   (1) more than one vehicle policy is issued to *you* or any *resident relative* by the *State Farm Companies* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and
   (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of *medical expenses* and funeral expenses payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

We may, at our option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent person;

4. A person authorized by law to receive such payment; or

5. Any person or organization that provides the *medical services* or funeral services.

---

## UNINSURED MOTOR VEHICLE COVERAGE

This policy provides Uninsured Motor Vehicle Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any *other person* while occupying or using:

   a. *your car*;

   b. a *newly acquired car*, or

   c. a *temporary substitute car*,

   with the expressed or implied consent of *you*, and

4. any *person* to the extent he or she may recover damages under a state wrongful death statute because of the death of an *insured* under 1, 2, or 3 above.

*Motor Vehicle* means a self-propelled vehicle or trailer designed for use on public roads, but does not include tractor engines, road rollers, farm trailers, tractor cranes, power shovels, well drillers, or electric trolleys.

*Property Damage* means damage to property of the *insured*.

*Uninsured Motor Vehicle* means a *motor vehicle*:

1. the ownership, maintenance, and use of which is:

   a. not insured or bonded for bodily injury and property damage liability at the time of the accident; or

   b. insured or bonded for bodily injury and property damage liability at the time of the accident; but

   (1) the limits are less than required by the *Financial Responsibility Act*;

   (2) the insuring company:

      (a) denies that its policy provides liability coverage for damages that result from the accident; or

      (b) is or becomes insolvent; or

   (3) a cause of action for the *bodily injury* or *property damage* is barred by the South Carolina Tort Claims Act; or

2. the owner and driver of which remain unknown, but only if:

   a. the *bodily injury* or *property damage* was caused by physical contact with the unknown vehicle, or the accident was witnessed by someone other than the owner or driver of the insured vehicle. The witness must sign an affidavit attesting to the truth of the facts of the accident contained in the affidavit; and

---

b. the *insured* was not negligent in failing to determine the identity of the other vehicle and the driver of the other vehicle at the time of the accident.

*Uninsured Motor Vehicle* does not include a motor vehicle owned by:

1. a self-insurer in accordance with the applicable provisions of law; or

2. the State or any of its political subdivisions when the vehicle is operated by a *person* with proper authorization.

**Insuring Agreement**

We will pay damages for *bodily injury* and *property damage* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be sustained by an *insured*. The *bodily injury* and *property damage* must be caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle*.

**Our Right to Defend**

We have the right to appear and defend in the name of the owner and driver of the *uninsured motor vehicle* on the issue of legal liability of, and the damages owed by, such owner or driver.

**Limits**

1. The Uninsured Motor Vehicle Coverage limits for *bodily injury* are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

   a. The most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident is the lesser of:

      (1) the amount of all damages resulting from that *bodily injury* reduced by the sum of all payments for damages resulting from that *bodily injury* made by or on behalf of any *person* or organization who is or may be held legally liable for that *bodily injury*; or

---

(2) the limit shown under "Each Person".

"*Bodily injury* to any one *person*" includes all injury and damages to other *persons* resulting from that *bodily injury*, and all emotional distress resulting from that *bodily injury* sustained by other *persons* who do not sustain that *bodily injury*.

   b. Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident".

2. The Uninsured Motor Vehicle Coverage limit for *property damage* is shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Property Damage Limit – Each Accident". The most *we* will pay for *property damage* is the lesser of:

   a. the amount of *property damage* reduced by the sum of all payments made by or on behalf of any *person* or organization who is or may be held legally liable for that *property damage*; or

   b. the limit shown under "Each Accident".

3. These Uninsured Motor Vehicle limits are the most *we* will pay regardless of the number of:

   a. *insureds*;

   b. claims made;

   c. vehicles insured; or

   d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*;

2. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

---

b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

   so for for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that are *property damage* paid or payable under any policy of property insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY* OR *PROPERTY DAMAGE* AND THEREBY IMPAIRS *OUR* RIGHT TO RECOVER *OUR* PAYMENTS;

2. TO THE EXTENT THE UNINSURED MOTOR VEHICLE COVERAGE LIMITS OF THIS POLICY EXCEED THE COVERAGE LIMITS REQUIRED BY THE *FINANCIAL RESPONSIBILITY ACT*:

   a. FOR AN *INSURED* WHO IS SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF:

      (1) THE MOTOR VEHICLE IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*, AND

      (2) IT WAS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

---

b. IF THE *UNINSURED MOTOR VEHICLE IS OWNED BY YOU* OR ANY *RESIDENT RELATIVE*; OR

   c. FOR *PROPERTY DAMAGE*:

      (1) TO A MOTOR VEHICLE; OR

      (2) IN A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF THE MOTOR VEHICLE WAS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

3. FOR *PROPERTY DAMAGE* THAT WAS PROXIMATELY CAUSED BY THE DRIVER OF *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

4. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

5. TO THE EXTENT IT BENEFITS

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

   c. ANY PROPERTY INSURER;

6. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION; OR

7. FOR THE FIRST $200 OF *PROPERTY DAMAGE* SUSTAINED BY EACH *INSURED* IN EACH ACCIDENT.

**If Other Uninsured Motor Vehicle Coverage Applies**

The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* or *property damage* while occupying *your car*.

---

3. Except as provided in item 1. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

4. If:

   a. *you* or any *resident relative* sustains *bodily injury* or *property damage*:

      (1) while occupying a motor vehicle not owned by *you* or any *resident relative*; or

      (2) while not occupying a motor vehicle; and

   b. Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury* or *property damage*, then

   the maximum amount that may be paid from all such policies combined is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

5. If *you* or any *resident relative* sustains *bodily injury* or *property damage* while occupying a motor vehicle other than *your car* that is owned by *you* or any *resident relative*, then this coverage applies only to the extent of the uninsured motor vehicle coverage applicable to the motor vehicle that the *insured* was occupying.

However, if the motor vehicle that the *insured* was occupying was not insured for uninsured motor vehicle coverage at the time of the accident, then the maximum amount that may be paid from all policies

---

combined that are issued to *you* or any *resident relative* by the *State Farm Companies* is the minimum limits required by the *Financial Responsibility Act. We* may choose one or more policies from which to make payment.

6. Subject to items 1., 2., 3., and 4. above, if this policy and one or more other sources provide uninsured motor vehicle coverage for the same damages on a:

   a. primary basis, then *we* will pay the proportion of damages payable as primary that the applicable limit of that coverage under this policy bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as primary coverage; or

   b. excess basis, then *we* will pay the proportion of damages payable as excess that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

**Our Payment Options**

We may, at our option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent person; or

4. A person authorized by law to receive such payment.

State Farm - 000105

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## UNDERINSURED MOTOR VEHICLE COVERAGE

This policy provides Underinsured Motor Vehicle Coverage if "W" is shown under "SYM-BOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other person while occupying or using:

    a. *your car*;

    b. a *newly acquired car*; or

    c. a *temporary substitute car*;

    with the expressed or implied consent of *you*; and

4. any person to the extent he or she may recover damages under a *state wrongful death statute* because of the death of an *insured* under 1., 2., or 3. above

*Motor Vehicle* means a self-propelled vehicle or trailer designed for use on public roads, but does not include tractor engines, road rollers, farm trailers, tractor cranes, power shovels, well drillers, or electric trolleys.

*Property Damage* means damage to property of the *insured*.

*Underinsured Motor Vehicle* means a motor vehicle the ownership, maintenance, and use of which is either:

1. insured or bonded for bodily injury and property damage liability at the time of the accident; or

2. self-insured under any motor vehicle financial responsibility law, any motor carrier law, or any similar law

in an amount that is at least equal to the amount required by the *Financial Responsibility Act* and

1. the amount of that insurance, bonds, and self-insurance from all sources is less than the amount of the *insured's* damages; or

2. the *insured's* damages exceed any damages cap or limitation imposed by statute.

*Underinsured Motor Vehicle* does not include a motor vehicle while located for use as a dwelling or other premises.

**Insuring Agreement**

We will pay damages for *bodily injury* and *property damage* an *insured* is legally entitled to recover from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be sustained by an *insured*. The *bodily injury* and *property damage* must be caused by an accident that involves the operation, maintenance, or use of an *underinsured motor vehicle*.

We will pay only if all bodily injury and property damage liability bonds, policies, and self-insurance plans that apply to the *insured's bodily injury* or *property damage* have been:

1. used up by payment of judgments or settlements; or

2. paid to the extent required by any damages cap or limitation imposed by statute.

**Our Right to Defend**

We have the right to appear and defend in the name of the owner and driver of the *underinsured motor vehicle* on the issues of legal liability of, and the damages owed by, such owner or driver.

**Limits**

1. The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

    a. The most we will pay for all damages resulting from *bodily injury* to any one person injured in any one accident is the lesser of:

      (1) the amount of all damages resulting from that *bodily injury* reduced by the sum of all payments for damages resulting from that

*bodily injury* made by or on behalf of any person or organization who is or may be held legally liable for that *bodily injury*; or

      (2) the limit shown under "Each Person".

    "Each Person" applies to *one person* includes all injury and damages to other persons resulting from that *bodily injury*, and all emotional distress resulting from that *bodily injury* sustained by other persons who do not sustain that *bodily injury*.

    b. Subject to a. above, the most we will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident".

2. The Underinsured Motor Vehicle Coverage limit for *property damage* is shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Property Damage Limit – Each Accident". The most we will pay for *property damage* is the lesser of:

    a. the amount of *property damage* reduced by the sum of all payments made by or on behalf of any person or organization who is or may be held legally liable for that *property damage*; or

    b. the limit shown under "Each Accident".

3. These Underinsured Motor Vehicle Coverage limits are the most we will pay regardless of the number of:

    a. *insureds*;

    b. claims made;

    c. vehicles insured; or

    d. vehicles involved in the accident.

**Nonduplication**

We will not pay under Underinsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

    a. by or on behalf of any person or organization who is or may be held

legally liable for the *bodily injury* to the *insured*; or

    b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. that:

    a. have already been paid;

    b. could have been paid; or

    c. could be paid

    to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that are *property damage* paid or payable under any policy of property insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY* OR *PROPERTY DAMAGE* AND THEREBY IMPAIRS *OUR* RIGHT TO RECOVER *OUR* PAYMENTS;

2. TO THE EXTENT THE UNDERINSURED MOTOR VEHICLE COVERAGE LIMITS OF THIS POLICY EXCEED THE COVERAGE LIMITS REQUIRED BY THE *FINANCIAL RESPONSIBILITY ACT*;

3. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF:

    (1) THE MOTOR VEHICLE IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; AND

    (2) IT WAS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE

25
9840A

26
9840A

---

COVERAGE AT THE TIME OF THE ACCIDENT;

    b. IF THE *UNDERINSURED MOTOR VEHICLE* IS *OWNED BY YOU* OR ANY *RESIDENT RELATIVE*; OR

4. FOR *PROPERTY DAMAGE*:

    (1) TO A MOTOR VEHICLE; OR

    (2) IN A MOTOR VEHICLE

    *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF THE MOTOR VEHICLE WAS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

5. FOR *PROPERTY DAMAGE* THAT WAS PROXIMATELY CAUSED BY THE DRIVER OF *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

6. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

7. TO THE EXTENT IT BENEFITS:

    a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

    b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

    c. ANY PROPERTY INSURER; OR

8. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION

**If Other Underinsured Motor Vehicle Coverage Applies**

1. The Underinsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* or *property damage* while *occupying your car*.

2. Except as provided in item 1. above, the Underinsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

3. If:

    a. *you* or any *resident relative* sustains *bodily injury* or *property damage*;

      (1) while *occupying* a motor vehicle *not owned by you* or any *resident relative*; or

      (2) while not *occupying* a motor vehicle; and

    b. Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury* or *property damage*, then

the maximum amount that may be paid from all such policies combined is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

4. If *you* or any *resident relative* sustains *bodily injury* or *property damage* while *occupying* a motor vehicle other than *your car* that is *owned by you* or any *resident relative*, then this coverage applies only to the extent of the underinsured motor vehicle coverage applicable to the motor vehicle that the *insured* was *occupying*.

However, if the motor vehicle that the *insured* was *occupying* was not insured for underinsured motor vehicle coverage at the time of the accident, then the maximum amount that may be paid from all policies combined that are issued to *you* or any *resident relative* by the *State Farm Companies* is the minimum limits required by the *Financial Responsibility Act*. *We* may choose one or more policies from which to make payment.

5. Subject to items 1., 2., 3., and 4. above, if this policy and one or more other sources

provide underinsured motor vehicle coverage for the same damages on a:

    a. primary basis, then *we* will pay the proportion of damages payable as primary that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits of all other underinsured motor vehicle coverage that apply as primary coverage; or

    b. excess basis, then *we* will pay the proportion of damages payable as excess that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits

of all other underinsured motor vehicle coverage that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *Insured*;

2. The *Insured's* surviving spouse;

3. A parent or guardian of the *Insured*, if the *Insured* is a minor or an incompetent person; or

4. A person authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

as shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*;

4. a *camper* that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a *non-owned car* while it is:

    a. being driven by an *Insured*; or

    b. in the custody of an *Insured* if at the time of the loss it is:

      (1) not being driven; or

      (2) being driven by a person other than an *Insured* and being accepted by an *Insured*;

6. a *non-owned trailer* while it is being used by an *Insured*; and

7. a *non-owned camper* while it is being used by an *Insured*

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of trailers and

27
9840A

28
9840A

## Page 29

campers must be securely fixed as a permanent part of the *trailer* or camper.

**Daily Rental Charge** means the sum of:

1. the daily rental rate;
2. mileage charges; and
3. related taxes.

*Insured* means *you* and *residents relatives*.

**Loss** means:

1. direct, sudden, and accidental damage to; or
2. total or partial theft of

a *covered vehicle*. **Loss** does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

**Loss Caused By Collision** means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or another object; or
2. the overturning of a *covered vehicle*.

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

**Non-Owned Camper** means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:
   a. an *insured*;
   b. any other person who resides primarily in *your* household; or
   c. an employer of any *person* described in a. or b. above; nor
2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

**Non-Owned Trailer** means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:
   a. an *insured*;
   b. any other person who resides primarily in *your* household; or
   c. an employer of any *person* described in a. or b. above; nor
2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

**Loss Settlement Agreements**

1. **Comprehensive Coverage**
   We will pay:
   a. for *loss*, except *loss caused by collision*, to a *covered vehicle*; and
   b. transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newly acquired car*. These transportation expenses are payable:
      (1) during the period that:
         (a) starts on the date *you* report the theft to *us*; and
         (b) ends on the earliest of:
            (i) the date the vehicle is returned to *your* possession in a drivable condition;
            (ii) the date *we* offer to pay for the *loss* if the vehicle has not yet been recovered; or
            (iii) the date *we* offer to pay for the *loss* of the vehicle is recovered, but is a total *loss* as determined by *us*, and
      (2) during the period that:
         (a) starts on the date the vehicle is left at a repair facility if the

## Page 30

stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has sustained repaired damage that resulted from the total theft; and
(b) ends on the date the vehicle is repaired.

These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

2. **Collision Coverage**
   *We* will pay for *loss caused by collision* to a *covered vehicle*.

3. **Emergency Road Service Coverage**
   *We* will pay the fair cost incurred by an *insured* for:
   a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;
   b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;
   c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;
   d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and
   e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

4. **Car Rental and Travel Expenses Coverage**
   a. **Car Rental Expense**
      *We* will pay the *daily rental charge* incurred when *you* rent a car from a *car business* while *your car* or a *newly acquired car* is:
      (1) not drivable; or

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.
*We* will pay the *daily rental charge* incurred during a period that:
(1) starts on the date:
   (a) the vehicle is not drivable as a result of the *loss*; or
   (b) the vehicle is left at a repair facility if the vehicle is drivable; and
(2) ends on the earliest of:
   (a) the date the vehicle has been repaired or replaced;
   (b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or
   (c) five days after *we* offer to pay for the *loss* if the vehicle is:
      (i) a total *loss* as determined by *us*; or
      (ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by *you* must be reported to *us* before *we* will pay such amount.

b. **Travel Expenses**
   *We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:
   (1) an *insured* during the period that:
      (a) starts after the *loss* occurs; and
      (b) ends on the earlier of:

## Page 31

(i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or
(ii) the repair of the vehicle if the *insured* waits for the repairs before continuing on to his or her destination or returning home; and
(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

c. **Rental Car – Repayment of Deductible Expense**
   *We* will pay the comprehensive deductible or collision deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage or Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:
   a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or
   b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will always pay reasonable expenses incurred to tow the *covered vehicle* from this facility to any one reasonable distance from this facility to any repair facility chosen by an

*insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable;
2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:
   a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and
   b. any one repair facility chosen by the owner of the *covered vehicle*, and store the vehicle is a total *loss*.
   If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and
3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $350 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:
   a. Pay the cost to repair the *covered vehicle* minus any applicable deductible. The deductible amount does not apply to *loss* to safety glass.
      (1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:
         (a) The cost agreed to by both the owner of the *covered vehicle* and *us*;
         (b) A bid or repair estimate approved by *us*; or
         (c) A repair estimate that is written based upon or adjusted to:

## Page 32

(i) the prevailing competitive price;
(ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or
(iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

(2) The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

(3) If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the

*covered vehicle* must pay for the amount of the betterment.

b. Pay the actual cash value of the *covered vehicle* minus any applicable deductible.
   (1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or *us*, using the following procedures:
      (a) The owner and *we* will each select a competent appraiser.
      (b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.
      (c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.
      (d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.
      (e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the

owner of the covered vehicle and us.

(f) *We* do not waive any of our rights by submitting to an appraisal.

(2) The damaged *covered vehicle* must be given to us in exchange for our payment, unless we agree that the owner may keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*; or

c. Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1. Car Rental Expense

The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

a. The limit shown under "Each Day" is the most *we* will pay for the daily rental *charge*. If:

(1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount;

(2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the

most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

2. Travel Expenses

The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

3. Rental Car – Repayment of Deductible Expense

The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

a. INTENTIONALLY DAMAGED, OR
b. STOLEN

BY OR AT THE DIRECTION OF AN *INSURED*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A *CHARGE*. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

a. THEFT,
b. CONVERSION,
c. EMBEZZLEMENT, OR
d. SECRETION

BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A PERSON WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

a. NUCLEAR REACTION;
b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR
c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED*

*VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11. *YOUR CAR* WHILE SUBJECT TO ANY:

a. LIEN AGREEMENT,
b. RENTAL AGREEMENT,
c. LEASE AGREEMENT, OR
d. SALES AGREEMENT

NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY *NON-OWNED CAR* WHILE IT IS:

a. BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR
b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS*. This exclusion (12.b.) does not apply to a *private passenger car*;

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

a. FAILS OR IS DEFECTIVE; OR
b. IS DAMAGED AS A DIRECT RESULT OF:

(1) WEAR AND TEAR;
(2) FREEZING; OR
(3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

a. THAT IS NOT LEGAL FOR USE IN OR ON THE *COVERED VEHICLE*

IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED, OR

b. THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE *COVERED VEHICLE*.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

a. *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

b. *loss* caused by collision to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

b. *OWNED BY AN INSURED*, AND
c. NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY *COVERED VEHICLE* WHILE IT IS:

a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. The policy that provides the most coverage applies. If more than one policy provides coverage on an equal basis, then we will pay that *loss* or expense under only one such policy.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of

all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable under any of the Physical Damage Coverages.

However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date we mail or electronically transmit a notice of the termination to the creditor.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of our payment.

*Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. Comprehensive Coverage and Collision Coverage

a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* owned by *you*:

(1) *You*;
(2) The repairer; or
(3) A creditor shown on the Declarations Page, to the extent of its interest.

b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not owned by *you*:

(1) *You*;
(2) The owner of such vehicle;
(3) The repairer; or
(4) A creditor, to the extent of its interest.

2. Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage

*We* may, at *our* option, make payment to one or more of the following:

a. *You*;
b. The *insured* who incurred the expense; or
c. Any party that provided the service for which payment is owed.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

### Additional Definition

*Insured* means a person whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

### Insuring Agreement

*We* will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an *insured*:

1. dies, or
2. suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The *insured* must be occupying or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days immediately following the date of the accident.

### Benefit

The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

The benefits shown in the schedules are doubled for an *insured* who at the time of the accident was occupying a *private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

### Death, Dismemberment and Loss of Sight Benefits Schedules

If the amount shown on the Declarations Page for the *insured* is $5,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb and a finger on one hand, or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

If the amount shown on the Declarations Page for the *insured* is $10,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand, or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

37
9840A

### Exclusions

**DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE DOES NOT APPLY TO AN *INSURED*:**

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A *CAR BUSINESS*;
2. WHILE *OCCUPYING*, LOADING, OR UNLOADING:
   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;
   b. A VEHICLE, OTHER THAN AN EMERGENCY VEHICLE, WHILE USED IN THE:
      (1) *INSURED'S* BUSINESS; OR
      (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A *CAR BUSINESS*.
      This exclusion (2.b.) does not apply if the vehicle is a *private passenger car*;
   c. A MILITARY VEHICLE; OR
   d. A VEHICLE WHILE IT IS:
      (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR
      (2) ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. THIS exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;
3. WHILE *OCCUPYING*, LOADING, UN-LOADING, OR WHO IS STRUCK AS A *PEDESTRIAN* BY:

a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;
b. A MOTOR VEHICLE THAT IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR
c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES; OR
4. FOR DEATH, DISMEMBERMENT, LOSS OF SIGHT, OR *TOTAL DISABILITY* THAT RESULTS FROM:
   a. WAR OF ANY KIND;
   b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;
   c. THE DISCHARGE OF A FIREARM;
   d. EXPOSURE TO *FUNGI*;
   e. SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *INSURED* WAS SANE OR INSANE; OR
   f. DISEASE except pus-forming infection due to *bodily injury* sustained in the accident.

### Our Payment Options

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;
2. The *insured's* surviving spouse;
3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent person; or
4. A person or organization authorized by law to receive such payment.

38
9840A

## INSURED'S DUTIES

### 1. Notice to Us of an Accident or Loss

The *insured* must give *us* or one of *our* agents notice of the accident or loss as soon as reasonably possible. The notice must give *us*:

a. *your* name;
b. the names and addresses of all *persons* involved in the accident or loss;
c. the hour, date, place, and facts of the accident or loss; and
d. the names and addresses of witnesses to the accident or loss.

### 2. Notice to Us of a Claim or Lawsuit

a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.
b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

### 3. Insured's Duty to Cooperate With Us

a. The *insured* must cooperate with *us* and, when asked, assist *us* in:
   (1) making settlements;
   (2) securing and giving evidence;
   (3) attending, and getting witnesses to attend, depositions, hearings, and trials; and
   (4) preserving his or her right to recover damages from others.
b. The *insured* must not, except at his or her own cost, voluntarily:
   (1) make any payment to others; or
   (2) assume any obligation to others unless authorized by the terms of this policy.
c. Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

### 4. Questioning Under Oath

Under:
a. Liability Coverage, each *insured*;
b. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage, each *insured*, or any other *person* or organization making claim or seeking payment; and
c. Physical Damage Coverage, each *insured* or owner of a *covered vehicle*, or any other *person* or organization making claim or seeking payment;

must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require. Each *person* or organization must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, *our*, *our* representative, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

### 5. Other Duties Under the Physical Damage Coverage

When there is a *loss*, *you* or the owner of the *covered vehicle* must:
a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that it is reported to *us*;
b. make a prompt report to the police when the *loss* is the result of theft;
c. allow *us* to:

(1) inspect any damaged property before its repair or disposal;
(2) test any part or equipment before that part or equipment is removed or repaired; and
(3) move the *covered vehicle* to *our* expense in order to conduct such inspection or testing.
d. provide an all:
   (1) records;
   (2) receipts; and
   (3) invoices
   that *we* request and allow *us* to make copies; and
e. not abandon the *covered vehicle* to *us*

### 6. Other Duties Under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage

A *person* making claim must:
a. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:
   (1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated by a physician. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;
   (2) be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request;

(3) provide written authorization for *us* to obtain:
   (a) medical bills;
   (b) medical records;
   (c) wage, salary, and employment information; and
   (d) any other information *we* deem necessary to substantiate the claim.
   If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.
   If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and
   (4) allow *us* to inspect the vehicle that the *insured* occupied in the accident;
b. Uninsured Motor Vehicle Coverage must report an accident, involving a motor vehicle whose owner and driver remain unknown, to the police and to *us* within a reasonable period of time; and
c. Uninsured Motor Vehicle Coverage and Underinsured Motor Vehicle Coverage must:
   (1) send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident; and
   (2) if making a claim for *property damage*:
      (a) allow *us* to:
         (i) inspect any *property damage* before its repair or disposal;

39
9840A

40
9840A

State Farm - 000109

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(ii) test any part or equipment before that part or equipment is removed or repaired; and

(iii) move the damaged property at our expense in order to conduct such inspection or testing; and

(b) protect the damaged property from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

(c) provide *us* all:
  (i) records;
  (ii) receipts; and
  (iii) invoices

that *we* request and allow *us* to make copies;

(d) not abandon the damaged property to *us*; and

(e) give *us* sworn proof of claim within 60 days of the accident. This proof of claim must state:

  (i) who owns the property and how much they own;

  (ii) the amount of any claims or liens on the property;

  (iii) the value of the property at the time of the accident;

  (iv) details of the accident; and

  (v) details of any other insurance applicable to the property.

## GENERAL TERMS

**1.  When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period.  The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid.  The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

**2.  Where Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur:

a.  in the United States of America and its territories and possessions;

b.  in Canada; and

c.  while a vehicle for which coverage is provided by this policy is being

shipped between the ports of the United States of America, its territories, its possessions, and Canada.

The Liability Coverage, Personal Injury Protection Coverage, Medical Payments Coverage, and Physical Damage Coverages also apply in Mexico within 50 miles of the United States border.  A Physical Damage Coverage *loss* in Mexico is determined on the basis of cost at the nearest United States point.

Death, Dismemberment and Loss of Sight Coverage applies anywhere in the world.

**3.  Newly Owned or Newly Leased Car**

If *you* want to insure a *car* newly owned by *you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

a.  request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly owned by

you and pay any added amount due. If *you* make such request while this policy is in force and:

(1) before the *car newly owned by you* ceases to be a *newly acquired car*, then that *car newly owned by you* will be insured by this policy as *your car* beginning on the date the *car newly owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

(2) after the *car newly owned by you* ceases to be a *newly acquired car*, then that *car newly owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b.  apply to the *State Farm Companies* for a separate policy to insure the *car newly owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

**4.  Changes to This Policy**

a.  **Changes in Policy Provisions**

*We* may only change the provisions of this policy by:

(1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

(2) revising this policy to give broader coverage without an additional premium charge.  If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of South Carolina without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

b.  **Change of Interest**

(1) No change of interest in this policy is effective unless *we* consent in writing.

(2) Except under Death, Dismemberment and Loss of Sight Coverage, if a named insured shown on the Declarations Page dies, then the definition of *Insured* under each of the coverages provided by this policy is changed to include:

  (a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

  (b) the legal representative of the deceased named Insured.

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named Insured.

c.  **Joint and Individual Interests**

If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

d.  **Change of Policy Address**

*We* may change the named insured's policy address as shown on the Declarations Page and in our records to the most recent address provided to *us* by:

(1) *you*; or

(2) the United States Postal Service.

<center>41<br>9840A</center>

<center>42<br>9840A</center>

**5.  Premium**

a.  Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b.  The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c.  The premium for this policy may vary based upon the purchase of other insurance from the *State Farm Companies*.

d.  The premium of this policy is based upon information *we* have received from *you* or other sources.  *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

(1) *Your car*, or its use, including annual mileage;

(2) The *persons* who regularly drive *your car*, including newly licensed family members;

(3) *Your* marital status; or

(4) The location where *your car* is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to *us* when *we* ask, then *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in

the amount of the decrease.  If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

**6.  Renewal**

*We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in 7. and 8. below.

**7.  Nonrenewal**

If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page.

**8.  Cancellation**

a.  **How You May Cancel**

*You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

b.  **How and When We May Cancel**

*We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

(1) If *we* mail or deliver a cancellation notice:

  (a) during the first 90 days following this policy's effective date; or

  (b) because the premium is not paid when due;

then the date cancellation is effective will be at least 15 days after the date *we* mail or deliver the cancellation notice.

Otherwise, the date cancellation is effective will be at least 20 days after the date *we* mail or deliver the cancellation notice.

(2) After this policy has been in force for more than 90 days, *we* will not cancel this policy before the end of the current policy period unless:

  (a) the premium is not paid when due; or

  (b) *you*, any *resident relative*, or any other *person* who usually drives *your car* has had his or her driver's license under suspension or revocation:

    (1) during the policy period, or

    (2) if the policy is a renewal, during its policy period or the 90 days immediately preceding the last anniversary of the effective date of the policy.

c.  **Return of Unearned Premium**

If *you* cancel this policy, then premium may be earned on a short rate basis. If *we* cancel this policy, then premium will be earned on a pro rata basis.

Any unearned premium may be returned within a reasonable time after cancellation. Delay in the return of any unearned premium does not affect the cancellation date.

**9.  Assignment**

No assignment of benefits or other transfer of rights is binding upon *us* unless approved by *us*.

**10.  Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the *Insured* or his or her estate will not relieve *us* of our obligations under this policy.

**11.  Concealment or Fraud**

There is no coverage under this policy if *you* or any other *person* insured under this

policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

**12.  Our Right to Recover Our Payments**

a.  Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by *us*.

b.  To the extent allowed by law, under Uninsured Motor Vehicle Coverage:

(1) the right of recovery of the *Insured* passes to *us*, to the extent of our payments;

(2) *we* will pay our share of the reasonable costs of any recovery. *Our* share is the percent that *our* recovery bears to the total recovery. *We* reserve the right to select an attorney to handle the recovery; and

(3) an *Insured* making claim for property damage must assign to *us*, to the extent of our payments, the right to any other compensation for it. *We* do not have to make any payment until the *Insured* has been made whole.

c.  Under all other coverages, the following apply:

(1) **Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, then *we* will be subrogated to that right to the extent of our payment.

The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

  (a) doing nothing to impair that legal right;

<center>43<br>9840A</center>

<center>44<br>9840A</center>

(b) executing any documents *we* may need to assert that legal right; and

(c) taking legal action through *our* representatives when *we* ask.

(2) **Reimbursement**

If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

(a) hold in trust for *us* the proceeds of the recovery; and

(b) reimburse *us* to the extent of *our* payment.

**13. Legal Action Against Us**

Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against *us* regarding:

a. Liability Coverage after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(2) agreement between the claimant and *us*

b. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, and Physical Damage Coverages if the legal action relating to these coverages is brought against *us* within three years immediately following the date of the accident.

c. Underinsured Motor Vehicle Coverage if copies of the pleadings in the action

establishing liability are served upon *us* in the manner provided by law.

**14. Choice of Law**

Without regard to choice of law rules, the law of the state of:

a. South Carolina will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b. Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

(1) Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

(2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

**15. Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.

**16. Conformity to Law**

The coverage provided by this policy is done so in accordance with South Carolina insurance law. If any provisions of this policy are in conflict with South Carolina statutes, the policy is amended to conform to the minimum requirements of the statutes.

45
9840A

Policy Form 9840A
© Copyright, State Farm Mutual Automobile Insurance Company, 2009

State Farm - 000111

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company, )<br><br>Plaintiff, )<br><br>v. )<br><br>Melvin O. Lamb III, Melvin O. Lamb, Jr., The Estate of James K. Workman, Michael H. Moore, Deborah D. Plott, Angela R. Edwards, Constance J. Molinaro, Mario F. Molinaro, Jonathan D. Keller, Katherine M. Vonesh, Mathis S. Billman, and Luke E. Billman, )<br><br>Defendants. )<br>_____ ) | C.A. No.: **2:21-cv-2623-MBS**<br><br><br>**COMPLAINT**<br>**(DECLARATORY JUDGMENT)**<br><br>**(Non-jury)** |

Plaintiff, State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"), complaining of the above-named Defendants, alleges and states as follows:

1.     State Farm is a corporation organized and existing under the laws of the State of Illinois, licensed to issue insurance policies in the State of South Carolina.

2.     Upon information and belief, Defendant Melvin O. Lamb III ("Son") is a citizen and resident of Charleston County, South Carolina.

3.     Upon information and belief, Defendant Melvin O. Lamb, Jr. ("Father") is a citizen and resident of Charleston County, South Carolina.

4.     Upon information and belief, James K. Workman ("Workman") was, prior to his death, a citizen and resident of Charleston County, South Carolina.

5.     Upon information and belief, Defendant Michael H. Moore ("Moore") is a citizen and resident of Charleston County, South Carolina.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

6.      Upon information and belief, Defendant Deborah D. Plott ("Plott") is a citizen and resident of Charleston County, South Carolina.

7.      Upon information and belief, Defendant Angela R. Edwards ("Edwards") is a citizen and resident of Charleston County, South Carolina.

8.      Upon information and belief, Defendant Constance J. Molinaro ("Constance") is a citizen and resident of Charleston County, South Carolina.

9.      Upon information and belief, Defendant Mario F. Molinaro ("Mario") is a citizen and resident of Charleston County, South Carolina.

10.      Upon information and belief, Defendant Jonathan D. Keller ("Keller") is a citizen and resident of Charleston County, South Carolina.

11.      Upon information and belief, Defendant Katherine M. Vonesh ("Vonesh") is a citizen and resident of Charleston County, South Carolina.

12.      Upon information and belief, Defendant Mathis S. Billman ("Mathis") is a citizen and resident of Charleston County, South Carolina.

13.      Upon information and belief, Defendant Luke E. Billman ("Luke") is a citizen and resident of Charleston County, South Carolina.

14.      This action involves the construction of an automobile insurance policy issued and delivered by State Farm to Defendant Melvin O. Lamb, Jr., in Charleston County, South Carolina.

15.      Jurisdiction exists because there is complete diversity of citizenship between State Farm and the defendants and because the amount in controversy, including the potential costs of defense and indemnification of Son and Father under the policy, exceeds $75,000.00. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. §1332.

ELECTRONICALLY FILED - 2024 Jul 11 11:731 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

16.     Venue is appropriate under 28 U.S.C. §1391 because the policy at issue in this case insures persons, property, or lives located in this district and was issued in this district.

17.     This is an insurance coverage action brought pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rule of Civil Procedure to determine whether State Farm has a duty to defend or indemnify Son and/or Father for all claims related to or arising out of an accident which occurred in Mount Pleasant, South Carolina, on or about June 12, 2021.

## FACTUAL ALLEGATIONS

18.     At all relevant times hereto, State Farm issued an automobile insurance policy (hereinafter "the Policy") to Father bearing policy number 632 3189-B07-40. The Policy contains bodily injury liability limits in the amount of $25,000 per person/$50,000 per accident and property damage limits of $25,000 per accident. A copy of the Policy is attached hereto as **Exhibit A**[1].

19.     On or about February 26, 2020, State Farm issued form 6023DC, a driver exclusion endorsement excluding Son from coverage under the Policy. Pursuant to S.C. Code Ann. §38-77-340, the exclusion was signed by Father and confirmed that either the driver's license of the Son had been turned in to the Department of Motor Vehicles or that Son obtained appropriate insurance through another policy. A copy of the endorsement, which remained in effect on subsequent policies issued by State Farm including the Policy at issue, is included in Exhibit A and its contents are incorporated herein by reference.

20.     According to the driver exclusion, when a vehicle is operated by an excluded driver, State Farm "SHALL NOT BE LIABLE AND NO LIABILITY OR OBLIGATION OF

---

[1] Premium information and Father's address have been redacted.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ANY KIND SHALL ATTACH TO [State Farm] FOR BODILY INJURY, LOSS, OR DAMAGE".

21.    The driver exclusion further states the named insured acknowledges that the driver exclusion "is binding upon every insured to whom this policy applies."

22.    On June 12, 2021, Son was involved in a motor vehicle accident on U.S. Highway 17 in Mount Pleasant, South Carolina while operating a 2004 Chevrolet Tahoe, VIN 1GNEK13Z54R235227, owned by Father and insured under the Policy. Upon information and belief, Son struck the rear of Workman's vehicle, which was stopped due to traffic. This impact started a chain-reaction causing Workman to strike the vehicles operated by Moore and Keller.

23.    Upon information and belief, after striking Workman, Son also struck the vehicles operated by Moore, Plott, and Edwards.

24.    Upon information and belief, Moore and Edwards each then struck the vehicle operated by Constance and owned by Mario, and Plott struck the vehicle operated by Mathis and owned by Luke.

25.    Upon information and belief, Son, Workman, Moore, and Edwards were transported via EMS to local hospitals for treatment following the accident. Upon further information and belief, Workman allegedly died as a result of the injuries he sustained in the accident.

26.    State Farm is informed and believes Workman, Moore, Keller, Plott, Edwards, Constance, Mario, Mathis, and/or Luke may claim injuries and/or property damage as a result of this collision.

27.    State Farm has investigated this matter and believes, based upon the Policy exclusion referenced herein and applicable South Carolina law, it has no duty to defend or

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

indemnify Father or Son from any claim arising out of the accident described herein, and seeks a declaration from this Court concerning the same.

<div align="center">

**<u>FOR A FIRST CAUSE OF ACTION</u>**
**(Declaratory Judgment)**

</div>

28.     State Farm realleges and incorporates the foregoing paragraphs as if fully set forth herein.

29.     Form 6023DC DRIVER EXCLUSION, for Policy 632-3189-B07-40 is an effective and valid endorsement excluding coverage for any loss occurring as a result of Son's operation of a motor vehicle.

30.     Father, as the named insured, signed an acknowledgment consistent with S.C. Code Ann. §38-77-340, relating to the driver exclusion, acknowledging that Son was an excluded driver and no coverage would be provided for any loss occurring as a result of Son's operation of a motor vehicle.

31.     At the time of the subject accident, Son had been an excluded driver from the Policy for over a year.

32.     By the plain language of the exclusion, State Farm has no duty to defend or indemnify Father or Son for bodily injury, loss, or damage occurring as a result of Son operating a motor vehicle.

33.     State Farm's driver exclusion is in accordance with the South Carolina Code of Laws and is a valid and enforceable exclusion of coverage.

34.     Based on the exclusion, State Farm seeks a declaratory judgment that it has no obligation or duty to defend or indemnify Son or Father for any claims arising out of the incident described herein.

WHEREFORE, State Farm prays that the Court issue an Order:

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

a.  Declaring the driver exclusion issued by State Farm is valid and enforceable;

b.  Declaring the driver exclusion issued by State Farm excludes coverage for any bodily injury, loss, or damage occurring while Son is operating a motor vehicle;

c.  Declaring State Farm has no duty or obligation to defend or indemnify Son or Father for the claims arising out of the accident described herein; and

d.  For such other and further relief as this Honorable Court may deem just and proper.

Respectfully submitted,


*s/William T. Young III*
Jennifer E. Johnsen (Fed. ID 5427)
William T. Young III (Fed. ID 10201)
GALLIVAN, WHITE & BOYD, P.A.
P. O. Box 10589 (29603)
55 Beattie Place, Suite 1200
Greenville, South Carolina 29601
(864) 271-9580
jjohnsen@gwblawfirm.com
byoung@gwblawfirm.com

*Attorneys for Plaintiff*

August 16, 2021
Greenville, South Carolina

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**State Farm Mutual Automobile Insurance Company**
PO Box 89000
Atlanta GA 30356-9900

**EXHIBIT A**

**DECLARATIONS PAGE**

NAMED INSURED    00166
000007 0058    40-1397-5 C    A
LAMB, MELVIN O JR

| POLICY NUMBER    632 3189-B07-40B |
|---|
| POLICY PERIOD JUN 10 2021 to FEB 07 2022 |
| 12:01 A.M. Standard Time |

ldlplldplllpmllplpldlpplpmlkldpllllpl

AGENT
JACK TANKERSLEY
454 W COLEMAN BLVD
MT PLEASANT, SC 29464-5653

PHONE: (843)881-8888

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.**

**YOUR CAR**

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID. NUMBER | CLASS |
|---|---|---|---|---|---|
| 2004 | CHEVROLET | TAHOE | SPORT WG | 1GNEK13Z54R235227 | 405H521000 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---|---|---|
| A | Liability Coverage | |
| | Bodily Injury Limits | |
| | Each Person,  Each Accident | |
| | $25,000    $50,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $25,000 | |
| U | Uninsured Motor Vehicle Coverage | |
| | Bodily Injury Limits | |
| | Each Person,  Each Accident | |
| | $25,000    $50,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $25,000 | |

**\* Total premium for JUN 10 2021 to FEB 07 2022.**            This is not a bill

---

**IMPORTANT MESSAGES**

Replaced policy number 6323189-40A.

**Your total renewal premium for AUG 07 2021 to FEB 07 2022 is**

\* The total premium listed above reflects a recent change to your policy and the 6 month renewal premium.

State Farm works hard to offer you the best combination of price, service, and protection.    The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports.

You have the right to request, no more than once annually, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.

**Notice of insurance information collection practices - personal , family, or household insurance transactions:**
We often collect personal information from persons other than the individual or individuals listed on the policy.
Such personal information may, in certain circumstances, be disclosed to third parties without your authorization.
If you would like  additional information concerning the collection and disclosure of personal information - and your right to see and correct any personal information in your files - it will be furnished upon request.

**EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)**

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9840A,  AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
6126MT    AMENDATORY ENDORSEMENT.
6128DP    AMENDATORY ENDORSEMENT.
9940A    AMENDATORY ENDORSEMENT.
6023DC DRIVER EXCLUSION-MELVIN O LAMB III.

Agent:    JACK TANKERSLEY
Telephone:  (843)881-8888
Prepared    JUL 14 2021    1397-B3A

See Reverse Side

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832



Please read the policy carefully. If there is an accident, contact your State Farm agent or one of our Claim Offices at once. (See "INSURED'S DUTIES" in this policy booklet.)

Georgia-South Carolina Office
11350 Johns Creek Parkway
Duluth, GA 30098-0001
Phone: (770) 418-5000

# State Farm®
## Car Policy
Booklet

**South Carolina**
Policy Form 9840A

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# CONTENTS

**THIS POLICY** ................................. 3

**DEFINITIONS** ................................. 4

**LIABILITY COVERAGE** ...................... 6

  Additional Definition ...................... 6
  Insuring Agreement ......................... 7
  Supplementary Payments .................. 7
  Limits ........................................ 8
  Nonduplication .............................. 8
  Exclusions ................................... 8
  If Other Liability Coverage Applies ......... 10
  Required Out-of-State Liability Coverage .. 11
  Financial Responsibility Certification .... 11

**PERSONAL INJURY PROTECTION** ..... 11

  Additional Definitions ..................... 11
  Insuring Agreement ........................ 12
  Determining Medical Expenses ............... 13
  Arbitration ................................. 13
  Limits ...................................... 13
  Exclusions .................................. 14
  If Other Personal Injury Protection
  Coverage or Similar Vehicle Insurance
  Applies ..................................... 15
  Workers' Compensation Coordination ...... 16
  Our Payment Options ....................... 16

**MEDICAL PAYMENTS COVERAGE** .... 17

  Additional Definitions ..................... 17
  Insuring Agreement ........................ 18
  Determining Medical Expenses ............... 18
  Arbitration ................................. 18
  Limit ....................................... 19
  Exclusions .................................. 19
  If Other Medical Payments Coverage or
  Similar Vehicle Insurance Applies .......... 20
  Our Payment Options ....................... 21

**UNINSURED MOTOR VEHICLE
COVERAGE** ................................. 21

  Additional Definitions ..................... 21
  Insuring Agreement ........................ 22
  Our Right to Defend ....................... 22

  Limits ...................................... 22
  Nonduplication ............................. 22
  Exclusions .................................. 23
  If Other Uninsured Motor Vehicle
  Coverage Applies .......................... 23
  Our Payment Options ....................... 24

**UNDERINSURED MOTOR VEHICLE
COVERAGE** ................................. 25

  Additional Definitions ..................... 25
  Insuring Agreement ........................ 25
  Our Right to Defend ....................... 25
  Limits ...................................... 25
  Nonduplication ............................. 26
  Exclusions .................................. 26
  If Other Underinsured Motor Vehicle
  Coverage Applies .......................... 27
  Our Payment Options ....................... 28

**PHYSICAL DAMAGE COVERAGES** .... 28

  Additional Definitions ..................... 28
  Insuring Agreements ....................... 29
  Supplementary Payments – Comprehensive
  Coverage and Collision Coverage ........... 31
  Limits and Loss Settlement – Comprehen-
  sive Coverage and Collision Coverage ...... 31
  Limits – Car Rental and Travel Expenses
  Coverage .................................... 33
  Nonduplication ............................. 33
  Exclusions .................................. 33
  If Other Physical Damage Coverage or
  Similar Coverage Applies ................... 35
  Financed Vehicle .......................... 36
  Our Payment Options ...................... 36

**DEATH, DISMEMBERMENT AND
LOSS OF SIGHT COVERAGE** ............... 37

  Additional Definition ..................... 37
  Insuring Agreement ....................... 37
  Benefit ..................................... 37
  Exclusions ................................. 38
  Our Payment Options ...................... 38

2:21-cv-02623-MBS　Date Filed 08/16/21　Entry Number 1-1　Page 4 of 61
2:25-cv-00035-RMG　Date Filed 01/02/25　Entry Number 1-1　Page 959 of 1295

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**INSURED'S DUTIES**................................. 39

　Notice to Us of an Accident or Loss ......... 39
　Notice to Us of a Claim or Lawsuit .......... 39
　Insured's Duty to Cooperate With Us ....... 39
　Questioning Under Oath ........................... 39
　Other Duties Under the Physical
　Damage Coverages .................................. 39
　Other Duties Under Personal Injury
　Protection Coverage, Medical Payments
　Coverage, Uninsured Motor Vehicle
　Coverage, Underinsured Motor Vehicle
　Coverage, and Death, Dismemberment
　and Loss of Sight Coverage ...................... 40

**GENERAL TERMS** .................................... 41

　When Coverage Applies............................ 41

　Where Coverage Applies............................41
　Newly Owned or Newly Leased Car.........41
　Changes to This Policy.............................42
　Premium ...................................................43
　Renewal ....................................................43
　Nonrenewal ..............................................43
　Cancellation..............................................43
　Assignment...............................................44
　Bankruptcy or Insolvency of the Insured ..44
　Concealment or Fraud ..............................44
　Our Right to Recover Our Payments.........44
　Legal Action Against Us ..........................45
　Choice of Law ..........................................45
　Severability...............................................45
　Conformity to Law ...................................45

## THIS POLICY

1. This policy consists of:

   a. the most recently issued Declarations Page;

   b. the policy booklet version shown on that Declarations Page; and

   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:

   a. *us*; and

   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

   a. based on payment of premium for the coverages chosen; and

   b. unless otherwise stated in "EXCEPTIONS, POLICY BOOKLET, & ENDORSEMENTS" on the Declarations Page, in reliance on the following statements:

   (1) The named insured shown on the Declarations Page is the sole owner of *your car*.

   (2) Neither *you* nor any member of *your* household has, within the past three years, had:

   (a) vehicle insurance canceled or nonrenewed by an insurer; or

   (b) either:

   (i) a license to drive; or

   (ii) a vehicle registration

   suspended, revoked, or refused.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(3) **Your car** is used for pleasure and business.

4. All named insureds shown on the Declarations Page and all applicants agree by acceptance of this policy that:

    a. the statements in 3.b. above are made by such named insured or applicant and are true; and

    b. **we** provide this insurance on the basis those statements are true.

5. **Your** purchase of this policy may allow **you** to purchase certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other policies from the **State Farm Companies**, subject to their applicable eligibility rules.

## DEFINITIONS

**We** define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other form of these words and phrases. Defined words and phrases are printed in boldface italics.

**Bodily Injury** means bodily injury to a **person** and sickness, disease, or death that results from it.

**Car** means a land motor vehicle with four or more wheels, designed for use primarily on public roads. **Car** does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

**Car Business** means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

**Financial Responsibility Act** means the Motor Vehicle Financial Responsibility Act of South Carolina.

**Fungi** means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

    a. Mycotoxins;

    b. Spores;

    c. Scents; or

    d. Byproducts.

**Newly Acquired Car** means a **car** newly **owned by you**. A **car** ceases to be a **newly acquired car** on the earlier of:

1. the effective date and time of a policy, including any binder, issued by **us** or any other company that describes the **car** as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date the **car** is delivered to **you**.

If a **newly acquired car** is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that **newly acquired car**, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the **newly acquired car** is delivered to **you**.

**Non-Owned Car** means a **car** that is in the lawful possession of **you** or any **resident relative** and that neither:

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

1. is **owned by**:

   a.   **you**;

   b.   any **resident relative**;

   c.   any other **person** who resides primarily in **your** household; or

   d.   an employer of any **person** described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:

   a.   **you**; or

   b.   any **resident relative**

   during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or **loss**.

**Occupying** means in, on, entering, or exiting.

**Our** means the Company issuing this policy as shown on the Declarations Page.

**Owned By** means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 31 or more consecutive days, to.

**Pedestrian** means a **person** who is not **occupying**:

1. a motorized vehicle; or

2. a vehicle designed to be pulled by a motorized vehicle.

**Person** means a human being.

**Private Passenger Car** means:

1. a **car** of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry **persons** and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:

   a.   that is not used for:

      (1)  wholesale; or

      (2)  retail

      pickup or delivery; and

   b.   that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

**Resident Relative** means a **person**, other than **you**, who resides primarily with the first **person** shown as a named insured on the Declarations Page and who is:

1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

2. a ward or a foster child of that named insured, his or her spouse, or a **person** described in 1. above.

**State Farm Companies** means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

**Temporary Substitute Car** means a **car** that is in the lawful possession of the **person** operating it and that:

1. replaces **your car** for a short time while **your car** is out of use due to its:

   a.   breakdown;

   b.   repair;

   c.   servicing;

   d.   damage; or

   e.   theft; and

2. neither **you** nor the **person** operating it own or have registered.

If a **car** qualifies as both a **non-owned car** and a **temporary substitute car**, then it is considered a **temporary substitute car** only.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*Trailer* means:

1. a trailer:

   a. designed to be pulled by a ***private passenger*** *car*;

   b. not designed to carry ***persons***; and

   c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a *car*.

*Us* means the Company issuing this policy as shown on the Declarations Page.

*We* means the Company issuing this policy as shown on the Declarations Page.

*You* or *Your* means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a *person*, then "*you*" or "*your*"

includes the spouse of the first ***person*** shown as a named insured if the spouse resides primarily with that named insured.

***Your Car*** means the vehicle shown under "YOUR CAR" on the Declarations Page. ***Your car*** does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under "YOUR CAR", and *you* ask *us* to replace it with a *car* newly ***owned by you***, then the *car* being replaced will continue to be considered ***your car*** until the earliest of:

1. the end of the 30th calendar day immediately following the date the *car* newly ***owned by you*** is delivered to *you*;

2. the date this policy is no longer in force; or

3. the date *you* no longer own or lease the *car* being replaced.

## LIABILITY COVERAGE

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1. *you* and ***resident relatives*** for:

   a. the ownership, maintenance, or use of:

      (1) ***your car***;

      (2) a ***newly acquired car***; or

      (3) a ***trailer***; and

   b. the maintenance or use of:

      (1) a ***non-owned car***; or

      (2) a ***temporary substitute car***;

2. the first ***person*** shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or

use of a *car* that is ***owned by***, or furnished by an employer to, a ***person*** who resides primarily in *your* household, but only if such *car* is neither ***owned by***, nor furnished by an employer to, the first ***person*** shown as a named insured on the Declarations Page or that ***person's*** spouse;

3. any other ***person*** for his or her use of:

   a. ***your car***;

   b. a ***newly acquired car***;

   c. a ***temporary substitute car***; or

   d. a ***trailer*** while attached to a *car* described in a., b., or c. above.

   Such vehicle must be used with the expressed or implied consent of *you*; and

4. any other ***person*** or organization vicariously liable for the use of a vehicle by an ***insured*** as defined in 1., 2., or 3. above, but only for such vicarious liability. This

6
9840A

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

provision applies only if the vehicle is neither *owned by*, nor hired by, that other ***person*** or organization.

***Insured*** does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. *We* will pay:

   a. damages an ***insured*** becomes legally liable to pay because of:

      (1) ***bodily injury*** to others; and

      (2) damage to property

      caused by an accident that involves a vehicle for which that ***insured*** is provided Liability Coverage by this policy;

   b. attorney fees for attorneys chosen by ***us*** to defend an ***insured*** who is sued for such damages; and

   c. court costs charged to an ***insured*** and resulting from that part of a lawsuit:

      (1) that seeks damages payable under this policy's Liability Coverage; and

      (2) against which *we* defend an ***insured*** with attorneys chosen by ***us***.

   *We* have no duty to pay attorney fees and court costs incurred after *we* deposit in court or pay the amount due under this policy's Liability Coverage.

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an ***insured*** in any claim or lawsuit, with attorneys chosen by ***us***; and

   c. appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages, fees, and costs described in the **Insuring Agreement**

above, the interest, premiums, costs, and expenses listed below that result from such accident:

1. Interest on damages owed by the ***insured*** that accrues:

   a. before a judgment, where owed by law, but only on that part of the judgment *we* pay; and

   b. after a judgment. *We* will not pay interest on damages paid or payable by a party other than the ***insured*** or ***us***.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage;

2. Premiums for bonds, provided by a company chosen by ***us***, required to appeal a decision in a lawsuit against an ***insured***. *We* have no duty to:

   a. pay for bonds that exceed this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage; and

3. The following costs and expenses if related to and incurred after a lawsuit has been filed against an ***insured***:

   a. Loss of wages or salary, but not other income, up to $200 for each day an ***insured*** attends, at ***our*** request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an ***insured*** at ***our*** request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an ***insured*** must be reported to ***us*** before *we* will pay such incurred costs or expenses.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Limits**

1. The Liability Coverage limits for ***bodily injury*** are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

   a. The limit shown under "Each Person" is the most ***we*** will pay for all damages resulting from ***bodily injury*** to any one ***person*** injured in any one accident. "***Bodily injury*** to any one ***person***" includes all injury and damages to other ***persons*** resulting from that ***bodily injury,*** and all emotional distress resulting from that ***bodily injury*** sustained by other ***persons*** who do not sustain that ***bodily injury***.

   b. The limit shown under "Each Accident" is the most ***we*** will pay, subject to the limit for "Each Person", for all damages resulting from ***bodily injury*** to two or more ***persons*** injured in the same accident.

2. The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most ***we*** will pay for all damages resulting from damage to property in any one accident.

3. These Liability Coverage limits are the most ***we*** will pay regardless of the number of:

   a. ***insureds***;

   b. claims made;

   c. vehicles insured; or

   d. vehicles involved in the accident.

**Nonduplication**

***We*** will not pay any damages or expenses under Liability Coverage that have already been paid under Uninsured Motor Vehicle Coverage of any policy issued by the ***State Farm Companies*** to ***you*** or any ***resident relative***.

**Exclusions**

THERE IS NO COVERAGE FOR AN ***INSURED***:

1. TO THE EXTENT THE LIABILITY COVERAGE LIMITS OF THIS POLICY EXCEED THE LIABILITY COVERAGE LIMITS REQUIRED BY THE ***FINANCIAL RESPONSIBILITY ACT*** IF SUCH ***INSURED*** INTENTIONALLY CAUSES ***BODILY INJURY*** OR DAMAGE TO PROPERTY;

2. OR FOR THAT ***INSURED'S*** INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

3. FOR ***BODILY INJURY*** TO THAT ***INSURED'S*** EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that ***insured's*** household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

4. FOR ***BODILY INJURY*** TO THAT ***INSURED'S*** FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to ***you*** and ***resident relatives*** who are legally liable for ***bodily injury*** to fellow employees;

5. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN ***INSURED***;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY ***PERSONS*** FOR A CHARGE. This exclusion does not apply to the use of a ***private passenger car*** on a share-the-expense basis;

7. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

THAT **INSURED'S** EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A **CAR BUSINESS**.  This exclusion does not apply to:

a. **you**;

b. any **resident relative**; or

c. any agent, employee, or business partner of **you** or any **resident relative**; or

d. any **person** other than a **person** described in a., b., or c. above up to the liability coverage limits required by the **Financial Responsibility Act**;

while maintaining or using **your car**, a **newly acquired car**, a **temporary substitute car**, or a **trailer owned by you**;

8. WHILE THAT **INSURED** IS VALET PARKING A VEHICLE.  This exclusion does not apply up to the liability coverage limits required by the **Financial Responsibility Act** while an **insured** is valet parking **your car**, a **newly acquired car**, a **temporary substitute car**, or a **trailer owned by you**;

9. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN **YOUR CAR**, A **NEWLY ACQUIRED CAR**, A **TEMPORARY SUBSTITUTE CAR**, OR A **TRAILER** IN ANY BUSINESS OR OCCUPATION OTHER THAN A **CAR BUSINESS** OR VALET PARKING.  This exclusion does not apply to the maintenance or use of a **private passenger car**;

10. FOR DAMAGE TO PROPERTY WHILE IT IS:

a. **OWNED BY**;

b. RENTED TO;

c. USED BY;

d. IN THE CARE OF; OR

e. TRANSPORTED BY

**YOU**, A **RESIDENT RELATIVE**, OR THE **PERSON** WHO IS LEGALLY LIABLE FOR THE DAMAGE.  This exclusion does not apply to damage to a:

a. motor vehicle **owned by** the employer of **you** or any **resident relative** if such damage is caused by an **insured** while operating another motor vehicle;

b. residence while rented to or leased to an **insured**; or

c. private garage while rented to or leased to an **insured**;

11. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

12. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION;

13. WHILE USING A **TRAILER** WITH A MOTOR VEHICLE IF THAT **INSURED** IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

14. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING.  This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

This exclusion (14.) does not apply to **your car** up to the liability coverage limits required by the **Financial Responsibility Act**; OR

15. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**If Other Liability Coverage Applies**

1. If Liability Coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same accident, then:

   a. the Liability Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

   a. If:

   (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as primary coverage; and

   (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

   then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

   b. If:

   (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as primary coverage; and

   (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

   then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

   a. If:

   (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as excess coverage; and

   (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

   then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

   b. If:

   (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as excess coverage; and

   (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

then the **State Farm Companies** will pay the proportion of damages payable as excess that the maximum amount that may be paid by the **State Farm Companies** as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1. an **insured** is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law,

financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

## PERSONAL INJURY PROTECTION COVERAGE

This policy provides Personal Injury Protection Coverage if "P" with a number beside it is shown under "SYMBOLS" on the Declarations Page. "P" with a number beside it is **your** "coverage symbol".

Check **your** coverage symbol with the **Schedule** in the provision titled **Limits** for the choice of coverage **you** made.

**Additional Definitions**

**Insured** means:

1. **you** and **resident relatives**:

   a. while **occupying** a **motor vehicle** other than a motorcycle; or

   b. if struck as a **pedestrian** by a **motor vehicle**; or

2. any other **person** while **occupying**:

   a. **your car**;

   b. a **newly acquired car**;

   c. a **temporary substitute car**; or

   d. a **trailer** while attached to a **car** described in a., b., or c. above.

   Such vehicle must be used with the expressed or implied consent of **you**.

**Medical Expenses** mean **reasonable expenses** for **medical services**.

**Medical Services** mean treatments, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the **bodily injury**;

2. rendered by a healthcare provider:

   a. who is licensed as a healthcare provider if a license is required by law; and

   b. within the legally authorized scope of that healthcare provider's practice;

3. commonly and customarily recognized throughout the medical profession and

11
9840A

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

within the United States of America as appropriate for the treatment of the ***bodily injury***;

4. primarily designed to serve a medical purpose;

5. not experimental; and

6. not for research purposes.

***Motor Vehicle*** means a vehicle or trailer of a kind required to be registered under South Carolina law.

***Reasonable Expenses*** mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar ***medical services*** in the geographical area in which the charges were incurred;

2. The fee specified in any fee schedule:

   a. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where ***medical services*** are provided; and

   b. as prescribed or authorized by the law of the state where ***medical services*** are provided;

3. The fees agreed to by both the ***insured's*** healthcare provider and ***us***; or

4. The fees agreed upon between the ***insured's*** healthcare provider and a third party when ***we*** have a contract with such third party.

**Insuring Agreement**

**Medical Expenses** and **Funeral Expenses** apply to all Personal Injury Protection Coverages. **Loss of Income** and **Essential Services Expenses** apply only to coverages with coverage symbol P1, P2, P3, P4, P5, P6, and P7.

1. **Medical Expenses**

   ***We*** will pay ***medical expenses*** incurred because of ***bodily injury*** that is sustained by an ***insured*** and caused by accident resulting from the maintenance or use of a ***motor vehicle*** as a vehicle if:

   a. that ***insured*** is first provided ***medical services*** within one year immediately following the date of the accident; and

   b. such ***medical expenses*** are for ***medical services*** that are provided within three years immediately following the date of the accident.

2. **Funeral Expenses**

   ***We*** will pay funeral expenses incurred for an ***insured*** who dies within three years immediately following the date of a ***motor vehicle*** accident if the death is a direct result of ***bodily injury*** sustained in such accident.

3. **Loss of Income**

   ***We*** will pay 85% of an ***insured's*** actual loss of earnings from work due to ***bodily injury*** that is sustained by an ***insured*** and caused by a ***motor vehicle*** accident. This applies only if the ***insured*** was receiving earnings from work at the time of the accident. The loss must be incurred within three years of the date of the accident and while the ***insured*** is living.

4. **Essential Services Expenses**

   ***We*** will pay reasonable expenses incurred for needed services the ***insured*** would have done for his or her family, but is unable to do because of ***bodily injury*** that is sustained by that ***insured*** and caused by a ***motor vehicle*** accident. This benefit applies only if the ***insured*** was not receiving earnings from work at the time of the accident. The expense must be incurred within three years of the date of the accident and while the ***insured*** is living.

2:21-cv-02623-MBS    Date Filed 08/16/21    Entry Number 1-1    Page 14 of 61
2:25-cv-00035-RMG    Date Filed 01/02/25    Entry Number 1-1    Page 969 of 1295

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Determining Medical Expenses**

*We* have the right to:

1. obtain and use:

    a.  utilization reviews;

    b.  peer reviews; and

    c.  medical bill reviews

    to determine if the incurred charges are *medical expenses*;

2. use a medical examination of the *insured* to determine if:

    a.  the *bodily injury* was caused by a *motor vehicle* accident; and

    b.  the expenses incurred are *medical expenses;* and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Arbitration**

1. If there is a disagreement as to:

    a.  whether incurred charges are *medical expenses*; or

    b.  the amount due under this coverage for Funeral Expenses, Loss of Income, or Essential Services Expenses

    then the disagreement will be resolved by arbitration upon written request of the *insured* or *us*.

2. The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

    The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

    Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

3. The arbitrators shall only decide whether incurred charges are *medical expenses* and the amount due under this coverage for Funeral Expenses, Loss of Income, or Essential Services Expenses. Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4. A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

    a.  *us*;

    b.  the *insured*;

    c.  any assignee of the *insured*; and

    d.  any *person* or organization with whom the *insured* expressly or impliedly contracts for *medical services*, funeral services, or essential services.

5. Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

6. *We* do not waive any of *our* rights by submitting to arbitration.

**Limits**

1. The most *we* will pay is the amount shown under "Aggregate Limit" in the **Schedule** for *your* coverage symbol. This limit is the most *we* will pay for all loss and expense combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

    a.  insureds;

    b.  claims made;

    c.  vehicles insured; or

    d.  vehicles involved in the accident.

2. Subject to the aggregate limit shown in the **Schedule** for *your* coverage symbol, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

3. **Schedule**

| Coverage Symbol | Medical Expenses | Funeral Expenses | Loss of Income | Essential Services Expenses | Aggregate Limit |
|---|---|---|---|---|---|
| P1 | Yes | Yes | Yes | Yes | $1,000 |
| P2 | Yes | Yes | Yes | Yes | $1,500 |
| P3 | Yes | Yes | Yes | Yes | $2,000 |
| P4 | Yes | Yes | Yes | Yes | $2,500 |
| P5 | Yes | Yes | Yes | Yes | $5,000 |
| P6 | Yes | Yes | Yes | Yes | $10,000 |
| P7 | Yes | Yes | Yes | Yes | $25,000 |
| P8 | Yes | Yes | No | No | $1,000 |
| P9 | Yes | Yes | No | No | $1,500 |
| P10 | Yes | Yes | No | No | $2,000 |
| P11 | Yes | Yes | No | No | $2,500 |
| P12 | Yes | Yes | No | No | $5,000 |
| P13 | Yes | Yes | No | No | $10,000 |
| P14 | Yes | Yes | No | No | $25,000 |

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES AN ACCIDENT WHICH RESULTS IN THAT *INSURED'S BODILY INJURY*;

2. WHILE VOLUNTARILY *OCCUPYING* A *MOTOR VEHICLE* KNOWN BY THAT *PERSON* TO BE STOLEN;

3. WHILE COMMITTING A FELONY;

4. WHILE ATTEMPTING TO ELUDE A POLICE OFFICER;

5. WHILE *OCCUPYING*, USING, OR MAINTAINING A MOTORCYCLE;

6. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE, *OWNED BY* THAT *INSURED*, *YOU*, OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

7. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

8. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

9. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*;

   b. any *resident relative*; or

   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

10. WHILE THAT **INSURED** IS VALET PARKING A VEHICLE;

11. WHILE MAINTAINING OR USING A **NON-OWNED CAR** IN ANY BUSINESS OR OCCUPATION OTHER THAN A **CAR BUSINESS** OR VALET PARKING. This exclusion does not apply to the maintenance or use of a **private passenger car**;

12. WHO IS EITHER **OCCUPYING** OR STRUCK AS A **PEDESTRIAN** BY A VEHICLE THAT:

    a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS;

    b. RUNS ON RAILS OR CRAWLER-TREADS; OR

    c. IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

13. WHOSE **BODILY INJURY** RESULTS FROM WAR OF ANY KIND;

14. WHOSE **BODILY INJURY** RESULTS FROM:

    a. NUCLEAR REACTION;

    b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

    c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

15. WHOSE **BODILY INJURY** RESULTS FROM THE DISCHARGE OF A FIREARM;

16. WHOSE **BODILY INJURY** RESULTS FROM EXPOSURE TO **FUNGI**; OR

17. WHO IS **OCCUPYING** A VEHICLE WHILE IT IS:

    a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (17.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Personal Injury Protection Coverage or Similar Vehicle Insurance Applies**

1. An **insured** shall not recover for the same expense or loss under both this coverage and other similar vehicle insurance.

2. If Personal Injury Protection Coverage is provided by this policy and one or more other vehicle policies issued to **you** or any **resident relative** by the **State Farm Companies** apply to the same **bodily injury**, then:

    a. the Personal Injury Protection Coverage limits of such policies shall not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. **We** may choose one or more policies from which to make payment.

3. The Personal Injury Protection Coverage provided by this policy applies as primary coverage for an **insured** who sustains **bodily injury** while **occupying your car** or a **trailer** attached to it.

    a. If:

       (1) this is the only vehicle policy issued to **you** or any **resident relative** by the **State Farm Companies** that provides Personal Injury Protection Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

       (2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same accident,

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

then *we* will pay the proportion of expenses or loss payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as primary coverage.

    b. If:

       (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Personal Injury Protection Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

       (2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

    then the *State Farm Companies* will pay the proportion of expenses or loss payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Personal Injury Protection Coverage provided by this policy applies as excess coverage, but only in the amount by which the limits of this coverage exceed the primary coverage.

    a. If:

       (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Personal Injury Protection Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

       (2) personal injury protection coverage or other similar vehicle insurance

provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

    then *we* will pay the proportion of expenses or loss payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as excess coverage.

    b. If:

       (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Personal Injury Protection Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

       (2) personal injury protection coverage or other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

    then the *State Farm Companies* will pay the proportion of expenses or loss payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other personal injury protection coverage or similar vehicle insurance that apply as excess coverage.

**Workers' Compensation Coordination**

Any Personal Injury Protection Coverage provided by this policy applies as excess over any benefits recovered under any workers' compensation law or any other similar law.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment; or

5. Any *person* or organization that provides the *medical services*, funeral services, or other services payable under this coverage.

## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you* and *resident relatives*:

    a. while *occupying*:

    (1) *your car*;

    (2) a *newly acquired car*;

    (3) a *temporary substitute car*;

    (4) a *non-owned car*; or

    (5) a *trailer* while attached to a *car* described in (1), (2), (3), or (4) above; or

    b. if struck as a *pedestrian* by a motor vehicle or any type of trailer; and

2. any other *person* while *occupying*:

    a. *your car*;

    b. a *newly acquired car*;

    c. a *temporary substitute car*; or

    d. a *trailer* while attached to a *car* described in a., b., or c. above.

    Such vehicle must be used with the expressed or implied consent of *you*.

*Medical Expenses* mean *reasonable expenses* for *medical services*.

*Medical Services* mean treatments, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the *bodily injury*;

2. rendered by a healthcare provider:

    a. who is licensed as a healthcare provider if a license is required by law; and

    b. within the legally authorized scope of that healthcare provider's practice;

3. commonly and customarily recognized throughout the medical profession and within the United States of America as appropriate for the treatment of the *bodily injury*;

4. primarily designed to serve a medical purpose;

5. not experimental; and

6. not for research purposes.

*Reasonable Expenses* mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar *medical services* in the geographical area in which the charges were incurred;

2. The fee specified in any fee schedule:

    a. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where *medical services* are provided; and

    b. as prescribed or authorized by the law of the state where *medical services* are provided;

3. The fees agreed to by both the *insured's* healthcare provider and *us*; or

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

4.  The fees agreed upon between the *insured's* healthcare provider and a third party when *we* have a contract with such third party.

## Insuring Agreement

*We* will pay:

1.  *medical expenses* incurred because of *bodily injury* that is sustained by an *insured* and caused by accident resulting from the maintenance or use of a motor vehicle as a vehicle if:

    a.  that *insured* is first provided *medical services* within one year immediately following the date of the accident; and

    b.  such *medical expenses* are for *medical services* that are provided within three years immediately following the date of the accident; and

2.  funeral expenses incurred for an *insured* who dies within three years immediately following the date of a motor vehicle accident if the death is a direct result of *bodily injury* sustained in such accident.

## Determining Medical Expenses

*We* have the right to:

1.  obtain and use:

    a.  utilization reviews;

    b.  peer reviews; and

    c.  medical bill reviews

    to determine if the incurred charges are *medical expenses*;

2.  use a medical examination of the *insured* to determine if:

    a.  the *bodily injury* was caused by a motor vehicle accident; and

    b.  the expenses incurred are *medical expenses;* and

3.  enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

## Arbitration

1.  If there is a disagreement as to whether incurred charges are *medical expenses*, then the disagreement will be resolved by arbitration upon written request of the *insured* or *us*.

2.  The arbitration will take place in the county in which the *insured* resides unless the parties agree to another location.

    The *insured* and *we* will each select a competent arbitrator. These two arbitrators will select a third competent arbitrator. If they are unable to agree on the third arbitrator within 30 days, then either the *insured* or *we* may petition a court that has jurisdiction to select the third arbitrator.

    Each party will pay the cost of its own arbitrator, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third arbitrator.

3.  The arbitrators shall only decide whether incurred charges are *medical expenses*. Arbitrators shall have no authority to decide any other questions of fact, decide any questions of law, or conduct arbitration on a class-wide or class-representative basis.

4.  A written decision that is both agreed upon by and signed by any two arbitrators, and that also contains an explanation of how they arrived at their decision, will be binding on:

    a.  *us*;

    b.  the *insured*;

    c.  any assignee of the *insured*; and

    d.  any *person* or organization with whom the *insured* expressly or impliedly contracts for *medical services*.

5.  Subject to 1., 2., 3., and 4. above, state court rules governing procedure and admission of evidence will be used.

6.  *We* do not waive any of *our* rights by submitting to arbitration.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Limit**

The Medical Payments Coverage limit is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person". This limit is the most *we* will pay for the *medical expenses* and funeral expenses combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

1. *insureds*;
2. claims made;
3. vehicles insured; or
4. vehicles involved in the accident.

Subject to the limit shown on the Declarations Page, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO IS STRUCK AS A *PEDESTRIAN* BY A MOTOR VEHICLE, *OWNED BY* THAT *INSURED* OR *YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

2. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

3. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

4. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*;

   b. any *resident relative*; or

   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

6. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

7. WHILE MAINTAINING OR USING A *NON-OWNED CAR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

8. WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

9. WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   b. RUNS ON RAILS OR CRAWLER-TREADS;

10. WHOSE *BODILY INJURY* RESULTS FROM WAR OF ANY KIND;

11. WHOSE *BODILY INJURY* RESULTS FROM:

    a. NUCLEAR REACTION;

    b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

    c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

19
9840A

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

12. WHOSE ***BODILY INJURY*** RESULTS FROM THE DISCHARGE OF A FIRE-ARM;

13. WHOSE ***BODILY INJURY*** RESULTS FROM EXPOSURE TO ***FUNGI***; OR

14. WHO IS ***OCCUPYING*** A VEHICLE WHILE IT IS:

   a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An ***insured*** shall not recover for the same ***medical expenses*** or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** apply to the same ***bodily injury***, then:

   a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. ***We*** may choose one or more policies from which to make payment.

3. If other medical payments coverage, personal injury protection coverage, or similar

vehicle insurance applies, then the Medical Payments Coverage provided by this policy applies as excess coverage.

a. If:

   (1) this is the only vehicle policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

   (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same accident,

   then ***we*** will pay the proportion of ***medical expenses*** and funeral expenses payable as excess that ***our*** applicable limit bears to the sum of ***our*** applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

b. If:

   (1) more than one vehicle policy issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

   (2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than the ***State Farm Companies*** also applies as excess coverage for the same accident,

   then the ***State Farm Companies*** will pay the proportion of ***medical expenses*** and funeral expenses payable as excess that the maximum amount that may be paid by the ***State Farm Companies*** as determined in 2. above

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment; or

5. Any *person* or organization that provides the *medical services* or funeral services.


# UNINSURED MOTOR VEHICLE COVERAGE

This policy provides Uninsured Motor Vehicle Coverage if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying* or using:

    a. *your car*;

    b. a *newly acquired car*; or

    c. a *temporary substitute car*;

    with the expressed or implied consent of *you*; and

4. any *person* to the extent he or she may recover damages under a state wrongful death statute because of the death of an *insured* under 1., 2., or 3. above.

*Motor Vehicle* means a self-propelled vehicle or trailer designed for use on public roads, but does not include tractor engines, road rollers, farm trailers, tractor cranes, power shovels, well drillers, or electric trolleys.

*Property Damage* means damage to property of the *insured*.

*Uninsured Motor Vehicle* means a *motor vehicle*:

1. the ownership, maintenance, and use of which is:

a. not insured or bonded for bodily injury and property damage liability at the time of the accident; or

b. insured or bonded for bodily injury and property damage liability at the time of the accident; but

    (1) the limits are less than required by the *Financial Responsibility Act*;

    (2) the insuring company:

        (a) denies that its policy provides liability coverage for damages that result from the accident; or

        (b) is or becomes insolvent; or

    (3) a cause of action for the *bodily injury* or *property damage* is barred by the South Carolina Tort Claims Act; or

2. the owner and driver of which remain unknown, but only if:

a. the *bodily injury* or *property damage* was caused by physical contact with the unknown vehicle, or the accident was witnessed by someone other than the owner or driver of the insured vehicle. The witness must sign an affidavit attesting to the truth of the facts of the accident contained in the affidavit; and

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

b. the *insured* was not negligent in failing to determine the identity of the other vehicle and the driver of the other vehicle at the time of the accident.

*Uninsured Motor Vehicle* does not include a motor vehicle *owned by*:

1. a self-insurer in accordance with the applicable provisions of law; or

2. the State or any of its political subdivisions when the vehicle is operated by a *person* with proper authorization.

**Insuring Agreement**

*We* will pay damages for *bodily injury* and *property damage* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be sustained by an *insured*. The *bodily injury* and *property damage* must be caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle*.

**Our Right to Defend**

*We* have the right to appear and defend in the name of the owner and driver of the *uninsured motor vehicle* on the issues of legal liability of, and the damages owed by, such owner or driver.

**Limits**

1. The Uninsured Motor Vehicle Coverage limits for *bodily injury* are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

    a. The most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident is the lesser of:

        (1) the amount of all damages resulting from that *bodily injury* reduced by the sum of all payments for damages resulting from that *bodily injury* made by or on behalf of any *person* or organization who is or may be held legally liable for that *bodily injury*; or

        (2) the limit shown under "Each Person".

        "*Bodily injury* to any one *person*" includes all injury and damages to other *persons* resulting from that *bodily injury*, and all emotional distress resulting from that *bodily injury* sustained by other *persons* who do not sustain that *bodily injury*.

    b. Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident".

2. The Uninsured Motor Vehicle Coverage limit for *property damage* is shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Property Damage Limit – Each Accident". The most *we* will pay for *property damage* is the lesser of:

    a. the amount of *property damage* reduced by the sum of all payments made by or on behalf of any *person* or organization who is or may be held legally liable for that *property damage*; or

    b. the limit shown under "Each Accident".

3. These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

    a. *insureds*;

    b. claims made;

    c. vehicles insured; or

    d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

    a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

b.  for **bodily injury** under Liability Coverage of any policy issued by the **State Farm Companies** to **you** or any **resident relative**;

2.  that:

   a.  have already been paid;

   b.  could have been paid; or

   c.  could be paid

to or for the **insured** under any workers' compensation law, disability benefits law, or similar law; or

3.  that are **property damage** paid or payable under any policy of property insurance.

**Exclusions**

THERE IS NO COVERAGE:

1.  FOR AN **INSURED** WHO, WITHOUT **OUR** WRITTEN CONSENT, SETTLES WITH ANY **PERSON** OR ORGANIZATION WHO MAY BE LIABLE FOR THE **BODILY INJURY** OR **PROPERTY DAMAGE** AND THEREBY IMPAIRS **OUR** RIGHT TO RECOVER **OUR** PAYMENTS;

2.  TO THE EXTENT THE UNINSURED MOTOR VEHICLE COVERAGE LIMITS OF THIS POLICY EXCEED THE COVERAGE LIMITS REQUIRED BY THE **FINANCIAL RESPONSIBILITY ACT**:

   a.  FOR AN **INSURED** WHO SUSTAINS **BODILY INJURY** WHILE **OCCUPYING** A MOTOR VEHICLE **OWNED BY YOU** OR ANY **RESIDENT RELATIVE** IF:

      (1) THE MOTOR VEHICLE IS NOT **YOUR CAR** OR A **NEWLY ACQUIRED CAR**; AND

      (2) IT WAS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

   b.  IF THE **UNINSURED MOTOR VEHICLE** IS **OWNED BY YOU** OR ANY **RESIDENT RELATIVE**; OR

   c.  FOR **PROPERTY DAMAGE**:

      (1) TO A MOTOR VEHICLE; OR

      (2) IN A MOTOR VEHICLE

      **OWNED BY YOU** OR ANY **RESIDENT RELATIVE** IF THE MOTOR VEHICLE WAS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

3.  FOR **PROPERTY DAMAGE** THAT WAS PROXIMATELY CAUSED BY THE DRIVER OF **YOUR CAR** OR A **NEWLY ACQUIRED CAR**;

4.  FOR AN **INSURED** WHOSE **BODILY INJURY** RESULTS FROM THE DISCHARGE OF A FIREARM;

5.  TO THE EXTENT IT BENEFITS:

   a.  ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

   b.  A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

   c.  ANY PROPERTY INSURER;

6.  FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION; OR

7.  FOR THE FIRST $200 OF **PROPERTY DAMAGE** SUSTAINED BY EACH **INSURED** IN EACH ACCIDENT;

**If Other Uninsured Motor Vehicle Coverage Applies**

1.  The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an **insured** who sustains **bodily injury** or **property damage** while **occupying your car**.

23
9840A

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

2. Except as provided in item 1. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

3. If:

   a. **you** or any **resident relative** sustains **bodily injury** or **property damage**:

     (1) while **occupying** a motor vehicle not **owned by you** or any **resident relative**; or

     (2) while not **occupying** a motor vehicle; and

   b. Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to **you** or any **resident relative** by the **State Farm Companies** apply to the same **bodily injury** or **property damage**, then

the maximum amount that may be paid from all such policies combined is the single highest limit provided by any one of the policies. **We** may choose one or more policies from which to make payment.

4. If **you** or any **resident relative** sustains **bodily injury** or **property damage** while **occupying** a motor vehicle other than **your car** that is **owned by you** or any **resident relative**, then this coverage applies only to the extent of the uninsured motor vehicle coverage applicable to the motor vehicle that the **insured** was **occupying**.

However, if the motor vehicle that the **insured** was **occupying** was not insured for uninsured motor vehicle coverage at the time of the accident, then the maximum amount that may be paid from all policies

combined that are issued to **you** or any **resident relative** by the **State Farm Companies** is the minimum limits required by the **Financial Responsibility Act**. **We** may choose one or more policies from which to make payment.

5. Subject to items 1., 2., 3., and 4. above, if this policy and one or more other sources provide uninsured motor vehicle coverage for the same damages on a:

   a. primary basis, then **we** will pay the proportion of damages payable as primary that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as primary coverage; or

   b. excess basis, then **we** will pay the proportion of damages payable as excess that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

**Our Payment Options**

**We** may, at **our** option, make payment to one or more of the following:

1. The **insured**;

2. The **insured's** surviving spouse;

3. A parent or guardian of the **insured**, if the **insured** is a minor or an incompetent **person**; or

4. A **person** authorized by law to receive such payment.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# UNDERINSURED MOTOR VEHICLE COVERAGE

This policy provides Underinsured Motor Vehicle Coverage if "W" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying* or using:

   a. *your car*;

   b. a *newly acquired car*; or

   c. a *temporary substitute car*;

   with the expressed or implied consent of *you*; and

4. any *person* to the extent he or she may recover damages under a state wrongful death statute because of the death of an *insured* under 1., 2., or 3. above.

*Motor Vehicle* means a self-propelled vehicle or trailer designed for use on public roads, but does not include tractor engines, road rollers, farm trailers, tractor cranes, power shovels, well drillers, or electric trolleys.

*Property Damage* means damage to property of the *insured*.

*Underinsured Motor Vehicle* means a *motor vehicle* the ownership, maintenance, and use of which is either:

1. insured or bonded for bodily injury and property damage liability at the time of the accident; or

2. self-insured under any motor vehicle financial responsibility law, any motor carrier law, or any similar law

in an amount that is at least equal to the amount required by the *Financial Responsibility Act* and:

1. the amount of the insurance, bonds, and self-insurance from all sources is less than the amount of the *insured's* damages; or

2. the *insured's* damages exceed any damages cap or limitation imposed by statute.

*Underinsured Motor Vehicle* does not include a motor vehicle while located for use as a dwelling or other premises.

**Insuring Agreement**

*We* will pay damages for *bodily injury* and *property damage* an *insured* is legally entitled to recover from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be sustained by an *insured*. The *bodily injury* and *property damage* must be caused by an accident that involves the operation, maintenance, or use of an *underinsured motor vehicle*.

*We* will pay only if all bodily injury and property damage liability bonds, policies, and self-insurance plans that apply to the *insured's bodily injury* or *property damage* have been:

1. used up by payment of judgments or settlements; or

2. paid to the extent required by any damages cap or limitation imposed by statute.

**Our Right to Defend**

*We* have the right to appear and defend in the name of the owner and driver of the *underinsured motor vehicle* on the issues of legal liability of, and the damages owed by, such owner or driver.

**Limits**

1. The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

   a. The most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident is the lesser of:

      (1) the amount of all damages resulting from that *bodily injury* reduced by the sum of all payments for damages resulting from that

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*bodily injury* made by or on behalf of any *person* or organization who is or may be held legally liable for that *bodily injury*; or

(2) the limit shown under "Each Person".

"*Bodily injury* to any one *person*" includes all injury and damages to other *persons* resulting from that *bodily injury*, and all emotional distress resulting from that *bodily injury* sustained by other *persons* who do not sustain that *bodily injury*.

b. Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident".

2. The Underinsured Motor Vehicle Coverage limit for *property damage* is shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Property Damage Limit – Each Accident". The most *we* will pay for *property damage* is the lesser of:

a. the amount of *property damage* reduced by the sum of all payments made by or on behalf of any *person* or organization who is or may be held legally liable for that *property damage*; or

b. the limit shown under "Each Accident".

3. These Underinsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

a. *insureds*;
b. claims made;
c. vehicles insured; or
d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Underinsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

a. by or on behalf of any *person* or organization who is or may be held

legally liable for the *bodily injury* to the *insured*; or

b. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. that:

a. have already been paid;
b. could have been paid; or
c. could be paid

to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that are *property damage* paid or payable under any policy of property insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY* OR *PROPERTY DAMAGE* AND THEREBY IMPAIRS *OUR* RIGHT TO RECOVER *OUR* PAYMENTS;

2. TO THE EXTENT THE UNDERINSURED MOTOR VEHICLE COVERAGE LIMITS OF THIS POLICY EXCEED THE COVERAGE LIMITS REQUIRED BY THE *FINANCIAL RESPONSIBILITY ACT*:

a. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF:

(1) THE MOTOR VEHICLE IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; AND

(2) IT WAS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

COVERAGE AT THE TIME OF THE ACCIDENT;

b. IF THE *UNDERINSURED MOTOR VEHICLE* IS *OWNED BY YOU* OR ANY *RESIDENT RELATIVE*; OR

c. FOR *PROPERTY DAMAGE*:

(1) TO A MOTOR VEHICLE: OR

(2) IN A MOTOR VEHICLE

*OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF THE MOTOR VEHICLE WAS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

3. FOR *PROPERTY DAMAGE* THAT WAS PROXIMATELY CAUSED BY THE DRIVER OF *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

4. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

5. TO THE EXTENT IT BENEFITS:

a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

c. ANY PROPERTY INSURER; OR

6. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION.

**If Other Underinsured Motor Vehicle Coverage Applies**

1. The Underinsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustain *bodily injury* or *property damage* while *occupying your car*.

2. Except as provided in item 1. above, the Underinsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

3. If:

a. *you* or any *resident relative* sustains *bodily injury* or *property damage*:

(1) while *occupying* a motor vehicle not *owned by you* or any *resident relative*; or

(2) while not *occupying* a motor vehicle; and

b. Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury* or *property damage*, then

the maximum amount that may be paid from all such policies combined is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

4. If *you* or any *resident relative* sustains *bodily injury* or *property damage* while *occupying* a motor vehicle other than *your car* that is *owned by you* or any *resident relative*, then this coverage applies only to the extent of the underinsured motor vehicle coverage applicable to the motor vehicle that the *insured* was *occupying*.

However, if the motor vehicle that the *insured* was *occupying* was not insured for underinsured motor vehicle coverage at the time of the accident, then the maximum amount that may be paid from all policies combined that are issued to *you* or any *resident relative* by the *State Farm Companies* is the minimum limits required by the *Financial Responsibility Act*. *We* may choose one or more policies from which to make payment.

5. Subject to items 1., 2., 3., and 4. above, if this policy and one or more other sources

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

provide underinsured motor vehicle coverage for the same damages on a:

a. primary basis, then *we* will pay the proportion of damages payable as primary that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits of all other underinsured motor vehicle coverage that apply as primary coverage; or

b. excess basis, then *we* will pay the proportion of damages payable as excess that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits of all other underinsured motor vehicle coverage that apply as excess coverage.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car*;

2. a *newly acquired car*;

3. a *temporary substitute car*;

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a *non-owned car* while it is:

   a. being driven by an *insured*; or

   b. in the custody of an *insured* if at the time of the *loss* it is:

      (1) not being driven; or

      (2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*;

6. a *non-owned trailer* while it is being used by an *insured*; and

7. a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

campers must be securely fixed as a permanent part of the *trailer* or camper.

***Daily Rental Charge*** means the sum of:

1. the daily rental rate;

2. mileage charges; and

3. related taxes.

***Insured*** means *you* and ***resident relatives***.

***Loss*** means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a ***covered vehicle***. ***Loss*** does not include any reduction in the value of any ***covered vehicle*** after it has been repaired, as compared to its value before it was damaged.

***Loss Caused By Collision*** means a *loss* caused by:

1. a ***covered vehicle*** hitting or being hit by another vehicle or another object; or

2. the overturning of a ***covered vehicle***.

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a ***Loss Caused By Collision***.

***Non-Owned Camper*** means a camper designed to be mounted on a pickup truck that is in the lawful possession of an ***insured*** and that neither:

1. is ***owned by***:

    a. an ***insured***;

    b. any other ***person*** who resides primarily in *your* household; or

    c. an employer of any ***person*** described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an ***insured*** during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

***Non-Owned Trailer*** means a ***trailer*** that is in the lawful possession of an ***insured*** and that neither:

1. is ***owned by***:

    a. an ***insured***;

    b. any other ***person*** who resides primarily in *your* household; or

    c. an employer of any ***person*** described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an ***insured*** during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

**Insuring Agreements**

1. **Comprehensive Coverage**

    *We* will pay:

    a. for *loss*, except ***loss caused by collision***, to a ***covered vehicle***; and

    b. transportation expenses incurred by an ***insured*** as a result of the total theft of ***your car*** or a ***newly acquired car***. These transportation expenses are payable:

        (1) during the period that:

            (a) starts on the date *you* report the theft to *us*; and

            (b) ends on the earliest of:

                (i) the date the vehicle is returned to *your* possession in a drivable condition;

                (ii) the date *we* offer to pay for the *loss* if the vehicle has not yet been recovered; or

                (iii) the date *we* offer to pay for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and

        (2) during the period that:

            (a) starts on the date the vehicle is left at a repair facility if the

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

  (b) ends on the date the vehicle is repaired.

These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

2. **Collision Coverage**

   *We* will pay for *loss caused by collision* to a *covered vehicle*.

3. **Emergency Road Service Coverage**

   *We* will pay the fair cost incurred by an *insured* for:

   a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;

   b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;

   c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;

   d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and

   e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

4. **Car Rental and Travel Expenses Coverage**

   a. **Car Rental Expense**

      *We* will pay the *daily rental charge* incurred when *you* rent a *car* from a *car business* while *your car* or a *newly acquired car* is:

      (1) not drivable; or

      (2) being repaired

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay this *daily rental charge* incurred during a period that:

(1) starts on the date:

   (a) the vehicle is not drivable as a result of the *loss*; or

   (b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

   (a) the date the vehicle has been repaired or replaced;

   (b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

   (c) five days after *we* offer to pay for the *loss* if the vehicle is:

      (i) a total loss as determined by *us*; or

      (ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by *you* must be reported to *us* before *we* will pay such amount.

   b. **Travel Expenses**

      *We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

      (1) an *insured* during the period that:

         (a) starts after the *loss* occurs; and

         (b) ends on the earlier of:

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

(ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

c. **Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive deductible or collision deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage or Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

   a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

   b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an

*insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable;

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

   a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

   b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

   If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

   a. Pay the cost to repair the *covered vehicle* minus any applicable deductible. The deductible amount does not apply to *loss* to safety glass.

      (1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

         (a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

         (b) A bid or repair estimate approved by *us*; or

         (c) A repair estimate that is written based upon or adjusted to:

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(i) the prevailing competitive price;

(ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

(iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

*You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

(2) The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

(3) If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment;

b. Pay the actual cash value of the *covered vehicle* minus any applicable deductible.

(1) The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or *us*, using the following procedures:

(a) The owner and *we* will each select a competent appraiser.

(b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

owner of the ***covered vehicle*** and ***us***.

  (f) ***We*** do not waive any of ***our*** rights by submitting to an appraisal.

  (2) The damaged ***covered vehicle*** must be given to ***us*** in exchange for ***our*** payment, unless ***we*** agree that the owner may keep it. If the owner keeps the ***covered vehicle***, then ***our*** payment will be reduced by the value of the ***covered vehicle*** after the ***loss***; or

c.  Return the stolen ***covered vehicle*** to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2.  The most ***we*** will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per ***loss***.

3.  The most ***we*** will pay for ***loss*** to a ***non-owned trailer*** or a ***non-owned camper*** is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1.  **Car Rental Expense**

The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

a.  The limit shown under "Each Day" is the most ***we*** will pay for the ***daily rental charge***. If:

  (1) a dollar amount is shown, then ***we*** will pay the ***daily rental charge*** up to that dollar amount;

  (2) a percentage amount is shown, then ***we*** will pay that percentage of the ***daily rental charge***.

b.  Subject to the "Each Day" limit, the limit shown under "Each Loss" is the

most ***we*** will pay for Car Rental Expense incurred as a result of any one ***loss***.

2.  **Travel Expenses**

The most ***we*** will pay for Travel Expenses incurred by all ***insureds*** as a result of any one ***loss*** is $500.

3.  **Rental Car – Repayment of Deductible Expense**

The most ***we*** will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one ***loss*** is $500.

**Nonduplication**

***We*** will not pay for any ***loss*** or expense under the Physical Damage Coverages for which the ***insured*** or owner of the ***covered vehicle*** has already received payment from, or on behalf of, a party who is legally liable for the ***loss*** or expense.

**Exclusions**

THERE IS NO COVERAGE FOR:

1.  ANY ***COVERED VEHICLE*** THAT IS:

a.  INTENTIONALLY DAMAGED; OR

b.  STOLEN

BY OR AT THE DIRECTION OF AN ***INSURED***;

2.  ANY ***COVERED VEHICLE*** WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN ***INSURED***;

3.  ANY ***COVERED VEHICLE*** WHILE IT IS USED TO CARRY ***PERSONS*** FOR A CHARGE. This exclusion does not apply to the use of a ***private passenger car*** on a share-the-expense basis;

4.  ANY ***COVERED VEHICLE*** DUE TO:

a.  THEFT;

b.  CONVERSION;

c.  EMBEZZLEMENT; OR

d.  SECRETION

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

BY AN **INSURED**, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A **PERSON** WHO OBTAINS POSSESSION OF THE **COVERED VEHICLE** WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. **LOSS** TO **YOUR CAR** OR A **NEWLY ACQUIRED CAR** IF AN **INSURED** VOLUNTARILY RELINQUISHES POSSESSION OF THAT **CAR** TO A **PERSON** OR ORGANIZATION UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY **COVERED VEHICLE** TO THE EXTENT **OUR** PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR **LOSS** TO SUCH **COVERED VEHICLE**;

7. **LOSS** TO ANY **COVERED VEHICLE** DUE TO **FUNGI**. THIS APPLIES REGARDLESS OF WHETHER OR NOT THE **FUNGI** RESULT FROM A **LOSS** THAT IS PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES. **WE** WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF **FUNGI**, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY **COVERED VEHICLE** THAT ARE DUE TO THE EXISTENCE OF **FUNGI**;

8. **LOSS** TO ANY **COVERED VEHICLE** THAT RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. **LOSS** TO ANY **COVERED VEHICLE** THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT **COVERED VEHICLE** BY ANY GOVERNMENTAL AUTHORITY;

10. **LOSS** TO ANY **COVERED VEHICLE** THAT RESULTS FROM WAR OF ANY KIND;

11. **YOUR CAR** WHILE SUBJECT TO ANY:

    a. LIEN AGREEMENT;

    b. RENTAL AGREEMENT;

    c. LEASE AGREEMENT; OR

    d. SALES AGREEMENT

    NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY **NON-OWNED CAR** WHILE IT IS:

    a. BEING MAINTAINED OR USED BY ANY **PERSON** WHILE THAT **PERSON** IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A **CAR BUSINESS**; OR

    b. USED IN ANY BUSINESS OR OCCUPATION OTHER THAN A **CAR BUSINESS**. This exclusion (12.b.) does not apply to a **private passenger car**;

13. ANY PART OR EQUIPMENT OF A **COVERED VEHICLE** IF THAT PART OR EQUIPMENT:

    a. FAILS OR IS DEFECTIVE; OR

    b. IS DAMAGED AS A DIRECT RESULT OF:

       (1) WEAR AND TEAR;

       (2) FREEZING; OR

       (3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

       OF THAT PART OR EQUIPMENT.

    This exclusion does not apply if the **loss** is the result of theft of the **covered vehicle**;

14. ANY PART OR EQUIPMENT:

    a. THAT IS NOT LEGAL FOR USE IN OR ON THE **COVERED VEHICLE**

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

IN THE JURISDICTION WHERE THE **COVERED VEHICLE** IS REGISTERED; OR

b. THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE **COVERED VEHICLE** IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE **COVERED VEHICLE**.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the **covered vehicle**, then **we** will pay the cost that **we** would otherwise have paid to repair the vehicle with the legal version of the part or equipment. **We** will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

a. **loss** is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

b. **loss caused by collision** to another part of the **covered vehicle** causes **loss** to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

b. **OWNED BY** AN **INSURED**; AND

c. NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY **COVERED VEHICLE** WHILE IT IS:

a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same **loss** or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that **loss** or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an **insured** by the **State Farm Companies** apply to the same **loss** or expense, then only one policy applies. **We** will select a policy that pays the most for the **loss** or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a **loss** to **your car**.

If similar coverage provided by one or more sources other than the **State Farm Companies** also applies as primary coverage for the same **loss** or expense, then the **State Farm Companies** will pay the proportion of the **loss** or expense payable as primary that the maximum amount that may be paid by the **State Farm Companies** bears to the sum of such amount and the limits of

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

If similar coverage provided by one or more sources other than the **State Farm Companies** also applies as excess coverage for the same *loss* or expense, then the **State Farm Companies** will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the **State Farm Companies** bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

   However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment.

*Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

   a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

      (1) *You*;

      (2) The repairer; or

      (3) A creditor shown on the Declarations Page, to the extent of its interest.

   b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

      (1) *You*;

      (2) The owner of such vehicle;

      (3) The repairer; or

      (4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

   *We* may, at *our* option, make payment to one or more of the following:

   a. *You*;

   b. The *insured* who incurred the expense; or

   c. Any party that provided the service for which payment is owed.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means a *person* whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

**Insuring Agreement**

*We* will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an *insured*:

1. dies; or

2. suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days immediately following the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

The benefits shown in the schedules are doubled for an *insured* who at the time of the accident was *occupying* a *private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

**Death, Dismemberment and Loss of Sight Benefits Schedules**

| If the amount shown on the Declarations Page for the *insured* is $5,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb and a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

| If the amount shown on the Declarations Page for the *insured* is $10,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |
| The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off. | |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Exclusions**

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE DOES NOT APPLY TO AN *INSURED*:

1. WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A *CAR BUSINESS*;

2. WHILE *OCCUPYING*, LOADING, OR UNLOADING:

   a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

   b. A VEHICLE, OTHER THAN AN EMERGENCY VEHICLE, WHILE USED IN THE:

      (1) *INSURED'S* BUSINESS; OR

      (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A *CAR BUSINESS*.

      This exclusion (2.b.) does not apply if the vehicle is a *private passenger car*;

   c. A MILITARY VEHICLE; OR

   d. A VEHICLE WHILE IT IS:

      (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

      (2) ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

3. WHILE *OCCUPYING*, LOADING, UNLOADING, OR WHO IS STRUCK AS A *PEDESTRIAN* BY:

   a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

   b. A MOTOR VEHICLE THAT IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4. FOR DEATH, DISMEMBERMENT, LOSS OF SIGHT, OR *TOTAL DISABILITY* THAT RESULTS FROM:

   a. WAR OF ANY KIND;

   b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

   c. THE DISCHARGE OF A FIREARM;

   d. EXPOSURE TO *FUNGI*;

   e. SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *INSURED* WAS SANE OR INSANE; OR

   f. DISEASE except pus-forming infection due to *bodily injury* sustained in the accident.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* or organization authorized by law to receive such payment.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# INSURED'S DUTIES

1. **Notice to Us of an Accident or Loss**

   The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

   a. *your* name;

   b. the names and addresses of all *persons* involved in the accident or *loss*;

   c. the hour, date, place, and facts of the accident or *loss*; and

   d. the names and addresses of witnesses to the accident or *loss*.

2. **Notice to Us of a Claim or Lawsuit**

   a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

   b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

3. **Insured's Duty to Cooperate With Us**

   a. The *insured* must cooperate with *us* and, when asked, assist *us* in:

      (1) making settlements;

      (2) securing and giving evidence;

      (3) attending, and getting witnesses to attend, depositions, hearings, and trials; and

      (4) preserving his or her right to recover damages from others.

   b. The *insured* must not, except at his or her own cost, voluntarily:

      (1) make any payment to others; or

      (2) assume any obligation to others

      unless authorized by the terms of this policy.

   c. Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

4. **Questioning Under Oath**

   Under:

   a. Liability Coverage, each *insured*;

   b. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage, each *insured*, or any other *person* or organization making claim or seeking payment; and

   c. Physical Damage Coverages, each *insured* or owner of a *covered vehicle*, or any other *person* or organization making claim or seeking payment;

   must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require. Such *person* or organization must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

5. **Other Duties Under the Physical Damage Coverages**

   When there is a *loss*, *you* or the owner of the *covered vehicle* must:

   a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

   b. make a prompt report to the police when the *loss* is the result of theft;

   c. allow *us* to:

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(1) inspect any damaged property before its repair or disposal;

(2) test any part or equipment before that part or equipment is removed or repaired; and

(3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

(1) records;

(2) receipts; and

(3) invoices

that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

**6. Other Duties Under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage**

A *person* making claim under:

a. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage must:

(1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

(2) be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request;

(3) provide written authorization for *us* to obtain:

(a) medical bills;

(b) medical records;

(c) wage, salary, and employment information; and

(d) any other information *we* deem necessary to substantiate the claim.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

(4) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

b. Uninsured Motor Vehicle Coverage must report an accident, involving a motor vehicle whose owner and driver remain unknown, to the police and to *us* within a reasonable period of time; and

c. Uninsured Motor Vehicle Coverage and Underinsured Motor Vehicle Coverage must:

(1) send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident; and

(2) if making a claim for *property damage*:

(a) allow *us* to:

(i) inspect any *property damage* before its repair or disposal;

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(ii) test any part or equipment before that part or equipment is removed or repaired; and

(iii) move the damaged property at *our* expense in order to conduct such inspection or testing; and

(b) protect the damaged property from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

(c) provide *us* all:

(i) records;

(ii) receipts; and

(iii) invoices

that *we* request and allow *us* to make copies;

(d) not abandon the damaged property to *us*; and

(e) give *us* sworn proof of claim within 60 days of the accident. This proof of claim must state:

(i) who owns the property and how much they own;

(ii) the amount of any claims or liens on the property;

(iii) the value of the property at the time of the accident;

(iv) details of the accident; and

(v) details of any other insurance applicable to the property.

## GENERAL TERMS

1. **When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

2. **Where Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur:

a. in the United States of America and its territories and possessions;

b. in Canada; and

c. while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

The Liability Coverage, Personal Injury Protection Coverage, Medical Payments Coverage, and Physical Damage Coverages also apply in Mexico within 50 miles of the United States border. A Physical Damage Coverage *loss* in Mexico is determined on the basis of cost at the nearest United States point.

Death, Dismemberment and Loss of Sight Coverage applies anywhere in the world.

3. **Newly Owned or Newly Leased Car**

If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

a. request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by*

41
9840A

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

(1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

(2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b. apply to the *State Farm Companies* for a separate policy to insure the *car* newly *owned by you*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

4. **Changes to This Policy**

a. **Changes in Policy Provisions**

*We* may only change the provisions of this policy by:

(1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

(2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of South Carolina without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

b. **Change of Interest**

(1) No change of interest in this policy is effective unless *we* consent in writing.

(2) Except under Death, Dismemberment and Loss of Sight Coverage, if a named insured shown on the Declarations Page dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

(a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

(b) the legal representative of the deceased named insured.

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

Policy notice requirements are met by mailing the notice to the most recent policy address that *we* have on record for the deceased named insured.

c. **Joint and Individual Interests**

If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

d. **Change of Policy Address**

*We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

(1) *you*; or

(2) the United States Postal Service.

2:21-cv-02623-MBS Date Filed 08/16/21 Entry Number 1-1 Page 44 of 61
2:25-cv-00035-RMG Date Filed 01/02/25 Entry Number 1-1 Page 999 of 1295

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

5. **Premium**

   a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

   b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

   c. The premium for this policy may vary based upon the purchase of other insurance from the *State Farm Companies*.

   d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

      (1) *Your car*, or its use, including annual mileage;

      (2) The *persons* who regularly drive *your car*, including newly licensed family members;

      (3) *Your* marital status; or

      (4) The location where *your car* is primarily garaged.

   If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to *us* when *we* ask, then *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in

the amount of the decrease. If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

6. **Renewal**

   *We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in 7. and 8. below.

7. **Nonrenewal**

   If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page.

8. **Cancellation**

   a. **How You May Cancel**

      *You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

   b. **How and When We May Cancel**

      *We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

      (1) If *we* mail or deliver a cancellation notice:

         (a) during the first 90 days following this policy's effective date; or

         (b) because the premium is not paid when due,

         then the date cancellation is effective will be at least 15 days after the date *we* mail or deliver the cancellation notice.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Otherwise, the date cancellation is effective will be at least 20 days after the date *we* mail or deliver the cancellation notice.

(2) After this policy has been in force for more than 90 days, *we* will not cancel this policy before the end of the current policy period unless:

  (a) the premium is not paid when due; or

  (b) *you*, any *resident relative*, or any other *person* who usually drives *your car* has had his or her driver's license under suspension or revocation:

    (1) during the policy period; or

    (2) if the policy is a renewal, during its policy period or the 90 days immediately preceding the last anniversary of the effective date of the policy.

**c. Return of Unearned Premium**

If *you* cancel this policy, then premium may be earned on a short rate basis. If *we* cancel this policy, then premium will be earned on a pro rata basis.

Any unearned premium may be returned within a reasonable time after cancellation. Delay in the return of any unearned premium does not affect the cancellation date.

**9. Assignment**

No assignment of benefits or other transfer of rights is binding upon *us* unless approved by *us*.

**10. Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the *insured* or his or her estate will not relieve *us* of *our* obligations under this policy.

**11. Concealment or Fraud**

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

**12. Our Right to Recover Our Payments**

a. Personal Injury Protection Coverage, Medical Payments Coverage, Underinsured Motor Vehicle Coverage, and Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by *us*.

b. To the extent allowed by law, under Uninsured Motor Vehicle Coverage:

  (1) the right of recovery of the *insured* passes to *us*, to the extent of *our* payments;

  (2) *we* will pay *our* share of the reasonable costs of any recovery. *Our* share is the percent that *our* recovery bears to the total recovery. *We* reserve the right to select an attorney to handle the recovery; and

  (3) an *insured* making claim for *property damage* must assign to *us*, to the extent of *our* payments, the right to any other compensation for it. *We* do not have to make any payment until the *insured* has done this.

c. Under all other coverages, the following apply:

  (1) **Subrogation**

    If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, then *we* will be subrogated to that right to the extent of *our* payment.

    The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

    (a) doing nothing to impair that legal right;

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(b) executing any documents *we* may need to assert that legal right; and

(c) taking legal action through *our* representatives when *we* ask.

(2) **Reimbursement**

If *we* make payment under this policy and the ***person*** or organization to or for whom *we* make payment recovers or has recovered from another ***person*** or organization, then the ***person*** or organization to or for whom *we* make payment must:

(a) hold in trust for *us* the proceeds of any recovery; and

(b) reimburse *us* to the extent of *our* payment.

## 13. **Legal Action Against Us**

Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against *us* regarding:

a. Liability Coverage after the amount of damages an ***insured*** is legally liable to pay has been finally determined by:

(1) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(2) agreement between the claimant and *us*.

b. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, and Physical Damage Coverages if the legal action relating to these coverages is brought against *us* within three years immediately following the date of the accident.

c. Underinsured Motor Vehicle Coverage if copies of the pleadings in the action establishing liability are served upon *us* in the manner provided by law.

## 14. **Choice of Law**

Without regard to choice of law rules, the law of the state of:

a. South Carolina will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b. Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

(1) Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

(2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

## 15. **Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.

## 16. **Conformity to Law**

The coverage provided by this policy is done so in accordance with South Carolina insurance law. If any provisions of this policy are in conflict with South Carolina statutes, the policy is amended to conform to the minimum requirements of the statutes.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Policy Form 9840A
©, Copyright, State Farm Mutual Automobile Insurance Company, 2009

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## 6126MT AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

### THIS POLICY

The following has been added to item 5.:

*Your* purchase of this policy may allow *you* to purchase an excess and surplus lines policy from the *State Farm Companies*, subject to applicable eligibility rules.

<div style="text-align:center">

Page 1 of 1

6126MT

© , Copyright, State Farm Mutual Automobile Insurance Company, 2016

</div>



ST-16-U
0203-1183

## 6940A AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **THIS POLICY**

   Item 5. is changed to read:

   *Your* purchase of this policy may allow:

   a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules; or

   b. the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

2. **LIABILITY COVERAGE**

   **Insuring Agreement** and **Supplementary Payments** are replaced by the following:

   **Insuring Agreement**

   1. *We* will pay damages an *insured* becomes legally liable to pay because of:

      a. *bodily injury* to others; and

      b. damage to property

      caused by an accident that involves a vehicle for which that *insured* is

   provided Liability Coverage by this policy.

   2. *We* have the right to:

      a. investigate, negotiate, and settle any claim or lawsuit;

      b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

      c. appeal any award or legal decision

      for damages payable under this policy's Liability Coverage.

   **Supplementary Payments**

   *We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

   1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

   2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

      a. that seeks damages payable under this policy's Liability Coverage; and

      b. against which *we* defend an *insured* with attorneys chosen by *us*.

<div style="text-align:center">

Page 1 of 4

6940A

© , Copyright, State Farm Mutual Automobile Insurance Company, 2010

</div>

04597/04377
ED1

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

2:21-cv-02623-MBS    Date Filed 08/16/21    Entry Number 1-1    Page 49 of 61
Policy Number: 63-98-B877-9 B 61
PLEASE ATTACH TO YOUR POLICY BOOKLET

*We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

3. **GENERAL TERMS**

   a. The paragraph under **Where Coverage Applies** that reads:

      Liability Coverage, Personal Injury Protection Coverage, Medical Payments Coverage, and Physical Damage Coverages also apply in Mexico within 50 miles of the United States of America border. A Physical Damage Coverage *loss* in Mexico is determined on the basis of cost at the nearest United States of America point.

      is deleted.

   b. The following is added:

      **Limited Coverage in Mexico**

      This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing

coverage in Mexico should be purchased from a Mexican insurance company.

Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

a. **Liability Coverage**

   For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

   *We* may, in addition to the damages described in item 1. of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at our option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

b. **Personal Injury Protection Coverage**

c. **Medical Payments Coverage**

d. **Physical Damage Coverages**

   Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the

*covered vehicle* in the United States of America.

*WE* HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

*WE* HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF SOUTH CAROLINA IN THE UNITED STATES OF AMERICA.

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of South Carolina in the United States of America.

c. Paragraph c. of 5. **Premium** is changed to read:

   c. The premium for this policy may vary based upon:

      (1) the purchase of other products or services from the *State Farm Companies*;

      (2) the purchase of products or services from an organization that has entered into an agreement or contract with

CASE#2023CP1001832
0369700104590

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

2:21-cv-02623-MBS    Date Filed 08/16/21    Entry Number 1-1    Page 50 of 61

Policy Number: 632-9850-A07-46B
Sheet 2 of 2

**PLEASE ATTACH TO YOUR POLICY BOOKLET**

the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

(3) an agreement, concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

Page 4 of 4                                    6940A

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010



ST-16-U
0303-1183

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

/

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## 6128DP AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. **DEFINITIONS**

    *Newly Acquired Car* is changed to read:

    *Newly Acquired Car* means a *car* newly *owned by you* or a *resident relative*.

    A *car* ceases to be a *newly acquired car* on the earlier of:

    1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

    2. the end of the 14th calendar day immediately following the date the *car* is delivered to *you* or a *resident relative*.

    If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500.

2. **LIABILITY COVERAGE**

    a. **Additional Definition**

    Item 4. of *Insured* is changed to read:

    *Insured* means any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is:

    a. neither *owned by*, nor hired by, that other *person* or organization; and

    b. neither available for, nor being used for, carrying *persons* for a charge.

    b. **Exclusions**

    (1) Exclusion 6. is changed to read:

    THERE IS NO COVERAGE FOR AN *INSURED* FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS:

    a. MADE AVAILABLE; OR

    b. BEING USED

    TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

    (2) The exception to exclusion 10. is changed to read:

    This exclusion does not apply to damage to a:

    a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

    b. residence while rented to or leased to an *insured*; or

    c. private garage while rented to or leased to an *insured*;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

3. **PERSONAL INJURY PROTECTION COVERAGE**

   a. **Additional Definitions**

   Item 1.a. of *Insured* is changed to read:

   *Insured* means *you* and *resident relatives* while *occupying*:

   (1) *your car*;

   (2) a *newly acquired car*; or

   (3) a *motor vehicle*, other than a motorcycle, not *owned by you* or any *resident relative*; or

   b. **Exclusions**

   (1) Exclusion 6. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* WHO IS STRUCK AS A PEDESTRIAN BY A *MOTOR VEHICLE*, *OWNED BY* THAT *INSURED* OR *YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

   (2) Exclusion 8. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. MADE AVAILABLE; OR

   b. BEING USED

   TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

4. **MEDICAL PAYMENTS COVERAGE**

   **Exclusions**

   Exclusion 4. is changed to read:

   THERE IS NO COVERAGE FOR AN *INSURED* WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   a. MADE AVAILABLE; OR

   b. BEING USED

   TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

   a. the use of a *private passenger car* on a share-the-expense basis; or

   b. an *insured* while *occupying* a *non-owned car* as a passenger;

5. **UNINSURED MOTOR VEHICLE COVERAGE**

   a. **Exclusions**

   Exclusion 2. is changed to read:

   THERE IS NO COVERAGE FOR

   a. AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* THAT *INSURED* IF:

   (1) THE MOTOR VEHICLE IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; AND

   (2) IT WAS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE AT THE TIME THE ACCIDENT; OR

   b. *PROPERTY DAMAGE* SUSTAINED BY AN *INSURED*:

   (1) TO A MOTOR VEHICLE: OR

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(2) IN A MOTOR VEHICLE ***OWNED BY*** THAT ***INSURED*** IF THE MOTOR VEHICLE WAS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

b. **If Other Uninsured Motor Vehicle Coverage Applies**

Item 4. is changed to read:

4. If:

a. ***you*** sustain ***bodily injury*** or ***property damage*** while *occupying* a motor vehicle other than ***your car*** that is ***owned by***:

(1) ***you***, then this coverage applies only to the extent of the uninsured motor vehicle coverage applicable to the motor vehicle that ***you*** were ***occupying***; or

(2) any ***resident relative***, then, in addition to the amount paid from the policy insuring the motor vehicle ***you*** were *occupying*, the maximum amount that may be paid from all other policies combined that are issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** is the single highest limit provided by any one of the policies. ***We*** may choose one or more policies from which to make payment.

b. a ***resident relative*** sustains ***bodily injury*** or ***property damage*** while *occupying* a motor vehicle other than ***your car*** that is ***owned by***:

(1) ***you***, then, in addition to the amount paid from the policy insuring the motor vehicle that that ***resident relative*** was ***occupying***, the maximum amount that may be paid from all other policies combined that are issued to ***you*** or any ***resident relative*** by the ***State Farm Companies*** is the single highest limit provided by any one of the policies. ***We*** may choose one or more policies from which to make payment;

(2) that ***resident relative***, then this coverage applies only to the extent of the uninsured motor vehicle coverage applicable to the motor vehicle that that ***resident relative*** was ***occupying***; or

(3) a different ***resident relative***, then, in addition to the amount paid from the policy insuring the motor vehicle that that ***resident relative*** was ***occupying***, the maximum amount that may be paid from all other policies combined that are issued to ***you*** or any ***resident relative*** by the ***State Farm***

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

*Companies* is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

6. **UNDERINSURED MOTOR VEHICLE COVERAGE**

   a. **Exclusions**

   Exclusion 2. is changed to read:

   THERE IS NO COVERAGE FOR

   a. AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* THAT *INSURED* IF:

   (1) THE MOTOR VEHICLE IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*; AND

   (2) IT WAS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;OR

   b. *PROPERTY DAMAGE* SUSTAINED BY AN *INSURED*:

   (1) TO A MOTOR VEHICLE: OR

   (2) IN A MOTOR VEHICLE

   *OWNED BY* THAT *INSURED* IF THE MOTOR VEHICLE WAS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE AT THE TIME OF THE ACCIDENT;

   b. **If Other Underinsured Motor Vehicle Coverage Applies**

   Item 4. is changed to read:

4. If:

   a. *you* sustain *bodily injury* or *property damage* while *occupying* a motor vehicle other than *your car* that is *owned by*:

   (1) *you*, then this coverage applies only to the extent of the underinsured motor vehicle coverage applicable to the motor vehicle that *you* were *occupying*; or

   (2) any *resident relative*, then, in addition to the amount paid from the policy insuring the motor vehicle *you* were *occupying*, the maximum amount that may be paid from all other policies combined that are issued to *you* or any *resident relative* by the **State Farm Companies** is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

   b. a *resident relative* sustains *bodily injury* or *property damage* while *occupying* a motor vehicle other than *your car* that is *owned by*:

   (1) *you*, then, in addition to the amount paid from the policy insuring the motor vehicle that that *resident relative* was *occupying*, the maximum amount that may be paid from all other

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

policies combined that are issued to **you** or any **resident relative** by the **State Farm Companies** is the single highest limit provided by any one of the policies. **We** may choose one or more policies from which to make payment;

(2) that **resident relative**, then this coverage applies only to the extent of the underinsured motor vehicle coverage applicable to the motor vehicle that that **resident relative** was **occupying**; or

(3) a different **resident relative**, then, in addition to the amount paid from the policy insuring the motor vehicle that that **resident relative** was **occupying**, the maximum amount that may be paid from all other policies combined that are issued to **you** or any **resident relative** by the **State Farm Companies** is the single highest limit provided by any one of the policies. **We** may choose one or more policies from which to make payment.

7. **PHYSICAL DAMAGE COVERAGES**

   a. The paragraph that reads:

      If a deductible applies to Comprehensive Coverage, then it is shown

on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

is changed to read:

**Deductible**

1. If "D" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Comprehensive Coverage, if any, is the dollar amount shown on the Declarations Page next to the title of this coverage. However, **we** will not deduct more than $500 for any **loss** to a **newly acquired car**.

2. If "G" is shown under "SYMBOLS" on the Declarations Page, then the deductible that applies to Collision Coverage is the dollar amount shown on the Declarations Page next to the title of this coverage. However, **we** will not deduct more than $500 for any **loss caused by collision** to a **newly acquired car**.

   b. **Insuring Agreements**

      **Car Rental and Travel Expenses Coverage**

      Item 4.a. **Car Rental Expense** is changed to read:

      **Car Rental Expense**

      **We** will pay the **daily rental charge** incurred when an **insured** rents a **car** from a **car business** while **your car** or a **newly acquired car** is:

      (1) not drivable; or

      (2) being repaired

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay this *daily rental charge* incurred during a period that:

(1) starts on the date:

    (a) the vehicle is not drivable as a result of the *loss*; or

    (b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

    (a) the date the vehicle has been repaired or replaced;

    (b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

    (c) seven days after *we* offer to pay for the *loss* if the vehicle is:

        (i) a total loss as determined by *us*; or

        (ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by an *insured* must be reported to *us* before *we* will pay such amount.

c. **Exclusions**

Exclusion 3. is changed to read:

THERE IS NO COVERAGE FOR ANY ***COVERED VEHICLE*** WHILE IT IS:

a. MADE AVAILABLE; OR

b. BEING USED

TO CARRY ***PERSONS*** FOR A CHARGE. This exclusion does not apply to the use of a ***private passenger car*** on a share-the-expense basis;

8. **INSURED'S DUTIES**

a. Item 6.a.(3) is changed to read:

A *person* making claim under:

    a. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage, must:

    (3) provide written authorization for *us* to obtain medical bills, medical records, wage information, salary information, employment information, and any other information *we* deem necessary to substantiate the claim.

    Such authorizations must not:

    (a) restrict *us* from performing *our* business functions in:

        (i) obtaining records, bills, information, and data; nor

        (ii) using or retaining records, bills, information, and data collected or received by *us*;

    (b) require *us* to violate federal or state laws or regulations;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(c) prevent **us** from fulfilling **our** data reporting and data retention obligations to insurance regulators; or

(d) prevent **us** from disclosing claim information and data:

(i) to enable performance of **our** business functions;

(ii) to meet **our** reporting obligations to insurance regulators;

(iii) to meet **our** reporting obligations to insurance data consolidators; and

(iv) as otherwise permitted by law.

If an injured **insured** is a minor, unable to act, or dead, then his or her legal representative must provide **us** with the written authorization.

If the holder of the information refuses to provide it to **us** despite the authorization, then at **our** request the **person** making claim or his or her legal representative must obtain the information and promptly provide it to **us**; and

b. The following is added to item 6.:

A **person** making claim under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage,

or Death, Dismemberment and Loss of Sight Coverage, must submit to **us** all information **we** need to comply with federal and state laws and regulations.

9. **GENERAL TERMS**

a. The following is added to **Newly Owned or Newly Leased Car**:

If a **resident relative** wants to insure a **car** newly **owned by** the **resident relative** with the **State Farm Companies** after that **car** ceases to be a **newly acquired car**, then the **resident relative** must apply to the **State Farm Companies** for a separate policy to insure the **car** newly **owned by** the **resident relative**. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

b. The following are added to **GENERAL TERMS**:

**Electronic Delivery**

With **your** consent, **we** may, if allowed by law, electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

**Our Rights Regarding Claim Information**

a. **We** will collect, receive, obtain, use, and retain all the items described in item b.(1) below and use and retain the information described in item b.(3)(b) below, in accordance with applicable federal and state laws and regulations and consistent with the performance of **our** business functions.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

b. Subject to a. above, **we** will not be restricted in or prohibited from:

  (1) collecting, receiving, or obtaining records, receipts, invoices, medical bills, medical records, wage information, salary information, employment information, data, and any other information;

  (2) using any of the items described in item b.(1) above; or

  (3) retaining:

    (a) any of the items in item b.(1) above; or

    (b) any other information **we** have in **our** possession as a result of **our** processing, handling, or otherwise resolving claims submitted under this policy.

c. **We** may disclose any of the items in item b.(1) above and any of the information described in item b.(3)(b) above:

  (1) to enable performance of **our** business functions;

  (2) to meet **our** reporting obligations to insurance regulators;

  (3) to meet **our** reporting obligations to insurance data consolidators;

  (4) to meet other obligations required by law; and

  (5) as otherwise permitted by law.

d. **Our** rights under a., b., and c. above shall not be impaired by any:

  (1) authorization related to any claim submitted under this policy; or

  (2) act or omission of an **insured** or a legal representative acting on an **insured's** behalf.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2016

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

This policy is issued by State Farm Mutual Automobile Insurance Company.

### MUTUAL CONDITIONS

1. **Membership.** While this policy is in force, the first insured shown on the Declarations Page is entitled to vote at all meetings of members and to receive dividends the Board of Directors in its discretion may declare in accordance with reasonable classifications and groupings of policyholders established by such Board.

2. **No Contingent Liability.** This policy is non-assessable.

3. **Annual Meeting.** The annual meeting of the members of the company shall be held at its home office at Bloomington, Illinois, on the second Monday of June at the hour of 10:00 A.M., unless the Board of Directors shall elect to change the time and place of such meeting, in which case, but not otherwise, due notice shall be mailed each member at the address disclosed in this policy at least 10 days prior thereto.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

Secretary

President

B10

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## 6023DC DRIVER EXCLUSION

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

Named Insured **LAMB, MELVIN O JR**

Policy Number **632 3189-B07-40**

Effective Date **02/26/2020**
12:01 A.M. Standard Time

IT IS AGREED THAT UNDER COVERAGES:
**A/U 25/50/25**

*WE* SHALL NOT BE LIABLE AND NO LIABILITY OR OBLIGATION OF ANY KIND SHALL ATTACH TO *US* FOR *BODILY INJURY, LOSS,* OR DAMAGE WHILE ANY MOTOR VEHICLE IS OPERATED BY:

**LAMB, MELVIN O III**
(*Person* excluded)

ALL OTHER TERMS OF THIS POLICY ARE UNCHANGED.

I DECLARE THAT:

1. THE DRIVER'S LICENSE OF THE EXCLUDED *PERSON* HAS BEEN TURNED IN TO THE DEPARTMENT OF MOTOR VEHICLES; OR

2. AN APPROPRIATE POLICY OF LIABILITY INSURANCE OR OTHER SECURITY AS MAY BE AUTHORIZED BY LAW HAS BEEN PROPERLY EXECUTED IN THE NAME OF THE *PERSON* TO BE EXCLUDED.

I AGREE TO ACCEPT THIS ENDORSEMENT AND ACKNOWLEDGE THAT THIS AGREEMENT:

1. IS BINDING UPON EVERY *INSURED* TO WHOM THIS POLICY APPLIES; AND

2. WILL BE INCLUDED IN ANY SUBSTITUTION OR RENEWAL OF THIS POLICY.

(Signature of a Named Insured)

1006065                                          146458  10-16-2013

Jury awards $36 million to Valencia County family in 2017 fatal crash    5/25/24, 7:24 AM

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# Jury awards $36 million to Valencia County family in 2017 fatal crash

Mon, Nov 13, 2023

Nov. 13—A Santa Fe jury awarded $36 million to a Valencia County family that filed a lawsuit against an insurance company following a 2017 fatal head-on collision that took the life of a Rio Communities woman and injured her 4-year-old nephew.

Jurors found that the woman killed in the collision had purchased a $1 million State Farm insurance policy less than a week before the crash and awarded the family $12 million in damages and an additional $24 million in bad faith and breach-of-contract damages, court records show.

The $36 million award includes a $20 million punitive damage award against State Farm Automobile Insurance, according to the verdict form.

Phone messages left last week for State Farm's attorney, Todd Schwarz, were not immediately returned.

The Sept. 2, 2017, two-car collision on N.M. 47 in Valencia County killed Andrea Lovato, 30, and caused serious injuries to her nephew, who was riding in the back seat, according to the complaint.

The 1st Judicial District Court verdict rendered on Oct. 31 is one of the largest "bad faith" awards against an insurance company made by a New Mexico jury, said Shane Maier, an attorney for Lovato's family.

"We understand that it's the second-highest bad faith verdict in our state's history," Maier said.

Jury awards $36 million to Valencia County family in 2018 fatal crash          5/25/24, 7:24 AM

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

The 2020 lawsuit said that Lovato was driving a 2017 Nissan north on U.S. 47 when it collided with a car traveling southbound in Lovato's lane of traffic, the lawsuit contends.

The oncoming vehicle was driving 70 mph in a 35 mph zone, Maier said. An accident reconstruction of the crash shows that both drivers "mirrored each other" by veering into the southbound lane moments before the impact, resulting in a head-on collision, he said.

The suit includes no information about the condition of Anita Nieto, the other driver involved in the crash. Messages left for Nieto's attorney, Kristin Groman, were not returned last week.

Lovato's 4-year-old nephew, Christopher Chavez, remained in the wreckage until he was extricated by emergency responders, Maier said.

"He has a scar across his stomach from having to undergo emergency surgery where they had to open up his abdominal cavity to stop internal bleeding," he said of the boy. "He's very scared of being in cars now, understandably."

The $36 million judgment also includes a $6 million damage award to the boy as a result of the crash, according to the verdict.

Just five days before the collision, Lovato contacted a State Farm agent and upgraded her insurance coverage from $25,000 to $1 million, Maier said.

After Lovato's death, State Farm alleged that her $25,000 policy limit remained in force, he said. State Farm also alleged that Lovato was entirely at fault for the collision.

Lovato's mother later found the declaration page of the upgraded $1 million insurance policy that had been mailed to Lovato's home, Maier said.

Jurors specified in their verdict that State Farm's contract provided $1 million in coverage for Lovato's vehicle, not $25,000 coverage claimed by the company, the verdict form shows. Jurors also found that each driver shared 50% responsibility for the collision, it said.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832



Select CD Mailing Option:
( ) Regular Mail
( ) Overnight Mail (Physical address required)
  Add "OVERNIGHT" to Description field, check the Priority box
( ) Certified Mail (Physical address required)

Password Letter:
( ) Email password letter: [Type email address]

If email is not selected, Claims Support will mail password letter based on CD Mailing Option selected above.

---

07-15-2021 - 3:08 PM CDT     **Performer:** Sikora, Steven      **Office:** INJD2CA
  **File Note:** RE:Global Authority
**Participant:**      **COL(Participant):**
  **Category:** Authority      **Sub Category:**

Rev'd and agree w/ your recommendation.  DD is a listed driver and not excluded on this policy      Proceed as recommended w/ hiring DA for global      . Advise once claim settlement apportionment is know.  Keep the Insureds informed and report significant events.

07-15-2021 - 2:48 PM CDT     **Performer:** Murdoch, Darren P      **Office:** INJATL
  **File Note:** updated excess exposure letters
**Participant:**      **COL(Participant):** 100(MICHAEL MOORE), 100(MATHIS STEPHENSON BILLMAN), 100(ANGELA RENEE EDWARDS), 100(JAMES WORKMAN)
  **Category:** Management      **Sub Category:**

Lee, please send updated excess exposure letters to the insured and our driver.  Recall the per accident BI coverage is $50,000

07-15-2021 - 2:47 PM CDT     **Performer:** Murdoch, Darren P      **Office:** INJATL
  **File Note:** Global Authority
**Participant:**      **COL(Participant):**
  **Category:** Authority      **Sub Category:**

STATE FARM CONFIDENTIAL INFORMATION
Distribution on a Business Need to Know Basis Only

SFMAIC_Workman_0134

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1000432

SM Sikora:  Requesting authority to conduct global for BI and PD.

We confirmed no excluded drivers on this policy (there are excluded drivers on other policies).

Recommend hiring DA to assist with global resolution of the BI and PD claims.

 Updated EE letters will be sent.

07-14-2021 - 7:13 PM CDT     **Performer:** Shivers, Lee        **Office:**INJATL
    **File Note:** Contact
    **Participant:** JAMES WORKMAN       **COL(Participant):** 100(JAMES WORKMAN)
      **Category:** Injury, Contact - Inbound Call       **Sub Category:**

tct NI, #3341, LMOVM advising we woud like to s/w Melvin
 #4096, LMOVM advising to c/b

07-14-2021 - 7:12 PM CDT     **Performer:** Shivers, Lee        **Office:**INJATL
    **File Note:** Contact
    **Participant:** KAHN LAW FIRM LLP ESCROW       **COL(Participant):** 100(JAMES WORKMAN)
            ACCOUNT FBO ESTATE OF JAMES
            KELLY WORKMAN AND HIS
            BENEFICIARIES
      **Category:** Injury, Contact - Inbound Call       **Sub Category:**

RCF C/A, s/w Justin, wanting to know the limits for the claim. Adv'd we have MFRL policy.and at this time, I am not responding to the demand that has been submitted. He is wanting to pursue punitive damages for this case. Adv'd P/A there are two add'l BI exposures on the claim. He states he will extend the demand if we need to request an extension. He also states an estate has been open for the deceased participant. He will wait to hear back from us.

07-14-2021 - 7:10 PM CDT     **Performer:** Shivers, Lee        **Office:**INJATL
    **File Note:** COc's- 3rd party
    **Participant:** KAHN LAW FIRM LLP ESCROW       **COL(Participant):**
            ACCOUNT FBO ESTATE OF JAMES
            KELLY WORKMAN AND HIS
            BENEFICIARIES, JAMES WORKMAN
      **Category:** Investigation, Injury, Coverage       **Sub Category:**

6323-189-40A - A 25/50/25,U 25/50/25 - '04 Chevrolet Tahoe
 No PLUP

 We have rec'd a demand for the deceased participant on the claim.

07-14-2021 - 3:10 PM CDT     **Performer:** Shivers, Lee        **Office:**INJATL
    **File Note:** Liability File Notes
    **Participant:**       **COL(Participant):**
      **Category:** Liability       **Sub Category:**

07-14-2021 - 10:14 AM CDT     **Performer:** Wade, Marlon        **Office:**INJATL
    **File Note:** Contact
    **Participant:**       **COL(Participant):**
      **Category:** Contact - Inbound Call       **Sub Category:**

STATE FARM CONFIDENTIAL INFORMATION
Distribution on a Business Need to Know Basis Only

SFMAIC_Workman_0135

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Claim Number: 40-21B2-49D

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

L/M for David Rheney at Gallivan White

07-21-2021 - 7:45 AM CDT          **Performer:** Sikora, Steven                    **Office:**INJD2CA
    **File Note:** Darren 100 TLD recv'd for the fatality of James Wo
    **Participant:**                              **COL(Participant):**
    **Category:** Management, Injury               **Sub Category:**

We have hired DA to represent the Insured and facilitate global.

07-20-2021 - 6:50 PM CDT          **Performer:** Shivers, Lee                     **Office:**INJATL
    **File Note:** Contact
    **Participant:** VALARIE LAMB                  **COL(Participant):**
    **Category:** Injury, Contact - Outbound Call  **Sub Category:**

07-20-2021 - 6:36 PM CDT          **Performer:** Shivers, Lee                     **Office:**INJATL
    **File Note:** Pending
    **Participant:**                              **COL(Participant):**
    **Category:** Pending                          **Sub Category:**

07-20-2021 - 4:03 PM CDT          **Performer:** Murdoch, Darren P                **Office:**INJATL
    **File Note:** Updated Demand
    **Participant:**                              **COL(Participant):** 100(JAMES WORKMAN)

STATE FARM CONFIDENTIAL INFORMATION
Distribution on a Business Need to Know Basis Only

SFMAIC_Workman_0131

**Category:** Management        **Sub Category:**

07-20-2021 - 6:02 AM CDT      **Performer:** Branch-McCoy, Jocl      **Office:** INJATL

**File Note:**
**Participant:**          **COL(Participant):**
**Category:** Investigation        **Sub Category:**

07-20-2021 - 5:56 AM CDT      **Performer:** Branch-McCoy, Jocl      **Office:** INJATL

**File Note:** LOR VIA FAX
**Participant:**          **COL(Participant):**
**Category:** Investigation        **Sub Category:**

V5 ATTY LOR

NO R/S WITHOUT PERMISSON

07-19-2021 - 3:33 PM EDT      **Performer:** Johnson, Chesnie      **Office:** CSACHVL

**File Note:**
**Participant:**          **COL(Participant):**
**Category:** Claim Note        **Sub Category:**

Encrypted Media File Note

What was copied to electronic media:
Who was sent to: Clawson and Staubes
Additional documentation sent with encrypted media

07-16-2021 - 3:18 PM CDT      **Performer:** Shivers, Lee      **Office:** INJATL

**File Note:** Contact
**Participant:** MELVIN O LAMB JR      **COL(Participant):**
**Category:** Injury, Contact - Outbound Call      **Sub Category:**

Opened the matters for the claim.

s/w s/w Luis, (ejo2) states they rec'd it on 3/20, and the update occurred on 07/13. Ask when DD became an Excluded Driver, and he states on 02/26/2020.

tct Service, s/w Erin, she states they will need a PT to have DD removed from the HH policies from the AO.

07-16-2021 - 2:56 PM CDT      **Performer:** Murdoch, Darren P      **Office:** INJATL

STATE FARM CONFIDENTIAL INFORMATION
Distribution on a Business Need to Know Basis Only

SFMAIC_Workman_0132

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Workman, Robert C. et al. v. SFMAIC, et al.

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| From: | Jessica Bass <jessica.bass.jq82@statefarm.com> |
|---|---|
| Sent: | Mon 11/22/2021 5:57:12 PM (UTC) |
| To: | Shay Anderson <shay.anderson.grfs@statefarm.com> |
| Subject: | RE: NEED MONDAY for DEPOSITION [EXTERNAL]: Cl. No. 4021B249D Melvin O Lamb, Jr [GWB-IMANMAIN.FID905081] |

The driver exclusion is an endorsement and we always include any endorsement with a certified policy

If a SIGNED driver's exclusion endorsement (more specific document) is needed, there is a separate selection (radio button) on the form that needs to be selected. And it will be sent separately for the claim file.

**From:** Shay Anderson
**Sent:** Monday, November 22, 2021 12:30 PM
**To:** Jessica Bass <jessica.bass.jq82@statefarm.com>
**Subject:** RE: NEED MONDAY for DEPOSITION: [EXTERNAL]: Cl. No. 4021B249D Melvin O Lamb, Jr. [GWB-IMANMAIN.FID905081]

Thanks – Do you know why we would send the blank exclusion? I'm sure the attorney will ask me why that is procedure....

**From:** Jessica Bass
**Sent:** Monday, November 22, 2021 12:03 PM
**To:** Shay Anderson <shay.anderson.grfs@statefarm.com>
**Subject:** RE: NEED MONDAY for DEPOSITION: [EXTERNAL]: Cl. No. 4021B249D Melvin O Lamb, Jr. [GWB-IMANMAIN.FID905081]

Hey Shay,

Just to let you know that is a procedure to send a blank exclusion with the certified. However, the signed specific driver's exclusion was also sent previously for this file.

I just sent the certified with the certified

Thanks
JES

**From:** Shay Anderson
**Sent:** Friday, November 19, 2021 4:01 PM
**To:** Jessica Bass <jessica.bass.jq82@statefarm.com>; Lee Shivers <lee.shivers.08y5@statefarm.com>
**Cc:** Michael N Young <michael.n.young.c3ru@statefarm.com>; Jeff Kressner <jeff.kressner.gjhv@statefarm.com>; Tyran Turner <tyran.turner.e124@statefarm.com>; Shay Anderson <shay.anderson.jpfc@statefarm.com>
**Subject:** NEED MONDAY for DEPOSITION: [EXTERNAL]: Cl. No. 4021B249D Melvin O Lamb, Jr. [GWB-IMANMAIN.FID905081]

> **Privileged & Confidential**
> **Gathered for the Purpose of Seeking Legal Advice**

Policy 642 3180-40
DOI 06/17/21

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Jessica – Can you produce new certified policy for 632 3189-40 for DOL 06/12/21. For some reason, the one sent to the claim file earlier did not include the executed driver's exclusion endorsement – only a blank copy. You may send directly to me.

Thanks.
Shay

Shay Anderson, MBA, CPCU • Auto Underwriting Team Manager
Portfolio Management • Southeastern Market Area • Atlanta Hub
(770) 418-6545 – email

Shay Anderson
December 14, 2021

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

State Farm Mutual Automobile    )
Insurance Company,              )
                                )
                Plaintiff,      )
                                )
        -vs-                    )   C.A. No. 2:21-cv-2623-MBS
                                )
Melvin O.  Lamb III, Melvin O. )
Lamb, Jr., The Estate of James )
K.  Workman, Michael H.  Moore,)
Deborah D.  Plott, Angela R.   )
Edwards, Constance J. Molinaro,)
Mario F.  Molinaro, Jonathan D.)
Keller, Katherine M.  Vonesh,  )
Mathis S.  Billman, and Luke E.)
Billman,                       )
                                )
                Defendants.     )
_____ )

VIDEOTAPED 30(b)(6) DEPOSITION OF SHAY ANDERSON ON BEHALF

OF STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

DECEMBER 14, 2021


        PURSUANT to Notice and/or agreement between the

parties, the videotaped 30(b)(6) deposition of SHAY

ANDERSON, called by the Defendants, was taken commencing at

the hour of 9:32 A.M. on Tuesday, December 14, 2021, at

Gallivan, White & Boyd, P.A.,  55 Beattie Place, Suite

1200, Greenville, South Carolina.

                        Barbara M. McCurley, Reporter

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Shay Anderson
December 14, 2021

Page 96

1    A.    Right.

2    Q.    **Who created this Declarations Page that's attached**

3          **as Exhibit A to Defense Exhibit 2, or at whose**

4          **instruction?**

5    A.    I don't know.

6    Q.    **What would the process typically -- is it typical**

7          **for State Farm to create a new Declarations Page**

8          **following a collision to try to deny coverage?**

9          **MS.  JOHNSEN:** Object to the form.

10   A.    No.

11   Q.    **Okay.  How would one determine why this**

12         **Declarations Page that's attached to Exhibit 2 --**

13         **Defense Exhibit 2 -- how would one determine who**

14         **created it?**

15   A.    You would have to look in the audit trail of our --

16         of our system.

17   Q.    **Oh, I didn't realize -- I'm used to dealing with**

18         **hospitals.  So, tell me about State Farm's audit**

19         **trail system.  What is -- how does that work?**

20   A.    There would just be a screen that says who -- who

21         made the entry.

22   Q.    **All right, what did -- as part of that audit trail,**

23         **anything show why that was created?**

24   A.    I believe we recognized that the signed endorsement

25         was on file through the claims review, and were

Shay Anderson
December 14, 2021

Page 101

```
 1   A.   Yes, you can tell who it is.
 2   Q.   Did you access the Rumba System concerning this
 3        matter?
 4   A.   Yes.
 5   Q.   When did you do that?
 6   A.   In the last few weeks.
 7   Q.   Okay.  You know, as part of getting prepared for
 8        today's deposition?
 9   A.   Yes.
10   Q.   And did you print anything from the Rumba System?
11   A.   I did not.
12   Q.   Are you able to print something from the Rumba
13        System?
14   A.   Not working from home.
15   Q.   Well, I understand.  What I mean, when you're
16        properly logged in with ...
17   A.   Yes.
18   Q.   ... State Farm computer ...
19   A.   Yes.
20   Q.   ... and all the things you've described, it's easy
21        to print off the audit trail?
22   A.   You could, yes.
23   Q.   There's no extraordinary effort required to do
24        that, right?
25   A.   I don't think so.
```

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA     )
                                   )     IN THE COURT OF COMMON PLEAS
COUNTY OF CHARLESTON       )     NINTH JUDICIAL CIRCUIT

|  |  |
|---|---|
| | )   Case No. 2023-CP-10-01832 |
| Robert C. Workman, Individually and as | ) |
| Personal Representative of the Estate of | ) |
| James K. Workman, Kelly Workman | ) |
| Tick and Matthew T. Workman, | ) |
| | ) |
| Plaintiffs, | )   **STATE FARM MUTUAL** |
| | )   **AUTOMOBILE INSURANCE** |
| | )   **COMPANY'S THIRD** |
| vs. | )   **SUPPLEMENTAL PRIVILEGE LOG** |
| | ) |
| State Farm Mutual Automobile Insurance | ) |
| Company and Gallivan, White & Boyd, | ) |
| P.A., | ) |
| | ) |
| Defendants. | ) |
| | ) |

State Farm Mutual Automobile Insurance Company ("SFMAIC" or "State Farm") has redacted or otherwise withheld from its productions the below identified information and materials, either based on attorney-client privilege or the work product doctrine.

Whether or not expressly stated in each of the below entries, a designation of work product in connection with the third-party liability claims and litigation brought against Melvin O. Lamb, Jr. ("Lamb Jr."), State Farm's insured, and Melvin O. Lamb, III ("Lamb III"), the driver of the vehicle owned by Lamb Jr. and insured by SFMAIC, means the material would not have been prepared but for the third-party liability claims and litigation, whether actual or anticipated, against Lamb Jr. and Lamb III, and, therefore, is distinguishable from material prepared in the ordinary course of business or for some other purpose. A designation of work product in connection with the underlying declaratory judgment action State Farm brought against the Estate of James K. Workman, among others, (the "DJA"), means that the material would not have been prepared but

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

for the DJA, and, therefore, is distinguishable from material prepared in the ordinary course of business or for some other purpose.

State Farm further notes that the common interest doctrine protects the transmission of information otherwise protected under the work product doctrine or attorney-client privilege when it is shared between parties with a common interest in a legal matter. *See Tobaccoville USA, Inc. v. McMaster*, 692 S.E.2d 526, 531 (S.C. 2010). In this regard, the common interest doctrine applies to the confidential relationship between an insurer, an insured, and the attorney retained by the insurer to defend the insured.

In this Third Supplemental Privilege Log, State Farm corrects the designations in Privilege Log Entry Nos. 196, 197, 225-227, and 229 by changing them from Attorney-Client Privilege to Work Product, it withdraws Privilege Log Entry No. 228 (the unredacted email with attachment is Bates labeled WORKMAN00005235PROD), and it adds Privilege Log numbers 272 through 568. With respect to the additional entries, Privilege Log Nos. 307 and 308 identify and describe material in the May 24, 2024 supplemental production of documents Bates labeled WORKMAN00005187PROD through WORKMAN00005450PROD that has been redacted on the basis of attorney-client privilege and/or work product protection. The remaining additional entries identify emails and/or attachments thereto or withheld on the basis of the work product doctrine or attorney-client privilege as identified in State Farm's responses to Supplemental Request Nos. 2, 6, 29, and 31-34 of Plaintiffs' First Discovery Requests.

| Privilege Log No. | Bates | Description | Designation |
|---|---|---|---|
| 1 | WORKMAN00000007PROD | Redaction of portion of Shay Anderson's email concerning communications with State Farm's counsel, GWB, in the DJA | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 2 | SFMAIC_Workman_0065, 0486 | Redaction of SFMAIC's liability evaluation, which would not have been entered but for the third-party claims and actual/anticipated litigation against Lamb Jr. and Lamb III. | Work Product |
|---|---|---|---|
| 3 | SFMAIC_Workman_0069, 0070, 0071, 0072, 0417, 0418, 421, 422, | Reserve and range of value amounts redacted from claim file because they reflect SFMAIC's evaluation, based on its own investigation and evaluation and that of attorneys retained to represent its insured Lamb Jr. and the driver of the vehicle insured by SFMAIC, Lamb III, which would not have been entered but for the third-party claims and litigation. | Work Product |
| 4 | SFMAIC_Workman_0074, 0556 | Portion of 5/5/2022 file note reflecting the material selected and provided to Whelan Mellen & Norris, LLC for purposes of its legal representation of SFMAIC; entered in relation to SFMAIC's engagement of counsel in anticipation of threatened litigation arising from State Farm's filing of the DJA; would not have been entered but for SFMAIC's anticipation of litigation with the Estate regarding State Farm's filing of the DJA. | Attorney-Client Privileged; Work Product |
| 5 | SFMAIC_Workman_0075-77, 0531-532 | Portions of 4/27/2022 file note regarding mediation of the Estate's claims against Lamb III and Lamb Jr., evaluation of liability against Lamb III and Lamb Jr., and evaluation and investigation of third-party liability claims against Lamb III and Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. | Work Product |

| 6 | SFMAIC_Workman_0077-79, 0532-533 | Portions of 4/21/2022 (9:38 AM CDT) file note regarding mediation of the Estate's claims against Lamb III and Lamb Jr., evaluation of liability against Lamb III and Lamb Jr., and evaluation and investigation of third-party liability claims against Lamb III and Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. | Work Product |
| 7 | SFMAIC_Workman_0079-81, 0534-535 | Portions of 4/21/2022 (9:14 AM CDT) file note regarding mediation of the Estate's claims against Lamb III and Lamb Jr., evaluation of liability against Lamb III and Lamb Jr., and evaluation and investigation of third-party liability claims against Lamb III and Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. | Work Product |
| 8 | SFMAIC_Workman_0081-83, 0535-536 | Portions of 4/19/2022 file note regarding mediation of the Estate's claims against Lamb III and Lamb Jr., evaluation of liability against Lamb III and Lamb Jr., and evaluation and investigation of third-party liability claims against Lamb III and Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 9 | SFMAIC_Workman_0083-84 | Portions of 4/4/2022 file note regarding mediation of the Estate's claims against Lamb III and Lamb Jr., evaluation of liability against Lamb III and Lamb Jr., and evaluation and investigation of third-party liability claims against Lamb III and Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. | Work Product |
|---|---|---|---|
| 10 | SFMAIC_Workman_0086, 0538 | Portions of 3/31/2022 (9:38 AM CDT) file note regarding mediation of the Estate's claims against Lamb III and Lamb Jr., evaluation of liability against Lamb III and Lamb Jr., and evaluation and investigation of third-party liability claims against Lamb III and Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. | Work Product |
| 11 | SFMAIC_Workman_0088, 0539 | Portions of 3/31/2022 (9:05 AM CDT) file note regarding mediation of the Estate's claims against Lamb III and Lamb Jr., evaluation of liability against Lamb III and Lamb Jr., and evaluation and investigation of third-party liability claims against Lamb III and Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 12 | SFMAIC_Workman_0090, 0540-541 | Portions of 3/30/2022 (3:01 PM CDT) file note regarding mediation of the Estate's claims against Lamb III and Lamb Jr., evaluation of liability against Lamb III and Lamb Jr., and evaluation and investigation of third-party liability claims against Lamb III and Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. | Work Product |
| 13 | SFMAIC_Workman_0091, 0541 | 3/30/2022 (11:11 AM CDT) file note regarding mediation of the Estate's claims against Lamb III and Lamb Jr., evaluation of liability against Lamb III and Lamb Jr., and evaluation and investigation of third-party liability claims against Lamb III and Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 14 | SFMAIC_Workman_0092, 0542-543 | 3/30/2022 (9:57 AM CDT) file note regarding mediation of the Estate's claims against Lamb III and Lamb Jr., evaluation of liability against Lamb III and Lamb Jr., and evaluation and investigation of third-party liability claims against Lamb III and Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. | Work Product |
| 15 | SFMAIC_Workman_0094, 0543-544 | 3/29/2022 (12:58 PM CDT) file note regarding mediation of the Estate's claims against Lamb III and Lamb Jr., evaluation of liability against Lamb III and Lamb Jr., and evaluation and investigation of third-party liability claims against Lamb III and Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 16 | SFMAIC_Workman_0095, 0544-545 | 3/29/2022 (11:48 AM CDT) file note regarding mediation of the Estate's claims against Lamb III and Lamb Jr., evaluation of liability against Lamb III and Lamb Jr., and evaluation and investigation of third-party liability claims against Lamb III and Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. | Work Product |
| 17 | SFMAIC_Workman_0096 | Portion of 3/25/2022 file note regarding information needed/requested from attorney Warren Moise for purposes of evaluating liability claims/litigation against insured; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Attorney-Client Privileged; Work Product |
| 18 | SFMAIC_Workman_0096, 0559 | Portion of 3/4/2022 file note regarding handling of liability claims against Lamb III and Lamb Jr; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III . | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 19 | SFMAIC_Workman_0097 | Portion of 2/25/2022 file note reflecting the material selected and provided to counsel for purposes of his legal representation of Lamb Jr. as assigned by SFMAIC; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Attorney-Client Privileged; Work Product |
|----|---------------------|---|---|
| 20 | SFMAIC_Workman_0097 | Portion of 2/24/2022 file note reflecting the material selected and provided to counsel for purposes of his legal representation of Lamb Jr. as assigned by SFMAIC; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Attorney-Client Privileged; Work Product |
| 21 | SFMAIC_Workman_0098 | 2/22/2022 file note revealing substance of attorney Warren Moise's discussion with Lee Shivers (SFMAIC) regarding evaluation and defense of claims against insured Mr. Lamb, Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Attorney-Client Privileged; Work Product |
| 22 | SFMAIC_Workman_0098, 0559 | Portion of 2/16/2022 file note of Tyran Turner regarding actions to be taken and matters to be discussed with attorney Warren Moise concerning defense of claims against insured Mr. Lamb, Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 23 | SFMAIC_Workman_0098, 0559 | Portion of 2/16/2022 file note of Emma Smith regarding actions to be taken and matters to be discussed with attorney Warren Moise concerning defense of claims against insured Mr. Lamb, Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Work Product |
|---|---|---|---|
| 24 | SFMAIC_Workman_0098 | Portion of 2/14/2022 file note regarding arbitration and impact on property damage claims; entered in relation to and for purposes of arbitrations in which SFMAIC was involved with other insurers relating to property damage claims arising from accident. | Work Product |
| 25 | SFMAIC_Workman_0099, 0545 | 1/25/2022 file note regarding liability evaluation and legal standards in arbitration case; entered in relation to and for purposes of arbitrations in which SFMAIC was involved with other insurers relating to property damage claims arising from accident. | Work Product |
| 26 | SFMAIC_Workman_0099, 0560 | 1/20/2022 file note regarding actions to be taken and matters to be discussed with attorney Warren Moise concerning defense of claims against insured Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Work Product |
| 27 | SFMAIC_Workman_0100 | 1/19/2022 file note revealing matters to be discussed with attorney Warren Moise in relation to evaluating, defending claims against insured Mr. Lamb, Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 28 | SFMAIC_Workman_0100, 0560 | Portion of 1/13/2022 file note concerning the Rule 30(b)(6) deposition of SFMAIC; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC. | Work Product |
|----|----|----|----|
| 29 | SFMAIC_Workman_0100, 0545-546 | 1/10/2022 file note regarding liability evaluation and legal standards in arbitration case; entered in relation to and for purposes of arbitrations in which SFMAIC was involved with other insurers relating to property damage claims arising from accident. | Work Product |
| 30 | SFMAIC_Workman_0101, 0546-547 | 12/23/2021 (2:32 PM CST) file note concerning, in part, the evaluation of liability claims against insured Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, and attorney Warren Moise legal research in his defense of Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III; also concerns, in part, the DJA, materials to be provided to SFMAIC's attorney in the DJA (GWB), and action to be taken by GWB as SFMAIC's attorney in the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 31 | SFMAIC_Workman_0102, 0547 | 12/03/2021 (2:17 PM CST) file note concerning, in part, the evaluation of liability claims against insured Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, and attorney Warren Moise legal research in his defense of Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III; also concerns, in part, the DJA, materials to be provided to SFMAIC's attorney in the DJA (GWB), and action to be taken by GWB as SFMAIC's attorney in the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 32 | SFMAIC_Workman_0103, 0547-548 | 12/03/2021 (2:11 PM CST) file note concerning, in part, the evaluation of liability claims against insured Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, and attorney Warren Moise legal research in his defense of Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III; also concerns, in part, the DJA, materials to be provided to SFMAIC's attorney in the DJA (GWB), and action to be taken by GWB as SFMAIC's attorney in the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 33 | SFMAIC_Workman_0104, 0548-549 | 12/03/2021 (1:56 PM CST) file note concerning, in part, the evaluation of liability claims against insured Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, and attorney Warren Moise legal research in his defense of Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III; also concerns, in part, the DJA, materials to be provided to SFMAIC's attorney in the DJA (GWB), and action to be taken by GWB as SFMAIC's attorney in the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
|----|----|----|----|
| 34 | SFMAIC_Workman_0104 | 12/1/2021 file note concerning information provided to GWB by Tyran Turner for purposes of GWB's representation of SFMAIC. | Attorney-Client Privileged; Work Product |
| 35 | SFMAIC_Workman_0104-105, 0560 | 11/23/2021 file note revealing attorney Jennifer Johnsen's (GWB) discussion with Darren Murdoch regarding her mental impressions and opinions regarding the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 36 | SFMAIC_Workman_0105, 0560 | 11/22/2021 file note entered by Darren Murdoch (SFMAIC) reflecting conversation between him and SFMAIC's counsel Jennifer Johnsen (GWB) regarding discovery in the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 37 | SFMAIC_Workman_0105 | 11/22/2021 file note entered by Lee Shivers (SFMAIC) regarding information he provided to Shay Anderson (SFMAIC) for purposes of her preparation for Rule 30(b)(6) deposition of State Farm in which Ms. Anderson was the corporate designee; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC. | Work Product |
| 38 | SFMAIC_Workman_0105, 0561 | 11/11/2021 file note revealing discussion between SFMAIC, through Darren Murdoch and Lee Shivers, and SFMAIC's counsel in the DJA, Jennifer Johnsen (GWB), concerning DJA, including mental impressions and strategy of counsel and material to be gathered by SFMAIC at request of counsel for purposes of the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 39 | SFMAIC_Workman_0106 | 11/11/2021 file note revealing discussion between SFMAIC's attorney Jennifer Johnsen (GWB) and Lee Shivers (SFMAIC) regarding the DJA, including strategy of counsel and information to be gathered by Shivers at request of counsel for purposes of the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 40 | SFMAIC_Workman_0106, 0561 | 11/2/2021 file note revealing discussion between SFMAIC, through Darren Murdoch and Lee Shivers, and SFMAIC's counsel in the DJA, Jennifer Johnsen (GWB), concerning DJA, including material to be gathered by SFMAIC at request of counsel for purposes of the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 41 | SFMAIC_Workman_0106 | 11/1/2021 file note revealing discussion between SFMAIC, through Darren Murdoch and Lee Shivers, and SFMAIC's counsel in the DJA, Jennifer Johnsen (GWB), concerning DJA, including material to be gathered by SFMAIC at request of counsel for purposes of the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
|----|---------------------|------|------|
| 42 | SFMAIC_Workman_0106 | 10/28/2021 file note documenting SFMAIC's investigation of issues raised in DJA at the request of counsel, Jennifer Johnsen (GWB); entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC. | Attorney-Client Privileged; Work Product |
| 43 | SFMAIC_Workman_0107 | 10/27/2021 file note documenting SFMAIC's investigation of issues raised in DJA at the request of counsel, Jennifer Johnsen (GWB); entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC. | Attorney-Client Privileged; Work Product |
| 44 | SFMAIC_Workman_0107 | 10/26/2021 (4:42 PM CDT) file note revealing discussion between SFMAIC's attorney Jennifer Johnsen (GWB) and Lee Shivers (SFMAIC) regarding issues raised in DJA and revealing information requested by Johnsen; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 45 | SFMAIC_Workman_0107 | 10/26/2021 (4:41 PM CDT) file note documenting information to be gathered at the request of SFMAIC's counsel Jennifer Johnsen (GWB) for purposes of the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 46 | SFMAIC_Workman_0107 | Portion of 10/22/2021 file note documenting Lee Shivers' communication with SFMAIC's counsel Jennifer Johnsen regarding DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 47 | SFMAIC_Workman_0107, 0549 | 10/21/2021 file note regarding liability evaluation and legal standards in arbitration case; entered in relation to and for purposes of arbitrations in which SFMAIC was involved with other insurers relating to property damage claims arising from accident. | Work Product |
| 48 | SFMAIC_Workman_0108, 0549-550 | 10/10/2021 (2:28 PM CDT) file note concerning, in part, the evaluation of liability claims against insured Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, and attorney Warren Moise legal research in his defense of Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III; also concerns, in part, the DJA, materials to be provided to SFMAIC's attorney in the DJA (GWB), and action to be taken by GWB as SFMAIC's attorney in the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 49 | SFMAIC_Workman_0108 | 10/10/2021 (2:22 PM CDT) file note concerning liability evaluation in and handling of arbitration/property damage claims. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 50 | SFMAIC_Workman_0109 | Portion of 10/5/2021 (3:53 PM CDT) file note revealing discussion between SFMAIC's attorney Jennifer Johnsen (GWB) and Lee Shivers (SFMAIC) regarding subpoena served on SFMAIC and work being performed by the attorney in connection with the DJA; would not have been entered but for litigation against the insured and SFMAIC's DJA, revealing or otherwise constituting work product of SFMAIC and its counsel, GWB. | Attorney-Client Privileged; Work Product |
|----|---------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------------------------------------------|
| 51 | SFMAIC_Workman_0109 | Portion of 10/5/2021 (2:33 PM CDT) file note revealing substance of attorney Warren Moise's discussion with Lee Shivers (SFMAIC) regarding representation of insured Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Attorney-Client Privileged; Work Product |
| 52 | SFMAIC_Workman_0109 | 10/1/2021 file note documenting, in part, Lee Shivers' (SFMAIC) communications with SFMAIC's attorney Jennifer Johnsen regarding subpoena; would not have been entered but for litigation against the insured and SFMAIC's DJA, revealing or otherwise constituting work product of SFMAIC and its counsel, GWB. Also documenting, in part, provision of information by Lee Shivers to Warren Moise, entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 53 | SFMAIC_Workman_0110, 0550 | 9/30/2021 file note concerning, in part, the evaluation of liability claims against insured Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, and attorney Warren Moise legal research in his defense of Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III; also concerns, in part, the DJA, materials to be provided to SFMAIC's attorney in the DJA (GWB), and action to be taken by GWB as SFMAIC's attorney in the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 54 | SFMAIC_Workman_0110 | Portion of 9/24/2021 file note concerning information provided to counsel for SFMAIC for purposes of GWB's representation of SFMAIC; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 55 | SFMAIC_Workman_0111, 0561 | 9/22/2021 file note reflecting SFMAIC's communication with GWB regarding the subpoena served on SFMAIC; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 56 | SFMAIC_Workman_0111, 0561 | Portion of 9/21/2021 file note revealing discussion between SFMAIC's attorneys Jennifer Johnsen and Bill Young (GWB) and Darren Murdoch (SFMAIC) regarding subpoena served on SFMAIC in the Estate's action against insured Mr. Lamb Jr., GWB's representation of State Farm in connection with the same, and counsel's opinions; would not have been entered but for litigation against the insured and SFMAIC's DJA, revealing or otherwise constituting work product of SFMAIC and its counsel, GWB. | Attorney-Client Privileged; Work Product |
| 57 | SFMAIC_Workman_0111 | Portion of 9/15/2021 file note documenting information provided to GWB as counsel for State Farm and for purposes of its representation of State Farm; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 58 | SFMAIC_Workman_0111 | 9/10/2021 (4:24 PM CDT) file note documenting, in part, information provided to GWB as counsel for State Farm and for purposes of its representation of State Farm; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB; also documenting, in part, handling of arbitration, SFMAIC's work product relating to property damage claims arising from accident. | Attorney-Client Privileged; Work Product |
| 59 | SFMAIC_Workman_0111, 0550-551 | 9/10/2021 (2:38 PM CDT) file note regarding liability evaluation and legal standards in arbitration case; entered in relation to and for purposes of arbitrations in which SFMAIC was involved with other insurers relating to property damage claims arising from accident. | Work Product |
| 60 | SFMAIC_Workman_0112 | 9/10/2021 (2:38 PM CDT) file note regarding liability evaluation and legal standards in arbitration case; entered in relation to and for purposes of arbitrations in which SFMAIC was involved with other insurers relating to property damage claims arising from accident. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 61 | SFMAIC_Workman_0112, 0562 | Portion of 9/10/2021 (7:01 AM CDT) file note documenting communication between Darren Murdoch (SFMAIC) and SFMAIC's counsel GWB for purposes of its representation of State Farm and responding to demand sent to SFMAIC; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
|----|---------------------------|----|----|
| 62 | SFMAIC_Workman_0112 | 9/9/2021 file note revealing information gathered for counsel (GWB) for use in the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Work Product |
| 63 | SFMAIC_Workman_0113 | Portion of 9/8/2021 (6:37 PM CDT) file note documenting information provided to GWB as counsel for State Farm and for purposes of its representation of State Farm; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 64 | SFMAIC_Workman_0113 | 9/8/2021 (3:28 PM CDT) file note documenting information provided to GWB as counsel for State Farm and for purposes of its representation of State Farm; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 65 | SFMAIC_Workman_0113, 0562 | Portion of 9/8/2021 (2:33 PM CDT) file note documenting communication between Darren Murdoch (SFMAIC) and SFMAIC's counsel GWB for purposes of its representation of State Farm and responding to demand sent to SFMAIC; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 66 | SFMAIC_Workman_0113 | Portion of 9/8/2021 (2:29 PM CDT) file note revealing communication between Darren Murdoch (SFMAIC) and Warren Moise, counsel hired by SFMAIC to represent and defend its insured, Lamb Jr., against third-party claims and litigation, concerning the defense of third-party claims and litigation against Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Work Product |
|---|---|---|---|
| 67 | SFMAIC_Workman_0113 | Portion of 9/8/2021 (11:59 AM CDT) file note documenting information gathered at request of GWB as counsel for State Farm for purposes of its representation of State Farm; would not have been entered but for litigation against the insured and SFMAIC's DJA, revealing or otherwise constituting work product of SFMAIC and its counsel, GWB. | Attorney-Client Privileged; Work Product |
| 68 | SFMAIC_Workman_0113 | 9/4/2021 file note documenting information gathered at request of GWB as counsel for State Farm for purposes of its representation of State Farm; would not have been entered but for litigation against the insured and SFMAIC's DJA, revealing or otherwise constituting work product of SFMAIC and its counsel, GWB. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 69 | SFMAIC_Workman_0114, 0551 | 8/31/2021 (11:28 AM CDT) file note file note concerning, in part, the evaluation of liability claims against insured Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, and attorney Warren Moise legal research in his defense of Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III; also concerns, in part, the DJA, materials to be provided to SFMAIC's attorney in the DJA (GWB), and action to be taken by GWB as SFMAIC's attorney in the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
|----|---------------------------|------|------|
| 70 | SFMAIC_Workman_0115 | 8/31/2021 (11:26 AM CDT) file note concerning, in part, State Farm's gathering of information from Agent Jack Tankersley and individuals within State Farm's underwriting department in response to subpoena served on it in the action the Estate brought against Lamb Jr., SFMAIC's insured; would not have been entered but for litigation against the insured and SFMAIC's DJA, revealing or otherwise constituting work product of SFMAIC and its counsel, GWB. The file note also concerns, in part, Lee Shivers' communication with Warren Moise, attorney SFMAIC retained to represent and defend Lamb Jr., regarding attorney's legal research, entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 71 | SFMAIC_Workman_0115 | 8/30/2021 (5:47 PM CDT) file note documenting State Farm's gathering of information from State Farm's underwriting department in response to subpoena served on it in the action the Estate brought against Lamb Jr., SFMAIC's insured; would not have been entered but for litigation against the insured and SFMAIC's DJA, revealing or otherwise constituting work product of SFMAIC and its counsel, GWB. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 72 | SFMAIC_Workman_0116 | 8/30/2021 (4:00 PM CDT) file note concerning legal research to be performed by Warren Moise, attorney SFMAIC retained to represent and defend Lamb Jr., in defense of Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Attorney-Client Privileged; Work Product |
| 73 | SFMAIC_Workman_0116, 0563 | 8/30/2021 (3:53 PM CDT) file note concerning the subpoena served on SFMAIC and issued from the litigation the Estate brought against Lamb Jr., SFMAIC's insured, and GWB's representation of SFMAIC for purposes of its responding to the subpoena; would not have been entered but for litigation against the insured and SFMAIC's DJA, revealing or otherwise constituting work product of SFMAIC and its counsel, GWB. | Attorney-Client Privileged; Work Product |
| 74 | SFMAIC_Workman_0116 | Portion of 8/26/2021 email revealing attorney Warren Moise's communication with Lee Shivers (SFMAIC) regarding Moise's defense of SFMAIC's insured, Lamb Jr., and the legal research needed for the defense; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 75 | SFMAIC_Workman_0116, 0563 | Portion of 8/24/2021 email revealing Darren Murdoch's (SFMAIC) communication with attorney Warren Moise regarding Moise's defense of SFMAIC's insured, Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 76 | SFMAIC_Workman_0117, 0551-552 | 8/23/2021 file note concerning, in part, the evaluation of liability claims against insured Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, and revealing substance of email SFMAIC received from attorney Moise, counsel retained by SFMAIC to defend Lamb Jr., concerning the claims/litigation against Lamb Jr; entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. Also concerns, in part, the DJA, materials to be provided to SFMAIC's attorney in the DJA (GWB), and action to be taken by GWB as SFMAIC's attorney in the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 77 | SFMAIC_Workman_0117 | Portion of 8/23/2021 file note concerning substance of email SFMAIC received from attorney Warren Moise concerning his defense of the third-party claims and litigation brought against SFMAIC's insured, Lamb Jr.; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 78 | SFMAIC_Workman_0118, 0552 | 8/18/2021 file note concerning, in part, the evaluation of liability claims against insured Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. Also concerns, in part, the DJA, materials to be provided to SFMAIC's attorney in the DJA (GWB), and action to be taken by GWB as SFMAIC's attorney in the DJA, entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 79 | SFMAIC_Workman_0118, 0563 | 8/17/2021 file note revealing communication attorney Bill Young (GWB) had with Darren Murdoch (SFMAIC) regarding steps taken by counsel in the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 80 | SFMAIC_Workman_0119, 0563 | Portion of 8/13/2021 file note revealing communication attorney Bill Young (GWB) had with Darren Murdoch (SFMAIC) regarding steps taken by counsel in the DJA; entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 81 | SFMAIC_Workman_0119 | Portion of 8/12/2021 (3:26 PM CDT) file note revealing SFMAIC's investigation of liability claims of third-parties against SFMAIC's insured Lamb Jr. and the driver of the vehicle insured by SFMAIC, Lamb III, entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 82 | SFMAIC_Workman_0119 | Portion of 8/12/2021 (3:25 PM CDT) file note revealing SFMAIC's investigation of liability claims of third-parties against SFMAIC's insured Lamb Jr. and the driver of the vehicle insured by SFMAIC, Lamb III, entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Work Product |
|---|---|---|---|
| 83 | SFMAIC_Workman_0119 | 8/11/2021 file note revealing communication SFMAIC received from attorney Mitch Griffith, hired by SFMAIC to represent and defend Lamb III, the driver of the vehicle owned by Lamb Jr. and insured by SFMAIC; entered by SFMAIC in relation to defending Lamb III against third-party claims--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb III. | Attorney-Client Privileged; Work Product |
| 84 | SFMAIC_Workman_0120, 0553 | 8/11/2021 (6:11 PM CDT) file note concerning, in part, the evaluation of liability claims against insured Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. Also concerns, in part, the DJA, materials to be provided to SFMAIC's attorney in the DJA (GWB), and action to be taken by GWB as SFMAIC's attorney in the DJA, entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 85 | SFMAIC_Workman_0120, 0564 | Portion of 8/11/2021 (4:21 PM CDT) file note revealing communication between attorney Bill Young (GWB) and Steven Sikora and others from SFMAIC regarding the recommendations and opinions of GWB in connection with its representation of SFMAIC. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 86 | SFMAIC_Workman_0120, 0564 | Portion of 8/11/2021 (10:52 AM CDT) file note revealing communication attorney Warren Moise, counsel from SFMAIC's insured Lamb Jr., had with Darren Murdoch (SFMAIC) regarding the claims made against his client; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation and the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 87 | SFMAIC_Workman_0120-121, 0564 | Portion of 8/10/2021 file note revealing communication attorney Bill Young (GWB) had with Darren Murdoch (SFMAIC) regarding attorney Young's recommended course of actions; entered in anticipation of litigation. | Attorney-Client Privileged; Work Product |
| 88 | SFMAIC_Workman_0121, 0565 | Portion of 8/9/2021 (1:33 PM CDT) file note revealing communication attorney Mitch Griffith, hired to represent and defend Lamb III against third-party claims, with Darren Murdoch (SFMAIC) regarding actions taken by Mitch Griffith as assigned counsel for Lamb III; entered by SFMAIC in relation to defending Lamb III against third-party claims; the file note/portion thereof would not have been entered but for the third-party claims and anticipated litigation against Lamb III. | Work Product |
| 89 | SFMAIC_Workman_0121, 0565 | Portion of 8/9/2021 file note concerning information SFMAIC provided to attorney Bill Young (GWB) for purposes of GWB's representation of State Farm. | Attorney-Client Privileged |
| 90 | SFMAIC_Workman_0122, 0566 | Portion of 8/6/2021 file note revealing communication attorney Warren Moise, counsel from SFMAIC's insured Lamb Jr., had with Darren Murdoch (SFMAIC) regarding the claims made against his client; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claims and litigation and the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. | Attorney-Client Privileged; Work Product |
| 91 | SFMAIC_Workman_0122 | Portion of 8/5/2021 file note revealing information SFMAIC provided to attorney Bill Young (GWB) for purposes of GWB's representation of State Farm. | Attorney-Client Privileged |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 92 | SFMAIC_Workman_0123, 0553-554 | 8/4/2021 file note concerning, in part, the evaluation of liability claims against insured Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. Also concerns, in part, the DJA, materials to be provided to SFMAIC's attorney in the DJA (GWB), and action to be taken by GWB as SFMAIC's attorney in the DJA, entered for purposes of SFMAIC's DJA (would not have been entered but for litigation), revealing or otherwise constituting work product of SFMAIC and GWB. | Attorney-Client Privileged; Work Product |
| 93 | SFMAIC_Workman_0123, 0566 | Portion of 8/4/2021 (4:23 PM CDT) file note revealing information being gathered to provide to attorney Bill Young for purposes of GWB's representation of State Farm. | Attorney-Client Privileged |
| 94 | SFMAIC_Workman_0124, 0566 | 8/3/2021 (5:11 PM CDT) file note concerning conversation with attorney David Cleveland, previously retained by SFMAIC to represent Lamb III and Lamb Jr., regarding actions taken during attorney Cleveland's representation of Lamb III and Lamb Jr. entered by SFMAIC in relation to defending its insured, Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for third party claims and anticipated litigation against Lamb Jr. and Lamb III. | Work Product |
| 95 | SFMAIC_Workman_0124 | 8/3/2021 (10:43 AM CDT) file note ("Claim Note") concerning handling of arbitration/property damage claims, which would not have been entered but for property damage claims and anticipated arbitration(s). | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 96 | SFMAIC_Workman_0124, 0554 | 8/3/2021 (10:43 AM CDT) file note ("Pending") revealing SFMAIC's investigation, evaluation, and defense of third-party liability claims against its insured Lamb Jr. and the driver of the vehicle insured by SFMAIC, Lamb III, which file note would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
|---|---|---|---|
| 97 | SFMAIC_Workman_0124 | 8/4/2021 file note concerning, in part, the evaluation of liability claims against insured Lamb Jr., and the driver of the vehicle insured by SFMAIC, Lamb III, entered by SFMAIC in relation to defending Lamb Jr. and Lamb III, against third-party claims and litigation--in other words, the file note/portion thereof would not have been entered but for the actual and anticipated litigation against Lamb Jr. and Lamb III. | Work Product |
| 98 | SFMAIC_Workman_0125 | Portion of 8/2/2021 file note revealing Darren Murdoch's (SFMAIC) communication with attorney Bill Young (GWB) regarding GWB's advice/recommendations. | Attorney-Client Privileged |
| 99 | SFMAIC_Workman_0126 | Portions of 7/27/2021 (3:45 PM CDT) file note revealing SFMAIC's investigation, evaluation, and defense of third-party liability claims against its insured Lamb Jr. and the driver of the vehicle insured by SFMAIC, Lamb III, which file notes would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 100 | SFMAIC_Workman_0126 | Portion of 7/27/2021 (1:05 PM CDT) file note revealing information provided to attorney Mitch Griffith for purposes of his representation and defense of Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 101 | SFMAIC_Workman_0126 | Portion of 7/27/2021 (11:05 AM CDT) file note revealing information provided to attorney Warren Moise for purposes of his representation and defense of Lamb Jr, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 102 | SFMAIC_Workman_0127 | Portion of 7/27/2021 (9:03 AM CDT) file note revealing communication attorney Bill Young (GWB) had with Darren Murdoch (SFMAIC) regarding recommendations/opinions being provided to SFMAIC as GWB's client. | Attorney-Client Privileged |
|-----|---------------------|-----|-----|
| 103 | SFMAIC_Workman_0127 | Portion of 7/27/2021 (8:29 AM CDT) file note documenting communication Darren Murdoch (SFMAIC) had with attorney Warren Moise regarding State Farm's retention of Moise to represent and defend Lamb Jr., which file note would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 104 | SFMAIC_Workman_0127 | Portion of 7/27/2021 (8:23 AM CDT) file note revealing information provided to attorney Mitch Griffith for purposes of his representation and defense of Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 105 | SFMAIC_Workman_0127-128 | Portion of 7/27/2021 (8:22 AM CDT) file note revealing information provided to attorney Warren Moise for purposes of his representation and defense of Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 106 | SFMAIC_Workman_0128 | 7/26/2021 (5:36 PM CDT) file note revealing Darren Murdoch's (SFMAIC) communication with attorney Bill Young (GWB) for purposes of obtaining GWB's advice/recommendations. | Attorney-Client Privileged |
| 107 | SFMAIC_Workman_0128 | Portion of 7/26/2021 (8:50 AM CDT) file note revealing information provided to attorney Bill Young (GWB) for purposes of obtaining GWB's advice/recommendations. | Attorney-Client Privileged |
| 108 | SFMAIC_Workman_0129 | Portion of 7/23/2021 (3:01 PM CDT) file note revealing information provided to attorney Bill Young (GWB) for purposes of obtaining GWB's advice/recommendations. | Attorney-Client Privileged |
| 109 | SFMAIC_Workman_0129 | Portion of 7/23/2021 (10:24 AM CDT) file note revealing information gathered for attorney Bill Young (GWB) for purposes of obtaining GWB's advice/recommendations. | Attorney-Client Privileged |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 110 | SFMAIC_Workman_0129 | Portion of 7/23/2021 (9:20 AM CDT) file note revealing substance of planned communications with attorney Warren Moise and attorney Mitch Griffith for purposes of their representation of Lamb Jr. and Lamb III, respectively, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 111 | SFMAIC_Workman_0129 | Portion of 7/22/2021 file note revealing Darren Murdoch's (SFMAIC) communication with attorney Bill Young (GWB) for purposes of obtaining GWB's advice/recommendations. | Attorney-Client Privileged |
| 112 | SFMAIC_Workman_0130 | Portion of 7/22/2021 file note revealing information provided to attorney Bill Young (GWB) for purposes of obtaining GWB's advice/recommendations. | Attorney-Client Privileged |
| 113 | SFMAIC_Workman_0130 | Portion of 7/21/2021 file note revealing investigation and evaluation of liability performed by SFMAIC in connection with third-party liability claims against Lamb III, which note would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 114 | SFMAIC_Workman_0131 | Portion of 7/21/2021 file note revealing steps taken/to be taken by SFMAIC in connection with defending Lamb III against third-party liability claims, which note would not have been entered but for the third-party liability claims. | Work Product |
| 115 | SFMAIC_Workman_0131 | 7/20/2021 (6:50 PM CDT) file note revealing SFMAIC's investigation, evaluation, and defense of third-party liability claims against its insured Lamb Jr. and the driver of the vehicle insured by SFMAIC, Lamb III, which file note would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 116 | SFMAIC_Workman_0131, 0554 | 7/20/2021 (6:36 PM CDT) file note revealing SFMAIC's investigation, evaluation, and defense of third-party liability claims against its insured Lamb Jr. and the driver of the vehicle insured by SFMAIC, Lamb III, which file note would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 117 | SFMAIC_Workman_0132 | 7/20/2021 (4:03 PM CDT) file note revealing SFMAIC's investigation, evaluation, and defense of third-party liability claims against its insured Lamb Jr. and the driver of the vehicle insured by SFMAIC, Lamb III, which file note would not have been entered but for the third-party liability claims and anticipated litigation and reveal fact and opinion work product of SFMAIC. | Work Product |
|---|---|---|---|
| 118 | SFMAIC_Workman_0132 | 7/20/2021 (6:02 AM CDT) file note revealing SFMAIC's investigation and evaluation of third-party liability claims against its insured Lamb Jr. and the driver of the vehicle insured by SFMAIC, Lamb III, which file note would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 119 | SFMAIC_Workman_0132 | Portion of 7/19/2021 file note revealing information provided to attorney David Cleveland for purposes of his representation and defense of Lamb III and Lamb Jr, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 120 | SFMAIC_Workman_0132 | Portion of 7/16/2021 file note revealing SFMAIC's investigation of third-party liability claims against its insured Lamb Jr. and the driver of the vehicle insured by SFMAIC, Lamb III, which file note would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 121 | SFMAIC_Workman_0133 | 7/16/2021 (9:23 AM CDT) file note revealing information Darren Murdoch (SFMAIC) provided to and received from attorney David Cleveland for purposes of his representation and defense of Lamb III and Lamb Jr, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 122 | SFMAIC_Workman_0133 | Portion of 7/16/2021 (7:53 AM CDT) file note revealing communication between Darren Murdoch (SFMAIC) and attorney David Cleveland regarding his representation and defense of Lamb III and Lamb Jr and revealing steps taken by Murdoch in the investigation and evaluation of the third-party claims, none of which would have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 123 | SFMAIC_Workman_0133 | Portion of 7/15/2021 (4:57 PM CDT) file note revealing materials to be sent by SFMAIC to attorney David Cleveland for his representation and defense of Lamb III and Lamb Jr, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 124 | SFMAIC_Workman_0133-134 | Portions of 7/15/2021 (4:55 PM CDT) file note revealing materials to be sent by SFMAIC to attorney David Cleveland for his representation and defense of Lamb III and Lamb Jr, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 125 | SFMAIC_Workman_0134 | Portion of 7/15/2021 (3:08 PM CDT) file note revealing SFMAIC's evaluation of liability/damages with respect to third-party claims against Lamb Jr. and Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 126 | SFMAIC_Workman_0135 | Portions of 7/15/2021 (2:47 PM CDT) file note revealing SFMAIC's evaluation of liability/damages with respect to third-party claims against Lamb Jr. and Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 127 | SFMAIC_Workman_0135, 0557 | 7/14/2021 file note revealing SFMAIC's evaluation of liability with respect to third-party claims against Lamb Jr. and Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |

| 128 | SFMAIC_Workman_0137 | 6/29/2021 (8:20 PM CDT) file note revealing SFMAIC's investigation and evaluation of the third-party claims against Lamb Jr. and Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
|---|---|---|---|
| 129 | SFMAIC_Workman_0137 | 6/29/2021 (3:33 PM CDT) file note ("Contact") revealing SFMAIC's investigation of the third-party claims against Lamb Jr. and Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 130 | SFMAIC_Workman_0138, 0555 | 6/29/2021 (3:33 PM CDT) file notes ("Pending") revealing SFMAIC's investigation of the third-party claims against Lamb Jr. and Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 131 | SFMAIC_Workman_0138 | Portion of 6/29/2021 (1:46 PM CDT) file note revealing evaluation of anticipated litigation against Lamb Jr. and Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 132 | SFMAIC_Workman_0139 | Portion of 6/22/2021 file note revealing SFMAIC's investigation of the third-party claims against Lamb Jr. and Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 133 | SFMAIC_Workman_0139 | Portion of 6/19/2021 file note revealing SFMAIC's investigation of the third-party claims against Lamb Jr. and Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 134 | SFMAIC_Workman_0140, 0555-556 | 6/18/2021 (8:06 PM CDT) file note revealing SFMAIC's investigation of the third-party claims against Lamb Jr. and Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 135 | SFMAIC_Workman_0140 | 6/18/2021 (8:04 PM CDT) file note revealing SFMAIC's investigation of the third-party claims against Lamb Jr. and Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 136 | SFMAIC_Workman_0141, 0557 | 6/18/2021 (11:33 AM CDT) file note revealing SFMAIC's investigation of the third-party claims against Lamb Jr. and Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
|---|---|---|---|
| 137 | SFMAIC_Workman_0142, 0556 | Portion of 6/17/2021 (3:38 PM CDT) file note revealing SFMAIC's investigation of the third-party claims against Lamb Jr. and Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 138 | SFMAIC_Workman_0142 | Portion of 6/17/2021 (10:25 AM CDT) file note revealing SFMAIC's investigation of the third-party claims against Lamb Jr. and Lamb III, which would not have been entered but for the third-party liability claims and anticipated litigation. | Work Product |
| 139 | SFMAIC_Workman_0199-200 | Portions of tasks entered by SFMAIC claim representatives into the Claim File that reveal actions to be taken by GWB, counsel for SFMAIC in the DJA, which tasks would not have been created but for the DJA. | Work Product |
| 140 | SFMAIC_Workman_0203 | Portion of task entered by SFMAIC claim representative into the Claim File revealing material to be provided to GWB, counsel for SFMAIC in the DJA, for purposes of counsel's representation of SFMAIC in the DJA, which task would not have been entered but for litigation. | Work Product |
| 141 | SFMAIC_Workman_0205 | Portion of 3/15/2022 task entered by SFMAIC claim representative into the Claim File revealing material to be provided to GWB, counsel for SFMAIC in the DJA, for purposes of counsel's representation of SFMAIC in the DJA, which task would not have been entered but for litigation. | Work Product |
| 142 | SFMAIC_Workman_0205 | Portion of 3/7/2022 task entered by SFMAIC claim representative into the Claim File that reveal actions to be taken by GWB, counsel for SFMAIC in the DJA, which task would not have been created but for the DJA. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 143 | SFMAIC_Workman_0205 | Portion of 2/25/2022 task reflecting the material selected and provided to Mitch Griffith for purposes of his legal representation of Lamb Jr. as assigned by SFMAIC; entered by SFMAIC in relation to defending its insured, Lamb Jr., against third-party claim | Work Product |
|---|---|---|---|
| 144 | SFMAIC_Workman_0206 | Portion of 2/22/2022 task entered by SFMAIC claim representative into the Claim File revealing material to be provided to GWB, counsel for SFMAIC in the DJA, for purposes of counsel's representation of SFMAIC in the DJA, which task would not have been entered but for litigation. | Work Product |
| 145 | SFMAIC_Workman_0208 | Portion of 2/15/2022 and 2/8/2022 tasks entered by SFMAIC claim representative into the Claim File revealing material to be provided to GWB, counsel for SFMAIC in the DJA, for purposes of counsel's representation of SFMAIC in the DJA, which tasks would not have been entered but for litigation. | Work Product |
| 146 | SFMAIC_Workman_0208 | Portion of 2/11/2022 task entered by SFMAIC claim representative into the Claim File that reveal actions to be taken by GWB, counsel for SFMAIC in the DJA, which task would not have been created but for the DJA. | Work Product |
| 147 | SFMAIC_Workman_0209 | Portions of 2/8/2022 and 2/7/2022 tasks entered by SFMAIC claim representative into the Claim File that reveal actions to be taken by GWB, counsel for SFMAIC in the DJA, which tasks would not have been created but for the DJA. | Work Product |
| 148 | SFMAIC_Workman_0209 | Portion of 1/31/2022 task entered by SFMAIC claim representative into the Claim File revealing material to be provided to GWB, counsel for SFMAIC in the DJA, for purposes of counsel's representation of SFMAIC in the DJA, which task would not have been entered but for litigation. | Work Product |
| 149 | SFMAIC_Workman_0210 | Portions of tasks entered by SFMAIC claim representative into the Claim File that reveal actions to be taken by GWB, counsel for SFMAIC in the DJA, which tasks would not have been created but for the DJA. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 150 | SFMAIC_Workman_0211 | Portion of 1/20/2022 and 1/19/2022 tasks entered by SFMAIC claim representative into the Claim File revealing material to be provided to GWB, counsel for SFMAIC in the DJA, for purposes of counsel's representation of SFMAIC in the DJA, which tasks would not have been entered but for litigation. | Work Product |
|---|---|---|---|
| 151 | SFMAIC_Workman_0211 | Portion of 1/19/2022 task entered by SFMAIC claim representative into the Claim File that reveal actions to be taken by GWB, counsel for SFMAIC in the DJA, which task would not have been created but for the DJA. | Work Product |
| 152 | SFMAIC_Workman_0215 | Portion of 12/16/2021 task entered by SFMAIC claim representative into the Claim File revealing material to be provided to GWB, counsel for SFMAIC in the DJA, for purposes of counsel's representation of SFMAIC in the DJA, which task would not have been entered but for litigation. | Work Product |
| 153 | SFMAIC_Workman_0215 | Portion of 12/16/2021 task entered by SFMAIC claim representative into the Claim File that reveal actions to be taken by GWB, counsel for SFMAIC in the DJA, which task would not have been created but for the DJA. | Work Product |
| 154 | SFMAIC_Workman_0216 | Portion of 12/3/2021 task entered by SFMAIC claim representative into the Claim File revealing material to be provided to GWB, counsel for SFMAIC in the DJA, for purposes of counsel's representation of SFMAIC in the DJA, which task would not have been entered but for litigation. | Work Product |
| 155 | SFMAIC_Workman_0218 | Portion of 11/22/2021 task entered by SFMAIC claim representative into the Claim File revealing material to be provided to GWB, counsel for SFMAIC in the DJA, for purposes of counsel's representation of SFMAIC in the DJA, which task would not have been entered but for litigation. | Work Product |
| 156 | SFMAIC_Workman_0220 | Portions of tasks entered by SFMAIC claim representative into the Claim File that reveal actions to be taken by GWB, counsel for SFMAIC in the DJA, which tasks would not have been created but for the DJA. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 157 | SFMAIC_Workman_0221 | Portion of 11/8/2021 task entered by SFMAIC claim representative into the Claim File revealing material to be provided to GWB, counsel for SFMAIC in the DJA, for purposes of counsel's representation of SFMAIC in the DJA, which task would not have been entered but for litigation. | Work Product |
|---|---|---|---|
| 158 | SFMAIC_Workman_0222 | Portion of 11/5/2021 task entered by SFMAIC claim representative into the Claim File revealing material to be provided to GWB, counsel for SFMAIC in the DJA, for purposes of counsel's representation of SFMAIC in the DJA, which task would not have been entered but for litigation. | Work Product |
| 159 | SFMAIC_Workman_0223 | Portion of 10/30/2021 task entered by SFMAIC claim representative into the Claim File that reveal actions to be taken by GWB, counsel for SFMAIC in the DJA, which tasks would not have been created but for the DJA. | Work Product |
| 160 | SFMAIC_Workman_0223 | Portion of 10/29/2021 and 10/26/2021 tasks entered by SFMAIC claim representative into the Claim File revealing material to be provided to GWB, counsel for SFMAIC in the DJA, for purposes of counsel's representation of SFMAIC in the DJA, which tasks would not have been entered but for litigation. | Work Product |
| 161 | SFMAIC_Workman_0224 | Portion of tasks entered by SFMAIC claim representative into the Claim File revealing material to be provided to GWB, counsel for SFMAIC in the DJA, for purposes of counsel's representation of SFMAIC in the DJA, which tasks would not have been entered but for litigation. | Work Product |
| 162 | SFMAIC_Workman_0225 | Portion of task entered by SFMAIC claim representative into the Claim File revealing material to be provided to GWB, counsel for SFMAIC in the DJA, for purposes of counsel's representation of SFMAIC in the DJA, which task would not have been entered but for litigation. | Work Product |

| 163 | SFMAIC_Workman_0226 | Portion of tasks entered by SFMAIC claim representative into the Claim File revealing material to be provided to GWB, counsel for SFMAIC in the DJA, for purposes of counsel's representation of SFMAIC in the DJA, which tasks would not have been entered but for litigation. | Work Product |
|-----|---------------------|----------------------------------------------|--------------|
| 164 | SFMAIC_Workman_0240 | Portion of task entered by SFMAIC claim representative into the Claim File revealing material to be provided to GWB, counsel for SFMAIC in the DJA, for purposes of counsel's representation of SFMAIC in the DJA, which task would not have been entered but for litigation. | Work Product |
| 165 | SFMAIC_Workman_0255 | Portion of tasks entered by SFMAIC claim representative into the Claim File revealing material to be provided to Mitch Griffith and Warren Moise, counsel retained by SFMAIC to represent Lamb III and Lamb Jr., respectively, which tasks would not have been entered but for third-party claims and anticipated litigation against Lamb Jr. and Lamb III. | Work Product |
| 166 | SFMAIC_Workman_0256 | Portion of task entered by SFMAIC claim representative into the Claim File revealing material to be provided to Bill Young (GWB) for purposes of providing advice as requested by SFMAIC. | Attorney-Client Privileged |
| 167 | SFMAIC_Workman_0259 | Portion of task entered by SFMAIC claim representative into the Claim File revealing material to be provided to David Cleveland, counsel retained by SFMAIC to represent Lamb III and Lamb Jr., which task would not have been entered but for third-party claims and anticipated litigation against Lamb Jr. and Lamb III. | Work Product |
| 168 | SFMAIC_Workman_0270, 271, 273, 283, 284, 286, 355, 366 | Redactions of descriptions of the substance/contents of file materials and communications withheld and otherwise appearing on this privilege log, only to the extent the description reveals substance of material/information received from or sent to attorneys for purposes of defending litigation brought against insured, material/information received from or sent to attorneys for purposes of the DJA, and/or the substance of attorney-client communications. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 169 | SFMAIC_Workman_0275-279, 288-289, 303-304, 316, 367, 384, 404, 411 | Redaction of SFMAIC's evaluation of the range of value (and valuation of factors influencing the range of value) of third-party liability claims made against Lamb Jr. and Lamb III, which value ranges would not have been entered but for the third-party liability claims and litigation (anticipated/actual) against Lamb Jr. and Lamb III. | Work Product |
|---|---|---|---|
| 170 | SFMAIC_Workman_0329 | Redaction of description of substance/contents of communication withheld and otherwise appearing on the privilege log because the description reveals the materials sent to the corporate designee of SFMAIC for purposes of a Rule 30(b)(6) deposition of SFMAIC in the DJA. | Work Product |
| 171 | SFMAIC_Workman_0455-0479 | Redactions of portions of "Auto Injury Evaluation" section of Claim File that reveal SFMAIC's evaluation of injuries, liability, and range of values, as well as reserves set, with respect to claims made against Lamb Jr. and Lamb III, which evaluations/valuations would not have been entered in the Claim File but for the third-party liability claims and litigation (anticipated/actual) against Lamb Jr. and Lamb III. | Work Product |
| 172 | SFMAIC_Workman_0483-0493 | Redactions of portions of "Auto Request Review" section of claim file, specifically the portions of entries made by SFMAIC claim representatives with respect to the "Analysis of Issues/Extent of Damages," which reveal State Farm's investigation and evaluation of third-party liability claims and anticipated and actual litigation against Lamb Jr., its insured, and Lamb III, the driver of the vehicle owned by Lamb Jr. and insured by SFMAIC; information received from attorneys Mitch Griffith and Warren Moise, retained by SFMAIC to represent and defend Lamb III and Lamb Jr., respectively, against third-party liability claims and anticipated and actual litigation; and advice of GWB to SFMAIC with respect to handling of the third-party liability claims. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 173 | SFMAIC_Workman_0493-514 | Redactions of portions of "Auto Request Review" section of claim file, specifically the portions of "Team Manager Comments" which reveal State Farm's communications with attorney Warren Moise in regards to his defense of the claims/litigation against SFMAIC's insured, Moise's client, Lamb Jr.; SFMAIC's evaluation of Lamb Jr.'s liability; the substance of State Farm's communications with GWB, advice of GWB to SFMAIC, information provided to GWB for its representation of SFMAIC, steps taken by GWB in the DJA. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 174 | SFMAIC_Workman_0515-0516 | Redactions of portions of "Auto Request Review" section of claim file, specifically the portions of "Section Manager Comments" which reveal the substance of State Farm's communications with GWB, advice of GWB to SFMAIC, information provided to GWB for its representation of SFMAIC, steps taken by GWB in the DJA. including advice of counsel and information provided to GWB for its representation of SFMAIC. | Attorney-Client Privileged; Work Product |
| 175 | SFMAIC_Workman_0516-522 | Redactions of portions of "Auto Request Review" section of claim file, specifically the portions of "Claim Consultant Comments" which reveal State Farm's communications with attorney Warren Moise in regards to his defense of the claims/litigation against SFMAIC's insured, Moise's client, Lamb Jr.; SFMAIC's evaluation of Lamb Jr.'s liability; the substance of State Farm's communications with GWB and advice of GWB to SFMAIC. | Attorney-Client Privileged; Work Product |
| 176 | SFMAIC_Workman_0525 | Redaction of the posture summary and case analysis entered by SFMAIC into the "Litigation Details" section of Claim File, which would not have been entered but for the actual litigation against its insured Lamb Jr. | Work Product |
| 177 | SFMAIC_Workman_0530 | SFMAIC's liability determinations, which would not have been entered but for the third-party claims and actual and anticipated litigation against its insured Lamb Jr. and the driver of the vehicle insured by SFMAIC, Lamb III. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 178 | SFMAIC_Workman_0619-627 | SFMAIC's "Auto Injury Evaluation History" which details the claimed injuries of third-party claimants and SFMAIC's evaluation of the same and other factors impacting liability of its insured Lamb Jr. or the driver of the vehicle insured by SFMAIC, Lamb III, none of which would have been entered but for the third-party claims and anticipated and actual litigation against Lamb Jr. and Lamb III. | Work Product |
| --- | --- | --- | --- |
| 179 | SFMAIC_Workman_0623, 0624, 0625 | Redaction portion of evaluation details entered by Traci Johnson (SFMAIC) that reflect impression and opinion of defense counsel. | Attorney-Client Privileged; Work Product |
| 180 | SFMAIC_Workman_0628-0743 | Redactions of descriptions of the substance/contents of file materials and communications withheld and otherwise appearing on this privilege log, only to the extent the description reveals substance of material received from or sent to attorneys for purposes of defending litigation brought against insured, material received from or sent to attorneys for purposes of the DJA, and/or the substance of attorney-client communications. | Attorney-Client Privileged; Work Product |
| 181 | SFMAIC_Workman_0746 | May 5, 2022 letter from Traci Johnson (SFMAIC) to attorney Robbie Whelan providing materials for attorney review for purposes of legal representation in anticipation of litigation. | Attorney-Client Privileged; Work Product |
| 182 | SFMAIC_Workman_0748-0752 | February 22, 2022 letter from Lee Shivers (SFMAIC) to attorney Mitch Griffith for purposes of attorney Griffith representing Lamb III in defense of lawsuit brought against him by Estate. | Work Product |
| 183 | SFMAIC_Workman_0801-0807 | March 30, 2022 email from Patricia Gibbons (Grimball & Cabaniss) to Lee Shivers (SFMAIC) providing information and attached material, at the direction of attorney Warren Moise, for evaluation in preparation for mediation. | Attorney-Client Privileged; Work Product |
| 184 | SFMAIC_Workman_0824 | December 21, 2021 email from Paula Forbes (GWB) to Lee Shivers (SFMAIC) regarding budget for the DJA. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 185 | SFMAIC_Workman_0833-0834 | November 29, 2021 emails exchanged between Jennifer Johnsen (GWB) and Lee Shivers and Darren Murdoch (SFMAIC) regarding demand received from Estate. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 186 | SFMAIC_Workman_0836-0842 | Draft discovery responses prepared by GWB for SFMAIC in the DJA. | Work Product |
| 187 | SFMAIC_Workman_0845 | October 29, 2021 email from Jennifer Johnsen to Lee Shivers regarding the Estate's Answer in the DJA. | Attorney-Client Privileged; Work Product |
| 188 | SFMAIC_Workman_0878-0881 | August 30, 2021 email from Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding subpoena served by Estate in its action against SFMAIC's insured and status of the DJA. | Attorney-Client Privileged; Work Product |
| 189 | SFMAIC_Workman_0888-0891 | September 8, 2021 email from Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding response to Estate's time limited demand. | Attorney-Client Privileged; Work Product |
| 190 | SFMAIC_Workman_0900 | August 10, 2021 emails exchanged between Bill Young (GWB) and Darren Murdoch (SFMAIC) regarding draft pleading in the DJA. | Attorney-Client Privileged; Work Product |
| 191 | SFMAIC_Workman_0906 | August 4, 2021 email from Pat Klitzing (GWB) to SFMAIC regarding SFMAIC's engagement of GWB for legal representation. | Attorney-Client Privileged |
| 192 | SFMAIC_Workman_0908 | August 3, 2021 email from Cynthia Smart (GWB) to Lee Shivers and Darren Murdoch (GWB) regarding SFMAIC's engagement of GWB for legal representation. | Attorney-Client Privileged |
| 193 | SFMAIC_Workman_0909-0910 | August 2, 2021 emails exchanged between Darren Murdoch (SFMAIC) and Bill Young (GWB) with request for attorney's legal advice/recommendation and attorney's response to the same. | Attorney-Client Privileged |
| 194 | SFMAIC_Workman_0911-0912 | Email from Cynthia Smart (GWB) and letter from Julia Bradshaw (GWB) to Lee Shivers regarding SFMAIC's engagement of GWB for legal representation. | Attorney-Client Privileged |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 195 | SFMAIC_Workman_0913-0914 | July 27, 2021 email from attorney Warren Moise, retained by SFMAIC to defend Mr. Lamb Jr as a result of claims arising from underlying accident, to Mr. Lamb Jr, through his wife, regarding defense of the claims and steps attorney Moise was taking with respect to the same, in anticipation of litigation brought by third parties against Lamb Jr. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 196 | SFMAIC_Workman_0933 | Redaction of email from attorney David Cleveland, counsel retained to assist in a global settlement of the multiple liability claims of third parties, to Lee Shivers (SFMAIC) with comments regarding Tyger River demand and request for information in connection with the requested representation. | Work Product |
| 197 | SFMAIC_Workman_0951 | July 15, 2021 email from Darren Murdoch (SFMAIC) to attorney David Cleveland with request for representation. | Work Product |
| 198 | SFMAIC_Workman_0979-983 | Third-party injury evaluating report generated by SFMAIC on April 27, 2022 for purposes of evaluating and defending claims against Lamb Jr., its insured, and Lamb III, the driver of the vehicle insured by SFMAIC. | Work Product |
| 199 | SFMAIC_Workman_1028 | March 19, 2022 email from Lee Shivers (SFMAIC) to Warren Moise, attorney retained by SFMAIC to represent and defend SFMAIC's insured, Lamb Jr., against third-party claims and litigation, concerning a settlement demand received. | Work Product |
| 200 | SFMAIC_ Workman_1031 | February 18, 2022 email from Lee Shivers (SFMAIC) to Warren Moise, attorney retained by SFMAIC to represent and defend SFMAIC's insured, Lamb Jr., against third-party claims and litigation, providing information to attorney Moise for use in his representation of Lamb III. | Work Product |
| 201 | SFMAIC_Workman_1100-1114 | December 3, 2021 email of Tyran Turner (SFMAIC) to Warren Moise, counsel retained by SFMAIC to represent and defend SFMAIC's insured, Lamb Jr., against third-party claims and litigation, attaching for purposes of Moise's representation the demand of the Estate of Workman with Jennifer Johnsen's email to State Farm concerning the demand. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 202 | SFMAIC_Workman_1123-1126 | Redaction of emails between Shay Anderson of SFMAIC and SFMAIC's retained counsel, Jennifer Johnsen with questions posed by Attorney Johnson and answers given by Ms. Anderson concerning the Tahoe Policy, all for purposes of the DJA litigation. | Attorney-Client Privileged; Work Product |
|-----|--------------------------|---|---|
| 203 | SFMAIC_Workman_1137 | November 17, 2021 email from Jennifer Johnson to Darren Murdoch and Lee Shivers of SFMAIC regarding legal research to be performed in relation to the DJA and Darren Murdoch's November 18, 2021 response to the same. | Attorney-Client Privileged; Work Product |
| 204 | SFMAIC_Workman_1138-1239 | November 22, 2021 email from Lee Shivers (SFMAIC) to Shay Anderson (SFMAIC) concerning and attaching material gathered for purposes of the Rule 30(b)(6) deposition of SFMAIC in the DJA, in which Ms. Anderson was SFMAIC's corporate designee. While materials attached to the email have been withheld, the materials are produced elsewhere in the Claim File. | Work Product |
| 205 | SFMAIC_Workman_1167 | November 9, 2021 Lee Shivers' email to attorney Jennifer Johnsen (GWB), SFMAIC's counsel in the DJA, providing information as requested by attorney Johnsen and with inquiry posed to counsel as well as statements regarding actions to be taken for purposes of the DJA litigation. | Attorney-Client Privileged; Work Product |
| 206 | SFMAIC_Workman_1240-1247 | November 8, 2021 email of Lee Shivers (SFMAIC) to attorney Jennifer Johnsen (GWB), SFMAIC's counsel in the DJA, providing information and attaching material for Johnsen's use in the DJA litigation and regarding actions taken for purposes of the DJA litigation. The information and material in/attached to the email are produced elsewhere in the Claim File. | Attorney-Client Privileged; Work Product |
| 207 | SFMAIC_Workman_1368-1369 | Redaction of attorney Jennifer Johnsen's emails to Lee Shivers that were prepared because of the DJA litigation and reflect attorney Johnsen's recommendations and the substance of attorney Johnson's other communications with SFMAIC regarding the DJA, in which action GWB was SFMAIC's legal counsel. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP100 1832

| 208 | SFMAIC_Workman_1484 | Redaction of the email exchanges between Lee Shivers and Eileen Northcutt, both of SFMAIC, regarding the DJA and information received from counsel related to the DJA. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 209 | SFMAIC_Workman_1485 | Redaction of attorney Jennifer Johnsen's email to Lee Shivers that was prepared because of the DJA litigation and reflects the substance of attorney Johnson's other communications with SFMAIC regarding the DJA. | Attorney-Client Privileged; Work Product |
| 210 | SFMAIC_Workman_1488 | Redaction of the email from Lee Shivers to Eileen Northcutt, both of SFMAIC, regarding the DJA and information received from counsel related to the DJA. | Attorney-Client Privileged; Work Product |
| 211 | SFMAIC_Workman_1488 | Redaction of attorney Jennifer Johnsen's email to Lee Shivers that was prepared because of the DJA litigation and reflects the substance of attorney Johnson's other communications with SFMAIC regarding the DJA, as well as redaction of attachments, which reveals Attorney Johnsen's selection of materials to review with SFMAIC for purposes of the DJA. | Attorney-Client Privileged; Work Product |
| 212 | SFMAIC_Workman_1500 | Redaction of Jennifer Johnsen's email to Darren Murdoch (SFMAIC) regarding response to deposition notice and subpoena in Estate's tort case against State Farm's insured. | Attorney-Client Privileged |
| 213 | SFMAIC_Workman_1504-1507 | Emails exchanged between Steven Sikora (SFMAIC), Darren Murdoch (SFMAIC), and Law Enforcement Investigations Unit and Information Management & Discovery Counseling sections of State Farm's Corporate Law department concerning the handling of a subpoena served on SFMAIC by the Estate of Workman. | Attorney-Client Privileged; Work Product |
| 214 | SFMAIC_Workman_1518 | October 1, 2021 email from Lee Shivers (SFMAIC) to Warren Moise, attorney retained by SFMAIC to represent SFMAIC's insured, Lamb Jr., against third-party claims and litigation, concerning the subpoena served on SFMAIC in the lawsuit the Estate brought against Lamb Jr. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 215 | SFMAIC_Workman_1529-1530 | September 15, 2021 emails exchanged between attorney Bill Young (GWB) and Lee Shivers (SFMAIC) regarding demand of a third-party claimant received by SFMAIC. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 216 | SFMAIC_Workman_1534 | September 10, 2021 email from Darren Murdoch (SFMAIC) to Bill Young (GWB) regarding attorney's response to demand of Workman Estate and to request for policy information. | Attorney-Client Privileged; Work Product |
| 217 | SFMAIC_Workman_1550 | Redaction of Darren Murdoch (SFMAIC) email to Bill Young (GWB) regarding handling of demand of Workman Estate. | Attorney-Client Privileged; Work Product |
| 218 | SFMAIC_Workman_1552-1672 | September 10, 2021 email from Lee Shivers (SFMAIC) to Bill Young (GWB) attaching materials as requested by counsel for his use in representing SFMAIC. The materials attached to the email, while withheld along with the email, are produced elsewhere in the Claim File. | Attorney-Client Privileged; Work Product |
| 219 | SFMAIC_Workman_1673 | September 10, 2021 email from Darren Murdoch (SFMAIC) to Bill Young (GWB) regarding attorney's response to demand of Workman Estate and to request for policy information. | Attorney-Client Privileged; Work Product |
| 220 | SFMAIC_Workman_1674-1984 | Three (3) September 8, 2021 emails from Lee Shivers (SFMAIC) to Bill Young (GWB) attaching materials as requested by counsel for his use in representing SFMAIC. The materials attached to the emails, while withheld along with the emails, are produced elsewhere in the Claim File. | Attorney-Client Privileged; Work Product |
| 221 | SFMAIC_Workman_1985-2013 | September 8, 2021 email from Lee Shivers (SFMAIC) to Warren Moise, attorney retained by SFMAIC to represent and defend Lamb Jr. against third-party claims and litigation, attaching materials for attorney Moise's use as Lamb Jr.'s attorney in the legal action brought by the Estate against Lamb JR. The materials attached to the email, while withheld along with the email, are produced elsewhere in the Claim File. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 222 | SFMAIC_Workman_2100 | August 31, 2021 email from Lee Shivers (SFMAIC) to attorney Warren Moise regarding attorney's request to undertake research in relation to his defense of State Farm's insured. | Work Product |
|---|---|---|---|
| 223 | SFMAIC_Workman_2101 | August 19, 2021 emails exchanged between Darren Murdoch (SFMAIC) and Bill Young (GWB) regarding steps to be taken in pursuing the DJA. | Attorney-Client Privileged; Work Product |
| 224 | SFMAIC_Workman_2164 | August 19, 2021 emails exchanged between Darren Murdoch (SFMAIC) and Bill Young (GWB) regarding steps to be taken in pursuing the DJA. | Attorney-Client Privileged; Work Product |
| 225 | SFMAIC_Workman_2292 | July 20, 2021 email from Lee Shivers (SFMAIC) to attorney David Cleveland, counsel retained to assist in resolving the multiple liability claims of third parties, providing information for attorney's use in connection with the requested representation. | Work Product |
| 226 | SFMAIC_Workman_2294 | July 20, 2021 emails exchanged between Lee Shivers (SFMAIC) to attorney David Cleveland, counsel retained to assist in resolving the multiple liability claims of third parties, with attorney providing recommendations and claim specialist providing information for the attorney's use, both in connection with the requested representation. | Work Product |
| 227 | SFMAIC_Workman_2298 | Redaction of email from attorney David Cleveland, counsel retained to assist in resolving the multiple liability claims of third parties, to Lee Shivers (SFMAIC) with comments regarding Tyger River demand and request for information in connection with the requested representation. | Work Product |
| 228 | SFMAIC_Workman_2301 | *This privilege log entry and the ACP designation have been withdrawn; the email is produced without redaction at WORKMAN00005235PROD.* | |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 229 | SFMAIC_Workman_2303 | July 16, 2021 emails exchanged between Darren Murdoch and Lee Shivers (both SFMAIC) and attorney David Cleveland, counsel retained to assist in resolving the multiple liability claims of third parties, concerning SFMAIC's request for representation. | Work Product |
|-----|---------------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|--------------|
| 230 | SFMAIC_Workman_2305 | Liability evaluation report generated by Lee Shivers (SFMAIC) for purposes of evaluating and defending against third-party liability claims made against SFMAIC's insured Lamb Jr. and the driver of the vehicle insured by SFMAIC, Lamb III. | Work Product |
| 231 | SFMAIC_Workman_2317-2326 | File material reflecting Lee Shivers' investigation of the third-party claims against SFMAIC's insured Lamb Jr. and the driver of the vehicle insured by SFMAIC, Lamb III. | Work Product |
| 232 | SFMAIC_Workman_2327 | April 15, 2022 email from Warren Moise to Diane Kokowski and Traci Johnson (SFMAIC) providing information related to the actions brought by the Estate. | Work Product |
| 233 | SFMAIC_Workman_2328 | March 3, 2022 email from Warren Moise, defense counsel retained by SFMAIC to represent and defend Lamb Jr., SFMAIC's insured, to SFMAIC regarding his investigation and work related to the claims made by the Estate of Workman against Lamb Jr. | Work Product |
| 234 | SFMAIC_Workman_2329 | February 18, 2022 email from Warren Moise, defense counsel retained by SFMAIC to represent and defend Lamb Jr., SFMAIC's insured, to SFMAIC with question related to the claims made by the Estate of Workman against Lamb Jr. | Work Product |
| 235 | SFMAIC_Workman_2330 | August 30, 2021 email from Warren Moise, defense counsel retained by SFMAIC to represent and defend Lamb Jr., SFMAIC's insured, to SFMAIC regarding his work and opinions related to the claims made by the Estate of Workman against Lamb Jr. | Work Product |
| 236 | SFMAIC_Workman_2331 | August 10, 2021 email from Warren Moise, defense counsel retained by SFMAIC to represent and defend Lamb Jr., SFMAIC's insured, to SFMAIC regarding his investigation and work related to the claims made by the Estate of Workman against Lamb Jr. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 237 | SFMAIC_Workman_2336-2357 | Gallivan White & Boyd's invoice numbers 260990, 262738, 264293 to SFMAIC for its representation of SFMAIC in connection with the DJA with time entries setting forth not just the subject matter of the representation but instead revealing specific work performed for purposes of litigation and confidential matters discussed with her client SFMAIC. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 238 | SFMAIC_Workman_2427 | February 22, 2022 email from attorney Mitch Griffith, retained by SFMAIC to represent Lamb III, the driver of the vehicle insured by State Farm, to Lee Shivers (SFMAIC) regarding the lawsuit filed by the Estate Lamb III. | Work Product |
| 239 | SFMAIC_Workman_2436-2439 | December 20, 2021 email from attorney Jennifer Johnson to her client SFMAIC (email recipients are Lee Shivers and Tyran Turner of SFMAIC) summarizing her thoughts and opinions on the Rule 30(b)(6) deposition of SFMAIC, through Shay Anderson, in the DJA and discovery requests propounded by the Estate of Workman in the DJA. | Attorney-Client Privileged; Work Product |
| 240 | SFMAIC_Workman_2477-2480 | August 16, 2021 email from attorney Warren Moise to SFMAIC attaching draft joint defense agreement between Lamb Jr. and Lamb III for purposes of attorney Moise's representation and defense of Lamb Jr., SFMAIC's insured, against third-party liability claims and litigation. | Work Product |
| 241 | SFMAIC_Workman_2489-2490 | August 10, 2021 email from Warren Moise, defense counsel retained by SFMAIC to represent and defend Lamb Jr., SFMAIC's insured, to SFMAIC regarding his investigation and work related to the claims made by the Estate of Workman against Lamb II and attorney-client privileged advice he gave Lamb Jr. | Attorney-Client Privileged; Work Product |
| 242 | SFMAIC_Workman_2492-2497, 3071-3076 | July 27, 2021 Email from Chyrra Green (of Warren Moise's office) to Lee Shivers, sent at the direction of Warren Moise, attaching material selected by Warren Moise, therefore revealing information and documents obtained by SFMAIC from the attorney retained. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 243 | SFMAIC_Workman_2513-2515 | Material both prepared by attorney Warren Moise, counsel retained by SFMAIC to represent and defend its insured, Lamb Jr., against third-party claims and anticipated litigation, and shared with SFMAIC in connection with Attorney Moise's defense of Lamb Jr. | Work Product |
|---|---|---|---|
| 244 | SFMAIC_Workman_2519-2585 | Material sent to SFMAIC by Warren Moise for purposes of the investigation, evaluation, and defense of the claims against Moise's client, State Farm's insured, Lamb Jr. | Work Product |
| 245 | SFMAIC_Workman_2586 | February 22, 2022 letter from Lee Shivers (SFMAIC) to attorney Warren Moise in connection with and for purposes of attorney Moise's representation of Lamb Jr. and defense of claims against Lamb Jr. | Work Product |
| 246 | SFMAIC_Workman_2592 | Document prepared by Lee Shivers (SFMAIC) for attorney Warren Moise, sent to Moise on February 22, 2022, setting forth Shivers' investigative findings for purposes of Warren Moise's defense of Lamb Jr., State Farm's insured. | Work Product |
| 247 | SFMAIC_Workman_2656-2665 | Material obtained by Lee Shivers (SFMAIC) in the investigation of third-party liability claims against insured Lamb Jr. and the driver of the insured vehicle, Lamb III, which Shivers added to Claim File | Work Product |
| 248 | SFMAIC_Workman_2667 | August 24, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding actions to be taken in the DJA. | Attorney-Client Privileged; Work Product |
| 249 | SFMAIC_Workman_2679-2681 | August 11, 2021 letter from attorney Mitch Griffith, counsel retained by SFMAIC to represent Lamb III in defense of third-party claims made against him, to attorney Robert Wyndham, Lamb III's personal attorney, regarding a settlement demand received from the Estate of Workman and message to be passed along from Griffith to the client. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 250 | SFMAIC_Workman_2685-2688 | August 3, 2021 letter from attorney Warren Moise, counsel retained by SFMAIC to represent and defend its insured, Lamb Jr., against third-party claims and anticipated litigation, to Darren Murdoch and Lee Shivers of SFMAIC summarizing his confidential, attorney-client meeting with Lamb Jr. and his thoughts and comments in relation to the negligent entrustment claim being made against his client. | Attorney-Client Privileged; Work Product |
| --- | --- | --- | --- |
| 251 | SFMAIC_Workman_2700-2726, 3083-3109, 3110-3133, 3134-3142 | Material obtained by Lee Shivers (SFMAIC) and added to the Claim File on July 20, 2021 and July 21, 2021 as part of Shivers' investigation of third-party liability claims against insured Lamb Jr. and the driver of the insured vehicle, Lamb III, which Shivers added to Claim File | Work Product |
| 252 | SFMAIC_Workman_2738 | November 29, 2021 email of attorney Jennifer Johnsen to SFMAIC regarding the Estate of Workman's Tyger River demand and her recommended handling of the same. | Attorney-Client Privileged |
| 253 | SFMAIC_Workman_2763-2764 | September 7, 2021 email from attorney Warren Moise to Darren Murdoch (SFMAIC) containing counsel's summary of medical records and his thoughts and impressions regarding letter from the Estate. | Work Product |
| 254 | SFMAIC_Workman_3058-3065 | February 15, 2022 Email from Patricia Gibbons (of Warren Moise's office) to Lee Shivers, sent at the direction of Warren Moise, attaching material selected by Warren Moise, therefore revealing information and documents obtained by SFMAIC from the attorney retained by SFMAIC to defend its insured, Lamb Jr. | Work Product |
| 255 | SFMAIC_Workman_3066-3065 | Material obtained by Lee Shivers (SFMAIC) in the investigation of third-party liability claims against insured Lamb Jr. and the driver of the insured vehicle, Lamb III, which Shivers added to Claim File | Work Product |
| 256 | SFMAIC_Workman_3077-3082 | July 23, 2021 email from Lee Shivers (SFMAIC) to attorney Bill Young (GWB) for purposes of GWB's representation of SFMAIC, attaching material obtained by SFMAIC in its investigation of liability of Lamb Jr. and Lamb III for third-party claims made against them. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 257 | SFMAIC_Workman_3601-3628 | August 5, 2021 email from Lee Shivers (SFMAIC) to attorney Bill Young (GWB) attaching materials requested by GWB for purposes of GWB's representation of SFMAIC. The materials attached to and withheld with email are produced elsewhere in the Claim File. | Attorney-Client Privileged |
|---|---|---|---|
| 258 | SFMAIC_Workman_3678 | Note 2, dated 10/28/21, entered by Jamie Wenzl (VAA3MQ) of State Farm's underwriting department, documenting SFMAIC's investigation of issues raised in DJA at the request of counsel, Jennifer Johnsen (GWB), which note would not have been entered but for litigation. | Attorney-Client Privileged; Work Product |
| 259 | SFMAIC_Workman_3678 | Note 3, dated 8/31/2021, entered by Melodie Cruz (FFE8) of State Farm's underwriting department, revealing gathering of information from State Farm's underwriting department in response to subpoena served on it in the action the Estate brought against Lamb Jr., SFMAIC's insured, which note would not have been entered but for litigation. | Work Product |
| 260 | SFMAIC_Workman_3678 | Note 4, dated 8/24/2021, entered by Jamie Russell (TJK3) of State Farm's underwriting department, documenting information that needs to be gathered in response to a subpoena served on SFMAIC and issued from the litigation the Estate brought against Lamb Jr., SFMAIC's insured, which note would not have been entered but for litigation. | Work Product |
| 261 | SFMAIC_Workman_3685 | Notes 4, 5, and 6, dated 9/8/21, entered by Pam Pride (BFLN) of State Farm's underwriting department, documenting information/materials gathered by underwriting department at request of counsel and provided by Lee Shivers (SFMAIC) to Bill Young (GWB) as counsel for State Farm and for purposes of its representation of State Farm. | Attorney-Client Privileged; Work Product |
| 262 | SFMAIC_Workman_3686 | Notes 15 and 16, both dated 9/3/2021, entered by Pam Pride (BFLN) and Sheryl Schlaug (ATSG), respectively, documenting information/materials gathered by underwriting department at request of counsel and provided by Lee Shivers (SFMAIC) to Bill Young (GWB) as counsel for State Farm and for purposes of its representation of State Farm. | Attorney-Client Privileged; Work Product |

| 263 | SFMAIC_Workman_3687 | Notes 10, 11, and 12, dated 9/8/21, entered by Pam Pride (BFLN) of State Farm's underwriting department, documenting information/materials gathered by underwriting department at request of counsel and provided by Lee Shivers (SFMAIC) to Bill Young (GWB) as counsel for State Farm and for purposes of its representation of State Farm. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 264 | SFMAIC_Workman_3688 | Note 10, dated 8/5/2021, entered by Pam Pride (BFLN) of State Farm's underwriting department, documenting information/materials gathered by underwriting department at request of counsel and provided by Lee Shivers (SFMAIC) to Bill Young (GWB) as counsel for State Farm and for purposes of its representation of State Farm. | Attorney-Client Privileged; Work Product |
| 265 | SFMAIC_Workman_3688 | Note 11, dated 9/3/2021, entered by Sheryl Schlaug (ATSG) of State Farm's underwriting department, documenting information/materials gathered by underwriting department at request of counsel and provided by Lee Shivers (SFMAIC) to Bill Young (GWB) as counsel for State Farm and for purposes of its representation of State Farm. | Attorney-Client Privileged; Work Product |
| 266 | SFMAIC_Workman_3688 | Notes 12, 13, and 14, dated 9/8/21, entered by Pam Pride (BFLN) of State Farm's underwriting department, documenting information/materials gathered by underwriting department at request of counsel and provided by Lee Shivers (SFMAIC) to Bill Young (GWB) as counsel for State Farm and for purposes of its representation of State Farm. | Attorney-Client Privileged; Work Product |
| 267 | SFMAIC_Workman_3689 | Note 1, dated 9/8/21, entered by Pam Pride (BFLN) of State Farm's underwriting department, documenting information/materials gathered by underwriting department at request of counsel and provided by Lee Shivers (SFMAIC) to Bill Young (GWB) as counsel for State Farm and for purposes of its representation of State Farm. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 268 | SFMAIC_Workman_3689 | Note 1, dated 11/12/21, entered by Pam Pride (BFLN) of State Farm's underwriting department, documenting information/materials gathered by underwriting department at request of counsel and provided by Lee Shivers (SFMAIC) to Jennifer Johnsen (GWB) as counsel for State Farm and for purposes of its representation of State Farm. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 269 | SFMAIC_Workman_3689 | Note 4, dated 1/12/22, documenting materials gathered and sent to State Farm Corporate Law Department at request of counsel (GWB) for purposes of responding to discovery requests served in the DJA. | Attorney-Client Privileged; Work Product |
| 270 | SFMAIC_Workman_3689 | Notes 9 and 10, both dated 9/8/21, entered by Pam Pride (BFLN) of State Farm's underwriting department, documenting information/materials gathered by underwriting department at request of counsel and provided by Lee Shivers (SFMAIC) to Bill Young (GWB) as counsel for State Farm and for purposes of its representation of State Farm. | Attorney-Client Privileged; Work Product |
| 271 | SFMAIC_Workman_3690 | Note 1, dated 9/8/21, entered by Pam Pride (BFLN) of State Farm's underwriting department, documenting information/materials gathered by underwriting department at request of counsel and provided by Lee Shivers (SFMAIC) to Bill Young (GWB) as counsel for State Farm and for purposes of its representation of State Farm. | Attorney-Client Privileged; Work Product |
| 272 | WORKMAN00004155PRIV-WORKMAN00004204PRIV | July 15, 2021 email from Darren Murdoch (SFMAIC) to Attorney David Cleveland, copying Lee Shivers (SFMAIC), requesting Attorney Cleveland's services as counsel in reaching a global settlement of the claims against Lamb Jr., State Farm's insured, and Lamb III, driver of the vehicle owned by Lamb Jr. and insured by State Farm, with attachments consisting of materials provided to Attorney Cleveland for purposes of the requested representation. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 273 | WORKMAN00004205PRIV-WORKMAN00004206PRIV | July 16, 2021 emails exchanged between Darren Murdoch and Lee Shivers (both SFMAIC) and attorney David Cleveland, counsel retained to assist in resolving the multiple liability claims of third parties, concerning SFMAIC's request for representation. | Work Product |
|---|---|---|---|
| 274 | WORKMAN00004207PRIV-WORKMAN00004256PRIV | July 15, 2021 email from Darren Murdoch (SFMAIC) to Attorney David Cleveland, copying Lee Shivers (SFMAIC), requesting Attorney Cleveland's services as counsel in reaching a global settlement of the claims against Lamb Jr., State Farm's insured, and Lamb III, driver of the vehicle owned by Lamb Jr. and insured by State Farm, with attachments consisting of materials provided to Attorney Cleveland for purposes of the requested representation. | Work Product |
| 275 | WORKMAN00004259PRIV-WORKMAN00004260PRIV | July 16, 2021 email from Darren Murdoch sending to the claim file a July 16, 2021 email from attorney David Cleveland concerning the time limit demand of the Workman Estate. | Work Product |
| 276 | WORKMAN00004261PRIV-WORKMAN00004268PRIV | July 20, 2021 email with attachment from attorney David Cleveland to Lee Shivers and Darren Murdoch copying Wendy Brewer and Sasha Smith concerning time limit demand of Workman Estate; the material constituting the attachment to the email has been produced elsewhere in discovery. | Work Product |
| 277 | WORKMAN00004296PRIV-WORKMAN00004298PRIV | July 20, 2021 emails exchanged between Lee Shivers (SFMAIC) to attorney David Cleveland, counsel retained to assist in resolving the multiple liability claims of third parties, with attorney providing recommendations and claim specialist providing information for the attorney's use, both in connection with the requested representation. | Work Product |
| 278 | WORKMAN00004299PRIV-WORKMAN00004300PRIV | July 20, 2021 email from Lee Shivers (SFMAIC) to attorney David Cleveland, counsel retained to assist in resolving the multiple liability claims of third parties, providing information and attaching material for attorney's use in connection with the requested representation; material constituting the withheld attachment has been produced elsewhere in discovery. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 279 | WORKMAN00004301PRIV-WORKMAN00004302PRIV | July 20, 2021 email from Darren Murdoch (SFMAIC) to Attorney David Cleveland, counsel retained to assist in resolving the multiple liability claims of third parties, posing questions to attorney regarding Tyger River demand received. | Work Product |
|---|---|---|---|
| 280 | WORKMAN00004303PRIV-WORKMAN00004305PRIV | July 21, 2022 email from Attorney David Cleveland, counsel retained to assist in resolving the multiple liability claims of third parties, to Darren Murdoch (SFMAIC) regarding Tyger River demand and Murdoch's questions on the same. | Work Product |
| 281 | WORKMAN00004306PRIV-WORKMAN00004313PRIV | July 21, 2021 email from Lee Shivers to the claim file sending the July 20, 2021 email with attachment from attorney David Cleveland to Lee Shivers and Darren Murdoch copying Wendy Brewer and Sasha Smith concerning time limit demand of Workman Estate; material constituting the withheld attachment has been separately produced in discovery. | Work Product |
| 282 | WORKMAN00001277PRIV-WORKMAN00001278PRIV | July 22, 2021 email from Darren Murdoch to GWB law firm for purposes of seeking representation by GWB. | Attorney-Client Privileged |
| 283 | WORKMAN00001279PRIV-WORKMAN00001281PRIV | July 22, 2021 emails exchanged between Darren Murdoch and Tania McGee (GWB) regarding SFMAIC's representation by GWB. | Attorney-Client Privileged |
| 284 | WORKMAN00001282PRIV-WORKMAN00001298PRIV | July 22, 2021 email with attachments from Darren Murdoch (SFMAIC) to Tania McGee (GWB) providing materials requested by GWB for use in connection with State Farm's request for legal representation by GWB. | Attorney-Client Privileged |
| 285 | WORKMAN00004347PRIV-WORKMAN00004347PRIV | July 22, 2021 email from Darren Murdoch (SFMAIC) to Attorney David Cleveland regarding Attorney Cleveland's representation/continued representation of Lamb Jr./Lamb III. | Work Product |
| 286 | WORKMAN00001299PRIV-WORKMAN00001301PRIV | July 22, 2021 emails exchanged between Darren Murdoch and Tania McGee (GWB), copying attorney Bill Young (GWB), regarding SFMAIC's representation by GWB. | Attorney-Client Privileged |
| 287 | WORKMAN00001302PRIV-WORKMAN00001305PRIV | July 22, 2021 emails exchanged between Darren Murdoch and Tania McGee (GWB), copying attorney Bill Young (GWB), regarding SFMAIC's representation by GWB. | Attorney-Client Privileged |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 288 | WORKMAN00001306PRIV-WORKMAN00001309PRIV | July 22, 2021 emails exchanged between Darren Murdoch and Tania McGee (GWB), copying attorney Bill Young (GWB), regarding SFMAIC's representation by GWB. | Attorney-Client Privileged |
|-----|------------------------------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------|----------------------------|
| 289 | WORKMAN00001310PRIV-WORKMAN00001311PRIV | July 22, 2021 email with attachment from Darren Murdoch to attorney Bill Young (GWB) providing material for Attorney Young's use in the representation of State Farm; the material constituting the withheld attachment has been separately produced in discovery. | Attorney-Client Privileged |
| 290 | WORKMAN00001312PRIV-WORKMAN00001312PRIV | July 23, 2021 email from Attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) revealing questions posed by counsel to client (SFMAIC) for purposes of giving advice/recommendations. | Attorney-Client Privileged |
| 291 | WORKMAN00001313PRIV-WORKMAN00001314PRIV | July 23, 2021 emails between Attorney Bill Young (GWB) and Darren Murdoch (SFMAIC) revealing questions posed by counsel to client (SFMAIC) and answers in response to the same, all for purposes of giving/receiving legal advice/recommendations. | Attorney-Client Privileged |
| 292 | WORKMAN00004348PRIV-WORKMAN00004364PRIV | July 23, 2021 email from Darren Murdoch (SFMAIC) to Attorney Mitch Griffith requesting Griffith's representation of Lamb III and attaching materials for purposes of the same; the materials constituting the withheld attachments have been separately produced in discovery. | Work Product |
| 293 | WORKMAN00004365PRIV-WORKMAN00004381PRIV | July 23, 2021 email with attachments from Darren Murdoch (SFMAIC) to Attorney Warren Moise requesting Moise's representation of Lamb Jr. and providing materials for purposes of the same; the materials constituting the withheld attachments have been separately produced in discovery. | Work Product |
| 294 | WORKMAN00001315PRIV-WORKMAN00001316PRIV | July 23, 2021 emails between Attorney Bill Young (GWB) and Darren Murdoch (SFMAIC) revealing questions posed by counsel to client (SFMAIC), answers in response to the same, both for purposes of giving/receiving legal advice/recommendations, and further revealing thoughts and opinions of counsel. | Attorney-Client Privileged |
| 295 | WORKMAN00004382PRIV-WORKMAN00004392PRIV | July 23, 2021 email with attachments from Darren Murdoch (SFMAIC) to Attorney Mitch Griffith regarding his representation | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | of Lamb III and providing material and information for his use in the representation; the materials constituting the withheld attachments have been separately produced in discovery. | |
|---|---|---|---|
| 296 | WORKMAN00004393PRIV-WORKMAN00004409PRIV | July 23, 2021 fax from Darren Murdoch (SFMAIC) to Attorney Warren Moise requesting Moise's representation of Lamb Jr. and providing materials for purposes of the same; the materials have been separately produced in discovery. | Work Product |
| 297 | WORKMAN00004410PRIV-WORKMAN00004427PRIV | July 23, 2021 fax from Darren Murdoch (SFMAIC) to Attorney Warren Moise requesting Moise's representation of Lamb Jr. and providing materials for purposes of the same; the materials have been separately produced in discovery. | Work Product |
| 298 | WORKMAN00004428PRIV-WORKMAN00004428PRIV | July 23, 2021 email from Attorney Warren Moise to Darren Murdoch (SFMAIC) in response to Murdoch's contacting him about proposed representation. | Work Product |
| 299 | WORKMAN00001317PRIV-WORKMAN00001349PRIV | July 23, 2021 email from Lee Shivers (SFMAIC) to attorney Bill Young (GWB) for purposes of GWB's representation of SFMAIC, attaching material obtained by SFMAIC in its investigation of liability of Lamb Jr. and Lamb III for third-party claims made against them. | Attorney-Client Privileged |
| 300 | WORKMAN00001350PRIV-WORKMAN00001351PRIV | July 26, 2021 email from TM Darren Murdoch (SFMAIC) to attorney Bill Young (GWB) providing information requested by attorney Young for purposes of his representation of and advice to State Farm, including earlier emails exchanged between the two revealing attorney Young's legal and professional opinions. | Attorney-Client Privileged |
| 301 | WORKMAN00004451PRIV-WORKMAN00004451PRIV | July 27, 2021 email from Darren Murdoch to Lee Shivers regarding steps to be taken in defense of named insured Melvin Lamb Jr., prepared in anticipation of litigation against State Farm's insured given the third-party liability claims. | Work Product |
| 302 | WORKMAN00001352PRIV-WORKMAN00001354PRIV | July 26 and 27, 2021 emails exchanged between Attorney Bill Young (GWB) and TM Darren Murdoch (SFMAIC) wherein Attorney Young requests information for purposes of his representation of State Farm and provides legal and professional opinions and TM Murdoch provides | Attorney-Client Privileged |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | |
|---|---|---|---|
| | | information for purposes of counsel's representation of State Farm. | |
| 303 | WORKMAN00001355PRIV-WORKMAN00001356PRIV | July 30, 2021 email from Cynthia Smart (GWB) with July 27, 2021 letter from Julia Bradshaw (GWB) to Lee Shivers regarding SFMAIC's engagement of GWB for legal representation. | Attorney-Client Privileged |
| 304 | WORKMAN00001357PRIV-WORKMAN00001357PRIV | August 2, 2021 email from Darren Murdoch (SFMAIC) to Bill Young (GWB) with request for attorney's legal advice/recommendation. | Attorney-Client Privileged |
| 305 | WORKMAN00001358PRIV-WORKMAN00001359PRIV | August 2, 2021 emails exchanged between Darren Murdoch (SFMAIC) and Bill Young (GWB) with request for attorney's legal advice/recommendation and attorney's response to the same. | Attorney-Client Privileged |
| 306 | WORKMAN00001360PRIV-WORKMAN00001361PRIV | August 2, 2021 emails exchanged between Darren Murdoch (SFMAIC) and Bill Young (GWB) with request for attorney's legal advice/recommendation and attorney's response to the same. | Attorney-Client Privileged |
| 307 | WORKMAN00005290PROD-WORKMAN00005290PROD | Redaction of portion of email that reflects discussion with GWB, counsel for State Farm, and attorney's recommendation. | Attorney-Client Privileged; Work Product |
| 308 | WORKMAN00005291PROD-WORKMAN00005291PROD | Redaction of portion of email that reflects discussion with GWB, counsel for State Farm, and attorney's recommendation. | Attorney-Client Privileged; Work Product |
| 309 | WORKMAN00001362PRIV-WORKMAN00001362PRIV | August 3, 2021 email from Cynthia Smart (GWB) to Lee Shivers and Darren Murdoch (GWB) regarding SFMAIC's engagement of GWB for legal representation. | Attorney-Client Privileged |
| 310 | WORKMAN00001363PRIV-WORKMAN00001363PRIV | August 3, 2021 email from Cynthia Smart (GWB) to Lee Shivers and Darren Murdoch (GWB) regarding SFMAIC's engagement of GWB for legal representation. | Attorney-Client Privileged |
| 311 | WORKMAN00001364PRIV-WORKMAN00001365PRIV | August 2, 2021 emails exchanged between Darren Murdoch (SFMAIC) and Bill Young (GWB) with request for attorney's legal advice/recommendation and attorney's response to the same, forwarded by Darren Murdoch to Cynthia Smart (GWB) on August 3, 2021. | Attorney-Client Privileged; Work Product |
| 312 | WORKMAN00001366PRIV-WORKMAN00001366PRIV | August 4, 2021 email from Pat Klitzing (GWB) to SFMAIC regarding SFMAIC's engagement of GWB for legal representation. | Attorney-Client Privileged |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 313 | WORKMAN00004482PRIV-WORKMAN00004482PRIV | August 4, 2021 email from Darren Murdoch to Lee Shivers regarding evaluation of the threatened negligent entrustment claim against its named insured. | Work product. |
|---|---|---|---|
| 314 | WORKMAN00004483PRIV-WORKMAN00004483PRIV | Transcript of August 5, 2021 messages exchanged between Darren Murdoch and Lee Shivers regarding evaluation of the threatened negligent entrustment claim against its named insured. | Work product. |
| 315 | WORKMAN00001367PRIV-WORKMAN00001394PRIV | August 5, 2021 email from Lee Shivers (SFMAIC) to attorney Bill Young (GWB) attaching materials requested by GWB for purposes of GWB's representation of SFMAIC. The materials attached to and withheld with email are produced elsewhere in the Claim File. | Attorney-Client Privileged |
| 316 | WORKMAN00001395PRIV-WORKMAN00001395PRIV | August 5, 2021 email from Bill Young to Darren Murdoch concerning the matter on which GWB was retained to represent SFMAIC. | Attorney-Client Privileged; Work Product |
| 317 | WORKMAN00001396PRIV-WORKMAN00001396PRIV | August 6, 2021 email from Darren Murdoch to attorney Bill Young asking for information necessary to render legal advice and providing his legal opinion in connection with GWB's representation of SFMAIC. | Attorney-Client Privileged; Work Product |
| 318 | WORKMAN00001397PRIV-WORKMAN00001398PRIV | August 9, 2021 email from Darren Murdoch to Bill Young answering questions posed by counsel for purposes of obtaining legal advice, in response to August 6, 2021 email from Bill Young to Darren Murdoch requesting information and providing legal opinion. | Attorney-Client Privileged; Work Product |
| 319 | WORKMAN00001399PRIV-WORKMAN00001400PRIV | August 9, 2021 emails exchanged between Darren Murdoch and Bill Young concerning questions posed by counsel for purposes of obtaining legal advice and State Farm's answers to the same along with August 3, 2021 email from Bill Young posing initial question and legal opinion. | Attorney-Client Privileged; Work Product |
| 320 | WORKMAN00001401PRIV-WORKMAN00001415PRIV | August 10, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) and copying attorney Grayson Smith (GWB) regarding proposed litigation and attaching draft pleadings. | Attorney-Client Privileged; Work Product |
| 321 | WORKMAN00001416PRIV-WORKMAN00001416PRIV | Internal instant messages between Darren Murdoch and Steven Sikora concerning the draft pleadings prepared by GWB. | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 322 | WORKMAN00001417PRIV-WORKMAN00001431PRIV | August 10, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) and copying attorney Grayson Smith (GWB) regarding proposed litigation and attaching draft pleadings, which Darren Murdoch in turn forwarded to Steven Sikora (SFMAIC) for review. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 323 | WORKMAN00001432PRIV-WORKMAN00001432PRIV | August 10, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) and copying attorney Grayson Smith (GWB) regarding proposed litigation and attaching draft pleadings and Darren Murdoch's response to Bill Young. | Attorney-Client Privileged; Work Product |
| 324 | WORKMAN00001433PRIV-WORKMAN00001434PRIV | August 10, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) and copying attorney Grayson Smith (GWB) regarding proposed litigation and attaching draft pleadings and Darren Murdoch's response to Bill Young. | Attorney-Client Privileged; Work Product |
| 325 | WORKMAN00001435PRIV-WORKMAN00001435PRIV | August 10, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) and copying attorney Grayson Smith (GWB) regarding proposed litigation and attaching draft pleadings, and the emails exchanged between Darren Murdoch and Steven Sikora (SFMAIC) regarding the same. | Attorney-Client Privileged; Work Product |
| 326 | WORKMAN00001436PRIV-WORKMAN00001437PRIV | August 10, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) and copying attorney Grayson Smith (GWB) regarding proposed litigation and attaching draft pleadings, and the emails exchanged between Darren Murdoch and Steven Sikora (SFMAIC) regarding the same. | Attorney-Client Privileged; Work Product |
| 327 | WORKMAN00001438PRIV-WORKMAN00001446PRIV | August 11, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (GWB) regarding State Farm's potential/anticipated litigation with legal materials being considered by counsel in its representation of State Farm. | Attorney-Client Privileged; Work Product |
| 328 | WORKMAN00001447PRIV-WORKMAN00001454PRIV | Email from Darren Murdoch (SFMAIC) to Monique James (SFMAIC), Steven Sikora (SFMAIC), and attorney Bill Young (GWB) attaching materials for use in discussion between counsel and SFMAIC in relation to the anticipated litigation. | Attorney-Client Privileged; Work Product |
| 329 | WORKMAN00001455PRIV-WORKMAN00001462PRIV | Email from Darren Murdoch (SFMAIC) to Lisa Kruk (SFMAIC) attaching material provided by counsel for SFMAIC, Bill | Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | Young (GWB), for use in discussion between counsel and SFMAIC in relation to the anticipated litigation. | |
|---|---|---|---|
| 330 | WORKMAN00001463PRIV-WORKMAN00001463PRIV | August 11, 2021 email of Bill Young accepting August 11, 2021 meeting invitation from Darren Murdoch for discussion, requested by counsel, regarding State Farm's handling of the claim and filing of a DJA. | Work Product |
| 331 | WORKMAN00001464PRIV-WORKMAN00001464PRIV | August 11, 2021 email of Steven Sikora accepting August 11, 2021 meeting invitation from Darren Murdoch for discussion, requested by counsel, regarding State Farm's handling of the claim and filing of a DJA. | Work Product |
| 332 | WORKMAN00001465PRIV-WORKMAN00001465PRIV | August 11, 2021 email of Monique James accepting August 11, 2021 meeting invitation from Darren Murdoch for discussion, requested by counsel, regarding State Farm's handling of the claim and filing of a DJA. | Work Product |
| 333 | WORKMAN00004492PRIV-WORKMAN00004492PRIV | August 11, 2021 email from Cara Morris (Griffith Freeman) to SFMAIC regarding SFMAIC's engagement of Mitch Griffith for legal representation and defense of Mr. Lamb Jr., State Farm's named insured. | Work Product |
| 334 | WORKMAN00001466PRIV-WORKMAN00001473PRIV | August 11, 2021 calendar invitation sent, subject "Recommendation under 4021b249D," for meeting with Bill Young (GWB) and SFMAIC representatives Monique James, Darren Murdoch, and Steven Sikora, attaching material to be used in the meeting. Meeting invitation itself is withheld given it reveals the materials attached and, therefore, substantive matters discussed/to be discussed between counsel and client. | Attorney-Client Privileged; Work Product |
| 335 | WORKMAN00001474PRIV-WORKMAN00001481PRIV | August 11, 2021 calendar invitation sent, subject "Recommendation under 4021b249D," for meeting with Bill Young (GWB) and SFMAIC representatives Monique James, Darren Murdoch, and Steven Sikora, attaching material to be used in the meeting. Meeting invitation itself is withheld given it reveals the materials attached and, therefore, substantive matters discussed/to be discussed between counsel and client. | Attorney-Client Privileged; Work Product |
| 336 | WORKMAN00001482PRIV-WORKMAN00001489PRIV | August 11, 2021 calendar invitation sent, subject "Recommendation under | Attorney-Client |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | 4021b249D," for meeting with Bill Young (GWB) and SFMAIC representatives Monique James, Darren Murdoch, and Steven Sikora, attaching material to be used in the meeting, which Darren Murdoch in turn forwarded to Lisa Kruk (SFMAIC). Meeting invitation itself is withheld given it reveals the materials attached and, therefore, substantive matters discussed/to be discussed between counsel and client. | Privileged; Work Product |
|---|---|---|---|
| 337 | WORKMAN00001490PRIV-WORKMAN00001491PRIV | August 13, 2021 email from Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding GWB's representation of State Farm in the litigation. | Attorney-Client Privileged; Work Product |
| 338 | WORKMAN00001492PRIV-WORKMAN00001495PRIV | August 13, 2021 email from Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding discussion needed in relation to Young's representation of SFMAIC. | Attorney-Client Privileged; Work Product |
| 339 | WORKMAN00004496PRIV-WORKMAN00004497PRIV | August 11, 2021 letter from attorney Mitch Griffith, counsel retained by SFMAIC to represent Lamb III in defense of third-party claims made against him, to attorney Robert Wyndham, Lamb III's personal attorney, regarding a settlement demand received from the Estate of Workman and message to be passed along from Griffith to the client, attachment to the produced email sent by Darren Murdoch to Monique James on August 13, 2021. | Attorney-Client Privileged; Work Product |
| 340 | WORKMAN00001496PRIV-WORKMAN00001497PRIV | August 13, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding the time limit demand posed by Estate of Workman and State Farm's handling of the same. | Attorney-Client Privileged; Work Product |
| 341 | WORKMAN00001498PRIV-WORKMAN00001505PRIV | August 13, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding the time limit demand posed by Estate of Workman and State Farm's handling of the same. | Attorney-Client Privileged; Work Product |
| 342 | WORKMAN00001506PRIV-WORKMAN00001507PRIV | August 13, 2021 email from Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding GWB's representation of State Farm in the litigation, with questions posed by Murdoch via August 16, 2021 response email. | Attorney-Client Privileged; Work Product |
| 343 | WORKMAN00001508PRIV-WORKMAN00001510PRIV | August 13, 2021 email from Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding GWB's representation of State | Attorney-Client Privileged; |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | |
|---|---|---|---|
| | | Farm in the litigation, with follow-up emails exchanged between Young and Murdoch on August 16, 2021. | Work Product |
| 344 | WORKMAN00001511PRIV-WORKMAN00001513PRIV | August 13, 2021 email from Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding GWB's representation of State Farm in the litigation, with follow-up emails exchanged between Young and Murdoch on August 16, 2021. | Attorney-Client Privileged; Work Product |
| 345 | WORKMAN00001514PRIV-WORKMAN00001522PRIV | August 17, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding litigation filed by Workman Estate against Lamb, Jr., State Farm's named insured, and the litigation filed by SFMAIC. | Attorney-Client Privileged; Work Product |
| 346 | WORKMAN00001523PRIV-WORKMAN00001523PRIV | August 17, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding litigation filed by Workman Estate against Lamb, Jr., State Farm's named insured, and the litigation filed by SFMAIC, along with Murdoch's response email posing question to Attorney Young. | Attorney-Client Privileged; Work Product |
| 347 | WORKMAN00001524PRIV-WORKMAN00001525PRIV | August 17, 2021 emails exchanged between attorney Bill Young (GWB) and Darren Murdoch (SFMAIC) regarding litigation filed by Workman Estate against Lamb, Jr., State Farm's named insured, and the litigation filed by SFMAIC. | Attorney-Client Privileged; Work Product |
| 348 | WORKMAN00001526PRIV-WORKMAN00001535PRIV | August 19, 2021 email from Attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding steps to be taken in pursuing the DJA with attachments that have been produced elsewhere. | Attorney-Client Privileged; Work Product |
| 349 | WORKMAN00001536PRIV-WORKMAN00001536PRIV | August 19, 2021 emails exchanged between Darren Murdoch (SFMAIC) and Bill Young (GWB) regarding steps to be taken in pursuing the DJA. | Attorney-Client Privileged; Work Product |
| 350 | WORKMAN00001537PRIV-WORKMAN00001599PRIV | August 19, 2021 emails exchanged between Darren Murdoch (SFMAIC) and Bill Young (GWB) regarding steps to be taken in pursuing the DJA with attachment; withheld attachment has otherwise been produced in discovery. | Attorney-Client Privileged; Work Product |
| 351 | WORKMAN00001600PRIV-WORKMAN00001662PRIV | August 19, 2021 emails exchanged between Darren Murdoch (SFMAIC) and Bill Young (GWB) regarding steps to be taken in pursuing the DJA with attachment; | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | withheld attachment has otherwise been produced in discovery. | |
|---|---|---|---|
| 352 | WORKMAN00001663PRIV-WORKMAN00001663PRIV | August 19, 2021 emails exchanged between Darren Murdoch (SFMAIC) and Bill Young (GWB) regarding steps to be taken in pursuing the DJA with attachment, with Darren Murdoch's August 24, 2021 email forwarding the privileged/protected communications to the claim file. | Attorney-Client Privileged; Work Product |
| 353 | WORKMAN00001664PRIV-WORKMAN00001673PRIV | August 19, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding steps to be taken in pursuing the DJA with attachments concerning the DJA, with Darren Murdoch's August 24, 2021 email forwarding the privileged/protected communication and the attachments thereto, which have been produced elsewhere in discovery, to the claim file. | Attorney-Client Privileged; Work Product |
| 354 | WORKMAN00001674PRIV-WORKMAN00001675PRIV | August 25, 2021 email from Pat Klitzing (GWB) to SFMAIC regarding invoices to be submitted in connection with GWB's engagement as counsel for SFMAIC. | Attorney-Client Privileged; Work Product |
| 355 | WORKMAN00001676PRIV-WORKMAN00001677PRIV | August 30, 2021 email from Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding subpoena served by Estate in its action against SFMAIC's insured and status of the DJA. | Attorney-Client Privileged; Work Product |
| 356 | WORKMAN00001678PRIV-WORKMAN00001679PRIV | August 30, 2021 email from Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding subpoena served by Estate in its action against SFMAIC's insured and status of the DJA along with Darren Murdoch's August 30, 2021 response to the same. | Attorney-Client Privileged; Work Product |
| 357 | WORKMAN00001680PRIV-WORKMAN00001688PRIV | August 30, 2021 email from Bill Young (GWB) to Darren Murdoch (SFMAIC) concerning the handling of the subpoena served by Workman Estate with an attachment that has been otherwise produced in discovery, which email and attachment follows the earlier exchanged August 30, 2021 emails between Attorney Young and Murdoch regarding the same and the status of the DJA. | Attorney-Client Privileged; Work Product |
| 358 | WORKMAN00001689PRIV-WORKMAN00001691PRIV | August 30, 2021 emails exchanged between Bill Young (GWB) and Darren Murdoch (SFMAIC) concerning the handling of the subpoena served by Workman Estate and the status of the DJA. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 359 | WORKMAN00001692PRIV-WORKMAN00001695PRIV | August 30, 2021 emails exchanged between Bill Young (GWB) and Darren Murdoch (SFMAIC) concerning the handling of the subpoena served by Workman Estate and the status of the DJA. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 360 | WORKMAN00001696PRIV-WORKMAN00001698PRIV | Email string that first consists of August 17, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding attorney's thoughts on claim handling issues, which Murdoch in turn forwarded to Steven Sikora (SFMAIC) with discussion, including counsel's thoughts/opinions; Sikora's August 17, 2021 email responding to Murdoch on the issues raised by counsel; August 25, 2021 follow-up email from Murdoch to Sikora on the issues raised by counsel; August 26, 2021 email from Sikora to Monique James on the issues raised by counsel followed by September 1 and September 2, 2021 emails exchanged between Monique James and Steven Sikora and Steven Sikora and Darren Murdoch, all in regards to the issues raised by counsel. | Attorney-Client Privileged; Work Product |
| 361 | WORKMAN00001699PRIV-WORKMAN00001701PRIV | Email string that first consists of August 17, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding attorney's thoughts on claim handling issues, which Murdoch in turn forwarded to Steven Sikora (SFMAIC) with discussion, including counsel's thoughts/opinions; Sikora's August 17, 2021 email responding to Murdoch on the issues raised by counsel; August 25, 2021 follow-up email from Murdoch to Sikora on the issues raised by counsel; August 26, 2021 email from Sikora to Monique James on the issues raised by counsel followed by September 1 and September 2, 2021 emails exchanged between Monique James and Steven Sikora, all in regards to the issues raised by counsel. | Attorney-Client Privileged; Work Product |
| 362 | WORKMAN00001702PRIV-WORKMAN00001704PRIV | Email string that first consists of August 17, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding attorney's thoughts on claim handling issues, which Murdoch in turn forwarded to Steven Sikora (SFMAIC) with discussion, including counsel's thoughts/opinions; Sikora's August 17, 2021 email responding to Murdoch on the | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | |
|---|---|---|---|
| | | issues raised by counsel; August 25, 2021 follow-up email from Murdoch to Sikora on the issues raised by counsel; August 26, 2021 email from Sikora to Monique James on the issues raised by counsel followed by September 1 and September 2, 2021 emails exchanged between Monique James and Steven Sikora and Steven Sikora and Darren Murdoch, all in regards to the issues raised by counsel. | |
| 363 | WORKMAN00001705PRIV-WORKMAN00001707PRIV | Email string that first consists of August 17, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding attorney's thoughts on claim handling issues, which Murdoch in turn forwarded to Steven Sikora (SFMAIC) with discussion, including counsel's thoughts/opinions; Sikora's August 17, 2021 email responding to Murdoch on the issues raised by counsel; August 25, 2021 follow-up email from Murdoch to Sikora on the issues raised by counsel; August 26, 2021 email from Sikora to Monique James on the issues raised by counsel followed by September 1 and September 2, 2021 emails exchanged between Monique James and Steven Sikora, all in regards to the issues raised by counsel. | Attorney-Client Privileged; Work Product |
| 364 | WORKMAN00001708PRIV-WORKMAN00001710PRIV | Email string that first consists of August 17, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding attorney's thoughts on claim handling issues, which Murdoch in turn forwarded to Steven Sikora (SFMAIC) with discussion, including counsel's thoughts/opinions; Sikora's August 17, 2021 email responding to Murdoch on the issues raised by counsel; August 25, 2021 follow-up email from Murdoch to Sikora on the issues raised by counsel; August 26, 2021 email from Sikora to Monique James on the issues raised by counsel followed by September 1 and September 2, 2021 emails exchanged between Monique James and Steven Sikora and Steven Sikora and Darren Murdoch, all in regards to the issues raised by counsel. | Attorney-Client Privileged; Work Product |
| 365 | WORKMAN00001711PRIV-WORKMAN00001714PRIV | Email string that first consists of August 17, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding attorney's thoughts on claim | Attorney-Client Privileged; |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | |
|---|---|---|---|
| | | handling issues, which Murdoch in turn forwarded to Steven Sikora (SFMAIC) with discussion, including counsel's thoughts/opinions; Sikora's August 17, 2021 email responding to Murdoch on the issues raised by counsel; August 25, 2021 follow-up email from Murdoch to Sikora on the issues raised by counsel; August 26, 2021 email from Sikora to Monique James on the issues raised by counsel followed by September 1 and September 2, 2021 emails exchanged between Monique James and Steven Sikora and Steven Sikora and Darren Murdoch, all in regards to the issues raised by counsel. | Work Product |
| 366 | WORKMAN00001715PRIV-WORKMAN00001718PRIV | Email string that first consists of August 17, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding attorney's thoughts on claim handling issues, which Murdoch in turn forwarded to Steven Sikora (SFMAIC) with discussion, including counsel's thoughts/opinions; Sikora's August 17, 2021 email responding to Murdoch on the issues raised by counsel; August 25, 2021 follow-up email from Murdoch to Sikora on the issues raised by counsel; August 26, 2021 email from Sikora to Monique James on the issues raised by counsel followed by September 1 and September 2, 2021 emails exchanged between Monique James and Steven Sikora and Steven Sikora and Darren Murdoch, all in regards to the issues raised by counsel. | Attorney-Client Privileged; Work Product |
| 367 | WORKMAN00001719PRIV-WORKMAN00001722PRIV | Email string that first consists of August 17, 2021 email from attorney Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding attorney's thoughts on claim handling issues, which Murdoch in turn forwarded to Steven Sikora (SFMAIC) with discussion, including counsel's thoughts/opinions; Sikora's August 17, 2021 email responding to Murdoch on the issues raised by counsel; August 25, 2021 follow-up email from Murdoch to Sikora on the issues raised by counsel; August 26, 2021 email from Sikora to Monique James on the issues raised by counsel followed by September 1 and September 2, 2021 emails exchanged between Monique James and Steven Sikora and Steven Sikora and | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | |
|---|---|---|---|
| | | Darren Murdoch, all in regards to the issues raised by counsel. | |
| 368 | WORKMAN00001723PRIV-WORKMAN00001723PRIV | September 2, 2021 email from Darren Murdoch (SFMAIC) to Bill Young (GWB) regarding terms of GWB's engagement as counsel for SFMAIC. | Attorney-Client Privileged; Work Product |
| 369 | WORKMAN00001738PRIV-WORKMAN00001739PRIV | September 3, 2021 email from Darren Murdoch (SFMAIC) to attorney Bill Young (GWB) with seeking counsel's thoughts/opinions concerning the Tyger River Demand and State Farm's claim handling. | Attorney-Client Privileged; Work Product |
| 370 | WORKMAN00001740PRIV-WORKMAN00001849PRIV | September 8, 2021 email from Lee Shivers (SFMAIC) to attorney Bill Young (GWB) attaching materials as requested by counsel for his use in representing SFMAIC. The materials attached to the emails, while withheld along with the emails, are produced elsewhere in the Claim File. | Attorney-Client Privileged; Work Product |
| 371 | WORKMAN00001850PRIV-WORKMAN00004820PRIV | September 8, 2021 email from Lee Shivers (SFMAIC) to attorney Bill Young (GWB) attaching materials as requested by counsel for his use in representing SFMAIC. The materials attached to the emails, while withheld along with the emails, are produced elsewhere in the Claim File. | Attorney-Client Privileged; Work Product |
| 372 | WORKMAN00001851PRIV-WORKMAN00001854PRIV | September 8, 2021 email from Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding response to Estate's time limited demand and attaching draft response for SFMAIC's review. | Attorney-Client Privileged; Work Product |
| 373 | WORKMAN00001855PRIV-WORKMAN00001858PRIV | September 8, 2021 email from Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding response to Estate's time limited demand and attaching draft response for SFMAIC's review. | Attorney-Client Privileged; Work Product |
| 374 | WORKMAN00001860PRIV-WORKMAN00004836PRIV | September 8, 2021 email from Lee Shivers (SFMAIC) to Bill Young (GWB) attaching materials as requested by counsel for his use in representing SFMAIC. The materials attached to the emails, while withheld along with the emails, are produced elsewhere in the Claim File. | Attorney-Client Privileged; Work Product |
| 375 | WORKMAN00001861PRIV-WORKMAN00001869PRIV | August 30, 2021 email with attachment from Bill Young (GWB) to Darren Murdoch (SFMAIC) regarding subpoena served by Estate in its action against SFMAIC's insured and status of the DJA. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 376 | WORKMAN00001870PRIV-<br>WORKMAN00001870PRIV | September 10, 2021 email from Darren Murdoch (SFMAIC) to Bill Young (GWB) regarding attorney's response to demand of Workman Estate and to request for policy information. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 377 | WORKMAN00001871PRIV-<br>WORKMAN00001871PRIV | September 10, 2021 email from Darren Murdoch (SFMAIC) to Bill Young (GWB) regarding attorney's response to demand of Workman Estate and to request for policy information with Murdoch's forward of the email to the claim file. | Attorney-Client Privileged; Work Product |
| 378 | WORKMAN00001872PRIV-<br>WORKMAN00001872PRIV | September 10, 2021 email from Darren Murdoch (SFMAIC) to Bill Young (GWB) regarding attorney's response to demand of Workman Estate and to request for policy information, which Murdoch in turn forwarded to the Claim File on September 12, 2021. | Attorney-Client Privileged; Work Product |
| 379 | WORKMAN00001873PRIV-<br>WORKMAN00001874PRIV | September 3, 2021 email from Darren Murdoch (SFMAIC) to attorney Bill Young (GWB) with seeking counsel's thoughts/opinions concerning the Tyger River Demand and State Farm's claim handling, which Murdoch forwarded to the claim file on September 12, 2021. | Attorney-Client Privileged; Work Product |
| 380 | WORKMAN00001875PRIV-<br>WORKMAN00001878PRIV | September 15, 2021 email with attachment from Lee Shivers (SFMAIC) to attorney Bill Young (GWB) regarding demand of a third-party claimant received by SFMAIC; the withheld attachment has otherwise been produced by State Farm in discovery. | Attorney-Client Privileged; Work Product |
| 381 | WORKMAN00001879PRIV-<br>WORKMAN00001879PRIV | September 15, 2021 emails exchanged between Lee Shivers (SFMAIC) and attorney Bill Young (GWB) regarding demand of a third-party claimant received by SFMAIC. | Attorney-Client Privileged; Work Product |
| 382 | WORKMAN00001880PRIV-<br>WORKMAN00001880PRIV | September 15, 2021 emails exchanged between Lee Shivers (SFMAIC) and attorney Bill Young (GWB) regarding demand of a third-party claimant received by SFMAIC. | Attorney-Client Privileged; Work Product |
| 383 | WORKMAN00001881PRIV-<br>WORKMAN00001881PRIV | September 15, 2021 emails exchanged between Lee Shivers (SFMAIC) and attorney Bill Young (GWB) regarding demand of a third-party claimant received by SFMAIC. | Attorney-Client Privileged; Work Product |
| 384 | WORKMAN00001882PRIV-<br>WORKMAN00001882PRIV | September 15, 2021 emails exchanged between Lee Shivers (SFMAIC) and attorney Bill Young (GWB) regarding | Attorney-Client Privileged; |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | demand of a third-party claimant received by SFMAIC. | Work Product |
|---|---|---|---|
| 385 | WORKMAN00001883PRIV-WORKMAN00001884PRIV | September 15, 2021 emails exchanged between Lee Shivers (SFMAIC) and attorney Bill Young (GWB) regarding demand of a third-party claimant received by SFMAIC. | Attorney-Client Privileged; Work Product |
| 386 | WORKMAN00001885PRIV-WORKMAN00001886PRIV | September 15, 2021 emails exchanged between Lee Shivers (SFMAIC) and attorney Bill Young (GWB) regarding demand of a third-party claimant received by SFMAIC. | Attorney-Client Privileged; Work Product |
| 387 | WORKMAN00001899PRIV-WORKMAN00001899PRIV | October 1, 2021 email from Darren Murdoch to Lee Shivers, copying Steven Sikora and Eileen Northcutt, responding to September 30, 2021 email from Lee Shivers to Darren Murdoch, Eileen Northcutt, and Steven Sikora regarding GWB's representation of State Farm and information to be provided to GWB for purposes of representation, and also regarding liability claims made against Lamb Jr and Lamb III. | Attorney-Client Privileged; Work Product |
| 388 | WORKMAN00001900PRIV-WORKMAN00001903PRIV | October 4, 2021 email with attachment from Jennifer Johnsen to Darren Murdoch (SFMAIC) regarding GWB's response, on behalf of SFMAIC, to Workman Estate's to deposition notice and subpoena in Estate's tort case against State Farm's insured; withheld attachment is separately produced in the claim file. | Attorney-Client Privileged; Work Product |
| 389 | WORKMAN00001904PRIV-WORKMAN00001907PRIV | October 4, 2021 email with attachment from Jennifer Johnsen to Darren Murdoch (SFMAIC) regarding GWB's response, on behalf of SFMAIC, to Workman Estate's to deposition notice and subpoena in Estate's tort case against State Farm's insured, along with Darren Murdoch's October 4, 2021 email to the claim file; withheld attachment is separately produced in the claim file. | Attorney-Client Privileged; Work Product |
| 390 | WORKMAN00001908PRIV-WORKMAN00001918PRIV | October 5, 2021 email with attachments from attorney Jennifer Johnsen (GWB) to Lee Shivers (SFMAIC) regarding telephone call between the two and information that needs to be gathered in connection with the DJA; withheld attachment has separately been produced in discovery. | Attorney-Client Privileged; Work Product |
| 391 | WORKMAN00001919PRIV-WORKMAN00001929PRIV | October 5, 2021 email with attachments from Lee Shivers to Eileen Northcutt forwarding Jennifer Johnsen's email with | Attorney-Client Privileged; |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | |
|---|---|---|---|
| | | attachments of the same day regarding the DJA and information received from counsel related to the DJA; withheld attachments have been separately produced in discovery. | Work Product |
| 392 | WORKMAN00001930PRIV-WORKMAN00001932PRIV | October 5 and October 6, 2021 emails exchanged between Eileen Northcutt and Lee Shivers (both SFMAIC) regarding communications with counsel Jennifer Johnsen (GWB) about the DJA. | Attorney-Client Privileged; Work Product |
| 393 | WORKMAN00001933PRIV-WORKMAN00001938PRIV | October 21, 2021 email with attachment from attorney Jennifer Johnsen (GWB) to Lee Shivers (SFMAIC) regarding SFMAIC's preparation for a Rule 30(b)(6) deposition in the DJA; the withheld attachment has been produced elsewhere in discovery. | Attorney-Client Privileged; Work Product |
| 394 | WORKMAN00001939PRIV-WORKMAN00001945PRIV | October 21, 2021 email with attachment from attorney Jennifer Johnsen (GWB) to Lee Shivers (SFMAIC) regarding SFMAIC's preparation for a Rule 30(b)(6) deposition in the DJA, forwarded by Lee Shivers to Darren Murdoch (also SFMAIC); the withheld attachment has been produced elsewhere in discovery. | Attorney-Client Privileged; Work Product |
| 395 | WORKMAN00001946PRIV-WORKMAN00001952PRIV | October 21, 2021 emails exchanged between Lee Shivers, Darren Murdoch, and Jason Moore (all SFMAIC) in response to and concerning attorney Jennifer Johnsen's October 21, 2021 email with attachment concerning preparation needed for Rule 30(b)(6) deposition of SFMAIC; withheld attachment has been separately produced in discovery. | Attorney-Client Privileged; Work Product |
| 396 | WORKMAN00001953PRIV-WORKMAN00001955PRIV | October 21, 2021 emails exchanged between Lee Shivers, Darren Murdoch, and Jason Moore (all SFMAIC) in response to and concerning attorney Jennifer Johnsen's October 21, 2021 email concerning preparation needed for Rule 30(b)(6) deposition of SFMAIC. | Attorney-Client Privileged; Work Product |
| 397 | WORKMAN00001956PRIV-WORKMAN00001958PRIV | October 21, 2021 emails exchanged between Lee Shivers, Darren Murdoch, and Jason Moore (all SFMAIC) in response to and concerning attorney Jennifer Johnsen's October 21, 2021 email concerning preparation needed for Rule 30(b)(6) deposition of SFMAIC. | Attorney-Client Privileged; Work Product |
| 398 | WORKMAN00001959PRIV-WORKMAN00001961PRIV | October 22, 2021 email from attorney Jennifer Johnsen to Lee Shivers (SFMAIC) | Attorney-Client Privileged; |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | asking questions and discussing issues in the DJA. | Work Product |
|---|---|---|---|
| 399 | WORKMAN00001962PRIV-WORKMAN00001964PRIV | October 22, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Lee Shivers (SFMAIC) regarding counsel's questions and discussion of issues in the DJA. | Attorney-Client Privileged; Work Product |
| 400 | WORKMAN00001965PRIV-WORKMAN00001968PRIV | October 22, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Lee Shivers (SFMAIC) regarding counsel's questions and discussion of issues in the DJA. | Attorney-Client Privileged; Work Product |
| 401 | WORKMAN00001969PRIV-WORKMAN00001971PRIV | October 25, 2021 email from Darren Murdoch to Jason Moore (both SFMAIC) in response to earlier emails exchanged between Lee Shivers, Darren Murdoch, and Jason Moore (all SFMAIC) concerning attorney Jennifer Johnsen's October 21, 2021 email about preparation needed for Rule 30(b)(6) deposition of SFMAIC. | Attorney-Client Privileged; Work Product |
| 402 | WORKMAN00001972PRIV-WORKMAN00001975PRIV | October 25, 2021 emails exchanged between Darren Murdoch and Jason Moore (both SFMAIC) in follow-up to earlier emails exchanged between Lee Shivers, Darren Murdoch, and Jason Moore (all SFMAIC) concerning attorney Jennifer Johnsen's October 21, 2021 email about preparation needed for Rule 30(b)(6) deposition of SFMAIC. | Attorney-Client Privileged; Work Product |
| 403 | WORKMAN00001976PRIV-WORKMAN00001979PRIV | October 25, 2021 emails exchanged between Darren Murdoch and Jason Moore (both SFMAIC) in follow-up to earlier emails exchanged between Lee Shivers, Darren Murdoch, and Jason Moore (all SFMAIC) concerning attorney Jennifer Johnsen's October 21, 2021 email about preparation needed for Rule 30(b)(6) deposition of SFMAIC. | Attorney-Client Privileged; Work Product |
| 404 | WORKMAN00001980PRIV-WORKMAN00001986PRIV | October 25, 2021 email with attachment from Darren Murdoch (SFMAIC) to Jennifer Johnsen (GWB) regarding deposition to be taken in the DJA, in follow-up to earlier emails exchanged between Lee Shivers and attorney Jennifer Johnsen on October 21, 2021 about preparation needed for Rule 30(b)(6) deposition of SFMAIC; withheld attachment has been separately produced elsewhere in discovery. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 405 | WORKMAN00001987PRIV-WORKMAN00001990PRIV | October 25, 2021 emails exchanged between Darren Murdoch and Jason Moore (both SFMAIC) in follow-up to earlier emails exchanged between Lee Shivers, Darren Murdoch, and Jason Moore (all SFMAIC) concerning attorney Jennifer Johnsen's October 21, 2021 email about preparation needed for Rule 30(b)(6) deposition of SFMAIC. | Attorney-Client Privileged; Work Product |
| --- | --- | --- | --- |
| 406 | WORKMAN00001991PRIV-WORKMAN00001994PRIV | October 25, 2021 emails exchanged between Darren Murdoch (SFMAIC) and Jennifer Johnsen (GWB) regarding deposition to be taken in the DJA, all in follow-up to earlier emails exchanged between Lee Shivers and attorney Jennifer Johnsen on October 21, 2021 about preparation needed for Rule 30(b)(6) deposition of SFMAIC; withheld attachment has been separately produced elsewhere in discovery. | Attorney-Client Privileged; Work Product |
| 407 | WORKMAN00004854PRIV-WORKMAN00004854PRIV | October 28, 2021 email of October 25, 2021 transcript of message sent from Darren Murdoch to Todd Bevill concerning the DJA. | Attorney-Client Privileged; Work Product |
| 408 | WORKMAN00004855PRIV-WORKMAN00004855PRIV | October 28, 2021 email of October 25, 2021 transcript of message sent from Darren Murdoch to Todd Bevill concerning the DJA. | Attorney-Client Privileged; Work Product |
| 409 | WORKMAN00001995PRIV-WORKMAN00002001PRIV | October 25, 2021 email with attachment from Darren Murdoch (SFMAIC) to Jennifer Johnsen (GWB) regarding deposition to be taken in the DJA, in follow-up to earlier emails exchanged between Lee Shivers and attorney Jennifer Johnsen on October 21, 2021 about preparation needed for Rule 30(b)(6) deposition of SFMAIC; withheld attachment has been separately produced elsewhere in discovery. | Attorney-Client Privileged; Work Product |
| 410 | WORKMAN00002002PRIV-WORKMAN00002005PRIV | October 25, 2021 emails exchanged between Darren Murdoch and Jason Moore (both SFMAIC) in follow-up to earlier emails exchanged between Lee Shivers, Darren Murdoch, and Jason Moore (all SFMAIC) concerning attorney Jennifer Johnsen's October 21, 2021 email about preparation needed for Rule 30(b)(6) deposition of SFMAIC. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 411 | WORKMAN00002006PRIV-<br>WORKMAN00002009PRIV | October 25, 2021 emails exchanged between Darren Murdoch and Jason Moore (both SFMAIC) in follow-up to earlier emails exchanged between Lee Shivers, Darren Murdoch, and Jason Moore (all SFMAIC) concerning attorney Jennifer Johnsen's October 21, 2021 email about preparation needed for Rule 30(b)(6) deposition of SFMAIC. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 412 | WORKMAN00002010PRIV-<br>WORKMAN00002012PRIV | October 25, 2021 email from Darren Murdoch to Lee Shivers regarding actions to be taken in the DJA and information to be provided to counsel, all in follow up to attorney Jennifer Johnsen's October 21, 2021 email to Lee Shivers concerning handling of Rule 30(b)(6) notice. | Attorney-Client Privileged; Work Product |
| 413 | WORKMAN00002013PRIV-<br>WORKMAN00002082PRIV | October 25, 2021 email with attachment from Jennifer Johnsen to Darren Murdoch providing information requested by Murdoch in relation to the DJA; withheld attachment has been separately produced in discovery. | Attorney-Client Privileged; Work Product |
| 414 | WORKMAN00002083PRIV-<br>WORKMAN00002155PRIV | October 25, 2021 email from Darren Murdoch to Corporate Law's discovery intake, copying Steven Sikora, attaching materials from the DJA, all for purposes of referring the discovery, a Rule 30(b)(6) depo notice, to corporate law for handling; withheld attachments have been separately produced in discovery. | Attorney-Client Privileged; Work Product |
| 415 | WORKMAN00002156PRIV-<br>WORKMAN00002159PRIV | October 25, 2021 email from Jennifer Johnsen (GWB) to Darren Murdoch, copying Lee Shivers, regarding information needed in connection with the pending discovery served by the Estate in the DJA. | Attorney-Client Privileged; Work Product |
| 416 | WORKMAN00002160PRIV-<br>WORKMAN00002163PRIV | October 25, 2021 emails exchanged between Jennifer Johnsen (GWB) and Darren Murdoch (SFMAIC), copying Lee Shivers and Tyran Turner (both SFMAIC) regarding information counsel requested in connection with the pending discovery served by the Estate in the DJA. | Attorney-Client Privileged; Work Product |
| 417 | WORKMAN00002164PRIV-<br>WORKMAN00002168PRIV | October 25 and October 26, 2021 emails exchanged between Jennifer Johnsen (GWB) and Darren Murdoch (SFMAIC), copying Lee Shivers and Tyran Turner (both SFMAIC) regarding information counsel requested in connection with the pending discovery served by the Estate in the DJA. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 418 | WORKMAN00002169PRIV-WORKMAN00002173PRIV | October 25 and October 26, 2021 emails exchanged between Jennifer Johnsen (GWB) and Darren Murdoch (SFMAIC), copying Lee Shivers and Tyran Turner (both SFMAIC) regarding information counsel requested in connection with the pending discovery served by the Estate in the DJA. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 419 | WORKMAN00002174PRIV-WORKMAN00002176PRIV | October 26, 2021 email with attachment from Lee Shivers (SFMAIC) to Jennifer Johnsen (GWB) providing materials requested by counsel for use in the DJA; the withheld attachments constitute materials requested by counsel in connection with this email but have been separately produced in discovery. | Attorney-Client Privileged; Work Product |
| 420 | WORKMAN00002177PRIV-WORKMAN00002182PRIV | October 25 and October 26, 2021 emails exchanged between Jennifer Johnsen (GWB) and Darren Murdoch (SFMAIC), copying Lee Shivers and Tyran Turner (both SFMAIC) regarding information counsel requested in connection with the pending discovery served by the Estate in the DJA. | Attorney-Client Privileged; Work Product |
| 421 | WORKMAN00002183PRIV-WORKMAN00002183PRIV | October 26, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Lee Shivers (SFMAIC) regarding information requested by counsel in connection with the DJA. | Attorney-Client Privileged; Work Product |
| 422 | WORKMAN00002184PRIV-WORKMAN00002184PRIV | October 28, 2021 email from Lee Shivers (SFMAIC) to Jennifer Johnsen (GWB) in response to October 26, 2021 emails exchanged between the two regarding information needed for discovery in the DJA. | Attorney-Client Privileged; Work Product |
| 423 | WORKMAN00002185PRIV-WORKMAN00002186PRIV | October 28, 2021 emails exchanged between Lee Shivers (SFMAIC) and Jennifer Johnsen (GWB) in response to October 26, 2021 emails they exchanged regarding information needed for discovery in the DJA. | Attorney-Client Privileged; Work Product |
| 424 | WORKMAN00002187PRIV-WORKMAN00002194PRIV | October 28, 2021 email from attorney Jennifer Johnsen (GWB) to Lee Shivers, copying Darren Murdoch, (both SFMAIC) attaching draft discovery responses and discussing the same in the email. | Attorney-Client Privileged; Work Product |
| 425 | WORKMAN00002195PRIV-WORKMAN00002201PRIV | October 29, 2021 email with attachment from attorney Jennifer Johnsen (GWB) to Lee Shivers (SFMAIC) discussing counsel's observations on the attachment and other | Attorney-Client Privileged; |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | |
|---|---|---|---|
| | | pending issues in the DJA; while withheld here as work product, the attachment has been produced elsewhere in discovery. | Work Product |
| 426 | WORKMAN00002202PRIV-WORKMAN00002203PRIV | October 29, 2021 email from Lee Shivers (SFMAIC) to Attorney Jennifer Johnsen (GWB) providing information requested by counsel for use in the DJA. | Attorney-Client Privileged; Work Product |
| 427 | WORKMAN00002204PRIV-WORKMAN00002210PRIV | October 29, 2021 email with attachment from attorney Jennifer Johnsen (GWB) to Lee Shivers (SFMAIC) discussing counsel's observations on the attachment and other pending issues in the DJA, followed by Lee Shivers' email forwarding the same to the claim file; while withheld here as work product, the attachment has been produced elsewhere in discovery. | Attorney-Client Privileged; Work Product |
| 428 | WORKMAN00002211PRIV-WORKMAN00002212PRIV | November 1, 2021 email from attorney Jennifer Johnsen (GWB) to Lee Shivers (SFMAIC) in response to October 29, 2021 emails exchanged between the two about information needed for use in the DJA. | Attorney-Client Privileged; Work Product |
| 429 | WORKMAN00002213PRIV-WORKMAN00002214PRIV | November 1, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Lee Shivers (SFMAIC) in response to October 29, 2021 emails they exchanged, all about information needed for use in the DJA. | Attorney-Client Privileged; Work Product |
| 430 | WORKMAN00002215PRIV-WORKMAN00002217PRIV | November 1, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Lee Shivers (SFMAIC) in response to October 29, 2021 emails they exchanged, all about information needed for use in the DJA. | Attorney-Client Privileged; Work Product |
| 431 | WORKMAN00002218PRIV-WORKMAN00002220PRIV | November 1, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Lee Shivers (SFMAIC) in response to October 29, 2021 emails they exchanged, all about information needed for use in the DJA. | Attorney-Client Privileged; Work Product |
| 432 | WORKMAN00002221PRIV-WORKMAN00002223PRIV | November 1, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Lee Shivers (SFMAIC) in response to October 29, 2021 emails they exchanged, all about information needed for use in the DJA. | Attorney-Client Privileged; Work Product |
| 433 | WORKMAN00002224PRIV-WORKMAN00002225PRIV | November 2 and November 3, 2021 emails exchanged between paralegal Brittany Perez (SFMAIC) and attorney Brian Boyle (SFMAIC) regarding the request of counsel | Attorney-Client Privileged; |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | |
|---|---|---|---|
| | | Jennifer Johnson (GWB) in relation to the pending Rule 30(b)(6) notice served by the Estate in the DJA. | Work Product |
| 434 | WORKMAN00002226PRIV-WORKMAN00002227PRIV | November 3, 2021 email from Brittany Perez to Megan Pfister (both SFMAIC corporate law) regarding handling of attorney Jennifer Johnsen's request, which forwards and concerns attorney Brian Boyle (SFMAIC)'s November 3, 2021 email about the handling of the request of counsel Jennifer Johnson (GWB) on the pending Rule 30(b)(6) notice served by the Estate in the DJA. | Attorney-Client Privileged; Work Product |
| 435 | WORKMAN00002228PRIV-WORKMAN00002229PRIV | November 3, 2021 emails exchanged between Brittany Perez and Megan Pfister (both SFMAIC corporate law) regarding handling of attorney Jennifer Johnsen's request and attorney Brian Boyle (SFMAIC)'s November 3, 2021 email about the handling of the request on the pending Rule 30(b)(6) notice served by the Estate in the DJA. | Attorney-Client Privileged; Work Product |
| 436 | WORKMAN00002230PRIV-WORKMAN00002232PRIV | November 3, 2021 emails exchanged between Brittany Perez and Megan Pfister (both SFMAIC corporate law) regarding handling of attorney Jennifer Johnsen's request and attorney Brian Boyle (SFMAIC)'s November 3, 2021 email about the handling of the request on the pending Rule 30(b)(6) notice served by the Estate in the DJA. | Attorney-Client Privileged; Work Product |
| 437 | WORKMAN00002233PRIV-WORKMAN00002239PRIV | November 3, 2021 email with attachments from attorney Jennifer Johnsen (GWB) to paralegal Brittany Perez, copying UW TM Denny Donald, Darren Murdoch, attorney Brian Boyle, and Teresa Hobson (all SFMAIC), regarding the Rule 30(b)(6) deposition in the DJA; while the attachments are withheld as work product in connection with this email, the individual documents have been separately produced in discovery. | Attorney-Client Privileged; Work Product |
| 438 | WORKMAN00002240PRIV-WORKMAN00002241PRIV | November 3, 2021 email from Denny O'Donald to paralegal Brittany Perez (SFMAIC), attorney Jennifer Johnsen (GWB), and TM UW Shay Anderson (SFMAIC), copying Darren Murdoch, attorney Brian Boyle, and Teresa Hobson (all SFMAIC) regarding request of retained counsel Johnsen in connection with | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | |
|---|---|---|---|
| | | preparation for Rule 30(b)(6) deposition in the DJA. | |
| 439 | WORKMAN00002242PRIV-WORKMAN00002248PRIV | November 3, 2021 email from Denny O'Donald to UW TM Shay Anderson (SFMAIC), forwarding November 3, 2021 email of retained counsel Jennifer Johnsen (GWB) request in connection with the noticed Rule 30(b)(6) deposition of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 440 | WORKMAN00002249PRIV-WORKMAN00002250PRIV | November 3, 2021 email from Darren Murdoch to UW TM Shay Anderson (SFMAIC) regarding November 3, 2021 emails of paralegal Brittany Perez (SFMAIC) and Denny O'Donald (SFMAIC) and the noticed Rule 30(b)(6) deposition of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 441 | WORKMAN00002251PRIV-WORKMAN00002253PRIV | November 3, 2021 email from paralegal Brittany Perez (SFMAIC) to TM Shay Anderson (SFMAIC), Denny O'Donald (SFMAIC), Shay Anderson (SFMAIC), Jennifer Johnsen (GWB) Darren Murdoch, attorney Brian Boyle, and Teresa Hobson (all SFMAIC) responding to November 3, 2021 emails on the noticed Rule 30(b)(6) deposition of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 442 | WORKMAN00002256PRIV-WORKMAN00002258PRIV | November 5, 2021 email from UW TM Shay Anderson (SFMAIC) to attorney Jennifer Johnsen (GWB) regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 443 | WORKMAN00002259PRIV-WORKMAN00002262PRIV | November 6, 2021 email from attorney Jennifer Johnsen (GWB) to Shay Anderson (SFMAIC) regarding Rule 30(b)(6) deposition of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 444 | WORKMAN00002263PRIV-WORKMAN00002266PRIV | November 8, 2021 email from attorney Jennifer Johnsen (GWB) to Shay Anderson (SFMAIC) regarding Rule 30(b)(6) deposition of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 445 | WORKMAN00002267PRIV-WORKMAN00002270PRIV | November 8, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) regarding Rule 30(b)(6) deposition of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 446 | WORKMAN00002271PRIV-WORKMAN00002275PRIV | November 8, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) regarding Rule 30(b)(6) deposition of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 447 | WORKMAN00002276PRIV-WORKMAN00002280PRIV | November 8, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) regarding Rule 30(b)(6) deposition of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 448 | WORKMAN00002281PRIV-WORKMAN00002285PRIV | November 8, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) regarding Rule 30(b)(6) deposition of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 449 | WORKMAN00002286PRIV-WORKMAN00002291PRIV | November 8, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) regarding Rule 30(b)(6) deposition of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 450 | WORKMAN00002292PRIV-WORKMAN00002292PRIV | November 9, 2021 email from attorney Jennifer Johnsen (GWB) to Lee Shivers and Darren Murdoch (GWB) regarding Rule 30(b)(6) deposition of SFMAIC in the DJA and counsel's communications with SFMAIC witness being designated for the same. | Attorney-Client Privileged; Work Product |
| 451 | WORKMAN00002293PRIV-WORKMAN00002293PRIV | November 9, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Darren Murdoch (GWB) regarding Rule 30(b)(6) deposition of SFMAIC in the DJA and counsel's communications with SFMAIC witness being designated for the same. | Attorney-Client Privileged; Work Product |
| 452 | WORKMAN00002294PRIV-WORKMAN00002403PRIV | November 9, 2021 email with attachments from UW TM Shay Anderson (SFMAIC) to attorney Jennifer Johnsen (GWB) providing materials and information requested by counsel in preparation for Rule 30(b)(6) deposition of SFMAIC in the DJA; while work product in connection with this email, the materials that constitute the withheld attachments have otherwise been produced in discovery. | Attorney-Client Privileged; Work Product |
| 453 | WORKMAN00002404PRIV-WORKMAN00002476PRIV | November 9, 2021 email with attachment from Lee Shivers (SFMAIC) to attorney Jennifer Johnsen (GWB) providing materials requested by counsel in connection with the Rule 30(b)(6) deposition of SFMAIC in the DJA; while work product in connection with this email, the materials in the withheld attachment have been produced elsewhere in discovery. | Attorney-Client Privileged; Work Product |
| 454 | WORKMAN00002477PRIV-WORKMAN00002477PRIV | November 10, 2021 email from attorney Jennifer Johnsen (GWB) to Lee Shivers | Attorney-Client |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | |
|---|---|---|---|
| | | (SFMAIC) regarding materials requested by counsel in connection with the Rule 30(b)(6) deposition of SFMAIC in the DJA. | Privileged; Work Product |
| 455 | WORKMAN00002478PRIV-WORKMAN00002478PRIV | November 10, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Lee Shivers (SFMAIC) regarding materials requested by counsel in connection with the Rule 30(b)(6) deposition of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 456 | WORKMAN00002479PRIV-WORKMAN00002480PRIV | November 10, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Lee Shivers (SFMAIC) regarding materials requested by counsel in connection with the Rule 30(b)(6) deposition of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 457 | WORKMAN00002481PRIV-WORKMAN00002481PRIV | November 11, 2021 meeting invite from Darren Murdoch to Jennifer Johnsen and Lee Shivers to discuss issues in the DJA. | Attorney-Client Privileged; Work Product |
| 458 | WORKMAN00002482PRIV-WORKMAN00002482PRIV | November 11, 2021 meeting invite from Darren Murdoch to Jennifer Johnsen and Lee Shivers to discuss issues in the DJA. | Attorney-Client Privileged; Work Product |
| 459 | WORKMAN00002483PRIV-WORKMAN00002483PRIV | Meeting invite response email to Darren Murdoch's November 11, 2021 meeting invite to discuss issues in the DJA. | Attorney-Client Privileged; Work Product |
| 460 | WORKMAN00002484PRIV-WORKMAN00002484PRIV | November 14, 2021 email with transcript of instant messages exchanged between Lee Shivers, Darren Murdoch, and attorney Jennifer Johnsen in November 11, 2021 meeting scheduled to discuss issues in the DJA. | Attorney-Client Privileged; Work Product |
| 461 | WORKMAN00002485PRIV-WORKMAN00002486PRIV | November 12, 2021 emails exchanged between Sophie Lim and Olivia Jones (SFMAIC UW) regarding Shay Anderson's November 9 email requesting materials in connection with the Rule 30(b)(6) deposition of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 462 | WORKMAN00002487PRIV-WORKMAN00002488PRIV | November 12, 2021 emails exchanged between Sophie Lim and Olivia Jones (SFMAIC UW) regarding Shay Anderson's November 9 email requesting materials in connection with the Rule 30(b)(6) deposition of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 463 | WORKMAN00002489PRIV-WORKMAN00002490PRIV | November 12, 2021 emails exchanged between Sophie Lim and Olivia Jones | Attorney-Client |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | (SFMAIC UW) regarding Shay Anderson's November 9 email requesting materials in connection with the Rule 30(b)(6) deposition of SFMAIC in the DJA. | Privileged; Work Product |
|---|---|---|---|
| 464 | WORKMAN00002491PRIV-WORKMAN00002491PRIV | November 12, 2021 email from Lee Shivers (SFMAIC) to attorney Jennifer Johnsen (GWB) regarding information needed by counsel for use in the DJA. | Attorney-Client Privileged; Work Product |
| 465 | WORKMAN00002492PRIV-WORKMAN00002497PRIV | November 12, 2021 email from attorney Jennifer Johnsen (GWB) to Shay Anderson (SFMAIC) regarding preparation for Rule 30(b)(6) deposition of SFMAIC in DJA. | Attorney-Client Privileged; Work Product |
| 466 | WORKMAN00002498PRIV-WORKMAN00002570PRIV | November 12, 2021 email with attachment from attorney Jennifer Johnsen (GWB) to Shay Anderson (SFMAIC) regarding preparation for Rule 30(b)(6) deposition of SFMAIC in DJA; while attachment is work product in connection with this email, the material in the attachment has been otherwise produced in discovery. | Attorney-Client Privileged; Work Product |
| 467 | WORKMAN00002571PRIV-WORKMAN00002576PRIV | November 12, 2021 email with attachment from Shay Anderson to attorney Brian Boyle (both SFMAIC) regarding the Rule 30(b)(6) deposition to be taken in the DJA; ACP/WP protects attachment, but the material in the attachment has otherwise been produced in discovery. | Attorney-Client Privileged; Work Product |
| 468 | WORKMAN00002577PRIV-WORKMAN00002579PRIV | November 12, 2021 email from attorney Brian Boyle (SFMAIC) to Shay Anderson and Wendy Purdue (assistant to attorney Boyle) regarding the Rule 30(b)(6) deposition to be taken in the DJA. | Attorney-Client Privileged; Work Product |
| 469 | WORKMAN00002580PRIV-WORKMAN00002580PRIV | November 12, 2021 meeting invitation from attorney Brian Boyle to Shay Anderson and paralegal Brittany Perez (all SFMAIC) regarding Rule 30(b)(6) deposition of State Farm in the DJA. | Attorney-Client Privileged; Work Product |
| 470 | WORKMAN00002581PRIV-WORKMAN00002581PRIV | November 12, 2021 meeting invitation from attorney Brian Boyle to Shay Anderson and paralegal Brittany Perez (all SFMAIC) regarding Rule 30(b)(6) deposition of State Farm in the DJA. | Attorney-Client Privileged; Work Product |
| 471 | WORKMAN00002582PRIV-WORKMAN00002582PRIV | November 15, 2021 response from Shay Anderson to November 12, 2021 meeting invitation from attorney Brian Boyle to Shay Anderson and paralegal Brittany Perez (all SFMAIC) regarding Rule | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | |
|---|---|---|---|
| | | 30(b)(6) deposition of State Farm in the DJA. | |
| 472 | WORKMAN00002583PRIV-WORKMAN00002583PRIV | November 15, 2021 response from Shay Anderson to November 12, 2021 meeting invitation from attorney Brian Boyle to Shay Anderson and paralegal Brittany Perez (all SFMAIC) regarding Rule 30(b)(6) deposition of State Farm in the DJA. | Attorney-Client Privileged; Work Product |
| 473 | WORKMAN00002584PRIV-WORKMAN00002584PRIV | November 16, 2021 email from Tyran Turner to Lee Shivers (both SFMAIC) regarding materials to be sent to counsel (GWB) in connection with the DJA. | Attorney-Client Privileged; Work Product |
| 474 | WORKMAN00002585PRIV-WORKMAN00002585PRIV | November 17, 2021 email from attorney Jennifer Johnsen (GWB) to Shay Anderson regarding information needed in preparation for Rule 30(b)(6) deposition of SFMAIC in DJA. | Attorney-Client Privileged; Work Product |
| 475 | WORKMAN00002586PRIV-WORKMAN00002586PRIV | November 17, 2021 out of office response email from Shay Anderson to attorney Jennifer Johnsen (GWB) in response to counsel's email concerning information needed in preparation for Rule 30(b)(6) deposition of SFMAIC in DJA. | Attorney-Client Privileged; Work Product |
| 476 | WORKMAN00002587PRIV-WORKMAN00002587PRIV | November 17, 2021 email from attorney Jennifer Johnson (GWB) to Lee Shivers and Darren Murdoch (SFMAIC) regarding issues presented in the DJA. | Attorney-Client Privileged; Work Product |
| 477 | WORKMAN00002588PRIV-WORKMAN00002589PRIV | November 17, 2021 email from Jennifer Johnsen (GWB) to Lee Shivers (SFMAIC) regarding information needed for use in the DJA. | Attorney-Client Privileged; Work Product |
| 478 | WORKMAN00002590PRIV-WORKMAN00002597PRIV | November 17, 2021 email from attorney Jennifer Johnsen (GWB) to Lee Shivers, Darren Murdoch and copying Shay Anderson (all SFMAIC) regarding discovery responses of SFMAIC in the DJA with draft discovery responses attached. | Attorney-Client Privileged; Work Product |
| 479 | WORKMAN00002598PRIV-WORKMAN00002598PRIV | November 18, 2021 email from Darren Murdoch to attorney Jennifer Johnson (GWB) regarding draft discovery responses of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 480 | WORKMAN00002599PRIV-WORKMAN00002605PRIV | Draft discovery responses prepared by counsel in the DJA, a privileged/work product protected attachment to an email that has been produced. | Attorney-Client Privileged; |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | Work Product |
|---|---|---|---|
| 481 | WORKMAN00002606PRIV-WORKMAN00002606PRIV | November 18, 2021 email from attorney Jennifer Johnsen (GWB) to Lee Shivers, Darren Murdoch, copying Shay Anderson (all SFMAIC) regarding draft discovery responses of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 482 | WORKMAN00002607PRIV-WORKMAN00002608PRIV | November 18, 2021 email from Shay Anderson (SFMAIC) to attorney Jennifer Johnsen (GWB) regarding draft discovery responses of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 483 | WORKMAN00002609PRIV-WORKMAN00002727PRIV | November 18, 2021 email with attachments from Shay Anderson to attorney Jennifer Johnsen (GWB), copying attorney Brian Boyle and paralegal Brittany Perez (SFMAIC), concerning the discovery responses prepared by counsel and providing information and materials for counsel's use in responding to discovery requests in the DJA. | Attorney-Client Privileged; Work Product |
| 484 | WORKMAN00002728PRIV-WORKMAN00002847PRIV | November 18, 2021 email with attachments from Shay Anderson to attorney Jennifer Johnsen (GWB), copying attorney Brian Boyle and paralegal Brittany Perez (SFMAIC), concerning the discovery responses prepared by counsel and providing information and materials for counsel's use in responding to discovery requests in the DJA. | Attorney-Client Privileged; Work Product |
| 485 | WORKMAN00002848PRIV-WORKMAN00002850PRIV | November 18, 2021 email from Shay Anderson to attorney Jennifer Johnsen (GWB), copying attorney Brian Boyle and paralegal Brittany Perez (SFMAIC), concerning the discovery responses prepared by counsel and providing information for counsel's use in responding to discovery requests in the DJA. | Attorney-Client Privileged; Work Product |
| 486 | WORKMAN00002851PRIV-WORKMAN00002853PRIV | November 18, 2021 email from Jennifer Johnsen to Lee Shivers and Darren Murdoch providing them with the November 18, 2021 email from Shay Anderson regarding the discovery responses of SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 487 | WORKMAN00002854PRIV-WORKMAN00002854PRIV | November 21, 2021 email with transcript of November 19, 2021 instant message from Darren Murdoch to Steven Sikora (both of SFMAIC) concerning SFMAIC's discovery responses prepared by counsel in the DJA. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 488 | WORKMAN00002855PRIV-WORKMAN00002974PRIV | November 19, 2021 email with attachments from Shay Anderson to attorney Jennifer Johnsen (GWB), copying attorney Brian Boyle and paralegal Brittany Perez (SFMAIC), concerning the discovery responses prepared by counsel and providing information and materials for counsel's use in responding to discovery requests in the DJA. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 489 | WORKMAN00002975PRIV-WORKMAN00002977PRIV | November 19, 2021 email from attorney Jennifer Johnsen (GWB) to Shay Anderson, attorney Brian Boyle, and paralegal Brittany Perez (all SFMAIC) regarding materials given to counsel for use in the DJA and counsel's questions regarding the same. | Attorney-Client Privileged; Work Product |
| 490 | WORKMAN00002978PRIV-WORKMAN00002981PRIV | November 19, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Shay Anderson, copying attorney Brian Boyle, and paralegal Brittany Perez (all SFMAIC), regarding materials given to counsel for use in the DJA and counsel's questions regarding the same. | Attorney-Client Privileged; Work Product |
| 491 | WORKMAN00002982PRIV-WORKMAN00002985PRIV | November 19, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Shay Anderson, copying attorney Brian Boyle, and paralegal Brittany Perez (all SFMAIC), regarding materials given to counsel for use in the DJA and counsel's questions regarding the same. | Attorney-Client Privileged; Work Product |
| 492 | WORKMAN00002986PRIV-WORKMAN00002989PRIV | November 19, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Shay Anderson, copying attorney Brian Boyle, and paralegal Brittany Perez (all SFMAIC), regarding materials given to counsel for use in the DJA and counsel's questions regarding the same. | Attorney-Client Privileged; Work Product |
| 493 | WORKMAN00002990PRIV-WORKMAN00002993PRIV | November 19, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Shay Anderson, copying attorney Brian Boyle, and paralegal Brittany Perez (all SFMAIC), regarding materials given to counsel for use in the DJA and counsel's questions regarding the same. | Attorney-Client Privileged; Work Product |
| 494 | WORKMAN00002994PRIV-WORKMAN00002998PRIV | November 19, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Shay Anderson, copying attorney Brian Boyle, and paralegal Brittany Perez (all SFMAIC), regarding materials given to | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | counsel for use in the DJA and counsel's questions regarding the same. | |
|---|---|---|---|
| 495 | WORKMAN00002999PRIV-WORKMAN00003003PRIV | November 19, 2021 emails exchanged between attorney Jennifer Johnsen (GWB) and Shay Anderson, copying attorney Brian Boyle, and paralegal Brittany Perez (all SFMAIC), regarding materials given to counsel for use in the DJA and counsel's questions regarding the same. | Attorney-Client Privileged; Work Product |
| 496 | WORKMAN00003004PRIV-WORKMAN00003004PRIV | November 19, 2021 email from Shay Anderson to Jessica Bass and Lee Shivers, copying Michael Young, Jeff Kressner, and Tyran Turner (all SFMAIC) regarding materials and information needed for attorney Jennifer Johnsen in connection with Rule 30(b)(6) deposition in DJA. | Attorney-Client Privileged; Work Product |
| 497 | WORKMAN00003005PRIV-WORKMAN00003035PRIV | November 19, 2021 email with attachments from Tyran Turner to Shay Anderson providing materials requested by Shay Anderson for counsel Jennifer Johnsen (GWB) to use in the DJA. | Attorney-Client Privileged; Work Product |
| 498 | WORKMAN00003036PRIV-WORKMAN00003036PRIV | November 24, 2021 email with transcript of instant messages exchanged between Jessica Bass and Pam Pride (both SFMAIC UW) regarding materials needed by counsel Jennifer Johnson and Shay Anderson for use in the DJA. | Attorney-Client Privileged; Work Product |
| 499 | WORKMAN00003037PRIV-WORKMAN00003038PRIV | November 22, 2021 email from Jessica Bass to Shay Anderson providing information in response to Shay Anderson's November 19, 2021 email concerning information/materials needed for counsel Jennifer Johnsen (GWB) in the DJA. | Attorney-Client Privileged; Work Product |
| 500 | WORKMAN00003039PRIV-WORKMAN00003040PRIV | November 22, 2021 emails exchanged between Jessica Bass and Shay Anderson regarding information needed for counsel Jennifer Johnsen (GWB) and Shay Anderson, as 30(b)(6) deponent for SFMAIC, in the DJA. | Attorney-Client Privileged; Work Product |
| 501 | WORKMAN00003041PRIV-WORKMAN00003069PRIV | November 22, 2021 email with attachment from Lee Shivers to Shay Anderson providing material requested in Shay Anderson's November 19, 2021 email for use in the DJA/Rule 30(b)(6) of SFMAIC. | Attorney-Client Privileged; Work Product |
| 502 | WORKMAN00003070PRIV-WORKMAN00003070PRIV | November 22, 2021 emails exchanged between Shay Anderson and Lee Shivers regarding materials provided to Shay for use in the DJA/Rule 30(b)(6) deposition. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 503 | WORKMAN00003071PRIV-<br>WORKMAN00003101PRIV | November 22, 2021 email with attachments from Shay Anderson to Jennifer Johnson (GWB) providing materials and information requested by counsel for use in the DJA/preparation for Rule 30(b)(6) deposition. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 504 | WORKMAN00003102PRIV-<br>WORKMAN00003102PRIV | November 22, 2021 email from Darren Murdoch to attorney Jennifer Johnsen (GWB) copying Lee Shivers (SFMAIC) regarding State Farm's discovery responses in the DJA. | Attorney-Client Privileged; Work Product |
| 505 | WORKMAN00003103PRIV-<br>WORKMAN00003103PRIV | November 22, 2021 emails exchanged between Darren Murdoch (SFMAIC) and attorney Jennifer Johnsen (GWB) regarding State Farm's discovery responses in the DJA. | Attorney-Client Privileged; Work Product |
| 506 | WORKMAN00003104PRIV-<br>WORKMAN00003104PRIV | November 27, 2021 email from Darren Murdoch sending to the claim file the November 17 and November 18, 2021 emails he and attorney Jennifer Johnsen (GWB) exchanged regarding issues raised in the DJA and counsel's review of the same. | Attorney-Client Privileged; Work Product |
| 507 | WORKMAN00003105PRIV-<br>WORKMAN00003106PRIV | November 29, 2021 emails between attorney Jennifer Johnsen (GWB), Lee Shivers, and Shay Anderson (both SFMAIC) discussing materials requested by counsel for the Estate in the DJA. | Attorney-Client Privileged; Work Product |
| 508 | WORKMAN00003107PRIV-<br>WORKMAN00003120PRIV | November 29, 2021 emails between attorney Jennifer Johnsen (GWB), Lee Shivers, and Shay Anderson (both SFMAIC) discussing materials requested by counsel for the Estate in the DJA. | Attorney-Client Privileged; Work Product |
| 509 | WORKMAN00003121PRIV-<br>WORKMAN00003123PRIV | November 29, 2021 emails between attorney Jennifer Johnsen (GWB), Lee Shivers, and Shay Anderson (both SFMAIC) discussing materials requested by counsel for the Estate in the DJA. | Attorney-Client Privileged; Work Product |
| 510 | WORKMAN00003124PRIV-<br>WORKMAN00003137PRIV | November 30, 2021 email of Darren Murdoch forwarding to the claim file the November 29, 2021 email of Jennifer Johnsen concerning the Tyger River Demand made by Workman Estate with counsel's comments on the same. | Attorney-Client Privileged; Work Product |
| 511 | WORKMAN00003138PRIV-<br>WORKMAN00003139PRIV | November 30, 2021 email of Darren Murdoch forwarding to the claim file the November 29, 2021 email of Jennifer Johnsen concerning the Tyger River Demand made by Workman Estate with counsel's comments on the same and the | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | November 30, 2021 emails exchanged between Darren Murdoch and Jennifer Johnsen regarding the Tyger River Demand. | |
|---|---|---|---|
| 512 | WORKMAN00003142PRIV-WORKMAN00003144PRIV | November 30, 2021 email of Shay Anderson to attorney Jennifer Johnsen (GWB) providing counsel with information requested for use in the DJA. | Attorney-Client Privileged; Work Product |
| 513 | WORKMAN00003145PRIV-WORKMAN00003151PRIV | November 30, 2021 email with attachments from Jennifer Johnsen (GWB) to Shay Anderson (SFMAIC) providing materials for Shay Anderson's review in order to gather information needed in the DJA; materials that make up the attachments have been produced elsewhere in discovery. | Attorney-Client Privileged; Work Product |
| 514 | WORKMAN00003152PRIV-WORKMAN00003155PRIV | November 30, 2021 emails exchanged between Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) regarding information needed in the DJA. | Attorney-Client Privileged; Work Product |
| 515 | WORKMAN00003156PRIV-WORKMAN00003160PRIV | November 30, 2021 emails exchanged between Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) regarding information needed in the DJA. | Attorney-Client Privileged; Work Product |
| 516 | WORKMAN00003161PRIV-WORKMAN00003165PRIV | November 30, 2021 email from attorney Jennifer Johnsen (GWB) to Shay Anderson (SFMAIC) regarding Rule 30(b)(6) deposition, followed by prior emails exchanged between Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) regarding information needed in the DJA. | Attorney-Client Privileged; Work Product |
| 517 | WORKMAN00003166PRIV-WORKMAN00003170PRIV | November 30, 2021 emails exchanged between Jennifer Johnsen (GWB) and Shay Anderson (SFMAIC) regarding information needed in the DJA. | Attorney-Client Privileged; Work Product |
| 518 | WORKMAN00003171PRIV-WORKMAN00003175PRIV | November 30, 2021 through December 2, 2021 emails exchanged between Jennifer Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 519 | WORKMAN00003176PRIV-WORKMAN00003180PRIV | November 30, 2021 through December 1, 2021 emails exchanged between Jennifer Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 520 | WORKMAN00003181PRIV-WORKMAN00003186PRIV | November 30, 2021 through December 1, 2021 emails exchanged between Jennifer | Attorney-Client |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA, with Shay Anderson's December 1, 2021 email to Todd Sivills forwarding the same. | Privileged; Work Product |
|---|---|---|---|
| 521 | WORKMAN00003187PRIV-WORKMAN00003192PRIV | November 30, 2021 through December 1, 2021 emails exchanged between Jennifer Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 522 | WORKMAN00003193PRIV-WORKMAN00003198PRIV | December 1, 2021 emails exchanged between Todd Sivills and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 523 | WORKMAN00003199PRIV-WORKMAN00003205PRIV | November 30, 2021 through December 1, 2021 emails exchanged between Jennifer Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 524 | WORKMAN00003206PRIV-WORKMAN00003211PRIV | November 30, 2021 through December 1, 2021 emails exchanged between Jennifer Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 525 | WORKMAN00003212PRIV-WORKMAN00003217PRIV | December 1, 2021 emails exchanged between Todd Sivills and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 526 | WORKMAN00003218PRIV-WORKMAN00003224PRIV | November 30, 2021 through December 1, 2021 emails exchanged between Jennifer Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 527 | WORKMAN00003225PRIV-WORKMAN00003231PRIV | December 1, 2021 emails exchanged between Todd Sivills and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 528 | WORKMAN00003232PRIV-WORKMAN00003238PRIV | December 1, 2021 email from Todd Sivills to Eric Hammons regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 529 | WORKMAN00003239PRIV-WORKMAN00003246PRIV | November 30, 2021 through December 1, 2021 emails exchanged between Jennifer Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 530 | WORKMAN00003247PRIV-WORKMAN00003253PRIV | December 1, 2021 emails exchanged between Eric Hammons and Todd Sivills regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 531 | WORKMAN00003254PRIV-WORKMAN00003261PRIV | November 30, 2021 through December 1, 2021 emails exchanged between Jennifer Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 532 | WORKMAN00003262PRIV-WORKMAN00003269PRIV | December 1, 2021 emails exchanged between Eric Hammons and Todd Sivills regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 533 | WORKMAN00003270PRIV-WORKMAN00003276PRIV | November 30, 2021 through December 2, 2021 emails exchanged between Jennifer Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 534 | WORKMAN00003277PRIV-WORKMAN00003283PRIV | November 30, 2021 through December 2, 2021 emails exchanged between Jennifer Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 535 | WORKMAN00003284PRIV-WORKMAN00003291PRIV | November 30, 2021 through December 2, 2021 emails exchanged between Jennifer Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 536 | WORKMAN00003292PRIV-WORKMAN00003299PRIV | November 30, 2021 through December 2, 2021 emails exchanged between Jennifer Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA, with Shay Anderson's December 2, 2021 email to Todd Sivills concerning the same. | Attorney-Client Privileged; Work Product |
| 537 | WORKMAN00003300PRIV-WORKMAN00003307PRIV | December 2, 2021 emails exchanged between Todd Sivills and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 538 | WORKMAN00003308PRIV-WORKMAN00003315PRIV | November 30, 2021 through December 2, 2021 emails exchanged between Jennifer Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 539 | WORKMAN00003316PRIV-WORKMAN00003323PRIV | November 30, 2021 through December 3, 2021 emails exchanged between Jennifer Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | | Work Product |
|---|---|---|---|
| 540 | WORKMAN00003324PRIV-WORKMAN00003331PRIV | November 30, 2021 through December 3, 2021 emails exchanged between Jennifer Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 541 | WORKMAN00003332PRIV-WORKMAN00003339PRIV | November 30, 2021 through December 3, 2021 emails exchanged between Jennifer Johnsen and Shay Anderson regarding the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 542 | WORKMAN00004856PRIV-WORKMAN00004870PRIV | December 3, 2021 email of Tyran Turner (SFMAIC) to Warren Moise, counsel retained by SFMAIC to represent and defend SFMAIC's insured, Lamb Jr., against third-party claims and litigation, attaching for purposes of Moise's representation the demand of the Estate of Workman with Jennifer Johnsen's email to State Farm concerning the demand. | Attorney-Client Privileged; Work Product |
| 543 | WORKMAN00004871PRIV-WORKMAN00004886PRIV | December 3, 2021 response email of Warren Moise, counsel retained by SFMAIC to represent and defend SFMAIC's insured, Lamb Jr., against third-party claims and litigation, to email of Tyran Turner (SFMAIC) regarding the demand of the Estate of Workman. | Attorney-Client Privileged; Work Product |
| 544 | WORKMAN00003340PRIV-WORKMAN00003341PRIV | December 3, 2021 email with attachment from Amanda Houser (GWB) to Shay Anderson and attorney Jennifer Johnsen (GWB) providing materials selected by counsel for Shay's use in preparing for Rule 30(b)(6) deposition. | Attorney-Client Privileged; Work Product |
| 545 | WORKMAN00003342PRIV-WORKMAN00003342PRIV | December 6, 2021 email from Shay Anderson to attorney Jennifer Johnsen and Amanda Houser (both GWB) regarding Rule 30(b)(6) deposition in DJA. | Attorney-Client Privileged; Work Product |
| 546 | WORKMAN00003343PRIV-WORKMAN00003344PRIV | December 6, 2021 emails exchanged between Shay Anderson and attorney Jennifer Johnsen (GWB) regarding Rule 30(b)(6) deposition in DJA. | Attorney-Client Privileged; Work Product |
| 547 | WORKMAN00003345PRIV-WORKMAN00003540PRIV | December 6, 2021 email with attachment from attorney Jennifer Johnsen (GWB) to Shay Anderson (SFMAIC) providing materials to be reviewed in preparation for the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 548 | WORKMAN00003541PRIV-WORKMAN00003550PRIV | December 7, 2021 email with attachment from attorney Jennifer Johnsen (GWB) to Shay Anderson (SFMAIC) providing materials to be reviewed in connection with the Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
|---|---|---|---|
| 549 | WORKMAN00004887PRIV-WORKMAN00004889PRIV | January 10, 2022 emails exchanged between Shay Anderson and attorney Peter Bottenhorn (SFMAIC) and paralegal Brittany Perez (SFMAIC) and Shay Anderson regarding the discovery served on State Farm in the DJA, including retained counsel Jennifer Johnsen's January 9, 2022 email regarding the same. | Attorney-Client Privileged; Work Product |
| 550 | WORKMAN00004890PRIV-WORKMAN00004892PRIV | January 10, 2022 emails exchanged between Shay Anderson and attorney Peter Bottenhorn (SFMAIC) and paralegal Brittany Perez (SFMAIC) regarding the discovery served on State Farm in the DJA, including retained counsel Jennifer Johnsen's January 9, 2022 email regarding the same. | Attorney-Client Privileged; Work Product |
| 551 | WORKMAN00004893PRIV-WORKMAN00005039PRIV | January 11, 2022 email from Kathi Faust to Shay Anderson attaching materials gathered in response to discovery requests served on SFMAIC in the DJA. | Attorney-Client Privileged; Work Product |
| 552 | WORKMAN00005040PRIV-WORKMAN00003553PRIV | January 11, 2022 email from Shay Anderson to attorney Jennifer Johnsen (GWB) attaching materials gathered in response to discovery requests served on SFMAIC in the DJA and providing information in regards to the same. | Attorney-Client Privileged; Work Product |
| 553 | WORKMAN00003554PRIV-WORKMAN00003674PRIV | September 10, 2021 email from Lee Shivers (SFMAIC) to Bill Young (GWB) attaching materials as requested by counsel for his use in representing SFMAIC. The materials attached to the email, while withheld as attachments to this email, are produced elsewhere in the Claim File. | Attorney-Client Privileged; Work Product |
| 554 | WORKMAN00003675PRIV-WORKMAN00003686PRIV | October 1, 2021 internal email within SFMAIC Corporate Law copying Steven Sikora setting forth Sikora's request for Corporate Law's review of subpoena served by Workman Estate. | Attorney-Client Privileged; Work Product |
| 555 | WORKMAN00003687PRIV-WORKMAN00003698PRIV | October 1, 2021 internal email within SFMAIC Corporate Law setting forth Sikora's request for Corporate Law's review of subpoena served by Workman Estate. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| 556 | WORKMAN00003699PRIV-WORKMAN00003710PRIV | October 1, 2021 internal email within SFMAIC Corporate Law copying Steven Sikora responding to and setting forth Sikora's request for Corporate Law's review of subpoena served by Workman Estate. | Attorney-Client Privileged; Work Product |
|-----|------------------------------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------------------------------------------|
| 557 | WORKMAN00003711PRIV-WORKMAN00003722PRIV | October 1, 2021 internal email within SFMAIC Corporate Law regarding Sikora's request for Corporate Law's review of subpoena served by Workman Estate. | Attorney-Client Privileged; Work Product |
| 558 | WORKMAN00003723PRIV-WORKMAN00003734PRIV | October 1, 2021 email from Steven Sikora to Lee Shivers, copying Darren Murdoch, forwarding SFMAIC Corporate Law's response/direction to Sikora's request for Corporate Law's review of subpoena served by Workman Estate. | Attorney-Client Privileged; Work Product |
| 559 | WORKMAN00003735PRIV-WORKMAN00003748PRIV | October 1, 2021 email from Darren Murdoch sending to the claim file the email from Steven Sikora to Lee Shivers, copying Darren Murdoch, forwarding SFMAIC Corporate Law's response/direction to Sikora's request for Corporate Law's review of subpoena served by Workman Estate. | Attorney-Client Privileged; Work Product |
| 560 | WORKMAN00003749PRIV-WORKMAN00003821PRIV | October 28, 2021 email with attachments from Corporate Law discovery intake to attorney Brian Boyle (SFMAIC) for purposes of responding to discovery served in the DJA; the withheld attachments have been separately produced in discovery. | Attorney-Client Privileged; Work Product |
| 561 | WORKMAN00003822PRIV-WORKMAN00003896PRIV | November 2, 2021 email with attachments from paralegal Brittany Perez (SFMAIC) to attorney Brian Boyle (SFMAIC) regarding the request of counsel Jennifer Johnson (GWB) in relation to the pending Rule 30(b)(6) notice served by the Estate in the DJA; while the attachments, work product in connection with this email, have been withheld, they have been separately produced in discovery. | Attorney-Client Privileged; Work Product |
| 562 | WORKMAN00003897PRIV-WORKMAN00003970PRIV | November 3, 2021 email with attachments from paralegal Brittany Perez (SFMAIC) to attorney Jennifer Johnson (GWB), copying Darren Murdoch, attorney Brian Boyle, Denny Donald, and Teresa Hobson (all SFMAIC) regarding the handling of the pending Rule 30(b)(6) notice and retained counsel Jennifer Johnsen's requests with respect to the same; the attachments, while withheld in connection with this email as | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | work product, have been separately produced in discovery. | |
|---|---|---|---|
| 563 | WORKMAN00003971PRIV-WORKMAN00004044PRIV | November 3, 2021 email with attachments from attorney Jennifer Johnsen (GWB) to UW TM Denny Donald (SFMAIC) regarding the Rule 30(b)(6) deposition in the DJA; while the attachments are withheld as work product in connection with this email, the individual documents have been separately produced in discovery. | Attorney-Client Privileged; Work Product |
| 564 | WORKMAN00004045PRIV-WORKMAN00004118PRIV | November 3, 2021 email with attachments from Denny O'Donald to UW TM Shay Anderson (SFMAIC), forwarding November 3, 2021 email of paralegal Brittany Perez and the materials included thereon regarding the Rule 30(b)(6) deposition in the DJA; while the attachments are withheld as work product in connection with this email, the individual documents have been separately produced in discovery. | Attorney-Client Privileged; Work Product |
| 565 | WORKMAN00004119PRIV-WORKMAN00004125PRIV | November 8, 2021 email of Lee Shivers (SFMAIC) to attorney Jennifer Johnsen (GWB), SFMAIC's counsel in the DJA, providing information and attaching material for Johnsen's use in the DJA litigation and regarding actions taken for purposes of the DJA litigation. While withheld in connection with this email, the materials attached to the email have been produced elsewhere in discovery. | Attorney-Client Privileged; Work Product |
| 566 | WORKMAN00004126PRIV-WORKMAN00004129PRIV | November 8, 2021 email from attorney Jennifer Johnsen to Lee Shivers regarding information needed for counsel's use in the DJA. | Attorney-Client Privileged; Work Product |
| 567 | WORKMAN00004130PRIV-WORKMAN00004137PRIV | November 9, 2021 email of Jennifer Johnsen to Shay Anderson attaching materials for Shay Anderson's use in preparing for Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |
| 568 | WORKMAN00004138PRIV-WORKMAN00004144PRIV | November 9, 2021 email of Jennifer Johnsen to Shay Anderson attaching materials for Shay Anderson's use in preparing for Rule 30(b)(6) deposition in the DJA. | Attorney-Client Privileged; Work Product |

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

WHELAN MELLEN & NORRIS, LLC

By: _____
Robert W. Whelan
Bar No. 71174
E-Mail: robbie@whelanmellen.com
M. Kathleen McTighe Mellen
Bar No. 100826
E-Mail: katie@whelanmellen.com
89 Broad Street
Charleston, SC 29401
(843) 998-7099

*Attorneys for Defendant State Farm Mutual Automobile Insurance Company*

February 14, 2023

Charleston, South Carolina

ELECTRONICALLY FILED - 2024 Jul 11 7:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## <u>CERTIFICATE OF SERVICE</u>

I, an attorney of the law firm Whelan Mellen Norris, LLC, counsel for Defendant State Farm Mutual Automobile Insurance Company, do hereby certify that I have served all counsel in this action with a copy of the pleading(s) hereinbelow specified by emailing a copy of the same to the following address(es):

Pleading:                                   **STATE FARM MUTUAL AUTOMOBILE**
                                            **INSURANCE COMPANY'S THIRD**
                                            **SUPPLEMENTAL PRIVILEGE LOG**

Counsel Served:                             Justin S. Kahn
                                            Kahn Law Firm, LLP
                                            jskahn@kahnlawfirm.com
                                            pmichel@kahnlawfirm.com

                                            *Attorneys for Plaintiffs*

                                            John S. Wilkerson, III
                                            Lindsey M. Behnke
                                            Turner Padget Graham & Laney, P.A.
                                            jwilkerson@turnerpadget.com
                                            lbehnke@turnerpadget.com

                                            *Attorneys for Defendant Gallivan White & Boyd, P.A.*

                                            _____
                                            M. Kathleen McTighe Mellen

May 24, 2024

ELECTRONICALLY FILED - 2024 Aug 29 1:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

IN THE COURT OF COMMON PLEAS

Civil Action No. 2023-CP-10-01832

Robert C. Workman, Individually and as
Personal Representative of the Estate of
James K. Workman, Kelly Workman Tick
and Matthew T. Workman,

Plaintiffs,

vs.

State Farm Mutual Automobile Insurance
Company and Gallivan White & Boyd, P.A.,

Defendants.

**ORDER GRANTING DEFENDANT
GALLIVAN WHITE & BOYD, P.A.'S
MOTION FOR JUDGMENT ON THE
PLEADINGS**

THIS MATTER is before the Court on the Motion for Judgment on the Pleadings filed by Defendant Gallivan White & Boyd, P.A. ("GWB"). For the reasons set forth below, the Court GRANTS the Motion as to all causes of action.

## BACKGROUND

Plaintiffs' Complaint alleges wrongdoing in the filing and handling of a declaratory judgment action brought by an insurance company and its counsel to adjudicate the question of coverage for a tragic accident. GWB was retained as counsel for State Farm and in that capacity filed a declaratory judgment action (the "Underlying Action"), claiming that because an excluded driver caused the accident, State Farm had no obligation to extend coverage. *See* DJA Compl. ¶ 29-34, Aug. 16, 2021, C.A. No. 2:21-cv-02623, ECF No. 1.[1] Plaintiffs allege that policy documents

---

[1] The court takes judicial notice of the pleadings and exhibits filed in the Underlying Action pursuant to Rule 201, South Carolina Rules of Evidence (A court may take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."). *See also Doe v. Bishop of Charleston,* 407 S.C. 128, 134 n. 2, 754 S.E.2d 494, 497 n. 2 (2014) (recognizing a circuit court may take judicial notice of previously entered, related court orders and consider them when ruling on a Rule 12(b)(6), SCRCP, motion to dismiss); Rule 201(f), SCRE ("Judicial notice may be taken at any stage of the proceeding.").

ELECTRONICALLY FILED - 2024 Aug 29 1:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

attached to the Underlying Action complaint were falsified by State Farm to avoid providing coverage for the Accident. *See generally*, Compl. This Court notes that Plaintiffs raised the same issue of the policy documents' authenticity and related alleged bad acts in the Underlying Action through a Motion for Sanctions[2], which State Farm opposed[3]. The District Court, with all the evidence before it, denied the Motion for Sanctions and granted State Farm's voluntary dismissal of the case.[4]

GWB argues that Rule 12(c), SCRCP requires dismissal of each cause of action brought against it because (1) GWB is immune from Plaintiffs' causes of action, and (2) Plaintiffs lack sufficient facts to support each individual cause of action. In addition, GWB asserts that some of the Plaintiffs lack standing. The Court held a hearing on this Motion on July 10, 2024. The Motion has been fully briefed and is ripe for disposition.

## DISCUSSION AND CONCLUSIONS

### I.  STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a), SCRCP. A motion filed under Rule 12(c), SCRCP challenges the legal sufficiency of the complaint, and is granted when "there is no issue of fact raised by the complaint that would entitle plaintiff to judgment if resolved in plaintiff's favor." *Russell v. Columbia,* 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991)." "A motion for judgment on the pleadings is in the nature of a demurrer, and will be granted 'when, under the admitted facts, the moving party would be entitled to judgment on the merits, without regard to what the findings might be on the facts on which the issue is joined.'" *See Brown v. United Ins. Co. of America*, 268 S.C. 254,

---

[2] Motion for Sanctions, February 10, 2022, C.A. No. 2:21-cv-02623, ECF No. 66.
[3] Response in Opposition to Motion for Sanctions, May 24, 2022, C.A. No. 2:21-cv-02623, ECF No. 81.
[4] Order, July 28, 2022, C.A. No. 2:21-cv-02623, ECF No. 87.

ELECTRONICALLY FILED - 2024 Aug 29 1:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

257, 233 S.E.2d 298, 300 (1977) (quoting *Wooten v. Standard Life & Casualty Insurance Co.,* 239 S.C. 243, 248, 122 S.E.2d 637, 639 (1961)) "When considering such motion, the court must regard all properly pleaded factual allegations as admitted." *Russell,* 305 S.C. at 86. However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to a presumption of truth. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).

## II.   DISCUSSION

GWB requests that the Court dismiss Plaintiffs' causes of action for aiding and abetting abuse of process, negligent misrepresentation, negligence, and civil conspiracy claims. GWB bases its motion both upon attorney immunity and shortcomings specific to each cause of action. Because immunity is relevant to all causes of action, this Order discusses it first, then addresses each cause of action.

### A.  ATTORNEY IMMUNITY FROM LIABILITY TO THIRD PERSONS

It is well-established in South Carolina that "an attorney is immune from liability to third persons arising from the performance of his professional activities as an attorney on behalf of and with the knowledge of his client." *Gaar v. N. Myrtle Beach Realty Co.*, 287 S.C. 525, 528, 339 S.E.2d 887, 889 (Ct. App. 1986). In *Gaar*, the Court of Appeals explained that because an "attorney normally conducts the litigation solely in his professional capacity. . .[without] personal interest in the suit" he is only held liable "to his client and those in privity with his client, for injury allegedly arising out of the performance of his professional duties." *Id.* 287 S.C. at 529, 339 S.E.2d at 889 (citing *W.D.G., Inc. v. Mutual Mfg. & Supply Co.*, 5 Ohio Op.3d 397 (1976)) (internal quotations omitted). This immunity supports our legal system, which requires that "[a]ttorneys. . . be free to act and advise their clients without constant fear of harassment from lawsuits." *Id.*, 287

ELECTRONICALLY FILED - 2024 Aug 29 1:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

S.C. at 529, 339 S.E.2d at 889. The immunity rule articulated in *Gaar* has been favorably cited in subsequent South Carolina cases.[5]

The Complaint does not allege – and there is no evidence indicating – that GWB represented any of the Plaintiffs at any time. Therefore, unless Plaintiffs can show that GWB acted outside the scope of its representation of State Farm and without State Farm's knowledge, South Carolina law requires the dismissal of Plaintiffs' causes of action.

### B.  AIDING AND ABETTING ABUSE OF PROCESS

Plaintiffs assert they are entitled to relief from GWB for its role in alleged abuse of process by State Farm in pursuing the Underlying Action. To recover from GWB, Plaintiffs must show that GWB acted outside the scope of its capacity as State Farm's counsel and/or outside State Farm's authority. *See Gaar*, 287 S.C. at 528, 339 S.E.2d at 889 (holding an attorney was immune from a malicious prosecution claim when he acted with his client's authority in pursuing the case). Abuse of process requires a showing of ulterior purpose not proper to the proceeding itself and a willful act not authorized by the legal process. *See Broadmoor Apartments of Charleston v. Horwitz*, 306 S.C. 482, 486 (1991) (internal citations omitted); *Swicegood v. Lott*, 379 S.C. 346, 352, 665 S.E.2d 211, 214 (Ct. App. 2008); and *Food Lion, Inc. v. United Food & Commercial Workers Intern. Union*, 351 S.C. 65, 71, 567 S.E.2d 251, 253 (Ct. App. 2002) (internal citations omitted). If an abuse of process has occurred, then "liability for an abuse of process extends to all who *knowingly* participate, aid, or abet in the abuse." 306 S.C. at 486 (citing 1 Am. Jur.2d *Abuse of Process* § 17; 72 C.J.S. *Process* § 112) (emphasis added).

---

[5] *See Stiles v. Onorato*, 318 S.C. 297, 457 S.E.2d 601 (1995) (noting an attorney is immune from third party claims for actions taken in his professional capacity) and *Hager v. McCabe, Trotter & Beverly, P.C.*, 435 S.C. 740, 869 S.E.2d 886 (Ct. App. 2022) ("Immunity is a function of the fact that an attorney acting within the scope of representation is not acting on his or her own behalf, but on the client's behalf").

ELECTRONICALLY FILED - 2024 Aug 29 1:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Viewing the Complaint in the light most favorable to the Plaintiffs, it is undisputed that GWB pursued the Underlying Action on State Farm's behalf and with State Farm's knowledge. Therefore, Plaintiffs cannot maintain this cause of action against GWB. In addition, Plaintiffs' Complaint fails to allege any purpose not proper to a declaratory judgment action or an act unauthorized by the process. Determination of coverage is a proper purpose of a declaratory judgment proceeding. Plaintiffs disagree with State Farm's position on coverage, but they have not alleged that State Farm had any other purpose for filing the Underlying Action. By extension, Plaintiffs cannot allege that GWB was aware of an undefined ulterior purpose. Similarly, although Plaintiffs take issue with the policy documents, attaching the policy documents is authorized by the legal process. Therefore, Plaintiffs' aiding and abetting abuse of process cause of action fails and GWB is entitled to judgment under Rule 12(c).

### C. NEGLIGENT MISREPRESENTATION

Plaintiffs claim that GWB negligently misrepresented to Plaintiffs that the policy documents filed with the Underlying Action were authentic. Compl. ¶ 132. Negligent misrepresentation requires (1) a misrepresentation; (2) a defendant's pecuniary interest in making the misrepresentation; (3) a duty of care owed by defendant to the plaintiff; (4) a breach of the duty of care; (5) a plaintiff's reasonable reliance on the misrepresentation; and (6) damages. *See Turner v. Milliman*, 392 S.C. 116, 123, 708 S.E.2d 766, 769 (2011). GWB argues that because it was acting as State Farm's attorney and with State Farm's authority in utilizing the policy documents in the Underlying Action, it is immune from this cause of action. GWB also denies that the policy documents were falsified, and argues that regardless of the documents' authenticity, Plaintiffs have failed to establish the necessary elements of the cause of action.

ELECTRONICALLY FILED - 2024 Aug 29 1:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Upon review of the Complaint, the Court finds no allegation that GWB acted outside the scope of its capacity as State Farm's attorney, necessitating dismissal of this cause of action on the grounds of immunity. Further, the Complaint merely recites that GWB had a pecuniary interest in making the representation and that Plaintiffs were damaged by their reliance on the representation, without providing any supporting facts. Compl. ¶¶ 135, 139 and 140 ("135) Defendants had a pecuniary interest in making these representations. . .139) Plaintiffs and others justifiably relied on the representations. . .140) Plaintiffs and others suffered losses, including pecuniary, as a proximate result of their reliance on the representations and associated conduct of Defendants").

Finally, Plaintiffs cannot establish a duty of care and a breach of that duty. "An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance." *Spence v. Wingate*, 395 S.C. 148, 161, 716 S.E.2d 920, 927 (internal citations and quotations omitted). Plaintiffs allege professional standards dictate that GWB owes them an independent duty, citing the South Carolina Rules of Professional Conduct ("RPC") and the Restatement (Third) of the Law Governing Lawyers (the "Restatement"). *See* Compl., Exhibit A. Each precludes Plaintiffs from using it to establish a duty. *See* Rules of Professional Conduct: Scope [7], RPC, Rule 407, SCACR ("Violation of a Rule [should not] create any presumption. . .that a legal duty has been breached"); *and see* RESTATEMENT 3D OF THE LAW GOVERNING LAWYERS, § 51, cmt c ("A lawyer representing a party in litigation has no duty of care to the opposing party under this Section, and hence no liability for lack of care. . ."). Without a duty, there can be no breach.

For these reasons, GWB is entitled to judgment on the merits on the negligent misrepresentation cause of action.

ELECTRONICALLY FILED - 2024 Aug 29 1:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### D. NEGLIGENCE

GWB requests dismissal of this cause of action because, in addition to attorney immunity, GWB owed no independent duty to Plaintiffs. A plaintiff cannot prevail on a negligence cause of action without establishing a duty of care. *See Moore v. Weinberg*, 373 S.C. 209, 220, 644 S.E.2d 740, 746 (2007). Our Supreme Court has explicitly recognized that "an attorney owes no duty to a non-client unless the attorney breaches some independent duty to a third person or acts in his own personal interest, outside the scope of his representation of the client." *Argoe v. Three Rivers Behavioral Center and Psychiatric Solutions*, 388 S.C. 394, 395, 697 S.E.2d 551, 554 (2010) (internal citations and quotations omitted). Further, a lawyer owes no duty of care to an opposing party in litigation. *See* RESTATEMENT 3D OF THE LAW GOVERNING LAWYERS, § 51, cmt c.

Upon careful review, the only reasonable inference from the Complaint is that GWB was acting in its professional capacity as State Farm's legal counsel, and cannot be sued by Plaintiffs for the actions it took in that capacity. *See Gaar*, 287 S.C. at 528, 339 S.E.2d at 889. The Complaint does not allege facts that would tend to show GWB acted in its own interest or outside the scope of its representation of State Farm. Further, this Court can find no basis for Plaintiffs' assertion that GWB owed them a legal duty that gives rise to a civil cause of action. GWB represented State Farm, an opposing party to the Estate of James K. Workman in the Underlying Action. The Individual Plaintiffs had no role in the Underlying Action or connection to GWB. Therefore, Plaintiffs' negligence claim against GWB must be dismissed under Rule 12(c).

ELECTRONICALLY FILED - 2024 Aug 29 1:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### E.  CONSPIRACY

Plaintiffs' cause of action for civil conspiracy incorporates prior allegations of the Complaint and states:

> 149) Defendants acted together in combination or by agreement.
> 150) Defendants committed at least one unlawful act or a lawful act by unlawful means.
> 151) Defendants acted together and committed one or more acts in furtherance of that agreement.
> 152) As a proximate result of Defendants' civil conspiracy, Plaintiffs were injured and damaged.

Compl. ¶¶ 148-152. This is a verbatim recitation of the elements of civil conspiracy, unsupported by separate factual allegations. *See Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 861 S.E.2d 774, 780 (2021). In South Carolina, a plaintiff "must plead additional facts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit dismissal of the claim." *Hackworth v. Greywood at Hammett, LLC*, 385 S.C. 110, 682 S.E.2d 871, 875 (Ct. App. 2009), *overruled on other grounds by Paradis*, 861 S.E.2d 774.  "Where the particular acts charged as a conspiracy are the same as those relied on as the tortious act or actionable wrong, plaintiff cannot recover damages for such act or wrong, and recover likewise on the conspiracy to do the act or wrong.'" *Todd v. S.C. Farm Bureau Mut. Ins. Co.,* 276 S.C. 284, 278 S.E.2d 607, 612 (1981) (quoting 15A C.J.S. *Conspiracy* § 33, at 718)), *overruled on other grounds by Paradis*, 861 S.E.2d 774.

Viewing the allegations in the light most favorable to the Plaintiffs and taking all well-pleaded factual allegations as true, the Court finds the Plaintiffs fail to allege any additional acts by GWB in furtherance of a conspiracy that are separate and independent from other wrongful acts alleged in the Complaint. Plaintiffs merely incorporate previous claims and add conclusory allegations that GWB was engaged in a civil conspiracy. Further, Plaintiffs have not alleged

ELECTRONICALLY FILED - 2024 Aug 29 1:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

sufficient facts to show that GWB acted outside the scope of its representation of State Farm, or that it owed Plaintiffs an independent duty, barring Plaintiffs from bringing a civil conspiracy cause of action against GWB. *See Kozel v. Kozel*, 299 F. Supp. 3d 737, 757 (D.S.C. 2018) (quoting *Stiles*, 457 S.E.2d at 602). Therefore, the cause of action fails to raise sufficient factual allegations to survive a Rule 12(c) motion and is dismissed.

### F. INDIVIDUAL PLAINTIFFS LACK STANDING TO BRING THE COMPLAINT

GWB argues that with the exception of the Estate of James K. Workman, the Plaintiffs lack standing to bring the Complaint. In order to have constitutional standing, a party bringing an action must have "a real, material, or substantial interest in the subject matter of the action" rather than "a nominal or technical interest in the action." *Uhlig LLC v. Shirley*, 2011 U.S. Dist. LEXIS 31833, *10, 2011 WL 1119548 (D.S.C. 2011) (citing *Sloan v. Greenville County*, 356 S.C. 531, 547, 590 S.E.2d 338, 347 (Ct. App. 2003)). With the exception of the Estate of James K. Workman, none of the Plaintiffs were parties to the Underlying Action. *See* Compl. ¶ 74. The only specific interest ascribed to the individual Plaintiffs in the Complaint is that they are heirs of the Estate (Compl. ¶¶ 20-22), which is not an interest that gives rise to standing in South Carolina. *See Estate of Corley*, 299 S.C. 525, 526, 386 S.E.2d 264, 265 (Ct. App. 1989) (holding that "the heirs [of the estate] were not real parties in interest [in an action to recover property of the decedent] because they were not the legal representatives of the estate and therefore did not have standing to pursue the action. . .."). Therefore, the Individual Plaintiffs lack standing.

### G. CAUSES OF ACTION AGAINST GWB ARE DISMISSED WITH PREJUDICE

While dismissal without prejudice is often favored, dismissal with prejudice is proper in cases where "it appears to a certainty that no relief can be granted under any set of facts that can be proved in support of [Plaintiffs'] allegation." *See Spence v. Spence*, 368 S.C. 106, 129, 628

ELECTRONICALLY FILED - 2024 Aug 29 1:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

S.E.2d 869, 881 (2006). Because of the well-established law of attorney immunity, Plaintiffs cannot succeed on any of their causes of action against GWB without proving that GWB was acting outside the scope of its representation of State Farm and without State Farm's knowledge. After careful consideration of the pleadings in this case and the materials properly before the Court, this Court does not see any avenue for Plaintiffs to allege, much less prove, that GWB acted outside of its representation. As noted above, Plaintiffs raised the same arguments and issues in federal court when seeking sanctions against GWB for work it performed on behalf of State Farm as its attorney. Indeed, if Plaintiffs believed GWB's conduct was done outside of its role as counsel in the federal case, it did not allege as much and the court did not make such a finding.

In addition to the lack of any allegation in the Complaint that GWB was somehow acting in its own interest, the Court inquired at the hearing as to any evidence or potential basis for such an assertion. In response, counsel for Plaintiffs noted that GWB was acting in its own interest because it wanted to keep its client – State Farm – happy so that GWB would keep its business and, therefore, continue to earn legal fees from State Farm cases. However, if this allegation is sufficient evidence of an attorney acting in his or her own interest to defeat the well-established and long-recognized defense of attorney immunity, the defense would be of little use as the exception would swallow the rule. Accordingly, because Plaintiffs cannot plead any facts that would entitle them to relief, dismissal with prejudice is appropriate on all causes of action against GWB.

### III.    Conclusion

For the foregoing reasons, and having carefully considered the pleadings and applicable law, the Motion for Judgment on the Pleadings filed by GWB is GRANTED and Plaintiffs' causes of action against GWB are dismissed with prejudice.

_____
The Honorable Thomas William McGee, III
Circuit Court Judge

Columbia, South Carolina

_____, 2024

TPGL 14692335v1

ELECTRONICALLY FILED - 2024 Aug 29 1:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Aug 29 1:11 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832



Charleston Common Pleas

**Case Caption:**     Robert C Workman , plaintiff, et al VS   State Farm Mutual
Automobile Insurance Company , defendant, et al

**Case Number:**     2023CP1001832

**Type:**     Order/Other

So Ordered

s/ Thomas W. McGee III, Judge Code 2786

Electronically signed on 2024-08-29 11:14:57     page 12 of 12

ELECTRONICALLY FILED - 2024 Sep 06 12:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA
COUNTY OF CHARLESTON

COURT OF COMMON PLEAS
CASE NO. 23-CP-10-1832

ROBERT C. WORKMAN, INDIVIDUALLY AND
AS PERSONAL REPRESENTATIVE OF THE
ESTATE OF JAMES K. WORKMAN, KELLY
WORKMAN TICK AND MATTHEW T.
WORKMAN,

PLAINTIFFS,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY AND
GALLIVAN, WHITE & BOYD, P.A.,

DEFENDANTS.

PLAINTIFFS'
NOTICE AND MOTION
TO RECONSIDER AND
ALTER OR AMEND
THE JUDGMENT
DISMISSING
GALLIVAN, WHITE & BOYD, P.A.
AND
MEMORANDUM IN SUPPORT

**PLEASE TAKE NOTICE** that at such time and place as may be set by the Court, no sooner than 10 days from the date hereof, Plaintiffs will move pursuant to SCRCP, Rule 59(e) and other law for the Court to alter or amend the August 29, 2024 Order Granting Defendant Gallivan White & Boyd, P.A.'s Motion for Judgment on the Pleadings and seek such other and further relief as is proper as set forth in the attached memorandum which is incorporated herein.

KAHN LAW FIRM, LLP
/S JUSTIN S. KAHN [SC BAR NO. 65100]
PO BOX 31397
CHARLESTON, SC 29417-1397
P 843.577.2128 | F 843.577.3538
JSKAHN@KAHNLAWFIRM.COM
ATTORNEYS FOR PLAINTIFFS

ELECTRONICALLY FILED - 2024 Sep 06 12:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## TABLE OF CONTENTS

1. **Concise Reasons for Altering / Amending the Judgment** .........................2
    1.1.    The Court applied the incorrect standard. ............................2
    1.2.    Absolute Immunity Determination Improper at this Stage. ...............3
    1.3.    Wrong Standard for Dismissing Aiding and Abetting .........................3
    1.4.    Negligent Misrepresentation – Scope of Capacity ............................7
    1.5.    Negligence, Duty and Breach of Standard of Care ...........................7
    1.6.    Conspiracy – Verbatim Recitation.......................................8
    1.7.    Plaintiffs Have Standing ....................................................9
    1.8.    Request to Amend or Engage in Discovery Not Addressed ..............9

2. **Conclusion** ...............................................................10

## 1.     Concise Reasons for Altering / Amending the Judgment

### 1.1.    The Court applied the incorrect standard.

After properly stating all facts in the Complaint are admitted, the Court then improperly applied the federal *Iqbal / Twombly* standard for judging the sufficiency of pleadings. Unlike the federal courts, the law in South Carolina is "When a fact is well pleaded, ***any inference of law or conclusions of fact that may properly arise therefrom are to be regarded as embraced in the averment***." *Russell v. City of Columbia*, 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991). (emphasis added). "Our courts construe pleadings liberally to ensure substantial justice between parties. Judgments on the pleadings are considered drastic procedures." *Id*. The Court failed to apply the proper and more liberal state standard. Because of this, judgment on the pleadings was improper.

### 1.2.     Absolute Immunity Determination Improper at this Stage.

The Court erred or misapplied the law when it found GWB is absolutely immune. The Court improperly relied on *Gaar v. Myrtle Beach Realty Co.*, 287 S.C. 525, 339 S.E.2d 887 (1986) in support of its determination that attorneys are absolutely immune. In *Gaar*, the parties had progressed to the summary judgment stage. That case was not dismissed at the pleadings stage. Contrary to what happened here, the parties were given a full and fair opportunity to engage in discovery, develop and present facts, and were not limited to pleadings.

Further, this Court improperly held dismissal was proper when it imposed an improper burden. For example, the Court uses the language that the Plaintiffs had "no evidence" and "unless Plaintiffs can show…." GWB acted outside the scope of its representation, dismissal was proper. This was error. At this early stage of litigation, the pleadings phase, Plaintiffs are not required to "show" or present evidence. Instead, they need only sufficiently plead a cause of action. They have as argued. Thus, the case should not be dismissed.

### 1.3.     Wrong Standard for Dismissing Aiding and Abetting

Similarly, as to the aiding and abetting abuse of process, the Court improperly held "Plaintiffs must ***show*** that GWB acted outside the scope of its capacity as State Farm's counsel and/or outside State Farm's authority." Order, p. 4. (emphasis added). This is the wrong standard at this stage.

ELECTRONICALLY FILED - 2024 Sep 06 12:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

The Court further incorrectly found it is "undisputed that GWB pursued the Underlying Action on State Farm's behalf and with State Farm's knowledge." First, this was not plead. Second, it is disputed. The Court also improperly concluded that Plaintiffs' Complaint "fails to allege any purpose not proper to a declaratory judgment action or an act unauthorized by the process." This is error. Among other examples, Plaintiffs stated that:

> Defendants together created, filed and pursued the lawsuit *using false documents* and *improper redactions*, including *hiding information* on documents that would have shown differences with the real policy. ¶¶ 12-14, 149-151.

As argued, it cannot be a proper purpose of a declaratory judgment action to have a court declare coverage or lack of coverage using false documents, improper redactions, and hiding information.

The Court improperly found Plaintiffs did allege that State Farm had any other purpose for filing the Underlying Action or that GWB was aware of these. For example, as was argued, Plaintiffs plead State Farm had improper purposes and inferences from those facts which include:

- ¶ 7 To avoid duties it owed to plaintiffs and others to pay claims;
- ¶¶ 49-51 create false documents to provide to their counsel to use in litigation, and "for many other improper reasons and purposes, including to avoid paying Plaintiffs and others.";
- ¶¶ 62-64 improperly avoid having to indemnify, defend or pay for damages all to further its unlawful purposes;

ELECTRONICALLY FILED - 2024 Sep 06 12:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Sep 06 12:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

- ¶¶ 111 perverting justice and the process by creating and using false documents in litigation, have a court determine the bogus documents were real and valid in compliance with the law when they were not and were a forgery; and seek to have a form approved by the court when the form had never been submitted and approved by the Department of Insurance as the law requires so it could use that decision to deny others; and
- ¶ 112 State Farm's intentional actions in using the process, filing and pursuing the lawsuit were neither proper in the regular conduct of litigation nor aimed at an objective that was a legitimate use of the process.

Plaintiffs plead GWB knew about these and acted in concert with State Farm. It was plead GWB actions were not for a proper adjudication of the client's claim and it acted improperly. For example GWB:

- ¶12 Used and attached forged document in lawsuit in an improper attempt to deny coverage;
- ¶ 13 Provided forged and false records in the discovery process to misrepresent and mislead actual terms of the insurance policy;
- ¶ 14 Affirmatively represented the documents created after the collision were truthful when they were false or forged;
- ¶17 Improper actions and conduct in creating and using false documents as part of scheme to harm plaintiffs;
- ¶ 43-44 Used redacted document to hide information from Plaintiffs;
- ¶¶ 65, 72 GWB participated with State Farm in the improper use of documents, litigation and proceedings when such were improper and unlawful;
- ¶ 75 – 76 Falsely stated State Farm has investigated this matter and believes the policy exclusion applies;
- ¶¶ 77-78 Attached and used the false documents when they knew they were not true;
- ¶¶ 79-82 Breached various duties, including intentionally hiding actual facts and their misconduct by redacting documents to obscure and mislead the real information and for other improper purposes by

redacting information that would have shown the documents were fraudulent.

Allegations of manipulating and using false documents are such that "an attorney may be held liable where he acts in bad faith or for his own personal motivations." *Nautilus Ins. Co. v. Murdaugh*, No. CV 2:22-1307-RMG, 2022 WL 3648458, at *2 (D.S.C. Aug. 23, 2022). An attorney can be liable when committing fraud, malfeasance, tortious acts, acts in bad faith or for his own personal motivations. *See generally Annotation* 97 ALR 3rd 688 (attorney's liability for abuse of process); *Annotation* 46 ALR 4th 249 (attorney's liability for malicious prosecution). *See also* RESTATEMENT (SECOND) OF TORTS § 674, comment d (attorney who acts without probable cause for an improper purpose is subject to same liability for the wrongful use of civil proceedings as any other person).

Sufficient facts and inferences from those facts have been plead alleging GWB breached various duties owed to third parties, including misrepresenting information and affirmatively participating in illegal or improper conduct. Because of this, the Court should reconsider and alter or amend its Order dismissing the matter and allow the Plaintiffs' claims to move forward.

ELECTRONICALLY FILED - 2024 Sep 06 12:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 1.4.    Negligent Misrepresentation – Scope of Capacity

There is nothing about a negligent misrepresentation cause of action requiring pleading one acted outside the scope of capacity. The Court erred in making that determination.

The Court erred in holding the Complaint "merely recites that GWB had a pecuniary interest in making the representation and that Plaintiffs were damaged by their reliance on the representation, without providing any supporting facts." At the pleadings stage, "supporting facts" are not required and it is improper for the Court to find Plaintiffs were required to provide such facts now. Because of this, the Court should reconsider and alter or amend its Order dismissing the matter and allow the Plaintiffs' claims to move forward.

### 1.5.    Negligence, Duty and Breach of Standard of Care

Plaintiffs presented an unchallenged expert attorney affidavit attached to the Complaint, which must be assumed to be true, setting forth various attorney duties, the applicable standard, breaches, etc. of GWB. *See e.g.* It was plead that GWB acted in its own interests and had duties separate from State Farm. *See e.g.* Compl., ¶¶ 68-73, 137, 146, pp. 42-45 and Ex. A Pendarvis' Affidavit citing Restatement (Third) of the Law Governing Lawyers §110(1), Rule 11 and other duties of candor to third parties and the tribunal. Lawyers have a duty to make reasonable inquiry to determine whether there is evidence supporting their

ELECTRONICALLY FILED - 2024 Sep 06 12:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Sep 06 12:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

factual allegations before filing a lawsuit, not manipulate documents to create new facts. As an attorney, one has various duties to third parties, including a duty to not misrepresent. That assertion was not challenged. The Court erred in holding that attorneys do not have this duty or no independent duty to third parties, such as Plaintiffs.

### 1.6.   Conspiracy – Verbatim Recitation

The Court improperly held "the Plaintiffs fail to allege any additional acts by GWB in furtherance of a conspiracy that are separate and independent from other wrongful acts alleged in the Complaint" and misinterpreted "plead any overt acts in furtherance of the conspiracy unsupported by separate factual allegations" in *Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 573, 861 S.E.2d 774, 780 (2021). That case merely held one could not seek the same damages, not that the facts plead prevented moving forward on the cause of action.  Paradis was "precluded from seeking damages *for the same acts yet again.* As such, the fifth cause fails to state an action." *Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 569, 861 S.E.2d 774, 777 (2021).

Plaintiffs properly plead Defendants acted together and improperly sufficiently to support the conspiracy cause of action, as previously argued.

ELECTRONICALLY FILED - 2024 Sep 06 12:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 1.7.  Plaintiffs Have Standing

The Court erred in determining that the Plaintiffs lack standing, with the exception of the Estate. The Personal representative is the representative of the estate in legal actions and he certainly has standing. It was conceded during oral argument that at least the Estate and Personal Representative would have standing. Further, the Court misinterpreted *Est. of Corley*, 299 S.C. 525, 386 S.E.2d 264 (Ct. App. 1989). There, heirs of an estate sued the administrator of the estate for failing to file a claim against other heirs of the estate to collect an alleged asset of the estate. That case does not hold that an heir of an estate does not have standing to bring a lawsuit against a third party when that third party causes harm to them individually. Here, it was plead that the conduct of the Defendants did harm the individual Plaintiffs, who are beneficiaries as argued previously. Further, they plead they sustained losses, which gives them standing. *See e.g.* Complaint, ¶ 105.

### 1.8.  Request to Amend or Engage in Discovery Not Addressed

Plaintiffs specifically requested the opportunity to amend the Complaint and that if the case should be dismissed it would be without prejudice. The Court did not address why Plaintiffs should not be allowed to amend the Complaint nor did Defendants oppose such request. The Order dismissing the case with prejudice is premature as Plaintiffs were not given the opportunity to

9

ELECTRONICALLY FILED - 2024 Sep 06 12:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

amend their complaint as requested. Such request was not opposed. Because of this, the Court should not have dismissed the case with prejudice and allow the Plaintiffs an opportunity to amend.

It is further error as Plaintiffs have not been given a full and fair opportunity to engage in discovery to "show" the Court evidence about this matter. Indeed, a motion to compel discovery against Defendants to obtain materials to be able to "show" evidence was not heard nor ruled on by the Court, even though scheduled to be heard at the same time as the motion for judgment on the pleadings.

## 2.     Conclusion

Wherefore, for the reasons set forth herein and previously argued, the Court should alter or amend its order dismissing the case with prejudice against GWB, allow the Plaintiffs to move forward or amend their complaint, engage in discovery as requested to have a full and fair opportunity to gather facts and grant such other and further relief as is just and proper.

KAHN LAW FIRM, LLP
/s JUSTIN S. KAHN [SC BAR NO. 65100]
PO BOX 31397
CHARLESTON, SC 29417-1397
P 843.577.2128 | F 843.577.3538
JSKAHN@KAHNLAWFIRM.COM
ATTORNEYS FOR PLAINTIFFS

Certificate of Service - a copy of this was served on all counsel of record via e-file. /s Justin S. Kahn.

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

IN THE COURT OF COMMON PLEAS

Civil Action No. 2023-CP-10-01832

Robert C. Workman, Individually and as
Personal Representative of the Estate of
James K. Workman, Kelly Workman Tick
and Matthew T. Workman,

Plaintiffs,

vs.

State Farm Mutual Automobile Insurance
Company and Gallivan White & Boyd, P.A.,

Defendants.

**DEFENDANT GALLIVAN WHITE &
BOYD, P.A.'S MEMORANDUM
IN OPPOSITION TO PLAINTIFFS'
MOTION TO ALTER OR AMEND
THE JUDGMENT DISMISSING
GALLIVAN WHITE & BOYD, P.A.**

Defendant Gallivan White & Boyd, P.A. ("GWB") submits this Memorandum in

Opposition to Plaintiffs Robert C. Workman, Individually and as Personal Representative of the

Estate of James K. Workman, Kelly Workman  Tick and Matthew T. Workman's (hereinafter

"Plaintiffs") Motion to Alter or Amend the Judgment Dismissing Gallivan White & Boyd, P.A.

(the "Motion"). Plaintiffs have failed to state grounds sufficient to obtain relief from the August

29, 2024 Order Granting GWB's Motion for Judgment on the Pleadings (the "Order") and for the

reasons set forth below, the Motion should be denied.

## BACKGROUND

The factual background of this case has been extensively briefed by the parties and

carefully considered by the Court; therefore, in the interest of expediency, GWB will not repeat

those facts here. On July 10, 2024, this Court heard oral arguments on both GWB's and State Farm

Mutual Automobile Insurance Company's ("State Farm's") Motions for Judgment on the

Pleadings. All counsel for the parties were in attendance, and the Court heard extensive arguments

from each of the parties in a hearing that lasted for several hours. The Court also carefully reviewed

ELECTRONICALLY FILED - 2024 Sep 17 3:21 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Sep 17 3:21 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

dozens of pages of briefing from all of the parties, along with proposed orders. After careful consideration of the pleadings in this case, the arguments of the parties and the applicable law, the Court on August 29, 2024 issued an order granting GWB's Motion for Judgment on the Pleadings on all causes of action, with prejudice. On September 6, 2024, Plaintiffs filed their Rule 59(e) Motion, to which GWB responds.

## ARGUMENT

Plaintiffs fail to meet any of the requirements for relief under Rule 59(e), and their Motion amounts to nothing more than an attempt to re-hash matters previously presented to and rejected by the Court. The applicable law remains unchanged, and Plaintiffs fail to identify any argument or issue that was not available for the Court's consideration at the time GWB's Motion for Judgment on the Pleadings was heard and ruled upon.

Under Rule 59(f), SCRCP, a Rule 59(e) motion may in the discretion of the court be determined on the briefs filed by the parties without oral argument. Rule 59(f), SCRCP. Hence, the grant or denial of a Rule 59(e) motion is within the discretion of the circuit court. Such motions are limited in scope and are not to be used to repeat the same arguments previously presented. Dockins v. Benchmark Commc'n, 180 F.R.D 294, 295 (D.S.C. 1998). [1] A motion to alter or amend cannot be granted where the moving party simply seeks to have the Court rethink its decision. Id. The South Carolina Supreme Court has explained that, "our rules contemplate two basic situations in which a party should consider filing a Rule 59(e) motion": (1) when a party believes the court

---

[1] "[W]here the state rule has adopted the language of a federal rule, federal cases interpreting the federal rule are persuasive." Unisun Ins. V. Hawkins, 342 S.C. 537, 542, 537 S.E.2d 559, 562 (Ct. App. 2000) (citing Roberts v. Peterson, 292 S.C. 149, 355 S.E.2d 280 (Ct. App. 1987)). Other than a difference in the time frame in which to file a Rule 59 Motion, Rule 59 SCRCP and Rule 59 Fed. R. Civ. Proc. are substantially the same. See Rule 59, SCRCP and Rule 59, Fed. R. Civ. Proc. See also Elam v. South Carolina Dep't of Transp., 361 S.C. 9, 22, 602 S.E.2d 772, 779 (2004) ("Rule 59(e) in the South Carolina and federal rules of civil procedure is practically identical").

ELECTRONICALLY FILED - 2024 Sep 17 3:21 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

has misunderstood, failed to fully consider, or perhaps failed to rule on an argument or issue, and the party wishes for the court to reconsider or rule on it; or (2) when an issue or argument has been raised, but not ruled upon.  Elam v. South Carolina Dep't of Transp., 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004).

The parties had a full and fair opportunity to present their respective positions to the Court, both through written briefs and at a hearing held on July 10, 2024, which lasted for several hours. Between dozens of pages of briefing and hours of oral argument, there is no issue that the Court failed to consider. Plaintiffs' Motion simply expresses their dissatisfaction with the Court's ruling. *See* McCall v. Williams, 59 F. Supp. 2d 556, 558 (D.S.C. 1999) ("mere disagreement with how the law is applied does not support a Rule 59(e) motion."). Plaintiffs' Rule 59(e) Motion is unnecessary, because they have already raised these same issues and obtained a ruling. Since Plaintiffs cannot show any justification for amending the Order, the Motion should be denied. GWB responds below to those portions of the Motion that warrant additional discussion.

**1.    This Court applied the correct standard in deciding the Motion for Judgment on the Pleadings.**

Plaintiffs open their Motion with a red herring. The Court's Order cited a well-known United States Supreme Court case, Ashcroft v. Iqbal, for the proposition that  "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to the presumption of truth. *See* Order, pg. 3 (quoting 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2007) (internal citations omitted)). In their Motion, Plaintiffs ignore the South Carolina standard cited throughout the Court's Order, and pluck the reference to Ashcroft out of context in an attempt to argue the Court applied the wrong standard. This is verifiably false. In the standard of review section of the Order, the Court cited the same case Plaintiffs cite in their motion, Russell v. Columbia, 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991). The Court granted GWB's motion for

3

ELECTRONICALLY FILED - 2024 Sep 17 3:21 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

judgment on the pleadings because, pursuant to the standard articulated in <u>Russell</u>, "there is no issue of fact raised by the complaint that would entitle plaintiff to judgment if resolved in plaintiff's favor." <u>Id.</u> A single citation to a United States Supreme Court case does not mean that the Court did not apply the South Carolina standard of review. <u>Ashcroft</u> was cited for the proposition that allegations that are not well-pleaded are not entitled to a presumption of truth, not as the whole standard for a Rule 12(c) motion.

In any event, South Carolina courts agree with <u>Ashcroft</u> and have applied that same analysis to motions under Rule 12(b)(6) and Rule 12(c). As noted in the Court's Order, "[a] motion for judgment on the pleadings is in the nature of a demurrer. . ." <u>Brown v. United Ins. Co. of America</u>, 268 S.C. 254, 257, 233 S.E.2d 298, 300 (1977). "A demurrer admits the facts well-pleaded in the complaint but does not admit the inferences drawn by the plaintiff from such facts, nor does it admit conclusions of law." <u>Carrington v. City of Spartanburg</u>, 283 S.C. 298, 322 S.E.2d 28 (Ct. App. 1984), *overruled on other grounds*. "Demurrers to a complaint admit facts alleged therein, but do not admit inferences by plaintiff from such facts, and it is for the court to determine as to whether or not such inferences are justifiable." <u>Long v. Seabrook</u>, 260 S.C. 562, 569, 197 S.E.2d 659, 662 (1973). *See also* <u>Tegeler v. Collier</u>, No. 2020-001525, 2023 WL 6460423, at *3 (S.C. Ct. App. Oct. 4, 2023) (holding that dismissal of a defamation action under Rule 12(c) was proper when a "detailed complaint" alleged only "vague hearsay references" rather than "any specific defamatory statement", and did not raise any issue of fact that would entitle the plaintiff to relief).

Plaintiffs fail to grasp  that not every word in the Complaint is well-pleaded by default. The Court need not assume that Plaintiffs' inferences are true, simply because they are contained in a pleading. Rather, the Court can decide whether or not it finds the inferences "justifiable". *See*

ELECTRONICALLY FILED - 2024 Sep 17 3:21 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

<u>Long</u>, 260 S.C. at 569, 197 S.E.2d at 662. For example, a well-pleaded fact from Plaintiffs' Complaint is that the declaration page attached to the declaratory judgment action was redacted. *See* Compl. ¶ 43. Plaintiff seeks to infer that the declaration page was not true and created to mislead. *See* Compl. ¶ 13, 44. It is for the Court to decide whether that inference is justifiable, and it did not find it so. *See* Order, pg. 2 ("This Court notes that Plaintiffs raised the same issue of the policy documents' authenticity and related alleged bad acts in the Underlying Action through a Motion for Sanctions, which State Farm opposed. The District Court, with all the evidence before it, denied the Motion for Sanctions and granted State Farm's voluntary dismissal of the case.").

The Court considered Plaintiffs' assertion that the policy documents were falsified, and found that this inference was not entitled to a presumption of truth. This issue was before the Court at the time of its ruling, and is not a proper basis for a Rule 59(e) motion. Further, the Court's interpretation and application of the Rule 12(c) standard of review is correct. Stripping away the inferences, if there is no fact that would entitle the Plaintiffs to judgment even if resolved in their favor, judgment on the pleadings is proper. *See* <u>Russell</u>, 305 S.C. at 89, 406 S.E.2d at 339. In short, the Court did apply the proper standard for a Motion for Judgment on the Pleadings. Plaintiffs simply disagree with the result. Therefore, the Motion should be denied.

**2.      This Court correctly determined that Plaintiffs' claims against GWB are barred by attorney immunity.**

On the attorney immunity issue, Plaintiffs do not raise anything in their Motion that constitutes the basis for a Rule 59(e) Motion. Going back to the standard our Supreme Court established in <u>Elam</u>, Plaintiffs have not articulated any argument that Plaintiffs raised and the Court failed to rule upon, nor do they maintain that the Court misunderstood or failed to consider an argument or issue. Instead, Plaintiffs' take two issues with the Court's findings on attorney immunity: (1) that the Court "erred or misapplied the law of immunity" and "improperly relied"

ELECTRONICALLY FILED - 2024 Sep 17 3:21 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

on Gaar v. North Myrtle Beach Realty Co., Inc. and (2) that the court imposed an "improper burden" on Plaintiffs. Once again, Plaintiffs have merely expressed their disagreement with the Court's ruling, and have not set forth a sufficient basis for a Motion to Alter or Amend.

Even setting aside the Rule 59(e) standard for the sake of argument, Plaintiffs are incorrect on both of their disagreements with the Court's ruling. First, Plaintiffs argue that because the opinion in Gaar occurred at the summary judgment stage, it is inapplicable to this case. In reality, there is nothing in Gaar that postpones the ability to assert attorney immunity until later in a litigation. There is no temporal limitation on the holding that "an attorney is immune from liability to third persons arising from the performance of his professional activities as an attorney on behalf of and with the knowledge of his client." Gaar v. North Myrtle Beach Realty Co., Inc., 287 S.C. 525, 528, 339 S.E.2d 887, 889 (Ct. App. 1986). The procedural posture of a case is not a part of the inquiry. The Court granted GWB's motion because:

> "[t]he Complaint does not allege – and there is no evidence indicating – that GWB represented any of the Plaintiffs at any time. Therefore, unless Plaintiffs can show that GWB acted outside the scope of its representation of State Farm and without State Farm's knowledge, South Carolina law requires the dismissal of Plaintiffs' causes of action."

Order, pg. 4. "After careful consideration of the pleadings in this case and the materials properly before the Court, the Court does not see any avenue for Plaintiffs to allege, much less prove, that GWB acted outside of its representation." Order, pg. 10. Additional discovery was not needed to make this determination. The Court already had before it the Complaint and Answers of the parties, dozens of pages of briefing, and materials from the Underlying Action.

Second, the Court did not impose an improper burden on the Plaintiffs. Reviewing the Complaint, the Court found that there were no factual allegations that would suggest that GWB was acting outside of its capacity as State Farm's attorney and without State Farm's knowledge.

ELECTRONICALLY FILED - 2024 Sep 17 3:21 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Further, as noted in the Order, the Court inquired at the hearing about any basis for an assertion that GWB acted in its own interest, and all Plaintiffs presented was a motivation to keep its client happy and earn legal fees. *See* Order, pg. 10. The Court rejected this as insufficient, and concluded that Plaintiffs could not allege facts sufficient to overcome attorney immunity. Id.

The applicability of attorney immunity remains dispositive for all causes of action, and Plaintiffs have not met the requirements for relief under Rule 59(e). Therefore, Plaintiffs' Motion should be denied and the Order should stand.

**3.     This Court correctly determined that Plaintiffs do not have a claim for aiding and abetting abuse of process.**

Once again, Plaintiffs' Motion does not claim that the Court failed to rule upon or misunderstood an argument or issue. As before, Plaintiffs simply disagree with the Court's holding, and try to disguise their mere disagreement as an assertion that the Court did not use the proper standard. *See* Section 1.3 heading of Plaintiffs' Motion ("Wrong Standard for Dismissing Aiding and Abetting").

Plaintiffs' Motion pulls words such as "show" and "evidence" out of their context within the Order, in an attempt to mischaracterize the standard utilized by the Court. For example, Plaintiffs remove part of a sentence of the Order ("Plaintiffs must show that GWB acted outside the scope of its capacity as State Farm's counsel and/or outside State Farm's authority"), in an attempt to say that this was the standard used by the Court. Taken in context, it is clear that the Court was not reciting the standard for Judgment on the Pleadings; it was clearly stating a requirement for Plaintiffs to succeed on the cause of action. It is true, under South Carolina law, that Plaintiffs would need to make this showing to succeed on their claim. *See* Gaar. It is equally true that taking all allegations of Plaintiffs' Complaint as true, there is not a single fact alleged that

ELECTRONICALLY FILED - 2024 Sep 17 3:21 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

would tend to show that GWB acted outside of State Farm's authority or outside of its role as State Farm's attorney in pursuing the Declaratory Judgment Action.

Judgment on the Pleadings was granted on the aiding and abetting abuse of process cause of action because (1) there was nothing in the Complaint that suggested that GWB pursued the Underlying Action on anyone other than State Farm's behalf or without State Farm's knowledge; (2) determination of coverage is a proper purpose of a declaratory judgment action and the Complaint does not allege any other purpose; and (3) attaching policy documents to a complaint is authorized. *See* Order, pg. 5. Plaintiffs disagree with this ruling based on their unreasonable *inference* that the documents were forged and attached to deceive. The Court did not fail to consider Plaintiffs' inference; it simply did not accept it as a well-pleaded allegation entitled to a presumption of truth, as it had the right to determine. *See* Long v. Seabrook, 260 S.C. at 569, 197 S.E.2d at 662.

As the Court noted in its Order, Plaintiffs previously raised the issue of the policy documents' authenticity and alleged bad acts in the Underlying Action through a Motion for Sanctions. *See* Order, pg. 10. The District Court, with all the evidence before it, including deposition testimony, document productions and witness declarations, denied the Motion for Sanctions and dismissed the case. Id. Plaintiffs' assertions that documents were forged and intended to mislead are not well-pled factual allegations entitled to a presumption of truth; they are recycled accusations that had already been entertained and rejected by the District Court. Therefore, the Court's ruling was proper and Plaintiffs' Motion should be denied.

**4.      The Court correctly determined that Plaintiffs could not succeed on a cause of action for Negligent Misrepresentation.**

Consistent with the rest of their Motion, Plaintiffs do not allege that the Court failed to rule upon or misunderstood an argument or issue. They only disagree with the Court's finding that

ELECTRONICALLY FILED - 2024 Sep 17 3:21 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP100183

Plaintiffs cannot succeed on their negligent misrepresentation cause of action. First, Plaintiffs contend that they do not need to plead that GWB acted outside the scope of its capacity in a negligent misrepresentation claim. Stated another way, Plaintiffs apparently do not believe the doctrine of attorney immunity applies to negligent misrepresentation. This is fundamentally at odds with Gaar, which held that "an attorney is immune from liability to third persons arising from the performance of his professional activities as an attorney on behalf of and with the knowledge of his client." Gaar v. North Myrtle Beach Realty Co., Inc., 287 S.C. 525, 528, 339 S.E.2d 887, 889 (Ct. App. 1986). Negligent misrepresentation is not an exception to this rule.

Second, Plaintiffs' Motion argues that they do not, at the pleadings stage, need to provide supporting facts for their assertion that GWB had a pecuniary interest in making a representation. Plaintiffs may not need to prove their case at the pleading stage, but they do need to properly plead facts to support their claim. The Complaint merely declares that GWB had a pecuniary interest. Legal conclusions and inferences are not well-pleaded facts, and the Court gets to decide how it weighs them. See Long, 260 S.C. at 569, 197 S.E.2d at 662. At oral argument, the Court considered Plaintiffs' position that GWB's desire to keep its client happy and earn legal fees constituted some kind of interest, and rejected that argument. Disagreement with the conclusion the Court drew from the law, facts and arguments before it is not a sufficient basis to alter or amend a judgment under Rule 59(e); therefore, Plaintiff's Motion should be denied.

**5.    The Court correctly determined that Plaintiffs could not succeed on a cause of action for Negligence**

As with the other causes of action, Plaintiffs do not argue that the Court misunderstood or failed to consider any argument in making its decision to dismiss the negligence cause of action. In their Motion, Plaintiffs simply restate their same arguments for why GWB owed them a duty. This question of duty was extensively briefed by both Plaintiffs and GWB, and the Court

concluded that the sources of duty cited by Plaintiffs could not give rise to a civil cause of action. *See* Order, pg. 7. The Court carefully reviewed the parties' briefs, heard competing oral arguments on the issue, and reviewed proposed orders submitted by the parties. After reviewing the applicable law, the Court concluded that GWB owed Plaintiffs no duty giving rise to a civil cause of action. Plaintiffs have not presented anything that the Court may have missed in its analysis; they have simply repeated the same arguments which were heard and rejected by the Court. Therefore, Plaintiff's Motion should be denied.

**6.    The Court correctly determined that Plaintiffs could not succeed on a cause of action for Civil Conspiracy.**

As to the civil conspiracy cause of action, Plaintiffs do not claim that the court misunderstood or did not consider any argument. Rather, they disagree with the Court's interpretation of South Carolina law on pleading civil conspiracy, and they misinterpret Paradis v. Charleston Cnty. Sch. Dist., 433 S.C. 562, 573, 861, S.E.2d 774, 780 (2021). In their Motion, Plaintiffs argue that Paradis did not hold that the civil conspiracy claim could not move forward, but instead held that a party could not seek damages for the same acts. This is the exact opposite of the holding in Paradis, which abolished the requirement to plead special damages, but did not change any fact pleading requirements. *See* Paradis, 433 S.C. at 577, 861 S.E.2d at 781 ("Our decision in Petitioner's case is based solely on the narrow question before the Court regarding the abolishment of the [special damages] rule, and we do not reach any other issue concerning the viability or merits of Petitioner's claim").

Although the Order cited Paradis, Plaintiffs' civil conspiracy claim was dismissed, not because of a failure to plead special damages, but because of a failure to plead "any additional acts by GWB in furtherance of a conspiracy that are separate and independent from other wrongful acts alleged in the Complaint." *See* Order, pg. 8. This rule is derived in part from Hackworth v.

ELECTRONICALLY FILED - 2024 Sep 17 3:21 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Sep 17 3:21 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Greywood at Hammett, LLC, 385 S.C. 110, 682 S.E.2d 871, 875 (Ct. App. 2009), which sets forth the requirement to plead separate acts attributable to the civil conspiracy claim. The separate acts requirement was not impacted by the Paradis decision, and remains the law of South Carolina. In addition, this claim was dismissed because of Plaintiffs' failure to plead facts that GWB acted outside the scope of its representation, which remains a requirement for the claim to stand. *See* Order, pg. 9 (citing Kozel v. Kozel, 299 F. Supp. 3d, 737, 757 (D.S.C. 2018) and Stiles v. Onorato, 318 S.C. 297, 300, 457 S.E.2d 601, 602 (1995)). Plaintiffs' Motion presents nothing to justify altering that decision, and should be denied.

**7.        The Court correctly determined that Individual Plaintiffs do not have standing.**

In addressing the Court's ruling on the standing of the individual Plaintiffs, Plaintiffs once again fail to identify any argument the Court may have misunderstood or failed to consider. Plaintiffs' Motion cites the exact case the Court considered; Plaintiffs just come to a different conclusion. Further, contrary to what Plaintiffs assert, the Court did not hold that the Personal Representative lacks standing. It held that the Estate of James K. Workman had standing to bring the action, which would necessarily encompass Robert C. Workman as Personal Representative. The Court's ruling was that the Individual Plaintiffs lacked standing. The Court did consider Plaintiffs' arguments in favor of standing, and questioned at oral argument what harm the Individual Plaintiffs had pled. The Court heard Plaintiffs' argument on that issue at the hearing, as well as in Plaintiffs' briefing, where Plaintiffs argued that they had standing as beneficiaries of the Estate. *See* Plaintiffs' Memorandum in Opposition to Dismiss, July 11, 2024, pp. 32-33. After considering the arguments and the law, the Court disagreed with Plaintiffs. Plaintiffs cannot have the Court's judgment altered simply by restating the same argument considered and rejected by the Court, and therefore their Motion should be denied.

ELECTRONICALLY FILED - 2024 Sep 17 3:21 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**8.**     **The Court's Order addressed why amendment to Plaintiff's Complaint would be futile.**

Lastly, Plaintiffs claim that the Court did not address why Plaintiffs should not be permitted to amend their complaint and continue on with the litigation, including discovery. In its Order, the Court explained why it was dismissing the case with prejudice, which necessarily encompasses an inability to amend the complaint. Specifically, the Court expressed its finding that because of the law of attorney immunity, Plaintiffs could not plead any facts that would entitle them to relief from GWB. *See* Order, pg. 10 ("this Court does not see any avenue for Plaintiffs to allege, much less prove, that GWB acted outside the scope of its representation. As noted above, Plaintiffs raised the same issues and arguments in federal court. . .Indeed, if Plaintiffs believed GWB's conduct was done outside of its role as counsel in the federal case, it did not allege as much and the Court did not make such a finding"). In its Order, the Court further referenced its exchange with Plaintiffs' counsel at oral argument, where Plaintiffs' counsel argued that GWB was acting in its own interest because it wanted to keep its client's business. The Court considered and roundly rejected this argument, explaining that "if this allegation is sufficient evidence of an attorney acting in his or her own interest to defeat the well-established and long-recognized defense of attorney immunity, the defense would be of little use as the exception would swallow the rule." Order, pg. 10.

If Plaintiffs cannot plead any facts that would entitle them to relief from GWB, then there is no cause for Plaintiffs to amend the Complaint and continue their quest to obtain discovery from GWB. Plaintiffs have known for over a year[2] that GWB was asserting the attorney immunity

---

[2] GWB filed its first responsive pleading, a Rule 12(b)(6) Motion, in this case on May 26, 2023 while the case was pending in the District Court. *See* 2:23-cv-02133-RMG, ECF No. 4 (May 26, 2023).

TPGL 14832085v1

ELECTRONICALLY FILED - 2024 Sep 17 3:21 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

defense and at no point sought to amend the Complaint to plead that GWB was acting outside of the scope of its representation, arguably because Plaintiffs could not make such an allegation in good faith. If the Court thought there were any facts that Plaintiff could plead to allow a claim to stand against GWB, then the dismissal would not have been with prejudice. The Court thoroughly considered whether it was possible for Plaintiffs to plead facts to defeat the attorney immunity defense, and concluded that it was not possible, eliminating any basis for leave to amend the Complaint.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Rule 59(e) Motion should be denied and the Court's Order Granting Judgment on the Pleadings to GWB should stand.

Respectfully submitted,

TURNER PADGET GRAHAM & LANEY, P.A.

s/John S. Wilkerson, III
John S. Wilkerson, III, SC Bar No.: 6105
40 Calhoun Street, Suite 200
Post Office Box 22129
Charleston, South Carolina 29413-2129
Telephone: 843-576-2801
Facsimile: 843-577-1649
Email: jwilkerson@turnerpadget.com

Lindsey M. Behnke, SC Bar No.: 105719
1901 Main Street, Suite 1700 (29201)
Post Office Box 1473
Columbia, South Carolina 29202
Telephone: 803-227-4324
Facsimile: 803-400-1525
Email: lbehnke@turnerpadget.com

ATTORNEYS FOR GALLIVAN, WHITE & BOYD, P.A.

September 17, 2024
Charleston, South Carolina

TPGL 14832085v1

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA          )
                                 )          IN THE COURT OF COMMON PLEAS
COUNTY OF CHARLESTON             )          NINTH JUDICIAL CIRCUIT

                                 )     Case No. 2023-CP-10-01832
Robert C. Workman, Individually and as    )
Personal Representative of the Estate of   )
James K. Workman, Kelly Workman           )
Tick and Matthew T. Workman,              )
                                 )
                    Plaintiffs,  )     **ORDER AS TO DEFENDANT STATE**
                                 )     **FARM'S RULE 12(c) MOTION FOR**
        vs.                      )     **JUDGMENT ON THE PLEADINGS**
                                 )
State Farm Mutual Automobile Insurance    )
Company and Gallivan, White & Boyd,       )
P.A.,                            )
                                 )
                    Defendants.  )
_____ )

    BEFORE THE COURT is Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion for Judgment on the Pleadings ("Motion") seeking dismissal of Plaintiffs' abuse of process, fraud, negligent misrepresentation, fraudulent nondisclosure, civil conspiracy, and violation of South Carolina Unfair Trade Practices Act ("SCUTPA") causes of action. For the reasons set forth herein, the Court GRANTS the Motion without prejudice as to some claims and with prejudice as to other claims, and as to Robert C. Workman Individually, Kelly Workman Tick, and Matthew T. Workman (the "Individual Plaintiffs").

### *Plaintiffs' Allegations*

    As set forth in Plaintiffs' Complaint, Melvin O. Lamb, III was driving a Tahoe owned by his father, Melvin O. Lamb, Jr., and insured by State Farm when he caused a fatal multicar collision on June 12, 2021 (the "Accident"). Compl. ¶¶ 2-3, 30, 31, 32. Plaintiffs do not allege they were individually involved in the Accident or that they owned and insured any of the vehicles involved in the Accident. They allege their father, James K. Workman, was involved in the Accident, that Melvin O. Lamb, III drove the Tahoe into their father's vehicle, and their father died because of

the injuries from the crash. Compl. ¶¶ 3, 30-32. Plaintiffs allege Robert Workman is the Personal Representative of the Workman Estate and that he, in his individual capacity, along with Kelly Tick and Matthew Workman (collectively referred to as the "Individual Plaintiffs") are heirs of the Workman Estate. Compl. ¶¶ 20-22.

Plaintiffs are not insureds of State Farm, but Plaintiffs allege Melvin O. Lamb, Jr. and Melvin O. Lamb III were State Farm's insureds under an automobile liability insurance policy covering the Tahoe (the "Policy"). Compl. ¶¶ 33-35. Plaintiffs allege the Policy was not subject to an excluded driver endorsement at the time of the Accident and State Farm initially represented to them, through a "Confirmation of Coverage," the Policy covering the Tahoe on the date of the Accident was "policy number 632318940A". Compl. ¶¶ 5-6, 34-35.

Plaintiffs allege State Farm created a new declarations page for the Policy a month after the accident (the "New Declarations Page") to exclude coverage and avoid payment for claims arising from the Accident. Compl. ¶¶ 7, 40-42, 50. The New Declarations Page identified the Policy's number as 632 3189-B07-40B and stated it "[r]eplaced policy number 632189-40A," the Policy number provided to them in the earlier "Confirmation of Coverage." Compl. ¶¶ 5-6, 51-52. Plaintiffs also allege the New Declarations Page materially misrepresented Melvin O. Lamb, III was an excluded driver and referenced an excluded driver endorsement, Form 6023DC, that was not approved by the South Carolina Department of Insurance and was not previously referenced on the Policy's prior declarations pages (the "Unapproved Form"). Compl. ¶¶ 51, 58-60. According to Plaintiffs, State Farm wanted them to rely upon the New Declarations Page as being true when it was not and State Farm knew Plaintiffs would use it to make decisions about what coverage may be available via "their own automobile insurance policies" and decisions about litigation. Compl. ¶¶ 44, 46-48, 96-97, 99. Plaintiffs allege State Farm then created a certified copy of the Policy using the New Declarations Page, with the certification falsely stating the Policy,

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

including the New Declarations Page, was a true and accurate record of the terms and conditions of the Policy in effect at the time of the Accident ("Certified Policy"). Compl. ¶¶ 54-56.

State Farm provided the New Declarations Page and Certified Policy to Defendant Gallivan, White & Boyd, P.A. ("GWB"), its counsel, to use in litigation. Compl. ¶ 64. The New Declarations Page and the Unapproved Form were attached to a lawsuit State Farm, through its counsel GWB, filed on August 16, 2021 to deny coverage for claims arising from the Accident (the "Underlying Suit"). Compl. ¶¶ 12, 77.

Plaintiffs allege State Farm falsely stated in the Underlying Suit's Complaint it had no duty to defend or indemnify Melvin O. Lamb, Jr. or Melvin O. Lamb, III based on the excluded driver endorsement. ¶¶ 75-76.  According to Plaintiffs, "State Farm wanted a determination by a court that [it] had no duty to indemnify, defend or pay for damages that occurred because of the collision… to try to make the Plaintiffs and others abandon claims made for coverage available under the actual State Farm policy, to improperly deny coverage, and to avoid paying legitimate claims." Compl. ¶¶ 63, 72; see also, Compl. ¶ 73.  In addition to filing the New Declarations Page as an attachment to its Complaint in the Underlying Suit and making false allegations in the Complaint, Plaintiffs allege Defendants "provided" the Certified Policy in the Underlying Suit's "discovery process." Compl. ¶ 13.

State Farm's Underlying Suit was filed against the Estate of James K. Workman ("Workman Estate"), Melvin O. Lamb, III, Melvin O. Lamb Jr., and others who had personal injury or property damage liability claims arising from the Accident. Compl. ¶ 74. The Individual Plaintiffs were not parties to the Underlying Suit and there are no allegations the Individual Plaintiffs had personal injury or property damage liability claims arising from the Accident *See* Compl. ¶ 74; *see also*, Complaint (Declaratory Judgment), *State Farm Mut. Auto. Ins. Co. v. Lamb*,

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

C.A. No. 2:21-cv-2623 at ECF No. 1 (Aug. 16, 2021, D.S.C.).[1]  Plaintiffs nonetheless allege they "obtained counsel to defend them" in the Underlying Suit "[a]s a result of Defendants' wrongful conduct." Compl. ¶ 101. Plaintiffs further allege they "obtained counsel to address issues, including those related to their own automobile policies," "[a]s a result of Defendants' wrongful conduct." Compl. ¶ 102.

According to Plaintiffs, they filed a motion in the Underlying Suit when they discovered the Policy documents filed with State Farm's Complaint were "fraudulent and created after the [Accident]". Compl. ¶ 103. Plaintiffs allege State Farm then immediately sought dismissal of the Underlying Suit, "[a]dmitted coverage," and "[r]emoved all limits on coverage." Compl. ¶¶ 103-104. The Underlying Suit was eventually dismissed with prejudice. Compl. ¶ 107.

Plaintiffs thereafter filed this action against State Farm and GWB. Plaintiffs allege State Farm's filing of the Underlying Suit was an abuse of process and that the New Declarations Page filed with the Underlying Suit constitutes actionable fraud. Compl. ¶¶ 110-112, 121-124.  With respect to fraud, Plaintiffs further allege State Farm had a duty to disclose to them there was a declarations page to the Policy existing at the time of the Accident which did not show that Melvin O. Lamb, III was an excluded driver and that the excluded driver endorsement it sought to enforce through the Underlying Suit was not approved by the SCDOI. Compl. ¶¶ 93, 118. Plaintiffs allege State Farm negligently misrepresented that the New Declarations Page was "real" and that the excluded driver endorsement State Farm sought to enforce through the Underlying Suit complied with South Carolina law. Compl. ¶ 133. Plaintiffs also assert a claim for civil conspiracy, alleging State Farm "acted together in combination or by agreement" with GWB, its counsel, and that State Farm and GWB "acted together and committed one or more overt acts in furtherance of that

---

[1] At the July 10, 2024 hearing on this Motion, State Farm requested the Court take judicial notice of its Complaint, the Workman Estate's Answer, and the Workman Estate's Rule 26.03 Responses filed in the Underlying Suit, Civil Action No. 2:21-cv-2623-MBS in the United States District Court for the District of South Carolina and provided the Court with file-stamped copies of the same. The court must take judicial notice "if requested by a party and supplied with the necessary information." S.C. R. Evid. 201(d).

4

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

agreement." Compl. ¶¶ 149, 151. Finally, the Individual Plaintiffs assert State Farm engaged in conduct actionable under SCUTPA. Compl. ¶¶ 153-161. Plaintiffs allege "Defendants' wrongful conduct" caused Plaintiffs to suffer losses, "including attorney's fees, costs, and expenses including to defend the [Underlying Suit]," and resulted in them being damaged in "various ways." Compl. ¶ 105, 108, 113, 131.

<div align="center">***Standard of Law***</div>

The Court must regard all properly pleaded factual allegations as true and admitted when reviewing a Rule 12(c) motion for judgment on the pleadings. *Falk v. Sadler*, 341 S.C. 281, 286, 533 S.E.2d 350, 353 (Ct. App. 2000). Absent particularized facts in support, conclusory allegations and bald assertions are not properly pleaded and need not be accepted as true. *Skywaves I Corp. v. Branch Banking & Tr. Co.*, 423 S.C. 432, 455, 814 S.E.2d 643, 656 n.9 (Ct. App. 2018) ("[T]he circuit court did not err in dismissing [plaintiff]'s SCUTPA claim because [plaintiff] merely stated [the defendants'] conduct satisfied the public interest requirement of SCUTPA without alleging any particularized facts.") (citing *Jones v. Gilstrap*, 288 S.C. 525, 528, 343 S.E.2d 646, 648 (Ct. App. 1986) (holding conclusory allegations are demurrable)).

While the Court may, under Rule 201,[2] take judicial notice of facts the accuracy of which are "capable of verification by reference to readily available sources of indisputable reliability," *Masters v. Rodgers Dev. Grp.*, 283 S.C. 251, 255, 321 S.E.2d 194, 196 (Ct. App. 1984), the Court may not otherwise consider matters outside the pleadings when considering judgment on the pleadings, *Falk*, 341 S.C. at 286, 533 S.E.2d at 353. *See also*, *Doe v. Bishop of Charleston*, 407 S.C. 128, 134, 754 S.E.2d 494, 497, n.2 (2014) (noting that reliance on the existence and contents of court filings does not convert a motion for judgment on the pleadings to one for summary judgment).

---

[2] "A judicially noticed fact must be one not subject to reasonable dispute in that it is … capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." S.C. R. Evid. 201(b). Judicial notice may be taken at any stage of the proceeding. S.C. R. Evid. 201 (f).

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*Analysis and Holdings*

Considering the properly pleaded factual allegations in the Plaintiffs' Complaint—which are deemed admitted and true for purposes of ruling on the Motion—together with judicially noticeable facts, the Court grants State Farm's Motion (1) without prejudice as to Plaintiffs' claims of abuse of process, fraud, and negligent misrepresentation; (2) with prejudice as to Plaintiffs' claims of civil conspiracy and violation of the SCUPTA; and (3) as to the individual Plaintiffs for lack of standing and failure to state viable claims.

### 1. Abuse of Process

In South Carolina, there are two "essential elements of an abuse of process claim," the first being "an ulterior purpose" for the process, the second being "a willful act in the use of process not proper in the regular conduct of the proceeding." *First Union Mortg. Corp. v. Thomas*, 317 S.C. 63, 73, 451 S.E.2d 907, 914 (Ct. App. 1994). State Farm moves for judgment because there are no well pleaded factual allegations in the Complaint as to the first, ulterior purpose element. Mot. ¶ 1. State Farm also contends the Individual Plaintiffs lack standing to assert an abuse of process claim. Mot. ¶ 6. The Court agrees.

### A. No Primary, Ulterior Purpose Outside the Litigation

In terms of the "ulterior purpose" element, a claim for abuse of process lies if the suit is brought not to recover on the cause of action stated in the complaint, but to "primarily" accomplish some other purpose for which the process was not designed. *Food Lion, Inc. v. United Food & Com. Workers Int'l Union*, 351 S.C. 65, 75, 567 S.E.2d 251, 255-56 (Ct. App. 2002); *see also Pallares v. Seinar*, 407 S.C. 359, 371, 756 S.E.2d 128, 133-34 (2014). Liability for abuse of process "exists not because a party merely seeks to gain a collateral advantage by using some legal process, but because the collateral objective was its sole or paramount reason for acting." *Food Lion*, 351 S.C. at 75, 567 S.E.2d at 256. Thus, there is no abuse of process if the party has an "incidental or

6

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

concurrent" motive outside of the litigation or even seeks "to gain a collateral advantage" outside of the litigation. *Pallares*, 407 S.C. at 371, 756 S.E.2d at 133.

In their Complaint, Plaintiffs only allege "State Farm had an ulterior purpose in filing the lawsuit." Compl. ¶ 110. Accordingly, the "process" at issue was the filing of the Underlying Suit and, to be entitled to any relief for abuse of process, Plaintiffs "must allege facts sufficient to show" the Underlying Suit was brought **primarily** for an ulterior purpose—that is, collateral reasons. *Food Lion*, 351 S.C. at 74, 567 S.E.2d at 255. Plaintiffs have not alleged such facts. Instead, Plaintiffs allege State Farm "filed the Underlying Suit using the bogus documents seeking a Declaratory Judgment that [the Policy] did not provide coverage, including a duty to defend or indemnify Melvin O. Lamb, III or Melvin O. Lamb, Jr. for the personal injury or property damages arising from the collision." Compl. ¶ 73. The cause of action brought by State Farm in the Underlying Suit was for a declaratory judgment that there was no coverage under the Policy for the liability claims arising out of the Accident. Complaint (Declaratory Judgment), *State Farm Mut. Auto. Ins. Co. v. Lamb*, C.A. No. 2:21-cv-2623 at ECF No. 1 (Aug. 16, 2021, D.S.C.) ("State Farm seeks a declaratory judgment that it has no obligation or duty to defend or indemnify [Melvin O. Lamb, III] or [Melvin O. Lamb, Jr.] for any claims arising out of the [Accident]."). Thus, there are no allegations of a primary, ulterior purpose of the Underlying Suit. In fact, Plaintiffs' Complaint acknowledges the Underlying Suit was brought to obtain a declaration that State Farm owed no coverage, which is precisely the relief sought in the Underlying Suit.

Plaintiffs argued the Underlying Suit was also brought for the ulterior purpose of getting the Plaintiffs to use their own automobile insurance policies for coverage. There are no such allegations in the Complaint, nor have Plaintiffs alleged they had any vehicles involved in the Accident for which they could seek coverage under their own insurance policies. In any event, such allegation, if made, would not save Plaintiffs' abuse of process claim because the Underlying Suit was brought to obtain a declaratory judgment that there was no coverage—that is, it was

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

brought to recover on the cause of action stated therein. A claim for abuse of process lies if the suit is brought not to recover on the cause of action stated in the complaint, and there is no abuse of process if the party has an "incidental or concurrent" motive outside of the litigation or even seeks "to gain a collateral advantage" outside of the litigation by bringing such action. *Pallares*, 407 S.C. at 371, 756 S.E.2d at 133; *Food Lion*, 351 S.C. at 75, 567 S.E.2d at 255-56.

For the above reasons, Plaintiffs' properly pleaded allegations of fact do not sufficiently plead a cause of action for abuse of process as required by Rule 12(c). While such a claim may or may not ultimately be remedied by amending the complaint, the Court dismisses this claim without prejudice so the remaining Plaintiff will have another opportunity to plead an abuse of process cause of action.

### B.  No Standing as to Individual Plaintiffs

As to the standing of the Individual Plaintiffs, the abuse of process claim additionally fails because they were not parties to the Underlying Suit. In this regard, "[t]he tort of abuse of process is intended to compensate ***a party*** for harm resulting from ***another party's*** misuse of the legal system." *Pallares*, 407 S.C. at 370, 756 S.E.2d at 133 (emphasis added); *see also, e.g.*, *Swanson v. Bixler*, 750 F.2d 810, 814 (10th Cir. 1984) (dismissing abuse of process claims of stepson arising from conservatorship proceedings against stepfather because he had "no standing to complain about the institution of these processes"); *Gurman v. Metro Hous. & Redevelopment Auth.*, 884 F. Supp. 2d 895, 901-02 (D. Minn. 2012) (finding the position that plaintiffs could sue for abuse of process when they were not part of underlying litigation unreasonable); *Martel v. City of Newton, Kan.*, 6 F. Supp. 2d 1243, 1247 (D. Kan. 1998) ("The tort of abuse of process does not provide or implicate an indiscriminate right of third persons, indirectly affected by a prosecution, to separately advance an abuse of process claim.").

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 2. Fraud and Negligent Misrepresentation

As to Plaintiffs' fraud and negligent misrepresentation claims, State Farm argues it is entitled to judgment because there are no well-pleaded factual allegations regarding reliance on the truth of the alleged fraudulent and negligent misrepresentations and injury caused by such reliance and, as a judicially noticeable fact, the Workman Estate, which was a party to the Underlying Suit, did not rely on the alleged misrepresentations. Mot. ¶ 2. State Farm also argues the Individual Plaintiffs, to whom the alleged misrepresentations were not made, lack standing. Mot. ¶ 6. The Court agrees.

### A. No Detrimental Reliance

Reliance on the truth of a false representation and pecuniary loss proximately caused by such reliance are two essential elements of Plaintiffs' fraud and negligent misrepresentation causes of action. *Carter v. Boyd Const. Co.*, 255 S.C. 274, 280–81, 178 S.E.2d 536, 539 (1971) (holding reliance on the truth of the false representation and consequent and proximate injury are essential elements to fraud); *AMA Mgmt. Corp. v. Strasburger*, 309 S.C. 213, 222, 420 S.E.2d 868, 874 (Ct. App. 1992) (holding plaintiff must allege justifiable reliance on the alleged negligent misrepresentation as well as pecuniary loss he suffered as a proximate result of his reliance). With respect to their fraud cause of action, pursuant to Rule 9, Plaintiffs must allege with specificity their detrimental reliance on false representations.

Plaintiffs cite the following paragraphs of their Complaint as sufficiently alleging reliance:

- ¶ 15 – "After Plaintiffs expended effort, time and expense in defending the lawsuit, including taking the deposition of a State Farm corporate representative, Defendants' scheme was exposed."

- ¶ 44 – "State Farm created that declarations page because it wanted Plaintiffs, the Court, and others to rely upon it as being true when it was not."

- ¶ 46 – "State Farm knew or should have known that Plaintiffs, others harmed by the collision and their automobile insurance carriers would use the false documents to make decisions about available automobile coverage."

- ¶ 47 – "State Farm knew or should have known Plaintiffs and others involved in the June 12, 2021 collision, including their automobile insurance carriers, would rely on State Farm's false declarations page in making decisions and determinations about what coverage may be available via their own automobile insurance policies."

- ¶ 48 – "State Farm knew or should have known that Plaintiffs and others involved in the June 12, 2021 collision, including their automobile insurance carriers, would rely on the State Farm's false declarations page in making decisions and determinations about litigation."

- ¶ 101 – "As a result of Defendants' wrongful conduct, Plaintiffs and others obtained counsel to defend them in the lawsuit brought by Defendants."

- ¶ 102 – "As a result of Defendants' wrongful conduct, Plaintiffs and others obtained counsel to address issues, including those related to their own automobile policies."

- ¶ 105 – "As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered losses, including attorney's fees, costs, and expenses including to defend the lawsuit brought by Defendants…"

- ¶ 130 – "Plaintiffs and others had a right to rely on documents State Farm represented as being true."

Neither the above nor any other allegations in Plaintiffs' Complaint allege with specificity that Plaintiffs in fact relied on any false representation made to them by State Farm as being true, or that they suffered pecuniary loss as a result of such reliance. The absence of these allegations is fatal to Plaintiffs' fraud and negligent misrepresentation claims.

In addition, the Court can take judicial notice of the Workman Estate's Answer to State Farm's Complaint for Declaratory Judgment Action (the "Answer") as well as its Local Rule 26.03 Responses, both publicly filed court documents in the Underlying Suit. *See Sun v. Matyushevsky,* No. 2015–UP–146, 2015 WL 1249074, at *1 (S.C. Court App. March 18, 2015); *see also Doe v. Bishop of Charleston,* 407 S.C. 128, 134 n. 2, 754 S.E.2d 494, 497 n. 2 (2014) (recognizing a circuit court may take judicial notice of previously entered, related court orders and consider them when ruling on a Rule 12(b)(6), SCRCP, motion to dismiss); Rule 201(f), SCRE ("Judicial notice may be taken at any stage of the proceeding.").

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

In its Answer, the Workman Estate **denied** State Farm's coverage position it now claims was fraudulent, and, in fact, affirmatively averred both that State Farm had previously represented there was coverage, and that the Unapproved Form was inapplicable, ineffective, and invalid. *See* Answer ¶¶ 9, 16, 17, *State Farm Mut. Auto. Ins. Co. v. Workman*, C.A. No. 2:21-cv-02623-MBS, ECF No. 35 (D.S.C., Oct. 26, 2021). Likewise, the Workman Estate's Local Rule 26.03 Responses stated a State Farm representative would "testify that coverage applies or at least that State Farm cannot show the exclusion applies based on the allegations of the Complaint and documents it has produced." *See* Rule 26.01 Responses ¶ 2, *State Farm Mut. Auto. Ins. Co. v. Workman*, C.A. No. 2:21-cv-02623-MBS, ECF No. 39 (D.S.C., Oct. 26, 2021) (emphasis added). If the alleged misrepresentations were relied upon as true, the Workman Estate would have admitted instead of denied State Farm's coverage position, and it would not have challenged the position through its averments. Consequently, Plaintiffs cannot establish the necessary allegations to support their fraud and negligent misrepresentation claims, and State Farm's Motion must be granted. *See Ivy v. Travelers Ins. Co.,* No. 1:22-cv-01228-TWP-MG, 2023 WL 3225690, at *1 (S.D. Ind. 2023) (granting motion for judgment on the pleadings where lawsuit alleged abuse of process and fraud based on the defendant's filing, in another lawsuit, false affidavits with a response in opposition to a motion for summary judgment based on lack of reliance because the plaintiff opposed the affidavits and raised their falsity to the court in the underlying action); *Alvarado v. Rainbow Inn, Inc.*, 312 F.R.D. 23, 31 (D.D.C. 2015) (noting a party asserting fraud must allege reliance and finding defendant's counterclaim, which asserted plaintiff's complaint constituted actionable fraud, failed because defendant did not allege reliance and its answer "reveal[ed] … it at no time believed the representations plaintiff made").

The Court has also considered Plaintiffs' arguments made under Rule 9(b), S.C. R. Civ. P., *Bailey v. Glover*, 88 U.S. 342, 349 (1874), *Slack v. James*, 364 S.C. 609, 614 S.E.2d 636, 641 (2005), and the Omnibus Insurance Fraud and Reporting Immunity Act and finds them

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

unpersuasive. First, Plaintiffs argue reliance is a condition of mind that need not be stated with particularity under Rule 9(b). This position is without legal support. *Cf. Truauto MC, LLC v. Textron Specialized Vehicles, Inc.*, No. 2:19-CV-1381-RMG, 2020 WL 438310, at *4 (D.S.C. Jan. 28, 2020) (applying South Carolina law and stating, under analogous Rule 9, FRCP, reliance must be pleaded with particularity and finding plaintiffs' fraud-based claims subject to dismissal because they did not allege reliance with particularity), *appeal dismissed and remanded*, No. 20-1341, 2020 WL 5642025 (4th Cir. Sept. 18, 2020).

Second, Plaintiffs argue, under *Bailey*, State Farm may not claim lack of reliance as a bar to their claims. *Bailey* concerned the two-year statute of limitations in the Bankruptcy Act of 1867 and whether it could protect "persons fraudulently obtaining property from the bankrupt party, in the enjoyment of the fruits of their fraud, if they are able to conceal from the assignee the knowledge of their fraud for two years." 88 U.S. at 345. The Supreme Court answered that question in the negative, noting the statute of limitations should not begin to accrue on a fraud claim until the fraud is or should have been discovered, and "[t]o hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure." 88 U.S. at 349. *Bailey* has no application to the Court's ruling as no statute of limitations defense has been asserted by State Farm, and *Bailey* in no way dispenses of the requirement of detrimental reliance in claims of fraud and negligent misrepresentation.

Third, Plaintiffs argue, under *Slack*, their claims cannot be dismissed for lack of reliance. Reliance, however, is an essential element of every negligent misrepresentation and fraud cause of action which must be sufficiently alleged in the plaintiff's pleading, and *Slack* states nothing to the contrary. *Slack* held that general non-reliance clause in a contract did not prevent parties to the contract from suing for pre-contract negligent misrepresentation and fraud. 364 S.C. at 618, 614

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

S.E.2d at 641. There are no allegations of a contract between State Farm and any of the Plaintiffs and there is no non-reliance clause at issue in the allegations or the affirmative defenses. In short, *Slack* has no bearing on whether Plaintiffs have stated an actionable claim for fraud or negligent misrepresentation.

Fourth, based on the definition of "false statement or misrepresentation" in the Omnibus Insurance Fraud and Reporting Immunity Act,[3] S.C. Code § 38-55-530(D), Plaintiffs argue there is no need to plead or show reliance because it is "fraud per se." Plaintiffs cite no case law recognizing a "fraud per se" cause of action and no case law citing the Act as eliminating reliance as an element to common law fraud or negligent misrepresentation claims. Plaintiffs are not the first to assert fraud and negligent misrepresentation against an insurer in South Carolina, and there appears to be no Supreme Court, Court of Appeals, and/or District Court cases of South Carolina modifying or reducing the necessary elements of these causes of action in such suits based on the Omnibus Insurance Fraud and Reporting Immunity Act's definition of "false statement or misrepresentation." The Court rejects Plaintiffs' attempt to circumvent the requirement they sufficiently allege detrimental reliance for both their fraud and negligent misrepresentation claims and finds the Act has no application to Plaintiffs' common law claims.

For the above reasons, the Court grants State Farm's Motion as to the fraud and negligent misrepresentation claims. While such claims may or may not ultimately be remedied by amending

---

[3] There is no private right of action under the Act. "The purpose of [the Act] is to confront aggressively the problem of insurance fraud in South Carolina by facilitating the detection of insurance fraud; to allow reporting of suspected insurance fraud; to grant immunity for reporting suspected insurance fraud; to prescribe penalties for insurance fraud; to require restitution for victims of insurance fraud; to establish a division within the Office of the Attorney General to prosecute insurance fraud; and to require the investigation of alleged insurance fraud by State Law Enforcement Division." S.C. Code Ann. § 38-55-520. In addition to criminal liability, the Act provides a civil penalty that must be paid to the director of the Insurance Fraud Division, who may also be awarded attorneys' fees and costs.

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

the Complaint, the Court dismisses these claims without prejudice so the remaining Plaintiff will have another opportunity to plead fraud and negligent misrepresentation causes of action.

### A.  No Standing as to Individual Plaintiffs

The fraud and negligent misrepresentation claims, as brought by the Individual Plaintiffs additionally and separately require dismissal based on lack of standing because the alleged fraudulent and negligent misrepresentations were made in the Underlying Suit, to which the Individual Plaintiffs were not parties. Both fraud and negligent misrepresentation require that false representation of fact be made by the defendant to the plaintiff. In the Complaint, Plaintiffs allege the false representations were contained in the New Declarations Page, which was filed as an attachment to State Farm's Complaint in the Underlying Suit. Compl. ¶¶ 12, 121, 122. The Individual Plaintiffs were not parties to the Underlying Suit and there are no allegations that New Declarations Page was given to them directly or published in any other setting. *See gen*. Compl.

### 3.  Fraudulent Nondisclosure

In addition to fraudulent misrepresentations, Plaintiffs, under their fraud cause of action, allege State Farm had a duty but failed to disclose certain facts and information to them. Compl. ¶¶ 118-119. Nondisclosure becomes fraudulent only when a party having knowledge of the facts has a duty to disclose them to the other party, which occurs in three instances: (1) where it arises from a pre-existing definite fiduciary relation between the parties; (2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in which the nondisclosure occurred; and (3) where the parties are involved in a contract or transaction that is itself intrinsically fiduciary in nature and necessarily calls for perfect good faith and full disclosure. *See, e.g.*, *Jacobson v. Yaschik*, 155 S.E.2d 601, 605 (S.C. 1967). State Farm argues none of these instances is alleged in Plaintiffs' Complaint, nor are they implicated by the nature of the claims. Mot. ¶ 3.

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

The filing of a declaratory judgment action on coverage, an inherently adversarial litigation proceeding, is not an undertaking to speak on the issue of coverage and it does not create on the part of the insurer a duty of full disclosure owed to non-insured claimants named in and served with the action nor any other person who might come across the action. Even if the filing of a declaratory judgment action did give rise to a duty of disclosure, State Farm's filing of the Underlying Suit would not give rise to a duty of disclosure owed to the Individual Plaintiffs because they were not parties to the Underlying Suit. In sum, because there are three distinct instances where a party having knowledge of a fact may commit actionable fraud by failing to disclose that fact to another, none of those instances are alleged in or implicated by the Complaint, and separately because the Individual Plaintiffs were not parties to the Underlying Suit, the Court grants State Farm's Motion as to these Plaintiffs. While such a claim may or may not ultimately be remedied by amending the Complaint, the Court dismisses this claim without prejudice so the remaining Plaintiff will have another opportunity to plead a fraudulent nondisclosure cause of action.

### 4. Civil Conspiracy

Plaintiffs assert a civil conspiracy existed between State Farm and GWB. To assert an actionable claim for civil conspiracy, Plaintiffs must allege "(1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to [them]." *Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 574, 861 S.E.2d 774, 780 (2021).

State Farm argues it is entitled to judgment because civil conspiracy between State Farm and GWB is impossible based on the allegations in Plaintiffs' Complaint and, in any event, Plaintiffs have failed to plead additional facts in furtherance of the conspiracy separate and independent from the other wrongful acts alleged in the Complaint. Mot. ¶ 4. State Farm also

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

argues the civil conspiracy claim must be dismissed as to the Individual Plaintiffs for lack of standing. Mot. ¶ 6. The Court agrees.

### A. State Farm and GWB Acted Together in an Attorney-Client, Principal-Agent Relationship

With respect to the first element of Plaintiffs' claim, "a civil conspiracy cannot exist when the alleged acts arise in the context of a principal-agent relationship because by virtue of the relationship such acts do not involve separate entities." *McMillan v. Oconee Mem'l Hosp., Inc.*, 367 S.C. 559, 564, 626 S.E.2d 884, 886–87 (2006), *overruled on other grounds by Paradis*, 433 S.C. at 574, 861 S.E.2d at 780 (overruling prior precedent, like *McMillan*, "to the extent they impose or appear to impose a requirement of pleading (and proving) special damages" in a civil conspiracy claim); *see also*, 15A C.J.S. Conspiracy § 10 ("Because acts of agent are considered in law to be acts of principal, a conspiracy cannot exist between a principal and an agent. In other words, the identity between an agent and principal leads to a legal impossibility in the context of conspiracy."). Significant to this case, the attorney-client relationship is a principal-agent relationship. *State v. Goettie*, 41 S.C.L. 126, 128 (S.C. App. L. 1854) ("That the relations of attorney and client, and principal and agent, are identical…are propositions that will scarcely be questioned.").

As alleged by Plaintiffs in their Complaint, the Defendants were acting together in an attorney-client relationship. Compl. ¶¶ 8, 10, 12, 13. Citing Paragraphs 68 through 73 of their Complaint, Plaintiffs argue the Complaint alleges GWB acted in its own interests and owed separate duties and, therefore, GWB and State Farm could conspire together. Paragraphs 68 through 73 of the Complaint do not allege GWB was acting as anything other than State Farm's counsel. To the contrary, those allegations are premised on GWB acting as State Farm's counsel, as was the Plaintiff's motion for sanctions that was heard and denied in the earlier federal court action. Because a civil conspiracy cannot exist when the alleged act arises in an agent-principal relationship, a civil conspiracy between Defendants, as alleged in Plaintiffs' Complaint, cannot

exist. *See Myrtle Beach Lumber Co. v. Globe Int'l Corp.*, 315 S.E.2d 142, 143 (S.C. Ct. App. 1984) ("One of the significant features of our whole judicial system is that parties … may be, and usually are, represented by attorneys learned in the law, and these attorneys by virtue of the very name of their office stand for and in place of their clients. An attorney is the alter ego of his client."). For this reason, the Court grants State Farm's Motion with respect to the civil conspiracy claim, which is dismissed with prejudice because any amendment of the Complaint would not change the well-settled law regarding principal-agent issues addressed herein.

### B.  No Separate, Overt Acts

Plaintiffs' failure to plead separate, additional acts in furtherance of the alleged conspiracy is another basis for dismissal. With respect to the third, "overt act" element of civil conspiracy, the Supreme Court of South Carolina has recently affirmed a plaintiff's repetition of the same acts that serve as the basis for other claims is insufficient. *See Paradis*, 433 S.C. at 573, 861 S.E.2d at 779–80 (noting prior precedent, other grounds of which were overruled by the Court, "correctly concluded the civil conspiracy claim failed as a matter of law" because "the only wrongful acts alleged were those for which damages had already been sought" and "the plaintiff's repetition of the same acts as the prior claims was insufficient to salvage the claim"). Instead, "[i]n a civil conspiracy claim, one must plead additional acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." *Hackworth v. Greywood at Hammett, LLC*, 385 S.C. 110, 115–16, 682 S.E.2d 871, 875 (Ct. App. 2009), *overruled on other grounds by Paradis*, 433 S.C. at 574, 861 S.E.2d at 780 (overruling prior precedent, like *Hackworth*, "to the extent they impose or appear to impose a requirement of pleading (and proving) special damages" in a civil conspiracy claim, while affirming pleading requirement for separate overt act in furtherance of conspiracy). Plaintiffs' Complaint alleges no "additional acts" "separate and independent from

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

other wrongful acts alleged in the Complaint" and under *Hackworth* and *Paradis*, the civil conspiracy claim fails as a matter of law.

### A. No Standing as to Individual Plaintiffs

Given the civil conspiracy claim merely incorporates by reference the alleged wrongful acts that serve as the bases for the other claims, the Individual Plaintiffs, through the civil conspiracy claim, seek to recover for the same acts that serve as the basis for their other claims. They face the same obstacle to standing as they do with the other claims discussed herein, and the Individual Plaintiffs' lack of standing serves as an additional basis for dismissal of the civil conspiracy claim.

### 5. SCUTPA

Finally, construing the Complaint liberally, the Individual Plaintiffs' claim under SCUTPA must be dismissed. Under SCUTPA, "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by Section 39-5-20 [of SCUTPA] may bring an action individually, but not in a representative capacity, to recover actual damages." S.C. Code Ann. § 39-5-140. However, "[n]othing in [SCUTPA] shall apply to … unfair trade practices covered and regulated under Title 38, Chapter 57, Sections 38-57-10 through 38-5[7]-320," South Carolina's Insurance Trade Practices Act. S.C. Code Ann. § 39-5-40(c). Thus, courts interpreting South Carolina law have consistently held "all unfair trade practices regarding the insurance business…are exempt from the coverage of SCUTPA." *Trustees of Grace Reformed Episcopal Church v. Charleston Ins. Co*., 868 F. Supp. 128, 130–31 (D.S.C. 1994); *see also*, *Cleveland Ridge Homeowner's Ass'n, Inc. v. State Farm Fire & Cas. Co.,* No. 2006-UP-295, 2006 WL 7286092, at *3 (S.C. Ct. App. June 26, 2006) ("Clearly, the legislature intended SCUTPA to exempt cases of unfair trade practices regarding the insurance business . . . "). Indeed, "by precluding unfair trade practices covered and regulated under Chapter 57," the Insurance Trade Practices Act, Section 39-

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

5-40(c) "exempts from the coverage of SCUTPA *all unfair trade practices in the business of insurance*." *Id*. This is because the Insurance Trade Practices Act governs any "unfair or deceptive act or practice in the business of insurance." *Id.; see also e.g., Lewis v. Omni Indem. Co*., 970 F. Supp. 2d 437, 451 (D.S.C. 2013).

The Individual Plaintiffs allege State Farm engaged in improper claim practices under Sections 38-59-20 and 38-77-341 of the South Carolina Code, and that such conduct is declared unlawful and recoverable under SCUTPA. Compl. ¶¶ 154-158. The Court finds no support in the law for the Individual Plaintiffs' arguments.

Section 38-59-20 is part of the Insurance Claims Practices Act, S.C. Code Ann. §§ 38-59-10, *et seq*., which "provides relief for a third party victim of an improper claims practice" in the form of administrative review before the Chief Insurance Commissioner. *Masterclean, Inc. v. Star Ins. Co.*, 347 S.C. 405, 415, 556 S.E.2d 371, 377 (2001); *see also*, *Gaskins v. S. Farm Bureau Cas. Ins. Co.*, 343 S.C. 666, 673, 541 S.E.2d 269, 272 (Ct. App. 2000) ("Section 38–59–20 declares that a third party may pursue *administrative action* before the Chief Insurance Commissioner if an insurer *inter alia* '[k]nowingly misrepresent[s] to insureds or third-party claimants pertinent facts or policy provisions relating to coverages at issue or providing deceptive or misleading information with respect to coverages.'"), *aff'd as modified,* 354 S.C. 416, 581 S.E.2d 169 (2003). "This relief is important because South Carolina does not recognize a third party action for bad faith refusal to pay insurance benefits" and "[t]hird parties do not have a private right of action under S.C. Code Ann. § 38–59–20." *Id*.

Based on the allegations of their Complaint, it is well settled under the law that Individual Plaintiffs are third parties with no standing to sue State Farm for bad faith and no private right of action for State Farm's alleged violation of the Insurance Claims Practices Act. It also cannot be disputed the Individual Plaintiffs' SCUTPA claim alleges State Farm engaged in unfair trade practices in the business of insurance, and all unfair trade practices in the business of insurance

19

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

are exempt from SCUTPA's reach. Accordingly, the Court finds no legal support for the Individual Plaintiffs' attempt to use SCUTPA as a means of pursuing these otherwise unavailable claims.

Section 38-77-341, the other statute the Individual Plaintiffs assert State Farm violated, prohibits insureds and third-parties from submitting inflated insurance claims to insurance companies and provides such conduct is unlawful under SCUTPA. *See* S.C. Code § 38-77-341(1). State Farm argues the plain language, subject matter, and preamble of Section 38-77-341 reveals the legislature did not intend to subject automobile insurers to SCUTPA, and the Court agrees.

A cardinal rule of statutory construction is that a court must ascertain and effectuate the actual intent of the legislature. *Burns v. State Farm Mut. Auto Ins. Co*., 377 S.E. 2d 569 (S.C. 1989). The legislative intent undergirding Section 38-77-341 is demonstrated by the statute's plain language—it applies to persons *seeking* payment from insurance companies. Notably, subsection 1, upon which Plaintiffs rely, concerns "a false statement or representation of a material fact for use in an application **for payment** or for use in determining the right **to payment** under this chapter." (emphasis added). Thus, its plain language was meant to apply to claimants seeking to be paid, not insurance companies. This is further demonstrated by the totality of the statute which is concerned entirely with reducing fraudulent or inflated claims: through submitting bills in excess of customary charges (subsection 2); through charging more for work covered by insurance (subsection 3); through bill inflation to cover deductibles (subsection 4); through excessive healthcare provider billing (subsection 5); or through exaggeration or false statements when seeking payment (subsection 1). Plaintiffs' interpretation—in which Section 38-77-341 would allow insurance companies subject to SCUTPA—is at odds with the plain language and subject matter of the statute. *See Mun. Ass'n of S.C. v. AT&T Comm. of S. States, Inc*., 606 S.E.2d 468, 471 (S.C. 2004) (noting a court should effect legislative intent through "giving the words [of the statute] their ordinary meaning and harmonizing the language with [the statute's] subject matter").

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Any doubt concerning the legislature's intent is resolved through the statute's preamble, which underscores the statute's purpose was to reduce fraudulent or exaggerated claims. Courts often look to the preamble as an indicator of legislative intent. *S.C. Pipeline Corp. v. Lone Star Steel Co.*, 546 S.E.2d 654, 656 (S.C. 2001). The entirety of the preamble enacting Section 38-77-341 states: "Whereas, it is the purpose and intent of the General Assembly in enacting this legislation to reduce insurance losses, including those of the Reinsurance Facility, and, consequently, the cost of mandatory automobile insurance." 1989 S.C. Acts 148, Page 440. This "purpose and intent" would be advanced by reducing inflated claims, but would not be advanced by removing the insurance industry's exemption from SCUTPA.

Further evidencing Section 38-77-341(1) is inapplicable to insurers, Chapter 57 and Chapter 59 of the insurance code governs precisely that conduct and charges the Insurance Commissioner with regulating it. *See, e.g.*, S.C. Code § 38-57-40 ("No person may make ... [a] statement misrepresenting the terms of a policy issued…."); S.C. Code § 38-59-40 (prohibiting insurers from "Knowingly misrepresenting to insureds or third-party claimants' pertinent facts or policy provisions relating to coverages at issue"); *see also*, *Masterclean, Inc.*, 556 S.E.2d at 377 ("The Insurance Trade Practices Act prohibits insurers from misrepresenting an insurance policy with the intent to settle the claim 'on less favorable terms than those provided in and contemplated by the contract or policy.'") (quoting S.C. Code § 38–57–70 (1989)).

In short, Section 38-77-341(1) does not govern policy representations made by insurance companies, and the portions of the insurance code that do speak to such policy representations charge the insurance commissioner with addressing that conduct and do not serve as the grounds for private rights of action. As *Masterclean Inc.*, *Trustees of Grace,* and their progeny confirm, this regulated conduct—indeed the entire "insurance business"—is not subject to SCUTPA. Based on Plaintiffs' allegations and the law of South Carolina, Plaintiffs have not and cannot state a claim against State Farm under SCUTPA. State Farm's Motion is granted, and the SCUTPA claim is

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

dismissed with prejudice because any amendment of the Complaint would not change the well-settled law regarding the inapplicability of the SCUTPA to "the insurance business."

### *Conclusion*

In sum, the Court grants State Farm's Rule 12(c) Motion for Judgment on the Pleadings: (1) without prejudice as to Plaintiffs' claims of abuse of process, fraud, and negligent misrepresentation, such that the remaining Plaintiff may file an amended pleading to address the issues discussed herein; (2) with prejudice as to Plaintiffs' claims of civil conspiracy and violation of the SCUTPA; and (3) as to the Individual Plaintiffs because they lack standing and have failed to assert any claims sufficient to withstand the Motion. Accordingly, the sole remaining Plaintiff in this matter is Robert C. Workman as Personal Representative of the Estate of James K. Workman.

AND IT IS SO ORDERED.



Charleston Common Pleas

| | |
|---|---|
| **Case Caption:** | Robert C Workman , plaintiff, et al VS   State Farm Mutual Automobile Insurance Company , defendant, et al |
| **Case Number:** | 2023CP1001832 |
| **Type:** | Order/Other |

So Ordered

s/ Thomas W. McGee III, Judge Code 2786

Electronically signed on 2024-09-20 11:17:02    page 23 of 23

ELECTRONICALLY FILED - 2024 Sep 20 1:27 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**STATE OF SOUTH CAROLINA**
**COUNTY OF CHARLESTON**

**COURT OF COMMON PLEAS**
**CASE NO. 23-CP-10-1832**

**ROBERT C. WORKMAN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES K. WORKMAN, KELLY WORKMAN TICK AND MATTHEW T. WORKMAN,**

        **PLAINTIFFS,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND GALLIVAN, WHITE & BOYD, P.A.,**

        **DEFENDANTS.**

**PLAINTIFFS' NOTICE AND MOTION TO RECONSIDER AND ALTER OR AMEND THE JUDGMENT DISMISSING STATE FARM AND MEMORANDUM IN SUPPORT**

**PLEASE TAKE NOTICE** that at such time and place as may be set by the Court, no sooner than 10 days from the date hereof, Plaintiffs will move pursuant to SCRCP Rule 59(e) and other law, for the Court to alter or amend the September 20, 2024 Order Granting Defendant State Farm's Rule 12(c) Motion for Judgment on the Pleadings and such other and further relief as is proper, as set forth in the attached memorandum which is incorporated herein.

**KAHN LAW FIRM, LLP**
/S  JUSTIN S. KAHN [SC BAR NO. 65100]
PO BOX 31397
CHARLESTON, SC 29417-1397
**P** 843.577.2128 | **F** 843.577.3538
JSKAHN@KAHNLAWFIRM.COM
**ATTORNEYS FOR PLAINTIFFS**

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## TABLE OF CONTENTS

1. **Concise Reasons for Altering / Amending the Order** ...............................2

2. **Wrong Standard 12(b)(6) v. 12(c)** .............................................3

3. **Failure to Address Plaintiffs' Arguments Regarding the Ulterior Purpose in Abuse of Process Claim** ....................................3

4. **Erroneous Findings - Fraud - Negligent Misrepresentation Claims** .......4

5. **Civil Conspiracy – Misapplication of the Attorney-Client Relationship Argument** ....................................................................6

6. **Failure to Consider SCUTPA Applicability** .............................................7

7. **Erroneous Application of Judicial Notice** ................................................7

8. **Standing** ..............................................................................................8

9. **Conclusion:** ........................................................................................9

This memorandum is submitted on behalf of Plaintiffs in support of their motion to reconsider the September 20, 2024 Court Order granting Defendant State Farm's Motion for Judgment on the Pleadings with the right to amend.

## 1. Concise Reasons for Altering / Amending the Order

The Court's decision contains legal and factual errors, including the misapplication of standards under Rule 12(c), disregarding well-pleaded allegations, and erroneous conclusions on claims of abuse of process, fraud, negligent misrepresentation, civil conspiracy, and SCUTPA applicability. The Court failed to properly address the use of falsified documents and misapplied legal standards regarding standing and reliance. Plaintiffs respectfully request the Court vacate the Order, deny the motion for judgment on the pleadings, or alternatively, permit amendment of the Complaint.

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

## 2.     Wrong Standard 12(b)(6) v. 12(c)

The Court erred in concluding there were "bald" allegations, ignoring the numerous specific facts pleaded by Plaintiffs to support each cause of action. The Court improperly disregarded paragraphs cited by Plaintiffs, which support denial of the motion (Workman Additional Submission pp. 3-5)[1] (2024.07.11 Plaintiff Memo in Opposition). Moreover, the Court conflated Rule 12(b)(6) and Rule 12(c) standards. Rule 12(c) evaluates the sufficiency of the pleadings in light of admitted facts, not whether the claims would survive dismissal under Rule 12(b)(6) (Order, p. 8) (2024.09.20 Workman Order). The Court's ruling erroneously incorporated Rule 12(b)(6) principles, which were neither argued nor contended by State Farm. The error requires reconsideration and amendment of the Order.

## 3.     Failure to Address Plaintiffs' Arguments Regarding the Ulterior Purpose in Abuse of Process Claim

The Court's ruling dismissed the Plaintiffs' abuse of process claim on the basis that there was no ulterior purpose beyond the litigation. This conclusion overlooks well-pleaded factual allegations and the inferences that arise therefrom. Plaintiffs pleaded that State Farm created and used forged and false documents in litigation to avoid coverage, coerce Plaintiffs into using their own

---

[1] The submission was sent to the Court previously as requested and is attached as an Exhibit for filing.

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

insurance policies, and engage in litigation (Complaint ¶¶ 46-48). This improper use of forged documents, for reasons beyond properly resolving the underlying claims, constitutes abuse of process under South Carolina law (Plaintiff Memo, pp. 7-11; Workman Additional Submission, pp. 3-4).

The Court also failed to properly assess the criminal nature of forgery in this context. Using unapproved forms and forged documents to deny coverage cannot be construed as a legitimate use of process (Complaint ¶¶ 91-100). The use of forged documents in litigation inherently constitutes abuse of process, and the Court erred in ruling otherwise.

**4.    Erroneous Findings - Fraud - Negligent Misrepresentation Claims**

The Court's conclusion that Plaintiffs did not adequately plead reliance on State Farm's fraudulent misrepresentations is error. Plaintiffs alleged that they relied on the allegations and were forced to retain counsel, incur legal fees, and make critical decisions regarding their own insurance coverage based on the false declarations page created by State Farm. (Complaint ¶¶ 46-48, 101-105) These facts were clearly plead and are sufficient to support the causes of action. This was argued, including in the Memorandum in Opposition (pp. 18-22). Plaintiffs also addressed these issues in their Supplemental Submission, yet the Court disregarded these allegations (Workman Additional Submission, pp. 3-4).

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

The Court's conclusion that there was an absence of reliance by Plaintiffs in the prior litigation is misplaced. This defense by State Farm should not be considered as part of the 12(c) motion which is to focus solely on the allegations made by Plaintiffs.

The law supports that reliance is not required when fraud is *per se* is alleged, particularly in the context of insurance fraud under South Carolina law. The statute defining insurance fraud makes clear that reliance is not necessary when the fraudulent actions are intended to deny coverage or payment under an insurance policy (Workman Additional Submission, pp. 4-5). Reliance is a fact question for the jury, not a matter of law to be determined by the Court. (Motion for Reconsideration, pp. 2-3).

Further, as argued, State Farm had a duty to speak truthfully and did not. S.C. Code Ann. § 38-59-20 required State Farm disclose information, which it failed to do as alleged. (*See e.g.* Workman Additional Submission, pp. 4-5.)

By ignoring these arguments, the Court failed to apply the correct legal standard to Plaintiffs' fraud and negligent misrepresentation claims. Plaintiffs adequately pleaded their reliance, and the Court's ruling should be amended to allow these claims to proceed. The order should be amended to allow Plaintiffs to move forward or at least amend the Complaint without dismissal.

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 5.    Civil Conspiracy – Misapplication of the Attorney-Client Relationship Argument

The Court's dismissal of the civil conspiracy claim also reflects a misunderstanding of the law. The Court concluded that a conspiracy could not exist between State Farm and Gallivan, White & Boyd, P.A. (GWB), as they were in an attorney-client relationship. However, this argument was addressed by the Plaintiffs in their opposition, wherein they explained that an attorney-client relationship does not preclude a conspiracy claim when the attorney acts beyond the scope of representation or in their own personal interest (Plaintiff Memo, pp. 26-28). The Plaintiffs specifically alleged State Farm and GWB had independent duties and that its actions were taken in bad faith, which satisfies the requirements for civil conspiracy.

Moreover, the recent case law, including *Paradis v. Charleston County School District*, 433 S.C. 562, 574, 861 S.E.2d 774, 780 (2021), overrules the precedent cited by the Court regarding civil conspiracy and has no applicability to attorney-client relationships. This was not considered in the Court's analysis (Workman Additional Submission, pp. 5-6). *State v. Doster*, 276 S.C. 647, 651, 284 S.E.2d 218, 220 (1981) similarly supports the idea that the public interest in the proper administration of justice should not extend to conduct that is in furtherance of criminal, tortious or fraudulent conduct. Plaintiffs have plead

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

sufficient facts that the wrongful acts were independent. Thus, the motion should be denied.

### 6.    Failure to Consider SCUTPA Applicability

The Court incorrectly concluded that the South Carolina Unfair Trade Practices Act (SCUTPA) did not apply to State Farm as an insurance company. SCUTPA is applicable unless specifically exempted by law, and Plaintiffs sufficiently pleaded that State Farm engaged in deceptive practices not covered by the statutory exemptions under S.C. Code Ann. § 38-77-341. This issue was raised both in Plaintiffs' opposition memorandum (pp. 29-31) and supplemental submission (pp. 6-7), but the Court failed to address this argument. Further, S.C. Code Ann. § 38-59-20 required State Farm disclose information, which it failed to do as alleged. Compl. ¶¶ 154-156. As argued, S.C. Code Ann. § 38-77-341 makes State Farm's alleged conduct an unfair trade practice under SCUTPA as a matter of law. Plaintiffs Additional Submission Aug. 2, 2024, pp. 6-7. The Court's failure to address this and find accordingly, is error.

### 7.    Erroneous Application of Judicial Notice

The Court erred in taking judicial notice of an Answer filed by the Workman Estate, which the Plaintiffs argued should not have been a consideration in evaluating the motion for judgment on the pleadings. The Court improperly focused on this Answer, while disregarding the well-pleaded

facts regarding the creation and use of fraudulent documents by State Farm in the underlying litigation. As plead, Plaintiffs relied on the allegations made in the Complaint to hire counsel and continue defending the lawsuit. Just because the allegations of the Complaint were denied by Plaintiffs does not mean that they were not relied on and acted upon to hire counsel and continue defending the bogus lawsuit. The Court should have accepted as true the Plaintiffs' allegations that State Farm committed a crime by creating forged documents, and that Plaintiffs relied on these false documents to their detriment, including by hiring counsel and invoking their uninsured motorist coverage. *See e.g.* Compl. ¶¶ 15, 46-48 as argued pp. 3-4 Workman Additional Submission. If the Court is to take judicial notice, then the converse is true as to the filing by State Farm. The Court should find that State Farm filed a lawsuit using forged documents which is itself an abuse of process.

Judicial notice has no place in the Court's determination of a Rule 12(c) motion which is confined to consideration to the four corners of the Complaint.

8. **Standing**

The Court erred in determining that because the parties individually were not named in the lawsuit that they lacked standing. South Carolina merely requires that one have a real, material or substantial interest in the outcome of the litigation. Generally, a party must be a real party in interest to the litigation

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

to have standing. *Sloan v. Friends of Hunley, Inc.*, 369 S.C. 20, 28, 630 S.E.2d 474, 479 (2006) (A real party in interest is a party with a real, material, or substantial interest in the outcome of the litigation.) The siblings had an interest in the policy proceeds and were harmed by State Farm by paying for counsel and defending the lawsuit. Complaint ¶ 101-102, 105. Standing requires no more. The Court erred in concluding otherwise.

9.    **Conclusion:**

For the reasons outlined above, the Plaintiffs respectfully request that the Court reconsider its Order dated September 20, 2024. The Court's decision failed to properly consider the factual allegations and legal arguments regarding the abuse of process, fraud, negligent misrepresentation, civil conspiracy, and SCUTPA and standing claims. The Plaintiffs further request that the Court vacate the order granting judgment on the pleadings and allow these claims to proceed for determination on the merits or at least allow an amendment as opposed to a dismissal with prejudice.

KAHN LAW FIRM, LLP
/s JUSTIN S. KAHN [SC BAR NO. 65100]
PO BOX 31397
CHARLESTON, SC 29417-1397
P 843.577.2128 | F 843.577.3538
JSKAHN@KAHNLAWFIRM.COM
ATTORNEYS FOR PLAINTIFFS

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA
COUNTY OF CHARLESTON

COURT OF COMMON PLEAS
CASE NO. 23-CP-10-1832

ROBERT C. WORKMAN, INDIVIDUALLY AND
AS PERSONAL REPRESENTATIVE OF THE
ESTATE OF JAMES K. WORKMAN, KELLY
WORKMAN TICK AND MATTHEW T.
WORKMAN,

PLAINTIFFS,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY AND
GALLIVAN, WHITE & BOYD, P.A.,

DEFENDANTS.

PLAINTIFFS'
SUPPLEMENTAL SUBMISSION
AS REQUESTED BY THE COURT

## Table of Contents

1. The Court Should Deny the Motions for Judgment on Pleadings ................................... 2

2. Concise Grounds Presented in Motion by State Farm ........................................... 2
   2.1. State Farm Concise Grounds .......................................................... 2
   2.2. Abuse of Process – Ulterior Purpose Element Lacking ...................................... 3
   2.3. Fraud and Negligent Misrepresentation – No Factual Allegations of Reasonable, Detrimental Reliance. ............................................................... 3
   2.4. Plaintiffs Argue Fraud Per Se – Reliance Not Needed ...................................... 4
   2.5. Fraudulent Nondisclosure – No Duty to Disclose False Statements .................... 4
   2.6. Civil Conspiracy – Attorney and Client Can't as to Third Party ........................... 5
   2.7. SCUTPA - Does not Apply to Insurance Companies ....................................... 6
   2.8. Standing – Plaintiffs in their individual capacity lack standing ........................... 7

3. Concise Grounds Presented by GWB .......................................................... 7
   3.1. Attorneys are Absolutely Immune ..................................................... 8
   3.2. Aiding and Abetting Abuse of Process – Attorneys Can't .................................. 9
   3.3. Negligent Misrepresentation .......................................................... 10
   3.4. Negligence and Civil Conspiracy ...................................................... 10
   3.5. Kelly Tick and Matthew Workman Do Not Have Standing .............................. 13

4. Amend Complaint if Needed ............................................................... 14

5. Conclusion ............................................................................... 14

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Plaintiffs respectfully submit, at the direction of the Court, responses to the grounds presented in the motions filed by State Farm[1] and Gallivan, White & Boyd, PA (GWB).

## 1.          The Court Should Deny the Motions for Judgment on Pleadings

Plaintiffs plead sufficient facts for each cause of action and the reasonable inferences are such that a judgment on the pleadings is not proper.

> A judgment on the pleadings is not proper if the complaint raises a factual issue that, if resolved in favor of the plaintiff, would entitle him to judgment. All properly pleaded factual allegations are admitted. When a fact is well pleaded, any legal or factual inferences therefrom are considered. A complaint is sufficient if it states a cause of action or appears that the plaintiff is entitled to relief. Our courts construe pleadings liberally to ensure substantial justice between parties. Judgments on the pleadings are considered drastic procedures. *Russell v. City of Columbia*, 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991) (internal citations omitted) (emphasis added).

Further, the Court should deny the motions because discovery has not been fully and fairly conducted and defendants improperly seek consideration of matters outside the Complaint, including defenses like immunity, lack of reliance, and consideration of documents in a different proceeding. At this stage, the Court is not to look beyond the Complaint. Because of this and the reasons argued, it is not proper to grant a judgment in favor of Defendants.

## 2.          Concise Grounds Presented in Motion by State Farm

### 2.1.          State Farm Concise Grounds

In its motion, State Farm claims that Plaintiffs "fail to state a legally cognizable claim against State Farm" for reasons listed in the headers below. For the reasons stated herein and argued at the hearing, the motion should be denied.

---

[1] State Farm did not submit a memorandum in support of its motion as requested by the Court.

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 2.2.    Abuse of Process – Ulterior Purpose Element Lacking.

**Court Should Deny** – Plaintiffs plead sufficient ulterior purposes and inferences

therefrom in various paragraphs in the Complaint including:

- ¶ 7 To avoid duties it owed to plaintiffs and others to pay claims;
- ¶¶ 49-51 create false documents to provide to their counsel to use in litigation, and "for many other improper reasons and purposes, including to avoid paying Plaintiffs and others.";
- ¶¶ 62-64 improperly avoid having to indemnify, defend or pay for damages all to further its unlawful purposes;
- ¶¶ 111 perverting justice and the process by creating and using false documents in litigation, have a court determine the bogus documents were real and valid in compliance with the law when they were not and were a forgery; and seek to have a form approved by the court when the form had never been submitted and approved by the Department of Insurance as the law requires so it could use that decision to deny others; and
- ¶ 112 State Farm's intentional actions in using the process, filing and pursuing the lawsuit were neither proper in the regular conduct of litigation nor aimed at an objective that was a legitimate use of the process.

Although a declaratory judgment action can be a valid legal process, creating, forging

and using false documents in a court proceeding to obtain relief is never an appropriate use of

the legal process. Plaintiffs sufficiently allege facts and inferences from those facts to deny

State Farm's motion.

### 2.3.    Fraud and Negligent Misrepresentation – No Factual Allegations of Reasonable, Detrimental Reliance.

**Court Should deny** – Reasonable and detrimental reliance are sufficiently plead:

- ¶ 15 Plaintiffs expended time, effort and expense defending lawsuit.
- ¶ 46 Plaintiffs relied on false documents to make decisions about available coverage;
- ¶ 47 Plaintiffs relied on false documents to make decisions and determinations about their own insurance coverage, uninsured or underinsured;
- ¶ 48 Plaintiffs relied on the documents to make decisions and determinations about litigation.

State Farm improperly seeks consideration of defenses, including the Answer filed by

the Estate. The Court is to focus on the allegations in the Complaint. Even if the Court were

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

to consider the Answer, Plaintiffs plead sufficient reliance on the lawsuit filed to obtain counsel and respond. Plaintiffs plead reliance on the allegations and forged documents to effect their own insurance issues, to obtain counsel and to litigate. *See* e.g. ¶¶ 46-48.

The issue of reliance is reasonableness, a factual question for a jury, not a determination as a matter of law for the Court. Thus, dismissal is not proper.

### 2.4.    Plaintiffs Argue Fraud Per Se – Reliance Not Needed

Reliance is not needed as to one who makes false statements or misrepresentations in connection with an insurance matter. It is fraud *per se* to deny payment to Plaintiffs as alleged. Fraud is defined as a "false statement or misrepresentation." S.C. Code Ann. § 38-55-530 (D). This is made by a person with the person's knowledge of the falsity of the statement and with the intent of obtaining…or attempting to obtain…an undeserved economic advantage or benefit or made with the intent to deny…any benefit or payment in connection with an insurance transaction, and ***such shall constitute fraud***." State Farm made a representation with the intent to obtain an ***undeserved economic advantage*** (avoid paying insurance proceeds / not paying coverage due) with the intent to deny payment in ***connection with the insurance transaction*** (insurance claim / lawsuit). State Farm illegally participated in making false statements or misrepresentations in connection with insurance claims. S.C. Code Ann. § 38-55-540. This conduct is fraud *per se*.

### 2.5.    Fraudulent Nondisclosure – No Duty to Disclose False Statements

**Court Should deny -** One who chooses to speak has a duty to do so truthfully. State Farm asserts nondisclosure becomes fraudulent only when a party has a duty to disclose to the other party. Plaintiffs allege an insurance company dealing with a claimant has duties to not hide or misrepresent but rather to speak the truth or at least not to provide "deceptive or

misleading information with respect to coverages." S.C. Code Ann. § 38-59-20. *See also* 2.7 below. State Farm chose to speak and did so falsely.

Because Plaintiffs sufficiently plead State Farm had duties to speak the truth and not misrepresent or provide deceptive or misleading information with respect to coverage, its motion for a judgment on the pleadings as to fraud and misrepresentation should be denied.

### 2.6.    Civil Conspiracy – Attorney and Client Can't as to Third Party

**Court Should deny -** Two or more persons who work together to commit an improper act, regardless of their status with each other is sufficient to plead civil conspiracy. *Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 574, 861 S.E.2d 774, 780 (2021). ("Plaintiff asserting a civil conspiracy claim must establish (1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff.")

State Farm asserts as a defense, not to be considered at this time, that a "civil conspiracy could not exist between client and attorney given Plaintiffs' allegations GWB was at all times acting as State Farm's attorney." State Farm Motion, p. 2. First, the allegation that GWB was "at all times" acting as State Farm's attorney does not appear in the Complaint. Second, there is no law that holds an attorney and client cannot engage in a civil conspiracy. Third, State Farm asserting that GWB "was at all times" acting as its attorney is not a defense to be considered at this stage of the proceedings.

Last, State Farm asserts that Plaintiffs are required to and have failed to plead additional facts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint. State Farm Motion, p. 3. For support, State Farm cites

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

a 2009 Court of Appeals decision[2] overruled by the Supreme Court in 2021. Further, Plaintiffs sufficiently plead facts that the Defendants' wrongful acts are independent. *See* e.g. Complaint ¶¶ 43, 72-73, 75, 77-82. Plaintiffs sufficiently plead Defendants together created, filed and pursued the lawsuit using false documents and improper redactions, including hiding information on documents that would have shown differences with the real policy. ¶¶ 12-14, 149-151. The motion should be denied.

### 2.7. SCUTPA - Does not Apply to Insurance Companies

**Court Should deny** as Plaintiffs sufficiently plead SCUTPA. State Farm asserts as a defense SCUTPA does not apply to it as an insurance company. State Farm Mot. p. 3. Merely because an industry is regulated does not exempt it from SCUTPA. *See e.g. State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 414 S.C. 33, 72, 777 S.E.2d 176, 196 (2015). The burden of proving exemption from the provisions of this article shall be on the one claiming the exemption. S.C. Code Ann. § 39-5-40. At this stage, State Farm's defense is not to be considered. Because Plaintiffs have sufficiently plead SCUTPA applies, State Farm's motion for judgment on the pleadings should be denied.

Plaintiffs also allege State Farm, as an insurance company dealing with a claimant, has duties to not hide or misrepresent but rather speak the truth and not provide "deceptive or misleading information with respect to coverages." S.C. Code Ann. § 38-59-20. By failing to disclose documents showing coverage was not excluded, State Farm, as an insurer, engaged in "unfairly competitive practices having as their purpose or effect evasion of the coverages

---

[2] *Hackworth v. Greywood at Hammett, LLC*, 385 S.C. 110, 115–16, 682 S.E.2d 871, 875 (Ct. App. 2009), *overruled by Paradis v. Chas. Cnty. Sch. Dist.*, 433 S.C. 562, 861 S.E.2d 774 (2021).

as provided in this [Automobile Insurance] chapter." S.C. Code Ann. § 38-77-10. *See* e.g. statutes cited under SCUTPA cause of action. Compl. ¶¶ 154-156.

It was alleged State Farm's conduct was deceptive or misleading in violation of the law. This includes invoking policy defenses not in good faith and with a reasonable expectation of prevailing with the primary purpose of discouraging a third-party claim or "any other practice which constitutes unreasonable delay in paying or an unreasonable failure to pay or settle in full claims, including third-party claims." State Farm was using a form never approved by the SC Department of Insurance. ¶¶ 58-61. SCUPTA has specific limited exceptions. *See* e.g. S.C. Code Ann. § 39-5-40 (c).

> This article does not supersede or apply to unfair trade practices covered and regulated under Title 38, Chapter 57, Sections 38-57-10 through 38-55-320.

The exceptions do not apply to S.C. Code Ann. § 38-77-341 which lists as unfair trade practices under 39-5-20 (SCUPTA). Plaintiffs have adequately alleged violations to withstand dismissing the SCUPTA cause of action. Last, whether there was a SCUTPA violation is a question of fact, not a matter of law.

### 2.8.    Standing – Plaintiffs in their individual capacity lack standing

**Court Should deny** dismissing individual Plaintiffs Mathew Workman and Kelly Workman Tick as they have sufficiently plead standing and interest as more argued below. There is no dispute that Estate and Personal Representative have standing.

### 3.    Concise Grounds Presented by GWB

In its motion, GWB claims it is absolutely immune, owed no duty and there is no issue of fact raised as a matter of law as to the following causes of action: aiding and abetting abuse of process, negligent misrepresentation, negligence, and conspiracy. GWB asserts

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

individual Plaintiffs do not have standing. GWB's motion should be denied as causes of action are properly plead and Plaintiffs have standing.

### 3.1.    Attorneys are Absolutely Immune

**Court should deny** Attorneys are not absolutely immune. Plaintiffs sufficiently plead allegations to deny GWB's motion. GWB argues there was at all times an attorney-client relationship. Plaintiffs did not plead at all times.

An "attorney may be held liable for conspiracy where, in addition to representing his client, he breaches some independent duty to a third person or acts in his own personal interest, outside the scope of his representation of the client" *Stiles v. Onorato*, 318 S.C. 297, 300, 457 S.E.2d 601, 602 (1995). "Even if the attorney who initiates civil proceedings for his client has no probable cause to do so, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a ***proper adjudication of the client's claim***." *Stiles v. Onorato*, 318 S.C. 297, 299, 457 S.E.2d 601, 602 (1995). It was plead GWB's actions were not for a proper adjudication of the client's claim and it acted improperly. For example:

- ¶12 Used and attached forged document in lawsuit in an improper attempt to deny coverage;
- ¶ 13 Provided forged and false records in the discovery process to misrepresent and mislead actual terms of the insurance policy;
- ¶ 14 Affirmatively represented the documents created after the collision were truthful when they were false or forged;
- ¶17 Improper actions and conduct in creating and using false documents as part of scheme to harm plaintiffs;
- ¶ 43-44 Used redacted document to hide information from Plaintiffs;
- ¶¶ 65, 72 GWB participated with State Farm in the improper use of documents, litigation and proceedings when such were improper and unlawful;
- ¶ 75 – 76 Falsely stated State Farm has investigated this matter and believes the policy exclusion applies;
- ¶¶ 77-78 Attached and used the false documents when they knew they were not true;
- ¶¶ 79-82 Breached various duties, including intentionally hiding actual facts and their misconduct by redacting documents to obscure and mislead the real

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

information and for other improper purposes by redacting information that would have shown the documents were fraudulent.

Allegations of manipulating and using false documents are such that "an attorney may be held liable where he acts in bad faith or for his own personal motivations." *Nautilus Ins. Co. v. Murdaugh*, No. CV 2:22-1307-RMG, 2022 WL 3648458, at *2 (D.S.C. Aug. 23, 2022). An attorney can be liable when committing fraud or malfeasance or tortious acts. It is recognized that an attorney may be held liable where he acts in bad faith or for his own personal motivations. *See generally Annotation* 97 ALR 3rd 688 (attorney's liability for abuse of process); *Annotation* 46 ALR 4th 249 (attorney's liability for malicious prosecution). *See also* RESTATEMENT (SECOND) OF TORTS § 674, comment d (attorney who acts without probable cause for an improper purpose is subject to same liability for the wrongful use of civil proceedings as any other person).

Sufficient facts have been plead showing GWB breached various duties owed to third parties, including not to misrepresent or affirmatively participate in illegal or improper conduct. Because of GWB's alleged conduct, the motion should be denied.

### 3.2.     Aiding and Abetting Abuse of Process – Attorneys Can't

GWB's motion should be denied as it was sufficiently plead that GWB knowingly participated, aided or abetted. *See* e.g.

- ¶ 1 Defendants worked together in various ways, including creating and filing false documents in a coordinated effort to deny Plaintiffs and others the benefit of insurance coverage;
- ¶ 69 GWB knowingly assisted, used and continued to use bogus documents;
- ¶ 79 Intentionally tried to hide facts and redacted information;
- ¶ 115 GWB participated in and continued to assist in the abuse of process including by drafting and filing the complaint, perpetuating litigation including obtaining defaults against parties who did not file answers by using the fake documents, failing to affirmatively disassociate from lawsuit, amend the complaint or alert the court or parties about the false documents, illegal actions and conduct of State Farm.

"As a general rule, liability for an abuse of process extends to all who knowingly participate, aid, or abet in the abuse. *See generally* 1 Am.Jur.2d Abuse of Process § 17; 72 C.J.S. Process § 112. Those who advise or consent to the unlawful acts, or subsequently ratify them, are liable as joint tort-feasors. *See*, e.g., *Woodring v. Jennings State Bank*, 603 F.Supp. 1060 (D.Neb. 1985); *Alexander v. Unification Church*, 634 F.2d 673 (2d Cir. 1980); *Ingo v. Koch*, 127 F.2d 667 (2d Cir. 1942). Where there is any evidence of aiding or abetting, the question is one for the jury." *Broadmoor Apartments of Charleston v. Horwitz*, 306 S.C. 482, 486, 413 S.E.2d 9, 11 (1991). GWB's motion should be denied.

### 3.3.    Negligent Misrepresentation

Plaintiffs properly plead GWB's negligent misrepresentation including reliance. Succinctly, as has been plead and argued herein, GWB had a pecuniary interest (Complaint ¶ 135) in satisfying and keeping its client State Farm. As discussed herein, GWB had duties to properly investigate and otherwise act in relation to Plaintiffs as nonclients. It has been sufficiently plead that GWB breached these duties, and as a result, Plaintiffs were harmed.

To the extent GWB claims lack of reliance, that is a defense, and not to be considered for this motion. Further, "[t]he general rule is that questions concerning reliance and its reasonableness are factual questions for the jury." *Unlimited Servs., Inc. v. Macklen Enterprises, Inc.*, 303 S.C. 384, 387, 401 S.E.2d 153, 155 (1991); *Slack v. James*, 364 S.C. 609, 615, 614 S.E.2d 636, 639 (2005). Plaintiffs plead facts supporting reliance on the false statements made. Reasonableness is for a jury to decide.

### 3.4.    Negligence and Civil Conspiracy

The Complaint alleges sufficient facts and is properly supported by the affidavit and expert opinion identifying the duties and breaches by GWB to support negligence and civil conspiracy claims which are both argued herein.

It was plead that GWB acted in its own interests and had duties separate from State Farm. *See* e.g. Compl., ¶¶ 68-73, 137, 146, pp. 42-45 and Ex. A Pendarvis' Affidavit citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §110(1), Rule 11 and other duties of candor to third parties and the tribunal. Lawyers have a duty to make reasonable inquiry to determine whether there is evidence supporting their factual allegations before filing a lawsuit, not manipulate documents to create new facts.

To the extent Defendants argue an attorney and client cannot engage in a civil conspiracy because the relationship is one of attorney-client or agent-principal, this is incorrect. The assumption argued by State Farm is that the attorney agent is working solely for the interests of the principal and does not have separate duties. Here, it was plead that GWB acted in its own interests and had duties separate from State Farm. *See* e.g. Compl. ¶¶ 68-73 and Pendarvis Aff. citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §110(1), Rule 11 and other duties of candor to third parties and the tribunal. Compl. including ¶¶ 42-45.

The GWB lawyers breached "their independent duties to Plaintiffs to investigate and confirm the evidence they submitted in support of State Farm's claims in the Federal Lawsuit provided a non-frivolous basis to support the claims before filing the Federal Lawsuit. The lawyers at the Law Firm apparently either did not conduct a reasonable investigation to evaluate the evidence that State Farm provided to support the claim, or they may have proceeded with the Federal Lawsuit to maintain their relationship with State Farm, notwithstanding whether the evidence appeared to support a meritorious claim." *Id. See also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §98 (2000):

> A lawyer communicating on behalf of a client with a nonclient
> may not:

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

(1) knowingly make a false statement of material fact or law to the nonclient;

(2) make other statements prohibited by law; or

(3) fail to make a disclosure of information required by law.

The law does not preclude suing a lawyer or law firm for acting in violation of duties owed, acting outside the scope of their duties or for their own interests. GWB had duties to correct prior misstatements and not make false ones. Plaintiffs attached an affidavit and expert opinion identifying the duties and breaches by GWB. *See* e.g. Compl., ¶¶ 137, 146, Ex. A Aff. Pendarvis. Failing to correct statements and documents even after the fraud became apparent required Plaintiffs to continue to defend, file motions and resulted in damage. Compl., ¶¶ 101-103. The other factual allegations and inferences from them are sufficient to deny the motions to dismiss.

While it may be true that "agents for a corporation acting in the scope of their duties cannot conspire with the corporation…"[3], the law does not prevent a civil conspiracy claim against one acting in violation of duties owed, acting outside the scope of their duties or for their own interests as has been alleged here. "If two people conspire to commit fraud, for example, but the actual fraudulent conduct is carried out by only one of them, the injured plaintiff should be able to sue both of them." *Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 579, 861 S.E.2d 774, 783 (2021), *reh'g denied* (Aug. 18, 2021) (Few, J. Concur).

In breach duties owed to Plaintiffs, GWB substantially assisted State Farm in the litigation, in part, by negligently, recklessly and/or knowingly using and continuing to use

---

[3] *McMillan v. Oconee Mem'l Hosp., Inc.*, 367 S.C. 559, 564, 626 S.E.2d 884, 887 (2006), *overruled by Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 861 S.E.2d 774 (2021).

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

bogus documents against Plaintiffs and others without adequately or reasonably investigating the validity and/or propriety of those documents. Compl. ¶ 69 and Pendarvis Aff.

### 3.5.    Kelly Tick and Matthew Workman Do Not Have Standing

Defendants motion to dismiss Plaintiffs Kelly Workman Tick and Matthew Workman should be denied. South Carolina merely requires that one have a real, material or substantial interest in the outcome of the litigation. "Generally, a party must be a real party in interest to the litigation to have standing. *Sloan v. Friends of Hunley, Inc.*, 369 S.C. 20, 28, 630 S.E.2d 474, 479 (2006) (A real party in interest is a party with a real, material, or substantial interest in the outcome of the litigation.) The siblings had an interest in the policy proceeds and were harmed by Defendants. Complaint ¶ 101-102, 105. Standing requires no more.

GWB concedes the Estate and Personal Representative have standing to bring the causes of action stated in the Complaint. *See e.g.* GWB Motion p. 2. It is believed that State Farm concedes standing of the Estate and Personal Representative as well. As an Estate must act through the personal representative, the Estate and Robert Workman have standing.

In asserting that the individuals do not have standing, State Farm cites an irrelevant case *Est. of Corley*, 299 S.C. 525, 386 S.E.2d 264 (Ct. App. 1989). In that case, heirs of an estate sued the administrator of the estate for failing to file a claim against other heirs of the estate to collect an alleged asset of the estate. That case does not hold that an heir of an estate does not have standing to bring a lawsuit against a third party when that third party causes harm to them individually.

The children are the beneficiaries of the Estate. They are entitled under the statute of intestate succession to the property of a decedent. S.C. Code Ann. § 62-1-201(20). Further, they are interested persons who have a property right in or claim against the estate which may be affected by this proceeding. S.C. Code Ann. § 62-1-201(23). The Estate was sued to

ELECTRONICALLY FILED - 2024 Sep 30 10:10 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

deprive it and the beneficiaries of proceeds. This caused them to pay to defend. The children

have standing and losses. Complaint ¶ 105.

**4.      Amend Complaint if Needed**

If the court determines something is lacking, Plaintiffs move and request the right to

amend their Complaint. If there is a dismissal, it should be without prejudice.

**5.      Conclusion**

For the reasons stated in the filings and oral argument, the motions for judgment on

the pleadings should be denied. All plaintiffs have standing. To the extent needed, Plaintiffs

move and should be allowed to amend the Complaint. If any claims are dismissed, they

should be without prejudice.

KAHN LAW FIRM, LLP
s/ JUSTIN S. KAHN
SC BAR NO. 65100
PO BOX 31397
CHARLESTON, SC 29417-1397
P. 843.577.2128
F. 843.577.3538
JSKAHN@KAHNLAWFIRM.COM

SEAN K. CLAGGETT (PRO HAC VICE)
CLAGGETT & SYKES LAW FIRM
4101 MEADOWS LANE, SUITE 100
LAS VEGAS NV 89107
(702) 213-2566
**ATTORNEYS FOR PLAINTIFFS**

ELECTRONICALLY FILED - 2024 Oct 11 3:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA     )
                            )     IN THE COURT OF COMMON PLEAS
COUNTY OF CHARLESTON        )     NINTH JUDICIAL CIRCUIT

|  |  |
|---|---|
| | )    Case No. 2023-CP-10-01832 |
| Robert C. Workman, Individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick and Matthew T. Workman, | ) ) ) ) ) |
| Plaintiffs, | ) **DEFENDANT STATE FARM** |
| | ) **MUTUAL AUTOMOBILE** |
| vs. | ) **INSURANCE COMPANY'S** |
| | ) **MEMORANDUM IN OPPOSITION TO** |
| State Farm Mutual Automobile Insurance Company and Gallivan, White & Boyd, P.A., | ) **PLAINTIFFS' MOTION TO RECONSIDER AND ALTER OR AMEND THE JUDGMENT DISMISSING STATE FARM** |
| Defendants. | ) ) |

Defendant State Farm Mutual Automobile Insurance Company ("State Farm") submits this memorandum in opposition to *Plaintiffs' Notice and Motion to Reconsider and Alter or Amend the Judgment Dismissing State Farm and Memorandum in Support* ("Motion"). Plaintiffs' arguments for reconsideration of the *Order as to Defendant State Farm's Rule 12(c) Motion for Judgment on the Pleadings* (the "Order") are addressed in turn.

### 1. The Court applied the correct standard.

Plaintiffs argue the Court conflated Rule 12(b)(6) and Rule 12(c) standards and, therefore, applied the wrong standard deciding State Farm's Motion for Judgment on the Pleadings ("MJOP"). (Mot. § 2, p. 3.) Specifically, Plaintiffs point to the part of the Order which states, "Plaintiffs' properly pleaded allegations of fact do not sufficiently plead a cause of action for abuse of process as required by Rule 12(c)." (Mot. § 2, p. 3 (citing page 8 of the Order); Order 8.) Plaintiffs argue this is error because Rule 12(c) evaluates the sufficiency of the pleadings in light of admitted facts, not whether the claims would survive a Rule 12(b)(6) motion, and the Order

ELECTRONICALLY FILED - 2024 Oct 11 3:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

"erroneously incorporated Rule 12(b)(6) principles, which were neither argued nor contended by State Farm." (Mot. § 2, p. 3.) Plaintiffs are incorrect in both respects.

　　As an initial matter, Plaintiffs' failure to state a claim is the bedrock of State Farm's MJOP, which was brought "[p]ursuant to Rule 12(c) and Rule 12(h)(2) of the South Carolina Rules of Civil Procedure." (Mot. J. on Pleadings 1, Sep. 1, 2023). Pursuant to Rule 12(h)(2), SCRCP, "[a] defense of failure to state a cause of action upon which relief can be granted … may be made … by motion for judgment on the pleadings." Accordingly, State Farm, in its MJOP, argued "Plaintiffs fail[ed] to state a legally cognizable claim against State Farm." (Mot. J. on Pleadings at 1.)

　　Moreover, motions for judgment on the pleadings under Rule 12(c) and motions to dismiss for failure to state a claim under Rule 12(b)(6) are decided under the same standard. *Compare Sapp v. Ford Motor Co.*, 687 S.E.2d 47, 49 (S.C. 2009) ("A judgment on the pleadings is proper where there is no issue of fact raised by the complaint that would entitle plaintiff to judgment if resolved in plaintiff's favor."), *with Doe v. Marion*, 645 S.E.2d 245, 247 (S.C. 2007) (dismissal under Rule 12(b)(6) is proper "[i]f the facts alleged and inferences reasonably deducible therefrom … would [not] entitle the plaintiff to relief on any theory"); *see also*, *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002) (noting whether a motion seeks dismissal for failure to state a claim under Rule 12(b)(6) or judgment on the pleadings under Rule 12(c) is a "distinction …without a difference" because "the same standard for Rule 12(c) motions" is applied to "motions made pursuant to Rule 12(b)(6)"); *United States Northstar Foundations, Inc. v. Satterfield & Pontikes Constr., Inc.*, No. 3:13-CV-2, 2013 WL 12137650, at *3 (N.D.W. Va. June 19, 2013) ("The standard of review for entry of judgment on the pleadings under Rule 12(c) is indistinguishable from the standard of review for dismissals based on failure to state a claim under Rule 12(b)(6); the difference between the two rules is simply the timing of the motion to dismiss.");

ELECTRONICALLY FILED - 2024 Oct 11 3:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*Lord Corp. v. S&B Tech. Prod., Inc.*, No. 5:09-CV-205-D, 2011 WL 13152459, at *4 (E.D.N.C. Jan. 5, 2011), *report and recommendation adopted sub nom.*, 2011 WL 13152489 (E.D.N.C. Feb. 2, 2011) ("In reviewing a motion for judgment on the pleadings under Rule 12(c), the court applies the same standard as is applied to a Rule 12(b)(6) motion for dismissal of claims for failure to state a claim upon which relief can be granted.").[1]

Accordingly, the Court did not "erroneously incorporate[] Rule 12(b)(6) principles" nor did it apply the incorrect standard in deciding State Farm's MJOP. Plaintiffs' Motion should be denied for these reasons.

**2. The Court correctly dismissed the abuse of process claim.**

Plaintiffs seek reconsideration of the Court's dismissal without prejudice of the abuse of process claim based on the following arguments: (a) the Court overlooked factual allegations supporting the necessary "ulterior purpose" element of the claim, and (b) the Court failed to properly assess the criminal nature of alleged forgery. (Mot. § 3, pp. 3-4.)

a. **The Court did not overlook allegations supporting the "ulterior purpose" element; there were none.**

Plaintiffs, citing the following paragraphs of their Complaint, assert the Court ignored their allegations "State Farm created and used forged and false documents in litigation to avoid coverage, coerce Plaintiffs into using their own insurance policies, and engage in litigation":

---

[1] Given the substantial similarity of state and federal Rules 12(c) and 12(b)(6), federal jurisprudence may be persuasive. *See e.g.*, *Senate by & through Leatherman v. McMaster*, 821 S.E.2d 908, 912 (S.C. 2018) (surveying federal jurisprudence on an issue involving a provision of the state constitution which contained similar language to the United States Constitution and was enacted in the same spirit and for the same purpose as its federal counterpart).

ELECTRONICALLY FILED - 2024 Oct 11 3:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

> 46) **STATE FARM** knew or should have known that Plaintiffs, others harmed by the collision and their automobile insurance carriers would use the false documents to make decisions about available automobile coverage.
>
> 47) **STATE FARM** knew or should have known Plaintiffs and others involved in the June 12, 2021 collision, including their automobile insurance carriers, would rely on **STATE FARM**'s false declarations page in making decisions and determinations about what coverage may be available via their own automobile insurance policies.
>
> 48) **STATE FARM** knew or should have known that Plaintiffs and others involved in the June 12, 2021 collision, including their automobile insurance carriers, would rely on the **STATE FARM**'s false declarations page in making decisions and determinations about litigation.

(Mot. § 3, pp. 3-4.) These paragraphs do not allege "State Farm created and used forged and false documents in litigation to avoid coverage, coerce Plaintiffs into using their own insurance policies, and engage in litigation" as Plaintiffs claim in their Motion.

In any event, the "ulterior purpose" element of abuse of process would require allegations the declaratory judgment action brought by State Farm (the "Underlying Suit") against the Estate of James K. Workman (the "Workman Estate") and other, non-parties was not brought to recover on the cause of action stated—a declaratory judgment on coverage—but instead to primarily accomplish some other purpose for which a declaratory judgment action was not designed.[2] *See e.g.*, *Food Lion, Inc. v. United Food & Com. Workers Int'l Union*, 567 S.E.2d 251, 255-56 (S.C. Ct. App. 2002). The Complaint is devoid of such allegations. While Plaintiffs allege "State Farm had an ulterior purpose in filing the [Underlying] [L]awsuit," (Compl. ¶ 110), "[a]n allegation that

---

[2] The "process" at issue was State Farm's filing of the Underlying Suit. (*See* Compl. ¶ 110 (alleging "State Farm had an ulterior purpose in filing the lawsuit.").)

ELECTRONICALLY FILED - 2024 Oct 11 3:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

a party had … an 'ulterior purpose' in bringing an action, standing alone, is insufficient to sustain an abuse of process claim." *Pallares v. Seinar*, 756 S.E.2d 128, 133 (S.C. 2014). Accordingly, the Court correctly dismissed the abuse of process claim and the Motion should be denied.

**b. Allegations State Farm committed forgery are not allegations of an "ulterior purpose" of the Underlying Suit.**

Plaintiffs also seek reconsideration of the dismissal of their abuse of process claim based on their argument the Court "failed to properly assess the criminal nature of forgery in this context" and "[t]he use of forged documents in litigation inherently constitutes abuse of process." (Mot. § 3, p. 4). This argument completely overlooks there are two separate and essential elements of an abuse of process claim: first, "an ulterior purpose," second "a willful act in the use of process not proper in the regular conduct of the proceeding." *First Union Mortg. Corp. v. Thomas*, 451 S.E.2d 907, 914 (S.C. Ct. App. 1994). Whether or not Plaintiffs alleged "willful act[s] in the use of process not proper in the regular conduct" of a declaratory judgment action, Plaintiffs do not allege a primary ulterior purpose of the Underlying Suit. Regardless of allegations State Farm attached a "forged" document to its Complaint in the Underlying Suit, the Order is correct and the Motion should be denied.

**3. The Court correctly dismissed the fraud and negligent misrepresentation claims.**

Plaintiffs ask the Court to reconsider its dismissal without prejudice of the fraud and negligent misrepresentation claims based on the following arguments: (a) reliance was adequately alleged, (b) reliance was not required, (c) State Farm had a duty to speak truthfully, and (d) judicial notice "has no place." (Mot. § 4, pp. 4-5; Mot. § 7, pp. 7-8.)

**a. The Court did not disregard allegations of detrimental reliance; there were none.**

Plaintiffs incorrectly contend "the Court disregarded the[] allegations" of fraud in paragraphs 46 through 48 and 101 through 105 of their Complaint. (Mot. § 4, p. 4.) Except for

ELECTRONICALLY FILED - 2024 Oct 11 3:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

paragraphs 103 through 105, the Order expressly addresses each of these paragraphs (among others), none of which allege Plaintiffs in fact relied on the truth of any alleged false representation made by State Farm, or that they suffered pecuniary loss as a result of such reliance. (Order 9-10.)

While the Order does not expressly address paragraphs 103 through 105 of the Complaint, neither do those paragraphs allege Plaintiffs relied upon the truth of false representations, much less to their detriment:

> 103)  When Plaintiffs discovered that the policy the Defendants filed in the declaratory judgment was fraudulent and created after the car accident, Plaintiffs filed a motion.
>
> 104)  In response, STATE FARM immediately:
>
> a)  Sought to dismiss its own declaratory judgment;
>
> b)  Admitted coverage when it previously claimed it did not owe it;
>
> c)  Removed all limits on coverage, ultimately paying on a claim it previously asserted was "excluded" using false documents; and
>
> d)  Claimed that the documents it filed were merely "mistakes" resulting from a series of improbable errors that no one with STATE FARM thought were improper.
>
> 105)  As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered losses, including incurring attorney's fees, costs, and expenses including to defend the lawsuit brought by Defendants and against Melvin O. Lamb, Jr. and Melvin O. Lamb, III.

(Compl. ¶¶ 103-105.) Given the absence of reliance allegations, the Court's Order is correct and the Motion should be denied.

### b.  Reliance is a necessary element.

According to Plaintiffs, another reason the Court should reconsider dismissal without prejudice of the fraud and negligent misrepresentation claims is "[r]eliance is not required when

fraud [] per se is alleged, particularly in the context of insurance fraud under South Carolina law." (Mot. § 4, p. 5.) Plaintiffs' argument relies on the Omnibus Insurance Fraud and Reporting Immunity Act, S.C. Code § 38-55-510, *et al.*, which states insurance fraud covered by the Act is committed when a person makes "a statement or representation that is false, material, made with the person's knowledge of the falsity of the statement and made with the intent of obtaining or causing another to obtain or attempting to obtain or causing another to obtain an undeserved economic advantage or benefit or made with the intent to deny or cause another to deny any benefit or payment in connect with an insurance transaction." S.C. Code § 38-55-530(D). While the Motion states the Court "ignore[ed]" this argument, (Mot. § 4, p. 5), the Court soundly rejected it in the Order, which should stand. (*See* Order 13.)

Neither in opposing State Farm's MJOP nor in seeking reconsideration of the Order have Plaintiffs cited any legal support for their apparent assumption Section 28-55-530(D) gives them a private right of action for "fraud *per se*"[3] under which, in derogation of the common law, there

---

[3] Plaintiffs appear to have coined the phrase "fraud *per se*" in this context. Historically, fraud *per se* was used to describe legal fraud the intent of which was presumed: "*Ex vi termini*, [the phrase fraud *per se*, or legal fraud] would seem to import such an evidence of fraud, as, in law, supersedes inquiry into the intention; embracing all of what are commonly called the badges of fraud. … The idea of a badge of fraud is, that it furnishes a *legal* presumption of a fraudulent intention, which supersedes inquiry into the *actual* intention; and every badge of fraud is therefore evidence of a legal fraud, or fraud *per se*." *Smith v. Henry*, 18 S.C.L. 118, 127 (S.C. App. L. & Eq. 1831). The phrase, which has not been used substantively by the South Carolina Supreme Court or Court of Appeals since the end of the 19th century, appears to have been used in the limited context of a fraudulent sale or transaction. *See, e.g.*, *Cox v. McBee & Henning*, 28 S.C.L. 195, 206 (S.C. Err. 1842) (discussing a vendor's post-sale possession as fraud *per se*). Just like fraud *per se* eliminated inquiry of intent in the context of fraudulent sales, constructive fraud, which was defined by the South Carolina Supreme Court in *Greene v. Brown*, 19 S.E.2d 114, 116 (1942), eliminates inquiry of intent in the context of fraudulent representations. Both actual fraud and constructive fraud, however, require the plaintiff both plead and prove detrimental reliance. *O'Quinn v. Beach Assocs.*, 249 S.E.2d 734, 738 (S.C. 1978) ("To establish constructive fraud all elements of actual fraud except the element of intent must be established."); *Warr v. Carolina Power & Light Co.*, 115 S.E.2d 799, 802 (S.C. 1960) (holding a plaintiff, "in order to state a good cause of action [for fraud], must allege (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's

ELECTRONICALLY FILED - 2024 Oct 11 3:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Oct 11 3:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

is no element of reliance. The language of the statute compels the conclusion the legislature did *not* create or intend to create a private right of action for "fraud *per se*" in Section 28-55-530(D) of the Omnibus Insurance Fraud and Reporting Immunity Act. *See State v. Hudson*, 519 S.E.2d 577, 581 (S.C. Ct. App. 1999) ("The legislature's intent should be ascertained primarily from the plain language of the statute.").

The Omnibus Insurance Fraud and Reporting Immunity Act empowers the Insurance Fraud Division of the Office of the Attorney General to criminally prosecute persons who have committed insurance fraud and collect fines, civil penalties, and restitution ordered by the court in which the case is prosecuted. S.C. Code Ann. § 38-55-560(A)-(B); C. Code Ann. § 38-55-550(A)-(B). The civil penalties contemplated by the Act are payable only to the director of the Insurance Fraud Division and must be used by it to fund the costs of enforcing and administering the provisions of the Act. S.C. Code Ann. § 38-55-550(A)-(B). Because it contemplates civil *penalties* as opposed to civil *damages*, and because it empowers only the Insurance Fraud Division of the Office of the Attorney General to pursue and collect those penalties, the Act does not afford Plaintiffs a private right of action for "fraud *per se*" against State Farm under which detrimental reliance on a false statement of material fact is not an element for recovery.

There is no authority, in the Omnibus Insurance Fraud and Reporting Immunity Act or elsewhere,[4] eliminating the necessary elements of detrimental reliance for fraud and negligent misrepresentation causes of action. Accordingly, the Court correctly dismissed these claims for want of detrimental reliance allegations and Plaintiffs' Motion should be denied.

---

knowledge of its falsity; (5) his intent that it should be acted upon by the person; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.").

[4] (*See* Order 11-13.)

8

ELECTRONICALLY FILED - 2024 Oct 11 3:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### c. The Claims Practices Act has no bearing on Plaintiffs' claims.

Plaintiffs seek reconsideration of the Order because "S.C. Code Ann. § 38-59-20 required State Farm disclose information, which it failed to do…" and, therefore, "State Farm had a duty to speak truthfully and did not." (Mot. § 4, p. 5.) According to Plaintiffs, "[b]y ignoring th[is] argument[], the Court failed to apply the correct legal standard to Plaintiffs' fraud and negligent misrepresentation claims." (Mot. § 4, p. 5.)

As an initial matter, S.C. Code Ann. § 38-59-20, referred to as the Claims Practices Act, does not itself require disclosures by an insurer to a third-party liability claimant. To the contrary, the Claims Practices Act identifies actions from which insurers should refrain; it contains a list of acts which constitute improper claim practices if unjustifiably committed by an insurer with such frequency as to indicate a general business practice. S.C. Code § 38-59-20(1)-(8). In any event, the Court dismissed the fraud and negligent misrepresentation claims because there are no well-pleaded factual allegations of reliance on the truth of any false representations, not because of the absence or presence of any "duty to speak truthfully." (Order 9.)

To the extent Plaintiffs intended this argument to apply to the Court's dismissal of a fraudulent concealment claim,[5] which itself is not addressed in their Motion, this argument was not made in Plaintiffs' Memo in Opposition to State Farm's MJOP, it was not made at the hearing, and it is improper for Plaintiffs to make it now in a Rule 59 motion for reconsideration. Moreover, the Claims Practices Act should have no bearing on the Court's decision to dismiss without prejudice the fraudulent nondisclosure claim.

---

[5] Plaintiffs, under their fraud cause of action, allege State Farm had a duty but failed to disclose certain facts to them. (Compl. ¶¶ 118-119.) This was treated as a fraudulent nondisclosure claim in the Court's Order. (Order 14.)

Nondisclosure, as opposed to affirmative misrepresentation, becomes fraudulent only when a party having knowledge of the facts has a duty to disclose them to the other party, which occurs in only three instances under South Carolina law: (1) where it arises from a pre-existing definite fiduciary relation between the parties; (2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in which the nondisclosure occurred; and (3) where the parties are involved in a contract or transaction that is itself intrinsically fiduciary in nature and necessarily calls for perfect good faith and full disclosure. *See, e.g.*, *Jacobson v. Yaschik*, 155 S.E.2d 601, 605 (S.C. 1967). As correctly noted by the Court, Plaintiffs' allegations in the Complaint implicate none of these situations (a fact they have not disputed). (Order 14.)

To the extent Plaintiffs now argue the Claims Practices Act creates an affirmative duty of disclosure owed to them by State Farm, the violation of which is actionable as fraudulent nondisclosure or concealment, there is no authority backing it up. As noted above, the Claims Practices Act itself does not call for certain disclosures by an insurer to a third-party liability claimant, it identifies actions from which insurers should refrain. S.C. Code § 38-59-20(1)-(8). Even if the Claims Practices Act did call for disclosure of certain facts to third-party liability claimants, nondisclosure in violation thereof would not be actionable as fraudulent nondisclosure. To hold otherwise would be contrary to the long-settled South Carolina law that the Claims Practices Act does not give rise to a private cause of action. *Masterclean, Inc. v. Star Ins. Co.,* 556 S.E.2d 371, 377 (S.C. 2001).

In sum, the Claims Practices Act has no bearing on the Court's decision to dismiss the fraud, fraudulent nondisclosure, and negligent misrepresentation claims. Plaintiffs' Motion should be denied.

ELECTRONICALLY FILED - 2024 Oct 11 3:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### d. Judicial notice of a court filing is proper.

Plaintiffs argue the Court "should have accepted as true the Plaintiffs' allegations that … [they] relied on the[] false documents to their detriment, including by hiring counsel and invoking their underinsured motorist coverage," and it was "erroneous" for the Court to take judicial notice of the Answer filed by the Workman Estate in the Underlying Suit. (Mot. § 7, p. 8.) As discussed above and correctly determined in the Order, there are no allegations of detrimental reliance for the Court to accept as true. Further, the Workman Estate's denials in its Answer, a pleading filed in the Underlying Suit, are judicially noticeable facts under Rule 201. S.C. R. Evid. 201(b). While Plaintiffs baldly assert "[j]udicial notice has no place in the Court's determination of a Rule 12(c) motion," (Mot. § 7, p. 8), under South Carolina law, "[j]udicial notice may be taken at any stage of the proceeding," S.C. R. Evid. 201(f). Plaintiffs' other arguments as to judicial notice are equally misplaced.

First, Plaintiffs contend "[j]ust because the allegations of [State Farm's] Complaint [in the Underlying Suit] were denied by Plaintiffs[6] does not mean that they were not relied on and acted upon to hire counsel and continue defending the bogus lawsuit." (Mot. § 7, p. 8.) Under Plaintiffs' theory of the case, State Farm is liable for fraud or negligent misrepresentation because allegations in and documents attached to its Complaint in the Underlying Suit were false. To state a cause of action under this theory, there must have been, among other things,[7] reliance on the truth of the

---

[6] The individual Plaintiffs were not parties to and made no appearance in the Underlying Suit, which was brought by State Farm against the Workman Estate and others.

[7] It is elemental both fraud and negligent misrepresentation require, in the first instance, a false representation of fact made by the defendant to the plaintiff. Plaintiffs allege false representations were made by State Farm in its filing of the Complaint in the Underlying Suit. (Compl. ¶¶ 12, 121, 122.) There are no allegations State Farm made any false representation outside the Underlying Suit, to which Plaintiffs in their individual capacity were not parties and in which they made no appearance. (*See gen.* Compl.) Thus, as correctly determined by the Court and further discussed in

ELECTRONICALLY FILED - 2024 Oct 11 3:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

allegations and documents. *See, e.g.*, *Warr*, 115 S.E.2d at 802. If the Workman Estate believed the allegations and documents to be true, then it was required to admit the same. *See United States v. $34,918 United States Currency*, No. 2:22-CV-2063, 2022 WL 2703956, at *1 (W.D. Ark. July 12, 2022) (explaining, in federal court, "a responsive pleader must make a good faith effort to admit allegations it believes to be true and to deny allegations it believes to be false; and where it lacks sufficient knowledge or information to form a belief one way or another, it must say so"). The fact that the Workman Estate did not, and instead denied the truth of State Farm's allegations and documents are judicially noticeable facts in this suit, in which Plaintiff Robert Workman as the Workman Estate's Personal Representative asserts fraud and negligence misrepresentation.

Next, Plaintiffs reason, "[i]f the Court is to take judicial notice, then the converse is true as to the filing by State Farm" and "[t]he Court should find that State Farm filed a lawsuit using forged documents which is itself an abuse of process." (Mot. § 7, p. 8.) Of course, the Court, if asked, can take judicial notice of the fact the Underlying Suit was filed, the fact certain allegations were made by State Farm in its Complaint, and the fact documents were attached to the Complaint. This is because "[a] judicially noticed fact … is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." S.C. R. Evid. 201(b). While it should go without saying, the Court cannot, under the guise of judicial notice, find State Farm "filed a lawsuit using forged documents" as Plaintiffs posit.

Given judicial notice may be taken at any stage of the proceeding and the Workman Estate's denial of the truth of State Farm's allegations in the Underlying Suit is capable of accurate and

---

section 6 *infra*, Plaintiffs in their individual capacity cannot assert fraud and negligent misrepresentation against State Farm.

ELECTRONICALLY FILED - 2024 Oct 11 3:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ready determination based on its filed Answer, the Court did not err in taking judicial notice, and the Motion should be denied in this respect.

**4.  The Court correctly dismissed the civil conspiracy claim.**

Plaintiffs ask for reconsideration of the dismissal with prejudice of their civil conspiracy claim based on the following arguments: (a) an attorney-client relationship does not preclude a conspiracy claim when the attorney acts beyond the scope of representation or in their own personal interest, and (b) the Court cited overruled precedent. (Mot. § 5, pp. 6-7.)

**a.  A civil conspiracy cannot exist given the agent-principal relationship between State Farm and GWB.**

Plaintiffs argue dismissal of their civil conspiracy claim was error because "an attorney-client relationship does not preclude a conspiracy claim when the attorney acts beyond the scope of representation or in their own personal interest." (Mot. § 5, p. 6.) Plaintiffs, however, did not allege State Farm's counsel in the Underlying Suit, Gallivan, White & Boyd, P.A. ("GWB") acted outside of its attorney-client relationship with State Farm to further some interest of its own. To the contrary, Plaintiffs allege State Farm and GWB acted together in an attorney-client relationship. (Compl. ¶¶ 8, 10, 12, 13.) This is fatal to their claim because a civil conspiracy cannot exist when the alleged act arises in an agent-principal relationship, and the relations of attorney and client and principal and agent are identical. *McMillan v. Oconee Mem'l Hosp., Inc.*, 626 S.E.2d 884, 886–87 (S.C. 2006) (holding "a civil conspiracy cannot exist when the alleged acts arise in the context of a principal-agent relationship because by virtue of the relationship such acts do not involve separate entities"); 15A C.J.S. Conspiracy § 10 ("Because acts of agent are considered in law to be acts of principal, a conspiracy cannot exist between a principal and an agent. In other words, the identity between an agent and principal leads to a legal impossibility in the context of conspiracy."); *State v. Goettie*, 41 S.C.L. 126, 128 (S.C. App. L. 1854) ("That the relations of

13

ELECTRONICALLY FILED - 2024 Oct 11 3:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

attorney and client, and principal and agent, are identical...are propositions that will scarcely be questioned.").

Plaintiffs assert they "alleged State Farm and GWB had independent duties and that its actions were taken in bad faith, which satisfies the requirements for civil conspiracy." (Mot. § 5, p. 6.) Plaintiffs cite no support for this contention, whether in their Complaint or in the law of this state, nor do they offer an explanation behind the assertion. In any event, Plaintiffs allege GWB was acting as State Farm's counsel at all relevant times, which is dispositive of the issue. Because a civil conspiracy cannot exist in the agent-principal relationship that was alleged (and did in fact exist) between State Farm and GWB, the Court correctly dismissed the claim with prejudice and the Motion should be denied.

> **b. Separate overt acts in furtherance of the alleged conspiracy remain a necessary element of civil conspiracy in the wake of *Paradis*.**

Plaintiffs also ask the Court to reconsider dismissal of the civil conspiracy claim because *Paradis v. Charleston County School District*, 861 S.E.2d 774, 780 (S.C. 2021), "overrules the precedent cited by the Court regarding civil conspiracy and has no applicability to attorney-client relationships." (Mot. § 5, p. 6.) *Paradis* did no such thing. *Paradis* overruled past precedent on civil conspiracy claims only "to the extent they impose or appear to impose a requirement of pleading (and proving) special damages." The Supreme Court's discussion of its past decisions, including *Todd v. South Carolina Farm Bureau Mutual Insurance Co.*, 278 S.E.2d 607 (S.C. 1981), which it noted correctly dismissed a civil conspiracy claim that merely repeated the same acts complained of in the plaintiff's other claims, confirms the still-standing pleading requirement of a separate overt act in furtherance of the conspiracy:

> In *Todd* the Court … held a plaintiff in a civil conspiracy action must allege acts in furtherance of the conspiracy. The Court noted the only wrongful acts alleged were those for which damages had already been sought, so the claim failed as a matter of law. … The plaintiff

ELECTRONICALLY FILED - 2024 Oct 11 3:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

> in *Todd* failed to plead any overt acts in furtherance of the conspiracy. Thus, the Court correctly concluded the civil conspiracy claim failed as a matter of law. … [T]he plaintiff's repetition of the same acts as the prior claims was insufficient to salvage the claim.

861 S.E. 2d at 779-80. Accordingly, the Court's Order noting this requirement—and Plaintiffs failure to satisfy it—is correct.

Plaintiffs also argue they alleged "sufficient facts that the wrongful acts were independent." (Mot. § 5, pp. 6-7.) They do not point to any such allegations of fact in their Complaint, nor do they identify which alleged wrongful acts were committed in furtherance of a conspiracy and are not the same acts upon which their other claims are premised. There are none. Plaintiffs' civil conspiracy claim merely incorporates by reference the same acts as the prior claims:

| XI. | SIXTH CAUSE OF ACTION: CONSPIRACY |
|---|---|
| 148) | Plaintiffs incorporate the above by reference. |
| 149) | Defendants acted together in combination or by agreement. |
| 150) | Defendants committed at least one unlawful act or a lawful act by unlawful means. |
| 151) | Defendants acted together and committed one or more overt acts in furtherance of that agreement. |
| 152) | As a proximate result of Defendants' civil conspiracy, Plaintiffs were injured and damaged. |

As stated in *Todd*, agreed upon by *Paradis*, and correctly decided in the Court's Order, Plaintiffs' repetition of the same acts as the prior claims is insufficient to salvage the civil conspiracy claim. Plaintiffs' Motion should be denied on this ground.

**5. The Court correctly dismissed the SCUTPA claim.**

Plaintiffs ask the Court to reconsider its dismissal with prejudice of their claim for violation of South Carolina Unfair Trade Practices Act ("SCUTPA") based on their contention the Court

15

ELECTRONICALLY FILED - 2024 Oct 11 3:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

failed to address their argument State Farm engaged in deceptive practices under S.C. Code Ann. § 38-77-341 and § 38-59-20 which they claim are not covered by the statutory exemptions of SCUTPA. (Mot. § 6, p. 7.) In fact, this argument was fully addressed and soundly rejected by the Court. (Order 19-22.) Plaintiffs' Motion cites no other basis for reconsideration of the Court's dismissal of the SCUTPA claim; the Motion should be denied.

**6. The Court correctly dismissed Plaintiffs in their individual capacity.**

Finally, Plaintiffs seek reconsideration of the Court's dismissal with prejudice of the Plaintiffs in their individual capacity. Plaintiffs argue they have standing because they "had an interest in the policy proceeds and were harmed by State Farm by paying for counsel and defending the [Underlying Suit]." (Mot. § 8, pp. 8-9.) Plaintiffs Kelly Workman Tick, Matthew T. Workman, and Robert C. Workman, in his individual capacity, were not parties to the Underlying Suit and, therefore, at no time were they "defending" it.  (Compl. ¶ 74.) The Court correctly determined this inescapable fact was fatal to standing.

Further, neither any claimed indirect impact of the Underlying Suit on the Plaintiffs in their individual capacity nor their interest in the outcome of the Underlying Suit gives rise to standing. For example, "[t]he tort of abuse of process is intended to compensate *a party* for harm resulting from *another party's* misuse of the legal system," *Pallares v. Seinar*, 756 S.E.2d 128, 133 (S.C. 2014) (emphasis added), yet Plaintiffs, in their individual capacities, were not parties to the Underlying Suit which is the subject of their abuse of process claim. Similarly, both fraud and negligent misrepresentation require a false representation of fact be made by the defendant to the plaintiff, however Plaintiffs, in their individual capacity, allege fraudulent and negligent misrepresentations were made in the Underlying Suit, to which they were not parties and in which they made no appearance.

ELECTRONICALLY FILED - 2024 Oct 11 3:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

In sum, Plaintiffs, in their individual capacity, are heirs of the Workman Estate, a third-party liability claimant against a policy issued by State Farm to an insured who was involved in a car wreck that killed James K. Workman. They had no direct interactions with State Farm and they allege no direct interactions with State Farm. Their interest in the Workman Estate's assets does not give rise to standing for the claims advanced in this suit. The Court's Order is correct and Plaintiffs' Motion for reconsideration should be denied.

## CONCLUSION

For the reasons set forth above, the reasons discussed in the Court's Order, and the reasons argued by State Farm in connection with its MJOP, the Court's Order is correct, and Plaintiffs' Motion should be denied.

WHELAN MELLEN & NORRIS, LLC

By: *s/M. Kathleen McTighe Mellen*
     Robert W. Whelan
     Bar No. 71174
     E-Mail: robbie@whelanmellen.com
     M. Kathleen McTighe Mellen
     Bar No. 100826
     E-Mail: katie@whelanmellen.com
     89 Broad Street
     Charleston, SC 29401
     (843) 998-7099

*Attorneys for State Farm Mutual Automobile Insurance Company*

Charleston, South Carolina
October 11, 2024

**FORM 4**

| STATE OF SOUTH CAROLINA | JUDGMENT IN A CIVIL CASE |
|---|---|
| COUNTY OF  Charleston | |
| IN THE COURT OF COMMON PLEAS | CASE NO.  2023CP1001832 |

| Robert C Workman et al | State Farm Mutual Automobile Insurance Company et al |
|---|---|
| PLAINTIFF(S) | DEFENDANT(S) |

### DISPOSITION TYPE (CHECK ONE)

☐ **JURY VERDICT**. This action came before the court for a trial by jury.  The issues have been tried and a verdict rendered.

☑ **DECISION BY THE COURT**.  This action came to trial or hearing before the court. The issues have been tried or heard and a decision rendered.

☐ **ACTION DISMISSED** (*CHECK REASON*): ☐ Rule 12(b), SCRCP; ☐ Rule 41(a), SCRCP (Vol. Nonsuit); ☐ Rule 43(k), SCRCP (Settled);
☐ Other

☐ **ACTION STRICKEN** (*CHECK REASON*): ☐ Rule 40(j), SCRCP; ☐ Bankruptcy;
☐ Binding arbitration, subject to right to restore to confirm, vacate or modify arbitration award;
☐ Other

☐ **STAYED DUE TO BANKRUPTCY**

☐ **DISPOSITION OF APPEAL TO THE CIRCUIT COURT** (*CHECK APPLICABLE BOX*):
☐ Affirmed; ☐ Reversed; ☐ Remanded;
☐ Other

NOTE:   ATTORNEYS ARE RESPONSIBLE FOR NOTIFYING LOWER COURT, TRIBUNAL, OR ADMINISTRATIVE AGENCY OF THE CIRCUIT COURT RULING IN THIS APPEAL.

**IT IS ORDERED AND ADJUDGED:** ☐ See attached order (formal order to follow) ☑ Statement of Judgment by the Court:

A hearing on Plaintiff's two Motions to Alter or Amend was held via WebEx on 10/31/24. Plaintiff's separate Motions to Alter or Amend the 8/29/24 and 9/20/24 Orders regarding Defendants' Rule 12(c) Motions are GRANTED in part and DENIED in part. Separate formal orders will follow.

### ORDER INFORMATION

This order ☐ ends ☑ does not end the case.            ☐ See Page 2 for additional information.

### For Clerk of Court Office Use Only

This judgment was electronically entered by the Clerk of Court as reflected on the Electronic Time Stamp, and a copy mailed first class to any party not proceeding in the Electronic Filing System on  10/31/2024 .

James K Workman Estate
James K Workman
Robert C Workman Personal Representative

### NAMES OF TRADITIONAL FILERS SERVED BY MAIL

ELECTRONICALLY FILED - 2024 Oct 31 2:08 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

**Court Reporter:**

**E-Filing Note:  The date of Entry of Judgment is the same date as reflected on the Electronic File Stamp and the clerk's entering of the date of judgment above is not required in those counties. The clerk will mail a copy of the judgment to parties who are not E-Filers or who are appearing pro se. See Rule 77(d), SCRCP.**

ELECTRONICALLY FILED - 2024 Oct 31 2:08 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Oct 31 2:08 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832



Charleston Common Pleas

**Case Caption:**     Robert C Workman , plaintiff, et al VS   State Farm Mutual
Automobile Insurance Company , defendant, et al

**Case Number:**     2023CP1001832

**Type:**     Order/Electronic Form 4

So Ordered

s/ Thomas W. McGee III, Judge Code 2786

Electronically signed on 2024-10-31 12:06:00     page 3 of 3

ELECTRONICALLY FILED - 2024 Nov 06 1:30 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

IN THE COURT OF COMMON PLEAS

Civil Action No. 2023-CP-10-01832

Robert C. Workman, Individually and as Personal Representative of the Estate of James K. Workman, Kelly Workman Tick and Matthew T. Workman,

        Plaintiffs,

        vs.

State Farm Mutual Automobile Insurance Company and Gallivan White & Boyd, P.A.,

        Defendants.

**AMENDED ORDER GRANTING DEFENDANT GALLIVAN WHITE & BOYD, P.A.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

THIS MATTER is before the Court on the Motion for Judgment on the Pleadings filed by Defendant Gallivan White & Boyd, P.A. ("GWB"). For the reasons set forth below, the Court GRANTS the Motion as to all causes of action.

## BACKGROUND

Plaintiffs' Complaint alleges wrongdoing in the filing and handling of a declaratory judgment action brought by an insurance company and its counsel to adjudicate the question of coverage for a tragic accident. GWB was retained as counsel for State Farm and in that capacity filed a declaratory judgment action (the "Underlying Action"), claiming that because an excluded driver caused the accident, State Farm had no obligation to extend coverage. *See* DJA Compl. ¶ 29-34, Aug. 16, 2021, C.A. No. 2:21-cv-02623, ECF No. 1.[1] Plaintiffs allege that policy documents

---

[1] The court takes judicial notice of the pleadings and exhibits filed in the Underlying Action pursuant to Rule 201, South Carolina Rules of Evidence (A court may take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."). *See also Doe v. Bishop of Charleston,* 407 S.C. 128, 134 n. 2, 754 S.E.2d 494, 497 n. 2 (2014) (recognizing a circuit court may take judicial notice of previously entered, related court orders and consider them when ruling on a Rule 12(b)(6), SCRCP, motion to dismiss); Rule 201(f), SCRE ("Judicial notice may be taken at any stage of the proceeding.").

ELECTRONICALLY FILED - 2024 Nov 06 1:30 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

attached to the Underlying Action complaint were falsified by State Farm to avoid providing coverage for the Accident. *See generally*, Compl. This Court notes that Plaintiffs raised the same issue of the policy documents' authenticity and related alleged bad acts in the Underlying Action through a Motion for Sanctions[2], which State Farm opposed[3]. The District Court, with all the evidence before it, denied the Motion for Sanctions and granted State Farm's voluntary dismissal of the case.[4]

GWB argues that Rule 12(c), SCRCP requires dismissal of each cause of action brought against it because (1) GWB is immune from Plaintiffs' causes of action, and (2) Plaintiffs lack sufficient facts to support each individual cause of action. In addition, GWB asserts that some of the Plaintiffs lack standing. The Court held a hearing on this Motion on July 10, 2024. The Motion has been fully briefed and is ripe for disposition.

## DISCUSSION AND CONCLUSIONS

### I.    STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a), SCRCP. A motion filed under Rule 12(c), SCRCP challenges the legal sufficiency of the complaint, and is granted when "there is no issue of fact raised by the complaint that would entitle plaintiff to judgment if resolved in plaintiff's favor." *Russell v. Columbia,* 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991)." "A motion for judgment on the pleadings is in the nature of a demurrer, and will be granted 'when, under the admitted facts, the moving party would be entitled to judgment on the merits, without regard to what the findings might be on the facts on which the issue is joined.'" *See Brown v. United Ins. Co. of America*, 268 S.C. 254,

---

[2] Motion for Sanctions, February 10, 2022, C.A. No. 2:21-cv-02623, ECF No. 66.
[3] Response in Opposition to Motion for Sanctions, May 24, 2022, C.A. No. 2:21-cv-02623, ECF No. 81.
[4] Order, July 28, 2022, C.A. No. 2:21-cv-02623, ECF No. 87.

ELECTRONICALLY FILED - 2024 Nov 06 1:30 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

257, 233 S.E.2d 298, 300 (1977) (quoting *Wooten v. Standard Life & Casualty Insurance Co.,* 239 S.C. 243, 248, 122 S.E.2d 637, 639 (1961))  "When considering such motion, the court must regard all properly pleaded factual allegations as admitted." *Russell,* 305 S.C. at 86. However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to a presumption of truth. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).

## II.    DISCUSSION

GWB requests that the Court dismiss Plaintiffs' causes of action for aiding and abetting abuse of process, negligent misrepresentation, negligence, and civil conspiracy claims. GWB bases its motion both upon attorney immunity and shortcomings specific to each cause of action. Because immunity is relevant to all causes of action, this Order discusses it first, then addresses each cause of action.

### A.  ATTORNEY IMMUNITY FROM LIABILITY TO THIRD PERSONS

It is well-established in South Carolina that "an attorney is immune from liability to third persons arising from the performance of his professional activities as an attorney on behalf of and with the knowledge of his client." *Gaar v. N. Myrtle Beach Realty Co.*, 287 S.C. 525, 528, 339 S.E.2d 887, 889 (Ct. App. 1986). In *Gaar*, the Court of Appeals explained that because an "attorney normally conducts the litigation solely in his professional capacity. . .[without] personal interest in the suit" he is only held liable "to his client and those in privity with his client, for injury allegedly arising out of the performance of his professional duties." *Id.* 287 S.C. at 529, 339 S.E.2d at 889 (citing *W.D.G., Inc. v. Mutual Mfg. & Supply Co.*, 5 Ohio Op.3d 397 (1976)) (internal quotations omitted). This immunity supports our legal system, which requires that "[a]ttorneys. . . be free to act and advise their clients without constant fear of harassment from lawsuits." *Id.*, 287

3

ELECTRONICALLY FILED - 2024 Nov 06 1:30 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

S.C. at 529, 339 S.E.2d at 889. The immunity rule articulated in *Gaar* has been favorably cited in subsequent South Carolina cases.[5]

The Complaint does not allege – and there is no evidence indicating – that GWB represented any of the Plaintiffs at any time. Therefore, unless Plaintiffs can show that GWB acted outside the scope of its representation of State Farm and without State Farm's knowledge, South Carolina law requires the dismissal of Plaintiffs' causes of action.

### B. Aiding and Abetting Abuse of Process

Plaintiffs assert they are entitled to relief from GWB for its role in alleged abuse of process by State Farm in pursuing the Underlying Action. To recover from GWB, Plaintiffs must show that GWB acted outside the scope of its capacity as State Farm's counsel and/or outside State Farm's authority. *See Gaar*, 287 S.C. at 528, 339 S.E.2d at 889 (holding an attorney was immune from a malicious prosecution claim when he acted with his client's authority in pursuing the case). Abuse of process requires a showing of ulterior purpose not proper to the proceeding itself and a willful act not authorized by the legal process. *See Broadmoor Apartments of Charleston v. Horwitz*, 306 S.C. 482, 486 (1991) (internal citations omitted); *Swicegood v. Lott*, 379 S.C. 346, 352, 665 S.E.2d 211, 214 (Ct. App. 2008); and *Food Lion, Inc. v. United Food & Commercial Workers Intern. Union*, 351 S.C. 65, 71, 567 S.E.2d 251, 253 (Ct. App. 2002) (internal citations omitted). If an abuse of process has occurred, then "liability for an abuse of process extends to all who *knowingly* participate, aid, or abet in the abuse." 306 S.C. at 486 (citing 1 Am. Jur.2d *Abuse of Process* § 17; 72 C.J.S. *Process* § 112) (emphasis added).

---

[5] *See Stiles v. Onorato*, 318 S.C. 297, 457 S.E.2d 601 (1995) (noting an attorney is immune from third party claims for actions taken in his professional capacity) and *Hager v. McCabe, Trotter & Beverly, P.C.*, 435 S.C. 740, 869 S.E.2d 886 (Ct. App. 2022) ("Immunity is a function of the fact that an attorney acting within the scope of representation is not acting on his or her own behalf, but on the client's behalf").

ELECTRONICALLY FILED - 2024 Nov 06 1:30 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Viewing the Complaint in the light most favorable to the Plaintiffs, it is undisputed that GWB pursued the Underlying Action on State Farm's behalf and with State Farm's knowledge. Therefore, Plaintiffs cannot maintain this cause of action against GWB as currently pled. In addition, Plaintiffs' Complaint fails to allege any purpose not proper to a declaratory judgment action or an act unauthorized by the process. Determination of coverage is a proper purpose of a declaratory judgment proceeding. Plaintiffs disagree with State Farm's position on coverage, but they have not alleged that State Farm had any other purpose for filing the Underlying Action. By extension, Plaintiffs cannot allege that GWB was aware of an undefined ulterior purpose. Similarly, although Plaintiffs take issue with the policy documents, attaching the policy documents is authorized by the legal process. Therefore, Plaintiffs' aiding and abetting abuse of process cause of action fails and GWB is entitled to judgment under Rule 12(c).

### C. NEGLIGENT MISREPRESENTATION

Plaintiffs claim that GWB negligently misrepresented to Plaintiffs that the policy documents filed with the Underlying Action were authentic. Compl. ¶ 132. Negligent misrepresentation requires (1) a misrepresentation; (2) a defendant's pecuniary interest in making the misrepresentation; (3) a duty of care owed by defendant to the plaintiff; (4) a breach of the duty of care; (5) a plaintiff's reasonable reliance on the misrepresentation; and (6) damages. *See Turner v. Milliman*, 392 S.C. 116, 123, 708 S.E.2d 766, 769 (2011).  GWB argues that because it was acting as State Farm's attorney and with State Farm's authority in utilizing the policy documents in the Underlying Action, it is immune from this cause of action. GWB also denies that the policy documents were falsified, and argues that regardless of the documents' authenticity, Plaintiffs have failed to establish the necessary elements of the cause of action.

ELECTRONICALLY FILED - 2024 Nov 06 1:30 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Upon review of the Complaint, the Court finds no allegation that GWB acted outside the scope of its capacity as State Farm's attorney, necessitating dismissal of this cause of action on the grounds of immunity. Further, the Complaint merely recites that GWB had a pecuniary interest in making the representation and that Plaintiffs were damaged by their reliance on the representation, without providing any supporting facts. Compl. ¶¶ 135, 139 and 140 ("135) Defendants had a pecuniary interest in making these representations. . .139) Plaintiffs and others justifiably relied on the representations. . .140) Plaintiffs and others suffered losses, including pecuniary, as a proximate result of their reliance on the representations and associated conduct of Defendants").

Finally, Plaintiffs have failed to sufficiently allege a duty of care and a breach of that duty. "An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance." *Spence v. Wingate*, 395 S.C. 148, 161, 716 S.E.2d 920, 927 (internal citations and quotations omitted). Plaintiffs allege professional standards dictate that GWB owes them an independent duty, citing the South Carolina Rules of Professional Conduct ("RPC") and the Restatement (Third) of the Law Governing Lawyers (the "Restatement"). *See* Compl., Exhibit A. Each precludes Plaintiffs from using it to establish a duty. *See* Rules of Professional Conduct: Scope [7], RPC, Rule 407, SCACR ("Violation of a Rule [should not] create any presumption ... that a legal duty has been breached"); *and see* RESTATEMENT 3D OF THE LAW GOVERNING LAWYERS, § 51, cmt. c ("A lawyer representing a party in litigation has no duty of care to the opposing party under this Section, and hence no liability for lack of care. . ."). Without a duty, there can be no breach.

For these reasons, GWB is entitled to judgment on the pleadings regarding the negligent misrepresentation cause of action.

ELECTRONICALLY FILED - 2024 Nov 06 1:30 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### D. NEGLIGENCE

GWB requests dismissal of this cause of action because, in addition to attorney immunity, GWB owed no independent duty to Plaintiffs. A plaintiff cannot prevail on a negligence cause of action without establishing a duty of care. *See Moore v. Weinberg*, 373 S.C. 209, 220, 644 S.E.2d 740, 746 (2007). Our Supreme Court has explicitly recognized that "an attorney owes no duty to a non-client unless the attorney breaches some independent duty to a third person or acts in his own personal interest, outside the scope of his representation of the client." *Argoe v. Three Rivers Behavioral Center and Psychiatric Solutions*, 388 S.C. 394, 395, 697 S.E.2d 551, 554 (2010) (internal citations and quotations omitted). Further, a lawyer owes no duty of care to an opposing party in litigation. *See* RESTATEMENT 3D OF THE LAW GOVERNING LAWYERS, § 51, cmt c.

Upon careful review, the only reasonable inference from the Complaint is that GWB was acting in its professional capacity as State Farm's legal counsel, and cannot be sued by Plaintiffs for the actions it took in that capacity. *See Gaar*, 287 S.C. at 528, 339 S.E.2d at 889. The Complaint does not allege facts that would tend to show GWB acted in its own interest or outside the scope of its representation of State Farm. Further, this Court can find no basis for Plaintiffs' assertion that GWB owed them a legal duty that gives rise to a civil cause of action. GWB represented State Farm, an opposing party to the Estate of James K. Workman in the Underlying Action. The Individual Plaintiffs had no role in the Underlying Action or connection to GWB. Therefore, Plaintiffs' negligence claim against GWB must be dismissed under Rule 12(c).

ELECTRONICALLY FILED - 2024 Nov 06 1:30 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### E.  CONSPIRACY

Plaintiffs' cause of action for civil conspiracy incorporates prior allegations of the Complaint and states:

> 149) Defendants acted together in combination or by agreement.
> 150) Defendants committed at least one unlawful act or a lawful act by unlawful means.
> 151) Defendants acted together and committed one or more acts in furtherance of that agreement.
> 152) As a proximate result of Defendants' civil conspiracy, Plaintiffs were injured and damaged.

Compl. ¶¶ 148-152. This is a verbatim recitation of the elements of civil conspiracy, unsupported by separate factual allegations. *See Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 861 S.E.2d 774, 780 (2021). In South Carolina, a plaintiff "must plead additional facts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit dismissal of the claim." *Hackworth v. Greywood at Hammett, LLC*, 385 S.C. 110, 682 S.E.2d 871, 875 (Ct. App. 2009), *overruled on other grounds by Paradis*, 861 S.E.2d 774.  "Where the particular acts charged as a conspiracy are the same as those relied on as the tortious act or actionable wrong, plaintiff cannot recover damages for such act or wrong, and recover likewise on the conspiracy to do the act or wrong.'" *Todd v. S.C. Farm Bureau Mut. Ins. Co.,* 276 S.C. 284, 278 S.E.2d 607, 612 (1981) (quoting 15A C.J.S. *Conspiracy* § 33, at 718)), *overruled on other grounds by Paradis*, 861 S.E.2d 774.

Viewing the allegations in the light most favorable to the Plaintiffs and taking all well-pleaded factual allegations as true, the Court finds the Plaintiffs fail to allege any additional acts by GWB in furtherance of a conspiracy that are separate and independent from other wrongful acts alleged in the Complaint. Plaintiffs merely incorporate previous claims and add conclusory allegations that GWB was engaged in a civil conspiracy. Further, Plaintiffs have not alleged

TPGL 14692335v1

ELECTRONICALLY FILED - 2024 Nov 06 1:30 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

sufficient facts to show that GWB acted outside the scope of its representation of State Farm, or that it owed Plaintiffs an independent duty, barring Plaintiffs from bringing a civil conspiracy cause of action against GWB. *See Kozel v. Kozel*, 299 F. Supp. 3d 737, 757 (D.S.C. 2018) (quoting *Stiles*, 457 S.E.2d at 602). Because this cause of action fails to raise sufficient factual allegations to survive a Rule 12(c) motion, it must be dismissed.

### F. Individual Plaintiffs Lack Standing to Bring the Complaint

GWB argues that with the exception of the Estate of James K. Workman, the Plaintiffs lack standing to bring the Complaint. In order to have constitutional standing, a party bringing an action must have "a real, material, or substantial interest in the subject matter of the action" rather than "a nominal or technical interest in the action." *Uhlig LLC v. Shirley*, 2011 U.S. Dist. LEXIS 31833, *10, 2011 WL 1119548 (D.S.C. 2011) (citing *Sloan v. Greenville County*, 356 S.C. 531, 547, 590 S.E.2d 338, 347 (Ct. App. 2003)). With the exception of the Estate of James K. Workman, none of the Plaintiffs were parties to the Underlying Action. *See* Compl. ¶ 74. The only specific interest ascribed to the individual Plaintiffs in the Complaint is that they are heirs of the Estate (Compl. ¶¶ 20-22), which is not an interest that gives rise to standing in South Carolina. *See Estate of Corley*, 299 S.C. 525, 526, 386 S.E.2d 264, 265 (Ct. App. 1989) (holding that "the heirs [of the estate] were not real parties in interest [in an action to recover property of the decedent] because they were not the legal representatives of the estate and therefore did not have standing to pursue the action. . .."). Therefore, the Individual Plaintiffs lack standing and their claims must be dismissed such that the only Plaintiff going forward is Robert C. Workman as Personal Representative of the Estate of James K. Workman.

TPGL 14692335v1

ELECTRONICALLY FILED - 2024 Nov 06 1:30 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### III.   CONCLUSION

For the foregoing reasons, and having carefully considered the pleadings and applicable law, the Motion for Judgment on the Pleadings filed by GWB is GRANTED without prejudice. The remaining Plaintiff shall have 30 days in which to file an amended complaint should he chose to do so.

_____
The Honorable Thomas William McGee, III
Circuit Court Judge


Columbia, South Carolina

_____, 2024

ELECTRONICALLY FILED - 2024 Nov 06 1:30 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832



Charleston Common Pleas

**Case Caption:**     Robert C Workman , plaintiff, et al VS   State Farm Mutual
                      Automobile Insurance Company , defendant, et al

**Case Number:**      2023CP1001832

**Type:**             Order/Amend


So Ordered

s/ Thomas W. McGee III, Judge Code 2786


Electronically signed on 2024-11-06 10:54:07    page 11 of 11

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | |
| | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF CHARLESTON | ) | NINTH JUDICIAL CIRCUIT |
| | ) | Case No. 2023-CP-10-01832 |
| Robert C. Workman, Individually and as | ) | |
| Personal Representative of the Estate of | ) | |
| James K. Workman, Kelly Workman | ) | |
| Tick and Matthew T. Workman, | ) | |
| | ) | |
| Plaintiffs, | ) | **AMENDED ORDER AS TO** |
| | ) | **DEFENDANT STATE FARM'S RULE** |
| | ) | **12(c) MOTION FOR JUDGMENT ON** |
| vs. | ) | **THE PLEADINGS** |
| | ) | |
| State Farm Mutual Automobile Insurance | ) | |
| Company and Gallivan, White & Boyd, | ) | |
| P.A., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

BEFORE THE COURT is Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion for Judgment on the Pleadings ("Motion") seeking dismissal of Plaintiffs' abuse of process, fraud, negligent misrepresentation, fraudulent nondisclosure, civil conspiracy, and violation of South Carolina Unfair Trade Practices Act ("SCUTPA") causes of action. For the reasons set forth herein, the Court GRANTS the Motion with prejudice as to the SCUTPA claim and without prejudice as to the other claims, and GRANTS the Motion as to all claims of Robert C. Workman Individually, Kelly Workman Tick, and Matthew T. Workman (the "Individual Plaintiffs").

### *Plaintiffs' Allegations*

As set forth in Plaintiffs' Complaint, Melvin O. Lamb, III was driving a Tahoe owned by his father, Melvin O. Lamb, Jr., and insured by State Farm when he caused a fatal multicar collision on June 12, 2021 (the "Accident"). Compl. ¶¶ 2-3, 30, 31, 32. Plaintiffs do not allege they were individually involved in the Accident or that they owned and insured any of the vehicles involved in the Accident. They allege their father, James K. Workman, was involved in the Accident, that

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Melvin O. Lamb, III drove the Tahoe into their father's vehicle, and their father died because of the injuries from the crash. Compl. ¶¶ 3, 30-32. Plaintiffs allege Robert Workman is the Personal Representative of the Workman Estate and that he, in his individual capacity, along with Kelly Tick and Matthew Workman (collectively referred to as the "Individual Plaintiffs") are heirs of the Workman Estate. Compl. ¶¶ 20-22.

Plaintiffs are not insureds of State Farm, but Plaintiffs allege Melvin O. Lamb, Jr. and Melvin O. Lamb III were State Farm's insureds under an automobile liability insurance policy covering the Tahoe (the "Policy"). Compl. ¶¶ 33-35. Plaintiffs allege the Policy was not subject to an excluded driver endorsement at the time of the Accident and State Farm initially represented to them, through a "Confirmation of Coverage," the Policy covering the Tahoe on the date of the Accident was "policy number 632318940A". Compl. ¶¶ 5-6, 34-35.

Plaintiffs allege State Farm created a new declarations page for the Policy a month after the accident (the "New Declarations Page") to exclude coverage and avoid payment for claims arising from the Accident. Compl. ¶¶ 7, 40-42, 50. The New Declarations Page identified the Policy's number as 632 3189-B07-40B and stated it "[r]eplaced policy number 632189-40A," the Policy number provided to them in the earlier "Confirmation of Coverage." Compl. ¶¶ 5-6, 51-52. Plaintiffs also allege the New Declarations Page materially misrepresented Melvin O. Lamb, III was an excluded driver and referenced an excluded driver endorsement, Form 6023DC, that was not approved by the South Carolina Department of Insurance and was not previously referenced on the Policy's prior declarations pages (the "Unapproved Form"). Compl. ¶¶ 51, 58-60. According to Plaintiffs, State Farm wanted them to rely upon the New Declarations Page as being true when it was not and State Farm knew Plaintiffs would use it to make decisions about what coverage may be available via "their own automobile insurance policies" and decisions about litigation. Compl. ¶¶ 44, 46-48, 96-97, 99. Plaintiffs allege State Farm then created a certified copy of the Policy using the New Declarations Page, with the certification falsely stating the Policy,

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

including the New Declarations Page, was a true and accurate record of the terms and conditions of the Policy in effect at the time of the Accident ("Certified Policy"). Compl. ¶¶ 54-56.

State Farm provided the New Declarations Page and Certified Policy to Defendant Gallivan, White & Boyd, P.A. ("GWB"), its counsel, to use in litigation. Compl. ¶ 64. The New Declarations Page and the Unapproved Form were attached to a lawsuit State Farm, through its counsel GWB, filed on August 16, 2021 to deny coverage for claims arising from the Accident (the "Underlying Suit"). Compl. ¶¶ 12, 77.

Plaintiffs allege State Farm falsely stated in the Underlying Suit's Complaint it had no duty to defend or indemnify Melvin O. Lamb, Jr. or Melvin O. Lamb, III based on the excluded driver endorsement. ¶¶ 75-76.  According to Plaintiffs, "State Farm wanted a determination by a court that [it] had no duty to indemnify, defend or pay for damages that occurred because of the collision… to try to make the Plaintiffs and others abandon claims made for coverage available under the actual State Farm policy, to improperly deny coverage, and to avoid paying legitimate claims." Compl. ¶¶ 63, 72; see also, Compl. ¶ 73.  In addition to filing the New Declarations Page as an attachment to its Complaint in the Underlying Suit and making false allegations in the Complaint, Plaintiffs allege Defendants "provided" the Certified Policy in the Underlying Suit's "discovery process." Compl. ¶ 13.

State Farm's Underlying Suit was filed against the Estate of James K. Workman ("Workman Estate"), Melvin O. Lamb, III, Melvin O. Lamb Jr., and others who had personal injury or property damage liability claims arising from the Accident. Compl. ¶ 74. The Individual Plaintiffs were not parties to the Underlying Suit and there are no allegations the Individual Plaintiffs had personal injury or property damage liability claims arising from the Accident *See* Compl. ¶ 74; *see also*, Complaint (Declaratory Judgment), *State Farm Mut. Auto. Ins. Co. v. Lamb*,

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

C.A. No. 2:21-cv-2623 at ECF No. 1 (Aug. 16, 2021, D.S.C.).[1]  Plaintiffs nonetheless allege they "obtained counsel to defend them" in the Underlying Suit "[a]s a result of Defendants' wrongful conduct." Compl. ¶ 101. Plaintiffs further allege they "obtained counsel to address issues, including those related to their own automobile policies," "[a]s a result of Defendants' wrongful conduct." Compl. ¶ 102.

According to Plaintiffs, they filed a motion in the Underlying Suit when they discovered the Policy documents filed with State Farm's Complaint were "fraudulent and created after the [Accident]". Compl. ¶ 103. Plaintiffs allege State Farm then immediately sought dismissal of the Underlying Suit, "[a]dmitted coverage," and "[r]emoved all limits on coverage." Compl. ¶¶ 103-104. The Underlying Suit was eventually dismissed with prejudice. Compl. ¶ 107.

Plaintiffs thereafter filed this action against State Farm and GWB. Plaintiffs allege State Farm's filing of the Underlying Suit was an abuse of process and that the New Declarations Page filed with the Underlying Suit constitutes actionable fraud. Compl. ¶¶ 110-112, 121-124.  With respect to fraud, Plaintiffs further allege State Farm had a duty to disclose to them there was a declarations page to the Policy existing at the time of the Accident which did not show that Melvin O. Lamb, III was an excluded driver and that the excluded driver endorsement it sought to enforce through the Underlying Suit was not approved by the SCDOI. Compl. ¶¶ 93, 118. Plaintiffs allege State Farm negligently misrepresented that the New Declarations Page was "real" and that the excluded driver endorsement State Farm sought to enforce through the Underlying Suit complied with South Carolina law. Compl. ¶ 133. Plaintiffs also assert a claim for civil conspiracy, alleging State Farm "acted together in combination or by agreement" with GWB, its counsel, and that State Farm and GWB "acted together and committed one or more overt acts in furtherance of that

---

[1] At the July 10, 2024 hearing on this Motion, State Farm requested the Court take judicial notice of its Complaint, the Workman Estate's Answer, and the Workman Estate's Rule 26.03 Responses filed in the Underlying Suit, Civil Action No. 2:21-cv-2623-MBS in the United States District Court for the District of South Carolina and provided the Court with file-stamped copies of the same. The court must take judicial notice "if requested by a party and supplied with the necessary information." S.C. R. Evid. 201(d).

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

agreement." Compl. ¶¶ 149, 151. Finally, the Individual Plaintiffs assert State Farm engaged in conduct actionable under SCUTPA. Compl. ¶¶ 153-161. Plaintiffs allege "Defendants' wrongful conduct" caused Plaintiffs to suffer losses, "including attorney's fees, costs, and expenses including to defend the [Underlying Suit]," and resulted in them being damaged in "various ways." Compl. ¶ 105, 108, 113, 131.

### *Standard of Law*

The Court must regard all properly pleaded factual allegations as true and admitted when reviewing a Rule 12(c) motion for judgment on the pleadings. *Falk v. Sadler*, 341 S.C. 281, 286, 533 S.E.2d 350, 353 (Ct. App. 2000). Absent particularized facts in support, conclusory allegations and bald assertions are not properly pleaded and need not be accepted as true. *Skywaves I Corp. v. Branch Banking & Tr. Co.*, 423 S.C. 432, 455, 814 S.E.2d 643, 656 n.9 (Ct. App. 2018) ("[T]he circuit court did not err in dismissing [plaintiff]'s SCUTPA claim because [plaintiff] merely stated [the defendants'] conduct satisfied the public interest requirement of SCUTPA without alleging any particularized facts.") (citing *Jones v. Gilstrap*, 288 S.C. 525, 528, 343 S.E.2d 646, 648 (Ct. App. 1986) (holding conclusory allegations are demurrable)).

While the Court may, under Rule 201,[2] take judicial notice of facts the accuracy of which are "capable of verification by reference to readily available sources of indisputable reliability," *Masters v. Rodgers Dev. Grp.*, 283 S.C. 251, 255, 321 S.E.2d 194, 196 (Ct. App. 1984), the Court may not otherwise consider matters outside the pleadings when considering judgment on the pleadings, *Falk*, 341 S.C. at 286, 533 S.E.2d at 353. *See also*, *Doe v. Bishop of Charleston*, 407 S.C. 128, 134, 754 S.E.2d 494, 497, n.2 (2014) (noting that reliance on the existence and contents of court filings does not convert a motion for judgment on the pleadings to one for summary judgment).

---

[2] "A judicially noticed fact must be one not subject to reasonable dispute in that it is … capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." S.C. R. Evid. 201(b). Judicial notice may be taken at any stage of the proceeding. S.C. R. Evid. 201 (f).

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

*Analysis and Holdings*

Considering the properly pleaded factual allegations in the Plaintiffs' Complaint—which are deemed admitted and true for purposes of ruling on the Motion—together with judicially noticeable facts, the Court grants State Farm's Motion (1) without prejudice as to Plaintiffs' claims of abuse of process, fraud, and negligent misrepresentation; (2) with prejudice as to Plaintiffs' claims of civil conspiracy and violation of the SCUPTA; and (3) as to the individual Plaintiffs for lack of standing and failure to state viable claims.

### 1. Abuse of Process

In South Carolina, there are two "essential elements of an abuse of process claim," the first being "an ulterior purpose" for the process, the second being "a willful act in the use of process not proper in the regular conduct of the proceeding." *First Union Mortg. Corp. v. Thomas*, 317 S.C. 63, 73, 451 S.E.2d 907, 914 (Ct. App. 1994). State Farm moves for judgment because there are no well pleaded factual allegations in the Complaint as to the first, ulterior purpose element. Mot. ¶ 1. State Farm also contends the Individual Plaintiffs lack standing to assert an abuse of process claim. Mot. ¶ 6. The Court agrees.

### A. No Primary, Ulterior Purpose Outside the Litigation

In terms of the "ulterior purpose" element, a claim for abuse of process lies if the suit is brought not to recover on the cause of action stated in the complaint, but to "primarily" accomplish some other purpose for which the process was not designed. *Food Lion, Inc. v. United Food & Com. Workers Int'l Union*, 351 S.C. 65, 75, 567 S.E.2d 251, 255-56 (Ct. App. 2002); *see also Pallares v. Seinar*, 407 S.C. 359, 371, 756 S.E.2d 128, 133-34 (2014). Liability for abuse of process "exists not because a party merely seeks to gain a collateral advantage by using some legal process, but because the collateral objective was its sole or paramount reason for acting." *Food Lion*, 351 S.C. at 75, 567 S.E.2d at 256. Thus, there is no abuse of process if the party has an "incidental or

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

concurrent" motive outside of the litigation or even seeks "to gain a collateral advantage" outside of the litigation. *Pallares*, 407 S.C. at 371, 756 S.E.2d at 133.

In their Complaint, Plaintiffs only allege "State Farm had an ulterior purpose in filing the lawsuit." Compl. ¶ 110. Accordingly, the "process" at issue was the filing of the Underlying Suit and, to be entitled to any relief for abuse of process, Plaintiffs "must allege facts sufficient to show" the Underlying Suit was brought **primarily** for an ulterior purpose—that is, collateral reasons. *Food Lion*, 351 S.C. at 74, 567 S.E.2d at 255. Plaintiffs have not alleged such facts. Instead, Plaintiffs allege State Farm "filed the Underlying Suit using the bogus documents seeking a Declaratory Judgment that [the Policy] did not provide coverage, including a duty to defend or indemnify Melvin O. Lamb, III or Melvin O. Lamb, Jr. for the personal injury or property damages arising from the collision." Compl. ¶ 73. The cause of action brought by State Farm in the Underlying Suit was for a declaratory judgment that there was no coverage under the Policy for the liability claims arising out of the Accident. Complaint (Declaratory Judgment), *State Farm Mut. Auto. Ins. Co. v. Lamb*, C.A. No. 2:21-cv-2623 at ECF No. 1 (Aug. 16, 2021, D.S.C.) ("State Farm seeks a declaratory judgment that it has no obligation or duty to defend or indemnify [Melvin O. Lamb, III] or [Melvin O. Lamb, Jr.] for any claims arising out of the [Accident]."). Thus, there are no allegations of a primary, ulterior purpose of the Underlying Suit. In fact, Plaintiffs' Complaint acknowledges the Underlying Suit was brought to obtain a declaration that State Farm owed no coverage, which is precisely the relief sought in the Underlying Suit.

Plaintiffs argued the Underlying Suit was also brought for the ulterior purpose of getting the Plaintiffs to use their own automobile insurance policies for coverage. There are no such allegations in the Complaint, nor have Plaintiffs alleged they had any vehicles involved in the Accident for which they could seek coverage under their own insurance policies. In any event, such allegation, if made, would not save Plaintiffs' abuse of process claim because the Underlying Suit was brought to obtain a declaratory judgment that there was no coverage—that is, it was

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

brought to recover on the cause of action stated therein. A claim for abuse of process lies if the suit is brought not to recover on the cause of action stated in the complaint, and there is no abuse of process if the party has an "incidental or concurrent" motive outside of the litigation or even seeks "to gain a collateral advantage" outside of the litigation by bringing such action. *Pallares*, 407 S.C. at 371, 756 S.E.2d at 133; *Food Lion*, 351 S.C. at 75, 567 S.E.2d at 255-56.

For the above reasons, Plaintiffs' properly pleaded allegations of fact do not sufficiently plead a cause of action for abuse of process as required by Rule 12(c). While such a claim may or may not ultimately be remedied by amending the complaint, the Court dismisses this claim without prejudice so the remaining Plaintiff will have another opportunity to plead an abuse of process cause of action.

### B.  No Standing as to Individual Plaintiffs

As to the standing of the Individual Plaintiffs, the abuse of process claim additionally fails because they were not parties to the Underlying Suit. In this regard, "[t]he tort of abuse of process is intended to compensate ***a party*** for harm resulting from ***another party's*** misuse of the legal system." *Pallares*, 407 S.C. at 370, 756 S.E.2d at 133 (emphasis added); *see also, e.g.*, *Swanson v. Bixler*, 750 F.2d 810, 814 (10th Cir. 1984) (dismissing abuse of process claims of stepson arising from conservatorship proceedings against stepfather because he had "no standing to complain about the institution of these processes"); *Gurman v. Metro Hous. & Redevelopment Auth.*, 884 F. Supp. 2d 895, 901-02 (D. Minn. 2012) (finding the position that plaintiffs could sue for abuse of process when they were not part of underlying litigation unreasonable); *Martel v. City of Newton, Kan.*, 6 F. Supp. 2d 1243, 1247 (D. Kan. 1998) ("The tort of abuse of process does not provide or implicate an indiscriminate right of third persons, indirectly affected by a prosecution, to separately advance an abuse of process claim.").

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

### 2. Fraud and Negligent Misrepresentation

As to Plaintiffs' fraud and negligent misrepresentation claims, State Farm argues it is entitled to judgment because there are no well-pleaded factual allegations regarding reliance on the truth of the alleged fraudulent and negligent misrepresentations and injury caused by such reliance and, as a judicially noticeable fact, the Workman Estate, which was a party to the Underlying Suit, did not rely on the alleged misrepresentations. Mot. ¶ 2. State Farm also argues the Individual Plaintiffs, to whom the alleged misrepresentations were not made, lack standing. Mot. ¶ 6. The Court agrees.

### A. No Detrimental Reliance

Reliance on the truth of a false representation and pecuniary loss proximately caused by such reliance are two essential elements of Plaintiffs' fraud and negligent misrepresentation causes of action. *Carter v. Boyd Const. Co.*, 255 S.C. 274, 280–81, 178 S.E.2d 536, 539 (1971) (holding reliance on the truth of the false representation and consequent and proximate injury are essential elements to fraud); *AMA Mgmt. Corp. v. Strasburger*, 309 S.C. 213, 222, 420 S.E.2d 868, 874 (Ct. App. 1992) (holding plaintiff must allege justifiable reliance on the alleged negligent misrepresentation as well as pecuniary loss he suffered as a proximate result of his reliance). With respect to their fraud cause of action, pursuant to Rule 9, Plaintiffs must allege with specificity their detrimental reliance on false representations.

Plaintiffs cite the following paragraphs of their Complaint as sufficiently alleging reliance:

- ¶ 15 – "After Plaintiffs expended effort, time and expense in defending the lawsuit, including taking the deposition of a State Farm corporate representative, Defendants' scheme was exposed."

- ¶ 44 – "State Farm created that declarations page because it wanted Plaintiffs, the Court, and others to rely upon it as being true when it was not."

- ¶ 46 – "State Farm knew or should have known that Plaintiffs, others harmed by the collision and their automobile insurance carriers would use the false documents to make decisions about available automobile coverage."

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

- ¶ 47 – "State Farm knew or should have known Plaintiffs and others involved in the June 12, 2021 collision, including their automobile insurance carriers, would rely on State Farm's false declarations page in making decisions and determinations about what coverage may be available via their own automobile insurance policies."

- ¶ 48 – "State Farm knew or should have known that Plaintiffs and others involved in the June 12, 2021 collision, including their automobile insurance carriers, would rely on the State Farm's false declarations page in making decisions and determinations about litigation."

- ¶ 101 – "As a result of Defendants' wrongful conduct, Plaintiffs and others obtained counsel to defend them in the lawsuit brought by Defendants."

- ¶ 102 – "As a result of Defendants' wrongful conduct, Plaintiffs and others obtained counsel to address issues, including those related to their own automobile policies."

- ¶ 105 – "As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered losses, including attorney's fees, costs, and expenses including to defend the lawsuit brought by Defendants…"

- ¶ 130 – "Plaintiffs and others had a right to rely on documents State Farm represented as being true."

Neither the above nor any other allegations in Plaintiffs' Complaint allege with specificity that Plaintiffs in fact relied on any false representation made to them by State Farm as being true, or that they suffered pecuniary loss as a result of such reliance. The absence of these allegations is fatal to Plaintiffs' fraud and negligent misrepresentation claims.

In addition, the Court can take judicial notice of the Workman Estate's Answer to State Farm's Complaint for Declaratory Judgment Action (the "Answer") as well as its Local Rule 26.03 Responses, both publicly filed court documents in the Underlying Suit. *See Sun v. Matyushevsky,* No. 2015–UP–146, 2015 WL 1249074, at *1 (S.C. Court App. March 18, 2015); *see also Doe v. Bishop of Charleston,* 407 S.C. 128, 134 n. 2, 754 S.E.2d 494, 497 n. 2 (2014) (recognizing a circuit court may take judicial notice of previously entered, related court orders and consider them when ruling on a Rule 12(b)(6), SCRCP, motion to dismiss); Rule 201(f), SCRE ("Judicial notice may be taken at any stage of the proceeding.").

10

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

In its Answer, the Workman Estate **<u>denied</u>** State Farm's coverage position it now claims was fraudulent, and, in fact, affirmatively averred both that State Farm had previously represented there was coverage, and that the Unapproved Form was inapplicable, ineffective, and invalid. *See* Answer ¶¶ 9, 16, 17, *State Farm Mut. Auto. Ins. Co. v. Workman*, C.A. No. 2:21-cv-02623-MBS, ECF No. 35 (D.S.C., Oct. 26, 2021). Likewise, the Workman Estate's Local Rule 26.03 Responses stated a State Farm representative would "testify that <u>coverage applies</u> or at least that State Farm <u>cannot show</u> the exclusion applies based on the allegations of the Complaint and documents it has produced." *See* Rule 26.01 Responses ¶ 2, *State Farm Mut. Auto. Ins. Co. v. Workman*, C.A. No. 2:21-cv-02623-MBS, ECF No. 39 (D.S.C., Oct. 26, 2021) (emphasis added). If the alleged misrepresentations were relied upon as true, the Workman Estate would have admitted instead of denied State Farm's coverage position, and it would not have challenged the position through its averments. Consequently, Plaintiffs cannot establish the necessary allegations to support their fraud and negligent misrepresentation claims, and State Farm's Motion must be granted. *See Ivy v. Travelers Ins. Co.,* No. 1:22-cv-01228-TWP-MG, 2023 WL 3225690, at *1 (S.D. Ind. 2023) (granting motion for judgment on the pleadings where lawsuit alleged abuse of process and fraud based on the defendant's filing, in another lawsuit, false affidavits with a response in opposition to a motion for summary judgment based on lack of reliance because the plaintiff opposed the affidavits and raised their falsity to the court in the underlying action); *Alvarado v. Rainbow Inn, Inc.*, 312 F.R.D. 23, 31 (D.D.C. 2015) (noting a party asserting fraud must allege reliance and finding defendant's counterclaim, which asserted plaintiff's complaint constituted actionable fraud, failed because defendant did not allege reliance and its answer "reveal[ed] … it at no time believed the representations plaintiff made").

The Court has also considered Plaintiffs' arguments made under Rule 9(b), S.C. R. Civ. P., *Bailey v. Glover*, 88 U.S. 342, 349 (1874), *Slack v. James*, 364 S.C. 609, 614 S.E.2d 636, 641 (2005), and the Omnibus Insurance Fraud and Reporting Immunity Act and finds them

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

unpersuasive. First, Plaintiffs argue reliance is a condition of mind that need not be stated with particularity under Rule 9(b). This position is without legal support. *Cf. Truauto MC, LLC v. Textron Specialized Vehicles, Inc.*, No. 2:19-CV-1381-RMG, 2020 WL 438310, at *4 (D.S.C. Jan. 28, 2020) (applying South Carolina law and stating, under analogous Rule 9, FRCP, reliance must be pleaded with particularity and finding plaintiffs' fraud-based claims subject to dismissal because they did not allege reliance with particularity), *appeal dismissed and remanded*, No. 20-1341, 2020 WL 5642025 (4th Cir. Sept. 18, 2020).

Second, Plaintiffs argue, under *Bailey*, State Farm may not claim lack of reliance as a bar to their claims. *Bailey* concerned the two-year statute of limitations in the Bankruptcy Act of 1867 and whether it could protect "persons fraudulently obtaining property from the bankrupt party, in the enjoyment of the fruits of their fraud, if they are able to conceal from the assignee the knowledge of their fraud for two years." 88 U.S. at 345. The Supreme Court answered that question in the negative, noting the statute of limitations should not begin to accrue on a fraud claim until the fraud is or should have been discovered, and "[t]o hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure." 88 U.S. at 349. *Bailey* has no application to the Court's ruling as no statute of limitations defense has been asserted by State Farm, and *Bailey* in no way dispenses of the requirement of detrimental reliance in claims of fraud and negligent misrepresentation.

Third, Plaintiffs argue, under *Slack*, their claims cannot be dismissed for lack of reliance. Reliance, however, is an essential element of every negligent misrepresentation and fraud cause of action which must be sufficiently alleged in the plaintiff's pleading, and *Slack* states nothing to the contrary. *Slack* held that general non-reliance clause in a contract did not prevent parties to the contract from suing for pre-contract negligent misrepresentation and fraud. 364 S.C. at 618, 614

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

S.E.2d at 641. There are no allegations of a contract between State Farm and any of the Plaintiffs and there is no non-reliance clause at issue in the allegations or the affirmative defenses. In short, *Slack* has no bearing on whether Plaintiffs have stated an actionable claim for fraud or negligent misrepresentation.

Fourth, based on the definition of "false statement or misrepresentation" in the Omnibus Insurance Fraud and Reporting Immunity Act,[3] S.C. Code § 38-55-530(D), Plaintiffs argue there is no need to plead or show reliance because it is "fraud per se." Plaintiffs cite no case law recognizing a "fraud per se" cause of action and no case law citing the Act as eliminating reliance as an element to common law fraud or negligent misrepresentation claims. Plaintiffs are not the first to assert fraud and negligent misrepresentation against an insurer in South Carolina, and there appears to be no Supreme Court, Court of Appeals, and/or District Court cases of South Carolina modifying or reducing the necessary elements of these causes of action in such suits based on the Omnibus Insurance Fraud and Reporting Immunity Act's definition of "false statement or misrepresentation." The Court rejects Plaintiffs' attempt to circumvent the requirement they sufficiently allege detrimental reliance for both their fraud and negligent misrepresentation claims and finds the Act has no application to Plaintiffs' common law claims.

For the above reasons, the Court grants State Farm's Motion as to the fraud and negligent misrepresentation claims. While such claims may or may not ultimately be remedied by amending

---

[3] There is no private right of action under the Act. "The purpose of [the Act] is to confront aggressively the problem of insurance fraud in South Carolina by facilitating the detection of insurance fraud; to allow reporting of suspected insurance fraud; to grant immunity for reporting suspected insurance fraud; to prescribe penalties for insurance fraud; to require restitution for victims of insurance fraud; to establish a division within the Office of the Attorney General to prosecute insurance fraud; and to require the investigation of alleged insurance fraud by State Law Enforcement Division." S.C. Code Ann. § 38-55-520. In addition to criminal liability, the Act provides a civil penalty that must be paid <u>to the director of the Insurance Fraud Division</u>, who may also be awarded attorneys' fees and costs.

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

the Complaint, the Court dismisses these claims without prejudice so the remaining Plaintiff will have another opportunity to plead fraud and negligent misrepresentation causes of action.

### A.  No Standing as to Individual Plaintiffs

The fraud and negligent misrepresentation claims, as brought by the Individual Plaintiffs additionally and separately require dismissal based on lack of standing because the alleged fraudulent and negligent misrepresentations were made in the Underlying Suit, to which the Individual Plaintiffs were not parties. Both fraud and negligent misrepresentation require that false representation of fact be made by the defendant to the plaintiff. In the Complaint, Plaintiffs allege the false representations were contained in the New Declarations Page, which was filed as an attachment to State Farm's Complaint in the Underlying Suit. Compl. ¶¶ 12, 121, 122. The Individual Plaintiffs were not parties to the Underlying Suit and there are no allegations that New Declarations Page was given to them directly or published in any other setting. *See gen*. Compl.

### 3.  Fraudulent Nondisclosure

In addition to fraudulent misrepresentations, Plaintiffs, under their fraud cause of action, allege State Farm had a duty but failed to disclose certain facts and information to them. Compl. ¶¶ 118-119. Nondisclosure becomes fraudulent only when a party having knowledge of the facts has a duty to disclose them to the other party, which occurs in three instances: (1) where it arises from a pre-existing definite fiduciary relation between the parties; (2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in which the nondisclosure occurred; and (3) where the parties are involved in a contract or transaction that is itself intrinsically fiduciary in nature and necessarily calls for perfect good faith and full disclosure. *See, e.g.*, *Jacobson v. Yaschik*, 155 S.E.2d 601, 605 (S.C. 1967). State Farm argues none of these instances is alleged in Plaintiffs' Complaint, nor are they implicated by the nature of the claims. Mot. ¶ 3.

The filing of a declaratory judgment action on coverage, an inherently adversarial litigation proceeding, is not an undertaking to speak on the issue of coverage and it does not create on the part of the insurer a duty of full disclosure owed to non-insured claimants named in and served with the action nor any other person who might come across the action. Even if the filing of a declaratory judgment action did give rise to a duty of disclosure, State Farm's filing of the Underlying Suit would not give rise to a duty of disclosure owed to the Individual Plaintiffs because they were not parties to the Underlying Suit. In sum, because there are three distinct instances where a party having knowledge of a fact may commit actionable fraud by failing to disclose that fact to another, none of those instances are alleged in or implicated by the Complaint, and separately because the Individual Plaintiffs were not parties to the Underlying Suit, the Court grants State Farm's Motion as to these Plaintiffs. While such a claim may or may not ultimately be remedied by amending the Complaint, the Court dismisses this claim without prejudice so the remaining Plaintiff will have another opportunity to plead a fraudulent nondisclosure cause of action.

### 4. Civil Conspiracy

Plaintiffs assert a civil conspiracy existed between State Farm and GWB. To assert an actionable claim for civil conspiracy, Plaintiffs must allege "(1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to [them]." *Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 574, 861 S.E.2d 774, 780 (2021).

State Farm argues it is entitled to judgment because civil conspiracy between State Farm and GWB is impossible based on the allegations in Plaintiffs' Complaint and, in any event, Plaintiffs have failed to plead additional facts in furtherance of the conspiracy separate and independent from the other wrongful acts alleged in the Complaint. Mot. ¶ 4. State Farm also

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

argues the civil conspiracy claim must be dismissed as to the Individual Plaintiffs for lack of standing. Mot. ¶ 6. The Court agrees.

### A. State Farm and GWB Acted Together in an Attorney-Client, Principal-Agent Relationship

With respect to the first element of Plaintiffs' claim, "a civil conspiracy cannot exist when the alleged acts arise in the context of a principal-agent relationship because by virtue of the relationship such acts do not involve separate entities." *McMillan v. Oconee Mem'l Hosp., Inc.*, 367 S.C. 559, 564, 626 S.E.2d 884, 886–87 (2006), *overruled on other grounds by Paradis*, 433 S.C. at 574, 861 S.E.2d at 780 (overruling prior precedent, like *McMillan*, "to the extent they impose or appear to impose a requirement of pleading (and proving) special damages" in a civil conspiracy claim); *see also*, 15A C.J.S. Conspiracy § 10 ("Because acts of agent are considered in law to be acts of principal, a conspiracy cannot exist between a principal and an agent. In other words, the identity between an agent and principal leads to a legal impossibility in the context of conspiracy."). Significant to this case, the attorney-client relationship is a principal-agent relationship. *State v. Goettie*, 41 S.C.L. 126, 128 (S.C. App. L. 1854) ("That the relations of attorney and client, and principal and agent, are identical…are propositions that will scarcely be questioned.").

As alleged by Plaintiffs in their Complaint, the Defendants were acting together in an attorney-client relationship. Compl. ¶¶ 8, 10, 12, 13. Citing Paragraphs 68 through 73 of their Complaint, Plaintiffs argue the Complaint alleges GWB acted in its own interests and owed separate duties and, therefore, GWB and State Farm could conspire together. Paragraphs 68 through 73 of the Complaint do not allege GWB was acting as anything other than State Farm's counsel. To the contrary, those allegations are premised on GWB acting as State Farm's counsel, as was the Plaintiff's motion for sanctions that was heard and denied in the earlier federal court action. Because a civil conspiracy cannot exist when the alleged act arises in an agent-principal relationship, a civil conspiracy between Defendants, as alleged in Plaintiffs' Complaint, cannot

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

exist. *See Myrtle Beach Lumber Co. v. Globe Int'l Corp.*, 315 S.E.2d 142, 143 (S.C. Ct. App. 1984) ("One of the significant features of our whole judicial system is that parties … may be, and usually are, represented by attorneys learned in the law, and these attorneys by virtue of the very name of their office stand for and in place of their clients. An attorney is the alter ego of his client."). For this reason, the Court grants State Farm's Motion with respect to the civil conspiracy claim. While such a claim may or may not ultimately be remedied by amending the complaint, the Court dismisses this claim without prejudice so the remaining Plaintiff will have another opportunity to plead a civil conspiracy cause of action.

### B.  No Separate, Overt Acts

Plaintiffs' failure to plead separate, additional acts in furtherance of the alleged conspiracy is another basis for dismissal. With respect to the third, "overt act" element of civil conspiracy, the Supreme Court of South Carolina has recently affirmed a plaintiff's repetition of the same acts that serve as the basis for other claims is insufficient. *See Paradis*, 433 S.C. at 573, 861 S.E.2d at 779–80 (noting prior precedent, other grounds of which were overruled by the Court, "correctly concluded the civil conspiracy claim failed as a matter of law" because "the only wrongful acts alleged were those for which damages had already been sought" and "the plaintiff's repetition of the same acts as the prior claims was insufficient to salvage the claim"). Instead, "[i]n a civil conspiracy claim, one must plead additional acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." *Hackworth v. Greywood at Hammett, LLC*, 385 S.C. 110, 115–16, 682 S.E.2d 871, 875 (Ct. App. 2009), *overruled on other grounds by Paradis*, 433 S.C. at 574, 861 S.E.2d at 780 (overruling prior precedent, like *Hackworth*, "to the extent they impose or appear to impose a requirement of pleading (and proving) special damages" in a civil conspiracy claim, while affirming pleading requirement for separate overt act in furtherance of conspiracy). Plaintiffs' Complaint alleges no "additional acts" "separate and independent from

other wrongful acts alleged in the Complaint" and under *Hackworth* and *Paradis*, the civil conspiracy claim fails as a matter of law.

### A.  No Standing as to Individual Plaintiffs

Given the civil conspiracy claim merely incorporates by reference the alleged wrongful acts that serve as the bases for the other claims, the Individual Plaintiffs, through the civil conspiracy claim, seek to recover for the same acts that serve as the basis for their other claims. They face the same obstacle to standing as they do with the other claims discussed herein, and the Individual Plaintiffs' lack of standing serves as an additional basis for dismissal of the civil conspiracy claim.

### 5. SCUTPA

Finally, construing the Complaint liberally, the Individual Plaintiffs' claim under SCUTPA must be dismissed. Under SCUTPA, "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by Section 39-5-20 [of SCUTPA] may bring an action individually, but not in a representative capacity, to recover actual damages." S.C. Code Ann. § 39-5-140. However, "[n]othing in [SCUTPA] shall apply to … unfair trade practices covered and regulated under Title 38, Chapter 57, Sections 38-57-10 through 38-5[7]-320," South Carolina's Insurance Trade Practices Act. S.C. Code Ann. § 39-5-40(c). Thus, courts interpreting South Carolina law have consistently held "all unfair trade practices regarding the insurance business…are exempt from the coverage of SCUTPA." *Trustees of Grace Reformed Episcopal Church v. Charleston Ins. Co*., 868 F. Supp. 128, 130–31 (D.S.C. 1994); *see also, Cleveland Ridge Homeowner's Ass'n, Inc. v. State Farm Fire & Cas. Co.,* No. 2006-UP-295, 2006 WL 7286092, at *3 (S.C. Ct. App. June 26, 2006) ("Clearly, the legislature intended SCUTPA to exempt cases of unfair trade practices regarding the insurance business . . ."). Indeed, "by precluding unfair trade practices covered and regulated under Chapter 57," the Insurance Trade Practices Act, Section 39-

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

5-40(c) "exempts from the coverage of SCUTPA *all unfair trade practices in the business of insurance*." *Id*. This is because the Insurance Trade Practices Act governs any "unfair or deceptive act or practice in the business of insurance." *Id.; see also e.g., Lewis v. Omni Indem. Co*., 970 F. Supp. 2d 437, 451 (D.S.C. 2013).

The Individual Plaintiffs allege State Farm engaged in improper claim practices under Sections 38-59-20 and 38-77-341 of the South Carolina Code, and that such conduct is declared unlawful and recoverable under SCUTPA. Compl. ¶¶ 154-158. The Court finds no support in the law for the Individual Plaintiffs' arguments.

Section 38-59-20 is part of the Insurance Claims Practices Act, S.C. Code Ann. §§ 38-59-10, *et seq*., which "provides relief for a third-party victim of an improper claims practice" in the form of administrative review before the Chief Insurance Commissioner. *Masterclean, Inc. v. Star Ins. Co.*, 347 S.C. 405, 415, 556 S.E.2d 371, 377 (2001); *see also*, *Gaskins v. S. Farm Bureau Cas. Ins. Co.*, 343 S.C. 666, 673, 541 S.E.2d 269, 272 (Ct. App. 2000) ("Section 38–59–20 declares that a third party may pursue *administrative action* before the Chief Insurance Commissioner if an insurer *inter alia* '[k]nowingly misrepresent[s] to insureds or third-party claimants pertinent facts or policy provisions relating to coverages at issue or providing deceptive or misleading information with respect to coverages.'"), *aff'd as modified,* 354 S.C. 416, 581 S.E.2d 169 (2003). "This relief is important because South Carolina does not recognize a third party action for bad faith refusal to pay insurance benefits" and "[t]hird parties do not have a private right of action under S.C. Code Ann. § 38–59–20." *Id*.

Based on the allegations of their Complaint, it is well settled under the law that Individual Plaintiffs are third parties with no standing to sue State Farm for bad faith and no private right of action for State Farm's alleged violation of the Insurance Claims Practices Act. It also cannot be disputed the Individual Plaintiffs' SCUTPA claim alleges State Farm engaged in unfair trade practices in the business of insurance, and all unfair trade practices in the business of insurance

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

are exempt from SCUTPA's reach. Accordingly, the Court finds no legal support for the Individual Plaintiffs' attempt to use SCUTPA as a means of pursuing these otherwise unavailable claims.

Section 38-77-341, the other statute the Individual Plaintiffs assert State Farm violated, prohibits insureds and third-parties from submitting inflated insurance claims to insurance companies and provides such conduct is unlawful under SCUTPA. *See* S.C. Code § 38-77-341(1). State Farm argues the plain language, subject matter, and preamble of Section 38-77-341 reveals the legislature did not intend to subject automobile insurers to SCUTPA, and the Court agrees.

A cardinal rule of statutory construction is that a court must ascertain and effectuate the actual intent of the legislature. *Burns v. State Farm Mut. Auto Ins. Co*., 377 S.E. 2d 569 (S.C. 1989). The legislative intent undergirding Section 38-77-341 is demonstrated by the statute's plain language—it applies to persons *seeking* payment from insurance companies. Notably, subsection 1, upon which Plaintiffs rely, concerns "a false statement or representation of a material fact for use in an application **for payment** or for use in determining the right **to payment** under this chapter." (emphasis added). Thus, its plain language was meant to apply to claimants seeking to be paid, not insurance companies. This is further demonstrated by the totality of the statute which is concerned entirely with reducing fraudulent or inflated claims: through submitting bills in excess of customary charges (subsection 2); through charging more for work covered by insurance (subsection 3); through bill inflation to cover deductibles (subsection 4); through excessive healthcare provider billing (subsection 5); or through exaggeration or false statements when seeking payment (subsection 1). Plaintiffs' interpretation—in which Section 38-77-341 would allow insurance companies subject to SCUTPA—is at odds with the plain language and subject matter of the statute. *See Mun. Ass'n of S.C. v. AT&T Comm. of S. States, Inc*., 606 S.E.2d 468, 471 (S.C. 2004) (noting a court should affect legislative intent through "giving the words [of the statute] their ordinary meaning and harmonizing the language with [the statute's] subject matter").

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Any doubt concerning the legislature's intent is resolved through the statute's preamble, which underscores the statute's purpose was to reduce fraudulent or exaggerated claims. Courts often look to the preamble as an indicator of legislative intent. *S.C. Pipeline Corp. v. Lone Star Steel Co.*, 546 S.E.2d 654, 656 (S.C. 2001). The entirety of the preamble enacting Section 38-77-341 states: "Whereas, it is the purpose and intent of the General Assembly in enacting this legislation to reduce insurance losses, including those of the Reinsurance Facility, and, consequently, the cost of mandatory automobile insurance." 1989 S.C. Acts 148, Page 440. This "purpose and intent" would be advanced by reducing inflated claims, but would not be advanced by removing the insurance industry's exemption from SCUTPA.

Further evidencing Section 38-77-341(1) is inapplicable to insurers, Chapter 57 and Chapter 59 of the insurance code governs precisely that conduct and charges the Insurance Commissioner with regulating it. *See, e.g.*, S.C. Code § 38-57-40 ("No person may make ... [a] statement misrepresenting the terms of a policy issued…."); S.C. Code § 38-59-40 (prohibiting insurers from "Knowingly misrepresenting to insureds or third-party claimants' pertinent facts or policy provisions relating to coverages at issue"); *see also*, *Masterclean, Inc.*, 556 S.E.2d at 377 ("The Insurance Trade Practices Act prohibits insurers from misrepresenting an insurance policy with the intent to settle the claim 'on less favorable terms than those provided in and contemplated by the contract or policy.'") (quoting S.C. Code § 38–57–70 (1989)).

In short, Section 38-77-341(1) does not govern policy representations made by insurance companies, and the portions of the insurance code that do speak to such policy representations charge the insurance commissioner with addressing that conduct and do not serve as the grounds for private rights of action. As *Masterclean Inc.*, *Trustees of Grace,* and their progeny confirm, this regulated conduct—indeed the entire "insurance business"—is not subject to SCUTPA. Based on Plaintiffs' allegations and the law of South Carolina, Plaintiffs have not and cannot state a claim against State Farm under SCUTPA. State Farm's Motion is granted, and the SCUTPA claim is

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

dismissed with prejudice because any amendment of the Complaint would not change the well-settled law regarding the inapplicability of the SCUTPA to "the insurance business."

### *Conclusion*

In sum, the Court grants State Farm's Rule 12(c) Motion for Judgment on the Pleadings: (1) without prejudice as to Plaintiffs' claims of abuse of process, fraud, negligent misrepresentation, and civil conspiracy such that the remaining Plaintiff may file an amended pleading to address the issues discussed herein within 30 days; (2) with prejudice as to Plaintiffs' claim of violation of the SCUTPA; and (3) as to the Individual Plaintiffs because they lack standing and have failed to assert any claims sufficient to withstand the Motion. Accordingly, the sole remaining Plaintiff in this matter is Robert C. Workman as Personal Representative of the Estate of James K. Workman.

AND IT IS SO ORDERED.



Charleston Common Pleas

**Case Caption:**     Robert C Workman , plaintiff, et al VS   State Farm Mutual
Automobile Insurance Company , defendant, et al

**Case Number:**     2023CP1001832

**Type:**     Order/Amend


So Ordered

s/ Thomas W. McGee III, Judge Code 2786

Electronically signed on 2024-11-06 10:55:47     page 23 of 23

ELECTRONICALLY FILED - 2024 Nov 06 1:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

| | |
|---|---|
| STATE OF SOUTH CAROLINA | COURT OF COMMON PLEAS |
| | NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | CASE NO. 23-CP-10-01832 |

| | |
|---|---|
| ESTATE OF JAMES K. WORKMAN BY AND THROUGH ROBERT C. WORKMAN AS PERSONAL REPRESENTATIVE, | AMENDED COMPLAINT |
| PLAINTIFF, | Jury Trial Requested |
| V. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, ET AL. | |
| DEFENDANT. | |

## TABLE OF CONTENTS

I.    Introduction ............................................................................... 2

II.   Parties............................................................................................ 4

III.  Jurisdiction - Subject Matter and Personal ............................. 5

IV.  Venue ............................................................................................ 5

V.   Factual Allegations ..................................................................... 5
    A.   The Collision and Initial Representations........................... 5
    B.   Fabrication and Use of False Documents ............................ 6
    C.   Systemic Misconduct and Intent ......................................... 9
    D.   State Farm Violated its Code of Conduct .......................... 11

VI.  Causes of Action ...................................................................... 14
    Count I: Abuse of Process......................................................... 14
    Count II: Fraud ........................................................................... 20
    Count III: Negligent Misrepresentation................................... 25

VII. Relief .......................................................................................... 27

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Plaintiff, complaining of Defendant, alleges:

## I.     INTRODUCTION

1)     The Estate of James K. Workman brings this lawsuit via the personal representative, Robert C. Workman, alleging State Farm Mutual Automobile Insurance Company ("**STATE FARM**") engaged in a scheme to create, file, and use false and unapproved documents for improper purposes, including to intimidate, coerce, and harm Plaintiff and others involved in a fatal collision, as set forth herein.

2)     At all relevant times, **STATE FARM** conducted insurance business in South Carolina, including providing automobile liability insurance to South Carolina residents.

3)     On June 12, 2021, James K. Workman was fatally injured in a multi-car collision caused by Melvin O. Lamb, III ("Lamb") who was driving a 2004 Chevrolet Tahoe.

4)     The Tahoe was owned by Lamb's father Melvin O. Lamb, Sr. and insured by **STATE FARM** Policy Number 632 3189-B07-40A.

5)     After the collision, **STATE FARM** represented to Plaintiff and others, including those involved in the collision, that liability coverage pursuant to Policy Number 632 3189-B07-40A applied to damages caused by Lamb.

6)   That representation, in part shown below, stated: "This certifies that policy

number 632318940A, covering a(n) 2004 Chevrolet TAHOE,

1GNEK13Z54R235227, was issued to Melvin O Lamb Jr and was in effect on the

accident date of June 12, 2021. The coverages and limits of liability for this policy

on that date were: A 25/50/25, U 25/50/25"



7)   **STATE FARM** represented that there was a $25,000/$50,000 minimum

limits liability policy in place for Lamb.

8)   Relying on **STATE FARM**'s representations about the existence of liability

coverage, Plaintiff negotiated with its underinsured motorist carrier which

agreed to pay the full $200,000 in underinsured ("UIM") benefits.

9)   After representing to Plaintiff and others that there was liability coverage,

**STATE FARM** created a bogus declarations page and used an unapproved

exclusion form to improperly exclude Lamb and others from coverage or the

benefits of the coverage.

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

10) After expending time, effort and expense, Plaintiff exposed **STATE FARM**'s fraudulent scheme.

11) It was only then that **STATE FARM** sought to dismiss its own lawsuit, resulting in Plaintiff prevailing as the relief sought by **STATE FARM** was not granted.

12) A purpose of this lawsuit is to hold **STATE FARM** responsible for its improper actions and conduct in the creation and use of false documents as part of a scheme to intentionally harm Plaintiff and others, including those involved in the collision.

13) **STATE FARM**'s misconduct violated the law, its legal obligations, its duties to Plaintiff, and caused harm to Plaintiff and others involved in the collision.

## II.     PARTIES

14) Plaintiff Estate of James K. Workman (the "Estate") was created following the death of James K. Workman in Charleston County, South Carolina on June 12, 2021. At all relevant times, Robert C. Workman was and is the Personal Representative of the Estate and a legal heir of James K. Workman.

15) Defendant **STATE FARM** is authorized to conduct insurance business in South Carolina and is one of the largest automobile insurers in the country.

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

16) On information and belief, the net worth of **STATE FARM** ended the year 2023 at $134.8 billion.[1]

### III.     JURISDICTION - SUBJECT MATTER AND PERSONAL

17) This Court has subject matter jurisdiction of this action.

18) This Court has personal jurisdiction over **STATE FARM** because it does business in South Carolina and the wrongful actions and conduct alleged occurred or had effects in Charleston County.

### IV.     VENUE

19) Venue is proper in this Court as the wrongful conduct alleged herein occurred and had material effects in Charleston County, South Carolina.

### V.     FACTUAL ALLEGATIONS

### A.     THE COLLISION AND INITIAL REPRESENTATIONS

20) On June 12, 2021, Lamb caused a multi-car collision while driving a 2004 Chevrolet Tahoe, resulting in fatal injuries to James K. Workman.

21) At the time of the collision, the Tahoe was insured by **STATE FARM** under State Farm Policy Number 632 3189-B07-40A effective Feb. 07, 2021 – Aug. 07, 2021.

---

[1] *See* **STATE FARM** announces 2023 financial results. https://newsroom.statefarm.com/2023-financial-results/ and https://content.presspage.com/uploads/1441/b027fa8b-0bb3-423f-b1bb-7f48739c6015/2023yearendresults-final-.pdf?10000 last visited Dec. 1, 2024.

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

22)   Before the collision and claims made, Lamb was never excluded by **STATE FARM** as a driver of the Tahoe.[2]

23)   At the time of the collision, as to the Tahoe, no **STATE FARM** policy referred to a Driver Exclusion Form 6023DC.

24)   **STATE FARM** confirmed in writing that liability coverage under the policy was in effect on the date of the collision.

25)   On information and belief, the **STATE FARM** insurance policy related to the Tahoe was cancelled effective June 13, 2021, one day after the crash.

26)   Plaintiff, relying on this representation, settled with its underinsured (UIM) carrier based on the belief that liability coverage existed as discussed herein.

**B.    FABRICATION AND USE OF FALSE DOCUMENTS**

27)   After affirmatively representing to Plaintiff and others that there was coverage, **STATE FARM** fabricated a declarations page by:

i)   Creating policy number 632 3189-B07-40B, when that policy number did not exist at the time of the collision;

POLICY NUMBER    632 3189-B07-40B

---

[2]*See e.g.* Deposition of State Farm 30(b)(6) Representative Shay Anderson, p. 95. Q. … At no time from the inception of the State Farm insurance policy concerning the Tahoe, through June 30th, 2021, was there ever a Declarations Page that showed Melvin O Lamb, III was an excluded driver? **A. Correct.**

ii)  Changing the policy period to two days before the collision beginning June 10, 2021 to February 7, 2022 when no such policy period existed at the time of the collision;

POLICY PERIOD JUN 10 2021 to FEB 07 2022
12:01 A.M. Standard Time

iii) Under **IMPORTANT MESSAGES**, State Farm stated "Replaced policy number 6323189-40A" when that was false because the policy was cancelled June 13, 2021;

Replaced policy number 6323189-40A.

iv) Listed a driver exclusion for Melvin O. Lamb, III when there was never any such exclusion on the declarations page that applied to the collision;

6023DC DRIVER EXCLUSION-MELVIN O LAMB III.

28)  When **STATE FARM** created and used these documents, it committed the crime of forgery because **STATE FARM** represented that the false policy was the real policy. S.C. Code Ann. § 16-13-10.

29)  Using these documents to further its criminal and improper conduct, **STATE FARM** falsely stated as fact that "[a]t the time of the subject accident, Son

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

[Lamb] had been an excluded driver from the Policy for over a year."

Complaint ¶ 31.[3]

30) **STATE FARM** also falsely stated as fact that an exclusion form (6023DC) complied with S.C. Code Ann. § 38-77-340 and was valid, when it had never been submitted to or approved as required by the law it cited, and State Farm knew that as fact. *See e.g.* Complaint ¶19 "Pursuant to S.C. Code Ann. § 38-77-340, the exclusion was signed…" and State Farm designee testimony.[4]

31) At all times relevant, **STATE FARM** knew it was unlawful for an insurer doing business in South Carolina to issue or sell a policy, contract, or certificate of insurance until the Driver Exclusion form had been filed with and approved by the Director of the Department of Insurance (SCDOI). S.C. Code Ann. §38-61-20.

---

[3] *See e.g.* Deposition of State Farm 30(b)(6) Representative Shay Anderson, pp. 92-93. Q. And the policy up through June 12th, 2021, which would include the Declarations Pages in existence concerning the Tahoe, never showed Melvin O Lamb, III as an excluded driver, correct? … A. Correct.

[4] *See e.g.* Deposition of State Farm 30(b)(6) Representative Shay Anderson, p. 182. Q. And sitting here today, State Farm has evidence that Defense Exhibit 3 [Exclusion Form 6023DC] was ever submitted to the South Carolina Department of Insurance for approval, right? **A. As that appears there, yes.** Q. And State Farm has zero evidence that Defense Exhibit number 3 [Exclusion Form 6023DC] was ever approved by the South Carolina Department of Insurance as required by 38- 77-340, right? **A. Speaking of Exhibit 3, yes.**

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

32) **STATE FARM** knew a form not approved by the SCDOI should not be used with its insureds.[5]

33) **STATE FARM** falsely stated that the documents attached to the Complaint represented the terms of the policy at the time of the collision.

34) **STATE FARM** presented these false documents to the court, to Plaintiff and others knowing they would be relied upon.

## C.    SYSTEMIC MISCONDUCT AND INTENT

35) In this case, to improperly avoid paying liability coverage and justify its creation of forged and false documents, **STATE FARM** claims there was a processing error resulting in the failure to list Lamb as an excluded driver.

36) **STATE FARM** has been repeatedly found to engage in practices designed to delay, deny, or underpay claims, including using unapproved forms.

37) Department of Insurance Market Conduct Reports from various states show **STATE FARM** has a pattern of delaying, denying, or underpaying claims through improper practices, including using unapproved forms in violation of the law. *See e.g.* Report on Market Conduct Examination of the State Farm Mutual Automobile Insurance Company by Representatives of the North

---

[5] *See e.g.* Deposition of State Farm 30(b)(6) Representative Shay Anderson, p. 56. Q. … *If State Farm did not get the approval from the South Carolina Department of Insurance director or his designee, then State Farm should not be using that form with its insureds.* **A. Correct**.

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

Carolina Department of Insurance May 2, 2014, listing multiple violations for failing to file and obtain the approval of the Department of Insurance.

38) In New Mexico, STATE FARM engaged in similar misconduct to deny coverage, when after its insured purchased a $1,000,000 policy, following a collision it misrepresented the policy limits were $25,000.

39) As part of its pattern to avoid paying money in the New Mexico case, STATE FARM claimed the increased liability limits stated on the declarations page was "in error" and the policy "was issued by mistake." *See Lopez v. Estate of Andrea Lovato and State Farm Mutual Automobile Insurance Company* D-101-CV-2020-01092 State Farm's Opposition to Plaintiffs' Motion for Summary Judgment, dated Sept. 26, 2022 pp. 5-6.

40) In Montana in 2024, STATE FARM was investigated by the Montana Commissioner of Securities and Insurance for its claim handling practices that revealed STATE FARM was underpaying drivers who were in accidents with STATE FARM insureds from November 1, 2018 through April 15, 2022. As a result, STATE FARM agreed to pay a $2 million dollar fine and be subject to an additional suspended fine of $2 million that will be discharged upon State Farm satisfactorily implementing corrective actions. *See* Montana Market Conduct Press Release Feb. 6, 2024. Further, State Farm did not

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

attempt in good faith to effectuate fair and equitable settlements of claims in which liability had become reasonably clear, refused to pay claims without conducting a reasonable investigation, and otherwise failed to properly resolve claims. See Market Conduct Examination Report of State Farm Mutual Automobile Insurance Company April 15, 2022.

41) In Delaware, State Farm claimed a "programming error" resulted in PIP claims being underpaid. *See e.g.* Delaware Department of Insurance Market Conduct Examination Report April 30, 2017.

42) **STATE FARM**'s conduct in this case is consistent with its broader strategy of using improper practices, misrepresentations or claims of errors to deny claims, delay payments and avoid paying money owed to make an undeserved profit.

### D.    STATE FARM VIOLATED ITS CODE OF CONDUCT

43) **STATE FARM** created a Code of Conduct[6] setting forth various duties **STATE FARM** and its employees have when dealing with customers and others like Plaintiff. Relevant portions attached as **Exhibit A.**

44) In part, **STATE FARM**'s Code of Conduct stated:

---

[6] Available at https://www.statefarm.com/content/dam/sf-library/en-us/secure/legacy/pdf/V-code-of-conduct.pdf. Last checked December 2, 2024.

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

The Code of Conduct applies to all State Farm Mutual Automobile Insurance Company directors, officers and employees, as well as to directors, officers and employees of each affiliate of State Farm Mutual Automobile Insurance Company.

**Exhibit A**, p. 5.

45) In part, this Code of Conduct stated:

We must follow our policies, rules and guidelines, and comply with all laws and regulations applicable to Company business.

**Exhibit A**, p. 5

46) **STATE FARM**, including its Chairman, President and CEO Michael L.

Tipsord, stated:

The Code of Conduct is a resource that helps us live our shared values and sets the expectation for appropriate behavior.

We hold ourselves to the highest standards of ethics and integrity. When representing our Company, apply good judgment, be honest and treat others with respect.

We also have a responsibility – and an obligation – to question any practice or business behavior that doesn't measure up. If you see something that falls outside the boundaries of appropriate behavior, I want you to speak up. No matter what the issue is, no matter who is involved. We must have the courage and confidence to act.

**Exhibit A**, p. 4.

47) **STATE FARM** defined fraud in its Code of Conduct as follows:

Fraud is intentional or reckless conduct that deceives or
is intended to deceive someone. This includes fraudulent,
illegal, unauthorized or dishonest acts.

**Exhibit A**, p. 17 (shown below).



48)  **STATE FARM** stated duties it, its employees and agents owed to Plaintiff and

others to include:

> We all have a duty to follow established procedures and
> report suspected fraud, misconduct or dishonesty to your
> supervisor, another member of leadership, Human Resources
> & Development, the Open Door policy or contact the
> Compliance & Ethics Hotline.

**Exhibit A**, p. 17 (shown below).



49)  **STATE FARM** required its employees to complete and submit the Code of

Conduct Form annually with its annual Code of Conduct training course.

**Exhibit A**, p. 28.

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

50)    The Code of Conduct Form is to be filled out any time an actual or potential violation of this Code occurs and consists of an acknowledgment to adhere to the Code of Conduct. **Exhibit A**, p. 28.

## VI.    CAUSES OF ACTION

### COUNT I: ABUSE OF PROCESS

51)    Plaintiff incorporates all relevant paragraphs above as if fully stated herein.

52)    On information and belief, before filing the lawsuit at issue, **STATE FARM** considered and drafted an interpleader action to properly deposit the funds owed under the policy into court for the benefit of Plaintiff and others.

53)    **STATE FARM** improperly initiated and pursued process in the form of a declaratory judgment action using fabricated and unapproved documents, with the primary or paramount purpose of achieving improper and ulterior objectives unrelated to the legitimate function of the legal process by using the lawsuit to coerce, intimidate and delay payment as stated herein.

54)    State Farm filed the declaratory judgment action not to resolve a legitimate coverage dispute but to manipulate the court into validating fabricated documents, including a backdated declarations page and an unapproved exclusion form. These documents were central to State Farm's scheme to mislead the Court and others about the terms of the policy.

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

55) **STATE FARM**'S pattern of misconduct and its attempt to validate fabricated documents in this case are consistent with its broader corporate policy to avoid proper payments and minimize payouts, as reflected in market conduct investigations and other litigation.

56) **STATE FARM**'S stated purpose was to have a judicial declaration that the policy it attached to the complaint existed at the time of the collision, was enforceable and that the driver exclusion form it used complied with S.C. Code Ann. § 38-77-340 when that was not the primary or proper purpose. *See e.g.* Complaint ¶ 18 "At all relevant times hereto, State Farm issued an automobile insurance policy (hereinafter "the Policy") … A copy of this Policy is attached hereto as Exhibit A…" and Complaint ¶ 19 "A copy of the endorsement, which remained in effect…is included in Exhibit A."

57) The legal process was willfully misused by **STATE FARM** through one or more of the following wrongful intentional acts including:

    i) **Fabricating and Backdating Documents**: **STATE FARM** intentionally created a false declarations page after the collision, backdating it and to include exclusions that did not exist to make Plaintiff and others accept that there was no coverage based on false documents.

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ii) **Using False Documents in Legal Proceedings**: STATE FARM knowingly attached the fabricated declarations page and an unapproved exclusion form (6023DC) to its declaratory judgment to make Plaintiff and others accept that there was no coverage based on false documents.

iii) **Redacting Information to Conceal Misconduct**: STATE FARM redacted key portions of the fabricated declarations page as in part shown below, falsely claiming the redactions were to protect premium information, but were intended to obscure premium amounts that were never actually charged to avoid exposing the fabrication and make it impossible for Plaintiff and others to challenge it.



iv) **Creating and Presenting False "Certified Policy Records"**: STATE FARM fabricated a Certified Policy Record that incorporated the false declarations page and unapproved exclusion form, presenting it as an

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

authentic document to make Plaintiff and others accept that there was no coverage based on false documents.

58)   The "Certified Policy Record" is, in part, shown below.



59)   **STATE FARM**'s "Certified Policy Record" made false statements to make Plaintiff and others to accept that there was no coverage, including:

i)   "the attached documents represent a true and accurate record of the terms and conditions of Policy…";

ii)   "the included Declarations Page which was in effect at the time of the loss will indicate the policy period of the last policy issuance transaction.";

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

iii) "The policy [referenced] was in effect on the loss date of 06/12/2021";
and

iv) The "attached documents represent a true and accurate record of the
terms and conditions of Policy Number 632 3189-B07-40B including any
endorsements …"

60) **STATE FARM**'s had one or more primary or ulterior motives for filing and
pursuing the declaratory judgment action including, but not limited to:

i) **Coercion and Intimidation**: Attempting to pressure Plaintiff and others
into abandoning or reducing their valid claims by creating financial and
procedural burdens.

ii) **Shifting Liability**: Forcing Plaintiff to rely on Plaintiff's uninsured
motorist (UM) coverage instead of **STATE FARM**'s liability coverage,
thereby transferring financial obligations to Plaintiff and its insurer.

iii) **Delay**: Prolonging Plaintiff's recovery to impose financial strain and
increase the cost of litigation. **STATE FARM** pursued the declaratory
judgment action with the deliberate intent to delay Plaintiff's recovery by
imposing financial burdens and prolonging litigation, knowing that the
cost and time required to defend the action would strain Plaintiff's
resources and force reliance on Plaintiff's own UM coverage.

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

iv) **Setting a Precedent to Deter Future Claims**: STATE FARM fabricated a declarations page and used an unapproved exclusion form to establish a precedent by obtaining a judicial declaration that fabricated and unapproved documents, such as the 6023DC exclusion form, were valid and enforceable, thereby enabling State Farm to rely on similar documents in future coverage disputes and deter other policyholders from challenging denials of similar claims in South Carolina and beyond.

v) **Financial Gain**: Avoiding payment of valid claims to improperly protect STATE FARM's financial interests, consistent with its broader corporate strategy of claim denials.

vi) **Declare Forged Documents Were Valid**: Having a court declare the forged and false document was in effect at the time of the collision, valid and otherwise enforceable. The use of fabricated and unapproved forms was part of an effort to establish the acceptability of using such documents without regulatory approval, thereby avoiding stricter compliance requirements in South Carolina and other jurisdictions.

61) STATE FARM willfully misused the declaratory judgment process, filing a lawsuit that was neither proper in the regular conduct of litigation nor aimed at resolving a legitimate coverage dispute and to have a court:

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

i) issue a decision and establish a precedent to deny coverage to policy holders and others when that form was never submitted and approved by the SCDOI as required; and

ii) declare that the forged and fabricated set of documents were valid and enforceable.

62) By misusing the legal process, **STATE FARM** caused Plaintiff and others to suffer damages, including:

i) Financial harm, including delays in receiving insurance benefits;

ii) Expenses and attorney's fees; and

iii) Additional time and effort to negotiate with the Plaintiff's own carrier after liability coverage was falsely denied, increased attorney's fees, losing subrogation rights and the benefit of obtaining the UIM proceeds sooner.

63) **STATE FARM** used legal process for purposes primarily unrelated to its legitimate function, including coercion, delay, and improper financial gain.

64) As a direct and proximate result of **STATE FARM**'s actions, Plaintiff suffered damages, including attorney's fees, litigation costs, delayed access to insurance proceeds, and otherwise.

## COUNT II: FRAUD

65) Plaintiff incorporates all relevant preceding paragraphs.

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

66) In July and August of 2021, **STATE FARM** fabricated a policy, including a declarations page and used an unapproved exclusion form to falsely claim there was no liability coverage.

67) In August of 2021 and thereafter, **STATE FARM** made and continued to make **representations** of fact to Plaintiff and others that the forged and false documents were the actual liability policy, when they were not. *See e.g.* ¶¶ 29, 30, 33, 56 herein.

68) **STATE FARM**'s representations to Plaintiff and others about the policy, including that Lamb was an excluded driver, were **false.**

69) The false representations included that the declarations page and Certified Policy Record accurately reflected the terms of the policy at the time of the collision and otherwise stated herein.

70) **STATE FARM** knowingly made these false statements despite knowing these documents were created after the fact and included material alterations and statements that were not present on the actual policy.

71) The representations **STATE FARM** made to Plaintiff and others were **material** in that the representations directly influenced and caused Plaintiff to report to its UIM carrier what State Farm was claiming, lose or delay the payment of underinsured proceeds that its carrier had already agreed to

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

tender, to pursue UM coverage, have counsel defend it in a lawsuit filed against it by **STATE FARM** and otherwise expend time, effort and money.

72)   **STATE FARM** acted with **knowledge of falsity or reckless disregard for its truth** as **STATE FARM** was aware that the exclusion form it used was never submitted nor approved for use by the SCDOI and that the Declarations Page and "policy" was fabricated after the collision but nonetheless stated or represented to Plaintiff and others that the documents were true.

73)   **STATE FARM intended** for Plaintiff and others to act upon the false statements and forged documents with the intent to deceive Plaintiff and others into believing liability coverage did not exist, thereby forcing Plaintiff and others to bear financial responsibility for the collision or to rely on alternative insurance coverage.

74)   Plaintiff was **ignorant of the falsity** of **STATE FARM**'s representations and reasonably believed liability coverage was not available under the policy and acted accordingly, including dealing its UM carrier as if there was no coverage.

75)   Plaintiff reasonably **relied on the truth** of **STATE FARM**'s representation that there was no liability coverage in various ways, including by negotiating with its own insurance carrier. This resulted in delayed payment of the

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

agreed upon underinsured coverage and the need to invoke the uninsured coverage.

76) **STATE FARM** knowingly provided fabricated documents to Plaintiff and others, representing them as accurate records of the policy terms, including a false declarations page and an unapproved exclusion form.

77) Plaintiff, relying on these documents, had legal counsel review the policy terms and representations made by **STATE FARM**.

78) Plaintiff detrimentally relied on **STATE FARM**'s false assertion that there was no liability coverage under the policy for the at-fault driver.

79) As a result of **STATE FARM**'s false statements and actions, Plaintiff contacted its UIM carrier, which had already agreed to pay the UIM benefits not subject to subrogation, to notify it of **STATE FARM**'s denial of liability coverage.

80) Plaintiff informed its UIM carrier about **STATE FARM**'s documents, which falsely claimed that there was no liability coverage for the at-fault driver.

81) In reliance on **STATE FARM**'s conduct and false statements that there was no liability coverage, Plaintiff expended significant effort, time, and expense to forgo the UIM coverage that was to be paid and to pursue UM benefits instead.

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

82) In reliance on the existence of no liability coverage, to secure the UM benefits, Plaintiff was required to assign the first $200,000 of any funds that may be collected from the at-fault driver to the UM carrier, thereby losing valuable and substantial financial rights.

83) As a direct result of STATE FARM's false statements and actions and in reliance on the statements, Plaintiff had to retain and pay attorney's fees to defend it in the declaratory judgment action filed by STATE FARM, which included conducting discovery and taking the deposition of a STATE FARM corporate representative to uncover the fabricated nature of the documents.

84) Plaintiff had a **right to rely on the representation** as STATE FARM was the issuer of the policy and the party responsible for stating truthful and accurate information about coverage and through its advertisements wants people to believe "Like a good neighbor, State Farm is there®" and should be trusted.

85) Further, STATE FARM's false statements and actions is insurance fraud or fraud *per se* in violation of S.C. Code Ann. § 38-55-530(D) because it knowingly created and presented fabricated and unapproved documents to Plaintiff and others. The false statements materially misrepresented the terms of the policy and affected the handling of Plaintiff's claims. The

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

actions were deliberate and intended to mislead Plaintiff into forgoing UIM benefits and pursuing alternative recovery avenues.

86) As a result of **STATE FARM**'S fraud, Plaintiff reasonably relied on these false representations to its detriment as set forth herein and as a result incurred financial harm, attorney's fees, legal expenses, interest, and the loss of other valuable rights or harms.

## COUNT III: NEGLIGENT MISREPRESENTATION

87) Plaintiff incorporates all preceding paragraphs to the extent needed.

88) **STATE FARM** negligently misrepresented that the fabricated declarations page and unapproved exclusion form were genuine and valid.

89) **STATE FARM** negligently and/or intentionally made misrepresentations to the Plaintiff, including that the bogus declarations page was real and that the Exclusion form complied with South Carolina law.

90) **STATE FARM** affirmatively failed to disclose material statements and/or truthful facts even though possessing expertise or special knowledge that would ordinarily make it reasonable for another to rely on such statements.

91) **STATE FARM** had a pecuniary interest in making these representations.

92) **STATE FARM** acted negligently to protect its pecuniary interests by avoiding liability for claims arising from the collision, knowing that the fabricated documents would shift financial responsibility to Plaintiff or others,

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

including Plaintiff's UM carrier and reduce **STATE FARM**'s financial exposure.

93) **STATE FARM** was in a superior position to Plaintiff, the Court and others as **STATE FARM** knew of the falsity of the documents and statements therein.

94) **STATE FARM** owed a duty to communicate truthful information to the Plaintiff and others. As the issuer of the policy and the one who undertook to speak, **STATE FARM** had a duty to Plaintiff and others to provide truthful and accurate information regarding the terms of coverage, particularly when Plaintiff relied on those terms in negotiating with its own insurance carrier to obtain benefits.

95) **STATE FARM** breached its duties by failing to exercise due or reasonable care.

96) Plaintiff and others justifiably relied on **STATE FARM**'s false representations in multiple ways.

97) This reliance caused harm to Plaintiff, including to forgo timely UIM payment, interest on those funds, requiring additional negotiations with the UM carrier to secure coverage and give up certain subrogation rights.

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

98) Plaintiff also incurred substantial attorney's fees and litigation costs to investigate and challenge the fabricated documents presented by STATE FARM, all of which resulted in financial harm and delayed payment of funds.

## VII.    RELIEF

WHEREFORE, Plaintiff prays for a judgment against STATE FARM in such amount of damages, including actual, punitive, whether statutory or otherwise, as may be determined by the trier of fact and/or the Court, costs, pre-judgment interest and for such other and further relief as is deemed just and proper.

KAHN LAW FIRM, LLP
s/JUSTIN S. KAHN SC BAR NO. 65100
JSKAHN@KAHNLAWFIRM.COM
WES B. ALLISON SC BAR NO. 100533
WALLISON@KAHNLAWFIRM.COM
PO BOX 31397
CHARLESTON, SC 29417-1397
P. 843.577.2128 | F. 843.577.3538

SEAN K. CLAGGETT (PRO HAC VICE)
CLAGGETT & SYKES LAW FIRM
4101 MEADOWS LANE, SUITE 100
LAS VEGAS NV 89107
(702) 213-2566
ATTORNEYS FOR PLAINTIFF

December 2, 2024



**DOING THE RIGHT THING**

# Code of Conduct

Exhibit A

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# 1

## Our Commitment

4 A Message from Michael Tipsord
5 What You Should Do
6 Leading by Example
6 Making Good Decisions
7 Sharing Concerns
7 How to Use the Compliance & Ethics Hotline
8 Zero Tolerance for Retaliation

# 2

## Mutual Trust

10 A Respectful Workplace
11 Discrimination and Harassment
12 Workplace Safety and Security
13 Drugs and Alcohol

# 3

## Integrity

15 Gifts, Gratuities and Improper Incentives
16 Conflicts of Interest
17 Preventing Fraud
17 Improper Payments
18 Anti-Money Laundering and Terrorist Financing
18 Restrictions on Employment

# 4

## Financial Strength

20 Intellectual Property and Confidential Information
22 Company Resources and Information Systems
23 Information Retention
23 Accurate Record Keeping and Reporting
23 Protecting Inside Information

# 5

## Quality Service and Relationships

25 Fair Dealing
26 Fair Competition
27 Speaking on Behalf of Our Company
27 Environmental Protection

# 6

## Code of Conduct Form Completion

**Code of Conduct** / DOING THE RIGHT THING / **OUR COMMITMENT**

# A Message from Michael Tipsord



As a team, we help people live life confidently. This is our mission, simply stated.

We have thousands of opportunities to build confidence with customers – and each other – every day. This starts with each of us consistently demonstrating our shared values of quality service and relationships, mutual trust, integrity and financial strength.

The Code of Conduct is a resource that helps us live our shared values and sets the expectation for appropriate behavior.

We hold ourselves to the highest standards of ethics and integrity. When representing our Company, apply good judgment, be honest and treat others with respect.

We also have a responsibility – and an obligation – to question any practice or business behavior that doesn't measure up. If you see something that falls outside the boundaries of appropriate behavior, I want you to speak up. No matter what the issue is, no matter who is involved. We must have the courage and confidence to act.

Leaders have an additional role – you help create an environment where we can talk openly about how we do business. Our Company will not tolerate retaliation against any employee who raises issues of potential concern, and we expect all leaders to model this commitment.

Our customers expect us to do the right thing.

We depend on each other to do the right thing.

Please look to our Code for guidance if you need to raise concerns or need help on a matter of ethics or compliance.

We define our Company through our actions and how we interact with each other, our customers and our communities. We have built a trusted brand by living our values and keeping our promises. By protecting our brand, we will continue to be there for our customers, helping more people in more ways.



**Michael L. Tipsord**
Chairman, President and CEO
State Farm Mutual Automobile Insurance Company

**4**

# Scope

The Code of Conduct applies to all State Farm Mutual Automobile Insurance Company directors, officers and employees, as well as to directors, officers and employees of each affiliate of State Farm Mutual Automobile Insurance Company. State Farm Mutual Automobile Insurance Company and its affiliates are referred to herein collectively as "Company."

# What You Should Do

This Code of Conduct, or "Code," is based around our mission, our vision and our shared values of mutual trust, integrity, financial strength and quality service and relationships.

As employees, we are accountable for our own actions. We must follow our policies, rules and guidelines, and comply with all laws and regulations applicable to Company business. This Code does not cover every situation. Additional information that complements the Code can be found in the resources at the end of this document. In some instances, you may need additional information and guidance from your supervisor, another member of leadership or Human Resources & Development. You may also use the Open Door policy, or contact the Compliance & Ethics Hotline.

We have an obligation to raise our concerns if we know of or suspect improper conduct or a breakdown of business or security controls. This includes situations where we believe we have observed or have been instructed to do something that is illegal or unethical or violates Company policy. Remember that resources are available to help, including those listed in this Code. You are expected to cooperate fully with any investigative efforts.

Generally, people try to do the right thing, but for those unfortunate situations where employees do not follow Company expectations, disciplinary action may result.

## Doing the Right Thing: 👍

- **Exemplify our mission, vision and shared values.**

- **Act in an honest, legal and ethical manner. Be aware that your behavior reflects on the Company.**

- **Adhere to the Sales Practices Philosophy and Principles.**

- **Be familiar with the information contained in this Code and Company policies.**

- **Remember, pressures or demands due to business or personal conditions are not an excuse for violating the law, our Code or any Company policy.**

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

ELECTRONICALLY FILED - 2024 Dec 02 4:09 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

# Preventing Fraud

Fraud is intentional or reckless conduct that deceives or is intended to deceive someone. This includes fraudulent, illegal, unauthorized or dishonest acts. We manage the risk of fraud through our shared value of integrity, utilizing our business processes, controls and the standards in this Code.

We all have a duty to follow established procedures and report suspected fraud, misconduct or dishonesty to your supervisor, another member of leadership, Human Resources & Development, the Open Door policy or contact the Compliance & Ethics Hotline.

# Improper Payments

Acts of bribery or corruption are designed to influence, obtain or retain an unethical business advantage. We select supplies, materials and services objectively and ethically, without gaining any advantage for the Company or for us personally. Corruption, bribery and kickbacks are contrary to our business standards. We comply with all applicable laws that forbid bribery both of public officials and within the private sector. We also comply fully with the Foreign Corrupt Practices Act, which is intended to prevent corrupt practices in international business transactions, prohibiting bribery of officials and employees who work for foreign governments.

There can be severe consequences if an employee violates anti-bribery or anti-corruption laws. Even the perception by others that we may have acted illegally can be damaging. For this reason, be aware of how our actions might be viewed by others.



# Code of Conduct Form Completion

We believe in following all applicable laws and regulations, and in behaving ethically and honestly. In accordance with these principles, we all must complete and submit the Code of Conduct Form annually, alongside the annual Code of Conduct training course.  The form should also be filled out any time an actual or potential violation of this Code or conflict of interest arises.

The form includes two parts: an acknowledgement to adhere to the Code of Conduct and its underlying policies, and a disclosure, which is an opportunity to disclose any actual or potential violation of this Code or conflict of interest. Submitting the form indicates that you have read and understood the Code of Conduct and:

- Have considered possible conflicts of interest.

- Have disclosed information about convictions for certain offenses.

- Have complied with the Code of Conduct to the best of your knowledge, with the exception of any situations described on the Code of Conduct Form.

- Will inform your immediate supervisor, or Human Resources & Development of any changes to any of these listed items.

- Will contact leadership, Human Resources & Development, use the Open Door policy or contact the Compliance & Ethics Hotline if you have concerns related to employee or business conduct.

Our company supports our employees' rights to speak out about matters of public concern or engage in certain activities related to the terms and conditions of their employment. Nothing in this Code or in any of our policies is intended to limit or interfere with the right to engage in activities protected under Section 7 of the U.S. National Labor Relations Act, such as discussions related to wages, hours, working conditions, health hazards and safety issues.

The existence and content of this Code of Conduct will be disclosed to policyholders and will be available on the company website.

The provisions of this Code are in addition to, and do not modify, replace or supersede the company's other policies or procedures.

ELECTRONICALLY FILED - 2024 Dec 02 4:56 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832

THE STATE OF SOUTH CAROLINA
IN THE COURT OF APPEALS

_____

APPEAL FROM CHARLESTON COUNTY
Court of Common Pleas

Thomas W. McGee, III, Circuit Court Judge

_____

Case No. 2023-CP-10-01832

_____

Robert C. Workman, Individually and as
Personal Representative of the Estate of
James K. Workman, Kelly Workman Tick
and Matthew T. Workman,
……………………………………………….Plaintiffs/Appellants,

v.

State Farm Mutual Automobile Insurance
Company and Gallivan, White & Boyd, P.A.
…………….…………….Defendants.

of which

State Farm Mutual Automobile Insurance Company is the
…………….Defendant/Respondent.

_____

**NOTICE OF APPEAL**

_____

Robert C. Workman, Individually and as Personal Representative of the
Estate of James K. Workman, Kelly Workman Tick and Matthew T. Workman
appeal the Amended Order as to Defendant State Farm's Rule 12(c) Motion for
Judgment on the Pleadings issued by the Honorable Thomas W. McGee, III dated
November 6, 2024. Appellants received written notice of entry of the order via
electronic notification on November 6, 2024.

s/ Justin S. Kahn
Justin S. Kahn
jskahn@kahnlawfirm.com
Kahn Law Firm, LLP
PO Box 31397
Charleston, South Carolina 29417
843.577.2128
**Attorneys for Appellants**

December 2, 2024


Other Counsel of Record:
M. Kathleen McTighe Mellen, Esq.
Robert W. Whelan, Esq.
Whelan Mellen & Norris, LLC
89 Broad Street
Charleston, SC 29401
(843) 998-7099
Attorneys for Respondent

ELECTRONICALLY FILED - 2024 Dec 02 4:56 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001832